Rakhee V. Patel – SBT # 00797213
Annmarie Chiarello – SBT # 24097496
**WINSTEAD PC**
500 Winstead Building
2728 N. Harwood Street
Dallas, Texas 75201
Phone:  (214) 745-5400
Fax:     (214) 745-5390
e-mail: rpatel@winstead.com
e-mail: achiarello@winstead.com

**ATTORNEYS FOR JOSHUA N. TERRY,
PETITIONING CREDITOR**

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION**

| | | |
|---|---|---|
| **IN RE:** § | | Case No. 18-30264-7 |
| § | | |
| **ACIS CAPITAL MANAGEMENT, L.P.,** § | | Chapter 7 |
| § | | |
| DEBTOR. § | | |
| § | | |

| | | |
|---|---|---|
| **IN RE:** § | | Case No. 18-30265-7 |
| § | | |
| **ACIS CAPITAL MANAGEMENT GP,** § | | Chapter 7 |
| **L.L.C.,** § | | |
| § | | |
| DEBTOR. § | | |

**EMERGENCY MOTION OF PETITIONING CREDITOR TO ABROGATE OR
MODIFY 11 U.S.C. § 303(F), PROHIBIT TRANSFER OF ASSETS, AND IMPOSE,
INTER ALIA, 11 U.S.C. § 363**

**NO HEARING WILL BE CONDUCTED HEREON UNLESS A WRITTEN RESPONSE IS FILED WITH THE CLERK OF THE UNITED STATES BANKRUPTCY COURT AT 1100 COMMERCE STREET, ROOM 1254, DALLAS, TEXAS 75242, BEFORE CLOSE OF BUSINESS ON FEBRUARY 23, 2018 WHICH IS AT LEAST 24 DAYS FROM THE DATE OF SERVICE HEREOF.**

**ANY RESPONSE SHALL BE IN WRITING AND FILED WITH THE CLERK, AND A COPY SHALL BE SERVED UPON COUNSEL FOR THE MOVING PARTY PRIOR TO THE DATE AND TIME SET FORTH HEREIN. IF A RESPONSE IS FILED A HEARING MAY BE HELD WITH NOTICE ONLY TO THE OBJECTING PARTY.**

**IF NO HEARING ON SUCH NOTICE OR MOTION IS TIMELY REQUESTED, THE RELIEF REQUESTED SHALL BE DEEMED TO BE UNOPPOSED, AND THE COURT MAY ENTER AN ORDER GRANTING THE RELIEF SOUGHT OR THE NOTICED ACTION MAY BE TAKEN.**

**BY SEPARATE MOTION, THE MOVANT SEEKS TO HAVE THIS MOTION HEARD ON AN EMERGENCY BASIS. IF THE COURT GRANTS THE REQUESTED EMERGENCY RELIEF, THE PARTIES WILL BE NOTIFIED ACCORDINGLY. AN EMERGENCY HEARING MAY AFFECT THE RESPONSE DEADLINES SET FORTH HEREIN.**

**TO THE HONORABLE STACEY G.C. JERNIGAN, UNITED STATES BANKRUPTCY JUDGE:**

Joshua N. Terry (the "Mr. Terry" or "Petitioning Creditor"), petitioning creditor in the above-captioned cases (these "Cases"), files this *Emergency Motion to Abrogate or Modify 11 U.S.C. § 303(f), Prohibit Transfer of Assets, and Impose, inter alia, 11 U.S.C § 363* (the "Motion") and respectfully states as follows in support thereof:

## I.     JURISDICTION

1. This Court has jurisdiction to consider the relief requested in this Motion under 28 U.S.C. § 1334 and the standing order of reference from the District Court. This matter is a core proceeding under 28 U.S.C. § 157(b)(2). The statutory predicates for relief IS Section 303(f) of the Bankruptcy Code.[1]

---

[1] 11 U.S.C. §§ 101 *et seq*. (the "Bankruptcy Code").

## II.     SUMMARY OF RELIEF REQUESTED[2]

2. Mr. Terry requests this Court imposes the restrictions of Section 363 of the Bankruptcy Code to prevent the Alleged Debtors' further decimation of the Alleged Debtors' assets. Alleged Debtor Acis Capital Management, L.P.'s ("Acis LP") actions are an affront to this Court and are a naked attempt to denude its estate of valuable assets. Starting shortly after an $8 million Final Award was entered against it in on or about October 20, 2017 (the "Final Award"), in favor of Mr. Terry, Acis LP, by, through or with its general partner, Acis Captial Management GP, LLC ("Acis GP") has fraudulently transferred assets or intends to fraudulently transfer in the very near term substantially all of Acis LP's assets to several affiliated entities for the purpose of putting those assets outside creditors' reach. These fraudulent transfers or contemplated fraudulent transfers, include: (1) transferring a $9.5 million promissory note payable to Acis LP from an affiliate, Highland Capital Management, L.P. ("Highland"), to a Cayman affiliate; and (2) transferring or the impending transfer of interests in several entities and a management contract worth to an affiliate for no or far less than fair market value.

3. Based on documents produced by Acis LP to Mr. Terry pursuant to Court order and as part of post-judgment discovery, it is clear that Acis LP is poised to fraudulently transfer its most significant assets: management contracts worth well in excess of $30 million, again to another Cayman affiliate. If that transfer occurs, Acis LP will have few, if any, assets.

## III.     FACTUAL AND PROCEDURAL BACKGROUND

**A.**     **Final Award and State Court Litigation**

4. On October 20, 2017, a JAMS arbitration panel made up of former or retired judges awarded Mr. Terry a Final Award in the amount of $7,949,749.15[3] against Acis LP and

---

[2] Certain undefined, capitalized terms appearing in the Summary of Relief Requested are defined later in the Motion.

Acis GP. Acis LP and Acis GP are collectively referred to herein as "Acis" or the "Alleged Debtors."

5. On December 18, 2017, Final Award was reduced to a final judgment by the 44th Judicial District Court of Dallas County, Texas and the Final Judgment was entered in Cause No. DC-17-15244 (the "Judgment").

**B. Transfer of Note**

6. On November 3, 2017, Acis, Highland, and Highland CLO Management Ltd., another Cayman entity ("Highland Cayman"), entered into the Agreement for Assignment and Transfer of Promissory Note (the "Note Transfer"). The Note Transfer, among other things, transferred the $9.5 million promissory note by Highland in favor of Acis (the "Note") from Acis to Highland Cayman. Upon information and belief, Acis did not receive sufficient consideration for the Note Transfer.

**C. Transfer of Management Agreement**

7. Additionally, the Note Transfer also purports to initiate the transfer of management contracts to Highland Cayman for the Collateralized Loan Obligations ("CLOs") listed on Schedule A to a prior agreement (the "Management Contracts"). Again, Acis is to receive no consideration for transferring its most significant assets, the Management Contracts.

**D. Contemplated Transfers**

8. Upon information and belief, Acis did not in fact transfer the Management Contracts pursuant to the Note Transfer. Instead, Acis intends to transfer the Management Contracts to non-Acis Highland affiliates beginning on or before February 1, 2018 through a

---

[3] Pursuant to the Judgment, interest accrues on the Judgment from October 20, 2017 until such time as the Judgment is paid in full, at an interest rate of 5% per annum. The total amount due to Mr. Terry, pursuant to the Judgment, as of the date of date the involuntary bankruptcy, January 30, 2018, was at least $8,060,827.84.

series of purported refinancing transactions. This transfer or purported refinancing will effectively destroy all value from Acis.

### E. Additional Transfers

9. On October 24, 2017, a mere four days after the Final Award was entered, an employee of Highland and representative of Acis, Frank Waterhouse, executed an agreement for Acis which reflects a sale of Acis's interest in its risk retention fund, Acis Loan Funding, Ltd. ("Acis Loan Funding"). The transfer of Acis Loan Funding is part of Acis's larger scheme to deprive Acis of its value to the detriment of all creditors.

10. On October 27, 2017, James Dondero ("Dondero") signed an agreement transferring management of Acis Loan Funding from Acis to Highland HCF Advisor Ltd., a Cayman entity ("Highland Cayman 2") for no consideration.

11. On October 31, 2017 (11 days after the Panel issued the Final Award), Dondero caused a filing in the Registry of the island nation of Guernsey. In that filing, Acis Loan Funding was renamed "Highland CLO Funding, Ltd."

12. On December 19, 2017, Acis transferred over $5 million of additional assets to Highland CLO Holdings, Ltd., another Cayman entity ("Highland Cayman 3"), purportedly in exchange for forgiveness of a receivable.

13. Also on December 19, 2017, the partners of Acis transferred their partnership interest to yet another Cayman entity, Neutra, Ltd. ("Highland Cayman 4").

### F. Bankruptcy Filings

14. On January 30, 2018 (the "Acis LP Petition Date"), Terry, as petitioning creditor filed the *Involuntary Petition Against a Non-Individual* [Case No. 18-30264-7, Docket No. 1] (the "Acis LP Petition") in the Acis LP bankruptcy case.

15. On January 31, 2018 (the "Acis GP Petition Date"), Terry, as petitioning creditor filed the *Involuntary Petition Against a Non-Individual* [Case No. 18-30265-7, Docket No. 1] (the "Acis GP Petition") in the Acis GP bankruptcy case.

16. As of the date of this filing, Acis LP and Acis GP have not responded to the Acis LP Petition and Acis GP Petition. Upon information and belief, Acis has retained Michael Warner to represent Acis in connection with these Cases.

### IV.    GROUNDS FOR RELIEF

17. As succinctly set forth in the legislative history and comments to Section 303(f), Congress intended that although Section 303(f) "permits the debtor to continue to operate any business of the debtor and to dispose of property the same as if the case had not been commenced … [t]he court is permitted . . . to control the debtor's powers under this subsection by appropriate orders, such as where there is a fear that the debtor may attempt to abscond with assets, dispose of them at less than their fair value, or dismantle his business, all to the detriment of the debtor's creditors."  HR Rep No. 595, 95th Cong, 1st Sess 323 (1977); S Rep No. 989, 95th Cong, 2d Sess 33 (1978).

18. Utilizing Section 303(f) of the Bankruptcy Code, courts have imposed restrictions on an involuntary gap debtor's operations to preserve and protect assets; especially where there is concern that a debtor may dispose of assets for less than fair value or dismantle a business for the private gain of its principals. *In re Wilson*, 62 B.R. 43, 46 (E.D. Tenn. 1985) (determining that section 303(f) authorizes a stay of business transactions during gap period that may jeopardize the rights and interests of creditors).

19. Indeed, a sister court in this district has abrogated Section 303(f) and imposed Section 363's requirements upon an alleged debtor based on the facts and circumstances of the case. *In re Tex. Rangers Baseball Partners*, 434 B.R. 393, 404-05 (Bankr. N.D. Tex. 2010) (Lynn, J.).

## VI. CONCLUSION

20. This matter cries out for the Court to invoke its authority to order compliance with, *inter alia*, Section 363 of the Bankruptcy Code. As stated above, the Alleged Debtors herein are unabashedly attempting to abscond with assets, dispose of valuable assets at less than their fair value, and dismantle their business to the great detriment of their single largest creditor, Mr. Terry. Therefore, the Court must enter an order to prevent additional fraudulent transfers to offshore or non-Debtor entities.

## VII. PRAYER

Mr. Terry respectfully requests this Court to: (i) grant the relief requested in this Motion; (ii) enter the proposed Order attached as **Exhibit "A"** to this Motion; and (iii) grant Mr. Terry such other and further relief to which it may be justly entitled, both at law and in equity

**DATED: January 31, 2018.**

Respectfully submitted,

**WINSTEAD PC**
500 Winstead Building
2728 N. Harwood Street
Dallas, Texas  75201
(214) 745-5400 (Phone)
(214) 745-5390 (Facsimile)
e-mail: rpatel@winstead.com
e-mail: sbdavis@winstead.com

By: */s/ Rakhee V. Patel*
    Rakhee V. Patel – SBT # 00797213

Annmarie Chiarello – SBT # 24097496

**ATTORNEYS FOR JOSHUA N. TERRY, PETITIONING CREDITOR**

## CERTIFICATE OF SERVICE

The undersigned certifies that on January 31, 2018, a true and correct copy of the foregoing Motion will be electronically mailed to the parties that are registered or otherwise entitled to receive electronic notices in this case pursuant to the Electronic Filing Procedures in this District. The undersigned certifies that on January 31, 2018, a true and correct copy of the foregoing Motion will be sent to Michael Warner, counsel for the Alleged Debtors.

*/s/ Annmarie Chiarello*
One of Counsel