Rakhee V. Patel – SBT #00797213
Annmarie Chiarello – SBT #24097496
**WINSTEAD PC**
500 Winstead Building
2728 N. Harwood Street
Dallas, Texas 75201
Telephone: (214) 745-5400
Facsimile:  (214) 745-5390
Email: rpatel@winstead.com
Email: achiarello@winstead.com

BRIAN P. SHAW
State Bar No. – 24053473
shaw@clousedunn.com
**CLOUSE DUNN LLP**
1201 Elm Street, Suite 5200
Dallas, Texas 75270-2142
Telephone:  (214) 220-3888
Facsimile:   (214) 220-3833

**ATTORNEYS FOR JOSHUA N. TERRY,**
**PETITIONING CREDITOR**

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE NORTHERN DISTRICT OF TEXAS
## DALLAS DIVISION

| | | |
|---|---|---|
| IN RE: | § | **Case No. 18-30264- SGJ7** |
| | § | |
| **ACIS CAPITAL MANAGEMENT, L.P.,** | § | **Chapter 7** |
| | § | |
| **ALLEGED DEBTOR.** | § | |
| | § | |
| | § | |

_____

| | | |
|---|---|---|
| IN RE: | § | **Case No. 18-30265-SGJ7** |
| | § | |
| **ACIS CAPITAL MANAGEMENT GP,** | § | **Chapter 7** |
| **L.L.C.,** | § | |
| | § | |
| **ALLEGED DEBTOR.** | § | |

### JOSHUA N. TERRY'S OBJECTION TO JOINT MOTION OF ACIS CAPITAL MANAGEMENT, L.P. AND ACIS CAPITAL MANAGEMENT GP, LLC TO DISMISS INVOLUNTARY PETITIONS AND REQUEST FOR AWARD OF FEES, COSTS, AND DAMAGES

**TO THE HONORABLE STACEY G.C. JERNIGAN,**
**UNITED STATES BANKRUPTCY JUDGE:**

Joshua N. Terry ("Mr. Terry" or "Petitioning Creditor"), petitioning creditor in the above-

captioned cases (these "Cases"), files this Objection (the "Objection") to *Joint Motion of Acis*

*Capital Management , L.P. and Acis Capital Management GP, LLC to Dismiss Involuntary Petitions and Request for Award of Fees, Costs, and Damages* (the "<u>Motion to Dismiss</u>") and respectfully states as follows in support thereof:

## I.    <u>SUMMARY</u>[1]

1.      This matter cries out for bankruptcy protection.  Alleged Debtors have engaged in a game of "catch me if you can" involving numerous fraudulent transfers and preferential payments to insiders (many of whom are located in the Cayman Islands in a thinly-veiled attempt to put those assets outside the reach of American courts), all at the direction of and under the control of *one* individual — James Dondero — and to the great detriment of the (albeit limited) legitimate creditors of Alleged Debtors.  Indeed, after a two-day hearing on the *Emergency Motion of Petitioning Creditor to Abrogate or Modify 11 U.S.C § 303(f), Prohibit Transfer of Assets, and Impose, Inter Alia, 11 U.S.C § 363* (the "<u>303(f) Motion</u>"), this Court found that "we have plenty of evidence the past two days to suggest we have hopeless conflicts of interest."[2] There is no better fact pattern than the present one underscoring the need for bankruptcy court oversight and the necessary appointment of an independent – a Chapter 7 trustee – to a) resolve the hopeless conflicts of interests, b) correct one-sided contracts that only benefit insiders, c) address the serious breaches of fiduciary duty enveloping Acis' operations in the last 18 to 20 months and d) stop and clawback the myriad preferential or fraudulent transfers, millions of dollars of which went to insiders, which have harmed and continue to harm the creditors of these estates.

---

[1] Certain undefined, capitalized terms appearing in the Summary of Relief Requested are defined later in the Motion.

[2] Transcript of Hearing on Emergency Motion to Abrogate or Modify 11 U.S.C Section 303(f), Prohibit Transfer of Assets, and Impose, Inter Alia, 11 U.S.C Section 363 Filed by Petitioning Creditor Joshua Terry (3); Emergency Motion to Set Hearing (related to Documents 8) Motion to Dismiss Case Filed by Alleged Debtor Acis Capital Management, LP (9) (Case Nos. 18-30264-SGJ7 &18-30264-SGJ7) (the "<u>Transcript</u>") at 329: 13-14 (Feb. 7, 2018). Excerpts from a copy of the Transcript are attached hereto as **Exhibit "A."**

<u>**JOSHUA N. TERRY'S OBJECTION TO JOINT MOTION OF ACIS CAPITAL MANAGEMENT, L.P. AND ACIS CAPITAL MANAGEMENT GP, LLC TO DISMISS INVOLUNTARY PETITIONS AND REQUEST FOR AWARD OF FEES, COSTS, AND DAMAGES**</u>                    <u>**Page 2 of 26**</u>

2.      Alleged Debtor Acis Capital Management, L.P. ("Acis LP") and its general partner Acis Capital Management GP, LLC ("Acis GP," together with Acis LP, the "Alleged Debtors" or "Acis"), seek dismissal on two primary grounds: 1) the involuntary petitions fail for lack of sufficient numerosity, *i.e.* Alleged Debtors have more than 12 creditors and this involuntary was filed by a single petitioning creditor; and 2) this Court should dismiss these involuntary filings or abstain from hearing this matter because a bankruptcy is not in the best interests of the creditors and debtors because this is a two-party dispute.  Under Alleged Debtors' reasoning, Alleged Debtors would have it both ways — there are multiple unpaid creditors of these estates, yet this is a bare two-party dispute.

3.      In any event, Alleged Debtors' arguments fail for a variety of reasons.  First, Alleged Debtors do not have 12 or more legitimate, qualifying creditors, *i.e.* creditors excluding insiders, employees, and any transferee of a transfer that is voidable pursuant to Sections 544, 545, 547, 548, 549 or 724(a) of the Bankruptcy Code.  The scant, self-serving, purported evidence provided to date by Alleged Debtors only evidences a small number of non-insider, non-employee, creditors of Alleged Debtors who have not received a voidable transfer under Chapter 5 of the Bankruptcy Code.  It appears that most of the alleged creditors are in fact creditors of an insider of Alleged Debtors.  Furthermore, many of the purported creditors are possibly counsel to Alleged Debtors, but are also counsel to numerous other entities within the same or affiliated corporate organization – effectively counsel beholden to their client.  Policy supports disallowing these creditors for numerosity purposes.

4.      Second, even assuming, *arguendo*, that Alleged Debtors do have 12 or more creditors, Alleged Debtors, together with either their insider affiliates or their lawyers, have engaged in an elaborate shell game shifting liability from one entity to another, such that a

reasonable creditor would not know against which entity it held a claim.   This conduct constitutes, at a minimum, "fraud, trick, artifice or scam to deprive creditors" of the ability to recover amounts due from Alleged Debtors.   Furthermore, the Alleged Debtors have engaged in fraudulent transfers and prepetition payments to insiders and offshore entities, which further invoke the special circumstances exception to Section 303. As such, the involuntary petitions should not be dismissed pursuant to the long-standing jurisprudence in this district finding a special exception to Section 303 of the Bankruptcy Code[3] in similar circumstances.

5.   Starting shortly after the $7,949,749.15 Final Award (the "Final Award") was entered against Alleged Debtors on or about October 20, 2017 in favor of Mr. Terry, Acis LP, by, through or with Acis GP, has fraudulently transferred millions of dollars of assets or intended to fraudulently transfer substantially all of Acis LP's assets to several affiliated entities for the purpose of putting those assets outside creditors' reach.   These fraudulent transfers or contemplated fraudulent transfers, include, but are not limited to:  (1) transferring a $9.5 million promissory note payable to Acis LP from an affiliate, Highland Capital Management, L.P. ("Highland"), to a Cayman affiliate; and (2) the intended transfer of interests in several entities and a management contract to an affiliate for no or far less than fair market value. Additionally, Acis entered into uneconomic contracts with an affiliate, Highland. After this Court's ruling on the 303(f) Motion and the imposition of Section 363 of the Bankruptcy Code, Alleged Debtors were prohibited from consummating the transfer of the Management Contract (or any other transaction) without further order of the Court.

6.   Finally, Alleged Debtors argue that the Court should abstain from hearing these cases and exercise its discretion to grant dismissal based on Section 305 of the Bankruptcy Code.

---

[3] 11 U.S.C. §§ 101 et seq. (the "Bankruptcy Code").

Here, neither creditors nor Alleged Debtors would be aided by the dismissal of the involuntary petitions.  First, this is much more than a two-party dispute where the relief is available in a non-bankruptcy forum.  Second, Alleged Debtors have readily admitted that Alleged Debtors are at or near the zone of insolvency.[4]  Third, Alleged Debtors are engaged in the dismantling of the company to entities outside the jurisdiction of the United States, and creditors need a fast and effective solution, as in the near term, or Alleged Debtors will no longer have any assets and creditors will be without the means to recover.  Lastly, it is disingenuous to argue that Mr. Terry has an improper purpose, an ill motive, or bad faith by the filing of these cases. In fact, Mr. Dondero has stated, under oath, the following:

**JAMES DONDERO**
**June 28, 2017**

262

```
19:31:32  1   attacking -- we're kind of used to everybody attacking
          2   me, but attacking everybody else?  Nobody's going to
          3   let a dime go out of the firm that we don't have to
          4   pay ever to -- to Josh, period.  I mean, it's -- it's
          5   a worse than Pat Daugherty scenario, and it's -- and
          6   it's -- I think it's -- I think it's personal -- I
          7   think it's more personal to some of the other people
          8   in the office than it is to me even, because I think
          9   some of the other people, the mud slinging affects
         10   them more.
```

Therefore, federal bankruptcy proceedings are necessary to reach a just and equitable solution for all creditors.

---

[4] Tr 219: 22-25.

## II.      FACTUAL AND PROCEDURAL BACKGROUND

### A.      State Court Litigation And Final Award

7.      Highland commenced litigation against Mr. Terry on or about September 8, 2016 in the 162nd Judicial District Court of Texas (the "162nd Action").  Mr. Terry subsequently moved to compel arbitration, which request was granted.  Accordingly, the 162nd Action was stayed pending resolution of the arbitration on the merits.

8.      On October 20, 2017, a JAMS arbitration panel made up of former or retired judges (the "Arbitration") entered the Final Award in favor of Mr. Terry in the amount of $7,949,749.15[5] against Alleged Debtors.

9.      On December 18, 2017, the Final Award was reduced to a final judgment by the 44th Judicial District Court of Dallas County, Texas, and the Final Judgment was entered in Cause No. DC-17-15244 (the "Judgment").

### B.      Transfer Of Note

10.      On November 3, 2017, Acis LP, Highland, and Highland CLO Management Ltd., a Cayman entity ("Highland Cayman"), entered into the Agreement for Assignment and Transfer of Promissory Note (the "Note Transfer").  The Note Transfer, among other things, transferred the $9.5 million promissory note by Highland in favor of Acis LP (the "Note") from Acis LP to Highland Cayman.  Acis LP received no or insufficient consideration for the Note Transfer.

### C.      Transfer Of Management Agreement

11.      Additionally, the Note Transfer also purports to initiate the transfer of management contracts to Highland Cayman for the Collateralized Loan Obligations ("CLOs")

---

[5] Pursuant to the Judgment, interest accrues on the Judgment from October 20, 2017 until such time as the Judgment is paid in full, at an interest rate of 5% per annum.  The total amount due to Mr. Terry, pursuant to the Judgment, as of the date of filing the involuntary bankruptcy, January 30, 2018, was at least $8,060,827.84.

listed on Schedule A to a prior agreement (the "Management Contracts").  Again, Acis LP is to receive no consideration for transferring its most significant assets, the Management Contracts.

**D.     Contemplated Transfers**

12.     Upon information and belief, Acis LP did not in fact transfer the Management Contracts pursuant to the Note Transfer.  Instead, prior to the Court's ruling on the 303(f) Motion, Acis LP intended to transfer the Management Contracts to non-Acis Highland affiliates beginning on or before February 1, 2018, through a series of purported refinancing transactions.

**E.     Additional Transfers**

13.     On October 24, 2017, a mere four days after the Final Award was entered, an employee of Highland and representative of Acis, Frank Waterhouse, executed an agreement for Acis which reflects a sale of Acis's interest in its risk-retention fund, Acis Loan Funding, Ltd. ("Acis Loan Funding").  The transfer of Acis Loan Funding is part of Acis's larger scheme to deprive Acis of its value to the detriment of all creditors.

14.     On October 27, 2017, James Dondero ("Dondero") signed an agreement transferring management of Acis Loan Funding from Acis to Highland HCF Advisor Ltd., a Cayman entity ("Highland Cayman 2"), for no consideration.

15.     On October 31, 2017 (11 days after the arbitration panel issued the Final Award), Dondero caused a filing in the Registry of the island nation of Guernsey.  In that filing, Acis Loan Funding was renamed "Highland CLO Funding, Ltd."

16.     On December 19, 2017, Acis transferred over $5 million of additional assets to Highland CLO Holdings, Ltd., another Cayman entity ("Highland Cayman 3"), purportedly in exchange for forgiveness of a receivable.

17.     Also on December 19, 2017, the partners of Acis transferred their partnership interest to yet another Cayman entity, Neutra, Ltd. ("Highland Cayman 4").

**F.     Amendment To Sub-Advisory Agreement And Shared Services Agreement**

18.     Alleged Debtors have made uneconomic modifications to the sub-advisory and shared services agreements by virtue of the Third Amended and Restated Sub-Advisory Agreement by and between Acis Capital Management, L.P. and Highland Capital Management, L.P., dated March 17, 2017 (the "Sub-Advisory Agreement"), and the Fourth Amended and Restated Shared Services Agreement by and between Acis Capital Management, L.P. and Highland Capital Management, L.P., dated March 17, 2017 (the "Shared Services Agreement"), for the sole benefit of Highland and to the detriment of Alleged Debtors' cash flow, and therefore the Alleged Debtors' creditors.

19.     Acis LP contracts with Highland to provide services necessary for the fulfillment of the Management Contracts through both the Sub-Advisory Agreement and the Shared Services Agreement.  In the last year, the amount of fees payable to Highland pursuant to the Sub-Advisory Agreement and the Shared Services Agreement were dramatically increased to the benefit of Highland and determinant of Acis and its creditors.  The increase in the amounts payable to Highland under the Sub-Advisory Agreement and the Shared Services Agreement effectively rendered the agreements uneconomical for Acis.

20.     The Sub-Advisory Agreement has been amended from time to time.  The first iteration of the sub-advisory agreement, the Sub-Advisory Agreement by and between Acis LP and Highland, dated January 1, 2011 (the "Original Sub-Advisory Agreement"), provided that Acis LP was to pay Highland certain amounts for assisting Acis LP with the advisory services required by the Management Contract.  Under the Original Sub-Advisory Agreement, Acis LP

paid Highland 5 bps of the management fees received by Acis LP pursuant to the various Management Contracts for the sub-advisory services provided to Acis LP by Highland.

21.     On March 17, 2017, the date of the most recent amendment to the Original Sub-Advisory Agreement, the Sub-Advisory Agreement was modified to increase the sub-advisory fee to 20 bps.  The four-fold increase in the sub-advisory fees via the amendment to the Sub-Advisory Agreement siphons off the funds of Acis LP and effectively gifts the additional amounts to Highland.  Dondero consented to the increased sub-advisory fee on behalf of both Acis LP and Highland.  Dondero signed the Sub-Advisory Agreement as president of Highland's general partner, Strand Advisors, Inc., and as president of Acis GP, the general partner of Acis LP.

22.     The Shared Services Agreement has also been amended from time to time.  The first iteration of the shared services agreement, the Shared Services Agreement by and between Acis LP and Highland, dated January 1, 2011 (the "Original Shared Services Agreement"), provided that Acis LP was to pay Highland certain amounts for providing Acis LP with the back-office services such as book keeping, compliance, human resources and marketing.  Under the Original Shared Services Agreement, Acis LP reimbursed Highland for amounts directly attributable to Acis LP for these services.

23.     On March 17, 2017, the date of the most recent amendment to the Original Shared Services Agreement, the Shared Services Agreement was modified to increase the fees payable under the Shared Services Agreement from a flow-through to 15 bps of the management fees received by Acis LP pursuant to the various Management Contracts.  The increase in the shared services fees via the amendment to the Shared Services Agreement, like the increase in the sub-advisory fees, siphons off the funds of Acis LP and effectively gifts the additional amounts to

Highland.  Dondero consented to the increased shared services fee on behalf of both Acis LP and

Highland.  Dondero signed the Shared Services Agreement as president of Highland's general

partner, Strand Advisors, Inc., and as president of Acis GP, the general partner of Acis LP.

**G.      Bankruptcy Filings**

24.      On January 30, 2018 (the "Acis LP Petition Date"), Terry, as petitioning creditor,

filed the *Involuntary Petition Against a Non-Individual* [Case No. 18-30264-7, Docket No. 1]

(the "Acis LP Petition") in the Acis LP bankruptcy case.

25.      On January 30, 2018 (the "Acis GP Petition Date"), Terry, as petitioning creditor,

filed the *Involuntary Petition Against a Non-Individual* [Case No. 18-30265-7, Docket No. 1]

(the "Acis GP Petition," together with the Acis LP Petition, the "Involuntary Petitions") in the

Acis GP bankruptcy case.

26.      As of the date of this filing, Acis LP and Acis GP have not responded to the Acis

LP Petition and Acis GP Petition.

**H.      Order Granting Motion To Modify 11 U.S.C. § 303(F) And Impose 11 U.S.C. § 363**

27.      On January 31, 2018, Mr. Terry filed the 303(f) Motion, which asserted, among

other things, that Alleged Debtors had engaged in fraudulent transfers or intended to engage in

fraudulent transfers in the near term.  After a two-day hearing on February 6 and 7, 2018 (the

"303(f) Hearing"), the Court found that it was proper to impose Section 363 of the Bankruptcy

Code before the hearing on the Motion to Dismiss and the Involuntary Petitions.

**III.      ARGUMENT AND AUTHORITIES**

**A.      Alleged Debtors Have Fewer Than 12 Creditors**

28.      Pursuant to Section 303(b)(2) of the Bankruptcy Code, a sole petitioning creditor

holding at least $15,775.00 in claims can initiate an involuntary bankruptcy case so long as

Alleged Debtors have fewer than 12 creditors.  Mr. Terry asserts that Alleged Debtors have fewer than 12 creditors.  Of the 18 creditors included on the *Notice of List of Creditors Pursuant to Fed. R. Bankr. P. 1003(b)* [Case No. 18-30264, Docket No. 7 & Case No. 18-30265, Docket No. 7] and the 19 creditors included on the *First Amended Notice of List of Creditors Pursuant to Fed. R. Bankr. P. 1003(b)* [Case No. 18-30264, Docket No. 17 & Case No. 18-30265, Docket No. 16] (the "Alleged Creditor List"), 15 cannot be counted for the 12-creditor requirement of Section 303(b)(2) of the Bankruptcy Code.  Alleged Debtors stated they "are not going to dispute Mr. Terry's claim for the purposes of counting creditors under 303…. we're not challenging him as a creditor that you would count in an involuntary petition."[6]  For the purposes of Section 303(b)(2), Alleged Debtors only have four non-insider creditors.

29.    After the Alleged Creditor List was filed, Mr. Terry bears the burden of showing that Alleged Debtors actually have less than 12 qualified creditors under Section 303(b) of the Bankruptcy Code.  *See In re Moss*, 249 B.R. 411, 419 n. 6 (Bankr. N.D. Tex. 2000).  Mr. Terry must meet this burden by a preponderance of the evidence.  *In re  Smith*, 415 B.R. 222, 229 (Bankr. N.D. Tex. 2009).

## 1.    Many Of The Creditors Listed On The Alleged Creditor List Are Creditors Of Highland Or Lackey Hershman

30.    Thirteen of the creditors listed on the Alleged Creditor List note Highland or Lackey Hershman, LLP ("Lackey Hershman"), counsel to Alleged Debtors and other entities in the Arbitration, as the responsible party or the invoiced party rather than Alleged Debtors.  Only two invoices produced to Mr. Terry were addressed to even one of Alleged Debtors – Jones Day and KPMG.  Since Alleged Debtors do not appear to have any personal liability for the

---

[6] Transcript 307: 19-21 & 23-24 (Feb. 7, 2018).

prepetition debts related to 13 creditors, those debts may not be counted for the purpose of determining whether Alleged Debtors have 12 or more creditors. *See, e.g., In re Sadler*, No. 0610091-FRM, 2006 Bankr. LEXIS 4464 at *3 (Bankr. W.D. Tex. 2006) ("Third, the Court determined that the following debts were not bona fide creditors for the purposes of §303(b)...Capital One-Debt in name of Winchester Ranch Properties, L.L.C.'s [sic] and no proof Mr. Sadler was personally liable on the debt."). Accordingly, Mr. Terry's burden is met on the face of the invoices submitted by Alleged Debtors.

**2.      Insiders Are Excluded For The Purposes Of Section 303(b)(2) Of The Bankruptcy Code**

31.      Lackey Hershman, McKool Smith, and Highland and its related entities are "insiders" of Alleged Debtors and, therefore, not eligible to be counted pursuant to Section 303(b). Alleged Debtors have admitted that Highland meets the definition of insider pursuant to Section 101(31) of the Bankruptcy Code.[7]

32.      Section 101(31) of the Bankruptcy Code states that the term insider "includes" certain enumerated parties, *i.e.* officer of the debtor, affiliate, etc. The use of the word "includes" suggests that the list of enumerated "insiders" is not exclusive or exhaustive. *See In re Missionary Baptist Foundation of Am., Inc*., 712 F.2d 206, 210 (5th Cir. 1983).

33.      For purposes of Section 303(b), [a]n insider is an entity or person with 'a sufficiently close relationship with the debtor that his conduct is made subject to closer scrutiny than those dealing at arm's length with the debtor.'" *Smith*, 415 B.R. at 232 (Bankr. N.D. Tex. 2009) (quoting *Missionary Baptist,* 712 F.2d at 210). As set forth in Section 303(b)(1), the creditor count excludes "any employee or insider" of an alleged debtor.

---

[7] Transcript 246: 8-9 ("there are no insiders other than Highland on the list of eighteen").

34.     As stated by the 5th Circuit, "cases which have considered whether insider status exists generally have focused on two factors in making that determination:  (1) the closeness of the relationship" between the parties and "(2) whether the transaction...[was] conducted at arm's length." *In re Holloway*, 955 F.2d 1008, 1011 (5th Cir. 1992).

35.     McKool Smith is a law firm representing Alleged Debtors in this bankruptcy proceeding and is, therefore, an insider of Alleged Debtors.  As found by Judge Hale in *In re Smith*, "the term 'insider' includes an attorney who is currently defending the client in an involuntary bankruptcy petition." *Smith,* 415 B.R. at 233 (Bankr. N.D. Tex. 2009) (*citing In  re Rimell*, 111 B.R. 250 (Bankr. E.D. Mo. 1990), aff'd 946 F.2d 1363 (8th Cir. 1991)). Accordingly, McKool Smith cannot be counted as a creditor.

36.     "Congress excluded insiders and recipients of voidable transfers from the creditor numerosity calculation under § 303(b)(2) to alleviate its concern that an insolvent debtor and *friendly creditors* would collude to defeat an involuntary petition.  If insiders or recipients of voidable transfers (*i.e.* those without incentive to file an involuntary bankruptcy as they are receiving payment) collude with a debtor to artificially increase the total number of creditors to more than 12, it could block an involuntary petition." *In re CorrLine Int'l, Inc*., 516 B.R. 106, 144 (Bankr. S.D. Tex. 2014) (collecting cases)(emphasis added).  Therefore, parties that are not incentivized to file or join involuntary petitions against alleged debtors may (and should not) be considered insiders.

37.     Lackey Hershman, another creditor listed, is a law firm that routinely represents Highland and its affiliates.  In fact, Paul Lackey, one of the named partners in the Lackey Hershman firm, boasts on his firm webpage that "Paul Lackey, repeatedly recognized as a Texas Super Lawyer, has acted as the outside litigation counsel for a decade for Highland Capital

Management, L.P., one of the largest private-equity funds in the country."[8]  Lackey Hershman

likely generates substantial revenue from Highland and its affiliates and, therefore, is not

incentivized to file an involuntary petition against Alleged Debtors.  Lackey Hershman has a

sufficiently close relationship that it should be considered an "insider" of Alleged Debtors.

38.    Additionally, counsel for Alleged Debtors admitted that the various law firm

creditors are not incentivized to file an involuntary petition against Alleged Debtors, saying:[9]

```
22 │ looking at eighteen entities.  Pulling Highland out, seventeen
23 │ entities; pulling Mr. Terry out, seventeen entities and not
24 │ likely one of them is going to join in against Acis its
25 │ client, its party who owes it money, party who retained it in

 1 │ connection with the litigation.
 2 │        For instance, the McKool Smith law firm; for
 3 │ instance, the Lackey Hershman law firm; for instance, the
 4 │ Andrews & Kurth (sic) law firm, I can go on.  For instance,
 5 │ the depo company who gets paid regularly.
```

39.    Mr. Terry believes that pending discovery may reveal that other alleged law firm

creditors are also "insiders" and thus not included for the purposes of the numerosity requirement

of 303(b).

---

[8] *Meet Our Team*, lhlaw.com, http://www.lhlaw.net/paul-lackey.html (last visited Feb. 19, 2018).

[9] Transcript 244: 22-25, 245:1-5.

3.      **Voidable Transfers**

40.     Section 303(b)(2) states "an involuntary case against a person is commenced by the filing with the bankruptcy court of a petition under chapter 7 or 11 of  this title if there are fewer than 12 such holders, excluding any employee or insider of such person and any transferee of a transfer that is voidable under sections 544, 545, 547, 548, 549, or 724(a)."  Parties that received voidable transfers are not counted for the 12 creditor requirement of Section 303(b) of the Bankruptcy Code.  *See In re Smith*, 415 B.R. 222, 233 Bankr. N.D. Tex. 2009).  At this time, Mr. Terry has not obtained sufficient discovery to determine if any of the alleged creditors are in receipt of a voidable transfer.  As such, Mr. Terry reserves all rights to argue that alleged creditors may be excluded from the creditor count due to their receipt of voidable transfers.

4.      *De minimis*, **Small Or Reoccurring Claims**

41.     In determining the number of creditors, small reoccurring creditors are not to be included.  *See Moss*, 249 B.R. at 419 (citing *Matter of Runyan*, 832 F.2d 58, 60 (5th Cir. 1987)). Additionally, some courts interpret *Runyan* and the pre-Bankruptcy Code case it expands on, *Denham v. Shellman Grain Elevator, Inc*., 444 F.2d 137 (5th Cir. 1971), to not only bar small reoccurring debts from the numerosity requirement of Section 303(b), but also *de minimis* creditors.  *In re Norris,* 183 B.R. 437, 450 (Bankr. W.D. La. 1995); *In re CorrLine*, 516 B.R. at 154.  Even if Alleged Debtors can establish there is personal liability for the foregoing debts, certain creditors should not be counted as they are *de minimis*, small, or reoccurring – namely Case Anywhere, David Langford, Elite Document Technology, Jones Day, and CT Corporation. Again, at this time, discovery is outstanding to many of the creditors, and Mr. Terry reserves all rights to argue that the alleged creditors may be excluded from the creditor count due to the *de minimus* nature of their claims.

**B.**      **This Is Not A Two-Party Dispute And Abstention Is Improper**

Alleged Debtors bear the burden of showing that a dismissal is in the best interests of creditors.  (*See* Mot. to Dismiss at ¶ 35.)  As Alleged Debtors point out, there are at least seven factors this Court should consider in making such a determination.

**1.**      **Alleged Debtors' Conduct Suggests This Is Not Merely A Two-Party Dispute**

42.      Incredulously, after arguing the existence of 12 or more creditors, Alleged Debtors also argue that this is "essentially a two party dispute"[10] and should be dismissed on that basis.  This Court, at the hearing on the 303(f) Motion, noted that it was illogical for Alleged Debtors to simultaneously argue this is a two-party dispute while asserting that they have 19 creditors saying:[11]

```
18        Bankruptcy Court is not designed -- and again, I'm no
19   bankruptcy practitioner -- to take a two-party dispute and use
20   it as a litigation tactic to -- in that case, that would be an
21   obvious attempt to do an end-around around Judge Goldstein's
22   order saying I'm not going to enter a temporary injunction.
23        THE COURT:  You said it's not a two-party dispute.
24        MR. CRUCIANI:  It's a dispute between Acis --
25        THE COURT:  You say it's a nineteen-party dispute.
```

43.      Additionally, Section 303 of the Bankruptcy Code makes it clear that an involuntary petition can be maintained by a single petitioning creditor.  *In re Norris* states:

Norris argued that this matter was nothing more than a two-party dispute, thus the case should be dismissed.  Admittedly, the courts have developed almost a *per se* rule against granting a petition for involuntary bankruptcy where there is only a single unpaid debt.  Courts have condemned and ultimately dismissed involuntary cases where a single petitioning creditor attempted to use the bankruptcy court as an alternative to state court litigation, where the creditor had adequate state law remedies, or where the debtor had no significant assets for the bankruptcy court to administer.  However, this Court disagrees

---

[10] Motion to Dismiss ¶ 40.

[11] Transcript 250: 18-25 (Feb. 7. 2018).

with Norris and his reliance on such theory is misplaced.    This Court has already determined that Norris has unquestionably failed to pay more than one debt.

*Norris*, 183 B.R. at 459-460 (Bankr. W.D. La. 1995).

44.    Notably, Alleged Debtors have admitted they are indebted to more parties in addition to Mr. Terry.[12]    In fact, Alleged Debtors have submitted evidence to this Court that CT Corporation, Stanton Law Firm, and Andrews Kurth Kenyon, LLP have unpaid invoices dating as far back as 2016 and that all but three of the 19 purported creditors have invoices that are more than 90 days old.    Clearly, if even the smallest iota of Alleged Debtors' argument is to be believed, this is more than a two-party dispute, as there are numerous unpaid debts of Acis.

45.    Additionally, even Alleged Debtors concede that there are and will remain unpaid debts of Acis.    At the 303(f) Hearing, Alleged Debtors argued that Acis <u>is net cash flow negative</u>[13] only paying amounts due to Highland and its affiliates while simultaneously admitting and arguing that it has 19 creditors who are owed approximately $11.5 million in the aggregate, $8.7 million when Highland is excluded, and over $725,000 when Highland and Mr. Terry's judgment are excluded.    So, which one is it?    Is this a two-party dispute when all other creditors except Mr. Terry are being paid their debts as they come due, or is Acis net cash flow negative and unable to pay its creditors that are part of this alleged two-party dispute?

46.    Alleged Debtors only argue that involuntary bankruptcy is being used as a litigation tactic because this is a two-party dispute.    When reviewing a party's request to dismiss

---

[12] [Case No. 18-30264, Docket No. 17 & Case No. 18-30265, Docket No. 16].

[13] Mr. Terry submits that Acis is only cash flow negative because Highland by and through Mr. Dondero negotiated and entered into a one-sided, unbalanced, and for less than reasonably equivalent value amended agreements relating to sub-advisory services and shared services, Shared Services Agreement and the Sub-Advisory Agreement. Mr. Dondero, as President of Acis GP on behalf of Acis LP and on behalf of Highland, approved each amended agreement.    Mr. Terry does not agree or stipulate that Acis is nor should be net cash flow negative – but for the wrongful prepetition conduct, Acis would be cash flow positive.    This, along with a litany of other reasons, is why this matter cries out for bankruptcy.

a case based on Section 305 of the Bankruptcy Code, courts consider more than a simple "balancing of harm to the debtor and creditors; rather, the interests of both the debtor and its creditors must be served by granting the requested relief." *In re Smith*, 415 B.R. 222, 238-239 (Bankr. N.D. Tex. 2009) (*citing In re AMC Investors, LLC*, 406 B.R. 478, 488 (Bankr. D. Del. 2009)). Alleged Debtors do not argue that it is more economic and efficient to administer the systematic dismantling of Acis outside of bankruptcy court (although it would be more convenient to the pattern of preferences and fraudulent transfers to insiders), nor do they argue there is some alternate, less expensive method or forum to adjudicate these issues. Alleged Debtors do not argue that the state court can adequately protect the interests of both parties, nary all parties, and that federal court protection is not necessary because they simply cannot. For example, preference actions do not exist outside of bankruptcy. Another example is the Bankruptcy Code's power to render termination upon bankruptcy clauses unenforceable. For further example, Trustees with hypothetical lien creditor powers empowered to clawback fraudulent transfers to insiders or assert breaches for fiduciary duty do not exist outside of bankruptcy.

47.     In the Motion to Dismiss, in support of their argument of bad faith and that these involuntary petitions are merely a litigation tactic, Alleged Debtors argue that "when Acis brought to Terry's attention that Acis may close the CLO-III transaction on February 1, Terry's knee-jerk reaction was to file a motion to abrogate or modify 11 U.S.C. § 303(f) . . .," "Acis agreed in State Court to restrict certain transfers by Acis" and "[i]t is likely the State Court would have modified those restraints or dissolved them completely at the conclusion of the TI Hearing." (Mot. to Dismiss at ¶ 41.) Thereafter, in the Supplement to Joint Motion of Acis Capital Management, L.P. and Acis Capital Management GP, LLC to Dismiss Involuntary Petitions and

Request for Award of Fees, Costs and Damages, Alleged Debtors continue to argue that "Petitioning Creditor filed the Involuntary Petitions as a litigation tactic in what is essentially a two-party dispute, presumably in an attempt to delay the inevitable dissolution of the TRO in the State Court Action." (Supp. To Mot. to Dismiss at ¶ 5.)  Alleged Debtors' position that there was a likelihood or even concern about not getting the necessary relief in state court is simply not true.  Mr. Terry presented this Court with the exact same facts and circumstances at the 303(f) Hearing as were to be presented to the state court.  It was the risk of multiple, repeated bites at the apple and the inefficiencies created by Acis's conduct, amongst other factors, that spurred these filings.  If any court issued a temporary injunction preventing the CLO-III transaction, what prevented Alleged Debtors and Highland from some other path toward its continued denuding of assets from these estates?  The answer is simple and elegant, Section 363 of the Bankruptcy Code.  These involuntary cases were filed for the sole purpose of obtaining a fair, equitable result under the auspices of the Bankruptcy Code and its, at many times, unique protections that are unavailable outside of this forum *e.g.* Sections 362, 363 and 365 of the Bankruptcy Code, under this Court's watchful eye and with the insertion of an independent fiduciary without either self-interest or an "axe to grind."

48.     Based on the foregoing, Mr. Terry submits that this is more than a two-party dispute, is not a mere litigation tactic, and does not meet the standard for dismissal.

## 2.     The Court Should Refrain From Exercising Permissive Abstention

49.     Some courts outside this jurisdiction have found that they have discretion to abstain from hearing an otherwise valid involuntary based on Section 305 of the Bankruptcy Code.  Additionally, abstention in a properly filed bankruptcy case is an "extraordinary remedy." *CorrLine Int'l, Inc.*, 516 B.R. at 140. First, Mr. Terry respectfully disagrees with this line of

cases. Second, these cases all involve two party disputes and here, as stated above, neither

Alleged Debtors nor creditors of Alleged Debtors benefit from the dismissal of these cases.

## C.    Special Circumstances Exception

50.    Additionally, courts in this district have found that even if the technical

requirements of Section 303 have not been met, *e.g.* numerosity, the Court does not have to grant

the Motion to Dismiss.[14]    Cases in this district have "established a 'special circumstances'

exception to the requirements of Section 303 when Alleged Debtors have participated in

fraudulent transfers and prepetition preferential payments.  *In re Smith,* 437 B.R 817, 825

(Bankr. N.D. Tex. 2010) (finding the establishment of a spendthrift Cook Island trust and the

transfer of the majority of Alleged Debtors' assets to the trust to keep assets outside the hands of

creditors suggested the application of the "special circumstances exception"); *Moss*, 249 B.R. at

424 (exception to one of the technical requirements of § 303 exists when there is fraud, trick,

artifice or scam by an alleged debtor, including fraudulent conveyances and preferential

transfers); *In re Norris Bros. Lumber Co., Inc*., 133 B.R. 599, 609 (Bankr. N.D. Tex. 1991).

51.    The uneconomic changes to the Sub-Advisory Agreement and the Shared

Services Agreement, the Note Transfer, the attempted transfer of the Management Contract, and

other transfers for less than reasonably equivalent value are clear indications that Alleged

Debtors have engaged in a series of fraudulent transfers, fraud, artifice and trick.  Therefore, in

the event this Court finds, for the purposes of Section 303 of the Bankruptcy Code, that there are

more than 12 creditors, the special circumstances exception to Section 303 is applicable.

---

[14] While the "special circumstances" exception has been applied to the technical requirements of Section 303(b) of the Bankruptcy Code, Judge Houser has stated that this special exception is applicable to other technical requirements of Section 303. *See In re Moss*, 249 B.R. 411, 424 (Bankr. N.D. Tex. 2000) ("If an exception to one of the technical requirements of 11 U.S.C.S. § 303(b) exists when there is fraud, trick, artifice or scam by an alleged debtor, there is no logical reason why that exception should not be available to avoid dismissal of an involuntary petition on other technical grounds").

### D.      The Court Should Not Award Attorneys' Fees or Damages

52.      11 U.S.C. § 303(i) provides that if a bankruptcy court dismisses an involuntary petition, other than on consent of all petitioners and the debtor, the court may grant judgment (1) against the petitioners and in favor of the debtor for (a) costs; or (b) a reasonable attorney's fee; or (2) against any particular petitioner that filed the petition in bad faith for any damages proximately caused by such filing or punitive damages." *In re Commonwealth Sec. Corp.*, No. 06-30746-SGJ7, 2007 Bankr. LEXIS 312, *18 (Bankr. N.D. Tex. Jan. 25, 2007).   While Mr. Terry does not believe these Cases should be dismissed, in the event the Court finds dismissal is proper, the award of attorneys' fees or damages is improper given the totality of the circumstances.

### 1.      <u>Costs and Attorneys' Fees Section 303(i)(1)</u>

53.      "A judgment under 11 U.S.C.S. § 303(i) is not by any means mandatory, but rather lies within the sound discretion of the court." *In re Commonwealth Sec. Corp.*, 2007 Bankr. LEXIS 312 at *18 (noting the presumption of good faith and "totality of the circumstances" approach with respect to Section 303(i)).   *See also In re Synergistic Tech.*, No. 07-31733-SGJ-7, 2007 LEXIS 2660, *16 (Bankr. N.D. Tex. Aug. 6, 2007) (collecting cases).  This Court has found that there is no presumption "one way or another" related to costs and attorneys' fees under Section 303(i)(1)." *Id.* at 16.  Rather, courts "look at the totality of the circumstances." *Id.* at 16.

54.      Here, the totality of the circumstances reflects that Mr. Terry exercised diligence and judgment when filing these Cases.  During post-judgment discovery, Mr. Terry obtained evidence that indicated Alleged Debtors were attempting to systematically dismantle Alleged Debtors through the transfer of the assets and the valuable Management Contracts for less than

the reasonably equivalent value. Alleged Debtors submitted sworn statements evidencing that Alleged Debtors lacked more than 12 creditors and consistently represented in open court that Alleged Debtors are net cash flow negative or that collecting the Judgment would be akin to getting "blood from a turnip." In the event the Court finds dismissal is proper, the Court should not award attorneys' fees and expenses in favor of Alleged Debtors.

## 2.     These Cases Were Not Filed In Bad Faith And Damages Are Improper

55.    Mr. Terry's motives and actions demonstrate that he did not file these Cases in bad faith and, therefore, damages should not be awarded pursuant to Section 303(i)(2). Mr. Terry was forced to seek the protection of the bankruptcy court to prevent the systematic dismantling of Alleged Debtors. Alleged Debtors have fraudulently transferred the Note for insufficient consideration, if any, and, if this case is dismissed or an order for relief is not entered, Alleged Debtors will continue to transfer value to affiliates and outside of creditors' reach. Alleged Debtors have made clear they have no intention and now, by virtue of a series of uneconomic transactions and fraudulent transfers, have no ability to pay the Judgment.

56.    This Court has adopted the "presumption that the petitioning creditors acted in good faith in filing an involuntary petition, and that Alleged Debtors then have a burden of proving bad faith by a preponderance of the evidence." *In re Synergistic Tech.*, No. 07-31733-SGJ-7, 2007 LEXIS 2660, *16 (Bankr. N.D. Tex. Aug. 6, 2007) (collecting cases). As this court has noted, bad faith is examined based on the "totality of the circumstances here -- considering such things as actions, *motives and objectives* of the parties." *Id.* at *19 (emphasis original).

57.    Alleged Debtors seem to argue that Mr. Terry's alleged bad faith stems from his alleged lack of diligence related to the number of creditors of Alleged Debtors and the alleged use of the Involuntary Petitions as a litigation tactic. However, as this Court noted, "Sometimes

forum shopping is, frankly, fine.  It is done all the time.  People file bankruptcy to stop foreclosure proceedings.  Companies like Texaco file bankruptcy to avoid the appellate process which they cannot afford to wage.  Companies or petitioning creditors file to accomplish a more orderly, supervised liquidation of the company than might be accomplished outside the bankruptcy court."  *Id. at* *20.  When he filed these cases, Mr. Terry wanted the orderly liquidation of Alleged Debtors for the benefit of all creditors rather than the cannibalization of the Alleged Debtors by insiders and affiliates.

**3.    Mr. Terry Should Not Be Required To Post A Bond**

58.    On February 16, 2018, the Court entered the Order Granting Motion to Modify 11 U.S.C § 303(f) and Impose 11 U.S.C § 363 [Case No. 16-30265, Docket No. 29] and on February 20, 2018, the Court entered the Order Granting Motion to Modify 11 U.S.C § 303(f) and Impose 11 U.S.C § 363 [Case No. 16-30264, Docket No. 31] (collectively, the "303(f) Orders").  The 303(f) Orders state that Mr. Terry is not required to file a bond pursuant to Sections 303(e) and (i) of the Bankruptcy Code.  To the extent the Court elects to reexamine the necessity for a bond, such bond should not be required to be filed, as attorneys' fees and damages should not be awarded under Section 303(i) of the Bankruptcy Code and Section 303(e) expressly states "the purpose of a bond is to indemnify the debtor from an allowance of fees, costs and damages that the court may award under § 303(i)."  *In re Apollo Health St., Inc*., No. 11-22970, 2011 Bankr. LEXIS 1978, *6 (Bankr. May 23, 2011).

59.    Section 303(e) contains a bonding mechanism to discourage frivolous petitions, as well as more dangerous, spiteful petitions, based on desire to embarrass debtor or to put debtor out of business without good cause.  *See In re Ransom Group Investors I, LP,* 423 B.R. 556, 558 (Bankr. M.D. Fla. 2009)(citing Section 303(e)'s legislative history);  *See also McMillian v.*

*Maestri (In re McMillian)*, 543 B.R. 808, 817 (Bankr. N.D. 2016).  "Petitioning creditors in involuntary cases should not be routinely required to post a bond upon Alleged Debtors' request, however, because the Bankruptcy Code does not impose a mandatory bond requirement." *Ransom Group Investors I,* 423 B.R. at 558.

60.     Section 303(e) provides only that the Court "may" require the petitioning creditors to post a bond, and that such a requirement should only be imposed upon the Court's finding of 'cause.'"  *Pkye v. Funnel Science Internet Mktg. LLC (In re Funnel Science Internet Mktg),* 551 B.R. 262, 273-274 (E.D. Tex. 2016).  Here, it is clear there is no "cause" to require a bond pursuant to Section 303(e) of the Bankruptcy Code, as the filing of the Involuntary Petitions was not frivolous or spiteful.  Therefore, the Court should not elect to require Mr. Terry to file a bond.

## IV.     <u>RESERVATION OF RIGHTS</u>

61.     Mr. Terry reserves all rights applicable under the Federal Rules of Bankruptcy Rules, the Local Rules for the Bankruptcy Court for the Northern District of Texas, the Bankruptcy Code, and applicable law, including the right to amend or supplement the Objection prior to any hearing to consider the Motion to Dismiss.

## V.     <u>CONCLUSION</u>

62.     It is clear this matter needs the oversight of the Bankruptcy Court.  This case involves more than a mere two-party dispute.  It involves numerous creditors who will not recover the amounts owed to them, absent this Court's intervention.  Additionally, the technical requirements of Section 303(b) of the Bankruptcy Code have been met.  To the extent the Court finds there are 12 or more creditors, the special circumstances exception to 303 is applicable, as

Alleged Debtors have engaged in a fraudulent and systematic destruction of Alleged Debtors to prevent creditors from collecting from the Alleged Debtors.

## VI.    **PRAYER**

Mr. Terry respectfully requests this Court to:  (i) deny the Motion to Dismiss; and (ii) grant Mr. Terry such other and further relief to which he may be justly entitled, both at law and in equity.

**DATED:  March 5, 2018.**

Respectfully submitted,

**WINSTEAD PC**
500 Winstead Building
2728 N. Harwood Street
Dallas, Texas  75201
(214) 745-5400 (Phone)
(214) 745-5390 (Facsimile)
e-mail:  rpatel@winstead.com
e-mail:  achiarello@winstead.com

By:____*/s/ Rakhee V. Patel*____
Rakhee V. Patel – SBT # 00797213
Annmarie Chiarello – SBT # 24097496

**ATTORNEYS FOR JOSHUA N. TERRY,
PETITIONING CREDITOR**

-and-

BRIAN P. SHAW
State Bar No.  24053473
shaw@clousedunn.com
**CLOUSE DUNN LLP**
1201 Elm Street, Suite 5200
Dallas, Texas 75270-2142
Telephone:  (214) 220-3888
Facsimile:   (214) 220-3833

**ATTORNEYS FOR JOSHUA N. TERRY,
PETITIONING CREDITOR**

## CERTIFICATE OF SERVICE

The undersigned certifies that on March 5, 2018, a true and correct copy of the foregoing Motion will be electronically mailed to the parties that are registered or otherwise entitled to receive electronic notices in this case pursuant to the Electronic Filing Procedures in this District.

*/s/ Annmarie Chiarello*
One of Counsel