Rakhee V. Patel – SBT #00797213
Annmarie Chiarello – SBT #24097496
**WINSTEAD PC**
500 Winstead Building
2728 N. Harwood Street
Dallas, Texas 75201
Telephone: (214) 745-5400
Facsimile: (214) 745-5390
Email: rpatel@winstead.com
Email: achiarello@winstead.com

BRIAN P. SHAW
State Bar No. – 24053473
shaw@clousedunn.com
**CLOUSE DUNN LLP**
1201 Elm Street, Suite 5200
Dallas, Texas 75270-2142
Telephone: (214) 220-3888
Facsimile:  (214) 220-3833

**ATTORNEYS FOR JOSHUA N. TERRY,
PETITIONING CREDITOR**

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE NORTHERN DISTRICT OF TEXAS
## DALLAS DIVISION

| | | |
|---|---|---|
| IN RE: | § | Case No. 18-30264- SGJ7 |
| | § | |
| ACIS CAPITAL MANAGEMENT, L.P., | § | Chapter 7 |
| | § | |
| ALLEGED DEBTOR. | § | |
| | § | |

---

| | | |
|---|---|---|
| IN RE: | § | Case No. 18-30265-SGJ7 |
| | § | |
| ACIS CAPITAL MANAGEMENT GP, | § | Chapter 7 |
| L.L.C., | § | |
| | § | |
| ALLEGED DEBTOR. | § | |

## PETITIONING CREDITOR JOSHUA N. TERRY'S (I) AMENDED EMERGENCY MOTION TO COMPEL DEPOSITION FROM JAMES DONDERO AND, (II) IN THE ALTERNATIVE, MOTION TO STRIKE

**BY SEPARATE MOTION, THE MOVANT SEEKS TO HAVE THIS MOTION HEARD ON AN EMERGENCY BASIS.  IF THE COURT GRANTS THE REQUESTED EMERGENCY RELIEF, THE PARTIES WILL BE NOTIFIED ACCORDINGLY.  AN EMERGENCY HEARING MAY AFFECT THE RESPONSE DEADLINES.**

---

PETITIONING CREDITOR JOSHUA N. TERRY'S (I) AMENDED EMERGENCY MOTION TO
COMPEL DEPOSITION FROM JAMES DONDERO, AND (II) IN THE ALTERNATIVE, MOTION TO
STRIKE

PAGE 1 OF 26

**TO THE HONORABLE STACEY G.C. JERNIGAN, UNITED STATES BANKRUPTCY COURT JUDGE:**

### I.    SUMMARY AND OVERVIEW OF RELIEF REQUESTED

1.      Joshua N. Terry ("Mr. Terry") seeks to compel Mr. Dondero ("Mr. Dondero") to appear to testify at a deposition pursuant to the Notice of Deposition of James Dondero (the "Dondero Notice") and the Notice of Deposition of Acis Capital Management, L.P. and Acis Capital Management, GP, LLC (the "Corporate Representative Notice," together with the Dondero Notice, the "Notices"), which Mr. Terry served on or about February 27, 2018.  A copy of the Dondero Notice is attached hereto as **Exhibit "A."**  A copy of the Corporate Representative Notice is attached hereto as **Exhibit "B."**  Mr. Dondero failed to appear at the deposition for which notice was provided by the Notices.  Mr. Dondero is obligated to provide the requested information to Mr. Terry pursuant to Federal Rules of Civil Procedure ("FRCP") 30 and 37 and Federal Rules of Bankruptcy Procedure ("FRBP") 7030 and 7037, made applicable by FRBP 1018.

2.      Alternatively, if Highland Capital Management L.P. ("Highland") employees are truly the only parties who can testify regarding these cases then the *Joint Motion of Acis Capital Management, L.P. and Acis Capital Management GP, LLC to Dismiss Involuntary Petitions and Request for Award of Fees, Costs, and Damages* [Case No. 18-30264, Docket No. 8, Case No. 18-30265, Docket No. 8] (the "Motion to Dismiss") and the *Joint Answer of Acis Capital Management, L.P. and Acis Capital Management GP, LLC to Involuntary Bankruptcy Petitions Notwithstanding Motion to Dismiss* [Case No. 18-30264, Docket No. 34, Case No. 18-30265, Docket No. 33] (the "Answer") should be struck because Highland lacks standing and authority (as discussed in greater detail below) to prosecute the Motion to Dismiss and Answer. Highland

_____

**PETITIONING CREDITOR JOSHUA N. TERRY'S (I) AMENDED EMERGENCY MOTION TO COMPEL DEPOSITION FROM JAMES DONDERO, AND (II) IN THE ALTERNATIVE, MOTION TO STRIKE**

is a creditor herein and recipient of preferential payments and fraudulent transfers. Highland should not be allowed to control the direction of these cases.

## II.     JURISDICTION AND VENUE

3.      This Court has jurisdiction to consider this matter pursuant to 28 U.S.C. §§ 157 and 1334.  This is a core proceeding pursuant to 28 U.S.C. § 157(b).  Venue is proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

## III.     INTRODUCTION

4.      Nothing substantive happens at Acis Capital Management, L.P. ("Acis LP") and Acis Capital Management GP, LLC ("Acis GP," together, with Acis LP, the "Alleged Debtors" or "Acis") or Highland without Mr. Dondero's authorization – he controls it all.

5.      Mr. Terry respectfully moves this Court for an order compelling Mr. Dondero to comply with the Notices and appear for a deposition on or about March 15, 2018.  The Notices were lawfully issued; service was accepted by Acis and Mr. Dondero through counsel, McKool Smith, P.C. and Cole Schotz, P.C.  The Dondero Notice stated the deposition was to be taken at the offices of McKool Smith, 300 Crescent Court, Suite 1500, Dallas, Texas 75201, on March 8, 2017, beginning at 9:00 a.m., before a certified court reporter, and continue day to day until completed.  The Corporate Representative Notice stated the deposition was to be taken at the offices of McKool Smith, 300 Crescent Court, Suite 1500, Dallas, Texas 75201, on March 7, 2017, beginning at 9:00 a.m., before a certified court reporter, and continue day to day until completed.  Counsel for the Alleged Debtors and Mr. Dondero advised on March 6, 2018 that Mr. Dondero would not appear for the deposition as required by the Dondero Notice.  The Alleged Debtors filed the *Motion for Protective Order and/or to Quash the Deposition of James*

---

**PETITIONING CREDITOR JOSHUA N. TERRY'S (I) AMENDED EMERGENCY MOTION TO COMPEL DEPOSITION FROM JAMES DONDERO, AND (II) IN THE ALTERNATIVE, MOTION TO STRIKE**

*Dondero* [Case No. 18-30264, Docket No. 36, Case No. 18-30265, Docket No. 35] (the "Protective Order Motion"), but failed to seek a hearing and receive an order before the time for appearance.

6.      Additionally, the corporate representative, Isaac Leventon ("Mr. Leventon"), present pursuant to the Corporate Representative Notice, was not able to testify as to many of the subject areas designated by the Corporate Representative Notice.[1]  Mr. Terry believes that Mr. Dondero has personal knowledge of the subject areas designated by the Corporate Representative Notice, by virtue as his role as an officer of Acis, including the subject areas which Mr. Leventon lacks personal knowledge.  Mr. Terry respectfully requests that the Court issue an order requiring that Mr. Dondero fully and immediately comply with the Notices and appear for a deposition on March 15, 2018.

7.      Alternatively, if the Protective Order Motion is to be believed and Mr. Dondero truly lacks any unique knowledge relevant to the issues at hand, the Motion to Dismiss and the Answer should be struck because Highland, a party that lacks independent standing or authority, is directing the response to the Involuntary Petitions (as hereinafter defined), all for its own benefit, to avoid preference and fraudulent transfer exposure and to the detriment of the creditors.

## IV.   FACTUAL BACKGROUND

### A.    State Court Litigation And Final Award

8.      Highland commenced litigation against Mr. Terry on or about September 8, 2016, in the 162nd Judicial District Court of Texas (the "162nd Action").  Mr. Terry subsequently

---

**PETITIONING CREDITOR JOSHUA N. TERRY'S (I) AMENDED EMERGENCY MOTION TO COMPEL DEPOSITION FROM JAMES DONDERO, AND (II) IN THE ALTERNATIVE, MOTION TO STRIKE**

**PAGE 4 OF 26**

moved to compel arbitration, which request was granted.  Accordingly, the 162nd Action was stayed pending resolution of the arbitration on the merits.

9.      On October 20, 2017, a JAMS arbitration panel made up of former or retired judges (the "<u>Arbitration</u>") entered a final award in favor of Mr. Terry in the amount of $7,949,749.15 (the "<u>Final Award</u>") against the Alleged Debtors.

10.     On December 18, 2017, the Final Award was reduced to a final judgment by the 44th Judicial District Court of Dallas County, Texas, and the Final Judgment was entered in Cause No. DC-17-15244 (the "<u>Judgment</u>").

**B.      Transfer Of Note**

11.     On November 3, 2017, Acis LP, Highland, and Highland CLO Management Ltd., a Cayman entity ("<u>Highland Cayman</u>"), entered into the Agreement for Assignment and Transfer of Promissory Note (the "<u>Note Transfer</u>").   Highland Cayman is an admitted affiliate of Highland.  The Note Transfer, among other things, transferred the $9.5 million promissory note by Highland in favor of Acis LP (the "<u>Note</u>") from Acis LP to Highland Cayman.  Acis LP received no or very little consideration for the Note Transfer.  Mr. Dondero signed the Note Transfer agreement on behalf of Acis and Highland Cayman.

**C.      Prevented Transfer Of Management Agreement**

12.     Additionally, the Note Transfer also purports to initiate the transfer of management contracts to Highland Cayman for the Collateralized Loan Obligations ("<u>CLOs</u>")

---

[1] Mr. Leventon is not an officer, manager, or employee of the Alleged Debtors, but rather Associate General Counsel for Highland Capital Management L.P. and it is hardly surprising that he has very limited personal knowledge of the Alleged Debtors.

---

**PETITIONING CREDITOR JOSHUA N. TERRY'S (I) AMENDED EMERGENCY MOTION TO COMPEL DEPOSITION FROM JAMES DONDERO, AND (II) IN THE ALTERNATIVE, MOTION TO STRIKE**

listed on Schedule A to a prior agreement (the "Management Contracts"). Again, Acis LP is to receive no consideration for transferring its most significant assets, the Management Contracts.

Upon information and belief, Acis LP did not, in fact, transfer the Management Contracts pursuant to the Note Transfer. Prior to the Court's ruling on the *Emergency Motion of Petitioning Creditor to Abrogate or Modify 11 U.S.C § 303(f), Prohibit Transfer of Assets, and Impose, Inter Alia, 11 U.S.C § 363* [Case No. 18-30264, Docket No. 3, Case No. 18-30265, Docket No. 3] (the "303(f) Motion"), Acis LP intended to transfer the Management Contracts to non-Acis Highland affiliates beginning on or before February 1, 2018, through a series of purported refinancing transactions. Based on the Courts ruling on the 303(f) Motion and the entry of the 303(f) Order (as herein after defined), Acis LP did not transfer the Management Contracts.

**D.    Additional Transfers**

13.    On October 24, 2017, a mere four days after the Final Award was entered, an employee of Highland and representative of Acis, Frank Waterhouse ("Mr. Waterhouse"), executed an agreement for Acis which reflects a sale of Acis's interest in its risk-retention fund, Acis Loan Funding, Ltd. ("Acis Loan Funding"). The transfer of Acis Loan Funding is part of Acis's larger scheme to denude Acis of its value to the detriment of all creditors.

14.    On October 27, 2017, Mr. Dondero signed an agreement transferring management of Acis Loan Funding from Acis to Highland HCF Advisor Ltd., a Cayman entity ("Highland Cayman 2"), for no consideration (the "Highland Cayman 2 Transfer").

**PETITIONING CREDITOR JOSHUA N. TERRY'S (I) AMENDED EMERGENCY MOTION TO COMPEL DEPOSITION FROM JAMES DONDERO, AND (II) IN THE ALTERNATIVE, MOTION TO STRIKE**

**PAGE 6 OF 26**

15.     On October 31, 2017 (11 days after the arbitration panel issued the Final Award), Mr. Dondero caused a filing in the Registry of the island nation of Guernsey.  In that filing, Acis Loan Funding was renamed "Highland CLO Funding, Ltd."

16.     On December 19, 2017, Acis transferred over $5 million of additional assets to Highland CLO Holdings, Ltd., another Cayman entity ("Highland Cayman 3"), purportedly in exchange for forgiveness of a receivable.

17.     Also on December 19, 2017, the partners of Acis LP transferred their partnership interest to yet another Cayman entity, Neutra, Ltd. ("Neutra").

**E.      Amendment To Sub-Advisory Agreement And Shared Services Agreement**

18.     Alleged Debtors have made uneconomic modifications to the sub-advisory and shared services agreements by virtue of the Third Amended and Restated Sub-Advisory Agreement by and between Acis Capital Management, L.P. and Highland Capital Management, L.P., dated March 17, 2017 (the "Sub-Advisory Agreement"), and the Fourth Amended and Restated Shared Services Agreement by and between Acis Capital Management, L.P. and Highland Capital Management, L.P., dated March 17, 2017 (the "Shared Services Agreement"), for the sole benefit of Highland and to the detriment of Alleged Debtors' cash flow, and therefore the Alleged Debtors' creditors.  The amendments to the Sub-Advisory Agreement and the Shared Services Agreement were executed by Mr. Dondero for both Acis, on one hand, and Highland on the other hand (as he signed for both entities).

19.     As the Court may recall from the hearings on the 303(f) Motion, Acis LP contracts with Highland to provide services necessary for the fulfillment of the Management Contracts through both the Sub-Advisory Agreement and the Shared Services Agreement.  Since

_____

**PETITIONING CREDITOR JOSHUA N. TERRY'S (I) AMENDED EMERGENCY MOTION TO COMPEL DEPOSITION FROM JAMES DONDERO, AND (II) IN THE ALTERNATIVE, MOTION TO STRIKE**

the litigation between Acis and Mr. Terry commenced, the amount of fees payable to Highland

pursuant to the Sub-Advisory Agreement and the Shared Services Agreement were dramatically

increased to the benefit of Highland and to the detriment of Acis and its creditors.  The increase

in the amounts payable to Highland under the Sub-Advisory Agreement and the Shared Services

Agreement effectively rendered the agreements uneconomical for Acis.

20.     The Sub-Advisory Agreement has been amended from time to time.  The first

iteration of the sub-advisory agreement, the Sub-Advisory Agreement by and between Acis LP

and Highland, dated January 1, 2011 (the "Original Sub-Advisory Agreement"), provided that

Acis LP was to pay Highland certain amounts for assisting Acis LP with the advisory services

required by the Management Contract.  Under the Original Sub-Advisory Agreement, Acis LP

paid Highland 5 bps of the management fees received by Acis LP pursuant to the various

Management Contracts for the sub-advisory services provided to Acis LP by Highland.

21.     On March 17, 2017, the date of the most recent amendment to the Original Sub-

Advisory Agreement, the Sub-Advisory Agreement was modified to increase the sub-advisory

fee to 20 bps.  The four-fold increase in the sub-advisory fees via the amendment to the Sub-

Advisory Agreement siphons off the funds of Acis LP and effectively gifts the additional

amounts to Highland.  Mr. Dondero consented to the increased sub-advisory fee on behalf of

both Acis LP and Highland.  Mr. Dondero signed the Sub-Advisory Agreement as president of

Highland's general partner, Strand Advisors, Inc., and as president of Acis GP, the general

partner of Acis LP.

22.     The Shared Services Agreement has also been amended from time to time.  The

first iteration of the shared services agreement, the Shared Services Agreement by and between

_____

**PETITIONING CREDITOR JOSHUA N. TERRY'S (I) AMENDED EMERGENCY MOTION TO
COMPEL DEPOSITION FROM JAMES DONDERO, AND (II) IN THE ALTERNATIVE, MOTION TO
STRIKE**

Acis LP and Highland, dated January 1, 2011 (the "Original Shared Services Agreement"), provided that Acis LP was to pay Highland certain amounts for providing Acis LP with the back-office services such as bookkeeping, compliance, human resources and marketing.  Under the Original Shared Services Agreement, Acis LP reimbursed Highland for amounts directly attributable to Acis LP for these services.

23.     On March 17, 2017, the date of the most recent amendment to the Original Shared Services Agreement, the Shared Services Agreement was modified to increase the fees payable under the Shared Services Agreement from a flow-through to 15 bps of the management fees received by Acis LP pursuant to the various Management Contracts.  The increase in the shared services fees via the amendment to the Shared Services Agreement, like the increase in the sub-advisory fees, siphons off the funds of Acis LP and effectively gifts the additional amounts to Highland.  Mr. Dondero consented to the increased shared services fee on behalf of both Acis LP and Highland.  Mr. Dondero signed the Shared Services Agreement as president of Highland's general partner, Strand Advisors, Inc., and as president of Acis GP, the general partner of Acis LP.

**F.     Mr. Dondero's Role At Acis**

24.     Pursuant to the Consent of the Sole Member of Acis Capital Management GP, LLC, dated June 10, 2016 (the "Consent"), the only officers of Acis GP are Mr. Dondero, as President, and Mr. Waterhouse, as Treasurer.  A true and correct copy of the Consent is attached hereto as **Exhibit "C."**

25.     On November 3, 2017, Acis LP transferred $971,958.57 to Highland (the "November 3 Transfer".  A copy of the email confirming the November 3 Transfer is attached

---

**PETITIONING CREDITOR JOSHUA N. TERRY'S (I) AMENDED EMERGENCY MOTION TO COMPEL DEPOSITION FROM JAMES DONDERO, AND (II) IN THE ALTERNATIVE, MOTION TO STRIKE**

hereto as **Exhibit "D."**  To date, no documents have been produced to indicate who authorized the transfer; however, logic dictates that Mr. Dondero likely has signatory authority for Acis's bank accounts since he has signed every check in the last two years and is President of Acis.

**G.     Bankruptcy Case**

26.     On January 30, 2018 (the "Petition Date"), Mr. Terry, as petitioning creditor, filed the *Involuntary Petition Against a Non-Individual* [Case No. 18-30264, Docket No. 1] (the "Acis LP Petition") against Acis LP.

27.     On the Petition Date, Mr. Terry, as petitioning creditor, filed *the Involuntary Petition Against a Non-Individual* [Case No. 18-30265, Docket No. 1] (the "Acis GP Petition," together with the Acis LP Petition, the "Involuntary Petitions") against Acis GP.

28.     On January 31, 2108, the Alleged Debtors filed Motion to Dismiss.

29.     On January 31, 2018, the Alleged Debtors filed the *Notice of List of Creditors Pursuant to Fed. R. Bankr. P. 1003(b)* [Case No. 18-30264, Docket No. 7, Case No. 18-30265, Docket No. 7] (the "First Creditor List") asserting that the Alleged Debtors had 18 creditors.  Mr. Dondero signed the First Creditor List.

30.     On February 16, 2018, the Court entered the *Order Granting Motion to Modify 11 U.S.C. § 303(F) and Impose 11 U.S.C. § 363* [Case No. 18-30264, Docket No. 31, Case No. 18-30265, Docket No. 29] (the "303(f) Order").[2]

31.     On February 26, 2018, the Court entered the *Agreed Scheduling Order Regarding Discovery and Hearings on: (I) Joint Motion of Acis Capital Management, L.P. and Acis Capital Management GP, L.L.C. to Dismiss Involuntary Petitions and Request for Award of Fees, Costs,*

---

[2] The Court entered the 303(f) Order in Case No. 18-30265 on February 20, 2018.

**PETITIONING CREDITOR JOSHUA N. TERRY'S (I) AMENDED EMERGENCY MOTION TO COMPEL DEPOSITION FROM JAMES DONDERO, AND (II) IN THE ALTERNATIVE, MOTION TO STRIKE**

**PAGE 10 OF 26**

*and Damages and (II) Involuntary Petitions* [Case No. 18-30264, Docket No. 31, Case No. 18-30265, Docket No. 31] (the "Scheduling Order").  The Scheduling Order sets a hearing on the Motion to Dismiss and Involuntary Petitions for March 20, 2018.  The Scheduling Order provides that all party, insider, or affiliate discovery shall be complete by March 9, 2018, and all non-party discovery shall be complete by March 15, 2018.

32.     On February 27, 2017, Mr. Terry served the Notices on counsel for the Alleged Debtors and Mr. Dondero, Gary Cruciani and Michael P. Fritz of McKool Smith, P.C. and Michael D. Warner and Benjamin L. Wallen of Cole Schotz, P.C.

33.     On March 2, 2018, Mr. Cruciani transmitted a letter to Rakhee V. Patel, counsel for Mr. Terry, regarding Mr. Dondero's deposition (the "March 2 Cruciani Letter").  The March 2 Cruciani Letter asserted many of the arguments contained in the Protective Order Motion described below and requested Ms. Patel to immediately withdraw the Dondero Notice.  A true and correct copy of the March 2 Cruciani Letter is attached hereto as **Exhibit "E."**

34.     On March 2, 2018, Ms. Patel transmitted a letter to Mr. Cruciani in response to the March 2 Cruciani Letter (the "March 2 Patel Letter").  The March 2 Patel Letter states that Ms. Patel sought to depose Mr. Dondero on topics of which he had personal knowledge, including Mr. Dondero's capacity as the ultimate authority at Acis, documents signed by Mr. Dondero, and  the First Creditor List signed by Mr. Dondero.  A true and correct copy of the March 2 Patel Letter is attached hereto as **Exhibit "F."**

35.     On March 5, 2018, the Alleged Debtors filed the Answer.

36.     On March 5, 2018, the Alleged Debtors filed the Protective Order Motion. The Protective Order Motion broadly alleged that Mr. Dondero is an "apex" deponent, and thus he is

---

**PETITIONING CREDITOR JOSHUA N. TERRY'S (I) AMENDED EMERGENCY MOTION TO COMPEL DEPOSITION FROM JAMES DONDERO, AND (II) IN THE ALTERNATIVE, MOTION TO STRIKE**

**PAGE 11 OF 26**

too important to be deposed in this matter. The Protective Order Motion also states, "Mr. Dondero simply has no unique personal knowledge germane to the issues in Acis' motion to dismiss or the trial on the involuntary petition."  "Mr. Dondero is not even involved in the day-to-day management of Acis, and he has no specific knowledge regarding payments to Acis' creditors— or even who those creditors may be."  The Alleged Debtors further stated that "Mr. Dondero may possess some personal knowledge relating to the noticed topics; it would be duplicative of the knowledge possessed by Mr. [Issac] Leventon."  The Protective Order Motion has not been set for hearing and an order related to the Protective Order Motion has not been entered.

37.     On March 6, 2018, Mr. Cruciani transmitted a letter to Rakhee V. Patel, counsel for Mr. Terry, regarding Mr. Dondero's deposition (the "<u>March 6 Letter</u>").  The Letter states "This letter is to inform you that Mr. Dondero will not be appearing for a deposition on that date, or any other date, absent a ruling from the Court requiring otherwise."  A true and correct copy of the March 2 Letter is attached hereto as **Exhibit "G."**

38.     On March 7, 2018, Mr. Terry took the deposition of the Alleged Debtors' designated corporate representative Mr. Leventon (the "<u>Alleged Corporate Representative Deposition</u>"). Mr. Leventon is not a manager or employee of the Alleged Debtors, but merely the Assistant General Counsel for Highland and he has no official or even unofficial capacity with the Alleged Debtors. Mr. Leventon stated at his deposition that he was unfamiliar with the negations related to the Note Transfer.   Mr. Leventon also testified that he did not know who the ultimate beneficial owners of Neutra are.  Neutra is the limited partner of Acis LP.  The relevant portion of the Alleged Corporate Representative Deposition is attached hereto as **Exhibit "H."**

---

**PETITIONING CREDITOR JOSHUA N. TERRY'S (I) AMENDED EMERGENCY MOTION TO COMPEL DEPOSITION FROM JAMES DONDERO, AND (II) IN THE ALTERNATIVE, MOTION TO STRIKE**

**PAGE 12 OF 26**

39.    On March 8, 2018, based on the March 6 Letter, the deposition of Mr. Dondero did not occur.

40.    On March 2, 2018, March 6, 2018 and March 9, 2018, the undersigned counsel for Mr. Terry, Rakhee V. Patel, conferred with counsel for Acis and Mr. Dondero, Michael Fritz and Gary Cruciani, in a good-faith effort to resolve the dispute without court action, as required by FRCP 37(a)(1) and FRBP 7037(a)(1), and as shown in the attached certificate of conference. As evidenced by the March 2 Patel Letter, the parties discussed the necessity for Mr. Dondero's deposition, but the parties were unable to resolve the dispute.

## V.    ARGUMENT AND AUTHORITIES

41.    FRBP 7026(b)(1) and FRCP 26(b)(1) provide that discovery may be obtained about any matter that is not privileged and that is both relevant to any party's claim or defense and proportional to the needs of the case.

42.    FRBP 7037(a) and FRCP 37(a) "governs motions to compel discovery but does not, by its terms, address a motion to compel a party or a party's officer, director, or managing agent to appear for a deposition." *Robinson v. Dall. Cty. Cmty. Coll. Dist.*, No. 3:14-CV-4187-D (BN), 2016 U.S. Dist. LEXIS 47815, at *2 (N.D. Tex. Feb. 18, 2006) (citing Fed. R. Civ. P. 37(a)).  Under Rule 37(d)(1)(A), "[t]he court where the action is pending may, on motion, order sanctions if: (i) a party or a party's officer, director, or managing agent . . . fails, after being served with proper notice, to appear for that person's deposition." Fed. R. Civ. P. 37(d)(1)(A)(i). Here, Mr. Dondero, the President of Acis GP and one of only two officers of Acis GP, failed to appear for his March 8, 2018 deposition.

_____

**PETITIONING CREDITOR JOSHUA N. TERRY'S (I) AMENDED EMERGENCY MOTION TO COMPEL DEPOSITION FROM JAMES DONDERO, AND (II) IN THE ALTERNATIVE, MOTION TO STRIKE**

**PAGE 13 OF 26**

43.     A witness who is a party or party representative need not be subpoenaed for a deposition.  7 J. Moore et al., *Moore's Federal Practice* § 30.03[2] (2013).  A proper deposition notice is sufficient to compel the party witness's attendance.  *Id*.  A party is responsible for ensuring that its representative attends the deposition.  *Id*.  Thus, the corporation is responsible for producing its officers, managing agents, and directors if notice is given, and sanctions may be imposed against the corporation if they fail to appear.  8A Charles Alan Wright, Arthur R. Miller & Richard L. Marcus, *Federal Practice and Procedure* § 2103 (3d. 2014).

44.     It is well-settled that the filing of a motion for protective order does not automatically operate to stay a deposition or other discovery.  *Hepperle v. Johnston*, 590 F.2d 609, 613 (5th Cir. 1979).  Rather, a deponent is relieved of his or her duty to appear only if a protective order is granted before the scheduled deposition.  *King v. Fidelity Nat. Bank*, 712 F.2d 188, 191 (5th Cir. 1983).  "Under the Rules, it is for the court, not the deponent or his counsel, to relieve him of the duty to appear."  *Pioche Mines Consolidated, Inc. v. Dolman*, 333 F.2d 257, 269 (9th Cir. 1964).

45.     The deposition of Mr. Dondero is necessary for Mr. Terry's defense to the Motion to Dismiss and the prosecution of the Involuntary Petitions.  The deposition of Mr. Dondero is well within the scope of FRCP 26.  Mr. Dondero is the only party that can provide material information related to the Motion to Dismiss and Involuntary Petitions.  Mr. Dondero signed the Note Transfer on behalf of Acis and Highland.  Mr. Dondero consented to the increased sub-advisory and shared services fees on behalf of both Acis LP and Highland.  Mr. Dondero signed both the Sub-Advisory Agreement and Shared Services Agreement as president of Highland's general partner, Strand Advisors, Inc., and as president of Acis GP, the general partner of Acis

_____

**PETITIONING CREDITOR JOSHUA N. TERRY'S (I) AMENDED EMERGENCY MOTION TO COMPEL DEPOSITION FROM JAMES DONDERO, AND (II) IN THE ALTERNATIVE, MOTION TO STRIKE**

LP.  Mr. Dondero is the President of Acis GP. Mr. Dondero signed the First Creditor List.  Mr.

Dondero has intimate and unique knowledge related to the Alleged Debtors and their decision

making.

    46.    Indeed it is clear that Mr. Dondero is the ultimate decision maker related to the

Alleged Debtors – in fact that was the sworn testimony of Mr. Ellington on February 7, 2018.[3]

```
15   Q.   Mr. Dondero has ultimate authority at Highland, correct?
16   A.   At Highland, yes he does.
17   Q.   Mr. Dondero has ultimate authority as Acis, right?
18   A.   The way I understand it, yes.
19   Q.   All right.  Because he is the president of the general
20   partner of Acis?
21   A.   Correct.
```

```
7         THE COURT:  All right, you said that Mr. Dondero
8    basically acts as the manager of both entities -- both Acis
9    entities?
10        THE WITNESS:  Yes, as the -- as the president of the
11   GP, he effectuates what happens at the limited partnership.
12   So yes, that's true.
13        THE COURT:  Okay.  So he's the only -- he's the only
14   manager, essentially?
15        THE WITNESS:  Yes, of Acis --
16        THE COURT:  I know this isn't a corporation board and
17   officers and directors.  But he's essentially the only
18   manager?
19        THE WITNESS:  Correct.  That can effectuate the
20   actual signing or -- or movement around the documents,
21   correct.
```

    47.    Mr. Terry does not have to accept at face value, Mr. Dondero's declaration

wherein he claims he is not familiar with the day-to-day operations of Acis (as President of Acis

**PETITIONING CREDITOR JOSHUA N. TERRY'S (I) AMENDED EMERGENCY MOTION TO
COMPEL DEPOSITION FROM JAMES DONDERO, AND (II) IN THE ALTERNATIVE, MOTION TO
STRIKE**

**PAGE 15 OF 26**

GP, he should be and likely is now that the Involuntary Petitions were filed against Acis), Mr.

Dondero has information related to the numerous transactions outlined herein, along with others,

that are clearly outside the ordinary course of Acis' operations, constitute likely preferential or

fraudulent conveyances, and which he *alone* authorized.  Further, Mr. Dondero as the ultimate

decision-maker and an officer of Acis, can address why it is contesting the Involuntary Petitions,

why this is in Acis's creditors' best interests, and consistent with his fiduciary obligations and

how obvious conflicts of interest with Highland and Highland affiliate are being addressed in the

decision-making process. It is beyond reasonable dispute that Mr. Dondero should be compelled

to sit for a deposition – he is one of *the* most important witnesses in this case.

48.     Additionally, Mr. Leventon, the corporate representative produced by the Alleged

Debtors, did not have knowledge regarding material transactions related to the Motion to

Dismiss and Involuntary Petitions, including the November 3 Transfer and the Note Transfer.

Mr. Leventon is unaware of who is the ultimate beneficial owner of Neutra.  As Neutra is the

limited partner of Acis LP, this information is crucial for evaluating the insider status of various

individuals within the corporate structure.  Mr. Dondero, as president of Acis GP, is likely to

have unique personal knowledge as it relates to Neutra and the affiliates of the Alleged Debtors.

49.     Mr. Leventon was a defective and incomplete corporate representative for the

Alleged Debtors.  Mr. Leventon holds no office or title with Acis.  Mr. Leventon is an employee

of Highland.  In fact, he is employed by Highland, which is replete with conflicts of interest

related to the Involuntary Petitions, not least of which is the fact that Highland received in excess

of $23 million dollars from Acis in the two years prior to the Petition Date.  Furthermore,

---

[3] A copy of the referenced portions of the February 7, 2018 hearing transcript are attached hereto as **Exhibit "I."**

**PETITIONING CREDITOR JOSHUA N. TERRY'S (I) AMENDED EMERGENCY MOTION TO
COMPEL DEPOSITION FROM JAMES DONDERO, AND (II) IN THE ALTERNATIVE, MOTION TO
STRIKE**

Mr. Leventon repeatedly invoked the attorney-client privilege at his deposition, based on his capacity as counsel for Highland, which begs the question: Did Mr. Leventon testify in his capacity as counsel or a fact witness?  Further, one is left with the distinct impression that Highland, not the Alleged Debtors, was contesting the Involuntary Petitions, which is clearly inappropriate. Mr. Dondero is the only party who is an adequate corporate representative for Acis.

50.      The Alleged Debtors' argument — that Mr. Dondero as the President of Highland and Acis GP, Mr. Dondero is automatically exempt from deposition — greatly misconstrues the facts of the case at hand. *See* Hon. Iain D. Johnston, *Apex Witness Claim they are Two Big to Depose*, Litigation v. 41, 1 (Fall 2014).  First, Mr. Dondero has personal knowledge of the transactions and conduct at issue, as evidenced by Mr. Ellington's testimony and Mr. Dondero's signature on the vast majority of documents at issue, not at least of which includes a filing in this case, the First Creditor List. *See Gaedeke Holdings VII, Ltd. v. Mill*s, No. No. 3:15-mc-36-D-BN, 2015 U.S. Dist. LEXIS 72889, \*9 (N.D. Tex. June 5, 2015)(finding that an alleged apex deponent was not exempt from deposition because the alleged apex deponent had personal knowledge of the facts relevant to the deposition); *Robinson v. Nexion Health At Terrell, Inc.*, 312 F.R.D. 438, 443 (N.D. Tex. 2014) (Ordering deposition and noting that "[f]ederal courts permit the depositions of such 'apex executives' when conduct and knowledge at the highest levels of the corporation are relevant to the case."). Mr. Dondero's conduct and knowledge are most certainly relevant to this case – it is hard to imagine what could be more relevant.

51.      Moreover, Mr. Leventon was unable to testify as to subjects that Mr. Dondero has personal knowledge of, including the Note Transfer and the corporate structure of Acis. Mr.

---

**PETITIONING CREDITOR JOSHUA N. TERRY'S (I) AMENDED EMERGENCY MOTION TO COMPEL DEPOSITION FROM JAMES DONDERO, AND (II) IN THE ALTERNATIVE, MOTION TO STRIKE**

**PAGE 17 OF 26**

Terry is not asking the President of a multinational corporation to travel across the country for a minor personal injury matter for which she does not have personal knowledge; rather Mr. Terry is requesting the Court order Mr. Dondero to travel from his office located in the Crescent Court, to his counsel's office, located in the Crescent Court, to testify on behalf of Acis, which has no employees and of which Mr. Dondero is one of two officers.

52.     FRBP 7030 and FRCP 30 require Mr. Dondero to sit for a deposition, as he is the President and one of two officers of Acis GP.  As such, Mr. Dondero can be compelled to sit for a deposition.  Mr. Dondero's positions at the Alleged Debtors permit Mr. Terry to request Mr. Dondero's deposition through the transmission of the Notices.  Additionally, the Court is permitted to compel Mr. Dondero's deposition.

53.     Given, the transmission of the March 6 Letter and the filing of the Protective Order Motion do not relieve Mr. Dondero of his obligations to appear for a deposition as an officer and agent of the Alleged Debtors.  It is well-settled law in the Fifth Circuit that merely filing the Protective Order Motion does not relieve parties of their duty to appear for a properly noticed deposition.  *King v. Fidelity Nat. Bank*, 712 F.2d 188, 191 (5th Cir. 1983).  Therefore, Mr. Dondero should be compelled to appear at a deposition.

54.     Given the time and expense Mr. Terry incurred in compelling something as simple as Mr. Dondero's deposition, Mr. Terry requests the Court order Mr. Dondero to appear at the hearings on the Motion to Dismiss and Involuntary Petitions on March 20, 2018, at 9:30 a.m. (Central Standard Time), at the Bankruptcy Court for the Northern District of Texas, Dallas Division, 1100 Commerce Street, Room 1428 (Courtroom No. 1), Dallas, Texas 75242 until such time Mr. Dondero is released by the Court or the hearings are concluded. Mr. Terry should not

---

**PETITIONING CREDITOR JOSHUA N. TERRY'S (I) AMENDED EMERGENCY MOTION TO COMPEL DEPOSITION FROM JAMES DONDERO, AND (II) IN THE ALTERNATIVE, MOTION TO STRIKE**

**PAGE 18 OF 26**

have to do this all over again when Acis again improperly attempts to deny this Court relevant evidence at trial.

## VI.   ALTERNATIVE RELIEF, MOTION TO STRIKE

55.     At the Alleged Corporate Representative Deposition, Mr. Leventon testified that the people who could direct the legal defense of Acis LP are Scott Ellington ("Mr. Ellington"), Mr. Dondero, Mark Okada, and "nobody else I am aware of."[4] Mr. Leventon stated Mr. Ellington is the general counsel of Highland and Mr. Ellington has the ability to direct the legal defense of Acis LP via the Shared Services Agreement.[5] Mr. Leventon further testified that Mr. Ellington, general counsel of Highland, and Mr. Leventon act on behalf of Acis LP in connection with the involuntary bankruptcy filings.[6]   Mr. Leventon testified that he "didn't know" if Mr. Dondero makes any decisions with respect to these involuntary bankruptcies.[7] Finally, Mr. Leventon testified that Mr. Ellington, general counsel for Highland, authorized Mr. Leventon to fight the involuntary petitions saying:[8]

```
4     Q    From the time of these involuntary petitions and the
5   time that they were filed who makes the decisions on whether to
6   fight or whether to agree to the involuntary bankruptcy
7   petitions?
8              MR. CRUCIANI:  I am going to object as being
9   vague still, but go ahead.
10    A    I don't know if there is any -- I don't know what
11  consideration there has been of agreement.  I know that Mr.
12  Ellington has authorized me to fight these petitions.
```

[4] Exhibit H, p. 45
[5] Exhibit H, p. 45.
[6] Exhibit H, p. 129.
[7] Exhibit H, p. 129.

PETITIONING CREDITOR JOSHUA N. TERRY'S (I) AMENDED EMERGENCY MOTION TO
COMPEL DEPOSITION FROM JAMES DONDERO, AND (II) IN THE ALTERNATIVE, MOTION TO
STRIKE

PAGE 19 OF 26

56.    Mr. Leventon testified that Mr. Ellington, general counsel for Highland, directed Mr. Leventon to contest the Involuntary Petitions and this direction came from Mr. Ellington to Mr. Leventon based on his capacity as general counsel for Highland and pursuant to the Shared Services Agreement.[9] Mr. Leventon does not know "one way or another" if Mr. Ellington is authorized to direct these Involuntary Petitions based on Share Services Agreement or another document.[10] Mr. Leventon states that he acts on behalf of Acis in his capacity as subordinate of Mr. Ellington, general counsel for Highland, and under the Shared Services Agreement as Mr. Ellington "is my [Mr. Leventon's] boss and I follow his instructions."[11] Mr. Leventon testified that Mr. Dondero has the ability to direct what happens in these involuntary cases.[12] Finally, Mr. Leventon testified that Mr. Dondero has the ability to direct these involuntary cases.

57.    Mr. Dondero stated in the Declaration of James D. Dondero attached the Protective Order Motion (the "Dondero Declaration") that:

"I understand that Joshua N. Terry ("Terry") has claimed that I have unique knowledge regarding the facts surrounding the 18 creditors listed in Acis' 1003(b) list of creditors. Isaac Leventon ("Leventon"), who I understand is going to be deposed in this case, has the same, and likely more, personal knowledge regarding this issue than myself. I have reviewed the topics listed in Terry's 30(b)(6) deposition notice, and I do not have any unique personal knowledge of those topics. **Mr. Leventon has the same, and likely more, personal knowledge regarding these topics than myself. In fact, any knowledge that I have regarding these issues would have been learned from Mr. Leventon in the first instance.** While it is true that I have signed certain corporate documents on behalf of Acis, this is only because I am one of Acis' authorized signatories. And just because I sign a document does not mean that I have any unique personal knowledge of such document. Rather, such unique knowledge would reside with the individual Highland employees responsible for day-to-day preparation of such materials, including the Highland Legal Team, of which Mr. Leventon is a member."

---

[8] Exhibit H, p. 133.
[9] Exhibit H, p. 139.
[10] Exhibit H, p. 140.
[11] Exhibit H, p. 140-141.
[12] Exhibit H, p. 143.

---

**PETITIONING CREDITOR JOSHUA N. TERRY'S (I) AMENDED EMERGENCY MOTION TO COMPEL DEPOSITION FROM JAMES DONDERO, AND (II) IN THE ALTERNATIVE, MOTION TO STRIKE**

A true and correct copy of the Dondero Declaration is attached here to as **Exhibit "J."**

58.     It is well settled law that the only party that has standing to contest an involuntary

petition is the Alleged Debtor.

> Section § 303(d) of the Bankruptcy Code allows "a debtor… [to] file any answer to an involuntary petition." 11 U.S.C.S. § 303(d). It is well-established that a *creditor*, in contrast, does not have standing to contest a[n] [involuntary] bankruptcy filing. The filing of an involuntary petition is an adversarial proceeding between the filers and the debtor, which may contest the filing at a hearing. 11 U.S.C.S. § 303. Congress chose to preclude creditors from opposing involuntary petitions because such opposition invariably was to **protect a preference or to gain some unfair advantage at the expense of other creditors**, contrary to the policy of providing equitable distribution of assets among all creditors.

*In re QDN, LLC*, 363 Fed. Appx. 873, 874 (3rd Cir. 2010)(emphasis added)(internal citations omitted).

Furthermore, *QDN* concerned a creditor who was contesting an involuntary petition for its own

benefit, to protect itself from having a preference voided. The Third Circuit Court of Appeals

held this was improper and stated,

> It is not the debtor, and therefore under 11 U.S.C. § 303(d) and Federal Rule of Bankruptcy Procedure 1011 it does not have the right to contest the involuntary petition on the merits. Indeed, the only reason Synergistic is contesting the involuntary petition appears to be to protect itself from having a preference voided by moving the petition date to a later date, the very situation Congress tried to avoid.

*Id.* at 876.

59.     It is clear from the Alleged Corporate Representative Deposition that Mr.

Leventon and Mr. Ellington are directing the Alleged Debtors' action as it relates to these cases,

but they are not authorized to do so. *See* Exhibit "H." Mr. Dondero has the ability to act on

behalf of Acis, but Mr. Leventon suggests Mr. Dondero has not been involved in these cases. In

turn, Mr. Dondero states "[i]n fact, any knowledge that I have regarding these issues would have

been learned from Mr. Leventon in the first instance."

_____

**PETITIONING CREDITOR JOSHUA N. TERRY'S (I) AMENDED EMERGENCY MOTION TO
COMPEL DEPOSITION FROM JAMES DONDERO, AND (II) IN THE ALTERNATIVE, MOTION TO
STRIKE**

60.     If indeed it is the case that Mr. Dondero has not been directing the defense of these cases, then Mr. Dondero has not authorized the Motion to Dismiss and the Answer. Accordingly, the Motion to Dismiss and Answer are not properly authorized. Indeed, a creditor, Highland, who in the on year prior to the Petition Dates received millions of dollars in cash transfers from Acis, excluding the Note Transfer and other transfers highlighted above, is directing these cases.

61.     The corporate organization documents including the *Amended and Restated Agreement of Limited Partnership of Acis Capital Management, L.P.* (the "LP Agreement") and *Amended and Restated Limited Liability Company Agreement* of Acis Capital Management GP, LLC (the "LLC Agreement") state that the Managing Member of Acis GP (as defined in the LLC Agreement) or the officer as delegated by the Managing member have the sole authority to make the decisions and take the actions necessary herein. It is clear Mr. Leventon and Mr. Ellington are not granted such authority (and such duties are non-delegable) and as such, they do not have the authority to direct the Motion to Dismiss and the Answer. A true and correct copy of the LP Agreement is attached hereto as **Exhibit "K."** A true and correct copy of the LLC Agreement is attached hereto as **Exhibit "L."**

62.     If as Acis has alleged, Mr. Dondero, one of two officers of Acis, has limited personal knowledge of the financial condition, governance, practices, solvency, and other topics contained in the Corporate Representative Notice then who is in control of the Alleged Debtors? Mr. Leventon's testimony leads one to believe that Mr. Leventon, a purely Highland employee, and Mr. Ellington, general counsel for Highland are in total control of the Alleged Debtors, at least as it relates to litigation and these Involuntary Petitions. How can Mr. Leventon and Mr.

PETITIONING CREDITOR JOSHUA N. TERRY'S (I) AMENDED EMERGENCY MOTION TO
COMPEL DEPOSITION FROM JAMES DONDERO, AND (II) IN THE ALTERNATIVE, MOTION TO
STRIKE

PAGE 22 OF 26

Ellington exercise any independent control when they are employees of Highland, with no official capacity at Acis, Highland, who have receive preference payments and over $23 million from Acis in the two years prior to the Petition Date? Furthermore, is Acis or Highland directing counsel for the Alleged Debtors? If, Mr. Dondero, one of two officers of Acis, does not have personal knowledge as it relates to the Alleged Debtors and Mr. Leventon, a Highland employee, is the corporate representative for the purposes of the Corporate Representative Notice, then it is clear that Highland is in fact resisting these Involuntary Petitions.

63.    "'No man can serve two masters, for either he will hate the one and love the other, or else he will hold to the one and despise the other'. This is a favored principle at law and in equity." *Brotherhood of Locomotive Firemen & Enginemen v. Mitchell*, 190 F.2d 308, 309 (5th Cir. 1951). Here, contrary to case law and the Bankruptcy Code, Messrs. Leventon and Ellington are in fact attempting to serve two masters, Acis and Highland. The only party with standing to contest the Involuntary Petitions is Acis. The only party with authority to authorize the actions as they relate to these cases is the Managing Member of Acis GP or the officer of Acis GP. As such, Mr. Terry requests the court strike the Motion to Dismiss and the Answer as Highland does not have standing or authority to file and prosecute either. Equity demands that Highland should not be able to direct and control these cases.

## VII.    ATTORNEYS' FEES

64.    Federal Rule of Civil Procedure 37 provides that a party may move to compel disclosure of discovery and for appropriate sanctions when the opposing party fails to provide answers to discovery. *See* Fed. R. Civ. P. 37 (a). Accordingly, a court may impose and award attorneys' fees when a party fails to produce documents or respond to discovery requests. *United*

---

**PETITIONING CREDITOR JOSHUA N. TERRY'S (I) AMENDED EMERGENCY MOTION TO COMPEL DEPOSITION FROM JAMES DONDERO, AND (II) IN THE ALTERNATIVE, MOTION TO STRIKE**

*States v. Big D. Enters*, 184 F.3d 924, 935 (8th Cir. 1999).  Further, a court must impose attorneys' fees and expenses to the compelling party unless the non-responsive party was substantially justified in resisting discovery.  *See* Fed. R. Civ. P. 37(a).  *Maddow v. Procter & Gamble Co., Inc.*, 107 F.3d 846, 853 (11th Cir. 1997).  Substantially justified means that reasonable people could differ as to the appropriateness of the contested action.  *Id.*  Here, Mr. Dondero's and Acis's refusal to appear at the deposition on March 8, 2018, without a protective order was manifestly unreasonable.  Mr. Dondero's refusal to appear is contrary to the settled law of this circuit.  Mr. Terry was forced to seek the Court's assistance to compel Mr. Dondero to testify and, therefore, Mr. Terry respectfully requests that the Court award Mr. Terry attorneys' fees, against both the Alleged Debtors and Alleged Debtors' counsel, that were incurred in connection with this Motion.

## PRAYER

Mr. Terry respectfully requests that the Court enter an order (i) granting this Motion, compelling Mr. Dondero to testify at the taking of a deposition; (ii) leave from the Scheduling Order to allow Mr. Terry to proceed with the deposition of Mr. Dondero any time before March 15, 2018; (iii) order Mr. Dondero to appear at the hearings  on the Motion to Dismiss and Involuntary Petitions on March 20, 2018, at 9:30 a.m. (Central Standard Time), at the Bankruptcy Court for the Northern District of Texas, Dallas Division, 1100 Commerce Street, Room 1428 (Courtroom No. 1), Dallas, Texas 75242 until such time Mr. Dondero is released by the Court or the hearings are concluded; or, in the alternative (i) enter an order striking the Motion to Dismiss; (ii) enter an order striking the Answer; and (iii) granting such other and

**PETITIONING CREDITOR JOSHUA N. TERRY'S (I) AMENDED EMERGENCY MOTION TO COMPEL DEPOSITION FROM JAMES DONDERO, AND (II) IN THE ALTERNATIVE, MOTION TO STRIKE**

**PAGE 24 OF 26**

further relief as is appropriate and just under the circumstances.  Mr. Terry also requests general

relief.

**Dated: March 12, 2018.**

Respectfully submitted,

**WINSTEAD PC**
500 Winstead Building
2728 N. Harwood Street
Dallas, Texas  75201
(214) 745-5400 (Phone)
(214) 745-5390 (Facsimile)
e-mail:  rpatel@winstead.com
e-mail:  achiarello@winstead.com

By: */s/ Rakhee V. Patel*
    Rakhee V. Patel – SBT # 00797213
    Annmarie Chiarello – SBT # 24097496

**ATTORNEYS FOR JOSHUA N.
TERRY,
PETITIONING CREDITOR**

-and-

BRIAN P. SHAW
State Bar No.  24053473
shaw@clousedunn.com
**CLOUSE DUNN LLP**
1201 Elm Street, Suite 5200
Dallas, Texas 75270-2142
Telephone:  (214) 220-3888
Facsimile:   (214) 220-3833

**ATTORNEYS FOR JOSHUA N. TERRY,
PETITIONING CREDITOR**

---

PETITIONING CREDITOR JOSHUA N. TERRY'S (I) AMENDED EMERGENCY MOTION TO
COMPEL DEPOSITION FROM JAMES DONDERO, AND (II) IN THE ALTERNATIVE, MOTION TO
STRIKE

PAGE 25 OF 26

## Certificate of Conference

I certify that on March 2, 2018, March 6, 2018, and March 9, 2018, I contacted counsel for the Alleged Debtors related to the foregoing Motion.  Pursuant to FRCP 37 and FRBP 7037, the undersigned counsel hereby certifies that I conferred with counsel for the Alleged Debtors in an attempt to obtain compliance with the Notices without the filing of this Motion.  Counsel for the Alleged Debtors is opposed to the relief requested by the foregoing Motion. On March 12, 2018, I attempted to confer with counsel for the Alleged Debtors regarding Section VI, Alternative Relief, Motion to Strike, and Counsel for the Alleged Debtors, I have not received a response.

*/s/ Rakhee V. Patel*
One of Counsel

## Certificate of Service

I hereby certify that on March 12, 2018, notice of this document will be electronically mailed to the parties that are registered or otherwise entitled to receive electronic notices in this case pursuant to the Electronic Filing Procedures in this District.

*/s/ Annmarie Chiarello*
One of Counsel

---

**PETITIONING CREDITOR JOSHUA N. TERRY'S (I) AMENDED EMERGENCY MOTION TO COMPEL DEPOSITION FROM JAMES DONDERO, AND (II) IN THE ALTERNATIVE, MOTION TO STRIKE**

**PAGE 26 OF 26**