Rakhee V. Patel – SBT #00797213
Annmarie Chiarello – SBT #24097496
**WINSTEAD PC**
500 Winstead Building
2728 N. Harwood Street
Dallas, Texas 75201
Telephone: (214) 745-5400
Facsimile: (214) 745-5390
Email: rpatel@winstead.com
Email: achiarello@winstead.com

Brian P. Shaw
State Bar No. – 24053473
shaw@clousedunn.com
**CLOUSE DUNN LLP**
1201 Elm Street, Suite 5200
Dallas, Texas 75270-2142
Telephone: (214) 220-3888
Facsimile: (214) 220-3833

**ATTORNEYS FOR JOSHUA N. TERRY,
PETITIONING CREDITOR**

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE NORTHERN DISTRICT OF TEXAS
## DALLAS DIVISION

| | | |
|---|---|---|
| IN RE: | § | Case No. 18-30264- SGJ7 |
| | § | |
| ACIS CAPITAL MANAGEMENT, L.P., | § | Chapter 7 |
| | § | |
| ALLEGED DEBTOR. | § | |
| | § | |
| | § | |

_____

| | | |
|---|---|---|
| IN RE: | § | Case No. 18-30265-SGJ7 |
| | § | |
| ACIS CAPITAL MANAGEMENT GP, LLC, | § | Chapter 7 |
| | § | |
| | § | |
| ALLEGED DEBTOR. | § | |

**PETITIONING CREDITOR JOSHUA N. TERRY'S BRIEF IN SUPPORT OF: (I) THE INVOLUNTARY PETITIONS AND (II) OBJECTION TO JOINT MOTION OF ACIS CAPITAL MANAGEMENT, L.P. AND ACIS CAPITAL MANAGEMENT GP, LLC TO DISMISS INVOLUNTARY PETITIONS AND REQUEST FOR AWARD OF FEES, COSTS, AND DAMAGES**

**TO THE HONORABLE STACEY G.C. JERNIGAN, UNITED STATES BANKRUPTCY JUDGE:**

Joshua N. Terry ("<u>Mr. Terry</u>" or "<u>Petitioning Creditor</u>"), petitioning creditor in the above-

captioned cases (these "<u>Cases</u>"), files this *Brief in Support of: (I) the Involuntary Petitions; and*

*(II) Objection to Joint Motion of Acis Capital Management, L.P. and Acis Capital Management GP, LLC to Dismiss Involuntary Petitions and Request for Award of Fees, Costs, and Damages*[1] (the "<u>Brief</u>"), and respectfully states as follows in support thereof:[2]

## I.   ARGUMENT AND AUTHORITIES

### A.   Alleged Debtors Have Not Been Generally Paying Their Debts as They Become Due.

1.      As applicable herein, Section 303(h) of the Bankruptcy Code requires that a court shall enter order for relief in an involuntary case "if … (1) the debtor is generally not paying such debtor's debts as such debts become due unless such debts are the subject of a bona fide dispute as to liability or amount..."  11 U.S.C. § 303(h). The burden is on the petitioning creditor to prove this element by a preponderance of the evidence.  *See Norris v. Johnson (In re Norris)*, No. 96-30146, 1997 U.S. App. LEXIS 41449, 1997 WL 256808, at *3 (5th Cir. Apr. 11, 1997). The determination is made as of the filing date of the involuntary petitions.  *In re Sims*, 994 F.2d 210, 222 (5th Cir. 1993).

2.      In determining whether an alleged debtor is generally paying its debts as they come due, courts typically look to four factors: (i) the number of unpaid claims; (ii) the amount of such claims; (iii) the materiality of the non-payments; and (iv) the nature of the debtor's overall conduct in his or her financial affairs. *See, e.g.*, *In re Moss*, 249 B.R. 411, 422 (Bankr. N.D.Tex. 2000) (citing *In re Norris, 183 B.R.* 437, 456-57 (Bankr. W.D. La. 1995).

---

[1] Pursuant to the *Agreed Scheduling Order Regarding Discovery and Hearing on: (I) Joint Motion of Acis Capital Management, L.P. and Acis Capital Management GP, L.L.C. to Dismiss Involuntary Petitions and Request for Award of Fees, Costs, and Damages and (II) Involuntary Petitions* [Case No. 18-30264, Docket No. 33 & Case No. 18-30265, Docket No. 31] (the "<u>Agreed Scheduling Order</u>"), Section 303(i) issues are bifurcated.  Therefore, Mr. Terry does not address those issues based on the order and agreement of the parties.

[2] Capitalized terms not defined herein have the meanings ascribed to such terms by *Joshua N. Terry's Objection to Joint Motion of Acis Capital Management, L.P. and Acis Capital Management GP, LLC to Dismiss Involuntary Petitions and Request for Award of Fees, Costs, and Damages* [Case No. 18-30264, Docket No. 36 & Case No. 18-30265, Docket No. 35].

3.      "Case law instructs that the relevant standard for determining whether a debtor is generally paying his debts as they become due is generally flexible and involves consideration of the totality of the circumstances and requires a balancing of the interests of the alleged debtor against the interest of its creditors." *In re Baron*, No. 12-37921, 2013 Bankr. LEXIS 2604, at * 43 (Bankr. N.D. Tex. June 26, 2013) (citing *In re Town of Westlake, Tex.*, 211 B.R. 860, 864 (Bankr. N.D. Tex. 1997)). *See also In re Concrete Pumping Serv. Inc.*, 943 F.2d 627 (6th Cir. 1991).

4.      "Courts typically hold that, under Section 303(h)(1) of the Bankruptcy Code, 'generally not paying debts' includes regularly missing a significant number of payments or regularly missing payments which are significant in amount in relation to the size of the debtor's operation." *Baron*, 2013 Bankr. LEXIS 2604, at * 43.  "Further, any debt which Putative Debtor was not current on as of [the Petition Date] will be considered as a debt not being paid as it became due." *In re Bates*, 545 B.R. 183, 188 (Bankr. W.D. Tex. 2016).

5.      The ratio of paid claims to unpaid claims in this situation is similar to that in *Moss,* where the debtor's unpaid debt totaled "at least $2.2 million, which consists of approximately 99% of the amount of her total debts."  *In re Moss*, 249 B.R. at 424 (citing *Concrete Pumping,* 943 F.2d at 630)(holding that debtor was not paying debts as they became due where debtor was in default on 100% of its debt to only one creditor); *see also In re Fischer,* 202 B.R. 341, 351 (E.D.N.Y. 1996) (reversing dismissal of involuntary petition because debtor was not paying two outstanding debts which exceeded $2.1 million and debtor failed to establish that he was paying anywhere close to 50% of his current liabilities); *In re Garland Coal & Mining Co.,* 67 B.R. 514, 521 (Bankr. W.D. Ark. 1986) (debtor generally not paying debts as

they become due where, although the debtor was paying most of its creditors in number, the total

debt which it was not paying exceeded 50% of its outstanding liabilities); *Hill v. Cargill, Inc.,*

8 B.R. 779, 780-81 (D. Minn. 1981) (finding that although the debtor paid its small consumer

creditors, relief was appropriate due to the overwhelming total amount of unpaid claims); *In re*

*Dakota Lay'd Eggs*, 57 B.R. 648, 657 (Bankr. D.N.D. 1986) (finding debtor was not paying its

debts when it only paid weekly expenses, not past due billings).

6.      Typically, courts consider the range of approximately 50% to be an indication of

general payment or non-payment.  *Aigner v. McMillan (In re McMillan)*, No. 11-47029, 2013

Bankr. LEXIS 2269, at *11-12 (Bankr. N.D. Tex. 2013) ("the law applicable in this district is

clear:  an alleged debtor's failure to deal with a single, principal debt is sufficient to support  a

determination that the alleged debtor is not meeting its obligations as they come due*")*; *In re*

*Smith*, 415 B.R. at 231 (debtor was not meeting obligations as they came due and finding that

"even though Mr. Smith is paying, including post-petition, his small recurring debts as they come

due, he is not paying ninety-nine percent of his debts in aggregate"); *In re All Media,* 5 B.R. 126,

143 (Bankr. S.D. Tex. 1980) ("generally not paying debts includes regularly missing a significant

number of payments which are significant in amount in relation to size of debtor's operations"),

*aff'd,* 646 F.2d 193 (5th Cir. 1981)); *In re Fischer*, 202 B.R. at 351 ("the record fails to establish

that Fischer was paying, in terms of dollar amounts, anywhere close to 50% of his current

liabilities"); *In re Garland*, 67 B.R. at 522 (finding a debtor was not paying debts as they came

due when the debtor "was paying most of its creditors in number [but] the total debt which it was

not paying as the debts became due was well over fifty percent of the outstanding liabilities");

*In re Edwards*, 501 B.R. at 682 ("[a]lthough Edwards may have selectively paid some of his

small, recurring debts, he failed to pay his larger, material debts when due").

7.      A debtor's preference of paying some creditors – particularly insiders – over others can also support a finding that a debtor is not paying its debts as they become due. *See, e.g.*, *In re Am. Cotton Suppliers Int'l, Inc.*, No. 02-50003-7, 2002 Bankr. LEXIS 1972, at *75 (Bankr. N.D. Tex. 2002) (debtor paid $50,000 to his father but made no effort to pay other creditors $8 million, representing more than 90% of his debt and more than 50% of his creditors).  In *Knighthead Master Fund, L.P. v. Vitro Packaging, LLC (In re Vitro Asset Corp.)*, No. 3:11-CV-2603-D (N.D. Tex. Aug. 28, 2012), the district court found error in the bankruptcy court's ruling that the alleged debtors were generally paying their debts as they became due, where the bankruptcy court has relied on the fact that the alleged debtors had a significant number of third-party creditors/trade vendors, which had been continually paid, even though the unpaid debts to the petitioning creditors far exceeded the paid debts in terms of dollar amount. The petitioning creditors were holders of promissory notes that were guaranteed by the alleged debtors, as to which the primary obligor and alleged debtors had ceased making interest payments, and the unpaid debts represented 99.9% of the total dollar amount of debt of each of the alleged debtors.

8.      The evidence at trial will show that Acis Capital Management, L.P.  ("Acis LP") and Acis Capital Management GP, LLC ("Acis GP," with Acis LP, the "Alleged Debtors" or "Acis") are failing to pay a significant debt –  Mr. Terry's $8 million judgment. Dependent upon the number of actual creditors of Alleged Debtors, *see* discussion in Section B.1. below, Mr. Terry's judgment represents at a minimum more than 80% of the overall debt of Alleged Debtors and 99% of the debt when Highland's self-inflated, insider claim is excluded.  Additionally, to the extent creditors who invoiced entities other than Alleged Debtors are deemed to be creditors of Alleged Debtors, a significant number of those debts (which are undisputed by Alleged

Debtors) are old and remain unpaid.  Indeed, Alleged Debtors' own documents evidence, as this

Court will see, that more than 95% of these non-insider purported debts are over 90 days old and

Alleged Debtors have no documented evidence that any of those non-insider purported creditors

have agreed to wait for payment.

9.      Furthermore, the uncontrovertible evidence will be that Alleged Debtors wholly

lack the ability to ever significantly pay the judgment due to the abundant fraudulent transfers

Alleged Debtors have engaged in, including, but not limited to, amending the Shared Services

and Sub-Advisory Agreements to shift all outflows of cash and the economic benefit of Acis's

operations to Highland, the Note Transfer, and the transfer of the risk retention structure.

Indeed, Mr. Ellington (a Highland employee) testified repeatedly that Alleged Debtors are net

negative cash flowing.  Which begs the question: how can Alleged Debtors generally be paying

their debts as they become due when there is negative cash flow, a significant asset in the form

of a note has been transferred out of the estate, Alleged Debtors have made preferential transfers

in excess of ten million dollars ($10,000,000) to an insider and attempted transfers of all

income/revenue generating contracts for no consideration with an $8 million judgment to pay?

The answer is clear – Alleged Debtors cannot be and are not paying their debts generally as they

become due.

10.     To that end, the fourth factor of the test set forth above—the nature of the debtor's

overall conduct in his or her financial affairs — warrants the entry of an order for relief.  Courts

have found that a debtor's bad faith or fraudulent conduct in its financial affairs weighs in favor

of maintaining a Section 303 action.  *See, e.g.*, *In re Bates*, 545 B.R. at192 ("Putative Debtor

funneled money out of FWLL through various entities for his own benefit and problematically

moved large sums of money out of his personal account.  Thus, Putative Debtor's overall

financial conduct mitigates in favor of finding that he is not generally paying his debts as they become due").

11.     Similarly, in *In re Moss,* Judge Houser determined that an alleged debtor was not paying its debts as they came due when the alleged debtor "attempted to delay creditors through the transfers of assets she has made," concluding that "[the alleged debtor's] overall conduct of her financial affairs has been poor." *In re Moss,* 249 B.R. at 423.

12.     As set forth above, and detailed during the hearings held on February 6 and February 7, 2018 (the "303(f) Hearing"),  Alleged Debtors have engaged in numerous fraudulent conveyances, funneled money out of Alleged Debtors to affiliates, made clearly preferential payments to Highland with nary a concern about other creditors, all in an attempt to denude Alleged Debtors of assets, systematically dismantle Alleged Debtors' business and prevent Mr. Terry and the other legitimate creditors of Alleged Debtors from being paid.  All the while, Highland takes money out of Alleged Debtors' pockets and places it in its own.  This does not just smack of bad faith or poor financial conduct – it screams it.

**B.      Alleged Debtors Have Fewer Than 12 Creditors.**

13.     Pursuant to Section 303(b)(2) of the Bankruptcy Code, a sole petitioning creditor holding at least $15,775 in claims can initiate an involuntary bankruptcy case so long as the alleged debtors have fewer than 12 creditors.  Alleged Debtors state they "are not going to dispute Mr. Terry's claim for the purposes of counting creditors under 303…. we're not challenging him as a creditor that you would count in an involuntary petition."[3]

---

[3] Transcript of Hearing on Emergency Motion to Abrogate or Modify 11 U.S.C Section 303(f), Prohibit Transfer of Assets, and Impose, Inter Alia, 11 U.S.C Section 363 Filed by Petitioning Creditor Joshua Terry (3); Emergency Motion to Set Hearing (related to Document (8) Motion to Dismiss Case Filed by Alleged Debtor Acis Capital Management, LP (9) (Case Nos. 18-30264-SGJ7 &18-30264-SGJ7) (the "Transcript"), Tr. 307: 19-21 & 23-24 (Feb. 7, 2018).

14.     Mr. Terry asserts that Alleged Debtors have fewer than 12 creditors.  Of the 18 creditors included on the *Notice of List of Creditors Pursuant to Fed. R. Bankr. P. 1003(b)* [Case No. 18-30264, Docket No. 7 & Case No. 18-30265, Docket No. 7], the 19 creditors included on the *First Amended Notice of List of Creditors Pursuant to Fed. R. Bankr. P. 1003(b)* [Case No. 18-30264, Docket No. 17 & Case No. 18-30265, Docket No. 16] and the 20 creditors included on the *Second Amended Notice of List of Creditors Pursuant to Fed. R. Bank. P. 1003(b)* [Case No. 18-30264, Docket No. 39 & Case No. 18-30265, Docket No. 38](the "Alleged Creditor List") 17-18 creditors cannot be counted for the numerosity requirement of Section 303(b)(2) of the Bankruptcy Code based on either not being a creditor of Alleged Debtors or on being Congressionally excluded from the twelve creditor count by the express language of Section 303(b)(2).[4]  For purposes of Section 303(b)(2), Alleged Debtors only have a maximum of three, or more likely only two, non-insider creditors eligible for numerosity purposes.

15.     After the Alleged Creditor List was filed, Mr. Terry bears the burden of showing that Alleged Debtors actually have less than 12 qualified creditors under Section 303(b) of the Bankruptcy Code.  *See In re Moss*, 249 B.R. 411, 419 n. 6 (Bankr. N.D. Tex. 2000).  Mr. Terry must meet this burden by a preponderance of the evidence.  *In re Smith*, 415 B.R. 222, 229 (Bankr. N.D. Tex. 2009).

## 1.     Many Of The Creditors Listed On Alleged Creditor List Are Creditors Of Highland Or Lackey Hershman.

16.     Thirteen of the creditors listed on the Alleged Creditor List note Highland Capital Management, LP ("Highland"), Lackey Hershman, LLP ("Lackey"), counsel to Alleged Debtors and other entities in the Arbitration, or McKool Smith, P.C. ("McKool"), current counsel for Acis, Highland, James Dondero, Mark Okada and Nancy Dondero, as Trustee of the

---

[4] Ineligibility for purposes of Section 303(b)(2) only; legitimate creditors who otherwise are excluded from the numerosity count would still be considered under Section 303(h).

Dugaboy Investment Trust, as the responsible party or the invoiced party rather than Alleged

Debtors.   Only two invoices produced to Mr. Terry were addressed to even one of Alleged

Debtors – Jones Day and KPMG.   Since Alleged Debtors do not appear to have any personal

liability for the prepetition debts related to at a minimum 12 creditors, those debts may not be

counted for the purpose of determining whether Alleged Debtors have 12 or more creditors.  *See,*

*e.g., In re Sadler*, No. 0610091-FRM, 2006 Bankr. LEXIS 4464 at *3 (Bankr. W.D. Tex. 2006)

("the Court determined that the following debts were not bona fide creditors for the purposes of

§303(b)...Capital One [sic] in name of Winchester Ranch Properties, L.L.C.'s [sic] and no proof

Mr. Sadler was personally liable on the debt").

17.    Indeed, when asked to identify any agreements between Alleged Debtors and 15

of the creditors (excluding KPMG, Drexel, Highfield, Highland and Mr. Terry), Alleged Debtors

could only point to and produce engagement letters between a) Lackey and Highland, b) McKool

and a host of clients, c) Stanton Advisors and Highland or no agreement or document at all.

Further, as of the filing of this Brief, six creditors listed on the Alleged Creditor List have

responded under oath that they hold <u>no</u> claim against Acis.[5]  Accordingly, Mr. Terry's burden is

met from a facial review of the invoices submitted by Alleged Debtors, together with discovery

obtained.

**2.    <u>Insiders Are Excluded For From the Creditor Calculation</u>**

18.    Highland, Lackey, McKool, and Reid Collins & Tsai ("<u>Reid</u>") are "insiders" of

Alleged Debtors and, therefore, not eligible to be counted pursuant to Section 303(b). As set

forth in Section 303(b)(1), the creditor count excludes "any employee or insider" of an

alleged debtor.  Section 101(31) of the Bankruptcy Code states that the term insider "includes"

---

[5] Discovery is ongoing as of the time of the filing of this Brief.  Mr. Terry reserves all rights to supplement this Brief or his argument at trial based on later received discovery.

certain enumerated parties, *i.e.,* officer of the debtor, affiliate, etc.   The use of the word "includes" suggests that the list of enumerated "insiders" is not exclusive or exhaustive.   *See In re Missionary Baptist Foundation of Am., Inc*., 712 F.2d 206, 210 (5th Cir. 1983).   On March 5, 2018, the United States Supreme Court stated "[c]ourts have additionally recognized as insiders some persons not on that [101(31)] list—commonly known as "nonstatutory insiders." The conferral of that status often turns on whether the person's transactions with the debtor (or another of its insiders) were at arm's length."   *U.S. Bank v. The Village at Lakeridge*, No. 15–1509, 2018 U.S. LEXIS 1520, at *5, 2018 WL 1143822, at*2, 583 U. S. ____ (2018); *see also Smith*, 415 B.R. at 232 (Bankr. N.D. Tex. 2009)(for purposes of Section 303(b), "[a]n insider is an entity or person with 'a sufficiently close relationship with the debtor that his conduct is made subject to closer scrutiny than those dealing at arm's length with the debtor")(quoting *Missionary Baptist,* 712 F.2d. at 210).

19.     The Fifth Circuit finds that "cases which have considered whether insider status exists generally have focused on two factors in making that determination:  (1) the closeness of the relationship" between the parties and "(2) whether the transaction...[was] conducted at arm's length."   *In re Holloway*, 955 F.2d 1008, 1011 (5th Cir. 1992). Alleged Debtors have admitted that Highland meets the definition of insider pursuant to Section 101(31) of the Bankruptcy Code.[6]

20.     McKool is a law firm representing Alleged Debtors in this bankruptcy proceeding and is, therefore, an insider of Alleged Debtors.   As found by Judge Hale in *In re Smith*, "the term 'insider' includes an attorney who is currently defending the client in an involuntary bankruptcy petition."   *Smith,* 415 B.R. at 233 (Bankr. N.D. Tex. 2009) (*citing In  re*

---

[6] Transcript 246: 8-9 ("there are no insiders other than Highland on the list of eighteen").

*Rimell*, 111 B.R. 250 (Bankr. E.D. Mo. 1990), aff'd 946 F.2d 1363 (8th Cir. 1991)).

Accordingly, McKool cannot be counted as a creditor for numerosity purposes.

21.     Similarly, Reid, in responding to discovery propounded by Mr. Terry, responded

that it currently represents Acis with respect to its dispute with Joshua N. Terry ("<u>Mr. Terry</u>").

Additionally, Reid responded that it currently represents Acis, Highland, and 14 Highland

affiliates. Lisa S. Tsai, a named partner of Reid, states in the lead-in on her law firm webpage

that she represented and won a "Top 50 Verdict in the United States… against Credit Suisse [in

favor of Highland] following a lengthy jury trial and bench trial."[7] "Both the statute and its

legislative history indicate that an insider may be someone who currently enjoys a fiduciary

relationship with the debtor…. an attorney, who invariably acquires confidential client

information and whose relationship is governed by rules of professional conduct, may come

under this [insider] categorization." *In re Rimell*, 111 B.R. 250, 254 (Bankr. E.D. Mo. 1990).

Here, Reid Collins *currently* represents Alleged Debtors and Highland. The relationship between

Reid and Acis is governed by the rules of professional conduct and is not arm's length. As

current counsel, one can assume that Reid has confidential information related to Alleged

Debtors. Furthermore, Reid has strong ties to Highland – a creditor herein who opposes the entry

of an order for relief. Under the *Rimell* case, adopted by Judge Hale's *Smith* decision, Reid is a

non-statutory insider of Acis.

22.     Lackey, another creditor listed, is a law firm that routinely represents Highland

and its affiliates.  In fact, Paul Lackey, one of the named partners in the Lackey firm, boasts on

his firm webpage that "Paul Lackey, repeatedly recognized as a Texas Super Lawyer, has acted

as the outside litigation counsel for a decade for Highland Capital Management, L.P., one of the

---

[7] *Lisa S. Tsai*, rctlegal.com, http://www.rctlegal.com/person/lisa-s-tsai/ (last visited March 15, 2018).

largest private-equity funds in the country."[8]  Lackey has generated substantial revenue from Highland and its affiliates and, therefore, is close, not arm's length, nor incentivized to file or join an involuntary petition against Alleged Debtors.  Lackey's corporate representative testified that since the formation of the Lackey firm, Lackey has represented Highland and its affiliates on many matters. Therefore, Lackey has a sufficiently close relationship that it should be considered an "insider" of Alleged Debtors.

23.     "Congress excluded insiders and recipients of voidable transfers from the creditor numerosity calculation under § 303(b)(2) to alleviate its concern that an insolvent debtor and *friendly creditors* would collude to defeat an involuntary petition.  If insiders or recipients of voidable transfers (*i.e.,* those without incentive to file an involuntary bankruptcy as they are receiving payment) collude with a debtor to artificially increase the total number of creditors to more than 12, it could block an involuntary petition."  *In re CorrLine Int'l, Inc.,* 516 B.R. 106, 144 (Bankr. S.D. Tex. 2014) (collecting cases)(emphasis added).  Therefore, parties that are not incentivized to file or join involuntary petitions against alleged debtors may (and should) be considered insiders.

24.     Indeed, counsel for Alleged Debtors admitted during prior hearings that the various law firm creditors are not incentivized to file an involuntary petition against Alleged Debtors, saying:[9]

> Pulling Highland out, seventeen entities; pulling Mr. Terry out, seventeen entities and not likely one of them is going to join in against Acis its client, its party who owes it money, party who retained it in connection with the litigation.  For instance, the McKool Smith law firm, for instance, the Lackey Hershman law firm; for instance, the Andrews & Kurth (sic) law firm, I can go on.  For instance, the depo company who gets paid regularly.

---

[8] *Meet Our Team*, lhlaw.com, http://www.lhlaw.net/paul-lackey.html (last visited March 15 2018).

[9] Transcript of Hearing Held on February 7, 2018, at p 244: 22-25 to p. 245:1-5.

25.     Mr. Terry believes that pending discovery may reveal that other alleged law firm creditors are also "insiders" and thus not included for the purposes of the numerosity requirement of 303(b). Mr. Terry reserves the right to argue the same at trial.

**3.     Voidable Transfers.**

26.     Section 303(b)(2) expressly excludes from the creditor count "any transferee of a transfer that is voidable under sections 544, 545, 547, 548, 549, or 724(a)." 11 U.S.C. § 303; *see also In re Smith*, 415 B.R. 222, 233 Bankr. N.D. Tex. 2009).  At this time, discovery shows that the following creditors are in receipt of a voidable transfer:  Lackey, Highfield Equities, Inc. ("Highfield"), Drexel Limited ("Drexel"), Elite Document Technology ("Elite"), and David Simek ("Simek"), a new creditor added by the Alleged Creditor List filed on March 6, 2017.

27.     Lackey received $57,934.27 from JAMS that are a refund of amounts paid by Acis to JAMS and are Acis funds/assets. The Lackey corporate representative testified that rather than sending the $57,934.27 back to Acis, the refund was directly applied to Lackey's outstanding invoice, thereby transferring Acis's interest in the funds to Lackey, a voidable Section 547 preference. The evidence at trial will show that Highfield, Drexel, Elite, and Simek also received monies from Acis in the 90 days preceding the Petition Dates. Furthermore, discovery continues to be produced.  As such, Mr. Terry reserves all rights to argue that additional alleged creditors may be excluded from the creditor count due to their receipt of voidable transfers.

**4.     *De minimis*, Small Or Recurring Claims.**

28.     In determining the number of creditors, small recurring creditors are not to be included.  *See Moss*, 249 B.R. at 419 (citing *In re Denham*, 444 F.2d 1376 (5th Cir. 1971); *Matter of Runyan*, 832 F.2d 58, 60 (5th Cir. 1987)(applying *Denham*, a case decided under the Bankruptcy Act, to the Bankruptcy Code).  Additionally, some courts interpret *Runyan* and the

pre-Bankruptcy Code case it expands on, *Denham,* to not only bar small recurring debts from the numerosity requirement of Section 303(b), but also *de minimis* creditors.  *See, e.g., In re Norris,* 183 B.R. 437, 450 (Bankr. W.D. La. 1995); *In re CorrLine*, 516 B.R. at 154.  Judge Gargotta, in *Bates*, the same case Alleged Debtors cited with great conviction at the March 14, 2018 hearing, found that debts in the amount of $932.09, $505.00, and $547.72 were excluded under the *Denham* line of case law.  *In re Bates*, 545 B.R. at 192.

29.     Even if Alleged Debtors can establish there is personal liability of Alleged Debtors for the foregoing debts, certain creditors should not be counted as they are *de minimis*, small, or recurring – namely Case Anywhere, David Langford, Elite Document Technology, Jones Day, and CT Corporation.  Again, at this time, discovery is outstanding to many of the creditors, and Mr. Terry reserves all rights to argue that the alleged creditors may be excluded from the creditor count due to the *de minimus* nature of their claims.

## C.     Special Circumstances Exception.

30.     Even if the technical requirements of Section 303 have not been met, *e.g.,* numerosity, generally not paying debts as they come due, the Court does not have to grant the Motion to Dismiss.  The Bankruptcy Court has general powers granted by 11 U.S.C. § 105(a).  *See Marrama v. Citizen's Bank*, 549 U.S. 365, 382 (2007)(noting the "inherent power of every federal court to sanction abusive litigation practices," including abusive practices in bankruptcy).  The Court also has broad inherent powers, and the Court's inherent powers allow it to "deny…a request [made] in bad faith."  *Id.*  And federal courts in this district have done just that by denying debtors' motions to dismiss or other attempts to defeat entry of an order for relief on involuntary petitions due to purported technical deficiencies under 11 U.S.C. § 303.  In this district (and many others), the technical requirements of Section 303 can be overcome based on the debtor's "fraud, trick, artifice, or scam."  *See In re Norriss Bros. Lumber Co.*, 133 B.R. 599,

608 (Bankr. N.D. Tex. 1991)(McGuire, J.)(compiling cases and expanding application of special circumstances exception from 303(h) to 303(b)); *In re Moss*, 249 B.R. 411, 424 (Bankr. N.D. Tex. 2000)(Houser, J.)(in responding to argument that special circumstances exception should be limited to Section 303(h) analysis, noting "[i]f an exception to one of the technical requirements of 11 U.S.C.S. § 303(b) exists when there is fraud, trick, artifice or scam by an alleged debtor, there is no logical reason why that exception should not be available to avoid dismissal of an involuntary petition on other technical grounds"); *In re Smith*, 415 B.R. 222, 238 (Bankr. N.D. Tex. 2009) and 437 B.R. 817, 825 (Bankr. N.D. Tex. 2010)(Hale, J.)("[a] line of cases in this district has established a 'special circumstances' exception to the three creditor requirement when the alleged debtor has participated in fraudulent transfers and prepetition payments") (citing *In re Moss,* 249 B.R. at 424).

31.     For example, a "special circumstances" exception to the requirements of Section 303 applies when Alleged Debtors have participated in fraudulent transfers and prepetition preferential payments.  *In re Smith,* 437 B.R 817, 825 (Bankr. N.D. Tex. 2010) (finding the establishment of a spendthrift Cook Islands trust and the transfer of the majority of alleged debtor's assets to the trust to keep assets outside the hands of creditors suggested the application of the "special circumstances exception"); *In re Moss*, 249 B.R. at 424 (denying motion to dismiss where exception to the technical requirements of Section 303 existed when there was fraud, trick, artifice or scam by an alleged debtor, including fraudulent conveyances and preferential transfers); *In re Norris Bros. Lumber Co., Inc.*, 133 B.R. 599, 609 (Bankr. N.D. Tex. 1991) (fraudulent transfer by debtor constituted special exception under section 303 and court denied debtor's motion to dismiss).

32.     This district also recognizes that this bad-faith exception applies to Section 303(h).  *See In re Moss*, 249 B.R. at 424 ("If an exception to one of the technical requirements of 11 U.S.C.S. § 303(b) exists when there is fraud, trick, artifice or scam by an alleged debtor, there is no logical reason why that exception should not be available to avoid dismissal of an involuntary petition on other technical grounds").  And another district court case in the Fifth Circuit applied the special circumstances exception to Section 303(h) where there was evidence of fraud by the debtor.  *See In re Norris*, 183 B.R. 437, 460 (Bankr. W.D. La. 1995) ("[S]pecial circumstances amounting to trick, fraud, artifice, or scam" are an exception to compliance with section 303(h)(1).)

33.     Other Texas bankruptcy courts have found the same.  *See, e.g.*, *In re CorrLine Int'l, LLC*, 516 B.R. 106, (Bankr. S.D. 2014) (denying debtor's motion to dismiss based on Section 303 requirement where debtor engaged in fraudulent transfers to circumvent technical requirement). The Fifth Circuit also favored this reasoning in an analogous bankruptcy dispute. *See In re Denham*, 444 F.2d 1376, 1379 (5th Cir. 1971) (applying such reasoning to an analogous bankruptcy provision, finding that it would be "grossly inequitable" to allow a debtor, to, by fraud or otherwise, create minor creditors to "defeat the use of the Bankruptcy Act by a large creditor").

34.     The uneconomic changes to the Sub-Advisory Agreement and the Shared Services Agreement, the Note Transfer, the attempted transfer of the Management Contract, and other transfers for less than reasonably equivalent value are clear indications that Alleged Debtors have engaged in a series of fraudulent transfers which satisfy the well-established standard in this district of fraud, artifice and trick.  Furthermore, Alleged Debtors have manufactured creditors – entities and individuals that are clearly not legitimate creditors of

Alleged Debtors but instead are being foisted upon these estates at the whim and pleasure of Highland, a party who is hopelessly conflicted and the recipient of tens of millions of dollars of preferential and fraudulent transfers – in a bad faith attempt to defeat these involuntary petitions. As counsel for Alleged Debtors stated at the hearings held on March 14, 2018, "you don't walk into a federal court with dirty hands and ask that the court take jurisdiction over a case. You walk in with clean."[10] Ironically, it is Alleged Debtors who have come to federal court – this Court – with dirty hands after engaging in blatant fraudulent transfers, transferring millions of dollars in preferential payments to Highland while not timely paying other legitimate creditors, manufacturing creditors of these estates in order to prevent justice from being served and then brazenly arguing that Mr. Terry, a conceded creditor with a claim that is not subject to a bona fide dispute as to liability or amount, is acting in bad faith.  This simply should not be countenanced by this Court.  Therefore, in the event this Court finds, for the purposes of Section 303 of the Bankruptcy Code, that there are more than 12 creditors or that Alleged Debtors are generally paying their debts as they become due, the special circumstances exception to Section 303 should be made applicable under the facts and circumstances of this case.

**D.    This Is Not A Two-Party Dispute, Was Not Filed in Bad Faith, And Abstention Is Improper.**

35.    Alleged Debtors allege that these involuntary bankruptcies should be dismissed pursuant to Section 305(a) of the Bankruptcy Code because these bankruptcies are not in the best interests of creditors.  As support for their proposition, they argue that this is a two party dispute, these Cases were allegedly filed in bad faith and as a litigation tactic.  Alleged Debtors bear the burden of showing that a dismissal is in the best interests of creditors, that these cases were filed in bad faith and that this Court should abstain.

---

[10] Transcript of March 14, 2018 hearing on *Motion to for Protective Order and/or to Quash the Deposition of James Dondero, et al*. Tr. 116: 2-4

36.    "'The courts that have construed § 305(a)(1) are in general agreement that abstention in a properly filed bankruptcy case is an extraordinary remedy, and that dismissal is appropriate under § 305(a)(1) only in the situation where the court finds that both 'creditors and the debtor' would be 'better served' by a dismissal.'" *In re AMC Investors*, 406 B.R. 478, 488 (Bankr. D. Del. 2009)(citing *In re Eastman*, 188 B.R. 621, 624 (B.A.P. (9th Cir. 1995).

37.    "'Granting an abstention motion pursuant to § 305(a)(1) requires more than a simple balancing of harm to the debtor and creditors; rather, the interests of both the debtor and its creditors must be served by granting the requested relief.'" *Id*.; *see also In re Smith*, 415 B.R. 222, 238-239 (Bankr. N.D. Tex. 2009).  The movant bears the burden to demonstrate that the interests of the debtors and creditors would benefit from dismissal.  *Id.*

38.    Nowhere in the Motion to Dismiss or Supplement to the Motion to Dismiss do Alleged Debtors argue how the creditors are better served outside of bankruptcy.  The simple reason for that is because the creditors cannot be better served outside of bankruptcy because Alleged Debtors and Highland will continue with their pattern and practice of dismantling Alleged Debtors and absconding with the assets, in many instances to offshore entities, while creditors are left holding an empty bag.  A dismissal here only serves Highland's unabashed goals of denuding these estates of all their assets unchecked and without oversight and would fly in the face of fundamental fairness and the principles underlying the Bankruptcy Code.

## 1.    <u>This Is Not Merely A Two-Party Dispute</u>

39.    This district and other districts in this circuit have rejected the line of case law from other circuits that establishes an almost *per se* rule against a single creditor maintaining an involuntary bankruptcy, or what amounts to effectively a two party dispute (a single creditor and an alleged debtor).  *See In re CorrLine*, 516 B.R. at 154 ("[t]his Court does not believe that any heightened scrutiny is warranted when a single creditor files an involuntary petition because the

Code does not state such a rule—rather, the plain language of the Code requires only that where a single creditor files the petition, there be fewer than twelve creditors"); *In re Smith*, 415 B.R. 222. This would improperly abrogate Sections 303(b) and (h) of the Bankruptcy Code, 11 U.S.C § 303(h) ("If a petition is not timely controverted, the court *shall* order relief…"), and would rewrite Section 303(b) to require at least 2 petitioning creditors in every instance to avoid dismissal as a two party dispute. S*ee also Smith,* 415 B.R. 222 (order for relief entered after an involuntary petition had been filed by one creditor).

40.     Incredibly, after strenuously arguing the existence of 12 or more creditors, Alleged Debtors also argue that this is "essentially a two party dispute" and should be dismissed on that basis.  This Court, at the hearing on the 303(f) Motion, noted that it was illogical and inconsistent for Alleged Debtors to simultaneously argue this is a two-party dispute while asserting that they have 19 (now 20) creditors saying:[11]

```
18        Bankruptcy Court is not designed -- and again, I'm no
19   bankruptcy practitioner -- to take a two-party dispute and use
20   it as a litigation tactic to -- in that case, that would be an
21   obvious attempt to do an end-around around Judge Goldstein's
22   order saying I'm not going to enter a temporary injunction.
23        THE COURT:  You said it's not a two-party dispute.
24        MR. CRUCIANI:  It's a dispute between Acis --
25        THE COURT:  You say it's a nineteen-party dispute.
```

41.     The law and the facts of this case do not suggest that this is a two party dispute. Notably, Alleged Debtors have admitted they are indebted to more parties in addition to Mr. Terry.[12]  In fact, Alleged Debtors have submitted evidence to this Court that KPMG and Jones Day – creditors who actually billed Acis — have not been paid timely nor have Lackey or Reid (whose claims are not agreed and should be subject to review by a trustee).  In fact, because of

---

[11] Transcript 250: 18-25 (Feb. 7. 2018).

[12] Alleged Creditor List.

the uneconomic changes to the Shared Services Agreement and the Sub-Advisory Agreement,

Alleged Debtors are not regularly paying Highland in full.

42.     Additionally, even Alleged Debtors concede that there are and will remain unpaid

debts of Acis.   At the 303(f) Hearing, Alleged Debtors argued that Acis <u>is net cash flow</u>

<u>negative</u>[13] only paying amounts due to Highland and its affiliates while simultaneously admitting

and arguing that it has  20 creditors who are owed approximately $11.5 million in the aggregate,

$8.7 million when Highland is excluded, and over $725,000 when Highland and Mr. Terry's

judgment are excluded.  So, which one is it?  Is this a two-party dispute when all other creditors

except Mr. Terry are being paid their debts as they come due, or is Acis net cash flow negative

and unable to pay its creditors that are part of this alleged two-party dispute?

43.     Moreover, many of the cases cited by Alleged Debtors find that dismissal is not

warranted and proceed to enter an order for relief.   One of the best examples is *In re AMC*

*Investors*, 406 B.R. 478, 488 (Bankr. D. Del. 2009) in support of their assertion.   In *In re AMC*

*Investors*, the bankruptcy court finds, in connection with the alleged debtors' argument therein

that the matter was a two party dispute, that

> [petitioning creditor's] primary, and perhaps only reason for filing the involuntary
> petition is to seek the appointment of a chapter 7 trustee, who will possess the authority
> to investigate and, if appropriate, to pursue claims against the officers and directors of the
> Alleged Debtors relating to alleged fraud perpetrated against [petitioning creditor] by
> [alleged debtors]. While such a purpose for seeking bankruptcy jurisdiction may not be
> proper in every case, under these facts, [petitioning creditor] has a valid bankruptcy
> purpose. It is highly unlikely that [petitioning creditor] could pursue claims against the
> Alleged Debtors' officers and directors in either a direct or derivative suit. Thus, either a
> bankruptcy trustee or state court receiver is necessary to pursue these potential assets, if

---

[13] Mr. Terry submits that Acis is only cash flow negative because Highland by and through Mr. Dondero negotiated
and entered into a one-sided, unbalanced, and for less than reasonably equivalent value amended agreements relating
to sub-advisory services and shared services, Shared Services Agreement and the Sub-Advisory Agreement. Mr.
Dondero, as President of Acis GP on behalf of Acis LP and on behalf of Highland, approved each amended
agreement. Mr. Terry does not agree or stipulate that Acis is nor should be net cash flow negative – but for the
wrongful prepetition conduct, Acis would be cash flow positive.  This, along with a litany of other reasons, is why
this matter cries out for bankruptcy.

appropriate. While receivership is certainly an option in this case, no such action has been instituted. The existing state court action (the appeal of the Amended Judgment) is not an action seeking the appointment of a receiver. No out-of-court workout between the parties is in the offing.

Furthermore, the geographic scope of the parties to this case spans state and national boundaries. The Alleged Debtors are Delaware LLC's managed from Florida. The involuntary petition for [petitioning creditor] reflects a mailing address in London. AMC Computer operated out of New York. The state court judgment was obtained in New York and filed as a judgment lien in Florida. While a state court receiver may certainly attempt to liquidate the Alleged Debtors, it would certainly be a more cumbersome and less efficient process for the receiver to obtain recognition in various jurisdictions, rather than permitting the use of federal bankruptcy jurisdiction.

The Court finds that it is not in the best interest of [petitioning creditor] for it to abstain. Moreover, since the Alleged Debtors are insolvent, non-operating limited liability companies that hold stock in a defunct computer company, it is not clear how a bankruptcy petition is harmful. In fact, the only entities that may be harmed by entering an order for relief in this case are the officers and directors of the Alleged Debtors. While these individuals may desire to avoid the threat of lawsuits pursued by a chapter 7 trustee, their interests are not relevant in a decision to abstain under section 305(a)(1). Accordingly, the Court declines to abstain in these cases.

*In re AMC Investors*, 406 B.R. at 488-89.

44.     Similarly, in *Smith*, 415 B.R. at 239, in denying the alleged debtor's motion to dismiss or for abstention, Judge Hale found that "[t]here are remedies under the Bankruptcy Code that are not available to [petitioning creditor] under state law, due to [alleged debtor's] transfer of the majority of his assets to the Cook Island Trust, federal proceedings may be necessary to reach a just and equitable solution, and the bankruptcy court is the most efficient place to administer property of the estate for creditors."

45.     The facts and circumstances herein are similar to those in *AMC Investors* and *Smith*.  These bankruptcies were necessary, despite pending hearings on a temporary injunction and a receivership application (which would not be heard until March).  A chapter 7 trustee is necessary to halt the fraudulent actions of Alleged Debtors and Highland as discussed above.  A chapter 7 trustee is necessary to resolve the inherent conflicts of interest surrounding Alleged

Debtors operation.  A chapter 7 trustee will find it less cumbersome and more efficient than any

state court receiver to pursue the claims and causes of action of these estates given the nature of

the claims and geographic location of certain defendants. A bankruptcy is necessary to address

the cross-border and multi-jurisdictional issues now presented, since the insertion of various

Cayman Island entities.  Preference actions do not exist in state law.  Federal bankruptcy court is

single handedly the most efficient place to administer property of the estate for creditors.

Finally, the only party prejudiced by these bankruptcies is Highland – and harm to Highland

should not result in this Court abstaining because such would reward Highland unjustifiably for

its bad acts. This is not a two party dispute, and even if it is, dismissal or abstention is clearly not

warranted as in and for the reasons stated in *AMC Investors* and *Smith*.

## 2.  The Filing of the Involuntary Cases is Not Merely a Litigation Tactic and Are Not in Bad Faith.

46.    In evaluating bad faith, a presumption exists that the petitioning creditor or

creditors acted "in good faith in filing an involuntary petition, and that the alleged debtor then

has a burden of proving bad faith by a preponderance of the evidence." *In re Synergistics Techs.,*

*Inc*. No. 07-31733, 2007 Bankr. LEXIS 2660, at *14 (Bankr. N.D. Tex. Aug. 6, 2007)(

(compiling cases and discussing Section 303(i)(2) bad faith).  The court should consider "the

totality of the circumstances . . .considering such things as action, motives and objectives of the

parties." *Id*. at *19.

47.    Alleged Debtors argue that these involuntary bankruptcies are in bad faith

because they are being used as a litigation tactic "in a desperate attempt to delay the inevitable

dissolution of the Agreed Order in the State Court Action" and that "[i]t is likely the State Court

would have modified those restraints or dissolved them completely at the conclusion of the TI

Hearing."  (Mot. to Dismiss at p.14.)  Effectively, Alleged Debtors argue that Mr. Terry

allegedly timed these filings to avoid negative outcome in state court. Yet, Alleged Debtors do not offer any evidence to support their wild claim that Judge Goldstein, in connection with a temporary injunction requested by Mr. Terry and set for hearing, would have ruled differently than this Court did in connection with the 303(f) Hearings, *i.e.* that on the exact same facts, an injunction would not have issued in the state court. Indeed, it was the risk of inefficient multiple litigation across forums (trying the temporary injunction issue to only have to relitigate the exact same thing in a Section 303(f) context) that necessitated, in part, the expedient filing of these Cases.

48.     Furthermore, Alleged Debtors do not argue that it is more economic and efficient to administer the systematic dismantling of Acis outside of bankruptcy court (although it would be more convenient to the pattern of preferences and fraudulent transfers to insiders), nor do they argue there is some alternate, less expensive method or forum to adjudicate these issues. Alleged Debtors do not argue that the state court can adequately protect the interests of both parties, nary all parties, and that federal court protection is not necessary because they simply cannot. They do not argue that this is a bad forum. They simply argue that Mr. Terry is forum shopping, and forum shopping is *de facto* bad faith. Mr. Terry submits that this is precisely the forum this matter cries out for.

49.     This Court has acknowledged the legitimacy of an involuntary bankruptcy suit when a creditor is faced with a debtor that is dismantling its business to the detriment of certain creditors. *In re Synergistics Techs.*, Inc. No. 07-31733, 2007 Bankr. LEXIS 2660, at *20 (Bankr. N.D. Tex. Aug. 6, 2007)(finding that "[sometimes, forum shopping is, frankly fine... [when] in a liquidation context, sometimes there is a risk of irresponsible dismantling of an enterprise that might be unfair to certain creditors, if there is not a bankruptcy-supervised process"). That is

precisely the situation here – there is an exceptionally irresponsible dismantling of an enterprise that is patently unfair to all of the creditors herein – all the creditors except Highland. This process must be supervised by a bankruptcy court, lest Highland continue its pattern and practice of paying itself and transferring assets to itself or its affiliates, all to the detriment of creditors.

**3.**    **The 303 Factors Have Been Met, The Court Must Enter An Order for Relief.**

50.    At the March 14, 2018 hearing in these Cases, Alleged Debtors argued that the Court was free to disregard the expressed intentions of Congress and the command of Section 303(h) to enter an order for relief if the requirements of 303(h) have been met. If the Court is inclined to disregard the expressed language of the Bankruptcy Code, it is worthwhile to highlight the facts of the cases cited by the Alleged Debtor for the idea that even if the requirements of 303(h) have been met, the Court can nonetheless decline to enter an order for relief.

51.    First, Alleged Debtors rely on Judge Gargotta's *Bates* opinion, which admittedly suggests in dicta that courts can ignore the words in Section 303(h). In *Bates,* Judge Gargotta found that the alleged debtor's conduct, including moving sums of money between his personal bank account and corporate bank accounts and repeatedly invoking his Fifth Amendment right, necessitated the entry of an order for relief. In *Bates*, the alleged debtor's bad faith rather than the petitioning creditor's bad faith was at issue. Like *Bates*, Alleged Debtors are moving assets between affiliates and repeatedly invoking the possibility of criminal penalty (in the case at hand under Cayman Island law) to distract from Alleged Debtors', rather than Mr. Terry's, bad faith.

52.    Second, *In re Forever Green Ath. Fields, Inc*., 804 F.3d 328 (3rd Cir. 2015) had extraordinary facts. In *Forever Green,* the alleged debtor was involved in active litigation with the petitioning creditor's company, which was set to go to arbitration. *In re Forever Green Ath. Fields, Inc*., 804 F.3d at 331. The petitioning creditor obtained a consent judgment in his

individual capacity and used the consent judgment to derail pending arbitration between the alleged debtor and the petitioning creditor's company, going so far as to attempting to levy the arbitrator's retainer. *Id.* at 331. In fact, the petitioning creditor " threatened to put  [the alleged debtor] into bankruptcy" if [the alleged debtor] did not agree to terminate the arbitration. These are far from the facts herein.

53.     Furthermore, there is a split of authorities as it relates to whether courts should ignore the expresse words of 303(h). Section 303(i)(2) "[m]akes plain that bad faith is not relevant unless consequential and punitive damages are under consideration… Ordinarily, the bankruptcy court would not reach the issue of bad faith unless and until the Involuntary Petition was dismissed." *Marciano v. Fahs (In re Marciano),* 459 B.R. 27, 44-43 (9th Cir. B.A.P. 2011); *In re Knoth*, 168 B.R. 311, 315 (D.S.C. 1994) ("[T]he motivation of the petitioning creditors is irrelevant on the question of whether the involuntary petition should be granted").

54.     As set forth above, Alleged Debtors have engaged in numerous preferential and fraudulent transfers to Highland and Highland affiliates.  Alleged Debtors manufactured creditors in an ambush to defeat these involuntary bankruptcy cases.  Alleged Debtors have either filed fraudulent or grossly misleading sworn testimony with the state court or with this court, in either instance in a transparent attempt to obfuscate reality.  It is Alleged Debtors that are in bad faith - Alleged Debtors do not come to this Court with clean hands.  This Court should not allow Alleged Debtors to continue this game of catch me if you can and to further obfuscate the abject reality that this matter cries out for bankruptcy protection.  Based on the foregoing, Mr. Terry submits that this is more than a two-party dispute, is not a mere litigation tactic, and does not meet the standard for dismissal or abstention. Based on the foregoing, Mr. Terry

submits that this is more than a two-party dispute, is not a mere litigation tactic, and does not meet the standard for dismissal or abstention.

## II.      PRAYER

Mr. Terry respectfully requests this Court to:  (i) enter Orders for Relief under Chapter 7 of the Bankruptcy Code; (ii) deny the Motion to Dismiss; and (ii) grant Mr. Terry such other and further relief to which he may be justly entitled, both at law and in equity.

**DATED:  March 16, 2018.**

Respectfully submitted,

**WINSTEAD PC**

500 Winstead Building

2728 N. Harwood Street

Dallas, Texas  75201

(214) 745-5400 (Phone)

(214) 745-5390 (Facsimile)

e-mail:  rpatel@winstead.com

e-mail:  achiarello@winstead.com

By:____*/s/ Rakhee V. Patel*_____

Rakhee V. Patel – SBT # 00797213

Annmarie Chiarello – SBT # 24097496

**ATTORNEYS FOR JOSHUA N. TERRY, PETITIONING CREDITOR**

-and-

BRIAN P. SHAW

State Bar No.  24053473

shaw@clousedunn.com

**CLOUSE DUNN LLP**

1201 Elm Street, Suite 5200

Dallas, Texas 75270-2142

Telephone:  (214) 220-3888

Facsimile:  (214) 220-3833

**ATTORNEYS FOR JOSHUA N. TERRY, PETITIONING CREDITOR**

## CERTIFICATE OF SERVICE

The undersigned certifies that on March 16, 2018, a true and correct copy of the foregoing Motion will be electronically mailed to the parties that are registered or otherwise entitled to receive electronic notices in this case pursuant to the Electronic Filing Procedures in this District.

*/s/ Annmarie Chiarello*
One of Counsel