Rakhee V. Patel – SBT #00797213
Annmarie Chiarello – SBT #24097496
**WINSTEAD PC**
500 Winstead Building
2728 N. Harwood Street
Dallas, Texas 75201
Telephone: (214) 745-5400
Facsimile: (214) 745-5390
Email: rpatel@winstead.com
Email: achiarello@winstead.com

Brian P. Shaw
State Bar No. – 24053473
shaw@clousedunn.com
**CLOUSE DUNN LLP**
1201 Elm Street, Suite 5200
Dallas, Texas 75270-2142
Telephone: (214) 220-3888
Facsimile:  (214) 220-3833

**ATTORNEYS FOR JOSHUA N. TERRY,
PETITIONING CREDITOR**

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE NORTHERN DISTRICT OF TEXAS
## DALLAS DIVISION

| | | |
|---|---|---|
| IN RE: | § | **Case No. 18-30264- SGJ7** |
| | § | |
| **ACIS CAPITAL MANAGEMENT, L.P.,** | § | **Chapter 7** |
| | § | |
| **ALLEGED DEBTOR.** | § | |
| | § | |

_____

| | | |
|---|---|---|
| IN RE: | § | **Case No. 18-30265-SGJ7** |
| | § | |
| **ACIS CAPITAL MANAGEMENT GP, LLC,** | § | **Chapter 7** |
| | § | |
| | § | |
| **ALLEGED DEBTOR.** | § | |

**PETITIONING CREDITOR JOSHUA N. TERRY'S REPLY BRIEF IN RESPONSE TO:
(I) PRE-TRIAL BRIEF OF ACIS CAPITAL MANAGEMENT, L.P. AND ACIS
CAPITAL MANAGEMENT GP, LLC IN CONNECTION WITH , INTER ALIA, THEIR
MOTIONS TO DISMISS INVOLUNTARY PETITIONS AND (II) BENCH BRIEF
REGARDING BAD FAITH DISMISSAL OF INVOLUNTARY BANKRUPTCY CASES**

**TO THE HONORABLE STACEY G.C. JERNIGAN, UNITED STATES BANKRUPTCY
JUDGE:**

Joshua N. Terry ("Mr. Terry" or "Petitioning Creditor"), petitioning creditor in the above-

captioned cases (these "Cases"), files this *Reply Brief in Response to:  (I) Pre-Trial Brief of Acis*

*Capital Management, L.P. and Acis Capital Management GP, LLC In Connection With, Inter Alia, Their Motion to Dismiss Involuntary Petitions and (II) Bench Brief Regarding Bad Faith Dismissal of Involuntary Bankruptcy Cases* (the "<u>Reply Brief</u>")[1] and respectfully states as follows in support thereof:[2]

## I.     <u>ARGUMENT AND AUTHORITIES</u>

### A.     The TRO And the 303(f) Motion Allege Acis's Same Bad Actions.

1.      Mr. Terry did not file these Cases because he read the tea leaves and somehow knew how Judge Goldstein was going to rule at the January 31, 2018 hearing on the TRO.  The Alleged Debtors' implication of such is both an insult to Judge Goldstein's impartiality and flies in the face of this Court's ruling on February 7, 2018, as Mr. Terry alleged Acis's same bad action in the *Plaintiff's Application for Temporary Restraining Order* (the "<u>TRO</u>") as the *Emergency Motion of Petitioning Creditor to Abrogate or Modify 11 U.S.C § 303(f), Prohibit Transfer of Assets, and Impose, Inter Alia, 11 U.S.C § 363* [Case No. 18-30264, Docket No. 3 & Case No. 18-30264, Docket No. 3] (the "<u>303(f) Motion</u>").  A true and correct copy of the TRO is attached hereto as **Exhibit "A."**  A redline comparing the TRO to the 303(f) Motion is attached hereto as **Exhibit "B."**

2.      It is clear from Exhibit "B" that the same facts on which this Court granted the 303(f) Motion were to be presented to Judge Goldstein at a hearing on the TRO.  If it was a

---

[1] Pursuant to the *Agreed Scheduling Order Regarding Discovery and Hearing on:  (I) Joint Motion of Acis Capital Management, L.P. and Acis Capital Management GP, L.L.C. to Dismiss Involuntary Petitions and Request for Award of Fees, Costs, and Damages and (II) Involuntary Petitions* [Case No. 18-30264, Docket No. 33 & Case No. 18-30265, Docket No. 31] (the "<u>Agreed Scheduling Order</u>"), Section 303(i) issues are bifurcated.  Therefore, Mr. Terry does not address those issues based on the Agreed Scheduling Order and agreement of the parties.
[2] Capitalized terms not defined herein have the meanings ascribed to such terms by *Joshua N. Terry's:  (I) the Involuntary Petitions; and (II) Objection to Joint Motion of Acis Capital Management, L.P. and Acis Capital Management GP, LLC to Dismiss Involuntary Petitions and Request for Award of Fees, Costs, and Damages* [Case No. 18-30264, Docket No. 62 & Case No. 18-30265, Docket No. 60] (the "<u>Terry Brief</u>").

foregone conclusion that Judge Goldstein would deny the TRO, the Alleged Debtors are, by implication, asserting that this Court was entirely off base when it granted the 303(f) Motion.

3.      The transcripts from the state court hearings on January 24, 2018, demonstrate that Judge Goldstein, like this Court, was concerned about protecting the assets for the benefit of creditors (there Mr. Terry, here, all creditors).   Judge Goldstein stated to Mr. Cruciani:  "Then perhaps explain to me -- perhaps you can give me better language, because I believe their judgment should be protected."  *See* Transcript from January 24, 2018 Hearing, 26: 12-14 [Case No. 18-30264, Docket No. 63, Exhibit 1 & Case No. 18-30264, Docket No. 61, Exhibit 1].  "And I'm trying to minimize the impact to ongoing business relationships while reserving the assets for [Mr. Terry] with regard to your ability to collect."  *Id.* at 31:8-10. A true and correct copy of the referenced portions of the Transcript from January 24, 2018 Hearing is attached hereto as **Exhibit "C."**

**B.      These Cases Evidence The Purpose Of Involuntary Bankruptcy.**

4.      Mr. Terry is using the involuntary bankruptcy process for its expressed and intended purpose.  "From the original English bankruptcy statute, adopted in the reign of the first Elizabeth, until the time of the American Revolution, 'bankruptcy' was involuntary, a creditor's collection device, a super-attachment of all the debtor's property for equal division among creditors."  Elizabeth Warren and Jay Westbrook, *The Law of Debtors and Creditors,* p. 101 (6th Ed. 2009).  "Indeed, bankruptcy law (as opposed to insolvency law) was originally exclusively a creditor's remedy."  *Studensky v. Buttery Co. LLP (In re Argubright*), 532 B.R. 888 (Bankr. W.D. Tex. 2015) (citing *Sturges v. Crowninshield*, 17 U.S. (4 Wheat.) 122, 194-95 (1819).  "Modern bankruptcy laws may be used not only as a debtor's remedy to achieve relief from indebtedness, but also as a creditor's remedy to compel a liquidation or reorganization of the debtor's estate primarily through the provisions of Code § 303."  2 *Bankruptcy Law Manual* § 14:1 (5th ed.).

5.      "There are several situations where an involuntary petition may be the best remedy for creditors to obtain satisfaction of their claims against a recalcitrant debtor. The first is where the debtor has made fraudulent or preferential transfers, engaged in insider transactions, or secreted assets, all of which creditors cannot successfully pursue without the strong-arm powers of a bankruptcy trustee." 2 *Bankruptcy Law Manual* § 14:2 (5th ed.). Empowered by the Bankruptcy Code and Article 1, Section 8 of the United States Constitution, Mr. Terry has filed these Involuntary Petitions in order to invoke the nationwide, strong-arm power of this Court to stop and claw back numerous fraudulent transfers so that all of Acis's creditors will receive a pro rata distribution from the Alleged Debtors' estates.

6.      Mr. Terry is using § 303(b) for its intended purpose. "The intent of § 303(b) is that those who are not meeting their obligations can be forced to submit to the jurisdiction of the bankruptcy court… [t]he purpose of an involuntary [bankruptcy] procedure is to provide a method for creditors to protect their rights against debtors who are not meeting their debts." *In re All Media Props., Inc*., 5 B.R. 126, 137 (Bankr. S.D. Tex. 1980). Additionally, involuntary bankruptcy is intended to prevent diminution of assets, exactly what is occurring here. *In re Wynn*, 889 F.2d 644, 646 (5th Cir. 1989) (finding "as the creditors properly point out, any delay in ordering involuntary Chapter 7 relief inures to the benefit of the debtor…. By comparison, the creditors risked the continued diminution and dispersal of the remaining assets"). Here, Mr. Terry seeks to use the Involuntary Petitions for their intended purpose, to prevent Acis from engaging in additional fraudulent or preferential transfers and insider transactions to the detriment of all creditors.

**C.      Abstention Is Improper.**

**1.      This Is At Least A Three-Party Dispute Between Terry, Acis, and Highland.**

7.      The Alleged Debtors go through great pains to both assert that the Alleged Debtors have more than 12 creditors and argue that this, in fact, is a two-party dispute.  The Alleged Debtors have fewer than 12 creditors, as further described by the Terry Brief.  Even if the Alleged Debtors are to be believed (which is difficult, as the Alleged Debtors have illogically asserted Acis has more than 12 creditors *and* this is a two-party dispute), this is, at the very least, a three-party dispute between Highland, Acis, and Mr. Terry.

8.      As described by the Terry Brief and Mr. Terry's *(I) Amended Emergency Motion to Compel Deposition from James Dondero and (II) In the Alternative, Motion to Strike* [Case No. 18-30264, Docket No. 50 & 18-30264, Docket No. 48] (the "Amended Motion to Compel"), throughout these Cases it has been unclear who in fact was directing Acis and on what authority.  Mr. Terry asserts that Highland, replete with conflicts of interests, is truly directing these Cases.

9.      Issac Leventon ("Mr. Leventon") testified pursuant to Federal Rule of Civil Procedure 30(b)(6) as the corporate representative for Acis, despite not having any formal title or role with the Alleged Debtors.  Mr. Leventon is Assistant General Counsel to Highland.  It is unclear who Mr. Leventon actually represents; one may suspect that he, in fact, represents only Highland.

10.      On January 31, 2018, counsel for Mr. Terry, Ms. Patel, received a letter via email from Mr. Leventon at his Highland email address regarding a Conflict of Interest (the "First Leventon Letter").  The First Leventon Letter was sent by Mr. Leventon on behalf of Nancy Dondero, the purported Trustee of the Dugaboy Investment Trust.  A true and correct copy of the First Leventon Letter is attached hereto as **Exhibit "D."**  On January 31, 2018, Ms. Patel received a second letter via email from Mr. Leventon at his Highland email address regarding a

Conflict of Interest (the "Second Leventon Letter"). The Second Leventon Letter was sent by

Mr. Leventon on behalf of Nancy Dondero, the purported Trustee of the Dugaboy Investment

Trust and the purported ultimate beneficial owner of Neutra, Ltd. A true and correct copy of the

Second Leventon Letter is attached hereto as **Exhibit "E."**

11.     Mr. Leventon testified that he, in fact, drafted the First Leventon Letter and

Mrs. Dondero edited the First Leventon Letter.[3] Mr. Leventon further testified that he did not

know in what capacity he acted when he drafted the First Leventon Letter and he advised

Mrs. Dondero as it related to alleged conflicts of interest.[4]

12.     Mr. Leventon testified that:   "[Scott Ellington] is my boss.   I follow his

instructions.   Q: So you just do what he says, and you don't question where he gets his authority

from?   A: I mean to the extent that something would seem clearly wrong or improper, I would

question that, but this is not that case."[5] Mr. Leventon testified that he acts at the behest of Scott

Ellington ("Mr. Ellington"), his boss at Highland, and Mr. Ellington "has authorized

[Mr. Leventon] to fight these petitions."[6]

13.     Mr. Leventon's testimony calls into question the true motive here.   Nearly every

transaction related to Acis involves Highland and James Dondero ("Mr. Dondero") (on both

sides), the President of both Highland and Acis GP.   Highland is the recipient of numerous

fraudulent transfers and preferential payments totaling in the tens of millions of dollars.

Highland, a creditor of Acis, is the party that stands to lose the most if an order for relief is

entered. Highland, who received millions of dollars in preferences, will be the first party a

---

[3] See selected portions of Mr. Leventon's deposition transcript attached hereto as **Exhibit "F"** (the "Leventon Transcript") p. 108: 22-23.

[4] *See* Leventon Transcript, p. 107-108, 113:12-14.

[5] Leventon Transcript, p. 141: 2-7.

[6] Leventon Transcript, p. 133: 10-12.

Chapter 7 Trustee will make demand upon.  Furthermore, at no point has Acis disputed that Highland is in fact a creditor, although Highland cannot be counted for the purposes of Section 303(b).  If Mr. Leventon, in fact, represents his employer Highland, this calls into question Mr. Leventon's actions as they relate to Acis and interjects a third party into this purported two-party dispute, Highland.

### 2.    The Debtors Have Admitted They Are Engaging Or Intend To Engage In Preferential Transfers.

14.    Abstention is improper because the Alleged Debtors assert that the filing of these Cases will result in (1) creditors receiving payment "years later than would have otherwise been the case" and (2) "receiving a fraction of the amount it is due as opposed to being paid in full absent the Involuntary Petitions."  The Alleged Debtors have all but admitted that, but for the filing of the Involuntary Petitions, the Alleged Debtors would have preferred *every* creditor over Mr. Terry (the hornbook definition of a preference).  Courts have found abstention improper when parties would be served by, among other things, a trustee's power to avoid preferences. *In re Ceiling Fan Distrib., Inc.*, 37 B.R. 701 (Bankr. M.D. La. 1983) (entering an order for relief after finding that "debtor and creditors would be better served by exercise of the bankruptcy court's jurisdiction…to recover preferences").

### 3.    In Section 303(h)(2) Congress Codifies That The Appointment of Receiver Fulfills The Requirements Of 303(h).

15.    The Alleged Debtors continue to assert that abstention is proper and the state court can provide adequate remedies.  However, this completely ignores Section 303(h)(2).  If Mr. Terry returns to state court and gets a receiver appointed, he would be <u>entitled</u> to relief under Section 303(h)(2), as it is clear the Alleged Debtors have fewer than 12 creditors and the other requirements of Section 303 have been met.  Section 303(h)(2) states, in relevant part,:

(h)  If the petition is not timely controverted, the court shall order relief against the debtor in an involuntary case under the chapter under which the petition was filed.  Otherwise, after trial, the court shall order relief against the debtor in an involuntary case under the chapter under which the petition was filed, only if—

*** 

(2)  within 120 days before the date of the filing of the petition, a custodian, other than a trustee, receiver, or agent appointed or authorized to take charge of less than substantially all of the property of the debtor for the purpose of enforcing a lien against such property, was appointed or took possession.

11 U.S.C. § 303(h)(2).

16.     Congress acknowledges and codifies that the same facts that lead to the appointment of a receiver appointed over substantially all of the Alleged Debtors' assets, the remedy that the Alleged Debtors would apparently prefer to these Cases, are sufficient to enter an order for relief.

### 4.      Abstention Is Improper Under The Alleged Debtor's Case Law.

17.     Even assuming, *arguendo*, that this is a two-party dispute, the Alleged Debtors' own cited cases show abstention is not required.  For example, the Alleged Debtors cite *Remez Elecs. Ltd. v. AXL Indus., Inc*. 127 B.R. 482, (S.D. Fla. 1991).  *Remez Elecs.* states "[g]enerally, a court should not take jurisdiction over a two-party dispute, <u>unless special circumstances exist.</u> A single creditor may, under 11 U.S.C. § 303(h)(1), petition and establish involuntary bankruptcy where there are special circumstances amounting to fraud, trick, artifice or scam." *Remez Elecs. Ltd. v. AXL Indus., Inc*. 127 B.R. 482, 484 (S.D. Fla. 1991) (citing *7 H Land and Cattle Corp*., 6 Bankr. 29 (Bankr. D. Nev. 1980) (emphasis added).  It is surprising that while simultaneously disputing the validity of the special circumstances exception, the Alleged Debtors implicitly cite the very case that appears to be the first decision on such exception under the Bankruptcy Code, *7 H Land and Cattle.*

18.     Furthermore, the cases the Alleged Debtors reference for the broad proposition that bankruptcy courts should abstain from hearing two-party disputes have vastly different facts

from the case at bar.  The two-party dispute abstention cases cited by the Alleged Debtors fall

largely into two categories, (i) cases that involve a shareholder or ownership dispute in which the

bankruptcy courts decline to weigh in on such as *In re Privada, Inc*., No. 07-10940 FRM, 2008

Bankr. LEXIS 2717, *10 (Bankr. W.D. Tex. 2008) or (ii) cases where the petitioning creditor has

filed an involuntary bankruptcy in lieu of reducing its claim to judgment in a state court or in lieu

of pursuing other remedies such as in *In re Selectron Mgmt. Corp*., No. 10-75320-dte, 2010

Bankr. LEXIS 3361 (Bankr. E.D.N.Y. 2010)(finding the petitioning creditor had redress in stated

court and an adversary proceeding in a different bankruptcy case) and *In re Mountain Dairies,

Inc*., 372 B.R. 623, 634-35 (Bankr. S.D.N.Y. 2007)(finding that the petitioning creditor was

attempting to prosecute an unadjudicated state law breach of contract suit in bankruptcy court

and, therefore, state court would be a sufficient form for the dispute).

**D.    The Alleged Debtors Clearly Have Fewer Than 12 Creditors.**

**1.    <u>Six Creditors Have Sworn Under Oath That They Are Not Creditors Of The Alleged Debtors.</u>**

19.    In their briefing, the Alleged Debtors have acknowledged that for purposes of

Section 303(b), Highland, JAMS, Inc., and Stanton Advisors are not creditors of the Alleged

Debtors.  The Alleged Debtors acknowledge that based on discovery propounded by Mr. Terry,

CSI Global Deposition Services is not a creditor of the Alleged Debtors.  Additional discovery

has shown that Case Anywhere, Elite Document Technologies, and The TASA Group also swear

under oath that they are not creditors of the Alleged Debtors.  Of the 20 Creditors listed on the

Alleged Creditor List, six have sworn under oath that they are not creditors of Acis.

**2.    <u>Four Creditors Received Payments In The 90 Days Prior to Bankruptcy.</u>**

20.    The evidence will show that in the 90 days prior to the Petition Date, Lackey

Hershman, LLP, Drexel Limited, Highfield Equities, Inc. and David Simek received voidable

preferences pursuant to Section 547 of the Bankruptcy Code.  As such, these four creditors are excluded for the purposes of 303(b).

**3.**     **The Stanton Law Firm Does Not Count Under 303(b) As An Unknown Or Uncertain Creditor.**

21.    The number of creditors under Section 303(b) does not include creditors with unknown or uncertain amounts.  *See In re CorrLine Int'l*, 516 B.R. at 120.  In *In re CorrLine International*, the bankruptcy court found that creditors with uncertain or unknown amounts could not be counted towards the debtors list of creditors for the numerosity requirement of Section 303(b), such as when there is no evidence of a financial relationship, no evidence of "a verifiable specific amount of debt, or when there is evidence that the amount was paid prior to or on the bankruptcy petition." *Id.* at 120-121, 152.  The Stanton Law Firm stated that it was unknown if the Stanton Law Firm has a claim against Acis.  As such, the Stanton Law Firm is not to be counted for the purposes of 303(b).

**E.**     **The Alleged Debtors Are Not Generally Paying Debts As They Become Due.**

22.    Courts have found that unstayed judgments are to be considered as they relate to an alleged debtor's overall liabilities, and thus, the non-payment of an unstayed judgment is to be considered by the court when analyzing if an alleged debtor is generally paying its debts as they become due.  *In re Smith*, 415 B.R. 222, 228-229 (Bankr. N.D. Tex. 2009) (finding the alleged debtor, who asserted in supersedeas bond affidavit that he had a negative net worth, was not paying his debts as they generally became due by paying all of his recurring debts as they became due, but he was not paying a $4 million judgment the petitioning creditor obtained against him.); *see also In re Norris*, 183 B.R. 437, 459 (Bankr. W.D. La. 1995); *In re Kennedy*, 504 B.R. 815, 823 (Bankr. S.D. Miss. 2014); *In re Amanat*, 321 B.R. 30, 25-26 (Bankr. S.D.N.Y. 2005).

23.     Section 303(h) is an objective standard. *Subway Equip. Leasing Corp. v. Sims (In re Sims),* 994 F.2d 210, 220 (5th Cir. 1993). The Alleged Debtors own ordinary course of business has no bearing on whether or not the Alleged Debtors are generally paying their debts as they become due. *Villarreal v. N.Y. Marine & Gen. Ins. Co. (In re OGA Charters, LLC),* 554 B.R. 415, 432 (Bankr. S.D. Tex. 2016) (granting a temporary injunction because the petitioning creditors demonstrated an "*objective* likelihood that the Putative Debtor is 'generally not paying' as required by § 303(h)")(emphasis added).

## II.     PRAYER

Mr. Terry respectfully requests this Court to:  (i) enter Orders for Relief under Chapter 7 of the Bankruptcy Code; (ii) deny the Motion to Dismiss; and (ii) grant Mr. Terry such other and further relief to which he may be justly entitled, both at law and in equity.

**DATED:  March 16, 2018.**

Respectfully submitted,

**WINSTEAD PC**
500 Winstead Building
2728 N. Harwood Street
Dallas, Texas  75201
(214) 745-5400 (Phone)
(214) 745-5390 (Facsimile)
e-mail:  rpatel@winstead.com
e-mail:  achiarello@winstead.com

By:___*/s/ Rakhee V. Patel*_____
Rakhee V. Patel – SBT # 00797213
Annmarie Chiarello – SBT # 24097496

**ATTORNEYS FOR JOSHUA N. TERRY,
PETITIONING CREDITOR**

-and-

BRIAN P. SHAW
State Bar No.  24053473
shaw@clousedunn.com
**CLOUSE DUNN LLP**
1201 Elm Street, Suite 5200
Dallas, Texas 75270-2142
Telephone:  (214) 220-3888
Facsimile:   (214) 220-3833

**ATTORNEYS FOR JOSHUA N. TERRY,
PETITIONING CREDITOR**

## <u>CERTIFICATE OF SERVICE</u>

The undersigned certifies that on March 20, 2018, a true and correct copy of the foregoing Motion will be electronically mailed to the parties that are registered or otherwise entitled to receive electronic notices in this case pursuant to the Electronic Filing Procedures in this District.

*/s/ Annmarie Chiarello*
One of Counsel