Rakhee V. Patel – SBT #00797213
Phillip Lamberson – SBT #00794134
Joe Wielebinski – SBT #21432400
Annmarie Chiarello – SBT #24097496
**WINSTEAD PC**
500 Winstead Building
2728 N. Harwood Street
Dallas, Texas 75201
Telephone: (214) 745-5400
Facsimile: (214) 745-5390
Email: rpatel@winstead.com
Email: plamberson@winstead.com
Email: jwielebinski@winstead.com
Email: achiarello@winstead.com

**PROPOSED SPECIAL COUNSEL FOR
ROBIN PHELAN, CHAPTER 11 TRUSTEE**

Jeff P. Prostok – SBT #16352500
J. Robert Forshey – SBT #07264200
Suzanne K. Rosen – SBT #00798518
Matthias Kleinsasser – SBT #24071357
**FORSHEY & PROSTOK LLP**
777 Main St., Suite 1290
Ft. Worth, TX 76102
Telephone: (817) 877-8855
Facsimile: (817) 877-4151
jprostok@forsheyprostok.com
bforshey@forsheyprostok.com
srosen@forsheyprostok.com
mkleinsasser@forsheyprostok.com

**PROPOSED COUNSEL FOR
THE CHAPTER 11 TRUSTEE**

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE NORTHERN DISTRICT OF TEXAS
## DALLAS DIVISION

| | | |
|---|---|---|
| IN RE: | § | Case No. 18-30264-SGJ-11 |
| | § | Case No. 18-30265-SGJ-11 |
| **ACIS CAPITAL MANAGEMENT, L.P.,** | § | |
| **ACIS CAPITAL MANAGEMENT GP,** | § | **(Jointly Administered Under Case** |
| **LLC,** | § | **No. 18-30264-SGJ-11)** |
| | § | |
| DEBTORS. | § | **Chapter 11** |
| | § | |

## CHAPTER 11 TRUSTEE'S OBJECTION TO THE MOTION OF HIGHLAND CAPITAL MANAGEMENT, L.P. FOR ORDER COMPELLING CHAPTER 7 TRUSTEE TO REJECT CERTAIN EXECUTORY CONTRACTS AND REQUEST FOR EXPEDITED HEARING

**TO THE HONORABLE STACEY G.C. JERNIGAN, UNITED STATES BANKRUPTCY JUDGE:**

Robin Phelan (the "Trustee"), the Chapter 11 trustee of Acis Capital Management, L.P.

("Acis LP"),[1] a debtor in the above styled and numbered bankruptcy cases (the "Cases"), files

this *Objection* (the "Objection") to the *Motion of Highland Capital Management, L.P. for Order*

*Compelling Chapter 7 Trustee to Reject Certain Executory Contracts and Request for Expedited*

---

[1]Acis Capital Management GP, LLC ("Acis GP," together with Acis LP, the "Debtors" or "Acis") is also a debtor in these Cases.

*Hearing* [Docket No. 169] (the "Compel Motion") filed by Highland Capital Management, L.P. ("Highland"). In support of the Objection, the Trustee respectfully shows the following:

## I. SUMMARY OF OBJECTION[2]

1.        Highland seeks to compel the rejection of the Contracts, which is an end-run around the automatic stay and the "breathing spell" afforded to the Debtors by the Bankruptcy Code.[3] Highland filed the Compel Motion when these cases were proceeding under Chapter 7 of the Bankruptcy Code, which is no longer the case. Given the recent conversion of these Cases to Chapter 11 and the recent appointment of the Trustee, he should be given a reasonable opportunity to evaluate the Contracts and determine whether it is appropriate to assume or reject the same and find a replacement for Highland, if the Contracts are to be terminated or rejected. "Courts rarely force a debtor into assuming or rejecting a contract…The reason for the reluctance is that the 'interests of the creditors collectively and the bankruptcy estate as a whole will not yield easily to the convenience or advantage of one creditor out of many.'"[4] Highland should not be allowed to come to this court with unclean hands and through a premature Compel Motion seek to hijack the Chapter 11 process and force the Debtors to cease operations. Therefore, the Compel Motion should be denied.

## III. PROCEDURAL BACKGROUND[5]

### A.        Bankruptcy Case

2.        On January 30, 2018 (the "Petition Date"), Joshua N. Terry ("Mr. Terry"), as petitioning creditor, filed the *Involuntary Petition Against a Non-Individual* [Case No. 18-30264, Docket No. 1] (the "Acis LP Petition") in the Acis LP bankruptcy case.

---

[2] Capitalized terms that are not defined terms have the meanings ascribed to such terms later in this Objection.
[3] 11 U.S.C. §§ 101 *et seq.* (the "Bankruptcy Code").
[4] *In re Kmart Corp.*, 290 B.R. 614, 620 (Bankr. N.D. Ill. 2003 (quoting *In re Public Serv. Co.*, 884 F.2d 11, 15 (1st Cir. 1989) (citing *Moody v. Amoco Oil Co.*, 734 F.2d 1200,1216 (7th Cir. 1984).
[5] The Trustee would like to advise the Court that the substance of the Objection begins at paragraph 22.

3. On the Petition Date, Mr. Terry, as petitioning creditor, filed the *Involuntary Petition Against a Non-Individual* [Case No. 18-30265, Docket No. 1] (the "Acis GP Petition," together with the Acis LP Petition, the "Involuntary Petitions") in the Acis GP bankruptcy case.

4. On January 31, 2018, Mr. Terry filed the *Emergency Motion of Petitioning Creditor to Abrogate or Modify 11 U.S.C § 303(f), Prohibit Transfer of Assets, and Impose, Inter Alia, 11 U.S.C § 363* [Case No. 18-30264, Docket No. 3 & Case No. 18-30265, Docket No. 3] (the "303(f) Motion"). After a two-day hearing on February 6 and 7, 2018 (the "303(f) Hearing"), the Court found that it was proper to impose Section 363 of the Bankruptcy Code[6] before the hearing on the Involuntary Petitions and granted the 303(f) Motion pursuant to the *Order Granting Motion to Modify 11 U.S.C § 303(f) and Impose 11 U.S.C § 363* [Case No. 18-30264, Docket No. 31 & Case No. 18-30265, Docket No. 29] (the "303(f) Order").

5. On April 13, 2018, after six (6) days of testimony and argument, this Court entered the *Findings of Fact and Conclusions of Law in Support of Orders for Relief Issued After Trial on Involuntary Bankruptcy Petition* [Case No. 18-30264, Docket No. 118 & Case No. 18-30265, Docket No. 113] (the "Opinion") and the *Order for Relief in an Involuntary Case* [Case No. 18-30264, Docket No. 119 & Case No. 18-30265, Docket No. 114] (the "Order for Relief").

6. Although Highland did not appear in these Cases until after the entry of the Order for Relief, Highland employees directed Acis's actions prior to the Petition Date and until the entry of the Order for Relief. *See* Opinion ¶ 30 ("Mr. Dondero [the Chief Executive Officer of Highland] testified that he has decision making authority for the Alleged Debtors but usually delegates that authority to Highland's in-house lawyers, Scott Ellington (General Counsel, Chief Legal Officer, and Partner of Highland) and Isaac Leventon (Assistant General Counsel of

---

[6] 11 U.S.C §§ 101 *et seq.* (the "Bankruptcy Code").

Highland)…Mr. Leventon is designated to be the representative for the Alleged Debtors (and testified as a Rule 30(b)(6) witness during pre-Trial discovery)—he explained that this representative-authority derives from the Shared Services Agreement. Mr. Leventon testified that he takes his instructions generally through his direct supervisor, Mr. Ellington"). Additionally, the two indirect owners of Highland, James Dondero and Mark Okada, testified at the Involuntary Trial.[7]

7.     On April 13, 2018, Diane Reed was appointed the interim Chapter 7 trustee (the "Chapter 7 Trustee") for the Debtors' Estates.

8.     On May 11, 2018, this Court entered the *Order Granting Trustee's Expedited Motion to Convert* Cases *to Chapter 11* [Docket No. 205] (the "Conversion Order").

9.     On May 11, 2018, this Court also entered the *Order Granting the Emergency Motion for an Order Appointing a Trustee for the Chapter 11 Estates of Acis Capital Management, L.P. and Acis Capital Management GP, LLC Pursuant to Bankruptcy Code Section 1104(a)* [Docket No. 206] (the "Trustee Order").

10.     On May 14, 2018, the United States Trustee filed the *Chapter 11 Notice of Appointment of Trustee and of Amount of Bond* [Docket No. 213] (the "Trustee Notice"). The Trustee Notice appointed the Trustee as the Chapter 11 Trustee of Acis LP.

11.     On May 16, 2018, this Court entered the *Order Supplementing Order Granting the Emergency Motion for an Order Appointing a Trustee for the Chapter 11 Estates of Acis Capital Management, L.P. and Acis Capital Management GP, LLC Pursuant to Bankruptcy Code Section 1104(a)* [Docket No. 219] (the "Supplemental Trustee Order"). The Supplemental Trustee Order directs the United States Trustee to appoint only one trustee for the Debtors'

---

[7] Opinion at p. 3, n. 4 ("Mr. Dondero testified at the Trial that, three years ago, Messrs. Dondero and [O]kada sold their interests in Highland to a charitable remainder trust in exchange for a 15 year note receivable").

estates. However, the United States Trustee has not yet appointed the Chapter 11 Trustee for Acis GP.

12.     On May 17, 2017, the Court entered the *Order Approving Appointment of Trustee* [Docket No. 221].

**B.     Factual Background**

**1.     The CLOs, the PMA, and the Indentures**

13.     Acis LP is the portfolio manager for certain collateralized loan obligations ("<u>CLO</u>s") funds: (i) Acis CLO 2013-1 LTD. ("<u>CLO-1</u>"), (ii) Acis CLO 2014-3 ("<u>CLO-3</u>"), (iii) Acis CLO 2014-4 LTD. ("<u>CLO-4</u>"), (iv) Acis CLO 2014-5 LTD. ("<u>CLO-5</u>"), and (v) Acis CLO 2015-6 LTD. ("<u>CLO-6</u>"). *See* Opinion at ¶ 24. CLO-1, CLO-3, CLO-4, CLO-5, and CLO-6 are collectively referred to herein as the "<u>Acis CLOs</u>."

14.     Acis LP manages the Acis CLOs through: (i) that certain Portfolio Management Agreement by and between Acis LP and CLO-1, dated March 18, 2013 (the "<u>CLO-1 PMA</u>"); (ii) that certain Portfolio Management Agreement by and between Acis LP and CLO-3, dated February 25, 2014 (the "<u>CLO-3 PMA</u>"); (iii) that certain Portfolio Management Agreement by and between Acis LP and CLO-4, dated June 5, 2014 (the "<u>CLO-4 PMA</u>"); (iv) that certain Portfolio Management Agreement by and between Acis LP and CLO-5, dated November 18, 2014 (the "<u>CLO-5 PMA</u>"); and (v) that certain Portfolio Management Agreement by and between Acis LP and CLO-6, dated April 16, 2015 (the "<u>CLO-6 PMA</u>"). The CLO-1 PMA, CLO-3 PMA, CLO-4 PMA, CLO-5 PMA, and CLO-6 PMA are collectively referred to herein as the "<u>PMAs</u>." Acis LP generates revenue primarily through the management of the Acis CLOs via the PMAs. *See* Opinion ¶ 13.

15.     Each of the Acis CLOs is governed by an indenture: (i) that certain Indenture, dated as of March 18, 2013, issued by CLO-1, as issuer, Acis CLO 2013-1 LLC, as co-Issuer and

U.S. Bank National Association ("US Bank"), as Trustee (the "CLO-1 Indenture"); (ii) that certain Indenture, dated as of February 25, 2014, issued by CLO-3, as issuer, Acis CLO 2014-3 LLC, as co-Issuer and US Bank, as Trustee (the "CLO-3 Indenture"); (iii) that certain Indenture, dated as of June 5, 2014, issued by CLO-4, as issuer, Acis CLO 2014-4 LLC, as co-Issuer and US Bank, as Trustee (the "CLO-4 Indenture"); (iv) that certain Indenture, dated as of November 18, 2014, issued by CLO-5, as issuer, Acis CLO 2014-5 LLC, as co-Issuer and US Bank, as Trustee (the "CLO-5 Indenture"); and (v) that certain Indenture, dated as of April 16, 2015, issued by CLO-6, as issuer, Acis CLO 2015-6 LLC, as co-Issuer and US Bank, as Trustee (the "CLO-6 Indenture"). CLO-1 Indenture, CLO-3 Indenture, CLO-4 Indenture, CLO-5 Indenture, and CLO-6 Indenture are collectively referred to herein as the "Indentures."

**2.      Shared Services and Sub-Advisory Agreement**

16.      Acis contracts out its operations to Highland pursuant to the Third Amended and Restated Sub-Advisory Agreement by and between Acis LP and Highland, dated March 17, 2017 (the "Sub-Advisory Agreement") and the Fourth Amended and Restated Shared Services Agreement by and between Acis LP and Highland, dated March 17, 2017 (the "Shared Services Agreement," together with the Sub-Advisory Agreement are collectively referred to herein as the "Contracts").

17.      "Acis LP and Acis GP/LLC have never had any employees. Rather, all employees that work for any of the Highland family of companies (including Mr. Terry) have, almost without exception, been employees of Highland itself. Highland has approximately 150 employees in the United States. Highland provides employees to entities in the organizational structure, such as Acis LP and Acis GP/LLC, through both the mechanism of: (a) a Shared Services Agreement (herein so called), which provides 'back office' personnel—such as human resources, accounting, legal and information technology to the Highland family of companies;

and (b) a Sub-Advisory Agreement (herein so called), which provides 'front office' personnel to entities—such as the managers of investments like Mr. Terry. The evidence indicated that this is typical in the CLO industry to have such agreements." Opinion at p. 14 (footnotes omitted).

### 3.    The Optional Redemption Notice[8]

18.    On April 30, 2018, Highland CLO Funding, LTD ("New ALF") purportedly sent five notices requesting Optional Redemption pursuant to the Section 9.2 of each of the Indentures (the "Optional Redemption Notices").[9] The Optional Redemption Notice directs Acis LP to effect an Optional Redemption (as defined by each Indenture).  Under Section 9.2(b) of each Indenture, upon the receipt of a notice of redemption Acis, in its discretion, is to direct the sale of the Collateral Obligations (as defined by each  Indenture) and other Assets.[10] *See* CLO-1 Indenture, § 9.2; CLO-3 Indenture, § 9.2; CLO-4 Indenture, § 9.2; CLO-5 Indenture, § 9.2; & CLO-6 Indenture, § 9.2.

19.    In the Indentures, "Assets" is defined to include the PMAs. *See* CLO-1 Indenture, p. 8; CLO-3 Indenture, p. 10; CLO-4 Indenture, p. 10; CLO-5 Indenture, p. 10; & CLO-6 Indenture p. 10. Therefore, the Optional Redemption directs Acis LP to liquidate its most valuable asset, the PMAs.

20.    The Trustee has analyzed the Optional Redemption Notices and determined there are various defects or potential defects in these notices and performing the Optional Redemption requested.  Therefore, on May 22, 2018, the Trustee sent his responses to the five Optional Redemption Notices (the "Redemption Responses").

---

[8] The Trustee disputes the effectiveness of the Optional Redemption Notice.

[9] Nexpoint Strategic Opportunities Fund (f/k/a NexPoint Credit Strategies Fund) ("Nexpoint") and Drexel Limited ("Drexel") joined in one of the Optional Redemption Notices.  Like New ALF, Nexpoint is an affiliate of Highland.

[10] The Optional Redemption Notice for CLO-1 was issued by New ALF, Drexel Limited and NexPoint Strategic Opportunities Fund (f/k/a NexPoint Credit Strategies Fund). New ALF and Nexpoint are affiliates of Highland.

### 4. Letters to US Bank

21. US Bank, as indenture trustee under the Indentures, is responsible for remitting funds payable to Acis LP pursuant to the Indentures. On May 4, 2018, New ALF sent notice to US Bank (the "US Bank Notice") alleging that Acis LP was in material breach of the PMAs. New ALF demanded US Bank withhold all amounts payable to Acis LP. Upon information and belief, the amounts payable by US Bank to Acis under the Indentures and the PMAs is in excess of $4,000,000.00 (the "US Bank Funds"). Upon information and belief, US Bank has not paid Acis LP the amounts due and payable to Acis LP due to the statements made by New ALF that resulted in the issuance of the US Bank Notice. The Trustee is prepared to commence an action to compel the turnover of the US Bank Funds.

## V. OBJECTION

22. The Trustee may not be opposed to the rejection or termination of the Shared Services Agreement and Sub-Advisory Agreement. However, given the early juncture of this case and the fact that the Trustee was appointed less than 10 days ago, and is in the early stages of evaluating his options, the Compel Motion, and the relief requested thereby, is premature. Additionally, the grounds for which Highland seeks rejection of the Shared Services Agreement and Sub-Advisory Agreement are insufficient to compel rejection.

### A. Highland Does Not Have Sufficient Cause to Compel Rejection

23. The Bankruptcy Code allows the Debtors until plan confirmation to decide whether to assume or reject an executory contract.[11] "It is the clear policy of the Bankruptcy Code to provide the debtor with breathing space following the filing of a bankruptcy petition, continuing until the confirmation of a plan, in which to assume or reject an executory

---

[11] *See* 11 U.S.C. 365(d)(2)("[i]n a case under chapter 9, 11, 12, or 13 of this title, the trustee may assume or reject an executory contract or unexpired lease of residential real property or of personal property of the debtor at any time before the confirmation of a plan but the court, on the request of any party to such contract or lease, may order the trustee to determine within a specified period of time whether to assume or reject such contract or lease."

contract."[12] "Permitting a debtor to make its decision as late as plan confirmation enables the debtor to carefully evaluate the possible benefits and burdens of an executory contract."[13] "Where a party seeks to shorten the Debtor's statutory period to assume or reject, the burden is on the movant to demonstrate cause."[14] Here, Highland has not stated nor demonstrated sufficient cause to compel rejection of the Contracts.

**B.      The Trustee is Not Currently Seeking to Assign the PMAs, the Shared Services Agreement, or the Sub-Advisory Agreement**

24.      Highland filed the Compel Motion when these Cases were proceeding under Chapter 7 of the Bankruptcy Code. Highland's Compel Motion focuses on whether the Contracts are not assignable pursuant to 365(c)(1) of the Bankruptcy Code as in a Chapter 7 Case a trustee is practically limited to either rejecting the Contracts or assigning the Contracts. Regardless, the Trustee, at this time, is not seeking to assume and assign the Contracts.  In fact, the Trustee is in the process of retaining replacement sub-advisors and shared services providers. After the Trustee finds replacement sub-advisors and shared services providers, the Trustee intends to terminate the Contracts, under the expressed terms of the Contracts, and transition the services provided thereunder.

**C.      Highland Has Not Received Payment Due to Its Own Actions**

25.      Highland attempts to assert as cause that it has not received payment under the Contracts. In the Compel Motion, Highland states that Highland has not received payment under the Shared Services Agreement and Sub-Advisory Agreement since November 2017. Presumably, during the time between November 2017 and the Petition Date, Acis was controlled by James Dondero, the Chief Executive of Highland and President of Acis GP ("Mr.

---

[12] *In re Adelphia Communs. Corp.*, 291 B.R. 283, 292 (Bankr. S.D.N.Y. 2003).
[13] *In re Dana Corp.*, 350 B.R. 144, 147 (Bankr. S.D.N.Y. 2006).
[14] *In re Republic Techs. Int'l*, 267 B.R. 548, 554 (Bankr. N.D. Ohio 2001)

Dondero"),[15] and Highland[16] via the Shared Services Agreement and Sub-Advisory Agreement. The fact that Highland inexplicably failed to direct payment to itself during the period before the Petition Date has no bearing on the Compel Motion and should not now be used to attempt to demonstrate cause for rejection.

26.     During the time between the Petition Date and the Order for Relief (the "Gap Period"), Highland continued to control the Debtors. During the Gap Period, the Debtors were not prevented from paying Highland in the ordinary course of business, even though the 303(f) Order was entered, imposing Section 363 during the Gap Period. Section 363(b) of the Bankruptcy Code provides that the Debtors can operate in the ordinary course of business.[17] Highland again deliberately chose not to direct payment to itself.

27.     Additionally, since the Order for Relief was entered on April 13, 2018, New ALF, a Highland affiliate, sent the US Bank Notice. The US Bank Notice is a *de facto* garnishment, which has resulted in Acis LP not receiving over $4,000,000.00, a portion of which could have been used to pay for the amounts owed under the Contracts. Clearly, Highland does not have "clean hands"[18] when Highland, on one hand, fails to pay itself for months and then directs US Bank to freeze millions of dollars payable to Acis and, on the other hand, now complains about non-payment of its fees due to the US Bank Notice.

---

[15] On May 7, 2018, James Dondero, as President of Acis GP and Frank Waterhouse, as treasurer of Acis GP, resigned from their aforementioned officer positions at Acis GP.

[16] At the trial on the Involuntary Petitions, "Mr. Dondero testified that he has decision making authority for the Alleged Debtors but usually delegates that authority to Highland's in-house lawyers, Scott Ellington (General Counsel, Chief Legal Officer, and Partner of Highland) and Isaac Leventon (Assistant General Counsel of Highland) and is really involved in 'nitty gritty negotiations.'" Opinion at p. 15.

[17] 11 U.S.C § 363(b)("[t]he trustee, after notice and a hearing, may use, sell, or lease, other than in the ordinary course of business, property of the estate"); *In re C.W. Mining Co.,* No. 08-20105, 2008 Bankr. LEXIS 4840, *16 (Bankr. D. Utah Aug. 7, 2008) ("§ 303(f) allows the Court to 'prevent a debtor from controlling an asset [or assets] during the 'gap period' between the filing of the involuntary petition and the entry of an order for relief.' Requiring the Debtor to comply with the provisions of § 363, Rule 6004, and Rule 2002 when taking steps to act outside the ordinary course of business is not akin to an injunction and does not require the commencement of an adversary proceeding").

[18] A party asking a court for equitable relief "must come with clean hands." *Johnson v. Yellow Cab Transit Co.,* 321 U.S. 383, 387 (1944). "Specifically, the doctrine of unclean hands requires that a plaintiff shall have acted fairly and

---

### D.      Conflicting Fiduciary Duties

28.      The Trustee's alleged conflicting fiduciary duties do not support compelling the Trustee to reject the Contracts. The Bankruptcy Code and this Court are appropriate vehicles for dealing with any alleged conflicting fiduciary duties. In the event the Trustee feels there is a conflict between his duties to creditors and his duties to the Acis CLOs, he will seek Court guidance on such matters.

### VII.   PRAYER

The Trustee requests the entry of an order: (i) denying the Compel Motion; and (ii) granting the Trustee such other and further relief as may be just and proper.

**DATED: May 24, 2018.**

Respectfully submitted,

**WINSTEAD PC**
500 Winstead Building
2728 N. Harwood Street
Dallas, Texas 75201
(214) 745-5400 (Phone)
(214) 745-5390 (Facsimile)

By: */s/ Joe Wielebinski*
Rakhee V. Patel – SBT #00797213
e-mail:  rpatel@winstead.com
Phillip Lamberson – SBT #00794134
 e-mail:  plamberson@winstead.com
Joe Wielebinski – SBT #21432400
e-mail:  jwielebinski@winstead.com
Annmarie Chiarello – SBT #24097496
e-mail:  achiarello@winstead.com

**PROPOSED SPECIAL COUNSEL FOR**
**ROBIN PHELAN, CHAPTER 11 TRUSTEE**

-and-

Jeff P. Prostok
State Bar No. 16352500
J. Robert Forshey

---

without fraud or deceit as to the controversy in issue." *Northbay Wellness Grp., Inc. v. Beyries*, 789 F.3d 956, 959 (9th Cir. 2015)

---

State Bar No. 07264200
Suzanne K. Rosen
State Bar No. 00798518
Matthias Kleinsasser
State Bar No. 24071357
**FORSHEY & PROSTOK LLP**
777 Main St., Suite 1290
Ft. Worth, TX 76102
Telephone: (817) 877-8855
Facsimile: (817) 877-4151
jprostok@forsheyprostok.com
bforshey@forsheyprostok.com
srosen@forsheyprostok.com
mkleinsasser@forsheyprostok.com

**PROPOSED COUNSEL FOR
THE CHAPTER 11 TRUSTEE**

## CERTIFICATE OF SERVICE

I hereby certify that on May 24, 2018, notice of this document will be electronically mailed to the parties that are registered or otherwise entitled to receive electronic notices in this case pursuant to the Electronic Filing Procedures in this District.

*/s/ Annmarie Chiarello*
One of Counsel