# Exhibit 4A

# COLLATERAL ADMINISTRATION AGREEMENT

This COLLATERAL ADMINISTRATION AGREEMENT, dated as of March 18, 2013 (the "Agreement") is entered into by and among Acis CLO 2013-1 Ltd., an exempted company incorporated in the Cayman Islands with limited liability (the "Issuer"), Acis Capital Management, L.P., a Delaware limited partnership, in its capacity as Portfolio Manager under the Portfolio Management Agreement referred to below (the "Portfolio Manager"), and U.S. Bank National Association, a national banking association ("USB"), in its capacity as collateral administrator (the "Collateral Administrator").

**WITNESSETH:**

WHEREAS, the Issuer, USB, as trustee and Acis CLO 2013-1 LLC, as co-issuer (the "Co-Issuer"), have entered into an Indenture (the "Indenture") dated as of March 18, 2013, pursuant to which the Notes were issued;

WHEREAS, pursuant to the terms of the Indenture, the Issuer pledged certain collateral debt obligations and other assets (the "Assets") as security for the Secured Debt;

WHEREAS, the Portfolio Manager has entered into a Portfolio Management Agreement with the Issuer dated as of March 18, 2013, (the "Portfolio Management Agreement"), in connection with which the Portfolio Manager has agreed to provide certain services to the Issuer with respect to the Assets;

WHEREAS, the Issuer wishes to engage the Collateral Administrator to perform on its behalf certain administrative duties of the Issuer with respect to the Assets pursuant to the Indenture; and

WHEREAS, the Collateral Administrator, on behalf of the Issuer, is prepared to perform certain specified obligations of the Issuer under the Indenture and certain other services as specified herein.

NOW, THEREFORE, in consideration of the mutual covenants contained herein, and other good and valuable consideration the receipt of which is hereby acknowledged, the parties hereto agree as follows:

1. <u>Definitions</u>.

Capitalized terms not otherwise defined in this Agreement shall have the meanings set forth in the Indenture.

2. <u>Powers and Duties of the Collateral Administrator and the Portfolio Manager</u>.

(a) The Issuer hereby appoints as its agent USB in the capacity of Collateral Administrator and USB hereby accepts its appointment as the Issuer's agent and shall act in the capacity of Collateral Administrator for the Issuer until the earlier of USB's resignation or

removal pursuant to Section 7 hereof or termination of this Agreement pursuant to Section 6 hereof. The Collateral Administrator shall assist the Issuer and the Portfolio Manager in connection with monitoring the Assets on an ongoing basis and providing to the Issuer, the Portfolio Manager and certain other parties specified in the Indenture certain reports, schedules, calculations and other data, all as more particularly described in Section 2(b), which the Issuer (or the Portfolio Manager) is required to prepare and deliver under Article X of the Indenture. The Collateral Administrator's duties and authority to act as Collateral Administrator hereunder are limited to the duties and authority specifically provided for in this Agreement. The Collateral Administrator shall not be deemed to assume the obligations of the Issuer under the Indenture or of the Portfolio Manager under the Portfolio Management Agreement.

(b) The Collateral Administrator shall perform the following functions:

(i) Create an Asset database compromised of, among other things, the Collateral Obligations and Eligible Investments credited to the Accounts within 30 days of the Closing Date;

(ii) Permit access to any information in the Asset database by the Portfolio Manager and the Issuer in electronic form;

(iii) Update the Asset database promptly for ratings changes of any item of the Assets;

(iv) Update the Asset database promptly for Collateral Obligations and Eligible Investments acquired or sold or otherwise disposed of;

(v) Track the receipt and daily allocation to the Accounts of Interest Proceeds and Principal Proceeds and any withdrawals therefrom and, on each Bushiness Day, provide to the Portfolio Manager daily reports reflecting balances of the Accounts as of the close of business on the preceding Business Day;

(vi) Prepare and arrange for the delivery, within the timeframe set forth in the Indenture, of each Monthly Report, Distribution Report and the Interest Rate Notice, in each case in accordance with the Indenture;

(vii) Assist the Issuer and the Portfolio Manager in preparing the report required to be prepared pursuant to Section 7.18(c)(i) of the Indenture, on the basis of information contained in the Asset database or provided to the Collateral Administrator by the Portfolio Manager or the Issuer;

(viii) Assist the Independent certified public accountants in the preparation of those reports required under Section 10.9 of the Indenture;

(ix) Reasonably cooperate with the Issuer or the Portfolio Manager in providing the Rating Agencies with such additional information in the possession of the Collateral Administrator as may be reasonably requested by the Rating Agencies under Section 10.10 of the Indenture;

(x) Notify the Portfolio Manager upon receiving any documents, legal opinions or any other information including, without limitation, any notices, reports, requests for waiver, consent requests or any other requests relating to corporate actions affecting the Collateral Obligations and Eligible Investments; and

(xi) Provide the Portfolio Manager with such other information as may be reasonably requested by the Portfolio Manager and as is within the possession of the Collateral Administrator.

(c) Not later than two Business Days prior to the day on which each Monthly Report or Distribution Report is required to be provided by the Issuer pursuant to Section 10.7(a) or Section 10.7(b) of the Indenture, respectively, the Collateral Administrator shall prepare the Monthly Report or Distribution Report, as applicable, in accordance with the Indenture, using the information contained in the Asset database created by the Collateral Administrator pursuant to Section 2(b) above and any other Asset information normally maintained by USB, in its capacity as Trustee, and subject to the Collateral Administrator's receipt from the Portfolio Manager of such information as the Collateral Administrator shall reasonably request in order to prepare such Monthly Report or Distribution Report with respect to the Assets that is not contained in such Asset database or normally maintained by USB, as Trustee, each item required to be stated in such Monthly Report or Distribution Report in accordance with the Indenture.

(d) Not more than two Business Days after receiving an Issuer Request requesting information regarding redemption pursuant to Sections 9.2 and 9.6 of the Indenture, the Collateral Administrator shall compute the information required to be provided by the Issuer in the Redemption Date notice pursuant to Sections 9.3 and 9.6 of the Indenture.

(e) The Collateral Administrator shall assist the Portfolio Manager in the preparation of such other reports that may be required by the Indenture and that are reasonably requested in writing by the Portfolio Manager and agreed to by the Collateral Administrator.

(f) Upon written notification by the Portfolio Manager of a proposed purchase of any Collateral Obligation pursuant to Section 12.2 of the Indenture (accompanied by such information concerning the Collateral Obligation to be purchased as may be necessary to make the calculations referred to below), the Collateral Administrator shall calculate, on a pro forma basis, each criterion included in the Investment Criteria set forth in Section 12.2(a) of the Indenture as a condition to such purchase in accordance with the Indenture and provide the results of such calculations to the Portfolio Manager so that the Portfolio Manager may determine whether such purchase is permitted by the Indenture. The Collateral Administrator shall deliver a draft of such calculation to the Portfolio Manager to the extent possible promptly after the later of (i) notification of such proposed purchase by the Portfolio Manager and (ii) delivery of all information to the Collateral Administrator reasonably necessary to complete such calculations; provided such notification or information is received by 12:00 Noon (Chicago time) on such date; otherwise such notification or information will be deemed made at 9:00a.m. (Chicago time), on the next succeeding Business Day. For the avoidance of doubt, the Collateral Administrator shall have no obligation to determine whether any item of the Assets meets the definition of "Collateral Obligation".

3

(g) Upon written notification by the Portfolio Manager of a proposed sale of any Collateral Obligation pursuant to Section 12.1 of the Indenture (accompanied by the Portfolio Manager's designation of the subsection of Section 12.1 of the Indenture pursuant to which it proposes to effect such sale), the Collateral Administrator shall calculate each criterion set forth in the designated subsection of Section 12.1 of the Indenture, if any, as a condition to such disposition in accordance with the Indenture and provide the results of such calculations to the Portfolio Manager so that the Portfolio Manager may determine whether such sale is permitted by the Indenture. The Collateral Administrator shall deliver a draft of such calculations to the Portfolio Manager to the extent possible promptly after the later of (i) notification of such proposed sale by the Portfolio Manager and (ii) delivery of all information to the Collateral Administrator reasonably necessary to complete such calculations; provided such notification or information is received by 12:00 Noon (Chicago time) on such date; otherwise such notification or information will be deemed made at 9:00a.m. (Chicago time), on the next succeeding Business Day.

(h) In the event the Portfolio Manager does not provide the Collateral Administrator the items necessary to complete the calculations required by Sections 2(f) and (g) above and/or the Portfolio Manager proceeds with a sale or purchase of the applicable Collateral Obligations prior to the time the Collateral Administrator delivers such calculations, neither the Collateral Administrator nor the Trustee shall be responsible for determining whether the provisions of the Indenture have been satisfied and each of the Trustee and Collateral Administrator shall be entitled to conclusively rely upon the instructions of the Portfolio Manager in all respects, including but not limited to instructions (which may be in the form of trade tickets) to release the applicable Collateral Obligation from the lien of the Indenture or to acquire the applicable Collateral Obligations. In the event the Portfolio Manager consummates a sale or purchase prior to receiving the calculations of the Collateral Administrator, the Collateral Administrator shall be under no duty, and shall incur no liability, to perform the calculations set forth in Sections 2(f) and (g) above.

(i) The Portfolio Manager shall cooperate with the Collateral Administrator in connection with the preparation (including the calculations required hereunder) by the Collateral Administrator of all reports, instructions, statements, the Monthly Reports, Distribution Reports, notices of Redemption, and the certificates required in connection with the purchase and sale of Collateral Obligations under the Indenture. The Portfolio Manager shall review and verify the contents of the aforesaid reports, instructions, statements and certificates and to the extent any of the information in such reports, instructions, statements and certificates conflicts with data or calculations in the records of the Portfolio Manager, the Portfolio Manager shall notify the Collateral Administrator of such discrepancy and use commercially reasonable efforts to assist the Collateral Administrator in reconciling such discrepancy. The Collateral Administrator shall cooperate with the Portfolio Manager in connection with the Portfolio Manager's review of the contents of the aforesaid reports, instructions, statements and certificates and shall provide such items to the Portfolio Manager within a reasonably sufficient time (as agreed between the Portfolio Manager and the Collateral Administrator, but in any event no later than two Business Days) prior to any applicable due date to enable such review. The Portfolio Manager shall cooperate with the Collateral Administrator by answering questions posed by the Collateral Administrator that are reasonably related to such reports, instructions, statements and certificates to the extent the answers to such questions are within the knowledge

4

of the Portfolio Manager. Upon acknowledgment from the Portfolio Manager that it has completed its review, the Collateral Administrator shall transmit same to the Issuer for execution and shall distribute such reports, instructions, statements and certificates, after execution by the Issuer or the Portfolio Manager, as applicable.

If, in performing its duties under this Agreement, the Collateral Administrator is required to decide between alternative courses of action (each of which is consistent with provisions of this Agreement), the Collateral Administrator may request written instructions from the Portfolio Manager acting on behalf of the Issuer as to the appropriate course of action desired by it. If the Collateral Administrator does not receive such instructions within two Business Days after it has requested them, the Collateral Administrator may, but shall be under no duty to, take or refrain from taking any such courses of action. The Collateral Administrator shall act in accordance with instructions received after such two Business Day period except to the extent it has already taken, or committed itself to take, action inconsistent with such instructions. The Collateral Administrator shall be entitled to conclusively rely on the advice of legal counsel and Independent accountants in performing its duties hereunder and shall be deemed to have acted in good faith if it acts in accordance with such advice.

Nothing herein shall prevent the Collateral Administrator or any of its Affiliates from engaging in other businesses or from rendering services of any kind to any Person.

The Collateral Administrator shall have no obligation to determine Market Value or price in connection with any actions or duties under this Agreement.

3. Powers and Duties of the Information Agent.

(a) In connection with Section 10.10 of the Indenture, the Issuer hereby appoints the Collateral Administrator to act as its agent (the "Information Agent") and in so acting, the Information Agent shall have all the protections and benefits provided for the Collateral Administrator hereunder.

(b) The Information Agent shall make available on the 17g-5 Site (as defined in Section 10.10(f)(i) of the Indenture), solely to the Rating Agencies and to nationally recognized statistical rating organizations who deliver a certification in form and substance satisfactory to the Information Agent, the items that are delivered by the Co-Issuers, the Trustee or the Portfolio Manager (or their respective representatives or advisors) to the Information Agent by electronic mail to the following address: 17g5informationprovider@usbank.com (or by any alternative electronic mail address following notice to the parties hereto of such alternative electronic mail address or any other delivery method established by the Information Agent if or as may be necessary or beneficial). The Information Agent shall post information to the 17g-5 Site on the same Business Day of receipt; provided that such information is received by 12:00 p.m. (Eastern time) or, if received after 12:00 p.m. (Eastern time), on the next Business Day. Any electronic mail message sent to the Information Agent with items for posting to the 17g-5 Site shall include "ACIS 2013-1" in the subject line of such electronic mail message and shall contain in the body of such electronic mail message an identification of the type of information being provided. Each e-mail sent to the Information Agent pursuant to this Agreement or the Indenture failing to be sent to the e-mail address specified above or failing to conform to the

5

foregoing requirements of this paragraph shall be deemed incomplete and the Information Agent shall have no obligations with respect thereto.

(c) The Information Agent's posting of information to the 17g-5 Site is ministerial in nature only, and the Information Agent shall have no obligation or duty to verify, confirm or otherwise determine whether any information being delivered for posting to the 17g-5 Site is accurate, complete, conforms to the terms of the Indenture or related transaction documents, conforms to the requirements of Rule 17g-5 of the Exchange Act or otherwise is or is not anything other than what it purports to be. In the event that any information is delivered or posted in error, the Information Agent may remove such information from the 17g-5 Site. The Collateral Administrator, the Trustee and the Information Agent have not obtained and shall not be deemed to have obtained actual knowledge of any information merely by posting such information to the 17g-5 Site to the extent such information was not produced by the Collateral Administrator, the Trustee or the Information Agent, as applicable.

(d) In connection with providing access to the 17g-5 Site, the Information Agent may require registration and the acceptance of a disclaimer. The Information Agent shall not be liable for the dissemination of information in accordance with the terms of this Agreement, makes no representations or warranties as to the accuracy or completeness of such information being made available, and assume no responsibility for such information, except to the extent such information is prepared by the Trustee or the Collateral Administrator pursuant to the term of this Agreement or the Indenture.

4. <u>Compensation</u>. The Issuer agrees to pay, and the Collateral Administrator shall be entitled to receive, as compensation for the Collateral Administrator's performance of the duties called for herein, including those of the Information Agent, the amounts set forth in the USB fee letter dated on June 19, 2012**.** The Issuer shall further reimburse the Collateral Administrator for all reasonable out-of-pocket expenses incurred in connection with the performance of its obligations hereunder. All payments hereunder shall be paid subject to and in accordance with Section 11.1(a) of the Indenture.

5. <u>Limitation of Responsibility of the Collateral Administrator</u>.

(a) The Collateral Administrator will have no responsibility under this Agreement other than to render the services called for hereunder in good faith and without willful misconduct or gross negligence in the performance of, or reckless disregard of, its duties hereunder. The Collateral Administrator shall incur no liability to anyone in acting upon any signature, instrument, statement, notice, resolution, request, direction, consent, order, certificate, report, opinion, bond or other document or paper reasonably believed by it to be genuine and reasonably believed by it to be signed by the proper party or parties. The Collateral Administrator may exercise any of its rights or powers hereunder or perform any of its duties hereunder either directly or by or through agents or attorneys, and the Collateral Administrator shall not be responsible for any misconduct or negligence on the part of any agent or attorney appointed hereunder with due care by it. Neither the Collateral Administrator nor any of its affiliates, directors, officers, shareholders, agents or employees shall be liable to the Portfolio Manager, the Issuer or others, except by reason of acts or omissions constituting bad faith, willful misconduct or gross negligence in the performance of, or reckless disregard of the

6

Collateral Administrator's duties hereunder. The Issuer will reimburse, indemnify and hold harmless the Collateral Administrator, and its affiliates, directors, officers, shareholders, agents, members and employees with respect to all expenses, losses, damages, liabilities, demands, charges and claims of any nature (including the reasonable fees and expenses of counsel and other experts) in respect of or arising from any acts or omissions performed or omitted by the Collateral Administrator, its affiliates, directors, officers, shareholders, agents, members or employees hereunder in good faith and without willful misconduct or gross negligence in the performance of, or reckless disregard of the Collateral Administrator' duties hereunder. Such indemnification will be paid subject to and in accordance with Section 11.1 of the Indenture.

(b) The Collateral Administrator shall reimburse, indemnify and hold harmless the Issuer and its respective affiliates, directors, managers, officers, shareholders, agents, members and employees with respect to all expenses, losses, damages, liabilities, demands, charges and claims of any nature (including the reasonable fees and expenses of counsel) to the extent arising out of any acts or omissions performed or omitted by the Portfolio Manager or any employees, agents or subcontractors thereof, in bad faith or constituting willful misconduct, gross negligence in the performance of, or reckless disregard of the Collateral Administrator's duties hereunder.

(c) Anything in this Agreement notwithstanding, in no event shall the Collateral Administrator be liable for special, punitive indirect or consequential loss or damage of any kind whatsoever (including but not limited to lost profits), even if the Collateral Administrator has been advised of such loss or damage and regardless of the form of action.

(d) Nothing herein shall in any way constitute a waiver or limitation of any rights which the Issuer may have under any U.S. federal or state securities laws.

6. <u>No Joint Venture</u>. Nothing contained in this Agreement (a) shall constitute the Collateral Administrator, the Issuer and the Portfolio Manager as members of any partnership, joint venture, association, syndicate, unincorporated business or other separate entity, (b) shall be construed to impose any liability as such on any of them or (c) shall be deemed to confer on any of them any express, implied or apparent authority to incur any obligation or liability on behalf of any other.

7. <u>Term</u>. This Agreement shall continue in effect so long as the Indenture remains in effect with respect to the Notes, unless this Agreement has been previously terminated in accordance with Section 7 hereof; provided that the Collateral Administrator and the Portfolio Manager shall be released from their respective obligations hereunder upon such party's ceasing to act as Collateral Administrator or Portfolio Manager, as applicable. Notwithstanding the foregoing, the indemnification obligations of the Issuer and Collateral Administrator under Section 5 hereof shall survive the termination of this Agreement, the resignation or removal of the Collateral Administrator or the release of any party hereto with respect to matters, in the case of the indemnification obligations of the Collateral Administrator, occurring prior to such termination, resignation, removal or release.

8. <u>Termination</u>.

(a) This Agreement may be terminated without cause by any party hereto upon not less than 30 days' prior written notice to each other party hereto.

(b) If at any time prior to payment in full of the Notes, USB shall resign or be removed as Trustee under Section 16.9 of the Indenture, such resignation or removal shall be deemed a resignation or removal of the Collateral Administrator hereunder (without any requirement for notice pursuant to Section 7(e) hereof).

(c) At the option of the Portfolio Manager or the Issuer, this Agreement shall be terminated upon ten days' written notice of termination from the Portfolio Manager or the Issuer to the Collateral Administrator and the Issuer or the Portfolio Manager, as applicable, if any of the following events shall occur:

(i) The Collateral Administrator shall default in the performance of any of its material duties under this Agreement and shall not cure such default within twenty days of receipt of written notice thereof (or, if such default cannot be cured in such time, shall not give within twenty days such assurance of the cure of such default as shall be reasonably satisfactory to the Portfolio Manager and the Issuer);

(ii) The Collateral Administrator is dissolved (other than pursuant to a consolidation, amalgamation or merger) or has a resolution passed for its winding-up, official management or liquidation (other than pursuant to a consolidation, amalgamation or merger);

(iii) A court having jurisdiction in the premises shall enter a decree or order for relief in respect of the Collateral Administrator in any involuntary case under any applicable bankruptcy, insolvency or other similar law now or hereafter in effect, or appoint a receiver, conservator, liquidator, assignee, custodian, trustee, sequestrator (or similar official) of the Collateral Administrator or for any substantial part of its property, or order the winding-up or liquidation of its affairs; or

(iv) The Collateral Administrator shall commence a voluntary case under applicable bankruptcy, insolvency or other similar law now or hereafter in effect, or shall consent to the entry of an order for relief in an involuntary case under any such law, or shall consent to the appointment of or taking possession by a receiver, conservator, liquidator, assignee, trustee, custodian, sequestrator (or similar official) of the Collateral Administrator or for any substantial part of its property, or shall make any general assignment for the benefit of creditors, or shall fail generally to pay its debts as they become due.

If any of the events specified in clauses (ii), (iii) or (iv) of subsection (c) of this Section 7 shall occur, the Collateral Administrator shall give written notice thereof to the Portfolio Manager and the Issuer within five Business Days after the happening of such event.

(d) Except when the Collateral Administrator shall be removed pursuant to subsection (c) of this Section 7 or shall resign pursuant to subsection (e) of this Section 7, no removal or resignation of the Collateral Administrator shall be effective until the date as of which a successor collateral administrator reasonably acceptable to the Portfolio Manager and

the Issuer shall have agreed in writing to assume all of the Collateral Administrator's duties and obligations pursuant to this Agreement and shall have executed and delivered an agreement in form and content reasonably satisfactory to the Issuer and the Portfolio Manager.

(e) Notwithstanding the foregoing, the Collateral Administrator may resign its duties hereunder without any requirement that a successor collateral administrator be obligated hereunder and without any liability for further performance of any duties hereunder upon at least 30 days' prior written notice to the Portfolio Manager and the Issuer of termination upon the occurrence of any of the following events and the failure to cure such event within such 30 day notice period: (i) failure of the Issuer to pay any of the amounts specified in Section 3 hereof within 30 days after such amount is due pursuant to Section 3 hereof to the extent that amounts thereof are available therefor under Section 11.1(a) of the Indenture or (ii) failure of the Issuer to provide any indemnity payment or expense reimbursement payable to the Collateral Administrator hereunder within 30 days of the receipt by the Issuer of a written request for such payment or reimbursement.

(f) Subject to Section 7(d), at any time that the Collateral Administrator is the same institution as the Trustee, the Collateral Administrator hereby agrees that upon the appointment of a successor trustee pursuant to Section 6.9 of the Indenture, the Collateral Administrator shall immediately resign and such successor Trustee shall automatically become the Collateral Administrator under this Agreement.  Any such successor Trustee shall be required to agree to assume the duties of the Collateral Administrator under the terms and conditions of this Agreement in its acceptance of appointment as successor Trustee.

(g) Promptly upon the effective date of termination of this Agreement pursuant to Section 6 or resignation or removal of the Collateral Administration pursuant to Section 7, the Collateral Administrator shall forthwith deliver to, or as directed by, the Issuer all property and documents of or relating to the Assets then in the custody of the Collateral Administrator, and the Collateral Administrator shall cooperate with the Issuer and any successor Collateral Administrator in making an orderly transfer of the duties of the Collateral Administrator.

9. Representations and Warranties.

(a) The Issuer hereby represents and warrants to the Collateral Administrator and the Portfolio Manager as follows:

(i) The Issuer has been duly registered and is validly existing and in good standing under the laws of the Cayman Islands.  The Issuer has the full power and authority to execute, deliver and perform this Agreement and all obligations required hereunder and has taken all necessary action to authorize this Agreement on the terms and conditions hereof on behalf of itself and for the Issuer, the execution, delivery and performance of this Agreement and the performance of all obligations imposed upon the Issuer hereunder.  No consent of any other Person including, without limitation, limited partners and creditors of the Issuer, and no license, permit, approval or authorization of, exemption by, notice or report to, or registration, filing or declaration with, any governmental authority is required by the Issuer in connection with this Agreement or the

9

execution, delivery, performance, validity or enforceability of this Agreement and the obligations imposed upon the Issuer hereunder, with respect to which the failure to obtain or make the same would materially adversely effect the Issuer's ability to perform its obligations under this Agreement, other than those which have been obtained or made. This Agreement constitutes the legally valid and binding obligation of the Issuer enforceable against the Issuer in accordance with its terms subject, as to enforcement, (A) to the effect of bankruptcy, insolvency or similar laws affecting generally the enforcement of creditors' rights as such laws would apply in the event of any bankruptcy, receivership, insolvency or similar event applicable to the Issuer and (B) to general equitable principles (whether enforceability of such principles is considered in a proceeding at law or in equity).

(ii) The execution, delivery and performance of this Agreement will not violate any provision of any existing law or regulation binding on the Issuer, or any order, judgment, award or decree of any court, arbitrator or governmental authority binding on the Issuer, or the governing instruments of, or any securities issued by, the Issuer or of any mortgage, indenture, lease, contract or other agreement, instrument or undertaking to which the Issuer is a party or by which the Issuer or any of its assets may be bound, the violation of which would have a material adverse effect on the business, operations, assets or financial condition of the Issuer and will not result in, or require, the creation or imposition of any lien on any of its property, assets or revenues pursuant to the provisions of any such mortgage, indenture, lease, contract or other agreement, instrument or undertaking.

(b) The Portfolio Manager hereby represents and warrants to the Collateral Administrator and the Issuer as follows:

(i) The Portfolio Manager has been duly organized and is validly existing and in good standing under the laws of the State of Delaware and has the full power and authority to execute, deliver and perform this Agreement and all obligations required hereunder and has taken all necessary action to authorize this Agreement on the terms and conditions hereof, the execution, delivery and performance of this Agreement and the performance of all obligations imposed upon it hereunder. No consent of any other Person including, without limitation, partners, managers and creditors of the Portfolio Manager, and no license, permit, approval or authorization of, exemption by, notice or report to, or registration, filing or declaration with, any governmental authority is required by the Portfolio Manager in connection with this Agreement or the execution, delivery, performance, validity or enforceability of this Agreement and the obligations imposed upon the Portfolio Manager hereunder, with respect to which the failure to obtain or make the same would materially adversely effect the Portfolio Manager's ability to perform its obligations under this Agreement, other than those which have been obtained or made. This Agreement constitutes, and each instrument and document required hereunder when executed and delivered by the Portfolio Manager hereunder, will constitute the legally valid and binding obligation of the Portfolio Manager enforceable against the Portfolio Manager in accordance with its terms subject, as to enforcement, (A) to the effect of bankruptcy, insolvency or similar laws affecting generally the enforcement of creditors' rights as such laws would apply in the event of

10

any bankruptcy, receivership, insolvency or similar event applicable to the Portfolio Manager and (B) to general equitable principles (whether enforceability of such principles is considered in a proceeding at law or in equity).

(ii) The execution, delivery and performance of this Agreement and the documents and instruments required hereunder by the Portfolio Manager will not violate any provision of any existing law or regulation binding on the Portfolio Manager, or any order, judgment, award or decree of any court, arbitrator or governmental authority binding on the Portfolio Manager, or the governing instruments of, or any securities issued by, the Portfolio Manager or of any mortgage, indenture, lease, contract or other agreement, instrument or undertaking to which the Portfolio Manager is a party or by which the Portfolio Manager or any of its assets may be bound, the violation of which would have a material adverse effect on the business, operations, assets or financial condition of the Portfolio Manager and will not result in, or require, the creation or imposition of any lien on any of its property, assets or revenues pursuant to the provisions of any such mortgage, indenture, lease, contract or other agreement, instrument or undertaking.

(c) The Collateral Administrator hereby represents and warrants to the Portfolio Manager and the Issuer as follows:

(i) The Collateral Administrator is a national banking association with trust powers duly organized and validly existing under the laws of the United States of America and has the full corporate power and authority to execute, deliver and perform this Agreement and all its obligations required hereunder and has taken all necessary action to authorize this Agreement on the terms and conditions hereof, the execution, delivery and performance of this Agreement and all its obligations required hereunder. No consent, approval, authorization or other action by or filing with any United States federal agency or other governmental body under any United States federal regulation or law, having jurisdiction over the banking or trust powers of USB, is required by the Collateral Administrator in connection with this Agreement or the execution, delivery, performance, validity or enforceability of this Agreement and the obligations imposed upon it hereunder with respect to which the failure to obtain or make the same would materially adversely effect the Collateral Administrator's ability to perform its obligations under this Agreement. This Agreement constitutes, and each instrument and document required hereunder, when executed and delivered by the Collateral Administrator hereunder will constitute the legally valid and binding obligation of the Collateral Administrator enforceable against the Collateral Administrator in accordance with its terms subject, as to enforcement, (A) to the effect of bankruptcy, insolvency, reorganization, moratorium, liquidation or other similar laws affecting generally the enforcement of creditors' rights as such laws would apply in the event of any bankruptcy, receivership, insolvency, reorganization, moratorium, liquidation or other similar event applicable to the Collateral Administrator and (B) to general principles of equity, including, without limitation, concepts of materiality, reasonableness, good faith and fair dealing (whether enforceability of such principles is considered in a proceeding at law or in equity).

(ii) The execution, delivery and performance by the Collateral Administrator of this Agreement and the documents and instruments required hereunder will not violate any provision of any existing law or regulation binding on the Collateral Administrator, or any order, judgment, award or decree of any court, arbitrator or governmental authority binding on the Collateral Administrator, or the certificate or articles of association or incorporation or by-laws of the Collateral Administrator or of any mortgage, indenture, lease, contract or other agreement, instrument or undertaking to which the Collateral Administrator is a party or by which the Collateral Administrator or any of its assets may be bound, the violation of which would have a material adverse effect on the business, operations, assets or financial condition of the Collateral Administrator and will not result in, or require, the creation or imposition of any lien on any of its property, assets or revenues pursuant to the provisions of any such mortgage, indenture, lease, contract or other agreement, instrument or undertaking.

10. <u>Amendments</u>. This Agreement may not be amended, changed, modified or terminated (except as otherwise expressly provided herein) except by the Portfolio Manager, the Issuer and the Collateral Administrator in writing. Promptly after the execution of any amendment hereto, the Issuer shall deliver a notice thereof to the Rating Agencies as required under the Indenture.

11. <u>Waiver</u>. No failure on the part of any party hereto to exercise and no delay in exercising, and no course of dealing with respect to, any right, power or privilege under this Agreement shall operate as a waiver thereof, nor shall any single or partial exercise of any right, power or privilege under this Agreement preclude any other or further exercise thereof or the exercise of any other right, power or privilege.

12. <u>Governing Law</u>. **THIS AGREEMENT AND ALL DISPUTES ARISING HEREFROM OR RELATING HERETO (WHETHER IN CONTRACT, TORT OR OTHERWISE) SHALL BE GOVERNED BY AND CONSTRUED IN CONFORMITY WITH THE LAWS OF THE STATE OF NEW YORK WITH RESPECT TO AGREEMENTS MADE AND TO BE PERFORMED THEREIN WITHOUT REGARD TO CONFLICT OF LAWS PRINCIPLES THEREOF THAT COULD RESULT IN THE APPLICATION OF ANY LAW OTHER THAN THE LAW OF THE STATE OF NEW YORK.**

13. <u>Notices</u>. Except as otherwise provided herein, the Collateral Administrator agrees to accept and act upon instructions or directions pursuant to this Agreement sent by e-mail, facsimile transmission or other similar electronic methods; provided, however, that the Issuer and the Portfolio Manager shall provide to the Collateral Administrator an incumbency certificate listing persons designated to provide such instructions or directions, which incumbency certificate shall be amended whenever a person is to be added or deleted from the listing. If the Issuer or the Portfolio Manager elects to give the Collateral Administrator e-mail or facsimile instructions (or instructions by a similar electronic method) and the Collateral Administrator in its discretion elects to act upon such instructions, the Collateral Administrator's reasonable understanding of such instructions shall be deemed controlling. The Collateral Administrator shall not be liable for any losses, costs or expenses arising directly or indirectly from the Collateral Administrator's reliance upon and compliance with such instructions

notwithstanding such instructions conflicting with or being inconsistent with a subsequent written instruction. Each of the Issuer and the Portfolio Manager agree to assume all risks arising out of the use of such electronic methods to submit instructions and directions to the Collateral Administrator, including without limitation the risk of the Collateral Administrator acting in good faith on unauthorized instructions, and the risk of interception and misuse by third parties. Any notice, instruction or other instrument required or permitted to be given hereunder may be delivered in person to the offices of the parties as set forth herein during normal business hours, or delivered prepaid registered mail or by telex, electronic mail, cable or facsimile to the parties at the following addresses or such other address as may be notified by either party from time to time. All notices, requests, directions and other communications permitted or required hereunder shall be in writing and shall be deemed to have been duly given when received.

    If to the Collateral Administrator, to:

U.S. Bank National Association
190 South LaSalle Street, 10th Floor
Chicago, Illinois 60603
Attention: Corporate Trust Services – ACIS CLO 2013-1
Telecopy: (312) 332-8030
E-mail:  acis.clo.2013.01@usbank.com


    If to the Issuer, to:

Acis CLO 2013-1 Ltd.
c/o Appleby Trust (Cayman) Ltd.
Clifton House
75 Fort Street, P.O. Box 1350
Grand Cayman, KY1-1108
Cayman Islands
Attn.:     The Directors
Telephone:     (345) 949-4900
Telecopy:      (345) 949-4901
Email:         atclsf@applebyglobal.com



    If to the Portfolio Manager, to:

Acis Capital Management, L.P.
300 Crescent Court
Suite 700
Dallas, Texas 75201
Attn.:         Portfolio Management – Acis CLO 2013-1
Telephone:     (972) 628-4100
Telecopy:      (972) 628-4147
Email:         jterry@hcmlp.com; hcovitz@hcmlp.com

13

14. <u>Successors and Assigns; Assignments</u>.  Any corporation or association into which the Collateral Administrator may be merged or converted or with which it may be consolidated, or any corporation or association resulting from any merger, conversion or consolidation to which the Collateral Administrator shall be a party, or any corporation or association to which all or substantially all of the corporate trust business of the Collateral Administrator may be sold or otherwise transferred, shall be the successor Collateral Administrator hereunder without any further act. This Agreement shall inure to the benefit of, and be binding upon, the successors and assigns of each of the Portfolio Manager, the Issuer, and the Collateral Administrator. No party hereto may assign or delegate any of its rights or obligations under this Agreement (whether by way of security or otherwise) without the prior written consent of the other parties hereto; provided (a) that the Issuer may grant a lien on its rights hereunder as provided in the Indenture and the Collateral Administrator and the Portfolio Manager hereby acknowledge and consent to the creation of such lien, (b) the Collateral Administrator may, in accordance with Section 4(a) hereunder, delegate to, employ as agent, or otherwise cause any duty or obligation hereunder to be performed by, an agent without the prior written consent of the Portfolio Manager and the Issuer, provided that, except as otherwise provided herein, the Collateral Administrator shall remain directly liable to the Issuer and to the Portfolio Manager for the performance of its duties and the fulfillment of its obligations hereunder, and (c) the Portfolio Manager may delegate or assign its duties hereunder upon the same terms and conditions for delegation and assignment as are set forth in the Portfolio Management Agreement.

15. <u>Counterparts</u>.  The parties hereto agree that the execution of this Agreement may be completed by the exchange of facsimile or PDF signature pages, with the exchange of originally executed copies to be completed as soon as reasonably possible thereafter.  The parties hereto further agree that this Agreement may be executed in any number of counterparts, each of which shall be deemed to be an original, but all of which together shall constitute but one and the same instrument.

16. <u>Conflict with the Indenture</u>.  If this Agreement shall require that any action be taken with respect to any matter and the Indenture shall require that a different action be taken with respect to such matter, and such actions shall be mutually exclusive, or if this Agreement should otherwise conflict with the Indenture, the Indenture shall govern.

17. <u>Conditions Precedent</u>.  The rights and obligations of the parties to this Agreement shall become effective upon execution and delivery of (a) this Agreement, (b) the Portfolio Management Agreement, and (c) the Indenture.

18. <u>Jurisdiction</u>.  The parties hereto hereby irrevocably submit to the non-exclusive jurisdiction of any New York State or Federal court sitting in the Borough of Manhattan in the City of New York in any Proceeding arising out of or relating to this Agreement, and the parties hereby irrevocably agree that all claims in respect of any such Proceeding may be heard and determined in any such New York State or Federal court. The parties hereby irrevocably waive, to the fullest extent that they may legally do so, the defense of an inconvenient forum to the maintenance of such Proceeding. The parties irrevocably consent to the service of process in any Proceeding by the mailing or delivery of copies of such process as set forth in Section 13 hereof. The parties agree that a final non-appealable judgment in any such

Proceeding shall be conclusive and may be enforced in other jurisdictions by suit on the judgment or in any other manner provided by law.

19.     Survival.  Notwithstanding any term herein to the contrary, all indemnifications set forth or provided for in this Agreement, together with Sections 3, 4 and 20 of this Agreement, shall survive the termination of this Agreement and the resignation or removal of the Collateral Administrator.

20.     Waiver of Jury Trial Right.  EACH PARTY HEREBY IRREVOCABLY WAIVES, TO THE FULLEST EXTENT PERMITTED BY APPLICABLE LAW, ANY AND ALL RIGHT THAT IT MAY HAVE TO A TRIAL BY JURY (BUT NO OTHER JUDICIAL REMEDIES) IN RESPECT OF ANY PROCEEDING ARISING OUT OF OR RELATING TO THIS AGREEMENT AND THE TRANSACTIONS CONTEMPLATED HEREBY.

21.     Bankruptcy Non-Petition and Limited Recourse.  Notwithstanding any other provision of this Agreement, (i) the Collateral Administrator and the Portfolio Manager may not, prior to the date which is one year (or the then applicable preference period) and one day after the payment in full of all the Notes, institute against, or join any other Person in instituting against the Issuer, any bankruptcy, reorganization, arrangement, insolvency, moratorium or liquidation proceedings, or other proceedings under United States federal or state bankruptcy laws, or any similar laws, (ii) the Issuer's obligations hereunder will be solely the corporate obligations of the Issuer, and the Collateral Administrator and the Portfolio Manager will not have any recourse to any of the directors, officers, employees, members, managers, governors or Affiliates of the Issuer with respect to any claims, losses, damages, liabilities, indemnities or other obligations in connection with any transactions contemplated hereby and (iii) the obligations of the Issuer hereunder shall be limited to the net proceeds of the Assets (if any), and following realization of the Assets and its application in accordance with the Indenture, any outstanding obligations of the Issuer hereunder, and any claims in respect thereof, shall be extinguished and shall not thereafter revive.  This paragraph shall survive the termination of this Agreement.

22.     Severability.  Any provision of this Agreement that is prohibited or unenforceable in any jurisdiction shall be ineffective to the extent of such prohibition or unenforceability without invalidating the remaining provisions hereof and such prohibition or unenforceability in any jurisdiction shall not invalidate or render unenforceable such provision in any other jurisdiction.

[Remainder of page intentionally blank.]

SK 03687 0125 1307118 v4

IN WITNESS WHEREOF, the parties hereto have caused this Collateral Administration Agreement to be executed effective as of the day and year first above written.

ACIS CLO 2013-1 LTD., as Issuer

By: _____
Name: ____David Boyd_____
Title: ____Director_____


U.S. BANK NATIONAL ASSOCIATION, as
Collateral Administrator

By: _____
Name: _____
Title: _____


ACIS CAPITAL MANAGEMENT, L.P., as
Portfolio Manager

By: _____
Name: _____
Title: _____

IN WITNESS WHEREOF, the parties hereto have caused this Collateral Administration Agreement to be executed effective as of the day and year first above written.

ACIS CLO 2013-1 LTD., as Issuer

By: _____
Name: _____
Title: _____


U.S. BANK NATIONAL ASSOCIATION, as Collateral Administrator

By: _[signature]_____
Name: _LOUIS J. MARCOTTE_____
Title: _ASSISTANT VICE PRESIDENT_____


ACIS CAPITAL MANAGEMENT, L.P., as Portfolio Manager

By: _____
Name: _____
Title: _____

IN WITNESS WHEREOF, the parties hereto have caused this Collateral Administration Agreement to be executed effective as of the day and year first above written.

ACIS CLO 2013-1 LTD., as Issuer

By: _____
Name: _____
Title: _____

U.S. BANK NATIONAL ASSOCIATION, as Collateral Administrator

By: _____
Name: _____
Title: _____

ACIS CAPITAL MANAGEMENT, L.P., as Portfolio Manager

By: _____/s/_____
Name: _____
Title: _____