Rakhee V. Patel – State Bar No. 00797213
Phillip Lamberson – State Bar No. 00794134
Joe Wielebinski – State Bar No. 21432400
Annmarie Chiarello – State Bar No. 24097496
**WINSTEAD PC**
500 Winstead Building
2728 N. Harwood Street
Dallas, Texas 75201
Telephone: (214) 745-5400
Facsimile: (214) 745-5390
rpatel@winstead.com
plamberson@winstead.com
jwielebinski@winstead.com
achiarello@winstead.com

**PROPOSED SPECIAL COUNSEL FOR
ROBIN PHELAN, CHAPTER 11 TRUSTEE**

Jeff P. Prostok – State Bar No. 16352500
J. Robert Forshey – State Bar No. 07264200
Suzanne K. Rosen – State Bar No. 00798518
Matthias Kleinsasser – State Bar No. 24071357
**FORSHEY & PROSTOK LLP**
777 Main St., Suite 1290
Ft. Worth, TX 76102
Telephone: (817) 877-8855
Facsimile: (817) 877-4151
jprostok@forsheyprostok.com
bforshey@forsheyprostok.com
srosen@forsheyprostok.com
mkleinsasser@forsheyprostok.com

**PROPOSED COUNSEL FOR
THE CHAPTER 11 TRUSTEE**

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE NORTHERN DISTRICT OF TEXAS
## DALLAS DIVISION

| | | |
|---|---|---|
| IN RE: | § | Case No. 18-30264-SGJ-11 |
| | § | Case No. 18-30265-SGJ-11 |
| **ACIS CAPITAL MANAGEMENT, L.P.,** | § | |
| **ACIS CAPITAL MANAGEMENT GP,** | § | **(Jointly Administered Under Case** |
| **LLC,** | § | **No. 18-30264-SGJ-11)** |
| | § | |
| DEBTORS. | § | Chapter 11 |

### EMERGENCY MOTION TO APPROVE BREAK-UP FEE, EXPENSE REIMBURSEMENT, AND REPLACEMENT SUB-ADVISORY AND SHARED SERVICES PROVIDER, OAKTREE CAPITAL MANAGEMENT, L.P.

Robin Phelan (the "Trustee"), the Chapter 11 Trustee of Acis Capital Management, L.P.

("Acis LP") and Acis Capital Management GP, LLC ("Acis GP," together with Acis LP, the

"Debtors" or "Acis"), the Debtors in the above-styled and numbered bankruptcy cases (the

"Cases"), files this *Emergency Motion to Approve Break-Up Fee, Expense Reimbursement, and*

EMERGENCY MOTION TO APPROVE BREAK-UP FEE, EXPENSE REIMBURSEMENT, AND
REPLACEMENT SUB-ADVISORY AND SHARED SERVICES PROVIDER, OAKTREE CAPITAL
MANAGEMENT, L.P.

4818-0799-0119v.13

62112-1 6/8/2018

*Replacement Sub-Advisory and Shared Services Provider, Oaktree Capital Management, L.P.*

(the "Motion").  In support of the Motion, the Debtors respectfully represent as follows:

## I.    INTRODUCTION[1]

1.      As threatened prior to entry of the orders for relief in the above reference cases,[2] the subordinated noteholders (under the demand and ultimate control of Highland Capital Management, L.P. ("Highland")) have called for a redemption, or total liquidation, of the five (5) Acis CLOs.  The redemption and liquidation would result in the complete cessation of the five (5) Acis CLOs and return of $3.5 billion invested in various tranches of debt, most of which are senior to the subordinated notes.

2.      Acis has approximately $11.5 million in scheduled creditors.[3]  If the redemption is effectuated, Acis's most valuable assets, the PMAs, will have their value eviscerated and the creditors will be left with the prospect of expensive and protracted litigation.

3.      The Trustee has executed a Commitment Letter (the "Commitment Letter") with Oaktree Capital Management, L.P. ("Oaktree") whereby Oaktree would:  (i) be transferred the subordinated equity in the Transaction CLOs at a premium above the redemption value; (ii) pay value for Acis LP's rights, title and interests in the Transaction PMAs; (iii) take over providing the services currently provided by Highland under the Sub-Advisory Agreement and the Shared Services Agreement within 30 days, at a fraction of the cost currently being charged by Highland (the "Transaction").  A true and correct copy of the Commitment Letter is attached hereto as

---

[1] Capitalized terms not defined in the Introduction have the meaning(s) ascribed to such terms later in the Motion.
[2] Acis contested vigorously contested the Involuntary Petitions. Between the Petition Date and the Relief Date, the Court held numerous hearings.
[3] The Trustee reserves all right to contest or otherwise object to the schedule creditors.

**EMERGENCY MOTION TO APPROVE BREAK-UP FEE, EXPENSE REIMBURSEMENT, AND REPLACEMENT SUB-ADVISORY AND SHARED SERVICES PROVIDER, OAKTREE CAPITAL MANAGEMENT, L.P.**

4818-0799-0119v.13

62112-1 6/8/2018

Exhibit "A". The Transaction, if consummated, will provide a return to all holders of the subordinated notes **in excess** of what they would receive in an optional redemption and pay all Acis's allowed creditors in full[4]. The Trustee intends to effectuate such Transaction via a Chapter 11 plan.

4.        The Transaction overall requires the approval of the Break-Up Fee and Expense Reimbursement.  The Break-Up Fee and Expense Reimbursement and the agreement to pay the Break-Up Fee and Expense Reimbursement represents a sound exercise of the Trustee's business judgment, are necessary and essential to maximize the value of the Debtors' estates, and are in the best interests of the Debtors' estates and their creditors. Approval is also sought to allow Oaktree to replace Highland the Sub-Advisory Agreement and the Shared Services Agreement as soon as practicable.

## II.        JURISDICTION AND VENUE

5.        The Court has jurisdiction over this Motion pursuant to 28 U.S.C. §§ 157 and 1334.  This matter is a core proceeding pursuant to 28 U.S.C. § 157(b)(2).

6.        Venue in this Court is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

7.        The bases for the relief requested herein are Sections 105, 363(b) and 503(b)(1) of 11 U.S.C. §§ 101 *et seq.* (the "Bankruptcy Code") and Rules 2002 and 9014 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules").

---

[4] Based upon current projected and known claims and also based on expeditious plan confirmation.

**EMERGENCY MOTION TO APPROVE BREAK-UP FEE, EXPENSE REIMBURSEMENT, AND REPLACEMENT SUB-ADVISORY AND SHARED SERVICES PROVIDER, OAKTREE CAPITAL MANAGEMENT, L.P.**

4818-0799-0119v.13

62112-1 6/8/2018

### III.    TRANSACTION WITH OAKTREE[5]

8.    Almost immediately after his appointment, the Trustee began exploring plan options regarding the Assets (as hereinafter defined). Since his appointment, the Trustee has worked diligently to maximize the value of the Assets.  As a part of that process, the Trustee established a data room for interested parties to conduct due diligence and requested firm offers to acquire the Assets.

9.    On June 6, 2018 (the "Commitment Date"), the Trustee and Oaktree executed that certain Commitment Letter whereby Oaktree, on behalf of itself and/or as agent on behalf of one or more of its affiliates or assignees, agreed to:  (a) be transferred (i) the CLO subordinate notes in CLO-3, CLO-4, CLO-5, and CLO-6 (collectively, the "Transaction CLOs"),[6] currently majority controlled by New ALF (who in turn is majority controlled by Highland affiliates); and (ii) Acis LP's rights, title and interests in the Transaction PMAs (the Transaction PMAs, together with the Transaction CLOs, collectively, the "Transferred Assets"); and (b) assume the rights, responsibilities and obligations of Highland as (i) sub-advisor under the Sub-Advisory Agreement; and (ii) staff and service provider under the Shared Services Agreement (together with the Sub-Advisory Agreement and the Transferred Assets, collectively, the "Assets").  In connection with the Transaction, Oaktree will potentially receive the Break-Up Fee (as hereinafter defined) and Expense Reimbursement (as hereinafter defined) under the terms set forth herein.

### A.    Summary of Transaction Terms

10.    The following is a summary of the transaction terms:

---

[5] Capitalized terms not defined in the Transaction with Oaktree have the meaning(s) ascribed to such terms later in the Motion.

[6] CLO-1 is outside its reinvestment period and is purposefully not included in the Transaction CLOs.

**EMERGENCY MOTION TO APPROVE BREAK-UP FEE, EXPENSE REIMBURSEMENT, AND REPLACEMENT SUB-ADVISORY AND SHARED SERVICES PROVIDER, OAKTREE CAPITAL MANAGEMENT, L.P.**

**Page 4 of 21**

| Transaction Terms Summary as of May 31, 2018 | |
|---|---|
| **Purchase Price of Transaction CLO Subordinated Notes as of close on May 31, 2018:** [7] | |
| Acis CLO 2013-1, Ltd. ($18,558,000 face value) | Orderly liquidation of CLO-1 during the pendency of the bankruptcy. Oaktree will facilitate the liquidation at no additional fee. |
| Acis CLO 2014-3, Ltd. ($39,750,000 face value) | 31.95% (mid NAV + 0.25%) |
| Acis CLO 2014-4, Ltd. ($50,750,000 face value) | 38.65% (mid NAV + 0.25%) |
| Acis CLO 2014-5, Ltd. ($53,000,000 face value) | 52.85% (mid NAV + 0.25%) |
| Acis CLO 2015-6, Ltd. ($51,850,000 face value) | 60.05% (mid NAV + 0.25%) |
| **Calculation of NAV [8] (or "liquidation value," in % terms) of the Acis CLO Subordinated Notes as of close on May 31, 2018:** | |
| Acis CLO 2013-1, Ltd. | N/A – see above. |
| Acis CLO 2014-3, Ltd. | 29.4% |
| Acis CLO 2014-4, Ltd. | 36.1% |
| Acis CLO 2014-5, Ltd. | 50.3% |
| Acis CLO 2015-6, Ltd. | 57.4% |

---

[7] @ Mid NAV +/-, with no additional payment for accrued excess interest or post reorg equity or equity rights offerings. Mid NAV will be adjusted by 85% of quoted bid side for any common shares held in the Transaction CLOs (or blocker subsidiaries) for the benefit of the CLO investors. Subject to ratable reduction if the aggregate fees and expenses of U.S. Bank incurred in connection with the Transaction and paid out of funds held under each Indenture exceed $50,000.

Note that the percentages set forth with respect to each of the Transaction CLOs are based on recent NAV calculations and may be updated in Oaktree's sole discretion to reflect prevailing market conditions at the time of entry into definitive documentation.

Additionally, Acis LP manages a certain separated account (the "Luxembourg Separate Account"). At this time, Oaktree has not made a determination on any transaction involving the transfer the Luxembourg Separate Account management rights.

[8] Bid NAV with no credit for excess interest or post reorg equity.

**EMERGENCY MOTION TO APPROVE BREAK-UP FEE, EXPENSE REIMBURSEMENT, AND REPLACEMENT SUB-ADVISORY AND SHARED SERVICES PROVIDER, OAKTREE CAPITAL MANAGEMENT, L.P.**

4818-0799-0119v.13

62112-1 6/8/2018

| | |
|---|---|
| **Methodology used to determine pricing on Subordinated Notes:** | **T** = Transfer Pricing Date

**T-3** –Trustee declares transfer pricing date

**T-2** - Oaktree submits to Trustee Markit bid price and ask price* on each loan in the consolidated portfolio as of the previous business day's close.

**T-1** - Oaktree submits to Trustee Markit bid price and ask price on each loan in the consolidated portfolio as of the previous business day's close.

**T** - Oaktree submits to Trustee Markit bid price and ask price on each loan in the consolidated portfolio as of the previous business day's close.

**T+1** - Oaktree submits to Trustee Markit bid price and ask price on each loan in the consolidated portfolio as of the previous business day's close, with the average of each asset's bid and ask price defined as that asset's "mid price."

*Consolidated portfolio composition is as of the most recent trustee report available on the indenture trustee's website as of T-1.

*Where IHS Markit ("Markit") price is unavailable or disputed by Oaktree, Oaktree will submit two or more broker quotes (bid and ask), and the average of those mid prices will replace any such unavailable Markit quote. Oaktree does not anticipate any unavailable or disputed prices given the current portfolio composition.

*For common stock or other interests received in a restructuring, Oaktree will submit two broker quotes (bid and ask). For purposes of this calculation, the price used in conjunction with any such reorg equities will be 85% of the average of the quoted bids.

* Trustee may distribute, upon request by interested parties, |

**EMERGENCY MOTION TO APPROVE BREAK-UP FEE, EXPENSE REIMBURSEMENT, AND REPLACEMENT SUB-ADVISORY AND SHARED SERVICES PROVIDER, OAKTREE CAPITAL MANAGEMENT, L.P.**

**Page 6 of 21**

4818-0799-0119v.13

62112-1 6/8/2018

| | four sequential sets of prices on portfolio. |
|---|---|
| **Aggregate price offered for the Transaction PMAs (in $):** | An aggregate purchase price of $8.6 million, plus an amount of up to $1 million attributable to allowable claims by Highland against the Acis estate (solely to the extent that such claims are not otherwise satisfied by the assets of the debtor's estate, including for this purpose the $8.6 million purchase price discussed herein), on an all-or-nothing basis. |
| **Aggregate Sub-Advisory Fee and Shared Services Fee (in bps) per Acis Advised Account:** [9] | Minimum term or revenue waived for any vehicle in which Oaktree or affiliates are assigned as permanent manager (subject to ratification by the Lux ManCo, in the case of the Luxembourg separate account).<br><br>For the avoidance of doubt, no Sub Advisory Fee and Shared Services Fee shall be payable for any Acis Advised Account so long as there are no assets for Oaktree to manage; provided, however, to the extent Oaktree assumes the role of the sub-advisor by order of the Bankruptcy Court and Oaktree begins the process of onboarding the assets, Oaktree shall receive such fees detailed below. |
| Luxembourg Separate Account | 30 bps subject to 6 month minimum term or equivalent revenue. |
| Acis CLO 2013-1, Ltd. | Oaktree would manage CLO-1 during the pendency of the bankruptcy for no additional fee, with the understanding that the vehicle would liquidate and return NAV to investors prior to emergence. For the avoidance of doubt, Oaktree would not retain any management or other obligations with respect to CLO-1 once liquidated or upon emergence. |
| Acis CLO 2014-3, Ltd., Acis CLO 2014-4, Ltd., Acis CLO 2014-5, Ltd., and Acis CLO 2015-6, Ltd. | 20 bps subject to 12 month minimum term or equivalent revenue |
| **Conditions to the above:** | All-or-none pricing for amounts shown of Transaction CLO subordinated notes and Transaction PMAs.<br><br>Break-up Fee paid will be credited against any unpaid "equivalent revenue" under the Sub-Advisory Agreement and Shared Services Agreement, such that Oaktree will |

---

[9] Oaktree shall assume the Sub-Advisory Agreement and the Shared Services Agreement as responsibilities within 30 days of the Commitment Date.

**EMERGENCY MOTION TO APPROVE BREAK-UP FEE, EXPENSE REIMBURSEMENT, AND REPLACEMENT SUB-ADVISORY AND SHARED SERVICES PROVIDER, OAKTREE CAPITAL MANAGEMENT, L.P.**

**Page 7 of 21**

| | receive the higher of the Break-up Fee or the remaining equivalent revenue under the Sub-Advisory Agreement and the Shared Services Agreements.<br><br>Full price conditioned upon approval of Oaktree as replacement collateral manager, by requisite noteholders or a court of competent authority.<br><br>Entry of an order by the Bankruptcy Court approving the Transaction free and clear of all interests, in form and substance acceptable to Oaktree, including, without limitation, (i) the unfettered right for Oaktree to refinance, reprice, or remarket the CLOs without interference from Highland or any affiliate of Highland, (ii) termination of all rights of Acis LP under the CLO management agreements (including the right to receive any future incentive management fee) and (iii) an acknowledgement that Oaktree will not be bound by any side letter entered into by Acis LP, Highland or their respective affiliates with any investor in any of the CLOs. |
|---|---|
| **Other Terms:** | Completion of due diligence reasonably satisfactory to Oaktree, receipt of Oaktree's internal approvals, the execution and delivery of the Commitment Letter in form and substance reasonably acceptable to Oaktree, obtaining the necessary approvals and consents from the investors in the Acis CLOs in connection with the Transaction (or obtaining a court order nullifying any such approvals and consents which are not so obtained), obtaining the necessary approvals and consents from this Court and the execution and delivery of the definitive documents for the Transaction in form and substance reasonably satisfactory to the Oaktree. |

## B.    Expense Reimbursement

11.    The Trustee understands that it will be necessary for Oaktree to incur certain reasonable and documented out-of-pocket costs and expenses in connection with the Transaction (including costs and expenses incurred prior to the Commitment Date), including, without

**EMERGENCY MOTION TO APPROVE BREAK-UP FEE, EXPENSE REIMBURSEMENT, AND REPLACEMENT SUB-ADVISORY AND SHARED SERVICES PROVIDER, OAKTREE CAPITAL MANAGEMENT, L.P.**

4818-0799-0119v.13

62112-1 6/8/2018

limitation, reasonable and documented out-of-pocket due diligence, legal (limited to one primary transaction counsel, together with any local, tax or regulatory counsel deemed reasonably necessary) and transportation fees, and expenses (collectively, "Expense Reimbursement"). If approved by the Court, the reimbursement of Oaktree for Expense Reimbursement will be payable on the earlier of (a) 10 business days after receipt of an invoice in respect of any Expense Reimbursement after the date the Trustee decides not to consummate the Transaction and (b) the closing date of the Transaction.

12.     In connection with the Transaction, the Trustee also agrees to pay all reasonable and documented out-of-pocket costs and expenses of Oaktree (including, without limitation, reasonable and documented out-of-pocket fees and disbursements of counsel) incurred in connection with the enforcement of any of its rights and remedies under the Commitment Letter (all of which will be considered Expense Reimbursement).

## C.      Break-Up Fee

13.     As of the date of this filing, Oaktree will pay approximately: [10] (i) $100,000,000.00 for the Transaction CLOs; and (ii) $8.6 million, plus an amount of up to $1 million attributable to allowable claims by Highland against the Acis estates (solely to the extent that such claims are not otherwise satisfied by the assets of the debtor's estate, including for this purpose the $8.6 million purchase price discussed herein), on an all-or-nothing basis for the Transaction PMAs. The total consideration for the Transaction (including the subordinated notes) is anticipated to be approximately of $108,000,000.00 (the "Approximate Purchase Price").

---

[10] As the purchase price for the Transaction CLOs is subject to market changes, the approximate payment amounts listed herein are subject to change.

**EMERGENCY MOTION TO APPROVE BREAK-UP FEE, EXPENSE REIMBURSEMENT, AND REPLACEMENT SUB-ADVISORY AND SHARED SERVICES PROVIDER, OAKTREE CAPITAL MANAGEMENT, L.P.**

4818-0799-0119v.13

62112-1 6/8/2018

14.     An initial break–up fee of $1,750,000.00 (the "Initial Break-Up Fee") will be payable to Oaktree if:  (a) the transfer to Oaktree of the Transferred Assets is not approved by order of this Court within 45 days from the Commitment Date (or within such 45-day period, such assets are sold to a third party not affiliated with Oaktree) or (b) upon entry of such order by the Bankruptcy Court approving the Transaction, such assets are not transferred to Oaktree within 15 days thereof (which such 15-day period may be extended by Oaktree in its sole discretion).

15.     An additional $750,000.00 break-up fee for an aggregate break-up fee of $2,500,000.00 (the "Extended Break-Up Fee") will be payable to Oaktree if: (a) the transfer to Oaktree of the Assets is not approved by order of this Court during the period from 46 to 75 days from the Commitment Date (or within such period, such assets are sold to a third party not affiliated with Oaktree) or (b) upon entry of such order by the Bankruptcy Court approving the Transaction, such assets are not transferred to Oaktree or affiliates within 15 days thereof (which such 15-day period may be extended by Oaktree in its sole discretion).  The Initial Break-Up Fee and Extended Break-Up Fee are collectively referred to herein as the "Break-Up Fee."[11]

16.     Because the Trustee has explored the market for the Transaction, he believes the likelihood of a bidding and auction process providing another viable plan funder that the Trustee has not already identified is remote.  Additionally, there are a limited number of parties with the funds and experience to participate in the Transaction.

---

[11] The Initial Break-Up Fee will be credited against any owed Extended Break-Up Fee such that in no event will the Break-Up Fee exceed $2.5 million, however in no event will the Initial Break-Up Fee once paid be refundable if the Extended Break-Up Fee never becomes due or payable.  Further, unless the Chapter 11 Trustee notifies Oaktree in writing no later than the 45th day after the Commitment Date that it does not intend to pursue the Transaction with Oaktree (the "Termination Notice"), the Break-Up Fee will be deemed to be the Extended Break-Up Fee.

**EMERGENCY MOTION TO APPROVE BREAK-UP FEE, EXPENSE REIMBURSEMENT, AND REPLACEMENT SUB-ADVISORY AND SHARED SERVICES PROVIDER, OAKTREE CAPITAL MANAGEMENT, L.P.**

**Page 10 of 21**

17.     Furthermore, because the proposed Transaction would provide a full recovery to allowed unsecured creditors and fulfill the subordinated noteholders's desire, embodied in the Optional Redemption, and allow them to cash out immediately, the Trustee would like to expeditiously move forward with the proposed Transaction.  As a result, the Trustee does not intend to hold an auction relating to the Assets. However, because it is possible that another party could provide a proposal more favorable to the parties-in-interest than the Transaction, the Trustee seeks the entry of an order approving the Break-Up Fee.

## IV.     ADDITIONAL FACTUAL AND PROCEDURAL BACKGROUND

### A.     Bankruptcy Case

18.     On January 30, 2018 (the "Petition Date"), Joshua N. Terry ("Mr. Terry"), as petitioning creditor, filed the *Involuntary Petition Against a Non-Individual* [Case No. 18-30264, Docket No. 1] (the "Acis LP Petition") and the *Involuntary Petition Against a Non-Individual* [Case No. 18-30265, Docket No. 1] (the "Acis GP Petition," together with the Acis LP Petition, the "Involuntary Petitions").

19.     On April 13, 2018 (the "Relief Date"), after six days of testimony and argument, this Court entered the *Findings of Fact and Conclusions of Law in Support of Orders for Relief Issued After Trial on Involuntary Bankruptcy Petition* [Case No. 18-30264, Docket No. 118, and Case No. 18-30265, Docket No. 113] (the "Opinion") and the *Order for Relief in an Involuntary Case* [Case No. 18-30264, Docket No. 119, and Case No. 18-30265, Docket No. 114] (the "Order for Relief").

20.     The Trustee is the duly appointed Chapter 11 Trustee for the Debtors.

**EMERGENCY MOTION TO APPROVE BREAK-UP FEE, EXPENSE REIMBURSEMENT, AND REPLACEMENT SUB-ADVISORY AND SHARED SERVICES PROVIDER, OAKTREE CAPITAL MANAGEMENT, L.P.**

**Page 11 of 21**

4818-0799-0119v.13

62112-1 6/8/2018

**B.** **Highland and the Highland Affiliates' Role in these Cases**

**(1)** **Highland and the Highland Affiliates**

21.     Highland admits that it is an affiliate of Acis LP and Acis GP.

22.     As the Court is aware, Highland has numerous other connections to this case. Highland CLO Funding, Ltd. f/k/a Acis Loan Funding, Ltd. ("New ALF"), CLO Holdco, Ltd. ("Holdco") and Neutra, Ltd. ("Neutra") attempted to intervene in the trial on the Involuntary Petitions. New ALF, Holdco and Neutra are collectively referred to herein as the "Highland Affiliates."

**C.**     **Additional Factual Background**

**(1)**     **The CLOs, the PMAs, and the Indentures**

23.     Acis LP is the portfolio manager for five collateralized loan obligations ("CLOs") funds:[12] As relevant herein, Acis LP manages the Acis CLOs through five PMAs.[13] Acis LP generates revenue primarily through the management of the Acis CLOs via the PMAs. Each of the Acis CLOs is governed by the Indentures.[14]

---

[12] The Acis CLOs are: (i) Acis CLO 2013-1 Ltd. ("CLO-1"), (ii) Acis CLO 2014-3 ("CLO-3"), (iii) Acis CLO 2014-4 Ltd. ("CLO-4"), (iv) Acis CLO 2014-5 Ltd. ("CLO-5"), and (v) Acis CLO 2015-6 Ltd. ("CLO-6"). CLO-1, CLO-3, CLO-4, CLO-5 and CLO-6 are collectively referred to herein as the "Acis CLOs."

[13] The PMAs include: (i) that certain Portfolio Management Agreement by and between Acis LP and CLO-1, dated March 18, 2013 (the "CLO-1 PMA"); (ii) that certain Portfolio Management Agreement by and between Acis LP and CLO-3, dated February 25, 2014 (the "CLO-3 PMA"); (iii) that certain Portfolio Management Agreement by and between Acis LP and CLO-4, dated June 5, 2014 (the "CLO-4 PMA"); (iv) that certain Portfolio Management Agreement by and between Acis LP and CLO-5, dated November 18, 2014 (the "CLO-5 PMA"); and (v) that certain Portfolio Management Agreement by and between Acis LP and CLO-6, dated April 16, 2015 (the "CLO-6 PMA"). The CLO-1 PMA, CLO-3 PMA, CLO-4 PMA, CLO-5 PMA, and CLO-6 PMA are collectively referred to herein as the "PMAs." The CLO-3 PMA, CLO-4 PMA, CLO-5 PMA, and CLO-6 PMA are collectively referred to herein as the "Transaction PMAs."

[14] The Indentures include: (i) that certain Indenture, dated as of March 18, 2013, issued by CLO-1, as issuer, Acis CLO 2013-1 LLC, as co-Issuer and U.S. Bank National Association ("U.S. Bank"), as Trustee (the "CLO-1 Indenture"); (ii) that certain Indenture, dated as of February 25, 2014, issued by CLO-3, as issuer, Acis CLO 2014-3 LLC, as co-Issuer and U.S. Bank, as Trustee (the "CLO-3 Indenture"); (iii) that certain Indenture, dated as of June 5, 2014, issued by CLO-4, as issuer, Acis CLO 2014-4 LLC, as co-Issuer and U.S. Bank, as Trustee (the "CLO-4

**EMERGENCY MOTION TO APPROVE BREAK-UP FEE, EXPENSE REIMBURSEMENT, AND REPLACEMENT SUB-ADVISORY AND SHARED SERVICES PROVIDER, OAKTREE CAPITAL MANAGEMENT, L.P.**

**Page 12 of 21**

4818-0799-0119v.13

62112-1 6/8/2018

### (2)     The Purported Optional Redemption

24.     On April 30, 2018, New ALF purportedly sent five (5) notices requesting Optional Redemption pursuant to Section 9.2 of each of the Indentures (the "Optional Redemption Notices").[15]

25.     The Optional Redemption Notices direct Acis LP to effect an Optional Redemption (as defined by each Indenture). Under Section 9.2(b) of each Indenture, upon the receipt of a notice of redemption, Acis, in its discretion, is to direct the sale of the Collateral Obligations (as defined by each Indenture) and other Assets. *See* CLO-1 Indenture, § 9.2; CLO-3 Indenture, § 9.2; CLO-4 Indenture, § 9.2; CLO-5 Indenture, § 9.2; and CLO-6 Indenture, § 9.2. In the Indentures, "Assets" is defined to include the PMAs. *See* CLO-1 Indenture, p. 8; CLO-3 Indenture, p. 10; CLO-4 Indenture, p. 10; CLO-5 Indenture, p. 10; and CLO-6 Indenture, p. 10. Therefore, the Optional Redemption directs Acis LP to liquidate its most valuable asset, the PMAs.

26.     The Trustee has analyzed the Optional Redemption Notices and determined there are various defects and other problems and impediments with the notices and performing the Optional Redemption requested. Therefore, on May 22, 2018, the Trustee sent his responses to the five (5) Optional Redemption Notices (the "Redemption Responses").

---

Indenture"); (iv) that certain Indenture, dated as of November 18, 2014, issued by CLO-5, as issuer, Acis CLO 2014-5 LLC, as co-Issuer and U.S. Bank, as Trustee (the "CLO-5 Indenture"); and (v) that certain Indenture, dated as of April 16, 2015, issued by CLO-6, as issuer, Acis CLO 2015-6 LLC, as co-Issuer and U.S. Bank, as Trustee (the "CLO-6 Indenture"). The CLO-1 Indenture, CLO-3 Indenture, CLO-4 Indenture, CLO-5 Indenture, and CLO-6 Indenture are collectively referred to herein as the "Indentures."

[15] Nexpoint Strategic Opportunities Fund (f/k/a NexPoint Credit Strategies Fund) ("Nexpoint") and Drexel Limited ("Drexel") joined in one of the Optional Redemption Notices. Like New ALF, Nexpoint is an affiliate of Highland.

**EMERGENCY MOTION TO APPROVE BREAK-UP FEE, EXPENSE REIMBURSEMENT, AND REPLACEMENT SUB-ADVISORY AND SHARED SERVICES PROVIDER, OAKTREE CAPITAL MANAGEMENT, L.P.**

**Page 13 of 21**

27. On May 24, 2018, New ALF sent a response to the Redemption Response. Thereafter, this Court order the entry of the TRO (defined and discussed below).

**(3) Shared Services and Sub-Advisory Agreement**

28. Acis LP contracts out its operations to Highland pursuant to the Third Amended and Restated Sub-Advisory Agreement by and between Acis LP and Highland, dated March 17, 2017 (the "Sub-Advisory Agreement"), and the Fourth Amended and Restated Shared Services Agreement by and between Acis LP and Highland, dated March 17, 2017 (the "Shared Services Agreement").

**D. Highland Litigation and TRO**

29. On April 30, 2018, Highland and New ALF filed Adversary No. 18-03078, styled *Highland Capital Management, L.P. and Highland CLO Funding, Ltd. v. Robin Phelan, Chapter 11 Trustee*, in this Court (the "Highland Adversary"). The Highland Adversary alleges, among other things, that the Trustee, by failing to effectuate the Optional Redemption, has breached the PMA.

30. On May 31, 2018, the Court issued a *sua sponte* oral ruling that a temporary restraining order would be entered, preventing all parties from taking any action in furtherance of the Optional Redemption. On June 6, 2018, the Court entered the *Temporary Restraining Order* [Docket No. 256](the "TRO"), which embodies the Court's oral ruling.

## V. RELIEF REQUESTED

31. Since the Petition Date, these Cases have experienced numerous complications, primarily related to the contentious relationship between Highland and the Highland Affiliates and the estate due to Highland's and the Highland Affiliates' apparent desire to permanently part

**EMERGENCY MOTION TO APPROVE BREAK-UP FEE, EXPENSE REIMBURSEMENT, AND REPLACEMENT SUB-ADVISORY AND SHARED SERVICES PROVIDER, OAKTREE CAPITAL MANAGEMENT, L.P.**

**Page 14 of 21**

4818-0799-0119v.13

62112-1 6/8/2018

ways, at any cost, with anything related to the Debtors. At a recent hearing, Highland and the Highland Affiliate's counsel stated that New ALF has "the absolute right to take their money out, and go deploy it elsewhere where they can get a better return."[16]

32.     The Transaction is a global resolution to: (i) the Highland Adversary and related dispute regarding the Optional Redemption; (ii) the Compel Motion[17] and Highland's desire to terminate the Shared Services Agreement and Sub-Advisory Agreement; and (iii) the Debtors' creditors' allowed claims. Indeed, the Transaction pays the subordinated noteholders a premium over what they would receive in an Optional Redemption (so that the subordinated noteholders can "take their money out and go deploy it elsewhere") and pays all creditors in full, the ultimate win-win situation. Given the overarching benefit to all constituencies that the Transaction will result in, if consummated, the Trustee believes in his reasonable business judgment it is necessary to provide Oaktree with the Break-Up Fee and the Expense Reimbursement. Therefore, by this Motion, the Trustee seeks entry of an Order authorizing the allowance of the Break-Up Fee to Oaktree as an administrative expense claim. Additionally, the Trustee seeks entry of an Order authorizing the payment of the Expense Reimbursement. In addition, the Trustee seeks approval of this Court for Oaktree to replace Highland with respect to the services currently provided by Highland under the Sub-Advisory Agreement and the Shared Services Agreement at an immediate large savings to Acis.

---

[16] Tr. May 31, 2018 Status Conference at 36:19-21.

[17] On May 3, 2018, Highland filed the *Motion of Highland Capital Management, L.P. for Order Compelling Chapter 7 Trustee to Reject Certain Executory Contracts and Request for Expedited Hearing* [Docket No. 169] (the "Motion to Compel"). The Motion to Compel seeks to compel the Chapter 7 Trustee (now presumably the Trustee) to reject the Sub-Advisory Agreement (as hereinafter defined) and the Shared Services Agreement (as hereinafter defined).

**EMERGENCY MOTION TO APPROVE BREAK-UP FEE, EXPENSE REIMBURSEMENT, AND REPLACEMENT SUB-ADVISORY AND SHARED SERVICES PROVIDER, OAKTREE CAPITAL MANAGEMENT, L.P.**

4818-0799-0119v.13

62112-1 6/8/2018

## A.     Replacement Sub-Advisory and Shared Services Provider

33.     It is in the Trustee's sound business judgment to replace Highland as the provider of the sub-advisory services and shared services. Highland, both pre-petition and in the Motion to Compel, has expressed an urgent desire to no longer perform under the Shared Services Agreement and Sub-Advisory Agreement. Therefore, the Trustee seeks to terminate the Shared Services Agreement and Sub-Advisory Agreement, by their own terms and engage Oaktree to provide these services.

## B.     Expense Reimbursement

34.     The payment of the Expense Reimbursement is in the Trustee's sound business judgment.[18]   The Trustee seeks authority to pay the Expense Reimbursement based on his compelling and sound business justification.  The Expense Reimbursement represents the actual reasonable transaction costs of Oaktree, including reasonable and documented out-of-pocket due diligence, legal (limited to one primary transaction counsel, together with any local, tax or regulatory counsel deemed reasonably necessary) and transportation fees and expenses. In light of the contentious nature of these Cases, the Trustee, in his business judgment, believes the Expense Reimbursement is necessary.

## C.     Break-Up Fee

35.     Pursuant to 11 U.S.C. § 503(b)(1)(A), a claim qualifies for allowance as an administrative expense if it is an actual and necessary cost or expense of preserving the debtor's bankruptcy estate.   "In order to qualify as an 'actual and necessary cost' under

---

[18] *See ASARCO, Inc. v. Elliott Mgmt. (In re Asarco, L.L.C.),* 650 F.3d 593, 602 (5th Cir. 2011) (affirming the approval of expense reimbursement pursuant to Section 363(b)'s business judgment standard rather than Section 503(b)(1)(A)).

**EMERGENCY MOTION TO APPROVE BREAK-UP FEE, EXPENSE REIMBURSEMENT, AND REPLACEMENT SUB-ADVISORY AND SHARED SERVICES PROVIDER, OAKTREE CAPITAL MANAGEMENT, L.P.**

4818-0799-0119v.13

62112-1 6/8/2018

section 503(b)(1)(A), a claim against the estate must have arisen post-petition and as a result of actions taken by the trustee that benefitted the estate."[19] The proponent of the administrative expense has the burden to establish a *prima facie* case that such administrative claim is (i) actual and necessary; and (ii) benefits the estate and its creditors.[20]

36.     The Break-Up Fee is an actual and necessary cost that benefits the estate and its creditors.  The Break-Up fee will be 1.6-2.35% of the Purchase Price. The Trustee believes this amount is commensurate with similar transactions. Highland has made it clear that it does not want to perform under the Sub-Advisory Agreement and Shared Services Agreement.  As the Debtors do not have any employees, the Trustee requires a third party to perform the required services under the PMA.  Oaktree will perform the services previously provided by Highland under the Sub-Advisory Agreement and Shared Services Agreement at substantial savings to Acis. The cost to Acis for these services will be reduced from approximately 35 basis points to 20 approximately basis points for the CLOs and 30 basis points for the Luxembourg Separate Account.  Additionally, the Transaction, if consummated, monetizes the value of the PMAs, to the benefit of creditors.

37.     The Transaction provides an alternative to the "dooms day" scenario contemplated by the Optional Redemption.  The Optional Redemption, directed by a Highland affiliate, New ALF, would liquidate the Acis CLOs.  This liquidation would provide cash to New ALF and effectively destroy all value in the PMAs.  The Transaction would provide the same

---

[19] *Total Minatome Corp. v. Jack/Wade Drilling, Inc. (In re Jack/Wade Drilling, Inc.), 258* F.3d 385, 388 (5th Cir. 2001).

[20] *See In re Transamerican Nat. Gas Corp*., 978 F.2d 1409, 1416 (5th Cir. 1992).

**EMERGENCY MOTION TO APPROVE BREAK-UP FEE, EXPENSE REIMBURSEMENT, AND REPLACEMENT SUB-ADVISORY AND SHARED SERVICES PROVIDER, OAKTREE CAPITAL MANAGEMENT, L.P.**

**Page 17 of 21**

cash New ALF/Highland seeks (and then some) while continuing to preserve the value of the PMAs. Therefore, the Break-Up Fee, in furtherance of the Transaction, is necessary to preserve the estate.

38.     The Break-Up Fee constitutes an actual, necessary cost and expense of preserving these bankruptcy estates and should be allowed as an administrative expense claim. The Break-Up Fee was negotiated in good faith and at arm's length between the Trustee and Oaktree. As stated above, the Trustee believes the Break-Up Fee and Expense Reimbursement are commensurate to the real and substantial benefits conferred upon the Debtors' estates by Oaktree's entry into the Commitment Letter, and reasonable and appropriate in light of the size and nature of the proposed Transaction and comparable transactions, the commitments that have been made and the efforts that have been and will be expended by Oaktree.

39.     The Break-Up Fee and Expense Reimbursement are essential inducements and conditions relating to Oaktree's entry into, and continuing obligations under, the Commitment Letter. Oaktree has spent significant time and expense related to the Transaction. It is anticipated that Oaktree will continue to incur additional significant time and expense related to the Transaction. If the Transaction fails to close because the Trustee receives a higher or better offer, Oaktree should be compensated via the Break-Up Fee and Expense Reimbursement.

40.     Unless it is assured that the Break-Up Fee and Expense Reimbursement will be available, Oaktree is unwilling to remain obligated to consummate the Transaction or otherwise be bound under the Commitment Letter. Accordingly, the Break-Up Fee and Expense

**EMERGENCY MOTION TO APPROVE BREAK-UP FEE, EXPENSE REIMBURSEMENT, AND REPLACEMENT SUB-ADVISORY AND SHARED SERVICES PROVIDER, OAKTREE CAPITAL MANAGEMENT, L.P.**

**Page 18 of 21**

4818-0799-0119v.13

62112-1 6/8/2018

Reimbursement are reasonable and appropriate and represent the best method for maximizing value for the benefit of the Debtors' estates.

## VI.     RULE 6004

41.      Because the Break-Up Fee and Expense Reimbursement as described herein is essential to prevent immediate and irreparable harm to the Debtors' estates, and to preserve value for all of the Debtors' creditors and stakeholders, the Trustee submits that sufficient cause exists for a waiver of the stay imposed by Bankruptcy Rule 6004(h) to the extent applicable.

## VII.     PRAYER

42.      The Debtors respectfully request that the Court (i) enter an order granting Oaktree an allowed administrative expense claim for the Break-Up Fee and Expense Reimbursement as set forth herein; (ii) authorize Oaktree to replace Highland with respect to the services currently provided by Highland under the Sub-Advisory Agreement and the Shared Services Agreement at an immediate savings to Acis; and (iii) grant such other and further relief as may be just and proper.

**DATED:  JUNE 8, 2018.**

Respectfully submitted,

**WINSTEAD PC**
500 Winstead Building
2728 N. Harwood Street
Dallas, Texas 75201
(214) 745-5400 (Phone)
(214) 745-5390 (Facsimile)


By: */s/ Rakhee V. Patel*
     Rakhee V. Patel
     State Bar No. 00797213

**EMERGENCY MOTION TO APPROVE BREAK-UP FEE, EXPENSE REIMBURSEMENT, AND REPLACEMENT SUB-ADVISORY AND SHARED SERVICES PROVIDER, OAKTREE CAPITAL MANAGEMENT, L.P.**

4818-0799-0119v.13

62112-1 6/8/2018

Phillip Lamberson
State Bar No. 00794134
Joe Wielebinski
State Bar No. 21432400
Annmarie Chiarello
State Bar No. 24097496
rpatel@winstead.com
plamberson@winstead.com
jwielebinski@winstead.com
achiarello@winstead.com

**PROPOSED SPECIAL COUNSEL FOR
ROBIN PHELAN, CHAPTER 11
TRUSTEE**

-and-

Jeff P. Prostok
State Bar No. 16352500
J. Robert Forshey
State Bar No. 07264200
Suzanne K. Rosen
State Bar No. 00798518
Matthias Kleinsasser
State Bar No. 24071357
**FORSHEY & PROSTOK LLP**
777 Main St., Suite 1290
Ft. Worth, TX 76102
Telephone: (817) 877-8855
Facsimile: (817) 877-4151
jprostok@forsheyprostok.com
bforshey@forsheyprostok.com
srosen@forsheyprostok.com
mkleinsasser@forsheyprostok.com

**PROPOSED COUNSEL FOR
THE CHAPTER 11 TRUSTEE**

**EMERGENCY MOTION TO APPROVE BREAK-UP FEE, EXPENSE REIMBURSEMENT, AND
REPLACEMENT SUB-ADVISORY AND SHARED SERVICES PROVIDER, OAKTREE CAPITAL
MANAGEMENT, L.P.**

4818-0799-0119v.13

62112-1 6/8/2018

## <u>CERTIFICATE OF SERVICE</u>

       I hereby certify that on June 8, 2018, notice of this document will be electronically mailed to the parties that are registered or otherwise entitled to receive electronic notices in this case pursuant to the Electronic Filing Procedures in this District and to the parties listed on the attached Service List via first-class U.S. mail.


*/s/ Annmarie Chiarello*

One of Counsel


**EMERGENCY MOTION TO APPROVE BREAK-UP FEE, EXPENSE REIMBURSEMENT, AND REPLACEMENT SUB-ADVISORY AND SHARED SERVICES PROVIDER, OAKTREE CAPITAL MANAGEMENT, L.P.**

**Page 21 of 21**