Oaktree Capital Management, L.P.
333 South Grand Avenue, 28th Floor
Los Angeles, California 90071

**CONFIDENTIAL**

June 6, 2018

Robin Phelan as trustee for
Acis Capital Management, L.P. (Bankr. N. D. Tex) (Case No.. 18-30264-sgj-7)
c/o Robin Phelan Law
4214 Woodfin Drive
Dallas, Texas 75220

Forshey & Prostok LLP
777 Main Street, Suite 1290
For Worth, Texas 76102
Attention: Matthias Kleinsasser

Re: **Proposed Transfer of Certain CLO Assets Managed by Acis Capital Management, L.P.**

Dear Mr. Phelan:

In your capacity as duly appointed chapter 11 trustee (the "**Chapter 11 Trustee**" or "**you**") of Acis Capital Management, L.P. ("**Acis LP**" or the "**Company**"), you have requested that Oaktree Capital Management, L.P., on behalf of itself and/or as agent on behalf of one or more of its affiliates or assignees ("**Oaktree**"), commit to (a) receiving (i) the collateralized loan obligation securities (each, a "**CLO**" and collectively, the "**CLOs**") set forth on Annex B from Highland CLO Funding, Ltd. and (ii) Acis LP's rights, title and interests in the portfolio management agreements for the CLO issuers listed on Annex B (together with the CLOs, collectively, the "**Transferred Assets**") and (b) assuming the rights, responsibilities and obligations of Highland Capital Management, L.P. ("**Highland**") as (i) sub-advisor under the Third Amended and Restated Sub-Advisory Agreement dated as of March 17, 2017 (the "**Sub-Advisory Agreement**"), between Acis LP and Highland and (ii) staff and services provider under the Fourth Amended and Restated Shared Services Agreement dated as of March 17, 2017 (the "**Shared Services Agreement**" and together with the Sub-Advisory Agreement and the Transferred Assets, collectively, the "**Assets**"), between Acis LP and Highland.

Oaktree is pleased to advise the Chapter 11 Trustee of Oaktree's commitment to consummate the transaction on the terms and conditions set forth in each of Annex A and the term sheet attached hereto as Annex B (the "**Term Sheet**" and the transactions described herein, in Annex A and therein, collectively, the "**Transaction**"). This letter, the terms and conditions set forth in Annex A and the Term Sheet are collectively referred to as the "**Commitment Letter**." Oaktree's commitment is subject to (a) the negotiation, execution and delivery of definitive documentation (the "**Transaction Documents**") in form and substance reasonably acceptable to

#4847-6367-8567v5

Oaktree, (b) obtaining the necessary approvals and consents from the investors in the CLOs in connection with the Transaction (or obtaining a court order nullifying any such approvals and consents which are not so obtained), (c) obtaining the necessary approvals and consents from the United States Bankruptcy Court for the Northern District of Texas (the "**Bankruptcy Court**"), (d) payment of all owed fees and Oaktree Expenses (as defined in Annex A), (e) the absence of any material adverse change with respect to the Assets and (f) those conditions set forth in the Term Sheet. The obligations of the Company under this Commitment Letter with respect to the Break-up Fee (as defined in the Term Sheet), the Oaktree Expenses and the terms and conditions set forth in the Transaction Documents, in each case shall be subject to approval of the Bankruptcy Court. You agree that the closing date (the "**Closing Date**") of the Transaction shall be as soon as reasonably practicable, but in any event shall not occur until the terms and conditions hereof (including the conditions set forth in Annex A and the Term Sheet) have been satisfied. Oaktree's willingness to consummate the Transaction is subject to its continuing reasonable satisfaction with the results of due diligence of the Assets in all material respects. If Oaktree discovers information which it believes is materially negative information with respect to the Assets, taken as a whole, or the ability of the Company or the Chapter 11 Trustee to effect the Transaction, Oaktree may, in its sole discretion, suggest alternative amounts or structures or decline to engage in the Transaction. Furthermore, please note that all indicated terms referred to herein are subject to change based on prevailing market conditions.

Please confirm your acceptance of the terms hereof by returning a copy of this Commitment Letter to Oaktree prior to 7:00 p.m. New York time on June 6, 2018 (the "**Deadline**"). This Commitment Letter and Oaktree's commitment hereunder are also conditioned upon your acceptance hereof, and Oaktree's receipt of an executed counterpart hereof on or prior to the Deadline. Upon your execution and delivery of this Commitment Letter, the Company shall be bound to the terms and agreements contained in this Commitment Letter and the Proposal Letter (as defined therein) executed by the Company on June 1, 2018 shall be superseded in all respects. The commitments hereunder shall terminate upon the earliest to occur of (a) the execution and delivery of the Transaction Documents by all of the parties thereto and the satisfaction or waiver of all other conditions and (b) August 20, 2018 (this clause (b), the "**Final Deadline**"). If the Transaction Documents shall not have been executed and delivered by all such parties and the other conditions shall not have been satisfied or waived, in each case prior to the Final Deadline, this Commitment Letter and Oaktree's commitment hereunder shall automatically terminate unless each of the parties hereto agrees to an extension in writing.

[remainder of page intentionally left blank]

Very truly yours,

OAKTREE CAPITAL MANAGEMENT, L.P., for itself and/or as agent on behalf of one or more of its affiliates or assignees.

By: _____
    Name: Armen Panossian
    Title: Managing Director

By: _____
    Name: BRENDAN BEER
    Title: Managing Director

**Agreed and Accepted on this ____ day of June, 2018:**

ACIS CAPITAL MANAGEMENT, L.P.

By: _____
    Robin Phelan as Chapter 11 Trustee

#4847-6367-8567

Very truly yours,

OAKTREE CAPITAL MANAGEMENT, L.P., for itself and/or as agent on behalf of one or more of its affiliates or assignees.

By:_____
    Name:
    Title:

By:_____
    Name:
    Title:

Agreed and Accepted on this 6TH day of June, 2018:

ACIS CAPITAL MANAGEMENT, L.P.

By: _/s/ Robin Phelan_
Robin Phelan as Chapter 11 Trustee

# ANNEX A

# TERMS AND CONDITIONS

Expiration Date.  If the signed Commitment Letter is not received by Oaktree on or before the Deadline, the Commitment Letter shall expire on the Deadline and, shall be deemed null and void *ab initio* and be of no further force or effect.

Information.  The Company and, to the best of your knowledge, you hereby represent and covenant that (a) all information that has been or will be made available to Oaktree by the Company, you or any of your respective representatives in connection with the Transaction (the "**Information**"), when taken as a whole and including any supplements thereto prior to the Closing Date, is and will be complete and correct in all material respects and does not and will not contain any untrue statement of a material fact or omit to state a material fact necessary to make the statements contained therein, in the light of the circumstances under which such statements are made, not misleading and (b) the execution and delivery of this Commitment Letter has been approved by the Chapter 11 Trustee.  The Company and, to the best of your knowledge, you agree to supplement the Information from time to time to promptly advise Oaktree of all developments materially affecting the Company, any of the Assets, the Transaction or the accuracy of Information previously furnished to Oaktree.  The representations and covenants contained in this paragraph shall remain effective until the signing of the Transaction Documents and thereafter the disclosure representations contained herein shall be superseded by those contained in the Transaction Documents.

Expenses.  You understand that it will be necessary for Oaktree to incur certain reasonable and documented out-of-pocket costs and expenses in connection with the Transaction (including costs and expenses incurred prior to the date hereof), including, without limitation, reasonable and documented out-of-pocket due diligence, legal (limited to one primary transaction counsel, together with any local, tax or regulatory counsel deemed reasonably necessary) and transportation fees and expenses (collectively, "Oaktree Expenses").  Upon request of Oaktree (as set forth below), the Company shall promptly reimburse Oaktree for all Oaktree Expenses; *provided* that the obligation of the Company to reimburse Oaktree for any Oaktree Expenses incurred following the Closing Date shall be as set forth in the Transaction Documents.  The reimbursement of Oaktree for Oaktree Expenses shall be payable on the earlier of (a) 10 business days after receipt of an invoice in respect of any Oaktree Expenses after the date the Company or you decides not to consummate the Transaction and (b) the Closing Date.  The Company also hereby agrees to pay all reasonable and documented out-of-pocket costs and expenses of Oaktree (including, without limitation, reasonable and documented out-of-pocket fees and disbursements of counsel) incurred in connection with the enforcement of any of their rights and remedies hereunder (all of which shall be considered Oaktree Expenses).

Confidentiality.  This Commitment Letter is delivered to the Chapter 11 Trustee on the condition that none of the identity of Oaktree, the existence of this Commitment Letter or any of the contents of this Commitment Letter shall be disclosed except on a confidential and "need to know" basis solely to the Chapter 11 Trustee's advisors or as may be compelled to be disclosed in a judicial or administrative proceeding or as otherwise required by law.  The Chapter 11 Trustee shall not release any public announcement in which reference is made to Oaktree, any of its

affiliates or this Commitment Letter. Notwithstanding the foregoing, the Chapter 11 Trustee may disclose this Commitment Letter, the contents hereof and the identity of Oaktree, in each case solely by filing a copy hereof with the Bankruptcy Court as an exhibit or other addendum to the motion seeking court approval of the Transaction and, following such filing, may disclose this Commitment Letter, the contents hereof and the identity of Oaktree.

Indemnification and Limitation of Liability. The Company agrees to indemnify and hold harmless Oaktree and each of its affiliates (including, without limitation, controlling persons) and the directors, officers, employees, advisors, agents and other representatives of the foregoing (each, an "**Indemnified Person**") from and against any and all losses, claims, costs, expenses, damages or liabilities (or actions or other proceedings commenced or threatened in respect thereof) that arise out of or in connection with this Commitment Letter, and to reimburse each Indemnified Person promptly upon its written demand for any reasonable legal or other expenses incurred in connection with investigating, preparing to defend or defending against, or participating in, any such loss, claim, cost, expense, damage, liability or action or other proceeding (whether or not such Indemnified Person is a party to any action or proceeding); *provided* that any such obligation to indemnify, hold harmless and reimburse an Indemnified Person shall not be applicable to the gross negligence or willful misconduct of such Indemnified Person, in each case, as determined in a final, nonappealable judgment by a court of competent jurisdiction. In the case of an investigation, litigation or proceeding to which the indemnity in this paragraph applies, such indemnity shall be effective whether or not such investigation, litigation or proceeding is brought by the Company, equity holders or creditors of the Company or an Indemnified Person and whether or not the Transaction is consummated. Upon the execution of the Transaction Documents, the indemnities provided herein shall automatically terminate and the parties' indemnification rights and obligations shall be governed by the express terms of the Transaction Documents.

The Company shall not be liable for any settlement of any such proceeding effected without the Company's written consent (not to be unreasonably withheld, delayed or conditioned), but if settled with such consent or if there shall be a final judgment against an Indemnified Person, the Company shall, subject to the proviso in the preceding paragraph, indemnify such Indemnified Person from and against any loss, claim, costs, expenses, damages or liabilities by reason of such settlement or judgment. The Company shall not, without the prior written consent of any Indemnified Person, effect any settlement of any pending or threatened proceeding in respect of which such Indemnified Person is a party, unless such settlement (a) includes an unconditional release of such Indemnified Person from all liability or claims that are the subject matter of such proceeding, and (b) does not include a statement as to or an admission of fault, culpability, or a failure to act by or on behalf of such Indemnified Person. Oaktree shall not be responsible or liable to the Company or any of the Company's subsidiaries, affiliates or stockholders or any other person or entity for any indirect, special, punitive or consequential damages which may be alleged as a result of this Commitment Letter or the Transaction contemplated hereby or thereby. The foregoing indemnification provisions of shall be in addition to any rights that any Indemnified Person may have at common law or otherwise.

No Fiduciary Relationship. Oaktree and its affiliates may have economic interests that conflict with those of the Company. It is understood and agreed that Oaktree will act under this Commitment Letter as an independent contractor and nothing herein, the Transaction

contemplated hereby or otherwise, shall be deemed to create a fiduciary duty or other implied duty or fiduciary or agency relationship between the Company, the Chapter 11 Trustee or any of their respective affiliates on the one hand, and Oaktree or any of its affiliates on the other.  The Company and you acknowledge and agree that (a) the Transaction is an arm's-length commercial transaction between the Company, on the one hand, and Oaktree, on the other hand, (b) in connection therewith and with the process leading to the Transaction, Oaktree is acting solely as a principal and not as agent or fiduciary of the Company, the Chapter 11 Trustee or any of their respective management, equity holders, creditors or any other person, (c) Oaktree has not assumed an advisory or fiduciary responsibility or any other obligation in favor of the Company or you with respect to the Transaction or the process leading thereto (irrespective of whether Oaktree or any of its respective affiliates have advised or are currently advising the Company or you on other matters) except the obligations expressly set forth in this Commitment Letter and (d) each of the Company and the Chapter 11 Trustee has consulted its own legal, tax, accounting and financial advisors to the extent the Company or the Chapter 11 Trustee, as applicable, has deemed appropriate.  The Company and you further acknowledge and agree that the Company and you are responsible for making its and your own independent judgment with respect to the Transaction and the process leading thereto.  Oaktree and its affiliates have not provided any legal, accounting, regulatory or tax advice.  The Company and you agree that neither the Company nor you will claim that Oaktree or its applicable affiliates, as the case may be, have rendered advisory services of any nature or respect, or owe a fiduciary or similar duty to the Company, the Chapter 11 Trustee or any of their respective affiliates, in connection with the Transaction or the process leading thereto.  The Company and you agree that neither it nor you shall make, and hereby waives, any claim based on an assertion of such a fiduciary duty or relationship.

Other Oaktree Activities.  As you know, Oaktree is a full service investment advisory firm engaged, either directly or through affiliates in various activities, including securities trading, financial advisory, investment management, principal investment, hedging, financing and brokerage activities.  In the ordinary course of these activities, Oaktree and its affiliates may make or hold a broad array of investments and actively trade debt and equity securities (or related derivative securities) and/or financial instruments (including loans) for its own account and for the accounts of its clients and may at any time hold long and short positions in such securities and/or instruments.  Such investment and other activities may involve securities and instruments of entities and persons and their affiliates which may (a) be involved in transactions arising from or relating to the Transaction or with respect to the Assets, (b) be customers or competitors of the Company or Highland or (c) have other relationships with the Company or Highland. Nothing in this Commitment Letter shall restrict or preclude Oaktree or any of its respective affiliates from pursuing any business opportunities either on its or their own behalf or in conjunction with third parties.

Assignment.  This Commitment Letter and Oaktree's commitment hereunder shall not be assignable by you or the Company without the prior written consent of Oaktree, and any purported assignment without such consent shall be null and void.  Oaktree reserves the right to employ the services of its affiliates in providing services contemplated by this Commitment Letter and to allocate, in whole or in part, to its affiliates amounts payable to Oaktree in such manner as Oaktree and its affiliates may agree in their sole discretion.  You also agree that Oaktree may at any time and from time to time assign all or any portion of its commitments hereunder to one or more of its

affiliates upon written notice to you, but any such assignment shall not relieve Oaktree of its obligations to consummate the Transaction on the Closing Date. You further acknowledge that Oaktree may share with any of its affiliates, and such affiliates may share with Oaktree, any information related to the Company or any of its respective affiliates, the Assets or the Transaction. Oaktree represents and warrants that any assignee or affiliate referenced in this section shall comply in all material respects with all anti-money laundering laws of any jurisdiction in which such assignee or affiliate is located and that are customarily applicable to a transaction of this type.

Governing Law; Consent to Jurisdiction. This Commitment Letter shall be governed by, and construed in accordance with, the laws of the State of New York without regard to conflict of law principles thereof that would result in the application of any other law other than the law of the State of New York, except to the extent the law of the State of New York is superseded by title 11 of the United States Code, 11 U.S.C. §§ 101-1532, as amended (the "**Bankruptcy Code**"). All judicial proceedings brought against any party hereto arising out of or relating hereto, or any of the obligations hereunder, shall be subject to the exclusive jurisdiction of the Bankruptcy Court, and, to the extent the Bankruptcy Court does not have (or abstains from exercising) jurisdiction, shall be, subject to clause (e) of the following sentence, brought in any federal court of the United States of America sitting in the borough of Manhattan or, if that court does not have subject matter jurisdiction, in any state court located in the city and county of New York. By executing and delivering this Commitment Letter, the Company, for itself and in connection with its properties, irrevocably (a) accepts generally and unconditionally the exclusive (subject to clause (e) below) jurisdiction and venue of such courts, (b) waives any defense of forum non conveniens, (c) agrees that service of all process in any such proceeding in any such court may be made by registered or certified mail, return receipt requested, or nationally-recognized overnight delivery service to the Chapter 11 Trustee, (d) agrees that service as provided in the foregoing clause (c) is sufficient to confer personal jurisdiction over the Company in any such proceeding in any such court, and otherwise constitutes effective binding service in every respect and (e) agrees that Oaktree retains the right to serve process in any other manner permitted by law or to bring proceedings against the Company in the courts of any other jurisdiction in which the Company conducts any business, and hereby submits to the jurisdiction of, any consents to venue in, any such court. THE COMPANY HEREBY IRREVOCABLY WAIVES TRIAL BY JURY IN ANY ACTION, SUIT OR PROCEEDING, WHETHER AT LAW OR EQUITY, BROUGHT BY IT IN CONNECTION WITH THIS COMMITMENT LETTER OR THE TRANSACTION CONTEMPLATED HEREBY.

Miscellaneous. This Commitment Letter (a) supersedes all prior discussions, agreements, commitments, arrangements, negotiations or understandings, whether oral or written, of the parties with respect thereto (including the Proposal Letter), (b) may be signed in multiple counterparts and may be delivered by facsimile or by electronic transmission in Adobe .pdf format, each of which shall be deemed an original and all of which together shall constitute one and the same instrument and (c) may be amended, modified or waived only in writing signed by each of the parties hereto. Except as set forth herein, nothing in this Commitment Letter is intended to or shall confer upon any other person or entity (including affiliates, stockholders, employees or creditors of the Company) any rights or remedies hereunder or by reason hereof. The expense reimbursement, confidentiality, indemnification (but not following the execution and delivery of the Transaction Documents) and governing law and forum provisions hereof shall survive termination of this Commitment Letter.

# ANNEX B

# TERM SHEET

*This Term Sheet is the Term Sheet referenced in the Commitment Letter to which it is attached.  It outlines certain terms of the Transaction referred to in such Commitment Letter and does not purport to summarize all of the conditions, covenants, representations, warranties and other provisions that would be contained in the Transaction Documents.  Certain capitalized terms used in this Term Sheet and not defined herein are defined in such Commitment Letter.*

[See Attachment]

| | |
|---|---|
| **Purchase Price (in % terms) on CLO Subordinated Notes as of close on May 31, 2018, if any:** | Comment: Mid NAV +/-, with no additional payment for accrued excess interest or post reorg equity or equity rights offerings.  Mid NAV will be adjusted by 85% of quoted bid side for any common shares held in the CLO (or blocker subsidiaries) for the benefit of the CLO investors.  Subject to ratable reduction if the aggregate fees and expenses of U.S. Bank National Association as Indenture Trustee of each CLO (the "**Indenture Trustee**") incurred in connection with the Transaction and paid out of funds held under each Indenture exceed $50,000. Note that the percentages set forth below with respect to each CLO are based on recent NAV calculations and may be updated in Oaktree's sole discretion to reflect prevailing market conditions at the time of entry into the Transaction Documents. |
| Acis CLO 2013-1, Ltd. ($18,558,000 face value) | N/A.  Our recommended treatment would be the orderly liquidation of CLO 2013-1 during the pendency of the bankruptcy.  Oaktree would be willing to facilitate the liquidation at no additional fee if the Transaction is approved by the Bankruptcy Court. |
| Acis CLO 2014-3, Ltd. ($39,750,000 face value) | 31.95% (mid NAV + 0.25%) |
| Acis CLO 2014-4, Ltd. ($50,750,000 face value) | 38.65% (mid NAV + 0.25% |
| Acis CLO 2014-5, Ltd. ($53,000,000 face value) | 52.85% (mid NAV + 0.25%) |
| Acis CLO 2015-6, Ltd. ($51,850,000 face value) | 60.05% (mid NAV + 0.25%) |
| **Your calculation of NAV (or "liquidation value," in % terms) of the Acis CLO Subordinated Notes as of close on May 31, 2018, if any:** | Comment: Bid NAV with no credit for excess interest or post reorg equity. |
| Acis CLO 2013-1, Ltd. | N/A – see above. |
| Acis CLO 2014-3, Ltd. | 29.4% |
| Acis CLO 2014-4, Ltd. | 36.1% |
| Acis CLO 2014-5, Ltd. | 50.3% |
| Acis CLO 2015-6, Ltd. | 57.4% |
| **Methodology used to determine pricing on Subordinated Notes, if any:** | **T** = Transfer Pricing Date<br><br>**T-3** – Chapter 11 Trustee declares transfer pricing date<br>**T-2** - Oaktree submits to Chapter 11 Trustee Markit bid price and ask price* on each loan in the consolidated portfolio as of the previous business day's close<br>**T-1** - Oaktree submits to Chapter 11 Trustee Markit bid price and ask price on each loan in the consolidated portfolio as of the previous business day's close |

| | |
|---|---|
| | **T** - Oaktree submits to Chapter 11 Trustee Markit bid price and ask price on each loan in the consolidated portfolio as of the previous business day's close<br><br>**T+1** - Oaktree submits to Chapter 11 Trustee Markit bid price and ask price on each loan in the consolidated portfolio as of the previous business day's close, with the average of each asset's bid and ask price defined as that asset's "mid price".<br><br>*Consolidated portfolio composition is as of the most recent trustee report available on the indenture trustee's website as of T-1<br><br>*Where Markit price is unavailable or disputed by Oaktree, Oaktree will submit two or more broker quotes (bid and ask), and the average of those mid prices will replace any such unavailable Markit quote. Oaktree does not anticipate any unavailable or disputed prices given the current portfolio composition.<br><br>*For common stock or other interests received in a restructuring (currently anticipated to potentially include Vertellus common stock, Fieldwood common stock and Avaya common stock), Oaktree will submit two broker quotes (bid and ask). For purposes of this calculation, the price used in conjunction with any such reorg equities will be 85% of the average of the quoted bids.<br><br>*Chapter 11 Trustee may distribute, upon request by interested parties, four sequential sets of prices on portfolio. |
| **Aggregate price offered for Acis CLO Portfolio Management Agreement (in $)** | An aggregate price of $8.6 million, plus an amount of up to $1 million attributable to allowable claims by Highland against the Acis estate (solely to the extent that such claims are not otherwise satisfied by the assets of the debtor's estate, including for this purpose the $8.6 million price discussed herein), on an all-or-nothing basis. |
| Price offered for Luxembourg Separate Account Portfolio Management Agreement (in $), if any: | It appears that this contract can be terminated at any time by the management company. Accordingly, Oaktree is not prepared to manage the Luxembourg Separate Account at this time. Oaktree is, with the consent of the Chapter 11 Trustee, willing to engage in discussions with the Luxembourg Separate Account's management company regarding the management of such account going forward. |

| | |
|---|---|
| **Aggregate Sub-Advisory and Shared Services Fee (in bps) per Acis Advised Account, if any:** | Comment: Minimum term or revenue waived for any vehicle in which Oaktree or affiliates are assigned as permanent manager (subject to ratification by the Lux ManCo, in the case of the Luxembourg Separate Account, if applicable).<br><br>For the avoidance of doubt, no Sub-Advisory and Shared Services Fee shall be payable for any Acis Advised Account so long as there are no assets for Oaktree to manage; provided, however, to the extent Oaktree assumes the role of the sub-advisor by order of the Bankruptcy Court and Oaktree begins the process of onboarding the assets, Oaktree shall receive such fees detailed below. |
| Luxembourg Separate Account | 30 bps subject to 6 month minimum term or equivalent revenue |
| Acis CLO 2013-1, Ltd. | Oaktree would manage CLO 2013-1 solely during the pendency of the bankruptcy for no additional fee, with the understanding that the vehicle would liquidate and return NAV to investors prior to emergence. For the avoidance of doubt, Oaktree would not retain any management or other obligations with respect to CLO 2013-1 once liquidated or upon emergence. |
| Acis CLO 2014-3, Ltd. | 20 bps subject to 12 month minimum term or equivalent revenue |
| Acis CLO 2014-4, Ltd. | 20 bps subject to 12 month minimum term or equivalent revenue |
| Acis CLO 2014-5, Ltd. | 20 bps subject to 12 month minimum term or equivalent revenue |
| Acis CLO 2015-6, Ltd. | 20 bps subject to 12 month minimum term or equivalent revenue. |
| **Time period needed to transition into sub-advisory and shared services agreements (in calendar days), and what is the earliest date possible you could take over?** | Oaktree shall assume sub-advisory and shared services within 30 calendar days from the date hereof. |
| **Why is your firm the right selection as sub-advisor and shared services provider for Acis' advised accounts from a fiduciary perspective? Please attach a presentation or further documentation as needed to the extent not already provided.** | Oaktree is a leading global alternative investment management firm with expertise in credit strategies. The firm was formed in 1995 by a group of individuals who had been investing together since the mid-1980s in high yield bonds, convertible securities, distressed debt, real estate, control investments and listed equities. Today, Oaktree comprises over 900 employees in Los Angeles (headquarters), New York, Stamford, Houston, London, Paris, Frankfurt, Amsterdam*, Dublin*, |

| | |
|---|---|
| | Luxembourg*, Dubai, Hong Kong, Tokyo, Singapore, Seoul, Beijing, Shanghai and Sydney. We have 35 portfolio managers with average experience of 23 years and over 800 years of combined industry experience.<br><br>Please see attached for additional materials detailing Oaktree's experience in investing in performing senior loans, as well as Oaktree's structured credit platform. |
| **Break-up fee, including how it is structured:** | (i) $1.75 million if (a) the transfer to Oaktree or its affiliates of the CLO management contracts and corresponding subordinated notes for CLO 3-6 is not approved by order of the Bankruptcy Court within 45 days from the date hereof (or within such 45-day period, such assets are sold or otherwise transferred to a third party not affiliated with Oaktree) or (b) upon entry of such order by the Bankruptcy Court, such assets are not transferred to Oaktree or affiliates within 15 days thereof (which such 15-day period may be extended by Oaktree in its sole discretion) (the fee payable pursuant to this clause (i), the "**Initial Break-up Fee**") and (ii) $2.5 million if (a) the transfer to Oaktree or its affiliates of the CLO management contracts and corresponding subordinated notes for CLO 3-6 is not approved by order of the Bankruptcy Court during the period from 46 to 75 days from the date hereof (or within such period, such assets are sold or otherwise transferred to a third party not affiliated with Oaktree) or (b) upon entry of such order by the Bankruptcy Court, such assets are not transferred to Oaktree or affiliates within 15 days thereof (which such 15-day period may be extended by Oaktree in its sole discretion) (the fee payable pursuant to this clause (ii), the "**Extended Break-up Fee**" and together with the Initial Break-up Fee, collectively, the "**Break-up Fee**"). For the avoidance of doubt, the Initial Break-up Fee shall be credited against any owed Extended Break-up Fee such that in no event will the Break-up Fee exceed $2.5 million; provided that in no event will the Initial Break-up Fee once paid be refundable if the Extended Break-up Fee never becomes due or payable. Unless the Chapter 11 Trustee notifies Oaktree in writing no later than the 45th day after the date hereof that it does not intend to pursue |

| | |
|---|---|
| | the Transaction with Oaktree, the Break-up Fee shall be deemed to be the Extended Break-up Fee for all purposes of this Commitment Letter.  Upon the earlier to occur of (x) the payment of the Initial Break-up Fee and delivery of the notice described in the immediately preceding sentence and (y) the payment of the Extended Break-up Fee, the obligations under this Commitment Letter (other than those obligations that expressly survive termination) shall terminate and this Commitment Letter shall be of no further force or effect. |
| **Please list conditions to any of the above:** | All-or-none pricing for amounts shown of CLO subordinated notes and corresponding CLO management agreements, other than CLO 2013-1. |
| | Break-up Fee paid will be credited against any unpaid "equivalent revenue" under the sub-advisory and shared services agreements, such that Oaktree will receive the higher of the Break-up Fee or the remaining equivalent revenue under the sub-advisory and shared services agreements. |
| | Full price conditioned upon approval of Oaktree as replacement collateral manager, by requisite noteholders or a court of competent authority. |
| | Entry of an order by the Bankruptcy Court approving the transfer free and clear of all interests, in form and substance acceptable to Oaktree, including, without limitation, (i) the unfettered right for Oaktree to refinance, reprice, or remarket the CLOs without interference from Highland or any affiliate of Highland, (ii) termination of all rights of Acis LP under the CLO management agreements (including the right to receive any future incentive management fee) and (iii) an acknowledgement that Oaktree will not be bound by any side letter entered into by Acis LP, Highland or their respective affiliates with any investor in any of the CLOs. Please also see paragraph two of the cover letter and Annex A, in each case, for additional conditions and certain terms. |
| **Please list other factors you believe should be taken into consideration:** | Oaktree is prepared to act expeditiously to provide substantial near-term value to the debtor's estate, while at the same time providing a disciplined, value-oriented approach to management that Oaktree believes will drive positive outcomes for all stakeholders over time. |