## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE NORTHERN DISTRICT OF TEXAS
## DALLAS DIVISION

| | | |
|---|---|---|
| IN RE: | § | Case No. 18-30264-SGJ-11 |
| | § | Case No. 18-30265-SGJ-11 |
| ACIS CAPITAL MANAGEMENT, L.P., | § | |
| ACIS CAPITAL MANAGEMENT GP, LLC, | § | (Jointly Administered Under Case |
| | § | No. 18-30264-SGJ-11) |
| DEBTORS. | § | |
| | § | Chapter 11 |

## DISCLOSURE STATEMENT PURSUANT TO SECTION 1125 OF THE
## UNITED STATES BANKRUPTCY CODE WITH RESPECT TO THE JOINT PLAN
## FOR ACIS CAPITAL MANAGEMENT, L.P. AND ACIS CAPITAL MANAGEMENT GP, LLC

Jeff P. Prostok – State Bar No. 16352500
J. Robert Forshey – State Bar No. 07264200
Suzanne K. Rosen – State Bar No. 00798518
Matthew G. Maben – State Bar No. 24037008
**FORSHEY & PROSTOK LLP**
777 Main St., Suite 1290
Ft. Worth, TX 76102
Telephone: (817) 877-8855
Facsimile: (817) 877-4151
jprostok@forsheyprostok.com
bforshey@forsheyprostok.com
srosen@forsheyprostok.com
mmaben@forsheyprostok.com

**COUNSEL FOR ROBIN PHELAN,
CHAPTER 11 TRUSTEE**

Rakhee V. Patel – State Bar No. 00797213
Phillip Lamberson – State Bar No. 00794134
Joe Wielebinski – State Bar No. 21432400
Annmarie Chiarello – State Bar No. 24097496
**WINSTEAD PC**
500 Winstead Building
2728 N. Harwood Street
Dallas, Texas 75201
Telephone: (214) 745-5400
Facsimile: (214) 745-5390
rpatel@winstead.com
plamberson@winstead.com
jwielebinski@winstead.com
achiarello@winstead.com

**SPECIAL COUNSEL FOR ROBIN PHELAN,
CHAPTER 11 TRUSTEE**

Dated:  July 13, 2018
       Dallas, Texas

**TABLE OF CONTENTS**

Page

I. NOTICE TO HOLDERS OF CLAIMS ................................................................. 1

    A. Generally ...................................................................................... 1

    B. Summary of Treatment under the Plan ................................................ 3

II. EXPLANATION OF CHAPTER 11 ................................................................... 19

    A. Overview of Chapter 11 ....................................................................... 19

    B. Plan of Reorganization ......................................................................... 19

III. THE DEBTORS AND THEIR BUSINESS ...................................................... 21

IV. FEASIBILITY/PROJECTED DISTRIBUTIONS ................................................ 22

V. THE CHAPTER 11 CASES ............................................................................. 22

    A. Events Leading to Bankruptcy .............................................................. 22

    B. Commencement of the Involuntary Bankruptcy Cases and Entry of Orders for Relief ........................................................................................... 22

    C. Continued Operation by the Chapter 7 Trustee and Conversion to Chapter 11 ........ 22

    D. Estate Professionals ............................................................................ 23

    E. Creditors' Committee ............................................................................ 23

    F. Professional Fees and Expenses; U.S. Trustee Fees ............................... 23

    G. Schedules and Bar Date ....................................................................... 24

    H. Operating Information During Pendency of the Chapter 11 Cases ............ 24

    I. The Oaktree Motion .............................................................................. 25

    J. Exclusivity .......................................................................................... 25

VI. LITIGATION INVOLVING THE DEBTORS ...................................................... 25

    A. Current Litigation ................................................................................. 25

    B. Additional and Potential Litigation by the Debtors ................................... 28

VII. THE PLAN ................................................................................................... 28

    A. Classification and Treatment Summary ................................................. 29

1. Unclassified Claims Against the Debtors...................................................29

   a. Treatment of Administrative Expense Claims (Plan A) ......................29

   b. Treatment of Administrative Expense Claims (Plan B) ......................30

   c. Treatment of Administrative Expense Claims (Plan C) ......................31

   d. Treatment of Priority Tax Claims (Plan A)...........................................32

   e. Treatment of Priority Tax Claims (Plan B)...........................................33

   f. Treatment of Priority Tax Claims (Plan C) ..........................................33

   g. Treatment of U.S. Trustee Fees (Plan A) ...........................................33

   h. Treatment of U.S. Trustee Fees (Plan B) ...........................................33

   i. Treatment of U.S. Trustee Fees (Plan C) ...........................................33

2. Classified Claims and Interests..................................................................34

B. Acceptance or Rejection of the Plan (Plan A)..............................................34

C. Acceptance or Rejection of the Plan (Plan B) ..............................................34

D. Acceptance or Rejection of the Plan (Plan C) ..............................................34

E. Only a Single Plan May Be Confirmed .........................................................35

F. Means of Implementing the Plan (Plan A) ....................................................35

1. Plan A Transaction – Sources of Funding for Plan Obligations ....................35

2. Transfer of the Transferred Assets...............................................................35

3. Acis Trust.......................................................................................................35

4. Transfer of Assets to the Acis Trust .............................................................36

5. Assumption of Obligation to Make Distributions ...........................................36

6. Actions by the Debtors and the Acis Trustee to Implement Plan ..................36

7. Post-Effective Date Service List....................................................................36

8. Section 505 Powers.......................................................................................36

9. Section 510(c) Powers...................................................................................36

10. Section 506(c) Powers...................................................................................36

11. Plan Injunction ...................................................................................... 37

12. Transferee not Successor ..................................................................... 37

G. Means of Implementing the Plan (Plan B) ................................................ 37

1. Acis Trust .............................................................................................. 37

2. Transfers of Assets .............................................................................. 37

3. Assumption of Obligations to Make Distributions ............................... 37

4. Actions by the Debtors, the Reorganized Debtor and the Acis Trustee to Implement Plan ..................................................................................... 37

5. Continued Portfolio Management by the Reorganized Debtor ............ 38

6. Replacement of Highland as Sub-Servicer and Sub-Advisor ............. 38

7. Option for HCLOF to Elect a Reset of the Acis CLOs ........................ 38

8. Amendment of Indentures .................................................................... 38

9. Post-Effective Date Service List .......................................................... 38

10. Section 505 Powers .............................................................................. 39

11. Section 510(c) Powers ......................................................................... 39

12. Section 506(c) Powers ......................................................................... 39

13. Plan Injunction ...................................................................................... 39

14. Cancellation of Interests ...................................................................... 39

H. Means of Implementing the Plan (Plan C) ................................................ 39

1. Acis Trust .............................................................................................. 39

2. Transfers of Assets .............................................................................. 39

3. Assumption of Obligations to Make Distributions ............................... 40

4. Actions by the Debtors, the Reorganized Debtor and the Acis Trustee to Implement Plan ..................................................................................... 40

5. Termination of Highland as Sub-Servicer and Sub-Advisor ............... 40

6. Continued Portfolio Management by the Reorganized Debtor ............ 40

7. Option for HCLOF to Elect a Reset of the Acis CLOs ........................ 40

8. Amendment of Indentures ...................................................................41

9. Post-Effective Date Service List ..........................................................41

10. Section 505 Powers .........................................................................41

11. Section 510(c) Powers ......................................................................41

12. Section 506(c) Powers ......................................................................41

13. Plan Injunction ...............................................................................41

14. Cancellation of Interests ...................................................................41

I. The Acis Trust (Plan A) .........................................................................42

1. Acis Trust ......................................................................................42

2. Compensation of Acis Trustee .............................................................42

3. Trust Assets ...................................................................................42

4. Distributions from the Acis Trust ..........................................................42

5. Reserves .......................................................................................43

6. Trust Expenses ...............................................................................43

7. Powers and Duties of the Acis Trustee ...................................................43

8. Exercise of Acis Trustee's Powers ........................................................43

9. Prosecution and Settlement of Estate Claims ...........................................44

10. Exculpation of Acis Trustee ................................................................44

11. Indemnity ......................................................................................44

12. Resignation of Acis Trustee ................................................................44

13. Replacement of the Acis Trustee ..........................................................44

14. Reliance by Acis Trustee ....................................................................44

15. Plan Injunction ...............................................................................44

16. Tax Treatment .................................................................................44

17. Transfer of Claims ...........................................................................45

18. Construction of Acis Trust Documents ...................................................45

19. Relief from the Bankruptcy Court ................................................................. 45

20. Removal for Cause ........................................................................................ 45

J. The Acis Trust (Plan B) ....................................................................................... 45

1. Acis Trust ....................................................................................................... 45

2. Compensation of Acis Trustee ..................................................................... 45

3. Acis Trust Assets .......................................................................................... 45

4. Distributions from Acis Trust ........................................................................ 46

5. Reserves ....................................................................................................... 46

6. Trust Expenses ............................................................................................. 47

7. Powers and Duties of the Acis Trustee ......................................................... 47

8. Exercise of Acis Trustee's Powers ............................................................... 47

9. Prosecution and Settlement of Estate Claims .............................................. 47

10. Exculpation of Acis Trustee .......................................................................... 47

11. Indemnity ....................................................................................................... 47

12. Resignation of Acis Trustee .......................................................................... 47

13. Replacement of the Acis Trustee .................................................................. 47

14. Reliance by Acis Trustee ............................................................................... 48

15. Plan Injunction ............................................................................................... 48

16. Tax Treatment ............................................................................................... 48

17. Transfer of Claims ......................................................................................... 48

18. Construction of Acis Trust Documents ......................................................... 48

19. Relief from the Bankruptcy Court ................................................................. 48

20. Removal for Cause ........................................................................................ 48

K. The Acis Trust (Plan C) ....................................................................................... 48

1. Acis Trust ....................................................................................................... 48

2. Compensation of Acis Trustee ..................................................................... 49

3.  Acis Trust Assets ................................................................................. 49

4.  Distributions from Acis Trust ................................................................ 49

5.  Reserves .............................................................................................. 50

6.  Trust Expenses .................................................................................... 50

7.  Powers and Duties of the Acis Trustee ................................................ 50

8.  Exercise of Acis Trustee's Powers ...................................................... 50

9.  Prosecution and Settlement of Estate Claims ..................................... 50

10. Exculpation of Acis Trustee ................................................................. 51

11. Indemnity ............................................................................................. 51

12. Resignation of Acis Trustee ................................................................ 51

13. Replacement of the Acis Trustee ......................................................... 51

14. Reliance by Acis Trustee ..................................................................... 51

15. Plan Injunction ..................................................................................... 51

16. Tax Treatment ...................................................................................... 51

17. Transfer of Claims ................................................................................ 51

18. Construction of Acis Trust Documents ................................................ 52

19. Relief from the Bankruptcy Court ........................................................ 52

20. Removal for Cause ............................................................................... 52

L.  Provisions Governing Distribution ............................................................ 52

1.  Source of Distributions ........................................................................ 52

2.  Timing and Amount of Distributions ..................................................... 52

3.  Means of Cash Payment ...................................................................... 52

4.  Record Date for Distributions ............................................................... 53

5.  Delivery of Distributions ....................................................................... 53

6.  W-9 Forms ............................................................................................ 53

7.  Time Bar to Cash Payments ................................................................ 54

8.  Cure Period ............................................................................................. 54

9.  Distributions after Substantial Consummation ................................... 54

M.  Retention of Estate Claims and Estate Defenses ..................................... 54

1.  Retention of Estate Claims .................................................................. 54

2.  Retention of Estate Defenses .............................................................. 55

3.  Assertion of Estate Claims and Estate Defenses ............................... 55

N.  Procedures for Resolving and Treating Contested and Contingent Claims ............. 55

1.  Claims Listed in Schedules as Disputed ............................................ 55

2.  Responsibility for Objecting to Claims and Settlement of Claims ................. 55

3.  Objection Deadline ............................................................................... 56

4.  Response to Claim Objection ............................................................... 56

5.  Distributions on Account of Contested Claims ..................................... 56

6.  No Waiver of Right to Object ................................................................ 56

7.  Offsets and Defenses .......................................................................... 56

8.  Claims Paid or Reduced Prior to Effective Date ................................. 57

O.  Executory Contracts and Unexpired Leases .............................................. 57

1.  Assumption and Rejection of Executory Contracts ............................. 57

2.  Cure Payments .................................................................................... 57

3.  Bar to Rejection Claims ....................................................................... 57

4.  Rejection Claims .................................................................................. 57

5.  Reservation of Rights ........................................................................... 58

P.  Substantive Consolidation of the Debtors .................................................. 58

Q.  Conditions Precedent to Confirmation and Effectiveness of Plan ............. 58

1.  Conditions to Confirmation and Effectiveness of Plan ....................... 58

2.  Notice of the Effective Date ................................................................. 58

3.  Revocation of Plan .............................................................................. 58

R. Effect of the Plan on Claims and Interests .................................................. 59

    1. Compromise and Settlement ................................................................ 59

    2. Discharge ............................................................................................ 59

    3. Plan Injunction .................................................................................... 60

    4. Setoffs ................................................................................................ 61

    5. Recoupment ........................................................................................ 61

    6. Turnover ............................................................................................. 61

    7. Automatic Stay .................................................................................... 61

S. Jurisdiction of Courts and Modifications to the Plan ..................................... 62

    1. Retention of Jurisdiction ...................................................................... 62

    2. Abstention and Other Courts ............................................................... 63

    3. Non-Material Modifications .................................................................. 63

    4. Material Modifications ......................................................................... 63

T. Miscellaneous Provisions ............................................................................ 64

    1. Severability ......................................................................................... 64

    2. Oral Agreements; Modification of Plan; Oral Representations or Inducements ....................................................................................... 64

    3. Waiver ................................................................................................. 64

    4. Notice .................................................................................................. 64

    5. Compliance with All Applicable Laws .................................................. 65

    6. Duties to Creditors; Exculpation ......................................................... 65

    7. Binding Effect ...................................................................................... 65

    8. Governing Law, Interpretation ............................................................ 66

    9. Payment of Statutory Fees ................................................................. 66

    10. Filing of Additional Documents ........................................................... 66

    11. Computation of Time ........................................................................... 66

    12. Elections by the Acis Trustee or the Reorganized Debtor ................... 66

13. Release of Liens ...................................................................................... 66

14. Rates ........................................................................................................ 66

15. Compliance with Tax Requirements ........................................................ 67

16. Notice of Occurrence of the Effective Date ............................................. 67

17. Notice of Entry of Confirmation Order .................................................... 67

VIII. CERTAIN FEDERAL INCOME TAX CONSEQUENCES OF THE PLAN ......................... 67

IX. CONFIRMATION OF THE PLAN ................................................................................ 67

A. Solicitation of Votes; Voting Procedures .......................................................... 67

1. Ballots and Voting Deadlines .................................................................. 67

2. Parties-in-Interest Entitled to Vote .......................................................... 68

3. Vote Required for Class Acceptance ........................................................ 68

B. Confirmation Hearing ....................................................................................... 69

C. Requirements for Confirmation of the Plan ...................................................... 70

D. Cramdown ........................................................................................................ 72

X. RISK FACTORS ........................................................................................................ 74

A. Insufficient Acceptances .................................................................................. 74

B. Confirmation Risks ........................................................................................... 74

C. Conditions Precedent ....................................................................................... 74

D. Estimated Distributions under the Plan ............................................................ 74

E. Plan A – Exhaustion of Cash to Fund Acis Trust Activities .............................. 75

F. Plan B and Plan C – Operational Risks ........................................................... 75

XI. ALTERNATIVES TO CONFIRMATION AND CONSUMMATION OF THE PLAN .............. 75

A. Continuation of the Chapter 11 Cases ............................................................. 75

B. Alternative Plan of Reorganization ................................................................... 75

C. Chapter 7 Liquidation ....................................................................................... 75

XII. CONCLUSION ........................................................................................................ 76

Robin Phelan, as Chapter 11 Trustee for Acis Capital Management, L.P. ("Acis LP") and Acis Capital Management GP, LLC ("Acis GP," and together with Acis LP, the "Debtors"), the Debtors in the above-captioned jointly-administered chapter 11 case, hereby submits this Disclosure Statement Pursuant to Section 1125 of the United States Bankruptcy Code with Respect to the Joint Plan for Acis Capital Management, L.P. and Acis Capital Management GP, LLC (the "Disclosure Statement"). This Disclosure Statement is to be used in connection with the solicitation of votes on the Joint Plan for Acis Capital Management, L.P. and Acis Capital Management GP, LLC dated July 5, 2018 (the "Plan"). A copy of the Plan is attached hereto as **Exhibit "1"**. Unless otherwise defined herein, terms used herein have the meanings ascribed thereto in the Plan (see Article I of the Plan). Consequently, parties-in-interest are urged to carefully review the Plan in conjunction with this Disclosure Statement.

For a general summary of the proposed treatment of Claims or Interests under the Plan, please see the chart below.

## I. NOTICE TO HOLDERS OF CLAIMS

### A.     Generally

The purpose of this Disclosure Statement is to enable Creditors whose Claims are Impaired to make an informed decision in exercising their right to vote to accept or reject the Plan.

THIS DISCLOSURE STATEMENT CONTAINS INFORMATION THAT MAY BEAR UPON YOUR DECISION TO ACCEPT OR REJECT THE PLAN. PLEASE READ THIS DOCUMENT WITH CARE.

On July ____, 2018, the Bankruptcy Court entered an *Order (I) Conditionally Approving Disclosure Statement, (II) Scheduling Combined Hearing on Final Approval of Disclosure Statement and Confirmation of Plan, and Setting Related Deadlines, (III) Approving Forms for Voting and Notice, and (IV) Approving Related Matters* [Docket No. ____] (the "Solicitation Order"). Pursuant to section 105(d) of the Bankruptcy Code and Rule 3017 of the Federal Rules of Bankruptcy Procedure, the Solicitation Order (a) conditionally approved this Disclosure Statement, (b) set a combined hearing for final approval of this Disclosure Statement and confirmation of the Plan, (c) approved voting procedures, materials for solicitation of votes on the Plan, and form of notice, and (d) granted related relief, including establishment of certain deadlines relating to final approval of this Disclosure Statement and confirmation of the Plan. A copy of the Solicitation Order is included in the materials accompanying this Disclosure Statement. CONDITIONAL APPROVAL OF THIS DISCLOSURE STATEMENT BY THE BANKRUPTCY COURT DOES NOT CONSTITUTE A FINAL DETERMINATION BY THE BANKRUPTCY COURT THAT THE DISCLOSURE STATEMENT CONTAINS ADEQUATE INFORMATION AS REQUIRED BY SECTION 1125 OF THE BANKRUPTCY CODE OR A DETERMINATION REGARDING THE FAIRNESS OR MERITS OF THE PLAN.

The statements contained in the Disclosure Statement are made as of the date hereof unless another time is specified, and neither delivery of the Disclosure Statement nor any exchange of rights made in connection with the Plan shall, under any circumstances, create an implication that there has not been any change in the information set forth herein since the date the Disclosure Statement and the materials relied on in preparation of the Disclosure Statement were compiled.

For the convenience of Creditors and parties-in-interest, this Disclosure Statement summarizes the terms of the Plan, but the Plan itself qualifies all summaries. This Disclosure Statement is qualified in its entirety by the terms of the Plan. If any inconsistency exists between the Plan and the Disclosure Statement, the terms of the Plan are controlling. In the event of conflict between the Plan and Confirmation Order, the Confirmation Order will control.

Each Claimant should consult the Claimant's individual attorney, accountant and/or financial advisor as to the effect of the Plan on such Claimant.

Each holder of a Claim or Interest entitled to vote to accept or reject the Plan should read this Disclosure Statement and the Plan in their entirety before voting. No solicitation of votes to accept or reject the Plan may be made except pursuant to this Disclosure Statement and section 1125 of the Bankruptcy Code. Except for the Chapter 11 Trustee, the Debtors' Estate and their professionals, no person has been authorized to use or promulgate any information concerning the Debtors, the Debtors' businesses, or the Plan, other than the information contained herein, in connection with the solicitation of votes to accept or reject the Plan. No holder of a Claim entitled to vote on the Plan should rely upon any information relating to the Debtors, the Debtors' businesses, or the Plan other than that contained in this Disclosure Statement and the exhibits thereto. Unless otherwise indicated, the source of all information set forth herein was the Debtors.

The Disclosure Statement may not be relied on for any purpose other than to determine whether to vote in favor of or against the Plan and related options and elections, and nothing contained herein shall constitute an offer to sell or purchase a security as defined by state or Federal securities law or an admission of any fact or liability by any party, or be admissible in any proceeding involving the Debtors or any other party, or be deemed conclusive evidence of the tax or other legal effects of the reorganization of the Debtors on holders of Claims or Interests. Certain of the information contained in the Disclosure Statement, by its nature, is forward looking, contains estimates and assumptions which may prove to be wrong, and contains forecasts which may prove to be wrong or which may be materially different from actual results.

The Plan contains three separate alternative plans for the Debtors, each of which will be voted on separately by creditors. These alternatives are identified in the Plan as Plan A, Plan B and Plan C. If the Bankruptcy Court confirms the Plan, the Plan shall be confirmed based on the terms and provisions of only one of the three alternatives. For example, if the Bankruptcy Court confirms the Plan based on the terms and provisions of Plan A (Article II of the Plan), then the terms and provisions of Plan B (Article III of the Plan) and Plan C (Article IV of the Plan) shall be deemed void and of no force and effect. Holders of Claims entitled to vote may vote to accept or reject each alternative independently. For example, a voting Creditor may submit a Ballot which accepts the Plan based on the terms and provisions of Plan A, rejects the Plan based on the terms and provisions of Plan B, and accepts the Plan based on the terms and provisions of Plan C. However, if the ballots indicate that more than one of the alternative plans in the Plan is confirmable, the Chapter 11 Trustee shall ask the Bankruptcy Court to confirm the alternative that he believes maximizes benefit to creditors of the Estate. Holders of Class 6 Interests are Impaired under the Plan, but are entitled to vote only on the Plan A alternative of the Plan, as they are deemed to reject the Plan B and Plan C alternatives of the Plan. After carefully reviewing this Disclosure Statement, including the attached exhibits, please indicate your acceptance or rejection of the Plan under each of the alternatives presented by Plan A, Plan B and Plan C by voting in favor of or against each of the alternatives on the enclosed Ballot (or, in the case of holders of Class 6 Interests, indicating your acceptance or rejection of the

2

Plan A alternative) and returning the Ballot to the address set forth on the Ballot, in the enclosed return envelope so that it will be received by no later than **5:00 p.m., Central Time on August __, 2018**. If you do not vote to accept the Plan, or if you are the holder of an unimpaired Claim or Interest, you may be bound by the Plan if it is accepted by the requisite holders of Claims or Interests.

TO BE SURE YOUR BALLOT IS COUNTED, YOUR BALLOT MUST BE RECEIVED NO LATER THAN **5:00 p.m., Central Time, on August __, 2018**. For detailed voting instructions and the name, address, and phone number of the person you may contact if you have questions regarding the voting procedures, this process is explained below.

Pursuant to section 105(d) of the Bankruptcy Code and Rule 3017 of the Bankruptcy Rules, the Bankruptcy Court has scheduled the Confirmation Hearing to consider final approval of the Disclosure Statement and confirmation of the Plan on **August __, 2018 at __.m. Central Time**, in the United States Bankruptcy Court for the Northern District of Texas, Dallas Division. The Bankruptcy Court has directed that objections, if any, to final approval of the Disclosure Statement and confirmation of the Plan be filed and served on or before **August __, 2018**. Any response to any objection to final approval of the Disclosure Statement or confirmation of the Plan must be filed on or before **August __, 2018**.

THE CHAPTER 11 TRUSTEE SUPPORTS CONFIRMATION OF THE PLAN AND URGES ALL HOLDERS OF IMPAIRED CLAIMS AND INTERESTS TO VOTE TO ACCEPT THE PLAN.

**B.**     **Summary of Treatment under the Plan**

The following is an estimate of the numbers and amounts of classified Claims and Interests to receive treatment under the Plan, and a summary of the proposed treatment of such Claims and Interests under each of Plan A, Plan B and Plan C of the Plan. Reference should be made to the entire Disclosure Statement and to the Plan for a complete description of the classification and treatment of Claims and Interests.

The Bar Date for filing proofs of Claim is August 1, 2018. The tables below are drawn from the Debtors' Schedules and filed or anticipated proofs of Claim. The final universe of Claims, as actually Allowed, may differ from these tables.

| PLAN A | |
|---|---|
| **Class** | **Treatment** |
| <u>**Class 1**</u> **– Secured Tax Claims**<br><br>**Estimated Amount: $_____**<br><br>**Estimated Number of Holders: __** | **Unimpaired**<br><br>Each holder of an Allowed Secured Tax Claim shall receive (a) one Cash payment in an amount equal to the principal amount of such Allowed Secured Tax Claim, plus interest at the rate and in the manner prescribed by applicable state law from the later of the Petition Date or the first day after the last day on which such Secured Tax Claim may be paid without penalty, on the Initial Distribution Date, or (b) such other treatment as may be agreed to in writing by the holder of the Secured Tax Claim and the Acis Trustee. The Liens securing such |

| PLAN A | |
|---|---|
| **Class** | **Treatment** |
| | Secured Tax Claims shall remain unimpaired and unaffected until each such Class 1 Claim is paid in full. Class 1 is unimpaired. Holders of Class 1 Claims are conclusively presumed to have accepted the Plan and, accordingly, are not entitled to vote on the Plan.<br><br>**Estimated Recovery: 100%** |
| **Class 2 – HCLOF Claim**<br><br>**Estimated Amount: $**_____<br><br>**Estimated Number of Holders: 1** | **Impaired**<br><br>On the Effective Date, the holder of the Allowed HCLOF Claim shall receive a Cash payment equal to the mid-point of the bid and the ask for the assets of the Transaction CLOs on the Confirmation Date, plus 25 basis points (mid-NAV +25 bps). Class 2 is Impaired. The Holder of the Class 2 Claim is entitled to vote on the Plan.<br><br>**Estimated Recovery: 100%** |
| **Class 3 – Terry Secured Claim**<br><br>**Estimated Amount: $**_____<br><br>**Estimated Number of Holders: 1** | **Impaired**<br><br>The Allowed Terry Secured Claim shall be treated as an unsecured claim and shall be paid in Cash, in full, plus interest at the rate and in the manner prescribed by applicable state law from the Petition Date, within sixty (60) days of the later of (a) the Initial Distribution Date, or (b) the date that the Terry Secured Claim becomes an Allowed Claim. Class 3 is Impaired. The Holder of the Class 3 Terry Secured Claim is entitled to vote on the Plan.<br><br>**Estimated Recovery: 100%** |
| **Class 4 – General Unsecured Claims***<br><br>**Estimated Amount: $**_____<br><br>**Estimated Number of Holders:** ___<br><br>*For purposes of implementing the Plan, including for purposes of voting and distributions to be made under the Plan, the Confirmation Order shall substantively consolidate the Debtors such that each Allowed Claim will be deemed a single obligation of the consolidated Debtors. | **Impaired**<br><br>Each holder of an Allowed General Unsecured Claim shall receive a Cash Payment equal to the Allowed amount of such holder's General Unsecured Claim within sixty (60) days of the later of (a) the Initial Distribution Date, or (b) the date on which such holder's Claim becomes an Allowed General Unsecured Claim. Class 4 is Impaired. Holders of Class 4 Claims are entitled to vote on the Plan.<br><br>**Estimated Recovery: 100%** |

| PLAN A | |
|---|---|
| **Class** | **Treatment** |
| <u>Class 5</u> – Insider Claims<br><br>**Estimated Amount: $**_____<br><br>**Estimated Number of Holders:** \_\_ | **Impaired**<br><br>Holders of Class 5 Insider Claims shall be treated as follows:<br><br>(a)   Class 5 shall consist of Insider Claims which constitute General Unsecured Claims and shall specifically include any General Unsecured Claim asserted by Highland and any Affiliate of Highland.<br><br>(b)   Class 5 Claims shall be divided into two (2) subclasses.  Subclass 5A shall consist of all Allowed Class 5 claims which are not subject to equitable subordination.  Subclass 5B shall consist of all Class 5 claims which are determined by the Bankruptcy Court to be subject to equitable subordination.  If only a part of a Class 5 Claim is subject to equitable subordination, then the portion of such claim subject to equitable subordination shall be included in Subclass 5B and the remainder not subject to equitable subordination shall be included in Subclass 5A.  Subclass 5A and Subclass 5B will vote separately on Plan A, although Subclass 5B is currently an empty class.<br><br>(c)  All Class 5 Claims (regardless of which subclass) shall be and remain subject to all Estate Defenses and all Estate Claims, both as offsets and for an affirmative recovery against the Holder of any Class 5 Claim.<br><br>(d)   Unless otherwise provided by order of the Bankruptcy Court, holders of Allowed Subclass 5A Claims shall receive a Cash Payment equal to the Allowed amount of such holder's Subclass 5A Claim within sixty (60) days of the later of (a) the Initial Distribution Date, or (b) the date on which such holder's Claim becomes an Allowed Subclass 5A Claim.<br><br>(e)   Unless otherwise provided by Order of the Bankruptcy Court, holders of Subclass 5B claims shall not be entitled to any Distribution until all Allowed Claims included in Classes 1 through 4 and Subclass 5A have been paid in full.  After all Allowed Claims included in Classes 1 through 4 and Subclass 5A have been paid in full, holders of Allowed Subclass 5B Claims shall receive a Pro Rata Share of one or more Distributions from the Acis Trust, the amount and timing of which shall be determined by the Acis Trustee, but only after satisfaction of, or allocation of an appropriate Reserve |

| PLAN A | |
|---|---|
| **Class** | **Treatment** |
| | for, Trust Expenses. Allowed Subclass 5B Claims shall accrue interest from and after the Effective Date until paid in full at the Plan Rate.<br><br>(f)    The Acis Trustee may establish appropriate Reserves as to any Contested Claim included in Class 5.<br><br>**Estimated Recovery: 100%** |
| **Class 6 – Interests** | **Impaired**<br><br>The holders of Class 6 Interests shall retain their Interests in the Debtors under the Plan. After all Allowed Claims in Classes 1 through 4 and all Allowed Claims in Subclasses 5A and 5B have been paid in full, the Acis Trust shall transfer the remaining assets of the Acis Trust, if any, to the reorganized Acis LP. Class 6 is Impaired. Holders of Class 6 Interests are entitled to vote on Plan A of the Plan.<br><br>**Estimated Recovery: Unknown** |

| PLAN B | |
|---|---|
| **Class** | **Treatment** |
| **Class 1 – Secured Tax Claims**<br><br>**Estimated Amount: $**_____<br><br>**Estimated Number of Holders:** ___ | **Unimpaired**<br><br>Each holder of an Allowed Secured Tax Claim shall receive (a) one Cash payment in an amount equal to the principal amount of such Allowed Secured Tax Claim, plus interest at the rate and in the manner prescribed by applicable state law from the later of the Petition Date or the first day after the last day on which such Secured Tax Claim may be paid without penalty, on the Initial Distribution Date, or (b) such other treatment as may be agreed to in writing by the holder of the Secured Tax Claim and the Acis Trustee. The Liens securing such Secured Tax Claims shall remain unimpaired and unaffected until each such Class 1 Claim is paid in full. All Distributions on account of Allowed Class 1 Claims shall be made by the Acis Trustee from the Trust Assets. Class 1 is unimpaired. Holders of Class 1 Claims are conclusively presumed to have accepted the Plan and, accordingly, are not |

| PLAN B | |
|---|---|
| **Class** | **Treatment** |
| | entitled to vote on the Plan.<br><br>**Estimated Recovery: 100%** |
| **Class 2 – HCLOF Claim**<br><br>**Estimated Amount: $**_____<br><br>**Estimated Number of Holders: 1** | Impaired<br><br>The HCLOF Claim shall be satisfied through the retention by HCLOF of the Subordinated Notes in each of the Acis CLOs and having the option to elect a sequential reset of the Acis CLOs. Class 2 is Impaired. The Holder of the Class 2 Claim is entitled to vote on the Plan. To the extent that any HCLOF Claim remains unpaid it shall be treated as a Class 5B Claim.<br><br>**Estimated Recovery: 100%** |
| **Class 3 – Terry Secured Claim**<br><br>**Estimated Amount: $**_____<br><br>**Estimated Number of Holders: 1** | Impaired<br><br>In exchange for a one million dollar ($1,000,000.00) reduction in the amount of his Secured Claim, Terry shall receive one hundred percent (100%) of the equity interests in the Reorganized Debtor as of the Effective Date. The remaining balance of any Allowed Terry Secured Claim shall be treated and paid as a Class 4 General Unsecured Claim. Class 3 is Impaired. The Holder of the Class 3 Terry Secured Claim is entitled to vote on the Plan.<br><br>**Estimated Recovery: 100%** |
| **Class 4 – General Unsecured Claims***<br><br>**Estimated Amount: $**_____<br><br>**Estimated Number of Holders:** \_\_\_<br><br>*For purposes of implementing the Plan, including for purposes of voting and distributions to be made under the Plan, the Confirmation Order shall substantively consolidate the Debtors such that each Allowed Claim will be deemed a single obligation of the consolidated Debtors. | Impaired<br><br>(a) Each holder of an Allowed General Unsecured Claim shall receive a promissory note issued by the Reorganized Debtor (each an "Unsecured Cash Flow Note") on the later of (a) that date that is as soon as practicable after the Effective Date, or (b) that date that is as soon as practicable after such holder's General Unsecured Claim becomes an Allowed Class 4 Claim. Each Unsecured Cash Flow Note shall be dated as of the Effective Date, bear interest at the Plan Rate and shall mature on that date that is the three (3) years after the Effective Date.<br><br>(b) To the extent of Available Cash, the Reorganized Debtor shall make substantially equal quarterly Distributions of principal and accrued interest to each holder of an Unsecured Cash Flow Note, with the first |

7

| PLAN B | |
|---|---|
| Class | Treatment |
| | such quarterly Distribution being due and payable on the 90th day after the Effective Date. Thereafter, like Distributions shall be made each quarter by the Reorganized Debtor until the Unsecured Cash Flow Note is paid in full. Notwithstanding the foregoing, in the event that an Unsecured Cash Flow Note is first issued more than ninety (90) days after the Effective Date, the first Distribution made on account of such Unsecured Cash Flow Note shall be made upon the date that the next Distribution would otherwise be due, but such first Distribution shall also include amounts that would have been distributed to the holder of such Unsecured Cash Flow Note had such Unsecured Cash Flow Note been issued prior to ninety (90) days after the Effective Date, such that the first Distribution shall bring all payments current on account of such Unsecured Cash Flow Note. If on any date on which a quarterly Distribution is due to the holder of an Unsecured Cash Flow Note the remaining principal and accrued interest owing on account of such Unsecured Cash Flow Note is less than the regular quarterly Distribution amount, the Reorganized Debtor shall make a Distribution to the holder of such Unsecured Cash Flow Note in an amount sufficient to fully satisfy the remaining principal and accrued interest owed, but no more. Nothing contained in the Plan shall preclude the Reorganized Debtor from prepaying any Unsecured Cash Flow Note.<br><br>(c) Within ninety (90) days of the Effective Date, the Acis Trustee shall make a Pro Rata Distribution to holders of Allowed Class 4 Claims and Allowed Subclass 5A Claims out of Available Cash held by the Acis Trust, which Distribution shall be applied to reduce the outstanding balance of each holder's Unsecured Cash Flow Note. The amount to be so distributed shall be determined in the sole discretion of the Acis Trustee after appropriate Reserves are made by the Acis Trustee, including but not limited to Reserves for Trust Expenses. Although the Distribution by the Acis Trustee to the holders of Allowed Class 4 Claims shall reduce the principal balance of each holder's Unsecured Cash Flow Note, such Distribution by the Acis Trustee will be made in addition to, and not in lieu of, the quarterly Distributions the Reorganized Debtor is required to make to holders of Allowed Class 4 Claims on account of the Unsecured Cash Flow Notes pursuant to the Plan.<br><br>(d) If after making the Pro Rata Distribution pursuant to |

| PLAN B | |
|---|---|
| **Class** | **Treatment** |
| | section 3.11(c) of the Plan (and section 3.12(f) of the Plan), the Acis Trust obtains additional Cash, through litigation recoveries or otherwise, and the Acis Trustee determines, in his/her sole discretion, that the Acis Trust holds Available Cash sufficient to allow one or more subsequent Pro Rata Distributions to be made to holders of Allowed Class 4 Claims and Allowed Subclass 5A Claims, the Acis Trustee may, but shall not be required to, make one or more additional Pro Rata Distributions to holders of Allowed Class 4 Claims and Allowed Subclass 5A Claims.  Any such additional Distributions shall be applied to reduce the outstanding balance of each holder's Unsecured Cash Flow Note.<br><br>(e)  Class 4 is Impaired.  Holders of Class 4 Claims are entitled to vote on the Plan.<br><br>**Estimated Recovery:  100%** |
| <u>Class 5</u> – **Insider Claims**<br><br>**Estimated Amount: $**_____<br><br>**Estimated Number of Holders:** \_\_\_\_ | **Impaired**<br><br>Holders of Class 5 Insider Claims shall be treated as follows:<br><br>(a)    Class 5 shall consist of Insider Claims which constitute General Unsecured Claims and shall specifically include any General Unsecured Claim asserted by Highland and any Affiliate of Highland.<br><br>(b)    Class 5 Claims shall be divided into two (2) subclasses.  Subclass 5A shall consist of all Allowed Class 5 claims which are not subject to equitable subordination.  Subclass 5B shall consist of all Class 5 claims which are determined by the Bankruptcy Court to be subject to equitable subordination.  If only a part of a Class 5 Claim is subject to equitable subordination, then the portion of such claim subject to equitable subordination shall be included in Subclass 5B and the remainder not subject to equitable subordination shall be included in Subclass 5A.  Subclass 5A and Subclass 5B will vote separately on Plan B, although Subclass 5B is currently an empty class.<br><br>(c)  All Class 5 Claims (regardless of which subclass) shall be and remain subject to all Estate Defenses and all Estate Claims, both as offsets and for an affirmative |

| PLAN B | |
|---|---|
| **Class** | **Treatment** |
| | recovery against the Holder of any Class 5 Claim.

(d)  Each holder of an Allowed Subclass 5A Claim shall receive an Unsecured Cash Flow Note on the later of (a) that date that is as soon as practicable after the Effective Date, or (b) that date that is as soon as practicable after such holder's Subclass 5A Claim becomes an Allowed Subclass 5A Claim.  Each Unsecured Cash Flow Note shall be dated as of the Effective Date, bear interest at the Plan Rate and shall mature on that date that is the three (3) years after the Effective Date.

(e)  To the extent of Available Cash, the Reorganized Debtor shall make substantially equal quarterly Distributions of principal and accrued interest to each holder of an Unsecured Cash Flow Note, with the first such quarterly Distribution being due and payable on the 90th day after the Effective Date.  Thereafter, like Distributions shall be made each quarter by the Reorganized Debtor until the Unsecured Cash Flow Note is paid in full.  Notwithstanding the foregoing, in the event that an Unsecured Cash Flow Note is first issued more than ninety (90) days after the Effective Date, the first Distribution made on account of such Unsecured Cash Flow Note shall be made upon the date that the next Distribution would otherwise be due, but such first Distribution shall also include amounts that would have been distributed to the holder of such Unsecured Cash Flow Note had such Unsecured Cash Flow  Note been issued prior to ninety (90) days after the Effective Date, such that the first Distribution shall bring all payments current on account of such Unsecured Cash Flow Note. If on any date on which a quarterly Distribution is due to the holder of an Unsecured Cash Flow Note the remaining principal and accrued interest owing on account of such Unsecured Cash Flow Note is less than the regular quarterly Distribution amount, the Reorganized Debtor shall make a Distribution to the holder of such Unsecured Cash Flow Note in an amount sufficient to fully satisfy the remaining principal and accrued interest owed, but no more.  Nothing contained in the Plan shall preclude the Reorganized Debtor from prepaying any Unsecured Cash Flow Note.

(f)  Within ninety (90) days of the Effective Date, the Acis Trustee shall make a Pro Rata Distribution to holders of Allowed Class 4 Claims and Allowed Subclass 5A Claims out of Available Cash held by the Acis Trust, |

| PLAN B | |
| --- | --- |
| **Class** | **Treatment** |
| | which Distribution shall be applied to reduce the outstanding balance of each holder's Unsecured Cash Flow Note.  The amount to be so distributed shall be determined in the sole discretion of the Acis Trustee after appropriate Reserves are made by the Acis Trustee, including but not limited to Reserves for Trust Expenses.  Although the Distribution by the Acis Trustee to the holders of Allowed Class 4 Claims shall reduce the principal balance of each holder's Unsecured Cash Flow Note, such Distribution by the Acis Trustee will be made in addition to, and not in lieu of, the quarterly Distributions the Reorganized Debtor is required to make to holders of Allowed Class 4 Claims on account of the Unsecured Cash Flow Notes pursuant to the Plan. |
| | (g)  If after making the Pro Rata Distribution pursuant to sections 3.11(c) and 3.12(f) of the Plan, the Acis Trust obtains additional Cash, through litigation recoveries or otherwise, and the Acis Trustee determines, in his/her sole discretion, that the Acis Trust holds Available Cash sufficient to allow one or more subsequent Pro Rata Distributions to be made to holders of Allowed Class 4 Claims and Allowed Subclass 5A Claims, the Acis Trustee may, but shall not be required to, make one or more additional Pro Rata Distributions to holders of Allowed Class 4 Claims and Allowed Subclass 5A Claims.  Any such additional Distributions shall be applied to reduce the outstanding balance of each holder's Unsecured Cash Flow Note. |
| | (h)  Unless otherwise provided by Order of the Bankruptcy Court, holders of Subclass 5B claims shall not be entitled to any Distribution from the Acis Trust until all Allowed Claims included in Classes 1 through 4 and Subclass 5A have been paid in full.  At any time after all Allowed Claims in Classes 1 through 4 and Subclass 5A have been paid in full, and prior to conclusion of the business of the Acis Trust, the Acis Trustee may, in his/her sole discretion, make one or more Distributions of Available Cash from the Acis Trust to holders of Allowed Subclass 5B Claims.  Any such Distribution, if less than the then unpaid principal amount of all Allowed Subclass 5B Claims, together with interest thereon at the Plan Rate from the Effective Date through the date of such Distribution, shall be made Pro Rata to the holders of Allowed Subclass 5B Claims. |
| | (i)  After (i) all Allowed Claims in Classes 1 through 4 |

| PLAN B | |
|---|---|
| **Class** | **Treatment** |
| | and Subclass 5A have been paid in full, (ii) the Acis Trustee has made a determination that the business of the Acis Trust is concluded, and (iii) the Acis Trustee has paid or made appropriate Reserves for the payment of all remaining Trust Expenses, the Acis Trustee shall, as soon as practicable, make a Pro Rata Distribution of the remaining Cash of the Acis Trust to holders of Allowed Subclass 5B Claims, up to the amount necessary to fully pay the remaining unpaid principal balance of such Allowed Subclass 5B Claims with interest thereon at the Plan Rate from the Effective Date through the date of such final Distribution.<br><br>(j)    The Acis Trustee may establish appropriate Reserves as to any Contested Claim included in Class 5.<br><br>(k)  Class 5 is Impaired.  Holders of Class 5 Claims are entitled to vote on the Plan.<br><br>**Estimated Recovery: 100%** |
| **Class 6 – Interests** | **Impaired**<br><br>All Interests in the Debtors shall be extinguished and shall cease to exist as of the Effective Date. The holders of such Interests shall not receive or retain any property on account of such Interests under the Plan.  Class 6 is Impaired.  Holders of Class 6 Interests are conclusively presumed to have rejected the Plan and, accordingly, are not entitled to vote on the Plan.<br><br>**Estimated Recovery: None** |

| PLAN C | |
|---|---|
| **Class** | **Treatment** |
| **Class 1 – Secured Tax Claims**<br><br>**Estimated Amount: $**_____<br><br>**Estimated Number of Holders: \_\_** | **Unimpaired**<br><br>Each holder of an Allowed Secured Tax Claim shall receive (a) one Cash payment in an amount equal to the principal amount of such Allowed Secured Tax Claim, plus interest at the rate and in the manner prescribed by applicable state law from the later of the Petition Date or the first day after the last day on which such Secured Tax Claim may be paid without penalty, on the Initial |

| PLAN C | |
|---|---|
| **Class** | **Treatment** |
| | Distribution Date, or (b) such other treatment as may be agreed to in writing by the holder of the Secured Tax Claim and the Acis Trustee. The Liens securing such Secured Tax Claims shall remain unimpaired and unaffected until each such Class 1 Claim is paid in full. All Distributions on account of Allowed Class 1 Claims shall be made by the Acis Trustee from the Trust Assets. Class 1 is unimpaired. Holders of Class 1 Claims are conclusively presumed to have accepted the Plan and, accordingly, are not entitled to vote on the Plan.<br><br>**Estimated Recovery: 100%** |
| **Class 2 – HCLOF Claim**<br><br>**Estimated Amount: $_____**<br><br>**Estimated Number of Holders: 1** | **Impaired**<br><br>The HCLOF Claim shall be satisfied through the retention by HCLOF of the subordinated notes in each of the Acis CLOs and having the option to elect a reset of the Acis CLOs. Class 2 is Impaired. The Holder of the Class 2 Claim is entitled to vote on the Plan. To the extent that any HCLOF Claim remains unpaid it shall be treated as a Class 5B Claim.<br><br>**Estimated Recovery: 100%** |
| **Class 3 – Terry Secured Claim**<br><br>**Estimated Amount: $_____**<br><br>**Estimated Number of Holders: 1** | **Impaired**<br><br>In exchange for a one million dollar ($1,000,000.00) reduction in the amount of his Secured Claim, Terry shall receive one hundred percent (100%) of the equity interests in the Reorganized Debtor as of the Effective Date. The remaining balance of any Allowed Terry Secured Claim shall be treated and paid as a Class 4 General Unsecured Claim. Class 3 is Impaired. The Holder of the Class 3 Terry Secured Claim is entitled to vote on the Plan.<br><br>**Estimated Recovery: 100%** |
| **Class 4 – General Unsecured Claims***<br><br>**Estimated Amount: $_____**<br><br>**Estimated Number of Holders: \_\_\_**<br><br>*For purposes of implementing the Plan, including for purposes of voting and distributions to be made under the Plan, | **Impaired**<br><br>(a) Each holder of an Allowed General Unsecured Claim shall receive a promissory note issued by the Reorganized Debtor (each an "<u>Unsecured Cash Flow Note</u>") on the later of (a) that date that is as soon as practicable after the Effective Date, or (b) that date that is as soon as practicable after such holder's General Unsecured Claim becomes an Allowed Class 4 Claim. |

| PLAN C | |
|---|---|
| **Class** | **Treatment** |
| the Confirmation Order shall substantively consolidate the Debtors such that each Allowed Claim will be deemed a single obligation of the consolidated Debtors. | Each Unsecured Cash Flow Note shall be dated as of the Effective Date, bear interest at the Plan Rate and shall mature on that date that is the three (3) years after the Effective Date.<br><br>(b) To the extent of Available Cash, the Reorganized Debtor shall make substantially equal quarterly Distributions of principal and accrued interest to each holder of an Unsecured Cash Flow Note, with the first such quarterly Distribution being due and payable on the 90th day after the Effective Date. Thereafter, like Distributions shall be made each quarter by the Reorganized Debtor until the Unsecured Cash Flow Note is paid in full. Notwithstanding the foregoing, in the event that an Unsecured Cash Flow Note is first issued more than ninety (90) days after the Effective Date, the first Distribution made on account of such Unsecured Cash Flow Note shall be made upon the date that the next Distribution would otherwise be due, but such first Distribution shall also include amounts that would have been distributed to the holder of such Unsecured Cash Flow Note had such Unsecured Cash Flow Note been issued prior to ninety (90) days after the Effective Date, such that the first Distribution shall bring all payments current on account of such Unsecured Cash Flow Note. If on any date on which a quarterly Distribution is due to the holder of an Unsecured Cash Flow Note the remaining principal and accrued interest owing on account of such Unsecured Cash Flow Note is less than the regular quarterly Distribution amount, the Reorganized Debtor shall make a Distribution to the holder of such Unsecured Cash Flow Note in an amount sufficient to fully satisfy the remaining principal and accrued interest owed, but no more. Nothing contained in the Plan shall preclude the Reorganized Debtor from prepaying any Unsecured Cash Flow Note.<br><br>(c) Within ninety (90) days of the Effective Date, the Acis Trustee shall make a Pro Rata Distribution to holders of Allowed Class 4A Claims and Allowed Subclass 5A Claims out of Available Cash held by the Acis Trust, which Distribution shall be applied to reduce the outstanding balance of each holder's Unsecured Cash Flow Note. The amount to be so distributed shall be determined in the sole discretion of the Acis Trustee after appropriate Reserves are made by the Acis Trustee, including but not limited to Reserves for Trust Expenses. Although the Distribution by the Acis Trustee |

| PLAN C | |
|---|---|
| **Class** | **Treatment** |
| | to the holders of Allowed Class 4 Claims shall reduce the principal balance of each holder's Unsecured Cash Flow Note, such Distribution by the Acis Trustee will be made in addition to, and not in lieu of, the quarterly Distributions the Reorganized Debtor is required to make to holders of Allowed Class 4 Claims on account of the Unsecured Cash Flow Notes pursuant to the Plan. |
| | (d) If after making the Pro Rata Distribution pursuant to section 4.11(c) of the Plan (and section 4.12(f) of the Plan), the Acis Trust obtains additional Cash, through litigation recoveries or otherwise, and the Acis Trustee determines, in his/her sole discretion, that the Acis Trust holds Available Cash sufficient to allow one or more subsequent Pro Rata Distributions to be made to holders of Allowed Class 4 Claims and Allowed Subclass 5A Claims, the Acis Trustee may, but shall not be required to, make one or more additional Pro Rata Distributions to holders of Allowed Class 4 Claims and Allowed Subclass 5A Claims. Any such additional Distributions shall be applied to reduce the outstanding balance of each holder's Unsecured Cash Flow Note. |
| | (e) Class 4 is Impaired. Holders of Class 4 Claims are entitled to vote on the Plan. |
| | **Estimated Recovery: 100%** |
| **Class 5 – Insider Claims**<br><br>**Estimated Amount: $**_____<br><br>**Estimated Number of Holders:** __ | **Impaired**<br><br>Holders of Class 5 Insider Claims shall be treated as follows:<br><br>(a) Class 5 shall consist of Insider Claims which constitute General Unsecured Claims and shall specifically include any General Unsecured Claim asserted by Highland and any Affiliate of Highland.<br><br>(b) Class 5 Claims shall be divided into two (2) subclasses. Subclass 5A shall consist of all Allowed Class 5 claims which are not subject to equitable subordination. Subclass 5B shall consist of all Class 5 claims which are determined by the Bankruptcy Court to be subject to equitable subordination. If only a part of a Class 5 Claim is subject to equitable subordination, then the portion of such claim subject to equitable subordination shall be included in Subclass 5B and the |

| PLAN C | |
|---|---|
| **Class** | **Treatment** |
| | remainder not subject to equitable subordination shall be included in Subclass 5A. Subclass 5A and Subclass 5B will vote separately on Plan C, although Subclass 5B is currently an empty class.<br><br>(c) All Class 5 Claims (regardless of which subclass) shall be and remain subject to all Estate Defenses and all Estate Claims, both as offsets and for an affirmative recovery against the Holder of any Class 5 Claim.<br><br>(d) Each holder of an Allowed Subclass 5A Claim shall receive an Unsecured Cash Flow Note on the later of (a) that date that is as soon as practicable after the Effective Date, or (b) that date that is as soon as practicable after such holder's Subclass 5A Claim becomes an Allowed Subclass 5A Claim. Each Unsecured Cash Flow Note shall be dated as of the Effective Date, bear interest at the Plan Rate and shall mature on that date that is the three (3) years after the Effective Date.<br><br>(e) To the extent of Available Cash, the Reorganized Debtor shall make substantially equal quarterly Distributions of principal and accrued interest to each holder of an Unsecured Cash Flow Note, with the first such quarterly Distribution being due and payable on the 90th day after the Effective Date. Thereafter, like Distributions shall be made each quarter by the Reorganized Debtor until the Unsecured Cash Flow Note is paid in full. Notwithstanding the foregoing, in the event that an Unsecured Cash Flow Note is first issued more than ninety (90) days after the Effective Date, the first Distribution made on account of such Unsecured Cash Flow Note shall be made upon the date that the next Distribution would otherwise be due, but such first Distribution shall also include amounts that would have been distributed to the holder of such Unsecured Cash Flow Note had such Unsecured Cash Flow Note been issued prior to ninety (90) days after the Effective Date, such that the first Distribution shall bring all payments current on account of such Unsecured Cash Flow Note. If on any date on which a quarterly Distribution is due to the holder of an Unsecured Cash Flow Note the remaining principal and accrued interest owing on account of such Unsecured Cash Flow Note is less than the regular quarterly Distribution amount, the Reorganized Debtor shall make a Distribution to the holder of such Unsecured Cash Flow Note in an amount sufficient to fully satisfy the remaining principal and |

| PLAN C | |
|---|---|
| **Class** | **Treatment** |
| | accrued interest owed, but no more. Nothing contained in the Plan shall preclude the Reorganized Debtor from prepaying any Unsecured Cash Flow Note. |
| | (f) Within ninety (90) days of the Effective Date, the Acis Trustee shall make a Pro Rata Distribution to holders of Allowed Class 4 5A Claims and Allowed Subclass 5A Claims out of Available Cash held by the Acis Trust, which Distribution shall be applied to reduce the outstanding balance of each holder's Unsecured Cash Flow Note. The amount to be so distributed shall be determined in the sole discretion of the Acis Trustee after appropriate Reserves are made by the Acis Trustee, including but not limited to Reserves for Trust Expenses. Although the Distribution by the Acis Trustee to the holders of Allowed Class 4 Claims shall reduce the principal balance of each holder's Unsecured Cash Flow Note, such Distribution by the Acis Trustee will be made in addition to, and not in lieu of, the quarterly Distributions the Reorganized Debtor is required to make to holders of Allowed Class 4 Claims on account of the Unsecured Cash Flow Notes pursuant to the Plan. |
| | (g) If after making the Pro Rata Distribution pursuant to sections 4.11(c) and 4.12(f) of the Plan, the Acis Trust obtains additional Cash, through litigation recoveries or otherwise, and the Acis Trustee determines, in his/her sole discretion, that the Acis Trust holds Available Cash sufficient to allow one or more subsequent Pro Rata Distributions to be made to holders of Allowed Class 4 Claims and Allowed Subclass 5A Claims, the Acis Trustee may, but shall not be required to, make one or more additional Pro Rata Distributions to holders of Allowed Class 4 Claims and Allowed Subclass 5A Claims. Any such additional Distributions shall be applied to reduce the outstanding balance of each holder's Unsecured Cash Flow Note. |
| | (h) Unless otherwise provided by Order of the Bankruptcy Court, holders of Subclass 5B claims shall not be entitled to any Distribution from the Acis Trust until all Allowed Claims included in Classes 1 through 4 and Subclass 5A have been paid in full. At any time after all Allowed Claims in Classes 1 through 4 and Subclass 5A have been paid in full, and prior to conclusion of the business of the Acis Trust, the Acis Trustee may, in his/her sole discretion, make one or more Distributions of Available Cash from the Acis Trust to holders of |

| PLAN C | |
|---|---|
| **Class** | **Treatment** |
| | Allowed Subclass 5B Claims. Any such Distribution, if less than the then unpaid principal amount of all Allowed Subclass 5B Claims, together with interest thereon at the Plan Rate from the Effective Date through the date of such Distribution, shall be made Pro Rata to the holders of Allowed Subclass 5B Claims.<br><br>(i) After (i) all Allowed Claims in Classes 1 through 4 and Subclass 5A have been paid in full, (ii) the Acis Trustee has made a determination that the business of the Acis Trust is concluded, and (iii) the Acis Trustee has paid or made appropriate Reserves for the payment of all remaining Trust Expenses, the Acis Trustee shall, as soon as practicable, make a Pro Rata Distribution of the remaining Cash of the Acis Trust to holders of Allowed Subclass 5B Claims, up to the amount necessary to fully pay the remaining unpaid principal balance of such Allowed Subclass 5B Claims with interest thereon at the Plan Rate from the Effective Date through the date of such final Distribution.<br><br>(j) The Acis Trustee may establish appropriate Reserves as to any Contested Claim included in Class 5.<br><br>(k) Class 5 is Impaired. Holders of Class 5 Claims are entitled to vote on the Plan.<br><br>**Estimated Recovery: 100%** |
| <u>**Class 6 – Interests**</u> | **Impaired**<br><br>All Interests in the Debtors shall be extinguished and shall cease to exist as of the Effective Date. The holders of such Interests shall not receive or retain any property on account of such Interests under the Plan. Class 6 is Impaired. Holders of Class 6 Interests are conclusively presumed to have rejected the Plan and, accordingly, are not entitled to vote on the Plan.<br><br>**Estimated Recovery: None** |

The total universe of Claims, as ultimately Allowed, may be greater or smaller than as reflected in the above analysis.

## II. EXPLANATION OF CHAPTER 11

### A. Overview of Chapter 11

Chapter 11 is the principal reorganization chapter of the Bankruptcy Code. Pursuant to chapter 11, a debtor-in-possession attempts to reorganize its business for the benefit of the debtor, its creditors, and other parties-in-interest. The Debtors' Chapter 11 Cases commenced with the filing of involuntary chapter 7 petitions by Terry on January 30, 2018. The Bankruptcy Court later converted the cases from chapter 7 to chapter 11 cases.

The commencement of a chapter 11 case creates an estate comprising all the legal and equitable interests of the debtor in property as of the date the petition is filed. Sections 1101, 1107, and 1108 of the Bankruptcy Code provide that a debtor may continue to operate its business and remain in possession of its property as a "debtor in possession" unless the bankruptcy court orders the appointment of a trustee. In the present Chapter 11 Cases, the Chapter 11 Trustee was appointed as Chapter 11 Trustee for the Debtors.

The filing of a chapter 11 petition also triggers the automatic stay provisions of the Bankruptcy Code. Section 362 of the Bankruptcy Code provides, *inter alia,* for an automatic stay of all attempts to collect pre-petition claims from a debtor or otherwise interfere with its property or business. Except as otherwise ordered by the bankruptcy court, the automatic stay remains in full force and effect until the effective date of a confirmed plan of reorganization.

The formulation of a plan of reorganization is the principal purpose of a chapter 11 case. The plan sets forth the means for satisfying the claims against and interests in the debtor. Generally, unless a trustee is appointed, only the debtor may file a plan during the first 120 days of a chapter 11 case (the "Exclusive Period"). However, section 1121(c)(1) of the Bankruptcy Code terminates the Exclusive Period upon the appointment of a trustee. Because the Chapter 11 Trustee was appointed as Chapter 11 Trustee for the Debtors, the Exclusive Period in the Chapter 11 Cases has terminated.

### B. Plan of Reorganization

Although referred to as a plan of reorganization, a plan may provide anything from a complex restructuring of a debtor's business and its related obligations to a simple liquidation of the debtors' assets. In the Debtors' Chapter 11 Cases, the Plan proposes three separate alternatives, which are identified in the Plan as Plan A, Plan B and Plan C.

Under Plan A, the Debtors will cease operating. The Transferred Assets will be transferred to a Transferee pursuant to an ATA. Net Cash Proceeds and the Remaining Assets will be transferred to the Acis Trust for administration, liquidation and ultimate distribution to Beneficiaries of the Acis Trust.

Under Plan B and Plan C, the business operations of the Debtors will continue after the Effective Date, through the Reorganized Debtor. 100% of the equity interests in the Reorganized Debtor will be owned by Terry. The Acis Trust will also be established under Plan B or Plan C and will, *inter alia*, receive transfers of certain Assets of the Debtors, including Estate Claims and Estate Defenses, to be administered and liquidated by the Acis Trust. Both the Acis Trust and the Reorganized Debtor will have certain obligations to make Distributions on account of specified Allowed Claims under Plan B or Plan C.

The Plan, under each of the Plan A, Plan B and Plan C alternatives, provides for the substantive consolidation of the Debtors for purposes of voting and distributions under the Plan, such that any Claim against either of the Debtors will be deemed to have been filed against the consolidated Debtors.

After a plan of reorganization has been filed, the holders of impaired claims against or interests in a debtor are permitted to vote to accept or reject the plan. Before soliciting acceptances of the proposed plan, section 1125 of the Bankruptcy Code requires a debtor to prepare a disclosure statement containing adequate information of a kind, and in sufficient detail, to enable a hypothetical reasonable investor to make an informed judgment about the plan. This Disclosure Statement is presented to holders of Claims against and Interests in the Debtors to satisfy the requirements of section 1125 of the Bankruptcy Code.

If all classes of claims and interests accept a plan of reorganization, the bankruptcy court may nonetheless still not confirm the plan unless the court independently determines that the requirements of section 1129 of the Bankruptcy Code have been satisfied. Section 1129 sets forth the requirements for confirmation of a plan and, among other things, requires that a plan meet the "best interests of creditors" test and be "feasible." The "best interests of creditors" test generally requires that the value of the consideration to be distributed to the holders of claims and interests under a plan may not be less than those parties would receive if the a debtor was liquidated pursuant to a hypothetical liquidation occurring under chapter 7 of the Bankruptcy Code. Under the "feasibility" requirement, the court generally must find that there is a reasonable probability that the debtor will be able to meet its obligations under the plan without the need for further financial reorganization.

The Chapter 11 Trustee believes that the Plan satisfies all the applicable requirements of section 1129(a) of the Bankruptcy Code, including, in particular, the "best interests of creditors" test and the "feasibility" requirement. The Chapter 11 Trustee supports confirmation of the Plan and urges all holders of impaired Claims and Interests to accept the Plan.

Chapter 11 does not require that each holder of a claim against or interest in a debtor vote in favor of a plan of reorganization in order for the bankruptcy court to confirm the plan. At a minimum, however, the plan must be accepted by a majority in number and two-thirds in amount of those claims actually voting in at least one class of impaired claims under the plan. The Bankruptcy Code also defines acceptance of the plan by a class of interests (equity securities) as acceptance by holders of two-thirds of the number of shares actually voting. In the Chapter 11 Cases, only the holders of Claims who actually vote will be counted as either accepting or rejecting the Plan.

In addition, classes of claims or interests that are not "impaired" under a plan of reorganization are conclusively presumed to have accepted the plan and thus are not entitled to vote. Accordingly, acceptances of a plan will generally be solicited only from those persons who hold claims or interests in an impaired class. A class is "impaired" if the legal, equitable, or contractual rights attaching to the claims or interests of that class are modified in any way under the plan. However, if holders of the claims or interests in a class do not receive or retain any property on account of such claims or interests, then each such holder is deemed to have voted to reject the plan and does not actually cast a vote to accept or reject the plan.

Under each of Plan A, Plan B and Plan C of the Plan, (a) Class 1 is unimpaired and presumed to have accepted the Plan, and (b) Classes 2, 3, 4 and 5 are impaired and the holders of Claims in such Classes are entitled to vote on each of the Plan A, Plan B and Plan C

20

alternatives of the Plan. Under Plan A of the Plan, Class 6 Interests are Impaired and the holders of such Interests are entitled to vote only on Plan A of the Plan. Although Class 6 Interests are also impaired under Plan B and Plan C of the Plan, holders of Class 6 Interests in the Debtors shall not receive or retain any property on account of their Interests under Plan B or Plan C and, therefore, are deemed to have rejected Plan B and Plan C and will not vote on Plan B or Plan C of the Plan.

The bankruptcy court may also confirm a plan of reorganization even though fewer than all the classes of impaired claims and interests accept it. For a plan of reorganization to be confirmed despite its rejection by a class of impaired claims or interests, the proponent of the plan must show, among other things, that the plan does not "discriminate unfairly" and that the plan is "fair and equitable" with respect to each impaired class of claims or interests that has not accepted the plan.

Under section 1129(b) of the Bankruptcy Code, a plan is "fair and equitable" as to a class of rejecting claims if, among other things, the plan provides: (a) with respect to secured claims, that each such holder will receive or retain on account of its claim property that has a value, as of the effective date of the plan, equal to the allowed amount of such claim; and (b) with respect to unsecured claims and interests, that the holder of any claim or interest that is junior to the claims or interests of such class will not receive or retain on account of such junior claim or interest any property at all unless the senior class is paid in full.

A plan does not "discriminate unfairly" against a rejecting class of claims if (a) the relative value of the recovery of such class under the plan does not differ materially from that of any class (or classes) of similarly situated claims, and (b) no senior class of claims is to receive more than 100% of the amount of the claims in such class.

The Chapter 11 Trustee believes that the Plan has been structured so that it will satisfy these requirements as to any rejecting Class of Claims, and can therefore be confirmed, if necessary, over the objection of any Classes of Claims. The Chapter 11 Trustee, however, reserves the right to request confirmation of the Plan under the "cramdown" provisions of section 1129 of the Bankruptcy Code.

## III. THE DEBTORS AND THEIR BUSINESS

Acis LP is a Delaware limited partnership and Acis GP is a Delaware limited liability company. Acis LP is portfolio manager for the Acis CLOs. Acis LP manages the Acis CLOs through the PMAs. The Acis CLOs are governed by the Indentures. Acis LP originally contracted out its operations to Highland pursuant to the Shared Services Agreement and Sub-Advisory Agreement. The source of Acis LP's income is fees payable to Acis LP under the PMAs.

Under the Shared Services Agreement, Highland was appointed as the "Staff and Services Provider" for Acis LP for the purpose of performing virtually all aspects of Acis LP's business operations, including, e.g., (a) providing back- and middle- office functions, including accounting, payments, operations, technology and finance, (b) providing legal and general risk analysis, (c) performing Acis LP's obligations under the PMAs, (d) advising regarding valuations or preparing reports relating to the Acis CLOs, (e) negotiating documents necessary for the acquisition or disposition of any assets of the Acis CLOs, (f) assisting with the marketing of the Acis CLOs, (g) assisting in the preparation of any reporting required to be made on the Acis CLOs, (h) providing office space, IT services and equipment, (i) providing shared employees, (j)

advising on any matters ancillary to the foregoing, and (k) managing the day-to-day business of Acis LP.

Likewise, under the Sub-Advisory Agreement, Highland was appointed as the "Sub-Advisor to [Acis LP]" for the purpose of performing Acis LP's obligations to the Acis CLOs under the PMAs including, e.g., (i) making recommendations regarding the general composition and allocation of the Acis CLOs, (ii) placing orders for and arranging for investments by or on behalf of the Acis CLOs, (iii) negotiating the structure and terms of investment opportunities for the Acis CLOs, (iv) performing due diligence on prospective investments by the Acis CLOs, (v) providing information regarding and monitoring and servicing the investments in the Acis CLOs, (vi) advising regarding credit functions, credit analysis and market research and analysis for the Acis CLOs, and (vii) performing any other services required to be performed by Acis LP under the PMAs.

## IV. FEASIBILITY/PROJECTED DISTRIBUTIONS

_____ **[Exhibit "2"]**

## V. THE CHAPTER 11 CASES

**A.**     **Events Leading to Bankruptcy**

Prior to the Petition Date, Terry was hired by Highland and eventually became a 25% limited partner in Acis LP and was assigned the responsibility of managing Acis LP's business. On June 9, 2016, Terry's employment was terminated and his equity interest in Acis LP was deemed forfeited without any payment to Terry. Highland thereafter sued Terry in state court and Terry then asserted claims against various parties in such lawsuit, including claims against the Debtors. The parties to such lawsuit were ordered to arbitrate and Terry ultimately obtained an arbitration award jointly and severally against the Debtors in the amount of $7,949,749.15. Terry obtained a judgment confirming his arbitration award on December 18, 2017.

**B.**     **Commencement of the Involuntary Bankruptcy Cases and Entry of Orders for Relief**

On January 30, 2018, Terry filed involuntary petitions under chapter 7 of the Bankruptcy Code against both of the Debtors in the Bankruptcy Court. Acis LP's bankruptcy case was assigned Case No. 18-30264, and Acis GP's bankruptcy case was assigned Case No. 18-30265.

The involuntary petitions were contested and the Bankruptcy Court held a multi-day trial spanning March 21, 22, 23, 27 and 29, 2018. On April 13, 2018, the Bankruptcy Court entered an _Order for Relief in an Involuntary Case_ in both bankruptcy cases. Diane Reed was then appointed as the Chapter 7 Trustee in both cases.

**C.**     **Continued Operation by the Chapter 7 Trustee and Conversion to Chapter 11**

On April 18, 2018, the Bankruptcy Court entered interim orders authorizing the Chapter 7 Trustee to continue operating the Debtors' businesses until April 23, 2018 pursuant to the terms of the Shared Services Agreement and the Sub-Advisory Agreement. On April 23, 2018, the Bankruptcy Court conducted a hearing and extended the Chapter 7 Trustee's authorization to continue operating the Debtors' businesses for 60 days.

On April 19, 2018, the Bankruptcy Court entered an *Order Directing Joint Administration*, which provides for the joint administration of the Debtors' respective bankruptcy cases under Case No. 18-30264. Consequently, except where otherwise indicated, all references to the "Docket" refer to the Docket in Case No. 18-30264. The Debtors' jointly administered cases are presided over by the Honorable Stacey G. C. Jernigan, United States Bankruptcy Judge.

On May 4, 2018, the Chapter 7 Trustee filed her *Trustee's Expedited Motion to Convert Cases to Chapter 11* (the "Motion to Convert") [Docket No. 171]. Also on May 4, 2018, Terry filed his *Emergency Motion for an Order Appointing a Trustee for the Chapter 11 Estates of Acis Capital Management, L.P. and Acis Capital Management GP, LLC Pursuant to Bankruptcy Code Section 1104(a)* (the "Motion to Appoint Trustee") [Docket No. 173]. On May 11, 2018, the Bankruptcy Court entered an *Order* [Docket No. 205] granting the Motion to Convert and an *Order* [Docket No. 206] granting the Motion to Appoint Trustee. Thereafter, the U.S. Trustee appointed the Chapter 11 Trustee as Chapter 11 Trustee in the Chapter 11 Cases. Mr. Phelan's appointment as Chapter 11 Trustee in Acis LP's case was approved pursuant to an *Order* [Docket No. 221] entered by the Bankruptcy Court on May 17, 2018 and his appointment as Chapter 11 Trustee in Acis GP's case was approved pursuant to an *Order* [Docket No. 184 in Case No. 18-30265] entered by the Bankruptcy Court on June 12, 2018.

### D.    Estate Professionals

The following is a list of each of the Estate Professionals that have been employed, or are proposed to be employed, with a description of the role of each such Estate Professional:

| Estate Professional | Role of Estate Professional | Date of Entry and Docket No. of Employment Order |
| --- | --- | --- |
| Reed & Elmquist, P.C. ("R&E") | Counsel for the Chapter 7 Trustee | May 20, 2018 [Docket No. 227] |
| Forshey & Prostok, LLP ("F&P") | Counsel for the Chapter 11 Trustee | June 18, 2018 [Docket No. 296] |
| Winstead PC ("Winstead") | Special Counsel for the Chapter 11 Trustee | June 21, 2018 [Docket No. 313] |
| Miller Buckfire & Co., LLC ("Miller Buckfire") | Financial Advisors to the Chapter 11 Trustee | Employment Order not yet entered (Application to approve employment filed on July 12, 2018 [Docket No. 397]) |

### E.    Creditors' Committee

No creditors' committee has been appointed in the Chapter 11 Cases.

### F.    Professional Fees and Expenses; U.S. Trustee Fees

R&E did not receive any retainer in connection with its engagement as counsel for the Chapter 7 Trustee. To date, R&E has not filed any fee application in the Chapter 11 Cases. R&E's engagement as an Estate Professional concluded by virtue of conversion of the Debtors'

bankruptcy cases from chapter 7 to chapter 11 and R&E is not currently engaged as an Estate Professional.

F&P did not receive any retainer in connection with its engagement as counsel for the Chapter 11 Trustee. To date, F&P has not filed any fee application in the Chapter 11 Cases. From May 14, 2018 through July 12, 2018, F&P has accrued professional fees and expenses of approximately $570,000.

Winstead did not receive any retainer in connection with its engagement as special counsel for the Chapter 11 Trustee. To date, Winstead has not filed any fee application in the Chapter 11 Cases. From May 14, 2018 through July 12, 2018, Winstead has accrued professional fees and expenses of approximately $_____.

Miller Buckfire has not received any retainer in connection with its proposed engagement as financial advisor for the Chapter 11 Trustee. Under the terms of the proposed engagement, Miller Buckfire shall be entitled to a monthly fee of $100,000 for a minimum of eight (8) months, resulting in minimum compensation to Miller Buckfire of $800,000 in connection with the engagement.

The Debtors' Estate owes U.S. Trustee fees for the 2nd quarter of 2018. The amount of such U.S. Trustee fees is believed to be nominal and such fees will be paid in due course. U.S. Trustee Fees accruing for future quarters will be paid as they become due.

## G.     Schedules and Bar Date

The Debtors' original bankruptcy schedules were filed on April 27, 2018 [Docket No. 164 in Case No. 18-30264; Docket No. 151 in Case No. 18-30265]. The Debtors' statements of financial affairs were filed on April 30, 2018 [Docket No. 165 in Case No. 18-30264; Docket No. 152 in Case No. 18-30265]. The amended bankruptcy schedules for Acis LP were filed on June 26, 2018 [Docket No. 329 in Case No. 18-30264] and amended bankruptcy schedules for Acis GP were filed on June 29, 2018 [Docket No. 197 in Case No. 18-30265].

Pursuant to a *Notice of Chapter 11 Bankruptcy Case* entered on the docket [Docket No. 301 in Case No. 18-30264; Docket No. 189 in Case No. 18-30265], October 15, 2018 was initially fixed as the deadline for all holders of alleged Claims (except for governmental units) to file proofs of Claim. However, on June 26, 2018, the Chapter 11 Trustee filed a *Motion for an Order (A) Shortening Deadline to File Nongovernmental Proofs of Claim; (B) Setting Bar Dates; and (C) Approving Claim Procedures and the Form and Manner of Service of Bar Date Notice* (the "Bar Date Motion") [Docket No. 330]. The Bar Date Motion was granted pursuant to an *Order* [Docket No. 387] entered on July 9, 2018 (the "Bar Date Order"). Pursuant to the Bar Date Order, August 1, 2018 has been established as the deadline for all holders of alleged Claims (except for governmental units) to file proofs of Claim and October 10, 2018 has been established as the deadline for governmental units to file proofs of Claim.

## H.     Operating Information During Pendency of the Chapter 11 Cases

Following conversion of the Debtors' bankruptcy cases from chapter 7 to chapter 11, the Chapter 11 Trustee has filed all required monthly operating reports with the Bankruptcy Court. Copies of the filed monthly operating reports are available for inspection and copying at the office of the Clerk of the Bankruptcy Court. Copies of the most recently filed monthly operating reports Acis LP and Acis GP are attached hereto as **Exhibits "3" and "4,"** respectively.

### I. The Oaktree Motion

On June 12, 2018, the Chapter 11 Trustee filed an *Emergency Motion to Approve Break-Up Fee, Expense Reimbursement, and Replacement Sub-Advisory and Shared Services Provider, Oaktree Capital Management, L.P.* [Docket No. 263] (the "Motion"), which was later supplemented by the *Chapter 11 Trustee's Supplemental Motion to Break-Up Fee Motion Seeking Court Approval of Procedures to Confirm Plan Funder* [Docket No. 334] (the "Supplement"), and the *Oaktree Capital Management, L.P.'s Notice of Amended Commitment Letter* [Docket No. 385] (the "Post-Hearing Amended Commitment Letter," and collectively with the Motion and the Supplement, the "Oaktree Motion"). The Oaktree Motion (i) describes a Transaction (as defined in the Oaktree Motion) pursuant to which Oaktree would serve as a plan funder under the Plan, (ii) requests authorization to terminate the Shared Services and Sub-Advisory Agreements with Highland and the engagement of Oaktree to perform such services, (iii) requests approval of an Expense Reimbursement and Break-Up Fee (as defined in the Oaktree Motion) in favor of Oaktree, and (iv) seeks approval of procedures for the submission of other Qualified Proposals (as defined in the Supplement).

On July 10, 2018, the Court entered an *Order Granting Emergency Motion to Approve Break-Up Fee, Expense Reimbursement, and Replacement Sub-Advisory and Shared Services Provider, Oaktree Capital Management, L.P.* (the "Oaktree Order") [Docket No. 390]. The Oaktree Order authorized the Chapter 11 Trustee to terminate the Shared Services Agreement and Sub-Advisory Agreement and engage Oaktree to perform the services previously provided by Highland under such agreements. The Oaktree Order also authorizes: (i) an Expense Reimbursement as an administrative expense under section 503(b) of the Bankruptcy Code, and (ii) a Break-Up Fee in favor of Oaktree in the amount of $2.5 million in the event the Transaction is not approved on or before August 27, 2018, or upon the entry of an order by the Bankruptcy Court approving the Transaction, the Assets (as defined in the Oaktree Motion) are not transferred to Oaktree within 15 days thereof. The Break-Up Fee is also entitled to priority as an administrative expense under section 503(b) of the Bankruptcy Code. Finally, the Oaktree Order includes procedures for the submission of any other Qualified Proposals by any other entities wishing to serve as a plan funder under the Plan.

### J. Exclusivity

The Exclusive Period terminated as to the Debtors by virtue of appointment of the Chapter 11 Trustee in the Chapter 11 Cases. Consequently, any party-in-interest is free to file a plan in the Chapter 11 Cases.

## VI. LITIGATION INVOLVING THE DEBTORS

### A. Current Litigation

#### 1. Bankruptcy Court's Sua Sponte Temporary Restraining Order

On May 25, 2018, the Chapter 11 Trustee filed his *Trustee's Request for Status Conference* [Docket No. 239] seeking a status conference before the Bankruptcy Court to, *inter alia*, advise the Bankruptcy Court of a request for Optional Redemption (as defined in the Indentures) made by HCLOF, the Chapter 11 Trustee's response to such request and matters related thereto. The Bankruptcy Court granted the Chapter 11 Trustee's request and scheduled a status conference for May 31, 2018. Highland and HCLOF commenced the Highland Adversary (as defined below) the day before the commencement of the status conference.

The Bankruptcy Court conducted the status conference on May 31, 2018 and, for reasons stated on the record, determined to, *sua sponte*, issue a temporary restraining order (the "First TRO"). The terms of the First TRO are reflected in the *Temporary Restraining Order* entered on June 6, 2018 [Docket No. 256]. The First TRO restrained and enjoined Highland, HCLOF and other parties, including additional parties related to Highland, from taking any action to effectuate the Optional Redemption requested by HCLOF or to otherwise liquidate the Acis CLOs. The Bankruptcy Court found in the First TRO that the Chapter 11 Trustee had made a substantial case that the threatened actions with respect to the requested Optional Redemption, if not enjoined, would violate the automatic stay of section 362 of the Bankruptcy Code. Consequently, through the First TRO, the Bankruptcy Court enjoined parties from engaging in the very same activities that Highland and HCLOF allege in the Highland Adversary that they are entitled to engage in and that the Chapter 11 Trustee must engage in at their direction.

      2.     *Adversary Proceeding Filed by the Chapter 11 Trustee against Highland, HCLOF and Others*

The First TRO was set to expire by its terms on June 15, 2018, unless further extended. The Chapter 11 Trustee moved to extend the First TRO and a hearing was set for June 14, 2018. On June 13, 2018, HCLOF advised the Chapter 11 Trustee that it would withdraw the notices requesting the Optional Redemption. Consequently, the Chapter 11 Trustee advised the Bankruptcy Court that there was no need to go forward with the motion to extend the First TRO. On June 14, 2018, HCLOF's counsel stated to the Bankruptcy Court that HCLOF had in fact withdrawn the notices requesting the Option Redemption and reserved the right to reissue notices at some future date.

The next day, on June 15, 2018 – the day on which the First TRO expired and the day after the hearing was originally to have taken place to extend the First TRO – HCLOF advised the Chapter 11 Trustee that it was directing that an Optional Redemption be effectuated on July 30, 2018. HCLOF did not seek relief from the automatic stay from the Bankruptcy Court to take any such action.

On June 21, 2018, the Chapter 11 Trustee filed his *Verified Original Complaint and Application for Temporary Restraining Order and Preliminary Injunction* against Highland, HCLOF and other parties, commencing Adversary Proceeding No. 18-03212-sgj (the "Trustee's Adversary"). In the Trustee's Adversary, the Chapter 11 Trustee seeks, *inter alia*, injunctive relief enjoining the defendants from taking any action in furtherance of the requested Optional Redemption. The Chapter 11 Trustee also asserts claims for violation of the automatic stay and seeks declaratory relief.

Upon commencing the Trustee's Adversary, the Chapter 11 Trustee filed his *Motion for an Ex Parte Temporary Restraining Order or, in the Alternative, an Emergency Hearing on the Application for Temporary Restraining Order* (the "Ex Parte Motion"). On June 21, 2018, the Ex Parte Motion was granted and the Bankruptcy Court entered an *Ex Parte Restraining Order* (the "Second TRO") in the Trustee's Adversary. The Second TRO restrained and enjoined Highland, HCLOF and other parties, including additional parties related to Highland, from taking any action to effectuate the Optional Redemption requested by HCLOF or to otherwise liquidate the Acis CLOs. The Bankruptcy Court found in the Second TRO that the Chapter 11 Trustee had shown a substantial likelihood of success on the merits of a claim regarding (a) violation of the automatic stay, (b) failure by the defendants to comply with legal requirements of implementing an Optional Redemption, (c) failure to obtain authority from the Bankruptcy Court under section 363 of the Bankruptcy Code to effectuate and optional redemption, and (d) confirmation of an

effective plan of reorganization. The Second TRO was set to expire by its terms on July 5, 2018 but was extended by agreement until July 9, 2018.

A hearing was held on July 6, 2018 in the Trustee's Adversary at which the Chapter 11 Trustee sought entry of a preliminary injunction against the defendants. On July 10, 2018, the Court entered a *Preliminary Injunction Order* [Docket No. 21 in Adversary No. 18-03212-sgj] which granted the Chapter 11 Trustee a preliminary injunction enjoining HCLOF, Highland and other "Restrained Parties" from: (i) taking any action in furtherance of an Optional Redemption or any other attempts to liquidate the Acis CLOs, (ii) trading any collateral of the Acis CLOs without the express written authorization of the Chapter 11 Trustee, and (iii) sending any notice to the holders of the Acis CLOs in connection with the effectuation or any Optional Redemption, call or other liquidation of the Acis CLOs.

   3.   *Adversary Proceeding Filed by Highland and HCLOF against the Chapter 11 Trustee*

On May 30, 2018, Highland and HCLOF filed their *Original Complaint and Request for Preliminary Injunction of Highland CLO Funding, Ltd and Highland Capital Management Against Chapter 11 Trustee of Acis Capital Management, L.P. and Acis Capital Management GP, LLC* in the Bankruptcy Court commencing Adversary Proceeding No. 18-03078-sgj (the "Highland Adversary"). Prior to commencing the Highland Adversary, HCLOF sent notices directing Acis LP to affect an Optional Redemption with respect to the Acis CLOs. An Optional Redemption would require Acis LP to direct the sale of the Collateral Obligations (as defined in the Indentures), windup the Acis CLOs and, consequently, liquidate Acis LP's most valuable Asset – the PMAs. The Chapter 11 Trustee analyzed such notices and determined that there were various defects and other problems and impediments with the notices and performing the requested Optional Redemption.

In the Highland Adversary, HCLOF asserts claims against the Chapter 11 Trustee for alleged breaches of the PMAs based on the Chapter 11 Trustee declining to effectuate the Option Redemption requested by HCLOF and seeks the remedy of specific performance. In addition, Highland and HCLOF seek declaratory relief, including a declaratory judgment that the Chapter 11 Trustee has a duty to effectuate the requested Optional Redemption. Highland and HCLOF further seek to enjoin Acis LP from interfering with the Optional Redemption or continuing his efforts relating to the Transaction described in the Oaktree Motion. The Chapter 11 Trustee opposes all relief sought by the plaintiffs in the Highland Adversary.

On June 22, 2018, HCLOF filed a *Motion for Preliminary Injunctive Relief* [Docket No. 18 in Adv. No. 18-03078-sgj] based on certain of the claims for injunctive relief in the Highland Adversary described above. On July 6, 2018, the Court held a hearing on HCLOF's request for injunctive relief. On July 10, 2018, the Court entered an *Order Denying Motion for Preliminary Injunctive Relief* [Docket No. 31 in Adv. No. 18-03078-sgj], in which the Court denied HCLOF's request for preliminary injunctive relief.

On July 2, 2018, the Chapter 11 Trustee filed his *Defendant's Answer, Affirmative Defenses, Counterclaims, and Third Party Claims* [Docket No. 23 in Adv. No. 18-03078-sgj] in the Highland Adversary in which the Chapter 11 Trustee, *inter alia*, asserts causes of action under both the Bankruptcy Code and Texas Uniform Fraudulent Transfer Act to avoid and recover prepetition fraudulent transfers of various assets of the Debtors to affiliates of Highland, including Acis LP's ownership interest in HCLOF (formerly known as Acis Loan Funding, Ltd. "ALF"), Acis LP's rights under a portfolio management agreement between Acis LP and ALF,

and a $9.5 million promissory note by Highland in favor of Acis LP, as well as a claim for civil conspiracy.

On the date of commencement of the Highland Adversary, the plaintiffs therein filed a *Motion to Withdrawn the Reference to the District Court and Memorandum of Law in Support* seeking the United States District Court for the Northern District of Texas to withdraw the reference to the Bankruptcy Court with respect to the Highland Adversary. The Chapter 11 Trustee opposed such motion. The Bankruptcy Court considered such motion at a hearing held on July 6, 2018. The Bankruptcy Court advised the parties that it was going to recommend denial of the motion to withdraw the reference to the district court; however, the Bankruptcy Court advised that it did not anticipate submitting a report and recommendation to the district court until after the counter-defendants had filed their answers to the Chapter 11 Trustee's counterclaims.

In addition to the counterclaims currently asserted by the Chapter 11 Trustee against Highland and HCLOF in the Highland Adversary, the Chapter 11 Trustee is currently evaluating and believes the Estate may possess additional claims against Highland, certain Highland affiliates, and their respective principals, to avoid and recover other transfers under the Bankruptcy Code and the Texas Uniform Fraudulent Transfer Act, as well as potential claims for breach of fiduciary duty, aiding and abetting breaches of fiduciary duties, civil conspiracy, and other causes of action.

## B.    Additional and Potential Litigation by the Debtors

Except as expressly provided in the Plan, nothing contained in the Disclosure Statement, the Plan or the Confirmation Order shall waive, relinquish, release or impair the Chapter 11 Trustee's or the Acis Trustee's right to object to any claim.

Except as expressly set forth in the Plan, all causes of action, claims, counterclaims, defenses and rights of offset or recoupment (including but not limited to all Estate Claims, Estate Defenses and Avoidance Actions) belonging to the Debtors shall, upon the occurrence of the Effective Date, be retained by, received by and vested in the Acis Trustee for the benefit of the Debtors' Estate. Except as expressly set forth in the Plan the rights of the Acis Trustee to commence, prosecute or settle such causes of action shall be preserved notwithstanding the occurrence of the Effective Date. **No person may rely on the absence of a specific reference in the Plan or the Disclosure Statement to any cause of action against them as any indication that the Debtors' Estate or the Acis Trustee will not pursue any and all available causes of action (including the Estate Claims, Estate Defenses and Avoidance Actions) against any Person, except as otherwise provided in the Plan.** Unless any causes of action against a Person are expressly waived, relinquished, exculpated, released, compromised or settled in the Plan or a Final Order, the Debtors' Estate expressly reserves all causes of action (including all Estate Claims, Estate Defenses and Avoidance Actions) for later adjudication and, therefore, no preclusion doctrine, including without limitation, the doctrines of res judicata, collateral estoppel, issue preclusion, claim preclusion, estoppel (judicial, equitable or otherwise) or laches, shall apply to such causes of action upon or after the confirmation or consummation of the Plan. Without limiting the foregoing, parties are advised that the Debtors' Estate specifically preserves the Estate Claims described in Exhibit D to the Plan.

## VII. THE PLAN

**THE FOLLOWING IS A SUMMARY OF THE MATTERS CONTEMPLATED TO OCCUR**

**EITHER PURSUANT TO OR IN CONNECTION WITH THE CONSUMMATION OF THE PLAN. THIS SUMMARY HIGHLIGHTS THE SUBSTANTIVE PROVISIONS OF THE PLAN AND IS NOT, NOR IS IT INTENDED TO BE, A COMPLETE DESCRIPTION OR A SUBSTITUTE FOR A FULL AND COMPLETE REVIEW OF THE PLAN. THE FOLLOWING SUMMARY IS COMPLETELY QUALIFIED BY THE TERMS OF THE PLAN. IN THE EVENT OF ANY CONFLICT BETWEEN THE FOLLOWING SUMMARY AND THE PLAN, THE PLAN WILL CONTROL.**

## A.      Classification and Treatment Summary

The Plan classifies the various Claims against and Interests in the Debtors. These Classes take into account the different nature and priority of Claims against and Interests in the Debtors. In addition, in accordance with section 1123(a)(1) of the Bankruptcy Code, Administrative Expense Claims and Priority Tax Claims are not classified for purposes of voting under the Plan. Rather, all such Claims are treated separately as unclassified Claims.

Class 1 is not impaired under the Plan. Classes 2 through 6 are Impaired under the Plan. If a controversy arises as to the classification of any Claim or Interest, or as to whether any Class of Claims or Interests is Impaired under the Plan, the Bankruptcy Court shall determine such controversy as a part of the confirmation process.

### 1.      Unclassified Claims Against the Debtors

Unclassified Claims against the Debtors consist of Administrative Expense Claims and Priority Tax Claims. An Administrative Expense Claim is a Claim based on any cost or expense of administration of the Chapter 11 Cases allowed under subsections 503(b) and 507(a)(2) of the Bankruptcy Code, including, without limitation, any actual and necessary expenses of preserving the Debtors' Estate, any actual and necessary expenses of operating the Debtors' businesses, any indebtedness or obligations incurred or assumed by the Estate including, without limitation, for the acquisition or lease of property or an interest in property or the rendition of services, all compensation or reimbursement of expenses to the extent allowed by the Bankruptcy Court under section 330 or 503 of the Bankruptcy Code, and any fees or charges assessed against the Estate of the Debtors under section 1930 of title 28 of the United States Code.

Administrative Expense Claims include both ordinary post-petition expenses and Claims attributable to Estate Professionals. Claims incurred in the ordinary course of the Debtors' affairs or business will be paid in the ordinary course of business. Fees and expenses owed to Estate Professionals are payable upon the Allowance of an appropriate fee application.

### a.      Treatment of Administrative Expense Claims (Plan A)

The Acis Trustee shall pay, in accordance with the ordinary business terms applicable to each such expense or cost, the reasonable and ordinary expenses incurred in operating the Debtors' businesses or administering the Estate before the Effective Date ("Ordinary Course Claims"). The remaining provisions of section 2.05 of the Plan shall not apply to the Ordinary Course Claims, except that if there is a dispute relating to any such Ordinary Course Claim, the Acis Trustee may move the Bankruptcy Court to apply the provisions of Article VII of the Plan relating to Contested Claims and require the holder of the Contested Ordinary Course Claim to assert such Claim through the Chapter 11 Cases.

Each holder of an Allowed Administrative Expense (other than Ordinary Course Claims and Administrative Expense Claims by Estate Professionals), shall receive (i) the amount of such holder's Allowed Administrative Expense in one Cash payment on the later of the Effective Date or the tenth (10th) Business Day after such Administrative Expense becomes an Allowed Administrative Expense, or (ii) such other treatment as may be agreed to in writing by such Administrative Expense Creditor and the Acis Trustee, or as otherwise ordered by the Bankruptcy Court.

Unless the Bankruptcy Court orders to the contrary or the Acis Trustee agrees to the contrary in writing, the holder of a Claim for an Administrative Expense, other than such a Claim by an Estate Professional, an Ordinary Course Claim, or an Administrative Expense which is already Allowed, shall file with the Bankruptcy Court and serve upon the Acis Trustee and its counsel a written notice of such Claim for an Administrative Expense within thirty (30) days after the Effective Date. This deadline is the "Administrative Bar Date." Such notice shall include at a minimum: (i) the name, address, telephone number and fax number (if applicable) or email address of the holder of such Claim, (ii) the amount of such Claim, and (iii) the basis of such Claim. **Failure to timely and properly file and serve such notice by the Administrative Bar Date shall result in such Claim for an Administrative Expense being forever barred and discharged and the holder thereof shall be barred from receiving any Distribution through the Acis Trust on account of such Claim for an Administrative Expense.**

A Claim for an Administrative Expense, for which a proper notice was filed and served under subsection 2.05(c) of the Plan, shall become an Allowed Administrative Expense if no Objection is filed within thirty (30) days of the filing and service of such notice. If a timely Objection is filed, the Claim shall become an Allowed Administrative Expense only to the extent allowed by a Final Order.

The procedures contained in subsections 2.05(a), (c) and (d) of the Plan shall not apply to Administrative Expense Claims asserted by Estate Professionals, who shall each file and submit an appropriate final fee application to the Bankruptcy Court no later than sixty (60) days after the Effective Date. A Claim for an Administrative Expense by an Estate Professional in respect of which a final fee application has been properly filed and served shall become an Allowed Administrative Expense only to the extent allowed by Final Order and, if so Allowed, shall be paid in accordance with subsection 2.05(e) of the Plan. Professional fees and expenses to any Estate Professional incurred on or after the Effective Date may be paid by the Acis Trustee without necessity of application to or order by the Bankruptcy Court.

If the Acis Trustee asserts any Estate Claims as counterclaims or defenses to a Claim for Administrative Expense, the Administrative Expense Claim shall be determined through an adversary proceeding before the Bankruptcy Court. The Bankruptcy Court shall have exclusive jurisdiction to adjudicate and Allow all Claims for any Administrative Expense.

### b.    Treatment of Administrative Expense Claims (Plan B)

The Acis Trustee shall pay, in accordance with the ordinary business terms applicable to each such expense or cost, the reasonable and ordinary expenses incurred in operating the Debtors' businesses or administering the Estate before the Effective Date ("Ordinary Course Claims"). The remaining provisions of section 3.05 of the Plan shall not apply to the Ordinary Course Claims, except that if there is a dispute relating to any such Ordinary Course Claim, the Acis Trustee may move the Bankruptcy Court to apply the provisions of Article VII of the Plan relating to Contested Claims and require the holder of the Contested Ordinary Course Claim to

assert such Claim through the Chapter 11 Cases.

Each holder of an Allowed Administrative Expense (other than Ordinary Course Claims and Administrative Expense Claims by Estate Professionals), shall receive (i) the amount of such holder's Allowed Administrative Expense in one Cash payment on the later of the Effective Date or the tenth (10th) Business Day after such Administrative Expense becomes an Allowed Administrative Expense, or (ii) such other treatment as may be agreed to in writing by such Administrative Expense Creditor and the Acis Trustee, or as otherwise ordered by the Bankruptcy Court.

Unless the Bankruptcy Court orders to the contrary or the Acis Trustee agrees to the contrary in writing, the holder of a Claim for an Administrative Expense, other than such a Claim by an Estate Professional, an Ordinary Course Claim, or an Administrative Expense which is already Allowed, shall file with the Bankruptcy Court and serve upon the Acis Trustee and its counsel a written notice of such Claim for an Administrative Expense within thirty (30) days after the Effective Date. This deadline is the "Administrative Bar Date." Such notice shall include at a minimum: (i) the name, address, telephone number and fax number (if applicable) or email address of the holder of such Claim, (ii) the amount of such Claim, and (iii) the basis of such Claim. **Failure to timely and properly file and serve such notice by the Administrative Bar Date shall result in such Claim for an Administrative Expense being forever barred and discharged and the holder thereof shall be barred from receiving any Distribution through the Acis Trust on account of such Claim for an Administrative Expense**.

A Claim for an Administrative Expense, for which a proper notice was filed and served under subsection 3.05(c) of the Plan, shall become an Allowed Administrative Expense if no Objection is filed within thirty (30) days of the filing and service of such notice. If a timely Objection is filed, the Claim shall become an Allowed Administrative Expense only to the extent allowed by a Final Order.

The procedures contained in subsections 3.05(a), (c) and (d) of the Plan shall not apply to Administrative Expense Claims asserted by Estate Professionals, who shall each file and submit an appropriate final fee application to the Bankruptcy Court no later than sixty (60) days after the Effective Date. A Claim for an Administrative Expense by an Estate Professional in respect of which a final fee application has been properly filed and served shall become an Allowed Administrative Expense only to the extent allowed by Final Order and, if so Allowed, shall be paid in accordance with subsection 3.05(e) of the Plan. Professional fees and expenses to any Estate Professional incurred on or after the Effective Date may be paid by the Acis Trustee without necessity of application to or order by the Bankruptcy Court.

If the Acis Trustee asserts any Estate Claims as counterclaims or defenses to a Claim for Administrative Expense, the Administrative Expense Claim shall be determined through an adversary proceeding before the Bankruptcy Court. The Bankruptcy Court shall have exclusive jurisdiction to adjudicate and Allow all Claims for any Administrative Expense.

c.    **Treatment of Administrative Expense Claims (Plan C)**

The Acis Trustee shall pay, in accordance with the ordinary business terms applicable to each such expense or cost, the reasonable and ordinary expenses incurred in operating the Debtors' businesses or administering the Estate before the Effective Date ("Ordinary Course Claims"). The remaining provisions of section 4.05 of the Plan shall not apply to the Ordinary Course Claims, except that if there is a dispute relating to any such Ordinary Course Claim, the

Acis Trustee may move the Bankruptcy Court to apply the provisions of Article VII of the Plan below relating to Contested Claims and require the holder of the Contested Ordinary Course Claim to assert such Claim through the Chapter 11 Cases.

Each holder of an Allowed Administrative Expense (other than Ordinary Course Claims and Administrative Expense Claims by Estate Professionals), shall receive (i) the amount of such holder's Allowed Administrative Expense in one Cash payment on the later of the Effective Date or the tenth (10th) Business Day after such Administrative Expense becomes an Allowed Administrative Expense, or (ii) such other treatment as may be agreed to in writing by such Administrative Expense Creditor and the Acis Trustee, or as otherwise ordered by the Bankruptcy Court.

Unless the Bankruptcy Court orders to the contrary or the Acis Trustee agrees to the contrary in writing, the holder of a Claim for an Administrative Expense, other than such a Claim by an Estate Professional, an Ordinary Course Claim, or an Administrative Expense which is already Allowed, shall file with the Bankruptcy Court and serve upon the Acis Trustee and its counsel a written notice of such Claim for an Administrative Expense within thirty (30) days after the Effective Date. This deadline is the "Administrative Bar Date." Such notice shall include at a minimum: (i) the name, address, telephone number and fax number (if applicable) or email address of the holder of such Claim, (ii) the amount of such Claim, and (iii) the basis of such Claim. **Failure to timely and properly file and serve such notice by the Administrative Bar Date shall result in such Claim for an Administrative Expense being forever barred and discharged and the holder thereof shall be barred from receiving any Distribution through the Acis Trust on account of such Claim for an Administrative Expense**.

A Claim for an Administrative Expense, for which a proper notice was filed and served under subsection 4.05(c) of the Plan, shall become an Allowed Administrative Expense if no Objection is filed within thirty (30) days of the filing and service of such notice. If a timely Objection is filed, the Claim shall become an Allowed Administrative Expense only to the extent allowed by a Final Order.

The procedures contained in subsections 4.05(a), (c) and (d) of the Plan shall not apply to Administrative Expense Claims asserted by Estate Professionals, who shall each file and submit an appropriate final fee application to the Bankruptcy Court no later than sixty (60) days after the Effective Date. A Claim for an Administrative Expense by an Estate Professional in respect of which a final fee application has been properly filed and served shall become an Allowed Administrative Expense only to the extent allowed by Final Order and, if so Allowed, shall be paid in accordance with subsection 4.05(e) of the Plan. Professional fees and expenses to any Estate Professional incurred on or after the Effective Date may be paid by the Acis Trustee without necessity of application to or order by the Bankruptcy Court.

If the Acis Trustee asserts any Estate Claims as counterclaims or defenses to a Claim for Administrative Expense, the Administrative Expense Claim shall be determined through an adversary proceeding before the Bankruptcy Court. The Bankruptcy Court shall have exclusive jurisdiction to adjudicate and Allow all Claims for any Administrative Expense.

### d.    Treatment of Priority Tax Claims (Plan A)

Each holder of an Allowed Priority Tax Claim shall receive (a) one Cash payment in an amount equal to the principal amount of such Allowed Priority Tax Claim, plus interest at the rate and in the manner prescribed by applicable state law from the later of the Petition Date or

the first day after the last day on which such Priority Tax Claim may be paid without penalty, no later than sixty (60) days after each such Claim becomes an Allowed Claim, or (b) such other treatment as may be agreed to in writing by the holder of the Priority Tax Claim and the Acis Trustee.

### e.    Treatment of Priority Tax Claims (Plan B)

Each holder of an Allowed Priority Tax Claim shall receive (a) one Cash payment in an amount equal to the principal amount of such Allowed Priority Tax Claim, plus interest at the rate and in the manner prescribed by applicable state law from the later of the Petition Date or the first day after the last day on which such Priority Tax Claim may be paid without penalty, no later than sixty (60) days after each such Claim becomes an Allowed Claim, or (b) such other treatment as may be agreed to in writing by the holder of the Priority Tax Claim and the Acis Trustee.

### f.    Treatment of Priority Tax Claims (Plan C)

Each holder of an Allowed Priority Tax Claim shall receive (a) one Cash payment in an amount equal to the principal amount of such Allowed Priority Tax Claim, plus interest at the rate and in the manner prescribed by applicable state law from the later of the Petition Date or the first day after the last day on which such Priority Tax Claim may be paid without penalty, no later than sixty (60) days after each such Claim becomes an Allowed Claim, or (b) such other treatment as may be agreed to in writing by the holder of the Priority Tax Claim and the Acis Trustee.

### g.    Treatment of U.S. Trustee Fees (Plan A)

The Acis Trustee shall pay the U.S. Trustee's quarterly fees incurred pursuant to 28 U.S.C. § 1930(a)(6). Any fees due as of the Confirmation Date shall be paid in full on the Effective Date or as soon thereafter as is practicable. After the Confirmation Date, the Acis Trustee shall continue to pay quarterly fees as they accrue until a final decree is entered and the Chapter 11 Cases are closed. The Acis Trustee shall file with the Bankruptcy Court and serve on the U.S. Trustee quarterly financial reports for each quarter, or portion thereof, that the Chapter 11 Cases remain open.

### h.    Treatment of U.S. Trustee Fees (Plan B)

The Acis Trustee shall pay the U.S. Trustee's quarterly fees incurred pursuant to 28 U.S.C. § 1930(a)(6) which are due as of the Confirmation Date in full on the Effective Date or as soon thereafter as is practicable. After the Confirmation Date, the Reorganized Debtor shall continue to pay quarterly fees as they accrue until a final decree is entered and the Chapter 11 Cases are closed. The Reorganized Debtor shall file with the Bankruptcy Court and serve on the U.S. Trustee quarterly financial reports for each quarter, or portion thereof, that the Chapter 11 Cases remain open.

### i.    Treatment of U.S. Trustee Fees (Plan C)

The Acis Trustee shall pay the U.S. Trustee's quarterly fees incurred pursuant to 28 U.S.C. § 1930(a)(6) which are due as of the Confirmation Date in full on the Effective Date or as soon thereafter as is practicable. After the Confirmation Date, the Reorganized Debtor shall continue to pay quarterly fees as they accrue until a final decree is entered and the Chapter 11

Cases are closed. The Reorganized Debtor shall file with the Bankruptcy Court and serve on the U.S. Trustee quarterly financial reports for each quarter, or portion thereof, that the Chapter 11 Cases remain open.

### 2. Classified Claims and Interests

Classified Claims and Interests shall receive the treatment (a) as described in Article II of the Plan if the Plan is confirmed based on the terms and provisions of Plan A, (b) as described in Article III of the Plan if the Plan is confirmed based on the terms and provisions of Plan B, or (c) as described in Article IV of the Plan if the Plan is confirmed based on the terms and provisions of Plan C, which treatment alternatives are summarized in the table set forth in Article I Section B of this Disclosure Statement above.

### B. Acceptance or Rejection of the Plan (Plan A)

Creditors in Classes 2 through 5 and holders of Interests in Class 6 are entitled to vote and shall vote separately to accept or reject the Plan. Any unimpaired Class shall not be entitled to vote to accept or reject the Plan. Any unimpaired Class is deemed to have accepted the Plan under section 1126(f) of the Bankruptcy Code. A Class of Claims shall have accepted the Plan if it is accepted by at least two-thirds (2/3) in amount and more than one-half (1/2) in number of the Allowed Claims in such Class that have voted on the Plan. A Class of Interests shall have accepted the Plan if it is accepted by at least two-thirds (2/3) in amount of the Interests in such Class that have voted on the Plan. Section 2.16 of the Plan shall constitute the request by the Plan proponents, pursuant to section 1129(b) of the Bankruptcy Code, that the Bankruptcy Court confirm the Plan notwithstanding the fact that the requirements of section 1129(a)(8) of the Bankruptcy Code have not been met.

### C. Acceptance or Rejection of the Plan (Plan B)

Creditors in Classes 2 through 5 are entitled to vote and shall vote separately to accept or reject the Plan. Any unimpaired Class shall not be entitled to vote to accept or reject the Plan. Any unimpaired Class is deemed to have accepted the Plan under section 1126(f) of the Bankruptcy Code. A Class of Claims shall have accepted the Plan if it is accepted by at least two-thirds (2/3) in amount and more than one-half (1/2) in number of the Allowed Claims in such Class that have voted on the Plan. Section 3.16 of the Plan shall constitute the request by the Plan proponents, pursuant to section 1129(b) of the Bankruptcy Code, that the Bankruptcy Court confirm the Plan notwithstanding the fact that the requirements of section 1129(a)(8) of the Bankruptcy Code have not been met.

### D. Acceptance or Rejection of the Plan (Plan C)

Creditors in Classes 2 through 5 are entitled to vote and shall vote separately to accept or reject the Plan. Any unimpaired Class shall not be entitled to vote to accept or reject the Plan. Any unimpaired Class is deemed to have accepted the Plan under section 1126(f) of the Bankruptcy Code. A Class of Claims shall have accepted the Plan if it is accepted by at least two-thirds (2/3) in amount and more than one-half (1/2) in number of the Allowed Claims in such Class that have voted on the Plan. Section 4.16 of the Plan shall constitute the request by the Plan proponents, pursuant to section 1129(b) of the Bankruptcy Code, that the Bankruptcy Court confirm the Plan notwithstanding the fact that the requirements of section 1129(a)(8) of the Bankruptcy Code have not been met.

E.    **Only a Single Plan May Be Confirmed**

The Plan contains three separate alternative plans for the Debtors, which are identified in the Plan as Plan A, Plan B and Plan C. Each of these alternatives will be voted upon separately by creditors. Holders of Class 6 Interests in the Debtors, however, are only entitled to vote on the Plan A alternative. If the Bankruptcy Court confirms the Plan, the Plan shall be confirmed based on the terms and provisions of only one of the three alternatives. For example, if the Bankruptcy Court confirms the Plan based on the terms and provisions of Plan A (Article II of the Plan), then the terms and provisions of Plan B (Article III of the Plan) and Plan C (Article IV of the Plan) shall be deemed void and of no force and effect. Holders of Claims entitled to vote may vote to accept or reject each alternative independently. For example, a voting Creditor may submit a Ballot which accepts the Plan based on the terms and provisions of Plan A, rejects the Plan based on the terms and provisions of Plan B, and accepts the Plan based on the terms and provisions of Plan C. However, if the ballots indicate that more than one of the alternative plans in the Plan is confirmable, the Chapter 11 Trustee shall ask the Bankruptcy Court to confirm the alternative that he believes maximizes benefit to creditors of the Estate.

F.    **Means of Implementing the Plan (Plan A)**

1.    **Plan A Transaction – Sources of Funding for Plan Obligations**

To fund the Plan and provide the greatest return to Creditors, the Chapter 11 Trustee has agreed to enter into the Plan A Transaction and to transfer the Transferred Assets to the Transferee on the Effective Date as follows:

(a)    The Transferee will deliver the Transaction Amount to the Chapter 11 Trustee;

(b)    The Chapter 11 Trustee will pay the HCLOF Claim in full from the Cash Proceeds; and,

(c)    The Subordinated Notes will be transferred or deemed transferred to the Chapter 11 Trustee who will, in turn, transfer and assign the Subordinated Notes and the assumed PMAs to the Transferee.

2.    **Transfer of the Transferred Assets**

The Transferred Assets shall be transferred to the Transferee on the Effective Date pursuant to the ATA, free and clear of all liens, claims, and encumbrances. The Chapter 11 Trustee shall obtain the Subordinated Notes either (a) through subrogation and the application of sections 105 and 1142 of the Bankruptcy Code based upon payment of the HCLOF Claim pursuant to the Plan, or (b) by obtaining control over management of the Subordinated Notes by virtue of avoiding the prepetition fraudulent transfer of Acis LP's rights under the ALF PMA.

3.    **Acis Trust**

The Acis Trust shall be created as of the Effective Date in accordance with the terms of the Plan and the Acis Trust Agreement. The Debtors and the Estate shall be the settlors of the Acis Trust.

4.    **Transfer of Assets to the Acis Trust**

On the Effective Date, the Net Cash Proceeds and all Remaining Assets shall be transferred to the Acis Trust, including without limitation, all Cash, Estate Accounts Receivable, Estate Claims, Estate Defenses, Estate Insurance, and Estate Contracts. After the Effective Date, the Acis Trustee may still abandon any Trust Assets which are burdensome or have no or inconsequential value to the Acis Trust. The Remaining Assets shall be transferred to, and vested in, the Acis Trust free and clear of all Liens, Claims, rights, Interests and charges, except as expressly provided in the Plan.

5.    **Assumption of Obligation to Make Distributions**

The Acis Trustee shall be deemed to have assumed the obligation to make all Distributions pursuant to the Plan, including the obligation to make all Distributions on account of Allowed Claims.

6.    **Actions by the Debtors and the Acis Trustee to Implement Plan**

The entry of the Confirmation Order shall constitute all necessary authorization for the Debtors and the Acis Trustee to take or cause to be taken all actions necessary or appropriate to consummate, implement or perform all provisions of the Plan on and after the Effective Date, and all such actions taken or caused to be taken shall be deemed to have been authorized and approved by the Bankruptcy Court without further approval, act or action under any applicable law, order, rule or regulation, including without limitation, (a) all transfers of Assets, including to the Acis Trustee and the Transferee, as appropriate, that are to occur pursuant to the Plan; (b) the performance of the terms of the Plan and the making of all Distributions required under the Plan; and (c) subject to the terms of the Plan, entering into any and all transactions, contracts, or arrangements permitted by applicable law, order, rule or regulation.

7.    **Post-Effective Date Service List**

Pleadings filed by any party-in-interest with the Bankruptcy Court after the Effective Date shall be served on the following Persons (collectively the "Service List"): (a) any Person directly affected by the relief sought in the pleading, (b) the U.S. Trustee, (c) parties which have filed a Notice of Appearance in the Chapter 11 Cases, and (d) the Acis Trustee through legal counsel.

8.    **Section 505 Powers**

All rights and powers pursuant to section 505 of the Bankruptcy Code shall be reserved to the Estate and shall be transferred to, and vested in, the Acis Trustee as of the Effective Date.

9.    **Section 510(c) Powers**

All rights and powers to seek or exercise any right or remedy of equitable subordination shall be reserved to the Estate and shall be transferred to, and vested in, the Acis Trustee as of the Effective Date as an Estate Defense.

10.    **Section 506(c) Powers**

The Estate shall reserve all rights and powers pursuant to section 506(c) of the Bankruptcy Code, and all such rights shall be specifically transferred to, and vested in, the Acis Trustee.

11.     **Plan Injunction**

The Acis Trustee shall have full power, standing and authority to enforce the Plan Injunction against any Person, either through an action before the Bankruptcy Court or any other tribunal having appropriate jurisdiction. The Transferee shall have standing to enforce the Plan Injunction against any Person, either through an action before the Bankruptcy Court or any other tribunal having appropriate jurisdiction.

12.     **Transferee not Successor.**

The Transferee shall not be considered a successor to the Debtors.

G.     **Means of Implementing the Plan (Plan B)**

1.     **Acis Trust**

The Acis Trust shall be created as of the Effective Date in accordance with the terms of the Plan and the Acis Trust Agreement. The Debtors and the Estate shall be the settlors of the Acis Trust. The reorganized Acis will be the residual beneficiary of the Acis Trust and receive all distributions after all classes of Claims have been paid in full.

2.     **Transfers of Assets**

As of the Effective Date (a) all Cash, Estate Accounts Receivable, Estate Claims and Estate Defenses shall be transferred from the Estate to, and be vested in, the Acis Trust, and (b) all other Estate Assets, unless otherwise expressly stated in the Plan, shall be transferred to, and vested in, the Reorganized Debtor. After the Effective Date, the Acis Trustee may still abandon any Acis Trust Assets which are burdensome or have no or inconsequential value to the Acis Trust. Any such abandoned assets shall be deemed transferred to and vested in the Reorganized Debtor. All Estate Assets transferred to either the Acis Trust or the Reorganized Debtor shall be transferred to, and vested in, the Acis Trust or the Reorganized Debtor free and clear of all Liens, Claims, rights, Interests and charges, except as expressly provided in the Plan.

3.     **Assumption of Obligations to Make Distributions**

The Acis Trustee and the Reorganized Debtor shall be deemed to have assumed the obligations to make the Distributions pursuant to the Plan to the extent the Plan identifies the Acis Trustee or the Reorganized Debtor as responsible for making such Distributions.

4.     **Actions by the Debtors, the Reorganized Debtor and the Acis Trustee to Implement Plan**

The entry of the Confirmation Order shall constitute all necessary authorization for the Debtors, the Reorganized Debtor and the Acis Trustee to take or cause to be taken all actions necessary or appropriate to consummate, implement or perform all provisions of the Plan on and after the Effective Date, and all such actions taken or caused to be taken shall be deemed to have been authorized and approved by the Bankruptcy Court without further approval, act or action under any applicable law, order, rule or regulation, including without limitation, (a) all transfers of Assets, including to the Acis Trust, that are to occur pursuant to the Plan; (b) the cancellation of Interests and issuance of 100% of the equity interests in the Reorganized Debtor

to Terry; (c) the performance of the terms of the Plan and the making of all Distributions required under the Plan; and (d) subject to the terms of the Plan, entering into any and all transactions, contracts, or arrangements permitted by applicable law, order, rule or regulation.

### 5. Continued Portfolio Management by the Reorganized Debtor

The PMAs shall be assumed and the Reorganized Debtor shall, from and after the Effective Date, serve as the portfolio manager with respect to the Acis CLOs (or any reset CLOs). The Reorganized Debtor may not be removed as portfolio manager under the assumed PMAs without cause.

### 6. Replacement of Highland as Sub-Servicer and Sub-Advisor

The Bankruptcy Court authorized the Chapter 11 Trustee to terminate the Shared Services Agreement and Sub-Advisory Agreement and engage Oaktree to perform the services previously provided by Highland. The Shared Services Agreement and Sub-Advisory Agreement will be terminated by the Chapter 11 Trustee, and the services previously performed by Highland are being transitioned to Oaktree for a minimum one year term. Under Plan B, the Reorganized Debtor is authorized to engage a new sub-servicer and sub-advisor (the "Sub-Advisor") to provide sub-servicing and sub-advisory services to the Reorganized Debtor with respect to the Acis CLOs (or any reset CLOs). Any agreement between the Reorganized Debtor and the Sub-Advisor shall provide that the Sub-Advisor cannot be removed without cause for a period of two (2) years. However, the replacement of Oaktree as the Sub-Advisor before the expiration of the one year minimum term will result in an administrative claim in favor of Oaktree for the value of the remainder of the one year term, which will be partially offset by the Break-Up Fee.

### 7. Option for HCLOF to Elect a Reset of the Acis CLOs

HCLOF shall have the option to elect to reset the Acis CLOs. If HCLOF elects a reset, the New Sub-Advisor shall thereafter reset the Acis CLOs consecutively rather than simultaneously, consistent with market standards, but shall only effectuate the reset to the extent that HCLOF commits to fund the reset. If HCLOF elects not to fund and reset the Acis CLOs, then the Acis CLOs will continue to be managed in accordance with market standards.

### 8. Amendment of Indentures

The Indentures shall be amended to provide that the Acis CLOs cannot be called for redemption until the later of (a) the date on which all Allowed Claims against the Debtors have been paid in full, or (b) three (3) years after the Effective Date. In the event that the Acis CLOs are reset, any new indenture with respect to a reset CLO shall provide that the Reorganized Debtor will continue as the portfolio manager and that the reset CLO cannot be called for redemption until the later of (y) the date on which all Allowed Claims against the Debtors have been paid in full, or (z) three (3) years after the Effective Date.

### 9. Post-Effective Date Service List

Pleadings filed by any party-in-interest with the Bankruptcy Court after the Effective Date shall be served on the following Persons (collectively the "Service List"): (a) any Person directly affected by the relief sought in the pleading, (b) the U.S. Trustee, (c) parties which have filed a Notice of Appearance in the Chapter 11 Cases, (d) the Acis Trustee through legal counsel, and

(e) the Reorganized Debtor.

### 10. Section 505 Powers

All rights and powers pursuant to section 505 of the Bankruptcy Code shall be reserved to the Estate and shall be transferred to, and vested in, the Acis Trustee as of the Effective Date.

### 11. Section 510(c) Powers

All rights and powers to seek or exercise any right or remedy of equitable subordination shall be reserved to the Estate and shall be transferred to, and vested in, the Acis Trustee as of the Effective Date as an Estate Defense.

### 12. Section 506(c) Powers

The Estate shall reserve all rights and powers pursuant to section 506(c) of the Bankruptcy Code, and all such rights shall be specifically transferred to, and vested in, the Acis Trustee.

### 13. Plan Injunction

The Acis Trustee and the Reorganized Debtor shall each have full power, standing and authority to enforce the Plan Injunction against any Person, either through an action before the Bankruptcy Court or any other tribunal having appropriate jurisdiction.

### 14. Cancellation of Interests

Except as otherwise specifically provided in the Plan, upon the Effective Date of the Plan: (a) all Interests in the Debtors shall be cancelled; and (b) all obligations or debts of, or Claims against, the Debtors on account of, or based upon, the Interests shall be deemed as cancelled, released and discharged, including all obligations or duties by the Debtors relating to the Interests in any of their respective formation documents, including Acis LP's limited partnership agreement and bylaws, Acis GP's articles of formation and company agreement, or any similar formation or governing documents.

## H. Means of Implementing the Plan (Plan C)

### 1. Acis Trust

The Acis Trust shall be created as of the Effective Date in accordance with the terms of the Plan and the Acis Trust Agreement. The Debtors and the Estate shall be the settlors of the Acis Trust. The reorganized Acis will be the residual beneficiary of the Acis Trust and receive all distributions after all classes of Claims have been paid in full.

### 2. Transfers of Assets

As of the Effective Date (a) all Cash, Estate Accounts Receivable, Estate Claims and Estate Defenses shall be transferred from the Estate to, and be vested in, the Acis Trust, and (b) all other Estate Assets, unless otherwise expressly stated in the Plan, shall be transferred to, and vested in, the Reorganized Debtor. After the Effective Date, the Acis Trustee may still

abandon any Acis Trust Assets which are burdensome or have no or inconsequential value to the Acis Trust. Any such abandoned assets shall be deemed transferred to and vested in the Reorganized Debtor. All Estate Assets transferred to either the Acis Trust or the Reorganized Debtor shall be transferred to, and vested in, the Acis Trust or the Reorganized Debtor free and clear of all Liens, Claims, rights, Interests and charges, except as expressly provided in the Plan.

### 3. Assumption of Obligations to Make Distributions

The Acis Trustee and the Reorganized Debtor shall be deemed to have assumed the obligations to make the Distributions pursuant to the Plan to the extent the Plan identifies the Acis Trustee or the Reorganized Debtor as responsible for making such Distributions.

### 4. Actions by the Debtors, the Reorganized Debtor and the Acis Trustee to Implement Plan

The entry of the Confirmation Order shall constitute all necessary authorization for the Debtors, the Reorganized Debtor and the Acis Trustee to take or cause to be taken all actions necessary or appropriate to consummate, implement or perform all provisions of the Plan on and after the Effective Date, and all such actions taken or caused to be taken shall be deemed to have been authorized and approved by the Bankruptcy Court without further approval, act or action under any applicable law, order, rule or regulation, including without limitation, (a) all transfers of Assets, including to the Acis Trust, that are to occur pursuant to the Plan; (b) the cancellation of Interests and issuance of 100% of the equity interests in the Reorganized Debtor to Terry; (c) the performance of the terms of the Plan and the making of all Distributions required under the Plan; and (d) subject to the terms of the Plan, entering into any and all transactions, contracts, or arrangements permitted by applicable law, order, rule or regulation.

### 5. Termination of Highland as Sub-Servicer and Sub-Advisor

The Bankruptcy Court authorized the Chapter 11 Trustee to terminate the Shared Services Agreement and Sub-Advisory Agreement and engage Oaktree to perform the services previously provided by Highland. The Shared Services Agreement and Sub-Advisory Agreement will be terminated by the Chapter 11 Trustee, and the services previously performed by Highland are being transitioned to Oaktree for a minimum one year term. Under Plan C, the Reorganized Debtor shall hire Terry as its Chief Trader and Terry may, at his discretion, hire additional personnel as he deems appropriate. However, replacement of Oaktree as the Sub-Advisor before the expiration of the one year minimum term will result in an administrative claim in favor of Oaktree for the value of the remainder of the one year term, which will be partially offset by the Break-Up Fee.

### 6. Continued Portfolio Management by the Reorganized Debtor

The PMAs shall be assumed and the Reorganized Debtor shall, from and after the Effective Date, serve as the portfolio manager with respect to the Acis CLOs (or any reset CLOs). The Reorganized Debtor may not be removed as portfolio manager under the assumed PMAs without cause.

### 7. Option for HCLOF to Elect a Reset of the Acis CLOs

HCLOF shall have the option to elect to reset the Acis CLOs. If HCLOF elects to fund a

reset, the Reorganized Debtor shall thereafter reset the Acis CLOs consecutively rather than simultaneously, consistent with market standards, but shall only effectuate the reset to the extent that HCLOF commits to fund the reset. If HCLOF elects not to reset the Acis CLOs, then the Acis CLOs will continue to be managed in accordance with market standards.

**8.  Amendment of Indentures**

The Indentures shall be amended to provide that the Acis CLOs cannot be called for redemption until the later of (a) the date on which all Allowed Claims against the Debtors have been paid in full, or (b) three (3) years after the Effective Date. In the event that the Acis CLOs are reset, any new indenture with respect to a reset CLO shall provide that the Reorganized Debtor will continue as the portfolio manager and the reset CLO cannot be called for redemption until the later of (y) the date on which all Allowed Claims against the Debtors have been paid in full, or (z) three (3) years after the Effective Date.

**9.  Post-Effective Date Service List**

Pleadings filed by any party-in-interest with the Bankruptcy Court after the Effective Date shall be served on the following Persons (collectively the "Service List"): (a) any Person directly affected by the relief sought in the pleading, (b) the U.S. Trustee, (c) parties which have filed a Notice of Appearance in the Chapter 11 Cases, (d) the Acis Trustee through legal counsel, and (e) the Reorganized Debtor.

**10.  Section 505 Powers**

All rights and powers pursuant to section 505 of the Bankruptcy Code shall be reserved to the Estate and shall be transferred to, and vested in, the Acis Trustee as of the Effective Date.

**11.  Section 510(c) Powers**

All rights and powers to seek or exercise any right or remedy of equitable subordination shall be reserved to the Estate and shall be transferred to, and vested in, the Acis Trustee as of the Effective Date as an Estate Defense.

**12.  Section 506(c) Powers**

The Estate shall reserve all rights and powers pursuant to section 506(c) of the Bankruptcy Code, and all such rights shall be specifically transferred to, and vested in, the Acis Trustee.

**13.  Plan Injunction**

The Acis Trustee and the Reorganized Debtor shall each have full power, standing and authority to enforce the Plan Injunction against any Person, either through an action before the Bankruptcy Court or any other tribunal having appropriate jurisdiction.

**14.  Cancellation of Interests**

Except as otherwise specifically provided in the Plan, upon the Effective Date of the Plan: (a) all Interests in the Debtors shall be cancelled; and (b) all obligations or debts of, or

Claims against, the Debtors on account of, or based upon, the Interests shall be deemed as cancelled, released and discharged, including all obligations or duties by the Debtors relating to the Interests in any of their respective formation documents, including Acis LP's limited partnership agreement and bylaws, Acis GP's articles of formation and company agreement, or any similar formation or governing documents.

## I.    The Acis Trust (Plan A)

### 1.    Acis Trust

On the Effective Date, the Acis Trust shall be created pursuant to the Acis Trust Agreement which shall be executed on behalf of the Debtors and by the Acis Trustee to accept the appointment.  The Acis Trust Agreement shall be in substantially the same form as Exhibit B to the Plan.  The Acis Trust shall not terminate upon the death or incapacity of the Acis Trustee and shall continue until its termination in accordance with the terms of the Plan and the Acis Trust Agreement.

### 2.    Compensation of Acis Trustee

The Acis Trustee shall be compensated from the Trust Assets in the manner set forth in the Acis Trust Agreement as a Trust Expense.  The Acis Trustee shall also be entitled to reimbursement of reasonable and necessary out-of-pocket expenses incurred in the performance of such duties, also as a Trust Expense.

### 3.    Trust Assets

The Debtors and the Estate shall constitute the settlors of the Acis Trust.  As of the Effective Date, the Net Cash Proceeds and all Remaining Assets shall be transferred to the Acis Trust where they will constitute the Trust Assets.  The Trust Assets shall encompass the Net Cash Proceeds and all Remaining Assets held by the Estate as of the Effective Date and shall specifically include without limitation: (a) all Estate Cash, including the Net Cash Proceeds (b) all Estate Accounts Receivable, (c) all Estate Claims, (d) all Estate Defenses, (e) all rights under Estate Insurance, and (f) any Executory Contracts assumed by the Estate and not assigned to the Transferee.  To evidence the transfer of the Estate Assets to the Acis Trust, the Debtors shall, if requested by the Acis Trustee, execute on behalf of the Debtors and Estate, as settlors, an Assignment of Trust Assets transferring the Estate Assets to the Acis Trust which shall be included among the Plan Documents.

### 4.    Distributions from the Acis Trust

The Acis Trustee shall be responsible for making all Distributions from the Acis Trust to holders of Allowed Claims pursuant to the Plan.  The priority of Distributions from the Acis Trust shall be in accordance with the terms of the Plan and the Confirmation Order as follows:

(a)    First, to satisfy Allowed Class 1 Secured Tax Claims;

(b)    Second, to satisfy Allowed Administrative Expenses and Allowed Priority Claims in accordance with Article II.B of the Plan, including all U.S. Trustee quarterly fees due and owing as of the Effective Date;

(c)    Third, to satisfy any Allowed Class 3 Terry Secured Claim;

(d)    <u>Fourth</u>, to pay Trust Expenses, including any Reserves;

(e)    <u>Fifth</u>, to make Distributions to holders of any Allowed Class 4 General Unsecured Claims and Allowed Subclass 5A Claims;

(f)    <u>Sixth</u>, to make Distributions to holders of any Allowed Subclass 5B Claims; and

(g)    <u>Seventh</u>, to transfer any remaining assets of the Acis Trust to the reorganized Acis LP.

## 5. Reserves

The Acis Trustee may estimate, create and set aside Reserves as may be necessary or appropriate, including without limitation, Reserves on account of Contested Claims and for Trust Expenses. The Acis Trustee may, but shall not be required to, seek approval by the Bankruptcy Court for the creation and amount of any Reserves or regarding the amount or timing of any Distribution on account of any Allowed Claims. Except as otherwise expressly provided in the Plan, the Acis Trustee, in the exercise of his/her good faith business judgment, may transfer funds out of any of the Reserves as necessary or appropriate. However, the Acis Trustee shall not be required to create separate accounts for such Reserves which may be created and memorialized by entries or other accounting methodologies, which may be revised from time-to-time, to enable the Acis Trustee to determine the amount of Cash available for Distribution to Beneficiaries of the Acis Trust. Subject to any specific deadlines set forth in the Plan, the Acis Trustee, shall determine, from time-to-time, in the exercise of the Acis Trustee's good faith business judgment: (a) the amount of Cash available for Distribution to Beneficiaries, (b) the timing of any Distributions to Beneficiaries, and (c) the amount and creation of any Reserves for Contested Claims or Trust Expenses. The Acis Trustee shall not be entitled to reserve for, and section 2.33 of the Plan does not apply to, Distributions to holders of Allowed Subclass 5B Claims.

## 6. Trust Expenses

The Acis Trustee shall be entitled to pay all Trust Expenses without the necessity of further order of the Bankruptcy Court. Without limiting the generality of the foregoing, the Acis Trust may retain, compensate and reimburse Trust Professionals retained by the Acis Trust without the necessity of further order of the Bankruptcy Court. However, the Acis Trustee shall be entitled, should the Acis Trustee so elect, to request the Bankruptcy Court to approve any Trust Expense or the retention of any Trust Professional.

## 7. Powers and Duties of the Acis Trustee

The Acis Trustee's duties and compensation, to the extent not set forth in the Plan, shall be as set forth in the Acis Trust Agreement which shall be one of the Plan Documents. The Acis Trustee shall constitute a representative of the Estate pursuant to section 1123(b)(3)(B) of the Bankruptcy Code, and shall be clothed with all powers, rights, duties and responsibilities pursuant to the Plan, the Confirmation Order and the Acis Trust Agreement.

## 8. Exercise of Acis Trustee's Powers

The Acis Trustee shall be entitled to exercise all powers pursuant to the Plan and the Acis Trust Agreement, without further order or approval of the Bankruptcy Court except as

otherwise expressly provided in the Plan or in the Acis Trust Agreement or Confirmation Order.

### 9. Prosecution and Settlement of Estate Claims

Upon the Effective Date, the Acis Trustee (a) shall automatically be substituted in place of the Debtors as the party representing the Estate in respect of any pending lawsuit, motion or other pleading pending before the Bankruptcy Court or any other tribunal, and (b) shall be authorized to file a notice on the docket of each adversary proceeding or the Chapter 11 Cases regarding such substitution. The Acis Trustee shall have exclusive standing and authority to prosecute, settle or compromise Estate Claims for the benefit of the Acis Trust in the manner set forth in the Plan and the Acis Trust Agreement.

### 10. Exculpation of Acis Trustee

The Acis Trustee shall stand in a fiduciary relationship to the Beneficiaries of the Acis Trust. In the performance of its duties, the Acis Trustee shall be entitled to act, or refrain from acting, based on the exercise of his/her good faith business judgment. However, the Acis Trustee shall be fully exculpated, and shall have no liability for acts or omissions, in the manner and to the extent set forth in the Acis Trust Agreement.

### 11. Indemnity

The Acis Trust shall indemnify and hold harmless the Acis Trustee in the manner and to the extent set forth in the Acis Trust Agreement.

### 12. Resignation of Acis Trustee

The Acis Trustee may resign as provided in the Acis Trust Agreement.

### 13. Replacement of the Acis Trustee

The Acis Trustee may be replaced in the manner and on the terms as set forth in the Acis Trust Agreement.

### 14. Reliance by Acis Trustee

In the performance of the duties pursuant to the Plan, the Acis Trustee may rely upon any document or instrument which the Acis Trustee in good faith believes to be genuine and to have been signed or executed by the proper parties.

### 15. Plan Injunction

The Acis Trustee and Acis Trust shall be entitled to the full protection and benefit of the Plan Injunction and shall have standing to bring any action or proceeding necessary to enforce the Plan Injunction against any Person.

### 16. Tax Treatment

The Acis Trust shall be treated as a "liquidating trust" within the meaning of Section 301.7701-4(d) of the Treasury Regulations. The Acis Trustee shall, in an expeditious but orderly manner, collect, liquidate and convert to Cash all non-cash Trust Assets, and make timely Distributions to Beneficiaries of the Acis Trust, and shall not unduly prolong its duration.

### 17. Transfer of Claims

Holders of Allowed Claims shall not receive any certificate or other document to evidence their beneficial interest in the Acis Trust. The transfer of Claims after the Effective Date is subject to section 5.04 of the Plan.

### 18. Construction of Acis Trust Documents

The Plan and the Acis Trust Agreement shall control over any inconsistent provision of the Disclosure Statement. The Plan and Confirmation Order shall control over any inconsistent provision of the Acis Trust Agreement. The Confirmation Order shall control over any inconsistent provision of the Disclosure Statement, the Acis Trust Agreement or the Plan.

### 19. Relief from the Bankruptcy Court

The Acis Trustee shall be authorized to seek relief from the Bankruptcy Court or any other tribunal having jurisdiction as to any matter relating or pertaining to the consummation, administration or performance of the Plan, including without limitation seeking any relief from the Bankruptcy Court which the Acis Trustee deems necessary or appropriate to the performance of its duties, the administration of the Plan, or the liquidation and distribution of the Trust Assets.

### 20. Removal for Cause

The Acis Trustee may be removed for cause shown in the manner and on the terms set forth in the Acis Trust Agreement.

## J. The Acis Trust (Plan B)

### 1. Acis Trust

On the Effective Date, the Acis Trust shall be created pursuant to the Acis Trust Agreement which shall be executed on behalf of the Debtors and by the Acis Trustee to accept the appointment. The Acis Trust Agreement shall be in substantially the same form as Exhibit C to the Plan. The Acis Trust shall not terminate upon the death or incapacity of the Acis Trustee and shall continue until its termination in accordance with the terms of the Plan and the Acis Trust Agreement.

### 2. Compensation of Acis Trustee

The Acis Trustee shall be compensated from the Acis Trust Assets in the manner set forth in the Acis Trust Agreement as a Trust Expense. The Acis Trustee shall also be entitled to reimbursement of reasonable and necessary out-of-pocket expenses incurred in the performance of such duties, also as a Trust Expense.

### 3. Acis Trust Assets

The Debtors and the Estate shall constitute the settlors of the Acis Trust. As of the Effective Date, the Acis Trust Assets shall specifically include without limitation: (a) all Estate Cash, (b) all Estate Accounts Receivable, (c) all Estate Claims, and (d) all Estate Defenses. To evidence the transfer of the applicable Estate Assets to the Acis Trust, the Debtors shall, if requested by the Acis Trustee, execute on behalf of the Debtors and Estate, as settlors, an

Assignment of Trust Assets transferring the applicable Estate Assets to the Acis Trust which shall be included among the Plan Documents.

### 4. Distributions from Acis Trust

The Acis Trustee shall be responsible for making Distributions from the Acis Trust to holders of Allowed Claims only to the extent the Plan requires Distributions to be made by the Acis Trustee. The Acis Trustee shall have no responsibility to make any Distributions which the Plan expressly identifies as Distributions required to be made by the Reorganized Debtor. The priority of Distributions from the Acis Trust shall be in accordance with the terms of the Plan and the Confirmation Order as follows:

(a)    First, to satisfy Allowed Class 1 Secured Tax Claims;

(b)    Second, to satisfy Allowed Administrative Expenses and Allowed Priority Claims in accordance with Article III.B of the Plan, including all U.S. Trustee quarterly fees due and owing as of the Effective Date;

(c)    Third, to pay Trust Expenses;

(d)    Fourth, to make Distributions to holders of any Allowed Class 4 General Unsecured Claims and Allowed Subclass 5A Claims;

(e)    Fifth, to make Distributions to holders of any Allowed Subclass 5B Claims; and

(f)    Sixth, to make a Distribution of any remaining Acis Trust Assets to the Reorganized Debtor, as the residual Beneficiary of the Acis Trust.

### 5. Reserves

The Acis Trustee may estimate, create and set aside Reserves as may be necessary or appropriate, including without limitation, Reserves on account of Contested Claims and for Trust Expenses. The Acis Trustee may, but shall not be required to, move the Bankruptcy Court to approve: (a) the amount of, and terms on which, such Reserves shall be held, maintained and disbursed, or (b) the amount and timing of any proposed interim Distribution to holders of Allowed Class 4 Claims and Allowed Subclass 5A Claims. The Acis Trustee may elect to seek approval by the Bankruptcy Court for the creation and amount of any Reserves or regarding the amount or timing of any Distribution on account of any Allowed Claims. Except as otherwise expressly provided in the Plan, the Acis Trustee, in the exercise of his/her good faith business judgment, may transfer funds out of any of the Reserves as necessary or appropriate. However, the Acis Trustee shall not be required to create separate accounts for such Reserves which may be created and memorialized by entries or other accounting methodologies, which may be revised from time-to-time, to enable the Acis Trustee to determine the amount of Cash available for Distribution to Beneficiaries of the Acis Trust. Subject to any specific deadlines set forth in the Plan, the Acis Trustee, shall determine, from time-to-time, in the exercise of the Acis Trustee's good faith business judgment: (x) the amount of Cash available for Distribution to Beneficiaries, (y) the timing of any Distributions to Beneficiaries, and (z) the amount and creation of any Reserves for Contested Claims or Trust Expenses. The Acis Trustee shall not be entitled to reserve for, and section 3.35 of the Plan does not apply to, Distributions to holders of Allowed Subclass 5B Claims.

### 6.    Trust Expenses

The Acis Trustee shall be entitled to pay all Trust Expenses without the necessity of further order of the Bankruptcy Court.  Without limiting the generality of the foregoing, the Acis Trust may retain, compensate and reimburse Trust Professionals retained by the Acis Trust without the necessity of further order of the Bankruptcy Court.  However, the Acis Trustee shall be entitled, should the Acis Trustee so elect, to request the Bankruptcy Court to approve any Trust Expense or the retention of any Trust Professional.

### 7.    Powers and Duties of the Acis Trustee

The Acis Trustee's duties and compensation, to the extent not set forth in the Plan, shall be as set forth in the Acis Trust Agreement which shall be one of the Plan Documents.  The Acis Trustee shall constitute a representative of the Estate pursuant to section 1123(b)(3)(B) of the Bankruptcy Code, and shall be clothed with all powers, rights, duties and responsibilities pursuant to the Plan, the Confirmation Order and the Acis Trust Agreement.

### 8.    Exercise of Acis Trustee's Powers

The Acis Trustee shall be entitled to exercise all powers pursuant to the Plan and the Acis Trust Agreement, without further order or approval of the Bankruptcy Court except as otherwise expressly provided in the Plan or in the Acis Trust Agreement or Confirmation Order.

### 9.    Prosecution and Settlement of Estate Claims

Upon the Effective Date, the Acis Trustee (a) shall automatically be substituted in place of the Debtors as the party representing the Estate in respect of any pending lawsuit, motion or other pleading pending before the Bankruptcy Court or any other tribunal, and (b) shall be authorized to file a notice on the docket of each adversary proceeding or the Chapter 11 Cases regarding such substitution.  The Acis Trustee shall have exclusive standing and authority to prosecute, settle or compromise Estate Claims for the benefit of the Acis Trust in the manner set forth in the Plan and the Acis Trust Agreement.

### 10.    Exculpation of Acis Trustee

The Acis Trustee shall stand in a fiduciary relationship to the Beneficiaries of the Acis Trust.  In the performance of its duties, the Acis Trustee shall be entitled to act, or refrain from acting, based on the exercise of his/her good faith business judgment.  However, the Acis Trustee shall be fully exculpated, and shall have no liability for acts or omissions, in the manner and to the extent set forth in the Acis Trust Agreement.

### 11.    Indemnity

The Acis Trust shall indemnify and hold harmless the Acis Trustee in the manner and to the extent set forth in the Acis Trust Agreement.

### 12.    Resignation of Acis Trustee

The Acis Trustee may resign as provided in the Acis Trust Agreement.

### 13.    Replacement of the Acis Trustee

The Acis Trustee may be replaced in the manner and on the terms as set forth in the Acis Trust Agreement.

### 14.    Reliance by Acis Trustee

In the performance of the duties pursuant to the Plan, the Acis Trustee may rely upon any document or instrument which the Acis Trustee in good faith believes to be genuine and to have been signed or executed by the proper parties.

### 15.    Plan Injunction

The Acis Trustee and Acis Trust shall be entitled to the full protection and benefit of the Plan Injunction and shall have standing to bring any action or proceeding necessary to enforce the Plan Injunction against any Person.

### 16.    Tax Treatment

The Acis Trust shall be treated as a "liquidating trust" within the meaning of Section 301.7701-4(d) of the Treasury Regulations. The Acis Trustee shall, in an expeditious but orderly manner, collect, liquidate and convert to Cash all non-cash Acis Trust Assets, and make timely Distributions to Beneficiaries of the Acis Trust, and shall not unduly prolong its duration.

### 17.    Transfer of Claims

Holders of Allowed Claims shall not receive any certificate or other document to evidence their beneficial interest in the Acis Trust. The transfer of Claims after the Effective Date is subject to section 5.04 of the Plan.

### 18.    Construction of Acis Trust Documents

The Plan and the Acis Trust Agreement shall control over any inconsistent provision of the Disclosure Statement. The Plan and Confirmation Order shall control over any inconsistent provision of the Acis Trust Agreement. The Confirmation Order shall control over any inconsistent provision of the Disclosure Statement, the Acis Trust Agreement or the Plan.

### 19.    Relief from the Bankruptcy Court

The Acis Trustee shall be authorized to seek relief from the Bankruptcy Court or any other tribunal having jurisdiction as to any matter relating or pertaining to the consummation, administration or performance of the Plan, including without limitation seeking any relief from the Bankruptcy Court which the Acis Trustee deems necessary or appropriate to the performance of its duties, the administration of the Plan, or the liquidation and distribution of the Acis Trust Assets.

### 20.    Removal for Cause

The Acis Trustee may be removed for cause shown in the manner and on the terms set forth in the Acis Trust Agreement.

## K.    The Acis Trust (Plan C)

### 1.    Acis Trust

On the Effective Date, the Acis Trust shall be created pursuant to the Acis Trust Agreement which shall be executed on behalf of the Debtors and by the Acis Trustee to accept the appointment. The Acis Trust Agreement shall be in substantially the same form as Exhibit C to the Plan. The Acis Trust shall not terminate upon the death or incapacity of the Acis Trustee and shall continue until its termination in accordance with the terms of the Plan and the Acis Trust Agreement.

### 2. Compensation of Acis Trustee

The Acis Trustee shall be compensated from the Acis Trust Assets in the manner set forth in the Acis Trust Agreement as a Trust Expense. The Acis Trustee shall also be entitled to reimbursement of reasonable and necessary out-of-pocket expenses incurred in the performance of such duties, also as a Trust Expense.

### 3. Acis Trust Assets

The Debtors and the Estate shall constitute the settlors of the Acis Trust. As of the Effective Date, the Acis Trust Assets shall specifically include without limitation: (a) all Estate Cash, (b) all Estate Accounts Receivable, (c) all Estate Claims, and (d) all Estate Defenses. To evidence the transfer of the applicable Estate Assets to the Acis Trust, the Debtors shall, if requested by the Acis Trustee, execute on behalf of the Debtors and Estate, as settlors, an Assignment of Trust Assets transferring the applicable Estate Assets to the Acis Trust which shall be included among the Plan Documents.

### 4. Distributions from Acis Trust

The Acis Trustee shall be responsible for making Distributions from the Acis Trust to holders of Allowed Claims only to the extent the Plan requires Distributions to be made by the Acis Trustee. The Acis Trustee shall have no responsibility to make any Distributions which the Plan expressly identifies as Distributions required to be made by the Reorganized Debtor. The priority of Distributions from the Acis Trust shall be in accordance with the terms of the Plan and the Confirmation Order as follows:

(a)     First, to satisfy Allowed Class 1 Secured Tax Claims;

(b)     Second, to satisfy Allowed Administrative Expenses and Allowed Priority Claims in accordance with Article IV.B of the Plan, including all U.S. Trustee quarterly fees due and owing as of the Effective Date;

(c)     Third, to pay Trust Expenses;

(d)     Fourth, to make Distributions to holders of any Allowed Class 4 General Unsecured Claims and Allowed Subclass 5A Claims;

(e)     Fifth, to make Distributions to holders of any Allowed Subclass 5B Claims; and

(f)     Sixth, to make a Distribution of any remaining Acis Trust Assets to the Reorganized Debtor, as the residual Beneficiary of the Acis Trust.

### 5. Reserves

The Acis Trustee may estimate, create and set aside Reserves as may be necessary or appropriate, including without limitation, Reserves on account of Contested Claims and for Trust Expenses. The Acis Trustee may, but shall not be required to, move the Bankruptcy Court to approve: (a) the amount of, and terms on which, such Reserves shall be held, maintained and disbursed, or (b) the amount and timing of any proposed interim Distribution to holders of Allowed Class 4 Claims and Allowed Subclass 5A Claims. The Acis Trustee may elect to seek approval by the Bankruptcy Court for the creation and amount of any Reserves or regarding the amount or timing of any Distribution on account of any Allowed Claims. Except as otherwise expressly provided in the Plan, the Acis Trustee, in the exercise of his/her good faith business judgment, may transfer funds out of any of the Reserves as necessary or appropriate. However, the Acis Trustee shall not be required to create separate accounts for such Reserves which may be created and memorialized by entries or other accounting methodologies, which may be revised from time-to-time, to enable the Acis Trustee to determine the amount of Cash available for Distribution to Beneficiaries of the Acis Trust. Subject to any specific deadlines set forth in the Plan, the Acis Trustee, shall determine, from time-to-time, in the exercise of the Acis Trustee's good faith business judgment: (x) the amount of Cash available for Distribution to Beneficiaries, (y) the timing of any Distributions to Beneficiaries, and (z) the amount and creation of any Reserves for Contested Claims or Trust Expenses. The Acis Trustee shall not be entitled to reserve for, and section 4.35 of the Plan does not apply to, Distributions to holders of Allowed Subclass 5B Claims.

### 6. Trust Expenses

The Acis Trustee shall be entitled to pay all Trust Expenses without the necessity of further order of the Bankruptcy Court. Without limiting the generality of the foregoing, the Acis Trust may retain, compensate and reimburse Trust Professionals retained by the Acis Trust without the necessity of further order of the Bankruptcy Court. However, the Acis Trustee shall be entitled, should the Acis Trustee so elect, to request the Bankruptcy Court to approve any Trust Expense or the retention of any Trust Professional.

### 7. Powers and Duties of the Acis Trustee

The Acis Trustee's duties and compensation, to the extent not set forth in the Plan, shall be as set forth in the Acis Trust Agreement which shall be one of the Plan Documents. The Acis Trustee shall constitute a representative of the Estate pursuant to section 1123(b)(3)(B) of the Bankruptcy Code, and shall be clothed with all powers, rights, duties and responsibilities pursuant to the Plan, the Confirmation Order and the Acis Trust Agreement.

### 8. Exercise of Acis Trustee's Powers

The Acis Trustee shall be entitled to exercise all powers pursuant to the Plan and the Acis Trust Agreement, without further order or approval of the Bankruptcy Court except as otherwise expressly provided in the Plan or in the Acis Trust Agreement or Confirmation Order.

### 9. Prosecution and Settlement of Estate Claims

Upon the Effective Date, the Acis Trustee (a) shall automatically be substituted in place of the Debtors as the party representing the Estate in respect of any pending lawsuit, motion or other pleading pending before the Bankruptcy Court or any other tribunal, and (b) shall be

authorized to file a notice on the docket of each adversary proceeding or the Chapter 11 Cases regarding such substitution. The Acis Trustee shall have exclusive standing and authority to prosecute, settle or compromise Estate Claims for the benefit of the Acis Trust in the manner set forth in the Plan and the Acis Trust Agreement.

**10. Exculpation of Acis Trustee**

The Acis Trustee shall stand in a fiduciary relationship to the Beneficiaries of the Acis Trust. In the performance of its duties, the Acis Trustee shall be entitled to act, or refrain from acting, based on the exercise of his/her good faith business judgment. However, the Acis Trustee shall be fully exculpated, and shall have no liability for acts or omissions, in the manner and to the extent set forth in the Acis Trust Agreement.

**11. Indemnity**

The Acis Trust shall indemnify and hold harmless the Acis Trustee in the manner and to the extent set forth in the Acis Trust Agreement.

**12. Resignation of Acis Trustee**

The Acis Trustee may resign as provided in the Acis Trust Agreement.

**13. Replacement of the Acis Trustee**

The Acis Trustee may be replaced in the manner and on the terms as set forth in the Acis Trust Agreement.

**14. Reliance by Acis Trustee**

In the performance of the duties pursuant to the Plan, the Acis Trustee may rely upon any document or instrument which the Acis Trustee in good faith believes to be genuine and to have been signed or executed by the proper parties.

**15. Plan Injunction**

The Acis Trustee and Acis Trust shall be entitled to the full protection and benefit of the Plan Injunction and shall have standing to bring any action or proceeding necessary to enforce the Plan Injunction against any Person.

**16. Tax Treatment**

The Acis Trust shall be treated as a "liquidating trust" within the meaning of Section 301.7701-4(d) of the Treasury Regulations. The Acis Trustee shall, in an expeditious but orderly manner, collect, liquidate and convert to Cash all non-cash Acis Trust Assets, and make timely Distributions to Beneficiaries of the Acis Trust, and shall not unduly prolong its duration.

**17. Transfer of Claims**

Holders of Allowed Claims shall not receive any certificate or other document to evidence their beneficial interest in the Acis Trust. The transfer of Claims after the Effective Date is subject to section 5.04 of the Plan.

18.     **Construction of Acis Trust Documents**

The Plan and the Acis Trust Agreement shall control over any inconsistent provision of the Disclosure Statement. The Plan and Confirmation Order shall control over any inconsistent provision of the Acis Trust Agreement. The Confirmation Order shall control over any inconsistent provision of the Disclosure Statement, the Acis Trust Agreement or the Plan.

19.     **Relief from the Bankruptcy Court**

The Acis Trustee shall be authorized to seek relief from the Bankruptcy Court or any other tribunal having jurisdiction as to any matter relating or pertaining to the consummation, administration or performance of the Plan, including without limitation seeking any relief from the Bankruptcy Court which the Acis Trustee deems necessary or appropriate to the performance of its duties, the administration of the Plan, or the liquidation and distribution of the Acis Trust Assets.

20.     **Removal for Cause**

The Acis Trustee may be removed for cause shown in the manner and on the terms set forth in the Acis Trust Agreement.

L.     **Provisions Governing Distribution**

1.     **Source of Distributions**

All Distributions required to be made by the Acis Trustee under the Plan shall be made by the Acis Trustee in the manner provided in the Plan, the Confirmation Order and the Acis Trust Agreement. All Distributions required to be made by the Reorganized Debtor under the Plan shall be made by the Reorganized Debtor in the manner provided in the Plan and the Confirmation Order.

2.     **Timing and Amount of Distributions**

No Distribution shall be made on account of any Claim until such Claim is Allowed, except as otherwise set forth in the Plan or otherwise ordered by the Bankruptcy Court. No Distribution shall be made on account of any Contested Claim until such Claim is Allowed. Except as expressly set forth in the Plan or in the Confirmation Order, the Acis Trustee and, if applicable, the Reorganized Debtor, shall, in the exercise of its or their good faith business judgment, determine the timing and amount of all Distributions which are required to be made under the Plan, consistent with the goal of making such Distributions as expeditiously as reasonably possible. The Acis Trustee and the Reorganized Debtor may, but shall not be required to, seek approval of, or any other appropriate relief from, the Bankruptcy Court with respect to any of such Distributions. Any Unclaimed Property may be paid into the registry of the Bankruptcy Court or otherwise distributed in accordance with the orders of the Bankruptcy Court.

3.     **Means of Cash Payment**

Cash payments pursuant to the Plan shall be made by check drawn on, or by wire transfer from, a domestic bank, or by other means agreed to by the payor and payee.

4.      **Record Date for Distributions**

As of the close of business on the Effective Date (the "Distribution Record Date"), the register for Claims will be closed, and there shall be no further changes in the holders of record of any Claims. Although there is no prohibition against the transfer of any Claim by any Creditor, the Acis Trustee and the Reorganized Debtor shall have no obligation to recognize any transfer of a Claim occurring after the Distribution Record Date, and the Acis Trustee and the Reorganized Debtor shall instead be authorized and entitled to recognize and deal for all purposes under the Plan, including for the purpose of making all Distributions, with only those holders of Claims so reflected as of the Distribution Record Date. However, the Acis Trustee and the Reorganized Debtor may, in the exercise of their good faith business judgment, agree to recognize transfers of Claims after the Distribution Record Date, but shall have no obligation to do so.

5.      **Delivery of Distributions**

All Distributions, deliveries and payments to the holders of any Allowed Claims shall be made to the addresses set forth on the respective proofs of Claim filed in the Chapter 11 Cases by such Claimants or, if the Distribution is to be made based on a Claim reflected as Allowed in the Schedules, at the address reflected in the Schedules. Any such Distribution, delivery or payment shall be deemed as made for all purposes relating to the Plan when deposited in the United States Mail, postage prepaid, addressed as required in the preceding sentence. If any Distribution is returned as undeliverable, no further Distribution shall be made on account of such Allowed Claim unless and until the Acis Trustee or, if applicable, the Reorganized Debtor, is notified of such holder's then current address, at which time all missed Distributions shall be made to the holder of such Allowed Claim. However, all notices to the Acis Trustee or the Reorganized Debtor reflecting new or updated addresses for undeliverable Distributions shall be made on or before one hundred twenty (120) days after the date of the attempted Distribution or such longer period as the Acis Trustee or, if applicable, the Reorganized Debtor, may fix in the exercise of their sole discretion. After such date, all Unclaimed Property shall revert to the Acis Trustee (or to the Reorganized Debtor if the applicable Distribution is the responsibility of the Reorganized Debtor) and the Claim of any holder with respect to such property shall be discharged and forever barred.

6.      **W-9 Forms.**

Each holder of an Allowed Claim must provide a W-9 form or other such necessary information to comply with any withholding requirements of any governmental unit (collectively the "W-9 Form") to the Acis Trustee prior to receiving any Distribution from the Acis Trust. In the event a holder of an Allowed Claim does not provide a W-9 Form to the Acis Trustee within thirty (30) days of the Effective Date, the Acis Trustee shall, at an appropriate time, issue a written request to each holder of an Allowed Claim that has not previously provided a W-9 Form to the Acis Trustee. The request shall be in writing and shall be delivered to the last address known to the Debtors or Acis Trustee, as appropriate. The request shall conspicuously advise and disclose that failure to provide a W-9 Form to the Acis Trustee within thirty (30) days shall result in a waiver of any right or rights to a Distribution from the Acis Trust. In the event any holder of an Allowed Claim fails to provide the Acis Trustee with a W-9 Form within thirty (30) days after the date of such written request, then the holder of such Allowed Claim shall be deemed to have waived the right to receive any Distribution whatsoever from the Acis Trust.

7. **Time Bar to Cash Payments**

Checks issued in respect of Allowed Claims shall be null and void if not cashed within ninety (90) days of the date of issuance thereof. Requests for reissuance of any check shall be made directly to the issuer of the check (either the Acis Trustee or the Reorganized Debtor) by the holder of the Allowed Claim with respect to which such check originally was issued. Any Claim in respect of such a voided check shall be made on or before one hundred twenty (120) days after the date of issuance of such check or such longer period as the Acis Trustee or the Reorganized Debtor may fix. After such date, all Claims in respect of void checks shall be discharged and forever barred.

8. **Cure Period**

Except as otherwise set forth in the Plan, the failure by the Acis Trustee or the Reorganized Debtor to timely perform any term, provision or covenant contained in the Plan, or to make any payment or Distribution required by the Plan to any Creditor, or the failure to make any payment or perform any covenant on any note, instrument or document issued pursuant to the Plan, shall not constitute an event of default unless and until the Acis Trustee or the Reorganized Debtor, as applicable, has been given thirty (30) days written notice of such alleged default in the manner provided in the Plan, and provided an opportunity to cure such alleged default. Until the expiration of such thirty (30) day cure period, the Acis Trustee or the Reorganized Debtor shall not be in default, and performance during such thirty (30) day cure period shall be deemed as timely for all purposes. Such written notice and passage of the thirty (30) day cure period shall constitute conditions precedent to declaring or claiming any default under the Plan or bringing any action or legal proceeding by any Person to enforce any right granted under the Plan.

9. **Distributions after Substantial Consummation**

All Distributions of any kind made to any Creditor after Substantial Consummation and any and all other actions taken under the Plan after Substantial Consummation shall not be subject to relief, reversal or modification by any court unless the implementation of the Confirmation Order is stayed by an order granted under Bankruptcy Rule 8005.

M. **Retention of Estate Claims and Estate Defenses**

1. **Retention of Estate Claims**

Except as otherwise specifically provided in the Plan, pursuant to section 1123(b)(3) of the Bankruptcy Code, all Estate Claims shall be transferred to, and vested in, the Acis Trustee, both for purposes of seeking an affirmative recovery against any Person and as an offset or defense against any Claim asserted against the Estate or Acis Trust. Without limiting the generality of the foregoing, all applicable legal privileges of the Debtors or Estate, including both the attorney-client privilege and the work product privilege, shall be vested in the Acis Trustee who shall be clothed with the sole and exclusive standing and authority to assert any such privilege on behalf of the Debtors, Estate or Acis Trust. All Estate Claims shall be deemed to have been transferred to, and vested in, the Acis Trustee as of the Effective Date based on the entry of the Confirmation Order.

Without limiting the effectiveness or generality of the foregoing reservation, out of an abundance of caution, the Debtors and the Estate specifically reserve and retain the Estate

Claims reflected in Exhibit D to the Plan. The provisions of Article VI of the Plan, as well as the descriptions and disclosures relating to the Estate Claims in the Disclosure Statement, are provided in the interest of providing maximum disclosure of the Estate Claims of which Debtors are presently aware, and shall not act as a limitation on the potential Estate Claims that may exist. It is the specific intention of the Plan that all Avoidance Actions and all associated remedies, and any other Estate Claims, whether arising before or after the Petition Date, and whether arising under the Bankruptcy Code or applicable state or federal non-bankruptcy laws, shall all be retained and preserved under the Plan to be transferred to, and vested in the Acis Trustee. All Estate Claims are retained both as causes of action for an affirmative recovery and as counterclaims and offset to any Claims asserted against the Estate.

### 2. Retention of Estate Defenses

Except as otherwise specifically provided in the Plan, pursuant to section 1123(b)(3) of the Bankruptcy Code, all Estate Defenses shall be transferred to, and vested in, the Acis Trustee. For this purpose, all Estate Defenses shall be reserved and retained by the Debtors and the Estate, including without limitation all such Estate Defenses available to the Estate pursuant to section 558 of the Bankruptcy Code, and shall be deemed as transferred to, and vested in, the Acis Trustee as of the Effective Date based on the entry of the Confirmation Order.

### 3. Assertion of Estate Claims and Estate Defenses

The Acis Trustee shall have, and be vested with, the exclusive right, authority and standing to assert all Estate Claims and Estate Defenses for the benefit of the Acis Trust and, if applicable, the Reorganized Debtor.

### N. Procedures for Resolving and Treating Contested and Contingent Claims

### 1. Claims Listed in Schedules as Disputed

Any General Unsecured Claim which is listed in the Schedules as unliquidated, contingent or disputed, and for which no proof of Claim has been timely filed, shall be considered as Disallowed as of the Effective Date without the necessity of any further action by the Acis Trustee or further order of the Bankruptcy Court other than the entry of the Confirmation Order.

### 2. Responsibility for Objecting to Claims and Settlement of Claims

The Acis Trustee shall have the exclusive standing and authority to either object to any Claim or settle and compromise any Objection to any Claim, including as follows:

(a)     From and after the Effective Date, the Acis Trustee shall have the sole and exclusive right to (i) file, settle, or litigate to Final Order any Objections to any Claims; and (ii) seek to subordinate any Claim. Any Contested Claim may be litigated to Final Order by the Acis Trustee; and

(b)     From and after the Effective Date, the Acis Trustee shall have the sole and exclusive right to settle, compromise or otherwise resolve any Contested Claim without the necessity of any further notice or approval of the Bankruptcy Court. Bankruptcy Rule 9019 shall not apply to any settlement or compromise of a Contested Claim after the Effective Date.

3. **Objection Deadline**

All Objections to Claims shall be served and filed by the Objection Deadline; provided, however, the Objection Deadline shall not apply to Claims which are not reflected in the claims register, including any alleged informal proofs of Claim. The Acis Trustee may seek to extend the Objection Deadline pursuant to a motion filed on or before the then applicable Objection Deadline with respect to any Claim. Any such motion may be granted without notice or a hearing. In the event that the Acis Trustee files such a motion and the Bankruptcy Court denies such motion, the Objection Deadline shall nevertheless be automatically extended to that date which is ten (10) Business Days after the date of entry of the Bankruptcy Court's order denying such motion. Any proof of Claim other than one based upon a Rejection Claim and which is filed more than thirty (30) days after the Effective Date shall be of no force and effect and need not be objected to by the Acis Trustee. Nothing contained in the Plan shall limit the right of the Acis Trustee to object to Claims, if any, filed or amended after the Objection Deadline.

4. **Response to Claim Objection**

If the Acis Trustee files an Objection to any Claim, then the holder of such Claim shall file a written response to such Objection within twenty-four (24) days after the filing and service of the Objection upon the holder of the Contested Claim. Each such Objection shall contain appropriate negative notice advising the Creditor whose Claim is subject to the Objection of the requirement and time period to file a response to such Objection and that, if no response is timely filed to the Objection, the Bankruptcy Court may enter an order that such Claim is Disallowed without further notice or hearing. The negative notice language in the Objection shall satisfy the notice requirement in section 3007(a) of the Bankruptcy Rules, and the Acis Trustee shall not be required to send a separate notice of the Objection to the Creditor whose Claim is subject to the Objection.

5. **Distributions on Account of Contested Claims**

If a Claim is Contested, then the dates for any Distributions as to such Contested Claim shall be determined based upon its date of Allowance, and thereafter Distribution shall be made on account of such Allowed Claim pursuant to the provisions of the Plan. No Distribution shall be made on account of a Contested Claim until Allowed. Until such time as a contingent Claim becomes fixed and absolute by a Final Order Allowing such Claim, such Claim shall be treated as a Contested Claim for purposes of estimates, allocations, and Distributions under the Plan. Any contingent right to contribution or reimbursement shall continue to be subject to section 502(e) of the Bankruptcy Code.

6. **No Waiver of Right to Object**

Except as expressly provided in the Plan, nothing contained in the Disclosure Statement, the Plan, the Confirmation Order or the Acis Trust Agreement shall waive, relinquish, release or impair the Acis Trustee's right to object to any Claim.

7. **Offsets and Defenses**

The Acis Trustee shall be vested with and retain all Estate Claims and Estate Defenses, including without limitation all rights of offset or recoupment and all counterclaims against any Claimant holding a Claim. Assertion of counterclaims by the Acis Trustee against any Claim asserted against the Estate or Acis Trustee shall constitute "core" proceedings.

### 8. Claims Paid or Reduced Prior to Effective Date

Notwithstanding the contents of the Schedules, Claims listed therein as undisputed, liquidated and not contingent shall be reduced by the amount, if any, that was paid by the Debtors prior to the Effective Date, including pursuant to orders of the Bankruptcy Court. To the extent such payments are not reflected in the Schedules, such Schedules will be deemed amended and reduced to reflect that such payments were made. Nothing in the Plan shall preclude the Debtors, the Acis Trustee, or the Reorganized Debtor from paying Claims that the Debtors were authorized to pay pursuant to any Final Order entered by the Bankruptcy Court prior to the Confirmation Date.

### O. Executory Contracts and Unexpired Leases

#### 1. Assumption and Rejection of Executory Contracts

All Executory Contracts and Unexpired Leases of the Debtors shall be deemed rejected by the Debtors upon the Effective Date unless an Executory Contract or Unexpired Lease (a) has been previously assumed or rejected pursuant to an order of the Bankruptcy Court, (b) is identified in the Plan and/or the Confirmation Order to be (i) assumed or (ii) assumed and assigned to the Transferee, or (c) is the subject of a motion to assume filed on or before the Confirmation Date. The Plan shall constitute a motion to reject the Executory Contracts and Unexpired Leases except as stated in section 8.01 of the Plan. However, the Debtors may file a separate motion for the assumption or rejection of any Executory Contract or Unexpired Lease at any time through the Confirmation Date.

#### 2. Cure Payments

All payments that may be required by section 365(b)(1) of the Bankruptcy Code to satisfy any Cure Claim shall be made by the Acis Trustee as soon as reasonably practical after the Effective Date or upon such terms as may be otherwise agreed between the Acis Trustee and the holder of such Cure Claim; *provided, however*, in the event of a dispute regarding the amount of any Cure Claim, the cure of any other defaults, or any other matter pertaining to assumption or assignment of an Executory Contract, the Acis Trustee shall make such cure payments and cure such other defaults, all as may be required by section 365(b)(1) of the Bankruptcy Code, following the entry of a Final Order by the Bankruptcy Court resolving such dispute.

#### 3. Bar to Rejection Claims

Except as otherwise ordered by the Bankruptcy Court, any Rejection Claim based on the rejection of an Executory Contract or Unexpired Lease shall be forever barred and shall not be enforceable against the Acis Trust, the Acis Trust Assets, the Reorganized Debtor, or the Reorganized Debtor's assets unless a proof of Claim is filed with the Bankruptcy Court and served upon the Acis Trustee and its counsel by the earlier of thirty (30) days after the Effective Date or thirty (30) days after entry of the Final Order approving rejection of such Executory Contract or Unexpired Lease.

#### 4. Rejection Claims

Any Rejection Claim not barred by section 8.03 of the Plan shall be classified as a Class 4 General Unsecured Claim subject to the provisions of sections 502(b)(6) and 502(g) of the

Bankruptcy Code; *provided, however*, that any Rejection Claim by a lessor based upon the rejection of an unexpired lease of real property, either prior to the Confirmation Date, upon the entry of the Confirmation Order, or upon the Effective Date, shall be limited in accordance with section 502(b)(6) of the Bankruptcy Code and state law mitigation requirements. All Rejection Claims shall be deemed as Contested Claims until Allowed. Nothing contained in the Plan shall be deemed an admission by the Debtors, the Reorganized Debtor, or the Acis Trustee that such rejection gives rise to or results in a Claim or shall be deemed a waiver by the Debtors or the Acis Trustee of any objections or defenses to any such Rejection Claim if asserted.

### 5.      Reservation of Rights

Nothing contained in the Plan shall constitute an admission by the Debtors that any contract or lease is in fact an Executory Contract or Unexpired Lease or that the Debtors, the Reorganized Debtor, or the Acis Trustee have any liability thereunder. If there is a dispute regarding whether a contract or lease is or was executory or unexpired at the time of assumption or rejection, the Acis Trustee shall have thirty (30) days following entry of a Final Order resolving such dispute to alter the treatment of such contract or lease.

## P.      Substantive Consolidation of the Debtors

Pursuant to the Confirmation Order, the Bankruptcy Court shall approve the substantive consolidation of the Debtors for the sole purposes of implementing the Plan, including for purposes of voting and Distributions to be made under the Plan. Pursuant to such order: (a) all assets and liabilities of the Debtors will be deemed merged; (b) all guarantees by one Debtor of the obligations of the other Debtor will be deemed eliminated so that any Claim against any Debtor and any guarantee thereof executed by the other Debtor and any joint or several liability of the Debtors will be deemed to be one obligation of the consolidated Debtors; and (c) each and every Claim filed or to be filed in the Chapter 11 Case of either Debtor will be deemed filed against the consolidated Debtors and will be deemed one Claim against and a single obligation of the consolidated Debtors.

## Q.      Conditions Precedent to Confirmation and Effectiveness of Plan

### 1.      Conditions to Confirmation and Effectiveness of Plan

The Plan shall not become effective until the following conditions shall have been satisfied and which may occur concurrently with the Effective Date: (a) the Confirmation Order shall have been entered, in form and substance acceptable to the Chapter 11 Trustee; (b) if the Plan is confirmed based on the terms and provisions of Plan A, the ATA has been closed and funded according to its terms; (c) the Acis Trust Agreement has been executed and delivered, (d) the necessary Plan Documents have been executed and delivered, and (e) all other conditions specified by the Chapter 11 Trustee have been satisfied. Any or all of the above conditions other than (a) and (b) may be waived at any time by the Chapter 11 Trustee.

### 2.      Notice of the Effective Date

On or as soon as reasonably practical after the occurrence of the Effective Date, the Acis Trustee shall cause to be filed with the Court, and served on all Creditors and parties-in-interest, a notice of the Effective Date.

### 3.      Revocation of Plan

The Chapter 11 Trustee may revoke and withdraw the Plan at any time before the Effective Date. If the Chapter 11 Trustee revokes or withdraws the Plan, or if confirmation of the Plan does not occur, then this Plan shall be deemed null and void and nothing contained in the Plan shall be deemed to constitute a waiver or release of any Claims by or against the Debtors, as the case may be, or any other Person, or to prejudice in any manner the rights of the Debtors or any other Person in any further proceedings involving the Debtors.

R.      **Effect of the Plan on Claims and Interests**

1.      **Compromise and Settlement**

(a)      Pursuant to section 363 of the Bankruptcy Code and Bankruptcy Rule 9019, and in consideration of the classification, potential Distributions and other benefits provided under the Plan, the provisions of the Plan shall constitute a good faith compromise and settlement of all Claims, Interests and controversies subject to, or dealt with, under the Plan, including, without limitation, all Claims against the Debtors or Estate arising prior to the Effective Date, whether known or unknown, foreseen or unforeseen, asserted or unasserted, fixed or contingent, arising out of, relating to or in connection with the business or affairs of, or transactions with, the Debtors or the Estate. The entry of the Confirmation Order shall constitute the Bankruptcy Court's approval of each of the foregoing compromises or settlements embodied in the Plan, and all other compromises and settlements provided for in the Plan, and the Bankruptcy Court's findings shall constitute its determination that such compromises and settlements are in the best interest of the Debtors, the Estate, Creditors and other parties-in-interest, and are fair, equitable and within the range of reasonableness. The rights afforded in the Plan and the treatment of all Claims and Interests in the Plan shall be in exchange for, and in complete satisfaction and release of, all Claims and Interests of any nature whatsoever against and in the Debtors, the Estate, and the Assets. Except as otherwise provided in the Plan, all Persons shall be precluded and forever barred by the Plan Injunction from asserting against the Debtors and their affiliates, successors, assigns, the Reorganized Debtor or the Reorganized Debtor's assets, the Estate, the Transferee or the Assets or Transferred Assets, the Acis Trustee, the Acis Trust or the Acis Trust Assets, any event, occurrence, condition, thing, or other or further Claims or causes of action based upon any act, omission, transaction, or other activity of any kind or nature that occurred or came into existence prior to the Effective Date, whether or not the facts of or legal bases therefore were known or existed prior to the Effective Date.

(b)      It is not the intent of the Plan that confirmation of the Plan shall in any manner alter or amend any settlement and compromise (including those contained in agreed orders) between the Debtors and any Person that has been previously approved by the Bankruptcy Court (each, a "Prior Settlement"). To the extent of any conflict between the terms of the Plan and the terms of any Prior Settlement, the terms of the Prior Settlement shall control and such Prior Settlement shall be enforceable according to its terms.

2.      **Discharge**

If the Plan is confirmed based on the terms and provisions of Plan A, then the Plan does not provide for any discharge pursuant to section 1141(d)(3) of the Bankruptcy Code. Alternatively, if the Plan is confirmed based on the terms and provisions of either Plan B or Plan C, the Debtors and their successors in interest and assigns shall be deemed discharged and released pursuant to section 1141(d)(1) of the Bankruptcy Code from any and all Claims provided for in the Plan.

### 3.    Plan Injunction

SECTION 11.03 OF THE PLAN IS REFERRED TO THEREIN AS THE "PLAN INJUNCTION." EXCEPT AS OTHERWISE EXPRESSLY PROVIDED IN THE PLAN, AS OF THE EFFECTIVE DATE ALL HOLDERS OF CLAIMS AGAINST, OR INTERESTS IN, THE DEBTORS, THE ESTATE OR ANY OF THE ASSETS THAT AROSE PRIOR TO THE EFFECTIVE DATE SHALL BE PERMANENTLY ENJOINED AND PROHIBITED FROM THE FOLLOWING: (a) THE COMMENCING OR CONTINUATION IN ANY MANNER, DIRECTLY OR INDIRECTLY, OF ANY ACTION, CASE, LAWSUIT OR OTHER PROCEEDING OF ANY TYPE OR NATURE AGAINST THE TRANSFEREE, THE TRANSFERRED ASSETS, THE ACIS TRUSTEE, THE ACIS TRUST, THE ACIS TRUST ASSETS , THE DEBTORS, THE ESTATE, THE REORGANIZED DEBTOR, OR THE REORGANIZED DEBTOR'S ASSETS WITH RESPECT TO ANY SUCH CLAIM OR INTEREST ARISING OR ACCRUING BEFORE THE EFFECTIVE DATE, INCLUDING WITHOUT LIMITATION THE ENTRY OR ENFORCEMENT OF ANY JUDGMENT, OR ANY OTHER ACT FOR THE COLLECTION, EITHER DIRECTLY OR INDIRECTLY, OF ANY CLAIM OR INTEREST AGAINST THE TRANSFEREE, THE TRANSFERRED ASSETS, THE ACIS TRUSTEE, THE ACIS TRUST, THE ACIS TRUST ASSETS , THE DEBTORS, THE ESTATE, THE REORGANIZED DEBTOR, OR THE REORGANIZED DEBTOR'S ASSETS; (b) THE CREATION, PERFECTION OR ENFORCEMENT OF ANY LIEN, SECURITY INTEREST, ENCUMBRANCE, RIGHT OR BURDEN, EITHER DIRECTLY OR INDIRECTLY, AGAINST THE TRANSFEREE, THE TRANSFERRED ASSETS, THE ACIS TRUSTEE, THE ACIS TRUST, THE ACIS TRUST ASSETS , THE DEBTORS, THE ESTATE, THE REORGANIZED DEBTOR, OR THE REORGANIZED DEBTOR'S ASSETS, OR (c) TAKING ANY ACTION IN RELATION TO THE TRANSFEREE, THE TRANSFERRED ASSETS, THE ACIS TRUSTEE, THE ACIS TRUST, THE ACIS TRUST ASSETS , THE DEBTORS, THE ESTATE, THE REORGANIZED DEBTOR, OR THE REORGANIZED DEBTOR'S ASSETS, EITHER DIRECTLY OR INDIRECTLY, WHICH VIOLATES OR DOES NOT CONFORM OR COMPLY WITH THE PROVISIONS OF THE PLAN APPLICABLE TO SUCH CLAIM OR INTEREST.  THE PLAN INJUNCTION SHALL ALSO BE INCORPORATED INTO THE CONFIRMATION ORDER.

Notwithstanding anything to the contrary in the Plan or the Acis Trust Agreement: (a) third party professionals employed by the Acis Trustee shall not be released or exculpated from any losses, claims, damages, liabilities, or expenses arising from their duties and services provided to the Acis Trustee; and (b) any third party professionals employed by the Acis Trustee shall only be entitled to be indemnified by the Acis Trust to the extent provided by applicable law.

Notwithstanding anything to the contrary in the Plan or Confirmation Order, nothing in the Plan or Confirmation Order (including the Plan Injunction):  (a) releases any Person other than the Transferee, the Transferred Assets, the Acis Trustee, the Acis Trust, the Acis Trust Assets, the Debtors, the Estate, the Reorganized Debtor, or the Reorganized Debtor's assets (collectively, the "Released Parties") from any Claim or cause of action held by a Governmental Unit; or (b) enjoins, limits, impairs or delays any Governmental Unit from commencing or continuing any Claim, suit, action, proceeding, cause of action, or investigation against any Person other than the Released Parties.  Moreover, nothing in the Plan or in the Confirmation Order shall discharge, release, enjoin or otherwise bar (i) any liability of the Released Parties to a Governmental Unit arising on or after the Confirmation Date with respect to events occurring after the Confirmation Date, provided that the Released Parties reserve the right to assert that any such liability is a Claim that arose on or prior to the Confirmation Date and constitutes a Claim that is subject to the Plan Injunction, (ii) any liability to a Governmental Unit that is not a Claim subject to the deadlines for filing proofs of Claim, (iii) any valid right of setoff or recoupment of a Governmental Unit, and (iv) any police or regulatory action by a Governmental Unit.  In addition, nothing in the Plan or

Confirmation Order discharges, releases, precludes or enjoins any environmental liability to any Governmental Unit that any Person other than the Released Parties would be subject to as the owner or operator of the property after the Effective Date. For the avoidance of any doubt, nothing in section 11.03 of the Plan shall be construed to limit the application of the Plan Injunction to any Claim which was subject to any bar date applicable to such Claim.

### 4. Setoffs

Except as otherwise expressly provided for in the Plan, pursuant to the Bankruptcy Code (including section 553 of the Bankruptcy Code), applicable nonbankruptcy law, or as may be agreed to by the holder of a Claim, the Acis Trustee may setoff against any Allowed Claim and the Distributions to be made pursuant to the Plan on account of such Allowed Claim (before such Distribution is made), any Claims, rights, Estate Claims and Estate Defenses of any nature that the Debtors may hold against the holder of such Allowed Claim, to the extent such Claims, rights, Estate Claims and Estate Defenses against such holder have not been otherwise compromised or settled on or prior to the Effective Date (whether pursuant to the Plan or otherwise); provided, however, that neither the failure to effect such a setoff nor the allowance of any Claim or Interest pursuant to the Plan shall constitute a waiver or release of any such Claims, rights, Estate Claims and Estate Defenses that the Estate may possess against such Claimant. In no event shall any Claimant or Interest holder be entitled to setoff any Claim or Interest against any Claim, right, or Estate Claim of the Debtors without the consent of the Debtors or the Acis Trustee unless such holder files a motion with the Bankruptcy Court requesting the authority to perform such setoff notwithstanding any indication in any proof of Claim or otherwise that such holder asserts, has, or intends to preserve any right of setoff pursuant to section 553 of the Bankruptcy Code or otherwise.

### 5. Recoupment

Except as otherwise expressly provided for in the Plan, in no event shall any holder of Claims or Interests be entitled to recoup any Claim or Interest against any Claim, right, account receivable, or Estate Claim of the Debtors or the Acis Trustee unless (a) such holder actually provides notice thereof in writing to the Debtors or the Acis Trustee of its intent to perform a recoupment; (b) such notice includes the amount to be recouped by the holder of the Claim or Interest and a specific description of the basis for the recoupment, and (c) the Debtors or the Acis Trustee have provided a written response to such Claim or Interest holder, stating unequivocally that the Debtors or the Acis Trustee consents to the requested recoupment. The Debtors and the Acis Trustee shall have the right, but not the obligation, to seek an order of the Bankruptcy Court allowing any or all of the proposed recoupment. In the absence of a written response from the Debtors or the Acis Trustee consenting to a recoupment or an order of the Bankruptcy Court authorizing a recoupment, no recoupment by the holder of a Claim or Interest shall be allowed.

### 6. Turnover

On the Effective Date, any rights of the Estate to compel turnover of Assets under applicable nonbankruptcy law and pursuant to section 542 or 543 of the Bankruptcy Code shall be deemed transferred to and vested in the Acis Trust.

### 7. Automatic Stay

The automatic stay pursuant to section 362 of the Bankruptcy Code, except as

previously modified by the Bankruptcy Court, shall remain in effect until the Effective Date of the Plan as to the Debtors, the Estate and all Assets.  As of the Effective Date, the automatic stay shall be replaced by the Plan Injunction.

S.    **Jurisdiction of Courts and Modifications to the Plan**

    1.    **Retention of Jurisdiction**

Pursuant to sections 1334 and 157 of title 28 of the United States Code, the Bankruptcy Court shall retain exclusive jurisdiction of all matters arising in, arising under, and related to the Chapter 11 Cases and the Plan, to the full extent allowed or permitted by applicable law, including without limitation for the purposes of invoking sections 105(a) and 1142 of the Bankruptcy Code, and for, among other things, the following purposes:

    (a)    To hear and determine any and all objections to, or applications or motions concerning, the allowance of Claims or the allowance, classification, priority, compromise, estimation, or payment of any Administrative Expense;

    (b)    To hear and determine any and all applications for payment of fees and expenses pursuant to the Plan to any Estate Professional pursuant to sections 330 or 503 of the Bankruptcy Code, or for payment of any other fees or expenses authorized to be paid or reimbursed under the Plan, and any and all objections thereto;

    (c)    To hear and determine pending applications for the rejection, assumption, or assumption and assignment of Executory Contracts and Unexpired Leases and the allowance of Claims resulting therefrom, and to determine the rights of any party in respect to the assumption or rejection of any Executory Contract or Unexpired Lease;

    (d)    To hear and determine any and all adversary proceedings, applications, or contested matters, including relating to the allowance of any Claim;

    (e)    To hear and determine all controversies, disputes, and suits which may arise in connection with the execution, interpretation, implementation, consummation, or enforcement of the Plan or Acis Trust or in connection with the enforcement of any remedies made available under the Plan, including without limitation, (i) adjudication of all rights, interests or disputes relating to any of the Assets or Acis Trust Assets, (ii) the valuation of all Collateral, (iii) the determination of the validity of any Lien or claimed right of offset; and (iv) determinations of Objections to Contested Claims;

    (f)    To liquidate and administer any disputed, contingent, or unliquidated Claims, including the Allowance of all Contested Claims;

    (g)    To administer Distributions to holders of Allowed Claims as provided in the Plan or in the Acis Trust Agreement;

    (h)    To enter and implement such orders as may be appropriate in the event the Confirmation Order is for any reason stayed, reversed, revoked, modified, or vacated;

    (i)    To consider any modification of the Plan pursuant to section 1127 of the Bankruptcy Code, to cure any defect or omission, or reconcile any inconsistency in any order of the Bankruptcy Court, including, without limitation the Confirmation Order;

(j)     To enforce the Plan Injunction against any Person, including with respect to any motion or proceeding brought by the Transferee;

(k)     To enter and implement all such orders as may be necessary or appropriate to execute, interpret, construe, implement, consummate, or enforce the terms and conditions of the Plan or the Acis Trust Agreement and the transactions required or contemplated pursuant thereto;

(l)     To hear and determine any motion or application which the Acis Trustee is required or allowed to commence before the Bankruptcy Court pursuant to the Plan or the Acis Trust Agreement;

(m)     To hear and determine any other matter not inconsistent with the Bankruptcy Code and title 28 of the United States Code that may arise in connection with or related to the Plan;

(n)     To determine proceedings pursuant to section 505 of the Bankruptcy Code;

(o)     To enter a final decree closing the Chapter 11 Cases; and

(p)     To determine any other matter or dispute relating to the Estate, the Assets, the Acis Trust or the Acis Trust Assets, or the administration of the Acis Trust Assets and the Distribution thereof.

**2.     Abstention and Other Courts**

If the Bankruptcy Court abstains from exercising, or declines to exercise, jurisdiction or is otherwise without jurisdiction over any matter arising out of or relating to the Chapter 11 Cases, Article XII of the Plan shall have no effect upon and shall not control, prohibit or limit the exercise of jurisdiction by any other court having competent jurisdiction with respect to such matter.

**3.     Non-Material Modifications**

The Acis Trustee may, with the approval of the Bankruptcy Court and without notice to all holders of Claims and Interests, correct any defect, omission, or inconsistency in the Plan in such manner and to such extent as may be necessary or desirable. The Acis Trustee may undertake such nonmaterial modification pursuant to section 12.03 of the Plan insofar as it does not adversely change the treatment of the Claim of any Creditor or the Interest of any Interest holder who has not accepted in writing the modification.

**4.     Material Modifications**

Modifications of the Plan may be proposed in writing by the Chapter 11 Trustee at any time before confirmation, provided that the Plan, as modified, meets the requirements of sections 1122 and 1123 of the Bankruptcy Code, and the Chapter 11 Trustee shall have complied with section 1125 of the Bankruptcy Code. The Plan may be modified at any time after confirmation and before its Substantial Consummation, provided that the Plan, as modified, meets the requirements of sections 1122 and 1123 of the Bankruptcy Code, and the Bankruptcy Court, after notice and a hearing, confirms the Plan, as modified, under section 1129 of the

Bankruptcy Code, and the circumstances warrant such modification. A holder of a Claim or Interest that has accepted or rejected the Plan shall be deemed to have accepted or rejected, as the case may be, such Plan as modified, unless, within the time fixed by the Bankruptcy Court, such holder changes its previous acceptance or rejection.

T.    **Miscellaneous Provisions**

    **1.    Severability**

Should the Bankruptcy Court determine any provision of the Plan is unenforceable either on its face or as applied to any Claim or Interest or transaction, the Acis Trustee may modify the Plan so that any such provision shall not be applicable to the holder of any Claim or Interest. Such a determination of unenforceability shall not (a) limit or affect the enforceability and operative effect of any other provision of the Plan or (b) require the resolicitation of any acceptance or rejection of the Plan.

    **2.    Oral Agreements; Modification of Plan; Oral Representations or Inducements**

The terms of the Plan, Disclosure Statement and Confirmation Order may only be amended in writing and may not be changed, contradicted or varied by any oral statement, agreement, warranty or representation. None of the Debtors, any representative of the Estate, including Robin Phelan in his capacity as Chapter 11 Trustee, nor their attorneys have made any representation, warranty, promise or inducement relating to the Plan or its confirmation except as expressly set forth in the Plan, the Disclosure Statement, or the Confirmation Order or other order of the Bankruptcy Court.

    **3.    Waiver**

The Acis Trustee and Reorganized Debtor shall not be deemed to have waived any right, power or privilege pursuant to the Plan or the Acis Trust Agreement unless the waiver is in writing and signed by the Acis Trustee or Reorganized Debtor, as applicable. There shall be no waiver by implication, course of conduct or dealing, or through any delay or inaction by the Acis Trustee or the Reorganized Debtor, of any right pursuant to the Plan, including the provisions of section 13.03 of the Plan. The waiver of any right under the Plan shall not act as a waiver of any other or subsequent right, power or privilege.

    **4.    Notice**

Any notice or communication required or permitted by the Plan shall be given, made or sent as follows:

    (a)    If to a Creditor, notice may be given as follows: (i) if the Creditor has not filed a proof of Claim, then to the address reflected in the Schedules, or (ii) if the Creditor has filed a proof of Claim, then to the address reflected in the proof of Claim.

    (b)    If to the Acis Trustee, notice shall be sent to the Acis Trustee and counsel of record for the Acis Trustee as provided in the Acis Trust Agreement.

    (c)    If to the Reorganized Debtor, notice shall be sent to the following addresses:

Robin Phelan
c/o *PHELANLAW*
4214 Woodfin Drive
Dallas, Texas 75220

Josh Terry
c/o Brian P. Shaw
Rogge Dunn Group, PC
1201 Elm Street, Suite 5200
Dallas, Texas 75270

(d)     Any Creditor desiring to change its address for the purpose of notice may do so by giving notice to the Acis Trustee and, if applicable, to the Reorganized Debtor, of its new address in accordance with the terms of section 13.04 of the Plan.

(e)     Any notice given, made or sent as set forth above shall be effective upon being (i) deposited in the United States Mail, postage prepaid, addressed to the addressee at the address as set forth above; (ii) delivered by hand or messenger to the addressee at the address set forth above; (iii) telecopied to the addressee as set forth above, with a hard confirmation copy being immediately sent through the United States Mail; or (iv) delivered for transmission to an expedited or overnight delivery service such as FedEx.

## 5.     Compliance with All Applicable Laws

If notified by any governmental authority that it is in violation of any applicable law, rule, regulation, or order of such governmental authority relating to its business, the Acis Trustee or the Reorganized Debtor shall comply with such law, rule, regulation, or order; provided, however, that nothing contained in the Plan shall require such compliance if the legality or applicability of any such requirement is being contested in good faith in appropriate proceedings and, if appropriate, an adequate Reserve has been set aside on the books of the Acis Trust or the Reorganized Debtor.

## 6.     Duties to Creditors; Exculpation

Neither the Chapter 11 Trustee nor any agent, representative, accountant, financial advisor, attorney, shareholder, officer, affiliate, member or employee of the Chapter 11 Trustee or the Debtors, including but not limited to Estate Professionals (collectively, the "Exculpated Parties"), shall ever owe any duty to any Person (including any Creditor) other than the duties owed to the Debtors' bankruptcy Estate, for any act, omission, or event in connection with, or arising out of, or relating to, any of the following:  (a) the Debtors' Chapter 11 Cases, including all matters or actions in connection with or relating to the administration of the Estate, (b) the Plan, including the proposal, negotiation, confirmation and consummation of the Plan, or (c) any act or omission relating to the administration of the Plan after the Effective Date.  All such Exculpated Parties shall be fully exculpated and released from any and all claims and causes of action by any Person, known or unknown, in connection with, or arising out of, or relating to, any of the following:  (x) the Debtors' Chapter 11 Cases, including all matters or actions in connection with or relating to the administration of the Estate, (y) the Plan, including the proposal, negotiation, confirmation and consummation of the Plan, or (z) any act or omission relating to the administration of the Plan after the Effective Date, except for claims and causes of action arising out of such Exculpated Party's gross negligence or willful misconduct.

## 7.     Binding Effect

The Plan shall be binding upon, and shall inure to the benefit of the Acis Trust, the Reorganized Debtor, the holders of the Claims or Liens, and their respective successors-in-interest and assigns.

8.      **Governing Law, Interpretation**

Unless a rule of law or procedure supplied by federal law (including the Bankruptcy Code and Bankruptcy Rules) is applicable, the internal laws of the State of Texas shall govern the construction and implementation of the Plan and any Plan Documents without regard to conflicts of law. The Plan shall control any inconsistent term or provision of any other Plan Documents.

9.      **Payment of Statutory Fees**

All accrued U.S. Trustee Fees as of the Confirmation Date shall be paid by the Acis Trustee on or as soon as practicable after the Effective Date, and thereafter shall be paid by (a) the Acis Trustee as such statutory fees become due and payable if the Plan is confirmed based on the terms and provisions of Plan A, or (b) the Reorganized Debtor as such statutory fees become due and payable if the Plan is confirmed based on the terms and provisions of Plan B or Plan C.

10.     **Filing of Additional Documents**

On or before Substantial Consummation of the Plan, the Acis Trustee may file with the Bankruptcy Court such agreements and other documents as may be necessary or appropriate to effectuate and further evidence the terms and conditions of the Plan.

11.     **Computation of Time**

Bankruptcy Rule 9006 shall apply to the calculation of all time periods pursuant to the Plan. If the final day for any Distribution, performance, act or event under the Plan is not a Business Day, then the time for making or performing such Distribution, performance, act or event shall be extended to the next Business Day. Any payment or Distribution required to be made under the Plan on a day other than a Business Day shall be due and payable on the next succeeding Business Day.

12.     **Elections by the Acis Trustee or the Reorganized Debtor**

Any right of election or choice granted to the Acis Trustee or the Reorganized Debtor under the Plan may be exercised, at the Acis Trustee's election or the Reorganized Debtor's election, separately as to each Claim, Creditor or Person.

13.     **Release of Liens**

Except as otherwise expressly provided in the Plan or the Confirmation Order, all Liens against any of the Assets transferred to and vested in either the Acis Trust or the Reorganized Debtor shall be deemed to be released, terminated and nullified without the necessity of any order by the Bankruptcy Court other than the Confirmation Order.

14.     **Rates**

The Plan does not provide for the change of any rate that is within the jurisdiction of any governmental regulatory commission after the occurrence of the Effective Date.

### 15. Compliance with Tax Requirements

In connection with the Plan, the Acis Trustee and the Reorganized Debtor shall comply with all withholding and reporting requirements imposed by federal, state and local Taxing Authorities and all Distributions under the Plan shall be subject to such withholding and reporting requirements. Notwithstanding the above, each holder of an Allowed Claim or Interest that is to receive a Distribution under the Plan shall have the sole and exclusive responsibility for the satisfaction and payment of any tax obligations imposed by any governmental unit, including income, withholding and other tax obligations, on account of such Distribution under the Plan.

### 16. Notice of Occurrence of the Effective Date

Promptly after occurrence of the Effective Date, the Acis Trustee, as directed by the Bankruptcy Court, shall serve on all known parties-in-interest and holders of Claims and Interests, notice of the occurrence of the Effective Date.

### 17. Notice of Entry of Confirmation Order

Promptly after entry of the Confirmation Order, the Chapter 11 Trustee, as directed by the Bankruptcy Court in the Confirmation Order, shall serve on all known parties-in-interest and holders of Claims and Interests, notice of entry of the Confirmation Order.

## VIII. CERTAIN FEDERAL INCOME TAX CONSEQUENCES OF THE PLAN

THE PLAN AND ITS RELATED TAX CONSEQUENCES ARE COMPLEX. MOREOVER, MANY OF THE INTERNAL REVENUE CODE PROVISIONS DEALING WITH THE FEDERAL INCOME TAX ISSUES ARISING FROM THE PLAN HAVE BEEN THE SUBJECT OF RECENT LEGISLATION AND, AS A RESULT, MAY BE SUBJECT TO AS YET UNKNOWN ADMINISTRATIVE OR JUDICIAL INTERPRETATIONS. THE DEBTORS HAVE NOT REQUESTED A RULING FROM THE INTERNAL REVENUE SERVICE (THE "IRS") OR AN OPINION OF COUNSEL WITH RESPECT TO THESE MATTERS. ACCORDINGLY, NO ASSURANCE CAN BE GIVEN AS TO THE INTERPRETATION THAT THE IRS WILL ADOPT. THERE ALSO MAY BE STATE, LOCAL OR OTHER TAX CONSIDERATIONS APPLICABLE TO EACH CREDITOR. CREDITORS ARE URGED TO CONSULT THEIR OWN TAX ADVISORS AS TO THE CONSEQUENCES OF THE PLAN TO THEM UNDER FEDERAL AND APPLICABLE STATE, LOCAL AND OTHER TAX LAWS.

## IX. CONFIRMATION OF THE PLAN

### A. Solicitation of Votes; Voting Procedures

### 1. Ballots and Voting Deadlines

A Ballot to be used for voting to accept or reject the Plan, together with a postage-paid return envelope, is enclosed with all copies of this Disclosure Statement mailed to all holders of Claims and Interests entitled to vote. BEFORE COMPLETING YOUR BALLOT, PLEASE READ CAREFULLY THE INSTRUCTION SHEET THAT ACCOMPANIES THE BALLOT.

The Bankruptcy Court has directed that, in order to be counted for voting purposes, Ballots for the acceptance or rejection of the Plan must be received no later than **5:00 p.m.,**

**Central Time, on August        , 2018** at the following address:

> Forshey & Prostok, L.L.P.
> 777 Main Street, Suite 1290
> Fort Worth, Texas 76102
> Attn: Linda Breedlove

YOUR BALLOT MAY NOT BE COUNTED IF IT IS RECEIVED AT THE ABOVE ADDRESS AFTER **5:00 P.M., CENTRAL TIME, ON AUGUST        , 2018.**

### 2.     Parties-in-Interest Entitled to Vote

The holder of a Claim or Interest may vote to accept or reject the Plan only if the Plan impairs the Class in which such Claim or Interest is classified. Under the Plan, Class 1 is unimpaired. Classes 2, 3, 4 and Subclass 5A and Subclass 5B are Impaired and holders of Claims in Classes 2, 3, 4 and Subclass 5A and Subclass 5B shall be entitled to vote on the Plan, although Subclass 5B is currently an empty class. Class 6 Interests are also Impaired, but holders of Class 6 Interests shall be entitled to vote only on the Plan A alternative of the Plan. Under the Plan B and Plan C alternatives of the Plan, all Interests in the Debtors shall be cancelled as of the Effective Date and holders of Class 6 Interests will receive no Distributions under the Plan B and Plan C alternatives. Therefore, Class 6 is deemed to have rejected the Plan B and Plan C alternatives of the Plan.

Any Claim or Interest as to which an Objection has been filed is not entitled to vote unless the Bankruptcy Court, upon application of the holder to whose Claim or Interest an Objection has been made, temporarily allows such Claim or Interest in an amount that it deems proper for the purpose of accepting or rejecting the Plan. Any such application must be heard and determined by the Bankruptcy Court on or before commencement of the Confirmation Hearing. A vote may be disregarded if the Bankruptcy Court determines, after notice and a hearing, that such vote was not solicited or procured in good faith or in accordance with the provisions of the Bankruptcy Code.

IF YOU HAVE ANY QUESTIONS REGARDING THE PROCEDURES FOR VOTING ON THE PLAN, PLEASE CONTACT COUNSEL FOR THE CHAPTER 11 TRUSTEE AT THE FOLLOWING ADDRESS:

> Jeff P. Prostok
> Suzanne K. Rosen
> Forshey & Prostok, L.L.P.
> 777 Main Street, Suite 1290
> Fort Worth, Texas 76102
> (817) 877-8855 Telephone
> (817) 877-4151 Fax
> Email: jprostok@forsheyprostok.com
> Email: srosen@forsheyprostok.com

### 3.     Vote Required for Class Acceptance

The Bankruptcy Code defines acceptance of a plan by a class of claims as acceptance by holders of at least two-thirds in dollar amount, and more than one-half in number, of the claims of that class which actually cast ballots for acceptance or rejection of the plan. Thus,

class acceptance takes place only if at least two-thirds in amount and a majority in number of the holders of claims voting cast their ballots in favor of acceptance.

The Bankruptcy Code defines acceptance of a plan by a class of interests as acceptance by holders of at least two-thirds in amount of the interests of that class that actually cast ballots for acceptance or rejection of the plan. Thus, class acceptance takes place only if at least two-thirds in amount of the holders of interests voting cast their ballots in favor of acceptance.

## B.    Confirmation Hearing

Section 1128(a) of the Bankruptcy Code requires the Bankruptcy Court, after notice, to hold a hearing on confirmation of the Plan. Pursuant to the Solicitation Order, the Confirmation Hearing has been scheduled for **August        , 2018, at        .m. Central Time**, in the United States Bankruptcy Court for the Northern District of Texas, Dallas Division. In addition to considering confirmation of the Plan, the Bankruptcy Court will consider final approval of this Disclosure Statement at such hearing. The Confirmation Hearing may be adjourned from time to time by the Bankruptcy Court without further notice except for an announcement made at the Confirmation Hearing or any adjournment thereof.

Section 1128(b) of the Bankruptcy Code provides that any party in interest may object to confirmation of a plan. Any objection to confirmation of the Plan and/or final approval of this Disclosure Statement must be made in writing and filed with the Bankruptcy Court on or before **August        , 2018**, at the following address:

> Office of the Clerk
> U.S. Bankruptcy Court
> Earle Cabell Federal Building
> 1100 Commerce St., Rm. 1254
> Dallas, TX 75242-1496

In addition, any such objection must be served, together with proof of service, (a) on any parties who have filed notices of appearance and requests for notice in the Chapter 11 Cases and (b) upon the following parties on or before **August        , 2018**.

Jeff P. Prostok
Suzanne K. Rosen
Forshey & Prostok, L.L.P.
777 Main Street, Suite 1290
Fort Worth, TX 76102
Email: jprostok@forsheyprostok.com
Email: srosen@forsheyprostok.com

United States Trustee
Attn: Lisa L. Lambert, Asst. U.S. Trustee
1100 Commerce Street, Room 976
Dallas, TX 75242
Email: Lisa.L.Lambert@usdoj.gov

Rakhee V. Patel
Phillip Lamberson
Joe Wielebinski
Annmarie Chiarello
**WINSTEAD PC**
500 Winstead Building
2728 N. Harwood Street
Dallas, Texas 75201
Email: rpatel@winstead.com
Email: plamberson@winstead.com
Email: jwielebinski@winstead.com
Email: achiarello@winstead.com

Objections to confirmation of the Plan are governed by Bankruptcy Rule 9014. UNLESS

AN OBJECTION TO CONFIRMATION IS TIMELY SERVED AND FILED, IT WILL NOT BE CONSIDERED BY THE BANKRUPTCY COURT.

**C.    Requirements for Confirmation of the Plan**

At the Confirmation Hearing, the Bankruptcy Court must determine whether the Bankruptcy Code's requirements for confirmation of the Plan have been satisfied, in which event the Bankruptcy Court will enter an order confirming the Plan.  As set forth in section 1129 of the Bankruptcy Code, these requirements are as follows:

1.    The Plan complies with the applicable provisions of the Bankruptcy Code.

2.    The proponent of the Plan complied with the applicable provisions of the Bankruptcy Code.

3.    The Plan has been proposed in good faith and not by any means forbidden by law.

4.    Any payment made or promised by the Debtors, by the Plan proponent, or by a person issuing securities or acquiring property under the Plan, for services or for costs and expenses in, or in connection with, the case, or in connection with the Plan and incident to the case, has been approved by, or is subject to the approval of the Bankruptcy Court as reasonable.

5.    (a)    (i)    The proponent of the Plan has disclosed the identity and affiliations of any individual proposed to serve, after confirmation of the Plan, as a director, officer, or voting trustee of the Debtors, an affiliate of the Debtors participating in a joint plan with the Debtors, or a successor to the Debtors under the Plan; and

(ii)    the appointment to, or continuance in, such office of such individual, is consistent with the interests of creditors and equity security holders and with public policy; and

(b)    the proponent of the Plan has disclosed the identity of any Insider that will be employed or retained by the Acis Trustee or the Reorganized Debtor, and the nature of any compensation for such Insider.

6.    Any governmental regulatory commission with jurisdiction, after confirmation of the Plan, over the rates of the Debtors have approved any rate change provided for in the Plan, or such rate change is expressly conditioned on such approval.

7.    With respect to each Impaired Class of Claims or Interests:

(a)    each holder of a Claim or Interest of such Class has accepted the Plan or will receive or retain under the Plan on account of such Claim or Interest property of a value, as of the Effective Date of the Plan, that is not less than the amount that such holder would so receive or retain if the Debtors were liquidated under chapter 7 of the Bankruptcy Code on such date; or

(b)    if section 1111(b)(2) of the Bankruptcy Code applies to the Claims of such Class, the holder of a Claim of such Class will receive or retain under the Plan on account of

70

such Claim property of a value, as of the Effective Date of the Plan, that is not less than the value of such holder's Interest in the Estate's Interest in the property that secures such Claim.

8.    With respect to each Class of Claims or Interests:

(a)    such Class has accepted the Plan; or

(b)    such Class is not Impaired under the Plan.

9.    Except to the extent that the holder of a particular Claim has agreed to a different treatment of such Claim, the Plan provides that:

(a)    with respect to a Claim of a kind specified in section 507(a)(2) or 507(a)(3) of the Bankruptcy Code, on the Effective Date of the Plan, the holder of such Claim will receive on account of such Claim cash equal to the Allowed amount of such Claim;

(b)    with respect to a Class of Claims of a kind specified in section 507(a)(1), 507(a)(4), 507(a)(5), 507(a)(6) or 507(a)(7) of the Bankruptcy Code, each holder of a Claim of such Class will receive:

(i)    if such Class has accepted the Plan, deferred cash payments of a value, as of the Effective Date of the Plan, equal to the Allowed amount of such Claim; or

(ii)    if such Class has not accepted the Plan, Cash on the Effective Date of the Plan equal to the Allowed amount of such Claim; and

(c)    with respect to a Claim of a kind specified in section 507(a)(8) of the Bankruptcy Code, the holder of such Claim will receive on account of such Claim regular installment payments in Cash:

(i)    of a total value, as of the Effective Date of the Plan, equal to the Allowed amount of such Claim;

(ii)    over a period ending not later than 5 years after the date of the order for relief under section 301, 302, or 303; and

(iii)    in a manner not less favorable than the most favored nonpriority unsecured claim provided for by the Plan (other than Cash payments made to a Class of Creditors under section 1122(b) of the Bankruptcy Code); and

(d)    with respect to a Secured Claim which would otherwise meet the description of an unsecured Claim of a Governmental Unit under section 507(a)(8) of the Bankruptcy Code, but for the secured status of that Claim, the holder of that Claim will receive on account of that Claim, Cash payments, in the same manner and over the same period, as prescribed in 9(c) above.

10.    If a Class of Claims is Impaired under the Plan, at least one Class of Claims that is Impaired has accepted the Plan, determined without including any acceptance of the Plan by any Insider holding a Claim of such Class.

11.    Confirmation of the Plan is not likely to be followed by the liquidation, or the need

for further financial reorganization, of the Debtors or any successor to the Debtors under the Plan, unless such liquidation or reorganization is proposed in the Plan.

12. All fees payable under 28 U.S.C. section 1930, as determined by the Bankruptcy Court at the hearing on confirmation of the Plan, have been paid or the Plan provides for the payments of all such fees on the Effective Date of the Plan.

13. The Plan provides for the continuation after its Effective Date of payment of all retiree benefits, as that term is defined in section 1114 of the Bankruptcy Code, at the level established pursuant to subsection (e)(1)(B) or (g) of section 1114, at any time prior to confirmation of the Plan, for the duration of the period the Debtors have obligated themselves to provide such benefits.

14. If the Debtors are required by a judicial or administrative order, or by statute, to pay a domestic support obligation, the Debtors have paid all amounts payable under such order or such statute for such obligation that first become payable after the date of the filing of the petition.

15. In a case in which a Debtors is an individual and in which the holder of an Allowed unsecured Claim objects to the confirmation of the Plan:

(a) the value, as of the Effective Date of the Plan, of the property to be distributed under the Plan on account of such Claim is not less than the amount of such Claim; or

(b) the value of the property to be distributed under the Plan is not less than the projected disposable income of such Debtor (as defined in section 1325(b)(2) of the Bankruptcy Code) to be received during the five-year period beginning on the date that the first payment is due under the Plan, or during the period for which the Plan provides payments, whichever is longer.

16. All transfers of property under the Plan shall be made in accordance with any applicable provisions of nonbankruptcy law that govern the transfer of property by a corporation or trust that is not a moneyed, business, or commercial corporation or trust.

The Chapter 11 Trustee believes that the Plan satisfies all the statutory requirements of chapter 11 of the Bankruptcy Code, that the Chapter 11 Trustee has complied or will have complied with all the requirements of chapter 11, and that the Plan is proposed in good faith.

The Chapter 11 Trustee believes that holders of all Allowed Claims and Interests Impaired under the Plan will receive payments under the Plan having a present value, as of the Effective Date, not less than the amounts likely to be received if the Debtors were liquidated in a case under chapter 7 of the Bankruptcy Code. At the Confirmation Hearing, the Bankruptcy Court will determine whether holders of Allowed Claims or Allowed Interests would receive greater Distributions under the Plan than they would receive in a liquidation under chapter 7.

These facts and others demonstrating the confirmability of the Plan will be shown at the Confirmation Hearing.

D.     **Cramdown**

In the event that any Impaired Class of Claims or Interests does not accept the Plan, the Bankruptcy Court may still confirm the Plan at the request of the Plan proponent if, as to each impaired Class which has not accepted the Plan, the Bankruptcy Court determines that the Plan "does not discriminate unfairly" and is "fair and equitable" with respect to that Class. A plan of reorganization "does not discriminate unfairly" within the meaning of the Bankruptcy Code if no class receives more than it is legally entitled to receive for their claims or interests.

"Fair and equitable" has different meanings with respect to the treatment of secured and unsecured claims. As set forth in section 1129(b)(2) of the Bankruptcy Code, those meanings are as follows:

1.      With respect to a class of secured claims, the plan provides:

   (a)     (i)     that the holders of such claims retain the liens securing such claims, whether the property subject to such liens is retained by the debtor or transferred to another entity, to the extent of the allowed amount of such claims; and

     (ii)     that each holder of a claim of such class receive on account of such claim deferred cash payments totaling at least the allowed amount of such claim, of a value, as of the effective date of the plan, of at least the value of such holder's interest in the estate's interest in such property;

   (b)     for the sale, subject to section 363(k) of the Bankruptcy Code, of any property that is subject to the liens securing such claims, free and clear of such liens, with such liens to attach to the proceeds of such sale, and the treatment of such liens on proceeds under clause (a) and (b) of this subparagraph; or

   (c)     the realization by such holders of the "indubitable equivalent" of such claims.

2.      With respect to a class of unsecured claims, the plan provides:

   (a)     that each holder of a claim of such class receive or retain on account of such claim property of a value, as of the effective date of the plan, equal to the allowed amount of such claim; or

   (b)     the holder of any claim or interest that is junior to the claims of such class will not receive or retain under the plan on account of such junior claim or interest any property, except that in a case in which the debtor is an individual, the debtor may retain property included in the estate under section 1115 of the Bankruptcy Code, subject to the requirements of section 1129(a)(14) of the Bankruptcy Code.

3.      With respect to a class of interests, the plan provides:

   (a)     that each holder of an interest of such class receive or retain on account of such interest property of a value, as of the effective date of the plan, equal to the greatest of the allowed amount of any fixed liquidation preference to which such holder is entitled, any fixed redemption price to which such holder is entitled or the value of such interest; or

   (b)     that the holder of any interest that is junior to the interests of such class will not receive or retain under the plan on account of such junior interest any property.

In the event that one or more Classes of impaired Claims or Interests reject the Plan, the Bankruptcy Court will determine at the Confirmation Hearing whether the Plan is fair and equitable with respect to, and does not discriminate unfairly against, any rejecting impaired Class of Claims or Interests. For the reasons set forth above, the Chapter 11 Trustee believes the Plan does not discriminate unfairly against, and is fair and equitable with respect to, each impaired Class of Claims or Interests.

## X. RISK FACTORS

The following is intended as a summary of certain risks associated with the Plan, but it is not exhaustive and must be supplemented by the analysis and evaluation made by each holder of a Claim or Interest of the Plan and this Disclosure Statement as a whole with such holder's own advisors.

### A.    Insufficient Acceptances

For the Plan to be confirmed (under the terms and provisions of either Plan A, Plan B, or Plan C), each impaired Class of Claims is given the opportunity to vote to accept or reject the Plan separately as to each alternative (Plan A, Plan B, or Plan C) under the Plan. With regard to such Impaired voting Classes, the Plan will be deemed accepted by a Class of Impaired Claims if the Plan is accepted by Claimants of such Class actually voting on the Plan who hold at least two-thirds (2/3) in amount and more than one-half (1/2) in number of the total Allowed Claims of the Class voted. Only those members of a Class who vote to accept or reject the Plan will be counted for voting purposes. The Plan proponent reserves the right to request confirmation pursuant to the cramdown provisions in section 1129(b) of the Bankruptcy Code, which will allow confirmation of the Plan regardless of the fact that a particular Class of Claims has not accepted the Plan. However, there can be no assurance that any Impaired Class of Claims under the Plan will accept the Plan or that the Plan proponent would be able to use the cramdown provisions of the Bankruptcy Code for confirmation of the Plan.

### B.    Confirmation Risks

The following specific risks exist with respect to confirmation of the Plan:

(a)    Any objection to confirmation of the Plan can either prevent confirmation of the Plan, or delay such confirmation for a significant period of time.

(b)    Since the Plan proponent may be seeking to obtain approval of the Plan over the rejection of one or more Impaired Classes of Claims, the cramdown process could delay confirmation.

### C.    Conditions Precedent

The closing of the Plan A Transaction (if the Plan is confirmed based on the terms and provisions of Plan A), confirmation of the Plan, and occurrence of the Effective Date are subject to certain conditions precedent that may not occur.

### D.    Estimated Distributions under the Plan

In preparing the liquidation analysis under the Plan attached hereto as **Exhibit "5"**, the Estate's financial advisors have made certain estimates regarding projected cash on hand at

confirmation.  The accuracy of such estimates cannot be guaranteed.  Furthermore, the accuracy of the analysis is dependent upon several variables, including (i) the aggregate amount of Allowed Claims, (ii) the amount, if any, for which certain Administrative Expense Claims are Allowed, (iii) the collectability of the Estate Accounts Receivable, and (iv) the amount of the expenses and fees of Estate Professionals.

**E.      Plan A – Exhaustion of Cash to Fund Acis Trust Activities**

Under Plan A, the Acis Trustee (unless otherwise expressly stated in the Plan) shall be responsible for making Distributions to holders of Allowed Claims required by the Plan, which Distributions shall be made from the assets of the Acis Trust.  The business of the Acis Trust will include prosecution of Estate Claims.  The Chapter 11 Trustee expects the expenses associated with such litigation to be substantial.  Consequently, there exists the risk that the Acis Trust may ultimately exhaust all cash available to it prior to conclusion of such litigation and/or prior to obtaining recoveries on any judgments awarded in favor of the Acis Trust in connection with such litigation.

**F.      Plan B and Plan C – Operational Risks**

Under Plan B or Plan C, the Reorganized Debtor will continue the business of the Debtors and will have the obligation to make certain Distributions to holders of Allowed Claims as specifically set forth in the Plan.  No guarantees can be made with respect to the success or outcome of the Reorganized Debtor's operations from and after the Effective Date and, in turn, the Reorganized Debtor's ability to fulfill all of its obligations under the Plan.  For example, if the Reorganized Debtor is removed as the portfolio manager with respect to the Acis CLOs (or any reset CLOs) for cause after the Effective Date, the Reorganized Debtor may thereby lose the source of income necessary to fulfill its obligations under the Plan.

## XI.  ALTERNATIVES TO CONFIRMATION AND CONSUMMATION OF THE PLAN

**A.      Continuation of the Chapter 11 Cases**

The Chapter 11 Trustee believes that the Plan provides the Claimants with the greatest and earliest possible return that can be realized on their respective Claims.  The Plan is proposed as an alternative to a chapter 7 liquidation.  If the Plan is not confirmed, the Chapter 11 Trustee may continue to operate the Debtors' businesses and the Estate may continue to be administered through the Chapter 11 Cases.  The Chapter 11 Trustee believes that confirmation and performance of the Plan is a superior alternative to continuing to operate the Debtors' businesses for an undetermined length of time during the Chapter 11 Cases, as continuation of the Chapter 11 Cases could prove lengthy and result in substantial additional costs of administration of the Estate.

**B.      Alternative Plan of Reorganization**

Other parties-in-interest are free to file an alternative plan of reorganization at any time. At this time, the Plan is the only plan that has been proposed and filed in the Chapter 11 Cases. If the Plan is not confirmed, an alternative plan filed by another party-in-interest, or an amended Plan filed by the Chapter 11 Trustee, might ultimately be confirmed by the Bankruptcy Court.

**C.      Chapter 7 Liquidation**

If the Plan is not confirmed, the Chapter 11 Cases may potentially be converted to cases under chapter 7 of the Bankruptcy Code at a later date if such a request is made and granted by the Bankruptcy Court.  The Chapter 11 Trustee believes that liquidation of the Estate under chapter 7 would diminish the value to be realized by holders of Allowed Claims because of additional administrative expenses involved in the appointment of a chapter 7 trustee or trustees, attorneys, accountants, and other professionals to assist such trustee(s) in the case of chapter 7 proceedings.  The Chapter 11 Trustee believes that liquidation under chapter 7 could result in delay of distributions to holders of Allowed Claims as compared to the liquidation of the Estate proposed under the terms and provisions of Plan A of the Plan.  Furthermore, the Chapter 11 Trustee believes that holders of Allowed Claims against the Debtors stand to receiver superior recoveries under the Plan (whether through liquidation of the Estate by the Acis Trust if the Plan is confirmed based on the terms and provisions of Plan A of the Plan, or through continuation of the Debtors' businesses by the Reorganized Debtor and the activities of the Acis Trust if the Plan is confirmed based on the terms and provisions of either Plan B or Plan C of the Plan) than they would likely receive if the Estate is liquidated under chapter 7 of the Bankruptcy Code.

## XII.  <u>CONCLUSION</u>

The Chapter 11 Trustee urges holders of Claims in impaired Classes to vote to **ACCEPT** the Plan under each of the Plan A, Plan B and Plan C alternatives and to evidence such acceptance by returning their Ballots so that they will be received on or before **5:00 p.m., Central Time, on August      , 2018**.

*[The remainder of this page has been left intentionally blank.]*

Dated: July 13, 2018.

Respectfully submitted,

ACIS CAPITAL MANAGEMENT, L.P.


By: */s/ Robin Phelan*
    Robin Phelan
    Chapter 11 Trustee


ACIS CAPITAL MANAGMENET GP, LLC


By: */s/ Robin Phelan*
    Robin Phelan
    Chapter 11 Trustee


APPROVED:

*/s/ Jeff P. Prostok*
Jeff P. Prostok – State Bar No. 16352500
J. Robert Forshey – State Bar No. 07264200
Suzanne K. Rosen – State Bar No. 00798518
Matthew G. Maben – State Bar No. 24037008
**FORSHEY & PROSTOK LLP**
777 Main St., Suite 1290
Ft. Worth, TX 76102
Telephone: (817) 877-8855
Facsimile: (817) 877-4151
jprostok@forsheyprostok.com
bforshey@forsheyprostok.com
srosen@forsheyprostok.com
mmaben@forsheyprostok.com

**COUNSEL FOR ROBIN PHELAN,
CHAPTER 11 TRUSTEE**

APPROVED:

*/s/ Rahkee V. Patel*
Rakhee V. Patel – State Bar No. 00797213
Phillip Lamberson – State Bar No. 00794134
Joe Wielebinski – State Bar No. 21432400
Annmarie Chiarello – State Bar No. 24097496
**WINSTEAD PC**
500 Winstead Building
2728 N. Harwood Street
Dallas, Texas 75201
Telephone: (214) 745-5400
Facsimile: (214) 745-5390
rpatel@winstead.com
plamberson@winstead.com
jwielebinski@winstead.com
achiarello@winstead.com

**SPECIAL COUNSEL FOR ROBIN PHELAN,
CHAPTER 11 TRUSTEE**


L:\JPROSTOK\ACIS Capital Management (Trustee Rep)\Plan and Disclosure Statement\Disclosure Statement re Joint Plan 07.13.18 v.2.docx

# EXHIBIT "1"

# TO DISCLOSURE STATEMENT

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE NORTHERN DISTRICT OF TEXAS
## DALLAS DIVISION

| | | |
|---|---|---|
| IN RE: | § | Case No. 18-30264-SGJ-11 |
| | § | Case No. 18-30265-SGJ-11 |
| ACIS CAPITAL MANAGEMENT, L.P., | § | |
| ACIS CAPITAL MANAGEMENT GP, LLC, | § | **(Jointly Administered Under Case** |
| | § | **No. 18-30264-SGJ-11)** |
| DEBTORS. | § | |
| | § | **Chapter 11** |

## JOINT PLAN FOR ACIS CAPITAL MANAGEMENT, L.P. AND
## ACIS CAPITAL MANAGEMENT GP, LLC

Jeff P. Prostok – State Bar No. 16352500
J. Robert Forshey – State Bar No. 07264200
Suzanne K. Rosen – State Bar No. 00798518
Matthew G. Maben – State Bar No. 24037008
**FORSHEY & PROSTOK LLP**
777 Main St., Suite 1290
Ft. Worth, TX 76102
Telephone: (817) 877-8855
Facsimile: (817) 877-4151
jprostok@forsheyprostok.com
bforshey@forsheyprostok.com
srosen@forsheyprostok.com
mmaben@forsheyprostok.com

**COUNSEL FOR ROBIN PHELAN,
CHAPTER 11 TRUSTEE**

Rakhee V. Patel – State Bar No. 00797213
Phillip Lamberson – State Bar No. 00794134
Joe Wielebinski – State Bar No. 21432400
Annmarie Chiarello – State Bar No. 24097496
**WINSTEAD PC**
500 Winstead Building
2728 N. Harwood Street
Dallas, Texas 75201
Telephone: (214) 745-5400
Facsimile: (214) 745-5390
rpatel@winstead.com
plamberson@winstead.com
jwielebinski@winstead.com
achiarello@winstead.com

**SPECIAL COUNSEL FOR ROBIN PHELAN,
CHAPTER 11 TRUSTEE**

DATED:    July 5, 2018
          Dallas, Texas

## ARTICLE I.
## DEFINITIONS

A.    Defined Terms. In addition to such other terms as are defined in other sections of the Plan, the following terms shall have the meanings set forth below (such meanings to be equally applicable to both the singular and plural, masculine and feminine forms of the terms defined).

1.01.    "Acis CLOs" refers collectively to CLO-1, CLO-3, CLO-4, CLO-5, and CLO-6.

1.02.    "Acis GP" means Acis Capital Management, GP, LLC, one of the Debtors in the above-referenced Chapter 11 Cases.

1.03.    "Acis LP" means Acis Capital Management, LP, one of the Debtors in the above-referenced Chapter 11 Cases.

1.04.    "Acis Trust" means the trust established pursuant to the Acis Post-Confirmation Trust Agreement for the purpose of liquidating and distributing the Acis Trust Assets to the Beneficiaries.

1.05.    "Acis Trust Agreement" means (a) that certain Acis Post-Confirmation Trust Agreement substantially in the form of the attached **Exhibit B**, establishing the Acis Trust and providing for liquidation and distribution of the Acis Trust Assets if the Plan is confirmed based on the terms and provisions of Plan A set forth in Article II of the Plan, or (b) that certain Acis Post-Confirmation Trust Agreement substantially in the form of the attached **Exhibit C**, establishing the Acis Trust and providing for liquidation and distribution of the Acis Trust Assets if the Plan is confirmed based on the terms and provisions of (i) Plan B set forth in Article III of the Plan, or (iii) Plan C set forth in Article IV of the Plan.

1.06.    "Acis Trust Assets" means all Assets transferred to the Acis Trust under Plan A, Plan B, or Plan C.

1.07.    "Acis Trustee" means a trustee as may be approved by the Bankruptcy Court to serve as the trustee under the Acis Trust Agreement.

1.08.    "Administrative Bar Date" means the deadline to file Claims for Allowance as an Administrative Expense set forth in section 2.05(c), 3.05(c), or 4.05(c), as applicable, of the Plan.

1.09.    "Administrative Expense" means any cost or expense of administration of the Chapter 11 Cases allowed under subsections 503(b) and 507(a)(1) of the Bankruptcy Code, including, without limitation, any actual and necessary expenses of preserving the Estate of the Debtors, any actual and necessary expenses of operating the business of the Debtors, all compensation or reimbursement of expenses to the extent allowed by the Bankruptcy Court under section 330 or 503 of the Bankruptcy Code, and any fees or charges assessed against the estates of the Debtors under section 1930, chapter 123 of title 28 of the United States Code.

1.10.    "Affiliate" has the meaning ascribed to such term in section 101(2) of the Bankruptcy Code.

     1.11.   "ALF PMA" means that certain Portfolio Management Agreement by and between Acis LP and Acis Loan Funding, Ltd. dated December 22, 2016.

     1.12.   "Allowed," when used with respect to a Claim (other than an Administrative Expense), means a Claim (a) to the extent it is not Contested; or (b) a Contested Claim, proof of which was filed timely with the Bankruptcy Court, and (i) as to which no Objection was filed by the Objection Deadline, or (ii) as to which an Objection was filed by the Objection Deadline, to the extent, if any, such Claim is ultimately allowed by a Final Order; *provided, however,* if a Claim is to be determined in a forum other than the Bankruptcy Court, such Claim shall not become Allowed until determined by Final Order of such other forum and allowed by Final Order of the Bankruptcy Court. "Allowed," when used with respect to an Administrative Expense, shall mean an Administrative Expense approved by application to the Bankruptcy Court.

     1.13.   "Assets" includes all right, title, and interest in and to all property of every type or nature owned or claimed by the Debtors as of the Petition Date, together with all such property of every type or nature subsequently acquired by the Debtors through the Effective Date, whether real or personal, tangible or intangible, and wherever located, and including, but not limited to, property as defined in section 541 of the Bankruptcy Code.

     1.14.   "ATA" means an asset transfer agreement between the Debtors and the Transferee providing for the transfer of the Transferred Assets under Plan A, a copy of which is attached hereto as **Exhibit A**.

     1.15.   "Available Cash" means (a) when used in relation to the Acis Trust, any Cash over and above the amount needed for all current or anticipated Trust Expenses as determined in the sole discretion of the Acis Trustee, including fees and expenses by the Acis Trustee and Trust Professionals, any Reserves deemed necessary by the Acis Trustee to pursue Estate Claims or assert Estate Defenses, and all other costs deemed necessary to administer the Acis Trust, (b) when used in relation to the Reorganized Debtor, any Cash over and above the amount needed for the Reorganized Debtor to maintain business operations, as determined in the sole discretion of the Reorganized Debtor.

     1.16.   "Avoidance Action" means a cause of action assertable by the Debtors pursuant to Chapter 5 of the Bankruptcy Code, including without limitation, actions brought or which may be brought under sections 542, 543, 544, 545, 547, 548, 549, 550, or 553 of the Bankruptcy Code. Such causes of action may be asserted to recover, among other things, the transfers listed in the Debtors' respective Schedules, including in response to Question 3 of the statements of financial affairs.

     1.17.   "Ballot" means the form of ballot provided to holders of Claims or Interests entitled to vote pursuant to Bankruptcy Rule 3017(d), by which each such holder may accept or reject the Plan.

     1.18.   "Bankruptcy Code" means the Bankruptcy Reform Act of 1978, as amended and codified at Title 11 of the United States Code.

     1.19.   "Bankruptcy Court" means the United States Bankruptcy Court for the Northern District of Texas, Dallas Division, or such other court having jurisdiction over all or any part of the Chapter 11 Cases.

1.20.    "Bankruptcy Rules" means the Federal Rules of Bankruptcy Procedure, as amended from time to time, as applicable to the Chapter 11 Cases, including applicable local rules of the Bankruptcy Court.

1.21.    "Beneficiary" means any Person that is a holder of an Allowed Claim entitled to receive Distributions from the Acis Trust pursuant to the Plan.

1.22.    "Business Day" means any day other than Saturday, Sunday, a legal holiday, or a day on which national banking institutions in Texas are authorized or obligated by law or executive order to close.

1.23.    "Cash" means legal tender of the United States of America, cash equivalents and other readily marketable securities or instruments, including, but not limited to, readily marketable direct obligations of the United States of America, certificates of deposit issued by banks or commercial paper.

1.24.    "Cash Proceeds" means the total Cash that the Debtors will receive from transfer of the Transferred Assets to the Transferee pursuant to the ATA pursuant to Plan A.

1.25.    "Chapter 11 Cases" refers collectively to the Acis LP bankruptcy case, Case No. 18-30264-sgj11, and the Acis GP bankruptcy case, Case No. 18-30265-sgj11, which are being jointly administered under Case No. 18-30264-sgj11.

1.26.    "Chapter 11 Trustee" refers to Robin Phelan, the chapter 11 trustee for the Debtors.

1.27.    "Claim" means (a) a right to payment, whether or not such right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured (including potential and unmatured tort and contract claims), disputed, undisputed, legal, equitable, secured or unsecured, or (b) a right to an equitable remedy for breach of performance if such breach gives rise to a right of payment, whether or not such right to an equitable remedy is reduced to judgment, fixed, contingent, matured, unmatured (including potential and unmatured tort and contract claims), disputed, undisputed, secured or unsecured.

1.28.    "Claimant" means the holder of a Claim.

1.29.    "Class" means a class of Claims or Interests as described in the Plan.

1.30.    "CLO" means collateralized loan obligations.

1.31.    "CLO-1" means Acis CLO 2013-1 LTD.

1.32.    "CLO-1 Indenture" means that certain Indenture, dated as of March 18, 2013, issued by CLO-1, as issuer, Acis CLO 2013-1 LLC, as co-Issuer and US Bank, as Indenture Trustee.

1.33.    "CLO-1 PMA" means that certain Portfolio Management Agreement by and between Acis LP and CLO-1, dated March 18, 2013.

1.34.    "CLO-3" means Acis CLO 2014-3 LTD.

1.35.   "CLO-3 Indenture" means that certain Indenture, dated as of February 25, 2014, issued by CLO-3, as issuer, Acis CLO 2014-3 LLC, as co-Issuer and US Bank, as Indenture Trustee

1.36.   "CLO-3 PMA" means that certain Portfolio Management Agreement by and between Acis LP and CLO-3, dated February 25, 2014.

1.37.   "CLO-4" means Acis CLO 2014-4 LTD.

1.38.   "CLO-4 Indenture" means that certain Indenture, dated as of June 5, 2014, issued by CLO-4, as issuer, Acis CLO 2014-4 LLC, as co-Issuer and US Bank, as Indenture Trustee.

1.39.   "CLO-4 PMA" means that certain Portfolio Management Agreement by and between Acis LP and CLO-4, dated June 5, 2014.

1.40.   "CLO-5" means Acis CLO 2014-5 LTD.

1.41.   "CLO-5 Indenture" means that certain Indenture, dated as of November 18, 2014, issued by CLO-5, as issuer, Acis CLO 2014-5 LLC, as co-Issuer and US Bank, as Indenture Trustee.

1.42.   "CLO-5 PMA" means that certain Portfolio Management Agreement by and between Acis LP and CLO-5, dated November 18, 2014.

1.43.   "CLO-6" means Acis CLO 2015-6 LTD.

1.44.   "CLO-6 Indenture" means that certain Indenture, dated as of April 16, 2015, issued by CLO-6, as issuer, Acis CLO 2015-6 LLC, as co-Issuer and US Bank, as Indenture Trustee.

1.45.   "CLO-6 PMA" means that certain Portfolio Management Agreement by and between Acis LP and CLO-6, dated April 16, 2015.

1.46.   "Closing Date" means the date specified in the ATA for the closing of the transaction between the Debtors and the Transferee.

1.47.   "Collateral" means any Asset subject to a valid and enforceable Lien to secure payment of a Claim.

1.48.   "Confirmation Date" means the date of entry of the Confirmation Order.

1.49.   "Confirmation Hearing" means the hearing conducted by the Bankruptcy Court pursuant to section 1128 of the Bankruptcy Code and Bankruptcy Rule 3020(b) to consider confirmation of the Plan, as such hearing may be continued from time to time.

1.50.   "Confirmation Order" means the order of the Bankruptcy Court confirming the Plan in accordance with the provisions of Chapter 11 of the Bankruptcy Code.

1.51.   "Contested," when used with respect to a Claim, means a Claim against the Debtors that is listed in the Debtors' Schedules as disputed, contingent, or unliquidated; that is

listed in the Debtors' Schedules as undisputed, liquidated, and not contingent and as to which a proof of Claim has been filed with the Bankruptcy Court, to the extent the proof of Claim amount exceeds the scheduled amount; that is not listed in the Debtors' Schedules, but as to which a proof of Claim has been filed with the Bankruptcy Court; or as to which an objection has been or may be timely filed and has not been denied by Final Order. To the extent an objection relates to the allowance of only a part of a Claim, such Claim shall be a Contested Claim only to the extent of the objection.

1.52.    "Creditor" means a "creditor," as defined in section 101(10) of the Bankruptcy Code.

1.53.    "Cure Claim" means the payment or other performance required to cure any existing default under an Executory Contract or Unexpired Lease.

1.54.    "Debtors" means, collectively, Acis GP and Acis LP, the debtors in the above-captioned Chapter 11 Cases.

1.55.    "Disallowed," when used with respect to all or any part of a Claim or Interest, means that portion of a Claim or Interest to which an objection or motion to disallow has been sustained by a Final Order.

1.56.    "Disclosure Statement" means the Disclosure Statement filed with respect to the Plan, as it may be amended, modified, or supplemented from time to time.

1.57.    "Distribution" means any payment or other disbursement of property pursuant to the Plan.

1.58.    "Effective Date" means the first Business Day which is fourteen (14) days after the Confirmation Date if Confirmation Order is not stayed or, if the Confirmation Order is stayed, the first Business Day following the lifting, dissolution, or removal of such stay which is at least fourteen (14) Business Days after the Confirmation Date, and upon which all conditions to the effectiveness of the Plan set forth in Article X below are satisfied.

1.59.    "Estate" shall collectively refer to the bankruptcy estates of the Debtors in the Chapter 11 Cases.

1.60.    "Estate Accounts Receivable" shall include all accounts receivable of the Estate, including from all sums payable to the Debtors on account of goods or services provided by the Debtors.

1.61.    "Estate Claims" shall include all claims and causes of action held by the Debtors' Estate, including without limitation all Avoidance Actions, but shall not include any Estate Claims pertaining to the Transferred Assets being transferred to the Transferee pursuant to the ATA.

1.62.    "Estate Contract" shall include all contracts or agreements to which the Estate is a party or beneficiary, excluding any contracts or agreements being transferred to the Transferee.

1.63.    "Estate Defenses" means all defenses, affirmative defenses, counterclaims, or offsets by the Debtors' Estate against any Person, including but not limited to any Creditor.

1.64.   "Estate Insurance" means any insurance policy or interest in an insurance policy in which the Estate has an interest or rights.

1.65.   "Estate Professionals" means those Persons employed pursuant to an order of the Bankruptcy Court in accordance with sections 327, 328, and 1103 of the Bankruptcy Code or who are entitled to compensation or reimbursement pursuant to sections 503(b)(3)(D) or 506(b) of the Bankruptcy Code.

1.66.   "Executory Contract" means any executory contract which is subject to section 365 of the Bankruptcy Code and which is not an Unexpired Lease.

1.67.   "Final Order" means an order or judgment of the Bankruptcy Court or any other court or adjudicative body, as to which the time to appeal or seek rehearing or petition for certiorari shall have expired or which order or judgment shall no longer be subject to appeal, rehearing, or certiorari proceeding and with respect to which no appeal, motion for rehearing, or certiorari proceeding or stay shall then be pending.

1.68.   "General Unsecured Claim" means any Claim against the Debtors that is not an Administrative Expense, Priority Tax Claim, Priority Non-Tax Claim, Secured Tax Claim, or Secured Claim, but includes any Rejection Claims pursuant to section 502(g) of the Bankruptcy Code.

1.69.   "Governmental Unit" means a "governmental unit" as such term is defined in section 101(27) of the Bankruptcy Code.

1.70.   "HCLOF" means Highland CLO Funding, Ltd.

1.71.   "HCLOF Claim" means all Claims asserted by HCLOF against the Debtors, including any claim relating to the Subordinated Notes.

1.72.   "Highland" means Highland Capital Management, L.P.

1.73.   "Highland Claim" means all Claims asserted by Highland or any Affiliates of Highland, other than HCLOF, against the Debtors, including any Claim resulting from the termination of the Sub-Advisory Agreement and Shared Services Agreement.

1.74.   "Highland HCF" means Highland HCF Advisors, Ltd.

1.75.   "Impaired" means, when used with reference to a Claim or Interest, a Claim or Interest that is impaired within the meaning of section 1124 of the Bankruptcy Code.

1.76.   "Indentures" refers collectively to the CLO-1 Indenture, the CLO-3 Indenture, the CLO-4 Indenture, the CLO-5 Indenture, and the CLO-6 Indenture.

1.77.   "Indenture Trustee" refers to US Bank.

1.78.   "Initial Distribution Date," when used with respect to any Contested Claim or Rejection Claim, shall mean the later of (i) the first Business Day at least thirty (30) days after the date on which any such Contested Claim or Rejection Claim becomes an Allowed Claim, or (ii) if the payment terms of Articles II, III, or IV of this Plan applicable to each such Claim specify a different date, then the date as calculated pursuant to the terms of Articles II, III, or IV of this

Plan applicable to each such Claim.  The Initial Distribution Date shall be separately determined with respect to each Contested Claim or Rejection Claim based upon the date each such Claim becomes an Allowed Claim.

1.79.    "Insider" means a Person described in section 101(31) of the Bankruptcy Code.

1.80.    "Insider Claims" means any claims asserted by Insiders of the Debtors, including but not limited to any claims asserted by Highland or any Affiliate thereof.

1.81.    "Interests" means any equity or stock ownership interest in the Debtors.

1.82.    "Lien" means any mortgage, lien, charge, security interest, encumbrance, or other security device of any kind affecting any asset or property of the Debtors contemplated by section 101(37) of the Bankruptcy Code.

1.83.    "Net Acis Trust Assets" means the portion of the Acis Trust Assets available for distribution to holders of Allowed Claims, excluding any Reserves for Contested Claims, operating expenses of the Acis Trustee, or otherwise.

1.84.    "Net Cash Proceeds" means the Cash Proceeds from the transfer of the Transferred Assets less the amount paid to HCLOF in satisfaction of the HCLOF Claim pursuant to the provisions of Article II of the Plan.

1.85.    "Oaktree" means Oaktree Capital Management, L.P. or an Affiliate designated by Oaktree Capital Management, L.P. to be the Transferee of the Transferred Assets pursuant to the ATA.

1.86.    "Objection" means (a) an objection to the allowance of a Claim interposed by any party entitled to do so within the applicable period of limitation fixed by the Plan, the Bankruptcy Code, the Bankruptcy Rules, or the Bankruptcy Court, and (b) as to any Taxing Authority, a proceeding commenced under section 505 of the Bankruptcy Code to determine the legality or amount of any tax.

1.87.    "Objection Deadline" shall mean the later of (a) ninety (90) days following the Effective Date, unless otherwise extended by order of the Bankruptcy Court, or (b) as to any Rejection Claim filed after the Effective Date, ninety (90) days after the date on which the proof of Claim reflecting the Rejection Claim is filed.

1.88.    "Other Secured Claim" means any Secured Claim other than (a) a Secured Tax Claim, (b) a Secured Claim asserted by Terry, or (c) a Secured Claim asserted or held by HCLOF.

1.89.    "Person" means any individual, corporation, general partnership, limited partnership, association, joint stock company, joint venture, estate, trust, unincorporated organization, government, or any political subdivision thereof or other entity.

1.90.    "Petition Date" means January 30, 2018.

1.91.    "Plan" means this joint Chapter 11 plan, either in its present form or as it may be altered, amended, or modified from time to time.

1.92.   "Plan A" means Plan A described in Article II of the Plan.

1.93.   "Plan A Transaction" means the transaction between the Trustee and the Transferee reflected in the ATA.

1.94.   "Plan B" means Plan B described in Article III of the Plan.

1.95.   "Plan C" means Plan C described in Article IV of the Plan.

1.96.   "Plan Documents" means the documents that aid in effectuating the Plan as specifically identified as such herein and filed with the Bankruptcy Court.

1.97.   "Plan Rate" means a rate of interest of four percent (4%) per annum.

1.98.   "PMAs" refers collectively to the CLO-1 PMA, CLO-3 PMA, CLO-4 PMA, CLO-5 PMA, and CLO-6 PMA.

1.99.   "Transaction Amount" refers to the amounts provided by Oaktree for the Transferred Assets pursuant to the ATA under Plan A, which shall include:  (a) Cash equal to the mid-point between the bid and the ask price for the assets of the CLOs plus twenty-five percent (mid-NAV + 25%) to be paid to the holders of HCLOF claims, and (b) the sum of not less than Eight Million Six Hundred Thousand Dollars ($8,600,000.00) in exchange for an assignment of all of Acis LP's rights, title and interest in the PMAs, plus an amount of up to One Million Dollars ($1,000,000.00) attributable to any Allowed Highland Claim.

1.100.   "Priority Claim" means a Claim (other than a Claim for an Administrative Expense) to the extent that it is entitled to priority in payment under section 507(a) of the Bankruptcy Code.

1.101.   "Priority Non-Tax Claim" means a Priority Claim other than a Priority Tax Claim.

1.102.   "Priority Tax Claim" means a Claim of a governmental unit of the kind specified in subsection 507(a)(8) of the Bankruptcy Code.

1.103.   "Pro Rata Share" means, as to the holder of a specific Claim, the ratio that the amount of such holder's Claim bears to the aggregate amount of all Claims included in the particular Class or category in which such holder's Claim is included.

1.104.   "Rejected Leases and Contracts" means all Unexpired Leases and Executory Contracts of the Debtors that are not expressly assumed and assigned to the Transferee or otherwise assumed by the Debtors.

1.105.   "Rejection Claim" means a Claim arising under section 502(g) of the Bankruptcy Code as a consequence of the rejection of any Executory Contract or Unexpired Lease.

1.106.   "Remaining Assets" means, in the event that the Plan is confirmed based on the terms and provisions of Plan A of the Plan, any Assets not being transferred to the Transferee, which Assets will be transferred to the Acis Trust on the Effective Date.

1.107. "Reorganized Debtor" means the Debtors, as reorganized and substantively consolidated, acting from and after the Effective Date if the Plan is confirmed based on the terms and provisions of either Plan B or Plan C.

1.108. "Reserve" or "Reserves" means any reserves set aside by the Acis Trustee pursuant to this Plan or the Acis Trust Agreement, including reserves set aside for the payment of any Trust Expenses or funding any Distributions or payments pursuant to the Plan.

1.109. "Schedules" means the schedules of assets and liabilities and the statements of financial affairs filed by the Debtors as required by section 521 of the Bankruptcy Code and Bankruptcy Rule 1007, as such schedules or statements have been or may be subsequently amended.

1.110. "Secured Claim" means (a) a Claim secured by a lien on any Assets, which lien is valid, perfected, and enforceable under applicable law and is not subject to avoidance under the Bankruptcy Code or applicable nonbankruptcy law, and which is duly Allowed, but only to the extent of the value of the holder's interest in the Collateral that secures payment of the Claim; (b) a Claim against the Debtors that is subject to a valid right of recoupment or setoff under section 553 of the Bankruptcy Code, but only to the extent of the Allowed amount subject to recoupment or setoff as provided in section 506(a) of the Bankruptcy Code; and (c) a Claim deemed or treated under the Plan as a Secured Claim; provided, that, to the extent that the value of such interest is less than the amount of the Claim which has the benefit of such security, the unsecured portion of such Claim shall be treated as a General Unsecured Claim unless, in any such case the Class of which the Claim is a part makes a valid and timely election in accordance with section 1111(b) of the Bankruptcy Code to have such Claim treated as a Secured Claim to the extent Allowed.

1.111. "Secured Creditor" means the holder of a Secured Claim.

1.112. "Secured Tax Claim" means any ad valorem tax Claim that arises or is deemed to have arisen on or before the Petition Date, irrespective of the date on which such Claim is assessed or due.

1.113. "Shared Services Agreement" means that certain Fourth Amended and Restated Shared Services Agreement by and between Acis LP and Highland dated March 17, 2017.

1.114. "Sub-Advisory Agreement" means that certain Third Amended and Restated Sub-Advisory Agreement by and between Acis LP and Highland dated March 17, 2017

1.115. "Subordinated Notes" means the subordinated notes in the Transaction CLOs.

1.116. "Substantial Consummation" means the earlier of: (a) the closing of the Transaction pursuant to the ATA, or (b) the day on which a Creditor first receives a Distribution of any kind under the terms and provisions of the Plan.

1.117. "Taxing Authority" shall include the State of Texas or any subdivision thereof, including without limitation any political subdivision of the State of Texas assessing ad valorem taxes against any of the Assets.

1.118. "Terry" means Joshua N. Terry.

1.119. "Terry Secured Claim" means any claim asserted against the Debtors by Terry, including as asserted in Proof of Claim No. 1 in both Chapter 11 Cases.

1.120. "Transaction CLOs" means CLO-3, CLO-4, CLO-5 and CLO-6.

1.121. "Transferee" shall mean the recipient of the Transferred Assets pursuant to the ATA, which may be Oaktree or such other Transferee as may be approved by the Court.

1.122. "Transferred Assets" means all Assets that will be transferred to the Transferee pursuant to the ATA, including the Subordinated Notes and Acis LP's rights, title and interest in the PMAs, but *specifically excluding* all Estate Claims and Estate Accounts Receivable.

1.123. "Trust Expenses" means expenses incurred by the Acis Trustee in connection with the administration of the Acis Trust including without limitation the fees of the Acis Trustee, fees and expenses of Trust Professionals, and any cost or expenses which the Acis Trustee believes to be necessary or appropriate to the administration of the Acis Trust.

1.124. "Trust Professionals" includes all professionals retained by the Acis Trustee including, without limitation, legal counsel, accountants, and such other advisors or professionals as the Acis Trustee may wish to retain.

1.125. "Unclaimed Property" means any cash, Distribution, or any other property of the Debtors unclaimed for a period of one (1) year after the applicable Initial Distribution Date.

1.126. "Unexpired Lease" means any unexpired lease or agreement which is subject to section 365 of the Bankruptcy Code and which is not an Executory Contract.

1.127. "US Bank" means U.S. Bank National Association.

B.    Interpretation. Unless otherwise specified, all section, article and exhibit references in the Plan are to the respective section in, article of, or exhibit to, the Plan, as the same may be amended, waived, or modified from time to time. The headings in the Plan are for convenience and reference only and shall not limit or otherwise affect the provisions hereof. The rules of construction set forth in section 102 of the Bankruptcy Code, other than section 102(5) of the Bankruptcy Code, apply to construction of the Plan. For the purposes of construction of the Plan, "or" is disjunctive.

C.    Other Terms. The words "herein," "hereof," "hereto," "hereunder," and others of similar import refer to the Plan as a whole and not to any particular section, subsection, or clause contained in the Plan. References herein to "after notice and hearing" or other similar language shall have the same meaning as in section 102(1) of the Bankruptcy Code. Otherwise, a term used herein that is not specifically defined herein shall have the meaning ascribed to that term, if any, in the Bankruptcy Code.

D.    Exhibits and Plan Documents. All Exhibits to the Plan and all Plan Documents are incorporated into the Plan by this reference and are a part of the Plan as if set forth in full herein. Any Plan Documents may be filed with the Clerk of the Bankruptcy Court prior to the commencement of the Confirmation Hearing. Holders of Claims and Interests may obtain a copy of the Plan Documents, once filed, by a written request sent to the following address: Forshey & Prostok, LLP, 777 Main Street, Suite 1290, Fort Worth, Texas 76102, Attention: Linda Breedlove; Fax number (817) 877-4151; email: lbreedlove@forsheyprostok.com.

## ARTICLE II.
## PLAN A

2.01.    Plan A involves the transfer of the Transferred Assets to a Transferee pursuant to an ATA, including the assumption and assignment of the PMAs to the Transferee, and the transfer on the Effective Date of the Net Cash Proceeds and the Remaining Assets to the Acis Trust.  If the Plan, based on the terms and provisions of Plan A, is confirmed by the Bankruptcy Court, the provisions of Articles III and IV of this Plan shall be deemed void and of no force and effect.

### A.    PLAN A – CLASSIFICATION OF CLAIMS AND INTERESTS

2.02.    The following is a designation of the Classes of Claims and Interests under Plan A of the Plan.  Administrative Expenses, Priority Claims of the kinds specified in sections 507(a)(2) and 507(a)(3) of the Bankruptcy Code and Priority Tax Claims have not been classified, are excluded from the following Classes in accordance with section 1123(a)(1) of the Bankruptcy Code, and their treatment is set forth in Article II.B of the Plan.  A Claim shall be deemed classified in a particular Class only to the extent that the Claim qualifies within the description of that Class.  A Claim is included in a particular Class only to the extent that the Claim is an Allowed Claim in that Class.

> Class 1 – Secured Tax Claims
> Class 2 – HCLOF Claim
> Class 3 – Terry Secured Claim
> Class 4 – General Unsecured Claims
> Class 5 – Insider Claims
> Class 6 – Interests

2.03.    Impaired Classes of Claims and Interests under Plan A.  Class 1 is unimpaired. Classes 2 through 6 are Impaired.

2.04.    Impairment or Classification Controversies. If a controversy arises as to the classification of any Claim or Interest, or as to whether any Class of Claims or Interests is Impaired under the Plan, the Bankruptcy Court shall determine such controversy as a part of the confirmation process.

### B.    PLAN A – TREATMENT OF UNCLASSIFIED CLAIMS

2.05.    Administrative Expenses

(a)    The Acis Trustee shall pay, in accordance with the ordinary business terms applicable to each such expense or cost, the reasonable and ordinary expenses incurred in operating the Debtors' businesses or administering the Estate before the Effective Date ("Ordinary Course Claims").  The remaining provisions of this section 2.05 shall not apply to the Ordinary Course Claims, except that if there is a dispute relating to any such Ordinary Course Claim, the Acis Trustee may move the Bankruptcy Court to apply the provisions of Article VII below relating to Contested Claims and require the holder of the Contested Ordinary Course Claim to assert such Claim through the Chapter 11 Cases.

(b)    Each holder of an Allowed Administrative Expense (other than Ordinary Course Claims and Administrative Expense Claims by Estate Professionals), shall receive (i) the

amount of such holder's Allowed Administrative Expense in one Cash payment on the later of the Effective Date or the tenth (10th) Business Day after such Administrative Expense becomes an Allowed Administrative Expense, or (ii) such other treatment as may be agreed to in writing by such Administrative Expense Creditor and the Acis Trustee, or as otherwise ordered by the Bankruptcy Court.

(c)        Unless the Bankruptcy Court orders to the contrary or the Acis Trustee agrees to the contrary in writing, the holder of a Claim for an Administrative Expense, other than such a Claim by an Estate Professional, an Ordinary Course Claim, or an Administrative Expense which is already Allowed, shall file with the Bankruptcy Court and serve upon the Acis Trustee and its counsel a written notice of such Claim for an Administrative Expense within thirty (30) days after the Effective Date.  This deadline is the "Administrative Bar Date."  Such notice shall include at a minimum: (i) the name, address, telephone number and fax number (if applicable) or email address of the holder of such Claim, (ii) the amount of such Claim, and (iii) the basis of such Claim.  **Failure to timely and properly file and serve such notice by the Administrative Bar Date shall result in such Claim for an Administrative Expense being forever barred and discharged and the holder thereof shall be barred from receiving any Distribution through the Acis Trust on account of such Claim for an Administrative Expense.**

(d)        A Claim for an Administrative Expense, for which a proper notice was filed and served under subsection 2.05(c) above, shall become an Allowed Administrative Expense if no Objection is filed within thirty (30) days of the filing and service of such notice.  If a timely Objection is filed, the Claim shall become an Allowed Administrative Expense only to the extent allowed by a Final Order.

(e)        The procedures contained in subsections 2.05(a), (c) and (d) above shall not apply to Administrative Expense Claims asserted by Estate Professionals, who shall each file and submit an appropriate final fee application to the Bankruptcy Court no later than sixty (60) days after the Effective Date.  A Claim for an Administrative Expense by an Estate Professional in respect of which a final fee application has been properly filed and served shall become an Allowed Administrative Expense only to the extent allowed by Final Order and, if so Allowed, shall be paid in accordance with subsection 2.05(b) above.  Professional fees and expenses to any Estate Professional incurred on or after the Effective Date may be paid by the Acis Trustee without necessity of application to or order by the Bankruptcy Court.

(f)        If the Acis Trustee asserts any Estate Claims as counterclaims or defenses to a Claim for Administrative Expense, the Administrative Expense Claim shall be determined through an adversary proceeding before the Bankruptcy Court.  The Bankruptcy Court shall have exclusive jurisdiction to adjudicate and Allow all Claims for any Administrative Expense.

2.06.    Priority Tax Claims. Each holder of an Allowed Priority Tax Claim shall receive (a) one Cash payment in an amount equal to the principal amount of such Allowed Priority Tax Claim, plus interest at the rate and in the manner prescribed by applicable state law from the later of the Petition Date or the first day after the last day on which such Priority Tax Claim may be paid without penalty, no later than sixty (60) days after each such Claim becomes an Allowed Claim, or (b) such other treatment as may be agreed to in writing by the holder of the Priority Tax Claim and the Acis Trustee.

2.07.    U.S. Trustee's Fees. The Acis Trustee shall pay the U.S. Trustee's quarterly fees incurred pursuant to 28 U.S.C. § 1930(a)(6).  Any fees due as of the Confirmation Date shall be

paid in full on the Effective Date or as soon thereafter as is practicable. After the Confirmation Date, the Acis Trustee shall continue to pay quarterly fees as they accrue until a final decree is entered and the Chapter 11 Cases are closed. The Acis Trustee shall file with the Bankruptcy Court and serve on the U.S. Trustee quarterly financial reports for each quarter, or portion thereof, that the Chapter 11 Cases remain open.

**C.**   **PLAN A – TREATMENT OF CLASSIFIED CLAIMS AND INTERESTS**

2.08.   <u>Class 1 – Secured Tax Claims</u>. Each holder of an Allowed Secured Tax Claim shall receive (a) one Cash payment in an amount equal to the principal amount of such Allowed Secured Tax Claim, plus interest at the rate and in the manner prescribed by applicable state law from the later of the Petition Date or the first day after the last day on which such Secured Tax Claim may be paid without penalty, on the Initial Distribution Date, or (b) such other treatment as may be agreed to in writing by the holder of the Secured Tax Claim and the Acis Trustee. The Liens securing such Secured Tax Claims shall remain unimpaired and unaffected until each such Class 1 Claim is paid in full. Class 1 is unimpaired. Holders of Class 1 Claims are conclusively presumed to have accepted the Plan and, accordingly, are not entitled to vote on the Plan.

2.09.   <u>Class 2 – HCLOF Claim</u>. On the Effective Date, the holder of the Allowed HCLOF Claim shall receive a Cash payment equal to the mid-point of the bid and the ask or the assets of the Transaction CLOs on the Confirmation Date, plus 25 basis points (mid-NAV +25 bps). Class 2 is Impaired. The Holder of the Class 2 Claim is entitled to vote on the Plan.

2.10.   <u>Class 3 – Terry Secured Claim</u>. The Allowed Terry Secured Claim shall be treated as an unsecured claim and shall be paid in Cash, in full, plus interest at the rate and in the manner prescribed by applicable state law from the Petition Date, within sixty (60) days of the later of (a) the Initial Distribution Date, or (b) the date that the Terry Secured Claim becomes an Allowed Claim. Class 3 is Impaired. The Holder of the Class 3 Terry Secured Claim is entitled to vote on the Plan.

2.11.   <u>Class 4 – General Unsecured Claims</u>. Each holder of an Allowed General Unsecured Claim shall receive a Cash Payment equal to the Allowed amount of such holder's General Unsecured Claim within sixty (60) days of the later of (a) the Initial Distribution Date, or (b) the date on which such holder's Claim becomes an Allowed General Unsecured Claim. Class 4 is Impaired. Holders of Class 4 Claims are entitled to vote on the Plan.

2.12.   <u>Class 5 – Insider Claims</u>. Holders of Class 5 Insider Claims shall be treated as follows:

(a)   Class 5 shall consist of Insider Claims which constitute General Unsecured Claims and shall specifically include any General Unsecured Claim asserted by Highland and any Affiliate of Highland.

(b)   Class 5 Claims shall be divided into two (2) subclasses. Subclass 5A shall consist of all Allowed Class 5 claims which are not subject to equitable subordination. Subclass 5B shall consist of all Class 5 claims which are determined by the Bankruptcy Court to be subject to equitable subordination. If only a part of a Class 5 Claim is subject to equitable subordination, then the portion of such claim subject to equitable subordination shall be included in Subclass 5B and the remainder not subject to equitable subordination shall be included in Subclass 5A.

(c)   All Class 5 Claims (regardless of which subclass) shall be and remain subject to all Estate Defenses and all Estate Claims, both as offsets and for an affirmative recovery

against the Holder of any Class 5 Claim.

(d)      Unless otherwise provided by order of the Bankruptcy Court, holders of Allowed Subclass 5A Claims shall receive a Cash Payment equal to the Allowed amount of such holder's Subclass 5A Claim within sixty (60) days of the later of (a) the Initial Distribution Date, or (b) the date on which such holder's Claim becomes an Allowed Subclass 5A Claim.

(e)      Unless otherwise provided by Order of the Bankruptcy Court, holders of Subclass 5B claims shall not be entitled to any Distribution until all Allowed Claims included in Classes 1 through 4 and Subclass 5A have been paid in full.  After all Allowed Claims included in Classes 1 through 4 and Subclass 5A have been paid in full, holders of Allowed Subclass 5B Claims shall receive a Pro Rata Share of one or more Distributions from the Acis Trust, the amount and timing of which shall be determined by the Acis Trustee, but only after satisfaction of, or allocation of an appropriate Reserve for, Trust Expenses.  Allowed Subclass 5B Claims shall accrue interest from and after the Effective Date until paid in full at the Plan Rate.

(f)      The Acis Trustee may establish appropriate Reserves as to any Contested Claim included in Class 5.

2.13.   Class 6 – Interests.  All Interests in the Debtors shall be extinguished and shall cease to exist as of the Effective Date. The holders of such Interests shall not receive or retain any property on account of such Interests under the Plan.  Class 6 is Impaired.  Holders of Class 6 Interests are conclusively presumed to have rejected the Plan and, accordingly, are not entitled to vote on the Plan.

**D.      PLAN A – ACCEPTANCE OR REJECTION**

2.14.   Classes Entitled to Vote.  Creditors in Classes 2 through 5 are entitled to vote and shall vote separately to accept or reject the Plan.  Any unimpaired Class shall not be entitled to vote to accept or reject the Plan.  Any unimpaired Class is deemed to have accepted the Plan under section 1126(f) of the Bankruptcy Code.

2.15.   Class Acceptance Requirement. A Class of Claims shall have accepted the Plan if it is accepted by at least two-thirds (2/3) in amount and more than one-half (1/2) in number of the Allowed Claims in such Class that have voted on the Plan.

2.16.   Cramdown. This section shall constitute the request by the Plan proponents, pursuant to section 1129(b) of the Bankruptcy Code, that the Bankruptcy Court confirm the Plan notwithstanding the fact that the requirements of section 1129(a)(8) of the Bankruptcy Code have not been met.

**E.      PLAN A – MEANS FOR IMPLEMENTATION**

2.17.   Plan A Transaction – Sources of Funding for Plan Obligations.  To fund the Plan and provide the greatest return to Creditors, the Trustee has agreed to enter into the Plan A Transaction and to transfer the Transferred Assets to the Transferee on the Effective Date as follows:

(a)      The Transferee will deliver the Transaction Amount to the Chapter 11 Trustee;

      (b)     The Chapter 11 Trustee will pay the HCLOF Claim in full from the Cash Proceeds; and,

      (c)     The Subordinated Notes will be transferred or deemed transferred to the Chapter 11 Trustee who will, in turn, transfer and assign the Subordinated Notes and the assumed PMAs to the Transferee.

2.18.   <u>Transfer of the Transferred Assets</u>. The Transferred Assets shall be transferred to the Transferee on the Effective Date pursuant to the ATA, free and clear of all liens, claims, and encumbrances. The Chapter 11 Trustee shall obtain the Subordinated Notes either (a) through subrogation and the application of sections 105 and 1142 of the Bankruptcy Code based upon payment of the HCLOF Claim pursuant to the Plan, or (b) by obtaining control over management of the Subordinated Notes by virtue of avoiding the prepetition fraudulent transfer of Acis LP's rights under the ALF PMA.

2.19.   <u>Acis Trust</u>. The Acis Trust shall be created as of the Effective Date in accordance with the terms of this Plan and the Acis Trust Agreement. The Debtors and the Estate shall be the settlors of the Acis Trust.

2.20.   <u>Transfer of Assets to the Acis Trust</u>. On the Effective Date, the Net Cash Proceeds and all Remaining Assets shall be transferred to the Acis Trust, including without limitation, all Cash, Estate Accounts Receivable, Estate Claims, Estate Defenses, Estate Insurance, and Estate Contracts. After the Effective Date, the Acis Trustee may still abandon any Trust Assets which are burdensome or have no or inconsequential value to the Acis Trust. The Remaining Assets shall be transferred to, and vested in, the Acis Trust free and clear of all Liens, Claims, rights, Interests and charges, except as expressly provided in this Plan.

2.21.   <u>Assumption of Obligation to Make Distributions</u>. The Acis Trustee shall be deemed to have assumed the obligation to make all Distributions pursuant to this Plan, including the obligation to make all Distributions on account of Allowed Claims.

2.22.   <u>Actions by the Debtors and the Acis Trustee to Implement Plan</u>. The entry of the Confirmation Order shall constitute all necessary authorization for the Debtors and the Acis Trustee to take or cause to be taken all actions necessary or appropriate to consummate, implement or perform all provisions of this Plan on and after the Effective Date, and all such actions taken or caused to be taken shall be deemed to have been authorized and approved by the Bankruptcy Court without further approval, act or action under any applicable law, order, rule or regulation, including without limitation, (a) all transfers of Assets, including to the Acis Trustee and the Transferee, as appropriate, that are to occur pursuant to the Plan; (b) the cancellation of Interests and the winding up and dissolution of the Debtors; (c) the performance of the terms of the Plan and the making of all Distributions required under the Plan; and (d) subject to the terms of the Plan, entering into any and all transactions, contracts, or arrangements permitted by applicable law, order, rule or regulation.

2.23.   <u>Post-Effective Date Service List</u>. Pleadings filed by any party-in-interest with the Bankruptcy Court after the Effective Date shall be served on the following Persons (collectively the "<u>Service List</u>"): (a) any Person directly affected by the relief sought in the pleading, (b) the U.S. Trustee, (c) parties which have filed a Notice of Appearance in the Chapter 11 Cases, and (d) the Acis Trustee through legal counsel.

2.24.   Section 505 Powers.  All rights and powers pursuant to section 505 of the Bankruptcy Code are hereby reserved to the Estate and shall be transferred to, and vested in, the Acis Trustee as of the Effective Date.

2.25.   Section 510(c) Powers.  All rights and powers to seek or exercise any right or remedy of equitable subordination are hereby reserved to the Estate and shall be transferred to, and vested in, the Acis Trustee as of the Effective Date as an Estate Defense.

2.26.   Section 506(c) Powers.  The Estate hereby reserves all rights and powers pursuant to section 506(c) of the Bankruptcy Code, and all such rights shall be specifically transferred to, and vested in, the Acis Trustee.

2.27.   Plan Injunction.  The Acis Trustee shall have full power, standing and authority to enforce the Plan Injunction against any Person, either through an action before the Bankruptcy Court or any other tribunal having appropriate jurisdiction.  The Transferee shall have standing to enforce the Plan Injunction against any Person, either through an action before the Bankruptcy Court or any other tribunal having appropriate jurisdiction.

2.28.   Cancellation of Interests.  Except as otherwise specifically provided herein, upon the Effective Date of the Plan: (a) all Interests in the Debtors shall be cancelled; and (b) all obligations or debts of, or Claims against, the Debtors on account of, or based upon, the Interests shall be deemed as cancelled, released and discharged, including all obligations or duties by the Debtors relating to the Interests in any of their respective formation documents, including Acis LP's limited partnership agreement and bylaws, Acis GP's articles of formation and company agreement, or any similar formation or governing documents.

2.29.   Dissolution of Debtors.  The Acis Trustee shall be responsible for the winding up and dissolution of the Debtors which shall be undertaken as soon as practicable after the Effective Date.  The Acis Trustee may retain such professionals, consultants or advisors as may be reasonably necessary to seasonably accomplish this task, and all such expenses attributable to the winding up and dissolution of the Debtors shall be treated as Trust Expenses.

2.30.   Transferee not Successor.  The Transferee shall not be considered a successor to the Debtors.

**F.**   **PLAN A – ACIS TRUST**

2.31.   Acis Trust.  On the Effective Date, the Acis Trust shall be created pursuant to the Acis Trust Agreement which shall be executed on behalf of the Debtors and by the Acis Trustee to accept the appointment.  The Acis Trust Agreement shall be in substantially the same form as the attached **Exhibit B**.  The Acis Trust shall not terminate upon the death or incapacity of the Acis Trustee and shall continue until its termination in accordance with the terms of this Plan and the Acis Trust Agreement.  Reference is here made to the Acis Trust Agreement for all purposes which shall constitute an integral part of the Plan.

2.32.   Compensation of Acis Trustee.  The Acis Trustee shall be compensated from the Trust Assets in the manner set forth in the Acis Trust Agreement as a Trust Expense.  The Acis Trustee shall also be entitled to reimbursement of reasonable and necessary out-of-pocket expenses incurred in the performance of such duties, also as a Trust Expense.

2.33.   Trust Assets.  The Debtors and the Estate shall constitute the settlors of the Acis

Trust.  As of the Effective Date, the Net Cash Proceeds and all Remaining Assets shall be transferred to the Acis Trust where they will constitute the Trust Assets.  The Trust Assets shall encompass the Net Cash Proceeds and all Remaining Assets held by the Estate as of the Effective Date and shall specifically include without limitation: (a) all Estate Cash, including the Net Cash Proceeds (b) all Estate Accounts Receivable, (c) all Estate Claims, (d) all Estate Defenses, (e) all rights under Estate Insurance, and (f) any Executory Contracts assumed by the Estate and not assigned to the Transferee.  To evidence the transfer of the Estate Assets to the Acis Trust, the Debtors shall, if requested by the Acis Trustee, execute on behalf of the Debtors and Estate, as settlors, an Assignment of Trust Assets transferring the Estate Assets to the Acis Trust which shall be included among the Plan Documents.

2.34.   Distributions from the Acis Trust.  The Acis Trustee shall be responsible for making all Distributions from the Acis Trust to holders of Allowed Claims pursuant to this Plan.  The priority of Distributions from the Acis Trust shall be in accordance with the terms of this Plan and the Confirmation Order as follows:

(a)    First, to satisfy Allowed Class 1 Secured Tax Claims;

(b)    Second, to satisfy Allowed Administrative Expenses and Allowed Priority Claims in accordance with Article II.B above, including all U.S. Trustee quarterly fees due and owing as of the Effective Date;

(c)    Third, to satisfy any Allowed Class 3 Terry Secured Claim;

(d)    Fourth, to pay Trust Expenses, including any Reserves;

(e)    Fourth, to make Distributions to holders of any Allowed Class 4 General Unsecured Claims and Allowed Subclass 5A Claims;

(f)    Fifth, to make Distributions to holders of any Allowed Subclass 5B Claims.

2.35.   Reserves.  The Acis Trustee may estimate, create and set aside Reserves as may be necessary or appropriate, including without limitation, Reserves on account of Contested Claims and for Trust Expenses.  The Acis Trustee may, but shall not be required to, seek approval by the Bankruptcy Court for the creation and amount of any Reserves or regarding the amount or timing of any Distribution on account of any Allowed Claims.  Except as otherwise expressly provided herein, the Acis Trustee, in the exercise of his/her good faith business judgment, may transfer funds out of any of the Reserves as necessary or appropriate.  However, the Acis Trustee shall not be required to create separate accounts for such Reserves which may be created and memorialized by entries or other accounting methodologies, which may be revised from time-to-time, to enable the Acis Trustee to determine the amount of Cash available for Distribution to Beneficiaries of the Acis Trust.  Subject to any specific deadlines set forth herein, the Acis Trustee, shall determine, from time-to-time, in the exercise of the Acis Trustee's good faith business judgment: (a) the amount of Cash available for Distribution to Beneficiaries, (b) the timing of any Distributions to Beneficiaries, and (c) the amount and creation of any Reserves for Contested Claims or Trust Expenses.  The Acis Trustee shall not be entitled to reserve for, and this section 2.35 does not apply to, Distributions to holders of Allowed Subclass 5B Claims.

2.36.   Trust Expenses.  The Acis Trustee shall be entitled to pay all Trust Expenses without the necessity of further order of the Bankruptcy Court.  Without limiting the generality of

the foregoing, the Acis Trust may retain, compensate and reimburse Trust Professionals retained by the Acis Trust without the necessity of further order of the Bankruptcy Court. However, the Acis Trustee shall be entitled, should the Acis Trustee so elect, to request the Bankruptcy Court to approve any Trust Expense or the retention of any Trust Professional.

2.37.   Powers and Duties of the Acis Trustee.  The Acis Trustee's duties and compensation, to the extent not set forth herein, shall be as set forth in the Acis Trust Agreement which shall be one of the Plan Documents.  The Acis Trustee shall constitute a representative of the Estate pursuant to section 1123(b)(3)(B) of the Bankruptcy Code, and shall be clothed with all powers, rights, duties and responsibilities pursuant to this Plan, the Confirmation Order and the Acis Trust Agreement.

2.38.   Exercise of Acis Trustee's Powers.  The Acis Trustee shall be entitled to exercise all powers pursuant to this Plan and the Acis Trust Agreement, without further order or approval of the Bankruptcy Court except as otherwise expressly provided herein or in the Acis Trust Agreement or Confirmation Order.

2.39.   Prosecution and Settlement of Estate Claims.  Upon the Effective Date, the Acis Trustee (a) shall automatically be substituted in place of the Debtors as the party representing the Estate in respect of any pending lawsuit, motion or other pleading pending before the Bankruptcy Court or any other tribunal, and (b) is authorized to file a notice on the docket of each adversary proceeding or the Chapter 11 Cases regarding such substitution.  The Acis Trustee shall have exclusive standing and authority to prosecute, settle or compromise Estate Claims for the benefit of the Acis Trust in the manner set forth in this Plan and the Acis Trust Agreement.

2.40.   Exculpation of Acis Trustee.  The Acis Trustee shall stand in a fiduciary relationship to the Beneficiaries of the Acis Trust.  In the performance of its duties, the Acis Trustee shall be entitled to act, or refrain from acting, based on the exercise of his/her good faith business judgment.  However, the Acis Trustee shall be fully exculpated, and shall have no liability for acts or omissions, in the manner and to the extent set forth in the Acis Trust Agreement.

2.41.   Indemnity.  The Acis Trust shall indemnify and hold harmless the Acis Trustee in the manner and to the extent set forth in the Acis Trust Agreement.

2.42.   Resignation of Acis Trustee.  The Acis Trustee may resign as provided in the Acis Trust Agreement.

2.43.   Replacement of the Acis Trustee.  The Acis Trustee may be replaced in the manner and on the terms as set forth in the Acis Trust Agreement.

2.44.   Reliance by Acis Trustee.  In the performance of the duties pursuant to this Plan, the Acis Trustee may rely upon any document or instrument which the Acis Trustee in good faith believes to be genuine and to have been signed or executed by the proper parties.

2.45.   Plan Injunction.  The Acis Trustee and Acis Trust shall be entitled to the full protection and benefit of the Plan Injunction and shall have standing to bring any action or proceeding necessary to enforce the Plan Injunction against any Person.

2.46.   Tax Treatment.  The Acis Trust shall be treated as a "liquidating trust" within the

meaning of Section 301.7701-4(d) of the Treasury Regulations. The Acis Trustee shall, in an expeditious and orderly manner, collect, liquidate and convert to Cash all non-cash Trust Assets, and make timely Distributions to Beneficiaries of the Acis Trust, and shall not unduly prolong its duration.

2.47.    Transfer of Claims. Holders of Allowed Claims shall not receive any certificate or other document to evidence their beneficial interest in the Acis Trust. The transfer of Claims after the Effective Date is subject to section 5.04 of this Plan.

2.48.    Construction of Acis Trust Documents. This Plan and the Acis Trust Agreement shall control over any inconsistent provision of the Disclosure Statement. The Plan and Confirmation Order shall control over any inconsistent provision of the Acis Trust Agreement. The Confirmation Order shall control over any inconsistent provision of the Disclosure Statement, the Acis Trust Agreement or this Plan.

2.49.    Relief from the Bankruptcy Court. The Acis Trustee shall be authorized to seek relief from the Bankruptcy Court or any other tribunal having jurisdiction as to any matter relating or pertaining to the consummation, administration or performance of this Plan, including without limitation seeking any relief from the Bankruptcy Court which the Acis Trustee deems necessary or appropriate to the performance of its duties, the administration of this Plan, or the liquidation and distribution of the Trust Assets.

2.50.    Removal for Cause. The Acis Trustee may be removed for cause shown in the manner and on the terms set forth in the Acis Trust Agreement.

### ARTICLE III.
### PLAN B

3.01.    Plan B involves continuation of the business of the Debtors from and after the Effective Date by the Reorganized Debtor, with the Acis Trust being created to administer and liquidate certain Assets, including prosecution of certain litigation, and to make some, but not all, Distributions to holders of Allowed Claims. If the Plan, based on the terms and provisions of Plan B, is confirmed by the Bankruptcy Court, the provisions of Articles II and IV of this Plan shall be deemed void and of no force and effect.

**A.    PLAN B – CLASSIFICATION OF CLAIMS AND INTERESTS**

3.02.    The following is a designation of the Classes of Claims and Interests under Plan B of the Plan. Administrative Expenses, Priority Claims of the kinds specified in sections 507(a)(2) and 507(a)(3) of the Bankruptcy Code and Priority Tax Claims have not been classified, are excluded from the following Classes in accordance with section 1123(a)(1) of the Bankruptcy Code, and their treatment is set forth in Article III.B of the Plan. A Claim shall be deemed classified in a particular Class only to the extent that the Claim qualifies within the description of that Class. A Claim is included in a particular Class only to the extent that the Claim is an Allowed Claim in that Class.

Class 1 – Secured Tax Claims
Class 2 – HCLOF Claim
Class 3 – Terry Secured Claim
Class 4 – General Unsecured Claims
Class 5 – Insider Claims
Class 6 – Interests

3.03.   Impaired Classes of Claims and Interests under Plan B.  Class 1 is unimpaired. Classes 2 through 6 are Impaired.

3.04.   Impairment or Classification Controversies. If a controversy arises as to the classification of any Claim or Interest, or as to whether any Class of Claims or Interests is Impaired under the Plan, the Bankruptcy Court shall determine such controversy as a part of the confirmation process.

**B.    PLAN B – TREATMENT OF UNCLASSIFIED CLAIMS**

3.05.   Administrative Expenses

(a)     The Acis Trustee shall pay, in accordance with the ordinary business terms applicable to each such expense or cost, the reasonable and ordinary expenses incurred in operating the Debtors' businesses or administering the Estate before the Effective Date ("Ordinary Course Claims").  The remaining provisions of this section 3.05 shall not apply to the Ordinary Course Claims, except that if there is a dispute relating to any such Ordinary Course Claim, the Acis Trustee may move the Bankruptcy Court to apply the provisions of Article VII below relating to Contested Claims and require the holder of the Contested Ordinary Course Claim to assert such Claim through the Chapter 11 Cases.

(b)     Each holder of an Allowed Administrative Expense (other than Ordinary Course Claims and Administrative Expense Claims by Estate Professionals), shall receive (i) the amount of such holder's Allowed Administrative Expense in one Cash payment on the later of the Effective Date or the tenth (10th) Business Day after such Administrative Expense becomes an Allowed Administrative Expense, or (ii) such other treatment as may be agreed to in writing by such Administrative Expense Creditor and the Acis Trustee, or as otherwise ordered by the Bankruptcy Court.

(c)     Unless the Bankruptcy Court orders to the contrary or the Acis Trustee agrees to the contrary in writing, the holder of a Claim for an Administrative Expense, other than such a Claim by an Estate Professional, an Ordinary Course Claim, or an Administrative Expense which is already Allowed, shall file with the Bankruptcy Court and serve upon the Acis Trustee and its counsel a written notice of such Claim for an Administrative Expense within thirty (30) days after the Effective Date.  This deadline is the "Administrative Bar Date." Such notice shall include at a minimum: (i) the name, address, telephone number and fax number (if applicable) or email address of the holder of such Claim, (ii) the amount of such Claim, and (iii) the basis of such Claim.  **Failure to timely and properly file and serve such notice by the Administrative Bar Date shall result in such Claim for an Administrative Expense being forever barred and discharged and the holder thereof shall be barred from receiving any Distribution through the Acis Trust on account of such Claim for an Administrative Expense.**

(d)    A Claim for an Administrative Expense, for which a proper notice was filed and served under subsection 3.05(a) above, shall become an Allowed Administrative Expense if no Objection is filed within thirty (30) days of the filing and service of such notice.  If a timely Objection is filed, the Claim shall become an Allowed Administrative Expense only to the extent allowed by a Final Order.

(e)    The procedures contained in subsections 3.05(a), (c) and (d) above shall not apply to Administrative Expense Claims asserted by Estate Professionals, who shall each file and submit an appropriate final fee application to the Bankruptcy Court no later than sixty (60) days after the Effective Date.  A Claim for an Administrative Expense by an Estate Professional in respect of which a final fee application has been properly filed and served shall become an Allowed Administrative Expense only to the extent allowed by Final Order and, if so Allowed, shall be paid in accordance with subsection 3.05(b) above.  Professional fees and expenses to any Estate Professional incurred on or after the Effective Date may be paid by the Acis Trustee without necessity of application to or order by the Bankruptcy Court.

(f)    If the Acis Trustee asserts any Estate Claims as counterclaims or defenses to a Claim for Administrative Expense, the Administrative Expense Claim shall be determined through an adversary proceeding before the Bankruptcy Court.  The Bankruptcy Court shall have exclusive jurisdiction to adjudicate and Allow all Claims for any Administrative Expense.

3.06.    <u>Priority Tax Claims</u>. Each holder of an Allowed Priority Tax Claim shall receive (a) one Cash payment in an amount equal to the principal amount of such Allowed Priority Tax Claim, plus interest at the rate and in the manner prescribed by applicable state law from the later of the Petition Date or the first day after the last day on which such Priority Tax Claim may be paid without penalty, no later than sixty (60) days after each such Claim becomes an Allowed Claim, or (b) such other treatment as may be agreed to in writing by the holder of the Priority Tax Claim and the Acis Trustee.

3.07.    <u>U.S. Trustee's Fees</u>. The Acis Trustee shall pay the U.S. Trustee's quarterly fees incurred pursuant to 28 U.S.C. § 1930(a)(6) which are due as of the Confirmation Date in full on the Effective Date or as soon thereafter as is practicable.  After the Confirmation Date, the Reorganized Debtor shall continue to pay quarterly fees as they accrue until a final decree is entered and the Chapter 11 Cases are closed.  The Reorganized Debtor shall file with the Bankruptcy Court and serve on the U.S. Trustee quarterly financial reports for each quarter, or portion thereof, that the Chapter 11 Cases remain open.

C.    **PLAN B – TREATMENT OF CLASSIFIED CLAIMS AND INTERESTS**

3.08.    <u>Class 1 – Secured Tax Claims</u>. Each holder of an Allowed Secured Tax Claim shall receive (a) one Cash payment in an amount equal to the principal amount of such Allowed Secured Tax Claim, plus interest at the rate and in the manner prescribed by applicable state law from the later of the Petition Date or the first day after the last day on which such Secured Tax Claim may be paid without penalty, on the Initial Distribution Date, or (b) such other treatment as may be agreed to in writing by the holder of the Secured Tax Claim and the Acis Trustee.  The Liens securing such Secured Tax Claims shall remain unimpaired and unaffected until each such Class 1 Claim is paid in full.  All Distributions on account of Allowed Class 1 Claims shall be made by the Acis Trustee from the Trust Assets.  Class 1 is unimpaired. Holders of Class 1 Claims are conclusively presumed to have accepted the Plan and, accordingly, are not entitled to vote on the Plan.

3.09.    <u>Class 2 – HCLOF Claim</u>.  The HCLOF Claim shall be satisfied through the retention by HCLOF of the Subordinated Notes in each of the Acis CLOs and having the option to elect a sequential reset of the Acis CLOs.  Class 2 is Impaired.  The Holder of the Class 2 Claim is entitled to vote on the Plan.  To the extent that any HCLOF Claim remains unpaid it shall be treated as a Class 5B Claim.

3.10.    <u>Class 3 – Terry Secured Claim</u>.  In exchange for a one million dollar ($1,000,000.00) reduction in the amount of his Secured Claim, Terry shall receive one hundred percent (100%) of the equity interests in the Reorganized Debtor as of the Effective Date.  The remaining balance of any Allowed Terry Secured Claim shall be treated and paid as a Class 4 General Unsecured Claim.  Class 3 is Impaired.  The Holder of the Class 3 Terry Secured Claim is entitled to vote on the Plan.

3.11.    <u>Class 4 – General Unsecured Claims</u>.

(a)    Each holder of an Allowed General Unsecured Claim shall receive a promissory note issued by the Reorganized Debtor (each an "<u>Unsecured Cash Flow Note</u>") on the later of (a) that date that is as soon as practicable after the Effective Date, or (b) that date that is as soon as practicable after such holder's General Unsecured Claim becomes an Allowed Class 4 Claim.  Each Unsecured Cash Flow Note shall be dated as of the Effective Date, bear interest at the Plan Rate and shall mature on that date that is the three (3) years after the Effective Date.

(b)    To the extent of Available Cash, the Reorganized Debtor shall make substantially equal quarterly Distributions of principal and accrued interest to each holder of an Unsecured Cash Flow Note, with the first such quarterly Distribution being due and payable on the 90th day after the Effective Date.  Thereafter, like Distributions shall be made each quarter by the Reorganized Debtor until the Unsecured Cash Flow Note is paid in full.  Notwithstanding the foregoing, in the event that an Unsecured Cash Flow Note is first issued more than ninety (90) days after the Effective Date, the first Distribution made on account of such Unsecured Cash Flow Note shall be made upon the date that the next Distribution would otherwise be due, but such first Distribution shall also include amounts that would have been distributed to the holder of such Unsecured Cash Flow Note had such Unsecured Cash Flow Note been issued prior to ninety (90) days after the Effective Date, such that the first Distribution shall bring all payments current on account of such Unsecured Cash Flow Note.  If on any date on which a quarterly Distribution is due to the holder of an Unsecured Cash Flow Note the remaining principal and accrued interest owing on account of such Unsecured Cash Flow Note is less than the regular quarterly Distribution amount, the Reorganized Debtor shall make a Distribution to the holder of such Unsecured Cash Flow Note in an amount sufficient to fully satisfy the remaining principal and accrued interest owed, but no more.  Nothing contained herein shall preclude the Reorganized Debtor from prepaying any Unsecured Cash Flow Note.

(c)    Within ninety (90) days of the Effective Date, the Acis Trustee shall make a Pro Rata Distribution to holders of Allowed Class 4 Claims and Allowed Subclass 5A Claims out of Available Cash held by the Acis Trust, which Distribution shall be applied to reduce the outstanding balance of each holder's Unsecured Cash Flow Note.  The amount to be so distributed shall be determined in the sole discretion of the Acis Trustee after appropriate Reserves are made by the Acis Trustee, including but not limited to Reserves for Trust Expenses.  Although the Distribution by the Acis Trustee to the holders of Allowed Class 4 Claims shall reduce the principal balance of each holder's Unsecured Cash Flow Note, such Distribution by the Acis Trustee will be made in addition to, and not in lieu of, the quarterly

Distributions the Reorganized Debtor is required to make to holders of Allowed Class 4 Claims on account of the Unsecured Cash Flow Notes pursuant to this Plan.

(d)    If after making the Pro Rata Distribution pursuant to section 3.11(c) above (and section 3.12(f) below), the Acis Trust obtains additional Cash, through litigation recoveries or otherwise, and the Acis Trustee determines, in his/her sole discretion, that the Acis Trust holds Available Cash sufficient to allow one or more subsequent Pro Rata Distributions to be made to holders of Allowed Class 4 Claims and Allowed Subclass 5A Claims, the Acis Trustee may, but shall not be required to, make one or more additional Pro Rata Distributions to holders of Allowed Class 4 Claims and Allowed Subclass 5A Claims. Any such additional Distributions shall be applied to reduce the outstanding balance of each holder's Unsecured Cash Flow Note.

(e)    Class 4 is Impaired. Holders of Class 4 Claims are entitled to vote on the Plan.

3.12.    Class 5 – Insider Claims.  Holders of Class 5 Insider Claims shall be treated as follows:

(a)    Class 5 shall consist of Insider Claims which constitute General Unsecured Claims and shall specifically include any General Unsecured Claim asserted by Highland and any Affiliate of Highland.

(b)    Class 5 Claims shall be divided into two (2) subclasses. Subclass 5A shall consist of all Allowed Class 5 claims which are not subject to equitable subordination. Subclass 5B shall consist of all Class 5 claims which are determined by the Bankruptcy Court to be subject to equitable subordination. If only a part of a Class 5 Claim is subject to equitable subordination, then the portion of such claim subject to equitable subordination shall be included in Subclass 5B and the remainder not subject to equitable subordination shall be included in Subclass 5A.

(c)    All Class 5 Claims (regardless of which subclass) shall be and remain subject to all Estate Defenses and all Estate Claims, both as offsets and for an affirmative recovery against the Holder of any Class 5 Claim.

(d)    Each holder of an Allowed Subclass 5A Claim shall receive an Unsecured Cash Flow Note on the later of (a) that date that is as soon as practicable after the Effective Date, or (b) that date that is as soon as practicable after such holder's Subclass 5A Claim becomes an Allowed Subclass 5A Claim. Each Unsecured Cash Flow Note shall be dated as of the Effective Date, bear interest at the Plan Rate and shall mature on that date that is the three (3) years after the Effective Date.

(e)    To the extent of Available Cash, the Reorganized Debtor shall make substantially equal quarterly Distributions of principal and accrued interest to each holder of an Unsecured Cash Flow Note, with the first such quarterly Distribution being due and payable on the 90th day after the Effective Date. Thereafter, like Distributions shall be made each quarter by the Reorganized Debtor until the Unsecured Cash Flow Note is paid in full. Notwithstanding the foregoing, in the event that an Unsecured Cash Flow Note is first issued more than ninety (90) days after the Effective Date, the first Distribution made on account of such Unsecured Cash Flow Note shall be made upon the date that the next Distribution would otherwise be due, but such first Distribution shall also include amounts that would have been distributed to the holder of such Unsecured Cash Flow Note had such Unsecured Cash Flow Note been issued prior to ninety (90) days after the Effective Date, such that the first Distribution shall bring all payments

current on account of such Unsecured Cash Flow Note.  If on any date on which a quarterly Distribution is due to the holder of an Unsecured Cash Flow Note the remaining principal and accrued interest owing on account of such Unsecured Cash Flow Note is less than the regular quarterly Distribution amount, the Reorganized Debtor shall make a Distribution to the holder of such Unsecured Cash Flow Note in an amount sufficient to fully satisfy the remaining principal and accrued interest owed, but no more.  Nothing contained herein shall preclude the Reorganized Debtor from prepaying any Unsecured Cash Flow Note.

(f)    Within ninety (90) days of the Effective Date, the Acis Trustee shall make a Pro Rata Distribution to holders of Allowed Class 4 Claims and Allowed Subclass 5A Claims out of Available Cash held by the Acis Trust, which Distribution shall be applied to reduce the outstanding balance of each holder's Unsecured Cash Flow Note.  The amount to be so distributed shall be determined in the sole discretion of the Acis Trustee after appropriate Reserves are made by the Acis Trustee, including but not limited to Reserves for Trust Expenses.  Although the Distribution by the Acis Trustee to the holders of Allowed Class 4 Claims shall reduce the principal balance of each holder's Unsecured Cash Flow Note, such Distribution by the Acis Trustee will be made in addition to, and not in lieu of, the quarterly Distributions the Reorganized Debtor is required to make to holders of Allowed Class 4 Claims on account of the Unsecured Cash Flow Notes pursuant to this Plan.

(g)    If after making the Pro Rata Distribution pursuant to sections 3.11(c) and 3.12(f) above, the Acis Trust obtains additional Cash, through litigation recoveries or otherwise, and the Acis Trustee determines, in his/her sole discretion, that the Acis Trust holds Available Cash sufficient to allow one or more subsequent Pro Rata Distributions to be made to holders of Allowed Class 4 Claims and Allowed Subclass 5A Claims, the Acis Trustee may, but shall not be required to, make one or more additional Pro Rata Distributions to holders of Allowed Class 4 Claims and Allowed Subclass 5A Claims.  Any such additional Distributions shall be applied to reduce the outstanding balance of each holder's Unsecured Cash Flow Note.

(h)    Unless otherwise provided by Order of the Bankruptcy Court, holders of Subclass 5B claims shall not be entitled to any Distribution from the Acis Trust until all Allowed Claims included in Classes 1 through 4 and Subclass 5A have been paid in full.  At any time after all Allowed Claims in Classes 1 through 4 and Subclass 5A have been paid in full, and prior to conclusion of the business of the Acis Trust, the Acis Trustee may, in his/her sole discretion, make one or more Distributions of Available Cash from the Acis Trust to holders of Allowed Subclass 5B Claims.  Any such Distribution, if less than the then unpaid principal amount of all Allowed Subclass 5B Claims, together with interest thereon at the Plan Rate from the Effective Date through the date of such Distribution, shall be made Pro Rata to the holders of Allowed Subclass 5B Claims.

(i)    After (A) all Allowed Claims in Classes 1 through 4 and Subclass 5A have been paid in full, (B) the Acis Trustee has made a determination that the business of the Acis Trust is concluded, and (C) the Acis Trustee has paid or made appropriate Reserves for the payment of all remaining Trust Expenses, the Acis Trustee shall, as soon as practicable, make a Pro Rata Distribution of the remaining Cash of the Acis Trust to holders of Allowed Subclass 5B Claims, up to the amount necessary to fully pay the remaining unpaid principal balance of such Allowed Subclass 5B Claims with interest thereon at the Plan Rate from the Effective Date through the date of such final Distribution.

(j)    The Acis Trustee may establish appropriate Reserves as to any Contested Claim included in Class 5.

(k)     Class 5 is Impaired.  Holders of Class 5 Claims are entitled to vote on the Plan.

3.13.   Class 6 – Interests.  All Interests in the Debtors shall be extinguished and shall cease to exist as of the Effective Date. The holders of such Interests shall not receive or retain any property on account of such Interests under the Plan.  Class 6 is Impaired.  Holders of Class 6 Interests are conclusively presumed to have rejected the Plan and, accordingly, are not entitled to vote on the Plan.

## D.     PLAN B – ACCEPTANCE OR REJECTION

3.14.   Classes Entitled to Vote.  Creditors in Classes 2 through 5 are entitled to vote and shall vote separately to accept or reject the Plan.  Any unimpaired Class shall not be entitled to vote to accept or reject the Plan.  Any unimpaired Class is deemed to have accepted the Plan under section 1126(f) of the Bankruptcy Code.

3.15.   Class Acceptance Requirement. A Class of Claims shall have accepted the Plan if it is accepted by at least two-thirds (2/3) in amount and more than one-half (1/2) in number of the Allowed Claims in such Class that have voted on the Plan.

3.16.   Cramdown. This section shall constitute the request by the Plan proponents, pursuant to section 1129(b) of the Bankruptcy Code, that the Bankruptcy Court confirm the Plan notwithstanding the fact that the requirements of section 1129(a)(8) of the Bankruptcy Code have not been met.

## E.     PLAN B – MEANS FOR IMPLEMENTATION

3.17.   Acis Trust.  The Acis Trust shall be created as of the Effective Date in accordance with the terms of this Plan and the Acis Trust Agreement.  The Debtors and the Estate shall be the settlors of the Acis Trust.  The reorganized Acis will be the residual beneficiary of the Acis Trust and receive all distributions after all classes of Claims have been paid in full.

3.18.   Transfers of Assets.  As of the Effective Date (a) all Cash, Estate Accounts Receivable, Estate Claims and Estate Defenses shall be transferred from the Estate to, and be vested in, the Acis Trust, and (b) all other Estate Assets, unless otherwise expressly stated in this Plan, shall be transferred to, and vested in, the Reorganized Debtor.  After the Effective Date, the Acis Trustee may still abandon any Acis Trust Assets which are burdensome or have no or inconsequential value to the Acis Trust.  Any such abandoned assets shall be deemed transferred to and vested in the Reorganized Debtor.  All Estate Assets transferred to either the Acis Trust or the Reorganized Debtor shall be transferred to, and vested in, the Acis Trust or the Reorganized Debtor free and clear of all Liens, Claims, rights, Interests and charges, except as expressly provided in this Plan.

3.19.   Assumption of Obligations to Make Distributions.  The Acis Trustee and the Reorganized Debtor shall be deemed to have assumed the obligations to make the Distributions pursuant to this Plan to the extent the Plan identifies the Acis Trustee or the Reorganized Debtor as responsible for making such Distributions.

3.20.   Actions by the Debtors, the Reorganized Debtor and the Acis Trustee to Implement Plan.  The entry of the Confirmation Order shall constitute all necessary authorization for the Debtors, the Reorganized Debtor and the Acis Trustee to take or cause to

be taken all actions necessary or appropriate to consummate, implement or perform all provisions of this Plan on and after the Effective Date, and all such actions taken or caused to be taken shall be deemed to have been authorized and approved by the Bankruptcy Court without further approval, act or action under any applicable law, order, rule or regulation, including without limitation, (a) all transfers of Assets, including to the Acis Trust, that are to occur pursuant to the Plan; (b) the cancellation of Interests and issuance of 100% of the equity interests in the Reorganized Debtor to Terry; (c) the performance of the terms of the Plan and the making of all Distributions required under the Plan; and (d) subject to the terms of the Plan, entering into any and all transactions, contracts, or arrangements permitted by applicable law, order, rule or regulation.

3.21.   Continued Portfolio Management by the Reorganized Debtor.  The PMAs shall be assumed and the Reorganized Debtor shall, from and after the Effective Date, serve as the portfolio manager with respect to the Acis CLOs (or any reset CLOs).  The Reorganized Debtor may not be removed as portfolio manager under the assumed PMAs without cause.

3.22.   Replacement of Highland as Sub-Servicer and Sub-Advisor.  The Shared Services Agreement and Sub-Advisory Agreement shall be rejected and Highland shall be replaced as the sub-servicer and sub-advisor with a qualified Person (the "Sub-Advisor") to provide sub-servicing and sub-advisory services to the Reorganized Debtor with respect to the Acis CLOs (or any reset CLOs).  Any agreement between the Reorganized Debtor and the Sub-Advisor shall provide that the Sub-Advisor cannot be removed without cause for a period of two (2) years.

3.23.   Option for HCLOF to Elect a Reset of the Acis CLOs.  HCLOF shall have the option to elect to reset the Acis CLOs.  If HCLOF elects a reset, the New Sub-Advisor shall thereafter reset the Acis CLOs consecutively rather than simultaneously, consistent with market standards, but shall only effectuate the reset to the extent that HCLOF commits to fund the reset.  If HCLOF elects not to fund and reset the Acis CLOs, then the Acis CLOs will continue to be managed in accordance with market standards.

3.24.   Amendment of Indentures.  The Indentures shall be amended to provide that the Acis CLOs cannot be called for redemption until the later of (a) the date on which all Allowed Claims against the Debtors have been paid in full, or (b) three (3) years after the Effective Date. In the event that the Acis CLOs are reset, any new indenture with respect to a reset CLO shall provide the reorganized Acis will continue as the portfolio manager and that the reset CLO cannot be called for redemption until the later of (y) the date on which all Allowed Claims against the Debtors have been paid in full, or (z) three (3) years after the Effective Date.

3.25.   Post-Effective Date Service List.  Pleadings filed by any party-in-interest with the Bankruptcy Court after the Effective Date shall be served on the following Persons (collectively the "Service List"): (a) any Person directly affected by the relief sought in the pleading, (b) the U.S. Trustee, (c) parties which have filed a Notice of Appearance in the Chapter 11 Cases, (d) the Acis Trustee through legal counsel, and (e) the Reorganized Debtor.

3.26.   Section 505 Powers.  All rights and powers pursuant to section 505 of the Bankruptcy Code are hereby reserved to the Estate and shall be transferred to, and vested in, the Acis Trustee as of the Effective Date.

3.27. <u>Section 510(c) Powers</u>. All rights and powers to seek or exercise any right or remedy of equitable subordination are hereby reserved to the Estate and shall be transferred to, and vested in, the Acis Trustee as of the Effective Date as an Estate Defense.

3.28. <u>Section 506(c) Powers</u>. The Estate hereby reserves all rights and powers pursuant to section 506(c) of the Bankruptcy Code, and all such rights shall be specifically transferred to, and vested in, the Acis Trustee.

3.29. <u>Plan Injunction</u>. The Acis Trustee and the Reorganized Debtor shall each have full power, standing and authority to enforce the Plan Injunction against any Person, either through an action before the Bankruptcy Court or any other tribunal having appropriate jurisdiction.

3.30. <u>Cancellation of Interests</u>. Except as otherwise specifically provided herein, upon the Effective Date of the Plan: (a) all Interests in the Debtors shall be cancelled; and (b) all obligations or debts of, or Claims against, the Debtors on account of, or based upon, the Interests shall be deemed as cancelled, released and discharged, including all obligations or duties by the Debtors relating to the Interests in any of their respective formation documents, including Acis LP's limited partnership agreement and bylaws, Acis GP's articles of formation and company agreement, or any similar formation or governing documents.

## F. PLAN B – ACIS TRUST

3.31. <u>Acis Trust</u>. On the Effective Date, the Acis Trust shall be created pursuant to the Acis Trust Agreement which shall be executed on behalf of the Debtors and by the Acis Trustee to accept the appointment. The Acis Trust Agreement shall be in substantially the same form as the attached **Exhibit C**. The Acis Trust shall not terminate upon the death or incapacity of the Acis Trustee and shall continue until its termination in accordance with the terms of this Plan and the Acis Trust Agreement. Reference is here made to the Acis Trust Agreement for all purposes which shall constitute an integral part of the Plan.

3.32. <u>Compensation of Acis Trustee</u>. The Acis Trustee shall be compensated from the Acis Trust Assets in the manner set forth in the Acis Trust Agreement as a Trust Expense. The Acis Trustee shall also be entitled to reimbursement of reasonable and necessary out-of-pocket expenses incurred in the performance of such duties, also as a Trust Expense.

3.33. <u>Acis Trust Assets</u>. The Debtors and the Estate shall constitute the settlors of the Acis Trust. As of the Effective Date, the Acis Trust Assets shall specifically include without limitation: (a) all Estate Cash, (b) all Estate Accounts Receivable, (c) all Estate Claims, and (d) all Estate Defenses. To evidence the transfer of the applicable Estate Assets to the Acis Trust, the Debtors shall, if requested by the Acis Trustee, execute on behalf of the Debtors and Estate, as settlors, an Assignment of Trust Assets transferring the applicable Estate Assets to the Acis Trust which shall be included among the Plan Documents.

3.34. <u>Distributions from Acis Trust</u>. The Acis Trustee shall be responsible for making Distributions from the Acis Trust to holders of Allowed Claims only to the extent this Plan requires Distributions to be made by the Acis Trustee. The Acis Trustee shall have no responsibility to make any Distributions which this Plan expressly identifies as Distributions required to be made by the Reorganized Debtor. The priority of Distributions from the Acis Trust shall be in accordance with the terms of this Plan and the Confirmation Order as follows:

(a)    First, to satisfy Allowed Class 1 Secured Tax Claims;

(b)    Second, to satisfy Allowed Administrative Expenses and Allowed Priority Claims in accordance with Article III.B above, including all U.S. Trustee quarterly fees due and owing as of the Effective Date;

(c)    Third, to pay Trust Expenses;

(d)    Fourth, to make Distributions to holders of any Allowed Class 4 General Unsecured Claims and Allowed Subclass 5A Claims;

(e)    Fifth, to make Distributions to holders of any Allowed Subclass 5B Claims; and

(f)    Sixth, to make a Distribution of any remaining Acis Trust Assets to the Reorganized Debtor, as the residual Beneficiary of the Acis Trust.

3.35.    Reserves. The Acis Trustee may estimate, create and set aside Reserves as may be necessary or appropriate, including without limitation, Reserves on account of Contested Claims and for Trust Expenses. The Acis Trustee may, but shall not be required to, move the Bankruptcy Court to approve: (a) the amount of, and terms on which, such Reserves shall be held, maintained and disbursed, or (b) the amount and timing of any proposed interim Distribution to holders of Allowed Class 4 Claims and Allowed Subclass 5A Claims. The Acis Trustee may elect to seek approval by the Bankruptcy Court for the creation and amount of any Reserves or regarding the amount or timing of any Distribution on account of any Allowed Claims. Except as otherwise expressly provided herein, the Acis Trustee, in the exercise of his/her good faith business judgment, may transfer funds out of any of the Reserves as necessary or appropriate. However, the Acis Trustee shall not be required to create separate accounts for such Reserves which may be created and memorialized by entries or other accounting methodologies, which may be revised from time-to-time, to enable the Acis Trustee to determine the amount of Cash available for Distribution to Beneficiaries of the Acis Trust. Subject to any specific deadlines set forth herein, the Acis Trustee, shall determine, from time-to-time, in the exercise of the Acis Trustee's good faith business judgment: (x) the amount of Cash available for Distribution to Beneficiaries, (y) the timing of any Distributions to Beneficiaries, and (z) the amount and creation of any Reserves for Contested Claims or Trust Expenses. The Acis Trustee shall not be entitled to reserve for, and this section 3.35 does not apply to, Distributions to holders of Allowed Subclass 5B Claims.

3.36.    Trust Expenses. The Acis Trustee shall be entitled to pay all Trust Expenses without the necessity of further order of the Bankruptcy Court. Without limiting the generality of the foregoing, the Acis Trust may retain, compensate and reimburse Trust Professionals retained by the Acis Trust without the necessity of further order of the Bankruptcy Court. However, the Acis Trustee shall be entitled, should the Acis Trustee so elect, to request the Bankruptcy Court to approve any Trust Expense or the retention of any Trust Professional.

3.37.    Powers and Duties of the Acis Trustee. The Acis Trustee's duties and compensation, to the extent not set forth herein, shall be as set forth in the Acis Trust Agreement which shall be one of the Plan Documents. The Acis Trustee shall constitute a representative of the Estate pursuant to section 1123(b)(3)(B) of the Bankruptcy Code, and shall be clothed with all powers, rights, duties and responsibilities pursuant to this Plan, the Confirmation Order and the Acis Trust Agreement.

3.38.    Exercise of Acis Trustee's Powers.  The Acis Trustee shall be entitled to exercise all powers pursuant to this Plan and the Acis Trust Agreement, without further order or approval of the Bankruptcy Court except as otherwise expressly provided herein or in the Acis Trust Agreement or Confirmation Order.

3.39.    Prosecution and Settlement of Estate Claims.  Upon the Effective Date, the Acis Trustee (a) shall automatically be substituted in place of the Debtors as the party representing the Estate in respect of any pending lawsuit, motion or other pleading pending before the Bankruptcy Court or any other tribunal, and (b) is authorized to file a notice on the docket of each adversary proceeding or the Chapter 11 Cases regarding such substitution.  The Acis Trustee shall have exclusive standing and authority to prosecute, settle or compromise Estate Claims for the benefit of the Acis Trust in the manner set forth in this Plan and the Acis Trust Agreement.

3.40.    Exculpation of Acis Trustee.  The Acis Trustee shall stand in a fiduciary relationship to the Beneficiaries of the Acis Trust.  In the performance of its duties, the Acis Trustee shall be entitled to act, or refrain from acting, based on the exercise of his/her good faith business judgment.  However, the Acis Trustee shall be fully exculpated, and shall have no liability for acts or omissions, in the manner and to the extent set forth in the Acis Trust Agreement.

3.41.    Indemnity.  The Acis Trust shall indemnify and hold harmless the Acis Trustee in the manner and to the extent set forth in the Acis Trust Agreement.

3.42.    Resignation of Acis Trustee.  The Acis Trustee may resign as provided in the Acis Trust Agreement.

3.43.    Replacement of the Acis Trustee.  The Acis Trustee may be replaced in the manner and on the terms as set forth in the Acis Trust Agreement.

3.44.    Reliance by Acis Trustee.  In the performance of the duties pursuant to this Plan, the Acis Trustee may rely upon any document or instrument which the Acis Trustee in good faith believes to be genuine and to have been signed or executed by the proper parties.

3.45.    Plan Injunction.  The Acis Trustee and Acis Trust shall be entitled to the full protection and benefit of the Plan Injunction and shall have standing to bring any action or proceeding necessary to enforce the Plan Injunction against any Person.

3.46.    Tax Treatment.  The Acis Trust shall be treated as a "liquidating trust" within the meaning of Section 301.7701-4(d) of the Treasury Regulations.  The Acis Trustee shall, in an expeditious but orderly manner, collect, liquidate and convert to Cash all non-cash Acis Trust Assets, and make timely Distributions to Beneficiaries of the Acis Trust, and shall not unduly prolong its duration.

3.47.    Transfer of Claims.  Holders of Allowed Claims shall not receive any certificate or other document to evidence their beneficial interest in the Acis Trust.  The transfer of Claims after the Effective Date is subject to section 5.04 of this Plan.

3.48.    Construction of Acis Trust Documents.  This Plan and the Acis Trust Agreement shall control over any inconsistent provision of the Disclosure Statement.  The Plan and Confirmation Order shall control over any inconsistent provision of the Acis Trust Agreement.

The Confirmation Order shall control over any inconsistent provision of the Disclosure Statement, the Acis Trust Agreement or this Plan.

      3.49.   Relief from the Bankruptcy Court.  The Acis Trustee shall be authorized to seek relief from the Bankruptcy Court or any other tribunal having jurisdiction as to any matter relating or pertaining to the consummation, administration or performance of this Plan, including without limitation seeking any relief from the Bankruptcy Court which the Acis Trustee deems necessary or appropriate to the performance of its duties, the administration of this Plan, or the liquidation and distribution of the Acis Trust Assets.

      3.50.   Removal for Cause.  The Acis Trustee may be removed for cause shown in the manner and on the terms set forth in the Acis Trust Agreement.

**ARTICLE IV.**
**PLAN C**

      4.01.   Plan C involves continuation of the business of the Debtors from and after the Effective Date by the Reorganized Debtor, with the Acis Trust being created to administer and liquidate certain Assets, including prosecution of certain litigation, and to make some, but not all, Distributions to holders of Allowed Claims.  If the Plan, based on the terms and provisions of Plan C, is confirmed by the Bankruptcy Court, the provisions of Articles II and III of this Plan shall be deemed void and of no force and effect.

**A.     PLAN C – CLASSIFICATION OF CLAIMS AND INTERESTS**

      4.02.   The following is a designation of the Classes of Claims and Interests under Plan C of the Plan.  Administrative Expenses, Priority Claims of the kinds specified in sections 507(a)(2) and 507(a)(3) of the Bankruptcy Code and Priority Tax Claims have not been classified, are excluded from the following Classes in accordance with section 1123(a)(1) of the Bankruptcy Code, and their treatment is set forth in Article IV.B of the Plan.  A Claim shall be deemed classified in a particular Class only to the extent that the Claim qualifies within the description of that Class.  A Claim is included in a particular Class only to the extent that the Claim is an Allowed Claim in that Class.

Class 1 – Secured Tax Claims
Class 2 – HCLOF Claim
Class 3 – Terry Secured Claim
Class 4 – General Unsecured Claims
Class 5 – Insider Claims
Class 6 – Interests

      4.03.   Impaired Classes of Claims and Interests under Plan A.  Class 1 is unimpaired. Classes 2 through 6 are Impaired.

      4.04.   Impairment or Classification Controversies. If a controversy arises as to the classification of any Claim or Interest, or as to whether any Class of Claims or Interests is Impaired under the Plan, the Bankruptcy Court shall determine such controversy as a part of the confirmation process.

**B.     PLAN C – TREATMENT OF UNCLASSIFIED CLAIMS**

4.05.   <u>Administrative Expenses</u>

(a)      The Acis Trustee shall pay, in accordance with the ordinary business terms applicable to each such expense or cost, the reasonable and ordinary expenses incurred in operating the Debtors' businesses or administering the Estate before the Effective Date ("<u>Ordinary Course Claims</u>").  The remaining provisions of this section 4.05 shall not apply to the Ordinary Course Claims, except that if there is a dispute relating to any such Ordinary Course Claim, the Acis Trustee may move the Bankruptcy Court to apply the provisions of Article VII below relating to Contested Claims and require the holder of the Contested Ordinary Course Claim to assert such Claim through the Chapter 11 Cases.

(b)      Each holder of an Allowed Administrative Expense (other than Ordinary Course Claims and Administrative Expense Claims by Estate Professionals), shall receive (i) the amount of such holder's Allowed Administrative Expense in one Cash payment on the later of the Effective Date or the tenth (10th) Business Day after such Administrative Expense becomes an Allowed Administrative Expense, or (ii) such other treatment as may be agreed to in writing by such Administrative Expense Creditor and the Acis Trustee, or as otherwise ordered by the Bankruptcy Court.

(c)      Unless the Bankruptcy Court orders to the contrary or the Acis Trustee agrees to the contrary in writing, the holder of a Claim for an Administrative Expense, other than such a Claim by an Estate Professional, an Ordinary Course Claim, or an Administrative Expense which is already Allowed, shall file with the Bankruptcy Court and serve upon the Acis Trustee and its counsel a written notice of such Claim for an Administrative Expense within thirty (30) days after the Effective Date.  This deadline is the "<u>Administrative Bar Date</u>."  Such notice shall include at a minimum: (i) the name, address, telephone number and fax number (if applicable) or email address of the holder of such Claim, (ii) the amount of such Claim, and (iii) the basis of such Claim.  **Failure to timely and properly file and serve such notice by the Administrative Bar Date shall result in such Claim for an Administrative Expense being forever barred and discharged and the holder thereof shall be barred from receiving any Distribution through the Acis Trust on account of such Claim for an Administrative Expense.**

(d)      A Claim for an Administrative Expense, for which a proper notice was filed and served under subsection 4.05(c) above, shall become an Allowed Administrative Expense if no Objection is filed within thirty (30) days of the filing and service of such notice.  If a timely Objection is filed, the Claim shall become an Allowed Administrative Expense only to the extent allowed by a Final Order.

(e)      The procedures contained in subsections 4.05(a), (c) and (d) above shall not apply to Administrative Expense Claims asserted by Estate Professionals, who shall each file and submit an appropriate final fee application to the Bankruptcy Court no later than sixty (60) days after the Effective Date.  A Claim for an Administrative Expense by an Estate Professional in respect of which a final fee application has been properly filed and served shall become an Allowed Administrative Expense only to the extent allowed by Final Order and, if so Allowed, shall be paid in accordance with subsection 4.05(b) above.  Professional fees and expenses to any Estate Professional incurred on or after the Effective Date may be paid by the Acis Trustee without necessity of application to or order by the Bankruptcy Court.

(f)      If the Acis Trustee asserts any Estate Claims as counterclaims or defenses to a Claim for Administrative Expense, the Administrative Expense Claim shall be determined

through an adversary proceeding before the Bankruptcy Court. The Bankruptcy Court shall have exclusive jurisdiction to adjudicate and Allow all Claims for any Administrative Expense.

4.06.    Priority Tax Claims. Each holder of an Allowed Priority Tax Claim shall receive (a) one Cash payment in an amount equal to the principal amount of such Allowed Priority Tax Claim, plus interest at the rate and in the manner prescribed by applicable state law from the later of the Petition Date or the first day after the last day on which such Priority Tax Claim may be paid without penalty, no later than sixty (60) days after each such Claim becomes an Allowed Claim, or (b) such other treatment as may be agreed to in writing by the holder of the Priority Tax Claim and the Acis Trustee.

4.07.    U.S. Trustee's Fees. The Acis Trustee shall pay the U.S. Trustee's quarterly fees incurred pursuant to 28 U.S.C. § 1930(a)(6) which are due as of the Confirmation Date in full on the Effective Date or as soon thereafter as is practicable. After the Confirmation Date, the Reorganized Debtor shall continue to pay quarterly fees as they accrue until a final decree is entered and the Chapter 11 Cases are closed. The Reorganized Debtor shall file with the Bankruptcy Court and serve on the U.S. Trustee quarterly financial reports for each quarter, or portion thereof, that the Chapter 11 Cases remain open.

## C.    PLAN C – TREATMENT OF CLASSIFIED CLAIMS AND INTERESTS

4.08.    Class 1 – Secured Tax Claims. Each holder of an Allowed Secured Tax Claim shall receive (a) one Cash payment in an amount equal to the principal amount of such Allowed Secured Tax Claim, plus interest at the rate and in the manner prescribed by applicable state law from the later of the Petition Date or the first day after the last day on which such Secured Tax Claim may be paid without penalty, on the Initial Distribution Date, or (b) such other treatment as may be agreed to in writing by the holder of the Secured Tax Claim and the Acis Trustee. The Liens securing such Secured Tax Claims shall remain unimpaired and unaffected until each such Class 1 Claim is paid in full. All Distributions on account of Allowed Class 1 Claims shall be made by the Acis Trustee from the Trust Assets. Class 1 is unimpaired. Holders of Class 1 Claims are conclusively presumed to have accepted the Plan and, accordingly, are not entitled to vote on the Plan.

4.09.    Class 2 – HCLOF Claim. The HCLOF Claim shall be satisfied through the retention by HCLOF of the subordinated notes in each of the Acis CLOs and having the option to elect a reset of the Acis CLOs. Class 2 is Impaired. The Holder of the Class 2 Claim is entitled to vote on the Plan. To the extent that any HCLOF Claim remains unpaid it shall be treated as a Class 5B Claim.

4.10.    Class 3 – Terry Secured Claim. In exchange for a one million dollar ($1,000,000.00) reduction in the amount of his Secured Claim, Terry shall receive one hundred percent (100%) of the equity interests in the Reorganized Debtor as of the Effective Date. The remaining balance of any Allowed Terry Secured Claim shall be treated and paid as a Class 4 General Unsecured Claim. Class 3 is Impaired. The Holder of the Class 3 Terry Secured Claim is entitled to vote on the Plan.

4.11.    Class 4 – General Unsecured Claims.

(a)    Each holder of an Allowed General Unsecured Claim shall receive a promissory note issued by the Reorganized Debtor (each an "Unsecured Cash Flow Note") on the later of (a) that date that is as soon as practicable after the Effective Date, or (b) that date that is as

soon as practicable after such holder's General Unsecured Claim becomes an Allowed Class 4 Claim. Each Unsecured Cash Flow Note shall be dated as of the Effective Date, bear interest at the Plan Rate and shall mature on that date that is the three (3) years after the Effective Date.

(b)    To the extent of Available Cash, the Reorganized Debtor shall make substantially equal quarterly Distributions of principal and accrued interest to each holder of an Unsecured Cash Flow Note, with the first such quarterly Distribution being due and payable on the 90th day after the Effective Date. Thereafter, like Distributions shall be made each quarter by the Reorganized Debtor until the Unsecured Cash Flow Note is paid in full. Notwithstanding the foregoing, in the event that an Unsecured Cash Flow Note is first issued more than ninety (90) days after the Effective Date, the first Distribution made on account of such Unsecured Cash Flow Note shall be made upon the date that the next Distribution would otherwise be due, but such first Distribution shall also include amounts that would have been distributed to the holder of such Unsecured Cash Flow Note had such Unsecured Cash Flow Note been issued prior to ninety (90) days after the Effective Date, such that the first Distribution shall bring all payments current on account of such Unsecured Cash Flow Note. If on any date on which a quarterly Distribution is due to the holder of an Unsecured Cash Flow Note the remaining principal and accrued interest owing on account of such Unsecured Cash Flow Note is less than the regular quarterly Distribution amount, the Reorganized Debtor shall make a Distribution to the holder of such Unsecured Cash Flow Note in an amount sufficient to fully satisfy the remaining principal and accrued interest owed, but no more. Nothing contained herein shall preclude the Reorganized Debtor from prepaying any Unsecured Cash Flow Note.

(c)    Within ninety (90) days of the Effective Date, the Acis Trustee shall make a Pro Rata Distribution to holders of Allowed Class 4 Claims and Allowed Subclass 5A Claims out of Available Cash held by the Acis Trust, which Distribution shall be applied to reduce the outstanding balance of each holder's Unsecured Cash Flow Note. The amount to be so distributed shall be determined in the sole discretion of the Acis Trustee after appropriate Reserves are made by the Acis Trustee, including but not limited to Reserves for Trust Expenses. Although the Distribution by the Acis Trustee to the holders of Allowed Class 4 Claims shall reduce the principal balance of each holder's Unsecured Cash Flow Note, such Distribution by the Acis Trustee will be made in addition to, and not in lieu of, the quarterly Distributions the Reorganized Debtor is required to make to holders of Allowed Class 4 Claims on account of the Unsecured Cash Flow Notes pursuant to this Plan.

(d)    If after making the Pro Rata Distribution pursuant to section 4.11(c) above (and section 4.12(f) below), the Acis Trust obtains additional Cash, through litigation recoveries or otherwise, and the Acis Trustee determines, in his/her sole discretion, that the Acis Trust holds Available Cash sufficient to allow one or more subsequent Pro Rata Distributions to be made to holders of Allowed Class 4 Claims and Allowed Subclass 5A Claims, the Acis Trustee may, but shall not be required to, make one or more additional Pro Rata Distributions to holders of Allowed Class 4 Claims and Allowed Subclass 5A Claims. Any such additional Distributions shall be applied to reduce the outstanding balance of each holder's Unsecured Cash Flow Note.

(e)    Class 4 is Impaired. Holders of Class 4 Claims are entitled to vote on the Plan.

4.12.    <u>Class 5 – Insider Claims</u>. Holders of Class 5 Insider Claims shall be treated as follows:

(a)     Class 5 shall consist of Insider Claims which constitute General Unsecured Claims and shall specifically include any General Unsecured Claim asserted by Highland and any Affiliate of Highland.

(b)     Class 5 Claims shall be divided into two (2) subclasses.  Subclass 5A shall consist of all Allowed Class 5 claims which are not subject to equitable subordination.  Subclass 5B shall consist of all Class 5 claims which are determined by the Bankruptcy Court to be subject to equitable subordination.  If only a part of a Class 5 Claim is subject to equitable subordination, then the portion of such claim subject to equitable subordination shall be included in Subclass 5B and the remainder not subject to equitable subordination shall be included in Subclass 5A.

(c)     All Class 5 Claims (regardless of which subclass) shall be and remain subject to all Estate Defenses and all Estate Claims, both as offsets and for an affirmative recovery against the Holder of any Class 5 Claim.

(d)     Each holder of an Allowed Subclass 5A Claim shall receive an Unsecured Cash Flow Note on the later of (a) that date that is as soon as practicable after the Effective Date, or (b) that date that is as soon as practicable after such holder's Subclass 5A Claim becomes an Allowed Subclass 5A Claim.  Each Unsecured Cash Flow Note shall be dated as of the Effective Date, bear interest at the Plan Rate and shall mature on that date that is the three (3) years after the Effective Date.

(e)     To the extent of Available Cash, the Reorganized Debtor shall make substantially equal quarterly Distributions of principal and accrued interest to each holder of an Unsecured Cash Flow Note, with the first such quarterly Distribution being due and payable on the 90th day after the Effective Date.  Thereafter, like Distributions shall be made each quarter by the Reorganized Debtor until the Unsecured Cash Flow Note is paid in full.  Notwithstanding the foregoing, in the event that an Unsecured Cash Flow Note is first issued more than ninety (90) days after the Effective Date, the first Distribution made on account of such Unsecured Cash Flow Note shall be made upon the date that the next Distribution would otherwise be due, but such first Distribution shall also include amounts that would have been distributed to the holder of such Unsecured Cash Flow Note had such Unsecured Cash Flow Note been issued prior to ninety (90) days after the Effective Date, such that the first Distribution shall bring all payments current on account of such Unsecured Cash Flow Note.  If on any date on which a quarterly Distribution is due to the holder of an Unsecured Cash Flow Note the remaining principal and accrued interest owing on account of such Unsecured Cash Flow Note is less than the regular quarterly Distribution amount, the Reorganized Debtor shall make a Distribution to the holder of such Unsecured Cash Flow Note in an amount sufficient to fully satisfy the remaining principal and accrued interest owed, but no more.  Nothing contained herein shall preclude the Reorganized Debtor from prepaying any Unsecured Cash Flow Note.

(f)     Within ninety (90) days of the Effective Date, the Acis Trustee shall make a Pro Rata Distribution to holders of Allowed Class 4 Claims and Allowed Subclass 5A Claims out of Available Cash held by the Acis Trust, which Distribution shall be applied to reduce the outstanding balance of each holder's Unsecured Cash Flow Note.  The amount to be so distributed shall be determined in the sole discretion of the Acis Trustee after appropriate Reserves are made by the Acis Trustee, including but not limited to Reserves for Trust Expenses.  Although the Distribution by the Acis Trustee to the holders of Allowed Class 4 Claims shall reduce the principal balance of each holder's Unsecured Cash Flow Note, such Distribution by the Acis Trustee will be made in addition to, and not in lieu of, the quarterly

Distributions the Reorganized Debtor is required to make to holders of Allowed Class 4 Claims on account of the Unsecured Cash Flow Notes pursuant to this Plan.

(g)     If after making the Pro Rata Distribution pursuant to sections 4.11(c) and 4.12(f) above, the Acis Trust obtains additional Cash, through litigation recoveries or otherwise, and the Acis Trustee determines, in his/her sole discretion, that the Acis Trust holds Available Cash sufficient to allow one or more subsequent Pro Rata Distributions to be made to holders of Allowed Class 4 Claims and Allowed Subclass 5A Claims, the Acis Trustee may, but shall not be required to, make one or more additional Pro Rata Distributions to holders of Allowed Class 4 Claims and Allowed Subclass 5A Claims.  Any such additional Distributions shall be applied to reduce the outstanding balance of each holder's Unsecured Cash Flow Note.

(h)     Unless otherwise provided by Order of the Bankruptcy Court, holders of Subclass 5B claims shall not be entitled to any Distribution from the Acis Trust until all Allowed Claims included in Classes 1 through 4 and Subclass 5A have been paid in full.  At any time after all Allowed Claims in Classes 1 through 4 and Subclass 5A have been paid in full, and prior to conclusion of the business of the Acis Trust, the Acis Trustee may, in his/her sole discretion, make one or more Distributions of Available Cash from the Acis Trust to holders of Allowed Subclass 5B Claims.  Any such Distribution, if less than the then unpaid principal amount of all Allowed Subclass 5B Claims, together with interest thereon at the Plan Rate from the Effective Date through the date of such Distribution, shall be made Pro Rata to the holders of Allowed Subclass 5B Claims.

(i)     After (A) all Allowed Claims in Classes 1 through 4 and Subclass 5A have been paid in full, (B) the Acis Trustee has made a determination that the business of the Acis Trust is concluded, and (C) the Acis Trustee has paid or made appropriate Reserves for the payment of all remaining Trust Expenses, the Acis Trustee shall, as soon as practicable, make a Pro Rata Distribution of the remaining Cash of the Acis Trust to holders of Allowed Subclass 5B Claims, up to the amount necessary to fully pay the remaining unpaid principal balance of such Allowed Subclass 5B Claims with interest thereon at the Plan Rate from the Effective Date through the date of such final Distribution.

(j)     The Acis Trustee may establish appropriate Reserves as to any Contested Claim included in Class 5.

(k)     Class 5 is Impaired.  Holders of Class 5 Claims are entitled to vote on the Plan.

4.13.   Class 6 – Interests.  All Interests in the Debtors shall be extinguished and shall cease to exist as of the Effective Date. The holders of such Interests shall not receive or retain any property on account of such Interests under the Plan.  Class 6 is Impaired.  Holders of Class 6 Interests are conclusively presumed to have rejected the Plan and, accordingly, are not entitled to vote on the Plan.

## D.     PLAN C – ACCEPTANCE OR REJECTION

4.14.   Classes Entitled to Vote.  Creditors in Classes 2 through 5 are entitled to vote and shall vote separately to accept or reject the Plan.  Any unimpaired Class shall not be entitled to vote to accept or reject the Plan.  Any unimpaired Class is deemed to have accepted the Plan under section 1126(f) of the Bankruptcy Code.

4.15.    Class Acceptance Requirement. A Class of Claims shall have accepted the Plan if it is accepted by at least two-thirds (2/3) in amount and more than one-half (1/2) in number of the Allowed Claims in such Class that have voted on the Plan.

4.16.    Cramdown. This section shall constitute the request by the Plan proponents, pursuant to section 1129(b) of the Bankruptcy Code, that the Bankruptcy Court confirm the Plan notwithstanding the fact that the requirements of section 1129(a)(8) of the Bankruptcy Code have not been met.

## E.    PLAN C – MEANS FOR IMPLEMENTATION

4.17.    Acis Trust. The Acis Trust shall be created as of the Effective Date in accordance with the terms of this Plan and the Acis Trust Agreement.  The Debtors and the Estate shall be the settlors of the Acis Trust. The reorganized Acis will be the residual beneficiary of the Acis Trust and receive all distributions after all classes of Claims have been paid in full.

4.18.    Transfers of Assets. As of the Effective Date (a) all Cash, Estate Accounts Receivable, Estate Claims and Estate Defenses shall be transferred from the Estate to, and be vested in, the Acis Trust, and (b) all other Estate Assets, unless otherwise expressly stated in this Plan, shall be transferred to, and vested in, the Reorganized Debtor.  After the Effective Date, the Acis Trustee may still abandon any Acis Trust Assets which are burdensome or have no or inconsequential value to the Acis Trust.  Any such abandoned assets shall be deemed transferred to and vested in the Reorganized Debtor.  All Estate Assets transferred to either the Acis Trust or the Reorganized Debtor shall be transferred to, and vested in, the Acis Trust or the Reorganized Debtor free and clear of all Liens, Claims, rights, Interests and charges, except as expressly provided in this Plan.

4.19.    Assumption of Obligations to Make Distributions.  The Acis Trustee and the Reorganized Debtor shall be deemed to have assumed the obligations to make the Distributions pursuant to this Plan to the extent the Plan identifies the Acis Trustee or the Reorganized Debtor as responsible for making such Distributions.

4.20.    Actions by the Debtors, the Reorganized Debtor and the Acis Trustee to Implement Plan.  The entry of the Confirmation Order shall constitute all necessary authorization for the Debtors, the Reorganized Debtor and the Acis Trustee to take or cause to be taken all actions necessary or appropriate to consummate, implement or perform all provisions of this Plan on and after the Effective Date, and all such actions taken or caused to be taken shall be deemed to have been authorized and approved by the Bankruptcy Court without further approval, act or action under any applicable law, order, rule or regulation, including without limitation, (a) all transfers of Assets, including to the Acis Trust, that are to occur pursuant to the Plan; (b) the cancellation of Interests and issuance of 100% of the equity interests in the Reorganized Debtor to Terry; (c) the performance of the terms of the Plan and the making of all Distributions required under the Plan; and (d) subject to the terms of the Plan, entering into any and all transactions, contracts, or arrangements permitted by applicable law, order, rule or regulation.

4.21.    Termination of Highland as Sub-Servicer and Sub-Advisor.  The Shared Services Agreement and Sub-Advisory Agreement shall be rejected and Highland shall be terminated as the sub-servicer and sub-advisor with respect to the Acis CLOs (or any reset CLOs).  The

Reorganized Debtor shall hire Terry as its Chief Trader and Terry may, at his discretion, hire additional personnel as he deems appropriate.

4.22. <u>Continued Portfolio Management by the Reorganized Debtor</u>. The PMAs shall be assumed and the Reorganized Debtor shall, from and after the Effective Date, serve as the portfolio manager with respect to the Acis CLOs (or any reset CLOs). The Reorganized Debtor may not be removed as portfolio manager under the assumed PMAs without cause.

4.23. <u>Option for HCLOF to Elect a Reset of the Acis CLOs</u>. HCLOF shall have the option to elect to reset the Acis CLOs. If HCLOF elects to fund a reset, the Reorganized Debtor shall thereafter reset the Acis CLOs consecutively rather than simultaneously, consistent with market standards, but shall only effectuate the reset to the extent that HCLOF commits to fund the reset. If HCLOF elects not to reset the Acis CLOs, then the Acis CLOs will continue to be managed in accordance with market standards.

4.24. <u>Amendment of Indentures</u>. The Indentures shall be amended to provide that the Acis CLOs cannot be called for redemption until the later of (a) the date on which all Allowed Claims against the Debtors have been paid in full, or (b) three (3) years after the Effective Date. In the event that the Acis CLOs are reset, any new indenture with respect to a reset CLO shall provide that the reorganized Acis will continue as the portfolio manager and the reset CLO cannot be called for redemption until the later of (y) the date on which all Allowed Claims against the Debtors have been paid in full, or (z) three (3) years after the Effective Date.

4.25. <u>Post-Effective Date Service List</u>. Pleadings filed by any party-in-interest with the Bankruptcy Court after the Effective Date shall be served on the following Persons (collectively the "<u>Service List</u>"): (a) any Person directly affected by the relief sought in the pleading, (b) the U.S. Trustee, (c) parties which have filed a Notice of Appearance in the Chapter 11 Cases, (d) the Acis Trustee through legal counsel, and (e) the Reorganized Debtor.

4.26. <u>Section 505 Powers</u>. All rights and powers pursuant to section 505 of the Bankruptcy Code are hereby reserved to the Estate and shall be transferred to, and vested in, the Acis Trustee as of the Effective Date.

4.27. <u>Section 510(c) Powers</u>. All rights and powers to seek or exercise any right or remedy of equitable subordination are hereby reserved to the Estate and shall be transferred to, and vested in, the Acis Trustee as of the Effective Date as an Estate Defense.

4.28. <u>Section 506(c) Powers</u>. The Estate hereby reserves all rights and powers pursuant to section 506(c) of the Bankruptcy Code, and all such rights shall be specifically transferred to, and vested in, the Acis Trustee.

4.29. <u>Plan Injunction</u>. The Acis Trustee and the Reorganized Debtor shall each have full power, standing and authority to enforce the Plan Injunction against any Person, either through an action before the Bankruptcy Court or any other tribunal having appropriate jurisdiction.

4.30. <u>Cancellation of Interests</u>. Except as otherwise specifically provided herein, upon the Effective Date of the Plan: (a) all Interests in the Debtors shall be cancelled; and (b) all obligations or debts of, or Claims against, the Debtors on account of, or based upon, the Interests shall be deemed as cancelled, released and discharged, including all obligations or duties by the Debtors relating to the Interests in any of their respective formation documents,

including Acis LP's limited partnership agreement and bylaws, Acis GP's articles of formation and company agreement, or any similar formation or governing documents.

## F.    PLAN C – ACIS TRUST

4.31.    Acis Trust.  On the Effective Date, the Acis Trust shall be created pursuant to the Acis Trust Agreement which shall be executed on behalf of the Debtors and by the Acis Trustee to accept the appointment.  The Acis Trust Agreement shall be in substantially the same form as the attached **Exhibit C**.  The Acis Trust shall not terminate upon the death or incapacity of the Acis Trustee and shall continue until its termination in accordance with the terms of this Plan and the Acis Trust Agreement.  Reference is here made to the Acis Trust Agreement for all purposes which shall constitute an integral part of the Plan.

4.32.    Compensation of Acis Trustee.  The Acis Trustee shall be compensated from the Acis Trust Assets in the manner set forth in the Acis Trust Agreement as a Trust Expense.  The Acis Trustee shall also be entitled to reimbursement of reasonable and necessary out-of-pocket expenses incurred in the performance of such duties, also as a Trust Expense.

4.33.    Acis Trust Assets.  The Debtors and the Estate shall constitute the settlors of the Acis Trust.  As of the Effective Date, the Acis Trust Assets shall specifically include without limitation: (a) all Estate Cash, (b) all Estate Accounts Receivable, (c) all Estate Claims, and (d) all Estate Defenses.  To evidence the transfer of the applicable Estate Assets to the Acis Trust, the Debtors shall, if requested by the Acis Trustee, execute on behalf of the Debtors and Estate, as settlors, an Assignment of Trust Assets transferring the applicable Estate Assets to the Acis Trust which shall be included among the Plan Documents.

4.34.    Distributions from Acis Trust.  The Acis Trustee shall be responsible for making Distributions from the Acis Trust to holders of Allowed Claims only to the extent this Plan requires Distributions to be made by the Acis Trustee.  The Acis Trustee shall have no responsibility to make any Distributions which this Plan expressly identifies as Distributions required to be made by the Reorganized Debtor.  The priority of Distributions from the Acis Trust shall be in accordance with the terms of this Plan and the Confirmation Order as follows:

(a)    First, to satisfy Allowed Class 1 Secured Tax Claims;

(b)    Second, to satisfy Allowed Administrative Expenses and Allowed Priority Claims in accordance with Article IV.B above, including all U.S. Trustee quarterly fees due and owing as of the Effective Date;

(c)    Third, to pay Trust Expenses;

(d)    Fourth, to make Distributions to holders of any Allowed Class 4 General Unsecured Claims and Allowed Subclass 5A Claims;

(e)    Fifth, to make Distributions to holders of any Allowed Subclass 5B Claims; and

(f)    Sixth, to make a Distribution of any remaining Acis Trust Assets to the Reorganized Debtor, as the residual Beneficiary of the Acis Trust.

4.35.    Reserves.  The Acis Trustee may estimate, create and set aside Reserves as may be necessary or appropriate, including without limitation, Reserves on account of

Contested Claims and for Trust Expenses. The Acis Trustee may, but shall not be required to, move the Bankruptcy Court to approve: (a) the amount of, and terms on which, such Reserves shall be held, maintained and disbursed, or (b) the amount and timing of any proposed interim Distribution to holders of Allowed Class 4 Claims and Allowed Subclass 5A Claims. The Acis Trustee may elect to seek approval by the Bankruptcy Court for the creation and amount of any Reserves or regarding the amount or timing of any Distribution on account of any Allowed Claims. Except as otherwise expressly provided herein, the Acis Trustee, in the exercise of his/her good faith business judgment, may transfer funds out of any of the Reserves as necessary or appropriate. However, the Acis Trustee shall not be required to create separate accounts for such Reserves which may be created and memorialized by entries or other accounting methodologies, which may be revised from time-to-time, to enable the Acis Trustee to determine the amount of Cash available for Distribution to Beneficiaries of the Acis Trust. Subject to any specific deadlines set forth herein, the Acis Trustee, shall determine, from time-to-time, in the exercise of the Acis Trustee's good faith business judgment: (x) the amount of Cash available for Distribution to Beneficiaries, (y) the timing of any Distributions to Beneficiaries, and (z) the amount and creation of any Reserves for Contested Claims or Trust Expenses. The Acis Trustee shall not be entitled to reserve for, and this section 4.35 does not apply to, Distributions to holders of Allowed Subclass 5B Claims.

4.36. <u>Trust Expenses</u>. The Acis Trustee shall be entitled to pay all Trust Expenses without the necessity of further order of the Bankruptcy Court. Without limiting the generality of the foregoing, the Acis Trust may retain, compensate and reimburse Trust Professionals retained by the Acis Trust without the necessity of further order of the Bankruptcy Court. However, the Acis Trustee shall be entitled, should the Acis Trustee so elect, to request the Bankruptcy Court to approve any Trust Expense or the retention of any Trust Professional.

4.37. <u>Powers and Duties of the Acis Trustee</u>. The Acis Trustee's duties and compensation, to the extent not set forth herein, shall be as set forth in the Acis Trust Agreement which shall be one of the Plan Documents. The Acis Trustee shall constitute a representative of the Estate pursuant to section 1123(b)(3)(B) of the Bankruptcy Code, and shall be clothed with all powers, rights, duties and responsibilities pursuant to this Plan, the Confirmation Order and the Acis Trust Agreement.

4.38. <u>Exercise of Acis Trustee's Powers</u>. The Acis Trustee shall be entitled to exercise all powers pursuant to this Plan and the Acis Trust Agreement, without further order or approval of the Bankruptcy Court except as otherwise expressly provided herein or in the Acis Trust Agreement or Confirmation Order.

4.39. <u>Prosecution and Settlement of Estate Claims</u>. Upon the Effective Date, the Acis Trustee (a) shall automatically be substituted in place of the Debtors as the party representing the Estate in respect of any pending lawsuit, motion or other pleading pending before the Bankruptcy Court or any other tribunal, and (b) is authorized to file a notice on the docket of each adversary proceeding or the Chapter 11 Cases regarding such substitution. The Acis Trustee shall have exclusive standing and authority to prosecute, settle or compromise Estate Claims for the benefit of the Acis Trust in the manner set forth in this Plan and the Acis Trust Agreement.

4.40. <u>Exculpation of Acis Trustee.</u> The Acis Trustee shall stand in a fiduciary relationship to the Beneficiaries of the Acis Trust. In the performance of its duties, the Acis Trustee shall be entitled to act, or refrain from acting, based on the exercise of his/her good faith business judgment. However, the Acis Trustee shall be fully exculpated, and shall have no

liability for acts or omissions, in the manner and to the extent set forth in the Acis Trust Agreement.

4.41.   <u>Indemnity</u>.  The Acis Trust shall indemnify and hold harmless the Acis Trustee in the manner and to the extent set forth in the Acis Trust Agreement.

4.42.   <u>Resignation of Acis Trustee</u>.  The Acis Trustee may resign as provided in the Acis Trust Agreement.

4.43.   <u>Replacement of the Acis Trustee</u>.  The Acis Trustee may be replaced in the manner and on the terms as set forth in the Acis Trust Agreement.

4.44.   <u>Reliance by Acis Trustee</u>.  In the performance of the duties pursuant to this Plan, the Acis Trustee may rely upon any document or instrument which the Acis Trustee in good faith believes to be genuine and to have been signed or executed by the proper parties.

4.45.   <u>Plan Injunction</u>.  The Acis Trustee and Acis Trust shall be entitled to the full protection and benefit of the Plan Injunction and shall have standing to bring any action or proceeding necessary to enforce the Plan Injunction against any Person.

4.46.   <u>Tax Treatment.</u>  The Acis Trust shall be treated as a "liquidating trust" within the meaning of Section 301.7701-4(d) of the Treasury Regulations.  The Acis Trustee shall, in an expeditious but orderly manner, collect, liquidate and convert to Cash all non-cash Acis Trust Assets, and make timely Distributions to Beneficiaries of the Acis Trust, and shall not unduly prolong its duration.

4.47.   <u>Transfer of Claims</u>.  Holders of Allowed Claims shall not receive any certificate or other document to evidence their beneficial interest in the Acis Trust.  The transfer of Claims after the Effective Date is subject to section 5.04 of this Plan.

4.48.   <u>Construction of Acis Trust Documents</u>.  This Plan and the Acis Trust Agreement shall control over any inconsistent provision of the Disclosure Statement.  The Plan and Confirmation Order shall control over any inconsistent provision of the Acis Trust Agreement.  The Confirmation Order shall control over any inconsistent provision of the Disclosure Statement, the Acis Trust Agreement or this Plan.

4.49.   <u>Relief from the Bankruptcy Court</u>.  The Acis Trustee shall be authorized to seek relief from the Bankruptcy Court or any other tribunal having jurisdiction as to any matter relating or pertaining to the consummation, administration or performance of this Plan, including without limitation seeking any relief from the Bankruptcy Court which the Acis Trustee deems necessary or appropriate to the performance of its duties, the administration of this Plan, or the liquidation and distribution of the Acis Trust Assets.

4.50.   <u>Removal for Cause</u>.  The Acis Trustee may be removed for cause shown in the manner and on the terms set forth in the Acis Trust Agreement.

## ARTICLE V.
## PROVISIONS GOVERNING DISTRIBUTION

5.01.   <u>Source of Distributions</u>.  All Distributions required to be made by the Acis Trustee under this Plan shall be made by the Acis Trustee in the manner provided in this Plan, the

Confirmation Order and the Acis Trust Agreement.  All Distributions required to be made by the Reorganized Debtor under this Plan shall be made by the Reorganized Debtor in the manner provided in this Plan and the Confirmation Order.

5.02.   _Timing and Amount of Distributions_.  No Distribution shall be made on account of any Claim until such Claim is Allowed, except as otherwise set forth in this Plan or otherwise ordered by the Bankruptcy Court.  No Distribution shall be made on account of any Contested Claim until such Claim is Allowed.  Except as expressly set forth in the Plan or in the Confirmation Order, the Acis Trustee and, if applicable, the Reorganized Debtor, shall, in the exercise of its or their good faith business judgment, determine the timing and amount of all Distributions which are required to be made under the Plan, consistent with the goal of making such Distributions as expeditiously as reasonably possible.  The Acis Trustee and the Reorganized Debtor may, but shall not be required to, seek approval of, or any other appropriate relief from, the Bankruptcy Court with respect to any of such Distributions.  Any Unclaimed Property may be paid into the registry of the Bankruptcy Court or otherwise distributed in accordance with the orders of the Bankruptcy Court.

5.03.   _Means of Cash Payment_.  Cash payments pursuant to this Plan shall be made by check drawn on, or by wire transfer from, a domestic bank, or by other means agreed to by the payor and payee.

5.04.   _Record Date for Distributions_.  As of the close of business on the Effective Date (the "_Distribution Record Date_"), the register for Claims will be closed, and there shall be no further changes in the holders of record of any Claims.  Although there is no prohibition against the transfer of any Claim by any Creditor, the Acis Trustee and the Reorganized Debtor shall have no obligation to recognize any transfer of a Claim occurring after the Distribution Record Date, and the Acis Trustee and the Reorganized Debtor shall instead be authorized and entitled to recognize and deal for all purposes under this Plan, including for the purpose of making all Distributions, with only those holders of Claims so reflected as of the Distribution Record Date.  However, the Acis Trustee and the Reorganized Debtor may, in the exercise of their good faith business judgment, agree to recognize transfers of Claims after the Distribution Record Date, but shall have no obligation to do so.

5.05.   _Delivery of Distributions_.  All Distributions, deliveries and payments to the holders of any Allowed Claims shall be made to the addresses set forth on the respective proofs of Claim filed in the Chapter 11 Cases by such Claimants or, if the Distribution is to be made based on a Claim reflected as Allowed in the Schedules, at the address reflected in the Schedules.  Any such Distribution, delivery or payment shall be deemed as made for all purposes relating to this Plan when deposited in the United States Mail, postage prepaid, addressed as required in the preceding sentence.  If any Distribution is returned as undeliverable, no further Distribution shall be made on account of such Allowed Claim unless and until the Acis Trustee or, if applicable, the Reorganized Debtor, is notified of such holder's then current address, at which time all missed Distributions shall be made to the holder of such Allowed Claim.  However, all notices to the Acis Trustee or the Reorganized Debtor reflecting new or updated addresses for undeliverable Distributions shall be made on or before one hundred twenty (120) days after the date of the attempted Distribution or such longer period as the Acis Trustee or, if applicable, the Reorganized Debtor, may fix in the exercise of their sole discretion.  After such date, all Unclaimed Property shall revert to the Acis Trustee (or to the Reorganized Debtor if the applicable Distribution is the responsibility of the Reorganized Debtor) and the Claim of any holder with respect to such property shall be discharged and forever barred.

Case 18-30264-sgj11 Doc 405 Filed 07/13/18   Entered 07/13/18 19:19:31   Page 131 of 169

Case 18-30264-sgj11 Doc 383 Filed 07/05/18   Entered 07/05/18 15:56:54   Page 43 of 59

5.06.   <u>W-9 Forms</u>.  Each holder of an Allowed Claim must provide a W-9 form or other such necessary information to comply with any withholding requirements of any governmental unit (collectively the "<u>W-9 Form</u>") to the Acis Trustee prior to receiving any Distribution from the Acis Trust.  In the event a holder of an Allowed Claim does not provide a W-9 Form to the Acis Trustee within thirty (30) days of the Effective Date, the Acis Trustee shall, at an appropriate time, issue a written request to each holder of an Allowed Claim that has not previously provided a W-9 Form to the Acis Trustee.  The request shall be in writing and shall be delivered to the last address known to the Debtors or Acis Trustee, as appropriate.  The request shall conspicuously advise and disclose that failure to provide a W-9 Form to the Acis Trustee within thirty (30) days shall result in a waiver of any right or rights to a Distribution from the Acis Trust. In the event any holder of an Allowed Claim fails to provide the Acis Trustee with a W-9 Form within thirty (30) days after the date of written request described herein, then the holder of such Allowed Claim shall be deemed to have waived the right to receive any Distribution whatsoever from the Acis Trust.

5.07.   <u>Time Bar to Cash Payments</u>.  Checks issued in respect of Allowed Claims shall be null and void if not cashed within ninety (90) days of the date of issuance thereof.  Requests for reissuance of any check shall be made directly to the issuer of the check (either the Acis Trustee or the Reorganized Debtor) by the holder of the Allowed Claim with respect to which such check originally was issued.  Any Claim in respect of such a voided check shall be made on or before one hundred twenty (120) days after the date of issuance of such check or such longer period as the Acis Trustee or the Reorganized Debtor may fix.  After such date, all Claims in respect of void checks shall be discharged and forever barred.

5.08.   <u>Cure Period</u>.  Except as otherwise set forth herein, the failure by the Acis Trustee or the Reorganized Debtor to timely perform any term, provision or covenant contained in this Plan, or to make any payment or Distribution required by this Plan to any Creditor, or the failure to make any payment or perform any covenant on any note, instrument or document issued pursuant to this Plan, shall not constitute an event of default unless and until the Acis Trustee or the Reorganized Debtor, as applicable, has been given thirty (30) days written notice of such alleged default in the manner provided in this Plan, and provided an opportunity to cure such alleged default.  Until the expiration of such thirty (30) day cure period, the Acis Trustee or the Reorganized Debtor shall not be in default, and performance during such thirty (30) day cure period shall be deemed as timely for all purposes.  Such written notice and passage of the thirty (30) day cure period shall constitute conditions precedent to declaring or claiming any default under this Plan or bringing any action or legal proceeding by any Person to enforce any right granted under this Plan.

5.09.   <u>Distributions after Substantial Consummation</u>.  All Distributions of any kind made to any Creditor after Substantial Consummation and any and all other actions taken under this Plan after Substantial Consummation shall not be subject to relief, reversal or modification by any court unless the implementation of the Confirmation Order is stayed by an order granted under Bankruptcy Rule 8005.

**ARTICLE VI.**
**RETENTION OF ESTATE CLAIMS AND ESTATE DEFENSES.**

6.01.   <u>Retention of Estate Claims</u>.  Except as otherwise specifically provided in this Plan, pursuant to section 1123(b)(3) of the Bankruptcy Code, all Estate Claims shall be transferred to, and vested in, the Acis Trustee, both for purposes of seeking an affirmative recovery against any Person and as an offset or defense against any Claim asserted against

the Estate or Acis Trust. Without limiting the generality of the foregoing, all applicable legal privileges of the Debtors or Estate, including both the attorney-client privilege and the work product privilege, shall be vested in the Acis Trustee who shall be clothed with the sole and exclusive standing and authority to assert any such privilege on behalf of the Debtors, Estate or Acis Trust. All Estate Claims shall be deemed to have been transferred to, and vested in, the Acis Trustee as of the Effective Date based on the entry of the Confirmation Order.

Without limiting the effectiveness or generality of the foregoing reservation, out of an abundance of caution, the Debtors and the Estate hereby specifically reserve and retain the Estate Claims reflected in the attached **Exhibit D**. Reference is here made to **Exhibit D** which constitutes an integral part of this Plan. The provisions of this Article of the Plan, as well as the descriptions and disclosures relating to the Estate Claims in the Disclosure Statement, are provided in the interest of providing maximum disclosure of the Estate Claims of which Debtors are presently aware, and shall not act as a limitation on the potential Estate Claims that may exist. It is the specific intention of this Plan that all Avoidance Actions and all associated remedies, and any other Estate Claims, whether arising before or after the Petition Date, and whether arising under the Bankruptcy Code or applicable state or federal non-bankruptcy laws, shall all be retained and preserved under this Plan to be transferred to, and vested in the Acis Trustee. All Estate Claims are retained both as causes of action for an affirmative recovery and as counterclaims and offset to any Claims asserted against the Estate.

6.02.   Retention of Estate Defenses.  Except as otherwise specifically provided in this Plan, pursuant to section 1123(b)(3) of the Bankruptcy Code, all Estate Defenses shall be transferred to, and vested in, the Acis Trustee. For this purpose, all Estate Defenses are hereby reserved and retained by the Debtors and the Estate, including without limitation all such Estate Defenses available to the Estate pursuant to section 558 of the Bankruptcy Code, and shall be deemed as transferred to, and vested in, the Acis Trustee as of the Effective Date based on the entry of the Confirmation Order.

6.03.   Assertion of Estate Claims and Estate Defenses.  The Acis Trustee shall have, and be vested with, the exclusive right, authority and standing to assert all Estate Claims and Estate Defenses for the benefit of the Acis Trust and, if applicable, the Reorganized Debtor.

**ARTICLE VII.**
**PROCEDURES FOR RESOLVING AND TREATING**
**CONTESTED AND CONTINGENT CLAIMS**

7.01.   Claims Listed in Schedules as Disputed.  Any General Unsecured Claim which is listed in the Schedules as unliquidated, contingent or disputed, and for which no proof of Claim has been timely filed, shall be considered as Disallowed as of the Effective Date without the necessity of any further action by the Acis Trustee or further order of the Bankruptcy Court other than the entry of the Confirmation Order.

7.02.   Responsibility for Objecting to Claims and Settlement of Claims.  The Acis Trustee shall have the exclusive standing and authority to either object to any Claim or settle and compromise any Objection to any Claim, including as follows:

(a)     From and after the Effective Date, the Acis Trustee shall have the sole and exclusive right to (i) file, settle, or litigate to Final Order any Objections to any Claims; and (ii) seek to subordinate any Claim. Any Contested Claim may be litigated to Final Order by the Acis Trustee; and

(b)      From and after the Effective Date, the Acis Trustee shall have the sole and exclusive right to settle, compromise or otherwise resolve any Contested Claim without the necessity of any further notice or approval of the Bankruptcy Court.  Bankruptcy Rule 9019 shall not apply to any settlement or compromise of a Contested Claim after the Effective Date.

7.03.    <u>Objection Deadline</u>.  All Objections to Claims shall be served and filed by the Objection Deadline; <u>provided, however</u>, the Objection Deadline shall not apply to Claims which are not reflected in the claims register, including any alleged informal proofs of Claim.  The Acis Trustee may seek to extend the Objection Deadline pursuant to a motion filed on or before the then applicable Objection Deadline with respect to any Claim.  Any such motion may be granted without notice or a hearing.  In the event that the Acis Trustee files such a motion and the Bankruptcy Court denies such motion, the Objection Deadline shall nevertheless be automatically extended to that date which is ten (10) Business Days after the date of entry of the Bankruptcy Court's order denying such motion.  Any proof of Claim other than one based upon a Rejection Claim and which is filed more than thirty (30) days after the Effective Date shall be of no force and effect and need not be objected to by the Acis Trustee.  Nothing contained herein shall limit the right of the Acis Trustee to object to Claims, if any, filed or amended after the Objection Deadline.

7.04.    <u>Response to Claim Objection</u>.  If the Acis Trustee files an Objection to any Claim, then the holder of such Claim shall file a written response to such Objection within twenty-four (24) days after the filing and service of the Objection upon the holder of the Contested Claim.  Each such Objection shall contain appropriate negative notice advising the Creditor whose Claim is subject to the Objection of the requirement and time period to file a response to such Objection and that, if no response is timely filed to the Objection, the Bankruptcy Court may enter an order that such Claim is Disallowed without further notice or hearing.  The negative notice language in the Objection shall satisfy the notice requirement in section 3007(a) of the Bankruptcy Rules, and the Acis Trustee shall not be required to send a separate notice of the Objection to the Creditor whose Claim is subject to the Objection.

7.05.    <u>Distributions on Account of Contested Claims</u>.  If a Claim is Contested, then the dates for any Distributions as to such Contested Claim shall be determined based upon its date of Allowance, and thereafter Distribution shall be made on account of such Allowed Claim pursuant to the provisions of the Plan.  No Distribution shall be made on account of a Contested Claim until Allowed.  Until such time as a contingent Claim becomes fixed and absolute by a Final Order Allowing such Claim, such Claim shall be treated as a Contested Claim for purposes of estimates, allocations, and Distributions under the Plan.  Any contingent right to contribution or reimbursement shall continue to be subject to section 502(e) of the Bankruptcy Code.

7.06.    <u>No Waiver of Right to Object</u>.  Except as expressly provided in this Plan, nothing contained in the Disclosure Statement, this Plan, the Confirmation Order or the Acis Trust Agreement shall waive, relinquish, release or impair the Acis Trustee's right to object to any Claim.

7.07.    <u>Offsets and Defenses</u>.  The Acis Trustee shall be vested with and retain all Estate Claims and Estate Defenses, including without limitation all rights of offset or recoupment and all counterclaims against any Claimant holding a Claim.  Assertion of counterclaims by the Acis Trustee against any Claim asserted against the Estate or Acis Trustee shall constitute "core" proceedings.

7.08.  <u>Claims Paid or Reduced Prior to Effective Date</u>.  Notwithstanding the contents of the Schedules, Claims listed therein as undisputed, liquidated and not contingent shall be reduced by the amount, if any, that was paid by the Debtors prior to the Effective Date, including pursuant to orders of the Bankruptcy Court.  To the extent such payments are not reflected in the Schedules, such Schedules will be deemed amended and reduced to reflect that such payments were made.  Nothing in the Plan shall preclude the Debtors, the Acis Trustee, or the Reorganized Debtor from paying Claims that the Debtors were authorized to pay pursuant to any Final Order entered by the Bankruptcy Court prior to the Confirmation Date.

## ARTICLE VIII.
## EXECUTORY CONTRACTS AND UNEXPIRED LEASES

8.01.  <u>Assumption and Rejection of Executory Contracts</u>.  All Executory Contracts and Unexpired Leases of the Debtors shall be deemed rejected by the Debtors upon the Effective Date unless an Executory Contract or Unexpired Lease (a) has been previously assumed or rejected pursuant to an order of the Bankruptcy Court, (b) is identified in this Plan and/or the Confirmation Order to be (i) assumed or (ii) assumed and assigned to the Transferee, or (c) is the subject of a motion to assume filed on or before the Confirmation Date. The Plan shall constitute a motion to reject the Executory Contracts and Unexpired Leases except as stated in this paragraph.  However, the Debtors may file a separate motion for the assumption or rejection of any Executory Contract or Unexpired Lease at any time through the Confirmation Date.

8.02.  <u>Cure Payments</u>. All payments that may be required by section 365(b)(1) of the Bankruptcy Code to satisfy any Cure Claim shall be made by the Acis Trustee as soon as reasonably practical after the Effective Date or upon such terms as may be otherwise agreed between the Acis Trustee and the holder of such Cure Claim; *provided, however*, in the event of a dispute regarding the amount of any Cure Claim, the cure of any other defaults, or any other matter pertaining to assumption or assignment of an Executory Contract, the Acis Trustee shall make such cure payments and cure such other defaults, all as may be required by section 365(b)(1) of the Bankruptcy Code, following the entry of a Final Order by the Bankruptcy Court resolving such dispute.

8.03.  <u>Bar to Rejection Claims</u>.  Except as otherwise ordered by the Bankruptcy Court, any Rejection Claim based on the rejection of an Executory Contract or Unexpired Lease shall be forever barred and shall not be enforceable against the Acis Trust, the Acis Trust Assets, the Reorganized Debtor, or the Reorganized Debtor's assets unless a proof of Claim is filed with the Bankruptcy Court and served upon the Acis Trustee and its counsel by the earlier of thirty (30) days after the Effective Date or thirty (30) days after entry of the Final Order approving rejection of such Executory Contract or Unexpired Lease.

8.04.  <u>Rejection Claims</u>.  Any Rejection Claim not barred by section 8.03 of the Plan shall be classified as a Class 4 General Unsecured Claim subject to the provisions of sections 502(b)(6) and 502(g) of the Bankruptcy Code; *provided, however*, that any Rejection Claim by a lessor based upon the rejection of an unexpired lease of real property, either prior to the Confirmation Date, upon the entry of the Confirmation Order, or upon the Effective Date, shall be limited in accordance with section 502(b)(6) of the Bankruptcy Code and state law mitigation requirements. All Rejection Claims shall be deemed as Contested Claims until Allowed. Nothing contained herein shall be deemed an admission by the Debtors, the Reorganized Debtor, or the Acis Trustee that such rejection gives rise to or results in a Claim or shall be

deemed a waiver by the Debtors or the Acis Trustee of any objections or defenses to any such Rejection Claim if asserted.

8.05.  Reservation of Rights. Nothing contained in the Plan shall constitute an admission by the Debtors that any contract or lease is in fact an Executory Contract or Unexpired Lease or that the Debtors, the Reorganized Debtor, or the Acis Trustee have any liability thereunder. If there is a dispute regarding whether a contract or lease is or was executory or unexpired at the time of assumption or rejection, the Acis Trustee shall have thirty (30) days following entry of a Final Order resolving such dispute to alter the treatment of such contract or lease.

## ARTICLE IX.
## SUBSTANTIVE CONSOLIDATION OF THE DEBTORS

9.01.  Pursuant to the Confirmation Order, the Bankruptcy Court shall approve the substantive consolidation of the Debtors for the sole purposes of implementing the Plan, including for purposes of voting and Distributions to be made under the Plan. Pursuant to such order: (a) all assets and liabilities of the Debtors will be deemed merged; (b) all guarantees by one Debtor of the obligations of the other Debtor will be deemed eliminated so that any Claim against any Debtor and any guarantee thereof executed by the other Debtor and any joint or several liability of the Debtors will be deemed to be one obligation of the consolidated Debtors; and (c) each and every Claim filed or to be filed in the Chapter 11 Case of either Debtor will be deemed filed against the consolidated Debtors and will be deemed one Claim against and a single obligation of the consolidated Debtors.

## ARTICLE X.
## CONDITIONS PRECEDENT TO CONFIRMATION AND EFFECTIVENESS OF PLAN

10.01. Conditions to Confirmation and Effectiveness of Plan. The Plan shall not become effective until the following conditions shall have been satisfied and which may occur concurrently with the Effective Date: (a) the Confirmation Order shall have been entered, in form and substance acceptable to the Debtors; (b) if the Plan is confirmed based on the terms and provisions of Plan A, the ATA has been closed and funded according to its terms; (c) the Acis Trust Agreement has been executed and delivered, (d) the necessary Plan Documents have been executed and delivered, and (e) all other conditions specified by the Debtors have been satisfied. Any or all of the above conditions other than (a) and (b) may be waived at any time by the Debtors.

10.02. Notice of the Effective Date. On or as soon as reasonably practical after the occurrence of the Effective Date, the Acis Trustee shall cause to be filed with the Court, and served on all Creditors and parties-in-interest, a notice of the Effective Date.

10.03. Revocation of Plan. The Debtors may revoke and withdraw this Plan at any time before the Effective Date. If either Debtor revokes or withdraws this Plan, or if confirmation of this Plan does not occur, then this Plan shall be deemed null and void and nothing contained herein shall be deemed to constitute a waiver or release of any Claims by or against the Debtors, as the case may be, or any other Person, or to prejudice in any manner the rights of the Debtors or any other Person in any further proceedings involving the Debtors.

## ARTICLE XI.
### EFFECT OF THE PLAN ON CLAIMS AND INTERESTS

11.01.  Compromise and Settlement

(a)      Pursuant to section 363 of the Bankruptcy Code and Bankruptcy Rule 9019, and in consideration of the classification, potential Distributions and other benefits provided under the Plan, the provisions of the Plan shall constitute a good faith compromise and settlement of all Claims, Interests and controversies subject to, or dealt with, under this Plan, including, without limitation, all Claims against the Debtors or Estate arising prior to the Effective Date, whether known or unknown, foreseen or unforeseen, asserted or unasserted, fixed or contingent, arising out of, relating to or in connection with the business or affairs of, or transactions with, the Debtors or the Estate.  The entry of the Confirmation Order shall constitute the Bankruptcy Court's approval of each of the foregoing compromises or settlements embodied in this Plan, and all other compromises and settlements provided for in the Plan, and the Bankruptcy Court's findings shall constitute its determination that such compromises and settlements are in the best interest of the Debtors, the Estate, Creditors and other parties-in-interest, and are fair, equitable and within the range of reasonableness.  The rights afforded in the Plan and the treatment of all Claims and Interests herein shall be in exchange for, and in complete satisfaction and release of, all Claims and Interests of any nature whatsoever against and in the Debtors, the Estate, and the Assets.  Except as otherwise provided herein, all Persons shall be precluded and forever barred by the Plan Injunction from asserting against the Debtors and their affiliates, successors, assigns, the Reorganized Debtor or the Reorganized Debtor's assets, the Estate, the Transferee or the Assets or Transferred Assets, the Acis Trustee, the Acis Trust or the Acis Trust Assets, any event, occurrence, condition, thing, or other or further Claims or causes of action based upon any act, omission, transaction, or other activity of any kind or nature that occurred or came into existence prior to the Effective Date, whether or not the facts of or legal bases therefore were known or existed prior to the Effective Date.

(b)      It is not the intent of this Plan that confirmation of the Plan shall in any manner alter or amend any settlement and compromise (including those contained in agreed orders) between the Debtors and any Person that has been previously approved by the Bankruptcy Court (each, a "Prior Settlement").  To the extent of any conflict between the terms of the Plan and the terms of any Prior Settlement, the terms of the Prior Settlement shall control and such Prior Settlement shall be enforceable according to its terms.

11.02.  Discharge.  If the Plan is confirmed based on the terms and provisions of Plan A, then this Plan does not provide for any discharge pursuant to section 1141(d)(3) of the Bankruptcy Code.  Alternatively, if the Plan is confirmed based on the terms and provisions of either Plan B or Plan C, the Debtors and their successors in interest and assigns shall be deemed discharged and released pursuant to section 1141(d)(1) of the Bankruptcy Code from any and all Claims provided for in the Plan.

11.03.  PLAN INJUNCTION.  THIS SECTION IS REFERRED TO HEREIN AS THE "PLAN INJUNCTION."  EXCEPT AS OTHERWISE EXPRESSLY PROVIDED HEREIN, AS OF THE EFFECTIVE DATE ALL HOLDERS OF CLAIMS AGAINST, OR INTERESTS IN, THE DEBTORS, THE ESTATE OR ANY OF THE ASSETS THAT AROSE PRIOR TO THE EFFECTIVE DATE ARE HEREBY PERMANENTLY ENJOINED AND PROHIBITED FROM THE FOLLOWING: (a) THE COMMENCING OR CONTINUATION IN ANY MANNER, DIRECTLY OR INDIRECTLY, OF ANY ACTION, CASE, LAWSUIT OR OTHER PROCEEDING

OF ANY TYPE OR NATURE AGAINST THE TRANSFEREE, THE TRANSFERRED ASSETS, THE ACIS TRUSTEE, THE ACIS TRUST, THE ACIS TRUST ASSETS , THE DEBTORS, THE ESTATE, THE REORGANIZED DEBTOR, OR THE REORGANIZED DEBTOR'S ASSETS WITH RESPECT TO ANY SUCH CLAIM OR INTEREST ARISING OR ACCRUING BEFORE THE EFFECTIVE DATE, INCLUDING WITHOUT LIMITATION THE ENTRY OR ENFORCEMENT OF ANY JUDGMENT, OR ANY OTHER ACT FOR THE COLLECTION, EITHER DIRECTLY OR INDIRECTLY, OF ANY CLAIM OR INTEREST AGAINST THE TRANSFEREE, THE TRANSFERRED ASSETS, THE ACIS TRUSTEE, THE ACIS TRUST, THE ACIS TRUST ASSETS ; THE DEBTORS, THE ESTATE, THE REORGANIZED DEBTOR, OR THE REORGANIZED DEBTOR'S ASSETS; (b) THE CREATION, PERFECTION OR ENFORCEMENT OF ANY LIEN, SECURITY INTEREST, ENCUMBRANCE, RIGHT OR BURDEN, EITHER DIRECTLY OR INDIRECTLY, AGAINST THE TRANSFEREE, THE TRANSFERRED ASSETS, THE ACIS TRUSTEE, THE ACIS TRUST, THE ACIS TRUST ASSETS , THE DEBTORS, THE ESTATE, THE REORGANIZED DEBTOR, OR THE REORGANIZED DEBTOR'S ASSETS, OR (c) TAKING ANY ACTION IN RELATION TO THE TRANSFEREE, THE TRANSFERRED ASSETS, THE ACIS TRUSTEE, THE ACIS TRUST, THE ACIS TRUST ASSETS , THE DEBTORS, THE ESTATE, THE REORGANIZED DEBTOR, OR THE REORGANIZED DEBTOR'S ASSETS, EITHER DIRECTLY OR INDIRECTLY, WHICH VIOLATES OR DOES NOT CONFORM OR COMPLY WITH THE PROVISIONS OF THIS PLAN APPLICABLE TO SUCH CLAIM OR INTEREST.  THE PLAN INJUNCTION SHALL ALSO BE INCORPORATED INTO THE CONFIRMATION ORDER.

Notwithstanding anything to the contrary in the Plan or the Acis Trust Agreement: (a) third party professionals employed by the Acis Trustee shall not be released or exculpated from any losses, claims, damages, liabilities, or expenses arising from their duties and services provided to the Acis Trustee; and (b) any third party professionals employed by the Acis Trustee shall only be entitled to be indemnified by the Acis Trust to the extent provided by applicable law.

Notwithstanding anything to the contrary in the Plan or Confirmation Order, nothing in the Plan or Confirmation Order (including the Plan Injunction):  (a) releases any Person other than the Transferee, the Transferred Assets, the Acis Trustee, the Acis Trust, the Acis Trust Assets, the Debtors, the Estate, the Reorganized Debtor, or the Reorganized Debtor's assets (collectively, the "Released Parties") from any Claim or cause of action held by a Governmental Unit; or (b) enjoins, limits, impairs or delays any Governmental Unit from commencing or continuing any Claim, suit, action, proceeding, cause of action, or investigation against any Person other than the Released Parties.  Moreover, nothing in the Plan or in the Confirmation Order shall discharge, release, enjoin or otherwise bar (i) any liability of the Released Parties to a Governmental Unit arising on or after the Confirmation Date with respect to events occurring after the Confirmation Date, provided that the Released Parties reserve the right to assert that any such liability is a Claim that arose on or prior to the Confirmation Date and constitutes a Claim that is subject to the Plan Injunction, (ii) any liability to a Governmental Unit that is not a Claim subject to the deadlines for filing proofs of Claim, (iii) any valid right of setoff or recoupment of a Governmental Unit, and (iv) any police or regulatory action by a Governmental Unit.  In addition, nothing in the Plan or Confirmation Order discharges, releases, precludes or enjoins any environmental liability to any Governmental Unit that any Person other than the Released Parties would be subject to as the owner or operator of the property after the Effective Date.  For the avoidance of any doubt, nothing in this paragraph shall be construed to limit the application of the Plan Injunction to any Claim which was subject to any bar date applicable to such Claim.

11.04.  Setoffs.  Except as otherwise expressly provided for in the Plan, pursuant to the Bankruptcy Code (including section 553 of the Bankruptcy Code), applicable nonbankruptcy law, or as may be agreed to by the holder of a Claim, the Acis Trustee may setoff against any Allowed Claim and the Distributions to be made pursuant to the Plan on account of such Allowed Claim (before such Distribution is made), any Claims, rights, Estate Claims and Estate Defenses of any nature that the Debtors may hold against the holder of such Allowed Claim, to the extent such Claims, rights, Estate Claims and Estate Defenses against such holder have not been otherwise compromised or settled on or prior to the Effective Date (whether pursuant to the Plan or otherwise); provided, however, that neither the failure to effect such a setoff nor the allowance of any Claim or Interest pursuant to the Plan shall constitute a waiver or release of any such Claims, rights, Estate Claims and Estate Defenses that the Estate may possess against such Claimant.  In no event shall any Claimant or Interest holder be entitled to setoff any Claim or Interest against any Claim, right, or Estate Claim of the Debtors without the consent of the Debtors or the Acis Trustee unless such holder files a motion with the Bankruptcy Court requesting the authority to perform such setoff notwithstanding any indication in any proof of Claim or otherwise that such holder asserts, has, or intends to preserve any right of setoff pursuant to section 553 of the Bankruptcy Code or otherwise.

11.05.  Recoupment.  Except as otherwise expressly provided for in the Plan, in no event shall any holder of Claims or Interests be entitled to recoup any Claim or Interest against any Claim, right, account receivable, or Estate Claim of the Debtors or the Acis Trustee unless (a) such holder actually provides notice thereof in writing to the Debtors or the Acis Trustee of its intent to perform a recoupment; (b) such notice includes the amount to be recouped by the holder of the Claim or Interest and a specific description of the basis for the recoupment, and (c) the Debtors or the Acis Trustee have provided a written response to such Claim or Interest holder, stating unequivocally that the Debtors or the Acis Trustee consents to the requested recoupment.  The Debtors and the Acis Trustee shall have the right, but not the obligation, to seek an order of the Bankruptcy Court allowing any or all of the proposed recoupment.  In the absence of a written response from the Debtors or the Acis Trustee consenting to a recoupment or an order of the Bankruptcy Court authorizing a recoupment, no recoupment by the holder of a Claim or Interest shall be allowed.

11.06.  Turnover.  On the Effective Date, any rights of the Estate to compel turnover of Assets under applicable nonbankruptcy law and pursuant to section 542 or 543 of the Bankruptcy Code shall be deemed transferred to and vested in the Acis Trust.

11.07.  Automatic Stay.  The automatic stay pursuant to section 362 of the Bankruptcy Code, except as previously modified by the Bankruptcy Court, shall remain in effect until the Effective Date of the Plan as to the Debtors, the Estate and all Assets.  As of the Effective Date, the automatic stay shall be replaced by the Plan Injunction.

## ARTICLE XII.
## JURISDICTION OF COURTS AND MODIFICATIONS TO THE PLAN

12.01.  Retention of Jurisdiction.  Pursuant to sections 1334 and 157 of title 28 of the United States Code, the Bankruptcy Court shall retain exclusive jurisdiction of all matters arising in, arising under, and related to the Chapter 11 Cases and the Plan, to the full extent allowed or permitted by applicable law, including without limitation for the purposes of invoking sections 105(a) and 1142 of the Bankruptcy Code, and for, among other things, the following purposes:

(a)    To hear and determine any and all objections to, or applications or motions

concerning, the allowance of Claims or the allowance, classification, priority, compromise, estimation, or payment of any Administrative Expense;

(b)    To hear and determine any and all applications for payment of fees and expenses pursuant to this Plan to any Estate Professional pursuant to sections 330 or 503 of the Bankruptcy Code, or for payment of any other fees or expenses authorized to be paid or reimbursed under this Plan, and any and all objections thereto;

(c)    To hear and determine pending applications for the rejection, assumption, or assumption and assignment of Executory Contracts and Unexpired Leases and the allowance of Claims resulting therefrom, and to determine the rights of any party in respect to the assumption or rejection of any Executory Contract or Unexpired Lease;

(d)    To hear and determine any and all adversary proceedings, applications, or contested matters, including relating to the allowance of any Claim;

(e)    To hear and determine all controversies, disputes, and suits which may arise in connection with the execution, interpretation, implementation, consummation, or enforcement of the Plan or Acis Trust or in connection with the enforcement of any remedies made available under the Plan, including without limitation, (i) adjudication of all rights, interests or disputes relating to any of the Assets or Acis Trust Assets, (ii) the valuation of all Collateral, (iii) the determination of the validity of any Lien or claimed right of offset; and (iv) determinations of Objections to Contested Claims;

(f)    To liquidate and administer any disputed, contingent, or unliquidated Claims, including the Allowance of all Contested Claims;

(g)    To administer Distributions to holders of Allowed Claims as provided herein or in the Acis Trust Agreement;

(h)    To enter and implement such orders as may be appropriate in the event the Confirmation Order is for any reason stayed, reversed, revoked, modified, or vacated;

(i)    To consider any modification of the Plan pursuant to section 1127 of the Bankruptcy Code, to cure any defect or omission, or reconcile any inconsistency in any order of the Bankruptcy Court, including, without limitation the Confirmation Order;

(j)    To enforce the Plan Injunction against any Person, including with respect to any motion or proceeding brought by the Transferee;

(k)    To enter and implement all such orders as may be necessary or appropriate to execute, interpret, construe, implement, consummate, or enforce the terms and conditions of this Plan or the Acis Trust Agreement and the transactions required or contemplated pursuant thereto;

(l)    To hear and determine any motion or application which the Acis Trustee is required or allowed to commence before the Bankruptcy Court pursuant to this Plan or the Acis Trust Agreement;

(m)    To hear and determine any other matter not inconsistent with the Bankruptcy Code and title 28 of the United States Code that may arise in connection with or related to the

Plan;

(n)    To determine proceedings pursuant to section 505 of the Bankruptcy Code;

(o)    To enter a final decree closing the Chapter 11 Cases; and

(p)    To determine any other matter or dispute relating to the Estate, the Assets, the Acis Trust or the Acis Trust Assets, or the administration of the Acis Trust Assets and the Distribution thereof.

12.02.  Abstention and Other Courts.  If the Bankruptcy Court abstains from exercising, or declines to exercise, jurisdiction or is otherwise without jurisdiction over any matter arising out of or relating to the Chapter 11 Cases, this Article of the Plan shall have no effect upon and shall not control, prohibit or limit the exercise of jurisdiction by any other court having competent jurisdiction with respect to such matter.

12.03.  Non-Material Modifications.  The Acis Trustee may, with the approval of the Bankruptcy Court and without notice to all holders of Claims and Interests, correct any defect, omission, or inconsistency in the Plan in such manner and to such extent as may be necessary or desirable.  The Acis Trustee may undertake such nonmaterial modification pursuant to this section insofar as it does not adversely change the treatment of the Claim of any Creditor or the Interest of any Interest holder who has not accepted in writing the modification.

12.04.  Material Modifications.  Modifications of this Plan may be proposed in writing by the Debtors at any time before confirmation, provided that this Plan, as modified, meets the requirements of sections 1122 and 1123 of the Bankruptcy Code, and the Debtors shall have complied with section 1125 of the Bankruptcy Code.  This Plan may be modified at any time after confirmation and before its Substantial Consummation, provided that the Plan, as modified, meets the requirements of sections 1122 and 1123 of the Bankruptcy Code, and the Bankruptcy Court, after notice and a hearing, confirms the Plan, as modified, under section 1129 of the Bankruptcy Code, and the circumstances warrant such modification.  A holder of a Claim or Interest that has accepted or rejected this Plan shall be deemed to have accepted or rejected, as the case may be, such Plan as modified, unless, within the time fixed by the Bankruptcy Court, such holder changes its previous acceptance or rejection.

## ARTICLE XIII.
## MISCELLANEOUS PROVISIONS

13.01.  Severability.  Should the Bankruptcy Court determine any provision of the Plan is unenforceable either on its face or as applied to any Claim or Interest or transaction, the Acis Trustee may modify the Plan so that any such provision shall not be applicable to the holder of any Claim or Interest.  Such a determination of unenforceability shall not (a) limit or affect the enforceability and operative effect of any other provision of the Plan or (b) require the resolicitation of any acceptance or rejection of the Plan.

13.02.  Oral Agreements; Modification of Plan; Oral Representations or Inducements.  The terms of the Plan, Disclosure Statement and Confirmation Order may only be amended in writing and may not be changed, contradicted or varied by any oral statement, agreement, warranty or representation.  None of the Debtors, any representative of the Estate, including Robin Phelan in his capacity as Chapter 11 Trustee, nor their attorneys have made any representation, warranty, promise or inducement relating to the Plan or its confirmation except

as expressly set forth in this Plan, the Disclosure Statement, or the Confirmation Order or other order of the Bankruptcy Court.

13.03.  <u>Waiver</u>.  The Acis Trustee and Reorganized Debtor shall not be deemed to have waived any right, power or privilege pursuant to the Plan or the Acis Trust Agreement unless the waiver is in writing and signed by the Acis Trustee or Reorganized Debtor, as applicable.  There shall be no waiver by implication, course of conduct or dealing, or through any delay or inaction by the Acis Trustee or the Reorganized Debtor, of any right pursuant to the Plan, including the provisions of this anti-waiver section.  The waiver of any right under the Plan shall not act as a waiver of any other or subsequent right, power or privilege.

13.04.  <u>Notice</u>.  Any notice or communication required or permitted by the Plan shall be given, made or sent as follows:

(a)    If to a Creditor, notice may be given as follows: (i) if the Creditor has not filed a proof of Claim, then to the address reflected in the Schedules, or (ii) if the Creditor has filed a proof of Claim, then to the address reflected in the proof of Claim.

(b)    If to the Acis Trustee, notice shall be sent to the Acis Trustee and counsel of record for the Acis Trustee as provided in the Acis Trust Agreement.

(c)    If to the Reorganized Debtor, notice shall be sent to the following addresses:

| | |
|---|---|
| Robin Phelan | Josh Terry |
| c/o *PHELANLAW* | c/o Brian P. Shaw |
| 4214 Woodfin Drive | Rogge Dunn Group, PC |
| Dallas, Texas 75220 | 1201 Elm Street, Suite 5200 |
| | Dallas, Texas 75270 |

(d)    Any Creditor desiring to change its address for the purpose of notice may do so by giving notice to the Acis Trustee and, if applicable, to the Reorganized Debtor, of its new address in accordance with the terms of this section.

(e)    Any notice given, made or sent as set forth above shall be effective upon being (i) deposited in the United States Mail, postage prepaid, addressed to the addressee at the address as set forth above; (ii) delivered by hand or messenger to the addressee at the address set forth above; (iii) telecopied to the addressee as set forth above, with a hard confirmation copy being immediately sent through the United States Mail; or (iv) delivered for transmission to an expedited or overnight delivery service such as FedEx.

13.05.  <u>Compliance with All Applicable Laws</u>.  If notified by any governmental authority that it is in violation of any applicable law, rule, regulation, or order of such governmental authority relating to its business, the Acis Trustee or the Reorganized Debtor shall comply with such law, rule, regulation, or order; <u>provided, however</u>, that nothing contained herein shall require such compliance if the legality or applicability of any such requirement is being contested in good faith in appropriate proceedings and, if appropriate, an adequate Reserve has been set aside on the books of the Acis Trust or the Reorganized Debtor.

13.06.  <u>Duties to Creditors</u>.  No agent, representative, accountant, financial advisor, attorney, shareholder, officer, affiliate, member or employee of the Debtors shall ever owe any duty to any Person (including any Creditor) other than the duties owed to the Debtors'

bankruptcy Estate, for any act, omission, or event in connection with, or arising out of, or relating to, any of the following: (a) the Debtors' Chapter 11 Cases, including all matters or actions in connection with or relating to the administration of the Estate, (b) the Plan, including the proposal, negotiation, confirmation and consummation of the Plan, or (c) any act or omission relating to the administration of the Plan after the Effective Date.

13.07.  <u>Binding Effect</u>.  The Plan shall be binding upon, and shall inure to the benefit of the Acis Trust, the Reorganized Debtor, the holders of the Claims or Liens, and their respective successors-in-interest and assigns.

13.08.  <u>Governing Law, Interpretation</u>.  Unless a rule of law or procedure supplied by federal law (including the Bankruptcy Code and Bankruptcy Rules) is applicable, the internal laws of the State of Texas shall govern the construction and implementation of the Plan and any Plan Documents without regard to conflicts of law.  The Plan shall control any inconsistent term or provision of any other Plan Documents.

13.09.  <u>Payment of Statutory Fees</u>.  All accrued U.S. Trustee Fees as of the Confirmation Date shall be paid by the Acis Trustee on or as soon as practicable after the Effective Date, and thereafter shall be paid by (a) the Acis Trustee as such statutory fees become due and payable if the Plan is confirmed based on the terms and provisions of Plan A, or (b) the Reorganized Debtor as such statutory fees become due and payable if the Plan is confirmed based on the terms and provisions of Plan B or Plan C.

13.10.  <u>Filing of Additional Documents</u>.  On or before Substantial Consummation of the Plan, the Acis Trustee may file with the Bankruptcy Court such agreements and other documents as may be necessary or appropriate to effectuate and further evidence the terms and conditions of the Plan.

13.11.  <u>Computation of Time</u>.  Bankruptcy Rule 9006 shall apply to the calculation of all time periods pursuant to this Plan.  If the final day for any Distribution, performance, act or event under the Plan is not a Business Day, then the time for making or performing such Distribution, performance, act or event shall be extended to the next Business Day.  Any payment or Distribution required to be made hereunder on a day other than a Business Day shall be due and payable on the next succeeding Business Day.

13.12.  <u>Elections by the Acis Trustee or the Reorganized Debtor</u>.  Any right of election or choice granted to the Acis Trustee or the Reorganized Debtor under this Plan may be exercised, at the Acis Trustee's election or the Reorganized Debtor's election, separately as to each Claim, Creditor or Person.

13.13.  <u>Release of Liens</u>.  Except as otherwise expressly provided in this Plan or the Confirmation Order, all Liens against any of the Assets transferred to and vested in either the Acis Trust or the Reorganized Debtor shall be deemed to be released, terminated and nullified without the necessity of any order by the Bankruptcy Court other than the Confirmation Order.

13.14.  <u>Rates</u>.  The Plan does not provide for the change of any rate that is within the jurisdiction of any governmental regulatory commission after the occurrence of the Effective Date.

13.15.  <u>Compliance with Tax Requirements</u>.  In connection with the Plan, the Acis Trustee and the Reorganized Debtor shall comply with all withholding and reporting

requirements imposed by federal, state and local Taxing Authorities and all Distributions under the Plan shall be subject to such withholding and reporting requirements.  Notwithstanding the above, each holder of an Allowed Claim or Interest that is to receive a Distribution under the Plan shall have the sole and exclusive responsibility for the satisfaction and payment of any tax obligations imposed by any governmental unit, including income, withholding and other tax obligations, on account of such Distribution under the Plan.

13.16.  <u>Notice of Occurrence of the Effective Date</u>. Promptly after occurrence of the Effective Date, the Acis Trustee, as directed by the Bankruptcy Court, shall serve on all known parties-in-interest and holders of Claims and Interests, notice of the occurrence of the Effective Date.

13.17.  <u>Notice of Entry of Confirmation Order</u>.  Promptly after entry of the Confirmation Order, the Debtors, as directed by the Bankruptcy Court in the Confirmation Order, shall serve on all known parties-in-interest and holders of Claims and Interests, notice of entry of the Confirmation Order.

[Remainder of page intentionally left blank.]

Dated:  July 5, 2018.

Respectfully submitted,


ACIS CAPITAL MANAGEMENT, L.P.


By:  */s/ Robin Phelan*
      Robin Phelan
      Chapter 11 Trustee


ACIS CAPITAL MANAGMENET GP, LLC


By:*/s/ Robin Phelan*
      Robin Phelan
      Chapter 11 Trustee


APPROVED:

*/s/ Jeff P. Prostok*
Jeff P. Prostok – State Bar No. 16352500
J. Robert Forshey – State Bar No. 07264200
Suzanne K. Rosen – State Bar No. 00798518
Matthew G. Maben – State Bar No. 24037008
**FORSHEY & PROSTOK LLP**
777 Main St., Suite 1290
Ft. Worth, TX 76102
Telephone: (817) 877-8855
Facsimile: (817) 877-4151
jprostok@forsheyprostok.com
bforshey@forsheyprostok.com
srosen@forsheyprostok.com
mmaben@forsheyprostok.com

**COUNSEL FOR ROBIN PHELAN,
CHAPTER 11 TRUSTEE**

APPROVED:

*/s/ Rahkee V. Patel*
Rakhee V. Patel – State Bar No. 00797213
Phillip Lamberson – State Bar No. 00794134
Joe Wielebinski – State Bar No. 21432400
Annmarie Chiarello – State Bar No. 24097496
**WINSTEAD PC**
500 Winstead Building
2728 N. Harwood Street
Dallas, Texas 75201
Telephone: (214) 745-5400
Facsimile: (214) 745-5390
rpatel@winstead.com
plamberson@winstead.com
jwielebinski@winstead.com
achiarello@winstead.com

**SPECIAL COUNSEL FOR ROBIN PHELAN,
CHAPTER 11 TRUSTEE**


L:\JPROSTOK\ACIS Capital Management (Trustee Rep)\Plan and Disclosure Statement\Joint Plan 07.05.18.docx

# EXHIBIT A

## TO JOINT PLAN FOR ACIS CAPITAL MANAGEMENT, LP AND
## ACIS CAPITAL MANAGEMENT GP, LLC

### (ASSET TRANSFER AGREEMENT)

**[TO BE PROVIDED AT A LATER DATE]**

# EXHIBIT B

### TO JOINT PLAN FOR ACIS CAPITAL MANAGEMENT, LP AND ACIS CAPITAL MANAGEMENT GP, LLC

### (LIQUIDATING TRUST AGREEMENT FOR PLAN A)

**[TO BE PROVIDED AT A LATER DATE]**

# EXHIBIT C
**TO JOINT PLAN FOR ACIS CAPITAL MANAGEMENT, LP AND
ACIS CAPITAL MANAGEMENT GP, LLC**

**(LIQUIDATING TRUST AGREEMENT FOR PLAN B AND PLAN C)**

**[TO BE PROVIDED AT A LATER DATE]**

# EXHIBIT "2"

## TO DISCLOSURE STATEMENT

# [TO BE PROVIDED AT A LATER DATE]

# EXHIBIT "3"

# TO DISCLOSURE STATEMENT

**Monthly Operating Report**
CASH BASIS

| CASE NAME: | Acis Capital Management, L.P. |
|---|---|
| CASE NUMBER: | 18-30264-sgj11 |
| JUDGE: | Stacey G. Jernigan |

# UNITED STATES BANKRUPTCY COURT

## NORTHERN & EASTERN DISTRICTS OF TEXAS

### REGION 6

## MONTHLY OPERATING REPORT

**MONTH ENDING:** <u>May 11-31, 2018</u>    <u>2018</u>
                        MONTH            YEAR

IN ACCORDANCE WITH TITLE 28, SECTION 1746, OF THE UNITED STATES CODE, I DECLARE UNDER
PENALTY OF PERJURY THAT I HAVE EXAMINED THE FOLLOWING MONTHLY OPERATING REPORT
(CASH BASIS-1 THROUGH CASH BASIS-6) AND THE ACCOMPANYING ATTACHMENTS AND,
TO THE BEST OF MY KNOWLEDGE, THESE DOCUMENTS ARE TRUE, CORRECT, AND COMPLETE.
DECLARATION OF THE PREPARER (OTHER THAN RESPONSIBLE PARTY) IS BASED ON ALL
INFORMATION OF WHICH PREPARER HAS ANY KNOWLEDGE.

RESPONSIBLE PARTY:

_____        Chapter 11 Trustee
ORIGINAL SIGNATURE OF RESPONSIBLE PARTY                    TITLE

Robin Phelan                              6/30/2018
PRINTED NAME OF RESPONSIBLE PARTY                         DATE


PREPARER:

_____        Chapter 11 Trustee
ORIGINAL SIGNATURE OF PREPARER                            TITLE

Robin Phelan                              6/30/2018
PRINTED NAME OF PREPARER                                  DATE

**Monthly Operating Report**
**CASH BASIS-1**

| CASE NAME: | Acis Capital Management, L.P. |
|---|---|
| CASE NUMBER: | 18-30264-sgj11 |

| CASH RECEIPTS AND DISBURSEMENTS | MONTH 5/11-5/31/2018 | MONTH | MONTH | MONTH |
|---|---|---|---|---|
| 1.  CASH - BEGINNING OF MONTH | $     633,106.04 | $  633,106.04 | $  633,106.04 | $  633,106.04 |
| **RECEIPTS** | | | | |
| 2.  CASH SALES | | | | |
| 3.  ACCOUNTS RECEIVABLE COLLECTIONS | | | | |
| 4.  LOANS AND ADVANCES | | | | |
| 5.  SALE OF ASSETS | | | | |
| 6.  LEASE & RENTAL INCOME | | | | |
| 7.  WAGES | | | | |
| 8.  OTHER (ATTACH LIST) | | | | |
| 9.  TOTAL RECEIPTS | $            - | $        - | $        - | $        - |
| **DISBURSEMENTS** | | | | |
| 10.  NET PAYROLL | | | | |
| 11.  PAYROLL TAXES PAID | | | | |
| 12.  SALES,USE & OTHER TAXES PAID | | | | |
| 13.  INVENTORY PURCHASES | | | | |
| 14.  MORTAGE PAYMENTS | | | | |
| 15.  OTHER SECURED NOTE PAYMENTS | | | | |
| 16.  RENTAL & LEASE PAYMENTS | | | | |
| 17.  UTILITIES | | | | |
| 18.  INSURANCE | | | | |
| 19.  VEHICLE EXPENSES | | | | |
| 20.  TRAVEL | | | | |
| 21.  ENTERTAINMENT | | | | |
| 22.  REPAIRS & MAINTENANCE | | | | |
| 23.  SUPPLIES | | | | |
| 24.  ADVERTISING | | | | |
| 25.  HOUSEHOLD EXPENSES | | | | |
| 26.  CHARITABLE CONTRIBUTIONS | | | | |
| 27.  GIFTS | | | | |
| 28.  OTHER (ATTACH LIST) | | | | |
| 29.  TOTAL ORDINARY DISBURSEMENTS | $            - | $        - | $        - | $        - |
| **REORGANIZATION EXPENSES** | | | | |
| 30.  PROFESSIONAL FEES | | | | |
| 31.  U.S. TRUSTEE FEES | | | | |
| 32.  OTHER (ATTACH LIST) | | | | |
| 33.  TOTAL REORGANIZATION EXPENSES | $            - | $        - | $        - | $        - |
| 34.  TOTAL DISBURSEMENTS | $            - | $        - | $        - | $        - |
| 35.  NET CASH FLOW | $            - | $        - | $        - | $        - |
| 36.  CASH - END OF MONTH | $     633,106.04 | $  633,106.04 | $  633,106.04 | $  633,106.04 |

**Monthly Operating Report**

**CASH BASIS-1A**

**2018**

| CASE NAME: | Acis Capital Management, L.P. |
|---|---|
| CASE NUMBER: | 18-30264-sgj11 |

| CASH DISBURSEMENTS DETAIL | MONTH: | May 11-31, 2018 |
|---|---|---|

## CASH DISBURSEMENTS

| | DATE | PAYEE | PURPOSE | AMOUNT |
|---|---|---|---|---|
| | | None | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | TOTAL CASH DISBURSEMENTS | | | $          - |

## BANK ACCOUNT DISBURSEMENTS

| CK# | DATE | PAYEE | PURPOSE | AMOUNT |
|---|---|---|---|---|
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | TOTAL BANK ACCOUNT DISBURSEMENTS | | | $          - |

| TOTAL DISBURSEMENTS FOR THE MONTH | $          - |
|---|---|

# Monthly Operating Report
## CASH BASIS-2

| CASE NAME: | Acis Capital Management, L.P. |
|---|---|
| CASE NUMBER: | 18-30264-sgj11 |

### BANK RECONCILIATIONS

| | Acct #1 | Acct #2 | Acct #3 | |
|---|---|---|---|---|
| A. BANK: | BOKF | NexBank | TX Capital | |
| B. ACCOUNT NUMBER: | 3261 | 2134 | 6890 | TOTAL |
| C. PURPOSE (TYPE): | DIP Acct | Checking | Checking | |
| 1. BALANCE PER BANK STATEMENT | $         - | $ 633,106.04 | $         - | $   633,106.04 |
| 2. ADD: TOTAL DEPOSITS NOT CREDITED | | | | $         - |
| 3. SUBTRACT: OUTSTANDING CHECKS | | | | $         - |
| 4. OTHER RECONCILING ITEMS | | | | $         - |
| 5. MONTH END BALANCE PER BOOKS | $         - | $ 633,106.04 | $         - | $   633,106.04 |
| 6. NUMBER OF LAST CHECK WRITTEN | | | | |

### INVESTMENT ACCOUNTS

| BANK, ACCOUNT NAME & NUMBER | DATE OF PURCHASE | TYPE OF INSTRUMENT | PURCHASE PRICE | CURRENT VALUE |
|---|---|---|---|---|
| 7. | | | | |
| 8. | | | | |
| 9. | | | | |
| 10. | | | | |
| 11. TOTAL INVESTMENTS | | | $         - | $         - |

### CASH

| | |
|---|---|
| 12. CURRENCY ON HAND | $         - |

| 13. TOTAL CASH - END OF MONTH | $   633,106.04 |
|---|---|

**Monthly Operating Report**
**CASH BASIS-3**

| CASE NAME: | Acis Capital Management, L.P. |
|---|---|
| CASE NUMBER: | 18-30264-sgj11 |

**ASSETS OF THE ESTATE**

| SCHEDULE "A"<br>REAL PROPERTY | SCHEDULE<br>AMOUNT | MONTH<br>5/11-5/31/2018 | MONTH | MONTH |
|---|---|---|---|---|
| 1. | | | | |
| 2. | | | | |
| 3. | | | | |
| 4. OTHER (ATTACH LIST) | | | | |
| 5. TOTAL REAL PROPERTY ASSETS | $            - | $            - | $            - | $            - |
| **SCHEDULE "B"**<br>**PERSONAL PROPERTY** | | | | |
| 1. CASH ON HAND | $       634,373.99 | $       633,106.04 | | |
| 2. CHECKING, SAVINGS, ETC. | | | | |
| 3. SECURITY DEPOSITS | | | | |
| 4. HOUSEHOLD GOODS | | | | |
| 5. BOOKS, PICTURES, ART | | | | |
| 6. WEARING APPAREL | | | | |
| 7. FURS AND JEWELRY | | | | |
| 8. FIREARMS & SPORTS EQUIPMENT | | | | |
| 9. INSURANCE POLICIES | | | | |
| 10. ANNUITIES | | | | |
| 11. EDUCATION | | | | |
| 12. RETIREMENT & PROFIT SHARING | | | | |
| 13. STOCKS | | | | |
| 14. PARTNERSHIPS & JOINT VENTURES | | | | |
| 15. GOVERNMENT & CORPORATE BONDS | | | | |
| 16. ACCOUNTS RECEIVABLE | $    3,644,884.09 | $    3,644,884.09 | | |
| 17. ALIMONY | | | | |
| 18. OTHER LIQUIDATED DEBTS | | | | |
| 19. EQUITABLE INTERESTS | | | | |
| 20. CONTINGENT INTERESTS | | | | |
| 21. OTHER CLAIMS | | | | |
| 22. PATENTS & COPYRIGHTS | | | | |
| 23. LICENSES & FRANCHISES | | | | |
| 24. CUSTOMER LISTS | | | | |
| 25. AUTOS, TRUCKS & OTHER VEHICLES | | | | |
| 26. BOATS & MOTORS | | | | |
| 27. AIRCRAFT | | | | |
| 28. OFFICE EQUIPMENT | | | | |
| 29. MACHINERY, FIXTURES & EQUIPMENT | | | | |
| 30. INVENTORY | | | | |
| 31. ANIMALS | | | | |
| 32. CROPS | | | | |
| 33. FARMING EQUIPMENT | | | | |
| 34. FARM SUPPLIES | | | | |
| 35. OTHER (ATTACH LIST) | | | | |
| 36. TOTAL PERSONAL PROPERTY ASSETS | $    4,279,258.08 | $    4,277,990.13 | $            - | $            - |
| 37. TOTAL ASSETS | $    4,279,258.08 | $    4,277,990.13 | $            - | $            - |

**Monthly Operating Report**
**CASH BASIS-4**

| CASE NAME: | Acis Capital Management, L.P. |
| --- | --- |
| CASE NUMBER: | 18-30264-sgj11 |

MONTH:  May 11-31, 2018

### LIABILITIES OF THE ESTATE

| PREPETITION LIABILITIES | SCHEDULE AMOUNT | PAYMENTS |
| --- | --- | --- |
| 1.  SECURED | $           - | |
| 2.  PRIORITY | $           - | |
| 3.  UNSECURED | $  11,454,637.09 | |
| 4.  OTHER (ATTACH LIST) | $           - | |
| 5.  TOTAL PREPETITION LIABILITIES | $  11,454,637.09 | $           - |

| POSTPETITION LIABILITIES | DATE INCURRED | AMOUNT OWED | DUE DATE | AMOUNT PAST DUE |
| --- | --- | --- | --- | --- |
| 1.  FEDERAL INCOME TAXES | | | | |
| 2.  FICA/MEDICARE | | | | |
| 3.  STATE TAXES | | | | |
| 4.  REAL ESTATE TAXES | | | | |
| 5.  OTHER TAXES (ATTACH LIST) | | | | |
| 6.  TOTAL TAXES | | $           - | | $           - |
| OTHER POSTPETITION LIABILITIES INCLUDING TRADE CREDITORS (LIST NAMES OF CREDITORS) | | | | |
| 7. | | | | |
| 8. | | | | |
| 9. | | | | |
| 10. | | | | |
| 11. | | | | |
| 12. | | | | |
| 13. | | | | |
| 14. | | | | |
| 15. | | | | |
| 16. | | | | |
| 17. | | | | |
| 18. | | | | |
| 19. | | | | |
| 20. | | | | |
| 21. | | | | |
| 22. | | | | |
| 23. | | | | |
| 24. | | | | |
| 25. | | | | |
| 26. | | | | |
| 27. | | | | |
| 28. | | | | |
| 29.  (IF ADDITIONAL ATTACH LIST) | | | | |
| 30.  TOTAL OF LINES 7 - 29 | | $           - | | $           - |
| 31.  TOTAL POSTPETITION LIABILITIES | | $           - | | $           - |

**Monthly Operating Report**
**CASH BASIS-4A**

| CASE NAME: | Acis Capital Management, L.P. |
|---|---|
| CASE NUMBER: | 18-30264-sgj11 |

MONTH:   May 11-31, 2018

| ACCOUNTS RECEIVABLE AGING | SCHEDULE AMOUNT | MONTH 5/11-5/31/2018 | MONTH | MONTH |
|---|---|---|---|---|
| 1.  0 - 30 | | | | |
| 2.  31 - 60 | | | | |
| 3.  61 - 90 | $   3,412,995.18 | | | |
| 4.  91 + | $   231,888.91 | $ 3,644,884.09 | | |
| 5.  TOTAL ACCOUNTS RECEIVABLE | $   3,644,884.09 | $ 3,644,884.09 | $         - | $          - |
| 6.  AMOUNT CONSIDERED UNCOLLECTIBLE | | | | |
| 7.  ACCOUNTS RECEIVABLE (NET) | $   3,644,884.09 | $ 3,644,884.09 | $         - | $          - |

| AGING OF POSTPETITION TAXES AND PAYABLES TAXES PAYABLE | 0 - 30 DAYS | 31-60 DAYS | 90+ DAYS | Total |
|---|---|---|---|---|
| 1.  FEDERAL | | | | $          - |
| 2.  STATE | | | | $          - |
| 3.  LOCAL | | | | $          - |
| 4.  OTHER (ATTACH LIST) | | | | $          - |
| 5.  TOTAL TAXES PAYABLE | $         - | $         - | $         - | $          - |

| 6.  ACCOUNTS PAYABLE | | | | $          - |
|---|---|---|---|---|

| STATUS OF POSTPETITION TAXES | | | | |
|---|---|---|---|---|
| FEDERAL | BEGINNING TAX LIABILITY | AMOUNT WITHHELD OR ACCRUED | AMOUNT PAID | ENDING TAX LIABILITY |
| 1.  WITHHOLDING | | | | $          - |
| 2.  FICA-EMPLOYEE | | | | $          - |
| 3.  FICA-EMPLOYER | | | | $          - |
| 4.  UNEMPLOYMENT | | | | $          - |
| 5.  INCOME | | | | $          - |
| 6.  OTHER (ATTACH LIST) | | | | $          - |
| 7.  TOTAL FEDERAL TAXES | $         - | $         - | $         - | $          - |
| STATE AND LOCAL | | | | $          - |
| 8.  WITHHOLDING | | | | $          - |
| 9.  SALES | | | | $          - |
| 10.  EXCISE | | | | $          - |
| 11.  UNEMPLOYMENT | | | | $          - |
| 12.  REAL PROPERTY | | | | $          - |
| 13.  PERSONAL PROPERTY | | | | $          - |
| 14.  OTHER (ATTACH LIST) | | | | $          - |
| 15.  TOTAL STATE & LOCAL | $         - | $         - | $         - | $          - |
| 16.  TOTAL TAXES | $         - | $         - | $         - | $          - |

**Monthly Operating Report**
**CASH BASIS-5**

| CASE NAME: | Acis Capital Management, L.P. |
|---|---|
| CASE NUMBER: | 18-30264-sgj11 |

MONTH:   May 11-31, 2018

PAYMENTS TO INSIDERS AND PROFESSIONALS

| | INSIDERS | | |
|---|---|---|---|
| NAME | TYPE OF PAYMENT | AMOUNT PAID | TTL PD TO DATE |
| 1. | | | |
| 2. | | | |
| 3. | | | |
| 4. | | | |
| 5. | | | |
| TOTAL PAYMENTS TO INSIDERS | | $          - | $          - |

| | PROFESSIONALS | | | | |
|---|---|---|---|---|---|
| NAME | DATE OF COURT ORDER AUTHORIZING PAYMENT | AMOUNT APPROVED | AMOUNT PAID | TTL PAID TO DATE | TOTAL INCURRED & UNPAID |
| 1. | | | | | |
| 2. | | | | | |
| 3. | | | | | |
| 4. | | | | | |
| 5. | | | | | |
| TOTAL PAYMENTS TO PROFESSIONALS | | $          - | $          - | $          - | $          - |

POSTPETITION STATUS OF SECURED NOTES, LEASES PAYABLE AND ADEQUATE PROTECTION PAYMENTS

| NAME OF CREDITOR | SCHEDULED MONTHLY PAYMENTS DUE | AMOUNTS PAID DURING MONTH | TOTAL UNPAID POST-PETITION |
|---|---|---|---|
| 1. | | | |
| 2. | | | |
| 3. | | | |
| 4. | | | |
| 5. | | | |
| 6. TOTAL | $          - | $          - | $          - |

**Monthly Operating Report**
CASH BASIS-6

| CASE NAME: | Acis Capital Management, L.P. |
|---|---|
| CASE NUMBER: | 18-30264-sgj11 |

MONTH:  May 11-31, 2018

| QUESTIONNAIRE | YES | NO |
|---|---|---|
| 1.  HAVE ANY ASSETS BEEN SOLD OR TRANSFERRED OUTSIDE THE NORMAL COURSE OF BUSINESS THIS REPORTING PERIOD? | | X |
| 2.  HAVE ANY FUNDS BEEN DISBURSED FROM ANY ACCOUNT OTHER THAN A DEBTOR IN POSSESSION ACCOUNT? | | X |
| 3.  ARE ANY POSTPETITION RECEIVABLES (ACCOUNTS, NOTES OR LOANS) DUE FROM RELATED PARTIES? | | X |
| 4.  HAVE ANY PAYMENTS BEEN MADE ON PREPETITION LIABILITIES THIS REPORTING PERIOD? | | X |
| 5.  HAVE ANY POSTPETITION LOANS BEEN RECEIVED BY THE DEBTOR FROM ANY PARTY? | | X |
| 6.  ARE ANY POSTPETITION PAYROLL TAXES PAST DUE? | | X |
| 7.  ARE ANY POSTPETITION STATE OR FEDERAL INCOME TAXES PAST DUE? | | X |
| 8.  ARE ANY POSTPETITION REAL ESTATE TAXES PAST DUE? | | X |
| 9.  ARE ANY OTHER POSTPETITION TAXES PAST DUE? | | X |
| 10. ARE ANY AMOUNTS OWED TO POSTPETITION CREDITORS DELINQUENT? | | X |
| 11. HAVE ANY PREPETITION TAXES BEEN PAID DURING THE REPORTING PERIOD? | | X |
| 12. ARE ANY WAGE PAYMENTS PAST DUE? | | X |

IF THE ANSWER TO ANY OF THE ABOVE QUESTIONS IS "YES"; PROVIDE A DETAILED EXPLANATION OF EACH ITEM.  ATTACH ADDITIONAL SHEETS IF NECESSARY.

| INSURANCE | YES | NO |
|---|---|---|
| 1.  ARE WORKER'S COMPENSATION, GENERAL LIABILITY AND OTHER NECESSARY INSURANCE COVERAGES IN EFFECT? | n/a | |
| 2.  ARE ALL PREMIUM PAYMENTS PAID CURRENT? | n/a | |
| 3.  PLEASE ITEMIZE POLICIES BELOW | | |

IF THE ANSWER TO ANY OF THE ABOVE QUESTIONS IS "NO" OR IF ANY POLICIES HAVE BEEN CANCELED OR NOT RENEWED DURING THIS REPORTING PERIOD, PROVIDE AN EXPLANATION BELOW.  ATTACH ADDITIONAL SHEETS IF NECESSARY.

| INSTALLMENT PAYMENTS | | | |
|---|---|---|---|
| TYPE OF POLICY | CARRIER | PERIOD COVERED | PAYMENT AMOUNT & FREQUENCY |
| | | | |
| | | | |
| | | | |
| | | | |

# EXHIBIT "4"

# TO DISCLOSURE STATEMENT

**Monthly Operating Report**
CASH BASIS

| CASE NAME: | Acis Capital Management GP, LLC |
|---|---|
| **CASE NUMBER:** | 18-30265-sgj11 |
| **JUDGE:** | Stacey G. Jernigan |

# UNITED STATES BANKRUPTCY COURT

## NORTHERN & EASTERN DISTRICTS OF TEXAS

### REGION 6

## MONTHLY OPERATING REPORT

| MONTH ENDING: | May | 2018 |
|---|---|---|
| | MONTH | YEAR |

IN ACCORDANCE WITH TITLE 28, SECTION 1746, OF THE UNITED STATES CODE, I DECLARE UNDER PENALTY OF PERJURY THAT I HAVE EXAMINED THE FOLLOWING MONTHLY OPERATING REPORT (CASH BASIS-1 THROUGH CASH BASIS-6) AND THE ACCOMPANYING ATTACHMENTS AND, TO THE BEST OF MY KNOWLEDGE, THESE DOCUMENTS ARE TRUE, CORRECT, AND COMPLETE. DECLARATION OF THE PREPARER (OTHER THAN RESPONSIBLE PARTY) IS BASED ON ALL INFORMATION OF WHICH PREPARER HAS ANY KNOWLEDGE.

RESPONSIBLE PARTY:

_____                    Chapter 11 Trustee
ORIGINAL SIGNATURE OF RESPONSIBLE PARTY                    TITLE

Robin Phelan                                        6/26/2018
PRINTED NAME OF RESPONSIBLE PARTY                    DATE


PREPARER:

_____                    Chapter 11 Trustee
ORIGINAL SIGNATURE OF PREPARER                    TITLE

Robin Phelan                                        6/30/2018
PRINTED NAME OF PREPARER                    DATE

**Monthly Operating Report**

**CASH BASIS-1**

| CASE NAME: | Acis Capital Management GP, LLC |
| --- | --- |
| CASE NUMBER: | 18-30265-sgj11 |

| CASH RECEIPTS AND DISBURSEMENTS | MONTH 5/11-5/31/2018 | MONTH | MONTH | MONTH |
| --- | --- | --- | --- | --- |
| 1.  CASH - BEGINNING OF MONTH | $         - | $         - | $         - | $         - |
| **RECEIPTS** | | | | |
| 2.  CASH SALES | | | | |
| 3.  ACCOUNTS RECEIVABLE COLLECTIONS | | | | |
| 4.  LOANS AND ADVANCES | | | | |
| 5.  SALE OF ASSETS | | | | |
| 6.  LEASE & RENTAL INCOME | | | | |
| 7.  WAGES | | | | |
| 8.  OTHER (ATTACH LIST) | | | | |
| 9.  TOTAL RECEIPTS | $         - | $         - | $         - | $         - |
| **DISBURSEMENTS** | | | | |
| 10.  NET PAYROLL | | | | |
| 11.  PAYROLL TAXES PAID | | | | |
| 12.  SALES,USE & OTHER TAXES PAID | | | | |
| 13.  INVENTORY PURCHASES | | | | |
| 14.  MORTAGE PAYMENTS | | | | |
| 15.  OTHER SECURED NOTE PAYMENTS | | | | |
| 16.  RENTAL & LEASE PAYMENTS | | | | |
| 17.  UTILITIES | | | | |
| 18.  INSURANCE | | | | |
| 19.  VEHICLE EXPENSES | | | | |
| 20.  TRAVEL | | | | |
| 21.  ENTERTAINMENT | | | | |
| 22.  REPAIRS & MAINTENANCE | | | | |
| 23.  SUPPLIES | | | | |
| 24.  ADVERTISING | | | | |
| 25.  HOUSEHOLD EXPENSES | | | | |
| 26.  CHARITABLE CONTRIBUTIONS | | | | |
| 27.  GIFTS | | | | |
| 28.  OTHER (ATTACH LIST) | | | | |
| 29.  TOTAL ORDINARY DISBURSEMENTS | $         - | $         - | $         - | $         - |
| **REORGANIZATION EXPENSES** | | | | |
| 30.  PROFESSIONAL FEES | | | | |
| 31.  U.S. TRUSTEE FEES | | | | |
| 32.  OTHER (ATTACH LIST) | | | | |
| 33.  TOTAL REORGANIZATION EXPENSES | $         - | $         - | $         - | $         - |
| 34.  TOTAL DISBURSEMENTS | $         - | $         - | $         - | $         - |
| 35.  NET CASH FLOW | $         - | $         - | $         - | $         - |
| 36.  CASH - END OF MONTH | $         - | $         - | $         - | $         - |

**Monthly Operating Report**

**CASH BASIS-1A**

**2018**

| CASE NAME: | Acis Capital Management GP, LLC |
|---|---|
| CASE NUMBER: | 18-30265-sgj11 |

| CASH DISBURSEMENTS DETAIL | | MONTH: | May 11-31, 2018 |
|---|---|---|---|

### CASH DISBURSEMENTS

| | DATE | PAYEE | PURPOSE | AMOUNT |
|---|---|---|---|---|
| | | None | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | TOTAL CASH DISBURSEMENTS | | | $    - |

### BANK ACCOUNT DISBURSEMENTS

| CK# | DATE | PAYEE | PURPOSE | AMOUNT |
|---|---|---|---|---|
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | TOTAL BANK ACCOUNT DISBURSEMENTS | | | $    - |

| TOTAL DISBURSEMENTS FOR THE MONTH | | | $    - |
|---|---|---|---|

**Monthly Operating Report**
**CASH BASIS-2**

| CASE NAME: | Acis Capital Management GP, LLC |
|---|---|
| CASE NUMBER: | 18-30265-sgj11 |

| BANK RECONCILIATIONS | Acct #1 | Acct #2 | Acct #3 | TOTAL | |
|---|---|---|---|---|---|
| A.  BANK: | | | | | |
| B.  ACCOUNT NUMBER: | | | | | |
| C.  PURPOSE (TYPE): | DIP Acct | | | | |
| 1.  BALANCE PER BANK STATEMENT | | | | $ | - |
| 2.  ADD:  TOTAL DEPOSITS NOT CREDITED | | | | $ | - |
| 3.  SUBTRACT:  OUTSTANDING CHECKS | | | | $ | - |
| 4.  OTHER RECONCILING ITEMS | | | | $ | - |
| 5.  MONTH END BALANCE PER BOOKS | $            - | $            - | $            - | $ | - |
| 6.  NUMBER OF LAST CHECK WRITTEN | | | | | |

| INVESTMENT ACCOUNTS<br>BANK, ACCOUNT NAME & NUMBER | DATE OF PURCHASE | TYPE OF INSTRUMENT | PURCHASE PRICE | CURRENT VALUE | |
|---|---|---|---|---|---|
| 7. | | | | | |
| 8. | | | | | |
| 9. | | | | | |
| 10. | | | | | |
| 11.  TOTAL INVESTMENTS | | | $            - | $ | - |

| CASH | | |
|---|---|---|
| 12.  CURRENCY ON HAND | $ | - |

| 13.  TOTAL CASH - END OF MONTH | $ | - |

**Monthly Operating Report**
**CASH BASIS-3**

| CASE NAME: | Acis Capital Management GP, LLC |
|---|---|
| CASE NUMBER: | 18-30265-sgj11 |

ASSETS OF THE ESTATE

| SCHEDULE "A"<br>REAL PROPERTY | SCHEDULE<br>AMOUNT | MONTH<br>5/11-5/31/2018 | MONTH | MONTH |
|---|---|---|---|---|
| 1. | | | | |
| 2. | | | | |
| 3. | | | | |
| 4. OTHER (ATTACH LIST) | | | | |
| 5. TOTAL REAL PROPERTY ASSETS | $          - | $          - | $          - | $          - |
| SCHEDULE "B"<br>PERSONAL PROPERTY | | | | |
| 1. CASH ON HAND | $          - | | | |
| 2. CHECKING, SAVINGS, ETC. | $          - | | | |
| 3. SECURITY DEPOSITS | | | | |
| 4. HOUSEHOLD GOODS | | | | |
| 5. BOOKS, PICTURES, ART | | | | |
| 6. WEARING APPAREL | | | | |
| 7. FURS AND JEWELRY | | | | |
| 8. FIREARMS & SPORTS EQUIPMENT | | | | |
| 9. INSURANCE POLICIES | | | | |
| 10. ANNUITIES | | | | |
| 11. EDUCATION | | | | |
| 12. RETIREMENT & PROFIT SHARING | | | | |
| 13. STOCKS | | | | |
| 14. PARTNERSHIPS & JOINT VENTURES | | | | |
| 15. GOVERNMENT & CORPORATE BONDS | | | | |
| 16. ACCOUNTS RECEIVABLE | | | | |
| 17. ALIMONY | | | | |
| 18. OTHER LIQUIDATED DEBTS | | | | |
| 19. EQUITABLE INTERESTS | | | | |
| 20. CONTINGENT INTERESTS | | | | |
| 21. OTHER CLAIMS | | | | |
| 22. PATENTS & COPYRIGHTS | | | | |
| 23. LICENSES & FRANCHISES | | | | |
| 24. CUSTOMER LISTS | | | | |
| 25. AUTOS, TRUCKS & OTHER VEHICLES | | | | |
| 26. BOATS & MOTORS | | | | |
| 27. AIRCRAFT | | | | |
| 28. OFFICE EQUIPMENT | | | | |
| 29. MACHINERY, FIXTURES & EQUIPMENT | | | | |
| 30. INVENTORY | | | | |
| 31. ANIMALS | | | | |
| 32. CROPS | | | | |
| 33. FARMING EQUIPMENT | | | | |
| 34. FARM SUPPLIES | | | | |
| 35. OTHER (ATTACH LIST) | | | | |
| 36. TOTAL PERSONAL PROPERTY ASSETS | $          - | $          - | $          - | $          - |
| 37. TOTAL ASSETS | $          - | $          - | $          - | $          - |

**Monthly Operating Report**
**CASH BASIS-4**

| CASE NAME: | Acis Capital Management GP, LLC |
|---|---|
| CASE NUMBER: | 18-30265-sgj11 |

MONTH:    May 11-31, 2018

| LIABILITIES OF THE ESTATE | | |
|---|---|---|
| **PREPETITION LIABILITIES** | **SCHEDULE AMOUNT** | **PAYMENTS** |
| 1.  SECURED | $            - | |
| 2.  PRIORITY | $            - | |
| 3.  UNSECURED | $  11,454,637.09 | |
| 4.  OTHER (ATTACH LIST) | | |
| 5.  TOTAL PREPETITION LIABILITIES | $  11,454,637.09 | $            - |

| POSTPETITION LIABILITIES | DATE INCURRED | AMOUNT OWED | DUE DATE | AMOUNT PAST DUE |
|---|---|---|---|---|
| 1.  FEDERAL INCOME TAXES | | | | |
| 2.  FICA/MEDICARE | | | | |
| 3.  STATE TAXES | | | | |
| 4.  REAL ESTATE TAXES | | | | |
| 5.  OTHER TAXES (ATTACH LIST) | | | | |
| 6.  TOTAL TAXES | | $            - | | $            - |
| OTHER POSTPETITION LIABILITIES INCLUDING TRADE CREDITORS (LIST NAMES OF CREDITORS) | | | | |
| 7. | | | | |
| 8. | | | | |
| 9. | | | | |
| 10. | | | | |
| 11. | | | | |
| 12. | | | | |
| 13. | | | | |
| 14. | | | | |
| 15. | | | | |
| 16. | | | | |
| 17. | | | | |
| 18. | | | | |
| 19. | | | | |
| 20. | | | | |
| 21. | | | | |
| 22. | | | | |
| 23. | | | | |
| 24. | | | | |
| 25. | | | | |
| 26. | | | | |
| 27. | | | | |
| 28. | | | | |
| 29.  (IF ADDITIONAL ATTACH LIST) | | | | |
| 30.  TOTAL OF LINES 7 - 29 | | $            - | | $            - |
| 31.  TOTAL POSTPETITION LIABILITIES | | $            - | | $            - |

# Monthly Operating Report
## CASH BASIS-4A

| CASE NAME: | Acis Capital Management GP, LLC |
|---|---|
| CASE NUMBER: | 18-30265-sgj11 |

MONTH: May 11-31, 2018

| ACCOUNTS RECEIVABLE AGING | SCHEDULE AMOUNT | MONTH May-18 | MONTH | MONTH |
|---|---|---|---|---|
| 1.  0 - 30 | $          - | | | |
| 2.  31 - 60 | $          - | | | |
| 3.  61 - 90 | $          - | | | |
| 4.  91 + | $          - | | | |
| 5.  TOTAL ACCOUNTS RECEIVABLE | $          - | $          - | $          - | $          - |
| 6.  AMOUNT CONSIDERED UNCOLLECTIBLE | | | | |
| 7.  ACCOUNTS RECEIVABLE (NET) | $          - | $          - | $          - | $          - |

| AGING OF POSTPETITION TAXES AND PAYABLES TAXES PAYABLE | 0 - 30 DAYS | 31-60 DAYS | 90+ DAYS | Total |
|---|---|---|---|---|
| 1.  FEDERAL | | | | $          - |
| 2.  STATE | | | | $          - |
| 3.  LOCAL | | | | $          - |
| 4.  OTHER (ATTACH LIST) | | | | $          - |
| 5.  TOTAL TAXES PAYABLE | $          - | $          - | $          - | $          - |
| | | | | |
| 6.  ACCOUNTS PAYABLE | | | | $          - |

| STATUS OF POSTPETITION TAXES FEDERAL | BEGINNING TAX LIABILITY | AMOUNT WITHHELD OR ACCRUED | AMOUNT PAID | ENDING TAX LIABILITY |
|---|---|---|---|---|
| 1.  WITHHOLDING | | | | $          - |
| 2.  FICA-EMPLOYEE | | | | $          - |
| 3.  FICA-EMPLOYER | | | | $          - |
| 4.  UNEMPLOYMENT | | | | $          - |
| 5.  INCOME | | | | $          - |
| 6.  OTHER (ATTACH LIST) | | | | $          - |
| 7.  TOTAL FEDERAL TAXES | $          - | $          - | $          - | $          - |
| STATE AND LOCAL | | | | $          - |
| 8.  WITHHOLDING | | | | $          - |
| 9.  SALES | | | | $          - |
| 10.  EXCISE | | | | $          - |
| 11.  UNEMPLOYMENT | | | | $          - |
| 12.  REAL PROPERTY | | | | $          - |
| 13.  PERSONAL PROPERTY | | | | $          - |
| 14.  OTHER (ATTACH LIST) | | | | $          - |
| 15.  TOTAL STATE & LOCAL | $          - | $          - | $          - | $          - |
| 16.  TOTAL TAXES | $          - | $          - | $          - | $          - |

**Monthly Operating Report**
**CASH BASIS-5**

| CASE NAME: | Acis Capital Management GP, LLC |
|---|---|
| CASE NUMBER: | 18-30265-sgj11 |

MONTH:   May 11-31, 2018

### PAYMENTS TO INSIDERS AND PROFESSIONALS

| | INSIDERS | | |
|---|---|---|---|
| NAME | TYPE OF PAYMENT | AMOUNT PAID | TTL PD TO DATE |
| 1. | | | |
| 2. | | | |
| 3. | | | |
| 4. | | | |
| 5. | | | |
| TOTAL PAYMENTS TO INSIDERS | | $        - | $        - |

| | PROFESSIONALS | | | |
|---|---|---|---|---|
| NAME | DATE OF COURT ORDER AUTHORIZING PAYMENT | AMOUNT APPROVED | AMOUNT PAID | TTL PAID TO DATE | TOTAL INCURRED & UNPAID |
| 1. | | | | | |
| 2. | | | | | |
| 3. | | | | | |
| 4. | | | | | |
| 5. | | | | | |
| TOTAL PAYMENTS TO PROFESSIONALS | | $        - | $        - | $        - | $        - |

### POSTPETITION STATUS OF SECURED NOTES, LEASES PAYABLE AND ADEQUATE PROTECTION PAYMENTS

| NAME OF CREDITOR | SCHEDULED MONTHLY PAYMENTS DUE | AMOUNTS PAID DURING MONTH | TOTAL UNPAID POST-PETITION |
|---|---|---|---|
| 1. | | | |
| 2. | | | |
| 3. | | | |
| 4. | | | |
| 5. | | | |
| 6. TOTAL | $        - | $        - | $        - |

**Monthly Operating Report**
CASH BASIS-6

| CASE NAME: | Acis Capital Management GP, LLC |
|---|---|
| CASE NUMBER: | 18-30265-sgj11 |

MONTH:  May 11-31, 2018

## QUESTIONNAIRE

| | YES | NO |
|---|---|---|
| 1.  HAVE ANY ASSETS BEEN SOLD OR TRANSFERRED OUTSIDE THE NORMAL COURSE OF BUSINESS THIS REPORTING PERIOD? | | X |
| 2.  HAVE ANY FUNDS BEEN DISBURSED FROM ANY ACCOUNT OTHER THAN A DEBTOR IN POSSESSION ACCOUNT? | | X |
| 3.  ARE ANY POSTPETITION RECEIVABLES (ACCOUNTS, NOTES OR LOANS) DUE FROM RELATED PARTIES? | | X |
| 4.  HAVE ANY PAYMENTS BEEN MADE ON PREPETITION LIABILITIES THIS REPORTING PERIOD? | | X |
| 5.  HAVE ANY POSTPETITION LOANS BEEN RECEIVED BY THE DEBTOR FROM ANY PARTY? | | X |
| 6.  ARE ANY POSTPETITION PAYROLL TAXES PAST DUE? | | X |
| 7.  ARE ANY POSTPETITION STATE OR FEDERAL INCOME TAXES PAST DUE? | | X |
| 8.  ARE ANY POSTPETITION REAL ESTATE TAXES PAST DUE? | | X |
| 9.  ARE ANY OTHER POSTPETITION TAXES PAST DUE? | | X |
| 10. ARE ANY AMOUNTS OWED TO POSTPETITION CREDITORS DELINQUENT? | | X |
| 11. HAVE ANY PREPETITION TAXES BEEN PAID DURING THE REPORTING PERIOD? | | X |
| 12. ARE ANY WAGE PAYMENTS PAST DUE? | | X |

IF THE ANSWER TO ANY OF THE ABOVE QUESTIONS IS "YES", PROVIDE A DETAILED
EXPLANATION OF EACH ITEM.  ATTACH ADDITIONAL SHEETS IF NECESSARY.

## INSURANCE

| | YES | NO |
|---|---|---|
| 1.  ARE WORKER'S COMPENSATION, GENERAL LIABILITY AND OTHER NECESSARY INSURANCE COVERAGES IN EFFECT? | n/a | |
| 2.  ARE ALL PREMIUM PAYMENTS PAID CURRENT? | n/a | |
| 3.  PLEASE ITEMIZE POLICIES BELOW | | |

IF THE ANSWER TO ANY OF THE ABOVE QUESTIONS IS "NO" OR IF ANY POLICIES HAVE
BEEN CANCELED OR NOT RENEWED DURING THIS REPORTING PERIOD, PROVIDE AN
EXPLANATION BELOW.  ATTACH ADDITIONAL SHEETS IF NECESSARY.

## INSTALLMENT PAYMENTS

| TYPE OF POLICY | CARRIER | PERIOD COVERED | PAYMENT AMOUNT & FREQUENCY |
|---|---|---|---|
| | | | |
| | | | |
| | | | |
| | | | |

# EXHIBIT "5"

## TO DISCLOSURE STATEMENT

# [TO BE PROVIDED AT A LATER DATE]