**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE NORTHERN DISTRICT OF TEXAS**
**DALLAS DIVISION**

| | | |
|---|---|---|
| IN RE: | § | Case No. 18-30264-SGJ-11 |
| | § | Case No. 18-30265-SGJ-11 |
| ACIS CAPITAL MANAGEMENT, L.P., | § | |
| ACIS CAPITAL MANAGEMENT GP, LLC, | § | (Jointly Administered Under Case |
| | § | No. 18-30264-SGJ-11) |
| DEBTORS. | § | |
| | § | Chapter 11 |

**FIRST AMENDED JOINT PLAN FOR ACIS CAPITAL MANAGEMENT, L.P. AND**
<u>**ACIS CAPITAL MANAGEMENT GP, LLC**</u>

Jeff P. Prostok – State Bar No. 16352500
J. Robert Forshey – State Bar No. 07264200
Suzanne K. Rosen – State Bar No. 00798518
Matthew G. Maben – State Bar No. 24037008
**FORSHEY & PROSTOK LLP**
777 Main St., Suite 1290
Ft. Worth, TX 76102
Telephone: (817) 877-8855
Facsimile: (817) 877-4151
jprostok@forsheyprostok.com
bforshey@forsheyprostok.com
srosen@forsheyprostok.com
mmaben@forsheyprostok.com

**COUNSEL FOR ROBIN PHELAN,**
**CHAPTER 11 TRUSTEE**

Rakhee V. Patel – State Bar No. 00797213
Phillip Lamberson – State Bar No. 00794134
Joe Wielebinski – State Bar No. 21432400
Annmarie Chiarello – State Bar No. 24097496
**WINSTEAD PC**
500 Winstead Building
2728 N. Harwood Street
Dallas, Texas 75201
Telephone: (214) 745-5400
Facsimile:  (214) 745-5390
rpatel@winstead.com
plamberson@winstead.com
jwielebinski@winstead.com
achiarello@winstead.com

**SPECIAL COUNSEL FOR ROBIN PHELAN,**
**CHAPTER 11 TRUSTEE**

DATED:     July 29, 2018
           Dallas, Texas

# ARTICLE I.
## DEFINITIONS

A.    Defined Terms. In addition to such other terms as are defined in other sections of the Plan, the following terms shall have the meanings set forth below (such meanings to be equally applicable to both the singular and plural, masculine and feminine forms of the terms defined).

1.01.    "Acis CLOs" refers collectively to CLO-1, CLO-3, CLO-4, CLO-5, and CLO-6.

1.02.    "Acis GP" means Acis Capital Management, GP, LLC, one of the Debtors in the above-referenced Chapter 11 Cases.

1.03.    "Acis LP" means Acis Capital Management, LP, one of the Debtors in the above-referenced Chapter 11 Cases.

1.04.    "Acis Trust" means the trust established pursuant to the Acis Post-Confirmation Trust Agreement for the purpose of liquidating and distributing the Acis Trust Assets to the Beneficiaries.

1.05.    "Acis Trust Agreement" means (a) that certain Acis Post-Confirmation Trust Agreement substantially in the form of the attached **Exhibit B**, establishing the Acis Trust and providing for liquidation and distribution of the Acis Trust Assets if the Plan is confirmed based on the terms and provisions of Plan A set forth in Article II of the Plan, or (b) that certain Acis Post-Confirmation Trust Agreement substantially in the form of the attached **Exhibit C**, establishing the Acis Trust and providing for liquidation and distribution of the Acis Trust Assets if the Plan is confirmed based on the terms and provisions of (i) Plan B set forth in Article III of the Plan, or (iii) Plan C set forth in Article IV of the Plan.

1.06.    "Acis Trust Assets" means all Assets transferred to the Acis Trust under Plan A, Plan B, or Plan C.

1.07.    "Acis Trustee" means a trustee as may be approved by the Bankruptcy Court to serve as the trustee under the Acis Trust Agreement.

1.08.    "Administrative Bar Date" means the deadline to file Claims for Allowance as an Administrative Expense set forth in section 2.05(c), 3.05(c), or 4.05(c), as applicable, of the Plan.

1.09.    "Administrative Expense" means any cost or expense of administration of the Chapter 11 Cases allowed under subsections 503(b) and 507(a)(1) of the Bankruptcy Code, including, without limitation, any actual and necessary expenses of preserving the Estate of the Debtors, any actual and necessary expenses of operating the business of the Debtors, all compensation or reimbursement of expenses to the extent allowed by the Bankruptcy Court under section 330 or 503 of the Bankruptcy Code, and any fees or charges assessed against the estates of the Debtors under section 1930, chapter 123 of title 28 of the United States Code.

1.10.    "Affiliate" has the meaning ascribed to such term in section 101(2) of the Bankruptcy Code.

1.11.   "ALF PMA" means that certain Portfolio Management Agreement by and between Acis LP and Acis Loan Funding, Ltd. dated December 22, 2016.

1.12.   "Allowed," when used with respect to a Claim (other than an Administrative Expense), means a Claim (a) to the extent it is not Contested; or (b) a Contested Claim, proof of which was filed timely with the Bankruptcy Court, and (i) as to which no Objection was filed by the Objection Deadline, or (ii) as to which an Objection was filed by the Objection Deadline, to the extent, if any, such Claim is ultimately allowed by a Final Order; *provided, however*, if a Claim is to be determined in a forum other than the Bankruptcy Court, such Claim shall not become Allowed until determined by Final Order of such other forum and allowed by Final Order of the Bankruptcy Court. "Allowed," when used with respect to an Administrative Expense, shall mean an Administrative Expense approved by application to the Bankruptcy Court.

1.13.   "Assets" includes all right, title, and interest in and to all property of every type or nature owned or claimed by the Debtors as of the Petition Date, together with all such property of every type or nature subsequently acquired by the Debtors through the Effective Date, whether real or personal, tangible or intangible, and wherever located, and including, but not limited to, property as defined in section 541 of the Bankruptcy Code.

1.14.   "ATA" means an asset transfer agreement between the Debtors and the Transferee providing for the transfer of the Transferred Assets under Plan A, a copy of which is attached hereto as **Exhibit A**.

1.15.   "Available Cash" means (a) when used in relation to the Acis Trust, any Cash over and above the amount needed for all current or anticipated Trust Expenses as determined in the sole discretion of the Acis Trustee, including fees and expenses by the Acis Trustee and Trust Professionals, any Reserves deemed necessary by the Acis Trustee to pursue Estate Claims or assert Estate Defenses, and all other costs deemed necessary to administer the Acis Trust, (b) when used in relation to the Reorganized Debtor, any Cash over and above the amount needed for the Reorganized Debtor to maintain business operations, as determined in the sole discretion of the Reorganized Debtor.

1.16.   "Avoidance Action" means a cause of action assertable by the Debtors pursuant to Chapter 5 of the Bankruptcy Code, including without limitation, actions brought or which may be brought under sections 542, 543, 544, 545, 547, 548, 549, 550, or 553 of the Bankruptcy Code. Such causes of action may be asserted to recover, among other things, the transfers listed in the Debtors' respective Schedules, including in response to Question 3 of the statements of financial affairs.

1.17.   "Ballot" means the form of ballot provided to holders of Claims or Interests entitled to vote pursuant to Bankruptcy Rule 3017(d), by which each such holder may accept or reject the Plan.

1.18.   "Bankruptcy Code" means the Bankruptcy Reform Act of 1978, as amended and codified at Title 11 of the United States Code.

1.19.   "Bankruptcy Court" means the United States Bankruptcy Court for the Northern District of Texas, Dallas Division, or such other court having jurisdiction over all or any part of the Chapter 11 Cases.

1.20. "Bankruptcy Rules" means the Federal Rules of Bankruptcy Procedure, as amended from time to time, as applicable to the Chapter 11 Cases, including applicable local rules of the Bankruptcy Court.

1.21. "Beneficiary" means any Person that is a holder of an Allowed Claim entitled to receive Distributions from the Acis Trust pursuant to the Plan.

1.22. "Business Day" means any day other than Saturday, Sunday, a legal holiday, or a day on which national banking institutions in Texas are authorized or obligated by law or executive order to close.

1.23. "Cash" means legal tender of the United States of America, cash equivalents and other readily marketable securities or instruments, including, but not limited to, readily marketable direct obligations of the United States of America, certificates of deposit issued by banks or commercial paper.

1.24. "Cash Proceeds" means the total Cash that the Debtors will receive from transfer of the Transferred Assets to the Transferee pursuant to the ATA pursuant to Plan A.

1.25. "Chapter 11 Cases" refers collectively to the Acis LP bankruptcy case, Case No. 18-30264-sgj11, and the Acis GP bankruptcy case, Case No. 18-30265-sgj11, which are being jointly administered under Case No. 18-30264-sgj11.

1.26. "Chapter 11 Trustee" refers to Robin Phelan, the chapter 11 trustee for the Debtors.

1.27. "Claim" means (a) a right to payment, whether or not such right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured (including potential and unmatured tort and contract claims), disputed, undisputed, legal, equitable, secured or unsecured, or (b) a right to an equitable remedy for breach of performance if such breach gives rise to a right of payment, whether or not such right to an equitable remedy is reduced to judgment, fixed, contingent, matured, unmatured (including potential and unmatured tort and contract claims), disputed, undisputed, secured or unsecured.

1.28. "Claimant" means the holder of a Claim.

1.29. "Class" means a class of Claims or Interests as described in the Plan.

1.30. "CLO" means collateralized loan obligations.

1.31. "CLO-1" means Acis CLO 2013-1 LTD.

1.32. "CLO-1 Indenture" means that certain Indenture, dated as of March 18, 2013, issued by CLO-1, as issuer, Acis CLO 2013-1 LLC, as co-Issuer and US Bank, as Indenture Trustee.

1.33. "CLO-1 PMA" means that certain Portfolio Management Agreement by and between Acis LP and CLO-1, dated March 18, 2013.

1.34. "CLO-3" means Acis CLO 2014-3 LTD.

1.35. "CLO-3 Indenture" means that certain Indenture, dated as of February 25, 2014, issued by CLO-3, as issuer, Acis CLO 2014-3 LLC, as co-Issuer and US Bank, as Indenture Trustee

1.36. "CLO-3 PMA" means that certain Portfolio Management Agreement by and between Acis LP and CLO-3, dated February 25, 2014.

1.37. "CLO-4" means Acis CLO 2014-4 LTD.

1.38. "CLO-4 Indenture" means that certain Indenture, dated as of June 5, 2014, issued by CLO-4, as issuer, Acis CLO 2014-4 LLC, as co-Issuer and US Bank, as Indenture Trustee.

1.39. "CLO-4 PMA" means that certain Portfolio Management Agreement by and between Acis LP and CLO-4, dated June 5, 2014.

1.40. "CLO-5" means Acis CLO 2014-5 LTD.

1.41. "CLO-5 Indenture" means that certain Indenture, dated as of November 18, 2014, issued by CLO-5, as issuer, Acis CLO 2014-5 LLC, as co-Issuer and US Bank, as Indenture Trustee.

1.42. "CLO-5 PMA" means that certain Portfolio Management Agreement by and between Acis LP and CLO-5, dated November 18, 2014.

1.43. "CLO-6" means Acis CLO 2015-6 LTD.

1.44. "CLO-6 Indenture" means that certain Indenture, dated as of April 16, 2015, issued by CLO-6, as issuer, Acis CLO 2015-6 LLC, as co-Issuer and US Bank, as Indenture Trustee.

1.45. "CLO-6 PMA" means that certain Portfolio Management Agreement by and between Acis LP and CLO-6, dated April 16, 2015.

1.46. "CLO Holdco" means CLO Holdco, Ltd.

1.47. "Closing Date" means the date specified in the ATA for the closing of the transaction between the Debtors and the Transferee.

1.48. "Collateral" means any Asset subject to a valid and enforceable Lien to secure payment of a Claim.

1.49. "Confirmation Date" means the date of entry of the Confirmation Order.

1.50. "Confirmation Hearing" means the hearing conducted by the Bankruptcy Court pursuant to section 1128 of the Bankruptcy Code and Bankruptcy Rule 3020(b) to consider confirmation of the Plan, as such hearing may be continued from time to time.

1.51. "Confirmation Order" means the order of the Bankruptcy Court confirming the Plan in accordance with the provisions of Chapter 11 of the Bankruptcy Code.

1.52.  "Contested," when used with respect to a Claim, means a Claim against the Debtors that is listed in the Debtors' Schedules as disputed, contingent, or unliquidated; that is listed in the Debtors' Schedules as undisputed, liquidated, and not contingent and as to which a proof of Claim has been filed with the Bankruptcy Court, to the extent the proof of Claim amount exceeds the scheduled amount; that is not listed in the Debtors' Schedules, but as to which a proof of Claim has been filed with the Bankruptcy Court; or as to which an objection has been or may be timely filed and has not been denied by Final Order. To the extent an objection relates to the allowance of only a part of a Claim, such Claim shall be a Contested Claim only to the extent of the objection.

1.53.  "Creditor" means a "creditor," as defined in section 101(10) of the Bankruptcy Code.

1.54.  "Cure Claim" means the payment or other performance required to cure any existing default under an Executory Contract or Unexpired Lease.

1.55.  "Debtors" means, collectively, Acis GP and Acis LP, the debtors in the above-captioned Chapter 11 Cases.

1.56.  "Disallowed," when used with respect to all or any part of a Claim or Interest, means that portion of a Claim or Interest to which an objection or motion to disallow has been sustained by a Final Order.

1.57.  "Disclosure Statement" means the Disclosure Statement filed with respect to the Plan, as it may be amended, modified, or supplemented from time to time.

1.58.  "Distribution" means any payment or other disbursement of property pursuant to the Plan.

1.59.  "Effective Date" means the first Business Day which is fourteen (14) days after the Confirmation Date if the Confirmation Order is not stayed or, if the Confirmation Order is stayed, the first Business Day following the lifting, dissolution, or removal of such stay which is at least fourteen (14) Business Days after the Confirmation Date, and upon which all conditions to the effectiveness of the Plan set forth in Article X below are satisfied.

1.60.  "Estate" shall collectively refer to the bankruptcy estates of the Debtors in the Chapter 11 Cases.

1.61.  "Estate Accounts Receivable" shall include all accounts receivable of the Estate, including from all sums payable to the Debtors on account of goods or services provided by the Debtors.

1.62.  "Estate Claims" shall include all claims and causes of action held by the Debtors' Estate, including without limitation all Avoidance Actions, but shall not include any Estate Claims pertaining to the Transferred Assets being transferred to the Transferee pursuant to the ATA.

1.63.  "Estate Contract" shall include all contracts or agreements to which the Estate is a party or beneficiary, excluding any contracts or agreements being transferred to the Transferee.

1.64. "Estate Defenses" means all defenses, affirmative defenses, counterclaims, or offsets by the Debtors' Estate against any Person, including but not limited to any Creditor.

1.65. "Estate Insurance" means any insurance policy or interest in an insurance policy in which the Estate has an interest or rights.

1.66. "Estate Professionals" means those Persons employed pursuant to an order of the Bankruptcy Court in accordance with sections 327, 328, and 1103 of the Bankruptcy Code or who are entitled to compensation or reimbursement pursuant to sections 503(b)(3)(D) or 506(b) of the Bankruptcy Code.

1.67. "Executory Contract" means any executory contract which is subject to section 365 of the Bankruptcy Code and which is not an Unexpired Lease.

1.68. "Final Order" means an order or judgment of the Bankruptcy Court or any other court or adjudicative body, as to which the time to appeal or seek rehearing or petition for certiorari shall have expired or which order or judgment shall no longer be subject to appeal, rehearing, or certiorari proceeding and with respect to which no appeal, motion for rehearing, or certiorari proceeding or stay shall then be pending.

1.69. "General Unsecured Claim" means any Claim against the Debtors that is not an Administrative Expense, Priority Tax Claim, Priority Non-Tax Claim, Secured Tax Claim, or Secured Claim, but includes any Rejection Claims pursuant to section 502(g) of the Bankruptcy Code.

1.70. "Governmental Unit" means a "governmental unit" as such term is defined in section 101(27) of the Bankruptcy Code.

1.71. "HCLOF" means Highland CLO Funding, Ltd.

1.72. "HCLOF Claim" means all Claims asserted by HCLOF against the Debtors, including any claim relating to the Subordinated Notes.

1.73. "Highland" means Highland Capital Management, L.P.

1.74. "Highland Adversary" means Adversary Proceeding No. 18-03078-sgj.

1.75. "Highland Claim" means all Claims asserted by Highland or any Affiliates of Highland, other than HCLOF, against the Debtors, including any Claim resulting from the termination of the Sub-Advisory Agreement and Shared Services Agreement.

1.76. "Highland CLOM" means Highland CLO Management, Ltd.

1.77. "Highland HCF" means Highland HCF Advisors, Ltd.

1.78. "Impaired" means, when used with reference to a Claim or Interest, a Claim or Interest that is impaired within the meaning of section 1124 of the Bankruptcy Code.

1.79. "Indentures" refers collectively to the CLO-1 Indenture, the CLO-3 Indenture, the CLO-4 Indenture, the CLO-5 Indenture, and the CLO-6 Indenture.

1.80.    "Indenture Trustee" refers to US Bank.

1.81.    "Initial Distribution Date," when used with respect to any Contested Claim or Rejection Claim, shall mean the later of (i) the first Business Day at least thirty (30) days after the date on which any such Contested Claim or Rejection Claim becomes an Allowed Claim, or (ii) if the payment terms of Articles II, III, or IV of this Plan applicable to each such Claim specify a different date, then the date as calculated pursuant to the terms of Articles II, III, or IV of this Plan applicable to each such Claim.  The Initial Distribution Date shall be separately determined with respect to each Contested Claim or Rejection Claim based upon the date each such Claim becomes an Allowed Claim.

1.82.    "Insider" means a Person described in section 101(31) of the Bankruptcy Code.

1.83.    "Insider Claims" means any claims asserted by Insiders of the Debtors, including but not limited to any claims asserted by Highland or any Affiliate thereof, but excluding the HCLOF Claim unless otherwise indicated in the Plan.

1.84.    "Interests" means any equity or stock ownership interest in the Debtors.

1.85.    "Issuers and Co-Issuers" means CLO-1, CLO-3, CLO-4, CLO-5, CLO-6, Acis CLO-2014-3, LLC, Acis CLO 2014-4, LLC, Acis CLO 2014-5, LLC, and Acis 2015-6, LLC.

1.86.    "Lien" means any mortgage, lien, charge, security interest, encumbrance, or other security device of any kind affecting any asset or property of the Debtors contemplated by section 101(37) of the Bankruptcy Code.

1.87.    "Net Acis Trust Assets" means the portion of the Acis Trust Assets available for distribution to holders of Allowed Claims, excluding any Reserves for Contested Claims, operating expenses of the Acis Trustee, or otherwise.

1.88.    "Net Cash Proceeds" means the Cash Proceeds from the transfer of the Transferred Assets less the amount paid to HCLOF in satisfaction of the HCLOF Claim pursuant to the provisions of Article II of the Plan.

1.89.    "Neutra" means Neutra, Ltd.

1.90.    "Oaktree" means Oaktree Capital Management, L.P. or an Affiliate designated by Oaktree Capital Management, L.P. to be the Transferee of the Transferred Assets pursuant to the ATA.

1.91.    "Objection" means (a) an objection to the allowance of a Claim interposed by any party entitled to do so within the applicable period of limitation fixed by the Plan, the Bankruptcy Code, the Bankruptcy Rules, or the Bankruptcy Court, and (b) as to any Taxing Authority, a proceeding commenced under section 505 of the Bankruptcy Code to determine the legality or amount of any tax.

1.92.    "Objection Deadline" shall mean the later of (a) ninety (90) days following the Effective Date, unless otherwise extended by order of the Bankruptcy Court, or (b) as to any Rejection Claim filed after the Effective Date, ninety (90) days after the date on which the proof of Claim reflecting the Rejection Claim is filed.

1.93.    "Other Secured Claim" means any Secured Claim other than (a) a Secured Tax Claim, (b) a Secured Claim asserted by Terry, or (c) a Secured Claim asserted or held by HCLOF.

1.94.    "Person" means any individual, corporation, general partnership, limited partnership, association, joint stock company, joint venture, estate, trust, unincorporated organization, government, or any political subdivision thereof or other entity.

1.95.    "Petition Date" means January 30, 2018.

1.96.    "Plan" means this joint Chapter 11 plan, either in its present form or as it may be altered, amended, or modified from time to time.

1.97.    "Plan A" means Plan A described in Article II of the Plan.

1.98.    "Plan A Transaction" means the transaction between the Trustee and the Transferee reflected in the ATA.

1.99.    "Plan B" means Plan B described in Article III of the Plan.

1.100.    "Plan C" means Plan C described in Article IV of the Plan.

1.101.    "Plan Documents" means the documents that aid in effectuating the Plan as specifically identified as such herein and filed with the Bankruptcy Court.

1.102.    "Plan Rate" means a rate of interest of five percent (5%) per annum.

1.103.    "PMAs" refers collectively to the CLO-1 PMA, CLO-3 PMA, CLO-4 PMA, CLO-5 PMA, and CLO-6 PMA.

1.104.    "Transaction Amount" refers to the amounts provided by Oaktree for the Transferred Assets pursuant to the ATA under Plan A, which shall include:  (a) Cash equal to the mid-point between the bid and the ask price for the assets of the CLOs on the Confirmation Date plus twenty-five basis points (mid-NAV + 25 bps) to be paid to the holders of HCLOF Claim, and (b) the sum of not less than Eight Million Six Hundred Thousand Dollars ($8,600,000.00) in exchange for an assignment of all of Acis LP's rights, title and interest in the PMAs, plus an amount of up to One Million Dollars ($1,000,000.00) attributable to any Allowed Highland Claim.

1.105.    "Priority Claim" means a Claim (other than a Claim for an Administrative Expense) to the extent that it is entitled to priority in payment under section 507(a) of the Bankruptcy Code.

1.106.    "Priority Non-Tax Claim" means a Priority Claim other than a Priority Tax Claim.

1.107.    "Priority Tax Claim" means a Claim of a governmental unit of the kind specified in subsection 507(a)(8) of the Bankruptcy Code.

1.108.    "Pro Rata Share" means, as to the holder of a specific Claim, the ratio that the amount of such holder's Claim bears to the aggregate amount of all Claims included in the particular Class or category in which such holder's Claim is included.

1.109.  "Rejected Leases and Contracts" means all Unexpired Leases and Executory Contracts of the Debtors that are not expressly assumed and assigned to the Transferee or otherwise assumed by the Debtors.

1.110.  "Rejection Claim" means a Claim arising under section 502(g) of the Bankruptcy Code as a consequence of the rejection of any Executory Contract or Unexpired Lease.

1.111.  "Remaining Assets" means, in the event that the Plan is confirmed based on the terms and provisions of Plan A of the Plan, any Assets not being transferred to the Transferee, which Assets will be transferred to the Acis Trust on the Effective Date.

1.112.  "Reorganized Debtor" means the Debtors, as reorganized and substantively consolidated, acting from and after the Effective Date if the Plan is confirmed based on the terms and provisions of either Plan B or Plan C.

1.113.  "Reserve" or "Reserves" means any reserves set aside by the Acis Trustee pursuant to this Plan or the Acis Trust Agreement, including reserves set aside for the payment of any Trust Expenses or funding any Distributions or payments pursuant to the Plan.

1.114.  "Schedules" means the schedules of assets and liabilities and the statements of financial affairs filed by the Debtors as required by section 521 of the Bankruptcy Code and Bankruptcy Rule 1007, as such schedules or statements have been or may be subsequently amended.

1.115.  "Secured Claim" means (a) a Claim secured by a lien on any Assets, which lien is valid, perfected, and enforceable under applicable law and is not subject to avoidance under the Bankruptcy Code or applicable nonbankruptcy law, and which is duly Allowed, but only to the extent of the value of the holder's interest in the Collateral that secures payment of the Claim; (b) a Claim against the Debtors that is subject to a valid right of recoupment or setoff under section 553 of the Bankruptcy Code, but only to the extent of the Allowed amount subject to recoupment or setoff as provided in section 506(a) of the Bankruptcy Code; and (c) a Claim deemed or treated under the Plan as a Secured Claim; provided, that, to the extent that the value of such interest is less than the amount of the Claim which has the benefit of such security, the unsecured portion of such Claim shall be treated as a General Unsecured Claim unless, in any such case the Class of which the Claim is a part makes a valid and timely election in accordance with section 1111(b) of the Bankruptcy Code to have such Claim treated as a Secured Claim to the extent Allowed.

1.116.  "Secured Creditor" means the holder of a Secured Claim.

1.117.  "Secured Tax Claim" means any ad valorem tax Claim that arises or is deemed to have arisen on or before the Petition Date, irrespective of the date on which such Claim is assessed or due.

1.118.  "Shared Services Agreement" means that certain Fourth Amended and Restated Shared Services Agreement by and between Acis LP and Highland dated March 17, 2017.

1.119.  "Sub-Advisory Agreement" means that certain Third Amended and Restated Sub-Advisory Agreement by and between Acis LP and Highland dated March 17, 2017

1.120.  "Subordinated Notes" means the subordinated notes in the Transaction CLOs held by HCLOF, and expressly does not include any subordinated notes in the Transaction CLOs held by any other party.

1.121.  "Substantial Consummation" means the earlier of: (a) the closing of the Transaction pursuant to the ATA, or (b) the day on which a Creditor first receives a Distribution of any kind under the terms and provisions of the Plan.

1.122.  "Taxing Authority" shall include the State of Texas or any subdivision thereof, including without limitation any political subdivision of the State of Texas assessing ad valorem taxes against any of the Assets.

1.123.  "Terry" means Joshua N. Terry.

1.124.  "Terry Secured Claim" means any claim asserted against the Debtors by Terry, including as asserted in Proof of Claim No. 1 in both Chapter 11 Cases.

1.125.  "Transaction CLOs" means CLO-3, CLO-4, CLO-5 and CLO-6.

1.126.  "Transferee" shall mean the recipient of the Transferred Assets pursuant to the ATA, which may be Oaktree or such other Transferee as may be approved by the Court.

1.127.  "Transferred Assets" means all Assets that will be transferred to the Transferee pursuant to the ATA, including the Subordinated Notes and Acis LP's rights, title and interest in the PMAs, but *specifically excluding* all Estate Claims and Estate Accounts Receivable.

1.128.  "Trust Expenses" means expenses incurred by the Acis Trustee in connection with the administration of the Acis Trust including without limitation the fees of the Acis Trustee, fees and expenses of Trust Professionals, and any cost or expenses which the Acis Trustee believes to be necessary or appropriate to the administration of the Acis Trust.

1.129.  "Trust Professionals" includes all professionals retained by the Acis Trustee including, without limitation, legal counsel, accountants, and such other advisors or professionals as the Acis Trustee may wish to retain.

1.130.  "Unclaimed Property" means any cash, Distribution, or any other property of the Debtors unclaimed for a period of one (1) year after the applicable Initial Distribution Date.

1.131.  "Unexpired Lease" means any unexpired lease or agreement which is subject to section 365 of the Bankruptcy Code and which is not an Executory Contract.

1.132.  "US Bank" means U.S. Bank National Association.

B.    Interpretation. Unless otherwise specified, all section, article and exhibit references in the Plan are to the respective section in, article of, or exhibit to, the Plan, as the same may be amended, waived, or modified from time to time. The headings in the Plan are for convenience and reference only and shall not limit or otherwise affect the provisions hereof. The rules of construction set forth in section 102 of the Bankruptcy Code, other than section 102(5) of the Bankruptcy Code, apply to construction of the Plan. For the purposes of construction of the Plan, "or" is disjunctive.

C.    <u>Other Terms</u>. The words "herein," "hereof," "hereto," "hereunder," and others of similar import refer to the Plan as a whole and not to any particular section, subsection, or clause contained in the Plan. References herein to "after notice and hearing" or other similar language shall have the same meaning as in section 102(1) of the Bankruptcy Code. Otherwise, a term used herein that is not specifically defined herein shall have the meaning ascribed to that term, if any, in the Bankruptcy Code.

D.    <u>Exhibits and Plan Documents</u>. All Exhibits to the Plan and all Plan Documents are incorporated into the Plan by this reference and are a part of the Plan as if set forth in full herein. Any Plan Documents may be filed with the Clerk of the Bankruptcy Court prior to the commencement of the Confirmation Hearing. Holders of Claims and Interests may obtain a copy of the Plan Documents, once filed, by a written request sent to the following address: Forshey & Prostok, LLP, 777 Main Street, Suite 1290, Fort Worth, Texas 76102, Attention: Linda Breedlove; Fax number (817) 877-4151; email: lbreedlove@forsheyprostok.com.

**ARTICLE II.**
**<u>PLAN A</u>**

2.01.    Plan A involves the transfer of the Transferred Assets to a Transferee pursuant to an ATA, including the assumption and assignment of the PMAs to the Transferee, and the transfer on the Effective Date of the Net Cash Proceeds and the Remaining Assets to the Acis Trust. If the Plan, based on the terms and provisions of Plan A, is confirmed by the Bankruptcy Court, the provisions of Articles III and IV of this Plan shall be deemed void and of no force and effect.

**A.    PLAN A – CLASSIFICATION OF CLAIMS AND INTERESTS**

2.02.    The following is a designation of the Classes of Claims and Interests under Plan A of the Plan. Administrative Expenses, Priority Claims of the kinds specified in sections 507(a)(2) and 507(a)(3) of the Bankruptcy Code and Priority Tax Claims have not been classified, are excluded from the following Classes in accordance with section 1123(a)(1) of the Bankruptcy Code, and their treatment is set forth in Article II.B of the Plan. A Claim shall be deemed classified in a particular Class only to the extent that the Claim qualifies within the description of that Class. A Claim is included in a particular Class only to the extent that the Claim is an Allowed Claim in that Class.

> Class 1 – Secured Tax Claims
> Class 2 – HCLOF Claim
> Class 3 – Terry Secured Claim
> Class 4 – General Unsecured Claims
> Class 5 – Insider Claims
> Class 6 – Interests

2.03.    <u>Impaired Classes of Claims and Interests under Plan A</u>. Class 1 is unimpaired. Classes 2 through 6 are Impaired.

2.04.    <u>Impairment or Classification Controversies</u>. If a controversy arises as to the classification of any Claim or Interest, or as to whether any Class of Claims or Interests is Impaired under the Plan, the Bankruptcy Court shall determine such controversy as a part of the confirmation process.

## B.    PLAN A – TREATMENT OF UNCLASSIFIED CLAIMS

2.05.   Administrative Expenses

(a)    The Acis Trustee shall pay, in accordance with the ordinary business terms applicable to each such expense or cost, the reasonable and ordinary expenses incurred in operating the Debtors' businesses or administering the Estate before the Effective Date ("Ordinary Course Claims"). The remaining provisions of this section 2.05 shall not apply to the Ordinary Course Claims, except that if there is a dispute relating to any such Ordinary Course Claim, the Acis Trustee may move the Bankruptcy Court to apply the provisions of Article VII below relating to Contested Claims and require the holder of the Contested Ordinary Course Claim to assert such Claim through the Chapter 11 Cases.

(b)    Each holder of an Allowed Administrative Expense (other than Ordinary Course Claims and Administrative Expense Claims by Estate Professionals), shall receive (i) the amount of such holder's Allowed Administrative Expense in one Cash payment on the later of the Effective Date or the tenth (10th) Business Day after such Administrative Expense becomes an Allowed Administrative Expense, or (ii) such other treatment as may be agreed to in writing by such Administrative Expense Creditor and the Acis Trustee, or as otherwise ordered by the Bankruptcy Court.

(c)    Unless the Bankruptcy Court orders to the contrary or the Acis Trustee agrees to the contrary in writing, the holder of a Claim for an Administrative Expense, other than such a Claim by an Estate Professional, an Ordinary Course Claim, or an Administrative Expense which is already Allowed, shall file with the Bankruptcy Court and serve upon the Acis Trustee and its counsel a written notice of such Claim for an Administrative Expense within thirty (30) days after the Effective Date. This deadline is the "Administrative Bar Date." Such notice shall include at a minimum: (i) the name, address, telephone number and fax number (if applicable) or email address of the holder of such Claim, (ii) the amount of such Claim, and (iii) the basis of such Claim. **Failure to timely and properly file and serve such notice by the Administrative Bar Date shall result in such Claim for an Administrative Expense being forever barred and discharged and the holder thereof shall be barred from receiving any Distribution through the Acis Trust on account of such Claim for an Administrative Expense**.

(d)    A Claim for an Administrative Expense, for which a proper notice was filed and served under subsection 2.05(c) above, shall become an Allowed Administrative Expense if no Objection is filed within thirty (30) days of the filing and service of such notice. If a timely Objection is filed, the Claim shall become an Allowed Administrative Expense only to the extent allowed by a Final Order.

(e)    The procedures contained in subsections 2.05(a), (c) and (d) above shall not apply to Administrative Expense Claims asserted by Estate Professionals, who shall each file and submit an appropriate final fee application to the Bankruptcy Court no later than sixty (60) days after the Effective Date. A Claim for an Administrative Expense by an Estate Professional in respect of which a final fee application has been properly filed and served shall become an Allowed Administrative Expense only to the extent allowed by Final Order and, if so Allowed, shall be paid in accordance with subsection 2.05(b) above. Professional fees and expenses to any Estate Professional incurred on or after the Effective Date may be paid by the Acis Trustee without necessity of application to or order by the Bankruptcy Court.

(f)      If the Acis Trustee asserts any Estate Claims as counterclaims or defenses to a Claim for Administrative Expense, the Administrative Expense Claim shall be determined through an adversary proceeding before the Bankruptcy Court.  The Bankruptcy Court shall have exclusive jurisdiction to adjudicate and Allow all Claims for any Administrative Expense.

2.06.   <u>Priority Tax Claims</u>. Each holder of an Allowed Priority Tax Claim shall receive (a) one Cash payment in an amount equal to the principal amount of such Allowed Priority Tax Claim, plus interest at the rate and in the manner prescribed by applicable state law from the later of the Petition Date or the first day after the last day on which such Priority Tax Claim may be paid without penalty, no later than sixty (60) days after each such Claim becomes an Allowed Claim, or (b) such other treatment as may be agreed to in writing by the holder of the Priority Tax Claim and the Acis Trustee.

2.07.   <u>U.S. Trustee's Fees</u>. The Acis Trustee shall pay the U.S. Trustee's quarterly fees incurred pursuant to 28 U.S.C. § 1930(a)(6).  Any fees due as of the Confirmation Date shall be paid in full on the Effective Date or as soon thereafter as is practicable.  After the Confirmation Date, the Acis Trustee shall continue to pay quarterly fees as they accrue until a final decree is entered and the Chapter 11 Cases are closed.  The Acis Trustee shall file with the Bankruptcy Court and serve on the U.S. Trustee quarterly financial reports for each quarter, or portion thereof, that the Chapter 11 Cases remain open.

## C.      PLAN A – TREATMENT OF CLASSIFIED CLAIMS AND INTERESTS

2.08.   <u>Class 1 – Secured Tax Claims</u>. Each holder of an Allowed Secured Tax Claim shall receive (a) one Cash payment in an amount equal to the principal amount of such Allowed Secured Tax Claim, plus interest at the rate and in the manner prescribed by applicable state law from the later of the Petition Date or the first day after the last day on which such Secured Tax Claim may be paid without penalty, on the Initial Distribution Date, or (b) such other treatment as may be agreed to in writing by the holder of the Secured Tax Claim and the Acis Trustee.  The Liens securing such Secured Tax Claims shall remain unimpaired and unaffected until each such Class 1 Claim is paid in full.  Class 1 is unimpaired.  Holders of Class 1 Claims are conclusively presumed to have accepted the Plan and, accordingly, are not entitled to vote on the Plan.

2.09.   <u>Class 2 – HCLOF Claim</u>.  On the Effective Date, the holder of the Allowed HCLOF Claim shall receive a Cash payment equal to the mid-point of the bid and the ask for the assets of the Transaction CLOs on the Confirmation Date, plus 25 basis points (mid-NAV +25 bps).  Class 2 is Impaired.  The Holder of the Class 2 Claim is entitled to vote on the Plan.

2.10.   <u>Class 3 – Terry Secured Claim</u>.  The Allowed Terry Secured Claim shall be treated as an unsecured claim and shall be paid in Cash, in full, plus interest at the rate and in the manner prescribed by applicable state law from the Petition Date, within sixty (60) days of the later of (a) the Initial Distribution Date, or (b) the date that the Terry Secured Claim becomes an Allowed Claim.  Class 3 is Impaired.  The Holder of the Class 3 Terry Secured Claim is entitled to vote on the Plan.

2.11.   <u>Class 4 – General Unsecured Claims</u>.  Each holder of an Allowed General Unsecured Claim shall receive a Cash Payment equal to the Allowed amount of such holder's General Unsecured Claim within sixty (60) days of the later of (a) the Initial Distribution Date, or (b) the date on which such holder's Claim becomes an Allowed General Unsecured Claim.  Class 4 is Impaired.  Holders of Class 4 Claims are entitled to vote on the Plan.

2.12.   <u>Class 5 – Insider Claims</u>.  Holders of Class 5 Insider Claims shall be treated as follows:

(a)     Class 5 shall consist of Insider Claims which constitute General Unsecured Claims and shall specifically include any General Unsecured Claim asserted by Highland and any Affiliate of Highland.

(b)     Class 5 Claims shall be divided into two (2) subclasses.  Subclass 5A shall consist of all Allowed Class 5 claims which are not subject to equitable subordination.  Subclass 5B shall consist of all Class 5 claims which are determined by the Bankruptcy Court to be subject to equitable subordination.  If only a part of a Class 5 Claim is subject to equitable subordination, then the portion of such claim subject to equitable subordination shall be included in Subclass 5B and the remainder not subject to equitable subordination shall be included in Subclass 5A.  Subclass 5A and Subclass 5B will vote separately on Plan A, although Subclass 5B is currently an empty class.

(c)     All Class 5 Claims (regardless of which subclass) shall be and remain subject to all Estate Defenses and all Estate Claims, both as offsets and for an affirmative recovery against the Holder of any Class 5 Claim.

(d)     Unless otherwise provided by order of the Bankruptcy Court, holders of Allowed Subclass 5A Claims shall receive a Cash Payment equal to the Allowed amount of such holder's Subclass 5A Claim within sixty (60) days of the later of (a) the Initial Distribution Date, or (b) the date on which such holder's Claim becomes an Allowed Subclass 5A Claim.

(e)     Unless otherwise provided by Order of the Bankruptcy Court, holders of Subclass 5B claims shall not be entitled to any Distribution until all Allowed Claims included in Classes 1 through 4 and Subclass 5A have been paid in full.  After all Allowed Claims included in Classes 1 through 4 and Subclass 5A have been paid in full, holders of Allowed Subclass 5B Claims shall receive a Pro Rata Share of one or more Distributions from the Acis Trust, the amount and timing of which shall be determined by the Acis Trustee, but only after satisfaction of, or allocation of an appropriate Reserve for, Trust Expenses.  Allowed Subclass 5B Claims shall accrue interest from and after the Effective Date until paid in full at the Plan Rate.

(f)     The Acis Trustee may establish appropriate Reserves as to any Contested Claim included in Class 5.

2.13.   Class 6 – Interests.  The holders of Class 6 Interests shall retain their Interests in the Debtors under the Plan.  After all Allowed Claims in Classes 1 through 4 and all Allowed Claims in Subclasses 5A and 5B have been paid in full, the Acis Trust shall transfer the remaining assets of the Acis Trust, if any, to the reorganized Acis LP.  Class 6 is Impaired.  Holders of Class 6 Interests are entitled to vote on Plan A of the Plan.

## D.     PLAN A – ACCEPTANCE OR REJECTION

2.14.   Classes Entitled to Vote.  Creditors in Classes 2 through 5 and holders of Interests in Class 6 are entitled to vote and shall vote separately to accept or reject the Plan.  Any unimpaired Class shall not be entitled to vote to accept or reject the Plan.  Any unimpaired Class is deemed to have accepted the Plan under section 1126(f) of the Bankruptcy Code.

2.15.   Class Acceptance Requirement. A Class of Claims shall have accepted the Plan if it is accepted by at least two-thirds (2/3) in amount and more than one-half (1/2) in number of the Allowed Claims in such Class that have voted on the Plan.  A Class of Interests shall have

accepted the Plan if it is accepted by at least two-thirds (2/3) in amount of the Interests in such Class that have voted on the Plan.

2.16.    Cramdown. This section shall constitute the request by the Plan proponents, pursuant to section 1129(b) of the Bankruptcy Code, that the Bankruptcy Court confirm the Plan notwithstanding the fact that the requirements of section 1129(a)(8) of the Bankruptcy Code have not been met.

## E.    PLAN A – MEANS FOR IMPLEMENTATION

2.17.    Plan A Transaction – Sources of Funding for Plan Obligations.  To fund the Plan and provide the greatest return to Creditors, the Trustee has agreed to enter into the Plan A Transaction and to transfer the Transferred Assets to the Transferee on the Effective Date as follows:

  (a)    The Transferee will deliver the Transaction Amount to the Chapter 11 Trustee;

  (b)    The Chapter 11 Trustee will pay the HCLOF Claim in full from the Cash Proceeds; and,

  (c)    The Subordinated Notes will be transferred or deemed transferred to the Chapter 11 Trustee who will, in turn, transfer and assign the Subordinated Notes and the assumed PMAs to the Transferee.

2.18.    Transfer of the Transferred Assets.  The Transferred Assets shall be transferred to the Transferee on the Effective Date pursuant to the ATA, free and clear of all liens, claims, and encumbrances.  The Chapter 11 Trustee shall obtain the Subordinated Notes either (a) through subrogation and the application of sections 105 and 1142(b) of the Bankruptcy Code based upon payment of the HCLOF Claim pursuant to the Plan, or (b) by obtaining control over management of the Subordinated Notes by virtue of avoiding the prepetition fraudulent transfer of Acis LP's rights under the ALF PMA through the claims, counterclaims, or third party claims asserted or which may be asserted in the Highland Adversary.

2.19.    Acis Trust.  The Acis Trust shall be created as of the Effective Date in accordance with the terms of this Plan and the Acis Trust Agreement.  The Debtors and the Estate shall be the settlors of the Acis Trust.

2.20.    Transfer of Assets to the Acis Trust.  On the Effective Date, the Net Cash Proceeds and all Remaining Assets shall be transferred to the Acis Trust, including without limitation, all Cash, Estate Accounts Receivable, Estate Claims, Estate Defenses, Estate Insurance, and Estate Contracts.  After the Effective Date, the Acis Trustee may still abandon any Trust Assets which are burdensome or have no or inconsequential value to the Acis Trust. The Remaining Assets shall be transferred to, and vested in, the Acis Trust free and clear of all Liens, Claims, rights, Interests and charges, except as expressly provided in this Plan.

2.21.    Assumption of Obligation to Make Distributions.  The Acis Trustee shall be deemed to have assumed the obligation to make all Distributions pursuant to this Plan, including the obligation to make all Distributions on account of Allowed Claims.

2.22.  Actions by the Debtors and the Acis Trustee to Implement Plan.  The entry of the Confirmation Order shall constitute all necessary authorization for the Debtors and the Acis Trustee to take or cause to be taken all actions necessary or appropriate to consummate, implement or perform all provisions of this Plan on and after the Effective Date, and all such actions taken or caused to be taken shall be deemed to have been authorized and approved by the Bankruptcy Court without further approval, act or action under any applicable law, order, rule or regulation, including without limitation, (a) all transfers of Assets, including to the Acis Trustee and the Transferee, as appropriate, that are to occur pursuant to the Plan; (b) the performance of the terms of the Plan and the making of all Distributions required under the Plan; and (c) subject to the terms of the Plan, entering into any and all transactions, contracts, or arrangements permitted by applicable law, order, rule or regulation.

2.23.  Post-Effective Date Service List.  Pleadings filed by any party-in-interest with the Bankruptcy Court after the Effective Date shall be served on the following Persons (collectively the "Service List"): (a) any Person directly affected by the relief sought in the pleading, (b) the U.S. Trustee, (c) parties which have filed a Notice of Appearance in the Chapter 11 Cases, and (d) the Acis Trustee through legal counsel.

2.24.  Section 505 Powers.  All rights and powers pursuant to section 505 of the Bankruptcy Code are hereby reserved to the Estate and shall be transferred to, and vested in, the Acis Trustee as of the Effective Date.

2.25.  Section 510(c) Powers.  All rights and powers to seek or exercise any right or remedy of equitable subordination are hereby reserved to the Estate and shall be transferred to, and vested in, the Acis Trustee as of the Effective Date as an Estate Defense.

2.26.  Section 506(c) Powers.  The Estate hereby reserves all rights and powers pursuant to section 506(c) of the Bankruptcy Code, and all such rights shall be specifically transferred to, and vested in, the Acis Trustee.

2.27.  Plan Injunction.  The Acis Trustee shall have full power, standing and authority to enforce the Plan Injunction against any Person, either through an action before the Bankruptcy Court or any other tribunal having appropriate jurisdiction.  The Transferee shall have standing to enforce the Plan Injunction against any Person, either through an action before the Bankruptcy Court or any other tribunal having appropriate jurisdiction.

2.28.  Transferee not Successor.  The Transferee shall not be considered a successor to the Debtors.

**F.    PLAN A – ACIS TRUST**

2.29.  Acis Trust.  On the Effective Date, the Acis Trust shall be created pursuant to the Acis Trust Agreement which shall be executed on behalf of the Debtors and by the Acis Trustee to accept the appointment.  The Acis Trust Agreement shall be in substantially the same form as the attached **Exhibit B**.  The Acis Trust shall not terminate upon the death or incapacity of the Acis Trustee and shall continue until its termination in accordance with the terms of this Plan and the Acis Trust Agreement.  Reference is here made to the Acis Trust Agreement for all purposes which shall constitute an integral part of the Plan.

2.30.  Compensation of Acis Trustee.  The Acis Trustee shall be compensated from the Trust Assets in the manner set forth in the Acis Trust Agreement as a Trust Expense.  The Acis

Trustee shall also be entitled to reimbursement of reasonable and necessary out-of-pocket expenses incurred in the performance of such duties, also as a Trust Expense.

2.31. <u>Trust Assets</u>. The Debtors and the Estate shall constitute the settlors of the Acis Trust. As of the Effective Date, the Net Cash Proceeds and all Remaining Assets shall be transferred to the Acis Trust where they will constitute the Trust Assets. The Trust Assets shall encompass the Net Cash Proceeds and all Remaining Assets held by the Estate as of the Effective Date and shall specifically include without limitation: (a) all Estate Cash, including the Net Cash Proceeds (b) all Estate Accounts Receivable, (c) all Estate Claims, (d) all Estate Defenses, (e) all rights under Estate Insurance, and (f) any Executory Contracts assumed by the Estate and not assigned to the Transferee. To evidence the transfer of the Estate Assets to the Acis Trust, the Debtors shall, if requested by the Acis Trustee, execute on behalf of the Debtors and Estate, as settlors, an Assignment of Trust Assets transferring the Estate Assets to the Acis Trust which shall be included among the Plan Documents.

2.32. <u>Distributions from the Acis Trust</u>. The Acis Trustee shall be responsible for making all Distributions from the Acis Trust to holders of Allowed Claims pursuant to this Plan. The priority of Distributions from the Acis Trust shall be in accordance with the terms of this Plan and the Confirmation Order as follows:

(a) <u>First</u>, to satisfy Allowed Class 1 Secured Tax Claims;

(b) <u>Second</u>, to satisfy Allowed Administrative Expenses and Allowed Priority Claims in accordance with Article II.B above, including all U.S. Trustee quarterly fees due and owing as of the Effective Date;

(c) <u>Third</u>, to satisfy any Allowed Class 3 Terry Secured Claim;

(d) <u>Fourth</u>, to pay Trust Expenses, including any Reserves;

(e) <u>Fifth</u>, to make Distributions to holders of any Allowed Class 4 General Unsecured Claims and Allowed Subclass 5A Claims;

(f) <u>Sixth</u>, to make Distributions to holders of any Allowed Subclass 5B Claims; and

(g) <u>Seventh</u>, to transfer any remaining assets of the Acis Trust to the reorganized Acis LP.

2.33. <u>Reserves</u>. The Acis Trustee may estimate, create and set aside Reserves as may be necessary or appropriate, including without limitation, Reserves on account of Contested Claims and for Trust Expenses. The Acis Trustee may, but shall not be required to, seek approval by the Bankruptcy Court for the creation and amount of any Reserves or regarding the amount or timing of any Distribution on account of any Allowed Claims. Except as otherwise expressly provided herein, the Acis Trustee, in the exercise of his/her good faith business judgment, may transfer funds out of any of the Reserves as necessary or appropriate. However, the Acis Trustee shall not be required to create separate accounts for such Reserves which may be created and memorialized by entries or other accounting methodologies, which may be revised from time-to-time, to enable the Acis Trustee to determine the amount of Cash available for Distribution to Beneficiaries of the Acis Trust. Subject to any specific deadlines set forth herein, the Acis Trustee, shall determine, from time-to-time, in the exercise of the Acis Trustee's good faith business judgment: (a) the amount of Cash available for Distribution to

Beneficiaries, (b) the timing of any Distributions to Beneficiaries, and (c) the amount and creation of any Reserves for Contested Claims or Trust Expenses. The Acis Trustee shall not be entitled to reserve for, and this section 2.33 does not apply to, Distributions to holders of Allowed Subclass 5B Claims.

2.34. <u>Trust Expenses</u>. The Acis Trustee shall be entitled to pay all Trust Expenses without the necessity of further order of the Bankruptcy Court. Without limiting the generality of the foregoing, the Acis Trust may retain, compensate and reimburse Trust Professionals retained by the Acis Trust without the necessity of further order of the Bankruptcy Court. However, the Acis Trustee shall be entitled, should the Acis Trustee so elect, to request the Bankruptcy Court to approve any Trust Expense or the retention of any Trust Professional.

2.35. <u>Powers and Duties of the Acis Trustee</u>. The Acis Trustee's duties and compensation, to the extent not set forth herein, shall be as set forth in the Acis Trust Agreement which shall be one of the Plan Documents. The Acis Trustee shall constitute a representative of the Estate pursuant to section 1123(b)(3)(B) of the Bankruptcy Code, and shall be clothed with all powers, rights, duties and responsibilities pursuant to this Plan, the Confirmation Order and the Acis Trust Agreement.

2.36. <u>Exercise of Acis Trustee's Powers</u>. The Acis Trustee shall be entitled to exercise all powers pursuant to this Plan and the Acis Trust Agreement, without further order or approval of the Bankruptcy Court except as otherwise expressly provided herein or in the Acis Trust Agreement or Confirmation Order.

2.37. <u>Prosecution and Settlement of Estate Claims</u>. Upon the Effective Date, the Acis Trustee (a) shall automatically be substituted in place of the Debtors as the party representing the Estate in respect of any pending lawsuit, motion or other pleading pending before the Bankruptcy Court or any other tribunal, and (b) is authorized to file a notice on the docket of each adversary proceeding or the Chapter 11 Cases regarding such substitution. The Acis Trustee shall have exclusive standing and authority to prosecute, settle or compromise Estate Claims for the benefit of the Acis Trust in the manner set forth in this Plan and the Acis Trust Agreement.

2.38. <u>Exculpation of Acis Trustee.</u> The Acis Trustee shall stand in a fiduciary relationship to the Beneficiaries of the Acis Trust. In the performance of its duties, the Acis Trustee shall be entitled to act, or refrain from acting, based on the exercise of his/her good faith business judgment. However, the Acis Trustee shall be fully exculpated, and shall have no liability for acts or omissions, in the manner and to the extent set forth in the Acis Trust Agreement.

2.39. <u>Indemnity</u>. The Acis Trust shall indemnify and hold harmless the Acis Trustee in the manner and to the extent set forth in the Acis Trust Agreement.

2.40. <u>Resignation of Acis Trustee</u>. The Acis Trustee may resign as provided in the Acis Trust Agreement.

2.41. <u>Replacement of the Acis Trustee</u>. The Acis Trustee may be replaced in the manner and on the terms as set forth in the Acis Trust Agreement.

2.42. <u>Reliance by Acis Trustee</u>. In the performance of the duties pursuant to this Plan, the Acis Trustee may rely upon any document or instrument which the Acis Trustee in good faith

believes to be genuine and to have been signed or executed by the proper parties.

2.43. <u>Plan Injunction</u>. The Acis Trustee and Acis Trust shall be entitled to the full protection and benefit of the Plan Injunction and shall have standing to bring any action or proceeding necessary to enforce the Plan Injunction against any Person.

2.44. <u>Tax Treatment.</u> The Acis Trust shall be treated as a "liquidating trust" within the meaning of Section 301.7701-4(d) of the Treasury Regulations. The Acis Trustee shall, in an expeditious but orderly manner, collect, liquidate and convert to Cash all non-cash Trust Assets, and make timely Distributions to Beneficiaries of the Acis Trust, and shall not unduly prolong its duration.

2.45. <u>Transfer of Claims</u>. Holders of Allowed Claims shall not receive any certificate or other document to evidence their beneficial interest in the Acis Trust. The transfer of Claims after the Effective Date is subject to section 5.04 of this Plan.

2.46. <u>Construction of Acis Trust Documents</u>. This Plan and the Acis Trust Agreement shall control over any inconsistent provision of the Disclosure Statement. The Plan and Confirmation Order shall control over any inconsistent provision of the Acis Trust Agreement. The Confirmation Order shall control over any inconsistent provision of the Disclosure Statement, the Acis Trust Agreement or this Plan.

2.47. <u>Relief from the Bankruptcy Court</u>. The Acis Trustee shall be authorized to seek relief from the Bankruptcy Court or any other tribunal having jurisdiction as to any matter relating or pertaining to the consummation, administration or performance of this Plan, including without limitation seeking any relief from the Bankruptcy Court which the Acis Trustee deems necessary or appropriate to the performance of its duties, the administration of this Plan, or the liquidation and distribution of the Trust Assets.

2.48. <u>Removal for Cause</u>. The Acis Trustee may be removed for cause shown in the manner and on the terms set forth in the Acis Trust Agreement.

**ARTICLE III.**
**PLAN B**

3.01. Plan B involves continuation of the business of the Debtors from and after the Effective Date by the Reorganized Debtor, with the Acis Trust being created to administer and liquidate certain Assets, including prosecution of certain litigation, and to make some, but not all, Distributions to holders of Allowed Claims. If the Plan, based on the terms and provisions of Plan B, is confirmed by the Bankruptcy Court, the provisions of Articles II and IV of this Plan shall be deemed void and of no force and effect.

**A. PLAN B – CLASSIFICATION OF CLAIMS AND INTERESTS**

3.02. The following is a designation of the Classes of Claims and Interests under Plan B of the Plan. Administrative Expenses, Priority Claims of the kinds specified in sections 507(a)(2) and 507(a)(3) of the Bankruptcy Code and Priority Tax Claims have not been classified, are excluded from the following Classes in accordance with section 1123(a)(1) of the Bankruptcy Code, and their treatment is set forth in Article III.B of the Plan. A Claim shall be deemed classified in a particular Class only to the extent that the Claim qualifies within the

description of that Class. A Claim is included in a particular Class only to the extent that the Claim is an Allowed Claim in that Class.

> Class 1 – Secured Tax Claims
> Class 2 – HCLOF Claim
> Class 3 – Terry Secured Claim
> Class 4 – General Unsecured Claims
> Class 5 – Insider Claims
> Class 6 – Interests

3.03. <u>Impaired Classes of Claims and Interests under Plan B</u>. Class 1 is unimpaired. Classes 2 through 6 are Impaired.

3.04. <u>Impairment or Classification Controversies</u>. If a controversy arises as to the classification of any Claim or Interest, or as to whether any Class of Claims or Interests is Impaired under the Plan, the Bankruptcy Court shall determine such controversy as a part of the confirmation process.

## B.     PLAN B – TREATMENT OF UNCLASSIFIED CLAIMS

3.05. <u>Administrative Expenses</u>

(a)     The Acis Trustee shall pay, in accordance with the ordinary business terms applicable to each such expense or cost, the reasonable and ordinary expenses incurred in operating the Debtors' businesses or administering the Estate before the Effective Date ("<u>Ordinary Course Claims</u>"). The remaining provisions of this section 3.05 shall not apply to the Ordinary Course Claims, except that if there is a dispute relating to any such Ordinary Course Claim, the Acis Trustee may move the Bankruptcy Court to apply the provisions of Article VII below relating to Contested Claims and require the holder of the Contested Ordinary Course Claim to assert such Claim through the Chapter 11 Cases.

(b)     Each holder of an Allowed Administrative Expense (other than Ordinary Course Claims and Administrative Expense Claims by Estate Professionals), shall receive (i) the amount of such holder's Allowed Administrative Expense in one Cash payment on the later of the Effective Date or the tenth (10th) Business Day after such Administrative Expense becomes an Allowed Administrative Expense, or (ii) such other treatment as may be agreed to in writing by such Administrative Expense Creditor and the Acis Trustee, or as otherwise ordered by the Bankruptcy Court.

(c)     Unless the Bankruptcy Court orders to the contrary or the Acis Trustee agrees to the contrary in writing, the holder of a Claim for an Administrative Expense, other than such a Claim by an Estate Professional, an Ordinary Course Claim, or an Administrative Expense which is already Allowed, shall file with the Bankruptcy Court and serve upon the Acis Trustee and its counsel a written notice of such Claim for an Administrative Expense within thirty (30) days after the Effective Date. This deadline is the "<u>Administrative Bar Date</u>." Such notice shall include at a minimum: (i) the name, address, telephone number and fax number (if applicable) or email address of the holder of such Claim, (ii) the amount of such Claim, and (iii) the basis of such Claim. **Failure to timely and properly file and serve such notice by the Administrative Bar Date shall result in such Claim for an Administrative Expense being forever barred and discharged and the holder thereof shall be barred from receiving any**

**Distribution through the Acis Trust on account of such Claim for an Administrative Expense**.

(d)     A Claim for an Administrative Expense, for which a proper notice was filed and served under subsection 3.05(c) above, shall become an Allowed Administrative Expense if no Objection is filed within thirty (30) days of the filing and service of such notice. If a timely Objection is filed, the Claim shall become an Allowed Administrative Expense only to the extent allowed by a Final Order.

(e)     The procedures contained in subsections 3.05(a), (c) and (d) above shall not apply to Administrative Expense Claims asserted by Estate Professionals, who shall each file and submit an appropriate final fee application to the Bankruptcy Court no later than sixty (60) days after the Effective Date. A Claim for an Administrative Expense by an Estate Professional in respect of which a final fee application has been properly filed and served shall become an Allowed Administrative Expense only to the extent allowed by Final Order and, if so Allowed, shall be paid in accordance with subsection 3.05(b) above. Professional fees and expenses to any Estate Professional incurred on or after the Effective Date may be paid by the Acis Trustee without necessity of application to or order by the Bankruptcy Court.

(f)     If the Acis Trustee asserts any Estate Claims as counterclaims or defenses to a Claim for Administrative Expense, the Administrative Expense Claim shall be determined through an adversary proceeding before the Bankruptcy Court. The Bankruptcy Court shall have exclusive jurisdiction to adjudicate and Allow all Claims for any Administrative Expense.

3.06.     Priority Tax Claims. Each holder of an Allowed Priority Tax Claim shall receive (a) one Cash payment in an amount equal to the principal amount of such Allowed Priority Tax Claim, plus interest at the rate and in the manner prescribed by applicable state law from the later of the Petition Date or the first day after the last day on which such Priority Tax Claim may be paid without penalty, no later than sixty (60) days after each such Claim becomes an Allowed Claim, or (b) such other treatment as may be agreed to in writing by the holder of the Priority Tax Claim and the Acis Trustee.

3.07.     U.S. Trustee's Fees. The Acis Trustee shall pay the U.S. Trustee's quarterly fees incurred pursuant to 28 U.S.C. § 1930(a)(6) which are due as of the Confirmation Date in full on the Effective Date or as soon thereafter as is practicable. After the Confirmation Date, the Reorganized Debtor shall continue to pay quarterly fees as they accrue until a final decree is entered and the Chapter 11 Cases are closed. The Reorganized Debtor shall file with the Bankruptcy Court and serve on the U.S. Trustee quarterly financial reports for each quarter, or portion thereof, that the Chapter 11 Cases remain open.

## C.     PLAN B – TREATMENT OF CLASSIFIED CLAIMS AND INTERESTS

3.08.     Class 1 – Secured Tax Claims. Each holder of an Allowed Secured Tax Claim shall receive (a) one Cash payment in an amount equal to the principal amount of such Allowed Secured Tax Claim, plus interest at the rate and in the manner prescribed by applicable state law from the later of the Petition Date or the first day after the last day on which such Secured Tax Claim may be paid without penalty, on the Initial Distribution Date, or (b) such other treatment as may be agreed to in writing by the holder of the Secured Tax Claim and the Acis Trustee. The Liens securing such Secured Tax Claims shall remain unimpaired and unaffected until each such Class 1 Claim is paid in full. All Distributions on account of Allowed Class 1 Claims shall be made by the Acis Trustee from the Trust Assets. Class 1 is unimpaired.

Holders of Class 1 Claims are conclusively presumed to have accepted the Plan and, accordingly, are not entitled to vote on the Plan.

3.09.   Class 2 – HCLOF Claim.  The HCLOF Claim shall be satisfied through the retention by HCLOF of the Subordinated Notes in each of the Acis CLOs and having the option to elect a sequential reset of the Acis CLOs.  Class 2 is Impaired.  The Holder of the Class 2 Claim is entitled to vote on the Plan.  To the extent that any HCLOF Claim remains unpaid it shall be treated as a Class 5B Claim.

3.10.   Class 3 – Terry Secured Claim.  In exchange for a one million dollar ($1,000,000.00) reduction in the amount of his Secured Claim, Terry shall receive one hundred percent (100%) of the equity interests in the Reorganized Debtor as of the Effective Date.  The remaining balance of any Allowed Terry Secured Claim shall be treated and paid as a Class 4 General Unsecured Claim.  Class 3 is Impaired.  The Holder of the Class 3 Terry Secured Claim is entitled to vote on the Plan.

3.11.   Class 4 – General Unsecured Claims.

(a)   Each holder of an Allowed General Unsecured Claim shall receive a promissory note issued by the Reorganized Debtor (each an "Unsecured Cash Flow Note") on the later of (a) that date that is as soon as practicable after the Effective Date, or (b) that date that is as soon as practicable after such holder's General Unsecured Claim becomes an Allowed Class 4 Claim.  Each Unsecured Cash Flow Note shall be dated as of the Effective Date, bear interest at the Plan Rate and shall mature on that date that is the three (3) years after the Effective Date.

(b)   To the extent of Available Cash, the Reorganized Debtor shall make substantially equal quarterly Distributions of principal and accrued interest to each holder of an Unsecured Cash Flow Note, with the first such quarterly Distribution being due and payable on the 90th day after the Effective Date.  Thereafter, like Distributions shall be made each quarter by the Reorganized Debtor until the Unsecured Cash Flow Note is paid in full.  Notwithstanding the foregoing, in the event that an Unsecured Cash Flow Note is first issued more than ninety (90) days after the Effective Date, the first Distribution made on account of such Unsecured Cash Flow Note shall be made upon the date that the next Distribution would otherwise be due, but such first Distribution shall also include amounts that would have been distributed to the holder of such Unsecured Cash Flow Note had such Unsecured Cash Flow Note been issued prior to ninety (90) days after the Effective Date, such that the first Distribution shall bring all payments current on account of such Unsecured Cash Flow Note.  If on any date on which a quarterly Distribution is due to the holder of an Unsecured Cash Flow Note the remaining principal and accrued interest owing on account of such Unsecured Cash Flow Note is less than the regular quarterly Distribution amount, the Reorganized Debtor shall make a Distribution to the holder of such Unsecured Cash Flow Note in an amount sufficient to fully satisfy the remaining principal and accrued interest owed, but no more.  Nothing contained herein shall preclude the Reorganized Debtor from prepaying any Unsecured Cash Flow Note.

(c)   Within ninety (90) days of the Effective Date, the Acis Trustee shall make a Pro Rata Distribution to holders of Allowed Class 4 Claims and Allowed Subclass 5A Claims out of Available Cash held by the Acis Trust, which Distribution shall be applied to reduce the outstanding balance of each holder's Unsecured Cash Flow Note.  The amount to be so distributed shall be determined in the sole discretion of the Acis Trustee after appropriate Reserves are made by the Acis Trustee, including but not limited to Reserves for Trust Expenses.  Although the Distribution by the Acis Trustee to the holders of Allowed Class 4

Claims shall reduce the principal balance of each holder's Unsecured Cash Flow Note, such Distribution by the Acis Trustee will be made in addition to, and not in lieu of, the quarterly Distributions the Reorganized Debtor is required to make to holders of Allowed Class 4 Claims on account of the Unsecured Cash Flow Notes pursuant to this Plan.

(d)    If after making the Pro Rata Distribution pursuant to section 3.11(c) above (and section 3.12(f) below), the Acis Trust obtains additional Cash, through litigation recoveries or otherwise, and the Acis Trustee determines, in his/her sole discretion, that the Acis Trust holds Available Cash sufficient to allow one or more subsequent Pro Rata Distributions to be made to holders of Allowed Class 4 Claims and Allowed Subclass 5A Claims, the Acis Trustee may, but shall not be required to, make one or more additional Pro Rata Distributions to holders of Allowed Class 4 Claims and Allowed Subclass 5A Claims.  Any such additional Distributions shall be applied to reduce the outstanding balance of each holder's Unsecured Cash Flow Note.

(e)    Class 4 is Impaired.  Holders of Class 4 Claims are entitled to vote on the Plan.

3.12.    <u>Class 5 – Insider Claims</u>.  Holders of Class 5 Insider Claims shall be treated as follows:

(a)    Class 5 shall consist of Insider Claims which constitute General Unsecured Claims and shall specifically include any General Unsecured Claim asserted by Highland and any Affiliate of Highland.

(b)    Class 5 Claims shall be divided into two (2) subclasses.  Subclass 5A shall consist of all Allowed Class 5 claims which are not subject to equitable subordination.  Subclass 5B shall consist of all Class 5 claims which are determined by the Bankruptcy Court to be subject to equitable subordination.  If only a part of a Class 5 Claim is subject to equitable subordination, then the portion of such claim subject to equitable subordination shall be included in Subclass 5B and the remainder not subject to equitable subordination shall be included in Subclass 5A.  Subclass 5A and Subclass 5B will vote separately on Plan B, although Subclass 5B is currently an empty class.

(c)    All Class 5 Claims (regardless of which subclass) shall be and remain subject to all Estate Defenses and all Estate Claims, both as offsets and for an affirmative recovery against the Holder of any Class 5 Claim.

(d)    Each holder of an Allowed Subclass 5A Claim shall receive an Unsecured Cash Flow Note on the later of (a) that date that is as soon as practicable after the Effective Date, or (b) that date that is as soon as practicable after such holder's Subclass 5A Claim becomes an Allowed Subclass 5A Claim.  Each Unsecured Cash Flow Note shall be dated as of the Effective Date, bear interest at the Plan Rate and shall mature on that date that is the three (3) years after the Effective Date.

(e)    To the extent of Available Cash, the Reorganized Debtor shall make substantially equal quarterly Distributions of principal and accrued interest to each holder of an Unsecured Cash Flow Note, with the first such quarterly Distribution being due and payable on the 90th day after the Effective Date.  Thereafter, like Distributions shall be made each quarter by the Reorganized Debtor until the Unsecured Cash Flow Note is paid in full.  Notwithstanding the foregoing, in the event that an Unsecured Cash Flow Note is first issued more than ninety (90) days after the Effective Date, the first Distribution made on account of such Unsecured Cash Flow Note shall be made upon the date that the next Distribution would otherwise be due, but

such first Distribution shall also include amounts that would have been distributed to the holder of such Unsecured Cash Flow Note had such Unsecured Cash Flow Note been issued prior to ninety (90) days after the Effective Date, such that the first Distribution shall bring all payments current on account of such Unsecured Cash Flow Note. If on any date on which a quarterly Distribution is due to the holder of an Unsecured Cash Flow Note the remaining principal and accrued interest owing on account of such Unsecured Cash Flow Note is less than the regular quarterly Distribution amount, the Reorganized Debtor shall make a Distribution to the holder of such Unsecured Cash Flow Note in an amount sufficient to fully satisfy the remaining principal and accrued interest owed, but no more. Nothing contained herein shall preclude the Reorganized Debtor from prepaying any Unsecured Cash Flow Note.

(f) Within ninety (90) days of the Effective Date, the Acis Trustee shall make a Pro Rata Distribution to holders of Allowed Class 4 Claims and Allowed Subclass 5A Claims out of Available Cash held by the Acis Trust, which Distribution shall be applied to reduce the outstanding balance of each holder's Unsecured Cash Flow Note. The amount to be so distributed shall be determined in the sole discretion of the Acis Trustee after appropriate Reserves are made by the Acis Trustee, including but not limited to Reserves for Trust Expenses. Although the Distribution by the Acis Trustee to the holders of Allowed Class 4 Claims shall reduce the principal balance of each holder's Unsecured Cash Flow Note, such Distribution by the Acis Trustee will be made in addition to, and not in lieu of, the quarterly Distributions the Reorganized Debtor is required to make to holders of Allowed Class 4 Claims on account of the Unsecured Cash Flow Notes pursuant to this Plan.

(g) If after making the Pro Rata Distribution pursuant to sections 3.11(c) and 3.12(f) above, the Acis Trust obtains additional Cash, through litigation recoveries or otherwise, and the Acis Trustee determines, in his/her sole discretion, that the Acis Trust holds Available Cash sufficient to allow one or more subsequent Pro Rata Distributions to be made to holders of Allowed Class 4 Claims and Allowed Subclass 5A Claims, the Acis Trustee may, but shall not be required to, make one or more additional Pro Rata Distributions to holders of Allowed Class 4 Claims and Allowed Subclass 5A Claims. Any such additional Distributions shall be applied to reduce the outstanding balance of each holder's Unsecured Cash Flow Note.

(h) Unless otherwise provided by Order of the Bankruptcy Court, holders of Subclass 5B claims shall not be entitled to any Distribution from the Acis Trust until all Allowed Claims included in Classes 1 through 4 and Subclass 5A have been paid in full. At any time after all Allowed Claims in Classes 1 through 4 and Subclass 5A have been paid in full, and prior to conclusion of the business of the Acis Trust, the Acis Trustee may, in his/her sole discretion, make one or more Distributions of Available Cash from the Acis Trust to holders of Allowed Subclass 5B Claims. Any such Distribution, if less than the then unpaid principal amount of all Allowed Subclass 5B Claims, together with interest thereon at the Plan Rate from the Effective Date through the date of such Distribution, shall be made Pro Rata to the holders of Allowed Subclass 5B Claims.

(i) After (A) all Allowed Claims in Classes 1 through 4 and Subclass 5A have been paid in full, (B) the Acis Trustee has made a determination that the business of the Acis Trust is concluded, and (C) the Acis Trustee has paid or made appropriate Reserves for the payment of all remaining Trust Expenses, the Acis Trustee shall, as soon as practicable, make a Pro Rata Distribution of the remaining Cash of the Acis Trust to holders of Allowed Subclass 5B Claims, up to the amount necessary to fully pay the remaining unpaid principal balance of such Allowed Subclass 5B Claims with interest thereon at the Plan Rate from the Effective Date through the date of such final Distribution.

(j)     The Acis Trustee may establish appropriate Reserves as to any Contested Claim included in Class 5.

(k)     Class 5 is Impaired.  Holders of Class 5 Claims are entitled to vote on the Plan.

3.13.   <u>Class 6 – Interests</u>.  All Interests in the Debtors shall be extinguished and shall cease to exist as of the Effective Date. The holders of such Interests shall not receive or retain any property on account of such Interests under the Plan.  Class 6 is Impaired.  Holders of Class 6 Interests are conclusively presumed to have rejected the Plan and, accordingly, are not entitled to vote on the Plan.

## D.     PLAN B – ACCEPTANCE OR REJECTION

3.14.   <u>Classes Entitled to Vote</u>.  Creditors in Classes 2 through 5 are entitled to vote and shall vote separately to accept or reject the Plan.  Any unimpaired Class shall not be entitled to vote to accept or reject the Plan.  Any unimpaired Class is deemed to have accepted the Plan under section 1126(f) of the Bankruptcy Code.

3.15.   <u>Class Acceptance Requirement</u>. A Class of Claims shall have accepted the Plan if it is accepted by at least two-thirds (2/3) in amount and more than one-half (1/2) in number of the Allowed Claims in such Class that have voted on the Plan.

3.16.   <u>Cramdown</u>. This section shall constitute the request by the Plan proponents, pursuant to section 1129(b) of the Bankruptcy Code, that the Bankruptcy Court confirm the Plan notwithstanding the fact that the requirements of section 1129(a)(8) of the Bankruptcy Code have not been met.

## E.     PLAN B – MEANS FOR IMPLEMENTATION

3.17.   <u>Acis Trust</u>.  The Acis Trust shall be created as of the Effective Date in accordance with the terms of this Plan and the Acis Trust Agreement.  The Debtors and the Estate shall be the settlors of the Acis Trust.  The reorganized Acis will be the residual beneficiary of the Acis Trust and receive all distributions after all classes of Claims have been paid in full.

3.18.   <u>Transfers of Assets</u>.  As of the Effective Date (a) all Cash, Estate Accounts Receivable, Estate Claims and Estate Defenses shall be transferred from the Estate to, and be vested in, the Acis Trust, and (b) all other Estate Assets, unless otherwise expressly stated in this Plan, shall be transferred to, and vested in, the Reorganized Debtor.  After the Effective Date, the Acis Trustee may still abandon any Acis Trust Assets which are burdensome or have no or inconsequential value to the Acis Trust.  Any such abandoned assets shall be deemed transferred to and vested in the Reorganized Debtor.  All Estate Assets transferred to either the Acis Trust or the Reorganized Debtor shall be transferred to, and vested in, the Acis Trust or the Reorganized Debtor free and clear of all Liens, Claims, rights, Interests and charges, except as expressly provided in this Plan.

3.19.   <u>Assumption of Obligations to Make Distributions</u>.  The Acis Trustee and the Reorganized Debtor shall be deemed to have assumed the obligations to make the Distributions pursuant to this Plan to the extent the Plan identifies the Acis Trustee or the Reorganized Debtor as responsible for making such Distributions.

3.20.    Actions by the Debtors, the Reorganized Debtor and the Acis Trustee to Implement Plan.  The entry of the Confirmation Order shall constitute all necessary authorization for the Debtors, the Reorganized Debtor and the Acis Trustee to take or cause to be taken all actions necessary or appropriate to consummate, implement or perform all provisions of this Plan on and after the Effective Date, and all such actions taken or caused to be taken shall be deemed to have been authorized and approved by the Bankruptcy Court without further approval, act or action under any applicable law, order, rule or regulation, including without limitation, (a) all transfers of Assets, including to the Acis Trust, that are to occur pursuant to the Plan; (b) the cancellation of Interests and issuance of 100% of the equity interests in the Reorganized Debtor to Terry; (c) the performance of the terms of the Plan and the making of all Distributions required under the Plan; and (d) subject to the terms of the Plan, entering into any and all transactions, contracts, or arrangements permitted by applicable law, order, rule or regulation.

3.21.    Continued Portfolio Management by the Reorganized Debtor.  The PMAs shall be assumed and the Reorganized Debtor shall, from and after the Effective Date, serve as the portfolio manager with respect to the Acis CLOs (or any reset CLOs).  The Reorganized Debtor may not be removed as portfolio manager under the assumed PMAs without cause.

3.22.    Replacement of Highland as Sub-Servicer and Sub-Advisor.  The Bankruptcy Court authorized the Chapter 11 Trustee to terminate the Shared Services Agreement and Sub-Advisory Agreement and engage Oaktree to perform the services previously provided by Highland.  The Shared Services Agreement and Sub-Advisory Agreement may be terminated by the Chapter 11 Trustee, and the services previously performed by Highland may be transitioned to Oaktree for a minimum one year term.  Under Plan B, the Reorganized Debtor is authorized to engage a new sub-servicer and sub-advisor (the "Sub-Advisor") to provide sub-servicing and sub-advisory services to the Reorganized Debtor with respect to the Acis CLOs (or any reset CLOs).  Any agreement between the Reorganized Debtor and the Sub-Advisor shall provide that the Sub-Advisor cannot be removed without cause for a period of two (2) years.  However, if the services previously provided by Highland are transitioned to Oaktree, the replacement of Oaktree as the Sub-Advisor before the expiration of the one year minimum term will result in an administrative claim in favor of Oaktree for the value of the remainder of the one year term, which will be partially offset by the Break-Up Fee.  Alternatively, if the services previously provided by Highland are not transitioned to Oaktree, Oaktree would nevertheless be entitled to an administrative claim for the value of any out of pocket and legal expenses incurred by Oaktree relating to the potential transition of such services to Oaktree, which expenses would be in addition to the Break-Up Fee and any other legal fees or expenses incurred by Oaktree.

3.23.    Option for HCLOF to Elect a Reset of the Acis CLOs.  HCLOF shall have the option to elect to reset the Acis CLOs.  If HCLOF elects a reset, the New Sub-Advisor shall thereafter reset the Acis CLOs consecutively rather than simultaneously, consistent with market standards, but shall only effectuate the reset to the extent that HCLOF commits to fund the reset.  If HCLOF elects not to fund and reset the Acis CLOs, then the Acis CLOs will continue to be managed in accordance with market standards.

3.24.    Amendment of Indentures.  The Indentures shall be amended pursuant to section 1123(a)(5)(F) of the Bankruptcy Code to provide that the Acis CLOs cannot be called for redemption until the later of (a) the date on which all Allowed Claims against the Debtors have been paid in full, or (b) three (3) years after the Effective Date.  In the event that the Acis CLOs are reset, any new indenture with respect to a reset CLO shall provide the reorganized Acis will continue as the portfolio manager and that the reset CLO cannot be called for redemption until

the later of (y) the date on which all Allowed Claims against the Debtors have been paid in full, or (z) three (3) years after the Effective Date.

3.25.  Post-Effective Date Service List.  Pleadings filed by any party-in-interest with the Bankruptcy Court after the Effective Date shall be served on the following Persons (collectively the "Service List"): (a) any Person directly affected by the relief sought in the pleading, (b) the U.S. Trustee, (c) parties which have filed a Notice of Appearance in the Chapter 11 Cases, (d) the Acis Trustee through legal counsel, and (e) the Reorganized Debtor.

3.26.  Section 505 Powers.  All rights and powers pursuant to section 505 of the Bankruptcy Code are hereby reserved to the Estate and shall be transferred to, and vested in, the Acis Trustee as of the Effective Date.

3.27.  Section 510(c) Powers.  All rights and powers to seek or exercise any right or remedy of equitable subordination are hereby reserved to the Estate and shall be transferred to, and vested in, the Acis Trustee as of the Effective Date as an Estate Defense.

3.28.  Section 506(c) Powers.  The Estate hereby reserves all rights and powers pursuant to section 506(c) of the Bankruptcy Code, and all such rights shall be specifically transferred to, and vested in, the Acis Trustee.

3.29.  Plan Injunction.  The Acis Trustee and the Reorganized Debtor shall each have full power, standing and authority to enforce the Plan Injunction against any Person, either through an action before the Bankruptcy Court or any other tribunal having appropriate jurisdiction.

3.30.  Cancellation of Interests.  Except as otherwise specifically provided herein, upon the Effective Date of the Plan: (a) all Interests in the Debtors shall be cancelled; and (b) all obligations or debts of, or Claims against, the Debtors on account of, or based upon, the Interests shall be deemed as cancelled, released and discharged, including all obligations or duties by the Debtors relating to the Interests in any of their respective formation documents, including Acis LP's limited partnership agreement and bylaws, Acis GP's articles of formation and company agreement, or any similar formation or governing documents.

## F.     PLAN B – ACIS TRUST

3.31.  Acis Trust.  On the Effective Date, the Acis Trust shall be created pursuant to the Acis Trust Agreement which shall be executed on behalf of the Debtors and by the Acis Trustee to accept the appointment.  The Acis Trust Agreement shall be in substantially the same form as the attached **Exhibit C**.  The Acis Trust shall not terminate upon the death or incapacity of the Acis Trustee and shall continue until its termination in accordance with the terms of this Plan and the Acis Trust Agreement.  Reference is here made to the Acis Trust Agreement for all purposes which shall constitute an integral part of the Plan.

3.32.  Compensation of Acis Trustee.  The Acis Trustee shall be compensated from the Acis Trust Assets in the manner set forth in the Acis Trust Agreement as a Trust Expense.  The Acis Trustee shall also be entitled to reimbursement of reasonable and necessary out-of-pocket expenses incurred in the performance of such duties, also as a Trust Expense.

3.33.  Acis Trust Assets.  The Debtors and the Estate shall constitute the settlors of the Acis Trust.  As of the Effective Date, the Acis Trust Assets shall specifically include without

limitation: (a) all Estate Cash, (b) all Estate Accounts Receivable, (c) all Estate Claims, and (d) all Estate Defenses.  To evidence the transfer of the applicable Estate Assets to the Acis Trust, the Debtors shall, if requested by the Acis Trustee, execute on behalf of the Debtors and Estate, as settlors, an Assignment of Trust Assets transferring the applicable Estate Assets to the Acis Trust which shall be included among the Plan Documents.

3.34.   Distributions from Acis Trust.  The Acis Trustee shall be responsible for making Distributions from the Acis Trust to holders of Allowed Claims only to the extent this Plan requires Distributions to be made by the Acis Trustee.  The Acis Trustee shall have no responsibility to make any Distributions which this Plan expressly identifies as Distributions required to be made by the Reorganized Debtor.  The priority of Distributions from the Acis Trust shall be in accordance with the terms of this Plan and the Confirmation Order as follows:

(a)   First, to satisfy Allowed Class 1 Secured Tax Claims;

(b)   Second, to satisfy Allowed Administrative Expenses and Allowed Priority Claims in accordance with Article III.B above, including all U.S. Trustee quarterly fees due and owing as of the Effective Date;

(c)   Third, to pay Trust Expenses;

(d)   Fourth, to make Distributions to holders of any Allowed Class 4 General Unsecured Claims and Allowed Subclass 5A Claims;

(e)   Fifth, to make Distributions to holders of any Allowed Subclass 5B Claims; and

(f)   Sixth, to make a Distribution of any remaining Acis Trust Assets to the Reorganized Debtor, as the residual Beneficiary of the Acis Trust.

3.35.   Reserves.  The Acis Trustee may estimate, create and set aside Reserves as may be necessary or appropriate, including without limitation, Reserves on account of Contested Claims and for Trust Expenses.  The Acis Trustee may, but shall not be required to, move the Bankruptcy Court to approve: (a) the amount of, and terms on which, such Reserves shall be held, maintained and disbursed, or (b) the amount and timing of any proposed interim Distribution to holders of Allowed Class 4 Claims and Allowed Subclass 5A Claims.  The Acis Trustee may elect to seek approval by the Bankruptcy Court for the creation and amount of any Reserves or regarding the amount or timing of any Distribution on account of any Allowed Claims.  Except as otherwise expressly provided herein, the Acis Trustee, in the exercise of his/her good faith business judgment, may transfer funds out of any of the Reserves as necessary or appropriate.  However, the Acis Trustee shall not be required to create separate accounts for such Reserves which may be created and memorialized by entries or other accounting methodologies, which may be revised from time-to-time, to enable the Acis Trustee to determine the amount of Cash available for Distribution to Beneficiaries of the Acis Trust.  Subject to any specific deadlines set forth herein, the Acis Trustee, shall determine, from time-to-time, in the exercise of the Acis Trustee's good faith business judgment: (x) the amount of Cash available for Distribution to Beneficiaries, (y) the timing of any Distributions to Beneficiaries, and (z) the amount and creation of any Reserves for Contested Claims or Trust Expenses.  The Acis Trustee shall not be entitled to reserve for, and this section 3.35 does not apply to, Distributions to holders of Allowed Subclass 5B Claims.

3.36.    Trust Expenses.  The Acis Trustee shall be entitled to pay all Trust Expenses without the necessity of further order of the Bankruptcy Court.  Without limiting the generality of the foregoing, the Acis Trust may retain, compensate and reimburse Trust Professionals retained by the Acis Trust without the necessity of further order of the Bankruptcy Court. However, the Acis Trustee shall be entitled, should the Acis Trustee so elect, to request the Bankruptcy Court to approve any Trust Expense or the retention of any Trust Professional.

3.37.    Powers and Duties of the Acis Trustee.  The Acis Trustee's duties and compensation, to the extent not set forth herein, shall be as set forth in the Acis Trust Agreement which shall be one of the Plan Documents.  The Acis Trustee shall constitute a representative of the Estate pursuant to section 1123(b)(3)(B) of the Bankruptcy Code, and shall be clothed with all powers, rights, duties and responsibilities pursuant to this Plan, the Confirmation Order and the Acis Trust Agreement.

3.38.    Exercise of Acis Trustee's Powers.  The Acis Trustee shall be entitled to exercise all powers pursuant to this Plan and the Acis Trust Agreement, without further order or approval of the Bankruptcy Court except as otherwise expressly provided herein or in the Acis Trust Agreement or Confirmation Order.

3.39.    Prosecution and Settlement of Estate Claims.  Upon the Effective Date, the Acis Trustee (a) shall automatically be substituted in place of the Debtors as the party representing the Estate in respect of any pending lawsuit, motion or other pleading pending before the Bankruptcy Court or any other tribunal, and (b) is authorized to file a notice on the docket of each adversary proceeding or the Chapter 11 Cases regarding such substitution.  The Acis Trustee shall have exclusive standing and authority to prosecute, settle or compromise Estate Claims for the benefit of the Acis Trust in the manner set forth in this Plan and the Acis Trust Agreement.

3.40.    Exculpation of Acis Trustee.  The Acis Trustee shall stand in a fiduciary relationship to the Beneficiaries of the Acis Trust.  In the performance of its duties, the Acis Trustee shall be entitled to act, or refrain from acting, based on the exercise of his/her good faith business judgment.  However, the Acis Trustee shall be fully exculpated, and shall have no liability for acts or omissions, in the manner and to the extent set forth in the Acis Trust Agreement.

3.41.    Indemnity.  The Acis Trust shall indemnify and hold harmless the Acis Trustee in the manner and to the extent set forth in the Acis Trust Agreement.

3.42.    Resignation of Acis Trustee.  The Acis Trustee may resign as provided in the Acis Trust Agreement.

3.43.    Replacement of the Acis Trustee.  The Acis Trustee may be replaced in the manner and on the terms as set forth in the Acis Trust Agreement.

3.44.    Reliance by Acis Trustee.  In the performance of the duties pursuant to this Plan, the Acis Trustee may rely upon any document or instrument which the Acis Trustee in good faith believes to be genuine and to have been signed or executed by the proper parties.

3.45.    Plan Injunction.  The Acis Trustee and Acis Trust shall be entitled to the full protection and benefit of the Plan Injunction and shall have standing to bring any action or proceeding necessary to enforce the Plan Injunction against any Person.

3.46.    Tax Treatment.  The Acis Trust shall be treated as a "liquidating trust" within the meaning of Section 301.7701-4(d) of the Treasury Regulations.  The Acis Trustee shall, in an expeditious but orderly manner, collect, liquidate and convert to Cash all non-cash Acis Trust Assets, and make timely Distributions to Beneficiaries of the Acis Trust, and shall not unduly prolong its duration.

3.47.    Transfer of Claims.  Holders of Allowed Claims shall not receive any certificate or other document to evidence their beneficial interest in the Acis Trust.  The transfer of Claims after the Effective Date is subject to section 5.04 of this Plan.

3.48.    Construction of Acis Trust Documents.  This Plan and the Acis Trust Agreement shall control over any inconsistent provision of the Disclosure Statement.  The Plan and Confirmation Order shall control over any inconsistent provision of the Acis Trust Agreement.  The Confirmation Order shall control over any inconsistent provision of the Disclosure Statement, the Acis Trust Agreement or this Plan.

3.49.    Relief from the Bankruptcy Court.  The Acis Trustee shall be authorized to seek relief from the Bankruptcy Court or any other tribunal having jurisdiction as to any matter relating or pertaining to the consummation, administration or performance of this Plan, including without limitation seeking any relief from the Bankruptcy Court which the Acis Trustee deems necessary or appropriate to the performance of its duties, the administration of this Plan, or the liquidation and distribution of the Acis Trust Assets.

3.50.    Removal for Cause.  The Acis Trustee may be removed for cause shown in the manner and on the terms set forth in the Acis Trust Agreement.

## ARTICLE IV.
## PLAN C

4.01.    Plan C involves continuation of the business of the Debtors from and after the Effective Date by the Reorganized Debtor, with the Acis Trust being created to administer and liquidate certain Assets, including prosecution of certain litigation, and to make some, but not all, Distributions to holders of Allowed Claims.  If the Plan, based on the terms and provisions of Plan C, is confirmed by the Bankruptcy Court, the provisions of Articles II and III of this Plan shall be deemed void and of no force and effect.

## A.    PLAN C – CLASSIFICATION OF CLAIMS AND INTERESTS

4.02.    The following is a designation of the Classes of Claims and Interests under Plan C of the Plan.  Administrative Expenses, Priority Claims of the kinds specified in sections 507(a)(2) and 507(a)(3) of the Bankruptcy Code and Priority Tax Claims have not been classified, are excluded from the following Classes in accordance with section 1123(a)(1) of the Bankruptcy Code, and their treatment is set forth in Article IV.B of the Plan.  A Claim shall be deemed classified in a particular Class only to the extent that the Claim qualifies within the description of that Class.  A Claim is included in a particular Class only to the extent that the Claim is an Allowed Claim in that Class.

Class 1 – Secured Tax Claims
Class 2 – HCLOF Claim
Class 3 – Terry Secured Claim
Class 4 – General Unsecured Claims

Class 5 – Insider Claims
Class 6 – Interests

4.03.   Impaired Classes of Claims and Interests under Plan A.  Class 1 is unimpaired. Classes 2 through 6 are Impaired.

4.04.   Impairment or Classification Controversies. If a controversy arises as to the classification of any Claim or Interest, or as to whether any Class of Claims or Interests is Impaired under the Plan, the Bankruptcy Court shall determine such controversy as a part of the confirmation process.

## B.   PLAN C – TREATMENT OF UNCLASSIFIED CLAIMS

4.05.   Administrative Expenses

(a)   The Acis Trustee shall pay, in accordance with the ordinary business terms applicable to each such expense or cost, the reasonable and ordinary expenses incurred in operating the Debtors' businesses or administering the Estate before the Effective Date ("Ordinary Course Claims").  The remaining provisions of this section 4.05 shall not apply to the Ordinary Course Claims, except that if there is a dispute relating to any such Ordinary Course Claim, the Acis Trustee may move the Bankruptcy Court to apply the provisions of Article VII below relating to Contested Claims and require the holder of the Contested Ordinary Course Claim to assert such Claim through the Chapter 11 Cases.

(b)   Each holder of an Allowed Administrative Expense (other than Ordinary Course Claims and Administrative Expense Claims by Estate Professionals), shall receive (i) the amount of such holder's Allowed Administrative Expense in one Cash payment on the later of the Effective Date or the tenth (10th) Business Day after such Administrative Expense becomes an Allowed Administrative Expense, or (ii) such other treatment as may be agreed to in writing by such Administrative Expense Creditor and the Acis Trustee, or as otherwise ordered by the Bankruptcy Court.

(c)   Unless the Bankruptcy Court orders to the contrary or the Acis Trustee agrees to the contrary in writing, the holder of a Claim for an Administrative Expense, other than such a Claim by an Estate Professional, an Ordinary Course Claim, or an Administrative Expense which is already Allowed, shall file with the Bankruptcy Court and serve upon the Acis Trustee and its counsel a written notice of such Claim for an Administrative Expense within thirty (30) days after the Effective Date.  This deadline is the "Administrative Bar Date."  Such notice shall include at a minimum: (i) the name, address, telephone number and fax number (if applicable) or email address of the holder of such Claim, (ii) the amount of such Claim, and (iii) the basis of such Claim.  **Failure to timely and properly file and serve such notice by the Administrative Bar Date shall result in such Claim for an Administrative Expense being forever barred and discharged and the holder thereof shall be barred from receiving any Distribution through the Acis Trust on account of such Claim for an Administrative Expense**.

(d)   A Claim for an Administrative Expense, for which a proper notice was filed and served under subsection 4.05(c) above, shall become an Allowed Administrative Expense if no Objection is filed within thirty (30) days of the filing and service of such notice.  If a timely Objection is filed, the Claim shall become an Allowed Administrative Expense only to the extent allowed by a Final Order.

(e)    The procedures contained in subsections 4.05(a), (c) and (d) above shall not apply to Administrative Expense Claims asserted by Estate Professionals, who shall each file and submit an appropriate final fee application to the Bankruptcy Court no later than sixty (60) days after the Effective Date.  A Claim for an Administrative Expense by an Estate Professional in respect of which a final fee application has been properly filed and served shall become an Allowed Administrative Expense only to the extent allowed by Final Order and, if so Allowed, shall be paid in accordance with subsection 4.05(b) above.  Professional fees and expenses to any Estate Professional incurred on or after the Effective Date may be paid by the Acis Trustee without necessity of application to or order by the Bankruptcy Court.

(f)    If the Acis Trustee asserts any Estate Claims as counterclaims or defenses to a Claim for Administrative Expense, the Administrative Expense Claim shall be determined through an adversary proceeding before the Bankruptcy Court.  The Bankruptcy Court shall have exclusive jurisdiction to adjudicate and Allow all Claims for any Administrative Expense.

4.06.    <u>Priority Tax Claims</u>. Each holder of an Allowed Priority Tax Claim shall receive (a) one Cash payment in an amount equal to the principal amount of such Allowed Priority Tax Claim, plus interest at the rate and in the manner prescribed by applicable state law from the later of the Petition Date or the first day after the last day on which such Priority Tax Claim may be paid without penalty, no later than sixty (60) days after each such Claim becomes an Allowed Claim, or (b) such other treatment as may be agreed to in writing by the holder of the Priority Tax Claim and the Acis Trustee.

4.07.    <u>U.S. Trustee's Fees</u>. The Acis Trustee shall pay the U.S. Trustee's quarterly fees incurred pursuant to 28 U.S.C. § 1930(a)(6) which are due as of the Confirmation Date in full on the Effective Date or as soon thereafter as is practicable.  After the Confirmation Date, the Reorganized Debtor shall continue to pay quarterly fees as they accrue until a final decree is entered and the Chapter 11 Cases are closed.  The Reorganized Debtor shall file with the Bankruptcy Court and serve on the U.S. Trustee quarterly financial reports for each quarter, or portion thereof, that the Chapter 11 Cases remain open.

## C.    PLAN C – TREATMENT OF CLASSIFIED CLAIMS AND INTERESTS

4.08.    <u>Class 1 – Secured Tax Claims</u>. Each holder of an Allowed Secured Tax Claim shall receive (a) one Cash payment in an amount equal to the principal amount of such Allowed Secured Tax Claim, plus interest at the rate and in the manner prescribed by applicable state law from the later of the Petition Date or the first day after the last day on which such Secured Tax Claim may be paid without penalty, on the Initial Distribution Date, or (b) such other treatment as may be agreed to in writing by the holder of the Secured Tax Claim and the Acis Trustee.  The Liens securing such Secured Tax Claims shall remain unimpaired and unaffected until each such Class 1 Claim is paid in full.  All Distributions on account of Allowed Class 1 Claims shall be made by the Acis Trustee from the Trust Assets.  Class 1 is unimpaired. Holders of Class 1 Claims are conclusively presumed to have accepted the Plan and, accordingly, are not entitled to vote on the Plan.

4.09.    <u>Class 2 – HCLOF Claim</u>.  The HCLOF Claim shall be satisfied through the retention by HCLOF of the subordinated notes in each of the Acis CLOs and having the option to elect a reset of the Acis CLOs.  Class 2 is Impaired.  The Holder of the Class 2 Claim is entitled to vote on the Plan.  To the extent that any HCLOF Claim remains unpaid it shall be treated as a Class 5B Claim.

4.10. <u>Class 3 – Terry Secured Claim</u>. In exchange for a one million dollar ($1,000,000.00) reduction in the amount of his Secured Claim, Terry shall receive one hundred percent (100%) of the equity interests in the Reorganized Debtor as of the Effective Date. The remaining balance of any Allowed Terry Secured Claim shall be treated and paid as a Class 4 General Unsecured Claim. Class 3 is Impaired. The Holder of the Class 3 Terry Secured Claim is entitled to vote on the Plan.

4.11. <u>Class 4 – General Unsecured Claims</u>.

(a) Each holder of an Allowed General Unsecured Claim shall receive a promissory note issued by the Reorganized Debtor (each an "<u>Unsecured Cash Flow Note</u>") on the later of (a) that date that is as soon as practicable after the Effective Date, or (b) that date that is as soon as practicable after such holder's General Unsecured Claim becomes an Allowed Class 4 Claim. Each Unsecured Cash Flow Note shall be dated as of the Effective Date, bear interest at the Plan Rate and shall mature on that date that is the three (3) years after the Effective Date.

(b) To the extent of Available Cash, the Reorganized Debtor shall make substantially equal quarterly Distributions of principal and accrued interest to each holder of an Unsecured Cash Flow Note, with the first such quarterly Distribution being due and payable on the 90th day after the Effective Date. Thereafter, like Distributions shall be made each quarter by the Reorganized Debtor until the Unsecured Cash Flow Note is paid in full. Notwithstanding the foregoing, in the event that an Unsecured Cash Flow Note is first issued more than ninety (90) days after the Effective Date, the first Distribution made on account of such Unsecured Cash Flow Note shall be made upon the date that the next Distribution would otherwise be due, but such first Distribution shall also include amounts that would have been distributed to the holder of such Unsecured Cash Flow Note had such Unsecured Cash Flow Note been issued prior to ninety (90) days after the Effective Date, such that the first Distribution shall bring all payments current on account of such Unsecured Cash Flow Note. If on any date on which a quarterly Distribution is due to the holder of an Unsecured Cash Flow Note the remaining principal and accrued interest owing on account of such Unsecured Cash Flow Note is less than the regular quarterly Distribution amount, the Reorganized Debtor shall make a Distribution to the holder of such Unsecured Cash Flow Note in an amount sufficient to fully satisfy the remaining principal and accrued interest owed, but no more. Nothing contained herein shall preclude the Reorganized Debtor from prepaying any Unsecured Cash Flow Note.

(c) Within ninety (90) days of the Effective Date, the Acis Trustee shall make a Pro Rata Distribution to holders of Allowed Class 4 Claims and Allowed Subclass 5A Claims out of Available Cash held by the Acis Trust, which Distribution shall be applied to reduce the outstanding balance of each holder's Unsecured Cash Flow Note. The amount to be so distributed shall be determined in the sole discretion of the Acis Trustee after appropriate Reserves are made by the Acis Trustee, including but not limited to Reserves for Trust Expenses. Although the Distribution by the Acis Trustee to the holders of Allowed Class 4 Claims shall reduce the principal balance of each holder's Unsecured Cash Flow Note, such Distribution by the Acis Trustee will be made in addition to, and not in lieu of, the quarterly Distributions the Reorganized Debtor is required to make to holders of Allowed Class 4 Claims on account of the Unsecured Cash Flow Notes pursuant to this Plan.

(d) If after making the Pro Rata Distribution pursuant to section 4.11(c) above (and section 4.12(f) below), the Acis Trust obtains additional Cash, through litigation recoveries or otherwise, and the Acis Trustee determines, in his/her sole discretion, that the Acis Trust holds Available Cash sufficient to allow one or more subsequent Pro Rata Distributions to be made to

holders of Allowed Class 4 Claims and Allowed Subclass 5A Claims, the Acis Trustee may, but shall not be required to, make one or more additional Pro Rata Distributions to holders of Allowed Class 4 Claims and Allowed Subclass 5A Claims. Any such additional Distributions shall be applied to reduce the outstanding balance of each holder's Unsecured Cash Flow Note.

(e)     Class 4 is Impaired. Holders of Class 4 Claims are entitled to vote on the Plan.

4.12.     <u>Class 5 – Insider Claims</u>. Holders of Class 5 Insider Claims shall be treated as follows:

(a)     Class 5 shall consist of Insider Claims which constitute General Unsecured Claims and shall specifically include any General Unsecured Claim asserted by Highland and any Affiliate of Highland.

(b)     Class 5 Claims shall be divided into two (2) subclasses. Subclass 5A shall consist of all Allowed Class 5 claims which are not subject to equitable subordination. Subclass 5B shall consist of all Class 5 claims which are determined by the Bankruptcy Court to be subject to equitable subordination. If only a part of a Class 5 Claim is subject to equitable subordination, then the portion of such claim subject to equitable subordination shall be included in Subclass 5B and the remainder not subject to equitable subordination shall be included in Subclass 5A. Subclass 5A and Subclass 5B will vote separately on Plan C, although Subclass 5B is currently an empty class.

(c)     All Class 5 Claims (regardless of which subclass) shall be and remain subject to all Estate Defenses and all Estate Claims, both as offsets and for an affirmative recovery against the Holder of any Class 5 Claim.

(d)     Each holder of an Allowed Subclass 5A Claim shall receive an Unsecured Cash Flow Note on the later of (a) that date that is as soon as practicable after the Effective Date, or (b) that date that is as soon as practicable after such holder's Subclass 5A Claim becomes an Allowed Subclass 5A Claim. Each Unsecured Cash Flow Note shall be dated as of the Effective Date, bear interest at the Plan Rate and shall mature on that date that is the three (3) years after the Effective Date.

(e)     To the extent of Available Cash, the Reorganized Debtor shall make substantially equal quarterly Distributions of principal and accrued interest to each holder of an Unsecured Cash Flow Note, with the first such quarterly Distribution being due and payable on the 90th day after the Effective Date. Thereafter, like Distributions shall be made each quarter by the Reorganized Debtor until the Unsecured Cash Flow Note is paid in full. Notwithstanding the foregoing, in the event that an Unsecured Cash Flow Note is first issued more than ninety (90) days after the Effective Date, the first Distribution made on account of such Unsecured Cash Flow Note shall be made upon the date that the next Distribution would otherwise be due, but such first Distribution shall also include amounts that would have been distributed to the holder of such Unsecured Cash Flow Note had such Unsecured Cash Flow Note been issued prior to ninety (90) days after the Effective Date, such that the first Distribution shall bring all payments current on account of such Unsecured Cash Flow Note. If on any date on which a quarterly Distribution is due to the holder of an Unsecured Cash Flow Note the remaining principal and accrued interest owing on account of such Unsecured Cash Flow Note is less than the regular quarterly Distribution amount, the Reorganized Debtor shall make a Distribution to the holder of such Unsecured Cash Flow Note in an amount sufficient to fully satisfy the remaining principal

and accrued interest owed, but no more. Nothing contained herein shall preclude the Reorganized Debtor from prepaying any Unsecured Cash Flow Note.

(f)     Within ninety (90) days of the Effective Date, the Acis Trustee shall make a Pro Rata Distribution to holders of Allowed Class 4 Claims and Allowed Subclass 5A Claims out of Available Cash held by the Acis Trust, which Distribution shall be applied to reduce the outstanding balance of each holder's Unsecured Cash Flow Note. The amount to be so distributed shall be determined in the sole discretion of the Acis Trustee after appropriate Reserves are made by the Acis Trustee, including but not limited to Reserves for Trust Expenses. Although the Distribution by the Acis Trustee to the holders of Allowed Class 4 Claims shall reduce the principal balance of each holder's Unsecured Cash Flow Note, such Distribution by the Acis Trustee will be made in addition to, and not in lieu of, the quarterly Distributions the Reorganized Debtor is required to make to holders of Allowed Class 4 Claims on account of the Unsecured Cash Flow Notes pursuant to this Plan.

(g)     If after making the Pro Rata Distribution pursuant to sections 4.11(c) and 4.12(f) above, the Acis Trust obtains additional Cash, through litigation recoveries or otherwise, and the Acis Trustee determines, in his/her sole discretion, that the Acis Trust holds Available Cash sufficient to allow one or more subsequent Pro Rata Distributions to be made to holders of Allowed Class 4 Claims and Allowed Subclass 5A Claims, the Acis Trustee may, but shall not be required to, make one or more additional Pro Rata Distributions to holders of Allowed Class 4 Claims and Allowed Subclass 5A Claims. Any such additional Distributions shall be applied to reduce the outstanding balance of each holder's Unsecured Cash Flow Note.

(h)     Unless otherwise provided by Order of the Bankruptcy Court, holders of Subclass 5B claims shall not be entitled to any Distribution from the Acis Trust until all Allowed Claims included in Classes 1 through 4 and Subclass 5A have been paid in full. At any time after all Allowed Claims in Classes 1 through 4 and Subclass 5A have been paid in full, and prior to conclusion of the business of the Acis Trust, the Acis Trustee may, in his/her sole discretion, make one or more Distributions of Available Cash from the Acis Trust to holders of Allowed Subclass 5B Claims. Any such Distribution, if less than the then unpaid principal amount of all Allowed Subclass 5B Claims, together with interest thereon at the Plan Rate from the Effective Date through the date of such Distribution, shall be made Pro Rata to the holders of Allowed Subclass 5B Claims.

(i)     After (A) all Allowed Claims in Classes 1 through 4 and Subclass 5A have been paid in full, (B) the Acis Trustee has made a determination that the business of the Acis Trust is concluded, and (C) the Acis Trustee has paid or made appropriate Reserves for the payment of all remaining Trust Expenses, the Acis Trustee shall, as soon as practicable, make a Pro Rata Distribution of the remaining Cash of the Acis Trust to holders of Allowed Subclass 5B Claims, up to the amount necessary to fully pay the remaining unpaid principal balance of such Allowed Subclass 5B Claims with interest thereon at the Plan Rate from the Effective Date through the date of such final Distribution.

(j)     The Acis Trustee may establish appropriate Reserves as to any Contested Claim included in Class 5.

(k)     Class 5 is Impaired. Holders of Class 5 Claims are entitled to vote on the Plan.

4.13.   Class 6 – Interests. All Interests in the Debtors shall be extinguished and shall cease to exist as of the Effective Date. The holders of such Interests shall not receive or retain

any property on account of such Interests under the Plan. Class 6 is Impaired. Holders of Class 6 Interests are conclusively presumed to have rejected the Plan and, accordingly, are not entitled to vote on the Plan.

## D.    PLAN C – ACCEPTANCE OR REJECTION

4.14.    <u>Classes Entitled to Vote</u>.  Creditors in Classes 2 through 5 are entitled to vote and shall vote separately to accept or reject the Plan.  Any unimpaired Class shall not be entitled to vote to accept or reject the Plan.  Any unimpaired Class is deemed to have accepted the Plan under section 1126(f) of the Bankruptcy Code.

4.15.    <u>Class Acceptance Requirement</u>. A Class of Claims shall have accepted the Plan if it is accepted by at least two-thirds (2/3) in amount and more than one-half (1/2) in number of the Allowed Claims in such Class that have voted on the Plan.

4.16.    <u>Cramdown</u>. This section shall constitute the request by the Plan proponents, pursuant to section 1129(b) of the Bankruptcy Code, that the Bankruptcy Court confirm the Plan notwithstanding the fact that the requirements of section 1129(a)(8) of the Bankruptcy Code have not been met.

## E.    PLAN C – MEANS FOR IMPLEMENTATION

4.17.    <u>Acis Trust</u>.  The Acis Trust shall be created as of the Effective Date in accordance with the terms of this Plan and the Acis Trust Agreement.  The Debtors and the Estate shall be the settlors of the Acis Trust. The reorganized Acis will be the residual beneficiary of the Acis Trust and receive all distributions after all classes of Claims have been paid in full.

4.18.    <u>Transfers of Assets</u>.  As of the Effective Date (a) all Cash, Estate Accounts Receivable, Estate Claims and Estate Defenses shall be transferred from the Estate to, and be vested in, the Acis Trust, and (b) all other Estate Assets, unless otherwise expressly stated in this Plan, shall be transferred to, and vested in, the Reorganized Debtor.  After the Effective Date, the Acis Trustee may still abandon any Acis Trust Assets which are burdensome or have no or inconsequential value to the Acis Trust.  Any such abandoned assets shall be deemed transferred to and vested in the Reorganized Debtor.  All Estate Assets transferred to either the Acis Trust or the Reorganized Debtor shall be transferred to, and vested in, the Acis Trust or the Reorganized Debtor free and clear of all Liens, Claims, rights, Interests and charges, except as expressly provided in this Plan.

4.19.    <u>Assumption of Obligations to Make Distributions</u>.  The Acis Trustee and the Reorganized Debtor shall be deemed to have assumed the obligations to make the Distributions pursuant to this Plan to the extent the Plan identifies the Acis Trustee or the Reorganized Debtor as responsible for making such Distributions.

4.20.    <u>Actions by the Debtors, the Reorganized Debtor and the Acis Trustee to Implement Plan</u>.  The entry of the Confirmation Order shall constitute all necessary authorization for the Debtors, the Reorganized Debtor and the Acis Trustee to take or cause to be taken all actions necessary or appropriate to consummate, implement or perform all provisions of this Plan on and after the Effective Date, and all such actions taken or caused to be taken shall be deemed to have been authorized and approved by the Bankruptcy Court without further approval, act or action under any applicable law, order, rule or regulation,

including without limitation, (a) all transfers of Assets, including to the Acis Trust, that are to occur pursuant to the Plan; (b) the cancellation of Interests and issuance of 100% of the equity interests in the Reorganized Debtor to Terry; (c) the performance of the terms of the Plan and the making of all Distributions required under the Plan; and (d) subject to the terms of the Plan, entering into any and all transactions, contracts, or arrangements permitted by applicable law, order, rule or regulation.

4.21.   Termination of Highland as Sub-Servicer and Sub-Advisor.  The Bankruptcy Court authorized the Chapter 11 Trustee to terminate the Shared Services Agreement and Sub-Advisory Agreement and engage Oaktree to perform the services previously provided by Highland.  The Shared Services Agreement and Sub-Advisory Agreement may be terminated by the Chapter 11 Trustee, and the services previously performed by Highland may be transitioned to Oaktree for a minimum one year term.  Under Plan C, the Reorganized Debtor shall hire Terry as its Chief Trader and Terry may, at his discretion, hire additional personnel as he deems appropriate.  However, replacement of Oaktree as the Sub-Advisor before the expiration of the one year minimum term will result in an administrative claim in favor of Oaktree for the value of the remainder of the one year term, which will be partially offset by the Break-Up Fee.  Alternatively, if the services previously provided by Highland are not transitioned to Oaktree, Oaktree would nevertheless be entitled to an administrative claim for the value of any out of pocket and legal expenses incurred by Oaktree relating to the potential transition of such services to Oaktree, which expenses would be in addition to the Break-Up Fee and any other legal fees or expenses incurred by Oaktree.

4.22.   Continued Portfolio Management by the Reorganized Debtor.  The PMAs shall be assumed and the Reorganized Debtor shall, from and after the Effective Date, serve as the portfolio manager with respect to the Acis CLOs (or any reset CLOs).  The Reorganized Debtor may not be removed as portfolio manager under the assumed PMAs without cause.

4.23.   Option for HCLOF to Elect a Reset of the Acis CLOs.  HCLOF shall have the option to elect to reset the Acis CLOs.  If HCLOF elects to fund a reset, the Reorganized Debtor shall thereafter reset the Acis CLOs consecutively rather than simultaneously, consistent with market standards, but shall only effectuate the reset to the extent that HCLOF commits to fund the reset.  If HCLOF elects not to reset the Acis CLOs, then the Acis CLOs will continue to be managed in accordance with market standards.

4.24.   Amendment of Indentures.  The Indentures shall be amended pursuant to section 1123(a)(5)(F) of the Bankruptcy Code to provide that the Acis CLOs cannot be called for redemption until the later of (a) the date on which all Allowed Claims against the Debtors have been paid in full, or (b) three (3) years after the Effective Date.  In the event that the Acis CLOs are reset, any new indenture with respect to a reset CLO shall provide the reorganized Acis will continue as the portfolio manager and that the reset CLO cannot be called for redemption until the later of (y) the date on which all Allowed Claims against the Debtors have been paid in full, or (z) three (3) years after the Effective Date.

4.25.   Post-Effective Date Service List.  Pleadings filed by any party-in-interest with the Bankruptcy Court after the Effective Date shall be served on the following Persons (collectively the "Service List"): (a) any Person directly affected by the relief sought in the pleading, (b) the U.S. Trustee, (c) parties which have filed a Notice of Appearance in the Chapter 11 Cases, (d) the Acis Trustee through legal counsel, and (e) the Reorganized Debtor.

4.26. <u>Section 505 Powers</u>. All rights and powers pursuant to section 505 of the Bankruptcy Code are hereby reserved to the Estate and shall be transferred to, and vested in, the Acis Trustee as of the Effective Date.

4.27. <u>Section 510(c) Powers</u>. All rights and powers to seek or exercise any right or remedy of equitable subordination are hereby reserved to the Estate and shall be transferred to, and vested in, the Acis Trustee as of the Effective Date as an Estate Defense.

4.28. <u>Section 506(c) Powers</u>. The Estate hereby reserves all rights and powers pursuant to section 506(c) of the Bankruptcy Code, and all such rights shall be specifically transferred to, and vested in, the Acis Trustee.

4.29. <u>Plan Injunction</u>. The Acis Trustee and the Reorganized Debtor shall each have full power, standing and authority to enforce the Plan Injunction against any Person, either through an action before the Bankruptcy Court or any other tribunal having appropriate jurisdiction.

4.30. <u>Cancellation of Interests</u>. Except as otherwise specifically provided herein, upon the Effective Date of the Plan: (a) all Interests in the Debtors shall be cancelled; and (b) all obligations or debts of, or Claims against, the Debtors on account of, or based upon, the Interests shall be deemed as cancelled, released and discharged, including all obligations or duties by the Debtors relating to the Interests in any of their respective formation documents, including Acis LP's limited partnership agreement and bylaws, Acis GP's articles of formation and company agreement, or any similar formation or governing documents.

## F. PLAN C – ACIS TRUST

4.31. <u>Acis Trust</u>. On the Effective Date, the Acis Trust shall be created pursuant to the Acis Trust Agreement which shall be executed on behalf of the Debtors and by the Acis Trustee to accept the appointment. The Acis Trust Agreement shall be in substantially the same form as the attached **Exhibit C**. The Acis Trust shall not terminate upon the death or incapacity of the Acis Trustee and shall continue until its termination in accordance with the terms of this Plan and the Acis Trust Agreement. Reference is here made to the Acis Trust Agreement for all purposes which shall constitute an integral part of the Plan.

4.32. <u>Compensation of Acis Trustee</u>. The Acis Trustee shall be compensated from the Acis Trust Assets in the manner set forth in the Acis Trust Agreement as a Trust Expense. The Acis Trustee shall also be entitled to reimbursement of reasonable and necessary out-of-pocket expenses incurred in the performance of such duties, also as a Trust Expense.

4.33. <u>Acis Trust Assets</u>. The Debtors and the Estate shall constitute the settlors of the Acis Trust. As of the Effective Date, the Acis Trust Assets shall specifically include without limitation: (a) all Estate Cash, (b) all Estate Accounts Receivable, (c) all Estate Claims, and (d) all Estate Defenses. To evidence the transfer of the applicable Estate Assets to the Acis Trust, the Debtors shall, if requested by the Acis Trustee, execute on behalf of the Debtors and Estate, as settlors, an Assignment of Trust Assets transferring the applicable Estate Assets to the Acis Trust which shall be included among the Plan Documents.

4.34. <u>Distributions from Acis Trust</u>. The Acis Trustee shall be responsible for making Distributions from the Acis Trust to holders of Allowed Claims only to the extent this Plan requires Distributions to be made by the Acis Trustee. The Acis Trustee shall have no

responsibility to make any Distributions which this Plan expressly identifies as Distributions required to be made by the Reorganized Debtor.  The priority of Distributions from the Acis Trust shall be in accordance with the terms of this Plan and the Confirmation Order as follows:

(a)    <u>First</u>, to satisfy Allowed Class 1 Secured Tax Claims;

(b)    <u>Second</u>, to satisfy Allowed Administrative Expenses and Allowed Priority Claims in accordance with Article IV.B above, including all U.S. Trustee quarterly fees due and owing as of the Effective Date;

(c)    <u>Third</u>, to pay Trust Expenses;

(d)    <u>Fourth</u>, to make Distributions to holders of any Allowed Class 4 General Unsecured Claims and Allowed Subclass 5A Claims;

(e)    <u>Fifth</u>, to make Distributions to holders of any Allowed Subclass 5B Claims; and

(f)    <u>Sixth</u>, to make a Distribution of any remaining Acis Trust Assets to the Reorganized Debtor, as the residual Beneficiary of the Acis Trust.

4.35.    <u>Reserves</u>.  The Acis Trustee may estimate, create and set aside Reserves as may be necessary or appropriate, including without limitation, Reserves on account of Contested Claims and for Trust Expenses.  The Acis Trustee may, but shall not be required to, move the Bankruptcy Court to approve: (a) the amount of, and terms on which, such Reserves shall be held, maintained and disbursed, or (b) the amount and timing of any proposed interim Distribution to holders of Allowed Class 4 Claims and Allowed Subclass 5A Claims.  The Acis Trustee may elect to seek approval by the Bankruptcy Court for the creation and amount of any Reserves or regarding the amount or timing of any Distribution on account of any Allowed Claims.  Except as otherwise expressly provided herein, the Acis Trustee, in the exercise of his/her good faith business judgment, may transfer funds out of any of the Reserves as necessary or appropriate.  However, the Acis Trustee shall not be required to create separate accounts for such Reserves which may be created and memorialized by entries or other accounting methodologies, which may be revised from time-to-time, to enable the Acis Trustee to determine the amount of Cash available for Distribution to Beneficiaries of the Acis Trust.  Subject to any specific deadlines set forth herein, the Acis Trustee, shall determine, from time-to-time, in the exercise of the Acis Trustee's good faith business judgment: (x) the amount of Cash available for Distribution to Beneficiaries, (y) the timing of any Distributions to Beneficiaries, and (z) the amount and creation of any Reserves for Contested Claims or Trust Expenses.  The Acis Trustee shall not be entitled to reserve for, and this section 4.35 does not apply to, Distributions to holders of Allowed Subclass 5B Claims.

4.36.    <u>Trust Expenses</u>.  The Acis Trustee shall be entitled to pay all Trust Expenses without the necessity of further order of the Bankruptcy Court.  Without limiting the generality of the foregoing, the Acis Trust may retain, compensate and reimburse Trust Professionals retained by the Acis Trust without the necessity of further order of the Bankruptcy Court.  However, the Acis Trustee shall be entitled, should the Acis Trustee so elect, to request the Bankruptcy Court to approve any Trust Expense or the retention of any Trust Professional.

4.37.    <u>Powers and Duties of the Acis Trustee</u>.  The Acis Trustee's duties and compensation, to the extent not set forth herein, shall be as set forth in the Acis Trust Agreement which shall be one of the Plan Documents.  The Acis Trustee shall constitute a

representative of the Estate pursuant to section 1123(b)(3)(B) of the Bankruptcy Code, and shall be clothed with all powers, rights, duties and responsibilities pursuant to this Plan, the Confirmation Order and the Acis Trust Agreement.

4.38.  <u>Exercise of Acis Trustee's Powers</u>.  The Acis Trustee shall be entitled to exercise all powers pursuant to this Plan and the Acis Trust Agreement, without further order or approval of the Bankruptcy Court except as otherwise expressly provided herein or in the Acis Trust Agreement or Confirmation Order.

4.39.  <u>Prosecution and Settlement of Estate Claims</u>.  Upon the Effective Date, the Acis Trustee (a) shall automatically be substituted in place of the Debtors as the party representing the Estate in respect of any pending lawsuit, motion or other pleading pending before the Bankruptcy Court or any other tribunal, and (b) is authorized to file a notice on the docket of each adversary proceeding or the Chapter 11 Cases regarding such substitution.  The Acis Trustee shall have exclusive standing and authority to prosecute, settle or compromise Estate Claims for the benefit of the Acis Trust in the manner set forth in this Plan and the Acis Trust Agreement.

4.40.  <u>Exculpation of Acis Trustee.</u>  The Acis Trustee shall stand in a fiduciary relationship to the Beneficiaries of the Acis Trust.  In the performance of its duties, the Acis Trustee shall be entitled to act, or refrain from acting, based on the exercise of his/her good faith business judgment.  However, the Acis Trustee shall be fully exculpated, and shall have no liability for acts or omissions, in the manner and to the extent set forth in the Acis Trust Agreement.

4.41.  <u>Indemnity</u>.  The Acis Trust shall indemnify and hold harmless the Acis Trustee in the manner and to the extent set forth in the Acis Trust Agreement.

4.42.  <u>Resignation of Acis Trustee</u>.  The Acis Trustee may resign as provided in the Acis Trust Agreement.

4.43.  <u>Replacement of the Acis Trustee</u>.  The Acis Trustee may be replaced in the manner and on the terms as set forth in the Acis Trust Agreement.

4.44.  <u>Reliance by Acis Trustee</u>.  In the performance of the duties pursuant to this Plan, the Acis Trustee may rely upon any document or instrument which the Acis Trustee in good faith believes to be genuine and to have been signed or executed by the proper parties.

4.45.  <u>Plan Injunction</u>.  The Acis Trustee and Acis Trust shall be entitled to the full protection and benefit of the Plan Injunction and shall have standing to bring any action or proceeding necessary to enforce the Plan Injunction against any Person.

4.46.  <u>Tax Treatment.</u>  The Acis Trust shall be treated as a "liquidating trust" within the meaning of Section 301.7701-4(d) of the Treasury Regulations.  The Acis Trustee shall, in an expeditious but orderly manner, collect, liquidate and convert to Cash all non-cash Acis Trust Assets, and make timely Distributions to Beneficiaries of the Acis Trust, and shall not unduly prolong its duration.

4.47.  <u>Transfer of Claims</u>.  Holders of Allowed Claims shall not receive any certificate or other document to evidence their beneficial interest in the Acis Trust.  The transfer of Claims after the Effective Date is subject to section 5.04 of this Plan.

4.48.   Construction of Acis Trust Documents.  This Plan and the Acis Trust Agreement shall control over any inconsistent provision of the Disclosure Statement.  The Plan and Confirmation Order shall control over any inconsistent provision of the Acis Trust Agreement.  The Confirmation Order shall control over any inconsistent provision of the Disclosure Statement, the Acis Trust Agreement or this Plan.

4.49.   Relief from the Bankruptcy Court.  The Acis Trustee shall be authorized to seek relief from the Bankruptcy Court or any other tribunal having jurisdiction as to any matter relating or pertaining to the consummation, administration or performance of this Plan, including without limitation seeking any relief from the Bankruptcy Court which the Acis Trustee deems necessary or appropriate to the performance of its duties, the administration of this Plan, or the liquidation and distribution of the Acis Trust Assets.

4.50.   Removal for Cause.  The Acis Trustee may be removed for cause shown in the manner and on the terms set forth in the Acis Trust Agreement.

## ARTICLE V.
## PROVISIONS GOVERNING DISTRIBUTION

5.01.   Source of Distributions.  All Distributions required to be made by the Acis Trustee under this Plan shall be made by the Acis Trustee in the manner provided in this Plan, the Confirmation Order and the Acis Trust Agreement.  All Distributions required to be made by the Reorganized Debtor under this Plan shall be made by the Reorganized Debtor in the manner provided in this Plan and the Confirmation Order.

5.02.   Timing and Amount of Distributions.  No Distribution shall be made on account of any Claim until such Claim is Allowed, except as otherwise set forth in this Plan or otherwise ordered by the Bankruptcy Court.  No Distribution shall be made on account of any Contested Claim until such Claim is Allowed.  Except as expressly set forth in the Plan or in the Confirmation Order, the Acis Trustee and, if applicable, the Reorganized Debtor, shall, in the exercise of its or their good faith business judgment, determine the timing and amount of all Distributions which are required to be made under the Plan, consistent with the goal of making such Distributions as expeditiously as reasonably possible.  The Acis Trustee and the Reorganized Debtor may, but shall not be required to, seek approval of, or any other appropriate relief from, the Bankruptcy Court with respect to any of such Distributions.  Any Unclaimed Property may be paid into the registry of the Bankruptcy Court or otherwise distributed in accordance with the orders of the Bankruptcy Court.

5.03.   Means of Cash Payment.  Cash payments pursuant to this Plan shall be made by check drawn on, or by wire transfer from, a domestic bank, or by other means agreed to by the payor and payee.

5.04.   Record Date for Distributions.  As of the close of business on the Effective Date (the "Distribution Record Date"), the register for Claims will be closed, and there shall be no further changes in the holders of record of any Claims.  Although there is no prohibition against the transfer of any Claim by any Creditor, the Acis Trustee and the Reorganized Debtor shall have no obligation to recognize any transfer of a Claim occurring after the Distribution Record Date, and the Acis Trustee and the Reorganized Debtor shall instead be authorized and entitled to recognize and deal for all purposes under this Plan, including for the purpose of making all Distributions, with only those holders of Claims so reflected as of the Distribution Record Date.  However, the Acis Trustee and the Reorganized Debtor may, in the exercise of their good faith

business judgment, agree to recognize transfers of Claims after the Distribution Record Date, but shall have no obligation to do so.

5.05.    Delivery of Distributions.  All Distributions, deliveries and payments to the holders of any Allowed Claims shall be made to the addresses set forth on the respective proofs of Claim filed in the Chapter 11 Cases by such Claimants or, if the Distribution is to be made based on a Claim reflected as Allowed in the Schedules, at the address reflected in the Schedules.  Any such Distribution, delivery or payment shall be deemed as made for all purposes relating to this Plan when deposited in the United States Mail, postage prepaid, addressed as required in the preceding sentence.  If any Distribution is returned as undeliverable, no further Distribution shall be made on account of such Allowed Claim unless and until the Acis Trustee or, if applicable, the Reorganized Debtor, is notified of such holder's then current address, at which time all missed Distributions shall be made to the holder of such Allowed Claim.  However, all notices to the Acis Trustee or the Reorganized Debtor reflecting new or updated addresses for undeliverable Distributions shall be made on or before one hundred twenty (120) days after the date of the attempted Distribution or such longer period as the Acis Trustee or, if applicable, the Reorganized Debtor, may fix in the exercise of their sole discretion.  After such date, all Unclaimed Property shall revert to the Acis Trustee (or to the Reorganized Debtor if the applicable Distribution is the responsibility of the Reorganized Debtor) and the Claim of any holder with respect to such property shall be discharged and forever barred.

5.06.    W-9 Forms.  Each holder of an Allowed Claim must provide a W-9 form or other such necessary information to comply with any withholding requirements of any governmental unit (collectively the "W-9 Form") to the Acis Trustee prior to receiving any Distribution from the Acis Trust.  In the event a holder of an Allowed Claim does not provide a W-9 Form to the Acis Trustee within thirty (30) days of the Effective Date, the Acis Trustee shall, at an appropriate time, issue a written request to each holder of an Allowed Claim that has not previously provided a W-9 Form to the Acis Trustee.  The request shall be in writing and shall be delivered to the last address known to the Debtors or Acis Trustee, as appropriate.  The request shall conspicuously advise and disclose that failure to provide a W-9 Form to the Acis Trustee within thirty (30) days shall result in a waiver of any right or rights to a Distribution from the Acis Trust.  In the event any holder of an Allowed Claim fails to provide the Acis Trustee with a W-9 Form within thirty (30) days after the date of written request described herein, then the holder of such Allowed Claim shall be deemed to have waived the right to receive any Distribution whatsoever from the Acis Trust.

5.07.    Time Bar to Cash Payments.  Checks issued in respect of Allowed Claims shall be null and void if not cashed within ninety (90) days of the date of issuance thereof.  Requests for reissuance of any check shall be made directly to the issuer of the check (either the Acis Trustee or the Reorganized Debtor) by the holder of the Allowed Claim with respect to which such check originally was issued.  Any Claim in respect of such a voided check shall be made on or before one hundred twenty (120) days after the date of issuance of such check or such longer period as the Acis Trustee or the Reorganized Debtor may fix.  After such date, all Claims in respect of void checks shall be discharged and forever barred.

5.08.    Cure Period.  Except as otherwise set forth herein, the failure by the Acis Trustee or the Reorganized Debtor to timely perform any term, provision or covenant contained in this Plan, or to make any payment or Distribution required by this Plan to any Creditor, or the failure to make any payment or perform any covenant on any note, instrument or document issued pursuant to this Plan, shall not constitute an event of default unless and until the Acis Trustee or

the Reorganized Debtor, as applicable, has been given thirty (30) days written notice of such alleged default in the manner provided in this Plan, and provided an opportunity to cure such alleged default. Until the expiration of such thirty (30) day cure period, the Acis Trustee or the Reorganized Debtor shall not be in default, and performance during such thirty (30) day cure period shall be deemed as timely for all purposes. Such written notice and passage of the thirty (30) day cure period shall constitute conditions precedent to declaring or claiming any default under this Plan or bringing any action or legal proceeding by any Person to enforce any right granted under this Plan.

5.09. <u>Distributions after Substantial Consummation</u>. All Distributions of any kind made to any Creditor after Substantial Consummation and any and all other actions taken under this Plan after Substantial Consummation shall not be subject to relief, reversal or modification by any court unless the implementation of the Confirmation Order is stayed by an order granted under Bankruptcy Rule 8005.

## ARTICLE VI.
## RETENTION OF ESTATE CLAIMS AND ESTATE DEFENSES.

6.01. <u>Retention of Estate Claims</u>. Except as otherwise specifically provided in this Plan, pursuant to section 1123(b)(3) of the Bankruptcy Code, all Estate Claims shall be transferred to, and vested in, the Acis Trustee, both for purposes of seeking an affirmative recovery against any Person and as an offset or defense against any Claim asserted against the Estate or Acis Trust. Without limiting the generality of the foregoing, all applicable legal privileges of the Debtors or Estate, including both the attorney-client privilege and the work product privilege, shall be vested in the Acis Trustee who shall be clothed with the sole and exclusive standing and authority to assert any such privilege on behalf of the Debtors, Estate or Acis Trust. All Estate Claims shall be deemed to have been transferred to, and vested in, the Acis Trustee as of the Effective Date based on the entry of the Confirmation Order.

Without limiting the effectiveness or generality of the foregoing reservation, out of an abundance of caution, the Debtors and the Estate hereby specifically reserve and retain the Estate Claims reflected in the attached **Exhibit D**. Reference is here made to **Exhibit D** which constitutes an integral part of this Plan. The provisions of this Article of the Plan, as well as the descriptions and disclosures relating to the Estate Claims in the Disclosure Statement, are provided in the interest of providing maximum disclosure of the Estate Claims of which Debtors are presently aware, and shall not act as a limitation on the potential Estate Claims that may exist. It is the specific intention of this Plan that all Avoidance Actions and all associated remedies, and any other Estate Claims, whether arising before or after the Petition Date, and whether arising under the Bankruptcy Code or applicable state or federal non-bankruptcy laws, shall all be retained and preserved under this Plan to be transferred to, and vested in the Acis Trustee. All Estate Claims are retained both as causes of action for an affirmative recovery and as counterclaims and offset to any Claims asserted against the Estate.

6.02. <u>Retention of Estate Defenses</u>. Except as otherwise specifically provided in this Plan, pursuant to section 1123(b)(3) of the Bankruptcy Code, all Estate Defenses shall be transferred to, and vested in, the Acis Trustee. For this purpose, all Estate Defenses are hereby reserved and retained by the Debtors and the Estate, including without limitation all such Estate Defenses available to the Estate pursuant to section 558 of the Bankruptcy Code, and shall be deemed as transferred to, and vested in, the Acis Trustee as of the Effective Date based on the entry of the Confirmation Order.

6.03.    Assertion of Estate Claims and Estate Defenses.  The Acis Trustee shall have, and be vested with, the exclusive right, authority and standing to assert all Estate Claims and Estate Defenses for the benefit of the Acis Trust and, if applicable, the Reorganized Debtor.

## ARTICLE VII.
## PROCEDURES FOR RESOLVING AND TREATING
## CONTESTED AND CONTINGENT CLAIMS

7.01.    Claims Listed in Schedules as Disputed.  Any General Unsecured Claim which is listed in the Schedules as unliquidated, contingent or disputed, and for which no proof of Claim has been timely filed, shall be considered as Disallowed as of the Effective Date without the necessity of any further action by the Acis Trustee or further order of the Bankruptcy Court other than the entry of the Confirmation Order.

7.02.    Responsibility for Objecting to Claims and Settlement of Claims.  The Acis Trustee shall have the exclusive standing and authority to either object to any Claim or settle and compromise any Objection to any Claim, including as follows:

(a)      From and after the Effective Date, the Acis Trustee shall have the sole and exclusive right to (i) file, settle, or litigate to Final Order any Objections to any Claims; and (ii) seek to subordinate any Claim.  Any Contested Claim may be litigated to Final Order by the Acis Trustee; and

(b)      From and after the Effective Date, the Acis Trustee shall have the sole and exclusive right to settle, compromise or otherwise resolve any Contested Claim without the necessity of any further notice or approval of the Bankruptcy Court.  Bankruptcy Rule 9019 shall not apply to any settlement or compromise of a Contested Claim after the Effective Date.

7.03.    Objection Deadline.  All Objections to Claims shall be served and filed by the Objection Deadline; provided, however, the Objection Deadline shall not apply to Claims which are not reflected in the claims register, including any alleged informal proofs of Claim.  The Acis Trustee may seek to extend the Objection Deadline pursuant to a motion filed on or before the then applicable Objection Deadline with respect to any Claim.  Any such motion may be granted without notice or a hearing.  In the event that the Acis Trustee files such a motion and the Bankruptcy Court denies such motion, the Objection Deadline shall nevertheless be automatically extended to that date which is ten (10) Business Days after the date of entry of the Bankruptcy Court's order denying such motion.  Any proof of Claim other than one based upon a Rejection Claim and which is filed more than thirty (30) days after the Effective Date shall be of no force and effect and need not be objected to by the Acis Trustee.  Nothing contained herein shall limit the right of the Acis Trustee to object to Claims, if any, filed or amended after the Objection Deadline.

7.04.    Response to Claim Objection.  If the Acis Trustee files an Objection to any Claim, then the holder of such Claim shall file a written response to such Objection within twenty-four (24) days after the filing and service of the Objection upon the holder of the Contested Claim. Each such Objection shall contain appropriate negative notice advising the Creditor whose Claim is subject to the Objection of the requirement and time period to file a response to such Objection and that, if no response is timely filed to the Objection, the Bankruptcy Court may enter an order that such Claim is Disallowed without further notice or hearing.  The negative notice language in the Objection shall satisfy the notice requirement in section 3007(a) of the

Bankruptcy Rules, and the Acis Trustee shall not be required to send a separate notice of the Objection to the Creditor whose Claim is subject to the Objection.

7.05. <u>Distributions on Account of Contested Claims</u>. If a Claim is Contested, then the dates for any Distributions as to such Contested Claim shall be determined based upon its date of Allowance, and thereafter Distribution shall be made on account of such Allowed Claim pursuant to the provisions of the Plan. No Distribution shall be made on account of a Contested Claim until Allowed. Until such time as a contingent Claim becomes fixed and absolute by a Final Order Allowing such Claim, such Claim shall be treated as a Contested Claim for purposes of estimates, allocations, and Distributions under the Plan. Any contingent right to contribution or reimbursement shall continue to be subject to section 502(e) of the Bankruptcy Code.

7.06. <u>No Waiver of Right to Object</u>. Except as expressly provided in this Plan, nothing contained in the Disclosure Statement, this Plan, the Confirmation Order or the Acis Trust Agreement shall waive, relinquish, release or impair the Acis Trustee's right to object to any Claim.

7.07. <u>Offsets and Defenses</u>. The Acis Trustee shall be vested with and retain all Estate Claims and Estate Defenses, including without limitation all rights of offset or recoupment and all counterclaims against any Claimant holding a Claim. Assertion of counterclaims by the Acis Trustee against any Claim asserted against the Estate or Acis Trustee shall constitute "core" proceedings.

7.08. <u>Claims Paid or Reduced Prior to Effective Date</u>. Notwithstanding the contents of the Schedules, Claims listed therein as undisputed, liquidated and not contingent shall be reduced by the amount, if any, that was paid by the Debtors prior to the Effective Date, including pursuant to orders of the Bankruptcy Court. To the extent such payments are not reflected in the Schedules, such Schedules will be deemed amended and reduced to reflect that such payments were made. Nothing in the Plan shall preclude the Debtors, the Acis Trustee, or the Reorganized Debtor from paying Claims that the Debtors were authorized to pay pursuant to any Final Order entered by the Bankruptcy Court prior to the Confirmation Date.

## ARTICLE VIII.
## EXECUTORY CONTRACTS AND UNEXPIRED LEASES

8.01. <u>Assumption and Rejection of Executory Contracts</u>. All Executory Contracts and Unexpired Leases of the Debtors shall be deemed rejected by the Debtors upon the Effective Date unless an Executory Contract or Unexpired Lease (a) has been previously assumed or rejected pursuant to an order of the Bankruptcy Court, (b) is identified in this Plan and/or the Confirmation Order to be (i) assumed or (ii) assumed and assigned to the Transferee, or (c) is the subject of a motion to assume filed on or before the Confirmation Date. The Plan shall constitute a motion to reject the Executory Contracts and Unexpired Leases except as stated in this paragraph. However, the Debtors may file a separate motion for the assumption or rejection of any Executory Contract or Unexpired Lease at any time through the Confirmation Date.

8.02. <u>Cure Payments</u>. All payments that may be required by section 365(b)(1) of the Bankruptcy Code to satisfy any Cure Claim shall be made by the Acis Trustee as soon as reasonably practical after the Effective Date or upon such terms as may be otherwise agreed between the Acis Trustee and the holder of such Cure Claim; *provided, however*, in the event of a dispute regarding the amount of any Cure Claim, the cure of any other defaults, or any other

matter pertaining to assumption or assignment of an Executory Contract, the Acis Trustee shall make such cure payments and cure such other defaults, all as may be required by section 365(b)(1) of the Bankruptcy Code, following the entry of a Final Order by the Bankruptcy Court resolving such dispute.

8.03.    Bar to Rejection Claims.  Except as otherwise ordered by the Bankruptcy Court, any Rejection Claim based on the rejection of an Executory Contract or Unexpired Lease shall be forever barred and shall not be enforceable against the Acis Trust, the Acis Trust Assets, the Reorganized Debtor, or the Reorganized Debtor's assets unless a proof of Claim is filed with the Bankruptcy Court and served upon the Acis Trustee and its counsel by the earlier of thirty (30) days after the Effective Date or thirty (30) days after entry of the Final Order approving rejection of such Executory Contract or Unexpired Lease.

8.04.    Rejection Claims.  Any Rejection Claim not barred by section 8.03 of the Plan shall be classified as a Class 4 General Unsecured Claim subject to the provisions of sections 502(b)(6) and 502(g) of the Bankruptcy Code; *provided, however*, that any Rejection Claim by a lessor based upon the rejection of an unexpired lease of real property, either prior to the Confirmation Date, upon the entry of the Confirmation Order, or upon the Effective Date, shall be limited in accordance with section 502(b)(6) of the Bankruptcy Code and state law mitigation requirements.  All Rejection Claims shall be deemed as Contested Claims until Allowed. Nothing contained herein shall be deemed an admission by the Debtors, the Reorganized Debtor, or the Acis Trustee that such rejection gives rise to or results in a Claim or shall be deemed a waiver by the Debtors or the Acis Trustee of any objections or defenses to any such Rejection Claim if asserted.

8.05.    Reservation of Rights. Nothing contained in the Plan shall constitute an admission by the Debtors that any contract or lease is in fact an Executory Contract or Unexpired Lease or that the Debtors, the Reorganized Debtor, or the Acis Trustee have any liability thereunder.  If there is a dispute regarding whether a contract or lease is or was executory or unexpired at the time of assumption or rejection, the Acis Trustee shall have thirty (30) days following entry of a Final Order resolving such dispute to alter the treatment of such contract or lease.

## ARTICLE IX.
## SUBSTANTIVE CONSOLIDATION OF THE DEBTORS

9.01.    Pursuant to the Confirmation Order, the Bankruptcy Court shall approve the substantive consolidation of the Debtors for the sole purposes of implementing the Plan, including for purposes of voting and Distributions to be made under the Plan.  Pursuant to such order:  (a) all assets and liabilities of the Debtors will be deemed merged; (b) all guarantees by one Debtor of the obligations of the other Debtor will be deemed eliminated so that any Claim against any Debtor and any guarantee thereof executed by the other Debtor and any joint or several liability of the Debtors will be deemed to be one obligation of the consolidated Debtors; and (c) each and every Claim filed or to be filed in the Chapter 11 Case of either Debtor will be deemed filed against the consolidated Debtors and will be deemed one Claim against and a single obligation of the consolidated Debtors.

**ARTICLE X.**
**CONDITIONS PRECEDENT TO CONFIRMATION AND EFFECTIVENESS OF PLAN**

10.01. <u>Conditions to Confirmation and Effectiveness of Plan</u>. The Plan shall not become effective until the following conditions shall have been satisfied and which may occur concurrently with the Effective Date: (a) the Confirmation Order shall have been entered, in form and substance acceptable to the Chapter 11 Trustee; (b) if the Plan is confirmed based on the terms and provisions of Plan A, the ATA has been closed and funded according to its terms; (c) the Acis Trust Agreement has been executed and delivered, (d) the necessary Plan Documents have been executed and delivered, and (e) all other conditions specified by the Chapter 11 Trustee have been satisfied. Any or all of the above conditions other than (a) and (b) may be waived at any time by the Chapter 11 Trustee.

10.02. <u>Notice of the Effective Date</u>. On or as soon as reasonably practical after the occurrence of the Effective Date, the Acis Trustee shall cause to be filed with the Court, and served on all Creditors and parties-in-interest, a notice of the Effective Date.

10.03. <u>Revocation of Plan</u>. The Chapter 11 Trustee may revoke and withdraw the Plan at any time before the Effective Date. If the Chapter 11 Trustee revokes or withdraws the Plan, or if confirmation of the Plan does not occur, then this Plan shall be deemed null and void and nothing contained in the Plan shall be deemed to constitute a waiver or release of any Claims by or against the Debtors, as the case may be, or any other Person, or to prejudice in any manner the rights of the Debtors or any other Person in any further proceedings involving the Debtors.

**ARTICLE XI.**
**EFFECT OF THE PLAN ON CLAIMS AND INTERESTS**

11.01. <u>Compromise and Settlement</u>

(a)     Pursuant to section 363 of the Bankruptcy Code and Bankruptcy Rule 9019, and in consideration of the classification, potential Distributions and other benefits provided under the Plan, the provisions of the Plan shall constitute a good faith compromise and settlement of all Claims, Interests and controversies subject to, or dealt with, under this Plan, including, without limitation, all Claims against the Debtors or Estate arising prior to the Effective Date, whether known or unknown, foreseen or unforeseen, asserted or unasserted, fixed or contingent, arising out of, relating to or in connection with the business or affairs of, or transactions with, the Debtors or the Estate. The entry of the Confirmation Order shall constitute the Bankruptcy Court's approval of each of the foregoing compromises or settlements embodied in this Plan, and all other compromises and settlements provided for in the Plan, and the Bankruptcy Court's findings shall constitute its determination that such compromises and settlements are in the best interest of the Debtors, the Estate, Creditors and other parties-in-interest, and are fair, equitable and within the range of reasonableness. The rights afforded in the Plan and the treatment of all Claims and Interests herein shall be in exchange for, and in complete satisfaction and release of, all Claims and Interests of any nature whatsoever against and in the Debtors, the Estate, and the Assets. Except as otherwise provided herein, all Persons shall be precluded and forever barred by the Plan Injunction from asserting against the Debtors and their affiliates, successors, assigns, the Reorganized Debtor or the Reorganized Debtor's assets, the Estate, the Transferee or the Assets or Transferred Assets, the Acis Trustee, the Acis Trust or the Acis Trust Assets, any event, occurrence, condition, thing, or other or further Claims or causes of action based upon any act, omission, transaction, or other

activity of any kind or nature that occurred or came into existence prior to the Effective Date, whether or not the facts of or legal bases therefore were known or existed prior to the Effective Date.

        (b)    It is not the intent of this Plan that confirmation of the Plan shall in any manner alter or amend any settlement and compromise (including those contained in agreed orders) between the Debtors and any Person that has been previously approved by the Bankruptcy Court (each, a "Prior Settlement").  To the extent of any conflict between the terms of the Plan and the terms of any Prior Settlement, the terms of the Prior Settlement shall control and such Prior Settlement shall be enforceable according to its terms.

    11.02.  Discharge.  If the Plan is confirmed based on the terms and provisions of Plan A, then this Plan does not provide for any discharge pursuant to section 1141(d)(3) of the Bankruptcy Code.  Alternatively, if the Plan is confirmed based on the terms and provisions of either Plan B or Plan C, the Debtors and their successors in interest and assigns shall be deemed discharged and released pursuant to section 1141(d)(1) of the Bankruptcy Code from any and all Claims provided for in the Plan.

    11.03.  PLAN INJUNCTION.  THIS SECTION IS REFERRED TO HEREIN AS THE "PLAN INJUNCTION."  EXCEPT AS OTHERWISE EXPRESSLY PROVIDED HEREIN, AS OF THE EFFECTIVE DATE ALL HOLDERS OF CLAIMS AGAINST, OR INTERESTS IN, THE DEBTORS, THE ESTATE OR ANY OF THE ASSETS THAT AROSE PRIOR TO THE EFFECTIVE DATE ARE HEREBY PERMANENTLY ENJOINED AND PROHIBITED FROM THE FOLLOWING:  (a) THE COMMENCING OR CONTINUATION IN ANY MANNER, DIRECTLY OR INDIRECTLY, OF ANY ACTION, CASE, LAWSUIT OR OTHER PROCEEDING OF ANY TYPE OR NATURE AGAINST THE TRANSFEREE, THE TRANSFERRED ASSETS, THE ACIS TRUSTEE, THE ACIS TRUST, THE ACIS TRUST ASSETS , THE DEBTORS, THE ESTATE, THE REORGANIZED DEBTOR, OR THE REORGANIZED DEBTOR'S ASSETS WITH RESPECT TO ANY SUCH CLAIM OR INTEREST ARISING OR ACCRUING BEFORE THE EFFECTIVE DATE, INCLUDING WITHOUT LIMITATION THE ENTRY OR ENFORCEMENT OF ANY JUDGMENT, OR ANY OTHER ACT FOR THE COLLECTION, EITHER DIRECTLY OR INDIRECTLY, OF ANY CLAIM OR INTEREST AGAINST THE TRANSFEREE, THE TRANSFERRED ASSETS, THE ACIS TRUSTEE, THE ACIS TRUST, THE ACIS TRUST ASSETS , THE DEBTORS, THE ESTATE, THE REORGANIZED DEBTOR, OR THE REORGANIZED DEBTOR'S ASSETS; (b) THE CREATION, PERFECTION OR ENFORCEMENT OF ANY LIEN, SECURITY INTEREST, ENCUMBRANCE, RIGHT OR BURDEN, EITHER DIRECTLY OR INDIRECTLY, AGAINST THE TRANSFEREE, THE TRANSFERRED ASSETS, THE ACIS TRUSTEE, THE ACIS TRUST, THE ACIS TRUST ASSETS , THE DEBTORS, THE ESTATE, THE REORGANIZED DEBTOR, OR THE REORGANIZED DEBTOR'S ASSETS, OR (c) TAKING ANY ACTION IN RELATION TO THE TRANSFEREE, THE TRANSFERRED ASSETS, THE ACIS TRUSTEE, THE ACIS TRUST, THE ACIS TRUST ASSETS , THE DEBTORS, THE ESTATE, THE REORGANIZED DEBTOR, OR THE REORGANIZED DEBTOR'S ASSETS, EITHER DIRECTLY OR INDIRECTLY, WHICH VIOLATES OR DOES NOT CONFORM OR COMPLY WITH THE PROVISIONS OF THIS PLAN APPLICABLE TO SUCH CLAIM OR INTEREST.  THE PLAN INJUNCTION SHALL ALSO BE INCORPORATED INTO THE CONFIRMATION ORDER.

    IN ADDITION TO THE FOREGOING, IF THE PLAN IS CONFIRMED BASED ON THE TERMS AND PROVISIONS OF PLAN B OR PLAN C, THEN PURSUANT TO SECTIONS 105(a), 1123(a)(5) AND 1123(b)(6) OF THE BANKRUPTCY CODE, THE ENJOINED PARTIES (DEFINED BELOW) ARE HEREBY ENJOINED FROM: (a) PROCEEDING WITH,

EFFECTUATING, OR OTHERWISE TAKING (i) ANY ACTION IN FURTHERANCE OF ANY OPTIONAL REDEMPTION, CALL, OR OTHER LIQUIDATION OF THE ACIS CLOS PREVIOUSLY OR CURRENTLY ISSUED BY ANY SUCH PARTIES AND (ii) ANY OTHER ATTEMPT TO LIQUIDATE THE ACIS CLOS BY ANY MEANS, (b) TRADING ANY ACIS CLO COLLATERAL, WHETHER IN FURTHERANCE OF ANY OPTIONAL REDEMPTION, CALL, OR OTHER LIQUIDATION OF THE ACIS CLOS OR OTHERWISE, AND (c) SENDING, MAILING, OR OTHERWISE DISTRIBUTING ANY NOTICE TO THE HOLDERS OF THE ACIS CLOS IN CONNECTION WITH THE EFFECTUATION OF ANY OPTIONAL REDEMPTION, CALL, OR OTHER LIQUIDATION OF THE ACIS CLOS, UNTIL THE EARLIER TO OCCUR OF: (x) THE DATE UPON WHICH THE ACIS TRUSTEE OBTAINS CONTROL OVER MANAGEMENT OF THE SUBORDINATED NOTES BY VIRTUE OF AVOIDING THE PREPETITION FRAUDULENT TRANSFER OF ACIS LP'S RIGHTS UNDER THE ALF PMA THROUGH THE CLAIMS, COUNTERCLAIMS, OR THIRD PARTY CLAIMS ASSERTED OR WHICH MAY BE ASSERTED IN THE HIGHLAND ADVERSARY, (y) THE DATE ON WHICH ALL ALLOWED CLAIMS AGAINST THE DEBTORS HAVE BEEN PAID IN FULL, OR (z) THREE (3) YEARS AFTER THE EFFECTIVE DATE.  FOR PURPOSES OF THIS PARAGRAPH, THE TERM "ENJOINED PARTIES" SHALL INCLUDE HIGHLAND, HCLOF, CLO HOLDCO, NEUTRA, HIGHLAND HCF, HIGHLAND CLOM, THE ISSUERS AND CO-ISSUERS, AND THEIR RESPECTIVE EMPLOYEES, AGENTS, REPRESENTATIVES, TRANSFEREES, ASSIGNS, OR SUCCESSORS.

Notwithstanding anything to the contrary in the Plan or the Acis Trust Agreement: (a) third party professionals employed by the Acis Trustee shall not be released or exculpated from any losses, claims, damages, liabilities, or expenses arising from their duties and services provided to the Acis Trustee; and (b) any third party professionals employed by the Acis Trustee shall only be entitled to be indemnified by the Acis Trust to the extent provided by applicable law.

Notwithstanding anything to the contrary in the Plan or Confirmation Order, nothing in the Plan or Confirmation Order (including the Plan Injunction):  (a) releases any Person other than the Transferee, the Transferred Assets, the Acis Trustee, the Acis Trust, the Acis Trust Assets, the Debtors, the Estate, the Reorganized Debtor, or the Reorganized Debtor's assets (collectively, the "Released Parties") from any Claim or cause of action held by a Governmental Unit; or (b) enjoins, limits, impairs or delays any Governmental Unit from commencing or continuing any Claim, suit, action, proceeding, cause of action, or investigation against any Person other than the Released Parties.  Moreover, nothing in the Plan or in the Confirmation Order shall discharge, release, enjoin or otherwise bar (i) any liability of the Released Parties to a Governmental Unit arising on or after the Confirmation Date with respect to events occurring after the Confirmation Date, provided that the Released Parties reserve the right to assert that any such liability is a Claim that arose on or prior to the Confirmation Date and constitutes a Claim that is subject to the Plan Injunction, (ii) any liability to a Governmental Unit that is not a Claim subject to the deadlines for filing proofs of Claim, (iii) any valid right of setoff or recoupment of a Governmental Unit, and (iv) any police or regulatory action by a Governmental Unit.  In addition, nothing in the Plan or Confirmation Order discharges, releases, precludes or enjoins any environmental liability to any Governmental Unit that any Person other than the Released Parties would be subject to as the owner or operator of the property after the Effective Date.  For the avoidance of any doubt, nothing in this paragraph shall be construed to limit the application of the Plan Injunction to any Claim which was subject to any bar date applicable to such Claim.

11.04.  Setoffs.  Except as otherwise expressly provided for in the Plan, pursuant to the Bankruptcy Code (including section 553 of the Bankruptcy Code), applicable nonbankruptcy law, or as may be agreed to by the holder of a Claim, the Acis Trustee may setoff against any Allowed Claim and the Distributions to be made pursuant to the Plan on account of such Allowed Claim (before such Distribution is made), any Claims, rights, Estate Claims and Estate Defenses of any nature that the Debtors may hold against the holder of such Allowed Claim, to the extent such Claims, rights, Estate Claims and Estate Defenses against such holder have not been otherwise compromised or settled on or prior to the Effective Date (whether pursuant to the Plan or otherwise); provided, however, that neither the failure to effect such a setoff nor the allowance of any Claim or Interest pursuant to the Plan shall constitute a waiver or release of any such Claims, rights, Estate Claims and Estate Defenses that the Estate may possess against such Claimant.  In no event shall any Claimant or Interest holder be entitled to setoff any Claim or Interest against any Claim, right, or Estate Claim of the Debtors without the consent of the Debtors or the Acis Trustee unless such holder files a motion with the Bankruptcy Court requesting the authority to perform such setoff notwithstanding any indication in any proof of Claim or otherwise that such holder asserts, has, or intends to preserve any right of setoff pursuant to section 553 of the Bankruptcy Code or otherwise.

11.05.  Recoupment.  Except as otherwise expressly provided for in the Plan, in no event shall any holder of Claims or Interests be entitled to recoup any Claim or Interest against any Claim, right, account receivable, or Estate Claim of the Debtors or the Acis Trustee unless (a) such holder actually provides notice thereof in writing to the Debtors or the Acis Trustee of its intent to perform a recoupment; (b) such notice includes the amount to be recouped by the holder of the Claim or Interest and a specific description of the basis for the recoupment, and (c) the Debtors or the Acis Trustee have provided a written response to such Claim or Interest holder, stating unequivocally that the Debtors or the Acis Trustee consents to the requested recoupment.  The Debtors and the Acis Trustee shall have the right, but not the obligation, to seek an order of the Bankruptcy Court allowing any or all of the proposed recoupment.  In the absence of a written response from the Debtors or the Acis Trustee consenting to a recoupment or an order of the Bankruptcy Court authorizing a recoupment, no recoupment by the holder of a Claim or Interest shall be allowed.

11.06.  Turnover.  On the Effective Date, any rights of the Estate to compel turnover of Assets under applicable nonbankruptcy law and pursuant to section 542 or 543 of the Bankruptcy Code shall be deemed transferred to and vested in the Acis Trust.

11.07.  Automatic Stay.  The automatic stay pursuant to section 362 of the Bankruptcy Code, except as previously modified by the Bankruptcy Court, shall remain in effect until the Effective Date of the Plan as to the Debtors, the Estate and all Assets.  As of the Effective Date, the automatic stay shall be replaced by the Plan Injunction.

## ARTICLE XII.
## JURISDICTION OF COURTS AND MODIFICATIONS TO THE PLAN

12.01.  Retention of Jurisdiction.  Pursuant to sections 1334 and 157 of title 28 of the United States Code, the Bankruptcy Court shall retain exclusive jurisdiction of all matters arising in, arising under, and related to the Chapter 11 Cases and the Plan, to the full extent allowed or permitted by applicable law, including without limitation for the purposes of invoking sections 105(a) and 1142 of the Bankruptcy Code, and for, among other things, the following purposes:

(a)     To hear and determine any and all objections to, or applications or motions

concerning, the allowance of Claims or the allowance, classification, priority, compromise, estimation, or payment of any Administrative Expense;

(b)     To hear and determine any and all applications for payment of fees and expenses pursuant to this Plan to any Estate Professional pursuant to sections 330 or 503 of the Bankruptcy Code, or for payment of any other fees or expenses authorized to be paid or reimbursed under this Plan, and any and all objections thereto;

(c)     To hear and determine pending applications for the rejection, assumption, or assumption and assignment of Executory Contracts and Unexpired Leases and the allowance of Claims resulting therefrom, and to determine the rights of any party in respect to the assumption or rejection of any Executory Contract or Unexpired Lease;

(d)     To hear and determine any and all adversary proceedings, applications, or contested matters, including relating to the allowance of any Claim;

(e)     To hear and determine all controversies, disputes, and suits which may arise in connection with the execution, interpretation, implementation, consummation, or enforcement of the Plan or Acis Trust or in connection with the enforcement of any remedies made available under the Plan, including without limitation, (i) adjudication of all rights, interests or disputes relating to any of the Assets or Acis Trust Assets, (ii) the valuation of all Collateral, (iii) the determination of the validity of any Lien or claimed right of offset; and (iv) determinations of Objections to Contested Claims;

(f)     To liquidate and administer any disputed, contingent, or unliquidated Claims, including the Allowance of all Contested Claims;

(g)     To administer Distributions to holders of Allowed Claims as provided herein or in the Acis Trust Agreement;

(h)     To enter and implement such orders as may be appropriate in the event the Confirmation Order is for any reason stayed, reversed, revoked, modified, or vacated;

(i)     To consider any modification of the Plan pursuant to section 1127 of the Bankruptcy Code, to cure any defect or omission, or reconcile any inconsistency in any order of the Bankruptcy Court, including, without limitation the Confirmation Order;

(j)     To enforce the Plan Injunction against any Person, including with respect to any motion or proceeding brought by the Transferee;

(k)     To enter and implement all such orders as may be necessary or appropriate to execute, interpret, construe, implement, consummate, or enforce the terms and conditions of this Plan or the Acis Trust Agreement and the transactions required or contemplated pursuant thereto;

(l)     To hear and determine any motion or application which the Acis Trustee is required or allowed to commence before the Bankruptcy Court pursuant to this Plan or the Acis Trust Agreement;

(m)     To hear and determine any other matter not inconsistent with the Bankruptcy Code and title 28 of the United States Code that may arise in connection with or related to the

Plan;

      (n)     To determine proceedings pursuant to section 505 of the Bankruptcy Code;

      (o)     To enter a final decree closing the Chapter 11 Cases; and

      (p)     To determine any other matter or dispute relating to the Estate, the Assets, the Acis Trust or the Acis Trust Assets, or the administration of the Acis Trust Assets and the Distribution thereof.

12.02.  <u>Abstention and Other Courts</u>.  If the Bankruptcy Court abstains from exercising, or declines to exercise, jurisdiction or is otherwise without jurisdiction over any matter arising out of or relating to the Chapter 11 Cases, this Article of the Plan shall have no effect upon and shall not control, prohibit or limit the exercise of jurisdiction by any other court having competent jurisdiction with respect to such matter.

12.03.  <u>Non-Material Modifications</u>.  The Acis Trustee may, with the approval of the Bankruptcy Court and without notice to all holders of Claims and Interests, correct any defect, omission, or inconsistency in the Plan in such manner and to such extent as may be necessary or desirable.  The Acis Trustee may undertake such nonmaterial modification pursuant to this section insofar as it does not adversely change the treatment of the Claim of any Creditor or the Interest of any Interest holder who has not accepted in writing the modification.

12.04.  <u>Material Modifications</u>.  Modifications of this Plan may be proposed in writing by the Chapter 11 Trustee at any time before confirmation, provided that this Plan, as modified, meets the requirements of sections 1122 and 1123 of the Bankruptcy Code, and the Chapter 11 Trustee shall have complied with section 1125 of the Bankruptcy Code.  This Plan may be modified at any time after confirmation and before its Substantial Consummation, provided that the Plan, as modified, meets the requirements of sections 1122 and 1123 of the Bankruptcy Code, and the Bankruptcy Court, after notice and a hearing, confirms the Plan, as modified, under section 1129 of the Bankruptcy Code, and the circumstances warrant such modification. A holder of a Claim or Interest that has accepted or rejected this Plan shall be deemed to have accepted or rejected, as the case may be, such Plan as modified, unless, within the time fixed by the Bankruptcy Court, such holder changes its previous acceptance or rejection.

## ARTICLE XIII.
## MISCELLANEOUS PROVISIONS

13.01.  <u>Severability</u>.  Should the Bankruptcy Court determine any provision of the Plan is unenforceable either on its face or as applied to any Claim or Interest or transaction, the Acis Trustee may modify the Plan so that any such provision shall not be applicable to the holder of any Claim or Interest.  Such a determination of unenforceability shall not (a) limit or affect the enforceability and operative effect of any other provision of the Plan or (b) require the resolicitation of any acceptance or rejection of the Plan.

13.02.  <u>Oral Agreements; Modification of Plan; Oral Representations or Inducements</u>. The terms of the Plan, Disclosure Statement and Confirmation Order may only be amended in writing and may not be changed, contradicted or varied by any oral statement, agreement, warranty or representation.  None of the Debtors, any representative of the Estate, including Robin Phelan in his capacity as Chapter 11 Trustee, nor their attorneys have made any representation, warranty, promise or inducement relating to the Plan or its confirmation except

as expressly set forth in this Plan, the Disclosure Statement, or the Confirmation Order or other order of the Bankruptcy Court.

13.03. Waiver. The Acis Trustee and Reorganized Debtor shall not be deemed to have waived any right, power or privilege pursuant to the Plan or the Acis Trust Agreement unless the waiver is in writing and signed by the Acis Trustee or Reorganized Debtor, as applicable. There shall be no waiver by implication, course of conduct or dealing, or through any delay or inaction by the Acis Trustee or the Reorganized Debtor, of any right pursuant to the Plan, including the provisions of this anti-waiver section. The waiver of any right under the Plan shall not act as a waiver of any other or subsequent right, power or privilege.

13.04. Notice. Any notice or communication required or permitted by the Plan shall be given, made or sent as follows:

(a)    If to a Creditor, notice may be given as follows: (i) if the Creditor has not filed a proof of Claim, then to the address reflected in the Schedules, or (ii) if the Creditor has filed a proof of Claim, then to the address reflected in the proof of Claim.

(b)    If to the Acis Trustee, notice shall be sent to the Acis Trustee and counsel of record for the Acis Trustee as provided in the Acis Trust Agreement.

(c)    If to the Reorganized Debtor, notice shall be sent to the following addresses:

| | |
|---|---|
| Robin Phelan | Josh Terry |
| c/o *PHELANLAW* | c/o Brian P. Shaw |
| 4214 Woodfin Drive | Rogge Dunn Group, PC |
| Dallas, Texas 75220 | 1201 Elm Street, Suite 5200 |
| | Dallas, Texas 75270 |

(d)    Any Creditor desiring to change its address for the purpose of notice may do so by giving notice to the Acis Trustee and, if applicable, to the Reorganized Debtor, of its new address in accordance with the terms of this section.

(e)    Any notice given, made or sent as set forth above shall be effective upon being (i) deposited in the United States Mail, postage prepaid, addressed to the addressee at the address as set forth above; (ii) delivered by hand or messenger to the addressee at the address set forth above; (iii) telecopied to the addressee as set forth above, with a hard confirmation copy being immediately sent through the United States Mail; or (iv) delivered for transmission to an expedited or overnight delivery service such as FedEx.

13.05. Compliance with All Applicable Laws. If notified by any governmental authority that it is in violation of any applicable law, rule, regulation, or order of such governmental authority relating to its business, the Acis Trustee or the Reorganized Debtor shall comply with such law, rule, regulation, or order; provided, however, that nothing contained herein shall require such compliance if the legality or applicability of any such requirement is being contested in good faith in appropriate proceedings and, if appropriate, an adequate Reserve has been set aside on the books of the Acis Trust or the Reorganized Debtor.

13.06. Duties to Creditors; Exculpation. Neither the Chapter 11 Trustee nor any agent, representative, accountant, financial advisor, attorney, shareholder, officer, affiliate, member or employee of the Chapter 11 Trustee or the Debtors, including but not limited to Estate

Professionals (collectively, the "Exculpated Parties"), shall ever owe any duty to any Person (including any Creditor) other than the duties owed to the Debtors' bankruptcy Estate, for any act, omission, or event in connection with, or arising out of, or relating to, any of the following: (a) the Debtors' Chapter 11 Cases, including all matters or actions in connection with or relating to the administration of the Estate, (b) the Plan, including the proposal, negotiation, confirmation and consummation of the Plan, or (c) any act or omission relating to the administration of the Plan after the Effective Date. All such Exculpated Parties shall be fully exculpated and released from any and all claims and causes of action by any Person, known or unknown, in connection with, or arising out of, or relating to, any of the following: (x) the Debtors' Chapter 11 Cases, including all matters or actions in connection with or relating to the administration of the Estate, (y) the Plan, including the proposal, negotiation, confirmation and consummation of the Plan, or (z) any act or omission relating to the administration of the Plan after the Effective Date, except for claims and causes of action arising out of such Exculpated Party's gross negligence or willful misconduct.

13.07. <u>Binding Effect</u>. The Plan shall be binding upon, and shall inure to the benefit of the Acis Trust, the Reorganized Debtor, the holders of the Claims or Liens, and their respective successors-in-interest and assigns.

13.08. <u>Governing Law, Interpretation</u>. Unless a rule of law or procedure supplied by federal law (including the Bankruptcy Code and Bankruptcy Rules) is applicable, the internal laws of the State of Texas shall govern the construction and implementation of the Plan and any Plan Documents without regard to conflicts of law. The Plan shall control any inconsistent term or provision of any other Plan Documents.

13.09. <u>Payment of Statutory Fees</u>. All accrued U.S. Trustee Fees as of the Confirmation Date shall be paid by the Acis Trustee on or as soon as practicable after the Effective Date, and thereafter shall be paid by (a) the Acis Trustee as such statutory fees become due and payable if the Plan is confirmed based on the terms and provisions of Plan A, or (b) the Reorganized Debtor as such statutory fees become due and payable if the Plan is confirmed based on the terms and provisions of Plan B or Plan C.

13.10. <u>Filing of Additional Documents</u>. On or before Substantial Consummation of the Plan, the Acis Trustee may file with the Bankruptcy Court such agreements and other documents as may be necessary or appropriate to effectuate and further evidence the terms and conditions of the Plan.

13.11. <u>Computation of Time</u>. Bankruptcy Rule 9006 shall apply to the calculation of all time periods pursuant to this Plan. If the final day for any Distribution, performance, act or event under the Plan is not a Business Day, then the time for making or performing such Distribution, performance, act or event shall be extended to the next Business Day. Any payment or Distribution required to be made hereunder on a day other than a Business Day shall be due and payable on the next succeeding Business Day.

13.12. <u>Elections by the Acis Trustee or the Reorganized Debtor</u>. Any right of election or choice granted to the Acis Trustee or the Reorganized Debtor under this Plan may be exercised, at the Acis Trustee's election or the Reorganized Debtor's election, separately as to each Claim, Creditor or Person.

13.13. <u>Release of Liens</u>. Except as otherwise expressly provided in this Plan or the Confirmation Order, all Liens against any of the Assets transferred to and vested in either the

Acis Trust or the Reorganized Debtor shall be deemed to be released, terminated and nullified without the necessity of any order by the Bankruptcy Court other than the Confirmation Order.

13.14. <u>Rates</u>. The Plan does not provide for the change of any rate that is within the jurisdiction of any governmental regulatory commission after the occurrence of the Effective Date.

13.15. <u>Compliance with Tax Requirements</u>. In connection with the Plan, the Acis Trustee and the Reorganized Debtor shall comply with all withholding and reporting requirements imposed by federal, state and local Taxing Authorities and all Distributions under the Plan shall be subject to such withholding and reporting requirements. Notwithstanding the above, each holder of an Allowed Claim or Interest that is to receive a Distribution under the Plan shall have the sole and exclusive responsibility for the satisfaction and payment of any tax obligations imposed by any governmental unit, including income, withholding and other tax obligations, on account of such Distribution under the Plan.

13.16. <u>Notice of Occurrence of the Effective Date</u>. Promptly after occurrence of the Effective Date, the Acis Trustee, as directed by the Bankruptcy Court, shall serve on all known parties-in-interest and holders of Claims and Interests, notice of the occurrence of the Effective Date.

13.17. <u>Notice of Entry of Confirmation Order</u>. Promptly after entry of the Confirmation Order, the Chapter 11 Trustee, as directed by the Bankruptcy Court in the Confirmation Order, shall serve on all known parties-in-interest and holders of Claims and Interests, notice of entry of the Confirmation Order.

[Remainder of page intentionally left blank.]

Dated: July 29, 2018.

Respectfully submitted,

ACIS CAPITAL MANAGEMENT, L.P.

By: /s/ *Robin Phelan*
    Robin Phelan
    Chapter 11 Trustee

ACIS CAPITAL MANAGMENET GP, LLC

By:/s/ *Robin Phelan*
    Robin Phelan
    Chapter 11 Trustee

APPROVED:

/s/ *Jeff P. Prostok*
Jeff P. Prostok – State Bar No. 16352500
J. Robert Forshey – State Bar No. 07264200
Suzanne K. Rosen – State Bar No. 00798518
Matthew G. Maben – State Bar No. 24037008
**FORSHEY & PROSTOK LLP**
777 Main St., Suite 1290
Ft. Worth, TX 76102
Telephone: (817) 877-8855
Facsimile: (817) 877-4151
jprostok@forsheyprostok.com
bforshey@forsheyprostok.com
srosen@forsheyprostok.com
mmaben@forsheyprostok.com

**COUNSEL FOR ROBIN PHELAN,
CHAPTER 11 TRUSTEE**

APPROVED:

/s/ *Rahkee V. Patel*
Rakhee V. Patel – State Bar No. 00797213
Phillip Lamberson – State Bar No. 00794134
Joe Wielebinski – State Bar No. 21432400
Annmarie Chiarello – State Bar No. 24097496
**WINSTEAD PC**
500 Winstead Building
2728 N. Harwood Street
Dallas, Texas 75201
Telephone: (214) 745-5400
Facsimile: (214) 745-5390
rpatel@winstead.com
plamberson@winstead.com
jwielebinski@winstead.com
achiarello@winstead.com

**SPECIAL COUNSEL FOR ROBIN PHELAN,
CHAPTER 11 TRUSTEE**

L:\JPROSTOK\ACIS Capital Management (Trustee Rep)\Plan and Disclosure Statement\First Amended Joint Plan 07.29.18.docx

# EXHIBIT A

## TO FIRST AMENDED JOINT PLAN FOR ACIS CAPITAL MANAGEMENT, LP AND ACIS CAPITAL MANAGEMENT GP, LLC

### [DRAFT ASSET TRANSFER AGREEMENT*]

*The form of Asset Transfer Agreement attached hereto is a draft and remains subject to review, modification and approval by Oaktree as the Transferee; however, a final version of the Asset Transfer Agreement shall be provided prior to the Confirmation Hearing.

## ASSET TRANSFER AGREEMENT

This Asset Transfer Agreement (this "Agreement") is made as of July [_], 2018 (the "Effective Date"), by and between Robin Phelan, as duly-appointed Chapter 11 Trustee ("Trustee") of **[Acis Capital Management, LP]** ("Acis LP"), and **[Acis Capital Management, GP, LLC]** ("Acis GP," together with Acis LP, the "Debtors"), and **[PLAN FUNDER]** ("Plan Funder").

## RECITALS

A.      On April 13, 2018, the Bankruptcy Court the United States Bankruptcy Court for the Northern District of Texas (the "Bankruptcy Court"), entered Orders for Relief against Debtors, commencing the bankruptcy proceedings of Acis LP and Acis GP, Case Nos. 18-30264-SGJ-7 and 18-30265-SGJ-7, respectively (the "Bankruptcy Case").

B.      On May 11, 2018, the Bankruptcy Court entered an order directing the United States Trustee to appoint a chapter 11 trustee to administer the Bankruptcy Case (the "Trustee Order"). In accordance with the Trustee Order, the United States Trustee appointed the Trustee to serve as the chapter 11 trustee of Acis LP on May 14, 2018 (the "Acis LP Appointment Date"). By order entered on May 17, 2018, the Trustee's appointment as Chapter 11 Trustee of Acis LP was confirmed and approved by the Bankruptcy Court. In accordance with the Trustee Order, the United States Trustee appointed the Trustee to serve as the chapter 11 trustee of Acis GP on May 29, 2018 (the "Acis GP Appointment Date"). By order entered on June 12, 2018, the Trustee's appointment as Chapter 11 Trustee of Acis GP was confirmed and approved by the Bankruptcy Court.

C.      **[**The transactions contemplated hereunder are subject to the authorization and approval of the Bankruptcy Court.**]**

D.      **[**Pursuant to the **[Confirmation Order]**, the Bankruptcy Court has approved the transaction contemplated herein.**]**

E.      Plan Funder desires to assume and acquire from Debtors, and Debtors desire to transfer and assign to Plan Funder, all right, title and interest of Debtors in, to and under the Assets (as defined below).

NOW, THEREFORE, for and in consideration of the mutual terms, provisions, covenants and agreements set forth herein, and for good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, Plan Funder and Debtors agree as follows:

## AGREEMENT

1.      **TRANSFER OF ASSETS**.

1.1      **Agreement to Transfer and Assign Assets**.  Subject to, and limited by, the representations, warranties and covenants set forth in this Agreement, Debtors agree to assign, transfer and convey to Plan Funder, and Plan Funder agrees to assume and acquire from Debtors at the Closing, free and clear of liens, claims, encumbrances, and interests of any party, without warranty, all of the following assets:

(a)    the portfolio management agreements set forth in <u>Exhibit A</u> attached hereto (the "<u>PMAs</u>"); and

(b)    those certain subordinated notes set forth in <u>Exhibit B</u> attached hereto, issued by the issuer set forth in each subordinated note (in each case, the "<u>Issuer</u>") and issued subject to that certain indenture agreement by and between Issuer and U.S. Bank National Association (the "<u>Indenture</u>") (such notes, the "<u>Subordinated Notes</u>" and together with the PMAs, the "<u>Assets</u>").

Plan Funder acknowledges that the Assets are being transferred **as is, where is**, without any representation or warranties and without any contingencies except for Bankruptcy Court approval.

## 2.    CONSIDERATION; CLOSING

**2.1    Consideration**.  In consideration of the transfer, conveyance and assignment of the Assets to Plan Funder, Plan Funder shall pay the amount of [_____] U.S. dollars [($_____)] (the "<u>Consideration</u>").

**2.2    Closing**.  Unless the Plan Funder and Debtors otherwise agree, the closing (the "<u>Closing</u>") of the transfer and assignment of the Assets and the other transactions contemplated hereby shall take place on the first business day after the order approving this Agreement becomes a Final Order (as defined below), with such Closing to occur at the offices of [_____], or at such other place and time as may be agreed upon by the parties hereto (the date on which the Closing occurs, the "<u>Closing Date</u>").  The parties agree to use all commercially reasonable efforts to ensure the satisfaction of the conditions set forth in Article 5 so as to enable the parties to effect the Closing.

**2.3    Expenses and Taxes**.  Each party will be responsible for paying its own fees, costs, and expenses in connection with negotiating and performing the due diligence and the transactions set forth in this Agreement.  All real or personal taxes (collectively, "<u>Taxes</u>") levied on or charged against the Assets in the year of the Closing Date shall be prorated between Debtors and Plan Funder as herein provided.  Debtors shall be responsible for all Taxes accrued up to the Closing Date and Plan Funder shall be responsible for all Taxes accrued after and including the Closing Date.

## 3.    REPRESENTATIONS AND WARRANTIES OF PLAN FUNDER.

Plan Funder hereby represents and warrants to Debtors that all the following statements are true, accurate and correct:

**3.1    Due Organization**.  Plan Funder is a **[limited _____]**, duly organized, validly existing, and in good standing under the laws of [_____].  Plan Funder has all necessary power and authority to enter into this Agreement and all other documents that Plan Funder is required to execute and deliver hereunder, and holds or will timely hold all permits, licenses, orders and approvals of all federal, state and local governmental or regulatory bodies necessary and required therefor.

**3.2** **Power and Authority; No Default**. Plan Funder has all requisite power and authority to enter into and deliver this Agreement and to perform its obligations hereunder, including closing the transfer, assignment and assumption of the Assets, on or before the deadlines set forth herein. The signing, delivery and performance by Plan Funder of this Agreement, and the consummation of all the transactions contemplated hereby, have been duly and validly authorized by Plan Funder and any governing body whose permission Plan Funder must obtain prior to entering into this Agreement or consummating the transactions contemplated hereby. Subject to Debtors's representations and warranties in Section 4 herein, this Agreement has been duly and validly executed and delivered by Plan Funder and constitutes its valid and binding obligation, enforceable against Plan Funder in accordance with its terms, subject only to the laws relating to bankruptcy, insolvency and relief of Debtors, and rules and laws governing specific performance, injunctions, relief and other equitable remedies.

**3.3** **Authorization for this Agreement**. To the best of Plan Funder's knowledge, no authorization, approval, consent of, or filing with any governmental body, department, bureau, agency, public board, authority or other third party is required for the consummation by Plan Funder of the transactions contemplated by this Agreement, which has not been obtained or made.

**3.4** **Financing**. Plan Funder has sufficient cash and/or a financing commitment available to make payment in full of the Consideration and to make payment of any other amounts payable hereunder, and has the full authority to consummate the transactions contemplated by this Agreement on the timeline proposed herein.

**3.5** **Rule 144A**.

(a) Plan Funder understands that the Subordinated Notes are subject to the terms of the Indenture and have not been and will not be registered under the Securities Act of 1933, as amended (the "Securities Act"), and, if in the future it decides to offer, resell, pledge or otherwise transfer the Subordinated Notes, such Subordinated Notes may be offered, resold, pledged or otherwise transferred only in accordance with the provisions of the Indenture and the legends on such Subordinated Notes, including the requirement for written certifications. In particular, Plan Funder understands that the Subordinated Notes may be transferred only (i) to a person that is either (A) a "qualified purchaser" (as defined in the Investment Company Act of 1940, as amended (the "Investment Company Act")), (B) a "Knowledgeable Employee", as defined in Rule 3c-5 promulgated under the Investment Company Act, of the Issuer, or (C) a corporation, partnership, limited liability company or other entity (other than a trust) each shareholder, partner, member or other equity owner of which either is a Qualified Purchaser or is a Knowledgeable Employee with respect to the Issuer and in the case of (A), (B) and (C) above that is either (1) a "qualified institutional buyer" as defined in Rule 144A under the Securities Act who purchases such Subordinated Notes in reliance on the exemption from Securities Act registration provided by Rule 144A thereunder or (2) an "accredited investor" as defined in Rule 501(a) under the Securities Act, or (ii) to a person that is not a "U.S. person" as defined in Regulation S under the Securities Act, and is acquiring the Subordinated Notes in an offshore transaction (as defined in Regulation S thereunder) in reliance on the exemption from registration provided by Regulation S thereunder. Plan Funder acknowledges that no representation is made as to the availability of any exemption under the Securities Act or any state securities laws for resale of the Subordinated Notes.

3

(b)     Plan Funder (i) is a "qualified purchaser" for purposes of Section 3(c)(7) of the Investment Company Act, or is a corporation, partnership, limited liability company or other entity (other than a trust) each shareholder, partner, member or other equity owner of which is a Qualified Purchaser; (ii) is a "qualified institutional buyer" as defined in Rule 144A under the Securities Act; (iii) is acquiring the Subordinated Notes as principal solely for its own account for investment and not with a view to the resale, distribution or other disposition thereof in violation of the Securities Act; (iii) is not a (A) partnership, (B) common trust fund, or (C) special trust, pension, profit sharing or other retirement trust fund or plan in which the partners, beneficiaries or participants may designate the particular investments to be made; (iv) agrees that it shall not hold any Subordinated Notes for the benefit of any other person, that it shall at all times be the sole beneficial owner thereof for purposes of the Investment Company Act and all other purposes and that it shall not sell participation interests in the Subordinated Notes or enter into any other arrangement pursuant to which any other person shall be entitled to a beneficial interest in the distributions on the Subordinated Notes; (v) it is acquiring its interest in the Subordinated Notes for its own account; and (vi) Plan Funder will hold and transfer at least the minimum denomination of the Subordinated Notes and provide notice of the relevant transfer restrictions to subsequent transferees.

(c)     Plan Funder acknowledges and agrees that it is aware that Debtors may rely on the exemption from the provisions of Section 5 of the Securities Act provided by Rule 144A promulgated thereunder.

## 4.     REPRESENTATIONS AND WARRANTIES OF DEBTORS

Debtors represents and warrants to Plan Funder that all of the following statements are true, accurate and correct:

**4.1     Power and Authority; Due Execution**.     Subject only to approval of this Agreement by the Bankruptcy Court, Debtors has full power and authority to enter into and perform the obligations under this Agreement without the consent, approval or authorization of, or obligation to notify, any governmental body, department, bureau, agency, public board, authority or person.  Subject to Bankruptcy Court approval, Debtors has or will have as of the Closing Date the full right, power, and authority to execute, deliver, and carry out the terms of this Agreement, and has obtained or will obtain prior to the Closing Date all documents and agreements necessary to give effect to the provisions of this Agreement and to consummate the transactions contemplated on the part of Debtors hereby.  Subject to Plan Funder's representations and warranties in Section 3 herein, this Agreement and all other agreements and documents executed in connection herewith by Debtors, upon entry of the Transfer Order (as defined herein), shall constitute valid and binding obligations of Debtors, enforceable in accordance with their respective terms through the Closing Date.

**4.2     "AS IS" TRANSACTION.  PLAN FUNDER HEREBY ACKNOWLEDGES AND AGREES THAT, EXCEPT AS OTHERWISE EXPRESSLY PROVIDED IN THIS AGREEMENT, DEBTORS MAKES NO REPRESENTATIONS OR WARRANTIES WHATSOEVER, EXPRESS OR IMPLIED, WITH RESPECT TO ANY MATTER RELATING TO DEBTORS'S BUSINESS OR TO THE ASSETS.  PLAN FUNDER FURTHER ACKNOWLEDGES THAT PLAN FUNDER HAS CONDUCTED AN**

**INDEPENDENT INSPECTION AND INVESTIGATION OF THE ASSETS, AS PLAN FUNDER DEEMED NECESSARY OR APPROPRIATE AND THAT IN PROCEEDING WITH ITS ACQUISITION OF THE ASSETS, PLAN FUNDER IS DOING SO BASED SOLELY UPON SUCH INDEPENDENT INSPECTIONS AND INVESTIGATIONS, BUT SUBJECT TO THE SATISFACTION OR WAIVER OF THE CLOSING CONDITIONS SPECIFIED HEREIN. ACCORDINGLY, IF THE CLOSING OCCURS, PLAN FUNDER WILL ACCEPT THE ASSETS AT THE CLOSING DATE "AS IS," "WHERE IS," AND "WITH ALL FAULTS," SUBJECT TO THE PROVISIONS OF THIS AGREEMENT AND THE TRANSFER ORDER PROVIDING, AMONG OTHER THINGS, THAT THE TRANSFER AND ASSIGNMENT OF THE ASSETS IS FREE AND CLEAR OF ALL LIENS, CLAIMS, ENCUMBRANCES, AND INTERESTS.**

4.3     **Rule 144A**.  While any of the Subordinated Notes remain "restricted securities" as defined in Rule 144 under the Securities Act, pursuant to the terms of the Indenture, the Issuer must make available, upon request, to the holder and a prospective purchaser designated by the holder the information specified in Rule 144A(d)(4) under the Securities Act, unless the Issuer is then subject to Section 13 or 15(d) of the Securities Exchange Act of 1934, as amended.

## 5.     CONDITIONS TO CLOSING

5.1     **Conditions to Plan Funder's Obligation to Close**.  The obligations of Plan Funder to effect the Closing hereunder shall be subject to the satisfaction and fulfillment of each of the following conditions, except as Plan Funder may expressly waive the same in writing:

(a)     Entry of Transfer.  The Bankruptcy Court shall have entered an order, in form and substance mutually acceptable to Plan Funder and Debtors, approving this Agreement and the consummation of the transactions contemplated hereby in their entirety (the "Transfer Order"), such Transfer Order shall have been entered on the docket of the Bankruptcy Court and such Transfer Order, unless waived in writing by Plan Funder and Debtors, shall have become a Final Order.  As used in this Agreement, the term "Final Order" shall mean any order of the Bankruptcy Court or other court of competent jurisdiction as to which there is no stay or other limitation on the terms or effectiveness.  The Transfer Order shall not be submitted to the Bankruptcy Court prior to approval as to the form and substance of the Transfer Order by the Plan Funder and Debtors.

(b)     Accuracy of Representations and Warranties on Closing Date.  The representations and warranties made by Debtors in Section 4 herein to the best of the Debtors's actual knowledge shall be true and correct in all material respects, on and as of the date hereof and on and as of the Closing Date with the same force and effect as though such representations and warranties were made on and as of the Closing Date.

(c)     Miscellaneous.  No order shall have been entered in the Bankruptcy Case providing for the rejection of any contract or the transfer of any asset that would be included in the Assets as of the date of this Agreement.  Debtors shall not have abandoned or otherwise relinquished any interest in any asset that would be included in the Assets as of the date of this Agreement, other than assets disposed of or abandoned in the ordinary course of business consistent with past practice.

(d)     Delivery of Closing Deliverables.  Debtors shall deliver to Plan Funder those items set forth in Section 6.1.

**5.2     Conditions to Debtors' Obligation to Close**.  The obligations of Debtors to effect the Closing hereunder shall be subject to the satisfaction and fulfillment of each of the following conditions, except as Debtors may expressly waive the same in writing:

(a)     Entry of Transfer Order.  The Bankruptcy Court shall have entered the Transfer Order and such Transfer Order shall have been entered on the docket of the Bankruptcy Court.

(b)     Accuracy of Representations and Warranties on Closing Date.  The representations and warranties made by Plan Funder in Section 3 herein shall be true and correct in all material respects, on and as of the date hereof and on and as of the Closing Date with the same force and effect as though such representations and warranties were made on and as of the Closing Date.

(c)     Compliance.  Plan Funder shall have complied in all material respects with, and shall have fully performed, in all material respects, the terms, conditions, covenants and obligations of this Agreement imposed thereon to be performed or complied with by Plan Funder at, or prior to, the Closing.

(d)     No Injunction; Absence of Certain Litigation.  No preliminary or permanent injunction issued by any court of competent jurisdiction restraining, prohibiting or staying the Transfer Order or the transaction contemplated hereby shall be in effect.  No court or any other governmental entity shall have enacted, issued, promulgated, enforced or entered any statute, rule, or regulation which prohibits the consummation of the Closing.

(e)     Delivery of Closing Deliverables.  Plan Funder shall deliver to Debtors those items set forth in Section 6.2.

## 6.     **CLOSING DELIVERABLES**

**6.1     Delivery by Debtors**.  At the Closing, Debtors shall deliver:

(a)     executed copy of the Assignment and Assumption Agreement set forth in Exhibit C; and

(b)     any further documents and instruments of transfer reasonably requested by Plan Funder for the purpose of transferring and conveying the Assets to Plan Funder.

**6.2     Delivery by Plan Funder**.  At the Closing, Plan Funder shall deliver:

(a)     executed copy of the Assignment and Assumption Agreement set forth in Exhibit C;

(b)     the Consideration:

(c)     an executed copy of the Chief Financial Officer Certificate in the form set forth in Exhibit D; and

(d)     any other documents reasonably requested by Debtors or necessary for the consummation of the transactions contemplated by this Agreement.

## 7.    **COVENANTS OF PLAN FUNDER AND DEBTORS**

**7.1    Transfer Motion, Order**.  Debtors shall file a motion or motions (and related notices and proposed orders) with the Bankruptcy Court seeking entry of the Transfer Order and any ancillary or related orders reasonably necessary or advisable to effect the provisions of this Agreement.  Debtors shall use commercially reasonable efforts to prosecute such motion or motions and to ensure that the Transfer Order is entered and approved, and to request that the Transfer Order provides that it shall become effective immediately.

**7.2    Cooperation, Due Diligence, Schedules**.  Between the date of this Agreement and the Closing, to the extent permitted by law, Debtors shall afford the authorized representatives and agents of Plan Funder (which shall be deemed to include its independent auditors and counsel) reasonable access to and the right to inspect the Assets and the books and records of Debtors relating to the Assets, and will furnish Plan Funder with such additional data and other information relating to the Assets as Plan Funder may from time to time reasonably request.  Plan Funder, at Plan Funder's expense, shall have the right to make a reasonable number of copies of such books, records, financial and operating data and other information of Debtors.  Notwithstanding the foregoing, Plan Funder's rights of access and inspection in this Section 6.2: (i) shall be subject to the terms and conditions of any Confidentiality Agreement by and between Debtors and Plan Funder (the "NDA"), with the same force and effect as if Plan Funder were a party thereto; (ii) shall not include any access to (A) any confidential information, or (B) any and all information and material received from any person other than Plan Funder or its agents or representatives in connection with the proposed sale of any of the Assets and any analyses prepared by or on behalf of Debtors of any bids for the Assets or any portion thereof, or any materials relating to the negotiations with any potential bidder; and (iii) shall be made to avoid any material disruption of Debtors' business.

## 8.    **MISCELLANEOUS**.

**8.1    Notice of Bankruptcy**.  Plan Funder hereby acknowledges that the Assets are being acquired in connection with a bankruptcy proceeding.  The Closing of this transaction is expressly conditioned upon receiving necessary approvals from the Bankruptcy Court, authorizing the transfer and assignment of the Assets to Plan Funder free and clear of all liens, claims and interests.

**8.2    Other Expenses**.  Except as otherwise provided in this Agreement, Debtors shall pay all of its own expenses in connection with the negotiation, execution, and implementation of the transactions contemplated by this Agreement and Plan Funder shall pay all of its own expenses in connection with the negotiation, execution, and implementation of the transactions contemplated by this Agreement.

**8.3    Documentation**.  Except as otherwise provided herein, all pleadings and orders, contemplated by this Agreement shall be in form and substance reasonably acceptable to Plan

Funder and its counsel, and all agreements ancillary to this Agreement shall be in form and substance reasonably acceptable to Plan Funder.

      **8.4**    **Notices**. Any notice required or permitted to be given under this Agreement shall be in writing and shall be personally delivered or sent by certified or registered United States mail, postage prepaid, or sent by nationally recognized overnight express courier and addressed as follows:

      (a)    If to Debtors:

[_____]
[_____]
[_____]
Fax: [_____]
E-mail: [_____]

with a copy to:

[_____]
Attn: [_____]
[_____]
[_____]
Fax: [_____]
E-mail: [_____]

      (b)    If to Plan Funder:

[_____]
[_____]
[_____]
Fax: [_____]
E-mail: [_____]

with a copy to:

[_____]
Attn: [_____]
[_____]
[_____]
Fax: [_____]
E-mail: [_____]

      **8.5**    **Entire Agreement**. This Agreement, including all exhibits and schedules hereto (which are incorporated herein by reference) and any agreements to be executed and delivered in connection herewith, together constitute the entire agreement and understanding between the parties and there are no agreements or commitments with respect to the transactions contemplated herein except as set forth in this Agreement. This Agreement supersedes any prior offer,

agreement or understanding between the parties with respect to the transactions contemplated hereby.

**8.6** **Amendment; Waiver**. Any term or provision of this Agreement may be amended only by a writing signed by Debtors and Plan Funder. The observance of any term or provision of this Agreement may be waived (either generally or in a particular instance and either retroactively or prospectively) only by a writing signed by the party to be bound by such waiver. No waiver by a party of any breach of this Agreement will be deemed to constitute a waiver of any other breach or any succeeding breach.

**8.7** **No Third Party Beneficiaries**. Nothing expressed or implied in this Agreement is intended, or shall be construed, to confer upon or to give any person, firm or corporation, other than the parties hereto, any rights or remedies under or by reason of this Agreement.

**8.8** **Execution in Counterparts**. For the convenience of the parties, this Agreement may be executed in one or more counterparts and in original or by facsimile, each of which shall be deemed an original and all of which together shall constitute one and the same instrument.

**8.9** **Benefit and Burden**. This Agreement shall be binding upon, shall inure to the benefit of, and be enforceable by and against, the parties hereto and their respective successors and permitted assigns.

**8.10** **Governing Law**. This Agreement shall be governed by and construed in accordance with the laws of the State of Texas (excluding application of any choice of law doctrines that would make applicable the law of any other state or jurisdiction) and, where appropriate, applicable federal law. The Bankruptcy Court shall have exclusive jurisdiction to enforce and interpret the terms of this Agreement and resolve any disputes and claims with respect thereto, until such time as the Bankruptcy Case is closed.

**8.11** **Severability**. If any provision of this Agreement is for any reason and to any extent deemed to be invalid or unenforceable, then such provision shall not be voided but rather shall be enforced to the maximum extent then permissible under then applicable law and so as to reasonably effect the intent of the parties hereto, and the remainder of this Agreement will remain in full force and effect.

**[Remainder of page intentionally left blank.]**

IN WITNESS WHEREOF, Plan Funder and Debtors executed and delivered this Agreement by their duly authorized representatives as of the Effective Date.

DEBTORS:                                    PLAN FUNDER:

Acis Capital Management, L.P.                _____

      By: Acis Capital Management GP,      By:  _____
      LLC
                                           Its:  _____
      Its General Partner

      _____

      By: Robin Phelan

      Its: Chapter 11 Trustee

## EXHIBIT A

## PMAS

| |
|---|
| that certain Portfolio Management Agreement by and between Acis Capital Management, L.P. and Acis CLO 2013-1 LTD, dated March 18, 2013 |
| that certain Portfolio Management Agreement by and between Acis Capital Management, L.P. and Acis CLO 2014-3, Ltd., dated February 25, 2014 |
| that certain Portfolio Management Agreement by and between Acis Capital Management, L.P. and Acis CLO 2014-4 LTD., dated June 5, 2014 |
| that certain Portfolio Management Agreement by and between Acis Capital Management, L.P. and Acis CLO 2014-5 LTD., dated November 18, 2014 |
| that certain Portfolio Management Agreement by and between Acis Capital Management, L.P. and Acis CLO 2015-6 LTD., dated April 16, 2015 |
| that certain Agreement for Outsourcing of Asset Management of [**] by and between Universal-Investment-Luxembourg S.A., and Acis Capital Management, L.P. |

**EXHIBIT B**

**SUBORDINATED NOTES**

## EXHIBIT C

## ASSIGNMENT AND ASSUMPTION AGREEMENT

## EXHIBIT D

## CHIEF FINANCIAL OFFICER CERTIFICATE

Chief Financial Officer Certificate


I, _____, do hereby certify that I am the duly elected, qualified, and acting Chief Financial Officer of _____, a _____ (the "Company"), and do hereby further certify as follows in connection with the transactions contemplated by that certain Asset Transfer Agreement, dated _____ by and among the Company, [**Acis Capital Management, LP**], and [**Acis Capital Management, GP, LLC**] (the "Transfer Agreement"), that:

1.      I am (a) responsible for the financial and accounting matters of the Company and its subsidiaries, including oversight of the financial and accounting functions and staff; and (b) knowledgeable about the internal accounting records and practices, systems, policies and procedures of the Company and its subsidiaries.

2.      The amount of securities owned and invested on a discretionary basis by the Company as of _____ is $_____.

I acknowledge and agree that the Debtors (as defined in the Transfer Agreement) are entitled to rely on this certificate in connection with the transactions described in the Transfer Agreement. This certificate may not be relied upon for any other purpose or by any other party.

Dated: _____


[_____]


By: _____
Name: _____
Title: _____

# EXHIBIT B

## TO FIRST AMENDED JOINT PLAN FOR ACIS CAPITAL MANAGEMENT, LP AND ACIS CAPITAL MANAGEMENT GP, LLC

### [LIQUIDATING TRUST AGREEMENT FOR PLAN A]

### [PLAN "A" ALTERNATIVE]

### ACIS TRUST AGREEMENT

This Acis Trust Agreement (the "**Acis Trust Agreement**") is made this __ day of August 2018, by and among Acis Capital Management, L.P. ("**Acis LP**"), Acis Capital Management GP, LLC ("**Acis GP**," and together with Acis LP, the "**Debtors**"), and _____ as trustee for the Acis Trust (the "**Acis Trustee**").

### RECITALS

**WHEREAS**, on January 30, 2018, Joshua N. Terry, as petitioning creditor, filed involuntary petitions under section 303 of Title 11 of the United States Code (the "**Bankruptcy Code**") commencing the involuntary bankruptcy cases of Acis LP and Acis GP (the "**Bankruptcy Cases**" or "**Cases**") in the United States Bankruptcy Court for the Northern District of Texas, Dallas Division (the "**Bankruptcy Court**"); and

**WHEREAS**, on April 13, 2018, the Bankruptcy Court entered the orders for relief in both Cases; and

**WHEREAS**, Diane Reed was appointed the interim Chapter 7 Trustee for these Cases; and

**WHEREAS**, on April 19, 2018, the Bankruptcy Court entered an order jointly administering these Cases and directing that all pleadings be filed in the lead case number 18-30264-SGJ-7; and

**WHEREAS**, on May 11, 2018, the Bankruptcy Court entered an order converting the Cases to proceedings under Chapter 11 of the Bankruptcy Code; and

**WHEREAS**, on May 11, 2018, the Bankruptcy Court also entered an order directing the appointment of a chapter 11 trustee in these Cases; and

**WHEREAS**, the United States Trustee appointed and the Bankruptcy Court approved the appointment of Robin Phelan as the Chapter 11 Trustee (the "**Trustee**") of Acis LP and Acis GP.

**WHEREAS**, on July 5, 2018, the Trustee filed the *Joint Plan for Acis Capital Management, L.P. and Acis Capital Management GP, LLC* (as the same may be further modified, amended, and/or supplemented from time to time, the "**Plan**");[1]

**WHEREAS**, the Plan contains three (3) alternative plans, known as "Plan A," "Plan B," and "Plan C;" and

---

[1] Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to them in the Plan.

**WHEREAS**, on _____, 2018, the Bankruptcy Court entered an order confirming the Plan, and, specifically the "Plan A" alternative (the "**Plan Confirmation Order**"); and

**WHEREAS**, the Plan Effective Date occurred on _____ (the "**Effective Date**"); and

**WHEREAS**, the Plan contemplates, on the Effective Date, (i) the creation of a trust (the "**Acis Trust**") and the creation of the beneficial interests in the Acis Trust of holders of Allowed Claims entitled to Distributions as described in the Plan (collectively, the "**Beneficiaries**" and each, individually, a "**Beneficiary**"), and (ii) the Acis Trust will be vested with the Net Cash Proceeds and the Remaining Assets held by the Estate as of the Effective Date, which shall specifically include without limitation: (a) all Estate Cash, including the Net Cash Proceeds, (b) all Estate Accounts Receivable, (c) all Estate Claims, (d) all Estate Defenses, (e) all rights under Estate Insurance, and (f) any Executory Contracts assumed by the Estate and not assigned to the Transferee (all such Assets vesting in the Acis Trust are collectively referred to as the "**Acis Trust Assets**"), to be liquidated and distributed to the Beneficiaries, as set forth in the Plan; and

**WHEREAS**, the Plan contemplates that, pursuant to Treasury Regulation Section 301.7701-4, the Acis Trust shall be created for the primary purpose of liquidating the Acis Trust Assets and for making Distributions in accordance with the Plan and this Acis Trust Agreement, with no objective to continue or engage in the conduct of a trade or business, except only in the event and to the extent necessary to, and consistent with, the liquidating purpose of the Acis Trust; and

**WHEREAS**, the Acis Trust is intended to qualify as a grantor trust for U.S. federal income tax purposes under the Internal Revenue Code of 1986, as amended (the "**IRC**"), with the Beneficiaries to be treated as if they had received a distribution from the Estate of an undivided interest in each of the Acis Trust Assets (to the extent of the value of their respective share in the applicable assets) and then contributed such interests to the Acis Trust, and the Beneficiaries will be treated as the grantors and owners thereof; and

**WHEREAS**, the Acis Trustee has agreed to serve as such upon the terms and subject to the conditions set forth in this Acis Trust Agreement.

**NOW, THEREFOR**, in accordance with the Plan, in consideration of the premises, the mutual agreements of the parties contained herein, and other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged and affirmed, the parties hereby agree as follows:

## ARTICLE I
## DECLARATION OF TRUST

1.1    <u>Creation and Purpose of the Acis Trust</u>.  The Debtors and the Acis Trustee hereby create the Acis Trust for the primary purpose of liquidating the Acis Trust Assets and making Distributions in accordance with the Plan and this Acis Trust Agreement, with no objective to continue or engage in the conduct of a trade or business, except only in the event and to the extent necessary to, and consistent with, the liquidating purpose of the Acis Trust.  The Acis

Trust will not be deemed a successor-in-interest of the Estate for any purpose other than as specifically set forth in the Plan and this Acis Trust Agreement.

1.2    Declaration of Trust. In order to declare the terms and conditions hereof, and in consideration of the confirmation of the Plan, the Debtors and the Acis Trustee have executed this Acis Trust Agreement and, effective on the Effective Date, hereby irrevocably transfer to the Acis Trust all of the right, title, and interests of the Debtors and the Estate in and to the Acis Trust Assets, to have and to hold unto the Acis Trust and its successors and assigns forever, under and subject to the terms of the Plan and the Plan Confirmation Order, for the benefit of the Beneficiaries (to the extent of their respective legal entitlements) and their successors and assigns as provided for in this Acis Trust Agreement and in the Plan and Plan Confirmation Order.

1.3    Vesting of Estate Assets. On the Effective Date, pursuant to the terms of the Plan and Sections 1123, 1141 and 1146(a) of the Bankruptcy Code, all Acis Trust Assets shall be vested in the Acis Trust, which also shall be authorized to obtain, liquidate, and collect all of the Acis Trust Assets not in its possession and pursue all of the Estate Claims that constitute Acis Trust Assets under the Plan; provided, however, that the Acis Trustee may abandon or otherwise not accept any Acis Trust Assets that the Acis Trustee believes, in good faith, to have no value to, or will be unduly burdensome to, the Acis Trust. Any Acis Trust Assets that the Acis Trustee so abandons or otherwise does not accept shall not be property of the Acis Trust. In addition, on the Effective Date, the Acis Trust shall (a) take possession of all books, records, and files of the Debtors and the Estate and (b) provide for the retention and storage of such books, records, and files until such time as the Acis Trust determines, in accordance with this Acis Trust Agreement, that retention of same is no longer necessary or beneficial. Subject to the provisions of the Plan, all Acis Trust Assets shall be delivered to the Acis Trust free and clear of all Liens, Claims, and Interests except as otherwise specifically provided in the Plan or in the Plan Confirmation Order.

1.4    Acceptance by Acis Trustee. The Acis Trustee hereby accepts the trust imposed under this Acis Trust Agreement and agrees to observe and perform that trust on and subject to the terms and conditions set forth in this Acis Trust Agreement, the Plan, and the Plan Confirmation Order. In connection with and in furtherance of the purposes of the Acis Trust, the Acis Trustee hereby accepts the transfer of the Acis Trust Assets.

1.5    Name of the Acis Trust. The Acis Trust established hereby shall be known as the "**Acis Trust**" (the "**Acis Trust**").

## ARTICLE II
## THE ACIS TRUSTEE

2.1    Appointment. In accordance with the Plan, _____, has been selected as the Acis Trustee for the Acis Trust. The Acis Trustee's appointment shall be effective as of the Effective Date and continue until the earlier of (a) the termination of the Acis Trust or (b) the Acis Trustee's resignation, death, or removal.

2.2    General Powers. The Acis Trustee shall be the exclusive trustee of the Acis Trust and the Acis Trust Assets for purposes of 31 U.S.C. § 3713(b) and 26 U.S.C. § 6012(b)(3). The

Acis Trustee shall have all duties, obligations, rights, and benefits assumed by, assigned to, or vested in the Acis Trust under the Plan, the Plan Confirmation Order, this Acis Trust Agreement, and any other agreement entered into pursuant to or in connection with the Plan. Except as otherwise provided in this Acis Trust Agreement, the Plan, or the Plan Confirmation Order, the Acis Trustee may control and exercise authority over the Acis Trust Assets, over the acquisition, management, and disposition thereof, and over the management and conduct of the business of the Acis Trust. No person dealing with the Acis Trust shall be obligated to inquire into the Acis Trustee's authority in connection with the acquisition, management, or disposition of Acis Trust Assets. Without limiting the foregoing, but subject to the Plan, the Plan Confirmation Order, and other provisions of this Acis Trust Agreement, the Acis Trustee shall be expressly authorized to, with respect to the Acis Trust and the Acis Trust Assets:

(a) Exercise all power and authority that may be or could have been exercised, commence all proceedings that may be or could have been commenced, and take all actions that may be or could have been taken with respect to the Acis Trust Assets by any officer, partner, agent, representative, or other party acting in the name of the Debtors or the Estate with like effect as if duly authorized, exercised, and taken by action of such officer, partner, agent, representative, or other party under Sections 704 and 1106 of the Bankruptcy Code as the Debtors' representative appointed for such purpose pursuant to Section 1123(b)(3) of the Bankruptcy Code.

(b) Open and maintain bank accounts on behalf of or in the name of the Acis Trust, take and exercise ownership and control over any existing debtor-in-possession bank accounts, calculate and make Distributions and take other actions consistent with the Plan and the implementation thereof, including the establishment, re-evaluation, adjustment, and maintenance of appropriate reserves, in the name of the Acis Trust.

(c) Receive, manage, invest, supervise, and protect the Acis Trust Assets, subject to the limitations provided herein.

(d) Hold legal title to any and all Acis Trust Assets.

(e) Subject to the applicable provisions of the Plan, collect and liquidate all Acis Trust Assets pursuant to the Plan.

(f) Review and, where appropriate, object to Claims and supervise and administer the resolution, settlement, and payment of all Claims and Distributions to the Beneficiaries in accordance with this Acis Trust Agreement, the Plan, and the Plan Confirmation Order.

(g) Subject to Section 3.2 of this Acis Trust Agreement and the applicable provisions of the Plan, investigate, prosecute, compromise, and settle all Estate Claims vested in the Acis Trust.

(h) (i) Seek a determination of tax liability under section 505 of the Bankruptcy Code, (ii) file any and all tax and information returns required with respect to the Debtors and the Acis Trust, (iii) make tax elections for and on behalf of the Debtors and the Acis Trust, and (iv) pay taxes or other obligations incurred by the Acis Trust.

(i)     Calculate and implement Distributions to applicable Beneficiaries as provided for, or contemplated by, the Plan, the Plan Confirmation Order, and this Acis Trust Agreement.

(j)     Withhold from the amount distributable to any person such amount as may be sufficient to pay any tax or other charge which the Acis Trustee has determined, in its sole discretion, may be required to be withheld therefrom under the income tax laws of the United States, any foreign country, or of any state, local, or political subdivision of either.

(k)     Enter into any agreement or execute any document required by or consistent with the Plan, the Plan Confirmation Order, or this Acis Trust Agreement and perform all obligations thereunder.

(l)     Purchase and carry any insurance policies and pay any insurance premiums and costs that the Acis Trustee deems reasonably necessary or advisable.

(m)     Retain and compensate, without further order of the Bankruptcy Court, the services of employees, professionals, and consultants to advise and assist in the administration, prosecution, and distribution of the Acis Trust Assets.

(n)     Implement, enforce, or discharge all of the terms, conditions, and all other provisions of, and all duties and obligations under, the Plan, the Confirmation Order, and this Acis Trust Agreement.

(o)     Resolve issues involving Claims and Interests in accordance with the Plan, including the power to file, prosecute, settle or otherwise resolve objections Claims, and to subordinate and recharacterize Claims by objection, motion, or adversary proceeding.

(p)     Undertake all administrative functions of the Bankruptcy Cases, including the payment of fees payable to the Office of the United States Trustee and the ultimate closing of the Bankruptcy Cases.

(q)     Appear and participate in any proceeding before the Bankruptcy Court or any other court with proper jurisdiction with respect to any matter regarding or relating to this Acis Trust Agreement, the Plan, the Confirmation Order, Acis Trust, or the Acis Trust Assets; and

(r)     Take all other actions consistent with the provisions of the Plan that the Acis Trustee deems reasonably necessary or desirable to administer the Plan.

2.3     <u>Limitations on the Acis Trustee</u>.  Notwithstanding anything under applicable law, this Acis Trust Agreement, or the Plan to the contrary, the Acis Trustee shall not do or undertake any of the following:

(a)     Take any action that would jeopardize treatment of the Acis Trust as a "liquidating trust" for federal income tax purposes.

(b)    Exercise any investment power other than the power to invest in demand and time deposits in banks or savings institutions, or other temporary liquid investments, such as short term certificates of deposit or Treasury bills or other investments that a "Acis trust" within the meaning of Treasury Regulation Section 301.7701-4(d) may be permitted to hold, pursuant to the Treasury Regulations or any Internal Revenue Service ("**IRS**") guidelines, whether set forth in IRS rulings, revenue procedures, other IRS pronouncements, or otherwise.

(c)    Receive or retain any operating assets of a going concern business, a partnership interest in a partnership that holds operating assets, or fifty percent (50%) or more of the stock of a corporation with operating assets, except as is absolutely necessary or required under the Plan and the Plan Confirmation Order; provided, however, that in no event shall the Acis Trustee receive or retain any such asset or interest that would jeopardize treatment of the Acis Trust as a "liquidating trust" for federal income tax purposes.

2.4    <u>Compensation of the Acis Trustee</u>.  The Acis Trustee shall be entitled to receive reimbursement of reasonable, actual and necessary costs, fees (including attorneys' fees) and expenses incurred by the Acis Trustee in connection with the performance of his duties hereunder, and compensation in accordance with the market rates generally charged by the Trustee for his services.  The Acis Trustee's current billing rate for the services to be rendered is $\_\_\_ per hour.

2.5    <u>Reimbursements</u>.  The Acis Trustee, any agents or consultants employed pursuant to this Acis Trust Agreement, and any professionals or representatives retained by the Acis Trust shall be reimbursed from the Acis Trust Assets for all reasonable out-of-pocket expenses incurred in the performance of their duties hereunder in addition to any compensation received.

2.6    <u>Acis Trust Operating Expenses</u>.  The Acis Trust Assets will be used to pay all liabilities, costs and expenses of the Acis Trust, including compensation then due and payable to the Acis Trustee, his agents, representatives, professionals and employees and all costs, expenses, and liabilities incurred by the Acis Trustee in connection with the performance of his duties.  The reasonable fees and expenses of the Acis Trustee and his counsel and agents will be paid out of the Acis Trust Assets, without need of Bankruptcy Court approval.

2.7    <u>Investments</u>.  The Acis Trust may invest Cash (including any earnings thereon or proceeds therefrom) as permitted by Section 345 of the Bankruptcy Code or in other prudent investments, <u>provided</u>, <u>however</u>, that such investments are permitted to be made by a Acis trust within the meaning of Treasury Regulation Section 301.7701-4(d), as reflected therein, or under applicable IRS guidelines, rulings, or other controlling authorities.

2.8    <u>Replacement of the Acis Trustee</u>.  The Acis Trustee shall be subject to removal only by the Bankruptcy Court upon application or motion by a Beneficiary of the Acis Trust, after notice and a hearing, and for cause shown, including (a) the willful and continued refusal by the Acis Trustee to perform its duties under the Plan and this Acis Trust Agreement, and (b) gross negligence, willful misconduct, fraud, embezzlement, or theft.  The Acis Trustee may resign at any time upon thirty (30) days' written notice delivered to the Bankruptcy Court, provided that such resignation shall become effective only upon the appointment of a permanent or interim successor Acis Trustee.  In the event of the resignation or removal of the Acis Trustee,

the successor Acis Trustee shall be appointed by the Bankruptcy Court, after notice and a hearing, upon request and based upon submissions from interested parties (including any Beneficiary). Upon its appointment, the successor Acis Trustee, without any further act, shall become fully vested with all of the rights, powers, duties, and obligations of its predecessor and all responsibilities of the predecessor Acis Trustee relating to the Acis Trust shall be terminated; provided, however, that the original Acis Trustee's right to indemnification shall survive termination and is subject to the provisions of Article IV hereof.

2.9     Acis Trust Continuance.  The death, resignation, or removal of the Acis Trustee shall not terminate the Acis Trust or revoke any existing agency created by the Acis Trustee pursuant to this Acis Trust Agreement or invalidate any action theretofore taken by the Acis Trustee, and the successor Acis Trustee agrees that the provisions of this Acis Trust Agreement shall be binding upon and inure to the benefit of the successor Acis Trustee and all its successors or assigns.

## ARTICLE III
## PROSECUTION AND RESOLUTION OF ESTATE CLAIMS

3.1     The Acis Trust's Exclusive Authority to Pursue, Settle, or Abandon Estate Claims.  In accordance with Sections 2.39 and 6.03 of the Plan, from and after the Effective Date, prosecution and settlement of all Estate Claims transferred to the Acis Trust shall be the sole responsibility of the Acis Trust.  From and after the Effective Date, the Acis Trust shall have exclusive rights, powers, and interests of the Estate to pursue, settle, or abandon such Estate Claims as the sole representative of the Estate pursuant to section 1123(b)(3) of the Bankruptcy Code.  All Estate Claims that are not expressly released or waived under the Plan are reserved and preserved and vest in the Acis Trust in accordance with the Plan.  No Person may rely on the absence of a specific reference in the Plan to a cause of action against it as any indication that the Debtors or Acis Trustee will not pursue any and all available Estate Claims against such Person. The Acis Trustee expressly reserves all Estate Claims, except for any Estate Claims against any Person that are expressly released or waived under the Plan, and, therefore, no preclusion doctrine, including the doctrines of res judicata, collateral estoppel, issue preclusion, claim preclusion, estoppel (judicial, equitable, or otherwise), or laches, shall apply to such Estate Claims upon, after, or as a consequence of confirmation or consummation of the Plan.

3.2     Settlement of Estate Claims.  The Acis Trustee, and in accordance with the provisions of the Plan, shall have standing, authority, power, and right to assert, prosecute, and/or settle the Estate Claims, including making a claim under the Estate Insurance, based upon its powers as a bankruptcy-appointed representative of the Debtors' Estate with the same or similar abilities possessed by insolvency trustees, receivers, examiners, conservators, liquidators, rehabilitators, or similar officials.  Without limiting the generality of any of the foregoing, and to avoid any doubt, the Acis Trustee shall have standing of an examiner, trustee, receive, liquidator or rehabilitator of the Debtors and shall have exclusive standing and authority to prosecute, settle or compromise any Claims made under any Estate Insurance.

3.3     Preservation of Right to Conduct Investigations.  Any and all rights to conduct investigations pursuant to Bankruptcy Rule 2004 held by the Debtors prior to the Effective Date shall vest with the Acis Trust and shall continue until dissolution of the Acis Trust.

3.4 <u>Privilege</u>. Solely with respect to carrying out the Acis Trust's functions, the attorney-client privilege, work product doctrine or other privileges or immunities inuring to the benefit of the Debtors or attaching to documents or communications of the Debtors shall be transferred to the Acis Trust. The Acis Trustee is authorized to assert or waive any such privilege or doctrine, as necessary or appropriate for the administration of the Acis Trust.

**ARTICLE IV**
**LIABILITY OF ACIS TRUSTEE**

4.1 <u>Standard of Care; Exculpation</u>. Neither the Acis Trustee nor any affiliate, employee, employer, professional, agent, or representative of the Acis Trustee shall be liable for losses, claims, damages, liabilities, or expenses in connection with the affairs or property of the Acis Trust to any Beneficiary of the Acis Trust, or any other person, for the acts or omissions of the Acis Trustee; provided, however, that the foregoing limitation shall not apply as to any particular person or entity as to any losses, claims, damages, liabilities, or expenses suffered or incurred by any Beneficiary that are found by a final judgment by a court of competent jurisdiction (not subject to further appeal) to have resulted primarily and directly from the fraud, gross negligence, or willful misconduct of such person or entity. Every act done, power exercised, or obligation assumed by the Acis Trust, the Acis Trustee, or any affiliate, employee, employer, professional, agent, or representative of the Acis Trustee pursuant to the provisions of this Acis Trust Agreement or the Plan shall be held to be done, exercised, or assumed, as the case may be, by the Acis Trust, the Acis Trustee, or any affiliate, employee, employer, professional, agent, or representative of the Acis Trustee acting for and on behalf of the Acis Trust and not otherwise; provided however, that none of the foregoing entities or persons are deemed to be responsible for any other such entities' or persons' actions or inactions outside of the scope of the authority provided by the Acis Trust. Except as provided in the proviso of the first sentence of this Section 4.1 with respect to any Beneficiary, every person, firm, corporation, or other entity contracting or otherwise dealing with or having any relationship with the Acis Trust, the Acis Trustee, or any affiliate, employee, employer, professional, agent, or representative of the Acis Trustee shall have recourse only to the Acis Trust Assets for payment of any liabilities or other obligations arising in connection with such contracts, dealings, or relationships and the Acis Trust, the Acis Trustee, any director, officer, affiliate, employee, employer, professional, agent, or representative of the Acis Trustee shall not be individually liable therefor.

4.2 <u>Indemnification</u>.

(a) Except as otherwise set forth in the Plan or Plan Confirmation Order, the Acis Trustee, and any affiliate, employee, employer, professional, agent, or representative of the Acis Trustee (each, an "**Indemnified Party**" and collectively, the "**Indemnified Parties**"), shall be defended, held harmless, and indemnified from time to time by the Acis Trust against any and all losses, liabilities, expenses (including attorneys' fees and disbursements), damages, taxes, suits, or claims that the Acis Trustee or his or her professionals may incur or sustain by reason of being or having been a Acis Trustee or professionals of the Acis Trustee for performing functions incidental to such service; provided, however, such indemnity shall not apply to any such loss, liability, expense, damages, tax, suit, or claim to the extent it is found in a final judgment by a court of competent jurisdiction (not subject to further appeal) to have resulted primarily and directly from the bad faith, willful misconduct, reckless disregard of duty, criminal

8

conduct, gross negligence, fraud, or self-dealing of such person or entity. Satisfaction of any obligation of the Acis Trust arising pursuant to the terms of this Section shall be payable only from the Acis Trust Assets, may be advanced prior to the conclusion of such matter, and such right to payment shall be prior and superior to any other rights to receive a Distribution of the Acis Trust Assets.

(b)     The Acis Trust shall promptly pay expenses reasonably incurred by any Indemnified Party in defending, participating in, or settling any action, proceeding, or investigation in which such Indemnified Party is a party or is threatened to be made a party or otherwise is participating in connection with the Acis Trust Agreement or the duties, acts, or omissions of the Acis Trustee, upon submission of invoices therefor, whether in advance of the final disposition of such action, proceeding, or investigation or otherwise. Each Indemnified Party hereby undertakes, and the Acis Trust hereby accepts its undertaking, to repay any and all such amounts so advanced if it shall ultimately be determined that such Indemnified Party is not entitled to be indemnified therefor under this Acis Trust Agreement.

4.3     No Liability for Acts of Successor/Predecessor Acis Trustees.  Upon the appointment of a successor Acis Trustee and the delivery of the Acis Trust Assets to the successor Acis Trustee, the predecessor Acis Trustee and any director, officer, affiliate, employee, employer, professional, agent, or representative of the predecessor Acis Trustee shall have no further liability or responsibility with respect thereto. A successor Acis Trustee shall have no duty to examine or inquire into the acts or omissions of its immediate or remote predecessor and no successor Acis Trustee shall be in any way liable for the acts or omissions of any predecessor Acis Trustee unless a successor Acis Trustee expressly assumes such responsibility. A predecessor Acis Trustee shall have no liability for the acts or omissions of any immediate or subsequent successor Acis Trustee for any events or occurrences subsequent to the cessation of its role as Acis Trustee.

4.4     Reliance by Acis Trustee on Documents or Advice of Counsel.  Except as otherwise provided in this Acis Trust Agreement, the Acis Trustee and any affiliate, employee, employer, professional, agent, or representative of the Acis Trustee may rely, and shall be protected from liability for acting, upon any resolution, certificate, statement, instrument, opinion, report, notice, request, consent, order, or other paper or document reasonably believed by the Acis Trustee to be genuine and to have been presented by an authorized party. The Acis Trustee shall not be liable for any action taken or suffered by the Acis Trustee in reasonable reliance upon the advice of counsel or other professionals engaged by the Acis Trustee in accordance with this Acis Trust Agreement.

4.5     Insurance.  All of the Debtors' rights and their Estate's rights under any Insurance Policy to which the Debtors and/or the Debtors' Estate may be beneficiaries shall vest with the Acis Trust for the benefit of the Beneficiaries of the Acis Trust and all of the beneficiaries of such policies. The Acis Trust may purchase, using Acis Trust Assets, and carry all insurance policies and pay all insurance premiums and costs the Acis Trustee deems reasonably necessary or advisable, including, without limitation, purchasing any errors and omissions insurance with regard to any liabilities, losses, damages, claims, costs, and expenses it may incur, including but not limited to attorneys' fees, arising out of or due to its actions or omissions, or consequences of

such actions or omissions, other than as a result of its fraud or willful misconduct, with respect to the implementation and administration of the Plan or this Acis Trust Agreement.

## ARTICLE V
## GENERAL PROVISIONS CONCERNING
## ADMINISTRATION OF THE ACIS TRUST

5.1     Register of Beneficiaries.  The Acis Trust shall maintain at all times a register of the names, Distribution addresses, amounts of Allowed Claims and the ratable interests in the Acis Trust of the Beneficiaries (the "**Register**").  The Acis Trustee shall cause the Register to be kept at his office or at such other place or places as may be designated by the Acis Trustee from time to time.

5.2     Books and Records.  On the Effective Date, the Acis Trust shall: (a) take possession of all books, records, and files of the Debtors and the Estate; and (b) provide for the retention and storage of such books, records, and files until such time as the Acis Trust determines, in accordance with the Acis Trust Agreement, that retention of same is no longer necessary or beneficial.  The Acis Trust shall maintain in respect of the Acis Trust and the Beneficiaries books and records relating to the Acis Trust Assets and income realized therefrom and the payment of expenses of and claims against or assumed by the Acis Trust in such detail and for such period of time as may be necessary to enable it to make full and proper reports in respect thereof.

5.3     Quarterly Reporting Obligations to Bankruptcy Court.  In no event later than thirty (30) Business Days after the end of the first full quarter following the Effective Date and on a quarterly basis thereafter until all Cash in the Acis Trust has been released or paid out in accordance with the Plan and this Acis Trust Agreement, the Acis Trustee shall file with the Bankruptcy Court a report setting forth the amounts, recipients, and dates of all Distributions made by the Acis Trustee under the Plan and hereunder through each applicable reporting period.

5.4     Filing of Monthly and Quarterly Reports and Payment of Statutory Fees.  The filing of the final monthly operating report (for the month in which the Effective Date occurs) and all subsequent quarterly Acis Trust reports shall be the responsibility of the Acis Trustee. Statutory Fees shall be paid as such fees may thereafter accrue and be due and payable in accordance with the applicable schedule for payment of such fees.  Any Statutory Fees relating to the period of time prior to the Effective Date shall be paid by the Debtors or Acis Trustee, as applicable.  Statutory Fees relating to any period of time after the Effective Date shall be paid by the Acis Trustee from funds in the Acis Trust Assets.  Such obligation to pay Statutory Fees shall continue until such time as the Bankruptcy Case is closed, dismissed, or converted.

5.5     Filing of Tax Returns.  After the Effective Date, the Acis Trust shall be responsible for filing all federal, state, local, and foreign tax returns for the Debtors and the Acis Trust.

## ARTICLE VI
## BENEFICIAL INTERESTS AND BENEFICIARIES

6.1 <u>Interest Beneficial Only</u>. The ownership of a beneficial interest in the Acis Trust shall not entitle any Beneficiary to any title in or to the Acis Trust Assets or to any right to call for a partition or division of the Acis Trust Assets or to require an accounting.

6.2 <u>Evidence of Beneficial Interest</u>. Ownership of a beneficial interest in the Acis Trust shall not be evidenced by any certificate, security, or receipt or in any other form or manner whatsoever, except as maintained on the books and records of the Acis Trust by the Acis Trustee.

6.3 <u>Transfers of Beneficial Interests</u>. Beneficial interests in the Acis Trust shall be nontransferable except upon death of the interest holder or by operation of law. The Acis Trust shall not have any obligation to recognize any transfer of Claims or Interests occurring after the Effective Date. Only those holders of Claims and Interests of record stated on the transfer ledgers as of the close of business on the Effective Date, to the extent applicable, shall be entitled to be recognized for all purposes hereunder.

6.4 <u>Absolute Owners</u>. The Acis Trustee may deem and treat the Beneficiary reflected as the owner of a beneficial interest on the Register as the absolute owner thereof for the purposes of receiving Distributions and payments on account thereof for federal and state income tax purposes and for all other purposes whatsoever.

6.5 <u>Change of Address</u>. A Beneficiary may, after the Effective Date, select an alternative Distribution address by notifying the Acis Trustee in writing of such alternative Distribution address. Absent such notice, the Acis Trustee shall not recognize any such change of Distribution address. Such notification shall be effective only upon receipt by the Acis Trustee.

6.6 <u>Effect of Death, Dissolution, Incapacity, or Bankruptcy of Beneficiary</u>. The death, dissolution, incapacity, or bankruptcy of a Beneficiary during the term of the Acis Trust shall not operate to terminate the Acis Trust during the term of the Acis Trust nor shall it entitle the representative or creditors of the deceased, incapacitated, or bankrupt Beneficiary to an accounting or to take any action in any court or elsewhere for the Distribution of the Acis Trust Assets or for a partition thereof nor shall it otherwise affect the rights and obligations of the Beneficiary under this Acis Trust Agreement or in the Acis Trust.

6.7 <u>Standing</u>. Except as expressly provided in this Acis Trust Agreement, the Plan, or the Plan Confirmation Order, a Beneficiary does not have standing to direct the Acis Trustee to do or not to do any act or to institute any action or proceeding at law or in equity against any party (other than against the Acis Trustee to the extent provided in this Acis Trust Agreement) upon or with respect to the Acis Trust Assets.

**ARTICLE VII**
**PROCEDURES FOR RESOLVING AND TREATING DISPUTED CLAIMS**

7.1 <u>Incorporation of Plan Provisions</u>. As of the Effective Date, the Acis Trust shall assume responsibility for all Claims matters established by the Plan and shall be vested with any and all rights and defenses the Debtors had with respect to any Claim or Interest immediately prior to the Effective Date.

7.2 <u>Objections to Claims</u>. The Acis Trustee shall be entitled to file objections to all Claims that are otherwise not deemed Allowed Claims under the Plan and Plan Confirmation Order. Any objections to Claims shall be served and filed on or before the later of (i) ninety (90) days after the Effective Date or (ii) such later date as may be fixed by the Bankruptcy Court after reasonable notice and opportunity to object. If an objection has not been filed to a Claim or the Schedules have not been amended with respect to a Claim that (a) was scheduled by the Debtors but (b) was not scheduled as contingent, unliquidated, and/or disputed, by the Claims Objection Deadline, as the same may be extended by order of the Bankruptcy Court, the Claim to which the Proof of Claim or scheduled Claim relates will be treated as an Allowed Claim if such Claim has not been Allowed earlier by a Final Order of the Bankruptcy Court.

7.3 <u>Estimation of Claims</u>. The Acis Trustee may (but is not required to) at any time request that the Bankruptcy Court estimate any Contingent Claim or Disputed Claim pursuant to section 502(c) of the Bankruptcy Code for any reason, regardless of whether an objection was previously filed with the Bankruptcy Court with respect to such Claim, or whether the Bankruptcy Court has ruled on any such objection, and the Bankruptcy Court will retain jurisdiction to estimate any Claim at any time during litigation concerning any objection to any Claim, including, without limitation, during the pendency of any appeal relating to such objection. In the event that the Bankruptcy Court estimates any Contingent Claim or Disputed Claim, the amount so estimated shall constitute either the Allowed amount of such Claim or a maximum limitation on such Claim, as determined by the Bankruptcy Court. If the estimated amount constitutes a maximum limitation on the amount of such Claim, the Acis Trustee may pursue supplementary proceedings to object to the allowance of such Claim; provided, however, the Acis Trustee may elect not to pursue such supplementary proceedings, instead electing to treat such maximum amount as the Allowed amount of such Claim.

**ARTICLE VIII**
**DISTRIBUTIONS**

8.1 <u>Distributions to Beneficiaries from Acis Trust Assets</u>. All payments to be made by the Acis Trust to any Beneficiary shall be made only in accordance with the Plan, the Plan Confirmation Order, and this Acis Trust Agreement and from the Acis Trust Assets (or from the income and proceeds realized from the Acis Trust Assets), and only to the extent that the Acis Trust has sufficient Acis Trust Assets (or income and proceeds realized from the Acis Trust Assets) to make such payments in accordance with and to the extent provided for in the Plan, the Plan Confirmation Order, and this Acis Trust Agreement. Any Distributions to be made by or on behalf of the Debtors or the Acis Trustee, as applicable, pursuant to the Plan shall be made by checks drawn on accounts maintained by the Acis Trustee or an electronic wire transfer, at the option of the Acis Trustee.

8.2     <u>Timing and Amount of Distributions.</u>  No Distribution shall be made on account of any Claim until such Claim is Allowed, except as otherwise set forth in this Plan or otherwise ordered by the Bankruptcy Court.  No Distribution shall be made on account of any Contested Claim until such Claim is Allowed.  Except as expressly set forth in the Plan or in the Confirmation Order, the Acis Trustee shall, in the exercise of his or her good faith business judgment, determine the timing and amount of all Distributions which are required to be made under the Plan, consistent with the goal of making such Distributions as expeditiously as reasonably possible.  The Acis Trustee may, but shall not be required to, seek approval of, or any other appropriate relief from, the Bankruptcy Court with respect to any of such Distributions. Any Unclaimed Property may be paid into the registry of the Bankruptcy Court or otherwise distributed in accordance with the orders of the Bankruptcy Court.

8.3     <u>Means of Cash Payment.</u>  Cash payments pursuant to this Plan shall be made by check drawn on, or by wire transfer from, a domestic bank, or by other means agreed to by the payor and payee.

8.4     <u>Record Date for Distributions.</u>  As of the close of business on the Effective Date (the "Distribution Record Date"), the register for Class 1, 3, 4, 5A and 5 B Claims will be closed, and there shall be no further changes in the holder of record of any Claim.  Although there is no prohibition against the transfer of any Claim by any Creditor, the Acis Trustee shall have no obligation to recognize any transfer of any Class 1, 3, 4, 5A and 5 B Claims occurring after the Distribution Record Date, and the Acis Trustee shall instead be authorized and entitled to recognize and deal for all purposes under this Plan, including for the purpose of making all Distributions, with only those holders of Claims so reflected as of the Distribution Record Date. However, the Acis Trustee may, in the exercise of its good faith business judgment, agree to recognize transfers of Claims after the Distribution Record Date, but shall have no obligation to do so.

8.5     <u>Delivery of Distributions.</u>  All Distributions, deliveries and payments to the holders of any Allowed Class 1, 3, 4, 5A or 5B Claims or Class 6 Interests shall be made to the addresses set forth on the respective proofs of Claim filed in this Bankruptcy Case by such Claimants or, if the Distribution is to be made based on a Claim reflected as Allowed in the Schedules, at the address reflected in the Schedules.  Any such Distribution, delivery or payment shall be deemed as made for all purposes relating to this Plan when deposited in the United States Mail, postage prepaid, addressed as required in the preceding sentence.  If any Distribution is returned as undeliverable, no further Distribution shall be made on account of such Allowed Claim unless and until the Acis Trustee is notified of such holder's then current address, at which time all missed Distributions shall be made to the holder of such Allowed Claim.  However, all notices to the Acis Trustee reflecting new or updated addresses for undeliverable Distributions shall be made on or before one hundred twenty (120) days after the date of the attempted Distribution or such longer period as the Acis Trustee may fix in the exercise of its sole discretion.  After such date, all Unclaimed Property shall revert to the Acis Trustee and the Claim of any holder with respect to such property shall be discharged and forever barred.

8.6     <u>W-9 Forms.</u>  Each holder of an Allowed Claim must provide a W-9 form or other such necessary information to comply with any withholding requirements of any governmental

unit (collectively the "**W-9 Form**") to the Acis Trustee prior to receiving any Distribution from the Acis Trust. In the event a holder of an Allowed Claim does not provide a W-9 Form to the Acis Trustee within thirty (30) days of the Effective Date, the Acis Trustee shall, at an appropriate time, issue a written request to each holder of an Allowed Claim that has not previously provided a W-9 Form to the Acis Trustee. The request shall be in writing and shall be delivered to the last address known to the Debtors or Acis Trustee, as appropriate. The request shall conspicuously advise and disclose that failure to provide a W-9 Form to the Acis Trustee within thirty (30) shall result in a waiver of any right or rights to a Distribution from the Acis Trust. In the event any holder of an Allowed Claim fails to provide the Acis Trustee with a W-9 Form within thirty (30) days after the date of written request described herein, then the holder of such Allowed Claim shall be deemed to have waived the right to receive any distribution whatsoever from the Acis Trust.

8.7 <u>Time Bar to Cash Payments.</u> Checks issued in respect of Allowed Claims shall be null and void if not cashed within ninety (90) days of the date of issuance thereof. Requests for reissuance of any check shall be made directly to the Acis Trustee by the holder of the Allowed Claim with respect to which such check originally was issued. Any Claim in respect of such a voided check shall be made on or before one hundred twenty (120) days after the date of issuance of such check or such longer period as the Acis Trustee may fix. After such date, all Claims in respect of void checks shall be discharged and forever barred.

8.8 <u>Cure Period.</u> Except as otherwise set forth herein, the failure by the Acis Trustee to timely perform any term, provision or covenant contained in this Plan, or to make any payment or Distribution required by this Plan to any Creditor, or the failure to make any payment or perform any covenant on any note, instrument or document issued pursuant to this Plan, shall not constitute an event of default unless and until the Acis Trustee has been given thirty (30) days written notice of such alleged default in the manner provided in this Plan, and provided an opportunity to cure such alleged default. Until the expiration of such thirty (30) day cure period, the Acis Trustee shall not be in default, and performance during such thirty (30) day cure period shall be deemed as timely for all purposes. Such written notice and passage of the thirty (30) day cure period shall constitute conditions precedent to declaring or claiming any default under this Plan or bringing any action or legal proceeding by any Person to enforce any right granted under this Plan.

8.9 <u>Distributions after Substantial Consummation.</u> All Distributions of any kind made to any Creditor after Substantial Consummation and any and all other actions taken under this Plan after Substantial Consummation shall not be subject to relief, reversal or modification by any court unless the implementation of the Confirmation Order is stayed by an order granted under Bankruptcy Rule 8005.

## ARTICLE IX
## TAXES

9.1 <u>Income Tax Status</u>. Consistent with Revenue Procedure 94-45, 1994-2 C. B. 684, the Acis Trust shall be treated as a liquidating trust pursuant to Treasury Regulation Section 301.7701-4(d) and as a grantor trust pursuant to IRC Sections 671-677. Accordingly, for federal income tax purposes, it is intended that the Beneficiaries be treated as if they had

14

received a distribution from the Estate of an undivided interest in each of the Acis Trust Assets (to the extent of the value of their respective share in the applicable assets) and then contributed such interests to the Acis Trust, and the Beneficiaries will be treated as the grantors and owners thereof.

9.2     Tax Returns.  The Acis Trustee shall file tax returns for the Acis Trust as a grantor trust pursuant to Treasury Regulation Section 1.671-4(a) and in accordance with the Plan.  The Acis Trust also shall annually (for tax years in which Distributions from the Acis Trust are made) send to each holder of a beneficial interest a separate statement setting forth the holder's share of items of income, gain, loss, deduction, or credit and all such holders shall report such items on their federal income tax returns; provided, however, that no such statement need be sent to any Class that is not expected to receive any Distribution from the Acis Trust.  The Acis Trust's taxable income, gain, loss, deduction, or credit will be allocated to the Beneficiaries in accordance with their relative beneficial interests in the Acis Trust.

9.3     Withholding of Taxes and Reporting Related to Acis Trust Operations.  The Acis Trust shall be responsible for filing all federal, state, and local tax returns for the Debtors and the Acis Trust.  The Acis Trust shall comply with all withholding and reporting requirements imposed by any federal, state, or local taxing authority, and all distributions made by the Acis Trust shall be subject to any such withholding and reporting requirements.  The Acis Trustee shall be authorized to take any and all actions that may be necessary or appropriate to comply with such withholding and reporting requirements including, without limitation, requiring that, as a condition to the receipt of a Distribution, the holder of an Allowed Claim complete the appropriate IRS Form W-8 or IRS Form W-9, as applicable to each holder. Notwithstanding any other provision of the Plan, (a) each holder of an Allowed Claim that is to receive a Distribution from the Acis Trust shall have the sole and exclusive responsibility for the satisfaction and payment of any tax obligations imposed on such holder by any Governmental Unit, including income and other tax obligations, on account of such Distribution, and (b) no Distribution shall be made to or on behalf of such holder pursuant to the Plan unless and until such holder has made arrangements satisfactory to the Acis Trustee to allow it to comply with its tax withholding and reporting requirements.  Any property to be distributed by the Acis Trust shall, pending the implementation of such arrangements, be treated as an undeliverable Distribution to be held by the Acis Trustee, as the case may be, until such time as the Acis Trustee is satisfied with the holder's arrangements for any withholding tax obligations.

9.4     Valuations.  As soon as possible after the Effective Date, the Acis Trust shall make a good faith valuation of the Acis Trust Assets, and such valuation shall be used consistently by all parties for all federal income tax purposes.  The Acis Trust also shall file (or cause to be filed) any other statements, returns, or disclosures relating to the Acis Trust that are required by any Governmental Unit for taxing purposes.  The Acis Trust may request an expedited determination of taxes of the Debtors or of the Acis Trust under Section 505(b) of the Bankruptcy Code for all tax returns filed for, or on behalf of, the Debtors and the Acis Trust for all taxable periods through the dissolution of the Acis Trust.

9.5     Payment of Taxes.  The Acis Trust shall be responsible for payments of any taxes imposed on the Acis Trust or the Acis Trust Assets.

## ARTICLE X
## TERMINATION OF ACIS TRUST

10.1   <u>Termination of Acis Trust</u>.  The Acis Trustee shall be discharged and the Acis Trust shall be terminated, at such time as (i) all Disputed Claims have been resolved, (ii) all of the Acis Trust Assets have been liquidated, (iii) all duties and obligations of the Acis Trustee under the Acis Trust Agreement have been fulfilled, (iv) all Distributions required to be made by the Acis Trust under the Plan and this Acis Trust Agreement have been made, and (v) the Bankruptcy Case has been closed; provided, however, that in no event shall the Acis Trust be dissolved later than five (5) years from the Effective Date unless the Bankruptcy Court, upon motion within the six-month period prior to the fifth anniversary (or the end of any extension period approved by the Bankruptcy Court), determines that a fixed period extension (not to exceed one (1) year, together with any prior extensions, without a favorable letter ruling from the Internal Revenue Service that any further extension would not adversely affect the status of the Acis Trust as a Acis trust for federal income tax purposes) is necessary to facilitate or complete the recovery and liquidation of the Acis Trust Assets.

10.2   <u>Events Upon End of Term Termination</u>.  At the conclusion of the term of the Acis Trust, the Acis Trust shall distribute the remaining Acis Trust Assets, if any, to the Beneficiaries, in accordance with the Plan, the Plan Confirmation Order, and this Acis Trust Agreement, provided, however, that the Acis Trust shall not be obligated to make Distributions to a Class of Claims if the amount of the available cash is *de minimis* and is not sufficient to warrant the incurrence of costs in making the Distribution.

10.3   <u>Winding Up and Discharge of the Acis Trustee</u>.  For the purposes of winding up the affairs of the Acis Trust at the conclusion of its term, the Acis Trustee shall continue to act as Acis Trustee until its duties under this Acis Trust Agreement have been fully discharged or its role as Acis Trustee is otherwise terminated under this Acis Trust Agreement and the Plan. Upon a motion by the Acis Trustee, the Bankruptcy Court may enter an order relieving the Acis Trustee, its agents, and employees of any further duties and discharging the Acis Trustee.

## ARTICLE XI
## MISCELLANEOUS PROVISIONS

11.1   <u>Amendments</u>.  The Acis Trustee may modify, supplement, or amend this Acis Trust Agreement without Bankruptcy Court approval (a) to clarify any ambiguity or inconsistency, or render this Acis Trust Agreement in compliance with its stated tax purposes, or (b) in any other way that is not inconsistent with the Plan or the Plan Confirmation Order, only if such modification, supplement, or amendment does not materially and adversely affect the interests, rights, treatment, or Distributions of or to any Beneficiaries.  All other modifications, supplements, and amendments shall require prior approval of the Bankruptcy Court.

11.2   <u>Waiver</u>.  No failure by the Acis Trust or the Acis Trustee to exercise or delay in exercising any right, power, or privilege hereunder shall operate as a waiver, nor shall any single or partial exercise of any right, power, or privilege hereunder preclude any further exercise thereof, or of any other right, power, or privilege.

11.3 <u>Cumulative Rights and Remedies</u>. The rights and remedies provided in this Acis Trust Agreement are cumulative and are not exclusive of any rights under law or in equity.

11.4 <u>No Bond Required</u>. Notwithstanding any state law to the contrary, the Acis Trustee (including any successor Acis Trustee) shall be exempt from giving any bond, surety, or other security in any jurisdiction.

11.5 <u>Irrevocability</u>. This Acis Trust Agreement and the Acis Trust created hereunder shall be irrevocable, except as otherwise expressly provided in this Acis Trust Agreement.

11.6 <u>Relationship to the Plan</u>. The principal purpose of this Acis Trust Agreement is to aid in the implementation of the Plan and, therefore, this Acis Trust Agreement incorporates and is subject to the provisions of the Plan and the Plan Confirmation Order. In the event that any provision of this Acis Trust Agreement is found to be inconsistent with a provision of the Plan or the Plan Confirmation Order, the provisions of the Plan or the Plan Confirmation Order, as applicable, shall control.

11.7 <u>Division of Acis Trust</u>. Under no circumstances shall the Acis Trustee have the right or power to divide the Acis Trust unless authorized to do so by the Bankruptcy Court.

11.8 <u>Applicable Law</u>. The Acis Trust is made in the State of Texas, and the Acis Trust and this Acis Trust Agreement, and the rights and obligations of the Acis Trustee, are to be governed by and construed and administered according to the laws of the State of Texas; provided, however, that, except as expressly provided in this Acis Trust Agreement, there shall not be applicable to the Acis Trust, the Acis Trustee, or this Acis Trust Agreement any provisions of the laws (statutory or common) of the State of Texas pertaining to trusts that relate to or regulate (a) the filing with any court or governmental body or agency of trustee accounts or schedules of trustee fees and charges, (b) affirmative requirements to post bonds for trustees, officers, agents, or employees of a trust, (c) the necessity for obtaining court or other governmental approval concerning the acquisition, holding, or disposition of real or personal property, (d) fees or other sums payable to trustees, officers, agents, or employees of a trust, (e) the allocation of receipts and expenditures to income or principal, (f) restrictions or limitations on the permissible nature, amount or concentration of trust investments or requirements relating to the titling, storage or other manner of holding of trust assets, or (g) the establishment of fiduciary or other standards or responsibilities or limitations on the acts or powers of trustees that are inconsistent with the limitations or liabilities or authorities and powers of the Acis Trustee set forth or referenced in this Acis Trust Agreement.

11.9 <u>Retention of Jurisdiction</u>. Notwithstanding the Effective Date, and to the fullest extent permitted by law, the Bankruptcy Court shall retain exclusive jurisdiction over the Acis Trust after the Effective Date, including, without limitation, jurisdiction to resolve any and all controversies, suits, and issues that may arise in connection therewith, including, without limitation, this Acis Trust Agreement, or any entity's obligations incurred in connection herewith, including without limitation, any action against the Acis Trustee or any professional retained by the Acis Trustee, in its capacity as such. Each party to this Acis Trust Agreement and each Beneficiary of the Acis Trust hereby irrevocably consents to the exclusive jurisdiction of the Bankruptcy Court in any action to enforce, interpret, or construe any provision of this Acis

Trust Agreement or of any other agreement or document delivered in connection with this Acis Trust Agreement, and also hereby irrevocably waives any defense of improper venue, forum non conveniens, or lack of personal jurisdiction to any such action brought in the Bankruptcy Court. Each party further irrevocably agrees that any action to enforce, interpret, or construe any provision of this Acis Trust Agreement will be brought only in the Bankruptcy Court. Each party hereby irrevocably consents to the service by certified or registered mail, return receipt requested, of any process in any action to enforce, interpret, or construe any provision of this Acis Trust Agreement. Notwithstanding the preceding, nothing herein shall be interpreted as requiring the commencement or prosecution of any Estate Claims in the Bankruptcy Court, and all determinations regarding the proper forum for initiating any Estate Claim shall be at the discretion of the Acis Trust, consistent with applicable law.

11.10   Severability.  In the event that any provision of this Acis Trust Agreement or the application thereof to any person or circumstance shall be determined by the Bankruptcy Court to be invalid or unenforceable to any extent, the remainder of this Acis Trust Agreement, or the application of such provision to persons or circumstance, other than those as to which it is held invalid or unenforceable, shall not be affected thereby, and such provision of this Acis Trust Agreement shall be valid and enforced to the fullest extent permitted by law.

11.11   Limitation of Benefits.  Except as otherwise specifically provided in this Acis Trust Agreement, the Plan, or the Plan Confirmation Order, nothing herein is intended or shall be construed to confer upon or to give any person other than the parties hereto and the Beneficiaries any rights or remedies under or by reason of this Acis Trust Agreement.

11.12   Notices.  All notices, requests, demands, consents, and other communication hereunder shall be in writing and shall be deemed to have been duly given to a person, if delivered in person or by facsimile or if sent by overnight mail, registered mail, certified mail or regular mail, with postage prepaid, to the following addresses:

If to the Acis Trustee:

[ADD]

If to a Beneficiary:

To the name and Distribution address set forth in the Register with respect to such Beneficiary.

The parties may designate in writing from time to time other and additional places to which notices may be sent.

11.13   Further Assurances.  From and after the Effective Date, the parties hereto covenant and agree to execute and deliver all such documents and notices and to take all such further actions as may reasonably be required from time to time to carry out the intent and purposes of this Acis Trust Agreement, and to consummate the transactions contemplated hereby.

11.14    Integration.  This Acis Trust Agreement, the Plan, and the Plan Confirmation Order constitute the entire agreement with, by, and among the parties hereto and thereto, and there are no representations, warranties, covenants, or obligations except as set forth herein, in the Plan, and in the Plan Confirmation Order.  This Acis Trust Agreement, together with the Plan and the Plan Confirmation Order, supersede all prior and contemporaneous agreements, understandings, negotiations, and discussions, written or oral, of the parties hereto, relating to any transaction contemplated hereunder.  Except as otherwise provided in this Acis Trust Agreement, the Plan, or Plan Confirmation Order, nothing herein is intended or shall be construed to confer upon or give any person other than the parties hereto and the Beneficiaries any rights or remedies under or by reason of this Acis Trust Agreement.

11.15    Interpretation.  The enumeration and Section headings contained in this Acis Trust Agreement are solely for convenience of reference and shall not affect the meaning or interpretation of this Acis Trust Agreement or of any term or provision hereof.  Unless context otherwise requires, whenever used in this Acis Trust Agreement the singular shall include the plural and the plural shall include the singular, and words importing the masculine gender shall include the feminine and the neuter, if appropriate, and vice versa, and words importing persons shall include partnerships, associations, and corporations.  The words herein, hereby, and hereunder and words with similar import, refer to this Acis Trust Agreement as a whole and not to any particular Section or subsection hereof unless the context requires otherwise.  Any reference to the "Acis Trustee" shall be deemed to include a reference to the "Acis Trust" and any reference to the "Acis Trust" shall be deemed to include a reference to the "Acis Trustee" except for the references in which the context otherwise requires.

11.16    Counterparts.  This Acis Trust Agreement may be signed by the parties hereto in counterparts, which, when taken together, shall constitute one and the same document.

[*Signature Pages Follow*]

19

IN WITNESS WHEREOF, the parties hereto have either executed and acknowledged this Acis Trust Agreement, or caused it to be executed and acknowledged on their behalf by their duly authorized representatives, all as of the date first above written.

**ACIS CAPITAL MANAGEMENT, L.P.**

By: _____
    Name: Robin E. Phelan
    Title: Chapter 11 Trustee

**ACIS CAPITAL MANAGEMENT GP, LLC**

By: _____
    Name: Robin E. Phelan
    Title: Chapter 11 Trustee

**_____, as Acis Trustee**

By:_____
    Name: _____
    (and not in his personal capacity) in his
    capacity as Acis Trustee of the Acis Trust

# EXHIBIT C

## TO FIRST AMENDED JOINT PLAN FOR ACIS CAPITAL MANAGEMENT, LP AND ACIS CAPITAL MANAGEMENT GP, LLC

**[LIQUIDATING TRUST AGREEMENT FOR PLAN B OR PLAN C]**

[PLAN "B" OR "C" ALTERNATIVE]

## ACIS TRUST AGREEMENT

This Acis Trust Agreement (the "**Acis Trust Agreement**") is made this __ day of August 2018, by and among Acis Capital Management, L.P. ("**Acis LP**"), Acis Capital Management GP, LLC ("**Acis GP**," and together with Acis LP, the "**Debtors**"), and _____ as trustee for the Acis Trust (the "**Acis Trustee**").

## RECITALS

**WHEREAS**, on January 30, 2018, Joshua N. Terry, as petitioning creditor, filed involuntary petitions under section 303 of Title 11 of the United States Code (the "**Bankruptcy Code**") commencing the involuntary bankruptcy cases of Acis LP and Acis GP (the "**Bankruptcy Cases**" or "**Cases**") in the United States Bankruptcy Court for the Northern District of Texas, Dallas Division (the "**Bankruptcy Court**"); and

**WHEREAS**, on April 13, 2018, the Bankruptcy Court entered the orders for relief in both Cases; and

**WHEREAS**, Diane Reed was appointed the interim Chapter 7 Trustee for these Cases; and

**WHEREAS**, on April 19, 2018, the Bankruptcy Court entered an order jointly administering these Cases and directing that all pleadings be filed in the lead case number 18-30264-SGJ-7; and

**WHEREAS**, on May 11, 2018, the Bankruptcy Court entered an order converting the Cases to proceedings under Chapter 11 of the Bankruptcy Code; and

**WHEREAS**, on May 11, 2018, the Bankruptcy Court also entered an order directing the appointment of a chapter 11 trustee in these Cases; and

**WHEREAS**, the United States Trustee appointed and the Bankruptcy Court approved the appointment of Robin Phelan as the Chapter 11 Trustee (the "**Trustee**") of Acis LP and Acis GP.

**WHEREAS**, on July 5, 2018, the Trustee filed the *Joint Plan for Acis Capital Management, L.P. and Acis Capital Management GP, LLC* (as the same may be further modified, amended, and/or supplemented from time to time, the "**Plan**");[1]

**WHEREAS**, the Plan contains three (3) alternative plans, known as "Plan A," "Plan B," and "Plan C;" and

---

[1] Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to them in the Plan.

**WHEREAS**, on _____, 2018, the Bankruptcy Court entered an order confirming the Plan, and specifically the "Plan [insert B or C]" alternative (the "**Plan Confirmation Order**"); and

**WHEREAS**, the Plan Effective Date occurred on _____ (the "**Effective Date**"); and

**WHEREAS**, the Plan contemplates, on the Effective Date, (i) the creation of a trust (the "**Acis Trust**") and the creation of the beneficial interests in the Acis Trust of holders of Allowed Claims entitled to Distributions as described in the Plan (collectively, the "**Beneficiaries**" and each, individually, a "**Beneficiary**"), and (ii) the Acis Trust will be vested with all Cash, Estate Accounts Receivable, Estate Claims and Estate Defenses (all such Assets vesting in the Acis Trust are collectively referred to as the "**Acis Trust Assets**"), to be liquidated and distributed to the Beneficiaries, as set forth in the Plan; and

**WHEREAS**, the Plan contemplates that, pursuant to Treasury Regulation Section 301.7701-4, the Acis Trust shall be created for the primary purpose of liquidating the Acis Trust Assets and for making Distributions in accordance with the Plan and this Acis Trust Agreement, with no objective to continue or engage in the conduct of a trade or business, except only in the event and to the extent necessary to, and consistent with, the liquidating purpose of the Acis Trust; and

**WHEREAS**, the Acis Trust is intended to qualify as a grantor trust for U.S. federal income tax purposes under the Internal Revenue Code of 1986, as amended (the "**IRC**"), with the Beneficiaries to be treated as if they had received a distribution from the Estate of an undivided interest in each of the Acis Trust Assets (to the extent of the value of their respective share in the applicable assets) and then contributed such interests to the Acis Trust, and the Beneficiaries will be treated as the grantors and owners thereof; and

**WHEREAS**, the Acis Trustee has agreed to serve as such upon the terms and subject to the conditions set forth in this Acis Trust Agreement.

**NOW, THEREFOR**, in accordance with the Plan, in consideration of the premises, the mutual agreements of the parties contained herein, and other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged and affirmed, the parties hereby agree as follows:

## ARTICLE I
## DECLARATION OF TRUST

1.1     Creation and Purpose of the Acis Trust.  The Debtors and the Acis Trustee hereby create the Acis Trust for the primary purpose of liquidating the Acis Trust Assets and making Distributions in accordance with the Plan and this Acis Trust Agreement, with no objective to continue or engage in the conduct of a trade or business, except only in the event and to the extent necessary to, and consistent with, the liquidating purpose of the Acis Trust.  The Acis Trust will not be deemed a successor-in-interest of the Estate for any purpose other than as specifically set forth in the Plan and this Acis Trust Agreement.

1.2     Declaration of Trust.  In order to declare the terms and conditions hereof, and in consideration of the confirmation of the Plan, the Debtors and the Acis Trustee have executed this Acis Trust Agreement and, effective on the Effective Date, hereby irrevocably transfer to the Acis Trust all of the right, title, and interests of the Debtors and the Estate in and to the Acis Trust Assets, to have and to hold unto the Acis Trust and its successors and assigns forever, under and subject to the terms of the Plan and the Plan Confirmation Order, for the benefit of the Beneficiaries (to the extent of their respective legal entitlements) and their successors and assigns as provided for in this Acis Trust Agreement and in the Plan and Plan Confirmation Order.

1.3     Vesting of Estate Assets.  On the Effective Date, pursuant to the terms of the Plan and Sections 1123, 1141 and 1146(a) of the Bankruptcy Code, all Acis Trust Assets shall be vested in the Acis Trust, which also shall be authorized to obtain, liquidate, and collect all of the Acis Trust Assets not in its possession and pursue all of the Estate Claims that constitute Acis Trust Assets under the Plan; provided, however, that the Acis Trustee may abandon or otherwise not accept any Acis Trust Assets that the Acis Trustee believes, in good faith, to have no value to, or will be unduly burdensome to, the Acis Trust.  Any Acis Trust Assets that the Acis Trustee so abandons or otherwise does not accept shall not be property of the Acis Trust.  In addition, on the Effective Date, the Acis Trust shall (a) take possession of all books, records, and files of the Debtors and the Estate and (b) provide for the retention and storage of such books, records, and files until such time as the Acis Trust determines, in accordance with this Acis Trust Agreement, that retention of same is no longer necessary or beneficial.  Subject to the provisions of the Plan, all Acis Trust Assets shall be delivered to the Acis Trust free and clear of all Liens, Claims, and Interests except as otherwise specifically provided in the Plan or in the Plan Confirmation Order.

1.4     Acceptance by Acis Trustee.  The Acis Trustee hereby accepts the trust imposed under this Acis Trust Agreement and agrees to observe and perform that trust on and subject to the terms and conditions set forth in this Acis Trust Agreement, the Plan, and the Plan Confirmation Order.  In connection with and in furtherance of the purposes of the Acis Trust, the Acis Trustee hereby accepts the transfer of the Acis Trust Assets.

1.5     Name of the Acis Trust.  The Acis Trust established hereby shall be known as the "**Acis Trust**" (the "**Acis Trust**").

**ARTICLE II**
**THE ACIS TRUSTEE**

2.1     Appointment.  In accordance with the Plan, _____, has been selected as the Acis Trustee for the Acis Trust.  The Acis Trustee's appointment shall be effective as of the Effective Date and continue until the earlier of (a) the termination of the Acis Trust or (b) the Acis Trustee's resignation, death, or removal.

2.2     General Powers.  The Acis Trustee shall be the exclusive trustee of the Acis Trust and the Acis Trust Assets for purposes of 31 U.S.C. § 3713(b) and 26 U.S.C. § 6012(b)(3).  The Acis Trustee shall have all duties, obligations, rights, and benefits assumed by, assigned to, or vested in the Acis Trust under the Plan, the Plan Confirmation Order, this Acis Trust Agreement, and any other agreement entered into pursuant to or in connection with the Plan.  Except as

otherwise provided in this Acis Trust Agreement, the Plan, or the Plan Confirmation Order, the Acis Trustee may control and exercise authority over the Acis Trust Assets, over the acquisition, management, and disposition thereof, and over the management and conduct of the business of the Acis Trust. No person dealing with the Acis Trust shall be obligated to inquire into the Acis Trustee's authority in connection with the acquisition, management, or disposition of Acis Trust Assets. Without limiting the foregoing, but subject to the Plan, the Plan Confirmation Order, and other provisions of this Acis Trust Agreement, the Acis Trustee shall be expressly authorized to, with respect to the Acis Trust and the Acis Trust Assets:

(a) Exercise all power and authority that may be or could have been exercised, commence all proceedings that may be or could have been commenced, and take all actions that may be or could have been taken with respect to the Acis Trust Assets by any officer, partner, agent, representative, or other party acting in the name of the Debtors or the Estate with like effect as if duly authorized, exercised, and taken by action of such officer, partner, agent, representative, or other party under Sections 704 and 1106 of the Bankruptcy Code as the Debtors' representative appointed for such purpose pursuant to Section 1123(b)(3) of the Bankruptcy Code.

(b) Open and maintain bank accounts on behalf of or in the name of the Acis Trust, take and exercise ownership and control over any existing debtor-in-possession bank accounts, calculate and make Distributions and take other actions consistent with the Plan and the implementation thereof, including the establishment, re-evaluation, adjustment, and maintenance of appropriate reserves, in the name of the Acis Trust.

(c) Receive, manage, invest, supervise, and protect the Acis Trust Assets, subject to the limitations provided herein.

(d) Hold legal title to any and all Acis Trust Assets.

(e) Subject to the applicable provisions of the Plan, collect and liquidate all Acis Trust Assets pursuant to the Plan.

(f) Review and, where appropriate, object to Claims and supervise and administer the resolution, settlement, and payment of all Claims and Distributions to the Beneficiaries in accordance with this Acis Trust Agreement, the Plan, and the Plan Confirmation Order.

(g) Subject to Section 3.2 of this Acis Trust Agreement and the applicable provisions of the Plan, investigate, prosecute, compromise, and settle all Estate Claims vested in the Acis Trust.

(h) (i) Seek a determination of tax liability under section 505 of the Bankruptcy Code, (ii) file any and all tax and information returns required with respect to the Debtors and the Acis Trust, (iii) make tax elections for and on behalf of the Debtors and the Acis Trust, and (iv) pay taxes or other obligations incurred by the Acis Trust.

(i)    Calculate and implement Distributions to applicable Beneficiaries as provided for, or contemplated by, the Plan, the Plan Confirmation Order, and this Acis Trust Agreement.

(j)    Withhold from the amount distributable to any person such amount as may be sufficient to pay any tax or other charge which the Acis Trustee has determined, in its sole discretion, may be required to be withheld therefrom under the income tax laws of the United States, any foreign country, or of any state, local, or political subdivision of either.

(k)    Enter into any agreement or execute any document required by or consistent with the Plan, the Plan Confirmation Order, or this Acis Trust Agreement and perform all obligations thereunder.

(l)    Purchase and carry any insurance policies and pay any insurance premiums and costs that the Acis Trustee deems reasonably necessary or advisable.

(m)    Retain and compensate, without further order of the Bankruptcy Court, the services of employees, professionals, and consultants to advise and assist in the administration, prosecution, and distribution of the Acis Trust Assets.

(n)    Implement, enforce, or discharge all of the terms, conditions, and all other provisions of, and all duties and obligations under, the Plan, the Confirmation Order, and this Acis Trust Agreement.

(o)    Resolve issues involving Claims and Interests in accordance with the Plan, including the power to file, prosecute, settle or otherwise resolve objections Claims, and to subordinate and recharacterize Claims by objection, motion, or adversary proceeding.

(p)    Undertake all administrative functions of the Bankruptcy Cases, including the payment of fees payable to the Office of the United States Trustee and the ultimate closing of the Bankruptcy Cases.

(q)    Appear and participate in any proceeding before the Bankruptcy Court or any other court with proper jurisdiction with respect to any matter regarding or relating to this Acis Trust Agreement, the Plan, the Confirmation Order, Acis Trust, or the Acis Trust Assets; and

(r)    Take all other actions consistent with the provisions of the Plan that the Acis Trustee deems reasonably necessary or desirable to administer the Plan.

2.3    <u>Limitations on the Acis Trustee</u>.  Notwithstanding anything under applicable law, this Acis Trust Agreement, or the Plan to the contrary, the Acis Trustee shall not do or undertake any of the following:

(a)    Take any action that would jeopardize treatment of the Acis Trust as a "liquidating trust" for federal income tax purposes.

(b)      Exercise any investment power other than the power to invest in demand and time deposits in banks or savings institutions, or other temporary liquid investments, such as short term certificates of deposit or Treasury bills or other investments that a "Acis trust" within the meaning of Treasury Regulation Section 301.7701-4(d) may be permitted to hold, pursuant to the Treasury Regulations or any Internal Revenue Service ("**IRS**") guidelines, whether set forth in IRS rulings, revenue procedures, other IRS pronouncements, or otherwise.

(c)      Receive or retain any operating assets of a going concern business, a partnership interest in a partnership that holds operating assets, or fifty percent (50%) or more of the stock of a corporation with operating assets, except as is absolutely necessary or required under the Plan and the Plan Confirmation Order; provided, however, that in no event shall the Acis Trustee receive or retain any such asset or interest that would jeopardize treatment of the Acis Trust as a "liquidating trust" for federal income tax purposes.

2.4      Compensation of the Acis Trustee.  The Acis Trustee shall be entitled to receive reimbursement of reasonable, actual and necessary costs, fees (including attorneys' fees) and expenses incurred by the Acis Trustee in connection with the performance of his duties hereunder, and compensation in accordance with the market rates generally charged by the Trustee for his services.  The Acis Trustee's current billing rate for the services to be rendered is $___ per hour.

2.5      Reimbursements.  The Acis Trustee, any agents or consultants employed pursuant to this Acis Trust Agreement, and any professionals or representatives retained by the Acis Trust shall be reimbursed from the Acis Trust Assets for all reasonable out-of-pocket expenses incurred in the performance of their duties hereunder in addition to any compensation received.

2.6      Acis Trust Operating Expenses.  The Acis Trust Assets will be used to pay all liabilities, costs and expenses of the Acis Trust, including compensation then due and payable to the Acis Trustee, his agents, representatives, professionals and employees and all costs, expenses, and liabilities incurred by the Acis Trustee in connection with the performance of his duties.  The reasonable fees and expenses of the Acis Trustee and his counsel and agents will be paid out of the Acis Trust Assets, without need of Bankruptcy Court approval.

2.7      Investments.  The Acis Trust may invest Cash (including any earnings thereon or proceeds therefrom) as permitted by Section 345 of the Bankruptcy Code or in other prudent investments, provided, however, that such investments are permitted to be made by a Acis trust within the meaning of Treasury Regulation Section 301.7701-4(d), as reflected therein, or under applicable IRS guidelines, rulings, or other controlling authorities.

2.8      Replacement of the Acis Trustee.  The Acis Trustee shall be subject to removal only by the Bankruptcy Court upon application or motion by a Beneficiary of the Acis Trust, after notice and a hearing, and for cause shown, including (a) the willful and continued refusal by the Acis Trustee to perform its duties under the Plan and this Acis Trust Agreement, and (b) gross negligence, willful misconduct, fraud, embezzlement, or theft.  The Acis Trustee may resign at any time upon thirty (30) days' written notice delivered to the Bankruptcy Court, provided that such resignation shall become effective only upon the appointment of a permanent or interim successor Acis Trustee.  In the event of the resignation or removal of the Acis Trustee,

the successor Acis Trustee shall be appointed by the Bankruptcy Court, after notice and a hearing, upon request and based upon submissions from interested parties (including any Beneficiary). Upon its appointment, the successor Acis Trustee, without any further act, shall become fully vested with all of the rights, powers, duties, and obligations of its predecessor and all responsibilities of the predecessor Acis Trustee relating to the Acis Trust shall be terminated; provided, however, that the original Acis Trustee's right to indemnification shall survive termination and is subject to the provisions of Article IV hereof.

2.9 _Acis Trust Continuance_. The death, resignation, or removal of the Acis Trustee shall not terminate the Acis Trust or revoke any existing agency created by the Acis Trustee pursuant to this Acis Trust Agreement or invalidate any action theretofore taken by the Acis Trustee, and the successor Acis Trustee agrees that the provisions of this Acis Trust Agreement shall be binding upon and inure to the benefit of the successor Acis Trustee and all its successors or assigns.

## ARTICLE III
## PROSECUTION AND RESOLUTION OF ESTATE CLAIMS

3.1 _The Acis Trust's Exclusive Authority to Pursue, Settle, or Abandon Estate Claims_. In accordance with Sections 3.39 or 4.30 and 6.03 of the Plan, from and after the Effective Date, prosecution and settlement of all Estate Claims transferred to the Acis Trust shall be the sole responsibility of the Acis Trust. From and after the Effective Date, the Acis Trust shall have exclusive rights, powers, and interests of the Estate to pursue, settle, or abandon such Estate Claims as the sole representative of the Estate pursuant to section 1123(b)(3) of the Bankruptcy Code. All Estate Claims that are not expressly released or waived under the Plan are reserved and preserved and vest in the Acis Trust in accordance with the Plan. No Person may rely on the absence of a specific reference in the Plan to a cause of action against it as any indication that the Debtors or Acis Trustee will not pursue any and all available Estate Claims against such Person. The Acis Trustee expressly reserves all Estate Claims, except for any Estate Claims against any Person that are expressly released or waived under the Plan, and, therefore, no preclusion doctrine, including the doctrines of res judicata, collateral estoppel, issue preclusion, claim preclusion, estoppel (judicial, equitable, or otherwise), or laches, shall apply to such Estate Claims upon, after, or as a consequence of confirmation or consummation of the Plan.

3.2 _Settlement of Estate Claims_. The Acis Trustee, and in accordance with the provisions of the Plan, shall have standing, authority, power, and right to assert, prosecute, and/or settle the Estate Claims, including making a claim under the Estate Insurance, based upon its powers as a bankruptcy-appointed representative of the Debtors' Estate with the same or similar abilities possessed by insolvency trustees, receivers, examiners, conservators, liquidators, rehabilitators, or similar officials. Without limiting the generality of any of the foregoing, and to avoid any doubt, the Acis Trustee shall have standing of an examiner, trustee, receive, liquidator or rehabilitator of the Debtors and shall have exclusive standing and authority to prosecute, settle or compromise any Claims made under any Estate Insurance.

3.3     Preservation of Right to Conduct Investigations.  Any and all rights to conduct investigations pursuant to Bankruptcy Rule 2004 held by the Debtors prior to the Effective Date shall vest with the Acis Trust and shall continue until dissolution of the Acis Trust.

3.4     Privilege.  Solely with respect to carrying out the Acis Trust's functions, the attorney-client privilege, work product doctrine or other privileges or immunities inuring to the benefit of the Debtors or attaching to documents or communications of the Debtors shall be transferred to the Acis Trust.  The Acis Trustee is authorized to assert or waive any such privilege or doctrine, as necessary or appropriate for the administration of the Acis Trust.

## ARTICLE IV
## LIABILITY OF ACIS TRUSTEE

4.1     Standard of Care; Exculpation.  Neither the Acis Trustee nor any affiliate, employee, employer, professional, agent, or representative of the Acis Trustee shall be liable for losses, claims, damages, liabilities, or expenses in connection with the affairs or property of the Acis Trust to any Beneficiary of the Acis Trust, or any other person, for the acts or omissions of the Acis Trustee; provided, however, that the foregoing limitation shall not apply as to any particular person or entity as to any losses, claims, damages, liabilities, or expenses suffered or incurred by any Beneficiary that are found by a final judgment by a court of competent jurisdiction (not subject to further appeal) to have resulted primarily and directly from the fraud, gross negligence, or willful misconduct of such person or entity.  Every act done, power exercised, or obligation assumed by the Acis Trust, the Acis Trustee, or any affiliate, employee, employer, professional, agent, or representative of the Acis Trustee pursuant to the provisions of this Acis Trust Agreement or the Plan shall be held to be done, exercised, or assumed, as the case may be, by the Acis Trust, the Acis Trustee, or any affiliate, employee, employer, professional, agent, or representative of the Acis Trustee acting for and on behalf of the Acis Trust and not otherwise; provided however, that none of the foregoing entities or persons are deemed to be responsible for any other such entities' or persons' actions or inactions outside of the scope of the authority provided by the Acis Trust.  Except as provided in the proviso of the first sentence of this Section 4.1 with respect to any Beneficiary, every person, firm, corporation, or other entity contracting or otherwise dealing with or having any relationship with the Acis Trust, the Acis Trustee, or any affiliate, employee, employer, professional, agent, or representative of the Acis Trustee shall have recourse only to the Acis Trust Assets for payment of any liabilities or other obligations arising in connection with such contracts, dealings, or relationships and the Acis Trust, the Acis Trustee, any director, officer, affiliate, employee, employer, professional, agent, or representative of the Acis Trustee shall not be individually liable therefor.

4.2     Indemnification.

(a)     Except as otherwise set forth in the Plan or Plan Confirmation Order, the Acis Trust, and any affiliate, employee, employer, professional, agent, or representative of the Acis Trustee (each, an "**Indemnified Party**" and collectively, the "**Indemnified Parties**"), shall be defended, held harmless, and indemnified from time to time by the Acis Trust against any and all losses, liabilities, expenses (including attorneys' fees and disbursements), damages, taxes, suits, or claims that the Acis Trustee or his or her professionals may incur or sustain by reason of being or having been a Acis Trustee or professionals of the Acis Trustee for performing any

functions incidental to such service; provided, however, such indemnity shall not apply to any such loss, liability, expense, damages, tax, suit, or claim to the extent it is found in a final judgment by a court of competent jurisdiction (not subject to further appeal) to have resulted primarily and directly from the bad faith, willful misconduct, reckless disregard of duty, criminal conduct, gross negligence, fraud, or self-dealing of such person or entity. Satisfaction of any obligation of the Acis Trust arising pursuant to the terms of this Section shall be payable only from the Acis Trust Assets, may be advanced prior to the conclusion of such matter, and such right to payment shall be prior and superior to any other rights to receive a Distribution of the Acis Trust Assets.

(b)     The Acis Trust shall promptly pay expenses reasonably incurred by any Indemnified Party in defending, participating in, or settling any action, proceeding, or investigation in which such Indemnified Party is a party or is threatened to be made a party or otherwise is participating in connection with the Acis Trust Agreement or the duties, acts, or omissions of the Acis Trustee, upon submission of invoices therefor, whether in advance of the final disposition of such action, proceeding, or investigation or otherwise. Each Indemnified Party hereby undertakes, and the Acis Trust hereby accepts its undertaking, to repay any and all such amounts so advanced if it shall ultimately be determined that such Indemnified Party is not entitled to be indemnified therefor under this Acis Trust Agreement.

4.3     No Liability for Acts of Successor/Predecessor Acis Trustees. Upon the appointment of a successor Acis Trustee and the delivery of the Acis Trust Assets to the successor Acis Trustee, the predecessor Acis Trustee and any director, officer, affiliate, employee, employer, professional, agent, or representative of the predecessor Acis Trustee shall have no further liability or responsibility with respect thereto. A successor Acis Trustee shall have no duty to examine or inquire into the acts or omissions of its immediate or remote predecessor and no successor Acis Trustee shall be in any way liable for the acts or omissions of any predecessor Acis Trustee unless a successor Acis Trustee expressly assumes such responsibility. A predecessor Acis Trustee shall have no liability for the acts or omissions of any immediate or subsequent successor Acis Trustee for any events or occurrences subsequent to the cessation of its role as Acis Trustee.

4.4     Reliance by Acis Trustee on Documents or Advice of Counsel. Except as otherwise provided in this Acis Trust Agreement, the Acis Trustee and any affiliate, employee, employer, professional, agent, or representative of the Acis Trustee may rely, and shall be protected from liability for acting, upon any resolution, certificate, statement, instrument, opinion, report, notice, request, consent, order, or other paper or document reasonably believed by the Acis Trustee to be genuine and to have been presented by an authorized party. The Acis Trustee shall not be liable for any action taken or suffered by the Acis Trustee in reasonable reliance upon the advice of counsel or other professionals engaged by the Acis Trustee in accordance with this Acis Trust Agreement.

4.5     Insurance. All of the Debtors' rights and their Estate's rights under any Insurance Policy to which the Debtors and/or the Debtors' Estate may be beneficiaries shall vest with the Acis Trust for the benefit of the Beneficiaries of the Acis Trust and all of the beneficiaries of such policies. The Acis Trust may purchase, using Acis Trust Assets, and carry all insurance policies and pay all insurance premiums and costs the Acis Trustee deems reasonably necessary

or advisable, including, without limitation, purchasing any errors and omissions insurance with regard to any liabilities, losses, damages, claims, costs, and expenses it may incur, including but not limited to attorneys' fees, arising out of or due to its actions or omissions, or consequences of such actions or omissions, other than as a result of its fraud or willful misconduct, with respect to the implementation and administration of the Plan or this Acis Trust Agreement.

## ARTICLE V
## GENERAL PROVISIONS CONCERNING
## ADMINISTRATION OF THE ACIS TRUST

5.1     Register of Beneficiaries.  The Acis Trust shall maintain at all times a register of the names, Distribution addresses, amounts of Allowed Claims and the ratable interests in the Acis Trust of the Beneficiaries (the "**Register**").  The Acis Trustee shall cause the Register to be kept at his office or at such other place or places as may be designated by the Acis Trustee from time to time.

5.2     Books and Records.  On the Effective Date, the Reorganized Debtor shall (a) grant the Acis Trust and the Acis Trustee full access to all books, records, and files of the Debtors and the Estate; and (b) provide for the retention and storage of such books, records, and files until such time as the Acis Trust determines, in accordance with the Acis Trust Agreement, that retention of same is no longer necessary or beneficial.  The Acis Trust shall maintain in respect of the Acis Trust and the Beneficiaries books and records relating to the Acis Trust Assets and income realized therefrom and the payment of expenses of and claims against or assumed by the Acis Trust in such detail and for such period of time as may be necessary to enable it to make full and proper reports in respect thereof.

5.3     Quarterly Reporting Obligations to Bankruptcy Court.  In no event later than thirty (30) Business Days after the end of the first full quarter following the Effective Date and on a quarterly basis thereafter until all Cash in the Acis Trust has been released or paid out in accordance with the Plan and this Acis Trust Agreement, the Acis Trustee shall file with the Bankruptcy Court a report setting forth the amounts, recipients, and dates of all Distributions made by the Acis Trustee under the Plan and hereunder through each applicable reporting period.

5.4     Filing of Monthly and Quarterly Reports and Payment of Statutory Fees.  The filing of the final monthly operating report (for the month in which the Effective Date occurs) and all subsequent quarterly operating reports shall be the responsibility of the Reorganized Debtor.  Statutory Fees shall be paid as such fees may thereafter accrue and be due and payable in accordance with the applicable schedule for payment of such fees.  Any Statutory Fees relating to the period of time prior to the Effective Date shall be paid by the Debtors or Acis Trustee, as applicable.  Statutory Fees relating to any period of time after the Effective Date shall be paid by the Reorganized Debtor from its post-Effective Date income.  Such obligation to pay Statutory Fees shall continue until such time as the Bankruptcy Case is closed, dismissed, or converted.

5.5     Filing of Tax Returns.  After the Effective Date, the Acis Trust shall be responsible for filing all federal, state, local, and foreign tax returns for the Debtors and the Acis Trust, but not for the Reorganized Debtor.

## ARTICLE VI
## BENEFICIAL INTERESTS AND BENEFICIARIES

6.1     Interest Beneficial Only.  The ownership of a beneficial interest in the Acis Trust shall not entitle any Beneficiary to any title in or to the Acis Trust Assets or to any right to call for a partition or division of the Acis Trust Assets or to require an accounting.

6.2     Evidence of Beneficial Interest.  Ownership of a beneficial interest in the Acis Trust shall not be evidenced by any certificate, security, or receipt or in any other form or manner whatsoever, except as maintained on the books and records of the Acis Trust by the Acis Trustee.

6.3     Transfers of Beneficial Interests.  Beneficial interests in the Acis Trust shall be nontransferable except upon death of the interest holder or by operation of law.  The Acis Trust shall not have any obligation to recognize any transfer of Claims or Interests occurring after the Effective Date.  Only those holders of Claims and Interests of record stated on the transfer ledgers as of the close of business on the Effective Date, to the extent applicable, shall be entitled to be recognized for all purposes hereunder.

6.4     Absolute Owners.  The Acis Trustee may deem and treat the Beneficiary reflected as the owner of a beneficial interest on the Register as the absolute owner thereof for the purposes of receiving Distributions and payments on account thereof for federal and state income tax purposes and for all other purposes whatsoever.

6.5     Change of Address.  A Beneficiary may, after the Effective Date, select an alternative Distribution address by notifying the Acis Trustee in writing of such alternative Distribution address.  Absent such notice, the Acis Trustee shall not recognize any such change of Distribution address.  Such notification shall be effective only upon receipt by the Acis Trustee.

6.6     Effect of Death, Dissolution, Incapacity, or Bankruptcy of Beneficiary.  The death, dissolution, incapacity, or bankruptcy of a Beneficiary during the term of the Acis Trust shall not operate to terminate the Acis Trust during the term of the Acis Trust nor shall it entitle the representative or creditors of the deceased, incapacitated, or bankrupt Beneficiary to an accounting or to take any action in any court or elsewhere for the Distribution of the Acis Trust Assets or for a partition thereof nor shall it otherwise affect the rights and obligations of the Beneficiary under this Acis Trust Agreement or in the Acis Trust.

6.7     Standing.  Except as expressly provided in this Acis Trust Agreement, the Plan, or the Plan Confirmation Order, a Beneficiary does not have standing to direct the Acis Trustee to do or not to do any act or to institute any action or proceeding at law or in equity against any party (other than against the Acis Trustee to the extent provided in this Acis Trust Agreement) upon or with respect to the Acis Trust Assets.

**ARTICLE VII**
**PROCEDURES FOR RESOLVING AND TREATING DISPUTED CLAIMS**

7.1    Incorporation of Plan Provisions.  As of the Effective Date, the Acis Trust shall assume responsibility for all Claims matters established by the Plan and shall be vested with any and all rights and defenses the Debtors had with respect to any Claim or Interest immediately prior to the Effective Date.

7.2    Objections to Claims.  The Acis Trustee shall be entitled to file objections to all Claims that are otherwise not deemed Allowed Claims under the Plan and Plan Confirmation Order.  Any objections to Claims shall be served and filed on or before the later of (i) ninety (90) days after the Effective Date or (ii) such later date as may be fixed by the Bankruptcy Court after reasonable notice and opportunity to object.  If an objection has not been filed to a Claim or the Schedules have not been amended with respect to a Claim that (a) was scheduled by the Debtors but (b) was not scheduled as contingent, unliquidated, and/or disputed, by the Claims Objection Deadline, as the same may be extended by order of the Bankruptcy Court, the Claim to which the Proof of Claim or scheduled Claim relates will be treated as an Allowed Claim if such Claim has not been Allowed earlier by a Final Order of the Bankruptcy Court.

7.3    Estimation of Claims.  The Acis Trustee may (but is not required to) at any time request that the Bankruptcy Court estimate any Contingent Claim or Disputed Claim pursuant to section 502(c) of the Bankruptcy Code for any reason, regardless of whether an objection was previously filed with the Bankruptcy Court with respect to such Claim, or whether the Bankruptcy Court has ruled on any such objection, and the Bankruptcy Court will retain jurisdiction to estimate any Claim at any time during litigation concerning any objection to any Claim, including, without limitation, during the pendency of any appeal relating to such objection.  In the event that the Bankruptcy Court estimates any Contingent Claim or Disputed Claim, the amount so estimated shall constitute either the Allowed amount of such Claim or a maximum limitation on such Claim, as determined by the Bankruptcy Court.  If the estimated amount constitutes a maximum limitation on the amount of such Claim, the Acis Trustee may pursue supplementary proceedings to object to the allowance of such Claim; provided, however, the Acis Trustee may elect not to pursue such supplementary proceedings, instead electing to treat such maximum amount as the Allowed amount of such Claim.

**ARTICLE VIII**
**DISTRIBUTIONS**

8.1    Distributions to Beneficiaries from Acis Trust Assets.  All payments to be made by the Acis Trust to any Beneficiary shall be made only in accordance with the Plan, the Plan Confirmation Order, and this Acis Trust Agreement and from the Acis Trust Assets (or from the income and proceeds realized from the Acis Trust Assets), and only to the extent that the Acis Trust has sufficient Acis Trust Assets (or income and proceeds realized from the Acis Trust Assets) to make such payments in accordance with and to the extent provided for in the Plan, the Plan Confirmation Order, and this Acis Trust Agreement.  Any Distributions to be made by or on behalf of the Debtors or the Acis Trustee, as applicable, pursuant to the Plan shall be made by checks drawn on accounts maintained by the Acis Trustee or an electronic wire transfer, at the option of the Acis Trustee.

8.2   Timing and Amount of Distributions.   No Distribution shall be made on account of any Claim until such Claim is Allowed, except as otherwise set forth in this Plan or otherwise ordered by the Bankruptcy Court.  No Distribution shall be made on account of any Contested Claim until such Claim is Allowed.  Except as expressly set forth in the Plan or in the Confirmation Order, the Acis Trustee shall, in the exercise of his or her good faith business judgment, determine the timing and amount of all Distributions which are required to be made under the Plan, consistent with the goal of making such Distributions as expeditiously as reasonably possible.  The Acis Trustee may, but shall not be required to, seek approval of, or any other appropriate relief from, the Bankruptcy Court with respect to any of such Distributions. Any Unclaimed Property may be paid into the registry of the Bankruptcy Court or otherwise distributed in accordance with the orders of the Bankruptcy Court.

8.3   Means of Cash Payment.   Cash payments pursuant to this Plan shall be made by check drawn on, or by wire transfer from, a domestic bank, or by other means agreed to by the payor and payee.

8.4   Record Date for Distributions.   As of the close of business on the Effective Date (the "Distribution Record Date"), the register for Class 1, 4, 5A and 5B Claims will be closed, and there shall be no further changes in the holder of record of any Claim.  Although there is no prohibition against the transfer of any Claim by any Creditor, the Acis Trustee shall have no obligation to recognize any transfer of any Class 1, 4, 5A and B Claims occurring after the Distribution Record Date, and the Acis Trustee shall instead be authorized and entitled to recognize and deal for all purposes under this Plan, including for the purpose of making all Distributions, with only those holders of Claims so reflected as of the Distribution Record Date. However, the Acis Trustee may, in the exercise of its good faith business judgment, agree to recognize transfers of Claims after the Distribution Record Date, but shall have no obligation to do so.

8.5   Delivery of Distributions.   All Distributions, deliveries and payments to the holders of any Allowed Class 1, 4, 5A or 5B Claims shall be made to the addresses set forth on the respective proofs of Claim filed in this Bankruptcy Case by such Claimants or, if the Distribution is to be made based on a Claim reflected as Allowed in the Schedules, at the address reflected in the Schedules.  Any such Distribution, delivery or payment shall be deemed as made for all purposes relating to this Plan when deposited in the United States Mail, postage prepaid, addressed as required in the preceding sentence.  If any Distribution is returned as undeliverable, no further Distribution shall be made on account of such Allowed Claim unless and until the Acis Trustee is notified of such holder's then current address, at which time all missed Distributions shall be made to the holder of such Allowed Claim.  However, all notices to the Acis Trustee reflecting new or updated addresses for undeliverable Distributions shall be made on or before one hundred twenty (120) days after the date of the attempted Distribution or such longer period as the Acis Trustee may fix in the exercise of its sole discretion.  After such date, all Unclaimed Property shall revert to the Acis Trustee and the Claim of any holder with respect to such property shall be discharged and forever barred.

8.6   W-9 Forms.   Each holder of an Allowed Claim must provide a W-9 form or other such necessary information to comply with any withholding requirements of any governmental unit (collectively the "**W-9 Form**") to the Acis Trustee prior to receiving any Distribution from

the Acis Trust. In the event a holder of an Allowed Claim does not provide a W-9 Form to the Acis Trustee within thirty (30) days of the Effective Date, the Acis Trustee shall, at an appropriate time, issue a written request to each holder of an Allowed Claim that has not previously provided a W-9 Form to the Acis Trustee. The request shall be in writing and shall be delivered to the last address known to the Debtors or Acis Trustee, as appropriate. The request shall conspicuously advise and disclose that failure to provide a W-9 Form to the Acis Trustee within thirty (30) shall result in a waiver of any right or rights to a Distribution from the Acis Trust. In the event any holder of an Allowed Claim fails to provide the Acis Trustee with a W-9 Form within thirty (30) days after the date of written request described herein, then the holder of such Allowed Claim shall be deemed to have waived the right to receive any distribution whatsoever from the Acis Trust.

8.7    Time Bar to Cash Payments. Checks issued in respect of Allowed Claims shall be null and void if not cashed within ninety (90) days of the date of issuance thereof. Requests for reissuance of any check shall be made directly to the Acis Trustee by the holder of the Allowed Claim with respect to which such check originally was issued. Any Claim in respect of such a voided check shall be made on or before one hundred twenty (120) days after the date of issuance of such check or such longer period as the Acis Trustee may fix. After such date, all Claims in respect of void checks shall be discharged and forever barred.

8.8    Cure Period. Except as otherwise set forth herein, the failure by the Acis Trustee to timely perform any term, provision or covenant contained in this Plan, or to make any payment or Distribution required by this Plan to any Creditor, or the failure to make any payment or perform any covenant on any note, instrument or document issued pursuant to this Plan, shall not constitute an event of default unless and until the Acis Trustee has been given thirty (30) days written notice of such alleged default in the manner provided in this Plan, and provided an opportunity to cure such alleged default. Until the expiration of such thirty (30) day cure period, the Acis Trustee shall not be in default, and performance during such thirty (30) day cure period shall be deemed as timely for all purposes. Such written notice and passage of the thirty (30) day cure period shall constitute conditions precedent to declaring or claiming any default under this Plan or bringing any action or legal proceeding by any Person to enforce any right granted under this Plan.

8.9    Distributions after Substantial Consummation. All Distributions of any kind made to any Creditor after Substantial Consummation and any and all other actions taken under this Plan after Substantial Consummation shall not be subject to relief, reversal or modification by any court unless the implementation of the Confirmation Order is stayed by an order granted under Bankruptcy Rule 8005.

## ARTICLE IX
## TAXES

9.1    Income Tax Status. Consistent with Revenue Procedure 94-45, 1994-2 C. B. 684, the Acis Trust shall be treated as a liquidating trust pursuant to Treasury Regulation Section 301.7701-4(d) and as a grantor trust pursuant to IRC Sections 671-677. Accordingly, for federal income tax purposes, it is intended that the Beneficiaries be treated as if they had received a distribution from the Estate of an undivided interest in each of the Acis Trust Assets

(to the extent of the value of their respective share in the applicable assets) and then contributed such interests to the Acis Trust, and the Beneficiaries will be treated as the grantors and owners thereof.

9.2     Tax Returns.  The Acis Trustee shall file tax returns for the Acis Trust as a grantor trust pursuant to Treasury Regulation Section 1.671-4(a) and in accordance with the Plan.  The Acis Trust also shall annually (for tax years in which Distributions from the Acis Trust are made) send to each holder of a beneficial interest a separate statement setting forth the holder's share of items of income, gain, loss, deduction, or credit and all such holders shall report such items on their federal income tax returns; provided, however, that no such statement need be sent to any Class that is not expected to receive any Distribution from the Acis Trust.  The Acis Trust's taxable income, gain, loss, deduction, or credit will be allocated to the Beneficiaries in accordance with their relative beneficial interests in the Acis Trust.

9.3     Withholding of Taxes and Reporting Related to Acis Trust Operations.  The Acis Trust shall be responsible for filing all federal, state, and local tax returns for the Debtors and the Acis Trust, but not for the Reorganized Debtor.  The Acis Trust shall comply with all withholding and reporting requirements imposed by any federal, state, or local taxing authority, and all distributions made by the Acis Trust shall be subject to any such withholding and reporting requirements.  The Acis Trustee shall be authorized to take any and all actions that may be necessary or appropriate to comply with such withholding and reporting requirements including, without limitation, requiring that, as a condition to the receipt of a Distribution, the holder of an Allowed Claim complete the appropriate IRS Form W-8 or IRS Form W-9, as applicable to each holder. Notwithstanding any other provision of the Plan, (a) each holder of an Allowed Claim that is to receive a Distribution from the Acis Trust shall have the sole and exclusive responsibility for the satisfaction and payment of any tax obligations imposed on such holder by any Governmental Unit, including income and other tax obligations, on account of such Distribution, and (b) no Distribution shall be made to or on behalf of such holder pursuant to the Plan unless and until such holder has made arrangements satisfactory to the Acis Trustee to allow it to comply with its tax withholding and reporting requirements. Any property to be distributed by the Acis Trust shall, pending the implementation of such arrangements, be treated as an undeliverable Distribution to be held by the Acis Trustee, as the case may be, until such time as the Acis Trustee is satisfied with the holder's arrangements for any withholding tax obligations.

9.4     Valuations.  As soon as possible after the Effective Date, the Acis Trust shall make a good faith valuation of the Acis Trust Assets, and such valuation shall be used consistently by all parties for all federal income tax purposes.  The Acis Trust also shall file (or cause to be filed) any other statements, returns, or disclosures relating to the Acis Trust that are required by any Governmental Unit for taxing purposes.  The Acis Trust may request an expedited determination of taxes of the Debtors or of the Acis Trust under Section 505(b) of the Bankruptcy Code for all tax returns filed for, or on behalf of, the Debtors and the Acis Trust for all taxable periods through the dissolution of the Acis Trust.

9.5     Payment of Taxes.  The Acis Trust shall be responsible for payments of any taxes imposed on the Acis Trust or the Acis Trust Assets.

## ARTICLE X
## TERMINATION OF ACIS TRUST

10.1     <u>Termination of Acis Trust</u>.  The Acis Trustee shall be discharged and the Acis Trust shall be terminated, at such time as (i) all Disputed Claims have been resolved, (ii) all of the Acis Trust Assets have been liquidated, (iii) all duties and obligations of the Acis Trustee under the Acis Trust Agreement have been fulfilled, (iv) all Distributions required to be made by the Acis Trust under the Plan and this Acis Trust Agreement have been made, and (v) the Bankruptcy Case has been closed; provided, however, that in no event shall the Acis Trust be dissolved later than five (5) years from the Effective Date unless the Bankruptcy Court, upon motion within the six-month period prior to the fifth anniversary (or the end of any extension period approved by the Bankruptcy Court), determines that a fixed period extension (not to exceed one (1) year, together with any prior extensions, without a favorable letter ruling from the Internal Revenue Service that any further extension would not adversely affect the status of the Acis Trust as a Acis trust for federal income tax purposes) is necessary to facilitate or complete the recovery and liquidation of the Acis Trust Assets.

10.2     <u>Events Upon End of Term Termination</u>.  At the conclusion of the term of the Acis Trust, the Acis Trust shall distribute the remaining Acis Trust Assets, if any, to the Beneficiaries, in accordance with the Plan, the Plan Confirmation Order, and this Acis Trust Agreement, provided, however, that the Acis Trust shall not be obligated to make Distributions to a Class of Claims if the amount of the available cash is *de minimis* and is not sufficient to warrant the incurrence of costs in making the Distribution.

10.3     <u>Winding Up and Discharge of the Acis Trustee</u>.  For the purposes of winding up the affairs of the Acis Trust at the conclusion of its term, the Acis Trustee shall continue to act as Acis Trustee until its duties under this Acis Trust Agreement have been fully discharged or its role as Acis Trustee is otherwise terminated under this Acis Trust Agreement and the Plan. Upon a motion by the Acis Trustee, the Bankruptcy Court may enter an order relieving the Acis Trustee, its agents, and employees of any further duties and discharging the Acis Trustee.

## ARTICLE XI
## MISCELLANEOUS PROVISIONS

11.1     <u>Amendments</u>.  The Acis Trustee may modify, supplement, or amend this Acis Trust Agreement without Bankruptcy Court approval (a) to clarify any ambiguity or inconsistency, or render this Acis Trust Agreement in compliance with its stated tax purposes, or (b) in any other way that is not inconsistent with the Plan or the Plan Confirmation Order, only if such modification, supplement, or amendment does not materially and adversely affect the interests, rights, treatment, or Distributions of or to any Beneficiaries.  All other modifications, supplements, and amendments shall require prior approval of the Bankruptcy Court.

11.2     <u>Waiver</u>.  No failure by the Acis Trust or the Acis Trustee to exercise or delay in exercising any right, power, or privilege hereunder shall operate as a waiver, nor shall any single or partial exercise of any right, power, or privilege hereunder preclude any further exercise thereof, or of any other right, power, or privilege.

11.3 <u>Cumulative Rights and Remedies</u>.  The rights and remedies provided in this Acis Trust Agreement are cumulative and are not exclusive of any rights under law or in equity.

11.4 <u>No Bond Required</u>.  Notwithstanding any state law to the contrary, the Acis Trustee (including any successor Acis Trustee) shall be exempt from giving any bond, surety, or other security in any jurisdiction.

11.5 <u>Irrevocability</u>.  This Acis Trust Agreement and the Acis Trust created hereunder shall be irrevocable, except as otherwise expressly provided in this Acis Trust Agreement.

11.6 <u>Relationship to the Plan</u>.  The principal purpose of this Acis Trust Agreement is to aid in the implementation of the Plan and, therefore, this Acis Trust Agreement incorporates and is subject to the provisions of the Plan and the Plan Confirmation Order.  In the event that any provision of this Acis Trust Agreement is found to be inconsistent with a provision of the Plan or the Plan Confirmation Order, the provisions of the Plan or the Plan Confirmation Order, as applicable, shall control.

11.7 <u>Division of Acis Trust</u>.  Under no circumstances shall the Acis Trustee have the right or power to divide the Acis Trust unless authorized to do so by the Bankruptcy Court.

11.8 <u>Applicable Law</u>.  The Acis Trust is made in the State of Texas, and the Acis Trust and this Acis Trust Agreement, and the rights and obligations of the Acis Trustee, are to be governed by and construed and administered according to the laws of the State of Texas; provided, however, that, except as expressly provided in this Acis Trust Agreement, there shall not be applicable to the Acis Trust, the Acis Trustee, or this Acis Trust Agreement any provisions of the laws (statutory or common) of the State of Texas pertaining to trusts that relate to or regulate (a) the filing with any court or governmental body or agency of trustee accounts or schedules of trustee fees and charges, (b) affirmative requirements to post bonds for trustees, officers, agents, or employees of a trust, (c) the necessity for obtaining court or other governmental approval concerning the acquisition, holding, or disposition of real or personal property, (d) fees or other sums payable to trustees, officers, agents, or employees of a trust, (e) the allocation of receipts and expenditures to income or principal, (f) restrictions or limitations on the permissible nature, amount or concentration of trust investments or requirements relating to the titling, storage or other manner of holding of trust assets, or (g) the establishment of fiduciary or other standards or responsibilities or limitations on the acts or powers of trustees that are inconsistent with the limitations or liabilities or authorities and powers of the Acis Trustee set forth or referenced in this Acis Trust Agreement.

11.9 <u>Retention of Jurisdiction</u>.  Notwithstanding the Effective Date, and to the fullest extent permitted by law, the Bankruptcy Court shall retain exclusive jurisdiction over the Acis Trust after the Effective Date, including, without limitation, jurisdiction to resolve any and all controversies, suits, and issues that may arise in connection therewith, including, without limitation, this Acis Trust Agreement, or any entity's obligations incurred in connection herewith, including without limitation, any action against the Acis Trustee or any professional retained by the Acis Trustee, in its capacity as such.  Each party to this Acis Trust Agreement and each Beneficiary of the Acis Trust hereby irrevocably consents to the exclusive jurisdiction of the Bankruptcy Court in any action to enforce, interpret, or construe any provision of this Acis

Trust Agreement or of any other agreement or document delivered in connection with this Acis Trust Agreement, and also hereby irrevocably waives any defense of improper venue, forum non conveniens, or lack of personal jurisdiction to any such action brought in the Bankruptcy Court. Each party further irrevocably agrees that any action to enforce, interpret, or construe any provision of this Acis Trust Agreement will be brought only in the Bankruptcy Court. Each party hereby irrevocably consents to the service by certified or registered mail, return receipt requested, of any process in any action to enforce, interpret, or construe any provision of this Acis Trust Agreement. Notwithstanding the preceding, nothing herein shall be interpreted as requiring the commencement or prosecution of any Estate Claims in the Bankruptcy Court, and all determinations regarding the proper forum for initiating any Estate Claim shall be at the discretion of the Acis Trust, consistent with applicable law.

11.10   Severability.  In the event that any provision of this Acis Trust Agreement or the application thereof to any person or circumstance shall be determined by the Bankruptcy Court to be invalid or unenforceable to any extent, the remainder of this Acis Trust Agreement, or the application of such provision to persons or circumstance, other than those as to which it is held invalid or unenforceable, shall not be affected thereby, and such provision of this Acis Trust Agreement shall be valid and enforced to the fullest extent permitted by law.

11.11   Limitation of Benefits.  Except as otherwise specifically provided in this Acis Trust Agreement, the Plan, or the Plan Confirmation Order, nothing herein is intended or shall be construed to confer upon or to give any person other than the parties hereto and the Beneficiaries any rights or remedies under or by reason of this Acis Trust Agreement.

11.12   Notices.  All notices, requests, demands, consents, and other communication hereunder shall be in writing and shall be deemed to have been duly given to a person, if delivered in person or by facsimile or if sent by overnight mail, registered mail, certified mail or regular mail, with postage prepaid, to the following addresses:

If to the Acis Trustee:

[ADD]

If to a Beneficiary:

To the name and Distribution address set forth in
the Register with respect to such Beneficiary.

The parties may designate in writing from time to time other and additional places to which notices may be sent.

11.13   Further Assurances.  From and after the Effective Date, the parties hereto covenant and agree to execute and deliver all such documents and notices and to take all such further actions as may reasonably be required from time to time to carry out the intent and purposes of this Acis Trust Agreement, and to consummate the transactions contemplated hereby.

11.14 <u>Integration</u>. This Acis Trust Agreement, the Plan, and the Plan Confirmation Order constitute the entire agreement with, by, and among the parties hereto and thereto, and there are no representations, warranties, covenants, or obligations except as set forth herein, in the Plan, and in the Plan Confirmation Order. This Acis Trust Agreement, together with the Plan and the Plan Confirmation Order, supersede all prior and contemporaneous agreements, understandings, negotiations, and discussions, written or oral, of the parties hereto, relating to any transaction contemplated hereunder. Except as otherwise provided in this Acis Trust Agreement, the Plan, or Plan Confirmation Order, nothing herein is intended or shall be construed to confer upon or give any person other than the parties hereto and the Beneficiaries any rights or remedies under or by reason of this Acis Trust Agreement.

11.15 <u>Interpretation</u>. The enumeration and Section headings contained in this Acis Trust Agreement are solely for convenience of reference and shall not affect the meaning or interpretation of this Acis Trust Agreement or of any term or provision hereof. Unless context otherwise requires, whenever used in this Acis Trust Agreement the singular shall include the plural and the plural shall include the singular, and words importing the masculine gender shall include the feminine and the neuter, if appropriate, and vice versa, and words importing persons shall include partnerships, associations, and corporations. The words herein, hereby, and hereunder and words with similar import, refer to this Acis Trust Agreement as a whole and not to any particular Section or subsection hereof unless the context requires otherwise. Any reference to the "Acis Trustee" shall be deemed to include a reference to the "Acis Trust" and any reference to the "Acis Trust" shall be deemed to include a reference to the "Acis Trustee" except for the references in which the context otherwise requires.

11.16 <u>Counterparts</u>. This Acis Trust Agreement may be signed by the parties hereto in counterparts, which, when taken together, shall constitute one and the same document.

[*Signature Pages Follow*]

IN WITNESS WHEREOF, the parties hereto have either executed and acknowledged this Acis Trust Agreement, or caused it to be executed and acknowledged on their behalf by their duly authorized representatives, all as of the date first above written.

**ACIS CAPITAL MANAGEMENT, L.P.**

By: _____
    Name: Robin E. Phelan
    Title: Chapter 11 Trustee

**ACIS CAPITAL MANAGEMENT GP, LLC**

By: _____
    Name: Robin E. Phelan
    Title: Chapter 11 Trustee

**_____, as Acis Trustee**

By:_____
    Name: _____
    (and not in his personal capacity) in his
    capacity as Acis Trustee of the Acis Trust

L:\JPROSTOK\ACIS Capital Management (Trustee Rep)\Plan and Disclosure Statement\Acis Trust Agreement Plan B and C 7.13.18.docx

# EXHIBIT D

## TO FIRST AMENDED JOINT PLAN FOR ACIS CAPITAL MANAGEMENT, LP AND ACIS CAPITAL MANAGEMENT GP, LLC

### [ESTATE CLAIMS]

**EXHIBIT "D"**
**to**
**Joint Plan for Acis Capital Management, LP and Acis Capital Management GP, LLC**

1.    <u>Defined Terms</u>.  This Exhibit "D" constitutes an integral part of the Plan of which it is a part.  Defined terms in the Plan are to be given the same meaning in this Exhibit "D".  The rules of construction set forth in Article I.B. above shall likewise apply to this Exhibit "D".

2.    <u>Estate Claims Reserved, Retained and Preserved</u>.  All Estate Claims are hereby reserved, retained and preserved, and shall all be transferred to, and vested in, the Acis Trust pursuant to this Plan, and shall include without limitation all of the Estate Claims described below.  In reserving, retaining, and preserving Estate Claims against any named Person or category of Persons, it is the intent of this Plan to so reserve, retain, and preserve any and all Estate Claim against each such Person or category of Persons, including all such Estate Claims pursuant to any applicable common law, based on any contract or agreement or based upon any law, statute or regulation of any political entity, including the United States and any state or political subdivision thereof, as well as all applicable remedies, whether legal or equitable.  Without limiting the generality of the foregoing, the reservation, retention, and preservation of Estate Claims against any Person, and the term "<u>Estate Claims</u>," shall encompass all Estate Claims against any such Person, including without limitation, all such Estate Claims for breach of contract, all rights to enforce any contract, any form of estoppel, fraud, constructive fraud, abuse of process, malicious prosecution, defamation, libel, slander, conversion, trespass, intentional infliction of emotional distress or other harm, negligence, gross negligence, breach of any duty owed under either applicable law or any contract, breach of any fiduciary duty or duty of loyalty or due care, aiding and/or abetting breach of fiduciary duty, aiding and/or abetting breach of duty of loyalty or due care, alter ego, veil piercing, self-dealing, usurpation of corporate opportunity, turnover of Estate Assets, unauthorized use of Estate Assets, including intellectual property rights or Assets owned by the Debtors or Chapter 11 Trustee, quantum merit, tortious interference, duress, unconscionability, undue influence, and unjust enrichment, as well as any cause of action for conspiracy to commit any unlawful act, or aiding and/or abetting any such unlawful act, or claims arising from or relating to the filing of the involuntary bankruptcy petitions against the Debtors.

3.    <u>Highland Claims</u>.  All Estate Claims against Highland are reserved, retained and preserved for the benefit of the Estate and Acis Trust, including without limitation all such Estate Claims asserted by the Chapter 11 Trustee in Adversary Proceeding No. 18-03078-sgj (the "<u>Highland Adversary</u>") and Adversary Proceeding No. 18-03212-sgj (the "<u>Trustee's Adversary</u>").  The Estate Claims against Highland shall include all Estate Claims set forth in paragraph 2 above, including without limitation, the following:

(a)    All such Claims asserted by the Chapter 11 Trustee or Estate in, or which could be asserted based on the facts or transactions alleged in, the Highland Adversary;

(b)    All such Claims asserted by the Chapter 11 Trustee or Estate in, or which could be asserted based on the facts or transactions alleged in, the Trustee's Adversary;

(c)    All Avoidance Actions against Highland, including any claims to avoid and recover amounts transferred by the Debtors to Highland under the Shared Services Agreement or Sub-Advisory Agreement;

(d)    All Claims for breach of the Shared Services Agreement or Sub-Advisory

Agreement;

(e)    All Claims against Highland for amounts paid by the Debtors to Highland under the Shared Services Agreement and Sub-Advisory Agreement, including any Claim that Highland overcharged Acis LP for services under such agreements;

(f)    All Claims for breach of the PMAs or the Indentures;

(g)    All Claims for breach of fiduciary duty or duty of loyalty or due care owed to the Debtors or Chapter 11 Trustee;

(h)    All Claims for aiding and/or abetting breach of fiduciary duty, breach of duty loyalty or due care, or any other unlawful act;

(i)    All Clams for usurpation of a corporate opportunity belonging to either of the Debtors;

(j)    All Claims against Highland for the turnover of Estate Assets, including Estate property that the Chapter 11 Trustee may use, sell or lease under section 363 of the Bankruptcy Code including, without limitation, any intellectual property rights or Assets owned by the Debtors or Estate, as well as the turnover of any books, documents, records and papers relating to the Debtors' property or financial affairs;

(k)    All Claims against Highland for the unauthorized use of Estate Assets including, without limitation, any intellectual property rights or Assets owned by the Debtors or Estate;

(l)    All Claims, rights or remedies for Equitable Subordination or Recharacterization of any Claim by Highland against the Debtors, Chapter 11 Trustee, or Estate;

(m)    All Claims based on alter ego or rights to pierce the corporate veil of Acis LP as to any Person, including as against Highland or any Affiliates thereof, James D. Dondero, Mark K. Okada, or any other officers, directors, equity interest holders, or Persons otherwise in control of Acis LP; and,

(n)    All Claims based on alter ego or rights to pierce the corporate veil of Highland as to any Person, including as against any Affiliates of Highland, James D. Dondero, Mark K. Okada, or any other officers, directors, equity interest holders, or Persons otherwise in control of Highland.

4.    <u>HCLOF Claims</u>.  All Estate Claims against HCLOF are reserved, retained and preserved for the benefit of the Estate and Acis Trust, including without limitation all such Estate Claims asserted by the Chapter 11 Trustee in the Highland Adversary and the Trustee's Adversary.  The Estate Claims against HCLOF shall include all Estate Claims set forth in paragraph 2 above, including without limitation, the following:

(a)    All such Claims against HCLOF asserted by the Chapter 11 Trustee or Estate in, or which could be asserted based on the facts or transactions alleged in, the Highland Adversary;

(b)     All such Claims against HCLOF asserted by the Chapter 11 Trustee or Estate in, or which could be asserted based on the facts or transactions alleged in, the Trustee's Adversary;

(c)     All Avoidance Actions against HCLOF;

(d)     All Claims for breach of the PMAs or the Indentures;

(e)     All Claims for breach of fiduciary duty or duty of loyalty or due care owed to the Debtors or Chapter 11 Trustee;

(f)     All Claims for aiding and/or abetting breach of fiduciary duty, breach of duty loyalty or due care, or any other unlawful act;

(g)     All Clams for usurpation of a corporate opportunity belonging to either of the Debtors;

(h)     All Claims against HCLOF for the turnover of Estate Assets, including Estate property that the Chapter 11 Trustee may use, sell or lease under section 363 of the Bankruptcy Code including, without limitation, any intellectual property rights or Assets owned by the Debtors or Estate, as well as the turnover of any books, documents, records and papers relating to the Debtors' property or financial affairs;

(i)     All Claims against HCLOF for the unauthorized use of Estate Assets including, without limitation, any intellectual property rights or Assets owned by the Debtors or Estate;

(j)     All Claims, rights or remedies for Equitable Subordination or Recharacterization of any Claim by HCLOF against the Debtors, Chapter 11 Trustee, or Estate; and,

(k)     All Claims based on alter ego or rights to pierce the corporate veil of HCLOF as to any Person, including as against any Affiliates of HCLOF or Highland, William Scott, Heather Bestwick, or any other officers, directors, equity interest holders, or Persons otherwise in control of HCLOF.

5.     <u>Highland HCF Advisor, Ltd. Claims</u>.  All Estate Claims against Highland HCF Advisor, Ltd. ("<u>Highland HCF</u>") are reserved, retained and preserved for the benefit of the Estate and Acis Trust, including without limitation all such Estate Claims asserted by the Chapter 11 Trustee in the Highland Adversary.  The Estate Claims against Highland HCF shall include all Estate Claims set forth in paragraph 2 above, including without limitation, the following:

(a)     All such Claims against Highland HCF asserted by the Chapter 11 Trustee or Estate in, or which could be asserted based on the facts or transactions alleged in, the Highland Adversary;

(b)     All such Claims against Highland HCF asserted by the Chapter 11 Trustee or Estate in, or which could be asserted based on the facts or transactions alleged in, the Trustee's Adversary;

(c)     All Avoidance Actions against Highland HCF;

          (d)      All Claims for breach of fiduciary duty or duty of loyalty or due care owed to the Debtors or Chapter 11 Trustee;

          (e)      All Claims for aiding and/or abetting breach of fiduciary duty, breach of duty loyalty or due care, or any other unlawful act;

          (f)      All Clams for usurpation of a corporate opportunity belonging to either of the Debtors;

          (g)      All Claims against Highland HCF for the turnover of Estate Assets, including Estate property that the Chapter 11 Trustee may use, sell or lease under section 363 of the Bankruptcy Code including, without limitation, any intellectual property rights or Assets owned by the Debtors or Estate, as well as the turnover of any books, documents, records and papers relating to the Debtors' property or financial affairs;

          (h)      All Claims against Highland HCF for the unauthorized use of Estate Assets including, without limitation, any intellectual property rights or Assets owned by the Debtors or Estate;

          (i)      All Claims, rights or remedies for Equitable Subordination or Recharacterization of any Claim by Highland HCF against the Debtors, Chapter 11 Trustee, or Estate; and,

          (j)      All Claims based on alter ego or rights to pierce the corporate veil of Highland HCF as to any Person, including as against any Affiliates of Highland HCF or Highland, or any other officers, directors, equity interest holders, or Persons otherwise in control of Highland HCF.

          6.      <u>Highland CLO Management, Ltd. Claims</u>.  All Estate Claims against Highland CLO Management, Ltd. ("<u>Highland CLOM</u>") are reserved, retained and preserved for the benefit of the Estate and Acis Trust, including without limitation all such Estate Claims asserted by the Chapter 11 Trustee in the Highland Adversary.  The Estate Claims against Highland CLOM shall include all Estate Claims set forth in paragraph 2 above, including without limitation the following:

          (a)      All such Claims against Highland CLOM asserted by the Chapter 11 Trustee or Estate in, or which could be asserted based on the facts or transactions alleged in, the Highland Adversary;

          (b)      All such Claims against Highland CLOM asserted by the Chapter 11 Trustee or Estate in, or which could be asserted based on the facts or transactions alleged in, the Trustee's Adversary;

          (c)      All Avoidance Actions against Highland CLOM;

          (d)      All Claims for breach of fiduciary duty or duty of loyalty or due care owed to the Debtors or Chapter 11 Trustee;

          (e)      All Claims for aiding and/or abetting breach of fiduciary duty, breach of duty loyalty or due care, or any other unlawful act;

(f)     All Clams for usurpation of a corporate opportunity belonging to either of the Debtors;

(g)     All Claims against Highland CLOM for the turnover of Estate Assets, including Estate property that the Chapter 11 Trustee may use, sell or lease under section 363 of the Bankruptcy Code including, without limitation, any intellectual property rights or Assets owned by the Debtors or Estate, as well as the turnover of any books, documents, records and papers relating to the Debtors' property or financial affairs;

(h)     All Claims against Highland CLOM for the unauthorized use of Estate Assets including, without limitation, any intellectual property rights or Assets owned by the Debtors or Estate;

(i)     All Claims, rights or remedies for Equitable Subordination or Recharacterization of any Claim by Highland CLOM against the Debtors, Chapter 11 Trustee, or Estate; and,

(j)     All Claims based on alter ego or rights to pierce the corporate veil of Highland CLOM as to any Person, including as against any Affiliates of Highland CLOM or Highland, or any other officers, directors, equity interest holders, or Persons otherwise in control of Highland CLOM.

7.     <u>CLO Holdco, Ltd. Claims</u>.  All Estate Claims against CLO Holdco, Ltd. ("<u>CLO Holdco</u>") are reserved, retained and preserved for the benefit of the Estate and Acis Trust, including without limitation all such Estate Claims asserted by the Chapter 11 Trustee in the Trustee's Adversary.  The Estate Claims against CLO Holdco shall include all Estate Claims set forth in paragraph 2 above, including without limitation, the following:

(a)     All such Claims against CLO Holdco asserted by the Chapter 11 Trustee or Estate in, or which could be asserted based on the facts or transactions alleged in, the Highland Adversary;

(b)     All such Claims against CLO Holdco asserted by the Chapter 11 Trustee or Estate in, or which could be asserted based on the facts or transactions alleged in, the Trustee's Adversary;

(c)     All Avoidance Actions against CLO Holdco;

(d)     All Claims for breach of fiduciary duty or duty of loyalty or due care owed to the Debtors or Chapter 11 Trustee;

(e)     All Claims for aiding and/or abetting breach of fiduciary duty, breach of duty loyalty or due care, or any other unlawful act;

(f)     All Clams for usurpation of a corporate opportunity belonging to either of the Debtors;

(g)     All Claims against CLO Holdco for the turnover of Estate Assets, including Estate property that the Chapter 11 Trustee may use, sell or lease under section 363 of the Bankruptcy Code including, without limitation, any intellectual property rights or Assets owned by the Debtors or Estate, as well as the turnover of any books, documents, records and

papers relating to the Debtors' property or financial affairs;

        (h)     All Claims against CLO Holdco for the unauthorized use of Estate Assets including, without limitation, any intellectual property rights or Assets owned by the Debtors or Estate;

        (i)     All Claims, rights or remedies for Equitable Subordination or Recharacterization of any Claim by Highland against the Debtors, Chapter 11 Trustee, or Estate; and

        (j)     All Claims based on alter ego or rights to pierce the corporate veil of CLO Holdco as to any Person, including as against any Affiliates of CLO Holdco or Highland, or any other officers, directors, equity interest holders, or Persons otherwise in control of CLO Holdco.

    8.    <u>Neutra, Ltd. Claims</u>.  All Estate Claims against Neutra, Ltd. ("<u>Neutra</u>") are reserved, retained and preserved for the benefit of the Estate and Acis Trust, including without limitation all such Estate Claims asserted by the Chapter 11 Trustee in the Trustee's Adversary. The Estate Claims against Neutra shall include all Estate Claims set forth in paragraph 2 above, including without limitation the following:

        (a)     All such Claims against Neutra asserted by the Chapter 11 Trustee or Estate in, or which could be asserted based on the facts or transactions alleged in, the Highland Adversary;

        (b)     All such Claims against Neutra asserted by the Chapter 11 Trustee or Estate in, or which could be asserted based on the facts or transactions alleged in, the Trustee's Adversary;

        (c)     All Avoidance Actions against Neutra;

        (d)     All Claims for breach of fiduciary or duty of loyalty or due care owed to the Debtors or Chapter 11 Trustee;

        (e)     All Claims for aiding and/or abetting breach of fiduciary duty, breach of duty loyalty or due care, or any other unlawful act;

        (f)     All Clams for usurpation of a corporate opportunity belonging to either of the Debtors;

        (g)     All Claims against Neutra for the turnover of Estate Assets, including Estate property that the Chapter 11 Trustee may use, sell or lease under section 363 of the Bankruptcy Code including, without limitation, any intellectual property rights or Assets owned by the Debtors or Estate, as well as the turnover of any books, documents, records and papers relating to the Debtors' property or financial affairs;

        (h)     All Claims against Neutra for the unauthorized use of Estate Assets including, without limitation, any intellectual property rights or Assets owned by the Debtors or Estate;

        (i)     All Claims, rights or remedies for Equitable Subordination or Recharacterization of any Claim by Neutra against the Debtors, Chapter 11 Trustee, or Estate;

       (j)     All Claims based on alter ego or rights to pierce the corporate veil of Acis LP as to any Person, including as against Neutra, Highland, or any Affiliates thereof, James D. Dondero, Mark K. Okada, or any other officers, directors, equity interest holders, or Persons otherwise in control of Acis LP; and

       (k)     All Claims based on alter ego or rights to pierce the corporate veil of Neutra as to any Person, including as against any Affiliates of Neutra or Highland, or any other officers, directors, equity interest holders, or Persons otherwise in control of Neutra.

       9.     <u>Claims against Issuers, Co-Issuers and Indenture Trustee</u>.  All Estate Claims against CLO-3, CLO-4, CLO-5, and CLO-6 (collectively, the "<u>Issuers</u>"), Acis CLO 2014-3 LLC, Acis CLO 2014-4 LLC, Acis CLO 2014-5 LLC, and Acis CLO 2015-6 LLC (collectively, the "<u>Co-Issuers</u>"), and the Indenture Trustee are reserved, retained and preserved for the benefit of the Estate and Acis Trust, including without limitation all such Estate Claims asserted by the Chapter 11 Trustee in the Trustee's Adversary.  The Estate Claims against the Issuers, Co-Issuers and/or Indenture Trustee shall include all Estate Claims set forth in paragraph 2 above, including without limitation the following:

       (a)     All such Claims against the Issuers, Co-Issuers, and/or Indenture Trustee asserted by the Chapter 11 Trustee or Estate in, or which could be asserted based on the facts or transactions alleged in, the Highland Adversary;

       (b)     All such Claims against the Issuers, Co-Issuers, and/or Indenture Trustee asserted by the Chapter 11 Trustee or Estate in, or which could be asserted based on the facts or transactions alleged in, the Trustee's Adversary;

       (c)     All Avoidance Actions against the Issuers, Co-Issuers and/or Indenture Trustee;

       (d)     All Claims for breach of the Indentures, PMAs or any other agreements between Acis LP and the Issuers, Co-Issuers, and/or Indenture Trustee;

       (e)     All Claims for breach of fiduciary duty or duty of loyalty or due care owed to the Debtors or Chapter 11 Trustee;

       (f)     All Claims for aiding and/or abetting breach of fiduciary duty, breach of duty loyalty or due care, or any other unlawful act;

       (g)     All Clams for usurpation of a corporate opportunity belonging to either of the Debtors;

       (h)     All Claims against the Issuers, Co-Issuers and/or Indenture Trustee for the turnover of Estate Assets, including Estate property that the Chapter 11 Trustee may use, sell or lease under section 363 of the Bankruptcy Code including, without limitation, any intellectual property rights or Assets owned by the Debtors or Estate, as well as the turnover of any books, documents, records and papers relating to the Debtors' property or financial affairs;

       (i)     All Claims against the Issuers, Co-Issuers and/or Indenture Trustee for the unauthorized use of Estate Assets including, without limitation, any intellectual property rights or Assets owned by the Debtors or Estate; and,

(j)     All Claims, rights or remedies for Equitable Subordination or Recharacterization of any Claim by the Issuers or Co-Issuers against the Debtors, Chapter 11 Trustee, or Estate.

10.     <u>Highland Affiliate Claims</u>.  All Estate Claims against any Affiliates of Highland are reserved, retained and preserved for the benefit of the Estate and Acis Trust, including without limitation all such Estate Claims asserted by the Chapter 11 Trustee in the Highland Adversary and the Trustee's Adversary.  The Estate Claims against any Affiliates of Highland shall include all Estate Claims set forth in paragraph 2 above, including without limitation the following:

(a)     All such Claims against any Highland Affiliate asserted by the Chapter 11 Trustee or Estate in, or which could be asserted based on the facts or transactions alleged in, the Highland Adversary;

(b)     All such Claims against any Highland Affiliate asserted by the Chapter 11 Trustee or Estate in, or which could be asserted based on the facts or transactions alleged in, the Trustee's Adversary;

(c)     All Avoidance Actions against any Highland Affiliate;

(d)     All Claims for breach of fiduciary duty or duty of loyalty or due care owed to the Debtors or Chapter 11 Trustee;

(e)     All Claims for aiding and/or abetting breach of fiduciary duty, breach of duty loyalty or due care, or any other unlawful act;

(f)     All Clams for usurpation of a corporate opportunity belonging to either of the Debtors;

(g)     All Claims against any Highland Affiliate for the turnover of Estate Assets, including Estate property that the Chapter 11 Trustee may use, sell or lease under section 363 of the Bankruptcy Code including, without limitation, any intellectual property rights or Assets owned by the Debtors or Estate, as well as the turnover of any books, documents, records and papers relating to the Debtors' property or financial affairs;

(h)     All Claims against any Highland Affiliate for the unauthorized use of Estate Assets including, without limitation, any intellectual property rights or Assets owned by the Debtors or Estate;

(i)     All Claims, rights or remedies for Equitable Subordination or Recharacterization of any Claim by any Highland Affiliate against the Debtors, Chapter 11 Trustee, or Estate;

(j)     All Claims based on alter ego or rights to pierce the corporate veil of Acis LP as to any Person, including as against Highland, Neutra, or any Affiliates thereof, James D. Dondero, Mark K. Okada, or any other officers, directors, equity interest holders, or Persons otherwise in control of Acis LP; and,

(k)     All Claims based on alter ego or rights to pierce the corporate veil of any Highland Affiliate as to any Person, including as against any other Affiliates of Highland or any officers, directors, equity interest holders, or Persons otherwise in control of any Highland

Affiliates.

11. <u>Dondero Claims</u>. All Estate Claims as defined in paragraph 2 above against James D. Dondero, individually, are hereby reserved, retained and preserved for the benefit of the Estate and Acis Trust, including without limitation all such Estate Claims against James D. Dondero for fraud, constructive fraud, breach of fiduciary duty, breach of duty of loyalty or due care, aiding and abetting breach of fiduciary duty, aiding and abetting breach of duty of loyalty or due care, self-dealing, usurpation of corporate opportunity, conflict of interest, negligence, gross negligence, all Avoidance Actions, breach of contract, breach of the Shared Services Agreement, breach of the Sub-Advisory Agreement, breach of the Debtors' limited partnership agreement or limited liability company agreement, conspiracy to commit any unlawful act, and aiding and abetting any unlawful act, as well as any Claim to pierce the corporate veil of any entity to hold James D. Dondero individually liable.

12. <u>Okada Claims</u>. All Estate Claims as defined in paragraph 2 above against Mark K. Okada, individually, are hereby reserved, retained and preserved for the benefit of the Estate and Acis Trust, including without limitation all such Estate Claims against Mark K. Okada for fraud, constructive fraud, breach of fiduciary duty, breach of duty of loyalty or due care, aiding and abetting breach of fiduciary duty, self-dealing, usurpation of corporate opportunity, conflict of interest, negligence, gross negligence, all Avoidance Actions, breach of contract, breach of the Shared Services Agreement, breach of the Sub-Advisory Agreement, breach of the Debtors' limited partnership agreement or limited liability company agreement, conspiracy to commit any unlawful act, and aiding and abetting any unlawful act, as well as any Claim to pierce the corporate veil of any entity to hold Mark K. Okada individually liable.

13. <u>Preference Claims</u>. All Avoidance Actions pursuant to section 547 of the Bankruptcy Code against any Person are hereby reserved, retained and preserved for the benefit of the Estate and Acis Trust for any payment made to any Person by either of the Debtors within ninety (90) days of the Petition Date (which was January 30, 2018), or made by either of the Debtors to any insider within one (1) year of the Petition Date. A non-exhaustive list of Persons who are believed to have received payments from either of the Debtors during the 90-day preference period, and the one-year preference period for Insiders, is attached to this **Exhibit "D"** as **Schedule "1"**. The Plan reserves, retains and preserves for the benefit of the Estate and Acis Trust all potential Claims arising out of or relating to the transfers reflected in **Schedule "1"**, including all Avoidance Actions pursuant to section 547 of the Bankruptcy Code. All rights and remedies are also reserved. retained and preserved with respect to the transfers reflected in **Schedule "1"** pursuant to section 550 of the Bankruptcy Code.

**Schedule "1"** reflects transfers made by the Debtors during the 90 days prior to the Petition Date and transfers made by the Debtors to any insiders within one (1) year of the Petition Date. While the Plan reserves, retains and preserves all Avoidance Actions relating to the transfers reflected in **Schedule "1"**, the Chapter 11 Trustee recognizes that certain of these transfers may not constitute a preferential transfer pursuant to section 547(b) of the Bankruptcy Code as a transfer made in the ordinary course of business transactions or based upon new value subsequently given by the transferee. Consequently, the listing of a payment on **Schedule "1"** does not necessarily mean that a transferee will ever be sued to avoid and recover the payment, the transfer, or the value thereof, but only that the Plan reserves, retains and preserves all rights (including Avoidance Actions) as to that payment.

14. <u>Claims Against Officers, Managers and Members</u>. All Estate Claims as defined in paragraph 2 above are hereby reserved, retained and preserved for the benefit of the Estate

and Acis Trust against all present and past officers, employees, members and managers of the Debtors, including all such Estate Causes of Action based on breach of fiduciary duty, aiding and abetting breach of fiduciary duty, breach of duty of loyalty or due care, aiding and abetting breach of duty of loyalty or due care, self-dealing, usurpation of corporate opportunity, gross negligence or conspiracy.  Without limiting the generality of the foregoing, this shall include all D&O Claims as against any present or former officer, director, employee, member, manager, or partner.

15.    <u>Retention of Claims Against Specific Persons or Categories of Persons</u>.  In addition to the foregoing, all Estate Claims as defined in paragraph 2 above are hereby reserved, retained and preserved for the benefit of the Estate and Acis Trust against the following Persons:

   (a)  William Scott;

   (b)  Heather Bestwick;

   (c)  Any other Person who may be so named at a later date by the Acis Trustee.

16.    <u>Counterclaims</u>.  All Estate Claims as defined in paragraph 2 above are reserved, retained and preserved for the benefit of the Estate and Acis Trust both as a basis for an affirmative recovery against the Person against whom such Claims are asserted and as a counterclaim or offset against any Person who asserts a Claim against the Estate or Acis Trust.

17.    <u>Piercing the Corporate Veil</u>.  With respect to all Estate Claims against any Person, all rights to pierce or ignore the corporate veil are hereby reserved, retained and preserved for the benefit of the Estate and the Acis Trust.  Without limiting the generality of the foregoing, this shall include: (a) any right to pierce the corporate veil, including reverse piercing, on any theory or basis, including alter ego or any theory of sham to perpetrate a fraud, and (b) any Claim or basis to pierce the corporate veil of any entity with respect to establishing personal liability against James D. Dondero or Mark K. Okada.

18.    <u>Avoidance Actions</u>.  All Avoidance Actions are hereby reserved, retained and preserved as to all Persons.  The reservation, retention and preservation of such Avoidance Actions shall include the reservation, retention and preservation for the benefit of the Estate and Acis Trust of all rights and remedies pursuant to section 550 of the Bankruptcy Code.

19.    <u>Estate Defenses</u>.  All Estate Defenses are hereby reserved, retained and preserved in favor of the Estate and Acis Trust as against any Person asserting any Claim against the Estate.  This includes asserting all Estate Claims as an offset to, or counterclaim against, any Person asserting a Claim against the Estate.  All defenses and affirmative defenses pursuant to applicable law are hereby reserved, retained and preserved for the benefit of the Estate and the Acis Trust, including without limitation, accord and satisfaction, assumption of risk, contributory negligence, duress, estoppel, failure of consideration, fraud, illegality, laches, license, payment, release, *res judicata*, collateral estoppel, statute of frauds, statute of limitations or response and waiver.

20.    <u>Equitable Subordination</u>.  All rights or remedies for Equitable Subordination are hereby reserved, retained and preserved in favor of the Estate and Acis Trust against any Person asserting any Claim against the Estate, including all such rights or remedies pursuant to

section 510(c) of the Bankruptcy Code. Without limiting the generality of the foregoing, this shall include all rights and remedies to Equitable Subordination as to any Claim asserted by Highland, any Affiliates of Highland, or any officers, directors, employees or equity interest owners of the Debtors, Highland, or any Affiliates thereof.

21. <u>Recharacterization</u>. All rights or remedies to recharacterize any Claim as an equity interest in either of the Debtors are hereby reserved, retained and preserved in favor of the Estate and Acis Trust against any Person asserting any Claim against the Estate. Without limiting the generality of the foregoing, this shall include all rights and remedies to recharacterize any Claim asserted by Highland, any Affiliates of Highland, or any officers, directors, employees or equity interest owners of the Debtors, Highland, or any Affiliates thereof.

Schedule 1 to Exhibit "D" to
Joint Plan for Acis Capital Management, LP and Acis Capital Management GP, LLC

| NAME | ADDRESS | DATE OF PAYMENT | PAYMENT AMOUNT | REASON FOR PAYMENT ON SCHEDULES |
|---|---|---|---|---|
| **Payments within 90 Days of Petition Date** | | | | |
| Highland Capital Management, LP | 300 Crescent Court, Ste. 700 Dallas, TX 75208 | 11/2/2017 | $234,013.63 | Services |
| Highland Capital Management, LP | 300 Crescent Court, Ste. 700 Dallas, TX 75208 | 11/3/2017 | $941,958.57 | Services |
| Highland Capital Management, LP | 300 Crescent Court, Ste. 700 Dallas, TX 75208 | 12/8/2017 | $89,655.14 | Services |
| David Simek | 31 Woodacres Road Brookville, NY 11545 | 11/15/2017 | $2,068.13 | Services |
| David Simek | 31 Woodacres Road Brookville, NY 11545 | 11/30/2017 | $24,266.71 | Services |
| David Simek | 31 Woodacres Road Brookville, NY 11545 | 12/12/2017 | $1,718.79 | Services |
| David Simek | 31 Woodacres Road Brookville, NY 11545 | 12/29/2017 | $25,000.00 | Services |
| FINRA | 1735 K Street, NW Washington, DC 20006 | 11/22/2017 | $70.00 | Suppliers or Vendors |
| Highland CLO Management, Ltd. | PO Box 309, Ugland House Grand Cayman, KY1-1104, Cayman Islands | 12/19/2017 | $2,830,459.22 | Services |
| **Payments to Insiders within One Year of Petition Date** | | | | |
| Highland Capital Management, LP | 300 Crescent Court, Ste. 700 Dallas, TX 75208 | 2/1/2017 | $976,688.47 | Contractual Payment |
| Highland Capital Management, LP | 300 Crescent Court, Ste. 700 Dallas, TX 75208 | 2/1/2017 | $1,096,033.37 | Services |
| Highland Capital Management, LP | 300 Crescent Court, Ste. 700 Dallas, TX 75208 | 2/2/2017 | $3,574.80 | Expense Reimbursement |
| Highland Capital Management, LP | 300 Crescent Court, Ste. 700 Dallas, TX 75208 | 2/14/2017 | $67.44 | Expense Reimbursement |
| Highland Capital Management, LP | 300 Crescent Court, Ste. 700 Dallas, TX 75208 | 4/17/2017 | $315,574.30 | Services |
| Highland Capital Management, LP | 300 Crescent Court, Ste. 700 Dallas, TX 75208 | 4/18/2017 | $438,497.51 | Services |

**Schedule 1 to Exhibit "D" to**
**Joint Plan for Acis Capital Management, LP and Acis Capital Management GP, LLC**

| NAME | ADDRESS | DATE OF PAYMENT | PAYMENT AMOUNT | REASON FOR PAYMENT ON SCHEDULES |
|---|---|---|---|---|
| Highland Capital Management, LP | 300 Crescent Court, Ste. 700 Dallas, TX 75208 | 4/18/2017 | $375,855.01 | Contractual Payment |
| Highland Capital Management, LP | 300 Crescent Court, Ste. 700 Dallas, TX 75208 | 4/19/2017 | $330,249.69 | Services |
| Highland Capital Management, LP | 300 Crescent Court, Ste. 700 Dallas, TX 75208 | 5/1/2017 | $974,426.41 | Services |
| Highland Capital Management, LP | 300 Crescent Court, Ste. 700 Dallas, TX 75208 | 5/31/2017 | $2,809,518.47 | Unsecured loan repayments including interest |
| Highland Capital Management, LP | 300 Crescent Court, Ste. 700 Dallas, TX 75208 | 5/31/2017 | $581,036.15 | Services |
| Highland Capital Management, LP | 300 Crescent Court, Ste. 700 Dallas, TX 75208 | 7/18/2017 | $373,167.08 | Contractual Payment |
| Highland Capital Management, LP | 300 Crescent Court, Ste. 700 Dallas, TX 75208 | 8/1/2017 | $971,603.02 | Contractual Payment |
| Highland Capital Management, LP | 300 Crescent Court, Ste. 700 Dallas, TX 75208 | 8/7/2017 | $1,339,422.12 | Services |
| Highland Capital Management, LP | 300 Crescent Court, Ste. 700 Dallas, TX 75208 | 8/16/2017 | $53.41 | Expense Reimbursement |
| Highland Capital Management, LP | 300 Crescent Court, Ste. 700 Dallas, TX 75208 | 10/18/2017 | $372,872.82 | Contractual Payment |
| Highland Capital Management, LP | 300 Crescent Court, Ste. 700 Dallas, TX 75208 | 10/18/2017 | $728,702.26 | Services |
| Highland Capital Management, LP | 300 Crescent Court, Ste. 700 Dallas, TX 75208 | 10/24/2017 | $501,979.18 | Unsecured loan repayments including interest |
| Highland Capital Management, LP | 300 Crescent Court, Ste. 700 Dallas, TX 75208 | 10/25/2017 | $46,648.82 | Expense Reimbursement |
| Highland Capital Management, LP | 300 Crescent Court, Ste. 700 Dallas, TX 75208 | 10/25/2017 | $67,966.85 | Expense Reimbursement |
| Highland Capital Management, LP | 300 Crescent Court, Ste. 700 Dallas, TX 75208 | 11/1/2017 | $967,223.91 | Contractual Payment |