Jeff P. Prostok – State Bar No. 16352500
J. Robert Forshey – State Bar No. 07264200
Suzanne K. Rosen – State Bar No. 00798518
Matthew G. Maben – State Bar No. 24037008
**FORSHEY & PROSTOK LLP**
777 Main St., Suite 1290
Ft. Worth, TX 76102
Telephone: (817) 877-8855
Facsimile: (817) 877-4151
jprostok@forsheyprostok.com
bforshey@forsheyprostok.com
srosen@forsheyprostok.com
mmaben@forsheyprostok.com

**COUNSEL FOR ROBIN PHELAN,
CHAPTER 11 TRUSTEE**

Rakhee V. Patel – State Bar No. 00797213
Phillip Lamberson – State Bar No. 00794134
Joe Wielebinski – State Bar No. 21432400
Annmarie Chiarello – State Bar No. 24097496
**WINSTEAD PC**
500 Winstead Building
2728 N. Harwood Street
Dallas, Texas 75201
Telephone: (214) 745-5400
Facsimile: (214) 745-5390
rpatel@winstead.com
plamberson@winstead.com
jwielebinski@winstead.com
achiarello@winstead.com

**SPECIAL COUNSEL FOR
ROBIN PHELAN, CHAPTER 11 TRUSTEE**

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE NORTHERN DISTRICT OF TEXAS
## DALLAS DIVISION

| | | |
|---|---|---|
| IN RE: | § | CHAPTER 11 CASES |
| | § | |
| ACIS CAPITAL MANAGEMENT, L.P., | § | CASE NO. 18-30264-sgj11 |
| ACIS CAPITAL MANAGEMENT GP, LLC, | § | (Jointly Administered) |
| | § | |
| Debtors. | § | **Hearing Date: August 21, 2018** |
| | § | **at 9:30 a.m.** |

## CHAPTER 11 TRUSTEE'S BRIEF IN SUPPORT OF
## CONFIRMATION OF THE FIRST AMENDED JOINT PLAN FOR ACIS CAPITAL
## MANAGEMENT, L.P. AND ACIS CAPITAL MANAGEMENT GP, LLC AND FINAL
## APPROVAL OF DISCLOSURE STATEMENT AND RESPONSE TO PLAN OBJECTIONS
## (ON ISSUES OTHER THAN THE "LIMITED ISSUES")

**TABLE OF CONTENTS**

TABLE OF CONTENTS...........................................................................................................i

TABLE OF AUTHORITIES ...............................................................................................iii

I. PRELIMINARY STATEMENT .................................................................................. 1

II. BACKGROUND ......................................................................................................... 2

    A. The Chapter 11 Cases .................................................................................... 2

    B. Plan and Disclosure Statement...................................................................... 2

    C. Solicitation, Notice, and Voting.................................................................... 3

    D. Objections to Confirmation and the Trustee's Responses ............................. 5

    E. Modifications of the Plan............................................................................... 8

    F. The Plan Should Be Confirmed .................................................................... 8

III. FACTS ....................................................................................................................... 8

IV. JURISDICTION AND VENUE .................................................................................. 9

V. ARGUMENT AND AUTHORITIES........................................................................... 9

    A. Section 1129(a)(1): The Plan Complies with the Applicable
       Provisions of the Bankruptcy Code ............................................................. 9

    B. Section 1129(a)(2): The Trustee has Complied with the Bankruptcy Code ..................... 24

    C. Section 1129(a)(3): The Plan Has Been Proposed in Good Faith and
       Not by Any Means Forbidden by Law ....................................................... 26

    D. Section 1129(a)(4): The Plan Provides That Professional Fees and
       Expenses are Subject to Court Approval ..................................................... 30

    E. Section 1129(a)(5): The Trustee Has Disclosed All Necessary
       Information Regarding Directors, Officers, and Insiders ............................ 31

    F. Bankruptcy Code Section 1129(a)(6) Is Not Applicable ............................. 37

    G. The Plan Satisfies the Requirements of Section 1129(a)(7) of the Bankruptcy
       Code ............................................................................................................. 37

    H. Section 1129(a)(9): The Plan Provides for Payment in Full of All Allowed
       Priority Claims............................................................................................. 39

    I. Section 1129(a)(10) is Satisfied.................................................................. 40

J.      Section 1129(a)(11): The Plan Is Not Likely To Be Followed By Liquidation Or The Need For Further Reorganization ...................................................... 41

K.     Section 1129(a)(12): All Statutory Fees Have Been Or Will Be Paid .............................. 42

L.     Sections 1129(a)(13), 1129(a)(14), 1129(a)(15), 1129(a)(16), 1129(c), 1129(d) and 1129(e) Do Not Apply .............................................................................................. 43

M.    The Plan Satisfies the Requirements of Section 1127 of the Bankruptcy Code ............... 44

N.     The Plan Satisfies the Requirements of Section 1129(b) .................................................... 45

O.     The Plan's temporary Injunction Prohibiting Optional redemption is Necessary And Appropriate ................................................................................................................ 46

CONCLUSION…………………………………………………………………………………57

## TABLE OF AUTHORITIES

### Cases

*ADPT DFW Holdings LLC*, 577 B.R. 232 (Bankr. N.D. Tex. 2017) .......................................24, 30

*Animale Group v. Sunny's Perfume, Inc.*, 256 Fed. Appx. 707 (5th Cir. 2007)............................55

*Anstine v. Carl Zeiss Meditec AG (In re U.S. Medical, Inc.)*, 531 F.3d 1272
    (10th Cir. 2008)...............................................................................................................35

*Balestri v. Hunton & Williams, LLP) (In re Hallwood Energy)*, 2012 Bankr.
    LEXIS 6066 (Bankr. N.D. Tex. Feb. 8, 2012)................................................................22

*Bank of Am. Nat'l Trust & Sav. Ass'n v. 203 N. LaSalle St. P'ship*, 526 U.S. 434 (1999) ..........36

*Bank of La. v. Craig's Stores of Tex., Inc. (In re Craig's Stores of Tex., Inc.)*,
    266 F.3d 388 (5th Cir. 2001) ..........................................................................................22

*Browning Interests v. Allison (In re Holloway)*, 955 F.2d 1008 (5th Cir. 1992)..........................33

*Byrum v. Landreth*, 566 F.3d 442 (5th Cir. 2009) ........................................................................48

*Comptroller of Public Accounts v. Transtexas Gas Corp. (In re Transtexas Gas Corp.)*,
    303 F.3d 571 (5th Cir. 2002) ..........................................................................................53

*Crane v. Napolitano*, 2013 U.S. Dist. LEXIS 193120 (N.D. Tex. Mar. 15, 2013) .....................53

*Dong v. Miller*, 2018 U.S. Dist. LEXIS 48506 (E.D.N.Y. Mar. 23, 2018) .................................55

*Fin. Sec. Assurance Inc. v. T-H New Orleans Ltd. P'ship (In re T-H Orleans Ltd. P'ship)*,
    116 F.3d 790 (5th Cir. 1997) ..........................................................................................41

*Heartland Fed. Sav. & Loan Ass'n v. Briscoe Enters. (In re Briscoe Enters.)*,
    994 F.2d 1160 (5th Cir. 1993) .......................................................... 9, 11, 14-15

*Hoover v. Morales*, 164 F.3d 221 (5th Cir. 1998) ........................................................................48

*Iantosca v. Step Plan Servs.*, 604 F.3d 24 (1st Cir. 2010) ............................................................55

*In re ADPT DFW Holdings, LLC*, 574 B.R. 87 (Bankr. N.D. Tex. 2017)....................................22

*In re Allegheny International, Inc.*, 118 B.R. 282 (Bankr. W.D. Pa. 1990) ..................................35

*In re American Solar King Corp.*, 90 B.R. 808 (Bankr. W.D. Tex. 1988)....................................44

*In re Atlanta West VI*, 91 B.R. 620 (Bankr. N.D. Ga. 1988) ........................................................14

*In re Bensen*, 262 B.R. 371 (Bankr. N.D. Tex. 2001)..................................................................13

*In re Cajun Elec. Power Co-op., Inc.*, 150 F.3d 503 (5th Cir. 1998) ...........................................26

*In re Couture Hotel Corp.*, 536 B.R. 712 (Bankr. N.D. Tex. 2015)................................... 9-10, 41

*In re Friedman*, 126 B.R. 63 (B.A.P. 9th Cir. 1991) .......................................................34

*In re Frontier Airlines, Inc.*, 93 B.R. 1014 (Bankr. D. Colo. 1988) ...............................44

*In re General Homes Corp.,* 134 B.R. 853 (Bankr. S.D. Tex. 1991) ..........................................14

*In re Mirant Corp.,* 2007 Bankr. LEXIS 4951 (Bankr. N.D. Tex. Apr. 27, 2007).............. 9-11, 24

*In re Nartron Corp.*, 330 B.R. 573 (Bankr. W.D. Mich. 2005).....................................36

*In re New Ctr. Hosp.*, 200 B.R. 592 (E.D. Mich. 1996) ...............................................29

*In re Premiere Network Servs.*, 2005 Bankr. LEXIS 2298 (Bankr. N.D. Tex. Jul. 1, 2005)... 32-33

*In re Rexford Properties, LLC*, 557 B.R. 788 (Bankr. C.D. Cal. 2016) .......................................36

*In re Sears Methodist Ret. Sys.,* 2015 Bankr. LEXIS 709 (Bankr. N.D. Tex. Mar. 5, 2015) ..........9

*In re Seatco, Inc.,* 257 B.R. 469 (Bankr. N.D. Tex. 2001) ...........................................24

*In re South Beach Securities, Inc.*, 376 B.R. 881 (Bankr. N.D. Ill. 2007)....................................35

*In re Sun Country Dev., Inc.*, 764 F.2d 406 (5th Cir. 1985) .........................................26

*In re Thru, Inc.*, 2017 Bankr. LEXIS 1902 (Bankr. N. D. Tex. Jul. 10, 2017)........... 11, 14-15, 41

*In re McCommas LFG Processing Partners,* 2007 Bankr. LEXIS 4053
        (Bankr. N.D. Tex. Nov. 29, 2007) ...................................................................14

*Lynch v. Winslow (In re Winslow),* 473 B.R. 94 (E.D.N.C. 2012) ...............................34

*MCA Fin. Grp. v. Hewlett-Packard (In re Fourthstage Techs.*), 355 B.R. 155
        (Bankr. D. Ariz. 2006) .....................................................................................35

*Paradigm Biodevices, Inc. v. Centinel Spine, Inc.*, 2013 U.S. Dist. LEXIS 66858
        (S.D.N.Y. May 9, 2013)....................................................................................56

*Phoenix Mut. Life Ins. Co. v. Greystone III Joint Venture (In re Greystone III
        Joint Venture)*, 995 F.2d 1274 (5th Cir. 1991) ......................................... 11-12

*Save Our Springs (SOS) Alliance v. WSI (II)-COS, L.L.C. (In re Save Our Springs
        (SOS) Alliance)*, 632 F.3d 168 (5th Cir. 2011) ...............................................14

*Seidel v. Warner (In re Atlas Fin. Mortg., Inc.)*, 2014 Bankr. LEXIS 140
        (Bankr. N.D. Tex. Jan. 14, 2014)................................................................. 55-56

*Think3 Litig. Tr. v. Zuccarello (In re Think3, Inc.)*, 529 B.R. 147
(Bankr. W.D. Tex. 2015) ............................................................33

*U.S. Bank N.A. v. Village at Lakeridge, LLC (In re Village at Lakeridge, LLC)*,
814 F.3d 993 (9th Cir. 2015) ....................................................35

*U.S. Bank N.A. v. Village at Lakeridge, LLC,* 138 S. Ct. 960 (2018)............................................34

*United States ex rel. Rahman v. Oncology Assocs.*, 198 F.3d 489 (4th Cir. 1999) ................ 55-56

*United States v. Reorganized CF&I Fabricators, Inc.*, 518 U.S. 213 (1996)...............................38

*Western Real Estate Equities, L.L.C. v. Vill. At Camp Bowie I, L.P. (In re Vill. At
Camp Bowie I, L.P.)*, 710 F.3d 239 (5th Cir. 2013)....................................................26, 45

*Women's Med. Ctr. v. Bell,* 248 F.3d 411 (5th Cir. 2001) ............................................48

## **Statutes**

11 U.S.C. § 105(a) ..................................................................... 21-22, 46, 54, 56

11 U.S.C. § 330...........................................................................30

11 U.S.C. § 331...........................................................................30

11 U.S.C. § 362(c)(1)....................................................................49

11 U.S.C. § 363(b)(1) ...................................................................49

11 U.S.C. § 365...........................................................................1

11 U.S.C. § 365(b)(1) ...................................................................23

11 U.S.C. § 365(c)(1)....................................................................20

11 U.S.C. § 507...........................................................................42

11 U.S.C. § 507(a)........................................................................39

11 U.S.C. § 507(a)(2)....................................................................11

11 U.S.C. § 507(a)(8).................................................................. 10-11

11 U.S.C. § 1111(b)......................................................................12

11 U.S.C. § 1122....................................................... 8, 10-13, 24, 44

11 U.S.C. § 1122(a) ................................................................. 10-11, 13

11 U.S.C. § 1122(b) ...................................................................................................10

11 U.S.C. § 1123 ..................................................................................8, 10, 24, 44

11 U.S.C. § 1123(a)(1) ....................................................................................... 10-12

11 U.S.C. § 1123(a)(5) ...............................................................................................46

11 U.S.C. § 1123(a)(5)(F) ...........................................................................................1

11 U.S.C. § 1123(a)(6) ..............................................................................................18

11 U.S.C. § 1123(a)(7) ......................................................................................... 18-19

11 U.S.C. § 1123(a)(8) ..............................................................................................19

11 U.S.C. § 1123(b) ..................................................................................................19

11 U.S.C. § 1123(b)(1) ..............................................................................................19

11 U.S.C. § 1123(b)(2) ..............................................................................................20

11 U.S.C. § 1123(b)(3) ..............................................................................................20

11 U.S.C. § 1123(b)(3)(A) ........................................................................................20

11 U.S.C. § 1123(b)(3)(B) ................................................................................... 20-21

11 U.S.C. § 1123(b)(4) ..............................................................................................21

11 U.S.C. § 1123(b)(5) ..............................................................................................21

11 U.S.C. § 1123(b)(6) .................................................................................21, 23, 46

11 U.S.C. § 1123(c) ..................................................................................................23

11 U.S.C. § 1123(d) ............................................................................................ 23-24

11 U.S.C. § 1125 .......................................................................................... 2, 8, 24-25

11 U.S.C. § 1125(b) ..................................................................................................24

11 U.S.C. § 1126 ........................................................................................... 8, 24-25

11 U.S.C. § 1126(c) ..................................................................................................26

11 U.S.C. § 1127 ................................................................................................8, 44

11 U.S.C. § 1127(a) ..................................................................................................44

11 U.S.C. § 1129 ............................................................................................................. 1, 8-9

11 U.S.C. § 1129(a)(1) ................................................................................................. 9, 24, 45

11 U.S.C. § 1129(a)(2) ..................................................................................................... 24, 26

11 U.S.C. § 1129(a)(3) ................................................................................................ 26-27, 29

11 U.S.C. § 1129(a)(4) ............................................................................................................ 30

11 U.S.C. § 1129(a)(5) ........................................................................................................ 31-33

11 U.S.C. § 1129(a)(5)(A)(i) ................................................................................................... 32

11 U.S.C. § 1129(a)(5)(B) ................................................................................................... 32-33

11 U.S.C. § 1129(a)(6) ............................................................................................................ 37

11 U.S.C. § 1129(a)(7) ........................................................................................................ 37-38

11 U.S.C. § 1129(a)(8) ............................................................................................................ 45

11 U.S.C. § 1129(a)(9) ............................................................................................................ 39

11 U.S.C. § 1129(a)(9)(A) ....................................................................................................... 40

11 U.S.C. § 1129(a)(9)(B) ....................................................................................................... 40

11 U.S.C. § 1129(a)(9)(C) ....................................................................................................... 40

11 U.S.C. § 1129(a)(9)(D) ....................................................................................................... 40

11 U.S.C. § 1129(a)(10) ..................................................................................................... 40, 45

11 U.S.C. § 1129(a)(11) ...................................................................................................... 41-42

11 U.S.C. § 1129(a)(12) ........................................................................................................... 42

11 U.S.C. § 1129(a)(13) ........................................................................................................... 43

11 U.S.C. § 1129(a)(14) ........................................................................................................... 43

11 U.S.C. § 1129(a)(15) ........................................................................................................... 43

11 U.S.C. § 1129(a)(16) ........................................................................................................... 43

11 U.S.C. § 1129(b) ...................................................................................................... 43, 45-46

11 U.S.C. § 1129(c) ................................................................................................................. 43

11 U.S.C. § 1129(d) ..................................................................................................43

11 U.S.C. § 1129(e) ..................................................................................................43

11 U.S.C. § 1141(b) ..................................................................................................49

15 U.S.C. 77e(d)(2) ..................................................................................................28

28 U.S.C. § 1930(a)(6) .........................................................................................11, 42

Fed. R. Bankr. P. 3019 .............................................................................................44

Fed. R. Bankr. P. 3020(c) .....................................................................................54, 56

Fed. R. Bankr. P. 3020(c)(1) ............................................................................ 54, 56-57

Fed. R. Civ. P. 65(d)(1) .................................................................................... 54, 56-57

## Secondary Sources

8 COLLIER ON BANKRUPTCY ¶ 3019.03 (15th ed. 1987) ................................................44

Investment Advisers Act of 1940 ..........................................................................28, 30

Securities Act of 1933..........................................................................................28, 30

TO THE HONORABLE STACEY G.C. JERNIGAN, UNITED STATES BANKRUPTCY JUDGE:

Robin Phelan ("Trustee"), the Chapter 11 Trustee for Acis Capital Management, LP and Acis Capital Management GP, LLC (the "Debtors"), files this brief in support of confirmation of the Plan and final approval of the Disclosure Statement and in response to objections to the plan. All capitalized terms not defined in this brief shall have the meanings provided in the Plan and/or Disclosure Statement.

## I.    PRELIMINARY STATEMENT

1.    The Trustee and the Plan meet all the requirements for confirmation under section 1129 of the Bankruptcy Code, and the Trustee requests that the Court confirm the Plan and grant final approval to the Disclosure Statement.

2.    The Plan contains three alternatives—Plan A, Plan B and Plan C.  This brief discusses the three alternatives collectively where they are similar but addresses them separately where they diverge or where they present different legal issues.

3.    The Court directed the Trustee to submit a brief on or before August 10, 2018 with respect to (a) issues related to section 1142 of the Bankruptcy Code in connection with the proposed transfer of the Subordinated Notes currently held by HCLOF under the Plan A alternative of the Plan, and (b) issues related to sections 365 and 1123(a)(5)(F) of the Bankruptcy Code in connection with the proposed modification of the existing Indentures under the Plan B and Plan C alternatives of the Plan (the "Limited Issues").

4.    This brief is intended to address all issues other than the Limited Issues.  On August 10, 2018, the Trustee filed the *Brief of Limited Issues in Support of First Amended Joint Plan for Acis Capital Management, L.P. and Acis Capital Management GP, LLC* [Docket No. 493] (the "Limited Issues Brief") and fully incorporates it herein by reference.  The Trustee intends to file a

reply on the Limited Issues on or before August 20, 2018 (the "Limited Issues Reply") and also fully incorporates it herein by reference. The Trustee may refer to the Limited Issues Brief and the Limited Issues Reply where relevant in this brief.

## II.    BACKGROUND

### A.    The Chapter 11 Cases

5.    These bankruptcy cases were initiated on January 30, 2018 when Joshua N. Terry ("Terry"), as petitioning creditor, filed the involuntary petitions against the Debtors. On April 13, 2018, this Court entered the order for relief and Diane Reed was appointed as interim chapter 7 trustee. On May 11, 2018, the Court converted the cases to chapter 11 on Diane Reed's motion and ordered the appointment of a chapter 11 trustee on Terry's motion. On May 14, 2018, the United States Trustee appointed the Trustee as the chapter 11 trustee of these cases, and the Court approved that appointment as to Acis LP on May 17, 2018 and as to Acis GP on June 12, 2018.

### B.    Plan and Disclosure Statement

6.    On July 5, 2018, the Trustee, on behalf of the Debtors, filed the *Joint Plan for Acis Capital Management, L.P. and Acis Capital Management GP, LLC* [Docket No. 383]. On July 13, 2018, the Trustee filed the *Disclosure Statement Pursuant to Section 1125 of the United States Bankruptcy Code with Respect to the Joint Plan for Acis Capital Management, L.P. and Acis Capital Management GP, LLC* [Docket No. 405]. On July 29, 2018, the Trustee, on behalf of the Debtors, filed the *First Amended Joint Plan for Acis Capital Management, L.P. and Acis Capital Management GP, LLC* [Docket No. 441], (the "Plan") and the *Disclosure Statement Pursuant to Section 1125 of the United States Bankruptcy Code with Respect to the First Amended Joint Plan for Acis Capital Management, L.P. and Acis Capital Management GP, LLC* [Docket No. 442] (the "Disclosure Statement").

7.      On July 13, 2018, the Trustee filed the *Chapter 11 Trustee's Motion for Entry of Order (A) Conditionally Approving Disclosure Statement; (B) Scheduling Combined Hearing on Final Approval of Disclosure Statement and Confirmation of Plan and Setting Related Deadlines; (C) Approving Forms for Voting and Notice; and (D) Granting Related Relief* [Docket No. 407] (the "Motion for Conditional Approval").

8.      On July 30, 2018, the Court entered an order granting the Motion for Conditional Approval [Docket No. 446] (the "Disclosure/Scheduling Order") pursuant to which the Court, *inter alia*, conditionally approved the Disclosure Statement and scheduled deadlines and established procedures for soliciting approval of the Plan, submitting ballots to accept or reject the Plan, submitting briefs regarding the Plan, and filing and serving notice of any objection to confirmation of the Plan. The Disclosure/Scheduling Order also set a hearing to consider final approval of the Disclosure Statement and confirmation of the Plan (the "Combined Hearing") to commence at 9:30 a.m. on August 21, 2018.

**C.      Solicitation, Notice, and Voting**

9.      On July 30, 2018, the Trustee's counsel served the Plan, the Disclosure Statement, the Disclosure/Scheduling Order, ballots, and a Court-approved transmittal letter (the "Solicitation Packages") as reflected in the *Notice* filed on July 31, 2018 at Docket No. 455. The Solicitation Packages were served in compliance with the Bankruptcy Rules and the Disclosure/Scheduling Order.  On July 30, 2018, the Trustee's counsel also served notice of the Combined Hearing as reflected in the *Notice* filed on July 31, 2018 at Docket No. 454.

10.     As evidenced by the *Tabulation of Ballots* [Docket No. 523] ("Ballot Tabulation"), filed August 17, 2018, (i) the service of the Solicitation Packages was adequate and sufficient under the circumstances of these chapter 11 cases, and (ii) adequate and sufficient notice of the

Combined Hearing and other requirements, deadlines, and matters described in the Disclosure/Scheduling Order was timely provided in compliance with the Bankruptcy Rules and the Disclosure/Scheduling Order.

11.     As evidenced by the Ballot Tabulation, votes to accept or reject the Plan have been solicited and tabulated fairly, in good faith, and in a manner consistent with the Disclosure/Scheduling Order, the Bankruptcy Code, the Bankruptcy Rules, and the Local Bankruptcy Rules for the United States Bankruptcy Court for the Northern District of Texas.

12.     The Trustee solicited votes for the three alternative plans within the Plan.

13.     The final voting on Plan A is summarized as follows:

| Class | Votes | Acceptance % by Amount | Acceptance % by Number | Accept/ Reject |
|---|---|---|---|---|
| Class 1—Secured Tax Claims | 0 | Not impaired | Non-voting | Accept |
| Class 2—HCLOF Claim | 0 | N/A | N/A | N/A |
| Class 3—Terry Secured Claim | 2 | 100% | 100% | Accept |
| Class 4—General Unsecured Claims | 1 | 100% | 100% | Accept |
| Class 5A—Insider Claims | 1 | 0% | 0% | Reject |
| Class 5B—Equitably Subordinated Insider Claims | 0 | N/A | N/A | N/A |
| Class 6—Interests | 0 | N/A | N/A | N/A |

14.     The final voting on Plan B is summarized as follows:

| Class | Votes | Acceptance % by Amount | Acceptance % by Number | Accept/ Reject |
|---|---|---|---|---|
| Class 1—Secured Tax Claims | 0 | Not impaired | Non-voting | Accept |
| Class 2—HCLOF Claim | 0 | N/A | N/A | N/A |
| Class 3—Terry Secured Claim | 2 | 100% | 100% | Accept |
| Class 4—General Unsecured Claims | 1 | 100% | 100% | Accept |
| Class 5A—Insider Claims | 1 | 0% | 0% | Reject |
| Class 5B—Equitably Subordinated Insider Claims | 0 | N/A | N/A | N/A |
| Class 6—Interests | 0 | Cancelled | Non-voting | Reject |

15.     The final voting on Plan C is summarized as follows:

| Class | Votes | Acceptance % by Amount | Acceptance % by Number | Accept/ Reject |
|---|---|---|---|---|
| Class 1—Secured Tax Claims | 0 | Not impaired | Non-voting | Accept |
| Class 2—HCLOF Claim | 0 | N/A | N/A | N/A |

| | | | | |
|---|---|---|---|---|
| Class 3—Terry Secured Claim | 2 | 100% | 100% | Accept |
| Class 4—General Unsecured Claims | 1 | 100% | 100% | Accept |
| Class 5A—Insider Claims | 1 | 0% | 0% | Reject |
| Class 5B—Equitably Subordinated Insider Claims | 0 | N/A | N/A | N/A |
| Class 6—Interests | 0 | Cancelled | Non-voting | Reject |

**D.      Objections to Confirmation and the Trustee's Responses**

16.      On August 13, 2018, the following objections and reservations of rights were filed.

17.      *Limited Objection of Universal-Investment-Luxembourg S.A.* ("Universal") *and Bayvk R2 Lux S.A., SICA-FIS to First Amended Joint Plan for Acis Capital Management, L.P. and Acis Capital Management GP, LLC* ("Universal Objection") [Docket No. 495].  The Universal Objection pertains to an agreement between Universal and Acis LP (the "Universal Agreement"). Universal Objection argues that the Plan is unclear about whether the Trustee seeks to assume and/or assign the Universal Agreement and that, for several reasons, the Trustee cannot assume and/or assign the Universal Agreement.  The Trustee **does** intend to assume and assign the Universal Agreement under Plan A and to assume it under Plans B and C.  The Trustee will respond to the Universal Objection in a separate response rather than in this brief and reserves all rights and objections with regard to the arguments made in the Universal Objection.

18.      *Objection of Issuers and Co-Issuers to Confirmation of the Chapter 11 Trustee's First Amended Joint Plan for Acis Capital Management, L.P. and Acis Capital Management GP, LLC* ("Issuer Objection") [Docket No. 496].  The Issuer Objection raises essentially five objections.  The first objection is that the Court does not have the subject matter jurisdiction to approve the Plan because it purportedly seeks to convey non-estate property to Oaktree in Plan A. (Issuer Objection, pp. 3-7).  That issue is addressed by the Trustee in the *Limited Issues Brief* and the *Limited Issues Reply.*  The Issuers' second argument is that Plans B and C are not confirmable because Plans B and C provide for assumption of the PMAs and state that the Reorganized Debtor

may not be removed as portfolio manager under the assumed PMAs without cause. The Issuers claim that this constitutes an impermissible modification of the PMAs. (Issuer Objection, pp. 7-8). This objection is without merit because the PMAs already provide that Acis LP cannot be terminated as portfolio manager without cause. The Plan does not propose any modification of the PMAs. The Issuers' third argument is that Plans B and C are not confirmable because they seek to modify the Indentures to limit optional redemptions. (Issuer Objection, pp. 9-12). Those issues are addressed by the Trustee in the *Limited Issues Brief* and the *Limited Issues Reply*. The fourth argument raised by the Issuers is that the Issuers, Co-Issuers and Noteholders are impaired creditors whose votes were not solicited in the Plan process. (Issuer Objection, pp. 12-13). The Issuers and Co-Issuers were served the Plan, Disclosure Statement and ballots although their claims were filed in a zero dollar amount. Their votes were solicited, but they did not vote. The underlying Noteholders received the Plan and Disclosure Statement and notice of the Combined Hearing, but they did not receive ballots because they do not hold claims against the Debtors. The final argument raised by the Issuers is that the Trustee has not met his burden to show that Oaktree, the proposed assignee of the PMAs under Plan A, can provide adequate assurance of future performance. (Issuer Objection, pp. 12-13). The Trustee previously presented evidence at the hearing to approve the break-up fee in favor of Oaktree that clearly demonstrated that Oaktree is imminently qualified to perform under the PMAs and prepared to close the Plan A transaction, and this has not changed in the weeks that have elapsed since that hearing occurred.

19.   *Joint Objection of Highland Capital Management, L.P. and Highland CLO Funding, Ltd. to Final Approval of Disclosure Statement and to Confirmation of the Joint Plan for Acis Capital Management, L.P. and Acis Capital Management GP, LLC* ("Highland Objection") [Docket no. 497]. The Highland Objection is more extensive than the others and will be addressed

where applicable below in this brief. Much of the Highland Objection (pages 6 through 11) argues that the Court does not have subject matter jurisdiction to confirm (i) Plan A because it is allegedly premised on the "taking of non-estate property" without the owners' consent, and (ii) Plans B and C because they are premised on amendment of the Indentures. Another large part of the Highland Objection argues that the PMAs cannot be assumed and assigned to Oaktree without consent because other applicable law prohibits assignment and because the PMAs are personal service contracts (Highland Objection, pp. 24-29). That issue was addressed by the Trustee at pages 9-10 of the *Limited Issues Brief* and any additional response will be contained in the Trustee's *Limited Issues Reply*. The remaining objections raised by Highland and HCLOF will be addressed herein below.

20. *Joshua N. and Jennifer G. Terry's Reservation of Rights Regarding Confirmation of Debtors' First Amended Joint Plan* ("Terry Reservation") [Docket No. 498]. Joshua and Jennifer Terry voted in favor of all alternatives of the Plan, in the following order of preference: Plan A, Plan C, then Plan B. The Terrys have concerns about two aspects of Plan A. One is the timing of payment of the Trustee's commission in relation to creditors, and the other is the timing of payment for part of HCLOF's claim. The Terrys' final concern relates to Plans B and C, and they reserve the right to take a position on the Indentures as amended once they see the final product. The Trustee has discussed or will discuss these issues with the Terrys and will address them at the Combined Hearing as necessary.

21. *Limited Objection of Acis CLO 2014-3 CLO Trustee to Confirmation of the Chapter 11 Trustee's First Amended Joint Plan for Acis Capital Management, LP and Acis Capital Management GP, LLC* [Docket No. 499]; *Limited Objection of Acis CLO 2014-5 CLO Trustee to Confirmation of the Chapter 11 Trustee's First Amended Joint Plan for Acis Capital Management,*

*LP and Acis Capital Management GP, LLC* [Docket No. 500]; and *Limited Objection of Acis CLO 2015-6 CLO Trustee to Confirmation of the Chapter 11 Trustee's First Amended Joint Plan for Acis Capital Management, LP and Acis Capital Management GP, LLC* [Docket No. 501] (collectively, the "CLO Objections"); *Reservation of Rights of Acis CLO 2013-1 CLO Trustee to Confirmation of Plan* [Docket No. 504]; and *Reservation of Rights of Acis CLO 2014-4 CLO Trustee to Confirmation of Plan* [Docket No. 505] (collectively, the "CLO Reservations"). The CLO Objections and the CLO Reservations pertain to the Trustee's proposal in Plans B and C to amend the Indentures to restrict optional redemption and replacement of the portfolio manager for a period of time. The Trustee has addressed these arguments in the *Limited Issues Brief* and the *Limited Issues Reply*.

22.    The Trustee also received comments from the United States Trustee, which he is attempting to resolve prior to the Combined Hearing.

**E.    Modifications of the Plan**

23.    On August 16, 2018, the Trustee filed the *First Modification to the First Amended Joint Plan for Acis Capital Management, L.P. and Acis Capital Management GP, LLC* (the "Plan Modification") [Docket No. 515].

**F.    The Plan Should Be Confirmed**

24.    As discussed below, and as will be further demonstrated as necessary at the Combined Hearing, the Plan satisfies all of the confirmation requirements contained in sections 1122, 1123, 1125, 1126, 1127, and 1129 of the Bankruptcy Code. Accordingly, the Plan should be confirmed.

### III.    FACTS

25.    The relevant facts relating to these bankruptcy cases and the Plan are set forth in the pleadings and other documents filed in these cases, including the Disclosure Statement, the

Plan, and orders entered by the Court. Such facts are incorporated herein as though set forth fully and at length. Salient facts, as necessary, will be referred to in connection with the discussion of applicable legal principles.

## IV.    JURISDICTION AND VENUE

26.    The Court has jurisdiction over these chapter 11 cases pursuant to 28 U.S.C. § 1334. Confirmation of the Plan and final approval of the Disclosure Statement are core proceedings pursuant to 28 U.S.C. § 157(b), and the Court has jurisdiction to enter final orders with respect to those matters.  Venue is proper before the Court pursuant to 28 U.S.C. §§ 1408 and 1409.

## V.    ARGUMENT AND AUTHORITIES

27.    To obtain confirmation of the Plan, the Trustee must demonstrate, by a preponderance of the evidence, that the Plan satisfies the applicable provisions of section 1129 of the Bankruptcy Code. *Heartland Fed. Sav. & Loan Ass'n v. Briscoe Enters. (In re Briscoe Enters.)*, 994 F.2d 1160, 1165 (5th Cir. 1993); *In re Sears Methodist Ret. Sys.,* 2015 Bankr. LEXIS 709, at *8 (Bankr. N.D. Tex. Mar. 5, 2015); *In re Couture Hotel Corp.*, 536 B.R. 712, 732 (Bankr. N.D. Tex. 2015); *In re Mirant Corp.,* 2007 Bankr. LEXIS 4951, at * 19-20 (Bankr. N.D. Tex. Apr. 27, 2007).

28.    Through filings with the Court and additional evidence which may be adduced at the Combined Hearing, the Trustee will show, by a preponderance of the evidence, that all applicable subsections of section 1129 of the Bankruptcy Code have been satisfied with respect to the Plan.

## A.    Section 1129(a)(1): The Plan Complies with the Applicable Provisions of the Bankruptcy Code.

29.    Section 1129(a)(1) of the Bankruptcy Code requires that a plan must comply with the applicable provisions of the Bankruptcy Code. The legislative history of section 1129(a)(1)

indicates that the purpose of this provision is to ensure compliance with the requirements of sections 1122 and 1123 of the Bankruptcy Code governing classification of claims and contents of a plan, respectively. H.R. REP. NO. 95-595, at 412 (1977); S. REP. NO. 95-989, at 126 (1978); *In re Couture Hotel Corp.*, 536 B.R. 712, 733 (Bankr. N.D. Tex. 2015); *In re Mirant Corp.,* 2007 Bankr. LEXIS 4951, at *20 (Bankr. N.D. Tex. Apr. 27, 2007).

30.     As demonstrated below, the Plan fully complies with the requirements of sections 1122, 1123, and all other applicable provisions of the Bankruptcy Code.

**(i)     Proper Classification: The Plan Complies with Sections 1122 and 1123(a)(1) of the Bankruptcy Code.**

31.     The Plan classifies claims against and equity interests in the Debtors as required by sections 1122 and 1123(a)(1) of the Bankruptcy Code. The classification is reasonable and justified; it complies with the requirements in the Bankruptcy Code; and it is not motivated by, or evidence of, any lack of good faith in these chapter 11 cases.

32.     Section 1123(a)(1) of the Bankruptcy Code provides that a plan shall, subject to section 1122, designate (i) classes of claims other than claims that qualify as allowed administrative expenses under section 503(b) of the Bankruptcy Code or priority tax claims under section 507(a)(8) of the Bankruptcy Code, and (ii) classes of interests. 11 U.S.C. § 1123(a)(1). Section 1122(a) of the Bankruptcy Code provides in pertinent part as follows:

> Except as provided in subsection (b) of this section, a plan may place a claim or interest in a particular class only if such claim or interest is substantially similar to the other claims or interests of such class.

11 U.S.C. § 1122(a).

33.     Subsection (b) allows a plan to designate a separate class of unsecured claims of less than a specific amount, if such a designation is "reasonable and necessary for administrative

convenience." *Id*. § 1122(b). Here, the Trustee elected not to designate an administrative-convenience class in the Plan.

34. For a classification structure to satisfy section 1122(a) of the Bankruptcy Code, not all substantially similar claims or interests need to be designated in the same class. *In re Thru, Inc.*, 2017 Bankr. LEXIS 1902, at *8-9 (Bankr. N.D. Tex. Jul. 10, 2017); *Mirant,* 2007 Bankr. LEXIS 4951 at *21. *Instead*, claims or interests designated to a particular class must be substantially similar to each other. *Mirant*, 2007 Bankr. LEXIS 4951 at *20-21 (citing *Phoenix Mut. Life Ins. Co. v. Greystone III Joint Venture (In re Greystone III Joint Venture)*, 995 F.2d 1274, 1278-81 (5th Cir. 1991)). A plan proponent is permitted to separately classify claims that are similar as long as there is a reasonable basis or good business justification for such separate classification. *Id*. at *21 (citing *Heartland Fed. Sav. & Loan Assoc. v. Briscoe Enters. Ltd., II (In re Briscoe Enters. Ltd., II*, 994 F.2d 1160, 1167 (5th Cir. 1993)); *In re Thru, Inc.*, 2017 Bankr. LEXIS 1902 at *9.

35. The Plan designates Classes of Claims against and Interests in the Debtors in accordance with section 1123(a)(1) of the Bankruptcy Code, and provides, in a manner consistent with section 1122(a) of the Bankruptcy Code, for the separate classification of Claims and Interests based upon valid business, factual, and legal reasons. Specifically, in addition to Administrative Expenses, Priority Tax Claims, and quarterly fees payable to the United States Trustee, which need not be classified, [1] Article II (Plan A), Article III (Plan B) and Article IV (Plan C) of the Plan designate seven Classes and subclasses of Claims against and Interests in the Debtors, as follows:

> Class 1 — Secured Tax Claims
> Class 2 — HCLOF Claim

---

[1] As required by statute, the Plan does not classify administrative expenses entitled to priority under § 507(a)(2) of the Bankruptcy Code, tax claims entitled to priority under § 507(a)(8) of the Bankruptcy Code, and quarterly fees payable to the United States trustee under 28 U.S.C. § 1930(a)(6). *See* 11 U.S.C. § 1123(a)(1). Instead, the Plan treats these claims as unclassified claims. (*Plan* §§ 2.05-2.07, 3.05-3.07, 4.05-4.07).

Class 3 — Terry Secured Claims
Class 4 — General Unsecured Claims
Class 5A — Insider Claims
Class 5B — Equitably Subordinated Insider Claims
Class 6 — Interests in the Debtors

36. Each class in the Plan includes only claims or equity interests that are "substantially similar" to the other claims or equity interests in the class. Claims are "substantially similar" when they "share common priority and rights against the debtor's estate." *Phoenix Mut. Life Ins. v. Greystone III Joint Venture (In re Greystone III Joint Venture)*, 995 F.2d 1274, 1278 (5th Cir. 1991) (unsecured deficiency claim under § 1111(b) "substantially similar" to unsecured trade claims). The Plan does not lump together, in any class, claims or equity interests with different rights of priority with respect to the Debtors or their assets. Accordingly, the Plan's classification system meets the requirements of sections 1122 and 1123(a)(1). Each of the Claims or Interests in each particular Class is substantially similar to the other Claims or Interests in such Class. Specifically, Class 1 consists of all Secured Tax Claims, which includes any ad valorem tax claims that arose or are deemed to have arisen on or before the Petition Date, irrespective of the date on which such claim is assessed or is due. Class 2 consists only of the HCLOF Claim. Although HCLOF may now contend that it is not a creditor, HCLOF's claim is evidenced by (i) statements in correspondence dated May 4, 2018, from HCLOF to U.S. Bank, the indenture trustee for all five Acis CLOs, claiming setoff rights against funds held by the indenture trustee belonging to the Debtors; and (ii) HCLOF's suit against the Trustee to compel an optional redemption liquidating the CLOs. Accordingly, HCLOF has affirmatively represented that it is a creditor of the Debtors secured by a right of offset. Class 3 includes Terry's Secured Claim, which is a judgment creditor claim partially secured by a writ of garnishment, which garnishment may be subject to avoidance as a preferential transfer. Class 4 consists of all General Unsecured Claims. Class 5 includes

Insider Claims and is divided into two subclasses. Subclass 5A includes Insider Claims not subject to equitable subordination, and Subclass 5B includes equitably subordinated Insider Claims. Subclass 5B is currently an empty subclass. Class 6 consists of Interests in the Debtors.

37.     The Trustee submits that the Plan's classification of Claims and Interests does not prejudice the rights of any creditor or equity security holder, is consistent with the requirements of the Bankruptcy Code and, thus, is appropriate.

38.     Highland and HCLOF argue that the Plan improperly classifies both Terry's Claim and Highland's Claim in an attempt to gerrymander the classes to ensure one accepting class. The argument seems to be that there is no basis to separately classify Terry's claim (now alone in Class 3) and that it should be in Class 4 with the other general unsecured claims. Likewise, Highland and HCLOF argue that their claims should also be in Class 4. (Highland Objection, pp. 23-24). The Trustee submits that the Bankruptcy Code requires that the Terry Secured Claim[2] be placed in a separate class. As stated in the amended proof of claim filed by Terry on June 12, 2018, the Terry Secured Claim arises from a judgment against the Debtors in the amount of $7,949,749.15, which judgment was entered December 18, 2017, by the 44th District Court of Texas. The Terry Secured Claim is secured by a Writ of Garnishment issued December 27, 2017, and served on or about December 29, 2017. *See In re Bensen*, 262 B.R. 371, 376 (Bankr. N.D. Tex. 2001) (under Texas law, service of writ of garnishment creates judicial lien). Except for Secured Tax Claims – which, if there are any,[3] stand in a very different legal and factual position – the Terry Secured

---

[2] For the avoidance of doubt "Terry Secured Claim" is defined by the Plan to include all of Joshua Terry's claims and includes the part of his claim secured by garnishment (to the extent that cannot be avoided as a preferential transfer) as well as the unsecured portion of his claims.

[3] As of the date of this filing, no governmental entity has filed a proof of claim showing entitlement to a Secured Tax Claim, and the Trustee is not aware that any Secured Tax Claim exists.

Claim is the only secured claim in these cases. For this reason, it would violate section 1122 to classify the Terry Secured Claim with other claims, such as general unsecured claims.

39.     Even if the judicial lien created by service of the writ of garnishment were avoided and Terry stood in the position of an unsecured creditor, it would still be appropriate to classify Terry's claim separately. Section 1122(a) does not require that all "substantially similar" claims be classified together. *In re Thru, Inc*., Case No. 17-31034, 2017 Bankr. LEXIS 1902, at *8 (Bankr. N.D. Tex. Jul. 10, 2017). Indeed, courts recognize that a plan proponent has and should have a large degree of flexibility in classifying claims and equity interests. *See In re McCommas LFG Processing Partners,* Case No. 07-32219-HDH-11), 2007 Bankr. LEXIS 4053 (Bankr. N.D. Tex. Nov. 29, 2007); *In re General Homes Corp.,* 134 B.R. 853, 863 (Bankr. S.D. Tex. 1991). *In re Atlanta West VI*, 91 B.R. 620, 626 (Bankr. N.D. Ga. 1988). In the Fifth Circuit, separate classification of "substantially similar" claims will be upheld if the plan proponent shows that the classification was based on a reasonable justification and not to gerrymander an impaired accepting class. *Save Our Springs (SOS) Alliance v. WSI (II)-COS, L.L.C. (In re Save Our Springs (SOS) Alliance)*, 632 F.3d 168, 174 (5th Cir. 2011); *Heartland Fed. Sav. & Loan v. Briscoe Enters. (In re Briscoe Enters.)*, 994 F.2d 1160, 1167 (5th Cir. 1993); *Greystone*, 995 F.2d at 1279.

40.     Terry is uniquely situated in these cases. His claim is much larger, by a magnitude of more than ten, than any claim in the class of General Unsecured Claims.[4] Before the commencement of these cases, Terry, as an employee of Highland, served as portfolio manager for the Acis CLOs. Under Plan C of the Plan, the Reorganized Debtor will hire Terry as Chief Trader to resume his role as manager of the CLOs (this time as an employee of the Reorganized

---

[4] Indeed, except for the HCLOF Claim – which arises from its holding of subordinated notes and clearly is of a different character than any other claim – Terry's claim is by far the largest claim in these cases.

Debtor, not Highland). Terry's history – and, more importantly, his economic interest in what happens to the Debtors after confirmation of the Plan – are not shared by any other creditor in these cases. For this reason, it is perfectly appropriate for Terry's claim to constitute a separate class in the Plan. *See Briscoe*, 994 F.2d at 1167 (creditor's unique interest in reorganized debtor justified separate classification); *Thru*, 2017 Bankr. LEXIS 1902, at *9 (creditor's special "non-creditor interest" made separate classification appropriate).

41.     The reasonable justification for separately classifying Terry's claim, and the absence of any motive to gerrymander claims, are further supported by the unique treatment given to the claim, which treatment befits the unique situation of Terry. Under Plan A, unlike General Unsecured Claims, the Terry Secured Claim will receive payments of post-petition interest. (*Plan* § 2.10). Under Plan B or Plan C, Terry will receive 100% of the equity in the Reorganized Debtor in exchange for a $1 million reduction in the amount of his claim. The balance of the claim will be treated as a General Unsecured Claim. (*Plan* §§ 3.10, 4.10). Holders of General Unsecured Claims receive quarterly distributions of cash. (Plan §§ 3.11, 4.11). *Compare Greystone*, 995 F.2d at 1280-81 (separately classifying similar claims, but giving same treatment, undercuts proponent's justification for separate classes).

42.     Based on the authorities cited above, there is also reasonable business justification for separately classifying Highland's and HCLOF's claim.  Highland's claim should clearly be separately classified, not only because Highland is an insider and a potential competitor, but also because of the multitude of claims the Estate has against Highland as detailed in Exhibit D to the Plan, which include claims seeking millions from Highland based on breaches of fiduciary duties owed to the Debtors and the avoidance of fraudulent transfers.  In addition, the Trustee believes

that Highland's claim is subject to equitable subordination.  Those are all reasonable business justifications for classifying Highland separately from Terry and/or General Unsecured Claims.

**(ii)** **The Plan Complies with the Remaining Subsections of Section 1123(a) of the Bankruptcy Code.**

43.     In addition to subsection 1123(a)(1) of the Bankruptcy Code, discussed above, the Plan fully complies with each of the additional enumerated requirements of section 1123(a).

*(a) Section 1123(a)(2): Classes That Are Not Impaired by the Plan*

44.     Section 1123(a)(2) requires a plan to specify which classes of claims or interests are not impaired by the Plan. The Plan specifies that Class 1 (Secured Tax Claims)—whether in Plan A, B or C—is unimpaired. (Plan §§ 2.03, 3.03 and 4.03). Accordingly, the Plan satisfies the requirements of section 1123(a)(2) of the Bankruptcy Code.

*(b) Section 1123(a)(3):  Treatment of Classes That Are Impaired By the Plan*

45.     Section 1123(a)(3) requires a plan to specify how it will treat impaired classes of claims or interests. Article II of the Plan sets forth the treatment of Claims in each impaired Class for Plan A (Plan, §§ 2.08-2.13). Article III of the Plan sets forth the treatment of Claims in each impaired Class for Plan B (Plan, §§ 3.08-3.13). Article IV of the Plan sets forth the treatment of Claims in each impaired Class for Plan C (Plan, §§ 4.08-4.13). Accordingly, the Plan satisfies the requirements of section 1123(a)(3) of the Bankruptcy Code.

*(c) Section 1123(a)(4):  Equal Treatment Within Each Class*

46.     Section 1123(a)(4) requires that a plan provide the same treatment for each claim or interest within a particular class unless any claim or interest holder agrees to receive less favorable treatment than other class members. Under all alternatives of the Plan, the treatment of each Claim against or Interest in the Debtors, in each respective Class, is the same as the treatment of each other Claim or Interest in such Class, unless a creditor elects to receive less favorable

treatment. (Plan art. II, III and IV.) Accordingly, the Plan satisfies the requirements of section 1123(a)(4) of the Bankruptcy Code.

### (d) Section 1123(a)(5): Adequate Means for Implementation

47. Section 1123(a)(5) requires that a plan provide "adequate means for the plan's implementation." The Trustee contends all versions of the Plan satisfy section 1123(a)(5) of the Bankruptcy Code and the means for implementation for all Plan alternatives are appropriate for the reasons set forth in this brief, the *Limited Issues Brief* and the *Limited Issues Reply*.

48. Plan A will be implemented as provided in Article II of the Plan. (Plan, §§ 2.17-2.30). Specifically, Plan A will be implemented through a transaction with Oaktree, whereby Oaktree will transfer the Transaction Amount to the Trustee. The Trustee will then pay the HCLOF Claim in full. By virtue of the payment of the HCLOF Claim, the Trustee will be subrogated to HCLOF's position with respect to the Subordinated Notes. The Trustee will then transfer the Subordinated Notes to Oaktree along with all of Acis LP's rights, title and interest in the PMAs. What remains with the Debtors after those transfers will be transferred to the Acis Trust for the benefit of creditors and interest holders of the Debtors. For further information and briefing on the implementation of Plan A, see *Limited Issues Brief*, pp. 1-10, and the *Limited Issues Reply*.

49. Plans B and C will be implemented through Articles III and IV of the Plan, respectively. (Plan, §§ 3.17-3.30, 4.17-4.30.) Under those alternatives, on the Effective Date, all Cash, Estate Accounts Receivable, Estate Claims and Estate Defenses will be transferred to the Acis Trust. The Acis Trustee will liquidate those assets for the benefit of creditors of the Debtors. All existing interests in the Debtors will be cancelled and 100% of the interests in the Reorganized Debtor will be issued to Terry as partial payment for his Secured Claim. The PMAs will be

assumed by the Reorganized Debtor, which will continue to manage the CLOs, earn fees, and pay Claims as provided in the Plan from post-Effective Date income. Under Plan B, Brigade Capital Management, LP ("Brigade"), with the assistance of Cortland Capital Markets Services LLC, will provide sub-servicing and sub-advisory services to the Reorganized Debtor, and under Plan C the Reorganized Debtor will hire Terry as its Chief Trader. Under both Plan B and Plan C, the Indentures shall be amended pursuant to section 1123(a)(5)(F) of the Bankruptcy Code. For further information and briefing on the implementation of Plans B and C, see *Limited Issues Brief*, pp. 11-26, and the *Limited Issues Reply*.

### *(e) Section 1123(a)(6): Prohibitions on the Issuance of Non-Voting Securities*

50. Section 1123(a)(6) requires amendment of a corporate debtor's charter to prohibit the issuance of nonvoting equity securities. These Debtors are not corporations so this section does not apply.

### *(f) Section 1123(a)(7): Provisions Regarding Directors and Officers*

51. Section 1123(a)(7) requires that the Plan "contain only provisions that are consistent with the interests of creditors and interest holders and with public policy with respect to the manner of selection of any officer, director, or trustee under the plan and any successor to such officer, director, or trustee."

52. With respect to Plan A, the only officer, director, or trustee under the Plan is the Acis Trustee. The Plan has been modified to name Robin Phelan as the Acis Trustee and to provide that his current hourly rate is $750.00. Since the Acis Trustee is the same as the Trustee in these cases, his selection as a fiduciary has already undergone scrutiny, and his appointment is consistent with the interests of creditors and interest holders and with public policy. Under Plans B and C,

the same Acis Trustee will also control Cash, Estate Accounts Receivable, Estate Claims and Estate Defenses and will liquidate them for the benefit of creditors.

53.     Under Plans B and C, the Reorganized Debtor does not have officers, directors, or trustees at this point.  Terry will own 100% of the equity interests of the Reorganized Debtor and can structure them as he wishes.  Under Plan B, Brigade will act as the sub-servicer and sub-advisor.  Based on prior proceedings before this Court and filings and disclosures about Brigade, parties have sufficient information about its selection for that role.  The Trustee believes Brigade's role is consistent with the best interests of all parties in interest and with public policy.  Indeed, Brigade's selection as sub-servicer and sub-advisor has already been approved by order of this Court.  *See* Docket No. 464.  Under Plan C, Terry will act as Chief Trader.  The Trustee believes Terry's role is consistent with the best interests of all parties in interest and with public policy.

54.     These provisions are consistent with the interests of creditors and equity security holders and with public policy, as required by section 1123(a)(7).

### (g) Section 1123(a)(8) Is Not Applicable.

55.     Section 1123(a)(8) applies only in a case where the debtor is an individual. As the Debtors are not individuals, this provision does not apply to these cases.

### (iii)     The Plan Complies with Section 1123(b) of the Bankruptcy Code.

56.     Section 1123(b) sets forth certain permissive provisions that may be incorporated into a chapter 11 plan. Each provision of the Plan is consistent with section 1123(b) of the Bankruptcy Code.

### (a) Section 1123(b)(1):  Impairment/Unimpairment of Claims and Interests

57.     Section 1123(b)(1) provides that a plan may "impair or leave unimpaired any class of claims, secured or unsecured, or of interests." Claims in Class 1 (Secured Tax Claims) are

unimpaired by the Plan. The remaining Classes of Claims and Interests are impaired. Accordingly, the Plan is consistent with section 1123(b)(1) of the Bankruptcy Code.

### (b) Section 1123(b)(2): Assumption/Rejection of Executory Contracts and Leases

58.     Section 1123(b)(2) allows a plan to provide for the assumption, assumption and assignment, or rejection of executory contracts and unexpired leases pursuant to section 365 of the Bankruptcy Code.

59.     Section 8.01 of the Plan provides that all executory contracts and unexpired leases will be rejected unless they are assumed and assigned to Oaktree (in the case of Plan A) or are assumed (in the case of Plans B and C). The Trustee has filed or intends to file a schedule of the executory contracts to be assumed or assumed and assigned. Article VIII of the Plan also addresses other issues related to assumption or rejection of executory contracts and unexpired leases.

60.     Highland, HCLOF, the Issuers and Co-Issuers argue in their objections that the Trustee cannot assume the PMAs and assign them to Oaktree because section 365(c)(1) of the Bankruptcy Code and other applicable law prohibit him from doing so. See, Highland Objection pp. 24-26. That issue is addressed in the *Limited Issues Brief* at pp. 9-10, and the *Limited Issues Reply*.

61.     Highland and HCLOF also argue that the PMAs are personal service contracts that cannot be assigned under New York law. See, Highland Objection, pp. 26-28. The Trustee disagrees with that characterization, and that issue will be addressed in the Limited Issues Reply.

62.     Based on the foregoing, the Plan complies with section 1123(b)(2) of the Bankruptcy Code, and the assumptions and/or assignments contemplated in Plans A, B and C are appropriate under the Bankruptcy Code and other applicable law and case authorities.

### (c) Section 1123(b)(3): Settlement of Claims and Causes of Action

63.     Section 1123(b)(3)(A) allows a plan to provide for "the settlement or adjustment of any claim or interest belonging to the debtor or to the estate." Section 1123(b)(3)(B) provides that a plan may "provide for the retention and enforcement by the debtor" of any such claim or interest. Article VI of the Plan provides for the retention of all Estate Claims, including but not limited to those listed on Exhibit D to the Plan. Retention of the Estate Claims is consistent with and permitted by section 1123(b)(3)(B) of the Bankruptcy Code.

### (d) Section 1123(b)(4): Sale of All or Substantially All Assets

64.     Section 1123(b)(4) provides that a plan may "provide for the sale of all or substantially all of the property of the estate, and the distribution of the proceeds of such sale among holders of claims or interests."   None of the Plan alternatives contemplate a sale of substantially all of the assets of the Estate. Plan A contemplates an assumption and assignment of the PMA to Oaktree and the transfer of the Subordinated Notes to Oaktree after the Trustee pays the HCLOF Claim and is subrogated to its position with respect to the Subordinated Notes.  See, Plan §§ 2.17 and 2.18.  The *Limited Issues Brief* and the *Limited Issues Reply* address the support for these transactions and are incorporated fully herein.

### (e) Section 1123(b)(5): Modification of Creditors' Rights

65.     Section 1123(b)(5) provides that a plan may "modify the rights of holders of secured claims, other than a claim secured only by a security interest in real property that is the debtor's principal residence, or of holders of unsecured claims, or leave unaffected the rights of holders of any class of claims." Here, the Plan affects the rights of all holders of Claims against and Interests in the Debtors, with the exception of holders of Claims in Class 1, which is unimpaired. Accordingly, the Plan is consistent with section 1123(b)(5) of the Bankruptcy Code.

### (f) Section 1123(b)(6) and Section 105(a):  Other Appropriate Provisions—Substantive Consolidation and Retention of Jurisdiction

66.    Section 1123(b)(6) is a "catchall" provision, which permits inclusion in a plan of any appropriate provision as long as such provision is consistent with applicable sections of the Bankruptcy Code. In addition, section 105(a) of the Bankruptcy Code provides that the Court may issue "any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title." 11 U.S.C. § 105(a).

67.    Article IX of the Plan provides for substantive consolidation of the Debtors for purposes of voting, distributions and implementation of all alternatives of the Plan.

68.    The Trustee believes that substantive consolidation of the Debtors is in the best interests of the Estate and all parties-in-interest and meets the standards set forth in this Court's opinion *In re ADPT DFW Holdings, LLC*, 574 B.R. 87 (Bankr. N.D. Tex. 2017).  The substantive consolidation analysis is much simpler in these cases than in *ADPT DFW Holdings*.  These cases involve only two Debtors—Acis LP and its general partner, Acis GP.  Acis LP has assets where Acis GP does not, but the two Debtors share a nearly identical set of creditors.  To the best of the Trustee's knowledge, Acis GP's liability is derived from the liabilities of Acis LP because Acis GP is the general partner.  No creditors or parties in interest have objected to substantive consolidation, nor will any of them be harmed by the substantive consolidation requested by the Trustee.

69.    The Plan also provides that the Court will retain jurisdiction until the closing of these cases as to all matters involving the Plan and the Claims allowance and distribution process. (Plan art. XII.) These provisions are appropriate because they are matters pertaining to the interpretation, implementation, or execution of a confirmed plan.  *See, Balestri v. Hunton & Williams, LL) (In re Hallwood Energy)*, 2012 Bankr. LEXIS 6066, at *18 (Bankr. N.D. Tex. Feb.

8, 2012) (citing *Bank of La. v. Craig's Stores of Tex., Inc. (In re Craig's Stores of Tex., Inc.)*, 266 F.3d 388, 391 (5th Cir. 2001)). Accordingly, the continuing jurisdiction of the Court provided for in the Plan is consistent with applicable law and therefore permissible under section 1123(b)(6) of the Bankruptcy Code.

70.     The Plan also contains a temporary injunction (applicable in the event that the Plan is confirmed under the terms and provisions of Plan B or Plan C) that effectively continues a preliminary injunction already issued in the Highland Adversary which will expire by its terms upon confirmation of the Plan.  The grounds for issuance of such injunction through the Plan are addressed in detail in this brief after discussion of the remaining requirements for confirmation of the Plan.

**(iv)     Section 1123(c) of the Bankruptcy Code**

71.     Section 1123(c) applies only in a case concerning an individual and therefore does not apply to the Chapter 11 Cases.

**(v)     Section 1123(d):  Cure of Defaults**

72.     Section 1123(d) provides that "if it is proposed in a plan to cure a default the amount necessary to cure the default shall be determined in accordance with the underlying agreement and applicable nonbankruptcy law." Section 8.02 of the Plan provides that all payments that may be required by section 365(b)(1) of the Bankruptcy Code to satisfy any Cure Claim shall be made by the Acis Trustee as soon as reasonably practical after the Effective Date or on upon such terms as may be otherwise agreed upon by the Acis Trustee and the holder of such Cure Claim.  However, in the event of a dispute regarding the amount of any Cure Claim, the cure of any other defaults, the ability of Oaktree or the Reorganized Debtor to provide adequate assurance of future performance, or any other matter pertaining to assumption or assignment of an Executory Contract, the Acis Trustee shall make such cure payments and cure such other defaults and provide adequate

assurance of future performance, all as may be required by section 365(b)(1) of the Bankruptcy Code, following the entry of a Final Order by the Court resolving such dispute. Accordingly, the Plan complies with section 1123(d) of the Bankruptcy Code.

73.     As demonstrated by the foregoing, the Plan fully complies with the requirements of sections 1122 and 1123, as well as with all other provisions of the Bankruptcy Code, and thus satisfies the requirement of section 1129(a)(1) of the Bankruptcy Code.

**B.      Section 1129(a)(2):  The Trustee Has Complied with the Bankruptcy Code.**

74.     Section 1129(a)(2) of the Bankruptcy Code requires that the plan proponent comply with the applicable provisions of the Bankruptcy Code. The legislative history of section 1129(a)(2) reflects that this provision is intended to encompass the disclosure and solicitation requirements under sections 1125 and 1126 of the Bankruptcy Code. *See* H.R. REP. NO. 95-595, at 412 (1977); S. REP. NO. 95-989, at 126 (1978) ("Paragraph (2) [of § 1129(a)] requires that the proponent of the plan comply with the applicable provisions of chapter 11, such as section 1125 regarding disclosure."); *See also, In re ADPT DFW Holdings LLC*, 577 B.R. 232, 245 (Bankr. N.D. Tex. 2017); *In re Mirant Corp.*, 2007 Bankr. LEXIS 4951, at * 25 (Bankr. N.D. Tex. Apr. 27, 2007); *In re Seatco, Inc.,* 257 B.R. 469, 479 (Bankr. N.D. Tex. 2001).

75.     As set forth more fully below, the Trustee has complied with the applicable provisions of the Bankruptcy Code, including the requirements of sections 1125 and 1126, regarding disclosure and solicitation of the Plan.

**(i)      The Trustee Complied with Section 1125 of the Bankruptcy Code.**

76.     Section 1125(b) of the Bankruptcy Code provides, in pertinent part:

>       An acceptance or rejection of a plan may not be solicited after the commencement of the case under [the Bankruptcy Code] from a holder of a claim or interest with respect to such claim or interest, unless, at the time of or before such solicitation, there is transmitted to such holder the plan or a summary of the plan, and a

> written disclosure statement approved, after notice and a hearing,
> by the court as containing adequate information. . . .

77. In the Disclosure/Scheduling Order, the Court conditionally approved the Disclosure Statement as containing "adequate information" in accordance with section 1125 of the Bankruptcy Code. The Trustee requests final approval of the Disclosure Statement at the Combined Hearing.

78. On July 30, 2018, the Trustee mailed the Solicitation Packages. On August 17, 2018, the Trustee filed the Ballot Tabulation, which states that solicitation and tabulation of votes on the Plan took place in accordance with the Disclosure/Scheduling Order. The Trustee did not solicit acceptances of the Plan from any holders of Claims or Interests prior to the transmission of the conditionally approved Disclosure Statement. In addition, the Ballot Tabulation describes the methodology for the tabulation and results of voting with respect to the Plan.

**(ii)    The Trustee Complied with Section 1126 of the Bankruptcy Code.**

79. Section 1126 of the Bankruptcy Code specifies the requirements for acceptance of a plan of reorganization. Pursuant to section 1126, only holders of allowed claims in impaired classes of claims or equity interests that will receive or retain property under a plan on account of such claims or equity interests may vote to accept or reject such plan. Section 1126 provides, in pertinent part, as follows:

> (a) The holder of a claim or interest allowed under section 502 of [the Bankruptcy Code] may accept or reject a plan.

> * * *

> (f) Notwithstanding any other provision of this section, a class that is not impaired under a plan, and each holder of a claim or interest of such class, are conclusively presumed to have accepted the plan, and solicitation of acceptances with respect to such class from the holders of claims or interests of such class is not required.

(g) Notwithstanding any other provision of this section, a class is deemed not to have accepted a plan if such plan provides that the claims or interests of such class do not entitle the holders of such claims or interests to receive or retain any property under the plan on account of such claims or interests.

80.     As set forth in the Ballot Tabulation and above, the Trustee solicited acceptances of the Plan from all known holders of Claims and Interests in impaired Classes.

81.     An impaired class of claims is deemed to have accepted a plan if holders of at least two-thirds in amount and more than one-half in number of the claims in the class, considering only the claims whose holders vote, cast votes to accept the plan. 11 U.S.C. § 1126(c). Likewise, an impaired class of interests is deemed to have accepted a plan if holders of at least two-thirds in amount of the interests in the class, considering only the interests whose holders vote, cast votes to accept the plan. As evidenced in the Ballot Tabulation, the Plan has been accepted by the requisite majorities in Classes 3 and 4 under the Plan. The Trustee submits, therefore, that the requirements of section 1129(a)(2) of the Bankruptcy Code have been satisfied.

**C.      Section 1129(a)(3):  The Plan Has Been Proposed in Good Faith and Not by Any Means Forbidden by Law.**

**(i)       The Plan is Proposed in Good Faith.**

82.     Section 1129(a)(3) of the Bankruptcy Code requires that a plan be "proposed in good faith and not by any means forbidden by law."  "Where the plan is proposed with the legitimate and honest purpose to reorganize and has a reasonable hope of success, the good faith requirement of §1129(a)(3) is satisfied." *In re Sun Country Dev., Inc.*, 764 F.2d 406, 408 (5th Cir. 1985). *See also*, *Western Real Estate Equities, L.L.C. v. Vill. At Camp Bowie I, L.P. (In re Vill. At Camp Bowie I, L.P.)*, 710 F.3d 239 (5th Cir. 2013); *In re Cajun Elec. Power Co-op., Inc.*, 150 F.3d 503, 519 (5th Cir. 1998); *In re T-H New Orleans P'ship*, 116 F.3d 790, 802 (5th Cir. 1997).

83. The Highland and HCLOF argue that the Plan has not been proposed in good faith because of the Trustee's proposed transaction with Oaktree under Plan A. (Highland Objection, p. 11). Those issues are discussed in the *Limited Issues Brief* and in the *Limited Issues Reply*.

84. Highland and HCLOF also argue that the Plan is not proposed in good faith as required by section 1129(a)(3) because the Trustee allegedly did not negotiate the economic terms of the Oaktree proposal, did not negotiate the highest possible price for the Subordinated Notes, and is favoring Terry over other creditors. They also argue that Terry was motivated by bad faith when he filed and prosecuted the involuntary petitions and that the Trustee has adopted that bad faith. (Highland Objection, pp. 14-16).

85. The Trustee and his financial advisors ran a process to find the highest and best offer from parties willing to serve as a Plan funder under the Plan. Indeed, the Trustee's financial advisors contacted approximately forty-eight (48) entities that they believed would be qualified and have an interest in serving as a potential Plan funder under any of the Plan alternatives. Of these entities, more than half signed non-disclosure agreements with the Trustee, and approximately nine (9) submitted proposals. Although the Trustee did not receive any additional Plan A proposals, he did receive proposals from parties willing to serve as a sub-advisor under Plan B, and ultimately sought approval of Brigade because, in the Trustee's good faith business judgement, it submitted the most favorable proposal.

86. The Trustee, as the plan proponent, has met his good faith obligation under the Bankruptcy Code. The Trustee proposed the Plan with the purpose of expeditiously distributing value to creditors and not by any means forbidden by law. Inasmuch as the Plan promotes the rehabilitative objectives and purposes of the Bankruptcy Code, the Plan and the related documents have been filed in good faith and the Trustee has satisfied his obligations under section 1129(a)(3).

**(ii)  The Plan is Not Proposed by Any Means Forbidden by Law.**

87.  Highland and HCLOF also argue that the Plan cannot meet the requirements of section 1129(a)(3) of the Bankruptcy Code because the transaction proposed in Plan A—the transfer of the Subordinated Notes from the Estate to Oaktree is a sale of securities that must (but does not) comply with the Securities Act of 1933 (the "33 Act") or the Investment Advisers Act of 1940 (the "IAA"). (Highland Objection, pp. 11-14).

88.  Contrary to Highland's assertions, the Plan does not violate the 33 Act or the IAA. Highland first asserts that because the Trustee has not filed a registration statement, as required under Section 5 of the '33 Act, regarding the transfer of the Subordinated Notes to Oaktree, the Plan violates applicable securities law. (Highland Objection ¶¶ 28-33). Further, Highland argues that the exemption from securities laws pursuant to section 1145 of the Bankruptcy Code does provide a safe harbor to the Oaktree transaction. (*Id.* ¶¶ 30-33).

89.  S.E.C. Rule 144A, however, exempts private placements to qualified institutional buyers from the registration requirements of section 5 of the Securities Act. *See* 15 U.S.C. 77e(d)(2); 17 C.F.R. § 230.144A. Oaktree is a "qualified institutional buyer" as that term is defined under Rule 144A, and therefore the Oaktree transaction is exempt from the registration requirements of section 5. The Asset Transfer Agreement draft, attached as Exhibit A to the Plan, makes clear that the transfer of the Subordinated Notes is pursuant to Rule 144A. *See* Plan, Exhibit A § 3.5. Accordingly, the transfer of Subordinated Notes to Oaktree is exempt from the registration requirements of Section 5 of the '33 Act, and the Trustee need not avail himself of the exemption

provided by section 1145 of the Bankruptcy Code.[5]  Highland's argument that the Plan violates the '33 Act ignores the nature of the transaction and is meritless.

90.     Highland's assertions that the Plan violates the IAA and that the Trustee has violated fiduciary duties to the investors of the CLOs are also unfounded. In sum, Highland argues that because the Trustee has a duty to maximize value for creditors in the Bankruptcy Cases, rather than an "undivided loyalty" to investors, he is compelled to violate the IAA—essentially that compliance with the Bankruptcy Code is a violation of the IAA.  Highland also contends that by merely proposing the Plan, which Highland believes violates securities laws and the IAA, the Trustee has violated the IAA. Here, Highland assumes that the Plan violates the IAA, which would violate section 1129(a)(3) of the Bankruptcy Code, and therefore the Trustee has violated the IAA by proposing the Plan.  By assuming its premise, this argument is patently circular.

91.     Moreover, the Trustee is not an "investment adviser" as that term is understood under the IAA—the Trustee does not provide investment advice, and he does not hold himself out as an investment adviser.  Mindful of his fiduciary duties, the Trustee is well aware of Acis LP's obligation to comply with the IAA, and he has accordingly retained professionals and special counsel to advise him with respect to such obligations. Additionally, by exercising his rights and fulfilling his duties under the Bankruptcy Code, including defending against or satisfying claims made against the bankruptcy estates (as is being done with respect to HCLOF's claim, under the Plan), and carrying out the continued operations of Acis LP, as a registered investment adviser, the Trustee is not in violation of an adviser's fiduciaries duties under the IAA.

---

[5] In addition to Rule144A, the Trustee reserves all rights to assert any other exceptions to the registration requirement under the '33 Act that would apply to the transfer of the Subordinated Notes to Oaktree.

92.    In the case cited by Highland from the Eastern District of Michigan, the district court disagreed that the chapter 11 trustee could not also fulfill the debtor's duties as a "plan administrator" under an ERISA plan, and the chapter 11 trustee was therefore obligated to terminate the ERISA plan pursuant to its terms. *In re New Ctr. Hosp.*, 200 B.R. 592, 593-95 (E.D. Mich. 1996). Unlike the *New Center Hospital* case, the Trustee is not arguing that the IAA is inapplicable to the Debtor, but rather that he has not violated the IAA.

93.    The Trustee contends that he has fulfilled any duties owed under the Bankruptcy Code and other applicable law, including the IAA. Highland's allegations that the Trustee has violated the IAA, the '33 Act, or any other securities laws are without foundation and, ultimately, meritless.

**D.    Section 1129(a)(4): The Plan Provides That Professional Fees and Expenses are Subject to Court Approval.**

94.    Section 1129(a)(4) of the Bankruptcy Code requires that certain professional fees and expenses paid by the plan proponent, the debtor, or a person receiving distributions of property under the plan, be subject to approval by the Court. Sections 2.05(e), 3.05(e) and 4.05(e) of the Plan provide that Estate Professionals shall each file and submit a final fee application to the Court no later than sixty (60) days after the Effective Date. An Administrative Expense Claim by an Estate Professional in respect of which a final fee application has been properly filed and served shall become an Allowed Administrative Expense only to the extent allowed by Final Order of the Court. Section 12.01(b) of the Plan further provides that the Court shall retain jurisdiction to "hear and determine any and all applications for payments of fees and expenses pursuant to this Plan to any Estate Professional pursuant to sections 330 or 503 of the Bankruptcy Code." All fees and expenses of Professionals accrued through the Confirmation Date thus remain subject to final review by the Court for reasonableness pursuant to sections 330, 331, and 503(b).

95.    The foregoing procedures for the Court's review and ultimate determination of the fees and expenses to be paid by the Debtors satisfy the objectives of section 1129(a)(4).  *See, ADPT DFW Holdings LLC,* 577 B.R. 232, 246 (Bankr. N.D. Tex. 2017).   Based upon the foregoing, the Plan complies with the requirements of section 1129(a)(4).

**E.    Section 1129(a)(5):  The Trustee Has Disclosed All Necessary Information Regarding Directors, Officers, and Insiders.**

96.    Section 1129(a)(5) of the Bankruptcy Code requires that the plan proponent disclose the identity and affiliations of the proposed officers and directors of the reorganized debtor; that the appointment or continuance of such officers and directors be consistent with the interests of creditors and equity security holders and with public policy; and that there be disclosure of the identity and compensation of any insiders to be retained or employed by the reorganized debtor.

97.    The Trustee has satisfied the foregoing requirements. With respect to Plan A, the only officer, director, or trustee under the Plan is the Acis Trustee.  The Plan has been modified to name Robin Phelan as the Acis Trustee and to provide that his current hourly rate is $750.00. Since the Acis Trustee is the same as the Trustee in these cases, his identity, affiliations, and compensation have been vetted, and his appointment is consistent with the interests of creditors and interest holders and with public policy.  Under Plans B and C, the same Acis Trustee will also control Cash, Estate Accounts Receivable, Estate Claims and Estate Defenses and will liquidate them for the benefit of creditors.

98.    Under Plans B and C, the Reorganized Debtor does not have officers, directors, or trustees at this point.  Terry will own 100% of the equity interests of the Reorganized Debtor and can structure them as he wishes.  Under Plan B, Brigade will act as the sub-servicer and sub-advisor.  Based on prior proceedings before this Court and filings and disclosures about Brigade,

parties have sufficient information about its selection for that role and its affiliations and compensation. The Trustee believes Brigade's role is consistent with the best interests of all parties in interest and with public policy. Under Plan C, Terry will act as Chief Trader. The parties are aware of his identity and affiliations, and, since he is not an insider, the Trustee is not required by section 1129(a)(5)(B) to disclose his compensation. The Trustee believes Terry's role is consistent with the best interests of all parties in interest and with public policy.

99. Highland and HCLOF argue that the Plan does not disclose information about Terry's affiliations with parties-in-interest *or his affiliations with the Trustee* as required by section 1129(a)(5)(A)(i) for purposes of Plan C and that Terry's affiliation with the Trustee makes him a non-statutory insider. (Highland Objection, pp. 16-19).

100. Under Plan C, the Reorganized Debtor will hire Terry as Chief Trader, which *may* make him an officer of the successor to the Debtors within the contemplation of section 1129(a)(5)(i). Accordingly, in the scenario of Plan C, the disclosures required by this provision may be applicable to Terry.

101. Contrary to the objecting parties' protestations, the Trustee has already made the requisite disclosures regarding Terry's role prior to the commencement of these cases and his anticipated role after confirmation of the Plan. Terry's management of the CLOs as an employee of Highland, his termination by Highland, his obtaining an arbitration award and subsequent judgment against the Debtors, and his filing of the involuntary bankruptcy petitions against the Debtors are all detailed in the Disclosure Statement. (*Disclosure Statement* at p. 26). Likewise, Terry's expected role as Chief Trader of the Reorganized Debtor post-confirmation is fully disclosed in both the Plan and the Disclosure Statement. (*See Plan* § 4.21; *Disclosure Statement* at pp. 24, 49). No further disclosure is required under section 1129(a)(5). *See In re Premiere*

*Network Servs.*, Case No. 04-33402-HDH-11, 2005 Bankr. LEXIS 2298, at *8 (Bankr. N.D. Tex. Jul. 1, 2005) (plan describing "in general terms the proposed operations of the successor to the debtor" held to be "[s]ufficient disclosure" under § 1129(a)(5)(A)).

102.    Respectfully, the Trustee submits that the objection under section 1129(a)(5) is a red herring. Highland and HCLOF concede that the Trustee has disclosed the "identity" of Terry but argue insistently that Terry's "affiliations" have not been adequately disclosed. Specifically, the objecting parties express grave concern over Terry's "relationship and affiliations with other parties in interest in this case including (without limitation) Oaktree, Brigade Capital Management, L.P., and Cortland Capital Markets Services LLC." (Highland Objection at p. 17.) In addition, Highland and HCLOF claim that there is some "post-petition affiliation between Terry and the Chapter 11 Trustee himself" that needs disclosure. (*Id*.) Highland and HCLOF offer not a shred of support that any such "affiliations" exist. In fact, no such affiliations exist that would require disclosure under section 1129(a)(5). To the extent that any further disclosure is required, the Trustee will provide it at the Confirmation Hearing. *See Premiere Network*, 2005 Bankr. LEXIS 2298, at *8 (disclosure requirement of § 1129(a)(5)(B) satisfied by evidence presented at confirmation hearing).

103.    Highland and HCLOF go on to argue that Terry is an insider – not of the Debtors, but of the Trustee. Highland and HCLOF implicitly concede, as they must, that Terry cannot possibly be considered an insider of the Trustee within the statutory definition of the term. (Highland Objection, p. 17.) *See* 11 U.S.C. § 101(31). Undeterred, Highland and HCLOF proceed to weave a fanciful theory that Terry is a "non-statutory insider" of the Trustee.

104.    Courts have in fact noted that the categories set forth in section 101(31) were not meant to be exhaustive, and that, in an appropriate case, a person or entity can be considered an

insider without fitting into any of the statutory descriptions. *See, e.g., Browning Interests v. Allison (In re Holloway)*, 955 F.2d 1008, 1010 (5th Cir. 1992) (debtor's ex-wife of over 20 years was non-statutory insider); *Think3 Litig. Tr. v. Zuccarello (In re Think3, Inc.)*, 529 B.R. 147, 190-91 (Bankr. W.D. Tex. 2015) (reviewing pleadings for allegations that defendants were non-statutory insiders); *Lynch v. Winslow (In re Winslow),* 473 B.R. 94, 106 (E.D.N.C. 2012) (debtor's auctioneer was not non-statutory insider). However, the concept of the non-statutory insider is not nearly so expansive as Highland and HCLOF would have the Court believe, and certainly not broad enough to include Terry and the Trustee.

105.    As the Fifth Circuit has observed, courts consider two factors in determining whether non-statutory insider status exists:

> (1) the closeness of the relationship between the [potential insider] and the debtor; and (2) whether the transactions between the [potential insider] and the debtor were conducted at arm's length.

*Holloway*, 955 F.2d at 1011; *see also U.S. Bank N.A. v. Village at Lakeridge, LLC,* 138 S. Ct. 960, 965 (2018) (mentioning two-part test without addressing correctness of the standard).

106.    Applying these two factors to the present case, it is apparent that Terry cannot be considered an insider of the Trustee. First, Terry and the Trustee had no relationship, close or otherwise, before the commencement of these cases. Since the Petition Date, the relationship between Terry and the Trustee has not been any closer or otherwise different from the typical relationship between a very large creditor and the estate representative in any chapter 11 case. Second, all of the dealings between Terry and the Trustee in these cases, including negotiation of the terms of the Plan, have been fair and at arm's length. Without question, Terry's has been an important and influential voice in these proceedings. He commenced these cases by filing the involuntary petitions. Except for the HCLOF Claim, Terry's claim is by far the largest in this reorganization. However, his position is due solely to the size and priority of his claim with respect

to the other claims in these cases. The fact that a creditor holds a strong or even dominant bargaining position does not make it an insider. *In re Friedman*, 126 B.R. 63, 70 (B.A.P. 9th Cir. 1991); *MCA Fin. Grp. v. Hewlett-Packard (In re Fourthstage Techs*.), 355 B.R. 155, 160 (Bankr. D. Ariz. 2006).

107.    Highland's and HCLOF's case authorities are inapposite. With the exception of the Supreme Court's opinion in *Lakeridge* and the Fifth Circuit's *Holloway* decision, cited above, none is binding on this Court. Moreover, all the cases are distinguishable in material ways. The Supreme Court's opinion in *Lakeridge* was about the appropriate standard of review; the Court specifically withheld judgment on whether the lower courts were correct on the substantive ruling. 138 S. Ct. at 965. In *In re Allegheny International, Inc.*, 118 B.R. 282 (Bankr. W.D. Pa. 1990), the insider was a claim-purchasing investor and plan proponent that was guilty of all manner of inequitable conduct. *See id*. at 299. *Holloway* involved the debtor's ex-wife of more than twenty years who engaged in transactions with the debtor with clearly personal, not commercial, motivation. 955 F.2d at 1013-14. In the Ninth Circuit's opinion in *Lakeridge*, the court held that the purchaser of a claim from a statutory insider does *not* thereby become an insider of the debtor. *U.S. Bank N.A. v. Village at Lakeridge, LLC (In re Village at Lakeridge, LLC)*, 814 F.3d 993, 1003 (9th Cir. 2015), *aff'd*, 138 S. Ct. 960 (2018). In *Anstine v. Carl Zeiss Meditec AG (In re U.S. Medical, Inc*.), 531 F.3d 1272 (10th Cir. 2008), the court addressed the legal issue whether a party's "extreme closeness" to the debtor can make him a non-statutory insider, without any showing of control, attempt to control, undue influence, or dealings at less than arm's length. The Tenth Circuit adopted the two-part test cited above. *Id*. at 1282.

108.    In *In re South Beach Securities, Inc*., 376 B.R. 881 (Bankr. N.D. Ill. 2007), the debtor was a corporate shell with no business operations or income. Its only assets were net

operating losses, and its only creditor was a company whose officer and director signed the debtor's chapter 11 petition as "authorized agent." Initially, the chapter 11 filing was dismissed as having been filed in bad faith, but the dismissal was reversed on appeal. Later the debtor proposed a plan. At the confirmation hearing, the court found that the creditor was a non-statutory insider of the debtor. *Id*. at 893. In *In re Rexford Properties, LLC*, 557 B.R. 788 (Bankr. C.D. Cal. 2016), an investment trust that held an equity interest in the debtor and was managed by a personal friend of the debtor's founder was held to be an insider of the debtor, where principals in the debtor were also income beneficiaries of the trust, and there was evidence that the trust extended a loan to the debtor not on an arm's-length basis. *Id*. at 801.

109.    In all of the cases cited by Highland and HCLOF where the court found non-statutory insider status, the facts showed both a high degree of closeness between the debtor and the other party and a transaction or course of dealings where the parties did not interact at arm's length. Neither is present here. Terry and the Trustee had no relationship of any kind prior to the Petition Date, and their relationship since then has not been characterized by anything like the kind of closeness that is found in the cases on which Highland and HCLOF rely. Likewise, all of the interactions between Terry and the Trustee have been at arm's length.

110.    Additionally, none of the cases that Highland and HCLOF cite involves an insider of a chapter 11 trustee. It is not surprising that Highland and HCLOF could not produce a single case in which a court held that a person or entity was a non-statutory insider of a chapter 11 trustee. Often, a trustee is appointed in a chapter 11 case for the very purpose of bringing in an outside representative of the estate, someone who will be free from actual or potential influences resulting from the debtor's prepetition activities. *See In re Nartron Corp*., 330 B.R. 573, 592 (Bankr. W.D. Mich. 2005) (lack of evenhandedness in dealing with insiders is a factor in appointment of chapter

11 trustee). The Trustee had no relationship with Terry prepetition, and their relationship during the pendency of these cases has been professional and at arm's length. The argument that Terry is an insider of the Trustee is wholly unsupported by the relevant facts and applicable law.

111.    Based upon the foregoing, the Plan satisfies section 1123(a)(5) of the Bankruptcy Code.

**F.    Bankruptcy Code Section 1129(a)(6) Is Not Applicable.**

112.    Bankruptcy Code section 1129(a)(6) provides that "[a]ny governmental regulatory commission with jurisdiction, after confirmation of the plan, over the rates of the debtor has approved any rate change provided for in the plan, or such rate change is expressly conditioned on such approval." First, the Trustee submits that this provision of the Bankruptcy Code is not applicable to the chapter 11 cases as neither the Debtors nor the Reorganized Debtor are subject to any form of rate regulation that would require such regulatory approval to satisfy section 1129(a)(6) of the Bankruptcy Code. Second, by its terms, section 1129(a)(6) of the Bankruptcy Code applies only where a rate change is "provided for in the plan." Here, the Plan provides for no such rate change. For these reasons, section 1129(a)(6) is inapplicable.

**G.    The Plan Satisfies the Requirements of Section 1129(a)(7) of the Bankruptcy Code.**

113.    Section 1129(a)(7) of the Bankruptcy Code requires, in relevant part, that with respect to each impaired class of claims or interests, each holder of a claim or interest in such class either

> (i) has accepted the plan; or
>
> (ii) will receive or retain under the plan on account of such claim or interest property of a value, as of the effective date of the plan, that is not less than the amount that such holder would so receive or retain if the debtor were liquidated under chapter 7 of [the Bankruptcy Code] on such date."

114. Section 1129(a)(7) of the Bankruptcy Code is often referred to as the "best-interests-of-creditors" test or the "liquidation" test. The best-interests test focuses on individual dissenting creditors rather than classes of claims. *See Bank of Am. Nat'l Trust & Sav. Ass'n v. 203 N. LaSalle St. P'ship*, 526 U.S. 434 (1999). Under the best-interests test, the court "must find that each [non-accepting] creditor will receive or retain value that is not less than the amount he would receive if the debtor were liquidated [under chapter 7 of the Bankruptcy Code]." *Id.* at 440; *United States v. Reorganized CF&I Fabricators, Inc.*, 518 U.S. 213, 228 (1996).

115. Highland and HCLOF argue that the Plan does not meet the best interest of creditors' test required by section 1129(a)(7) because the Trustee purportedly has not shown that the creditors who have not accepted the plan will receive no less under the Plan than they would in a hypothetical chapter 7 liquidation. (Highland Objection, pp. 20-21).

116. Under the Plan, there is only one unimpaired Class, Class 1 (Secured Tax Claims). By its terms, the best-interests test does not apply to an unimpaired class. Therefore, the Plan's treatment of Class 1 is consistent with section 1129(a)(7).

117. The best-interests test is also satisfied by the treatment of the other Classes under the Plan, which are impaired, including Class 5, the only class that did not vote to accept the Plan.

118. As discussed in the Disclosure Statement at page 23 and its Exhibit "2-D," the Trustee's financial advisors and investment bankers, Miller Buckfire and Stifel, prepared a Chapter 7 Liquidation Analysis that reflects projected Distributions of between approximately 0% and 46% to the holder of an Allowed Class 3 Terry Claim, between approximately 0% and 46% to each holder of an Allowed Class 4 General Unsecured Claim, and approximately 0% to each holder of an Allowed Class 5B Insider Claim, under a Chapter 7 Liquidation Analysis. The anticipated Distributions to the holders of Allowed Class 3 and Class 4 Claims is significantly lower in a

chapter 7 liquidation than under any of the alternative plans within the Plan. This is based on a number of factors, including the fact that, in a chapter 7 liquidation, Acis LP would not receive the $8.6 million it would receive from Oaktree for the PMAs under Plan A, nor would it receive the approximately $13.5 million in revenue under the PMAs for continuing to manage the Acis CLOs as proposed under Plan B and Plan C. The loss of value from the PMAs that would occur in a chapter 7 liquidation will result in a much lower distribution to creditors.

119.     At the Combined Hearing, the Trustee and his financial advisors and investment bankers will testify as to this confirmation requirement. Exhibit 2-D to the Disclosure Statement sets forth the Trustee's Liquidation Analysis and Exhibits 2-A, 2-B(3), and 2-C set forth the projected recoveries under each Plan alternative. These reports reflect that a liquidation of the Debtors' assets and distribution of the proceeds to creditors in a hypothetical chapter 7 case would likely result in lower recovery for all creditors than the projected recoveries under the Plan. The Liquidation Analysis (i) is persuasive and credible, (ii) has not been controverted by other evidence, (iii) is based on reasonable and sound assumptions, and (iv) provides a reasonable estimate of the liquidation values of the assets of the Debtors' estates upon conversion to a case under chapter 7 of the Bankruptcy Code. The Liquidation Analysis shows that holders of Claims and Interests will receive or retain at least as much under the Plan (in many cases, much more) than they would receive in a hypothetical liquidation under chapter 7 of the Bankruptcy Code. Based upon the foregoing, the Trustee submits the best-interests test is satisfied.

**H.     Section 1129(a)(9): The Plan Provides for Payment in Full of All Allowed Priority Claims.**

120.     Section 1129(a)(9) of the Bankruptcy Code requires that persons holding claims entitled to priority under section 507(a) receive specified cash treatment under the plan, unless the holder of a particular claim agrees to a different treatment with respect to such claim.

**(i)      Section 1129(a)(9)(A):  Administrative Expenses.**

121.      The Plan satisfies section 1129(a)(9)(A) with respect to Administrative Expenses. The Plan provides that each holder of an Allowed Administrative Expense shall receive full payment of its Claim on the later of the Effective Date or the tenth (10th) Business Day after it is Allowed, unless some other treatment is agreed upon in writing. (Plan, §§ 2.05(b), 3.05(b), and 4.05(b)).  Thus, the Plan's treatment of Administrative Expenses meets the requirements section 1129(a)(9)(A).

**(ii)      Sections 1129(a)(9)(B) & (C) are Not Applicable.**

122.      There are no Claims against the Debtors like those referenced in section 1129(a)(9)(B) & (C) of the Bankruptcy Code. Therefore these sections are not applicable.

**(iii)      Section 1129(a)(9)(D):  Secured Tax Claims**

123.      The treatment of Secured Tax Claims under the Plan complies with the requirements of section 1129(a)(9)(D). The Plan provides that Allowed Secured Tax Claims will be paid in full on the Initial Distribution Date.  The Trustee does not believe there are any such claims.

124.      These treatment provisions are in full compliance with section 1129(a)(9)(D).

125.      Based upon the foregoing, the Plan satisfies all the requirements of section 1129(a)(9) of the Bankruptcy Code.

**I.      Section 1129(a)(10) is Satisfied.**

126.      Section 1129(a)(10) of the Bankruptcy Code requires the affirmative acceptance of the Plan by at least one class of impaired claims, determined without including any acceptance of the plan by any insider. The Plan satisfies this requirement because Classes 3 and 4 voted to accept all three alternatives of the Plan.

**J.      Section 1129(a)(11):  The Plan Is Not Likely To Be Followed By Liquidation Or The Need For Further Reorganization.**

127.    Section 1129(a)(11) of the Bankruptcy Code requires that, as a condition to confirmation, the Court determine that the Plan is feasible. Specifically, the Court must determine that:

> Confirmation of the plan is not likely to be followed by the liquidation, or the need for further financial reorganization, of the debtor or any successor to the debtor under the plan, unless such liquidation or reorganization is proposed in the plan.

As described below, and as will be shown at the Combined Hearing, the Plan meets the requirements of this provision.

**(i)      Legal Standard**

128.    The feasibility test set forth in section 1129(a)(11) requires the Court to determine that confirmation of the Plan is not likely to be followed by the liquidation, or a need for further financial reorganization, of the Debtors or any successor to the Debtors under the Plan, other than as proposed in the Plan. To satisfy section 1129(a)(11) of the Bankruptcy Code the Trustee need not prove a guaranteed success, but only a reasonable probability of success. *In re Thru, Inc.*, 2017 Bankr. LEXIS 1902 (Bankr. N. D. Tex. Jul. 10, 2017) (citing *Fin. Sec. Assurance Inc. v. T-H New Orleans Ltd. P'ship (In re T-H Orleans Ltd. P'ship*), 116 F.3d 790, 801 (5th Cir. 1997)). Courts often consider several factors is determining whether a plan is feasible, including (1) capital structure, (2) earning power, (3) economic conditions, (4) the ability of management, (5) the probability of continuation of management, and (6) other related facts. *Id.* (citing *In re Couture Hotel*, 536 B.R. 712 (Bankr. N. D. Tex. 2015).

**(ii)     The Plan Satisfies the Feasibility Requirement**

129.    Applying the foregoing legal standards, the Plan satisfies the feasibility requirement of section 1129(a)(11) of the Bankruptcy Code. For purposes of determining whether

the Plan satisfies the above-described feasibility standards, the Trustee has analyzed the Estate's ability to fulfill obligations under the Plan. As part of this analysis, the Trustee's financial advisors and investment bankers have prepared financial projections (the "Projections"), which are attached to the Disclosure Statement as Exhibits 2-A, 2-B(3), and 2-C.

130. The Projections were prepared in good faith and are based on reasonable assumptions. The Projections indicate that sufficient resources will exist to satisfy obligations under the Plan. Based upon the foregoing, the Plan has more than a reasonable likelihood of success and satisfies the feasibility standard of section 1129(a)(11).

131. Contrary to the Highland Objections (Highland Objection, p. 24), the Trustee has presented or will present at the Combined Hearing sufficient evidence of the Plan's feasibility.

**K.     Section 1129(a)(12):  All Statutory Fees Have Been Or Will Be Paid.**

132. Section 1129(a)(12) of the Bankruptcy Code requires the payment of "[a]ll fees payable under section 1930 [of title 28 of the United States Code], as determined by the court at the hearing on confirmation of the plan." Section 507 of the Bankruptcy Code provides that "any fees and charges assessed against the estate under [section 1930 of] chapter 123 of title 28" are afforded priority as administrative expenses. In accordance with sections 507 and 1129(a)(12) of the Bankruptcy Code, the Plan provides that the Acis Trustee or the Reorganized Debtor shall pay all fees payable pursuant to section 1930 of chapter 123 of title 28 of the United States Code on the Effective Date and thereafter as may be required. (Plan §§ 2.07, 3.07, and 4.07). Therefore, the Plan complies with section 1129(a)(12).

**L.      Sections 1129(a)(13), 1129(a)(14), 1129(a)(15), 1129(a)(16), 1129(c), 1129(d), and 1129(e) Do Not Apply.**

133.    Section 1129(a)(13) of the Bankruptcy Code pertains to retiree benefits and is not applicable in these cases, because the Debtors do not have employees nor do they have any retiree obligations.

134.    Section 1129(a)(14) of the Bankruptcy Code relates to the payment of domestic support obligations. The Debtors are not subject to any domestic support obligations, and, as such, section 1129(a)(14) does not apply.

135.    Section 1129(a)(15) applies only in cases in which the debtor is an "individual" (as that term is defined in the Bankruptcy Code). The Debtors are not "individuals," and, therefore, section 1129(a)(15) is inapplicable.

136.    The Debtors are not corporations or trusts that are not moneyed, business, or commercial corporations or trusts, and, as such, section 1129(a)(16) of the Bankruptcy Code is inapplicable.

137.    The Plan is the only plan filed in these cases and, as such, section 1129(c) of the Bankruptcy Code is inapplicable.  Furthermore, although the Plan provides for three alternatives (Plan A, Plan B and Plan C), the Plan expressly states that confirmation of the Plan shall result in only one of the alternatives being the operative confirmed Plan, with the other two alternatives being then deemed void.  (Plan §§ 2.01, 3.01 and 4.01).

138.    The Plan has not been filed for the purpose of avoidance of taxes or the application of section 5 of the Securities Act of 1933, as amended, and thus section 1129(d) of the Bankruptcy Code is inapplicable.

139.    The Chapter 11 Cases are not small business cases, as defined by the Bankruptcy Code, and, as such, section 1129(e) of the Bankruptcy Code is inapplicable.

**M.  The Plan Satisfies the Requirements of Section 1127 Of the Bankruptcy Code.**

140.  A plan proponent may modify a plan at any time before confirmation so long as the plan, as modified, satisfies the requirements of sections 1122 and 1123 of the Bankruptcy Code. 11 U.S.C. § 1127(a). In addition, Bankruptcy Rule 3019 provides, in relevant part:

> after a plan has been accepted and before its confirmation, the proponent may file a modification of the plan. If the court finds after hearing on notice to the trustee, any committee appointed under the Code, and any other entity designated by the court that the proposed modification does not adversely change the treatment of the claim of any creditor or the interest of any equity security holder who has not accepted in writing the modification, it shall be deemed accepted by all creditors and equity security holders who have previously accepted the plan.

As recited above, the Court conditionally approved the Disclosure Statement and authorized the Trustee to solicit acceptances of the Plan, via the Solicitation Packages, from creditors of and interest holders. The Trustee commenced the solicitation on July 30, 2018.

141.  The deadline for voting to accept or reject the Plan was August 13, 2018.

142.  On August 16, 2018, the Trustee filed the Plan Modification.  The changes set forth in the Plan Modification do not constitute material modifications. None of the modifications to the Plan impact on the economics of the Plan vis-à-vis any Class of Claims or Interests. "A modification is material if it so affects a creditor or interest holder who accepted the plan that such entity, if it knew of the modification, would be likely to reconsider its acceptance." 8 COLLIER ON BANKRUPTCY ¶ 3019.03 (15th ed. 1987); *see also In re American Solar King Corp.*, 90 B.R. 808, 826 (Bankr. W.D. Tex. 1988). Re-solicitation is necessary only if "the modification adversely affects the interests of a creditor who has previously accepted the plan, in more than a purely ministerial *de minimis* manner." *In re Frontier Airlines, Inc.*, 93 B.R. 1014, 1023 (Bankr. D. Colo. 1988). Because the Trustee made no material modifications (i.e., a modification adversely affecting the treatment of a voting Class), the Trustee submits that re-solicitation of creditors and

interest holders is unnecessary and that acceptances of the Plan should be deemed acceptances of the Plan as modified.

**N.      The Plan Satisfies the Requirements of Section 1129(b).**

    **(i)      The Trustee Has Met All Requirements Other Than Section 1129(a)(8).**

143.    Highland and HCLOF argue that the Plan does not meet the prerequisites for cramdown consideration under section 1129(b). The argument is (a) not all classes voted in favor of the Plan so 1129(a)(8) cannot be satisfied; (b) therefore the Trustee must show that at least one class of impaired, non-insider creditors voted in favor of the Plan to satisfy 1129(a)(10); (c) the only accepting class is Class 3 (Terry); (d) Terry is an insider; and (e) Terry's Claim is artificially impaired under the Plan. (Highland Objection, pp. 21-23).

144.    It is correct that not all impaired classes voted in favor of the Plan—Class 5 (Highland) rejected the Plan.  But, two impaired classes—Class 3 (Terry) and Class 4 (General Unsecured Claims) did vote to accept the Plan.  As discussed above in this brief, Terry is not an insider.

145.    Terry's Secured Claim is not artificially impaired.   The Fifth Circuit has held that section 1129(a)(1) "does not distinguish between discretionary and economically driven impairment"… and "any alteration of a creditor's rights, no matter how minor, constitutes 'impairment.'" *Western Real Estate Equities, L.L.C. v. Vill. At Camp Bowie I, L.P. (In re Vill. At Camp Bowie I, L.P.)*, 710 F.3d 239, 245 (5th Cir. 2013).

146.    Highland and HCLOF also argue that the Plan improperly classifies both Terry's Claim and Highland's Claim in an attempt to gerrymander the classes to ensure one accepting class.  The argument seems to be that there is no basis to separately classify Terry's claim (now alone in Class 3) and that it should be in Class 4 with the other general unsecured claims.  Likewise,

Highland and HCLOF appear to argue that their claims should also be in Class 4. (Highland Objection, pp. 23-24). As discussed above in Part V.A.(i) of the Brief, these Trustee's classification of claims is appropriate.

      (ii)    **The Trustee Has Met All Requirements for Cramdown Under Section 1129(b).**

147. Highland and HCLOF also argue that, even if all other requirements are met, the Court cannot confirm the Plan because it is not fair and equitable. That argument appears to be based only on the assertion that he Plan is not proposed in good faith. (Highland Objection 22-23).

148. The Trustee contends that the Plan does not discriminate unfairly and is fair and equitable with respect to Class 5 (Highland), which is the only impaired, non-accepting class.

**O.    The Plan's Temporary Injunction Prohibiting Optional Redemption is Necessary and Appropriate**

149. If the Plan is confirmed based on the terms and provisions of Plan B or Plan C, the Plan provides for a limited and temporary continuation, after confirmation, of an injunction that is currently in place. The proposed injunction (the "Redemption Injunction") states as follows:

> IF THE PLAN IS CONFIRMED BASED ON THE TERMS AND PROVISIONS OF PLAN B OR PLAN C, THEN PURSUANT TO SECTIONS 105(a), 1123(a)(5) AND 1123(b)(6) OF THE BANKRUPTCY CODE, THE ENJOINED PARTIES (DEFINED BELOW) ARE HEREBY ENJOINED FROM: (a) PROCEEDING WITH, EFFECTUATING, OR OTHERWISE TAKING (i) ANY ACTION IN FURTHERANCE OF ANY OPTIONAL REDEMPTION, CALL, OR OTHER LIQUIDATION OF THE ACIS CLOS PREVIOUSLY OR CURRENTLY ISSUED BY ANY SUCH PARTIES AND (ii) ANY OTHER ATTEMPT TO LIQUIDATE THE ACIS CLOS BY ANY MEANS, (b) TRADING ANY ACIS CLO COLLATERAL, WHETHER IN FURTHERANCE OF ANY OPTIONAL REDEMPTION, CALL, OR OTHER LIQUIDATION OF THE ACIS CLOS OR OTHERWISE, AND (c) SENDING, MAILING, OR OTHERWISE DISTRIBUTING ANY NOTICE TO THE HOLDERS OF THE ACIS CLOS IN CONNECTION WITH THE EFFECTUATION OF ANY OPTIONAL REDEMPTION, CALL, OR OTHER LIQUIDATION OF THE ACIS CLOS, UNTIL THE EARLIER TO

OCCUR OF: (x) THE DATE UPON WHICH THE ACIS TRUSTEE OBTAINS CONTROL OVER MANAGEMENT OF THE SUBORDINATED NOTES BY VIRTUE OF AVOIDING THE PREPETITION FRAUDULENT TRANSFER OF ACIS LP'S RIGHTS UNDER THE ALF PMA THROUGH THE CLAIMS, COUNTERCLAIMS, OR THIRD PARTY CLAIMS ASSERTED OR WHICH MAY BE ASSERTED IN THE HIGHLAND ADVERSARY, (y) THE DATE ON WHICH ALL ALLOWED CLAIMS AGAINST THE DEBTORS HAVE BEEN PAID IN FULL, OR (z) THREE (3) YEARS AFTER THE EFFECTIVE DATE. FOR PURPOSES OF THIS PARAGRAPH, THE TERM "ENJOINED PARTIES" SHALL INCLUDE HIGHLAND, HCLOF, CLO HOLDCO, NEUTRA, HIGHLAND HCF, HIGHLAND CLOM, THE ISSUERS AND CO-ISSUERS, AND THEIR RESPECTIVE EMPLOYEES, AGENTS, REPRESENTATIVES, TRANSFEREES, ASSIGNS, OR SUCCESSORS.

(*Plan* § 11.03). The Redemption Injunction is necessary to prevent irreparable harm to the Reorganized Debtor and creditors, is appropriate and narrowly tailored to address the specific harm to which it is directed and comports with governing case and statutory authority and applicable rules of bankruptcy and civil procedure.

150. The conduct prohibited by the Redemption Injunction is the same conduct the Court has already restrained and enjoined the applicable parties from engaging in on three separate occasions. Initially, the Court issued the First TRO *sua sponte* to prevent effectuation of the first optional redemption of the Acis CLOs demanded by HCLOF. To avoid a hearing on a request by the Trustee to extend the First TRO, HCLOF advised the Trustee and the Court that it was withdrawing its first optional redemption request. Both the Trustee and the Court relied on HCLOF's representations and the Trustee did not go forward with his motion to extend the First TRO. Then, the day after the Trustee's motion was to be heard – and the day the First TRO expired – HCLOF made its second demand (without seeking relief from the automatic stay) on the Trustee to effectuate an optional redemption.

151.     HCLOF's second optional redemption demand prompted the filing of the Trustee's Adversary and his Ex Parte Motion seeking a new temporary restraining order.  The Court granted the Ex Parte Motion and entered the Second TRO, again restraining and enjoining HCLOF and other parties from taking any action to effectuate an optional redemption.  The Court then heard the Trustee's request for a preliminary injunction in the Trustee's Adversary and entered a *Preliminary Injunction Order* (the "<u>Preliminary Injunction</u>") [Docket No. 21 in Adversary No. 18-03212-sgj] on July 10, 2018.  The Preliminary Injunction continues in effect until confirmation of a plan of reorganization, conversion of the Chapter 11 Cases, or as provided by further order of the Court.  For the reasons set forth below, continuation of the Preliminary Injunction for a limited period by way of the Redemption Injunction is warranted.

### (i)     The Four Elements Required for Issuance of the Redemption Injunction are Satisfied

152.     The Redemption Injunction provides, in essence, that the Preliminary Injunction shall temporarily remain in effect after confirmation, until the first to occur of (a) the date on which the Acis Trustee obtains avoidance of the ALF PMA transfer, (b) full payment of all allowed claims, or (c) the third anniversary of the Effective Date of the Plan.  Entry of this limited injunction is fully consistent with governing case authorities on the requirements for injunctive relief.

153.     As the Fifth Circuit has stated, the four elements of a preliminary injunction are (a) substantial likelihood of success on the merits; (b) substantial threat that the plaintiff will suffer irreparable injury; (c) the threatened injury outweighs any harm the injunction might cause the defendant; and (d) the injunction is in the public interest.  *Byrum v. Landreth*, 566 F.3d 442, 445 (5th Cir. 2009); *Women's Med. Ctr. v. Bell,* 248 F.3d 411, 419 n.15 (5th Cir. 2001); *Hoover v. Morales,* 164 F.3d 221, 224 (5th Cir. 1998). Each element is present in these cases.

### (a) Success on the Merits

154.    In the Preliminary Injunction, the Court found that the Trustee demonstrated a substantial likelihood of success on the merits of claims regarding: "(i) violation of the automatic stay if injunction is not granted, (ii) utilizing rights transferred for no or insufficient value to attempt to effectuate an optional redemption, (iii) failing to obtain court authority under section 363 to effectuate an optional redemption, and (iv) confirmation of an effective plan of reorganization." *Preliminary Injunction* at p. 9.  Three of these grounds will not apply after the Plan is confirmed and/or becomes effective.  Upon the Effective Date of the Plan, the automatic stay will cease to exist with respect to acts to obtain possession of or to exercise control over property of the Estate (*See* 11 U.S.C. § 362(c)(1)) and Court approval for transactions outside the ordinary course of business will no longer be required (*See id*. §§ 363(b)(1), 1141(b)).  And, the Preliminary Injunction will no longer be necessary to protect the Trustee's ability to confirm an effective plan of reorganization once the Plan is confirmed.  However, ample grounds will remain after confirmation of the Plan to continue the Preliminary Injunction by virtue of the Redemption Injunction.

155.    Upon the Effective Date, all Estate Claims shall be vested in the Acis Trustee.  This includes the counterclaims asserted by the Trustee in the Highland Adversary.  Such counterclaims include claims under both the Bankruptcy Code and the Texas Uniform Fraudulent Transfer Act to avoid prepetition fraudulent transfers of various assets of the Debtors to affiliates of Highland (the "Fraudulent Transfer Actions").  One of the Fraudulent Transfer Actions seeks avoidance of the transfer of Acis LP's rights under the ALF PMA (the "ALF PMA Transfer").

156.    Prior to October 27, 2017, Acis LP – not HCLOF (formerly known as ALF) – had authority to direct and effectuate an optional redemption of the Acis CLOs.  But for the fraudulent

ALF PMA Transfer, HCLOF could not have attempted to direct and effectuate an optional redemption of the Acis CLOs and deplete Acis LP's assets (as it has twice attempted to do postpetition).

157. A substantial likelihood of success on the merits of the Fraudulent Transfer Actions exists. This showing has already been made and is not news to this Court. The Court's April 13, 2018 *Findings of Fact and Conclusions of Law in Support of Orders for Relief Issued After Trial on Contested Involuntary Bankruptcy Petitions* (the "Opinion") [Docket No. 118] contains the following observations and findings:

> The one thing that the court was wholly convinced of was that conflicts of interest among Highland and the Alleged Debtors abound, and no one is looking out for the interests of the Alleged Debtors as a fiduciary should. (*Opinion* at p. 26)

> This court has also found that there may have been significant transfers of the Alleged Debtors' assets prior to the filing of the Involuntary Petitions to potentially avoid paying creditors (*i.e.*, Mr. Terry) and this may provide further support for the court's finding that the Alleged Debtors are generally not paying their debts as they become due under section 303(h). (*Opinion* at p. 39 n. 96)

> [T]his court has heard ample evidence showing that the Alleged Debtors, with the aid of Highland, were transferring assets away from the Alleged Debtors, so that Mr. Terry would have nowhere to look at the end of the day. (*Opinion* at p. 51)

> Moreover, the court would note that, even if there were to be a "call" and liquidation of CLO 2014-3 . . . there would still be potential assets for a chapter 7 trustee to administer such as chapter 5 causes of action (which include fraudulent transfers) . . .. (*Opinion* at p. 52)

158. The Court's Preliminary Injunction goes even further. The Court expressly found that a substantial likelihood of success of the merits exists with respect to the Trustee's claim regarding "utilizing rights transferred for no or insufficient value to attempt to effectuate an optional redemption" – i.e., the Fraudulent Transfer Action with respect to the ALF PMA Transfer.

*Preliminary Injunction* at p. 9. The Court also made the following findings in the Preliminary

Injunction:

> Significantly, on October 27, 2017, ***just seven days after Joshua Terry's arbitration award, Acis LP effectively terminated its own portfolio management rights under the ALF PMA and transferred its authority and those valuable portfolio management rights—for no apparent value—to Highland HCF Advisors, Ltd.*** (*Preliminary Injunction* at p. 5; emphasis in original)

> ***It appears to the Court that, without this ALF PMA Transfer, which transferred Acis LP's rights under the ALF PMA to Highland HCF, ALF—which changed its name in late October 2017 to Highland CLO Funding Ltd.—could not have attempted to direct and effectuate an optional redemption, which it is now attempting to do.*** (*Preliminary Injunction* at p. 6; emphasis in original)

> Finally, HCLOF is using rights that appear to have been fraudulently transferred from Acis LP (i.e., rights under the ALF PMA) to attempt to effectuate the Optional Redemptions. (*Preliminary Injunction* at p. 7)

The Court's prior findings acknowledge that a substantial likelihood of success on the merits of

the Fraudulent Transfer Actions exists and the Trustee will demonstrate this again at the Combined

Hearing. This is particularly true with respect to the ALF PMA Transfer, absent which HCLOF

would have never been in a position to attempt to direct an optional redemption.

### *(b) Irreparable Harm*

159. The Debtors, creditors, and other parties in interest face irreparable harm if the

Redemption Injunction is not issued. Under Plan B or Plan C, a primary source of funding for

distributions to creditors is revenue to be generated by the Reorganized Debtor under the PMAs.

Without the Redemption Injunction, HCLOF will be free to direct an optional redemption before

the Fraudulent Transfer Actions can be adjudicated. Not only would an optional redemption moot

the Fraudulent Transfer Action regarding the ALF PMA Transfer, it would effectively terminate

the PMAs. The Court has previously recognized that an optional redemption constitutes a "dooms day" scenario that "would effectively destroy all value in the Acis PMAs." *Oaktree Order* at p. 5.

160. Injunctive relief in the form of the Redemption Injunction is necessary to prevent imminent and irreparable injury in the form of substantial losses to creditors and other parties in interest, as well as to third parties' financial interests, that will necessarily flow from an optional redemption, call, or other liquidation of the Acis CLOs. Such losses cannot be presently measured by any certain pecuniary standard, are not reasonably quantifiable, and cannot be adequately compensated with monetary damages. Indeed, the destruction of the value of the PMAs would, in turn, effectively destroy the Reorganized Debtor's ability to satisfy its obligations to creditors under the Plan B or Plan C alternatives. Thus, no adequate remedy at law exists.

### (c) Balance of Harms

161. The balancing of harms weighs in favor of issuing the Redemption Injunction. Any alleged harm to Highland or its affiliates is substantially outweighed by the imminent and irreparable harm that would be suffered by the Reorganized Debtor, creditors, and other parties in interest if the injunction is not issued and an optional redemption follows. Any harm to Highland or its affiliates would be temporary – only long enough to allow the Acis Trustee a fair chance to fully prosecute the Fraudulent Transfer Actions for the benefit of creditors.

162. This Court has already found that the Trustee has demonstrated a substantial likelihood of success on the merits of the Fraudulent Transfer Action concerning the ALF PMA Transfer. Prior to such transfer, HCLOF had no ability to direct an optional redemption. That authority resided with Acis LP. Highland and its affiliates cannot complain of any real harm that they would suffer if they are enjoined from pursuing an optional redemption before the Court has

the opportunity to determine whether or not HCLOF has any legitimate right to direct an optional redemption in the first instance.

### (d) Public Policy

163.     Finally, issuance of the Redemption Injunction is consistent with public policy. Public policy favors the equitable collecting of a debtor's assets, maximizing the value of those assets, and distributing the proceeds in an orderly fashion in accordance with the priorities and safeguards set forth in the Bankruptcy Code, rather than in an uncontrolled, piecemeal, and potentially wasteful way.  Public policy also supports successful reorganizations.  *Comptroller of Public Accounts v. Transtexas Gas Corp. (In re Transtexas Gas Corp.),* 303 F.3d 571, 580 (5th Cir. 2002).  The Court observed as much in issuing the Preliminary Injunction: "There is a public interest in allowing for a Chapter 11 process, rather than costly, prolonged litigation." *Preliminary Injunction* at p. 11.

164.     As detailed above, an optional redemption will eliminate future revenues under the PMAs – a key source of funding distributions to creditors under Plan B or Plan C.  Protecting and maximizing the value of the PMAs is integral to enabling the Reorganized Debtor to make required distributions to creditors under the Plan and is, therefore, consistent with public policy.  The Redemption Injunction will prevent HCLOF from renewing its demand for an optional redemption the moment the Preliminary Injunction expires upon confirmation of the Plan and is likewise consistent with public policy.

165.     Additionally, public policy favors disposition of cases on their merits. *Crane v. Napolitano*, Civ. Action No. 3:12-cv-03247-O, 2013 U.S. Dist. LEXIS 193120, at *3 (N.D. Tex. Mar. 15, 2013).  Without the Redemption Injunction, HCLOF can be expected to renew its demand for an optional redemption as soon as the Preliminary Injunction expires.  This would render the

Fraudulent Transfer Action concerning the ALF PMA Transfer moot before the Acis Trustee has any opportunity to prosecute the claim. For these reasons, public policy strongly favors issuance of the Redemption Injunction.

### (ii) The Redemption Injunction is Consistent with 11 U.S.C. § 105(a), Fed. R. Bankr. P. 3020(c)(1), and Fed. R. Civ. P. 65(d)(1)

166. As the foregoing discussion shows, the prerequisites for injunctive relief are present here: substantial likelihood of success on the merits; irreparable harm if the injunction is not issued; the balance of harms favors issuance of the injunction; and issuance of the injunction serves public policy. These are the traditional requirements of equity jurisprudence, followed by the Fifth Circuit and generally applicable in civil cases. In a chapter 11 case, however, there is more specific statutory authority by which a court may issue an injunction. Also, rules of procedure set forth standards of form with which such an injunction must comply in a bankruptcy case. The Redemption Injunction meets these requirements as well.

#### (a) Section 105(a)

167. This Court is statutorily empowered to "issue any order, process, or judgment that is necessary or appropriate to carry out the provisions" of title 11. 11 U.S.C. § 105(a). Issuance of the Redemption Injunction is "necessary [and] appropriate to carry out the provisions" of the Bankruptcy Code. As discussed above, the Redemption Injunction is essential to the consummation of the Plan. Without it, HCLOF will be free after confirmation to demand an optional redemption, leading to liquidation of the Acis CLOs, and destruction of the value of the PMAs. The Court recognized this risk and understood the importance of enjoining an optional redemption up through confirmation by issuing the Preliminary Injunction.

168. Although other grounds for issuance of the Preliminary Injunction will cease to be applicable following confirmation of the Plan, preserving the status quo to allow prosecution of

the Fraudulent Transfer Action concerning the ALF PMA Transfer will remain valid. Injunctive relief is appropriate to preserve the status quo in an action seeking equitable relief:

> [W]hen a plaintiff asserts a cognizable claim to specific assets of the defendant or seeks an equitable remedy involving those assets, a court may issue injunctive relief to preserve the status quo pending judgment where the legal remedy might prove inadequate and the preliminary relief furthers the court's ability to grant the final relief requested.

*Seidel v. Warner (In re Atlas Fin. Mortg., Inc.)*, No. 13-32683-bjh-7, 2014 Bankr. LEXIS 140, *10 (Bankr. N.D. Tex. Jan. 14, 2014) (citing *United States ex rel. Rahman v. Oncology Assocs.*, 198 F.3d 489, 496 (4th Cir. 1999)). The Fifth Circuit, in an unpublished opinion, has also recognized the propriety of an injunction to preserve the status quo in cases where equitable relief is sought. *Animale Group v. Sunny's Perfume, Inc.*, 256 Fed. Appx. 707, 709 (5th Cir. 2007) ("Because Defendants seek equitable relief, the district court was authorized to preserve the status quo by entering a limited asset freeze.").

169.    The Trustee's counterclaims in the Highland Adversary to avoid fraudulent transfers seek equitable relief. *Rahman*, 198 F.3d at 498 ("The complaint's request to void transfers as fraudulent – a form of rescission – is also an equitable remedy."); *Dong v. Miller*, No. 16-CV-5836 (NGG) (JO), 2018 U.S. Dist. LEXIS 48506, *30-31 (E.D.N.Y. Mar. 23, 2018) ("The setting-aside of a fraudulent conveyance is a form of equitable relief."). Furthermore, the Fraudulent Transfer Action concerning the ALF PMA Transfer involves a claim to specific assets of Highland HCF. It is therefore beyond peradventure that the Redemption Injunction – which essentially serves to continue the existing Preliminary Injunction at least until the Fraudulent Transfer Actions are adjudicated – is warranted. *See Iantosca v. Step Plan Servs.*, 604 F.3d 24, 33 (1st Cir. 2010) (affirming preliminary injunction where creditors had a "colorable claim that appellants' own supposed interest under the settlement rests upon a fraudulent conveyance");

*Rahman*, 198 F.3d at 498-99; *Atlas Fin.*, 2014 Bankr. LEXIS 140 at *10 (granting preliminary injunction where complaint sought avoidance of fraudulent transfers under the Bankruptcy Code and the Texas Uniform Fraudulent Conveyance Act); *Paradigm Biodevices, Inc. v. Centinel Spine, Inc.*, No. 11 Civ. 3489 (JMF), 2013 U.S. Dist. LEXIS 66858, *7 (S.D.N.Y. May 9, 2013) (authority to grant preliminary injunction existed because plaintiff alleged not only a legal claim for money damages, but also an equitable claim to avoid fraudulently transferred assets).

### (b) Bankruptcy Rule 3020(c) and Rule 65(d)(1)

170.    Issuance of the Redemption Injunction is appropriate as a matter of substantive law under general equity jurisprudence and section 105(a) of the Bankruptcy Code. In addition, as a procedural matter, the Redemption Injunction complies with Bankruptcy Rule 3020(c) and Federal Rule of Civil Procedure 65(d)(1).

171.    If an order confirming a chapter 11 plan includes an injunction "against conduct not otherwise enjoined under the [Bankruptcy] Code," the confirmation order must "(1) describe in reasonable detail all acts enjoined; (2) be specific in its terms regarding the injunction; and (3) identify the entities subject to the injunction." Fed. R. Bankr. P. 3020(c)(1). An order confirming the Plan and approving the Redemption Injunction will meet this three-part test. First, the acts enjoined are described in reasonable detail in the language of the Redemption Injunction. The description of acts enjoined is specific and particular; it gives the enjoined parties fair notice of what conduct is forbidden.

172.    Second, the Redemption Injunction is specific in its terms regarding the injunction. Not only are the prohibited acts spelled out with specificity, but the provision clearly describes the condition that triggers the injunction (confirmation of the Plan based on the terms and provisions of Plan B or Plan C). The limited duration of the injunction is also clearly defined by identification

of three specific events, the earliest of which to occur shall serve to terminate the Redemption Injunction.

173.     Finally, the Redemption Injunction plainly identifies the specific entities subject to the injunction.  Therefore, an order approving the Redemption Injunction as presented would be in full compliance with Bankruptcy Rule 3020(c)(1).

174.     Federal Rule of Civil Procedure 65(d)(1) prescribes several formal requirements for "[e]very order granting an injunction and every restraining order."  Fed. R. Civ. P. 65(d)(1). Specifically, every such order must:

> (A)     state the reasons why [the injunction] issued;
>
> (B)     state its terms specifically; and
>
> (C)     describe in reasonable detail—and not by referring to the complaint or other document—the act or acts restrained or required.

*Id*.  The requirements of Rule 65(d)(1) largely parallel those in Bankruptcy Rule 3020(c)(1), and the above discussion of Bankruptcy Rule 3020(c)(1) is applicable here.  The language of the Redemption Injunction, together with the testimony and other evidence that the Trustee will present at the confirmation hearing, will give the Court an ample basis on which to enter an order that fully comports with Bankruptcy Rule 3020(c)(1) and Rule 65(d)(1).

## CONCLUSION

175.     The Plan meets all the Bankruptcy Code's requirements for confirmation of a chapter 11 plan of reorganization. Therefore, the Plan should be confirmed.

WHEREFORE, the Trustee prays that the Court enter an order granting final approval of the Disclosure Statement, confirming the Plan and granting such other and further relief to which he may be justly entitled.

Date: August 17, 2018.

Respectfully submitted,

*/s/ Jeff P. Prostok*
Jeff P. Prostok
State Bar No. 16352500
J. Robert Forshey
State Bar No. 07264200
Suzanne K. Rosen
State Bar No. 00798518
Matthew G. Maben
State Bar No. 24037008
**FORSHEY & PROSTOK LLP**
777 Main St., Suite 1290
Ft. Worth, TX 76102
Telephone: (817) 877-8855
Facsimile: (817) 877-4151
jprostok@forsheyprostok.com
bforshey@forsheyprostok.com
srosen@forsheyprostok.com
mmaben@forsheyprostok.com

**COUNSEL FOR ROBIN PHELAN,
CHAPTER 11 TRUSTEE**

-and-

Rakhee V. Patel
State Bar No. 00797213
rpatel@winstead.com
Phillip Lamberson
State Bar No. 00794134
plamberson@winstead.com
Joe Wielebinski
State Bar No. 21432400
jwielebinski@winstead.com
Annmarie Chiarello
State Bar No. 24097496
achiarello@winstead.com
**WINSTEAD PC**
500 Winstead Building
2728 N. Harwood Street
Dallas, Texas 75201
(214) 745-5400 (Phone)
(214) 745-5390 (Facsimile)

**SPECIAL COUNSEL FOR ROBIN
PHELAN, CHAPTER 11 TRUSTEE**

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing document was served upon parties requesting ECF electronic notice and via email on the parties listed below on August 17, 2018.

Andrew Zollinger
andrew.zollinger@dlapiper.com
Thomas R. Califano
thomas.califano@dlapiper.com
DLA PIPER LLP (US)
**Attorneys for Universal-Investment-Luxembourt S.A. and BAYVK R2 Lux S.A., SICAV-FIS**

Thomas M. Melsheimer
tmelsheimer@winston.com
Lane M. Webster
lwebster@winston.com
David Neier
dneier@winston.com
WINSTON & STRAWN LLP
**Attorneys for Issuers and Co-Issuers**

Holland N. O'Neil
honeil@foley.com
FOLEY GARDERE FOLEY & LARDNER LLP
Michael K. Hurst
mhurst@lynnllp.com
LYNN PINKER COX & HURST, LLP
**Attorneys for Highland Capital Management, L.P.**

Mark M. Maloney
KING & SPALDING LLP
mmaloney@slaw.com
**Attorneys for Highland CLO Funding Ltd.**

Brian P. Shaw
shaw@roggedunngroup.com
ROGGE DUNN GROUP, PC
**Attorneys for Joshua N. and Jennifer G. Terry**

Daniel P. Novakov
dnovakov@fbtlaw.com
FROST BROWN TODD LLC
Mark D. Kotwick
kotwick@sewkis.com
Arlene R. Alves
alves@sewkis.com
SEWARD & KISSELL LLP
**Attorneys for U.S. Bank National Association**

/s/ Jeff P. Prostok
Jeff P. Prostok

L:\JPROSTOK\ACIS Capital Management (Trustee Rep)\Plan and Disclosure Statement\Brief in Support of Confirmation 8.17.18 w TOC-TOA.docx