Andrew Zollinger, State Bar No. 24063944
andrew.zollinger@dlapiper.com
DLA Piper LLP (US)
1717 Main Street, Suite 4600
Dallas, Texas 75201-4629
Telephone: (214) 743-4500
Facsimile: (214) 743-4545

Thomas R. Califano (*pro hac vice pending*)
thomas.califano@dlapiper.com
DLA Piper LLP (US)
1251 Avenue of the Americas
New York, New York 10020-1104
Telephone: (212) 335-4500
Facsimile: (212) 335-4501

*Counsel for Universal-Investment-Luxembourg S.A. and BayVK R2 Lux S.A., SICAV-FIS*

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE NORTHERN DISTRICT OF TEXAS**
**DALLAS DIVISION**

| | | |
|---|---|---|
| In re: | § | Chapter 11 |
| | § | |
| Acis Capital Management, L.P. and | § | Case No. 18-30264 (SGJ) |
| Acis Capital Management GP, LLC, | § | Case No. 18-30265 (SGJ) |
| | § | |
| Debtors. | § | (Jointly Administered under |
| | § | Case No. 18-30264) |

**REPLY OF UNIVERSAL-INVESTMENT-LUXEMBOURG S.A. AND BAYVK R2 LUX S.A., SICAV-FIS TO TRUSTEE'S OBJECTION TO THE EMERGENCY MOTION OF UNIVERSAL-INVESTMENT-LUXEMBOURG S.A. AND BAYVK R2 LUX S.A., SICAV-FIS FOR RELIEF FROM STAY**

Universal-Investment-Luxembourg S.A. ("Universal") and BayVK R2 Lux S.A., SICAV-FIS (the "Fund", and collectively with Universal, the "Fund Parties"), by and through their counsel, DLA Piper LLP (US), hereby submit this Reply (the "Reply") to the Objection [Dkt. No. 542] (the "Stay Objection") filed by Robin Phelan as Chapter 11 trustee (the "Trustee") to Acis Capital Management, L.P. ("Acis L.P.") and Acis Capital Management GP, LLC ("Acis G.P.", and collectively with Acis L.P., the "Debtors") to the *Emergency Motion of Universal-Investment-Luxembourg S.A. and BayVK R2 Lux S.A., SICAV-FIS for Relief from Stay*

[Dkt. No. 486] (the "Stay Motion").[1]  In support of the Reply, the Fund Parties respectfully represent as follows:

## PRELIMINARY STATEMENT

1. The Fund is a "Specialised Investment Funds" established pursuant to the Law of 13 February 2007 of Luxembourg[2] (hereafter, the "Law of 2007") comprised of indirect investments from various German pension funds.  The Fund is overseen by the *Commission de Surveillance du Secteur Financier* ("CSSF")[3], the Luxembourgian authority that, among other things, reviews and approves any changes to the portfolio management of a "Specialised Investment Fund" such as the Fund.[4]

2. Pursuant to an October 8, 2014 agreement between the Fund and Universal, the Fund appointed Universal as its asset manager.  Universal therefore acts as a fiduciary to the Fund and to the various German pension funds comprising the Fund's ultimate investors.  In its fiduciary role, Universal enlisted the services of Acis L.P. to manage a certain sub-fund of the Fund consisting of approximately $586 million in assets, named BayVK R2 Lux S.A., SICAV-FIS – Highland (the "Sub-Fund").  The management services provided by Acis L.P. are set forth in the Agreement for the Outsourcing of Asset Management between Universal and Acis L.P. dated February 27, 2015 (the "Agreement").  With the knowledge and consent of Universal, Acis L.P. delegated certain sub-advisory services with respect to the Sub-Fund to Highland Capital

---

[1] Capitalized terms not otherwise defined herein will carry the meaning ascribed to such terms in the Stay Motion.

[2] The Law of 2007 is a law of Luxembourg governing the formation of "Specialised Investment Funds" as described in Article 1 of Law of 13 February 2007.  An English translation of the law is available at: http://www.cssf.lu/fileadmin/files/Lois_reglements/Legislation/Lois/L_130207_SIF_upd_230716.pdf.

[3] Law of 2007 Article 43(1 et seq.).

[4] Law of 2007 Article 42(5) ("The replacement of the management company or depositary and any amendment to the constitutive documents of a Specialised Investment Fund are subject to approval by the CSSF.").

Management, L.P ("Highland"), but only after an extensive diligence process by the Fund Parties and obtaining prior approval from CSSF.

3. In the course of these bankruptcy cases, Universal has made an effort to avoid being dragged into the ongoing dispute between the Trustee and Highland, which has nothing to do with the Fund or its administration. The Fund Parties' only concern is that the Fund remain in compliance with applicable law, and is receiving appropriate services from advisors and sub-advisors.

4. Since assuming his role as Trustee, the Trustee, without seeking prior consent from or even consulting with the Fund Parties, and without considering applicable Luxembourgian law, has filed and received orders approving:

- The *Emergency Motion to Approve Break-Up Fee, Expense Reimbursement, and Replacement Sub-Advisory and Shared Services Provider, Oaktree Capital Management, L.P.* [Dkt. No. 263] (as supplemented, the "Oaktree Motion") seeking the Court's approval to allow the Trustee to replace Highland with Oaktree Capital Management, L.P. ("Oaktree") as a provider of sub-advisory services; and

- The *Emergency Motion to Approve Replacement Sub-advisory and Shared Services Providers, Brigade Capital Management, LP and Cortland Capital Markets Services LLC* [Dkt. No. 448] (the "Brigade Motion"), whereby the Trustee sought authority to, in lieu of Oaktree, engage Brigade Capital Management, LP ("Brigade") and Cortland Capital Markets Services LLC ("Cortland") to provide sub-advisory services with respect to, among others, the Sub-Fund.

5.      Despite the fact that Universal is a fiduciary to the Fund's investors, and that changes in the identity of the sub-advisor require the Fund's consent, Acis L.P. and the Trustee never thought it was appropriate to consult with the Fund Parties prior to filing the Oaktree Motion or Brigade Motion, or on the decision to remove Highland as sub-advisor to the Sub-Fund. Universal was not previously and has yet to have been provided with the diligence materials it has requested that, in its judgment, are necessary for it to make a reasonable decision with respect to a change of sub-advisors. In fact it was only after the Stay Motion was filed that, at the suggestion of the Fund Parties, a call was arranged with the Trustee and Brigade to discuss the role of Brigade, Brigade's decision making authority with respect to investments, and other similar issues relating to the operation of the Fund's investment, all of which are issues which the Trustee's professionals have failed to focus on while they are focused on their battle with Highland. Moreover, the Fund Parties have not received CSSF approval for a transition of sub-advisory services to Oaktree or Brigade. Simply put, Universal is not unreasonable in withholding consent to the appointment of Brigade or Oaktree, as consent was never sought by Acis L.P., much less in a manner which would allow the Fund Parties to fulfill their fiduciary duties. The argument that the mere filing of the Oaktree Motion and Brigade Motion can be construed as seeking consent from Universal, as required under the Agreement, misses the point. It is no way to conduct business with a fiduciary who is concerned with fulfilling its responsibilities, and thus it is no surprise that the Fund Parties not only are not willing to consent to the change in sub-advisors, but desire to terminate their relationship with Acis L.P. In any event, the Oaktree Motion, which Acis L.P. relies on as an attempt to obtain "consent" expressly excluded sub-advisory services for the Sub-Fund from the services Oaktree was to provide.

When it became clear through the Brigade Motion that Acis L.P. intended to change sub-advisors for the Fund, the Fund Parties objected to the Brigade Motion.

6. The Trustee's failure to obtain consent from the Fund Parties for the removal and replacement of Highland as sub-advisor placed the Fund in jeopardy due to the lack of CSSF approval, and left the Fund Parties with sub-advisors it had little if any knowledge of and had not selected or approved. In carrying out their fiduciary obligations to the Fund investors, therefore, the Fund Parties filed the Stay Motion. To be clear, the Stay Motion was filed, and the termination of the Agreement sought, as a result of the Trustee's breach of the Agreement and the replacement of Highland as sub-advisor in violation of applicable law and without consent, and not due to the commencement of these bankruptcy cases. Based on the post-filing conduct of Acis L.P., it is clear that the Fund Parties have been given ample reason to seek to exit their relationship.

7. Since it was filed, counsel to the Fund Parties and the Trustee have been engaged in extensive negotiations to amicably resolve the issues raised in the Stay Motion. In fact, as late as Thursday, September 6, 2018, counsel to the Trustee stated that the Trustee was willing to agree to lifting the stay to allow for the termination of the Agreement. Several drafts of a consent order were exchanged and counsel for the Fund Parties had agreed to the terms. On Sunday night, however, the Trustee reversed course entirely, and has now conditioned any stay relief on the production of, and his prior review of, all correspondences between the Fund Parties and Highland for roughly the past year, presumably based on the Trustee's hunch that the Fund Parties are somehow taking sides in the dispute with Highland. It is unreasonable for the Trustee, without any basis, to accuse the Fund Parties, in the course of acting as fiduciaries to investors in the Fund consisting of hundreds of millions of dollars, of making a decision other

than one in the best interests of the Fund's investors simply to help Highland out in its internal squabbles with the Trustee. The Fund's issues with Acis L.P. have nothing to do with the fight between Highland and the Trustee and everything to do with the mismanagement of the relationship by Acis L.P. Accordingly, the Fund Parties request that the automatic stay be lifted to allow the Fund Parties to exercise their termination rights and fulfill their duties to their fiduciaries.

## BACKGROUND[5]

### A. Procedural History

8. On June 8, 2018, the Trustee filed the Oaktree Motion seeking the Court's approval to allow the Trustee to replace Highland with Oaktree as the provider of sub-advisory services – but expressly excluding sub-advisory services with respect to the Fund. The Motion provided that, "[a]t this time, Oaktree has not made a determination on any transaction involving the transfer [of] the Luxembourg Separate Account management rights." Oaktree Motion at fn. 7. On July 7, 2018, Oaktree filed the *Amended Commitment Letter* [Dkt. No. 385-1] (the "Oaktree Letter"). The Oaktree Letter explicitly states that Oaktree does not plan to provide sub-advisory services to the Sub-Fund because

> "[i]t appears that this contract can be terminated at any time by the management company. Accordingly, Oaktree is not prepared to manage the Luxembourg Separate Account at this time. Oaktree is, with the consent of the Chapter 11 Trustee, willing to engage in discussions with the Luxembourg Separate Account's management company regarding the management of such account going forward."

Oaktree Letter at 11. On July 10, 2018 the Court entered an order granting the Oaktree Motion [Dkt. No. 390] (the "Oaktree Order"). Oaktree expressed interest in providing sub-advisory services to the Sub-Fund for the first time to counsel for the Fund Parties on August 29, 2018 –

---

[5] The Fund Parties incorporate the facts as stated in the Stay Motion herein.

more than a month after the Oaktree Order was entered. Neither the Trustee nor Oaktree has provided any information related to Oaktree's qualifications, conflict of interest policies, required CSSF approvals, or other information that would be necessary for the Fund Parties to consider, much less approve of, any transition of sub-advisory services to Oaktree.

9. On July 30, 2018, the Trustee filed the Brigade Motion, whereby the Trustee sought authority to, in lieu of Oaktree, engage Brigade and Cortland (together with Oaktree and Brigade, the "Unapproved Sub-Advisors") to provide the sub-advisory services with respect to the Sub-Fund. The Fund Parties objected to the Brigade Motion in open court. On August 1, 2018 the Court entered an order granting the Brigade Motion [Dkt. No. 464] (the "Brigade Order"). As provided in the Brigade Motion, Brigade replaced Highland in providing sub-advisory services on August 2, 2018.

### C. Stay Motion and Objection

10. On August 9, 2018 the Fund Parties filed the Stay Motion requesting that the automatic stay be lifted to allow for the termination the Agreement on the basis that (i) the replacement of the sub-advisor under the Agreement would result in a violation of applicable law which could potentially harm the Fund Parties, and (ii) Acis L.P. is in material breach of the Agreement which cannot be cured and therefore the Agreement cannot be assumed.

11. On August 23, 2018 the Trustee filed the Stay Objection, asserting that (i) the Law of 2007 does not prohibit the change in sub-advisory services sought by the Trustee; (ii) the Fund Parties consented to the transition of sub-advisory services or are otherwise being unreasonable in withholding such consent; and (iii) because Oaktree and Brigade have prior experience with funds governed by the Law of 2007, no consent of CSSF is required. Each of the above assertions by the Trustee is unsupported by the facts of this case and applicable law.

## **REPLY**

### A. Universal's Prior Consent was Never Requested or Received

12. The Trustee asserts in its Stay Objection that Universal is unreasonably withholding consent from the sub-assignment to Brigade or Oaktree. The Trustee relies on the language of the Agreement, which provides as follows:

> When fulfilling its obligations hereunder, [Acis L.P.] may contract the services of third parties if and to the extent that this is permitted under applicable law, particularly in accordance with the Law of 2007. Principally, [Acis L.P.] is entitled to sub-delegate portions of its asset management function to an affiliate of [Acis L.P.] which consent shall also extend specifically to the modalities of the sub-delegation as defined in a separate sub-delegation agreement. For the avoidance of doubt, [Universal's] **prior consent** must be obtained for the sub-delegation of assets management services, which will not be unreasonably withheld. [Acis L.P.] will ensure that any sub-delegation will be in accordance with this Agreement and in particular with [the] Law of 2007. In any case of sub-delegation to third parties [Acis L.P.] remains the sole party responsible to the [Universal] for compliance with the duties pursuant to the Agreement.

Agreement at § 2.6 (emphasis added).

13. The Agreement requires that Acis L.P. obtain Universal's consent *prior* to appointing a sub-advisor, which consent cannot be unreasonably withheld. The Trustee has not sought nor received consent from the Fund Parties for the transition of sub-advisory services to the Unapproved Sub-Advisors. The Oaktree Motion stated that Oaktree had no intention of performing services for the Sub-Fund, and the Fund Parties did not receive notice that Oaktree intended to do so until several weeks after the entry of the Oaktree Order. Furthermore, the Fund Parties objected to the Brigade Motion, which was filed July 30, 2018 and replaced Highland within three days, on August 2, 2018. It was only after the Stay Motion was filed that, at the suggestion of the Fund Parties, a conversation was arranged between the Fund Parties, the Trustee and Brigade to discuss the Trustee's intention to transition sub-advisory services, and the authority issues surrounding Brigade's role as sub-advisor. Thus, the Fund Parties' "prior"

consent was neither sought nor received by Acis L.P. to replace Highland with respect to sub-advising roughly *$586 million in Fund assets* – a clear material breach of an express clause of the Agreement. The Trustee's argument that Universal's failure to object to the Oaktree Motion fails because the Oaktree Motion expressly excluded the Fund from the sub-advisory services to be provided by Oaktree. Moreover, the Trustee cites no caselaw to support such argument.

14. The Trustee's argument that Universal is unreasonably withholding consent is equally without merit. First, as set forth above, no prior consent has even been sought with respect to the replacement of Highland with the Unapproved Sub-Advisors, so it defies logic that Universal's prior consent is being withheld – reasonably or otherwise. Furthermore, neither the Trustee nor any of the Unapproved Sub-Advisors has ever provided the diligence materials that the Fund Parties require to reasonably determine whether any Unapproved Sub-Advisors are qualified and capable of performing the sub-advisory services with respect to the Sub-Fund. Finally, it would clearly be within the Fund Parties' reasonable discretion to disapprove of the Trustee's proposed replacement of Highland by the Unapproved Sub-Advisors because such replacement has not been approved by CSSF as required by law.

B. <u>The Unapproved Sub-Advisors Alleged Existing Luxembourgian Connections are Irrelevant</u>

15. The Law of 2007 prohibits a change in the management of the Sub-Fund without CSSF approval. Article 42(5) of the Law of 2007 states that "[t]he ***replacement of the management company*** or depositary and any amendment to the constitutive documents of the specialised investment fund are subject to approval by the CSSF." Law of 2007 at Art. 42(5) (emphasis added). The Law of 2007 does not create a class of pre-approved sub-advisors but instead requires review and pre-approval for any replacement of management with respect to any "Specialised Investment Fund".

16. The Trustee's argument that the Unapproved Sub-Advisors have previously been approved by CSSF to manage other funds misstates the CSSF approval process. It is irrelevant whether "Oaktree and Brigade currently provide services to Luxembourgian companies and funds subject to the Law of 2007 and CSSF oversite." Stay Objection ¶ 6. The Unapproved Sub-Advisors have not been approved by CSSF to sub-advise the Sub-Fund. Again, it is the replacement in sub-advisor to the Sub-Fund that requires CSSF approval according to the Law of 2007 – which has not occurred in this case, and which places the Sub-Fund in jeopardy.

17. Section 2.6 of the Agreement requires that Acis L.P. "ensure that any sub-delegation will be in accordance with this Agreement and in particular with [the] Law of 2007." The Trustee failed to ensure that they replaced the sub-advisor in compliance with the Law of 2007, and therefore is in breach of the Agreement. Such breach by Acis L.P. is material and incurable, thus the Agreement cannot be assumed or assigned.

C. <u>The Fund Parties filed the Stay Motion in Good Faith</u>

18. A party with an agreement terminable at-will cannot be compelled to continue its business relationship with a debtor where termination is sought in good faith. *See In re M.J.&K. Co., Inc.*, 161 B.R. 586, 595 (Bankr. S.D.N.Y. 1993) (holding that where a licensor with an at-will arrangement sought stay relief in good faith that it "[could not] be required to continue its business relationship with Debtor"). The Agreement, by its own terms, can be terminated at any time without cause. The Fund Parties seek to lift the stay and terminate the Agreement due to Acis L.P.'s breach of the Agreement, and the ongoing harm caused to the Fund Parties as a result of the breach. The Trustee's now failed plan process clearly indicated that the management revenue from the Agreement is immaterial to the Debtors – as the plan's projections showed a potential for no ongoing revenue from the Agreement following confirmation. The Debtors' assumption of the Agreement would not change the at-will termination provision of the

Agreement. Thus Agreement is of no value to the estate and the estate will therefore not be harmed by the lifting of the automatic stay. *See In re Deppe*, 110 B.R. 898, 906-07 (Bankr. D. Minn. 1990) (finding that cause existed to lift the automatic stay permitting franchisor to send a notice of termination of franchise agreement where franchisee had committed an incurable breach; the continued imposition of the stay was a "tenuous veil" of protection and no benefit to creditors would be derived from its continuation and thus served no purpose).

19. The Trustee's last-minute change in position with respect to the resolution of the Stay Motion can therefore only be explained as an attempt to hold the Fund Parties hostage in his dispute with Highland – forcing the Fund to remain in violation of applicable Luxembourgian law while accepting services from unapproved sub-advisors and a Trustee who, at the eleventh hour, reneges on an offer to settle their dispute and instead treats the Fund Parties as an adversary – all in exchange for discovery that can be sought from Highland directly as opposed to the Fund Parties. Therefore, the Fund Parties now request that the stay be lifted and they be allowed to terminate the Agreement pursuant to its terms.

[remainder of page intentionally left blank]

## **CONCLUSION**

For the reasons set forth above, Universal submits this Reply and request that the Court lift the stay to allow Universal to terminate the Agreement.

Dated:  September 10, 2018
        Dallas, Texas

Respectfully submitted,

**DLA PIPER LLP (US)**

*/s/ Andrew Zollinger*
Andrew Zollinger, State Bar No. 24063944
1717 Main Street, Suite 4600
Dallas, Texas 75201-4629
Telephone: (214) 743-4500
Facsimile: (214) 743-4545
Email: andrew.zollinger@dlapiper.com

-and-

Thomas R. Califano (*pro hac vice pending*)
1251 Avenue of the Americas
New York, New York 10020
Telephone: (212) 335-4500
Facsimile:  (212) 335-4501
Email:  thomas.califano@dlapiper.com