**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION**

| | | |
|---|---|---|
| **IN RE:** | § | **Case No. 18-30264-SGJ-11** |
| | § | **Case No. 18-30265-SGJ-11** |
| **ACIS CAPITAL MANAGEMENT, L.P.,** | § | |
| **ACIS CAPITAL MANAGEMENT GP, LLC,** | § | **(Jointly Administered Under Case** |
| | § | **No. 18-30264-SGJ-11)** |
| **DEBTORS.** | § | |
| | § | **Chapter 11** |

**SECOND AMENDED JOINT PLAN FOR ACIS CAPITAL MANAGEMENT, L.P. AND
<u>ACIS CAPITAL MANAGEMENT GP, LLC</u>**

Jeff P. Prostok –  State Bar No. 16352500
J. Robert Forshey – State Bar No. 07264200
Suzanne K. Rosen –  State Bar No. 00798518
Matthew G. Maben – State Bar No. 24037008
**FORSHEY & PROSTOK LLP**
777 Main St., Suite 1290
Ft. Worth, TX 76102
Telephone: (817) 877-8855
Facsimile: (817) 877-4151
jprostok@forsheyprostok.com
bforshey@forsheyprostok.com
srosen@forsheyprostok.com
mmaben@forsheyprostok.com

**COUNSEL FOR ROBIN PHELAN,
CHAPTER 11 TRUSTEE**

Rakhee V. Patel – State Bar No. 00797213
Phillip Lamberson – State Bar No. 00794134
Joe Wielebinski – State Bar No. 21432400
Annmarie Chiarello – State Bar No. 24097496
**WINSTEAD PC**
500 Winstead Building
2728 N. Harwood Street
Dallas, Texas 75201
Telephone: (214) 745-5400
Facsimile:  (214) 745-5390
rpatel@winstead.com
plamberson@winstead.com
jwielebinski@winstead.com
achiarello@winstead.com

**SPECIAL COUNSEL FOR ROBIN PHELAN,
CHAPTER 11 TRUSTEE**

DATED:      September 28, 2018
                   Dallas, Texas

## ARTICLE I.
## DEFINITIONS

A.    Defined Terms. In addition to such other terms as are defined in other sections of the Plan, the following terms shall have the meanings set forth below (such meanings to be equally applicable to both the singular and plural, masculine and feminine forms of the terms defined).

1.01.    "Acis CLOs" refers collectively to CLO-1, CLO-3, CLO-4, CLO-5, and CLO-6.

1.02.    "Acis GP" means Acis Capital Management, GP, LLC, one of the Debtors in the above-referenced Chapter 11 Cases.

1.03.    "Acis LP" means Acis Capital Management, LP, one of the Debtors in the above-referenced Chapter 11 Cases.

1.04.    "Administrative Bar Date" means the deadline to file Claims for Allowance as an Administrative Expense set forth in section 3.01(c) of the Plan.

1.05.    "Administrative Expense" means any cost or expense of administration of the Chapter 11 Cases allowed under subsections 503(b) and 507(a)(1) of the Bankruptcy Code, including, without limitation, any actual and necessary expenses of preserving the Estate of the Debtors, any actual and necessary expenses of operating the business of the Debtors, all compensation or reimbursement of expenses to the extent allowed by the Bankruptcy Court under section 330 or 503 of the Bankruptcy Code, and any fees or charges assessed against the estates of the Debtors under section 1930, chapter 123 of title 28 of the United States Code.

1.06.    "Affiliate" has the meaning ascribed to such term in section 101(2) of the Bankruptcy Code.

1.07.    "ALF PMA" means that certain Portfolio Management Agreement by and between Acis LP and Acis Loan Funding, Ltd. dated December 22, 2016.

1.08.    "Allowed," when used with respect to a Claim (other than an Administrative Expense), means a Claim (a) to the extent it is not Contested; or (b) a Contested Claim, proof of which was filed timely with the Bankruptcy Court, and (i) as to which no Objection was filed by the Objection Deadline, or (ii) as to which an Objection was filed by the Objection Deadline, to the extent, if any, such Claim is ultimately allowed by a Final Order; *provided, however*, if a Claim is to be determined in a forum other than the Bankruptcy Court, such Claim shall not become Allowed until determined by Final Order of such other forum and allowed by Final Order of the Bankruptcy Court. "Allowed," when used with respect to an Administrative Expense, shall mean an Administrative Expense approved by application to the Bankruptcy Court.

1.09.    "Assets" includes all right, title, and interest in and to all property of every type or nature owned or claimed by the Debtors as of the Petition Date, together with all such property of every type or nature subsequently acquired by the Debtors through the Effective Date, whether real or personal, tangible or intangible, and wherever located, and including, but not limited to, property as defined in section 541 of the Bankruptcy Code.  Without limiting the foregoing, this shall include all

2

1.10. "<u>Available Cash</u>" means any Cash over and above the amount needed for the Reorganized Debtor to maintain business operations and pursue the Estate Claims, as determined in the sole discretion of the Reorganized Debtor.

1.11. "<u>Avoidance Action</u>" means a cause of action assertable by the Debtors pursuant to Chapter 5 of the Bankruptcy Code, including without limitation, actions brought or which may be brought under sections 542, 543, 544, 545, 547, 548, 549, 550, or 553 of the Bankruptcy Code. Such causes of action may be asserted to recover, among other things, the transfers listed in the Debtors' respective Schedules, including in response to Question 3 of the statements of financial affairs.

1.12. "<u>Ballot</u>" means the form of ballot provided to holders of Claims or Interests entitled to vote pursuant to Bankruptcy Rule 3017(d), by which each such holder may accept or reject the Plan.

1.13. "<u>Bankruptcy Code</u>" means the Bankruptcy Reform Act of 1978, as amended and codified at Title 11 of the United States Code.

1.14. "<u>Bankruptcy Court</u>" means the United States Bankruptcy Court for the Northern District of Texas, Dallas Division, or such other court having jurisdiction over all or any part of the Chapter 11 Cases.

1.15. "<u>Bankruptcy Rules</u>" means the Federal Rules of Bankruptcy Procedure, as amended from time to time, as applicable to the Chapter 11 Cases, including applicable local rules of the Bankruptcy Court.

1.16. "<u>Brigade</u>" means Brigade Capital Management, LP.

1.17. "<u>Business Day</u>" means any day other than Saturday, Sunday, a legal holiday, or a day on which national banking institutions in Texas are authorized or obligated by law or executive order to close.

1.18. "<u>Cash</u>" means legal tender of the United States of America, cash equivalents and other readily marketable securities or instruments, including, but not limited to, readily marketable direct obligations of the United States of America, certificates of deposit issued by banks or commercial paper.

1.19. "<u>Chapter 11 Cases</u>" refers collectively to the Acis LP bankruptcy case, Case No. 18-30264-sgj11, and the Acis GP bankruptcy case, Case No. 18-30265-sgj11, which are being jointly administered under Case No. 18-30264-sgj11.

1.20. "<u>Chapter 11 Trustee</u>" refers to Robin Phelan, the chapter 11 trustee for the Debtors.

1.21. "<u>Claim</u>" means (a) a right to payment, whether or not such right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured (including potential and unmatured tort and contract claims), disputed, undisputed, legal, equitable, secured or unsecured, or (b) a right to an equitable remedy for breach of performance if such breach gives rise to a right of payment, whether or not such right to an equitable remedy is reduced to judgment, fixed, contingent, matured, unmatured (including potential and unmatured tort and contract claims), disputed, undisputed, secured or unsecured.

1.22.   "Claimant" means the holder of a Claim.

1.23.   "Class" means a class of Claims or Interests as described in the Plan.

1.24.   "CLO" means collateralized loan obligations.

1.25.   "CLO-1" means Acis CLO 2013-1 LTD.

1.26.   "CLO-1 Indenture" means that certain Indenture, dated as of March 18, 2013, issued by CLO-1, as issuer, Acis CLO 2013-1 LLC, as co-Issuer and US Bank, as Indenture Trustee.

1.27.   "CLO-1 PMA" means that certain Portfolio Management Agreement by and between Acis LP and CLO-1, dated March 18, 2013.

1.28.   "CLO-3" means Acis CLO 2014-3 LTD.

1.29.   "CLO-3 Indenture" means that certain Indenture, dated as of February 25, 2014, issued by CLO-3, as issuer, Acis CLO 2014-3 LLC, as co-Issuer and US Bank, as Indenture Trustee

1.30.   "CLO-3 PMA" means that certain Portfolio Management Agreement by and between Acis LP and CLO-3, dated February 25, 2014.

1.31.   "CLO-4" means Acis CLO 2014-4 LTD.

1.32.   "CLO-4 Indenture" means that certain Indenture, dated as of June 5, 2014, issued by CLO-4, as issuer, Acis CLO 2014-4 LLC, as co-Issuer and US Bank, as Indenture Trustee.

1.33.   "CLO-4 PMA" means that certain Portfolio Management Agreement by and between Acis LP and CLO-4, dated June 5, 2014.

1.34.   "CLO-5" means Acis CLO 2014-5 LTD.

1.35.   "CLO-5 Indenture" means that certain Indenture, dated as of November 18, 2014, issued by CLO-5, as issuer, Acis CLO 2014-5 LLC, as co-Issuer and US Bank, as Indenture Trustee.

1.36.   "CLO-5 PMA" means that certain Portfolio Management Agreement by and between Acis LP and CLO-5, dated November 18, 2014.

1.37.   "CLO-6" means Acis CLO 2015-6 LTD.

1.38.   "CLO-6 Indenture" means that certain Indenture, dated as of April 16, 2015, issued by CLO-6, as issuer, Acis CLO 2015-6 LLC, as co-Issuer and US Bank, as Indenture Trustee.

1.39.   "CLO-6 PMA" means that certain Portfolio Management Agreement by and between Acis LP and CLO-6, dated April 16, 2015.

1.40.   "CLO Holdco" means CLO Holdco, Ltd.

1.41.   "Collateral" means any Asset subject to a valid and enforceable Lien to secure payment of a Claim.

1.42.   "Confirmation Date" means the date of entry of the Confirmation Order.

1.43.   "Confirmation Hearing" means the hearing conducted by the Bankruptcy Court pursuant to section 1128 of the Bankruptcy Code and Bankruptcy Rule 3020(b) to consider confirmation of the Plan, as such hearing may be continued from time to time.

1.44.   "Confirmation Order" means the order of the Bankruptcy Court confirming the Plan in accordance with the provisions of Chapter 11 of the Bankruptcy Code.

1.45.   "Contested," when used with respect to a Claim, means a Claim against the Debtors that is listed in the Debtors' Schedules as disputed, contingent, or unliquidated; that is listed in the Debtors' Schedules as undisputed, liquidated, and not contingent and as to which a proof of Claim has been filed with the Bankruptcy Court, to the extent the proof of Claim amount exceeds the scheduled amount; that is not listed in the Debtors' Schedules, but as to which a proof of Claim has been filed with the Bankruptcy Court; or as to which an objection has been or may be timely filed and has not been denied by Final Order. To the extent an objection relates to the allowance of only a part of a Claim, such Claim shall be a Contested Claim only to the extent of the objection.

1.46.   "Creditor" means a "creditor," as defined in section 101(10) of the Bankruptcy Code.

1.47.   "Cure Claim" means the payment or other performance required to cure any existing default under an Executory Contract or Unexpired Lease.

1.48.   "Debtors" means, collectively, Acis GP and Acis LP, the debtors in the above-captioned Chapter 11 Cases.

1.49.   "Disallowed," when used with respect to all or any part of a Claim or Interest, means that portion of a Claim or Interest to which an objection or motion to disallow has been sustained by a Final Order.

1.50.   "Disclosure Statement" means the Disclosure Statement filed with respect to the Plan, as it may be amended, modified, or supplemented from time to time.

1.51.   "Distribution" means any payment or other disbursement of property pursuant to the Plan.

1.52.   "Effective Date" means the first Business Day which is fourteen (14) days after the Confirmation Date if the Confirmation Order is not stayed or, if the Confirmation Order is stayed, the first Business Day following the lifting, dissolution, or removal of such stay which is at least fourteen (14) Business Days after the Confirmation Date, and upon which all conditions to the effectiveness of the Plan set forth in Article XIII below are satisfied.

1.53.   "Estate" shall collectively refer to the bankruptcy estates of the Debtors in the Chapter 11 Cases.

1.54.   "Estate Accounts Receivable" shall include all accounts receivable of the Estate, including from all sums payable to the Debtors on account of goods or services provided by the Debtors.

1.55.    "Estate Claims" shall include all claims and causes of action held by the Debtors' Estate, including, without limitation, the Estate Claims listed on the attached **Exhibit A** and all Avoidance Actions.

1.56.    ""Estate Defenses" means all defenses, affirmative defenses, counterclaims, or offsets by the Debtors' Estate against any Person, including but not limited to any Creditor.

1.57.    "Estate Insurance" means any insurance policy or interest in an insurance policy in which the Estate has an interest or rights.

1.58.    "Estate Professionals" means those Persons employed pursuant to an order of the Bankruptcy Court in accordance with sections 327, 328, and 1103 of the Bankruptcy Code or who are entitled to compensation or reimbursement pursuant to sections 503(b)(3)(D) or 506(b) of the Bankruptcy Code.

1.59.    "Executory Contract" means any executory contract which is subject to section 365 of the Bankruptcy Code and which is not an Unexpired Lease.

1.60.    "Final Order" means an order or judgment of the Bankruptcy Court or any other court or adjudicative body, as to which the time to appeal or seek rehearing or petition for certiorari shall have expired or which order or judgment shall no longer be subject to appeal, rehearing, or certiorari proceeding and with respect to which no appeal, motion for rehearing, or certiorari proceeding or stay shall then be pending.

1.61.    "General Unsecured Claim" means any Claim against the Debtors that is not an Administrative Expense, Priority Tax Claim, Priority Non-Tax Claim, Secured Tax Claim, Secured Claim, or Insider Claim, but includes any Rejection Claims pursuant to section 502(g) of the Bankruptcy Code.

1.62.    "Governmental Unit" means a "governmental unit" as such term is defined in section 101(27) of the Bankruptcy Code.

1.63.    "HCLOF" means Highland CLO Funding, Ltd.

1.64.    "Highland" means Highland Capital Management, L.P.

1.65.    "Highland Adversary" means Adversary Proceeding No. 18-03078-sgj.

1.66.    "Highland Claim" means all Claims asserted by Highland or any Affiliates of Highland against the Debtors, including any Claim resulting from the termination of the Sub-Advisory Agreement and Shared Services Agreement.

1.67.    "Highland CLOM" means Highland CLO Management, Ltd.

1.68.    "Highland HCF" means Highland HCF Advisors, Ltd.

1.69.    "Impaired" means, when used with reference to a Claim or Interest, a Claim or Interest that is impaired within the meaning of section 1124 of the Bankruptcy Code.

1.70.    "Indentures" refers collectively to the CLO-1 Indenture, the CLO-3 Indenture, the CLO-4 Indenture, the CLO-5 Indenture, and the CLO-6 Indenture.

1.71. "<u>Indenture Trustee</u>" refers to US Bank solely in its capacity as Indenture Trustee under the CLO-1, the CLO-3 Indenture, the CLO-4 Indenture, the CLO-5 Indenture and the CLO-6 Indenture, as applicable

1.72. "<u>Initial Distribution Date</u>," when used with respect to any Contested Claim or Rejection Claim, shall mean the later of (i) the first Business Day at least thirty (30) days after the date on which any such Contested Claim or Rejection Claim becomes an Allowed Claim, or (ii) if the payment terms of Article IV of this Plan applicable to each such Claim specify a different date, then the date as calculated pursuant to the terms of Article IV of this Plan applicable to each such Claim. The Initial Distribution Date shall be separately determined with respect to each Contested Claim or Rejection Claim based upon the date each such Claim becomes an Allowed Claim.

1.73. "<u>Insider</u>" means a Person described in section 101(31) of the Bankruptcy Code.

1.74. "<u>Insider Claim</u>" means any Claim asserted by Insiders of the Debtors, including but not limited to any Claim asserted by Highland or any Affiliate thereof, unless otherwise indicated in the Plan.

1.75. "<u>Interests</u>" means any equity or stock ownership interest in the Debtors.

1.76. "<u>Issuers and Co-Issuers</u>" means CLO-1, CLO-3, CLO-4, CLO-5, CLO-6, Acis CLO 2013-1, Acis CLO-2014-3, LLC, Acis CLO 2014-4, LLC, Acis CLO 2014-5, LLC, and Acis 2015-6, LLC.

1.77. "<u>Lien</u>" means any mortgage, lien, charge, security interest, encumbrance, or other security device of any kind affecting any asset or property of the Debtors contemplated by section 101(37) of the Bankruptcy Code.

1.78. "<u>Management Fees</u>" shall, when used in relation to any of the Acis CLOs, have the meaning set forth in the applicable Indenture.

1.79. "<u>Neutra</u>" means Neutra, Ltd.

1.80. "<u>Objection</u>" means (a) an objection to the allowance of a Claim interposed by any party entitled to do so within the applicable period of limitation fixed by the Plan, the Bankruptcy Code, the Bankruptcy Rules, or the Bankruptcy Court, and (b) as to any Taxing Authority, a proceeding commenced under section 505 of the Bankruptcy Code to determine the legality or amount of any tax.

1.81. "<u>Objection Deadline</u>" shall mean the later of (a) ninety (90) days following the Effective Date, unless otherwise extended by order of the Bankruptcy Court, or (b) as to any Rejection Claim filed after the Effective Date, ninety (90) days after the date on which the proof of Claim reflecting the Rejection Claim is filed.

1.82. "<u>Optional Redemption</u>" shall, when used in relation to any of the Acis CLOs, have the meaning set forth in the applicable Indenture.

1.83. "<u>Person</u>" means any individual, corporation, general partnership, limited partnership, association, joint stock company, joint venture, estate, trust, unincorporated organization, government, or any political subdivision thereof or other entity.

1.84.   "Petition Date" means January 30, 2018.

1.85.   "Plan" means this Second Amended Joint Chapter 11 plan, either in its present form or as it may be altered, amended, or modified from time to time.

1.86.   "Plan Documents" means the documents that aid in effectuating the Plan as specifically identified as such herein and filed with the Bankruptcy Court.

1.87.   "Plan Rate" means a rate of interest of five percent (5%) per annum.

1.88.   "PMAs" refers collectively to the CLO-1 PMA, CLO-3 PMA, CLO-4 PMA, CLO-5 PMA, and CLO-6 PMA.

1.89.   "Priority Claim" means a Claim (other than a Claim for an Administrative Expense) to the extent that it is entitled to priority in payment under section 507(a) of the Bankruptcy Code.

1.90.   "Priority Non-Tax Claim" means a Priority Claim other than a Priority Tax Claim.

1.91.   "Priority Tax Claim" means a Claim of a Governmental Unit of the kind specified in subsection 507(a)(8) of the Bankruptcy Code.

1.92.   "Professional" means those persons retained pursuant to an order of the Bankruptcy Court in accordance with sections 327 and 1103 of the Bankruptcy Code.

1.93.   "Pro Rata Distribution" means an optional Distribution made in accordance with section 4.03(c), 4.04(e), or 4.04(i) of the Plan.  Each Creditor entitled to receive a portion of a Pro Rata Distribution shall receive such Creditor's Pro Rata Share of such Distribution.

1.94.   "Pro Rata Share' means, as to the holder of a specific Claim, the ratio that the amount of such holder's Claim bears to the aggregate amount of all Claims included in the particular Class or category in which such holder's Claim is included.

1.95.   "Refinancing Proceeds" shall, when used in relation to any of the Acis CLOs, have the meaning set forth in the applicable Indenture.

1.96.   "Rejection Claim" means a Claim arising under section 502(g) of the Bankruptcy Code as a consequence of the rejection of any Executory Contract or Unexpired Lease.

1.97.   "Reorganized Debtor" refers collectively to the Debtors, as reorganized, acting from and after the Effective Date if the Plan is confirmed based on the terms and provisions herein.

1.98.   "Reserve" or "Reserves" means any reserves set aside by the Reorganized Debtor pursuant to this Plan, including reserves set aside to fund any Distributions, make payments pursuant to the Plan, or pursue the Estate Claims.

1.99.   "Schedules" means the schedules of assets and liabilities and the statements of financial affairs filed by the Debtors as required by section 521 of the Bankruptcy Code and Bankruptcy Rule 1007, as such schedules or statements have been or may be subsequently amended.

1.100.  "Secured Claim" means (a) a Claim secured by a lien on any Assets, which lien is valid, perfected, and enforceable under applicable law and is not subject to avoidance under the Bankruptcy Code or applicable nonbankruptcy law, and which is duly Allowed, but only to the

extent of the value of the holder's interest in the Collateral that secures payment of the Claim; (b) a Claim against the Debtors that is subject to a valid right of recoupment or setoff under section 553 of the Bankruptcy Code, but only to the extent of the Allowed amount subject to recoupment or setoff as provided in section 506(a) of the Bankruptcy Code; and (c) a Claim deemed or treated under the Plan as a Secured Claim; provided, that, to the extent that the value of such interest is less than the amount of the Claim which has the benefit of such security, the unsecured portion of such Claim shall be treated as a General Unsecured Claim unless, in any such case the Class of which the Claim is a part makes a valid and timely election in accordance with section 1111(b) of the Bankruptcy Code to have such Claim treated as a Secured Claim to the extent Allowed.

1.101. "Secured Tax Claim" means any ad valorem tax Claim that arises or is deemed to have arisen on or before the Petition Date, irrespective of the date on which such Claim is assessed or due.

1.102. "Shared Services Agreement" means that certain Fourth Amended and Restated Shared Services Agreement by and between Acis LP and Highland dated March 17, 2017.

1.103. "Sub-Advisory Agreement" means that certain Third Amended and Restated Sub-Advisory Agreement by and between Acis LP and Highland dated March 17, 2017

1.104. "Subordinated Notes" means the subordinated notes in the Acis CLOs held by HCLOF, and expressly does not include any subordinated notes in the Acis CLOs held by any other party.

1.105. "Substantial Consummation" means the day on which a Creditor first receives a Distribution of any kind under the terms and provisions of the Plan.

1.106. "Taxing Authority" shall include the State of Texas or any subdivision thereof, including without limitation any political subdivision of the State of Texas assessing ad valorem taxes against any of the Assets.

1.107. "Terry" means Joshua N. Terry.

1.108. "Terry Partially Secured Claim" means any Claim asserted against the Debtors by Terry, including as asserted in Proof of Claim No. 1 in both Chapter 11 Cases and Proof of Claim No. 26 against Acis LP.

1.109. "Unclaimed Property" means any cash, Distribution, or any other property of the Debtors unclaimed for a period of one (1) year after the applicable Initial Distribution Date.

1.110. "Unexpired Lease" means any unexpired lease or agreement which is subject to section 365 of the Bankruptcy Code and which is not an Executory Contract.

1.111. "US Bank" means U.S. Bank National Association.

      B.     Interpretation. Unless otherwise specified, all section, article and exhibit references in the Plan are to the respective section in, article of, or exhibit to, the Plan, as the same may be amended, waived, or modified from time to time. The headings in the Plan are for convenience and reference only and shall not limit or otherwise affect the provisions hereof. The rules of construction set forth in section 102 of the Bankruptcy Code, other than section 102(5)

of the Bankruptcy Code, apply to construction of the Plan. For the purposes of construction of the Plan, "or" is disjunctive.

C.    <u>Other Terms</u>. The words "herein," "hereof," "hereto," "hereunder," and others of similar import refer to the Plan as a whole and not to any particular section, subsection, or clause contained in the Plan. References herein to "after notice and hearing" or other similar language shall have the same meaning as in section 102(1) of the Bankruptcy Code. Otherwise, a term used herein that is not specifically defined herein shall have the meaning ascribed to that term, if any, in the Bankruptcy Code.

D.    <u>Exhibits and Plan Documents</u>. All Exhibits to the Plan and all Plan Documents are incorporated into the Plan by this reference and are a part of the Plan as if set forth in full herein. Any Plan Documents may be filed with the Clerk of the Bankruptcy Court prior to the commencement of the Confirmation Hearing. Holders of Claims and Interests may obtain a copy of the Plan Documents, once filed, by a written request sent to the following address: Forshey & Prostok, LLP, 777 Main Street, Suite 1290, Fort Worth, Texas 76102, Attention: Linda Breedlove; Fax number (817) 877-4151; email: lbreedlove@forsheyprostok.com.

## ARTICLE II.
## CLASSIFICATION OF CLAIMS AND INTERESTS

2.01.    The following is a designation of the Classes of Claims and Interests under the Plan. Administrative Expenses, Priority Claims of the kinds specified in sections 507(a)(2) and 507(a)(3) of the Bankruptcy Code and Priority Tax Claims have not been classified, are excluded from the following Classes in accordance with section 1123(a)(1) of the Bankruptcy Code, and their treatment is set forth in Article III of the Plan.  A Claim shall be deemed classified in a particular Class only to the extent that the Claim qualifies within the description of that Class.  A Claim is included in a particular Class only to the extent that the Claim is an Allowed Claim in that Class.

> Class 1 – Secured Tax Claims
> Class 2 – Terry Partially Secured Claim
> Class 3 – General Unsecured Claims
> Class 4 – Insider Claims
> Class 5 – Interests

2.02.    <u>Impaired Classes of Claims and Interests</u>.  Class 1 is unimpaired.  Classes 2 through 5 are Impaired.

2.03.    <u>Impairment or Classification Controversies</u>. If a controversy arises as to the classification of any Claim or Interest, or as to whether any Class of Claims or Interests is Impaired under the Plan, the Bankruptcy Court shall determine such controversy as a part of the confirmation process.

## ARTICLE III.
## TREATMENT OF UNCLASSIFIED CLAIMS

3.01.  <u>Administrative Expenses</u>

(a)    The Reorganized Debtor shall pay, in accordance with the ordinary business terms applicable to each such expense or cost, the reasonable and ordinary expenses incurred

in operating the Debtors' businesses or administering the Estate before the Effective Date ("Ordinary Course Claims").  The remaining provisions of this section 3.01 shall not apply to the Ordinary Course Claims, except that if there is a dispute relating to any such Ordinary Course Claim, the Reorganized Debtor may move the Bankruptcy Court to apply the provisions of Article III below relating to Contested Claims and require the holder of the Contested Ordinary Course Claim to assert such Claim through the Chapter 11 Cases.

(b)      Each holder of an Allowed Administrative Expense (other than Ordinary Course Claims and Administrative Expense Claims by Estate Professionals), shall receive (i) the amount of such holder's Allowed Administrative Expense in one Cash payment on the later of the Effective Date or the tenth (10th) Business Day after such Administrative Expense becomes an Allowed Administrative Expense, or (ii) such other treatment as may be agreed to in writing by such Administrative Expense Creditor and the Reorganized Debtor, or as otherwise ordered by the Bankruptcy Court.

(c)      Unless the Bankruptcy Court orders to the contrary or the Reorganized Debtor agrees to the contrary in writing, the holder of a Claim for an Administrative Expense, other than such a Claim by an Estate Professional, an Ordinary Course Claim, or an Administrative Expense which is already Allowed, shall file with the Bankruptcy Court and serve upon the Reorganized Debtor and its counsel a written notice of such Claim for an Administrative Expense within thirty (30) days after the Effective Date.  This deadline is the "Administrative Bar Date."  Such notice shall include at a minimum: (i) the name, address, telephone number and fax number (if applicable) or email address of the holder of such Claim, (ii) the amount of such Claim, and (iii) the basis of such Claim.  **Failure to timely and properly file and serve such notice by the Administrative Bar Date shall result in such Claim for an Administrative Expense being forever barred and discharged and the holder thereof shall be barred from receiving any Distribution from the Reorganized Debtor on account of such Claim for an Administrative Expense**.

(d)      A Claim for an Administrative Expense, for which a proper notice was filed and served under subsection 3.01(c) above, shall become an Allowed Administrative Expense if no Objection is filed within thirty (30) days of the filing and service of such notice.  If a timely Objection is filed, the Claim shall become an Allowed Administrative Expense only to the extent allowed by a Final Order.

(e)      The procedures contained in subsections 3.01(a), (c) and (d) above shall not apply to Administrative Expense Claims asserted by Estate Professionals, who shall each file and submit an appropriate final fee application to the Bankruptcy Court no later than sixty (60) days after the Effective Date.  A Claim for an Administrative Expense by an Estate Professional in respect of which a final fee application has been properly filed and served shall become an Allowed Administrative Expense only to the extent Allowed by order of the Bankruptcy Court and, if so Allowed, shall be paid in accordance with subsection 3.01(b) above.  Professional fees and expenses to any Estate Professional incurred on or after the Effective Date may be paid by the Reorganized Debtor without necessity of application to or order by the Bankruptcy Court.

(f)      If the Reorganized Debtor asserts any Estate Claims as counterclaims or defenses to a Claim for Administrative Expense, the Administrative Expense Claim shall be determined through an adversary proceeding before the Bankruptcy Court.  The Bankruptcy Court shall have exclusive jurisdiction to adjudicate and Allow all Claims for any Administrative Expense.

3.02.   <u>Priority Non-Tax Claims</u>.  Each holder of an Allowed Priority Non-Tax Claim shall receive (i) the amount of such holder's Allowed Priority Non-Tax Payment in one Cash payment on the later of the Effective Date or the tenth (10th) Business Day after such Priority Non-Tax Claim becomes an Allowed Priority Non-Tax Claim and a determination has been made that such Allowed Priority Non-Tax Claim is not subject to equitable subordination under section 510(c) of the Bankruptcy Code, or (ii) such other treatment as may be agreed to in writing by such Administrative Expense Creditor and the Reorganized Debtor, or as otherwise ordered by the Bankruptcy Court.

3.03.   <u>Priority Tax Claims</u>. Each holder of an Allowed Priority Tax Claim shall receive (a) one Cash payment in an amount equal to the principal amount of such Allowed Priority Tax Claim, plus interest at the rate and in the manner prescribed by applicable state law from the later of the Petition Date or the first day after the last day on which such Priority Tax Claim may be paid without penalty, no later than sixty (60) days after each such Claim becomes an Allowed Claim, or (b) such other treatment as may be agreed to in writing by the holder of the Priority Tax Claim and the Reorganized Debtor.

3.04.   <u>U.S. Trustee's Fees</u>. The Reorganized Debtor shall pay the U.S. Trustee's quarterly fees incurred pursuant to 28 U.S.C. § 1930(a)(6) which are due as of the Confirmation Date in full on the Effective Date or as soon thereafter as is practicable.  After the Confirmation Date, the Reorganized Debtor shall continue to pay quarterly fees as they accrue until a final decree is entered and the Chapter 11 Cases are closed.  The Reorganized Debtor shall file with the Bankruptcy Court and serve on the U.S. Trustee quarterly financial reports for each quarter, or portion thereof, that the Chapter 11 Cases remain open.

## ARTICLE IV.
## TREATMENT OF CLASSIFIED CLAIMS AND INTERESTS

4.01.   <u>Class 1 – Secured Tax Claims</u>. Each holder of an Allowed Secured Tax Claim shall receive (a) one Cash payment in an amount equal to the principal amount of such Allowed Secured Tax Claim, plus interest at the rate and in the manner prescribed by applicable state law from the later of the Petition Date or the first day after the last day on which such Secured Tax Claim may be paid without penalty, on the Initial Distribution Date, or (b) such other treatment as may be agreed to in writing by the holder of the Secured Tax Claim and the Reorganized Debtor.  The Liens securing such Secured Tax Claims shall remain unimpaired and unaffected until each such Class 1 Claim is paid in full.  All Distributions on account of Allowed Class 1 Claims shall be made by the Reorganized Debtor.  Class 1 is unimpaired. Holders of Class 1 Claims are conclusively presumed to have accepted the Plan and, accordingly, are not entitled to vote on the Plan.

4.02.   <u>Class 2 – Terry Partially Secured Claim</u>.  In exchange for a one million dollar ($1,000,000.00) reduction in the amount of the Terry Partially Secured Claim, Terry shall receive one hundred percent (100%) of the equity interests in the Reorganized Debtor as of the Effective Date.  The remaining balance of any Allowed Terry Partially Secured Claim shall be treated and paid as a Class 3 General Unsecured Claim.  Class 2 is Impaired.  The Holder of the Class 2 Terry Partially Secured Claim is entitled to vote on the Plan.

4.03.   <u>Class 3 – General Unsecured Claims</u>.

(a)      Each holder of an Allowed General Unsecured Claim shall receive a promissory note issued by the Reorganized Debtor (each an "<u>Unsecured Cash Flow Note</u>") on the later of

(a) that date that is as soon as practicable after the Effective Date, or (b) that date that is as soon as practicable after such holder's General Unsecured Claim becomes an Allowed Class 3 Claim. Each Unsecured Cash Flow Note shall be dated as of the Effective Date, bear interest at the Plan Rate and shall mature on that date that is the three (3) years after the Effective Date.

(b)     To the extent of Available Cash, the Reorganized Debtor shall make substantially equal quarterly Distributions of principal and accrued interest to each holder of an Unsecured Cash Flow Note, with the first such quarterly Distribution being due and payable on the 180th day after the Effective Date. Thereafter, like Distributions shall be made each quarter by the Reorganized Debtor until the Unsecured Cash Flow Note is paid in full. Notwithstanding the foregoing, in the event that an Unsecured Cash Flow Note is first issued more than one hundred eighty (180) days after the Effective Date, the first Distribution made on account of such Unsecured Cash Flow Note shall be made upon the date that the next Distribution would otherwise be due, but such first Distribution shall also include amounts that would have been distributed to the holder of such Unsecured Cash Flow Note had such Unsecured Cash Flow Note been issued prior to ninety (90) days after the Effective Date, such that the first Distribution shall bring all payments current on account of such Unsecured Cash Flow Note. If on any date on which a quarterly Distribution is due to the holder of an Unsecured Cash Flow Note the remaining principal and accrued interest owing on account of such Unsecured Cash Flow Note is less than the regular quarterly Distribution amount, the Reorganized Debtor shall make a Distribution to the holder of such Unsecured Cash Flow Note in an amount sufficient to fully satisfy the remaining principal and accrued interest owed, but no more. Nothing contained herein shall preclude the Reorganized Debtor from prepaying any Unsecured Cash Flow Note.

(c)     If the Reorganized Debtor obtains additional Cash, through litigation recoveries or otherwise, and the Reorganized Debtor determines, in its sole discretion, that the Reorganized Debtor holds Available Cash sufficient to allow one or more Pro Rata Distributions to be made to holders of Allowed Class 3 Claims and Allowed Subclass 4A Claims, the Reorganized Debtor may, but shall not be required to, make one or more Pro Rata Distributions to holders of Allowed Class 3 Claims and Allowed Subclass 4A Claims. The amount of the Pro Rata Distribution made to each such holder shall be determined as if Class 3 and Subclass 4A constituted a single Class. Any such additional Distributions shall be applied to reduce the outstanding balance of each holder's Unsecured Cash Flow Note.

(d)     Class 3 is Impaired. Holders of Class 3 Claims are entitled to vote on the Plan.

4.04.   <u>Class 4 – Insider Claims</u>. Holders of Class 4 Insider Claims shall be treated as follows:

(a)     Class 4 Claims shall be divided into two (2) subclasses. Subclass 4A shall consist of all Allowed Class 4 claims which are not subject to equitable subordination. Subclass 4B shall consist of all Class 4 claims which are determined by the Bankruptcy Court to be subject to equitable subordination. If only a part of a Class 4 Claim is subject to equitable subordination, then the portion of such claim subject to equitable subordination shall be included in Subclass 4B and the remainder not subject to equitable subordination shall be included in Subclass 4A. Subclass 4A and Subclass 4B will vote separately on the Plan, although Subclass 4B is currently an empty class.

(b)     All Class 4 Claims (regardless of which subclass) shall be and remain subject to all Estate Defenses and all Estate Claims, including any rights of offset, recoupment, and/or to an affirmative recovery against the Holder of any Class 4 Claim.

13

(c)     Each holder of an Allowed Subclass 4A Claim shall receive an Unsecured Cash Flow Note on the later of (a) that date that is as soon as practicable after the Effective Date, or (b) that date that is as soon as practicable after such holder's Subclass 4A Claim becomes an Allowed Subclass 4A Claim.  Each Unsecured Cash Flow Note shall be dated as of the Effective Date, bear interest at the Plan Rate and shall mature on that date that is the three (3) years after the Effective Date.

(d)     To the extent of Available Cash, the Reorganized Debtor shall make substantially equal quarterly Distributions of principal and accrued interest to each holder of an Unsecured Cash Flow Note, with the first such quarterly Distribution being due and payable on the 180th day after the Effective Date.  Thereafter, like Distributions shall be made each quarter by the Reorganized Debtor until the Unsecured Cash Flow Note is paid in full.  Notwithstanding the foregoing, in the event that an Unsecured Cash Flow Note is first issued more than one hundred eighty (180) days after the Effective Date, the first Distribution made on account of such Unsecured Cash Flow Note shall be made upon the date that the next Distribution would otherwise be due, but such first Distribution shall also include amounts that would have been distributed to the holder of such Unsecured Cash Flow Note had such Unsecured Cash Flow Note been issued prior to ninety (90) days after the Effective Date, such that the first Distribution shall bring all payments current on account of such Unsecured Cash Flow Note.  If on any date on which a quarterly Distribution is due to the holder of an Unsecured Cash Flow Note the remaining principal and accrued interest owing on account of such Unsecured Cash Flow Note is less than the regular quarterly Distribution amount, the Reorganized Debtor shall make a Distribution to the holder of such Unsecured Cash Flow Note in an amount sufficient to fully satisfy the remaining principal and accrued interest owed, but no more.  Nothing contained herein shall preclude the Reorganized Debtor from prepaying any Unsecured Cash Flow Note.

(e)     If the Reorganized Debtor obtains additional Cash, through litigation recoveries or otherwise, and the Reorganized Debtor determines, in its sole discretion, that the Reorganized Debtor holds Available Cash sufficient to allow one or more Pro Rata Distributions to be made to holders of Allowed Class 3 Claims and Allowed Subclass 4A Claims, the Reorganized Debtor may, but shall not be required to, make one or more Pro Rata Distributions to holders of Allowed Class 3 Claims and Allowed Subclass 4A Claims.  The amount of the Pro Rata Distribution made to each such holder shall be determined as if Class 3 and Subclass 4A constituted a single Class.  Any such additional Distributions shall be applied to reduce the outstanding balance of each holder's Unsecured Cash Flow Note.

(f)     Unless otherwise provided by Order of the Bankruptcy Court, holders of Allowed Subclass 4B claims shall not be entitled to any Distribution from the Reorganized Debtor until all Allowed Claims included in Classes 1 through 3 and Subclass 4A, including all Unsecured Cash Flow Notes, have been paid in full.

(g)     Holders of Allowed Subclass 4B Claims shall receive a subordinated promissory note issued by the Reorganized Debtor ("Subordinated Unsecured Cash Flow Note") on the later of (a) that date that is as soon as practicable after the Effective Date, or (b) that date that is as soon as practicable after such holder's Subclass 4A Claim becomes an Allowed Subclass 4A Claim.  Each Subordinated Unsecured Cash Flow Note shall be dated as of the Effective Date, bear interest at the Plan Rate and shall mature on the earlier to occur of (i) the date that is two (2) years after the date all Unsecured Cash Flow Notes have been paid in full, or (ii) five (5) years after the Effective Date.

(h)     To the extent of Available Cash, the Reorganized Debtor shall make substantially equal quarterly Distributions of principal and accrued interest to each holder of a Subordinated Unsecured Cash Flow Note, with the first such quarterly Distribution being due and payable on the 90th day after the payment in full of the Unsecured Cash Flow Notes.  Thereafter, like Distributions shall be made each quarter by the Reorganized Debtor until the Subordinated Unsecured Cash Flow Note is paid in full.  Notwithstanding the foregoing, in the event that a Subordinated Unsecured Cash Flow Note is first issued after payments have been made on one or more other Subordinated Unsecured Cash Flow Notes, the first Distribution made on account of such Subordinated Unsecured Cash Flow Note shall be made upon the date that the next Distribution would otherwise be due, but such first Distribution shall also include amounts that would have been distributed to the holder of such Subordinated Unsecured Cash Flow Note had such Subordinated Unsecured Cash Flow Note been issued at the time the first payment on any Subordinated Unsecured Cash Flow Note was made, such that the first Distribution shall bring all payments current on account of such Subordinated Unsecured Cash Flow Note.  If on any date on which a quarterly Distribution is due to the holder of a Subordinated Unsecured Cash Flow Note the remaining principal and accrued interest owing on account of such Subordinated Unsecured Cash Flow Note is less than the regular quarterly Distribution amount, the Reorganized Debtor shall make a Distribution to the holder of such Subordinated Unsecured Cash Flow Note in an amount sufficient to fully satisfy the remaining principal and accrued interest owed, but no more.  Nothing contained herein shall preclude the Reorganized Debtor from prepaying any Subordinated Unsecured Cash Flow Note.

(i)     Subject to section 4.04(f) above, if the Reorganized Debtor obtains additional Cash, through litigation recoveries or otherwise, and the Reorganized Debtor determines, in its sole discretion, that the Reorganized Debtor holds Available Cash sufficient to allow one or more Pro Rata Distributions to be made to holders of Allowed Subclass 4B Claims, the Reorganized Debtor may, but shall not be required to, make one or more Pro Rata Distributions to holders of Allowed Subclass 4B Claims.  Any such additional Distributions shall be applied to reduce the outstanding balance of each holder's Subordinated Unsecured Cash Flow Note.

(j)     The Reorganized Debtor may establish appropriate Reserves as to any Contested Claim included in Class 4.

(k)     Class 4 is Impaired.  Holders of Class 4 Claims are entitled to vote on the Plan.

4.05.   Class 5 – Interests.  All Interests in the Debtors shall be extinguished and shall cease to exist as of the Effective Date. The holders of such Interests shall not receive or retain any property on account of such Interests under the Plan.  Class 5 is Impaired.  Holders of Class 5 Interests are conclusively presumed to have rejected the Plan and, accordingly, are not entitled to vote on the Plan.

## ARTICLE V.
## ACCEPTANCE OR REJECTION OF THE PLAN

5.01.   Classes Entitled to Vote.  Creditors in Classes 2 through 4 are entitled to vote and shall vote separately to accept or reject the Plan.  Any unimpaired Class shall not be entitled to vote to accept or reject the Plan.  Any unimpaired Class is deemed to have accepted the Plan under section 1126(f) of the Bankruptcy Code.

5.02. <u>Class Acceptance Requirement</u>. A Class of Claims shall have accepted the Plan if it is accepted by at least two-thirds (2/3) in amount and more than one-half (1/2) in number of the Allowed Claims in such Class that have voted on the Plan.

5.03. <u>Cramdown</u>. This section shall constitute the request by the Plan proponent, pursuant to section 1129(b) of the Bankruptcy Code, that the Bankruptcy Court confirm the Plan notwithstanding the fact that the requirements of section 1129(a)(8) of the Bankruptcy Code have not been met.

**ARTICLE VI.**
**MEANS FOR IMPLEMENTATION OF THE PLAN**

6.01. <u>Vesting of Assets</u>. As of the Effective Date, pursuant to sections 1141(b) and (c) of the Bankruptcy Code, all Assets, including the PMAs, all Cash, Estate Accounts Receivable, Estate Insurance, Estate Claims and Estate Defenses, shall be transferred from the Estate to, and vested in, the Reorganized Debtor, free and clear of all rights, title, interests, claims, liens, encumbrances and charges, except as expressly set forth in the Plan. On and after the Effective Date, the Reorganized Debtor may operate its business and may use, acquire or dispose of property without supervision or approval by the Bankruptcy Court and free of any restrictions of the Bankruptcy Code or Bankruptcy Rules, other than those restrictions expressly imposed by the Plan or the Confirmation Order. Without limiting the foregoing, the Reorganized Debtor may pay the charges that it incurs on or after the Effective Date for all fees, disbursements, expenses or related support services of Professionals (including fees relating to the preparation of professional fee applications) without application to, or approval of, the Bankruptcy Court.

6.02. <u>Continued Existence of the Debtors</u>. The Debtors shall continue to exist after the Effective Date, with all the powers available to such legal entities, in accordance with applicable law and pursuant to their constituent documents. On or after the Effective Date, each Reorganized Debtor may, within its sole and exclusive discretion, take such action as permitted by applicable law and its constituent documents as it determines is reasonable and appropriate.

6.03. <u>Retention and Assertion of Causes of Action and Defenses</u>.

(a) Except as expressly set forth in this Plan, all causes of action, claims, counterclaims, defenses and rights of offset or recoupment (including but not limited to all Estate Claims, Estate Defenses and Avoidance Actions) belonging to the Debtors (collectively, the "Retained Causes of Action") shall, upon the occurrence of the Effective Date, be reserved, retained and preserved for, and transferred to, received by and vested, in the Reorganized Debtor for the benefit of the Debtors and the Debtors' estates. Without limitation, the Retained Causes of Action include the claims and causes of action described on **Exhibit A** attached hereto.

(b) Except as expressly set forth in this Plan, the rights of the Reorganized Debtor to commence, prosecute or settle the Retained Causes of Action shall be retained, reserved, and preserved notwithstanding the occurrence of the Effective Date. **No Person may rely on the absence of a specific reference in the Plan or the Disclosure Statement to any cause of action against them as any indication that the Debtors or the Reorganized Debtor will not pursue any and all available causes of action (including all Estate Claims, Estate Defenses and Avoidance Actions) against them. The Debtors and their Estate expressly reserve all rights to prosecute any and all of the Retained Causes of Action (including all**

**Estate Claims, Estate Defenses and Avoidance Actions) against any Person, <u>except</u> as otherwise provided in this Plan**. Unless any causes of action against a Person are expressly waived, relinquished, exculpated, released, compromised or settled in this Plan or a Final Order, the Debtors expressly reserve all causes of action (including all Estate Claims, Estate Defenses and Avoidance Actions) for later adjudication, and, therefore, no preclusion doctrine, <u>including</u> without limitation, the doctrines of res judicata, collateral estoppel, issue preclusion, claim preclusion, estoppel (judicial, equitable or otherwise) or laches, shall apply to such causes of action upon or after the confirmation or consummation of the Plan. The Debtors and the Reorganized Debtor may also assert Estate Defenses as a defense to the allowance of any Claim not otherwise Allowed.

6.04.   <u>Assumption of Obligations to Make Distributions</u>.  The Reorganized Debtor shall be deemed to have assumed the obligations to make all Distributions pursuant to this Plan.

6.05.   <u>Actions by the Debtors and the Reorganized Debtor to Implement Plan</u>.  The entry of the Confirmation Order shall constitute all necessary authorization for the Debtors and the Reorganized Debtor to take or cause to be taken all actions necessary or appropriate to consummate, implement or perform all provisions of this Plan on and after the Effective Date, and all such actions taken or caused to be taken shall be deemed to have been authorized and approved by the Bankruptcy Court without further approval, act or action under any applicable law, order, rule or regulation, including without limitation, (a) all transfers of Assets, including to the Reorganized Debtor, that are to occur pursuant to the Plan; (b) the cancellation of Interests and issuance of 100% of the equity interests in the Reorganized Debtor to Terry; (c) the performance of the terms of the Plan and the making of all Distributions required under the Plan; and (d) subject to the terms of the Plan, entering into any and all transactions, contracts, or arrangements permitted by applicable law, order, rule or regulation.

6.06.   <u>Termination of Highland as Shared Services Provider and Sub-Advisor</u>.  The Bankruptcy Court authorized the Chapter 11 Trustee to terminate the Shared Services Agreement and Sub-Advisory Agreement and engage Brigade to perform the services previously provided by Highland.  The Shared Services Agreement and Sub-Advisory Agreement were terminated by the Chapter 11 Trustee on or about August 1, 2018, and the services previously performed by Highland were transitioned to Brigade on an interim basis.  Brigade has agreed to continue to provide shared services and sub-advisory services to the Reorganized Debtor with respect to the Acis CLOs (or any reset CLOs) subject to a minimum two (2) year term unless otherwise agreed as between the Reorganized Debtor and Brigade.  Consequently, any agreement between the Reorganized Debtor and Brigade shall provide that Brigade cannot be removed without cause for a period of two (2) years except as may be otherwise agreed as between the Reorganized Debtor and Brigade.

6.07.   <u>Continued Portfolio Management by the Reorganized Debtor</u>.  The PMAs shall be assumed and the Reorganized Debtor shall, from an after the Effective Date, serve as the portfolio manager with respect to the Acis CLOs (or any reset CLOs).  Consistent with Section 15 of the PMAs, the Reorganized Debtor may only be removed as portfolio manager under the assumed PMAs for cause as set forth in the PMAs.

6.08.   <u>Reset of the Acis CLOs</u>.  HCLOF has maintained that it desires to reset the Acis CLOs. The Reorganized Debtor, with the assistance of Brigade as its shared services provider and sub-advisor, is prepared to promptly seek to perform such reset transactions as set forth herein. HCLOF shall have the right to submit one or more notice(s) of Optional Redemption solely for the purpose of effectuating a reset of one or more of the Acis CLOs under this section 6.08 of

the Plan utilizing Refinancing Proceeds (a "Reset Optional Redemption") for each of the Acis CLOs. If HCLOF requests a Reset Optional Redemption of an Acis CLO, the Reorganized Debtor, with the assistance of Brigade, shall thereafter seek to reset the Acis CLOs, either consecutively or simultaneously, in its good faith business judgment and consistent with then-prevailing market terms; *provided, however*, (i) the Management Fees to be charged by the Reorganized Debtor to any reset Acis CLOs shall remain the same going forward and shall not be increased, and no transaction fee shall be charged by the Reorganized Debtor (other than, for avoidance of doubt, transaction expense reimbursements consistent with market standards), and (ii) HCLOF shall be granted a right of first refusal for any funding of debt or equity required to effectuate a reset of each of the Acis CLOs. The terms of the Indentures shall control any Reset Optional Redemption except that if the Reorganized Debtor and Brigade are able to secure reset terms that improve the position of the Subordinated Notes in the reasonable business judgment of the Reorganized Debtor, then HCLOF shall not be permitted to withdraw the Optional Redemption that initiated the reset process. If HCLOF elects not to reset one or more of the Acis CLOs, then the Acis CLOs will continue to be managed in accordance with market standards.

6.09.    Post-Effective Date Service List. Pleadings filed by any party-in-interest with the Bankruptcy Court after the Effective Date shall be served on the following Persons (collectively the "Service List"): (a) any Person directly affected by the relief sought in the pleading, (b) the U.S. Trustee, (c) parties which have filed a Notice of Appearance in the Chapter 11 Cases, and (d) the Reorganized Debtor.

6.10.    Section 505 Powers. All rights and powers pursuant to section 505 of the Bankruptcy Code are hereby reserved to the Estate and shall be transferred to, and vested in, the Reorganized Debtor as of the Effective Date.

6.11.    Section 510(c) Powers. All rights and powers to seek or exercise any right or remedy of equitable subordination are hereby reserved to the Estate and shall be transferred to, and vested in, the Reorganized Debtor as of the Effective Date as an Estate Defense.

6.12.    Section 506(c) Powers. The Estate hereby reserves all rights and powers pursuant to section 506(c) of the Bankruptcy Code, and all such rights shall be specifically transferred to, and vested in, the Reorganized Debtor.

6.13.    Plan Injunction. The Reorganized Debtor shall each have full power, standing and authority to enforce the Plan Injunction against any Person, either through an action before the Bankruptcy Court or any other tribunal having appropriate jurisdiction.

6.14.    Cancellation of Interests. Except as otherwise specifically provided herein, upon the Effective Date of the Plan: (a) all Interests in the Debtors shall be cancelled; and (b) all obligations or debts of, or Claims against, the Debtors on account of, or based upon, the Interests shall be deemed as cancelled, released and discharged, including all obligations or duties by the Debtors relating to the Interests in any of their respective formation documents, including Acis LP's limited partnership agreement and bylaws, Acis GP's articles of formation and company agreement, or any similar formation or governing documents.

## ARTICLE VII.
## PROVISIONS GOVERNING DISTRIBUTION

7.01.    Distributions from Reorganized Debtor. The Reorganized Debtor shall be responsible

18

for making Distributions to holders of Allowed Claims only to the extent this Plan requires Distributions to be made by the Reorganized Debtor. The priority of Distributions from the Reorganized Debtor shall be in accordance with the terms of this Plan and the Confirmation Order as follows:

      (a)    <u>First</u>, to satisfy Allowed Class 1 Secured Tax Claims;

      (b)    <u>Second</u>, to satisfy Allowed Administrative Expenses and Allowed Priority Claims in accordance with Article III above, including all U.S. Trustee quarterly fees due and owing as of the Effective Date;

      (c)    <u>Third</u>, to make Distributions to holders of any Allowed Class 3 General Unsecured Claims and Allowed Subclass 4A Claims; and

      (e)    <u>Fourth</u>, to make Distributions to holders of any Allowed Subclass 4B Claims

7.02.  <u>Reserves</u>. The Reorganized Debtor may estimate, create and set aside Reserves as may be necessary or appropriate, including without limitation, Reserves on account of Contested Claims. The Reorganized Debtor may, but shall not be required to, move the Bankruptcy Court to approve: (a) the amount of, and terms on which, such Reserves shall be held, maintained and disbursed, or (b) the amount and timing of any proposed interim Distribution to holders of Allowed Class 3 Claims and Allowed Subclass 4A Claims. The Reorganized Debtor may elect to seek approval by the Bankruptcy Court for the creation and amount of any Reserves or regarding the amount or timing of any Distribution on account of any Allowed Claims. Except as otherwise expressly provided herein, the Reorganized Debtor, in the exercise of its good faith business judgment, may transfer funds out of any of the Reserves as necessary or appropriate. However, the Reorganized Debtor shall not be required to create separate accounts for such Reserves which may be created and memorialized by entries or other accounting methodologies, which may be revised from time-to-time, to enable the Reorganized Debtor to determine the amount of Cash available for Distributions under the Plan. Subject to any specific deadlines set forth herein, the Reorganized Debtor, shall determine, from time-to-time, in the exercise of the Reorganized Debtor's good faith business judgment: (x) the amount of Cash available for Distribution, (y) the timing of any Distributions, and (z) the amount and creation of any Reserves for Contested Claims. The Reorganized Debtor shall not be entitled to reserve for, and this section 7.02 does not apply to, Distributions to holders of Allowed Subclass 4B Claims.

7.03.  <u>Prosecution and Settlement of Estate Claims</u>. Upon the Effective Date, the Reorganized Debtor (a) shall automatically be substituted in place of the Chapter 11 Trustee as the party representing the Estate in respect of any pending lawsuit, motion or other pleading pending before the Bankruptcy Court or any other tribunal, and (b) is authorized to file a notice on the docket of each adversary proceeding or the Chapter 11 Cases regarding such substitution. The Reorganized Debtor shall have exclusive standing and authority to prosecute, settle or compromise Estate Claims for the benefit of the Estate in the manner set forth in this Plan.

7.04.  <u>Plan Injunction</u>. The Reorganized Debtor shall be entitled to the full protection and benefit of the Plan Injunction and shall have standing to bring any action or proceeding necessary to enforce the Plan Injunction against any Person.

7.05.  <u>Relief from the Bankruptcy Court</u>. The Reorganized Debtor shall be authorized to seek relief from the Bankruptcy Court or any other tribunal having jurisdiction as to any matter relating

or pertaining to the consummation, administration or performance of this Plan, including without limitation seeking any relief from the Bankruptcy Court which the Reorganized Debtor deems necessary or appropriate to the performance of its duties or the administration of this Plan.

**ARTICLE VIII.**
**SOURCE OF DISTRIBUTIONS**

8.01.    Source of Distributions.  All Distributions under this Plan shall be made by the Reorganized Debtor in the manner provided in this Plan and the Confirmation Order.

8.02.    Timing and Amount of Distributions.  No Distribution shall be made on account of any Claim until such Claim is Allowed, except as otherwise set forth in this Plan or otherwise ordered by the Bankruptcy Court.  No Distribution shall be made on account of any Contested Claim until such Claim is Allowed.  Except as expressly set forth in the Plan or in the Confirmation Order, the Reorganized Debtor shall, in the exercise of its good faith business judgment, determine the timing and amount of all Distributions which are required to be made under the Plan, consistent with the goal of making such Distributions as expeditiously as reasonably possible.  The Reorganized Debtor may, but shall not be required to, seek approval of, or any other appropriate relief from, the Bankruptcy Court with respect to any of such Distributions.  Any Unclaimed Property may be paid into the registry of the Bankruptcy Court or otherwise distributed in accordance with the orders of the Bankruptcy Court.

8.03.    Means of Cash Payment.  Cash payments pursuant to this Plan shall be made by check drawn on, or by wire transfer from, a domestic bank, or by other means agreed to by the payor and payee.

8.04.    Record Date for Distributions.  As of the close of business on the Effective Date (the "Distribution Record Date"), the register for Claims will be closed, and there shall be no further changes in the holders of record of any Claims.  Although there is no prohibition against the transfer of any Claim by any Creditor, the Reorganized Debtor shall have no obligation to recognize any transfer of a Claim occurring after the Distribution Record Date, and the Reorganized Debtor shall instead be authorized and entitled to recognize and deal for all purposes under this Plan, including for the purpose of making all Distributions, with only those holders of Claims so reflected as of the Distribution Record Date.  However, the Reorganized Debtor may, in the exercise of its good faith business judgment, agree to recognize transfers of Claims after the Distribution Record Date, but shall have no obligation to do so.

8.05.    Delivery of Distributions.  All Distributions, deliveries and payments to the holders of any Allowed Claims shall be made to the addresses set forth on the respective proofs of Claim filed in the Chapter 11 Cases by such Claimants or, if the Distribution is to be made based on a Claim reflected as Allowed in the Schedules, at the address reflected in the Schedules.  Any such Distribution, delivery or payment shall be deemed as made for all purposes relating to this Plan when deposited in the United States Mail, postage prepaid, addressed as required in the preceding sentence.  If any Distribution is returned as undeliverable, no further Distribution shall be made on account of such Allowed Claim unless and until the Reorganized Debtor is notified of such holder's then current address, at which time all missed Distributions shall be made to the holder of such Allowed Claim.  However, all notices to the Reorganized Debtor reflecting new or updated addresses for undeliverable Distributions shall be made on or before one hundred twenty (120) days after the date of the attempted Distribution or such longer period as the Reorganized Debtor may fix in the exercise of its sole discretion.  After such date, all

Unclaimed Property shall revert to the Reorganized Debtor and the Claim of any holder with respect to such property shall be discharged and forever barred.

8.06. <u>W-9 Forms</u>. Each holder of an Allowed Claim must provide a W-9 form or other such necessary information to comply with any withholding requirements of any Governmental Unit (collectively the "<u>W-9 Form</u>") to the Reorganized Debtor prior to receiving any Distribution from the Reorganized Debtor. In the event a holder of an Allowed Claim does not provide a W-9 Form to the Reorganized Debtor within thirty (30) days of the Effective Date, the Reorganized Debtor shall, at an appropriate time, issue a written request to each holder of an Allowed Claim that has not previously provided a W-9 Form to the Reorganized Debtor. The request shall be in writing and shall be delivered to the last address known to the Debtors or Reorganized Debtor, as appropriate. The request shall conspicuously advise and disclose that failure to provide a W-9 Form to the Reorganized Debtor within thirty (30) days shall result in a waiver of any right or rights to a Distribution from the Reorganized Debtor. In the event any holder of an Allowed Claim fails to provide the Reorganized Debtor with a W-9 Form within thirty (30) days after the date of written request described herein, then the holder of such Allowed Claim shall be deemed to have waived the right to receive any Distribution whatsoever from the Reorganized Debtor.

8.07. <u>Time Bar to Cash Payments</u>. Checks issued in respect of Allowed Claims shall be null and void if not cashed within ninety (90) days of the date of issuance thereof. Requests for reissuance of any check shall be made directly to the issuer of the check by the holder of the Allowed Claim with respect to which such check originally was issued. Any Claim in respect of such a voided check shall be made on or before one hundred twenty (120) days after the date of issuance of such check or such longer period as the Reorganized Debtor may fix. After such date, all Claims in respect of void checks shall be discharged and forever barred.

8.08. <u>Cure Period</u>. Except as otherwise set forth herein, the failure by the Reorganized Debtor to timely perform any term, provision or covenant contained in this Plan, or to make any payment or Distribution required by this Plan to any Creditor, or the failure to make any payment or perform any covenant on any note, instrument or document issued pursuant to this Plan, shall not constitute an event of default unless and until the Reorganized Debtor has been given thirty (30) days written notice of such alleged default in the manner provided in this Plan, and provided an opportunity to cure such alleged default. Until the expiration of such thirty (30) day cure period, the Reorganized Debtor shall not be in default, and performance during such thirty (30) day cure period shall be deemed as timely for all purposes. Such written notice and passage of the thirty (30) day cure period shall constitute conditions precedent to declaring or claiming any default under this Plan or bringing any action or legal proceeding by any Person to enforce any right granted under this Plan.

8.09. <u>Pre-Payment of Claims</u>. Unless the Plan expressly prohibits or conditions the pre-payment of an Allowed Claim, the Reorganized Debtor may pre-pay any Allowed Claim in whole or in part at any time and may do so without penalty.

8.10. <u>Distributions after Substantial Consummation</u>. All Distributions of any kind made to any Creditor after Substantial Consummation and any and all other actions taken under this Plan after Substantial Consummation shall not be subject to relief, reversal or modification by any court unless the implementation of the Confirmation Order is stayed by an order granted under Bankruptcy Rule 8005.

## ARTICLE IX.
## RETENTION OF ESTATE CLAIMS AND ESTATE DEFENSES.

9.01. <u>Retention of Estate Claims</u>. Except as otherwise specifically provided in this Plan, pursuant to section 1123(b)(3) of the Bankruptcy Code, all Estate Claims shall be transferred to, and vested in, the Reorganized Debtor, both for purposes of seeking an affirmative recovery against any Person and for the purposes of offset, recoupment or defense against any Claim asserted against the Estate or Reorganized Debtor. All Estate Claims shall be deemed to have been transferred to, and vested in, the Reorganized Debtor as of the Effective Date based on the entry of the Confirmation Order.

Without limiting the effectiveness or generality of the foregoing reservation, out of an abundance of caution, the Debtors and the Estate hereby specifically reserves, retains, and preserves the Estate Claims reflected in the attached **Exhibit A**. Reference is here made to **Exhibit A** which constitutes an integral part of this Plan. The provisions of this Article of the Plan, as well as the descriptions and disclosures relating to the Estate Claims in the Disclosure Statement, are provided in the interest of providing maximum disclosure of the Estate Claims of which Debtors are presently aware and shall not act as a limitation on the potential Estate Claims that may exist. It is the specific intention of this Plan that all Avoidance Actions and all associated remedies, and any other Estate Claims, whether arising before or after the Petition Date, and whether arising under the Bankruptcy Code or applicable state or federal non-bankruptcy laws, shall all be reserved, retained and preserved under this Plan to be transferred to, and vested in, the Reorganized Debtor. All Estate Claims are reserved, retained and preserved both as causes of action for an affirmative recovery and as counterclaims and for the purposes of offset or recoupment against any Claims asserted against the Estate.

9.02. <u>Retention of Estate Defenses</u>. Except as otherwise specifically provided in this Plan, pursuant to section 1123(b)(3) of the Bankruptcy Code, all Estate Defenses shall be transferred to, and vested in, the Reorganized Debtor. For this purpose, all Estate Defenses are hereby reserved, retained and preserved by the Debtors and the Estate, including without limitation all such Estate Defenses available to the Estate pursuant to section 558 of the Bankruptcy Code, and shall be deemed as transferred to, and vested in, the Reorganized Debtor as of the Effective Date based on the entry of the Confirmation Order.

9.03. <u>Assertion of Estate Claims and Estate Defenses</u>. The Reorganized Debtor shall have, and be vested with, the exclusive right, authority and standing to assert all Estate Claims and Estate Defenses for the benefit of the Reorganized Debtor.

## ARTICLE X.
## PROCEDURES FOR RESOLVING AND TREATING
## CONTESTED AND CONTINGENT CLAIMS

10.01. <u>Claims Listed in Schedules as Disputed</u>. Any General Unsecured Claim which is listed in the Schedules as unliquidated, contingent or disputed, and for which no proof of Claim has been timely filed, shall be considered as Disallowed as of the Effective Date without the necessity of any further action by the Reorganized Debtor or further order of the Bankruptcy Court other than the entry of the Confirmation Order.

10.02. <u>Responsibility for Objecting to Claims and Settlement of Claims</u>. The Reorganized Debtor shall have the exclusive standing and authority to either object to any Claim or settle and compromise any Objection to any Claim, including as follows:

22

(a)     From and after the Effective Date, the Reorganized Debtor shall have the sole and exclusive right to (i) file, settle, or litigate to Final Order any Objections to any Claims; and (ii) seek to subordinate any Claim.  Any Contested Claim may be litigated to Final Order by the Reorganized Debtor; and

(b)     From and after the Effective Date, the Reorganized Debtor shall have the sole and exclusive right to settle, compromise or otherwise resolve any Contested Claim without the necessity of any further notice or approval of the Bankruptcy Court.  Bankruptcy Rule 9019 shall not apply to any settlement or compromise of a Contested Claim after the Effective Date.

10.03.  <u>Objection Deadline</u>.  All Objections to Claims shall be served and filed by the Objection Deadline; <u>provided, however</u>, the Objection Deadline shall not apply to Claims which are not reflected in the claims register, including any alleged informal proofs of Claim.  The Reorganized Debtor may seek to extend the Objection Deadline pursuant to a motion filed on or before the then applicable Objection Deadline with respect to any Claim.  Any such motion may be granted without notice or a hearing.  In the event that the Reorganized Debtor files such a motion and the Bankruptcy Court denies such motion, the Objection Deadline shall nevertheless be automatically extended to that date which is ten (10) Business Days after the date of entry of the Bankruptcy Court's order denying such motion.  Any proof of Claim other than one based upon a Rejection Claim and which is filed more than thirty (30) days after the Effective Date shall be of no force and effect and need not be objected to by the Reorganized Debtor.  Nothing contained herein shall limit the right of the Reorganized Debtor to object to Claims, if any, filed or amended after the Objection Deadline.

10.04.  <u>Response to Claim Objection</u>.  If the Reorganized Debtor files an Objection to any Claim, then the holder of such Claim shall file a written response to such Objection within twenty-four (24) days after the filing and service of the Objection upon the holder of the Contested Claim.  Each such Objection shall contain appropriate negative notice advising the Creditor whose Claim is subject to the Objection of the requirement and time period to file a response to such Objection and that, if no response is timely filed to the Objection, the Bankruptcy Court may enter an order that such Claim is Disallowed without further notice or hearing.  The negative notice language in the Objection shall satisfy the notice requirement in section 3007(a) of the Bankruptcy Rules, and the Reorganized Debtor shall not be required to send a separate notice of the Objection to the Creditor whose Claim is subject to the Objection.

10.05.  <u>Distributions on Account of Contested Claims</u>.  If a Claim is Contested, then the dates for any Distributions as to such Contested Claim shall be determined based upon its date of Allowance, and thereafter Distribution shall be made on account of such Allowed Claim pursuant to the provisions of the Plan.  No Distribution shall be made on account of a Contested Claim until Allowed.  Until such time as a contingent Claim becomes fixed and absolute by a Final Order Allowing such Claim, such Claim shall be treated as a Contested Claim for purposes of estimates, allocations, and Distributions under the Plan.  Any contingent right to contribution or reimbursement shall continue to be subject to section 502(e) of the Bankruptcy Code.

10.06.  <u>No Waiver of Right to Object</u>.  Except as expressly provided in this Plan, nothing contained in the Disclosure Statement, this Plan, or the Confirmation Order shall waive, relinquish, release or impair the Reorganized Debtor's right to object to any Claim.

10.07.  <u>Offsets and Defenses</u>.  The Reorganized Debtor shall be vested with and retain all Estate Claims and Estate Defenses, including without limitation all rights of offset or recoupment and all counterclaims against any Claimant holding a Claim.  Assertion of counterclaims by the

Reorganized Debtor against any Claim asserted against the Estate or Reorganized Debtor shall constitute "core" proceedings.

10.08. <u>Claims Paid or Reduced Prior to Effective Date</u>. Notwithstanding the contents of the Schedules, Claims listed therein as undisputed, liquidated and not contingent shall be reduced by the amount, if any, that was paid by the Debtors prior to the Effective Date, including pursuant to orders of the Bankruptcy Court. To the extent such payments are not reflected in the Schedules, such Schedules will be deemed amended and reduced to reflect that such payments were made. Nothing in the Plan shall preclude the Debtors or the Reorganized Debtor from paying Claims that the Debtors were authorized to pay pursuant to any Final Order entered by the Bankruptcy Court prior to the Confirmation Date.

## ARTICLE XI.
## EXECUTORY CONTRACTS AND UNEXPIRED LEASES

11.01. <u>Assumption and Rejection of Executory Contracts</u>. All Executory Contracts and Unexpired Leases of the Debtors shall be deemed rejected by the Debtors upon the Effective Date unless an Executory Contract or Unexpired Lease (a) has been previously assumed or rejected pursuant to an order of the Bankruptcy Court, (b) is identified in **Exhibit B** to this Plan and/or the Confirmation Order to be (i) assumed or (ii) assumed and assigned, or (c) is the subject of a motion to assume filed on or before the Confirmation Date. The Plan shall constitute a motion to reject all Executory Contracts and Unexpired Leases except as stated in this paragraph. However, the Debtors may file a separate motion for the assumption or rejection of any Executory Contract or Unexpired Lease at any time through the Confirmation Date.

11.02. <u>Cure Payments</u>. All payments that may be required by section 365(b)(1) of the Bankruptcy Code to satisfy any Cure Claim shall be made by the Reorganized Debtor as soon as reasonably practical after the Effective Date or upon such terms as may be otherwise agreed between the Reorganized Debtor and the holder of such Cure Claim; *provided, however*, in the event of a dispute regarding the amount of any Cure Claim, the cure of any other defaults, or any other matter pertaining to assumption or assignment of an Executory Contract, the Reorganized Debtor shall make such cure payments and cure such other defaults, all as may be required by section 365(b)(1) of the Bankruptcy Code, following the entry of a Final Order by the Bankruptcy Court resolving such dispute.

11.03. <u>Bar to Rejection Claims</u>. Except as otherwise ordered by the Bankruptcy Court, any Rejection Claim based on the rejection of an Executory Contract or Unexpired Lease shall be forever barred and shall not be enforceable against the Reorganized Debtor or the Reorganized Debtor's assets unless a proof of Claim is filed with the Bankruptcy Court and served upon the Reorganized Debtor and its counsel by the earlier of thirty (30) days after the Effective Date or thirty (30) days after entry of the Final Order approving rejection of such Executory Contract or Unexpired Lease.

11.04. <u>Rejection Claims</u>. Any Rejection Claim not barred by section 11.03 of the Plan shall be classified as a Class 3 General Unsecured Claim subject to the provisions of sections 502(b)(6) and 502(g) of the Bankruptcy Code; *provided, however*, that any Rejection Claim by a lessor based upon the rejection of an unexpired lease of real property, either prior to the Confirmation Date, upon the entry of the Confirmation Order, or upon the Effective Date, shall be limited in accordance with section 502(b)(6) of the Bankruptcy Code and state law mitigation requirements. All Rejection Claims shall be deemed as Contested Claims until Allowed. Nothing contained herein shall be deemed an admission by the Debtors or the Reorganized

24

Debtor that such rejection gives rise to or results in a Claim or shall be deemed a waiver by the Debtors or the Reorganized Debtor of any objections or defenses to any such Rejection Claim if asserted.

11.05. Reservation of Rights. Nothing contained in the Plan shall constitute an admission by the Debtors that any contract or lease is in fact an Executory Contract or Unexpired Lease or that the Debtors or the Reorganized Debtor have any liability thereunder. If there is a dispute regarding whether a contract or lease is or was executory or unexpired at the time of assumption or rejection, the Reorganized Debtor shall have thirty (30) days following entry of a Final Order resolving such dispute to alter the treatment of such contract or lease.

## ARTICLE XII.
## SUBSTANTIVE CONSOLIDATION OF THE DEBTORS

12.01. Pursuant to the Confirmation Order, the Bankruptcy Court shall approve the substantive consolidation of the Debtors for the sole purposes of implementing the Plan, including for purposes of voting and Distributions to be made under the Plan. Pursuant to such order: (a) all assets and liabilities of the Debtors will be deemed merged; (b) all guarantees by one Debtor of the obligations of the other Debtor will be deemed eliminated so that any Claim against any Debtor and any guarantee thereof executed by the other Debtor and any joint or several liability of the Debtors will be deemed to be one obligation of the consolidated Debtors; and (c) each and every Claim filed or to be filed in the Chapter 11 Case of either Debtor will be deemed filed against the consolidated Debtors and will be deemed one Claim against and a single obligation of the consolidated Debtors.

## ARTICLE XIII.
## CONDITIONS PRECEDENT TO CONFIRMATION AND EFFECTIVENESS OF PLAN

13.01. Conditions to Confirmation and Effectiveness of Plan. The Plan shall not become effective until the following conditions shall have been satisfied and which may occur concurrently with the Effective Date: (a) the Confirmation Order shall have been entered, in form and substance acceptable to the Chapter 11 Trustee; (b) the necessary Plan Documents have been executed and delivered, and (c) all other conditions specified by the Chapter 11 Trustee have been satisfied. Any or all of the above conditions other than (a) may be waived at any time by the Chapter 11 Trustee.

13.02. Notice of the Effective Date. On or as soon as reasonably practical after the occurrence of the Effective Date, the Reorganized Debtor shall cause a notice of the Effective Date to be filed with the Bankruptcy Court and served on all Creditors and parties-in-interest.

13.03. Revocation of Plan. The Chapter 11 Trustee may revoke and withdraw the Plan at any time before the Effective Date. If the Chapter 11 Trustee revokes or withdraws the Plan, or if confirmation of the Plan does not occur, then this Plan shall be deemed null and void and nothing contained in the Plan shall be deemed to constitute a waiver or release of any Claims by or against the Debtors, as the case may be, or any other Person, or to prejudice in any manner the rights of the Debtors or any other Person in any further proceedings involving the Debtors.

**ARTICLE XIV.**
**EFFECT OF THE PLAN ON CLAIMS AND INTERESTS**

14.01. Compromise and Settlement

(a)    Pursuant to section 363 of the Bankruptcy Code and Bankruptcy Rule 9019, and in consideration of the classification, potential Distributions and other benefits provided under the Plan, the provisions of the Plan shall constitute a good faith compromise and settlement of all Claims, Interests and controversies subject to, or dealt with, under this Plan, including, without limitation, all Claims against the Debtors or Estate arising prior to the Effective Date, whether known or unknown, foreseen or unforeseen, asserted or unasserted, fixed or contingent, arising out of, relating to or in connection with the business or affairs of, or transactions with, the Debtors or the Estate.  The entry of the Confirmation Order shall constitute the Bankruptcy Court's approval of each of the foregoing compromises or settlements embodied in this Plan, and all other compromises and settlements provided for in the Plan, and the Bankruptcy Court's findings shall constitute its determination that such compromises and settlements are in the best interest of the Debtors, the Estate, Creditors and other parties-in-interest, and are fair, equitable and within the range of reasonableness.  The rights afforded in the Plan and the treatment of all Claims and Interests herein shall be in exchange for, and in complete satisfaction and release of, all Claims and Interests of any nature whatsoever against and in the Debtors, the Estate, and the Assets.  Except as otherwise provided herein, all Persons shall be precluded and forever barred by the Plan Injunction from asserting against the Debtors and their affiliates, successors, assigns, the Reorganized Debtor or the Reorganized Debtor's Assets, or the Estate, any event, occurrence, condition, thing, or other or further Claims or causes of action based upon any act, omission, transaction, or other activity of any kind or nature that occurred or came into existence prior to the Effective Date, whether or not the facts of or legal bases therefore were known or existed prior to the Effective Date.

(b)    It is not the intent of this Plan that confirmation of the Plan shall in any manner alter or amend any settlement and compromise (including those contained in agreed orders) between the Debtors and any Person that has been previously approved by the Bankruptcy Court (each, a "Prior Settlement").  To the extent of any conflict between the terms of the Plan and the terms of any Prior Settlement, the terms of the Prior Settlement shall control and such Prior Settlement shall be enforceable according to its terms.

14.02. Discharge.  The Debtors and their successors in interest and assigns shall be deemed discharged and released pursuant to section 1141(d)(1) of the Bankruptcy Code from any and all Claims provided for in the Plan.

14.03. **PLAN INJUNCTION.**

**THIS SECTION IS REFERRED TO HEREIN AS THE "PLAN INJUNCTION." EXCEPT AS OTHERWISE EXPRESSLY PROVIDED HEREIN, AS OF THE EFFECTIVE DATE ALL HOLDERS OF CLAIMS AGAINST, OR INTERESTS IN, THE DEBTORS, THE ESTATE OR ANY OF THE ASSETS THAT AROSE PRIOR TO THE EFFECTIVE DATE ARE HEREBY PERMANENTLY ENJOINED AND PROHIBITED FROM THE FOLLOWING:    (a) THE COMMENCING OR CONTINUATION IN ANY MANNER, DIRECTLY OR INDIRECTLY, OF ANY ACTION, CASE, LAWSUIT OR OTHER PROCEEDING OF ANY TYPE OR NATURE AGAINST THE DEBTORS, THE ESTATE, THE REORGANIZED DEBTOR, OR THE REORGANIZED DEBTOR'S ASSETS WITH RESPECT TO**

26

ANY SUCH CLAIM OR INTEREST ARISING OR ACCRUING BEFORE THE EFFECTIVE DATE, INCLUDING WITHOUT LIMITATION THE ENTRY OR ENFORCEMENT OF ANY JUDGMENT, OR ANY OTHER ACT FOR THE COLLECTION, EITHER DIRECTLY OR INDIRECTLY, OF ANY CLAIM OR INTEREST AGAINST THE DEBTORS, THE ESTATE, THE REORGANIZED DEBTOR, OR THE REORGANIZED DEBTOR'S ASSETS; (b) THE CREATION, PERFECTION OR ENFORCEMENT OF ANY LIEN, SECURITY INTEREST, ENCUMBRANCE, RIGHT OR BURDEN, EITHER DIRECTLY OR INDIRECTLY, AGAINST THE DEBTORS, THE ESTATE, THE REORGANIZED DEBTOR, OR THE REORGANIZED DEBTOR'S ASSETS, OR (c) TAKING ANY ACTION IN RELATION TO THE DEBTORS, THE ESTATE, THE REORGANIZED DEBTOR, OR THE REORGANIZED DEBTOR'S ASSETS, EITHER DIRECTLY OR INDIRECTLY, WHICH VIOLATES OR DOES NOT CONFORM OR COMPLY WITH THE PROVISIONS OF THIS PLAN APPLICABLE TO SUCH CLAIM OR INTEREST. THE PLAN INJUNCTION SHALL ALSO BE INCORPORATED INTO THE CONFIRMATION ORDER.

IN ADDITION TO THE FOREGOING, EXCEPT TO THE EXTENT NECESSARY TO ALLOW HCLOF, THE REORGANIZED DEBTOR AND BRIGADE TO EFFECTUATE THE RESET OF ONE OR MORE OF THE ACIS CLOS IN ACCORDANCE WITH SECTION 6.08 OF THE PLAN, PURSUANT TO SECTIONS 105(a), 1123(a)(5) AND 1123(b)(6) OF THE BANKRUPTCY CODE, THE ENJOINED PARTIES (DEFINED BELOW) ARE HEREBY ENJOINED FROM: (a) PROCEEDING WITH, EFFECTUATING, OR OTHERWISE TAKING (i) ANY ACTION IN FURTHERANCE OF ANY OPTIONAL REDEMPTION, CALL, OR OTHER LIQUIDATION OF THE ACIS CLOS PREVIOUSLY OR CURRENTLY ISSUED BY ANY SUCH PARTIES, AND (ii) ANY OTHER ATTEMPT TO LIQUIDATE THE ACIS CLOS BY ANY MEANS, (b) TRADING ANY ACIS CLO COLLATERAL, WHETHER IN FURTHERANCE OF ANY OPTIONAL REDEMPTION, CALL, OR OTHER LIQUIDATION OF THE ACIS CLOS OR OTHERWISE, (c) INTERFERING IN ANY WAY WITH THE CAPITAL MARKETS PROCESS OF RESETTING ANY ACIS CLO, AND (d) SENDING, MAILING, OR OTHERWISE DISTRIBUTING ANY NOTICE TO THE HOLDERS OF THE ACIS CLOS IN CONNECTION WITH THE EFFECTUATION OF ANY OPTIONAL REDEMPTION, CALL, OR OTHER LIQUIDATION OF THE ACIS CLOS, UNTIL THE EARLIER TO OCCUR OF: (x) THE DATE UPON WHICH THE REORGANIZED DEBTOR OBTAINS CONTROL OVER MANAGEMENT OF THE SUBORDINATED NOTES BY VIRTUE OF AVOIDING THE PREPETITION FRAUDULENT TRANSFER OF ACIS LP'S RIGHTS UNDER THE ALF PMA THROUGH THE CLAIMS, COUNTERCLAIMS, OR THIRD-PARTY CLAIMS ASSERTED OR WHICH MAY BE ASSERTED IN THE HIGHLAND ADVERSARY, (y) THE DATE ON WHICH ALL ALLOWED CLAIMS AGAINST THE DEBTORS HAVE BEEN PAID IN FULL, OR (z) TWO (2) YEARS AFTER THE EFFECTIVE DATE. FOR PURPOSES OF THIS PARAGRAPH, THE TERM "ENJOINED PARTIES" SHALL INCLUDE HIGHLAND, HCLOF, CLO HOLDCO, NEUTRA, HIGHLAND HCF, HIGHLAND CLOM, ANY AFFILIATES OF HIGHLAND, INDENTURE TRUSTEE, THE ISSUERS AND CO-ISSUERS, AND THEIR RESPECTIVE EMPLOYEES, AGENTS, REPRESENTATIVES, TRANSFEREES, ASSIGNS, AND SUCCESSORS.

Notwithstanding anything to the contrary in the Plan: (a) third-party professionals employed by the Reorganized Debtor shall not be released or exculpated from any losses, claims, damages, liabilities, or expenses arising from their duties and services provided to the Reorganized Debtor; and (b) any third-party professionals employed by the Reorganized Debtor shall only be entitled to be indemnified by the Reorganized Debtor to the extent provided by applicable law.

Notwithstanding anything to the contrary in the Plan or Confirmation Order, nothing in the Plan or in the Confirmation Order shall discharge, release, enjoin or otherwise bar (i) any liability of the Debtors, the Estate, the Reorganized Debtor, or the Reorganized Debtor's assets ("Released Parties") to a Governmental Unit arising on or after the Confirmation Date with respect to events occurring after the Confirmation Date, provided that the Released Parties reserve the right to assert that any such liability is a Claim that arose on or prior to the Confirmation Date and constitutes a Claim that is subject to the deadlines for filing proofs of claim, (ii) any liability to a Governmental Unit that is not a Claim subject to the deadlines for filing proofs of Claim, (iii) any valid right of setoff or recoupment of a Governmental Unit, and (iv) any police or regulatory action by a Governmental Unit. In addition, nothing in the Plan or Confirmation Order discharges, releases, precludes or enjoins any environmental liability to any Governmental Unit that any Person other than the Released Parties would be subject to as the owner or operator of the property after the Effective Date. For the avoidance of any doubt, nothing in this paragraph shall be construed to limit the application of the Plan Injunction to any Claim which was subject to any bar date applicable to such Claim.

14.04. Setoffs. Except as otherwise expressly provided for in the Plan, pursuant to the Bankruptcy Code (including section 553 of the Bankruptcy Code), applicable nonbankruptcy law, or as may be agreed to by the holder of a Claim, the Reorganized Debtor may set off against any Allowed Claim and the Distributions to be made pursuant to the Plan on account of such Allowed Claim (before such Distribution is made), any Claims, rights, Estate Claims and Estate Defenses of any nature that the Debtors may hold against the holder of such Allowed Claim, to the extent such Claims, rights, Estate Claims and Estate Defenses against such holder have not been otherwise compromised or settled on or prior to the Effective Date (whether pursuant to the Plan or otherwise); provided, however, that neither the failure to effect such a setoff nor the allowance of any Claim or Interest pursuant to the Plan shall constitute a waiver or release of any such Claims, rights, Estate Claims and Estate Defenses that the Estate may possess against such Claimant. In no event shall any Claimant or Interest holder be entitled to setoff any Claim or Interest against any Claim, right, or Estate Claim of the Debtors without the consent of the Debtors or the Reorganized Debtor unless such holder files a motion with the Bankruptcy Court requesting the authority to perform such setoff notwithstanding any indication in any proof of Claim or otherwise that such holder asserts, has, or intends to preserve any right of setoff pursuant to section 553 of the Bankruptcy Code or otherwise.

14.05. Recoupment. Except as otherwise expressly provided for in the Plan, in no event shall any holder of Claims or Interests be entitled to recoup any Claim or Interest against any Claim, right, account receivable, or Estate Claim of the Debtors or the Reorganized Debtor unless (a) such holder actually provides notice thereof in writing to the Debtors or the Reorganized Debtor of its intent to perform a recoupment; (b) such notice includes the amount to be recouped by the holder of the Claim or Interest and a specific description of the basis for the recoupment, and (c) the Debtors or the Reorganized Debtor have provided a written response to such Claim or Interest holder, stating unequivocally that the Debtors or the Reorganized Debtor consents to the requested recoupment. The Debtors and the Reorganized Debtor shall have the right, but not the obligation, to seek an order of the Bankruptcy Court allowing any or all of the proposed recoupment. In the absence of a written response from the Debtors or the

Reorganized Debtor consenting to a recoupment or an order of the Bankruptcy Court authorizing a recoupment, no recoupment by the holder of a Claim or Interest shall be allowed.

14.06. <u>Turnover</u>. On the Effective Date, any rights of the Estate to compel turnover of Assets under applicable nonbankruptcy law and pursuant to section 542 or 543 of the Bankruptcy Code shall be deemed transferred to and vested in the Reorganized Debtor.

14.07. <u>Automatic Stay</u>. The automatic stay pursuant to section 362 of the Bankruptcy Code, except as previously modified by the Bankruptcy Court, shall remain in effect until the Effective Date of the Plan as to the Debtors, the Estate and all Assets. As of the Effective Date, the automatic stay shall be replaced by the Plan Injunction.

**ARTICLE XV.**
**<u>JURISDICTION OF COURTS AND MODIFICATIONS TO THE PLAN</u>**

15.01. <u>Retention of Jurisdiction</u>. Pursuant to sections 1334 and 157 of title 28 of the United States Code, the Bankruptcy Court shall retain exclusive jurisdiction of all matters arising in, arising under, and related to the Chapter 11 Cases and the Plan, to the full extent allowed or permitted by applicable law, including without limitation for the purposes of invoking sections 105(a) and 1142 of the Bankruptcy Code, and for, among other things, the following purposes:

(a) To hear and determine any and all objections to, or applications or motions concerning, the allowance of Claims or the allowance, classification, priority, compromise, estimation, or payment of any Administrative Expense;

(b) To hear and determine any and all applications for payment of fees and expenses pursuant to this Plan to any Estate Professional pursuant to sections 330 or 503 of the Bankruptcy Code, or for payment of any other fees or expenses authorized to be paid or reimbursed under this Plan, and any and all objections thereto;

(c) To hear and determine pending applications for the rejection, assumption, or assumption and assignment of Executory Contracts and Unexpired Leases and the allowance of Claims resulting therefrom, and to determine the rights of any party in respect to the assumption or rejection of any Executory Contract or Unexpired Lease;

(d) To hear and determine any and all adversary proceedings, applications, or contested matters, including relating to the allowance of any Claim;

(e) To hear and determine all controversies, disputes, and suits which may arise in connection with the execution, interpretation, implementation, consummation, or enforcement of the Plan or in connection with the enforcement of any remedies made available under the Plan, including without limitation, (i) adjudication of all rights, interests or disputes relating to any of the Assets, (ii) the valuation of all Collateral, (iii) the determination of the validity of any Lien or claimed right of offset or recoupment; and (iv) determinations of Objections to Contested Claims;

(f) To liquidate and administer any disputed, contingent, or unliquidated Claims, including the Allowance of all Contested Claims;

(g) To administer Distributions to holders of Allowed Claims as provided herein;

(h)    To enter and implement such orders as may be appropriate in the event the Confirmation Order is for any reason stayed, reversed, revoked, modified, or vacated;

(i)    To enable the Reorganized Debtor to prosecute any and all proceedings which may be brought to set aside transfers, Liens or encumbrances and to recover any transfers, Assets, properties or damages to which the Reorganized Debtor may be entitled under applicable provisions of the Bankruptcy Code or any other federal, state or local laws, including causes of action, controversies, disputes and conflicts between the Reorganized Debtor and any other party, including but not limited to, any causes of action or Objections to Claims, preferences or fraudulent transfers and obligations or equitable subordination;

(j)    To consider any modification of the Plan pursuant to section 1127 of the Bankruptcy Code, to cure any defect or omission, or reconcile any inconsistency in any order of the Bankruptcy Court, including, without limitation the Confirmation Order;

(k)    To enforce the discharge and Plan Injunction against any Person;

(l)    To enter and implement all such orders as may be necessary or appropriate to execute, interpret, construe, implement, consummate, or enforce the terms and conditions of this Plan and the transactions required or contemplated pursuant thereto;

(m)    To hear and determine any motion or application which the Reorganized Debtor is required or allowed to commence before the Bankruptcy Court pursuant to this Plan;

(n)    To hear and determine any other matter not inconsistent with the Bankruptcy Code and title 28 of the United States Code that may arise in connection with or related to the Plan;

(o)    To determine proceedings pursuant to section 505 of the Bankruptcy Code;

(p)    To enter a final decree closing the Chapter 11 Cases; and

(q)    To determine any other matter or dispute relating to the Estate, the Estate Claims, the Estate Defenses, the Assets, or the Distributions by the Reorganized Debtor.

15.02.  <u>Abstention and Other Courts</u>.  If the Bankruptcy Court abstains from exercising, or declines to exercise, jurisdiction or is otherwise without jurisdiction over any matter arising out of or relating to the Chapter 11 Cases, this Article of the Plan shall have no effect upon and shall not control, prohibit or limit the exercise of jurisdiction by any other court having competent jurisdiction with respect to such matter.

15.03.  <u>Non-Material Modifications</u>.  The Reorganized Debtor may, with the approval of the Bankruptcy Court and without notice to all holders of Claims and Interests, correct any defect, omission, or inconsistency in the Plan in such manner and to such extent as may be necessary or desirable.  The Reorganized Debtor may undertake such nonmaterial modification pursuant to this section insofar as it does not adversely change the treatment of the Claim of any Creditor or the Interest of any Interest holder who has not accepted in writing the modification.

15.04.  <u>Material Modifications</u>.  Modifications of this Plan may be proposed in writing by the Chapter 11 Trustee at any time before confirmation, provided that this Plan, as modified, meets the requirements of sections 1122 and 1123 of the Bankruptcy Code, and the Chapter 11

Trustee shall have complied with section 1125 of the Bankruptcy Code. This Plan may be modified at any time after confirmation and before its Substantial Consummation, provided that the Plan, as modified, meets the requirements of sections 1122 and 1123 of the Bankruptcy Code, and the Bankruptcy Court, after notice and a hearing, confirms the Plan, as modified, under section 1129 of the Bankruptcy Code, and the circumstances warrant such modification. A holder of a Claim or Interest that has accepted or rejected this Plan shall be deemed to have accepted or rejected, as the case may be, such Plan as modified, unless, within the time fixed by the Bankruptcy Court, such holder changes its previous acceptance or rejection.

## ARTICLE XVI.
## MISCELLANEOUS PROVISIONS

16.01. <u>Severability</u>. Should the Bankruptcy Court determine any provision of the Plan is unenforceable either on its face or as applied to any Claim or Interest or transaction, the Reorganized Debtor may modify the Plan so that any such provision shall not be applicable to the holder of any Claim or Interest. Such a determination of unenforceability shall not (a) limit or affect the enforceability and operative effect of any other provision of the Plan or (b) require the resolicitation of any acceptance or rejection of the Plan.

16.02. <u>Oral Agreements; Modification of Plan; Oral Representations or Inducements</u>. The terms of the Plan, Disclosure Statement and Confirmation Order may only be amended in writing and may not be changed, contradicted or varied by any oral statement, agreement, warranty or representation. None of the Debtors, any representative of the Estate, including Robin Phelan in his capacity as Chapter 11 Trustee, nor their attorneys have made any representation, warranty, promise or inducement relating to the Plan or its confirmation except as expressly set forth in this Plan, the Disclosure Statement, or the Confirmation Order or other order of the Bankruptcy Court.

16.03. <u>Waiver</u>. The Reorganized Debtor shall not be deemed to have waived any right, power or privilege pursuant to the Plan unless the waiver is in writing and signed by the Reorganized Debtor. There shall be no waiver by implication, course of conduct or dealing, or through any delay or inaction by the Reorganized Debtor, of any right pursuant to the Plan, including the provisions of this anti-waiver section. The waiver of any right under the Plan shall not act as a waiver of any other or subsequent right, power or privilege.

16.04. <u>Notice</u>. Any notice or communication required or permitted by the Plan shall be given, made or sent as follows:

(a) If to a Creditor, notice may be given as follows: (i) if the Creditor has not filed a proof of Claim, then to the address reflected in the Schedules, or (ii) if the Creditor has filed a proof of Claim, then to the address reflected in the proof of Claim.

(b) If to the Reorganized Debtor, notice shall be sent to the following addresses:

| | |
|---|---|
| Jeff P. Prostok | Josh Terry |
| Suzanne K. Rosen | c/o Brian P. Shaw |
| Forshey Prostok LLP | Rogge Dunn Group, PC |
| 777 Main Street, Suite 1290 | 1201 Elm Street, Suite 5200 |
| Fort Worth, Texas 76102 | Dallas, Texas 75270 |

(c) Any Creditor desiring to change its address for the purpose of notice may do so

by giving notice to the Reorganized Debtor of its new address in accordance with the terms of this section.

(d)     Any notice given, made or sent as set forth above shall be effective upon being (i) deposited in the United States Mail, postage prepaid, addressed to the addressee at the address as set forth above; (ii) delivered by hand or messenger to the addressee at the address set forth above; (iii) telecopied to the addressee as set forth above, with a hard confirmation copy being immediately sent through the United States Mail; or (iv) delivered for transmission to an expedited or overnight delivery service such as FedEx.

16.05.  Compliance with All Applicable Laws.  If notified by any governmental authority that it is in violation of any applicable law, rule, regulation, or order of such governmental authority relating to its business, the Reorganized Debtor shall comply with such law, rule, regulation, or order; provided, however, that nothing contained herein shall require such compliance if the legality or applicability of any such requirement is being contested in good faith in appropriate proceedings and, if appropriate, an adequate Reserve has been set aside on the books of the Reorganized Debtor.

16.06.  Duties to Creditors; Exculpation.  Neither the Chapter 11 Trustee nor any agent, representative, accountant, financial advisor, attorney, shareholder, officer, affiliate, member or employee of the Chapter 11 Trustee or the Debtors, including but not limited to Estate Professionals (collectively, the "Exculpated Parties"), shall ever owe any duty to any Person (including any Creditor) other than the duties owed to the Debtors' bankruptcy Estate, for any act, omission, or event in connection with, or arising out of, or relating to, any of the following: (a) the Debtors' Chapter 11 Cases, including all matters or actions in connection with or relating to the administration of the Estate, (b) the Plan, including the proposal, negotiation, confirmation and consummation of the Plan, or (c) any act or omission relating to the administration of the Plan after the Effective Date.  All such Exculpated Parties shall be fully exculpated and released from any and all claims and causes of action by any Person, known or unknown, in connection with, or arising out of, or relating to, any of the following:  (x) the Debtors' Chapter 11 Cases, including all matters or actions in connection with or relating to the administration of the Estate, (y) the Plan, including the proposal, negotiation, confirmation and consummation of the Plan, or (z) any act or omission relating to the administration of the Plan after the Effective Date, except for claims and causes of action arising out of such Exculpated Party's gross negligence or willful misconduct.

16.07.  Binding Effect.  The Plan shall be binding upon, and shall inure to the benefit of, the Reorganized Debtor, the holders of the Claims or Liens, and their respective successors-in-interest and assigns.

16.08.  Governing Law, Interpretation.  Unless a rule of law or procedure supplied by federal law (including the Bankruptcy Code and Bankruptcy Rules) is applicable, the internal laws of the State of Texas shall govern the construction and implementation of the Plan and any Plan Documents without regard to conflicts of law.  The Plan shall control any inconsistent term or provision of any other Plan Documents.

16.09.  Payment of Statutory Fees.   All accrued U.S. Trustee Fees as of the Confirmation Date shall be paid by the Reorganized Debtor on or as soon as practicable after the Effective Date, and thereafter shall be paid by the Reorganized Debtor as such statutory fees become due and payable.

16.10.  Filing of Additional Documents.  On or before Substantial Consummation of the Plan, the Reorganized Debtor may file with the Bankruptcy Court such agreements and other documents as may be necessary or appropriate to effectuate and further evidence the terms and conditions of the Plan.

16.11.  Computation of Time.  Bankruptcy Rule 9006 shall apply to the calculation of all time periods pursuant to this Plan.  If the final day for any Distribution, performance, act or event under the Plan is not a Business Day, then the time for making or performing such Distribution, performance, act or event shall be extended to the next Business Day.  Any payment or Distribution required to be made hereunder on a day other than a Business Day shall be due and payable on the next succeeding Business Day.

16.12.  Elections by the Reorganized Debtor.  Any right of election or choice granted to the Reorganized Debtor under this Plan may be exercised, at the Reorganized Debtor's election, separately as to each Claim, Creditor or Person.

16.13.  Release of Liens.  Except as otherwise expressly provided in this Plan or the Confirmation Order, all Liens against any of the Assets transferred to and vested in the Reorganized Debtor shall be deemed to be released, terminated and nullified without the necessity of any order by the Bankruptcy Court other than the Confirmation Order.

16.14.  Rates.  The Plan does not provide for the change of any rate that is within the jurisdiction of any governmental regulatory commission after the occurrence of the Effective Date.

16.15.  Compliance with Tax Requirements.  In connection with the Plan, the Reorganized Debtor shall comply with all withholding and reporting requirements imposed by federal, state and local Taxing Authorities and all Distributions under the Plan shall be subject to such withholding and reporting requirements.  Notwithstanding the above, each holder of an Allowed Claim or Interest that is to receive a Distribution under the Plan shall have the sole and exclusive responsibility for the satisfaction and payment of any tax obligations imposed by any governmental unit, including income, withholding and other tax obligations, on account of such Distribution under the Plan.

16.16.  Notice of Occurrence of the Effective Date. Promptly after occurrence of the Effective Date, the Reorganized Debtor, as directed by the Bankruptcy Court, shall serve on all known parties-in-interest and holders of Claims and Interests, notice of the occurrence of the Effective Date.

16.17.  Notice of Entry of Confirmation Order.  Promptly after entry of the Confirmation Order, the Chapter 11 Trustee, as directed by the Bankruptcy Court in the Confirmation Order, shall serve on all known parties-in-interest and holders of Claims and Interests, notice of entry of the Confirmation Order.

[Remainder of page intentionally left blank.]

Dated: September 28, 2018.

Respectfully submitted,

ACIS CAPITAL MANAGEMENT, L.P.

By: /s/ *Robin Phelan*
    Robin Phelan
    Chapter 11 Trustee

ACIS CAPITAL MANAGMENET GP, LLC

By:/s/ *Robin Phelan*
    Robin Phelan
    Chapter 11 Trustee

APPROVED:

/s/ *Jeff P. Prostok*
Jeff P. Prostok – State Bar No. 16352500
J. Robert Forshey – State Bar No. 07264200
Suzanne K. Rosen – State Bar No. 00798518
Matthew G. Maben – State Bar No. 24037008
**FORSHEY & PROSTOK LLP**
777 Main St., Suite 1290
Ft. Worth, TX 76102
Telephone: (817) 877-8855
Facsimile: (817) 877-4151
jprostok@forsheyprostok.com
bforshey@forsheyprostok.com
srosen@forsheyprostok.com
mmaben@forsheyprostok.com

**COUNSEL FOR ROBIN PHELAN,
CHAPTER 11 TRUSTEE**

APPROVED:

/s/ *Rahkee V. Patel*
Rakhee V. Patel – State Bar No. 00797213
Phillip Lamberson – State Bar No. 00794134
Joe Wielebinski – State Bar No. 21432400
Annmarie Chiarello – State Bar No. 24097496
**WINSTEAD PC**
500 Winstead Building
2728 N. Harwood Street
Dallas, Texas 75201
Telephone: (214) 745-5400
Facsimile: (214) 745-5390
rpatel@winstead.com
plamberson@winstead.com
jwielebinski@winstead.com
achiarello@winstead.com

**SPECIAL COUNSEL FOR ROBIN PHELAN,
CHAPTER 11 TRUSTEE**

L:\JPROSTOK\ACIS Capital Management (Trustee Rep)\Plan and Disclosure Statement\Second Amended Joint Plan 9.28.18.docx

# EXHIBIT A

## TO SECOND AMENDED JOINT PLAN FOR ACIS CAPITAL MANAGEMENT, LP AND ACIS CAPITAL MANAGEMENT GP, LLC

**[ESTATE CLAIMS]**

**EXHIBIT "A"**
**to**
**Joint Plan for Acis Capital Management, LP and Acis Capital Management GP, LLC**

1.   <u>Defined Terms</u>.  This Exhibit "A" constitutes an integral part of the Plan of which it is a part.  Defined terms in the Plan are to be given the same meaning in this Exhibit "A".  The rules of construction set forth in Article I.B. of the Plan shall likewise apply to this Exhibit "A".

2.   <u>Estate Claims Reserved, Retained and Preserved</u>.  All Estate Claims are hereby reserved, retained and preserved, and shall all be transferred to, and vested in, the Reorganized Debtor pursuant to this Plan, and shall include without limitation all of the Estate Claims described below.  In reserving, retaining, and preserving Estate Claims against any named Person or category of Persons, it is the intent of this Plan to so reserve, retain, and preserve any and all Estate Claim against each such Person or category of Persons, including all such Estate Claims pursuant to any applicable common law, based on any contract or agreement or based upon any law, statute or regulation of any political entity, including the United States and any state or political subdivision thereof, as well as all applicable remedies, whether legal or equitable.  Without limiting the generality of the foregoing, the reservation, retention, and preservation of Estate Claims against any Person, and the term "<u>Estate Claims</u>," shall encompass all Estate Claims against any such Person, including without limitation, all such Estate Claims for breach of contract, all rights to enforce any contract, any form of estoppel, fraud, constructive fraud, abuse of process, malicious prosecution, defamation, libel, slander, conversion, trespass, intentional infliction of emotional distress or other harm, negligence, gross negligence, breach of any duty owed under either applicable law or any contract, breach of any fiduciary duty or duty of loyalty or due care, aiding and/or abetting breach of fiduciary duty, aiding and/or abetting breach of duty of loyalty or due care, alter ego, veil piercing, self-dealing, usurpation of corporate opportunity, ultra vires, turnover of Estate Assets, unauthorized use of Estate Assets, including intellectual property rights or Assets owned by the Debtors or Chapter 11 Trustee, quantum merit, tortious interference, duress, unconscionability, undue influence, and unjust enrichment, as well as any cause of action for conspiracy to commit any unlawful act, or aiding and/or abetting any such unlawful act, or claims arising from or relating to the filing of the involuntary bankruptcy petitions against the Debtors.

3.   <u>Highland Claims</u>.  All Estate Claims against Highland are reserved, retained and preserved for the benefit of the Estate and Reorganized Debtor, including without limitation all such Estate Claims asserted by the Chapter 11 Trustee in Adversary Proceeding No. 18-03078-sgj (the "<u>Highland Adversary</u>") and Adversary Proceeding No. 18-03212-sgj (the "<u>Trustee's Adversary</u>").  The Estate Claims against Highland shall include all Estate Claims set forth in paragraph 2 above, including without limitation, the following:

(a)   All such Claims asserted by the Chapter 11 Trustee or Estate in, or which could be asserted based on the facts or transactions alleged in, the Highland Adversary;

(b)   All such Claims asserted by the Chapter 11 Trustee or Estate in, or which could be asserted based on the facts or transactions alleged in, the Trustee's Adversary;

(c)   All such Claims and Defenses asserted by the Chapter 11 Trustee or Estate, or which could be asserted by the Chapter 11 Trustee or Estate, based on the facts or transactions alleged in any other adversary proceedings or Claim Objections filed by the Chapter 11 Trustee or Estate;

(d)     All Avoidance Actions against Highland, including any claims to avoid and recover amounts transferred by the Debtors to Highland under the Shared Services Agreement or Sub-Advisory Agreement;

(e)     All Claims for breach of the Shared Services Agreement or Sub-Advisory Agreement;

(f)     All Claims against Highland for amounts paid by the Debtors to Highland under the Shared Services Agreement and Sub-Advisory Agreement, including any Claim that Highland overcharged Acis LP for services under such agreements, charged excessive fees in violation of Acis LP's limited partnership agreement and/or Acis GP's limited liability company agreement, and/or that the Shared Services Agreement and Sub-Advisory Agreement or any related or predecessor agreements are void or voidable based on ultra vires or any other theories of avoidance and recovery, including turnover, conversion and Avoidance Actions under the Bankruptcy Code;

(g)     All Claims for breach of the PMAs or the Indentures;

(h)     All Claims for breach of fiduciary duty or duty of loyalty or due care owed to the Debtors or Chapter 11 Trustee;

(i)     All Claims for aiding and/or abetting breach of fiduciary duty, breach of duty loyalty or due care, or any other unlawful act;

(j)     All Clams for usurpation of a corporate opportunity belonging to either of the Debtors, including in relation to Acis CLO 2017-7, Ltd and any other Acis CLOs;

(k)     All claims for tortious interference, including in relation to Universal-Investment-Luxembourg S.A. and BayVK R2 Lux S.A., SICAV-FIS;

(l)     All Claims against Highland for the turnover of Estate Assets, including Estate property that the Chapter 11 Trustee may use, sell or lease under section 363 of the Bankruptcy Code including, without limitation, any intellectual property rights or Assets owned by the Debtors or Estate, as well as the turnover of any books, documents, records and papers relating to the Debtors' property or financial affairs;

(m)     All Claims against Highland for the unauthorized use of Estate Assets including, without limitation, any intellectual property rights or Assets owned by the Debtors or Estate;

(n)     All Claims, rights or remedies for Equitable Subordination or Recharacterization of any Claim by Highland against the Debtors, Chapter 11 Trustee, or Estate;

(o)     All Claims based on alter ego or rights to pierce the corporate veil of Acis LP as to any Person, including as against Highland or any Affiliates thereof, James D. Dondero, Mark K. Okada, or any other officers, directors, equity interest holders, or Persons otherwise in control of Acis LP; and,

(p)     All Claims based on alter ego or rights to pierce the corporate veil of Highland as to any Person, including as against any Affiliates of Highland, James D. Dondero,

Mark K. Okada, or any other officers, directors, equity interest holders, or Persons otherwise in control of Highland.

4.    HCLOF Claims.  All Estate Claims against HCLOF are reserved, retained and preserved for the benefit of the Estate and Reorganized Debtor, including without limitation all such Estate Claims asserted by the Chapter 11 Trustee in the Highland Adversary and the Trustee's Adversary.  The Estate Claims against HCLOF shall include all Estate Claims set forth in paragraph 2 above, including without limitation, the following:

(a)    All such Claims against HCLOF asserted by the Chapter 11 Trustee or Estate in, or which could be asserted based on the facts or transactions alleged in, the Highland Adversary;

(b)    All such Claims against HCLOF asserted by the Chapter 11 Trustee or Estate in, or which could be asserted based on the facts or transactions alleged in, the Trustee's Adversary;

(c)    All such Claims and Defenses asserted by the Chapter 11 Trustee or Estate, or which could be asserted by the Chapter 11 Trustee or Estate, based on the facts or transactions alleged in any other adversary proceedings or Claim Objections filed by the Chapter 11 Trustee or Estate;

(d)    All Avoidance Actions against HCLOF;

(e)    All Claims for breach of the PMAs or the Indentures;

(f)    All Claims for breach of fiduciary duty or duty of loyalty or due care owed to the Debtors or Chapter 11 Trustee;

(g)    All Claims for aiding and/or abetting breach of fiduciary duty, breach of duty loyalty or due care, or any other unlawful act;

(h)    All Clams for usurpation of a corporate opportunity belonging to either of the Debtors, including in relation to Acis CLO 2017-7, Ltd and any other Acis CLOs;

(i)    All Claims against HCLOF for the turnover of Estate Assets, including Estate property that the Chapter 11 Trustee may use, sell or lease under section 363 of the Bankruptcy Code including, without limitation, any intellectual property rights or Assets owned by the Debtors or Estate, as well as the turnover of any books, documents, records and papers relating to the Debtors' property or financial affairs;

(j)    All Claims against HCLOF for the unauthorized use of Estate Assets including, without limitation, any intellectual property rights or Assets owned by the Debtors or Estate;

(k)    All Claims, rights or remedies for Equitable Subordination or Recharacterization of any Claim by HCLOF against the Debtors, Chapter 11 Trustee, or Estate; and,

(l)    All Claims based on alter ego or rights to pierce the corporate veil of HCLOF as to any Person, including as against any Affiliates of HCLOF or Highland, William

Scott, Heather Bestwick, or any other officers, directors, equity interest holders, or Persons otherwise in control of HCLOF.

5. <u>Highland HCF Advisor, Ltd. Claims</u>. All Estate Claims against Highland HCF Advisor, Ltd. ("<u>Highland HCF</u>") are reserved, retained and preserved for the benefit of the Estate and Reorganized Debtor, including without limitation all such Estate Claims asserted by the Chapter 11 Trustee in the Highland Adversary. The Estate Claims against Highland HCF shall include all Estate Claims set forth in paragraph 2 above, including without limitation, the following:

(a)    All such Claims against Highland HCF asserted by the Chapter 11 Trustee or Estate in, or which could be asserted based on the facts or transactions alleged in, the Highland Adversary;

(b)    All such Claims against Highland HCF asserted by the Chapter 11 Trustee or Estate in, or which could be asserted based on the facts or transactions alleged in, the Trustee's Adversary;

(c)    All such Claims and Defenses asserted by the Chapter 11 Trustee or Estate, or which could be asserted by the Chapter 11 Trustee or Estate, based on the facts or transactions alleged in any other adversary proceedings or Claim Objections filed by the Chapter 11 Trustee or Estate;

(d)    All Avoidance Actions against Highland HCF;

(e)    All Claims for breach of fiduciary duty or duty of loyalty or due care owed to the Debtors or Chapter 11 Trustee;

(f)    All Claims for aiding and/or abetting breach of fiduciary duty, breach of duty loyalty or due care, or any other unlawful act;

(g)    All Clams for usurpation of a corporate opportunity belonging to either of the Debtors, including in relation to Acis CLO 2017-7, Ltd and any other Acis CLOs;

(h)    All Claims against Highland HCF for the turnover of Estate Assets, including Estate property that the Chapter 11 Trustee may use, sell or lease under section 363 of the Bankruptcy Code including, without limitation, any intellectual property rights or Assets owned by the Debtors or Estate, as well as the turnover of any books, documents, records and papers relating to the Debtors' property or financial affairs;

(i)    All Claims against Highland HCF for the unauthorized use of Estate Assets including, without limitation, any intellectual property rights or Assets owned by the Debtors or Estate;

(j)    All Claims, rights or remedies for Equitable Subordination or Recharacterization of any Claim by Highland HCF against the Debtors, Chapter 11 Trustee, or Estate; and,

(k)    All Claims based on alter ego or rights to pierce the corporate veil of Highland HCF as to any Person, including as against any Affiliates of Highland HCF or Highland, or any other officers, directors, equity interest holders, or Persons otherwise in control

of Highland HCF.

6.    <u>Highland CLO Management, Ltd. Claims</u>.  All Estate Claims against Highland CLO Management, Ltd. ("<u>Highland CLOM</u>") are reserved, retained and preserved for the benefit of the Estate and Reorganized Debtor, including without limitation all such Estate Claims asserted by the Chapter 11 Trustee in the Highland Adversary.  The Estate Claims against Highland CLOM shall include all Estate Claims set forth in paragraph 2 above, including without limitation the following:

(a)    All such Claims against Highland CLOM asserted by the Chapter 11 Trustee or Estate in, or which could be asserted based on the facts or transactions alleged in, the Highland Adversary;

(b)    All such Claims against Highland CLOM asserted by the Chapter 11 Trustee or Estate in, or which could be asserted based on the facts or transactions alleged in, the Trustee's Adversary;

(c)    All such Claims and Defenses asserted by the Chapter 11 Trustee or Estate, or which could be asserted by the Chapter 11 Trustee or Estate, based on the facts or transactions alleged in any other adversary proceedings or Claim Objections filed by the Chapter 11 Trustee or Estate;

(d)    All Avoidance Actions against Highland CLOM;

(e)    All Claims for breach of fiduciary duty or duty of loyalty or due care owed to the Debtors or Chapter 11 Trustee;

(f)    All Claims for aiding and/or abetting breach of fiduciary duty, breach of duty loyalty or due care, or any other unlawful act;

(g)    All Clams for usurpation of a corporate opportunity belonging to either of the Debtors, including in relation to Acis CLO 2017-7, Ltd and any other Acis CLOs;

(h)    All Claims against Highland CLOM for the turnover of Estate Assets, including Estate property that the Chapter 11 Trustee may use, sell or lease under section 363 of the Bankruptcy Code including, without limitation, any intellectual property rights or Assets owned by the Debtors or Estate, as well as the turnover of any books, documents, records and papers relating to the Debtors' property or financial affairs;

(i)    All Claims against Highland CLOM for the unauthorized use of Estate Assets including, without limitation, any intellectual property rights or Assets owned by the Debtors or Estate;

(j)    All Claims, rights or remedies for Equitable Subordination or Recharacterization of any Claim by Highland CLOM against the Debtors, Chapter 11 Trustee, or Estate; and,

(k)    All Claims based on alter ego or rights to pierce the corporate veil of Highland CLOM as to any Person, including as against any Affiliates of Highland CLOM or Highland, or any other officers, directors, equity interest holders, or Persons otherwise in control of Highland CLOM.

7.     CLO Holdco, Ltd. Claims.  All Estate Claims against CLO Holdco, Ltd. ("CLO Holdco") are reserved, retained and preserved for the benefit of the Estate and Reorganized Debtor, including without limitation all such Estate Claims asserted by the Chapter 11 Trustee in the Trustee's Adversary.  The Estate Claims against CLO Holdco shall include all Estate Claims set forth in paragraph 2 above, including without limitation, the following:

(a)     All such Claims against CLO Holdco asserted by the Chapter 11 Trustee or Estate in, or which could be asserted based on the facts or transactions alleged in, the Highland Adversary;

(b)     All such Claims against CLO Holdco asserted by the Chapter 11 Trustee or Estate in, or which could be asserted based on the facts or transactions alleged in, the Trustee's Adversary;

(c)     All such Claims and Defenses asserted by the Chapter 11 Trustee or Estate, or which could be asserted by the Chapter 11 Trustee or Estate, based on the facts or transactions alleged in any other adversary proceedings or Claim Objections filed by the Chapter 11 Trustee or Estate;

(d)     All Avoidance Actions against CLO Holdco;

(e)     All Claims for breach of fiduciary duty or duty of loyalty or due care owed to the Debtors or Chapter 11 Trustee;

(f)     All Claims for aiding and/or abetting breach of fiduciary duty, breach of duty loyalty or due care, or any other unlawful act;

(g)     All Clams for usurpation of a corporate opportunity belonging to either of the Debtors, including in relation to Acis CLO 2017-7, Ltd and any other Acis CLOs;

(h)     All Claims against CLO Holdco for the turnover of Estate Assets, including Estate property that the Chapter 11 Trustee may use, sell or lease under section 363 of the Bankruptcy Code including, without limitation, any intellectual property rights or Assets owned by the Debtors or Estate, as well as the turnover of any books, documents, records and papers relating to the Debtors' property or financial affairs;

(i)     All Claims against CLO Holdco for the unauthorized use of Estate Assets including, without limitation, any intellectual property rights or Assets owned by the Debtors or Estate;

(j)     All Claims, rights or remedies for Equitable Subordination or Recharacterization of any Claim by Highland against the Debtors, Chapter 11 Trustee, or Estate; and

(k)     All Claims based on alter ego or rights to pierce the corporate veil of CLO Holdco as to any Person, including as against any Affiliates of CLO Holdco or Highland, or any other officers, directors, equity interest holders, or Persons otherwise in control of CLO Holdco.

8.     Neutra, Ltd. Claims.  All Estate Claims against Neutra, Ltd. ("Neutra") are reserved, retained and preserved for the benefit of the Estate and Reorganized Debtor, including without limitation all such Estate Claims asserted by the Chapter 11 Trustee in the

Trustee's Adversary.  The Estate Claims against Neutra shall include all Estate Claims set forth in paragraph 2 above, including without limitation the following:

(a)    All such Claims against Neutra asserted by the Chapter 11 Trustee or Estate in, or which could be asserted based on the facts or transactions alleged in, the Highland Adversary;

(b)    All such Claims against Neutra asserted by the Chapter 11 Trustee or Estate in, or which could be asserted based on the facts or transactions alleged in, the Trustee's Adversary;

(c)    All such Claims and Defenses asserted by the Chapter 11 Trustee or Estate, or which could be asserted by the Chapter 11 Trustee or Estate, based on the facts or transactions alleged in any other adversary proceedings or Claim Objections filed by the Chapter 11 Trustee or Estate;

(d)    All Avoidance Actions against Neutra;

(e)    All Claims for breach of fiduciary or duty of loyalty or due care owed to the Debtors or Chapter 11 Trustee;

(f)    All Claims for aiding and/or abetting breach of fiduciary duty, breach of duty loyalty or due care, or any other unlawful act;

(g)    All Clams for usurpation of a corporate opportunity belonging to either of the Debtors, including in relation to Acis CLO 2017-7, Ltd and any other Acis CLOs;

(h)    All Claims against Neutra for the turnover of Estate Assets, including Estate property that the Chapter 11 Trustee may use, sell or lease under section 363 of the Bankruptcy Code including, without limitation, any intellectual property rights or Assets owned by the Debtors or Estate, as well as the turnover of any books, documents, records and papers relating to the Debtors' property or financial affairs;

(i)    All Claims against Neutra for the unauthorized use of Estate Assets including, without limitation, any intellectual property rights or Assets owned by the Debtors or Estate;

(j)    All Claims, rights or remedies for Equitable Subordination or Recharacterization of any Claim by Neutra against the Debtors, Chapter 11 Trustee, or Estate;

(k)    All Claims based on alter ego or rights to pierce the corporate veil of Acis LP as to any Person, including as against Neutra, Highland, or any Affiliates thereof, James D. Dondero, Mark K. Okada, or any other officers, directors, equity interest holders, or Persons otherwise in control of Acis LP; and

(l)    All Claims based on alter ego or rights to pierce the corporate veil of Neutra as to any Person, including as against any Affiliates of Neutra or Highland, or any other officers, directors, equity interest holders, or Persons otherwise in control of Neutra.

9.    <u>Claims against Issuers, Co-Issuers and Indenture Trustee</u>.  All Estate Claims against CLO-3, CLO-4, CLO-5, and CLO-6 (collectively, the "<u>Issuers</u>"), Acis CLO 2014-3 LLC,

Acis CLO 2014-4 LLC, Acis CLO 2014-5 LLC, and Acis CLO 2015-6 LLC (collectively, the "Co-Issuers"), and the Indenture Trustee are reserved, retained and preserved for the benefit of the Estate and Reorganized Debtor, including without limitation all such Estate Claims asserted by the Chapter 11 Trustee in the Trustee's Adversary. The Estate Claims against the Issuers, Co-Issuers and/or Indenture Trustee shall include all Estate Claims set forth in paragraph 2 above, including without limitation the following:

(a) All such Claims against the Issuers, Co-Issuers, and/or Indenture Trustee asserted by the Chapter 11 Trustee or Estate in, or which could be asserted based on the facts or transactions alleged in, the Highland Adversary;

(b) All such Claims against the Issuers, Co-Issuers, and/or Indenture Trustee asserted by the Chapter 11 Trustee or Estate in, or which could be asserted based on the facts or transactions alleged in, the Trustee's Adversary;

(c) All such Claims and Defenses asserted by the Chapter 11 Trustee or Estate, or which could be asserted by the Chapter 11 Trustee or Estate, based on the facts or transactions alleged in any other adversary proceedings or Claim Objections filed by the Chapter 11 Trustee or Estate;

(d) All Avoidance Actions against the Issuers, Co-Issuers and/or Indenture Trustee;

(e) All Claims for breach of the Indentures, PMAs or any other agreements between Acis LP and the Issuers, Co-Issuers, and/or Indenture Trustee;

(f) All Claims for breach of fiduciary duty or duty of loyalty or due care owed to the Debtors or Chapter 11 Trustee;

(g) All Claims for aiding and/or abetting breach of fiduciary duty, breach of duty loyalty or due care, or any other unlawful act;

(h) All Clams for usurpation of a corporate opportunity belonging to either of the Debtors, including in relation to Acis CLO 2017-7, Ltd and any other Acis CLOs;

(i) All Claims against the Issuers, Co-Issuers and/or Indenture Trustee for the turnover of Estate Assets, including Estate property that the Chapter 11 Trustee may use, sell or lease under section 363 of the Bankruptcy Code including, without limitation, any intellectual property rights or Assets owned by the Debtors or Estate, as well as the turnover of any books, documents, records and papers relating to the Debtors' property or financial affairs;

(j) All Claims against the Issuers, Co-Issuers and/or Indenture Trustee for the unauthorized use of Estate Assets including, without limitation, any intellectual property rights or Assets owned by the Debtors or Estate; and,

(k) All Claims, rights or remedies for Equitable Subordination or Recharacterization of any Claim by the Issuers or Co-Issuers against the Debtors, Chapter 11 Trustee, or Estate.

10. Highland Affiliate Claims. All Estate Claims against any Affiliates of Highland are reserved, retained and preserved for the benefit of the Estate and Reorganized Debtor,

including without limitation all such Estate Claims asserted by the Chapter 11 Trustee in the Highland Adversary and the Trustee's Adversary. The Estate Claims against any Affiliates of Highland shall include all Estate Claims set forth in paragraph 2 above, including without limitation the following:

(a) All such Claims against any Highland Affiliate asserted by the Chapter 11 Trustee or Estate in, or which could be asserted based on the facts or transactions alleged in, the Highland Adversary;

(b) All such Claims against any Highland Affiliate asserted by the Chapter 11 Trustee or Estate in, or which could be asserted based on the facts or transactions alleged in, the Trustee's Adversary;

(c) All such Claims and Defenses asserted by the Chapter 11 Trustee or Estate, or which could be asserted by the Chapter 11 Trustee or Estate, based on the facts or transactions alleged in any other adversary proceedings or Claim Objections filed by the Chapter 11 Trustee or Estate;

(d) All Avoidance Actions against any Highland Affiliate;

(e) All Claims for breach of fiduciary duty or duty of loyalty or due care owed to the Debtors or Chapter 11 Trustee;

(f) All Claims for aiding and/or abetting breach of fiduciary duty, breach of duty loyalty or due care, or any other unlawful act;

(g) All Clams for usurpation of a corporate opportunity belonging to either of the Debtors, including in relation to Acis CLO 2017-7, Ltd and any other Acis CLOs;

(h) All Claims against any Highland Affiliate for the turnover of Estate Assets, including Estate property that the Chapter 11 Trustee may use, sell or lease under section 363 of the Bankruptcy Code including, without limitation, any intellectual property rights or Assets owned by the Debtors or Estate, as well as the turnover of any books, documents, records and papers relating to the Debtors' property or financial affairs;

(i) All Claims against any Highland Affiliate for the unauthorized use of Estate Assets including, without limitation, any intellectual property rights or Assets owned by the Debtors or Estate;

(j) All Claims, rights or remedies for Equitable Subordination or Recharacterization of any Claim by any Highland Affiliate against the Debtors, Chapter 11 Trustee, or Estate;

(k) All Claims based on alter ego or rights to pierce the corporate veil of Acis LP as to any Person, including as against Highland, Neutra, or any Affiliates thereof, James D. Dondero, Mark K. Okada, or any other officers, directors, equity interest holders, or Persons otherwise in control of Acis LP; and,

(l) All Claims based on alter ego or rights to pierce the corporate veil of any Highland Affiliate as to any Person, including as against any other Affiliates of Highland or any officers, directors, equity interest holders, or Persons otherwise in control of any Highland

Affiliates.

11.     Dondero Claims.  All Estate Claims as defined in paragraph 2 above against James D. Dondero, individually, are hereby reserved, retained and preserved for the benefit of the Estate and Reorganized Debtor, including without limitation all such Estate Claims against James D. Dondero for fraud, constructive fraud, breach of fiduciary duty, breach of duty of loyalty or due care, aiding and abetting breach of fiduciary duty, aiding and abetting breach of duty of loyalty or due care, self-dealing, ultra vires, conversion, usurpation of corporate opportunity, including in relation to Acis CLO 2017-7, Ltd and any other Acis CLOs, tortious interference, including in relation to Universal-Investment-Luxembourg S.A. and BayVK R2 Lux S.A., SICAV-FIS, conflict of interest, negligence, gross negligence, all Avoidance Actions, breach of contract, breach of the Shared Services Agreement, breach of the Sub-Advisory Agreement, breach of the Debtors' limited partnership agreement or limited liability company agreement, conspiracy to commit any unlawful act, and aiding and abetting any unlawful act, as well as any Claim to pierce the corporate veil of any entity to hold James D. Dondero individually liable.

12.     Okada Claims.  All Estate Claims as defined in paragraph 2 above against Mark K. Okada, individually, are hereby reserved, retained and preserved for the benefit of the Estate and Reorganized Debtor, including without limitation all such Estate Claims against Mark K. Okada for fraud, constructive fraud, breach of fiduciary duty, breach of duty of loyalty or due care, aiding and abetting breach of fiduciary duty, self-dealing, ultra vires, conversion, usurpation of corporate opportunity, including in relation to Acis CLO 2017-7, Ltd and any other Acis CLOs, tortious interference, including in relation to Universal-Investment-Luxembourg S.A. and BayVK R2 Lux S.A., SICAV-FIS, conflict of interest, negligence, gross negligence, all Avoidance Actions, breach of contract, breach of the Shared Services Agreement, breach of the Sub-Advisory Agreement, breach of the Debtors' limited partnership agreement or limited liability company agreement, conspiracy to commit any unlawful act, and aiding and abetting any unlawful act, as well as any Claim to pierce the corporate veil of any entity to hold Mark K. Okada individually liable.

13.     Preference Claims.  All Avoidance Actions pursuant to section 547 of the Bankruptcy Code against any Person are hereby reserved, retained and preserved for the benefit of the Estate and Reorganized Debtor for any payment made to any Person by either of the Debtors within ninety (90) days of the Petition Date (which was January 30, 2018), or made by either of the Debtors to any insider within one (1) year of the Petition Date.  A non-exhaustive list of Persons who are believed to have received payments from either of the Debtors during the 90-day preference period, and the one-year preference period for Insiders, is attached to this **Exhibit "A"** as **Schedule "1"**.  The Plan reserves, retains and preserves for the benefit of the Estate and Reorganized Debtor all potential Claims arising out of or relating to the transfers reflected in **Schedule "1"**, including all Avoidance Actions pursuant to section 547 of the Bankruptcy Code.  All rights and remedies are also reserved. retained and preserved with respect to the transfers reflected in **Schedule "1"** pursuant to section 550 of the Bankruptcy Code.

**Schedule "1"** reflects transfers made by the Debtors during the 90 days prior to the Petition Date and transfers made by the Debtors to any insiders within one (1) year of the Petition Date.  While the Plan reserves, retains and preserves all Avoidance Actions relating to the transfers reflected in **Schedule "1"**, the Chapter 11 Trustee recognizes that certain of these transfers may not constitute a preferential transfer pursuant to section 547(b) of the Bankruptcy Code as a transfer made in the ordinary course of business transactions or based upon new

value subsequently given by the transferee. Consequently, the listing of a payment on **Schedule "1"** does not necessarily mean that a transferee will ever be sued to avoid and recover the payment, the transfer, or the value thereof, but only that the Plan reserves, retains and preserves all rights (including Avoidance Actions) as to that payment.

14.    Claims Against Officers, Managers and Members.  All Estate Claims as defined in paragraph 2 above are hereby reserved, retained and preserved for the benefit of the Estate and Reorganized Debtor against all present and past officers, employees, members and managers of the Debtors, including all such Estate Causes of Action based on breach of fiduciary duty, aiding and abetting breach of fiduciary duty, breach of duty of loyalty or due care, aiding and abetting breach of duty of loyalty or due care, self-dealing, usurpation of corporate opportunity, gross negligence or conspiracy.  Without limiting the generality of the foregoing, this shall include all D&O Claims as against any present or former officer, director, employee, member, manager, or partner.

15.    Retention of Claims Against Specific Persons or Categories of Persons.  In addition to the foregoing, all Estate Claims as defined in paragraph 2 above are hereby reserved, retained and preserved for the benefit of the Estate and Reorganized Debtor against the following Persons:

(a)    William Scott;

(b)    Heather Bestwick;

(c)    Any other Person who may be so named at a later date by the Reorganized Debtoree.

16.    Counterclaims.  All Estate Claims as defined in paragraph 2 above are reserved, retained and preserved for the benefit of the Estate and Reorganized Debtor both as a basis for an affirmative recovery against the Person against whom such Claims are asserted and as a counterclaim or offset against any Person who asserts a Claim against the Estate or Reorganized Debtor.

17.    Piercing the Corporate Veil.  With respect to all Estate Claims against any Person, all rights to pierce or ignore the corporate veil are hereby reserved, retained and preserved for the benefit of the Estate and the Reorganized Debtor.  Without limiting the generality of the foregoing, this shall include: (a) any right to pierce the corporate veil, including reverse piercing, on any theory or basis, including alter ego or any theory of sham to perpetrate a fraud, and (b) any Claim or basis to pierce the corporate veil of any entity with respect to establishing personal liability against James D. Dondero or Mark K. Okada.

18.    Avoidance Actions.  All Avoidance Actions are hereby reserved, retained and preserved as to all Persons.  The reservation, retention and preservation of such Avoidance Actions shall include the reservation, retention and preservation for the benefit of the Estate and Reorganized Debtor of all rights and remedies pursuant to section 550 of the Bankruptcy Code.

19.    Estate Defenses.  All Estate Defenses are hereby reserved, retained and preserved in favor of the Estate and Reorganized Debtor as against any Person asserting any Claim against the Estate.  This includes asserting all Estate Claims as an offset to, or counterclaim or right of recoupment against, any Person asserting a Claim against the Estate. All defenses and affirmative defenses pursuant to applicable law are hereby reserved, retained

and preserved for the benefit of the Estate and the Reorganized Debtor, including without limitation, accord and satisfaction, assumption of risk, contributory negligence, duress, estoppel, failure of consideration, fraud, illegality, laches, license, payment, release, *res judicata*, collateral estoppel, statute of frauds, statute of limitations or response, set off, recoupment, waiver, and all other defenses to Claims under the Bankruptcy Code, including under sections 502(b)(4) and 502(d).

20.     <u>Equitable Subordination</u>.  All rights or remedies for Equitable Subordination are hereby reserved, retained and preserved in favor of the Estate and Reorganized Debtor against any Person asserting any Claim against the Estate, including all such rights or remedies pursuant to section 510(c) of the Bankruptcy Code.  Without limiting the generality of the foregoing, this shall include all rights and remedies to Equitable Subordination as to any Claim asserted by Highland, any Affiliates of Highland, or any officers, directors, employees or equity interest owners of the Debtors, Highland, or any Affiliates thereof.

21.     <u>Recharacterization</u>.  All rights or remedies to recharacterize any Claim as an equity interest in either of the Debtors are hereby reserved, retained and preserved in favor of the Estate and Reorganized Debtor against any Person asserting any Claim against the Estate.  Without limiting the generality of the foregoing, this shall include all rights and remedies to recharacterize any Claim asserted by Highland, any Affiliates of Highland, or any officers, directors, employees or equity interest owners of the Debtors, Highland, or any Affiliates thereof.

Schedule 1 to Exhibit "A" to

**Second Amended Joint Plan for Acis Capital Management, LP and Acis Capital Management GP, LLC**

| NAME | ADDRESS | DATE OF PAYMENT | PAYMENT AMOUNT | REASON FOR PAYMENT ON SCHEDULES |
|------|---------|-----------------|----------------|--------------------------------|
| **Payments within 90 Days of Petition Date** | | | | |
| Highland Capital Management, LP | 300 Crescent Court, Ste. 700 Dallas, TX 75208 | 11/2/2017 | $234,013.63 | Services |
| Highland Capital Management, LP | 300 Crescent Court, Ste. 700 Dallas, TX 75208 | 11/3/2017 | $941,958.57 | Services |
| Highland Capital Management, LP | 300 Crescent Court, Ste. 700 Dallas, TX 75208 | 12/8/2017 | $89,655.14 | Services |
| David Simek | 31 Woodacres Road Brookville, NY 11545 | 11/15/2017 | $2,068.13 | Services |
| David Simek | 31 Woodacres Road Brookville, NY 11545 | 11/30/2017 | $24,266.71 | Services |
| David Simek | 31 Woodacres Road Brookville, NY 11545 | 12/12/2017 | $1,718.79 | Services |
| David Simek | 31 Woodacres Road Brookville, NY 11545 | 12/29/2017 | $25,000.00 | Services |
| FINRA | 1735 K Street, NW Washington, DC 20006 | 11/22/2017 | $70.00 | Suppliers or Vendors |
| Highland CLO Management, Ltd. | PO Box 309, Ugland House Grand Cayman, KY1-1104, Cayman Islands | 12/19/2017 | $2,830,459.22 | Services |
| **Payments to Insiders within One Year of Petition Date** | | | | |
| Highland Capital Management, LP | 300 Crescent Court, Ste. 700 Dallas, TX 75208 | 2/1/2017 | $976,688.47 | Contractual Payment |
| Highland Capital Management, LP | 300 Crescent Court, Ste. 700 Dallas, TX 75208 | 2/1/2017 | $1,096,033.37 | Services |
| Highland Capital Management, LP | 300 Crescent Court, Ste. 700 Dallas, TX 75208 | 2/2/2017 | $3,574.80 | Expense Reimbursement |
| Highland Capital Management, LP | 300 Crescent Court, Ste. 700 Dallas, TX 75208 | 2/14/2017 | $67.44 | Expense Reimbursement |
| Highland Capital Management, LP | 300 Crescent Court, Ste. 700 Dallas, TX 75208 | 4/17/2017 | $315,574.30 | Services |
| Highland Capital Management, LP | 300 Crescent Court, Ste. 700 Dallas, TX 75208 | 4/18/2017 | $438,497.51 | Services |

Schedule 1 to Exhibit "A" to
**Second Amended Joint Plan for Acis Capital Management, LP and Acis Capital Management GP, LLC**

| NAME | ADDRESS | DATE OF PAYMENT | PAYMENT AMOUNT | REASON FOR PAYMENT ON SCHEDULES |
|---|---|---|---|---|
| Highland Capital Management, LP | 300 Crescent Court, Ste. 700 Dallas, TX 75208 | 4/18/2017 | $375,855.01 | Contractual Payment |
| Highland Capital Management, LP | 300 Crescent Court, Ste. 700 Dallas, TX 75208 | 4/19/2017 | $330,249.69 | Services |
| Highland Capital Management, LP | 300 Crescent Court, Ste. 700 Dallas, TX 75208 | 5/1/2017 | $974,426.41 | Services |
| Highland Capital Management, LP | 300 Crescent Court, Ste. 700 Dallas, TX 75208 | 5/31/2017 | $2,809,518.47 | Unsecured loan repayments including interest |
| Highland Capital Management, LP | 300 Crescent Court, Ste. 700 Dallas, TX 75208 | 5/31/2017 | $581,036.15 | Services |
| Highland Capital Management, LP | 300 Crescent Court, Ste. 700 Dallas, TX 75208 | 7/18/2017 | $373,167.08 | Contractual Payment |
| Highland Capital Management, LP | 300 Crescent Court, Ste. 700 Dallas, TX 75208 | 8/1/2017 | $971,603.02 | Contractual Payment |
| Highland Capital Management, LP | 300 Crescent Court, Ste. 700 Dallas, TX 75208 | 8/7/2017 | $1,339,422.12 | Services |
| Highland Capital Management, LP | 300 Crescent Court, Ste. 700 Dallas, TX 75208 | 8/16/2017 | $53.41 | Expense Reimbursement |
| Highland Capital Management, LP | 300 Crescent Court, Ste. 700 Dallas, TX 75208 | 10/18/2017 | $372,872.82 | Contractual Payment |
| Highland Capital Management, LP | 300 Crescent Court, Ste. 700 Dallas, TX 75208 | 10/18/2017 | $728,702.26 | Services |
| Highland Capital Management, LP | 300 Crescent Court, Ste. 700 Dallas, TX 75208 | 10/24/2017 | $501,979.18 | Unsecured loan repayments including interest |
| Highland Capital Management, LP | 300 Crescent Court, Ste. 700 Dallas, TX 75208 | 10/25/2017 | $46,648.82 | Expense Reimbursement |
| Highland Capital Management, LP | 300 Crescent Court, Ste. 700 Dallas, TX 75208 | 10/25/2017 | $67,966.85 | Expense Reimbursement |
| Highland Capital Management, LP | 300 Crescent Court, Ste. 700 Dallas, TX 75208 | 11/1/2017 | $967,223.91 | Contractual Payment |

# EXHIBIT B

## TO SECOND AMENDED JOINT PLAN FOR ACIS CAPITAL MANAGEMENT, LP AND ACIS CAPITAL MANAGEMENT GP, LLC

**[EXECUTORY CONTRACTS ASSUMED UNDER THE PLAN]**

**EXHIBIT B**
**Executory Contracts and Unexpired Leases**
**to Be Assumed by the Trustee**

| Party | Contract Description | Contract Date | Cure Amount |
|---|---|---|---|
| Acis CLO 2013-1 Chemical Holdings, LLC<br>1209 Orange Street<br>Wilmington, DE 19801 | Limited Liability Company Agreement | October 28, 2016 | $0 |
| Acis CLO 2013-1, Ltd.<br>c/o Appleby Trust<br>Clifton House 75 Fort St., P.O. Box 1350<br>Grand Cayman, Cayman Islands KY1-1108 | Limited Liability Company Agreement | October 28, 2016 | $0 |
| Acis CLO 2013-1 Ltd.<br>c/o Appleby Trust<br>Clifton House 75 Fort St., P.O. Box 1350<br>Grand Cayman, Cayman Islands KY1-1108 | Collateral Administration Agreement | March 18, 2013 | $0 |
| Acis CLO 2013-1 Ltd.<br>c/o Appleby Trust<br>Clifton House 75 Fort St., P.O. Box 1350<br>Grand Cayman, Cayman Islands KY1-1108 | Portfolio Management Agreement | March 18, 2013 | $0 |
| Acis CLO 2013-1 Ltd.<br>c/o Appleby Trust<br>Clifton House 75 Fort St., P.O. Box 1350<br>Grand Cayman, Cayman Islands KY1-1108 | Indenture | March 18, 2013 | $0 |
| Acis CLO 2013-1 LLC<br>850 Library Ave., Suite 204<br>Newark, DE 19711 | Indenture | March 18, 2013 | $0 |
| U.S. Bank National Association<br>Attn: Michael Zak<br>60 Livingston Avenue<br>EP-MN-WS3D<br>Saint Paul, MN 55107 | Indenture | March 18, 2013 | $0 |

**EXHIBIT B**
**Executory Contracts and Unexpired Leases**
**to Be Assumed by the Trustee**

| Party | Contract Description | Contract Date | Cure Amount |
|---|---|---|---|
| Acis CLO 2013-1 Ltd.<br>c/o Appleby Trust<br>Clifton House 75 Fort St., P.O. Box 1350<br>Grand Cayman, Cayman Islands KY1-1108 | Supplemental Indenture | February 26, 2014 | $0 |
| Acis CLO 2013-1 LLC<br>850 Library Ave., Suite 204<br>Newark, DE 19711 | Supplemental Indenture | February 26, 2014 | $0 |
| U.S. Bank National Association<br>Attn: Michael Zak<br>60 Livingston Avenue<br>EP-MN-WS3D<br>Saint Paul, MN 55107 | Supplemental Indenture | February 26, 2014 | $0 |
| Acis CLO 2013-1, Ltd.<br>c/o Appleby Trust<br>Clifton House 75 Fort St., P.O. Box 1350<br>Grand Cayman, Cayman Islands KY1-1108 | Governing Documents<br>(Requested from HCM) | -- | $0 |
| Acis CLO 2013-2 Chemical Holdings, LLC<br>1209 Orange Street<br>Wilmington, DE 19801 | Limited Liability Company Agreement<br>(requested from HCM) | -- | $0 |
| Acis CLO 2013-2 Ltd.<br>c/o Maples FS Limited<br>P,O. Box 1093, Boundary Hall, Cricket Sq<br>Grand Cayman, Cayman Islands KY1-1102 | Limited Liability Company Agreement<br>(requested from HCM) | -- | $0 |
| Acis CLO 2013-2 Ltd.<br>c/o Maples FS Limited<br>P,O. Box 1093, Boundary Hall, Cricket Sq<br>Grand Cayman, Cayman Islands KY1-1102 | Collateral Administration Agreement | October 3, 2013 | $0 |
| Acis CLO 2013-2 Ltd.<br>c/o Maples FS Limited<br>P,O. Box 1093, Boundary Hall, Cricket Sq<br>Grand Cayman, Cayman Islands L Y1-1102 | Portfolio Management Agreement | October 3, 2013 | $0 |

**EXHIBIT B**
**Executory Contracts and Unexpired Leases**
**to Be Assumed by the Trustee**

| Party | Contract Description | Contract Date | Cure Amount |
|---|---|---|---|
| Acis CLO 2013-2 Ltd. c/o Appleby Trust Clifton House 75 Fort St., P.O. Box 1350 Grand Cayman, Cayman Islands KY1-1108 | Indenture | October 3, 2013 | $0 |
| Acis CLO 2013-2 LLC 850 Library Ave., Suite 204 Newark, DE 19711 | Indenture | October 3, 2013 | $0 |
| U.S. Bank National Association Attn: Michael Zak 60 Livingston Avenue EP-MN-WS3D Saint Paul, MN 55107 | Indenture | October 3, 2013 | $0 |
| Acis CLO 2013-2 Ltd. c/o Maples FS Limited P,O. Box 1093, Boundary Hall, Cricket Sq Grand Cayman, Cayman Islands KY1-1102 | Governing Document (requested from HCM) | -- | $0 |
| Acis CLO 2014-3 Chemical Holdings, LLC 1209 Orange Street Wilmington, DE 19801 | Limited Liability Company Agreement | October 28, 2016 | $0 |
| Acis CLO 2014-3 Ltd. c/o Maple FS Limited P.O. Box 1093, Boundary Hall, Cricket Sq Grand Cayman, Cayman Islands KY1-1102 | Limited Liability Company Agreement | October 28, 2016 | $0 |
| Acis CLO 2014-3 Ltd. c/o Maple FS Limited P.O. Box 1093, Boundary Hall, Cricket Sq Grand Cayman, Cayman Islands KY1-1102 | Collateral Administration Agreement | February 25, 2014 | $0 |
| Acis CLO 2014-3 Ltd. c/o Maple FS Limited P.O. Box 1093, Boundary Hall, Cricket Sq Grand Cayman, Cayman Islands KY1-1102 | Portfolio Management Agreement | February 25, 2014 | $0 |

3

**EXHIBIT B**
**Executory Contracts and Unexpired Leases**
**to Be Assumed by the Trustee**

| Party | Contract Description | Contract Date | Cure Amount |
|---|---|---|---|
| Acis CLO 2014-3 Ltd.<br>c/o Appleby Trust<br>Clifton House 75 Fort St., P.O. Box 1350<br>Grand Cayman, Cayman Islands KY1-1108 | Indenture | February 25, 2014 | $0 |
| Acis CLO 2014-3 LLC<br>850 Library Ave., Suite 204<br>Newark, DE 19711 | Indenture | February 25, 2014 | $0 |
| U.S. Bank National Association<br>Attn: Michael Zak<br>60 Livingston Avenue<br>EP-MN-WS3D<br>Saint Paul, MN 55107 | Indenture | February 25, 2014 | $0 |
| Acis CLO 2014-3 Ltd.<br>c/o Maple FS Limited<br>P.O. Box 1093, Boundary Hall, Cricket Sq<br>Grand Cayman, Cayman Islands KY1-1102 | Governing Document<br>(Requested from HCM) | -- | $0 |
| Acis CLO 2014-4 Chemical Holdings, LLC<br>1209 Orange Street<br>Wilmington, DE 19801 | Limited Liability Company Agreement | October 28, 2016 | $0 |
| Acis CLO 2014-4 Ltd.<br>c/o Maple FS Limited<br>P.O. Box 1093, Boundary Hall, Cricket Sq<br>Grand Cayman, Cayman Islands KY1 -1102 | Limited Liability Company Agreement | October 28, 2016 | $0 |
| Acis CLO 2014-4 Ltd.<br>c/o Maple FS Limited<br>P.O. Box 1093, Boundary Hall, Cricket Sq<br>Grand Cayman, Cayman Islands KY1 -1102 | Collateral Administration Agreement | June 5, 2014 | $0 |
| Acis CLO 2014-4 Ltd.<br>c/o Maple FS Limited<br>P.O. Box 1093, Boundary Hall, Cricket Sq<br>Grand Cayman, Cayman Islands KY1-1102 | Portfolio Management Agreement | June 5, 2014 | $0 |

**EXHIBIT B**
**Executory Contracts and Unexpired Leases**
**to Be Assumed by the Trustee**

| Party | Contract Description | Contract Date | Cure Amount |
|---|---|---|---|
| Acis CLO 2014-4 Ltd.<br>c/o Appleby Trust<br>Clifton House 75 Fort St., P.O. Box 1350<br>Grand Cayman, Cayman Islands KY1-1108 | Indenture | June 5, 2014 | $0 |
| Acis CLO 2014-4 LLC<br>850 Library Ave., Suite 204<br>Newark, DE 19711 | Indenture | June 5, 2014 | $0 |
| U.S. Bank National Association<br>Attn: Michael Zak<br>60 Livingston Avenue<br>EP-MN-WS3D<br>Saint Paul, MN 55107 | Indenture | June 5, 2014 | $0 |
| Acis CLO 2014-4 Ltd.<br>c/o Maple FS Limited<br>P.O. Box 1093, Boundary Hall, Cricket Sq<br>Grand Cayman, Cayman Island KY1-1102 | Governing Document<br>(Requested from HCM) | -- | $0 |
| Acis CLO 2014-5 Chemical Holdings, LLC<br>1209 Orange Street<br>Wilmington, DE 19801 | Limited Liability Company Agreement | October 28, 2016 | $0 |
| Acis CLO 2014-5 Ltd.<br>c/o Maple FS Limited<br>P.O. Box 1093, Boundary Hall, Cricket Sq<br>Grand Cayman, Cayman Islands KY1-1102 | Limited Liability Company Agreement | October 28, 2016 | $0 |
| Acis CLO 2014-5 Ltd.<br>c/o Maple FS Limited<br>P.O. Box 1093, Boundary Hall, Cricket Sq<br>Grand Cayman, Cayman Islands KY1-1102 | Collateral Administration Agreement | November 18, 2014 | $0 |
| Acis CLO 2014-5 Ltd.<br>c/o Maple FS Limited<br>P.O. Box 1093, Boundary Hall, Cricket Sq<br>Grand Cayman, Cayman Islands KY1-1102 | Portfolio Management Agreement | November 18, 2014 | $0 |

**EXHIBIT B**
**Executory Contracts and Unexpired Leases**
**to Be Assumed by the Trustee**

| Party | Contract Description | Contract Date | Cure Amount |
|---|---|---|---|
| Acis CLO 2014-5 Ltd.<br>c/o Appleby Trust<br>Clifton House 75 Fort St., P.O. Box 1350<br>Grand Cayman, Cayman Islands KY1-1108 | Indenture | November 18, 2014 | $0 |
| Acis CLO 2014-5 LLC<br>850 Library Ave., Suite 204<br>Newark, DE 19711 | Indenture | November 18, 2014 | $0 |
| U.S. Bank National Association<br>Attn: Michael Zak<br>60 Livingston Avenue<br>EP-MN-WS3D<br>Saint Paul, MN 55107 | Indenture | November 18, 2014 | $0 |
| Acis CLO 2014-5 Ltd.<br>c/o Maple FS Limited<br>P.O. Box 1093, Boundary Hall, Cricket Sq<br>Grand Cayman, Cayman Islands KY1 -1102 | Governing Document<br>(Requested from HCM) | -- | $0 |
| Acis CLO 2015-6 Chemical Holdings, LLC<br>1209 Orange Street<br>Wilmington, DE 19801 | Limited Liability Company Agreement | October 28, 2016 | $0 |
| Acis CLO 2015-6 Ltd.<br>c/o Maple FS Limited<br>P.O. Box 1093, Boundary Hall, Cricket Sq<br>Grand Cayman, Cayman Islands KY1-1102 | Limited Liability Company Agreement | October 28, 2016 | $0 |
| Acis CLO 2015-6 Ltd.<br>c/o Maple FS Limited<br>P.O. Box 1093, Boundary Hall, Cricket Sq<br>Grand Cayman, Cayman Islands KY1-1102 | Collateral Administration Agreement | April 16, 2015 | $0 |
| Acis CLO 2015-6 Ltd.<br>c/o Maple FS Limited<br>P.O. Box 1093, Boundary Hall, Cricket Sq<br>Grand Cayman, Cayman Islands KY1-1102 | Portfolio Management Agreement | April 16, 2015 | $0 |

6

**EXHIBIT B**
**Executory Contracts and Unexpired Leases**
**to Be Assumed by the Trustee**

| Party | Contract Description | Contract Date | Cure Amount |
|---|---|---|---|
| Acis CLO 2015-6 Ltd.<br>c/o Appleby Trust<br>Clifton House 75 Fort St., P.O. Box 1350<br>Grand Cayman, Cayman Islands KY1-1108 | Indenture | April 16, 2015 | $0 |
| Acis CLO 2015-6 LLC<br>850 Library Ave., Suite 204<br>Newark, DE 19711 | Indenture | April 16, 2015 | $0 |
| U.S. Bank National Association<br>Attn: Michael Zak<br>60 Livingston Avenue<br>EP-MN-WS3D<br>Saint Paul, MN 55107 | Indenture | April 16, 2015 | $0 |
| Acis CLO 2015-6 Ltd.<br>P.O. Box 1093, Boundary Hall, Cricket Sq<br>Grand Cayman, KY1-1102, Cayman Islands | Governing Document<br>(Requested from HCM) | -- | $0 |
| Acis CLO Value Fund II (Cayman), LP.<br>P.O. Box 309, Ugland House<br>Grand Cayman, Cayman Islands KY1-1104 | Investment Management Agreement | May 1, 2016 | $0 |
| Acis CLO Value Fund II GP, LLC<br>P.O. Box. 309, Ugland House<br>Grand Cayman, Cayman Islands KY1-1104 | Investment Management Agreement | May 1, 2016 | $0 |
| Acis CLO Value Fund II, LP.<br>300 Crescent Court<br>Suite 700<br>Dallas, TX 75201 | Investment Management Agreement | May 1, 2016 | $0 |
| Acis CLO Value GP, LLC<br>1209 Orange Street<br>Wilmington, DE 19801 | Limited Liability Company Agreement | July 19, 2010 | $0 |
| Acis CLO Value Master Fund II, LP.<br>P.O. Box 309, Ugland House<br>Grand Cayman, Cayman Islands KY1-1104 | Investment Management Agreement | May 1, 2016 | $0 |

**EXHIBIT B**
**Executory Contracts and Unexpired Leases**
**to Be Assumed by the Trustee**

| Party | Contract Description | Contract Date | Cure Amount |
|---|---|---|---|
| Acis CLO Value Fund II (Cayman), L.P. P.O. Box 309, Ugland House Grand Cayman, Cayman Islands KY1-1104 | Third Amended and Restated Exempted Limited Partnership Agreement | May 1, 2016 | $0 |
| Acis CLO Value Master Fund II, L.P. P.O. Box 309, Ugland House Grand Cayman, Cayman Islands KY1-1104 | Third Amended and Restated Exempted Limited Partnership Agreement | May 1, 2016 | $0 |
| Acis Loan Funding, Ltd. 300 Crescent Court Suite 700 Dallas, TX 75201 | FATCA and Non-FATCA Services Agreement | June 23, 2017 | $0 |
| BayVK R2 Lux S.A., SICAV FIS 15 rue de Flaxweiler L-6776 Grevenmacher | Power of Attorney | February 20, 2015 | $0 |
| BayVK R2 Lux S.A., SICAV-FIS 15 rue de Flaxweiler L-6776 Grevenmacher | Agreement for the Outsourcing of the Asset Management of BayVK R2 Lux S.A., SICAV-FIS | February 27, 2015 | $0 |
| BayVK R2 Lux S.A., SICAV-FIS 15 rue de Flaxweiler L-6776 Grevenmacher | Service Level Agreement | February 27, 2015 | $0 |
| BNP Paribas Securities Services Luxembourg Branch 60 Avenue John F. Kennedy 1855 Luxembourg | Power of Attorney 86578 | February 20, 2015 | $0 |
| Hewett's Island CLO 1-R, Ltd. clo Maples Finance Limited P.O. Box 1093, Queensgate House Grand Cayman, Cayman Islands KY1-1102 | Confidentiality Agreement | April 11, 2011 | $0 |

**EXHIBIT B**
**Executory Contracts and Unexpired Leases**
**to Be Assumed by the Trustee**

| Party | Contract Description | Contract Date | Cure Amount |
|---|---|---|---|
| Hewett's Island CLO 1-R, Ltd. *clo* Maples Finance Limited P.O. Box 1093, Queensgate House Grand Cayman, Cayman Islands KY1-1102 | Governing Documents (Requested from HCM) | -- | $0 |
| Hewett's Island CLO 1-R, Ltd. *clo* Maples Finance Limited P.O. Box 1093, Queensgate House Grand Cayman, Cayman Islands KY1-1102 | Management Agreement | July 18, 2011 | $0 |
| Hewett's Island CLO 1-R, Ltd. *clo* Maples Finance Limited P.O. Box 1093, Queensgate House Grand Cayman, Cayman Islands KY1-1102 | Collateral Administration Agreement (Requested from HCM) | November 20, 2007 | $0 |
| Hewett's Island CLO 1-R, Ltd. *clo* Maples Finance Limited P.O. Box 1093, Queensgate House Grand Cayman, Cayman Islands KY1-1102 | Indenture | November 20, 2007 | $0 |
| Deutsche Bank Trust Company Americas 1761 East St. Andrew Place Santa Ana, CA 92705 Attn: CDO Business Unit – Hewett's Island CLO 1-R | Indenture | November 20, 2007 | $0 |
| State Street (Guerney Limited) First Floor, Dorey Court, Admiral Park, St. Peter Port, Guernsey | FATCA and Non-FATCA Services Agreement | June 23, 2017 | $0 |
| The Bank of New York Mellon Trust Co 225 Liberty Street New York, NY 10286 | Collateral Administration Agreement | October 3, 2013 | $0 |

**EXHIBIT B**
**Executory Contracts and Unexpired Leases**
**to Be Assumed by the Trustee**

| Party | Contract Description | Contract Date | Cure Amount |
|---|---|---|---|
| U.S. Bank National Association<br>Attn: Michael Zak<br>60 Livingston Avenue<br>EP-MN-WS3D<br>Saint Paul, MN 55107 | Confidentiality Agreement | March 5, 2014 | $0 |
| Universal-Investment-Luxembourg S.A.<br>15 rue de Flaxweiler<br>L-6776 Grevenmacher | Agreement for the Outsourcing of the Asset Management of BayVK R2 Lux S.A., SICAV-FIS | February 27, 2015 | $0 |
| Universal-Investment-Luxembourg S.A.<br>15 rue de Flaxweiler<br>L-6776 Grevenmacher | Power of Attorney | February 20, 2015 | $0 |
| Universal-Investment-Luxembourg S.A.<br>15 rue de Flaxweiler<br>L-6776 Grevenmacher | Service Level Agreement | February 27, 2015 | $0 |
| Acis Loan Funding, Ltd.<br>First Floor, Dorey Court<br>St. Peter Port, Guernsey GYI 6HJ<br>Channel Islands | Portfolio Services Agreement | August 10, 2015 | $0 |
| Acis Loan Funding, Ltd.<br>First Floor, Dorey Court<br>St. Peter Port, Guernsey GYI 6HJ<br>Channel Islands | Portfolio Management Agreement | December 22, 2016 | $0 |
| Acis Capital Management, LP<br>c/o *PHELANLAW*<br>4214 Woodfin Drive<br>Dallas, Texas 75220 | Amended and Restated Agreement of Limited Partnership | January 21, 2011 | $0 |

**EXHIBIT B**
**Executory Contracts and Unexpired Leases**
<u>**to Be Assumed by the Trustee**</u>

| Party | Contract Description | Contract Date | Cure Amount |
|---|---|---|---|
| Acis Capital Management GP, LLC<br>c/o *PHELANLAW*<br>4214 Woodfin Drive<br>Dallas, Texas 75220 | Amended and Restated Limited Liability Company Agreement | January 21, 2011 | $0 |

For the avoidance of doubt, to the extent not otherwise included above, the Trustee intends to assume any additional executory contracts that relate to the funds set forth below as may be necessary or beneficial to the Reorganized Debtor under the Plan:

1. Acis CLO 2013-1, Ltd.

2. Acis CLO 2013-2, Ltd.

3. Acis CLO 2014-3, Ltd.

4. Acis CLO 2014-4, Ltd.

5. Acis CLO 2014-5, Ltd.

6. Acis CLO 2015-6, Ltd.

7. Acis CLO Value Fund, Ltd.

8. Acis CLO Value Master Fund, Ltd.

9. BayVK R2 Lux S.A., SICAV FIS

10. Hewitt's Island CLO 1-R, Ltd.

11. Acis Loan Funding, Ltd.

The Trustee reserves the right to amend or supplement this Exhibit B.