Jeff P. Prostok – State Bar No. 16352500
J. Robert Forshey – State Bar No. 07264200
Suzanne K. Rosen – State Bar No. 00798518
Matthew G. Maben – State Bar No. 24037008
**FORSHEY & PROSTOK LLP**
777 Main St., Suite 1290
Ft. Worth, TX 76102
Telephone: (817) 877-8855
Facsimile: (817) 877-4151
jprostok@forsheyprostok.com
bforshey@forsheyprostok.com
srosen@forsheyprostok.com
mmaben@forsheyprostok.com

**COUNSEL FOR ROBIN PHELAN,
CHAPTER 11 TRUSTEE**

Rakhee V. Patel – State Bar No. 00797213
Phillip Lamberson – State Bar No. 00794134
Joe Wielebinski – State Bar No. 21432400
Annmarie Chiarello – State Bar No. 24097496
**WINSTEAD PC**
500 Winstead Building
2728 N. Harwood Street
Dallas, Texas 75201
Telephone: (214) 745-5400
Facsimile: (214) 745-5390
rpatel@winstead.com
plamberson@winstead.com
jwielebinski@winstead.com
achiarello@winstead.com

**SPECIAL COUNSEL FOR
ROBIN PHELAN, CHAPTER 11 TRUSTEE**

### IN THE UNITED STATES BANKRUPTCY COURT
### FOR THE NORTHERN DISTRICT OF TEXAS
### DALLAS DIVISION

| | | |
|---|---|---|
| IN RE: | ) | CASE NO. 18-30264-SGJ-11 |
| | ) | CASE NO. 18-30265-SGJ-11 |
| ACIS CAPITAL MANAGEMENT, L.P., | ) | |
| ACIS CAPITAL MANAGEMENT GP, LLC, | ) | (Jointly Administered Under |
| | ) | Case No. 18-30264-SGJ-11) |
| DEBTORS. | ) | |
| | ) | HEARING: October 24, 2018, 1:30 p.m. |

### BRIEF OF ROBIN PHELAN, CHAPTER 11 TRUSTEE, IN
### SUPPORT OF CONFIRMATION OF CHAPTER 11 TRUSTEE'S
### SECOND AMENDED JOINT PLAN OF REORGANIZATION

TO THE HONORABLE STACEY G.C. JERNIGAN,
UNITED STATES BANKRUPTCY JUDGE:

Robin Phelan (the "Trustee"), Chapter 11 Trustee of Acis Capital Management, L.P.

("Acis LP") and Acis Capital Management GP, LLC ("Acis GP") (collectively, the "Debtors") in

these cases, files this Brief of argument and authorities in support of confirmation of the

Trustee's Second Amended Joint Plan of Reorganization. In support of confirmation of the

Plan,[1] the Trustee would respectfully show the Court as follows:

## I. PRELIMINARY STATEMENT

1.      The Trustee submits his Second Amended Joint Plan of Reorganization for

confirmation. The Plan has been substantially revised and carefully tailored to conform to the

Court's ruling of August 30, 2018. This Brief is submitted at this time, in advance of solicitation

and voting on the Plan, so that the Court may make a preliminary determination that the Plan as

written meets all the requirements for confirmation under section 1129 of the Bankruptcy Code,

subject to presentation of supplemental documentation and supporting evidence as necessary

at the confirmation hearing, and except for those requirements that concern future events (like

solicitation and voting), satisfaction of which requirements the Trustee will show at the

appropriate time.

2.      Opposition to the Plan is another attempt by Highland Capital Management

("HCM"), Highland Funding, and their affiliates (collectively, the "Highlands") to destroy Acis and

prevent payment of its creditors. The Highlands have long cultivated a well-deserved reputation

for litigious behavior. If you cross the Highlands they will outspend and outlitigate you until you

capitulate. The Highlands effectively ask this Court to destroy the ongoing business of Acis, cut

off its cash flow, appropriate the going concern value of Acis for the Highlands and ensure that

---

[1] Certain capitalized terms used in this Brief and not otherwise defined herein shall have the definitions ascribed to
them in the Plan.

the Trustee will not have sufficient resources to litigate legitimate causes of action against the Highlands.

3.      The Court is familiar with the inconsistent positions that Highland Funding has taken in this case. First it demanded liquidation of the CLOs, which would have resulted in a cash-out of the subordinated debt held by Highland Funding. When the Trustee proposed a plan which would have cashed out Highland Funding at a premium, Highland Funding reversed course and demanded resets. Now that the Trustee has proposed the plan which provides the opportunity for resets, Highland Funding demands that the portfolio manager of the reset CLOs be HCM.

4.      All of the evidence presented to this Court, including the evidence presented by Highland Funding, makes clear that resets are more economically advantageous to Highland Funding, Acis, its creditors and everyone else involved in this case than a liquidation. Yet, the Highlands continue to pursue an illogical, economically disastrous vendetta against Acis and its creditors, claiming a violation of Highland Funding's contractual rights. The fact is that Highland Funding has no contractual right to dictate the portfolio manager or sub-advisor of reset CLOs, and the Plan should be confirmed.

## II. BACKGROUND

### A.      The Chapter 11 Cases

5.      These bankruptcy cases were initiated on January 30, 2018, when Joshua N. Terry ("Terry"), as petitioning creditor, filed the involuntary petitions against the Debtors. On April 13, 2018, this Court entered the orders for relief and Diane Reed was appointed as interim chapter 7 trustee. On May 11, 2018, the Court converted the cases to chapter 11 on Diane Reed's motion and ordered the appointment of a chapter 11 trustee on Terry's motion. On May 14, 2018, the United States Trustee appointed the Trustee as the chapter 11 trustee of these cases, and the Court approved that appointment as to Acis LP on May 17, 2018, and as to Acis GP on June 12, 2018.

**B.      The Original Plan and Disclosure Statement**

6.      On July 5, 2018, the Trustee filed his *Joint Plan for Acis Capital Management, L.P. and Acis Capital Management GP, LLC* [Docket No. 383] (the "Original Plan"). The Trustee filed an accompanying Disclosure Statement on July 13, 2018 [Docket No. 405]. The Trustee filed his First Modification to the Original Plan on July 13, 2018 [Docket No. 406] and his Second Modification on July 25, 2018 [Docket No. 434].

**C.      The First Amended Plan and Disclosure Statement**

7.      On July 29, 2018, the Trustee filed his First Amended Joint Plan for Acis Capital Management, L.P. and Acis Capital Management GP, LLC [Docket No. 441] (the "First Amended Plan") and his Disclosure Statement Pursuant to Section 1125 of the United States Bankruptcy Code With Respect to the First Amended Joint Plan for Acis Capital Management, L.P. and Acis Capital Management GP, LLC [Docket No. 442] (the "First Disclosure Statement").

8.      The First Amended Plan was actually three separate, alternative plans – Plan A, Plan B, and Plan C. All three plans shared the following features, among others: (a) all three plans assumed the existence of a claim by Highland CLO Funding, Ltd. ("HCLOF" or "Highland Funding") against Acis LP, which claim was separately classified and treated in Class 2 of each plan; (b) two of the plans provided for amendment of certain trust indentures (the "Indentures") pursuant to which a series of collateralized loan obligations ("Acis CLOs") were issued, which were managed by Acis LP; (c) all three plans provided for assumption (and, in the case of Plan A, assumption and assignment) of certain portfolio management agreements ("PMAs") under section 365 of the Bankruptcy Code; and (d) two of the plans provided for a limited continuation of a preliminary injunction that the Court had issued in an adversary proceeding styled *Robin Phelan, Chapter 11 Trustee v. Highland Capital Management, L.P., et al.*, Adversary No. 18-03212-SGJ (the "Trustee's Adversary"), in these cases.

9.      On August 13, 2018, several parties filed objections and reservations of rights in respect of the First Amended Plan.

10.     After conducting hearings on August 20, 23, 27, 28, and 29, 2018, the Court

denied confirmation of the First Amended Plan. *See* Court's Ruling, Aug. 30, 2018, at pp. 1-4

[Docket No. 549]. However, the Court ruled that the Trustee's proposed assumption and

assignment of the PMAs did not violate section 365 of the Bankruptcy Code. *Id.* at pp. 4-6.

Moreover, the Court kept in place the preliminary injunction previously issued in the Trustee's

Adversary. *Id.* at p. 6.

### D.     The Second Amended Plan

11.     On September 28, 2018, the Trustee filed his *Second Amended Joint Plan for*

*Acis Capital Management, L.P. and Acis Capital Management GP, LLC* [Docket No. 612] (as

subsequently amended and modified as of the date of this Brief, the "Plan") and an

accompanying Disclosure Statement [Docket No. 613] (as subsequently amended and modified

as of the date of this Brief, the "Disclosure Statement"). The Plan is a substantial departure from

the First Amended Plan. The Plan conforms to the Court's ruling of August 30, in that the Plan

does not assume the existence of, or purport to classify or treat, any claim by HCLOF against

the Debtors. Additionally, the Plan does not call for any amendment of the Indentures.

12.     Under the Plan, the business operations of the Debtors will continue after the

Effective Date through the Reorganized Debtor, and the reorganized Acis will actively pursue

additional fund management contracts. One hundred percent of the equity interests in the

Reorganized Debtor will be owned by Terry. The Reorganized Debtor will, *inter alia*, be vested

with certain Assets of the Debtors, including Estate Claims and Estate Defenses, to be

administered and liquidated by the Reorganized Debtor. The Reorganized Debtor will make

Distributions on account of Allowed Claims under the Plan.

13.     From and after the Effective Date, Brigade Capital Management ("Brigade") will

serve as sub-servicer and sub-advisor ("Sub-Advisor") of the Acis CLOs. Brigade is a global

asset management firm with approximately $20 billion of assets under management,

specializing in credit investment strategies, including structured credit. Brigade has issued

fifteen CLOs and currently manages $5.3 billion in CLOs across twelve active transactions. Additionally, the firm manages $3 billion in structured credit investments. Brigade was previously approved by the Court to provide such services to Acis LP. An overview of the Brigade CLO Platform is attached as Exhibit 2 to the Disclosure Statement.

14.     On September 28, 2018, the Trustee filed the Chapter 11 Trustee's Motion for Entry of Order (A) Conditionally Approving Disclosure Statement; (B) Scheduling Confirmation hearing on Final Approval of Disclosure Statement and Confirmation of Second Amended Joint Plan, and Setting Related Deadlines; (C) Approving Forms for Voting and Notice; and (D) Granting Related Relief [Docket No. 614] (the "Second Motion for Conditional Approval"). This motion was subsequently amended on October 3, 2018 [Docket No. 622].

15.     The Trustee amended the Disclosure Statement on October 3, 2018 [Docket No. 621].

16.     On October 17, 2018, the Trustee filed his First Modification to the Plan. [Docket No. 643] and his First Modification to the Disclosure Statement [Docket No. 644].

**E.      Objections to Confirmation**

17.     As of the date of this Brief, no objection to confirmation of the Plan has been filed. HCLOF has indicated that it will file an objection to confirmation of the Plan before the deadline set by the Court, and it is anticipated that Highland Capital Management, L.P. ("HCM") will also object to the Plan.

### III.  JURISDICTION AND VENUE

18.     The Court has jurisdiction over these chapter 11 cases pursuant to 28 U.S.C. § 1334. Confirmation of the Plan and final approval of the Disclosure Statement are core proceedings pursuant to 28 U.S.C. § 157(b)(2)(A), (L), and (O), and the Court has jurisdiction to enter final orders with respect to those matters. Venue is proper before the Court pursuant to 28 U.S.C. §§ 1408 and 1409.

## IV. ARGUMENT AND AUTHORITIES

19.     To obtain confirmation of the Plan, the Trustee must demonstrate, by a preponderance of the evidence, that the Plan satisfies the applicable provisions of section 1129 of the Bankruptcy Code. *Heartland Fed. Sav. & Loan Ass'n v. Briscoe Enters. (In re Briscoe Enters.)*, 994 F.2d 1160, 1165 (5th Cir. 1993); *In re Sears Methodist Ret. Sys.,* 2015 Bankr. LEXIS 709, at *8 (Bankr. N.D. Tex. Mar. 5, 2015)*; In re Couture Hotel Corp.*, 536 B.R. 712, 732 (Bankr. N.D. Tex. 2015); *In re Mirant Corp.,* 2007 Bankr. LEXIS 4951, at *19-20 (Bankr. N.D. Tex. Apr. 27, 2007).

20.     Through filings with the Court and additional evidence that may be adduced at the confirmation hearing, the Trustee will show, by a preponderance of the evidence, that all applicable subsections of section 1129 of the Bankruptcy Code have been satisfied with respect to the Plan.

### A.     Section 1129(a)(1): The Plan Complies with the Applicable Provisions of the Bankruptcy Code.

21.     Section 1129(a)(1) of the Bankruptcy Code requires that a plan must comply with the applicable provisions of the Bankruptcy Code. The legislative history of section 1129(a)(1) indicates that the purpose of this provision is to ensure compliance with the requirements of sections 1122 and 1123 of the Bankruptcy Code governing classification of claims and contents of a plan, respectively. H.R. REP. NO. 95-595, at 412 (1977); S. REP. NO. 95-989, at 126 (1978); *see In re Couture Hotel Corp.*, 536 B.R. 712, 733 (Bankr. N.D. Tex. 2015); *In re Mirant Corp.,* 2007 Bankr. LEXIS 4951, at *20 (Bankr. N.D. Tex. Apr. 27, 2007). As demonstrated below, the Plan fully complies with the requirements of sections 1122, 1123, and all other applicable provisions of the Bankruptcy Code.

### (1)     Proper Classification: The Plan Complies with Sections 1122 and 1123(a)(1) of the Bankruptcy Code.

22.     The Plan classifies claims against and equity interests in the Debtors as required by sections 1122 and 1123(a)(1) of the Bankruptcy Code. The classification is reasonable and

justified; it complies with the requirements in the Bankruptcy Code; and it is not motivated by, or evidence of, any lack of good faith in these chapter 11 cases.

23. Section 1123(a)(1) of the Bankruptcy Code provides that a plan shall, subject to section 1122, designate (i) classes of claims other than claims that qualify as allowed administrative expenses under section 503(b) of the Bankruptcy Code or priority tax claims under section 507(a)(8) of the Bankruptcy Code, and (ii) classes of interests. 11 U.S.C. § 1123(a)(1). Section 1122(a) of the Bankruptcy Code provides in pertinent part as follows:

> Except as provided in subsection (b) of this section, a plan may place a claim or interest in a particular class only if such claim or interest is substantially similar to the other claims or interests of such class.

11 U.S.C. § 1122(a). Subsection (b) allows a plan to designate a separate class of unsecured claims of less than a specific amount, if such a designation is "reasonable and necessary for administrative convenience." *Id.* § 1122(b). The Trustee elected not to designate an administrative-convenience class in the Plan.

24. For a classification structure to satisfy section 1122(a) of the Bankruptcy Code, not all substantially similar claims or interests need to be designated in the same class. *In re Thru, Inc.*, 2017 Bankr. LEXIS 1902, at *8-9 (Bankr. N.D. Tex. Jul. 10, 2017); *Mirant,* 2007 Bankr. LEXIS 4951 at *21. Instead, claims or interests designated to a particular class must be substantially similar to each other. *Mirant*, 2007 Bankr. LEXIS 4951 at *20-21 (citing *Phoenix Mut. Life Ins. Co. v. Greystone III Joint Venture (In re Greystone III Joint Venture)*, 995 F.2d 1274, 1278-81 (5th Cir. 1991)). A plan proponent is permitted to separately classify claims that are similar as long as there is a reasonable basis or good business justification for such separate classification. *Id.* at *21 (citing *Heartland Fed. Sav. & Loan Assoc. v. Briscoe Enters. Ltd., II (In re Briscoe Enters. Ltd., II*, 994 F.2d 1160, 1167 (5th Cir. 1993)); *In re Thru, Inc.*, 2017 Bankr. LEXIS 1902 at *9.

25. The Plan designates Classes of Claims against and Interests in the Debtors in

accordance with section 1123(a)(1) of the Bankruptcy Code, and provides, in a manner consistent with section 1122(a) of the Bankruptcy Code, for the separate classification of Claims and Interests based upon valid business, factual, and legal reasons. Specifically, in addition to Administrative Expenses, Priority Tax Claims, and quarterly fees payable to the United States Trustee, which need not be classified,[2] Article II of the Plan designates six Classes and subclasses of Claims against and Interests in the Debtors, as follows:

Class 1 — Secured Tax Claims

Class 2 — Terry Partially Secured Claim

Class 3 — General Unsecured Claims

Class 4A — Insider Claims

Class 4B — Equitably Subordinated Insider Claims

Class 5 — Interests in the Debtors

26. Each class in the Plan includes only claims or equity interests that are "substantially similar" to the other claims or equity interests in the class. Claims are "substantially similar" when they "share common priority and rights against the debtor's estate." *Phoenix Mut. Life Ins. v. Greystone III Joint Venture (In re Greystone III Joint Venture)*, 995 F.2d 1274, 1278 (5th Cir. 1991) (unsecured deficiency claim under § 1111(b) "substantially similar" to unsecured trade claims). The Plan does not lump together, in any class, claims or equity interests with different rights of priority with respect to the Debtors or their assets. Accordingly, the Plan's classification system meets the requirements of sections 1122 and 1123(a)(1).

27. Specifically, Class 1 consists of all Secured Tax Claims, which includes any ad valorem tax claims that arose or are deemed to have arisen on or before the Petition Date,

---

[2] As required by statute, the Plan does not classify administrative expenses entitled to priority under § 507(a)(2) of the Bankruptcy Code, tax claims entitled to priority under § 507(a)(8) of the Bankruptcy Code, and quarterly fees payable to the United States trustee under 28 U.S.C. § 1930(a)(6). *See* 11 U.S.C. § 1123(a)(1). Instead, the Plan treats these claims as unclassified claims. Plan art. III.

irrespective of the date on which such claim is assessed or is due. Class 2 includes Terry's Partially Secured Claim, which is a judgment claim partially secured by a writ of garnishment, which garnishment may be subject to avoidance as a preferential transfer. Class 3 consists of all General Unsecured Claims. Class 4 includes Insider Claims and is divided into two subclasses. Subclass 4A includes Insider Claims not subject to equitable subordination, and Subclass 4B includes equitably subordinated Insider Claims.[3] Class 5 consists of Interests in the Debtors.

28.     The Trustee submits that the Plan's classification of Claims and Interests does not prejudice the rights of any creditor or equity security holder, is consistent with the requirements of the Bankruptcy Code and, thus, is appropriate.

### (2)     *The Plan Complies with the Remaining Subsections of Section 1123(a) of the Bankruptcy Code.*

29.     In addition to subsection 1123(a)(1) of the Bankruptcy Code, discussed above, the Plan fully complies with each of the additional enumerated requirements of section 1123(a).

30.     Section 1123(a)(2): Classes That Are Not Impaired by the Plan. Section 1123(a)(2) requires a plan to specify which classes of claims or interests are not impaired by the Plan. The Plan specifies that Class 1 (Secured Tax Claims) is unimpaired. Plan § 2.02. Accordingly, the Plan satisfies the requirements of section 1123(a)(2) of the Bankruptcy Code.

31.     Section 1123(a)(3): Treatment of Classes That Are Impaired by the Plan. Section 1123(a)(3) requires a plan to specify how it will treat impaired classes of claims or interests. Article IV of the Plan sets forth the treatment of Claims in each impaired Class. *See* Plan §§ 4.02-4.05. Accordingly, the Plan satisfies the requirements of section 1123(a)(3) of the Bankruptcy Code.

32.     Section 1123(a)(4): Equal Treatment Within Each Class. Section 1123(a)(4)

---

[3] Subclass 4B is currently an empty subclass.

requires that a plan provide the same treatment for each claim or interest within a particular class unless any claim or interest holder agrees to receive less favorable treatment than other class members. In the Plan, the treatment of each Claim against or Interest in the Debtors, in each respective Class, is the same as the treatment of each other Claim or Interest in such Class, unless a creditor elects to receive less favorable treatment. Plan art. IV. Accordingly, the Plan satisfies the requirements of section 1123(a)(4) of the Bankruptcy Code.

33.     Section 1123(a)(5): Adequate Means for Implementation. Section 1123(a)(5) requires that a plan provide "adequate means for the plan's implementation." The Trustee contends that the Plan satisfies section 1123(a)(5) of the Bankruptcy Code and the means for implementation for all Plan alternatives are appropriate for the reasons set forth in this Brief.

34.     The Plan will be implemented through Article VI of the Plan. On the Effective Date, all Cash, Estate Accounts Receivable, Estate Claims, and Estate Defenses will be vested in the Reorganized Debtor, which will manage and administer those assets for the benefit of creditors of the Debtors. All existing interests in the Debtors will be cancelled, and 100% of the equity in the Reorganized Debtor will be issued to Terry as treatment of the Terry Partially Secured Claim. The PMAs will be assumed and the Reorganized Debtor will continue to manage the CLOs, earn fees, and pay Claims from post-Effective Date income as provided in the Plan. Brigade will provide sub-servicing and sub-advisory services to the Reorganized Debtor.

35.     The mechanism described above constitutes adequate means for implementation of the Plan. Therefore, section 1123(a)(5) is satisfied.

36.     Section 1123(a)(6): Prohibitions on the Issuance of Nonvoting Securities. Section 1123(a)(6) requires amendment of a corporate debtor's charter to prohibit the issuance of nonvoting equity securities. The Debtors are not corporations, so this section does not apply in these cases.

37.     Section 1123(a)(7): Provisions Regarding Directors and Officers. Section

1123(a)(7) requires that the Plan "contain only provisions that are consistent with the interests of creditors and interest holders and with public policy with respect to the manner of selection of any officer, director, or trustee under the plan and any successor to such officer, director, or trustee." The Reorganized Debtor does not have officers, directors, or trustees at this point. Terry will own 100% of the equity interests of the Reorganized Debtor and will manage the Reorganized Debtor. Brigade will act as the sub-servicer and sub-advisor. Based on prior proceedings before this Court and filings and disclosures about Brigade, parties have sufficient information about its selection for that role. The Trustee believes Brigade's role is consistent with the best interests of all parties in interest and with public policy. Indeed, Brigade's selection as sub-servicer and sub-advisor has already been approved on an interim basis by order of this Court. *See* Docket No. 464. These provisions are consistent with the interests of creditors and equity security holders and with public policy, as required by section 1123(a)(7).

38.     Section 1123(a)(8) Is Not Applicable. Section 1123(a)(8) applies only in a case where the debtor is an individual. As the Debtors are not individuals, this provision does not apply to these cases.

### *(3)* ***The Plan Complies with Section 1123(b) of the Bankruptcy Code.***

39.     Section 1123(b) sets forth certain permissive provisions that may be incorporated into a chapter 11 plan. Each provision of the Plan is consistent with section 1123(b) of the Bankruptcy Code.

40.     Section 1123(b)(1): Impairment/Unimpairment of Claims and Interests. Section 1123(b)(1) provides that a plan may "impair or leave unimpaired any class of claims, secured or unsecured, or of interests." Class 1 (Secured Tax Claims) is unimpaired by the Plan. The remaining Classes of Claims and Interests are impaired. Accordingly, the Plan is consistent with section 1123(b)(1) of the Bankruptcy Code.

41.     Section 1123(b)(2): Assumption/Rejection of Executory Contracts and Leases. Section 1123(b)(2) allows a plan to provide for the assumption, assumption and assignment, or

rejection of executory contracts and unexpired leases pursuant to section 365 of the Bankruptcy Code. Section 11.01 of the Plan provides that all executory contracts and unexpired leases will be rejected unless they (a) have been previously assumed or rejected pursuant to an order of the Court, (b) are identified in the Plan and/or the Confirmation Order to be (i) assumed or (ii) assumed and assigned, or (c) are the subject of a motion to assume filed on or before the Confirmation Date. Article XI of the Plan also addresses other issues related to assumption or rejection of executory contracts and unexpired leases. Based on the foregoing, the Plan complies with section 1123(b)(2) of the Bankruptcy Code, and the assumptions and/or assignments contemplated in the Plan are appropriate under the Bankruptcy Code and other applicable law and case authorities.

42.     Section 1123(b)(3): Settlement of Claims and Causes of Action. Section 1123(b)(3)(A) allows a plan to provide for "the settlement or adjustment of any claim or interest belonging to the debtor or to the estate." Section 1123(b)(3)(B) provides that a plan may "provide for the retention and enforcement by the debtor" of any such claim or interest. Article IX of the Plan provides for the retention of all Estate Claims, including but not limited to those listed on Exhibit A to the Plan. Retention of the Estate Claims is consistent with and permitted by section 1123(b)(3)(B) of the Bankruptcy Code.

43.     Section 1123(b)(4): Sale of All or Substantially All Assets. Section 1123(b)(4) provides that a plan may "provide for the sale of all or substantially all of the property of the estate, and the distribution of the proceeds of such sale among holders of claims or interests." The Plan does not contemplate a sale of all or substantially all of the assets of the Estates.

44.     Section 1123(b)(5): Modification of Creditors' Rights. Section 1123(b)(5) provides that a plan may "modify the rights of holders of secured claims, other than a claim secured only by a security interest in real property that is the debtor's principal residence, or of holders of unsecured claims, or leave unaffected the rights of holders of any class of claims." Here, the Plan affects the rights of all holders of Claims against and Interests in the Debtors, with the

exception of holders of Claims in Class 1 (Secured Tax Claims), which the Plan leaves unimpaired. Accordingly, the Plan is consistent with section 1123(b)(5) of the Bankruptcy Code.

45.     Section 1123(b)(6) and Section 105(a): Other Appropriate Provisions— Substantive Consolidation and Retention of Jurisdiction. Section 1123(b)(6) is a "catchall" provision, which permits inclusion in a plan of any appropriate provision as long as such provision is consistent with applicable sections of the Bankruptcy Code. In addition, section 105(a) of the Bankruptcy Code provides that the Court may issue "any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title." 11 U.S.C. § 105(a).

46.     Article XII of the Plan provides for substantive consolidation of the Debtors for purposes of voting and distributions under the Plan. The Trustee believes that substantive consolidation of the Debtors is in the best interests of the Estate and all parties in interest and meets the standards set forth in this Court's opinion in *In re ADPT DFW Holdings, LLC*, 574 B.R. 87 (Bankr. N.D. Tex. 2017). The substantive consolidation analysis is much simpler in these cases than in *ADPT DFW Holdings*. These cases involve only two Debtors—Acis LP and its general partner, Acis GP. Acis LP has assets where Acis GP does not, but the two Debtors share a nearly identical set of creditors. To the best of the Trustee's knowledge, Acis GP's liability is derived from the liabilities of Acis LP because Acis GP is the general partner. No creditors or parties in interest have objected to substantive consolidation, nor will any party be harmed by the substantive consolidation requested by the Trustee. Accordingly, the Trustee submits that substantive consolidation of the Debtors under the Plan is appropriate and should be approved.

47.     The Plan also provides that the Court will retain jurisdiction until the closing of these cases as to all matters involving the Plan and the Claims allowance and distribution process. Plan § 15.01. These provisions are appropriate because they are matters pertaining to the interpretation, implementation, or execution of a confirmed plan. *See Balestri v. Hunton &*

*Williams, LLC) (In re Hallwood Energy)*, 2012 Bankr. LEXIS 6066, at *18 (Bankr. N.D. Tex. Feb. 8, 2012) (citing *Bank of La. v. Craig's Stores of Tex., Inc. (In re Craig's Stores of Tex., Inc.)*, 266 F.3d 388, 391 (5th Cir. 2001)). Accordingly, the continuing jurisdiction of the Court provided for in the Plan is consistent with applicable law and therefore permissible under section 1123(b)(6) of the Bankruptcy Code.

48.     The Plan also contains a temporary injunction that effectively continues a preliminary injunction that Court issued in an adversary proceeding in these cases and which preliminary injunction would otherwise expire by its terms upon confirmation of the Plan. The grounds for issuance of such injunction through the Plan are addressed in detail in this Brief beginning on page 27 below.

### *(4)    Section 1123(c) of the Bankruptcy Code*

49.     Section 1123(c) applies only in a case concerning an individual and therefore does not apply to these cases.

### *(5)    Section 1123(d): Cure of Defaults*

50.     Section 1123(d) provides that "if it is proposed in a plan to cure a default the amount necessary to cure the default shall be determined in accordance with the underlying agreement and applicable nonbankruptcy law." Section 11.02 of the Plan provides that all payments that may be required by section 365(b)(1) of the Bankruptcy Code to satisfy any Cure Claim shall be made by the Reorganized Debtor as soon as reasonably practical after the Effective Date or on upon such terms as may be otherwise agreed upon by the Reorganized Debtor and the holder of such Cure Claim. However, in the event of a dispute regarding the amount of any Cure Claim, the cure of any other defaults, the ability of the Reorganized Debtor to provide adequate assurance of future performance, or any other matter pertaining to assumption or assignment of an Executory Contract, the Reorganized Debtor shall make such cure payments and cure such other defaults and provide adequate assurance of future performance, all as may be required by section 365(b)(1) of the Bankruptcy Code, following the

entry of a Final Order by the Court resolving such dispute. Accordingly, the Plan complies with section 1123(d) of the Bankruptcy Code.

### *(6)    Conclusion*

51.    As demonstrated by the foregoing, the Plan fully complies with the requirements of sections 1122 and 1123, as well as with all other provisions of the Bankruptcy Code, and thus satisfies the requirement of section 1129(a)(1) of the Bankruptcy Code.

**B.    Section 1129(a)(2): The Trustee is in Compliance with the Bankruptcy Code.**

52.    Section 1129(a)(2) of the Bankruptcy Code requires that the plan proponent comply with the applicable provisions of the Bankruptcy Code. The legislative history of section 1129(a)(2) reflects that this provision is intended to encompass the disclosure and solicitation requirements under sections 1125 and 1126 of the Bankruptcy Code. *See* H.R. REP. NO. 95-595, at 412 (1977); S. REP. NO. 95-989, at 126 (1978) ("Paragraph (2) [of § 1129(a)] requires that the proponent of the plan comply with the applicable provisions of chapter 11, such as section 1125 regarding disclosure."); *see also In re ADPT DFW Holdings LLC*, 577 B.R. 232, 245 (Bankr. N.D. Tex. 2017); *In re Mirant Corp.*, 2007 Bankr. LEXIS 4951, at *25 (Bankr. N.D. Tex. Apr. 27, 2007); *In re Seatco, Inc.,* 257 B.R. 469, 479 (Bankr. N.D. Tex. 2001).

53.    As set forth more fully below, the Trustee has complied with the applicable provisions of the Bankruptcy Code, including the requirements of sections 1125 and 1126, regarding disclosure and solicitation of the Plan.

### *(1)    The Trustee is in Compliance with Section 1125 of the Bankruptcy Code.*

54.    Section 1125(b) of the Bankruptcy Code provides, in pertinent part:

> An acceptance or rejection of a plan may not be solicited after the commencement of the case under [the Bankruptcy Code] from a holder of a claim or interest with respect to such claim or interest, unless, at the time of or before such solicitation, there is transmitted to such holder the plan or a summary of the plan, and a written disclosure statement approved, after notice and a hearing, by the court as containing adequate information. . . .

The Trustee has not solicited acceptances of the Plan from any holder of a Claim or Interest and will not do so except as directed by the Court after conditional approval of the Disclosure Statement. For this reason, the Trustee is in compliance with section 1125 of the Bankruptcy Code.

### (2)    *The Trustee Will Show Compliance with Section 1126 of the Bankruptcy Code.*

55.    Section 1126 of the Bankruptcy Code specifies the requirements for acceptance of a plan of reorganization. Pursuant to section 1126, only holders of allowed claims in impaired classes of claims or equity interests that will receive or retain property under a plan on account of such claims or equity interests may vote to accept or reject such plan. Section 1126 provides, in pertinent part, as follows:

> (a) The holder of a claim or interest allowed under section 502 of [the Bankruptcy Code] may accept or reject a plan.

> \*   \*   \*

> (f) Notwithstanding any other provision of this section, a class that is not impaired under a plan, and each holder of a claim or interest of such class, are conclusively presumed to have accepted the plan, and solicitation of acceptances with respect to such class from the holders of claims or interests of such class is not required.

> (g) Notwithstanding any other provision of this section, a class is deemed not to have accepted a plan if such plan provides that the claims or interests of such class do not entitle the holders of such claims or interests to receive or retain any property under the plan on account of such claims or interests.

At the confirmation hearing, after conditional approval of the Disclosure Statement and subsequent to solicitation and voting on the Plan, the Trustee will demonstrate compliance with this provision.

### C.    Section 1129(a)(3): The Plan Has Been Proposed in Good Faith and Not by Any Means Forbidden by Law.

56.    Section 1129(a)(3) of the Bankruptcy Code requires that a plan be "proposed in good faith and not by any means forbidden by law." "Where the plan is proposed with the

legitimate and honest purpose to reorganize and has a reasonable hope of success, the good faith requirement of §1129(a)(3) is satisfied." *In re Sun Country Dev., Inc.*, 764 F.2d 406, 408 (5th Cir. 1985). *See also*, *Western Real Estate Equities, L.L.C. v. Vill. At Camp Bowie I, L.P. (In re Vill. At Camp Bowie I, L.P.)*, 710 F.3d 239 (5th Cir. 2013); *In re Cajun Elec. Power Co-op., Inc.*, 150 F.3d 503, 519 (5th Cir. 1998); *In re T-H New Orleans P'ship*, 116 F.3d 790, 802 (5th Cir. 1997).

57.     The Trustee, as the plan proponent, has met his good faith obligation under the Bankruptcy Code. The Trustee proposed the Plan with the purpose of expeditiously distributing value to creditors and not by any means forbidden by law. Inasmuch as the Plan promotes the rehabilitative objectives and purposes of the Bankruptcy Code, the Plan and the related documents have been filed in good faith.

58.     Likewise, the Trustee has not proposed the Plan by any means forbidden by law. The Plan is not premised upon and does not contemplate any transaction that is even arguably violative of any substantive nonbankruptcy law. For these reasons, the Trustee has met his obligations under section 1129(a)(3).

**D.      Section 1129(a)(4): The Plan Provides That Professional Fees and Expenses are Subject to Court Approval.**

59.     Section 1129(a)(4) of the Bankruptcy Code requires that certain professional fees and expenses paid by the plan proponent, the debtor, or a person receiving distributions of property under the plan, be subject to approval by the Court. Section 3.01(e) of the Plan provide that Estate Professionals shall each file and submit a final fee application to the Court no later than sixty (60) days after the Effective Date. An Administrative Expense Claim by an Estate Professional in respect of which a final fee application has been properly filed and served shall become an Allowed Administrative Expense only to the extent allowed by Final Order of the Court. Section 15.01(b) of the Plan further provides that the Court shall retain jurisdiction to "hear and determine any and all applications for payments of fees and expenses pursuant to

this Plan to any Estate Professional pursuant to sections 330 or 503 of the Bankruptcy Code."

All fees and expenses of Professionals accrued through the Confirmation Date thus remain

subject to final review by the Court for reasonableness pursuant to sections 330, 331, and

503(b).

60.     The foregoing procedures for the Court's review and ultimate determination of

the fees and expenses to be paid by the Estate satisfy the objectives of section 1129(a)(4). *See*

*ADPT DFW Holdings LLC,* 577 B.R. 232, 246 (Bankr. N.D. Tex. 2017). As the foregoing

discussion makes clear, the Plan complies with the requirements of section 1129(a)(4).

**E.      Section 1129(a)(5): The Trustee Has Disclosed All Necessary Information
Regarding Directors, Officers, and Insiders.**

61.     Section 1129(a)(5) of the Bankruptcy Code requires that the plan proponent

disclose the identity and affiliations of the proposed officers and directors of the reorganized

debtor; that the appointment or continuance of such officers and directors be consistent with the

interests of creditors and equity security holders and with public policy; and that there be

disclosure of the identity and compensation of any insiders to be retained or employed by the

reorganized debtor.

62.     Terry will own 100% of the equity interests in the Reorganized Debtor and will

manage the Reorganized Debtor. Brigade will act as the sub-servicer and sub-advisor. Based

on prior proceedings before this Court and filings and disclosures about Brigade, parties have

sufficient information about its selection for that role and its affiliations and compensation. The

Trustee believes Brigade's role is consistent with the best interests of all parties in interest and

with public policy.

**F.      Section 1129(a)(6): Not Applicable.**

63.     Bankruptcy Code section 1129(a)(6) provides that "[a]ny governmental regulatory

commission with jurisdiction, after confirmation of the plan, over the rates of the debtor has

approved any rate change provided for in the plan, or such rate change is expressly conditioned

on such approval." First, the Trustee submits that this provision of the Bankruptcy Code is not applicable to these cases as neither the Debtors nor the Reorganized Debtor are subject to any form of rate regulation that would require such regulatory approval to satisfy section 1129(a)(6) of the Bankruptcy Code. Second, by its terms, section 1129(a)(6) of the Bankruptcy Code applies only where a rate change is "provided for in the plan." Here, the Plan provides for no such rate change. For these reasons, section 1129(a)(6) is inapplicable.

**G.**     **Section 1129(a)(7): The Plan Satisfies the Best-Interests-of-Creditors Test.**

64.     Section 1129(a)(7) of the Bankruptcy Code requires, in relevant part, that with respect to each impaired class of claims or interests, each holder of a claim or interest in such class either

> (i) has accepted the plan; or
>
> (ii) will receive or retain under the plan on account of such claim or interest property of a value, as of the effective date of the plan, that is not less than the amount that such holder would so receive or retain if the debtor were liquidated under chapter 7 of [the Bankruptcy Code] on such date.

Section 1129(a)(7) of the Bankruptcy Code is often referred to as the "best-interests-of-creditors" test or the "liquidation" test. The best-interests test focuses on individual dissenting creditors rather than classes of claims. *See Bank of Am. Nat'l Trust & Sav. Ass'n v. 203 N. LaSalle St. P'ship*, 526 U.S. 434 (1999). Under the best-interests test, the court "must find that each [non-accepting] creditor will receive or retain value that is not less than the amount he would receive if the debtor were liquidated [under chapter 7 of the Bankruptcy Code]." *Id.* at 440; *United States v. Reorganized CF&I Fabricators, Inc.*, 518 U.S. 213, 228 (1996).

65.     Under the Plan, there is only one unimpaired Class, Class 1 (Secured Tax Claims). By its terms, the best-interests test does not apply to an unimpaired class. Therefore, the Plan's treatment of Class 1 is consistent with section 1129(a)(7).

66.     The best-interests test is also satisfied by the treatment of the other Classes under the Plan, which are impaired. As discussed in the Disclosure Statement and its Exhibit 4,

the Trustee's financial advisors and investment bankers, Miller Buckfire & Co., LLC and Stifel,

Nicolaus & Co., Inc., prepared a Chapter 7 Liquidation Analysis that reflects projected

Distributions, in a hypothetical liquidation under chapter 7 of the Bankruptcy Code, of 46% to the

holder of the Allowed Class 2 Terry Partially Secured Claim, 46% to each holder of an Allowed

Class 3 General Unsecured Claim, and 0% to each holder of an Allowed Class 4A or 4B Insider

Claim. The anticipated Distributions to the holders of Allowed Class 2 and Class 3 Claims is

significantly lower in a chapter 7 liquidation than under the Plan. This is based on a number of

factors, including the fact that, in a chapter 7 liquidation, Acis LP would not receive the $14.6

million to $21 million in revenues under the PMAs (or approximately $7.5 million to $10.9 million

in operating cash flow) for continuing to manage the Acis CLOs. The loss of value from the

PMAs that would occur in a chapter 7 liquidation would result in a much lower distribution to

creditors.

67.     To summarize, the Trustee's best estimates at this time regarding recoveries

under the Plan and recoveries in a hypothetical chapter 7 liquidation are as follows:

| Class | Estimated Recovery Under Plan | Estimated Recovery in Chapter 7 |
|---|---|---|
| Class 1 – Secured Tax Claims | 100% | 100% |
| Class 2 – Terry Partially Secured Claim | 102% | 46% |
| Class 3 – General Unsecured Claims | 102% | 46% |
| Subclass 4A – Insider Claims | TBD[4] | 0% |
| Subclass 4B – Insider Claims (Equitably Subordinated) | 65%-100% | 0% |
| Class 5 - Interests | 0% | 0% |

68.     At the confirmation hearing, the Trustee and his financial advisors and

investment bankers will testify as to this confirmation requirement. Exhibit 4 to the Disclosure

Statement sets forth the Trustee's Liquidation Analysis, and Exhibit 3 describes the projected

recoveries under the Plan. These reports reflect that a liquidation of the Debtors' assets and

---

[4] The Plan Projections assumes the equitable subordination of the claims asserted by HCM. Moreover, although HCM asserts a claim for sub-servicer fees, the Trustee estimates recoupment and other counterclaims may exceed this value and, as such, the HCM claim is shown given a $0 value.

distribution of the proceeds to creditors in a hypothetical chapter 7 case would likely result in lower recovery for all creditors than the projected recoveries under the Plan. The Liquidation Analysis (i) is persuasive and credible, (ii) is prepared in accordance with generally accepted methodologies that are widely used in preparing similar reports, (iii) is based on reasonable and sound assumptions, and (iv) provides a reasonable estimate of the liquidation values of the assets of the Debtors' estates upon conversion to a case under chapter 7 of the Bankruptcy Code. The Liquidation Analysis shows that holders of Claims and Interests will receive or retain at least as much under the Plan than they would receive in a hypothetical liquidation under chapter 7 of the Bankruptcy Code. Based upon the foregoing, the Trustee submits that the best-interests test is satisfied.

**H.** **Section 1129(a)(8): Acceptance by All Impaired Classes**

69. Section 1129(a)(8) requires that a plan of reorganization be accepted by all impaired classes. At the confirmation hearing, the Trustee will show compliance with this provision or, alternatively, that the Plan can be confirmed under section 1129(b). See the discussion beginning on page 26 below.

**I.** **Section 1129(a)(9): The Plan Provides for Payment in Full of All Allowed Priority Claims.**

70. Section 1129(a)(9) of the Bankruptcy Code requires that persons holding claims entitled to priority under section 507(a) receive specified cash treatment under the plan, unless the holder of a particular claim agrees to a different treatment with respect to such claim. The Plan provides the required treatment of each such Claim.

*(1)* *Section 1129(a)(9)(A): Administrative Expenses*

71. The Plan satisfies section 1129(a)(9)(A) with respect to Administrative Expenses. The Plan provides that each holder of an Allowed Administrative Expense shall receive full payment of its Claim on the later of the Effective Date or the tenth (10th) Business Day after it is Allowed, unless some other treatment is agreed upon in writing. Plan § 3.01(b). Thus, the Plan's

treatment of Administrative Expenses meets the requirements of section 1129(a)(9)(A).

### (2)      *Sections 1129(a)(9)(B) & (C): Not Applicable*

72.      There are no Claims against the Debtors like those referenced in section 1129(a)(9)(B) & (C) of the Bankruptcy Code. Therefore, these sections are not applicable.

### (3)      *Section 1129(a)(9)(D): Secured Tax Claims*

73.      The Plan provides that Allowed Secured Tax Claims will receive (a) one Cash payment in an amount equal to the principal amount of such Allowed Secured Tax Claim, plus interest at the rate and in the manner prescribed by applicable state law from the later of the Petition Date or the first day after the last day on which such Secured Tax Claim may be paid without penalty, on the Initial Distribution Date, or (b) such other treatment as may be agreed to in writing by the holder of the Secured Tax Claim and the Reorganized Debtor. The Liens securing such Secured Tax Claims shall remain unimpaired and unaffected until each such Class 1 Claim is paid in full. Plan § 4.01. The treatment of Secured Tax Claims under the Plan complies with the requirements of section 1129(a)(9)(D). The Trustee does not believe there are any such Claims.

74.      As demonstrated by the foregoing, the Plan satisfies all the requirements of section 1129(a)(9) of the Bankruptcy Code.

**J.      Section 1129(a)(10): The Plan was Accepted by Least One Class of Impaired Claims, Determined Without Including any Acceptance of the Plan by Any Insider.**

75.      Section 1129(a)(10) of the Bankruptcy Code requires the affirmative acceptance of the Plan by at least one class of impaired claims, determined without including any acceptance of the plan by any insider. The Trustee is confident that at least one class of impaired claims will vote to accept and will show compliance with this requirement at the confirmation hearing.

**K.      Section 1129(a)(11): The Plan is Not Likely to be Followed by Liquidation or the Need for Further Reorganization.**

76.      Section 1129(a)(11) of the Bankruptcy Code requires that, as a condition to

confirmation, the Court determine that the Plan is feasible. Specifically, the Court must determine that:

> Confirmation of the plan is not likely to be followed by the liquidation, or the need for further financial reorganization, of the debtor or any successor to the debtor under the plan, unless such liquidation or reorganization is proposed in the plan.

As described below, and as will be shown at the Confirmation hearing, the Plan meets the requirements of this provision.

77.    The feasibility test set forth in section 1129(a)(11) requires the Court to determine that confirmation of the Plan is not likely to be followed by the liquidation, or a need for further financial reorganization, of the Debtors or any successor to the Debtors under the Plan, other than as proposed in the Plan. To satisfy section 1129(a)(11) of the Bankruptcy Code the Trustee need not prove a guaranteed success, but only a reasonable probability of success. *In re Thru, Inc.*, 2017 Bankr. LEXIS 1902 (Bankr. N. D. Tex. Jul. 10, 2017) (citing *Fin. Sec. Assurance Inc. v. T-H New Orleans Ltd. P'ship (In re T-H Orleans Ltd. P'ship)*, 116 F.3d 790, 801 (5th Cir. 1997)). Courts often consider several factors is determining whether a plan is feasible, including (1) capital structure, (2) earning power, (3) economic conditions, (4) the ability of management, (5) the probability of continuation of management, and (6) other related facts. *Id.* (citing *In re Couture Hotel*, 536 B.R. 712 (Bankr. N. D. Tex. 2015).

78.    Applying the foregoing legal standards, the Plan satisfies the feasibility requirement of section 1129(a)(11) of the Bankruptcy Code. For purposes of determining whether the Plan satisfies the above-described feasibility standards, the Trustee has analyzed the Estate's ability to fulfill obligations under the Plan. As part of this analysis, the Trustee's financial advisors and investment bankers have prepared financial projections (the "Projections"), which are attached to the Disclosure Statement as Exhibit 3.

79.    The Projections were prepared in good faith and are based on reasonable assumptions. The Projections indicate that sufficient resources will exist to satisfy obligations

under the Plan. Based upon the foregoing, the Plan has more than a reasonable likelihood of success and satisfies the feasibility standard of section 1129(a)(11).

**L.**    **Section 1129(a)(12): All Statutory Fees Have Been or Will Be Paid.**

80.    Section 1129(a)(12) of the Bankruptcy Code requires the payment of "[a]ll fees payable under section 1930 [of title 28 of the United States Code], as determined by the court at the hearing on confirmation of the plan." Section 507 of the Bankruptcy Code provides that "any fees and charges assessed against the estate under [section 1930 of] chapter 123 of title 28" are afforded priority as administrative expenses. In accordance with sections 507 and 1129(a)(12) of the Bankruptcy Code, the Plan provides that the Reorganized Debtor shall pay all fees payable pursuant to section 1930 of chapter 123 of title 28 of the United States Code on the Effective Date and thereafter as may be required. Plan § 3.04. Therefore, the Plan complies with section 1129(a)(12).

**M.**    **Sections 1129(a)(13), 1129(a)(14), 1129(a)(15), 1129(a)(16), 1129(c), 1129(d), and 1129(e): Not Applicable.**

81.    Section 1129(a)(13) of the Bankruptcy Code pertains to retiree benefits and is not applicable in these cases, because the Debtors do not have employees nor do they have any retiree obligations.

82.    Section 1129(a)(14) of the Bankruptcy Code relates to the payment of domestic support obligations. The Debtors are not subject to any domestic support obligations, and, as such, section 1129(a)(14) does not apply.

83.    Section 1129(a)(15) applies only in cases in which the debtor is an "individual" (as that term is defined in the Bankruptcy Code). The Debtors are not "individuals," and, therefore, section 1129(a)(15) is inapplicable.

84.    The Debtors are not corporations or trusts that are not moneyed, business, or commercial corporations or trusts, and, as such, section 1129(a)(16) of the Bankruptcy Code is inapplicable.

85.    The Plan is the only plan of reorganization submitted for confirmation at this time and, as such, section 1129(c) of the Bankruptcy Code is inapplicable.

86.    The Plan has not been filed for the purpose of avoidance of taxes or the application of section 5 of the Securities Act of 1933, as amended, and thus section 1129(d) of the Bankruptcy Code is inapplicable.

87.    The Chapter 11 Cases are not small business cases, as defined by the Bankruptcy Code, and, as such, section 1129(e) of the Bankruptcy Code is inapplicable.

**N.    Section 1129(b): If Necessary, the Plan Will Satisfy the Requirements for Confirmation Without Acceptance by All Impaired Classes.**

88.    To obtain confirmation of a plan that has not received the acceptance of all impaired classes, the proponent must show (i) that the plan and the proponent have met all the requirements for confirmation except for section 1129(a)(8) (acceptance by all impaired classes) and (ii) that the plan "does not discriminate unfairly, and is fair and equitable" with respect to each non-accepting impaired class. 11 U.S.C. § 1129(b)(1). In the event that not all impaired classes vote to accept the Plan, the Trustee will show that the Plan can be confirmed under the "cramdown" provisions of section 1129(b).

89.    First, as discussed in detail above, the Trustee and the Plan have satisfied or will have satisfied all of the requirements for confirmation except for the requirement that all impaired classes accept the Plan.

90.    Second, the Plan "does not discriminate unfairly, and is fair and equitable" with respect to each potential non-accepting impaired Class. Class 1 is unimpaired. Class 2 is impaired and consists of a secured claim. Classes 3 and 4 are impaired and consist of unsecured claims. Class 5 consists of Interests, which are cancelled. As shown in the projections attached as Exhibit 3 to the Disclosure Statement, the Trustee anticipates that the Plan will provide for 102% recovery for the Allowed Class 2 Claim, 102% recovery for Allowed Class 3 Claims, and between 65% and 100% recovery for Allowed Class 4 Claims. The

treatment and projected recoveries for Allowed Claims in impaired Classes under the Plan

clearly meet the "cramdown" requirements for any such Class as set forth in section 1129(b).

## V.  THE PLAN'S TEMPORARY INJUNCTION PROHIBITING OPTIONAL REDEMPTION IS NECESSARY AND APPROPRIATE.

91.    The Plan provides for a limited and temporary continuation, after confirmation, of

an injunction that is currently in place. The proposed injunction (the "Plan Injunction") states as

follows:

> IN ADDITION TO THE FOREGOING,[5] EXCEPT TO THE EXTENT NECESSARY TO ALLOW HCLOF, THE REORGANIZED DEBTOR AND BRIGADE TO EFFECTUATE THE RESET OF ONE OR MORE OF THE ACIS CLOS IN ACCORDANCE WITH SECTION 6.08 OF THE PLAN, PURSUANT TO SECTIONS 105(a), 1123(a)(5), 1123(b)(6) AND 1142(b) OF THE BANKRUPTCY CODE, THE ENJOINED PARTIES (DEFINED BELOW) ARE HEREBY ENJOINED FROM: (a) PROCEEDING WITH, EFFECTUATING, OR OTHERWISE TAKING (i) ANY ACTION IN FURTHERANCE OF ANY OPTIONAL REDEMPTION, CALL, OR OTHER LIQUIDATION OF THE ACIS CLOS PREVIOUSLY OR CURRENTLY ISSUED BY ANY SUCH PARTIES, AND (ii) ANY OTHER ATTEMPT TO LIQUIDATE THE ACIS CLOS BY ANY MEANS, (b) TRADING ANY ACIS CLO COLLATERAL IN FURTHERANCE OF ANY OPTIONAL REDEMPTION, CALL, OR OTHER LIQUIDATION OF THE ACIS CLOS, (c) INTERFERING IN ANY WAY WITH THE CAPITAL MARKETS PROCESS OF RESETTING ANY ACIS CLO, AND (d) SENDING, MAILING, OR OTHERWISE DISTRIBUTING ANY NOTICE TO THE HOLDERS OF THE ACIS CLOS IN CONNECTION WITH THE EFFECTUATION OF ANY OPTIONAL REDEMPTION, CALL, OR OTHER LIQUIDATION OF THE ACIS CLOS, UNTIL THE EARLIER TO OCCUR OF: (x) THE DATE UPON WHICH THE REORGANIZED DEBTOR OBTAINS CONTROL OVER MANAGEMENT OF THE SUBORDINATED NOTES BY VIRTUE OF AVOIDING THE PREPETITION FRAUDULENT TRANSFER OF ACIS LP'S RIGHTS UNDER THE ALF PMA THROUGH THE CLAIMS, COUNTERCLAIMS, OR THIRD-PARTY CLAIMS ASSERTED OR WHICH MAY BE ASSERTED IN THE HIGHLAND ADVERSARY, OR OTHERWISE, (y) THE DATE ON WHICH ALL ALLOWED CLAIMS AGAINST THE DEBTORS HAVE BEEN PAID IN FULL, OR (z) TWO (2) YEARS

---

[5] "The foregoing" refers to the preceding section of the Plan Injunction which would ensure that the Reorganized Debtor receives the full benefits of the discharge to which the Debtors will be entitled upon confirmation of the Plan. *See* 11 U.S.C. § 1141(d)(1)(A).

AFTER THE EFFECTIVE DATE. FOR PURPOSES OF THIS PARAGRAPH, THE TERM "ENJOINED PARTIES" SHALL INCLUDE HIGHLAND, HCLOF, CLO HOLDCO, NEUTRA, HIGHLAND HCF, HIGHLAND CLOM, ANY AFFILIATES OF HIGHLAND, INDENTURE TRUSTEE, THE ISSUERS AND CO-ISSUERS, AND THEIR RESPECTIVE EMPLOYEES, AGENTS, REPRESENTATIVES, TRANSFEREES, ASSIGNS, AND SUCCESSORS. FOR PURPOSES OF CLARIFICATION AND AVOIDANCE OF DOUBT, NOTHING IN THIS PARAGRAPH SHALL PRECLUDE ORDINARY DAY-TO-DAY TRADING OF THE COLLATERAL IN THE ACIS CLOS.

Plan § 14.03. The Plan Injunction is necessary to prevent irreparable harm to the Reorganized Debtor and creditors, is appropriate and narrowly tailored to address the specific harm to which it is directed and comports with governing case and statutory authority and applicable rules of bankruptcy and civil procedure.

92.    The Plan allows but does not require HCLOF to request and obtain a reset of the Acis CLOs in a way that is economically rational and beneficial to all parties, including HCLOF. Plan § 6.08. The purpose of the Plan Injunction is to preserve HCLOF's ability to obtain a reset of the Acis CLOs yet otherwise maintain the status quo until the Trustee's claims relating to the fraudulent transfer of Acis LP's rights under the ALF PMA, which include the right to direct and effectuate an optional redemption of the Acis CLOs, have been determined. In fact, the conduct prohibited by the Plan Injunction is the same conduct the Court has already restrained and enjoined the applicable parties from engaging in on three separate occasions. Initially, in the adversary proceeding styled *Highland Capital Management, L.P. and Highland CLO Funding Ltd. v. Robin Phelan, Chapter 11 Trustee,* Adversary No. 18-03078-SGJ (the "HCM Adversary"). the Court issued a Temporary Restraining Order (the "First TRO") *sua sponte* to prevent effectuation of the first optional redemption of the Acis CLOs demanded by HCLOF. To avoid a hearing on a request by the Trustee to extend the First TRO, HCLOF advised the Trustee and the Court that it was withdrawing its first optional redemption request. Both the Trustee and the Court relied on HCLOF's representations, and the Trustee did not go forward with his motion to extend the First TRO. Then, the day after the Trustee's motion was to be heard – and the day

the First TRO expired – HCLOF made its second demand (without seeking relief from the automatic stay) on the Trustee to effectuate an optional redemption.

93.      HCLOF's second optional redemption demand prompted the filing of the Trustee's *Verified Original Complaint and Application for Temporary Restraining Order and Preliminary Injunction* (the "Complaint"), commencing the Trustee's Adversary, and his Ex Parte Motion seeking a new temporary restraining order. The Court granted the Ex Parte Motion and entered the Second TRO, again restraining and enjoining HCLOF and other parties from taking any action to effectuate an optional redemption. The Court then heard the Trustee's request for a preliminary injunction in the Trustee's Adversary and entered a *Preliminary Injunction Order* (the "Preliminary Injunction") [Docket No. 21 in the Trustee's Adversary] on July 10, 2018. The Preliminary Injunction continues in effect until confirmation of a plan of reorganization, conversion of the Chapter 11 Cases, or as provided by further order of the Court. For the reasons set forth below, continuation of the Preliminary Injunction for a limited period by way of the Plan Injunction is warranted.

**A.      The Four Elements Required for Issuance of the Plan Injunction are Satisfied.**

94.      The Plan Injunction provides, in essence, that the Preliminary Injunction shall temporarily remain in effect after confirmation, until the first to occur of (a) the date on which the Reorganized Debtor obtains avoidance of the ALF PMA transfer, (b) full payment of all allowed claims, or (c) the second anniversary of the Effective Date of the Plan. Entry of this limited injunction is fully consistent with governing case authorities on the requirements for injunctive relief.

95.      As the Fifth Circuit has stated, the four elements of a preliminary injunction are (a) substantial likelihood of success on the merits; (b) substantial threat that the plaintiff will suffer irreparable injury; (c) the threatened injury outweighs any harm the injunction might cause the defendant; and (d) the injunction is in the public interest. *Byrum v. Landreth*, 566 F.3d 442, 445 (5th Cir. 2009); *Women's Med. Ctr. v. Bell,* 248 F.3d 411, 419 n.15 (5th Cir. 2001); *Hoover*

*v. Morales,* 164 F.3d 221, 224 (5th Cir. 1998). Each element is present in these cases.

### *(1)* ___Success on the Merits___

96.     In the Preliminary Injunction, the Court found that the Trustee demonstrated a substantial likelihood of success on the merits of claims regarding: "(i) violation of the automatic stay if injunction is not granted, (ii) utilizing rights transferred for no or insufficient value to attempt to effectuate an optional redemption, (iii) failing to obtain court authority under section 363 to effectuate an optional redemption, and (iv) confirmation of an effective plan of reorganization." Preliminary Injunction at p. 9. Three of these grounds will not apply after the Plan is confirmed and/or becomes effective. Upon the Effective Date of the Plan, the automatic stay will cease to exist with respect to acts to obtain possession of or to exercise control over property of the Estate, *see* 11 U.S.C. § 362(c)(1), and Court approval for transactions outside the ordinary course of business will no longer be required. *See id.* §§ 363(b)(1), 1141(b). In addition, of course, the Preliminary Injunction will no longer be necessary to protect the Trustee's ability to confirm an effective plan of reorganization once the Plan is confirmed. However, the Plan Injunction will be necessary to maximize the opportunity for Acis to implement the Plan and prevent the Highlands from further attempting to destroy Acis and appropriate its business, including the prospect that Acis will implement the Plan and pay its creditors. Ample grounds will remain after confirmation of the Plan to continue the Preliminary Injunction by virtue of the Plan Injunction.

97.     Upon the Effective Date, all Estate Claims shall be vested in the Reorganized Debtor. This includes the counterclaims asserted by the Trustee in the HCM Adversary. Such counterclaims include claims under both the Bankruptcy Code and the Texas Uniform Fraudulent Transfer Act to avoid prepetition fraudulent transfers of various assets of the Debtors to affiliates of HCM (the "__Fraudulent-Transfer Actions__"). One of the Fraudulent-Transfer Actions seeks avoidance of the transfer of Acis LP's rights under the ALF PMA (the "__ALF PMA Transfer__").

98.     Prior to October 27, 2017, Acis LP – not HCLOF (formerly known as ALF) – had authority to direct and effectuate an optional redemption of the Acis CLOs. But for the fraudulent ALF PMA Transfer, HCLOF could not have attempted to direct and effectuate an optional redemption of the Acis CLOs and deplete Acis LP's assets (as it has twice attempted to do postpetition).

99.     A substantial likelihood of implementing a successful Plan and success on the merits of the Fraudulent-Transfer Actions exists. This showing has already been made and is not news to this Court. The Court's April 13, 2018 *Findings of Fact and Conclusions of Law in Support of Orders for Relief Issued After Trial on Contested Involuntary Bankruptcy Petitions* (the "Opinion") [Docket No. 118] contains the following observations and findings:

> The one thing that the court was wholly convinced of was that conflicts of interest among Highland and the Alleged Debtors abound, and no one is looking out for the interests of the Alleged Debtors as a fiduciary should.

Opinion at p. 26.

> This court has also found that there may have been significant transfers of the Alleged Debtors' assets prior to the filing of the Involuntary Petitions to potentially avoid paying creditors (i.e., Mr. Terry) and this may provide further support for the court's finding that the Alleged Debtors are generally not paying their debts as they become due under section 303(h).

*Id.* at p. 39 n. 96.

> [T]his court has heard ample evidence showing that the Alleged Debtors, with the aid of Highland, were transferring assets away from the Alleged Debtors, so that Mr. Terry would have nowhere to look at the end of the day.

*Id.* at p. 51.

> Moreover, the court would note that, even if there were to be a "call" and liquidation of CLO 2014-3 . . . there would still be potential assets for a chapter 7 trustee to administer such as chapter 5 causes of action (which include fraudulent transfers) . . . .

*Id.* at p. 52.

100. The Court's Preliminary Injunction goes even further. The Court expressly found that a substantial likelihood of success of the merits exists with respect to the Trustee's claim regarding "utilizing rights transferred for no or insufficient value to attempt to effectuate an optional redemption" – i.e., the Fraudulent-Transfer Action with respect to the ALF PMA Transfer. Preliminary Injunction at p. 9. The Court also made the following findings in the Preliminary Injunction:

> Significantly, on October 27, 2017, *just seven days after Joshua Terry's arbitration award, Acis LP effectively terminated its own portfolio management rights under the ALF PMA and transferred its authority and those valuable portfolio management rights—for no apparent value—to Highland HCF Advisors, Ltd.*

*Id.* at p. 5 (emphasis in original).

> It appears to the Court that, without this ALF PMA Transfer, *which transferred Acis LP's rights under the ALF PMA to Highland HCF, ALF—which changed its name in late October 2017 to Highland CLO Funding Ltd.—could not have attempted to direct and effectuate an optional redemption, which it is now attempting to do.*

*Id.* at p. 6 (emphasis in original).

> Finally, HCLOF is using rights that appear to have been fraudulently transferred from Acis LP (i.e., rights under the ALF PMA) to attempt to effectuate the Optional Redemptions.

*Id.* at p. 7.

101. The Court's prior findings acknowledge that a substantial likelihood of success on the merits of the Fraudulent-Transfer Actions exists and the Trustee will demonstrate this again at the Confirmation hearing. This is particularly true with respect to the ALF PMA Transfer, absent which HCF Advisor and HCLOF would have never been in a position to attempt to direct an optional redemption. In addition, successful implementation of the Plan is also contemplated.

### *(2)* *Irreparable Harm*

102. The Debtors, creditors, and other parties in interest face irreparable harm if the Plan Injunction is not issued. A primary source of funding for distributions to creditors is revenue

to be generated by the Reorganized Debtor under the PMAs. Without the Plan Injunction, HCLOF will be free to direct an optional redemption before the Fraudulent-Transfer Actions can be adjudicated. Such action would render the ALF PMA rights, which the Trustee seeks to recover in the Fraudulent Transfer Action, meaningless. Moreover, the Court has previously recognized that an optional redemption constitutes a "doomsday" scenario that "would effectively destroy all value in the Acis PMAs." *Order Granting Emergency Motion to Approve Break-Up Fee, Expense Reimbursement, and Replacement Sub-Advisory and Shared Services Provider, Oaktree Capital Management, L.P.,* July 10, 2018, at p. 5 [Docket No. 390]. Destruction of the going concern business of Acis is a classic example of irreparable harm. Notwithstanding the determined opposition of the Highlands in support of their agenda to destroy the Debtors, Acis is now a profitable going concern business with positive cash flow to pay its creditors and, to the extent necessary, fund continuing litigation with the Highlands. After confirmation it is anticipated that Acis will obtain additional portfolio management contracts. There are economies of scale in the portfolio management business, and termination of the Acis CLOs by Highland Funding would negatively impact the ability of Acis to obtain new business.

103.     It is ironic that the Highlands, which argued that removal of HCM as portfolio manager of the Liberty CLO would result in irreparable harm to HCM, now claim that complete destruction of the business of Acis is permissible.

104.     Injunctive relief in the form of the Plan Injunction is necessary to prevent imminent and irreparable injury in the form of substantial losses to creditors and other parties in interest, as well as to third parties' financial interests, that will necessarily flow from an optional redemption designed to remove Acis LP as the portfolio manager of the Acis CLOs. Such losses cannot be presently measured by any certain pecuniary standard, are not reasonably quantifiable, and cannot be adequately compensated with monetary damages. Indeed, the destruction of the value of the PMAs would, in turn, effectively destroy the Reorganized Debtor's ability to satisfy its obligations to creditors. Thus, no adequate remedy at law exists.

### (3)   *Balance of Harms*

105.     The balancing of harms weighs in favor of issuing the Plan Injunction. There is no harm to the Highlands. HCM has already been fired, and the actions of the Trustee, most of which have been approved by this Court, have been in the best interest of the CLOs and, ultimately, Highland Funding. HCM was mismanaging the CLOs by, among other things, building up way too much cash and engaging in a stealth liquidation campaign. HCM was also grossly overcharging Acis.

106.     Mr. Covitz testified that there were no conforming loans available for purchase by the CLOs. It has been demonstrated that his testimony was at minimum incorrect and more likely a deliberate misrepresentation. Acis fired HCM as sub-manager of the CLO portfolios. Since then, Acis and its new sub-manager Brigade, have purchased approximately $200 million of conforming loans for the CLOs. By substantially all industry measurables, the professed preference by Highland Funding for HCM instead of Brigade is irrational. Any alleged harm to the Highlands is substantially outweighed by the imminent and irreparable harm that would be suffered by the Reorganized Debtor, creditors, and other parties in interest if the injunction is not issued and an optional redemption follows. The Plan Injunction is temporary – only long enough to allow the Reorganized Debtor a fair chance to implement the Plan and fully prosecute the Fraudulent-Transfer Actions for the benefit of creditors.

107.     This Court has already found that the Trustee has demonstrated a substantial likelihood of success on the merits of the Fraudulent-Transfer Action concerning the ALF PMA Transfer. Prior to such transfer, HCLOF had no ability to direct an optional redemption. That authority resided with Acis LP. The Trustee will present evidence regarding the proper interpretation of the ALF PMA, which grants to the portfolio manager the discretion to manage the portfolio, including whether to buy or sell investments in CLOs and whether or not to call for a liquidation or reset. That discretion is delegated to the portfolio manager because of the portfolio manager's expertise in managing the portfolio. Management of the portfolio

encompasses whether or not to call for a reset or liquidation. Remote directors in Guernsey do not have that expertise, as is evidenced by their unsupportable insistence upon HCM as the portfolio manager in any reset. Consequently, HCF Advisor and HCLOF cannot complain of any real harm that they would suffer if they are enjoined from pursuing an optional redemption before the Court has the opportunity to determine whether or not they have any legitimate right to direct an optional redemption in the first instance.

### *(4)* *Public Policy*

108. Finally, issuance of the Plan Injunction is consistent with public policy. Public policy favors the equitable collecting of a debtor's assets, maximizing the value of those assets, and distributing the proceeds in an orderly fashion in accordance with the priorities and safeguards set forth in the Bankruptcy Code, rather than in an uncontrolled, piecemeal, and potentially wasteful way. Public policy also supports successful reorganizations. *Comptroller of Public Accounts v. Transtexas Gas Corp. (In re Transtexas Gas Corp.),* 303 F.3d 571, 580 (5th Cir. 2002). The Court observed as much in issuing the Preliminary Injunction: "There is a public interest in allowing for a Chapter 11 process, rather than costly, prolonged litigation." Preliminary Injunction at p. 11.

109. As detailed above, an optional redemption will destroy the going concern value of Acis and eliminate future revenues under the PMAs – a key source of funding distributions to creditors. Protecting and maximizing the value of the PMAs is integral to enabling the Reorganized Debtor to make required distributions to creditors under the Plan and is, therefore, consistent with public policy. The Plan Injunction will prevent HCLOF from renewing its demand for an optional redemption the moment the Preliminary Injunction expires upon confirmation of the Plan and is likewise consistent with public policy.

110. Additionally, public policy favors disposition of cases on their merits. *Crane v. Napolitano*, Civ. Action No. 3:12-cv-03247-O, 2013 U.S. Dist. LEXIS 193120, at *3 (N.D. Tex. Mar. 15, 2013). Without the Plan Injunction, HCLOF can be expected to renew its demand for

an optional redemption as soon as the Preliminary Injunction expires. This would render the ALF PMA rights, which the Trustee seeks to recover in the Fraudulent-Transfer Action, meaningless before the Reorganized Debtor has any opportunity to prosecute the claim. For these reasons, public policy strongly favors issuance of the Plan Injunction.

111.     It isn't surprising that the Highlands would suggest that the Acis business be shut down and its cash flow terminated, allowing the Highlands to reassemble the CLO ecosystem without payment of the Acis creditors. That scenario would return this case to the litigation arena so often used by the Highlands to browbeat adversaries into submission by utilizing the vast resources of the Highlands to outspend their opponents. Acis would be left with causes of action but without the resources to effectively litigate against the Highlands' billions. Public policy favors successful reorganization, not the virtual theft of a going concern and destruction of a viable business in pursuit of a vendetta.

**B.      The Plan Injunction is Consistent with 11 U.S.C. § 105(a), Fed. R. Bankr. P. 3020(c)(1), and Fed. R. Civ. P. 65(d)(1).**

112.     As the foregoing discussion shows, the prerequisites for injunctive relief are present here: substantial likelihood of success on the merits; irreparable harm if the injunction is not issued; the balance of harms favors issuance of the injunction; and issuance of the injunction serves public policy. These are the traditional requirements of equity jurisprudence, followed by the Fifth Circuit and generally applicable in civil cases. In a chapter 11 case, however, there is more specific statutory authority by which a court may issue an injunction. Also, rules of procedure set forth standards of form with which such an injunction must comply in a bankruptcy case. The Plan Injunction meets these requirements as well.

### *(1)      Section 105(a)*

113.     This Court is statutorily empowered to "issue any order, process, or judgment that is necessary or appropriate to carry out the provisions" of title 11. 11 U.S.C. § 105(a). Issuance of the Plan Injunction is "necessary [and] appropriate to carry out the provisions" of the

Bankruptcy Code. The bankruptcy court's power under section 105(a) is not open-ended. Only such orders as are "necessary to further the substantive provisions of the Bankruptcy Code" are appropriate. *Chiasson v. J. Louis Matherne & Assocs. (In re Oxford Mgmt.)*, 4 F.3d 1329, 1333 (5th Cir. 1993). Section 105(a) "does not authorize the bankruptcy courts to create substantive rights that are otherwise unavailable under applicable law, or constitute a roving commission to do equity." *United States v. Sutton*, 786 F.2d 1305, 1308 (5th Cir. 1986) (footnote and citations omitted); *see also Feld v. Zale Corp. (In re Zale Corp.)*, 62 F.3d 746, 760 (5th Cir. 1995) ("Although we interpret § 105 liberally, . . . a § 105 injunction must be consistent with the rest of the Bankruptcy Code") (citations omitted).

114. The Plan Injunction is consistent with Fifth Circuit precedent. Such an injunction would not violate section 524(e) of the Bankruptcy Code. That subsection provides that "discharge of a debt of the debtor does not affect the liability of any other entity on, or the property of any other entity for, such debt." 11 U.S.C. § 524(e). The Plan Injunction would not affect the liability of any entity, or the liability of any property. The injunction would only temporarily prohibit the Highlands from exercising one form of economic recourse, thereby preserving the status quo while the Acis Trustee has a fair opportunity to prosecute the Fraudulent-Transfer Actions. *See In re Seatco, Inc.,* 259 B.R. 279, 283-84 (Bankr. N.D. Tex. 2001) (approving temporary injunction of suit against nondebtor on guaranty of debt treated in plan). Likewise, the proposed injunction does not contravene any other provision of the Bankruptcy Code or the Bankruptcy Rules. *Compare Omni Mfg. v. Smith (In re Smith)*, 21 F.3d 660, 666-67 (5th Cir. 1994) (disapproving injunction extending time to file proof of claim beyond limits set in Bankruptcy Rules 3003(c)(3) and 9006(b)(1)); *Oxford Management*, 4 F.3d at 1334 (disapproving injunction ordering payment that altered distribution scheme set forth in § 726(b)); *Sutton*, 786 F.2d at 1308 (disapproving injunction ordering spousal support payments contrary to § 523(a)(5)).

115. As discussed above, the Plan Injunction is essential to the consummation of the

Plan. Without it, HCLOF will be free after confirmation to demand an optional redemption, and thereby destroy the value of the PMAs and render Acis LP's rights under the ALF PMAs meaningless. The Court recognized this risk and understood the importance of enjoining an optional redemption up through confirmation by issuing the Preliminary Injunction.

116.    The leading Fifth Circuit case on post-confirmation injunctions is *Feld v. Zale Corp. (In re Zale Corp.),* 62 F.3d 746, 760 (5th Cir. 1995). There, the issue was whether the bankruptcy court had authority under section 105(a) to permanently enjoin actions against nondebtor parties to a settlement that the court approved at the same time a plan was confirmed. The Fifth Circuit reversed and remanded on the grounds that the bankruptcy court had failed to provide the safeguards of an adversary proceeding. *Id.* at 766. However, as guidance for the lower court and other courts, the Fifth Circuit surveyed the law on post-confirmation injunctions. In some cases, the Fifth Circuit pointed out, courts have upheld permanent post-confirmation injunctions of actions to pursue claims against nondebtors because those injunctions also "channeled those claims to allow recovery from separate assets and thereby avoided discharging the nondebtor." *Id.* at 760 (citing *SEC v. Drexel Burnham Lambert Group, Inc. (In re Drexel Burnham Lambert Group, Inc.*, 960 F.2d 285, 293 (2d Cir. 1992); *MacArthur Co. v. Johns-Manville Corp.*, 837 F.2d 89, 92 (2d Cir. 1988)). The Fifth Circuit also opined that "a temporary injunction of third-party actions . . . may be proper under unusual circumstances," even without a channeling justification. *Id.* at 761 (citing *Patton v. Bearden*, 8 F.3d 343, 349 (6th Cir. 1993); *Teachers Ins. & Annuity Ass'n v. Butler*, 803 F.2d 61, 65 (2d Cir. 1986)). The court went on:

> These circumstances include 1) when the nondebtor and the debtor enjoy such an identity of interests that the suit against the nondebtor is essentially a suit against the debtor, and 2) when the third-party action will have an adverse impact on the debtor's ability to accomplish reorganization. When either of these circumstances occurs, an injunction may be warranted.

62 F.3d at 761 (citing *Drexel*, 960 F.2d at 293) (footnote omitted).

117.    In the present case, "unusual circumstances" exist in that implementation of the Optional Redemption would have an "adverse impact on [Acis's] ability to accomplish reorganization." If the ALF PMA rights are rendered meaningless before the Trustee has an opportunity to recover them, then creditors will lose their best hope for a substantial recovery in these cases. For this reason, issuance of the Plan Injunction is consistent with the Fifth Circuit's teaching in *Feld*.

118.    Although other grounds for issuance of the Preliminary Injunction will cease to be applicable following confirmation of the Plan, preserving the status quo to allow prosecution of the Fraudulent-Transfer Action concerning the ALF PMA Transfer will remain valid. Injunctive relief is appropriate to preserve the status quo in an actions seeking equitable relief:

> [W]hen a plaintiff asserts a cognizable claim to specific assets of the defendant or seeks an equitable remedy involving those assets, a court may issue injunctive relief to preserve the status quo pending judgment where the legal remedy might prove inadequate and the preliminary relief furthers the court's ability to grant the final relief requested.

*Seidel v. Warner (In re Atlas Fin. Mortg., Inc.)*, No. 13-32683-bjh-7, 2014 Bankr. LEXIS 140, at *10 (Bankr. N.D. Tex. Jan. 14, 2014) (citing *United States ex rel. Rahman v. Oncology Assocs.*, 198 F.3d 489, 496 (4th Cir. 1999)). The Fifth Circuit, in an unpublished opinion, has also recognized the propriety of an injunction to preserve the status quo in cases where equitable relief is sought. *See Animale Group v. Sunny's Perfume, Inc.*, 256 F. App'x 707, 709 (5th Cir. 2007) ("Because Defendants seek equitable relief, the district court was authorized to preserve the status quo by entering a limited asset freeze.").

119.    The Trustee's counterclaims in the HCM Adversary to avoid fraudulent transfers seek equitable relief. *See Rahman*, 198 F.3d at 498 ("The complaint's request to void transfers as fraudulent – a form of rescission – is also an equitable remedy."); *Dong v. Miller*, No. 16-CV-5836 (NGG) (JO), 2018 U.S. Dist. LEXIS 48506, at *30-31 (E.D.N.Y. Mar. 23, 2018) ("The setting-aside of a fraudulent conveyance is a form of equitable relief."). Furthermore, the

Fraudulent-Transfer Action concerning the ALF PMA Transfer involves a claim to specific assets of Highland HCF. It is therefore beyond peradventure that the Plan Injunction – which essentially serves to continue the existing Preliminary Injunction at least until the Fraudulent-Transfer Actions are adjudicated – is warranted. *See Iantosca v. Step Plan Servs.*, 604 F.3d 24, 33 (1st Cir. 2010) (affirming preliminary injunction where creditors had a "colorable claim that appellants' own supposed interest under the settlement rests upon a fraudulent conveyance"); *Rahman*, 198 F.3d at 498-99; *Atlas Fin.*, 2014 Bankr. LEXIS 140 at *10 (granting preliminary injunction where complaint sought avoidance of fraudulent transfers under the Bankruptcy Code and the Texas Uniform Fraudulent Conveyance Act); *Paradigm Biodevices, Inc. v. Centinel Spine, Inc.*, No. 11 Civ. 3489 (JMF), 2013 U.S. Dist. LEXIS 66858, *7 (S.D.N.Y. May 9, 2013) (authority to grant preliminary injunction existed because plaintiff alleged not only a legal claim for money damages, but also an equitable claim to avoid fraudulently transferred assets).

120.    HCLOF has taken the position that, because it does not assert a claim against the Debtors' estates and is not a co-party to any contract with the Debtors, the Court is with without power to preserve the status quo through injunctive relief that limits HCLOF's rights, even temporarily.[6] Presumably, HCLOF will raise the same argument in objecting to the Plan Injunction. HCLOF's cramped notion of a bankruptcy court's judicial power needs some attention. Although not dealing specifically with a post-confirmation injunction, the case of *Adelphia Communications Corp. v. The America Channel, LLC (In re Adelphia Communications Corp.)*, 345 B.R. 69 (Bankr. S.D.N.Y. 2006) is instructive. In that case, a New York bankruptcy judge permanently enjoined a party from seeking an injunction in U.S. district court in Minnesota to try to stop a proposed sale of the debtor's assets. *Id.* at 87. The enjoined party did not name the debtor as a defendant in the Minnesota action and apparently was not a creditor of the

---

[6] *See Highland CLO Funding, Ltd.'s Motion to Dissolve Preliminary Injunction and Lift the Automatic Stay*, at pp. 12-15, Oct. 11, 2018 [Docket No. 638].

---

debtor. Nevertheless, the bankruptcy court concluded that the party was exercising control over property of the estate in violation of section 362(b)(3) and issued the permanent injunction under the authority of section 105(a). *Id.*

121.    The court in *Adelphia* acknowledged the statutory power of the bankruptcy court under section 105(a) "to maintain its own jurisdiction and to facilitate the reorganization process." *Id.* at 85; *see also Caesars Entm't Operating Co. v. BOKF, N.A. (In re Caesars Entm't Operating Co.),* 808 F.3d 1186, 1188 (7th Cir. 2015) (when injunction is requested under § 105(a), key determination is "whether the injunction sought . . . is likely to enhance the prospects for a successful resolution of the disputes attending [the debtor's] bankruptcy"). Section 105(a) vests the bankruptcy courts with authority to grant relief that "facilitate[s] the reorganization process" even if that relief limits the recourse open to a non-creditor or a party that is not in privity of contact with the debtor. Likewise, this Court has the judicial power to grant the Plan Injunction – a limited, temporary impingement on the remedies available to the Highlands that is necessary to prevent irreparable harm to the Debtors and creditors of the Estates and to preserve the status quo to allow a chance at final resolution of the Fraudulent-Transfer Actions.

### *(2)    Bankruptcy Rule 3020(c) and Rule 65(d)(1)*

122.    Issuance of the Plan Injunction is appropriate as a matter of substantive law under general equity jurisprudence and section 105(a) of the Bankruptcy Code. In addition, as a procedural matter, the Plan Injunction complies with Bankruptcy Rule 3020(c) and Federal Rule of Civil Procedure 65(d)(1).

123.    If an order confirming a chapter 11 plan includes an injunction "against conduct not otherwise enjoined under the [Bankruptcy] Code," the confirmation order must "(1) describe in reasonable detail all acts enjoined; (2) be specific in its terms regarding the injunction; and (3) identify the entities subject to the injunction." Fed. R. Bankr. P. 3020(c)(1). An order confirming the Plan and approving the Plan Injunction will meet this three-part test. First, the acts enjoined

are described in reasonable detail in the language of the Plan Injunction. The description of acts enjoined is specific and particular; it gives the enjoined parties fair notice of what conduct is forbidden. *Compare SP Special Opportunities, LLC v. LightSquared, Inc. (In re LightSquared, Inc.)*, 539 B.R. 232, 243-44 (S.D.N.Y. 2015) (vacating plan injunction that included vague and overbroad language enjoining parties from taking any action that may delay debtor's efforts to implement plan).

124.    Second, the Plan Injunction is specific in its terms regarding the injunction. Not only are the prohibited acts spelled out with specificity, but the limited duration of the injunction is also clearly defined by identification of three specific events, the earliest of which to occur shall serve to terminate the Plan Injunction.

125.    Finally, the Plan Injunction plainly identifies the specific entities subject to the injunction. Therefore, an order approving the Plan Injunction as presented would be in full compliance with Bankruptcy Rule 3020(c)(1).

126.    Federal Rule of Civil Procedure 65(d)(1) prescribes several formal requirements for "[e]very order granting an injunction and every restraining order." Fed. R. Civ. P. 65(d)(1). Specifically, every such order must:

> (A)  state the reasons why [the injunction] issued;
>
> (B)  state its terms specifically; and
>
> (C) describe in reasonable detail—and not by referring to the complaint or other document—the act or acts restrained or required.

*Id.* The requirements of Rule 65(d)(1) largely parallel those in Bankruptcy Rule 3020(c)(1), and the above discussion of Bankruptcy Rule 3020(c)(1) is applicable here. The language of the Plan Injunction, together with the testimony and other evidence that the Trustee will present at the confirmation hearing, will give the Court an ample basis on which to enter an order that fully comports with Bankruptcy Rule 3020(c)(1) and Rule 65(d)(1), and continues the relief this Court has repeatedly deemed necessary to protect the Debtors' estate.

## VI.  CONCLUSION

127.     Opposition by the Highlands to the Plan is not economically driven but instead the pursuit of an ego driven vendetta no matter what the cost to Highland Funding, the other Highlands, or Acis and its creditors.  The Plan is in the best interest of all parties, including Highland Funding, and the Plan Injunction does not change the Indentures but simply implements the Plan by preventing the Highlands, for a limited period of time, from self-destructing and taking down Acis and its creditors with it.  The Trustee and the Plan have met all the requirements for confirmation of a chapter 11 plan of reorganization.  Accordingly, the Trustee requests that the Court confirm the Plan.

WHEREFORE, the Trustee prays that the Court issue an Order confirming the Plan and granting such other and further relief to which he may be justly entitled.

DATED: October 22, 2018                              Respectfully submitted,

*/s/ Jeff P. Prostok*
Jeff P. Prostok
State Bar No. 16352500
J. Robert Forshey
State Bar No. 07264200
Suzanne K. Rosen
State Bar No. 00798518
Matthew G. Maben
State Bar No. 24037008
**FORSHEY & PROSTOK LLP**
777 Main St., Suite 1290
Ft. Worth, TX 76102
Telephone: (817) 877-8855
Facsimile: (817) 877-4151
jprostok@forsheyprostok.com
bforshey@forsheyprostok.com
srosen@forsheyprostok.com
mmaben@forsheyprostok.com

**COUNSEL FOR ROBIN PHELAN,
CHAPTER 11 TRUSTEE**

-and-

Rakhee V. Patel
State Bar No. 00797213
rpatel@winstead.com

Phillip Lamberson
State Bar No. 00794134
plamberson@winstead.com
Joe Wielebinski
State Bar No. 21432400
jwielebinski@winstead.com
Annmarie Chiarello
State Bar No. 24097496
achiarello@winstead.com
**WINSTEAD PC**
500 Winstead Building
2728 N. Harwood Street
Dallas, Texas 75201
(214) 745-5400 (Phone)
(214) 745-5390 (Facsimile)

**SPECIAL COUNSEL FOR ROBIN
PHELAN, CHAPTER 11 TRUSTEE**

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing document was served via ECF electronic Notice on October 22, 2018.  I further certify that a true and correct copy of the foregoing document was additionally served upon the parties listed below via email on October 22, 2018.

Holland N. O'Neil
Jason B. Binford
Shiva D. Beck
Melina N. Bales
**Foley Gardere**
**Foley & Lardner LLP**
honeil@foley.com
jbinford@foley.com
sbeck@foley.com
mbales@foley.com
*Counsel for Highland Capital Management, LP*

Michael K. Hurst
Ben A. Barnes
**LYNN PINKER COX & HURST, LLP**
mhurst@lynnllp.com
bbarnes@lynnllp.com
*Counsel for Highland Capital Management, LP*

Mark M. Maloney
W. Austin Jowers
Paul R. Bessette
**KING & SPALDING LLP**
mmaloney@kslaw.com
ajowers@kslaw.com
pbessette@kslaw.com
*Counsel for Highland CLO Funding, Ltd.*

Thomas M. Melsheimer
Lane M. Webster
**WINSTON & STRAWN LLP**
tmelsheimer@winston.com
lwebster@winston.com
*Counsel for the Issuers and Co-Issuers*

David Neier
**WINSTON & STRAWN LLP**
dneier@winston.com
*Counsel for the Issuers and Co-Issuers*

Mark D. Kotwick, Esq.
Arlene R. Alves, Esq.
**SEWARD & KISSEL LLP**
kotwick@sewkis.com
alves@sewkis.com
*Counsel for U.S. Bank, N.A. as CLO Trustee*

Daniel P. Novakov
**FROST BROWN TODD LLC**
dnovakov@fbtlaw.com
*Counsel for U.S. Bank, N.A. as CLO Trustee*

Andrew Zollinger
**DLA PIPER LLP**
andrew.zollinger@dlapiper.com
*Counsel for Universal-Investment-Luxembourg S.A. and BAYVK R2 Lux S.A., SICAV-FIS*

Thomas R. Califano
**DLA PIPER LLP**
thomas.califano@dlapiper.com
*Counsel for Universal-Investment-Luxembourg S.A. and BAYVK R2 Lux S.A., SICAV-FIS*

Brian P. Shaw
John M. Lynch
**Rogge Dunn Group, PC**
shaw@roggedunngroup.com
lynch@roggedunngroup.com
*Counsel for Josh Terry*

Lisa Lambert, Trial Attorney
United States Trustee
lisa.l.lambert@usdoj.gov

/s/ Jeff P. Prostok
Jeff P. Prostok

L:\JPROSTOK\ACIS Capital Management (Trustee Rep)\Plan and Disclosure Statement\Brief in Support of Confirmability of Second Amended Plan 10.22.18.docx