| | |
|---|---|
| Holland N. O'Neil (TX 14864700) | Michael K. Hurst (TX 10316310) |
| Jason B. Binford (TX 24045499) | Ben A. Barnes (TX 24092085) |
| Melina N. Bales (TX 24106851) | **LYNN PINKER COX & HURST, LLP** |
| **FOLEY GARDERE** | 2100 Ross Avenue, Ste. 2700 |
| **FOLEY & LARDNER LLP** | Dallas, Texas 75201 |
| 2021 McKinney Avenue, Ste. 1600 | Telephone: (214) 981.3800 |
| Dallas, Texas 75201 | Facsimile: (214) 981.3839 |
| Telephone: (214) 999.3000 | mhurst@lynnllp.com |
| Facsimile: (214) 999.4667 | |
| honeil@foley.com | |

**COUNSEL FOR NEUTRA LTD.**

# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE NORTHERN DISTRICT OF TEXAS
# DALLAS DIVISION

| | | |
|---|---|---|
| In re: | § | Case No. 18-30264-SGJ-11 |
| | § | Case No. 18-30265-SGJ-11 |
| ACIS CAPITAL MANAGEMENT, L.P. and | § | |
| ACIS CAPITAL MANAGEMENT GP, LLC, | § | (Jointly Administered Under Case No. |
| | § | 18-30264-SGJ-11) |
| | § | |
| Debtors. | § | Chapter 11 |

## OBJECTION OF NEUTRA LTD. TO FINAL APPROVAL OF DISCLOSURE STATEMENT AND TO CONFIRMATION OF THE THIRD AMENDED JOINT PLAN FOR ACIS CAPITAL MANAGEMENT, L.P. AND ACIS CAPITAL MANAGEMENT GP, LLC

Neutra, Ltd. ("**Neutra**"), the sole limited partner of Acis LP and the sole member of Acis GP, hereby files its objection (the "**Objection**") to final approval of the disclosure statement [Doc. No. 661] (as amended or otherwise supplemented) (the "**Disclosure Statement**") and to confirmation of the *Third Amended Joint Plan for Acis Capital Management, L.P. and Acis Capital Management GP, LLC* [Doc. No. 660] (as amended or otherwise supplemented) (the "**Plan**" or "**Plan D**") filed by the Chapter 11 Trustee (the "**Trustee**"),[1] and respectfully states as follows:

---

[1] Defined terms herein shall be as set forth in the Plan unless otherwise provided herein.

# I.
# PRELIMINARY STATEMENT

1. **Neutra has an appeal pending of the Orders for Relief. The very issues on appeal are at the heart of the Trustee's Plan D. As such, pursuant to the divestiture doctrine, this Court has been divested of jurisdiction to proceed with consideration or confirmation of Plan D.**

2. Further, these Chapter 11 cases and the Plan D present a case study in determining how far a chapter 11 trustee will deviate from the fundamental mores of chapter 11 policy and the provisions of the Bankruptcy Code to obtain confirmation of his plan.

3. As this Court is well aware, chapter 11 attempts to strike a balance between the competing, and sometimes conflicting interests of a debtor and its stakeholders, in the hope that, by preserving the debtor as a going concern, value will be maximized for all stakeholders. That was the impression given to this Court in converting the original involuntary Chapter 7 petitions into ones under Chapter 11.

4. In this case, however, the Chapter 11 Trustee has: (a) dispensed with his duty to maximize value in exchange for expedience; (b) declined to play his role of neutral arbiter in attempting to develop stakeholder consensus, instead opting to take the side of a single creditor, and (c) abandoned the principle that similarly situated creditors be treated similarly and all stakeholders be given a level playing field.

5. With respect to Neutra's interests in particular, the Plan essentially takes all of Neutra's interests and hands it over to one creditor, Joshua Terry (the involuntary petitioner who is the Appellee of the Appeal), at a "value" of a $1 million reduction of his claim. There was no competitive process to establish the legitimacy of this valuation. Further, the Chapter 11 Trustee

suggests that the Debtors are worth millions of dollars and general unsecured creditors are being paid 102% of their claims.

6. These chapter 11 Cases call upon this Court to consider how far is too far. Simply put, if the Plan is confirmed, an outcome will bear little, if any, resemblance to the one envisioned by the Bankruptcy Code's drafters.

7. The Plan is not confirmable on its face because (i) it fails to meet the basic requirements for confirmation, (ii) it improperly places some creditors in their own classes for no other purpose than to gerrymander a consenting class, and (iii) fails to meet the "new value" corollary as established by the Supreme Court in *Bank of America National Trust and Savings Association v. 203 N. LaSalle Street Partnership*, 526 U.S. 434, 119 S.Ct. 1411 (1999). The Plan does not comply with Sections 1129(a) or (b) of the Bankruptcy Code, is not fair and equitable and is not feasible. Confirmation of the Plan should be denied.

## II.
## RELEVANT BACKGROUND

8. On January 30, 2018, Joshua N. Terry ("**Terry**") filed involuntary petitions ("**Involuntary Petitions**") for relief under Chapter 7 of the title 11 of the United States Code, 11 U.S.C. §§ 101, *et seq.* (the "**Bankruptcy Code**") against Acis Capital Management, L.P. ("**Acis LP**") and Acis Capital Management GP, LLC ("**Acis GP**," and with Acis LP, the "**Debtors**"). After filing the bankruptcy petitions, on that same day, Terry filed an emergency motion under 11 U.S.C. § 303(f) to "impose" 11 U.S.C. § 363 on the Debtors until either dismissal of the bankruptcy cases or the entry of orders for relief. The Debtors, in turn, filed a motion to dismiss the bankruptcies. After a two-day hearing a week later, the Court granted the section 303(f) motion, which made section 363 of the Code applicable to the proceedings, thereby limiting Acis's ability to use, sell, or lease its property pending a decision on the Involuntary Petitions.

9. The Debtors filed answers to the Involuntary Petitions, asserting among other defenses that the bankruptcy court lacked subject matter jurisdiction because section 303(b) has not been satisfied. The Debtors also filed a motion to dismiss the bankruptcies for lack of subject matter jurisdiction, or alternatively, to compel arbitration, which this Court denied without a hearing.

10. A five-day trial on the Involuntary Petitions was held in late March. During the hearing, Neutra filed its motion to intervene. As was cited in the record, Neutra's purpose was to preserve a right to appeal any subsequent orders for relief against the Debtors. The bankruptcy court denied the motion. Thereafter, the Court issued Orders for Relief against the Debtors on April 13, 2018, after issuing findings of fact and conclusions of law. Notices of appeal were timely filed by Neutra on April 23, 2018.

11. A Chapter 7 trustee was promptly appointed. On May 4, 2018, the Chapter 7 Trustee filed an *Expedited Motion to Convert Cases to Chapter 11* [Doc. No. 171] (the "**Motion to Convert**"). Also on May 4, 2018, Terry filed an *Emergency Motion for an Order Appointing Trustee for the Chapter 11 Estates of Acis Capital Management, L.P. and Acis Capital Management GP, LLC Pursuant to Bankruptcy Code Section 1104(a)* [Doc. No. 173] (the "**Motion to Appoint Chapter 11 Trustee**").

12. On May 11, 2018, after a hearing on the matter, the Court entered orders granting the Motion to Convert [Doc. No. 205] and the Motion to Appoint Chapter 11 Trustee [Doc. No. 206]. Thereafter, the United States Trustee appointed Robin Phelan as Chapter 11 Trustee (the "**Chapter 11 Trustee**") for the Debtors.

13. On July 5, 2018, the Chapter 11 Trustee filed the initial plan [Doc. No. 383], which proposed three (3) alternatives – Plans A, B and C (the "**Initial Plan**").

14. On August 30, 2018, the Court denied confirmation of all three plans [*See* Doc. Nos. 549 and 569].

15. On September 28, 2018, the Trustee filed (1) Plan D; (2) the Disclosure Statement; and (3) a motion seeking conditional approval of the Disclosure Statement [Doc. No. 622]. Numerous amendments and supplements have been filed.

16. On October 25, 2018, this Court entered in the Solicitation Order, [Doc. No. 659] which effectively conditionally approved the Disclosure Statement and set the Plan for a confirmation hearing commencing December 11, 2018.

## III.
## THE COURT IS DIVESTED OF JURISDICTION TO CONFIRM PLAN D WHILE THE APPEALS OF THE ORDERS FOR RELIEF ARE PENDING

17. Neutra timely and purposely appealed the entry of the Orders for Relief to the United Stated District Court for the Northern District of Texas, No. 3:18-CV-1056-D (consolidated with No. 3:18-CV-1057-D, No. 3:18-CV-1073-D and No. 3:18-CV-1084-D) (the "**Appeal**"). The Appeal has been pending for over 7 months and has been fully briefed. The parties await a ruling from the District Court.

18. The issues on Appeal challenge this Court's subject matter jurisdiction to enter the Orders for Relief and related decisions, and are stated by Neutra as follows:

- "The question is whether the bankruptcy court erred in issuing Orders for Relief against the debtors based on involuntary bankruptcy petitions filed against them."

- "Did the court err in denying the debtors' motion to dismiss the involuntary petitions for lack of subject matter jurisdiction (or alternatively to compel arbitration) where petitioning creditor Joshua Terry had signed a contract with the debtors providing for mediation and arbitration of their dispute and precluding them from "fil[ing] a suit in court" or "initiat[ing] a judicial suit"?"

- "Did the court err in not dismissing the involuntary petitions where evidence showed that the sole petitioning creditor, Terry, had filed in bad faith for the sole purpose of collecting his judgment against the debtors?"

- "Did the court err in not abstaining in this two-party dispute between Terry and debtor Acis Capital Management LP, **where the bankrupcy is injuring Acis and Neutra (and others)**, and Terry can pursue collection of his judgment in state court? (emphasis added)."

*See* Brief of Appellant attached hereto as **Exhibit A** (excluding attachments) ( "**Appellant Brief**").

19. As the sole equity owner of the Debtors, Neutra was the party primarily aggrieved by the entry of the Orders for Relief, which have irrevocably impacted its equity interests in the Debtors. Due process provided Neutra with an appellate review, and it sought that review in the Appeal. Because of the Appeal, this Court has been divested of jurisdiction to consider Plan D **because Plan D directly implicates the issues on Appeal.**

20. "It is a fundamental tenant of federal civil procedure that, subject to certain, defined exceptions, the filing of a notice of appeal from a final judgment of a trial court divests the trial court of jurisdiction and confers jurisdiction upon the appellate court. (citations omitted). This rule applies with equal force to bankruptcy cases." *In re TransTexas Gas Corp.*, 303 F. 3d 571, 579 (5th Cir. 2002). This fundamental tenet is commonly referred to as the "divestiture doctrine."

21. In the instant case, the Orders for Relief were final orders. Notably, the Appellee in the Appeal, Josh Terry, does not dispute the finality of the Orders for Relief nor the issues on Appeal. *See* Brief of Appellee Joshua N. Terry attached hereto as Exhibit B (excluding attachments) ("**Appellee Brief**").[2] In light of the specific issues on Appeal, this Court is divested of jurisdiction to confirm Plan D, which would inexorably strip away Neutra's equity interests and transfer it to the Appellee, Josh Terry. Notably, in his Appellee Brief, Terry makes the following assertion:

> First, Neutra has utterly failed to establish that it has standing even to pursue this appeal under the strict "person aggrieved" standard

---

[2] For completeness, Neutra attaches its Reply Brief of Appellant Neutra, Ltd. as Exhibit C (excluding attachments) ("**Reply Brief**").

>utilized for bankruptcy appeals. Neutra is in no way aggrieved by the Orders for Relief (the orders being appealed) **and has been unable to point to anything that indicates its property rights are diminished or impaired by these orders or its burdens are increased by these orders**.

Appellee Brief at ¶ 29 (emphasis added). Yet this is precisely what Plan D intends to accomplish.

22.     The leading case in the Fifth Circuit is *In re TransTexas Gas Corp.*, 303 F. 3d 571 (5th Cir. 2002). In *TransTexas,* the Fifth Circuit applied the divestiture doctrine and noted that in the bankruptcy context, "the bankruptcy court retains jurisdiction to address elements of the bankruptcy proceeding that <u>are not</u> the subject of that appeal. " Id. at 580 (n. 2) (emphasis added). Similar to the Fifth Circuit's conclusion in *TransTexas*, this caveat cannot remedy any jurisdictional defect in the instant case. *See Id.*

23.     The issues are squarely on point with the issues in the Appeal. This Court therefore cannot confirm Plan D because it lacks jurisdiction. Full stop.

## IV.
## OTHER PLAN OBJECTIONS

24.     Neutra incorporates by reference the Objection filed to Plan D by Highland Capital Management, L.P. and Highland CLO Funding, Ltd. filed on November 26, 2018 (the "**Joint Objection**") [Doc. No. 722]. In addition, Neutra objects as follows:

**A.     The Plan Violates Section 1129(b) of the Bankruptcy Code**

25.     The Plan impairs Class 5 – Interests.  Neutra, as the sole limited partner of Acis LP and the sole member of Acis GP, holds all of the equity interests in the Debtors.  In other words, it is the only party subject to Class 5 treatment. To be confirmed, the Plan must comply with section 1129(b)(1).  That section permits confirmation of a plan only if it otherwise complies with the provisions of section 1129(a) and (i) does not "discriminate unfairly" and (ii) is "fair and equitable

with respect to each class of claims or interests that is impaired under, and has not accepted, the plan." 11 U.S.C. § 1129(b)(1).

26. A plan is "fair and equitable" if each holder in a "class of unsecured claims" either "receive[s] or retain[s] on account of such claim property of a value . . . equal to the allowed amount of such claim," or the "holder of any claim or interest that is junior to the claims of such class will not receive or retain under the plan on account of such junior claim or interest any property." 11 U.S.C. 1129(b)(2)(B). The latter requirement codifies the "absolute priority rule" – that no junior class may receive any interest in property unless the senior classes are paid in full. *Bank of Am. Nat'l Trust v. 203 N. LaSalle St. P'ship*, 526 U.S. 434, 441-42 (1999). A corollary of the absolute priority rule is that "no claim or interest receive more than 100 percent of the allowed amount of such claim or interest and that no class be discriminated against unfairly." *In re MCorp Financial, Inc.*, 137 B.R. 219, 235 (Bankr. S.D. Tex. 1992). As set forth herein, the Plan cannot be confirmed because it is not fair and equitable and because it unfairly discriminates against the holders of the equity interests.

27. Courts have held that a "determination of the Debtor's value directly impacts the issues of whether the proposed plan is 'fair and equitable.'" *In re Exide Techs.,* 303 B.R. 48, 60-61 (Bankr. D. Del. 2003). Essentially, "[i]f former stockholders' interests are eliminated, a valuation is required to make sure that the senior classes of claims are not being provided for more than in full. If former shareholders' interests are impaired and a class of creditors is provided for more than in full, the plan will not be confirmed. Conversely, for a plan to be confirmed when stockholders are eliminated, creditors must not be provided for more than in full." *In re MCorp*, 137 B.R. at 235.

28. In this instance, the Chapter 11 Trustee has proposed a Plan that projects to pay most, if not all, creditors in full (with some receiving in excess of 100% of their claim) with the Trustee arguing that the Debtors are worth millions of dollars. On the other hand, the Chapter 11 Trustee wipes out Neutra's equity interests by granting Terry "one hundred percent (100%) of the equity interests in the Reorganized Debtor as of the Effective Date" in "exchange for a one million dollar ($1,000,000.00) reduction in the amount of the Terry Partially Secured Claim." (Disclosure Statement, I.B.).

29. The "Terry Partially Secured Claim" is defined as "any Claim asserted against the Debtors by Terry, including as asserted in Proof of Claim No. 1 in both Chapter 11 Cases and Proof of Claim No. 26 against Acis LP." (Disclosure Statement, Art. 1, A.1.108.) Importantly, Terry's Proof of Claim No. 1 sets forth a secured claim in the amount of approximately $634,000. Additionally, Class 3 – General Unsecured Claims are expected to recover 102% on account of their claims and the Trustee contends that Highland's claims in Class 4 should be worth nothing.

30. As such, the terms of the Plan provide far more to the senior creditors than the amounts of their claims, especially with regard to Class 2 – Terry's claim. Terry receives a windfall to the detriment of Class 5. Indeed, Terry receives far more than a windfall – Terry receives the "exclusive opportunity free from competition and without benefit of market valuation" to obtain all of the Debtors' equity for a mere $1 million offset of his "partially secured claim". This is prohibited under section 1129(b) of the Bankruptcy Code. *See LaSalle*, 526 U.S. at 458. At no time was the Debtors' equity open to the market for competitive bidding. And there is no explanation as to why that is the case.

31. Additionally, and importantly, Terry gets to offset $1 million of his "partially secured claim," but the amount Terry himself claims as secured is only approximately $634,000.

The Chapter 11 Trustee is essentially giving Terry $364,000 more in a secured claim than Terry claims he is actually entitled.

32. As is fully set forth in the Joint Objection of Highland and HCLOF, Terry is a non-statutory insider. There was no competitive process to ensure that this treatment was fair and equitable to all existing stakeholders. Competition is essential whenever a plan distributes an equity interest to an insider. See generally *La Salle,* 526 U.S. at 444; see also *In re Castleton Plaza, LP*, 707 F. 3d 821, 823 (7th Cir. 2013) ("It follows that plans giving insiders preferential access to investment opportunities in the reorganized debtor should be subject to the same opportunity for competition as plans in which existing claim-holders put up the new money.")

33. The Plan is flawed and violates section 1129(b) in that it is not fair and equitable to equity interests.

B. **Section 1129(a)(3) – The Plan Was Not Proposed in Good Faith**

34. Bankruptcy Code section 1129(a)(3) further provides that a plan must be proposed in good faith. The Chapter 11 Trustee, as proponent of the Plan, bears the burden of demonstrating that it was filed in good faith. *In re Barnes*, 309 B.R. 888, 892 (Bankr. N.D. Tex. 2003). A good faith plan "must fairly achieve a result consistent with the [Bankruptcy] Code." *Id.* (quoting *In re Block Shim Dev. Co. – Irving*, 939 F.2d 289, 292 (5th Cir. 1991)). Good faith itself is "evaluated in light of the totality of the circumstances surrounding establishment of [the] plan, mindful of the purposes underlying the Bankruptcy Code." *In re Village at Camp Bowie I, L.P.*, 710 F.3d 239, 247 (5th Cir. 2013). The ultimate goal of the analysis is to determine the "subjective motive" of a plan proponent. *In re Texas Star Refreshments, LLC*, 494 B.R. 684, 694 (Bankr. N.D. Tex. 2013).

35. There is no dispute that there was virtually no negotiation of how much Terry would "pay" on account of the Debtors' equity interests, and in particular there was no effort by the Chapter 11 Trustee to secure the highest possible price for the equity interests. It is instead a

scheme, concocted in bad faith, to take property from one party and provide a windfall to one other party.

36. At the end of the day, these bankruptcy cases and the Plan amount to nothing but a free option play by Terry and the Chapter 11 Trustee at the expense of Neutra's equity interests.

37. In these circumstances, the Court should not make a good faith finding.

**C.    The Disclosure Statement Should Not be Finally Approved**

38. As to the Disclosure Statement, Neutra objects to its final approval based on the fact that it describes a patently unconfirmable Plan. S*ee In re Quigley Co.*, 377 B.R. 110, 115-16 (Bankr. S.D.N.Y. 2007); *In re Arnold*, 471 B.R. 578, 586 (Bankr. C.D. Cal. 2002).

**V.
RESERVATION OF RIGHTS**

39. Nothing herein shall be construed as an admission of, or concession to, any fact contained in the Disclosure Statement or the Plan, and Neutra reserves all rights to contest and rebut any and all factual allegations at the Confirmation Hearing.

WHEREFORE, Neutra respectfully requests entry of an order (i) denying confirmation of the Plan; (ii) denying final approval of the Disclosure Statement; and (iii) granting such other and further relief to which Neutra is entitled.

Dated: November 26, 2018                    Respectfully submitted,

                                                        */s/ Holland N. O'Neil*
Holland N. O'Neil (TX 14864700)
Jason B. Binford (TX 24045499)
Melina N. Bales (TX 24106851)
**FOLEY GARDERE**
**FOLEY & LARDNER LLP**
2021 McKinney Avenue, Ste. 1600
Dallas, Texas 75201
Telephone: (214) 999.3000
Facsimile: (214) 999.4667
honeil@foley.com
jbinford@foley.com
sbeck@foley.com
mbales@foley.com

and

Michael K. Hurst (TX 10316310)
Ben A. Barnes (TX 24092085)
**LYNN PINKER COX & HURST, LLP**
2100 Ross Avenue, Ste. 2700
Dallas, Texas 75201
Telephone: (214) 981.3800
Facsimile: (214) 981.3839
mhurst@lynnllp.com
bbarnes@lynnllp.com

**COUNSEL FOR NEUTRA LTD.**

## CERTIFICATE OF SERVICE

      This is to certify that on November 26, 2018, a true and correct copy of the foregoing was served electronically via the Court's ECF system on those parties registered to receive such service.

                                                        */s/ Jason B. Binford*
Jason B. Binford