Rakhee V. Patel – State Bar No. 00797213
Phillip Lamberson – State Bar No. 00794134
Joe Wielebinski – State Bar No. 21432400
**WINSTEAD PC**
500 Winstead Building
2728 N. Harwood Street
Dallas, Texas 75201
Telephone: (214) 745-5400
Facsimile: (214) 745-5390
rpatel@winstead.com
plamberson@winstead.com
jwielebinski@winstead.com
achiarello@winstead.com

**SPECIAL COUNSEL FOR THE CHAPTER 11 TRUSTEE**

Jeff P. Prostok – State Bar No. 16352500
J. Robert Forshey – State Bar No. 07264200
Suzanne K. Rosen – State Bar No. 00798518
Matthias Kleinsasser – State Bar No. 24071357
**FORSHEY & PROSTOK LLP**
777 Main St., Suite 1290
Fort Worth, Texas 76102
Telephone: (817) 877-8855
Facsimile: (817) 877-4151
jprostok@forsheyprostok.com
bforshey@forsheyprostok.com
srosen@forsheyprostok.com
mkleinsasser@forsheyprostok.com

**COUNSEL FOR THE CHAPTER 11 TRUSTEE**

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE NORTHERN DISTRICT OF TEXAS
## DALLAS DIVISION

| | | |
|---|---|---|
| IN RE: | § | Case No. 18-30264-SGJ-11 |
| | § | Case No. 18-30265-SGJ-11 |
| ACIS CAPITAL MANAGEMENT, L.P., | § | |
| ACIS CAPITAL MANAGEMENT GP, | § | **(Jointly Administered Under Case** |
| LLC, | § | **No. 18-30264-SGJ-11)** |
| | § | |
| DEBTORS. | § | Chapter 11 |

## RESPONSE TO OBJECTION OF NEUTRA LTD. TO FINAL APPROVAL OF DISCLOSURE STATEMENT AND TO CONFIRMATION OF THE THIRD AMENDED JOINT PLAN FOR ACIS CAPITAL MANAGEMENT, L.P. AND ACIS CAPITAL MANAGEMENT GP, LLC

**TO THE HONORABLE STACEY G.C. JERNIGAN, UNITED STATES BANKRUPTCY COURT JUDGE:**

Robin Phelan, the Chapter 11 Trustee (the "Trustee") for Acis Capital Management, L.P.

("Acis LP") and Acis Capital Management GP, LLC ("Acis GP", with Acis LP, "Debtors" or

"Acis"), Debtors in the above-referenced bankruptcy cases (the "Bankruptcy Cases"), files this

*Response to Objection of Neutra Ltd. to Final Approval of Disclosure Statement and to*

*Confirmation of the Third Amended Joint Plan for Acis Capital Management, L.P. and Acis*

RESPONSE TO OBJECTION OF NEUTRA LTD. TO FINAL APPROVAL OF
DISCLOSURE STATEMENT AND TO CONFIRMATION OF THE THIRD
AMENDED JOINT PLAN FOR ACIS CAPITAL MANAGEMENT, L.P. AND
ACIS CAPITAL MANAGEMENT GP, LLC

PAGE 1 OF 18

*Capital Management GP, LLC* [Docket No. 723] (the "Neutra Objection") filed by Neutra Ltd. ("Neutra") and respectfully states as follows:

## I.    SUMMARY OF RESPONSE[1]

1.    Fifth Circuit case law clearly provides that this Court maintains jurisdiction over the Plan.  In fact, Neutra conveniently failed to alert this Court to the controlling Fifth Circuit case, which states:

> **Although appeals transfer jurisdiction from the district court to the appellate court concerning 'those aspects of the case involved in the appeal,'** *id.* **at 58, the district court is nonetheless free to adjudicate matters that are not involved in that appeal… <u>An appeal of a denial of a motion to compel arbitration does not involve the merits of the claims pending in the district court</u>.**  The Supreme Court made it plain in *Moses H. Cone*, 460 U.S. at 21, that the merits were 'easily severable' from the dispute over the arbitrability of those claims.  The Court thus declared that because of that severability, the issue of arbitrability could be litigated in federal court while the merits were determined in state court. *Id.*  An issue is generally an aspect of the case on appeal if it results in the district court's deciding an issue that the appellate court is deciding at the same time.  By this reasoning, the merits are not an aspect of arbitrability. **A determination on the arbitrability of a claim has an impact on what arbiter—judge or arbitrator—will decide the merits, but that determination does not itself decide the merits**.

*Weingarten Realty Inv'rs v. Miller*, 661 F.3d 904, 908-909 (5th Cir. 2011) (emphasis added).

2.    Similarly, Neutra, Highland Capital Management, LP ("Highland Capital"), and every other Highland affiliate that has appeared in these Bankruptcy Cases, have consistently maintained that Acis is valueless.  Conveniently, Neutra now argues that Mr. Terry is receiving a "windfall" by virtue of receiving the equity in this "valueless" company.  In support of its objection, Neutra argues a position contrary to controlling Fifth Circuit precedent and fundamentally misconstrues *Bank of Am. Nat'l Trust v. 203 N. LaSalle St. P'ship*, 526 U.S. 434

---

[1] Capitalized term(s) not defined herein have the meaning(s) ascribed to such term(s) later in the Response.

(1999), the absolute priority rule, and the new value exception to the absolute priority rule. In responding to the baseless Neutra Objection, the Trustee has been forced to expend estate resources to correct Neutra's fundamental misunderstandings of bankruptcy and appellate law.

## II.  FACTUAL BACKGROUND

### A.  The Involuntary Bankruptcy Cases

3.    On January 30, 2018 (the "Petition Date"), Joshua N. Terry ("Terry") exercised his legal rights and filed involuntary petitions for relief under Chapter 7 of the Bankruptcy Code against Acis.

### B.  Acis — On The Eve Of The Involuntary Trial — Attempts To Compel Arbitration

4.    Near midnight on March 19, 2018 — the eve of the trial on the involuntary petitions slated to begin the morning of March 21 — Acis, still a putative debtor controlled by Highland Capital, filed the *Motion to Dismiss the Involuntary Petitions Filed by Joshua N. Terry for Lack of Subject Matter Jurisdiction or, Alternatively, Motion to Compel Arbitration* [Docket Nos. 72 & 73] (the "Arbitration Motion").

5.    At that time, Terry and Acis had filed witness and exhibit lists for trial, both parties had filed extensive trial briefs, and both parties had undertaken and completed considerable (and expensive) discovery. Both parties were well on their way preparing for the trial for which opening arguments would begin in roughly 30 hours when Acis decided they wanted to arbitrate instead.

6.    The very next day — on March 20, 2018 — this Court entered the *Order Denying Alleged Debtors' Joint Motion to Dismiss the Involuntary Petitions Filed by Joshua N. Terry for Lack of Subject Matter Jurisdiction, or Alternatively, Compel Arbitration* [Docket No. 75] (the "Arbitration Denial Order") summarily denying the Arbitration Motion. In support of its denial,

this Court found that: (1) the parties already arbitrated prepetition; (2) Section 6.12 of the Amended and Restated Agreement of Limited Partnership of Acis Capital Management, L.P., dated effective January 21, 2011 (the "LPA"), did not apply to the involuntary petitions because the involuntary petitions constituted collection remedies and not a "claim or controversy" under the LPA; and, in the alternative, (3) even if Section 6.12 applied, the involuntary petitions are core proceedings that derive exclusively from the Bankruptcy Code, and thus are subject to the Bankruptcy Court's discretion to decline to enforce the arbitration provision.

7.     After the entry of the Arbitration Denial Order, Acis, still a putative debtor controlled by Highland Capital, filed (i) the *Notice of Appeal and Statement of Election* [Docket No. 77] related to the Arbitration Denial Order; and (ii) the *Alleged Debtors' Motion for Stay Pending Appeal of Denial of Alleged Debtors' Joint Motion to Dismiss the Involuntary Petitions Filed by Joshua N. Terry for Lack of Subject Matter Jurisdiction, or Alternatively, Motion to Compel Arbitration* [Docket No. 90] (the "Arbitration Stay Motion"), seeking a stay of the Arbitration Order. The Arbitration Stay Motion was not prosecuted by Acis and was not heard by this Court or otherwise resolved. No party obtained a stay of the Arbitration Denial Order.

## C.     Neutra – Also On The Eve Of The Involuntary Trial – Attempts To Intervene In The Involuntary Trial

8.     At 2:33 a.m. on March 21, 2018, just hours before the start of involuntary trial, Neutra filed a *Motion to Intervene in Proceedings Contesting Involuntary Petitions Under Federal Bankruptcy Rule 1018, or in the Alternative, Rule 2018* (the "Motion to Intervene").

9.     Neutra was formed by, and is ultimately controlled by, Highland Capital. Further, James Dondero ("Dondero") and Mark Okada ("Okada"), the founders and owners of Highland

Capital, own Neutra.[2]  Based on the fact that Neutra was undoubtedly aware of the involuntary petitions months before its attempted intervention, this Court correctly entered the *Order Denying Highland CLO Funding, Ltd., CLO Holdco, LTD., and Neutra Ltd.'s Motion to Intervene in Proceedings Contesting Involuntary Petitions Under Federal Bankruptcy Rule 1018, or, In the Alternative, Rule 2018* (the "<u>Intervention Denial Order</u>"), and properly denied the Motion to Intervene as untimely.

**D.      Orders For Relief**

10.      On April 13, 2018, the Court entered identical copies of the *Order for Relief in an Involuntary Case* [Bankruptcy Case No. 18-30264, Docket No. 119; Bankruptcy Case No. 18-30265, Docket No. 114] (collectively, the "<u>Orders for Relief</u>") and *Findings of Fact and Conclusions of Law in Support of Orders for Relief Issued After Trial on Contested Involuntary Bankruptcy Petitions* [Bankruptcy Case No. 18-30264, Docket No. 118; Bankruptcy Case No 18-30265, Docket No. 113] (collectively, the "<u>FFCOL</u>") in the Debtors' Bankruptcy Cases.

**E.      The Neutra Appeal**

11.      After the entry of the Orders for Relief, Neutra appealed:  (i) the Arbitration Denial Order; (ii) the Intervention Denial Order; and (iii) the Orders for Relief.  *See* Docket Nos. 144, 145, 150 & 151.  Briefing in this appeal has been completed.  A copy of *Brief of Appellee Joshua N. Terry* (the "<u>Terry Brief</u>") filed in the *Neutra v. Terry* appeal, Consolidated Case No. 3:18-cv-01056-D, is attached hereto as **Exhibit "B."**  As the Court will note, the primary thrust of Neutra's appeal is that the Orders for Relief should have been arbitrated, and not tried by this Court.

---

[2] Hearing Transcript (Feb. 7, 2018) at 173:22-175:5, attached hereto as **Exhibit "A."**

**F.**     **The Plan**

12.     On October 25, 2018, the Trustee filed the *Third Amended Joint Plan for Acis Capital Management, L.P. and Acis Capital Management GP, LLC* [Docket No. 660] (as modified and amended, the "Plan").   On October 25, 2018, the Trustee filed the *Disclosure Statement Pursuant to Section 1125 of the United States Bankruptcy Code with Respect to the Third Amended Joint Plan for Acis Capital Management, L.P. and Acis Capital Management GP, LLC* [Docket No. 661] (the "Disclosure Statement").   On November 8, 2018, the Trustee filed the *First Modification to the Third Amended Joint Plan for Acis Capital Management, L.P. and Acis Capital Management GP, LLC* [Docket No. 693].   On November 16, 2018, the Trustee filed the *Second Modification to the Third Amended Joint Plan for Acis Capital Management, L.P. and Acis Capital Management GP, LLC* [Docket No. 702].

## III.     RESPONSE

**A.**     **The Court Has Jurisdiction To Confirm The Plan**

13.     Neutra first contends that because the Orders for Relief are on appeal, this Court has been divested of all subject matter jurisdiction to consider confirmation of the Plan.   Neutra completely misconstrues the law.   Appealing an order for relief in an involuntary case does not act broadly as a stay or an injunction on the bankruptcy case or on the bankruptcy court's ability to confirm a plan, as asserted by Neutra.   Rather, an appeal of an order for relief narrowly divests the bankruptcy court only with respect to those issues on appeal in connection with the order. Further, because Neutra did not obtain a stay pending appeal of the Orders for Relief, pursuant to Federal Rule of Bankruptcy Procedure ("Rule") 8007, the continuation of proceedings in these Bankruptcy Cases by the Court is not stayed or otherwise prohibited.   Accordingly, this Court has jurisdiction to confirm the Plan.

RESPONSE TO OBJECTION OF NEUTRA LTD. TO FINAL APPROVAL OF
DISCLOSURE STATEMENT AND TO CONFIRMATION OF THE THIRD
AMENDED JOINT PLAN FOR ACIS CAPITAL MANAGEMENT, L.P. AND
ACIS CAPITAL MANAGEMENT GP, LLC

PAGE 6 OF 18

14. Neutra cites the Fifth Circuit's decision in *Transtexas Gas* in an attempt to support its contention that the Court lacks jurisdiction to confirm the Plan. *See* Neutra Objection ¶¶ 20, 22. In *Transtexas Gas*, however, the Fifth Circuit decided whether the bankruptcy court had jurisdiction to enter a supplemental order regarding confirmation of the plan when the *initial confirmation order* had been appealed—and when the supplemental order addressed issues raised on appeal of the confirmation order (specifically with respect to the interest rate applied to certain tax claims). *See Tex. Comptroller of Pub. Accounts v. Transtexas Gas Corp. (In re Transtexas Gas Corp.)*, 303 F.3d 571, 574, 578-82 (5th Cir. 2002). The Fifth Circuit correctly concluded that the bankruptcy court lacked jurisdiction to enter the supplemental order when the initial confirmation order was on appeal and the supplemental confirmation order addressed issues specifically on appeal.

15. The underlying circumstances and posture of these Bankruptcy Cases are easily distinguishable from *Transtexas Gas*. Here, the Court entered the Orders for Relief following the trial on the involuntary petitions. The issues pertaining to Neutra's appeal of the Orders for Relief are separate and apart from those issues related to confirmation of the Plan. Particularly, in its appeal, Neutra primarily argues that the Court lacked subject matter jurisdiction to hear the involuntary petitions based on an arbitration provision in the limited partnership agreement of Acis LP (the "LPA"), which, Neutra argued, compelled arbitration of the involuntary petitions. Neutra also argued that the involuntary petitions were filed in bad faith and that the Court should have abstained from entering the Orders for Relief pursuant to Section 305 of the Bankruptcy Code. These are not issues for the Court to decide at confirmation.

16.     Further, the Fifth Circuit has specifically held that an appeal of an order denying a motion to compel arbitration does not divest the trial court of jurisdiction to proceed on the merits in the underlying case. *See Weingarten Realty Inv'rs v. Miller*, 661 F.3d 904, 907-09 (5th Cir. 2011). In *Weingarten Realty*, the Fifth Circuit followed a narrow interpretation of the Supreme Court's decision in *Griggs v. Provident Consumer Discount Co.*, 459 U.S. 56 (1982), agreeing with the Second and Ninth Circuits "that because answering the question of arbitrability does not determine the merits of the case, the merits are not an aspect of the case that is involved in the appeal on arbitrability." 661 F.3d at 908. Accordingly, even when a trial court's denial of a motion to compel arbitration is appealed, the court is not divested of jurisdiction to decide the merits of the case. Similarly, here the primary issue on appeal of the Orders for Relief is whether the Bankruptcy Court erred in refusing to require arbitration of the involuntary petitions. As the Fifth Circuit unmistakably recognized in *Weingarten Realty*, the issue of whether the involuntary petitions were subject to arbitration is different than the issues underlying whether the Court should confirm the Trustee's Plan pursuant to Section 1129 of the Bankruptcy Code.

17.     Additionally, Neutra misconstrues the divestiture doctrine in the context of a bankruptcy case. As the Southern District of New York bankruptcy court explains:

> **The divestiture doctrine, in its simplest terms, provides that the filing of an appeal divests the lower court of its control over the issue or matter that is on appeal. Courts have held that the same legal principle applies to appeals of bankruptcy court orders. During the pendency of an appeal of a bankruptcy court order, however, the bankruptcy court is not divested of jurisdiction to enforce or implement the order being appealed, nor is the bankruptcy court divested of jurisdiction to decide issues and proceedings different from and collateral to those involved in the appeal. Courts have accordingly recognized a distinction in the divestment of jurisdiction between acts undertaken to enforce the judgment and acts which expand upon or alter it; the former being permissible and the latter**

RESPONSE TO OBJECTION OF NEUTRA LTD. TO FINAL APPROVAL OF DISCLOSURE STATEMENT AND TO CONFIRMATION OF THE THIRD AMENDED JOINT PLAN FOR ACIS CAPITAL MANAGEMENT, L.P. AND ACIS CAPITAL MANAGEMENT GP, LLC

PAGE 8 OF 18

> **prohibited. The application of the distinction in the case law between acts of enforcement and acts of alteration is most germane in the context of a Chapter 11 bankruptcy case which involves the court's issuance of innumerable orders involving a myriad of issues, one or more of which may be on appeal at any given moment.**
>
> **. . . .**
>
> **If the divestiture doctrine were to be applied in a way that divests bankruptcy courts of jurisdiction over all issues relevant to confirmation on which the court has previously ruled and are the subject of a pending appeal, this would lead to an absurd result — courts would likely decline to rule on any issues that could be implicated at confirmation for fear of interfering with a debtor's ability to emerge from chapter 11. Moreover, it would effectively cede control of the conduct of a chapter 11 case to disappointed litigants. This cannot be, and is not, the law.**

*In re Sabine Oil & Gas Corp.*, 548 B.R. 674, 679-80 (Bankr. S.D.N.Y. 2016) (internal citations and quotation marks omitted; emphasis added); *see also Claridge Assocs., LLC v. Schepis (In re Pursuit Capital Mgmt. LLC)*, Adv. No. 16-50083 (LSS), 2018 Bankr. LEXIS 1578, at *16-18 (Bankr. D. Del. June 9, 2017) (discussing the divesture doctrine and citing *In re Bd. of Dirs. of Hopewell Int'l Ins. Ltd.*, 258 B.R. 580 (Bankr. S.D.N.Y. 2001), which held that an appeal of an order for relief under Section 304 of the Bankruptcy Code did not divest the bankruptcy court of its ability to rule on discovery issues and "because the appellants did not obtain a stay of the order granting the § 304 petition, the court had a continuing duty to administer the case").

18.     Likewise, the Fifth Circuit has recognized the potential for parties to use the appeals process and "divestiture of jurisdiction rule" as an intentional dilatory tactic that "forecloses without remedy the non-appealing party's right to continuing trial court jurisdiction, and inhibits the smooth and efficient functioning of the judicial process." *United States v. Dunbar*, 611 F.2d 985, 988 (5th Cir. 1980) (quoting *United States v. Hitchmon*, 602 F.2d 689, 694 (5th Cir. 1979)).

19.     Neutra also failed to obtain a stay pending appeal under Rule 8007.  When an order for relief is entered on an involuntary petition and the order for relief is then appealed, the bankruptcy court maintains jurisdiction over the case unless the appellant obtains a stay pending appeal.  *See In re Byrd*, No. 04-35620-TJC, 2007 WL 4287548, 2007 Bankr. LEXIS 4126, at *21 (Bankr. D. Md. Dec. 5, 2007) ("[The Debtor's] contention that the Bankruptcy Court lacked jurisdiction over the case until his appeal to the District Court of the order for relief was resolved . . . was unsupportable, since the order for relief was never stayed pending appeal."); *In re Hamilton Taft & Co.*, No. C91-3518-JPV, 1992 U.S. Dist. LEXIS 3297, at *9 (N.D. Cal. Mar. 9, 1992) (explaining that when the debtor did not seek a stay pending appeal of an order for relief, the trustee was able to approve various matters in the bankruptcy case, including a sale of assets and closing down of the debtor company).

20.     Thus, the fact that Neutra appealed the Orders for Relief does not take away this Court's subject matter jurisdiction to confirm the Plan because the issues on appeal are distinct from those being considered at confirmation.  As noted, as to the predominant arbitration issue being appealed by Neutra, there is controlling Fifth Circuit law that Neutra simply does not bother citing to this Court in the Neutra Objection.  Further, this Court maintains jurisdiction over these Bankruptcy Cases because Neutra has failed to obtain a stay pending appeal of the Orders for Relief under Rule 8007.

**B.      The Absolute Priority Rule Does Not Apply To The Plan**

21.     As a threshold matter, the Plan does not implicate the absolute priority rule in any way.  The Plan does not provide that **current** equity will retain any property.  The absolute priority rule is only implicated if "the holder of any claim or interest that is junior to the claims

of such [impaired unsecured] class will not receive or retain under the plan on account of such junior claim or interest any property." *See* 11 U.S.C. § 1129(b)(2)(B)(ii).[3]

22.     Additionally, Neutra confuses the amount and validity of Terry's secured claim with the consideration he is contributing for the equity interest under the Plan.  It is clear from the Plan that Terry's approximately $8 million claim will be reduced by $1 million and he will give up any rights he has to assert a secured claim (whether valid or not).  This consideration takes into account the fact that Terry asserts a partially secured claim, but he is not simply "trading" an approximately $634,000 secured claim for the equity of the Debtors.  Terry is taking a $1 million dollar-for-dollar reduction to his **entire** claim.

C.     **The Lack of Exclusivity Provided by Section 1121(c)(1) of the Bankruptcy Code Meets the Market Test of *Bank of Am. Nat'l Tr. & Sav. Ass'n v. 203 N. Lasalle St. P'ship*, 526 U.S. 434 (1999)**

23.     To the extent the new value exception/corollary is at issue in the Plan (which it is not), there has been a market test consistent with *Bank of Am. Nat'l Tr. & Sav. Ass'n v. 203 N. Lasalle St. P'ship*, 526 U.S. 434 (1999).  As the Trustee was appointed on May 14, 2018, no party has held the exclusive right to propose a plan of reorganization during this Chapter 11 case.  *See* 11 U.S.C. § 1121(c)(1).  Numerous courts have held that the termination of exclusivity satisfies the market test discussed in *203 N. Lasalle*.  *See In re Dave's Detailing, Inc.*, Case No. 13-08077 (RLM), 2015 Bankr. LEXIS 2528, *59-60 (Bankr. S.D. Ind. 2015) ("[t]he termination of exclusivity provides an open market for competition in the form of competing plans.  Debtor's exclusivity to propose a plan of reorganization ended on March 27, 2015.  Any

---

[3] *Bank of Am. Nat'l Tr. & Sav. Ass'n v. 203 N. Lasalle St. P'ship*, 526 U.S. 434, 442 -454 (1999), contains a lengthy discussion of the absolute priority rule, the history of such rule, the codification of such rule in the Bankruptcy Code, and the implications of such rule to existing equity.  *203 N. Lasalle* does not in any way seek to interpret Section 1129(b)(2)(B)(ii) outside the confines of current equity maintaining its equity position.

party in interest has been free to propose a competing plan at any time since exclusivity ended. This open market is sufficient competition to satisfy §1129."); *see also In re SM 104 Ltd.*, 160 B.R. 202, 227 (Bankr. S.D. Fla. 1993) ("[r]ather, at least in all but the largest bankruptcy cases, the disclosure and confirmation procedures provided by Chapter 11 offer an acceptable alternative for marketing the ownership interests of the reorganized debtor…If the debtor's exclusivity period has ended or been terminated, any creditor can propose a competing plan incorporating an attempt to outbid old equity for the equity in the reorganized debtor."); *In re Situation Mgmt. Sys.*, 252 B.R. 859, 864-864 (Bankr. D. Mass. 2000) (following the reasoning of *In re SM 104 Ltd.*, "that competing plans provide a better method for valuation of reorganized equity interests when new value plans are proposed because the Code's disclosure requirements generate informed competing bids for the new equity."); *In the Matter of Homestead Partners, Ltd.*, 197 B.R. 706, 716-717 (Bankr. N.D. Ga. 1997) ("[c]ompeting plans certainly would foster alternate bids for control of the reorganized debtor, and would thereby dispel any concerns regarding the necessity and value of the shareholder's offer...  As such, putting an end to the Debtor's exclusive plan-making rights merits consideration as one means by which to solve the non-competition problem."); *H.G. Roebuck & Son, Inc. v. Alter Communs.*, Inc., Civil Action No. RDB-11-0157, 2011 U.S. Dist. LEXIS 59781, *23 (D. Md. June 3, 2011) ("[b]ecause no other creditor was permitted to file a competing reorganization plan, any analysis of whether the expert's valuation is sufficient to constitute a market test would necessarily be conducted in a vacuum by the court—precisely what LaSalle cautions against.  Indeed, if the Bankruptcy Court simply allowed Roebuck to file a competing plan, and the creditors found that plan to be inferior, they could still vote for Alter's original plan, and LaSalle would have been satisfied.").

24. *203 N. Lasalle* itself recognized that termination of exclusivity is a significant (and possibly required) indicator of a market test. "It would thus be necessary for old equity to demonstrate its payment of top dollar, but this it could not satisfactorily do when it would receive or retain its property under a plan giving it exclusive rights and in the absence of a competing plan of any sort. Under a plan granting an exclusive right, making no provision for competing bids or competing plans, any determination that the price was top dollar would necessarily be made by a judge in a bankruptcy court, whereas the best way to determine value is exposure to a market." *203 N. Lasalle*, 526 U.S. at 457.

25. Highland Capital, Neutra, Highland CLO Funding, Ltd.—or literally any interested party—could have filed a plan at any time during these Bankruptcy Cases. In fact, the Highlands, who have long been proponents of converting these Bankruptcy Cases, could have filed a liquidating plan contemporaneously with their *Motion for an Order Dismissing the Debtors' Chapter 11 Cases or, in the Alternative, Converting the Cases to Chapter 7 for Cause* [Docket No. 598] and allowed creditors and the Court to decide if the Plan or the Highlands' hypothetical liquidating plan was preferable. Of course, the Highlands did none of this. Thus, even after indulging Neutra's hopelessly flawed premise regarding the absolute priority rule and *203 N. Lasalle*, it is clear there has been a sufficient market test.

**D.    Neutra (and All the Highlands) Has Claimed Throughout This Case That There is No or Very Little Equity Value in Acis**

26. Neutra's Motion to Intervene is very clear that Neutra "incorporate[s] and rel[ies] upon in entirety the legal arguments and evidence presented by the Alleged Debtors in opposing the Involuntary Petition." Motion to Intervene p. 10. As such, Neutra adopted the evidence presented by Acis at the trial on the involuntary petitions. As this Court may recall, one of Acis's

main arguments in opposition to the entry of the Orders for Relief was that there was no going concern value of Acis, and Neutra has adopted this testimony.

27. For example, David Klos, a certified public account and Controller for Highland Capital (which controls Neutra), declared under penalty of perjury that "As of January 29, 2018, Acis LP's net worth, calculated as book value of total assets minus book value of total liabilities, is $990,141." *See Declaration of David Klos Concerning Defendant's Net Worth* (the "<u>Klos Affidavit</u>")[4] ¶ 5. The Klos Affidavit is attached hereto as **Exhibit "D".** The Klos Affidavit[5] also listed the estimated total equity value of Acis LP on February 1, 2018 as **$35,709**. *See* Kloss Affidavit p. 9. Additionally, the Klos Affidavit failed to account for Terry's judgment. The addition of Terry's $8 million judgment to the balance sheet attached to the Klos Affidavit would have dramatically increased the liabilities and, therefore, necessarily decreased the equity value to *minus* $8 million.

28. Acis's *Schedules and Statement of Financial Affairs* signed by Isaac Leventon, in-house counsel for Highland Capital (which controls Neutra), swore under penalty of perjury that Acis LP had assets worth approximately $4.3 million and liabilities in excess of $11 million and Acis GP had no assets and liabilities in excess of $11 million. *See* Case No. 18-30264l, Docket Nos. 164 & 165 & 18-30265, Docket Nos. 151 & 152. Thus, Acis has negative equity value of roughly *minus* $7 million.

---

[4] Acis and Mr. Terry filed a *Joint Exhibit List of Acis Capital Management, L.P. and Acis Capital Management GP, LLC and Joshua N. Terry for Hearings Commencing March 21, 2018* [Docket 70] (the "<u>Agreed Exhibit List</u>"). The Klos Affidavit and many other exhibits were stipulated and admitted by agreement as evidenced by the Agreed Exhibit List. Therefore, Neutra adopted the Klos Affidavit.
[5] Additionally, Isaac Leventon, an in-house lawyer employed by Highland, adopted the Klos Affidavit and the equity value listed therein. Isaac Leventon also testified that Mr. Terry's approximately $8,000,000.00 judgment was not listed on the Klos Affidavit and attached balance sheet. *See* Hearing Transcript (March 22, 2018) at 77:15-85:9, attached hereto as **Exhibit "E."**

29.    Acis and Acis's witnesses repeatedly stated during the involuntary trial and related hearing that Acis had no going concern value.  For example, Scott Ellington, counsel for Highland, had the following exchange with the Court on February 7, 2018:[6]

```
22        THE COURT:  Do you think Acis is in the zone of
23  insolvency?
24        THE WITNESS:  I don't know the answer to that, but I
25  would -- I would assume that it was -- that it's close.  I
```

```
                              Colloquy                    220
 1  mean, I haven't had an analysis done, but it has an awful lot
 2  of creditors and --
 3        THE COURT:  Well, even if it just has one --
 4        THE WITNESS:  Correct.
 5        THE COURT:  -- it doesn't have more than eight or
 6  nine million of assets?
 7        THE WITNESS:  Yes.
```

## E.    Incorporate By Reference

30.    The Trustee incorporates by reference his *Response to Joint Objection of Highland Capital Management, LP and Highland CLO Funding, Ltd. to Final Approval of Disclosure Statement and to Confirmation of the Third Amended Joint Plan for Acis Capital Management, LP and Acis Capital Management GP, LLC*, which is filed contemporaneously with this Response.

---

[6] Hearing Transcript (February 7, 2018) at 219:22-220:7, attached hereto as **Exhibit "F."**  The February 7, 2018 hearing transcripts and many other exhibits were stipulated and admitted by agreement as evidenced by the Agreed Exhibit List.

## PRAYER

**WHEREFORE**, the Trustee respectfully requests that the Court enter an order (i) confirming the Plan; (ii) denying Neutra' s Objection; and (iii) granting such other and further relief as is appropriate and just under the circumstances.

**Dated:  December 5, 2018.**

RESPONSE TO OBJECTION OF NEUTRA LTD. TO FINAL APPROVAL OF
DISCLOSURE STATEMENT AND TO CONFIRMATION OF THE THIRD
AMENDED JOINT PLAN FOR ACIS CAPITAL MANAGEMENT, L.P. AND
ACIS CAPITAL MANAGEMENT GP, LLC

PAGE 16 OF 18

**WINSTEAD PC**
500 Winstead Building
2728 N. Harwood Street
Dallas, Texas 75201
(214) 745-5400 (Phone)
(214) 745-5390 (Facsimile)

By: */s/ Phillip Lamberson*
Rakhee V. Patel - State Bar No. 00797213
Phillip Lamberson - State Bar No. 00794134
Joe Wielebinski - State Bar No. 21432400
rpatel@winstead.com
plamberson@winstead.com
jwielebinski@winstead.com

**SPECIAL COUNSEL FOR THE
CHAPTER 11 TRUSTEE**

-and-

Jeff P. Prostok - State Bar No. 16352500
J. Robert Forshey - State Bar No. 07264200
Suzanne K. Rosen - State Bar No. 00798518
Matthias Kleinsasser - State Bar No. 24071357
**FORSHEY & PROSTOK LLP**
777 Main St., Suite 1290
Fort Worth, Texas 76102
Telephone: (817) 877-8855
Facsimile: (817) 877-4151
jprostok@forsheyprostok.com
bforshey@forsheyprostok.com
srosen@forsheyprostok.com
mkleinsasser@forsheyprostok.com

**COUNSEL FOR THE CHAPTER 11
TRUSTEE**

**RESPONSE TO OBJECTION OF NEUTRA LTD. TO FINAL APPROVAL OF
DISCLOSURE STATEMENT AND TO CONFIRMATION OF THE THIRD
AMENDED JOINT PLAN FOR ACIS CAPITAL MANAGEMENT, L.P. AND
ACIS CAPITAL MANAGEMENT GP, LLC**

**PAGE 17 OF 18**

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on December 5, 2018, notice of this document will be electronically mailed to the parties that are registered or otherwise entitled to receive electronic notices in this case pursuant to the Electronic Filing Procedures in this District.

*/s/ Phillip Lamberson*
One of Counsel

RESPONSE TO OBJECTION OF NEUTRA LTD. TO FINAL APPROVAL OF      PAGE 18 OF 18
DISCLOSURE STATEMENT AND TO CONFIRMATION OF THE THIRD
AMENDED JOINT PLAN FOR ACIS CAPITAL MANAGEMENT, L.P. AND
ACIS CAPITAL MANAGEMENT GP, LLC
4815-7135-0401v.12
62112-1 12/5/2018