Rakhee V. Patel – State Bar No. 00797213
Phillip Lamberson – State Bar No. 00794134
Joe Wielebinski – State Bar No. 21432400
**WINSTEAD PC**
500 Winstead Building
2728 N. Harwood Street
Dallas, Texas 75201
Telephone: (214) 745-5400
Facsimile: (214) 745-5390
rpatel@winstead.com
plamberson@winstead.com
jwielebinski@winstead.com

Jeff P. Prostok – State Bar No. 16352500
J. Robert Forshey – State Bar No. 07264200
Suzanne K. Rosen – State Bar No. 00798518
Matthias Kleinsasser – State Bar No. 24071357
**FORSHEY & PROSTOK LLP**
777 Main St., Suite 1290
Fort Worth, Texas 76102
Telephone: (817) 877-8855
Facsimile: (817) 877-4151
jprostok@forsheyprostok.com
bforshey@forsheyprostok.com
srosen@forsheyprostok.com
mkleinsasser@forsheyprostok.com

**SPECIAL COUNSEL FOR THE CHAPTER 11 TRUSTEE**

**COUNSEL FOR THE CHAPTER 11 TRUSTEE**

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE NORTHERN DISTRICT OF TEXAS
## DALLAS DIVISION

| | | |
|---|---|---|
| IN RE: | § | **Case No. 18-30264-SGJ-11** |
| | § | **Case No. 18-30265-SGJ-11** |
| **ACIS CAPITAL MANAGEMENT, L.P.,** | § | |
| **ACIS CAPITAL MANAGEMENT GP, LLC,** | § | **(Jointly Administered Under Case No. 18-30264-SGJ-11)** |
| | § | |
| **DEBTORS.** | § | **Chapter 11** |

## OBJECTION TO HIGHLAND CAPITAL MANAGEMENT, L.P.'S APPLICATION FOR ADMINISTRATIVE EXPENSE CLAIM PURSUANT TO 11 U.S.C. § 503(b)

**TO THE HONORABLE STACEY G.C. JERNIGAN, UNITED STATES BANKRUPTCY COURT JUDGE:**

Robin Phelan, the Chapter 11 Trustee (the "Trustee") for Acis Capital Management, L.P. ("Acis LP") and Acis Capital Management GP, LLC ("Acis GP", with Acis LP, "Debtors" or "Acis"), Debtors in the above-referenced bankruptcy cases (the "Bankruptcy Cases"), files this objection (this "Objection") to *Highland Capital Management, L.P.'s Application for Administrative Expense Claim Pursuant to 11 U.S.C. § 503(b)* [Docket No. 772] (the "Application") and respectfully states as follows:

# I.  SUMMARY OF OBJECTION[1]

1.      Aside from a fleeting reference to the Amended Counterclaims filed by the Trustee, Highland Capital fails to substantively address any of the causes of action brought against it in connection with its prepetition claims, which bear directly on whether the Court should approve Highland Capital's Administrative Claim.  Just as the Amended Counterclaims refute Highland Capital's purported prepetition claims, the causes of action asserted against Highland Capital in the Amended Counterclaims militate against allowance of its Administrative Claim.  Further, to the extent the Amended Counterclaims constitute compulsory counterclaims to Highland Capital's Administrative Claim and must be determined through an adversary proceeding, the Application should be converted to an adversary proceeding and consolidated with the Amended Counterclaims.[2]  The Trustee also objects to the allowance of Highland Capital's Administrative Claim under section 502(d) of the Bankruptcy Code, which objection may be lost if the Application is not heard concurrently with the Amended Counterclaims.  Accordingly, the Court should hear and determine Highland Capital's Application in conjunction with the Adversary Proceeding.

2.      Notwithstanding the fact that Highland Capital's Application should be converted to an adversary and consolidated with the existing Adversary Proceeding, the Court should deny the Application because Highland Capital fails to meet the standard under 11 U.S.C. § 503(b) for allowance of its Administrative Claim.  As expounded throughout the Amended Counterclaims, rather than provide services that "enhanced the ability of the debtor's business to function" or that contributed to "the successful reorganization of the debtor's estate," Highland Capital did the

---

[1] Any capitalized term not otherwise defined in this Summary of Objection shall have the meaning ascribed to such term later in this Objection.

[2] The Trustee is filing a motion to convert the Application to an adversary proceeding and consolidate it with the Trustee's existing Adversary Proceeding shortly after the filing of this Objection.

opposite: at every turn since the summer of 2016, Highland Capital orchestrated and carried out its elaborate fraudulent scheme to strip Acis of its assets, attempted to undermine any reorganization of Acis's business, and attempted to ensure that Acis's creditors received little to nothing of value. The fact is that during these Bankruptcy Cases, Highland Capital did nothing to benefit the estates. Indeed, considering Highland Capital's actions to steal or otherwise ruin Acis's business, awarding Highland Capital with an administrative claim would represent a subversion of the Bankruptcy Code's priority scheme.

3.      Furthermore, even if Highland Capital were entitled to any amounts as an administrative expense, the Trustee objects to payment of any allowed Administrative Claim before the resolution of the Trustee's Amended Counterclaims because the Trustee possesses rights of offset and recoupment against Highland Capital, which would be lost upon the payment of any Administrative Claim to Highland Capital.  Finally, to the extent any administrative claim of Highland Capital is allowed and not entirely extinguished by Acis's rights of offset and recoupment, such claim should be equitably subordinated pursuant to 11 U.S.C. § 510(c) based on Highland Capital's inequitable conduct.

## II.      BACKGROUND

4.      On January 30, 2018 (the "Petition Date"), Joshua N. Terry ("Terry"), as petitioning creditor, filed involuntary petitions under section 303 of the Bankruptcy Code against both Acis LP and Acis GP, thereby initiating the Bankruptcy Cases. *See* Docket No. 1.

5.      On April 13, 2018, this Court entered its *Findings of Fact and Conclusions of Law in Support of Orders for Relief Issued After Trial on Involuntary Bankruptcy Petition* [Docket No. 118] (the "Opinion") and *Order for Relief in an Involuntary Case* [Docket No. 119] ("Order for Relief").

6.      On May 14, 2018, the Trustee was appointed chapter 11 trustee of the Debtors' bankruptcy estates in the Bankruptcy Cases.  *See* Docket No. 213.

7.      On May 30, 2018, Highland Capital Management, L.P. ("Highland Capital") and Highland CLO Funding, Ltd. ("Highland Funding") filed their *Original Complaint and Request for Preliminary Injunction of Highland CLO Funding, Ltd. and Highland Capital Management Against Chapter 11 Trustee of Acis Capital Management, L.P. and Acis Capital Management GP, LLC*, in which they asserted various claims against the Trustee, including for breach of contract, declaratory relief, and injunctive relief. *See* Adv. No. 18-03078, Docket No. 1.

8.      On August 1, 2018, Highland Capital filed Proof of Claim No. 27 in the claims register for Case No. 18-30264 (the "Highland Acis LP Claim"), as well as Proof of Claim No. 13 in the claims register for Case No. 18-30265 (the "Highland Acis GP Claim," together with the Highland Acis LP Claim, the "Highland Claims"), both in the amount of $4,672,140.38, with the basis of each claim listed as "Sub-Advisory Services and Shared Services."

9.      On November 13, 2018, the Trustee filed his *Defendant's Amended Answer, Counterclaims (Including Claim Objections) and Third-Party Claims* [Adv. No. 18-03078, Docket No. 84] (the "Amended Counterclaims") in which the Trustee asserted numerous counterclaims and third-party claims against Highland Capital and various of its affiliates (collectively, the "Highlands") in connection with, *inter alia*, the Highlands' scheme to fraudulently transfer Acis LP's assets to the Highlands and otherwise appropriate the business of Acis LP. *See* Adv. No. 18-03078 (the "Adversary Proceeding"), Docket No. 84.  Additionally, with the Amended Counterclaims, the Trustee included his objections to the Highland Claims pursuant to section 502(b)(1), (b)(4), and (d) of the Bankruptcy Code (the "Objections to Claim"), and further asserted that, to the extend allowed, the Highland Claims should be

equitably subordinated pursuant to section 510(c) of the Bankruptcy Code. **The Trustee incorporates herein by reference the Amended Counterclaims for all purposes**.[3]

10.     On the morning of December 11, 2018 (as the second confirmation hearing was beginning), Highland Capital filed its Application for approval of an administrative expense claim pursuant to section 503(b)(1) of the Bankruptcy Code, in the amount of $3,554,224.29 (the "Administrative Claim"), for purportedly providing postpetition services to the Debtors in connection with the Sub-Advisory Agreement, Shared Services Agreement (together with the Sub-Advisory Agreement, the "Sub Agreements"), as well as the Universal/BVK Agreement, which Highland Capital contends were actual, necessary costs and expenses of preserving the estate.

### III.     OBJECTION

**A.     Highland Capital's Administrative Claim is subject to disallowance for the same reasons set forth in the Amended Counterclaims, including pursuant to Section 502(d), and the Application should be heard with the Adversary Proceeding.**

**(1)     The resolution of the Amended Counterclaims may mandate the disallowance of Highland Capital's Administrative Claim.**

11.     In its Application, without directly citing the Amended Counterclaims or making any reference whatsoever to the Objections to Claim contained therein, Highland Capital asserts that the Trustee "apparently has furthered a theory that Highland overcharged the Debtors," but must "provide evidence, not simply allegations, to rebut the prima facie case that Highland is entitled to an administrative claim."  Application ¶ 33. Highland Capital then rashly contends that the Trustee "has provided no such evidence" and that "the Contracts speak for themselves and are the best evidence of the validity of the claim asserted by Highland." *Id*. A simple review of the Amended Counterclaims (as well as evidence presented in connection with the involuntary

---

[3] Any capitalized term not otherwise defined herein shall have the meaning ascribed to such term in the Amended Counterclaims.

hearings, confirmation hearings, and other hearings during these Bankruptcy Cases) belies its position and demonstrates otherwise.

12. As is discussed below, Highland Capital must demonstrate that the services provided conferred a direct and substantial benefit on the Debtors' estate. And before Highland Capital can ask the Court to assess whether its services provided the required direct and substantial benefit, it must first demonstrate that it had the right to even charge the Debtors the amount set forth in the agreements. Here, the causes of action asserted against Highland Capital in the Amended Counterclaims, which dispute the amounts charged by Highland Capital, directly implicate the validity of, and support the disallowance of, the Administrative Claim (just as they refute Highland Capital's purported prepetition claims). The Trustee therefore expressly incorporates herein Counts 1, 5 – 8, and 27 – 31 of the Amended Counterclaims and specifically raises such Counts as objections to the Administrative Claim asserted by Highland Capital in the Application.

13. Such Counts may be broadly summarized as follows:

a. To the extent amounts charged postpetition by Highland Capital under the Sub Agreements are unauthorized, in violation of Section 3.10(a) of the LPA, such amounts are invalid. *See* Amended Counterclaims ¶¶ 81-84 (Count 1).[4]

b. Modifications to the Sub Agreements, beginning in the summer of 2016, particularly with respect to the substantial increase in fees under the Sub Agreements, created obligations that were actually and constructively fraudulently incurred under section 548 of the Bankruptcy Code and sections 24.005 and 24.006 of TUFTA. *See id.* ¶¶ 99-116 (Counts 5, 6, 7, and 8).

c. As part of the broader scheme to denude Acis, Highland Capital, in concert with the Highlands, Dondero, and Waterhouse, conspired to commit fraud, including the fraudulent transfers, and to breach fiduciary duties owed to Acis LP pursuant to the Sub Agreements; similarly, Highland Capital also aided and abetted a breach of fiduciary duties owed to Acis. *See id.* ¶¶ 201-222 (Counts 27, 28, and 29).

---

[4] In July 2016, the LPA was purportedly amended to remove Terry as a member of the Founding Partner Group; however, the effect of this amendment is questionable.

    d.    After the involuntary petitions were filed, and continuing after the Trustee was appointed, Highland Capital tortiously interfered with the Universal/BVK Agreement by scheming to remove Acis LP as sub-advisor and attempting to appropriate Acis LP's rights under the Universal/BVK Agreement by transferring the agreement to Highland Capital. *See id.* ¶¶ 223-228 (Count 29a).[5]

    e.    Highland Capital breached its obligations owed to Acis LP, pursuant to sections 1(b) and 4(a) of the Sub-Advisory Agreement by, *inter alia*, grossly mismanaging the CLOs, in abrogation of its duties and disregard of the standard of care under the Sub-Advisory Agreement; Highland Capital also breached fiduciary duties owed to Acis LP under the Sub-Advisory Agreement, based on the principal-agent relationship between Highland Capital and Acis LP, by purposefully engaging in conduct, while sub-advisor to Acis LP, that was detrimental to Acis LP in order to enrich itself, including charging amounts in excess of appropriate market rates and in compensation limits of the LPA, as well as acting as the ringleader in the fraudulent scheme to denude Acis LP. *See id.* ¶¶ 229-239 (Counts 30 and 31).

14.    If the Trustee prevails against Highland Capital in the Adversary Proceeding, the basis for allowance of the Administrative Claim would also be invalidated. Moreover, as discussed below, based on the claims asserted against Highland Capital in the Adversary Proceeding, the Trustee is entitled to recover millions of dollars in damages, all of which may be offset against the Administrative Claim. The Administrative Claim cannot be allowed or paid until the Trustee's claims against Highland Capital have been fully adjudicated and, therefore, must be considered concurrently with the Trustee's claims in the Adversary Proceeding.

    **(2)    Highland Capital's Administrative Claim is subject to disallowance under section 502(d), and its consideration should therefore be deferred.**

15.    In the Amended Counterclaims, the Trustee asserts claims against Highland Capital for, e.g., (i) avoidance of actual and constructively fraudulent transfers and obligations pursuant to sections 544 and 548 of the Bankruptcy Code, (ii) avoidance of preferential transfers pursuant to section 547 of the Bankruptcy Code, (iii) turnover of property of the estate pursuant

---

[5] Both causes of action for aiding and abetting breach of fiduciary duties and tortious interference with Universal/BVK Agreement are labeled as Count 29 in the Amended Counterclaims; the tortious interference claim will therefore be referred to herein as Count 29a.

to section 542 of the Bankruptcy Code, and (iv) liability for the foregoing under section 550 of the Bankruptcy Code.[6] Because Highland Capital is alleged to have received fraudulent transfers, its Administrative Claim is subject to disallowance under section 502(d) until the property or its value has been returned to the Debtors. "Under section 502(d), 'the court shall **disallow** any claim of any entity . . . that is a transferee of a transfer avoidable under section . . . 544 [or 548] of this title, unless such . . . transferee has paid the amount, or turned over any such property.'" *In re Consol. Capital Equities Corp.*, 143 B.R. 80, 84 (Bankr. N.D. Tex. 1992) (quoting 11 U.S.C. § 502(d)) (emphasis in original).

16.     Further, application of section 502(d) is not restricted to cases where a fraudulent transfer has already been avoided, but rather applies to pending fraudulent transfer claims as well. In other words, the statute does not require that the transfer actually be avoided, only that it be "avoidable." *Id.* As a result, once a fraudulent transfer claim has been asserted, the mandatory language of section 502(d) requires bankruptcy courts to consider the fraudulent transfer issue as a component of the claims allowance process. *U.S. Bank N.A. v. Verizon Communs., Inc.*, 761 F.3d 409, 419 (5th Cir. 2014) (finding mandatory language of section 502(d) precluded the court from resolving claims where the trustee alleged the claimant was the transferee of a fraudulent transfer).

17.     Finally, although Highland Capital's Application involves an administrative claim, nothing in section 502(d) limits its application to prepetition claims. *MicroAge, Inc. v. Viewsonic Corp. (In re MicroAge, Inc.)*, 291 B.R. 503, 508 (B.A.P. 9th Cir. 2002). Section 502(d) by its terms applies to "any claim" and the definition of a "claim" in section 101(5) is sufficiently broad to include requests for payment of expenses of administration. *Id.* Because

---

[6] *See* Amended Counterclaims, ¶¶ 85-91 (Count 2), 99-102 (Count 5), 107-110 (Count 7), 117-120 (Count 9), 125-128 (Count 11), 135-138 (Count 13), 143-146 (Count 15), 153-156 (Count 17), 161-164 (Count 19), 171-174 (Count 21), 179-182 (Count 23), 189-193 (Count 25), 194-200 (Count 26).

the objective of section 502(d) is to encourage transferees to return avoidable transfers to the estate, a number of courts have held that section 502(d) applies to administrative claims. *See, e.g., id.* at 508-12; *In re Georgia Steel*, 38 B.R. 829, 839-40 (Bankr. M.D. Ga. 1984) (applying section 502(d) and stating, "[t]he fact that [the] claim is for an administrative expense has no bearing").

18.     Here, the Trustee asserts Highland Capital is the recipient of certain preferential payments and/or fraudulent transfers. The fact that the Trustee's avoidance claims have not yet been adjudicated is irrelevant. Thus, the plain language of section 502(d) requires that its Administrative Claim be disallowed in its entirety.

19.     Although the Trustee asserts that Highland Capital's Administrative Claim is subject to disallowance under section 502(d) as the recipient of fraudulent transfers, he acknowledges that the courts are split on the issue of whether section 502(d) applies to administrative expenses. *Compare MicroAge, Inc.,* 291 B.R. at 508-512 (considering split of authority and finding that "the better analysis is that § 502(d) may be raised in response to the allowance of an administrative claim"), *and Georgia Steel,* 38 B.R. at 839-40 (finding the fact that the claim "is for an administrative expense has no bearing" for purposes of section 502(d)), *with In re Plastech Engineered Prods.,* 394 B.R. 147, 164 (Bankr. E.D. Mich. 2008) (concluding that "§ 502(d) does not apply to the allowance and payment of administrative expenses under § 503(b)"). Although not binding on this Court, the Trustee further notes that one bankruptcy court in this district has found that section 502(d) does not apply to administrative claims. *Rand Energy Co. v. Del Mar Drilling Co. (In re Rand Energy Co.),* 256 B.R. 712, 719 (Bankr. N.D. Tex. 2000) (Felsenthal, J.).

20. Should the Court agree with the line of cases holding that section 502(d) applies to claims for administrative expenses, it is clear that section 502(d) can only be raised by the Trustee to defeat the *allowance* of Highland Capital's Administrative Claim, and cannot be raised after the fact to avoid *payment* of an allowed claim. *MicroAge*, 291 B.R. at 513. Thus, to avoid the potential loss of the Trustee's section 502(d) objection, the Court should defer its consideration of the Application and decide it concurrently with the resolution of the Trustee's avoidance claims in the Adversary Proceeding.

**(3)     The indemnity provisions relied on by Highland Capital are invalid and, in any event, do not apply to Highland Capital's intentional torts.**

21. In the Application, Highland Capital also asserts defenses against the causes of action brought in the Amended Counterclaims pursuant to its purported indemnity rights against the Debtors under section 6.03 of the Shared Services Agreement and section 4(c) of the Sub-Advisory Agreement. Application ¶ 34. Any contention by Highland Capital that it is immune from liability arising from the causes of action brought against it in the Amended Counterclaims, or herein, due to the indemnity provisions of the Sub Agreements lacks merit. First, the indemnity provisions cited by Highland Capital were included only in the last iteration of the Sub Agreements, in March 2017. Thus, even if valid and applicable (which they are not), such provisions do not cover actions of Highland Capital prior to March 2017. Second, to the extent that the indemnity provisions in the Sub Agreements were included in an attempt to shield Highland Capital from liability in connection with its fraudulent scheme to denude Acis (and were added for no consideration), such provisions were themselves fraudulently incurred and should be avoided pursuant to section 548 of the Bankruptcy Code and sections 24.005 and

24.006 of TUFTA.[7]   Further, the protection Highland Capital seeks is outside the scope of the indemnity provisions, which indemnify Highland Capital in connection with its actions taken as sub-advisor under the Sub Agreements—not in connection with torts and other wrongful conduct intentionally committed against Acis as part of Highland Capital's calculated scheme to denude the estate. Finally, it is against public policy for indemnity provisions in contract to shield a party from intentional tortious conduct. *See, e.g., Hamblin v. Lamont*, 433 S.W.3d 51, 55 (Tex. App.— San Antonio 2013, pet. denied); *In re Oil Spill by the Oil Rig*, 841 F. Supp. 2d 988, 1001-02 (E.D. La. 2012). Accordingly, such provisions are inapplicable as a defense to the causes of action asserted against Highland Capital in the Amended Counterclaims or herein.

**B.**     **Highland Capital cannot satisfy its burden of proving its services directly and substantially benefitted the Debtors' estate.**

**1.**     **Administrative priority status is narrowly construed and only awarded upon a showing of a direct and substantial benefit on the estate.**

22.     Under section 503(b)(1) of the Bankruptcy Code, an administrative expense claim shall be allowed for "the actual, necessary costs and expenses of preserving the estate." 11 U.S.C. § 503(b)(1)(A). The ultimate burden of proof is on Highland Capital to establish it is entitled to an administrative priority claim pursuant to 11 U.S.C. § 503(b). *See In re Transamerican Natural Gas Corp*., 978 F.2d 1409, 1416 (5th Cir. 1992).   Further, because section 503 administrative claims are priority claims, which are entitled to special treatment, section 503 must be narrowly construed.  *See In re Templeton,* 154 B.R. 930, 934 (Bankr. W.D. Tex. 2009); *see also In re Federated Dep't Stores, Inc.*, 270 F.3d 994, 1000 (6th Cir. 2001) ("Claims for administrative expenses under § 503(b) are strictly construed because priority claims reduce the funds available for creditors and other claimants.").

---

[7] Notably, all versions prior to the last iteration of the Sub-Advisory Agreement (before March 2017) contained no indemnity provision; also, it is telling that the indemnity provisions were added to the Sub-Advisory Agreement and significantly amended in the Shared Services Agreement only after arbitration had been ordered in state court.

23.     At a minimum, Highland Capital must establish that "(1) the claim arises from a transaction with the [debtor]; and (2) the goods or services supplied enhanced the ability of the [debtor's] business to function." *See Total Minatome Corp. v. Jack/Wade Drilling, Inc. (In re Jack/Wade Drilling, Inc.)*, 258 F.3d 385, 387 (5th Cir. 2001) (citing *Transamerican*, 978 F.2d at 1416); *see also ASARCO, Inc. v. Elliott Mgmt. (In re ASARCO, LLC)*, 650 F.3d 593, 601 (5th Cir. 2011) ("Claim under this section 'generally stem from voluntary transactions with third parties who lend goods or services necessary to the successful reorganization of the debtor's estate.'") (quoting *Jack/Wade Drilling*, 258 F.3d at 387).

24.     Moreover, the benefit is measured from the point of view of the bankruptcy estate, not that of the applicant. *In re Premium Well Drilling, Inc.*, 2012 Bankr. LEXIS 1554, at *9 (Bankr. W.D. Tex. Apr. 10, 2012).  "The focus on allowance of administrative claims which enjoy priority over other creditors is to prevent unjust enrichment of the estate.  It is *not* to compensate the creditor . . . for his or her loss." *In re Am. Plumbing & Mech., Inc.*, 323 B.R. 442, 462 (Bankr. W.D. Tex. 2005) (emphasis in original).

**2.      Highland Capital cannot demonstrate it conferred a direct and substantial benefit on the Debtors' estate.**

25.     As set forth in detail in the Amended Counterclaims, and incorporated herein, as it had done prior to these Bankruptcy Cases, following entry of the Orders for Relief, Highland Capital continued perpetrating its scheme to steal, and otherwise attempted to damage, Acis's business—in order to *minimize* value for creditors and ensure that Acis could not successfully reorganize—and to line its own pockets. Aside from Highland Capital's actions in sending notices of optional redemption to liquidate the CLOs (without Court approval and arguably in violation of the automatic stay), following entry of the Orders for Relief, Highland Capital also actively mismanaged the Acis CLOs to undermine the business of the Debtors, as evidenced by,

*inter alia*, the vast disparity between the trades made in Acis CLOs 3, 4 5, and 6, as opposed to CLO 7, in 2018, as testified to by Terry at the second confirmation hearing. *See* Dec. 12, 2018 Hr'g Tr. (AM) at pp. 19-35.

26.     Additionally, while mismanaging Acis CLOs 3, 4 5, and 6, Highland Capital sought to carry out its plan "to transfer the BVK investment management agreement from Acis LP to another Highland-affiliated manager."[8] As detailed in the Amended Counterclaims, Highland Capital's attempt to steal BVK's business from Acis began from nearly day one of these Bankruptcy Cases and continued even after Highland Capital was terminated as sub-advisor on August 1, 2018—when Highland Capital no longer had any legitimate reason to communicate with Universal or BVK.

27.     Highland Capital's actions during the pendency of these Bankruptcy Cases demonstrate that Highland Capital did not service the Acis CLOs in a way that "enhanced the ability of the [debtor's] business to function." *Transamerican*, 978 F.2d at 1416. Indeed, Highland Capital acted to destroy the Debtors' business—therefore, Highland Capital's request for allowance of its Administrative Claim must be denied.

28.     In its Application, Highland Capital essentially asserts that it provided services to the Debtors on a postpetition basis pursuant to various prepetition agreements and, therefore, the expenses are entitled to administrative priority. In order to qualify as an administrative expense, however, Highland Capital must show that its claim arose postpetition "as a result of actions by the trustee that benefitted the estate." *Id.* Further, although the terms of the Debtors' prepetition contracts may be probative of the reasonable value of postpetition services, they are not dispositive. *In re Am. Plumbing & Mech., Inc.*, 323 B.R. at 462. Indeed, "all that the estate is

---

[8] *See* Amended Counterclaims, Ex. K (email chain from early February 2018 between Mike Warner (Acis's counsel), Isaac Leventon (Highland Capital's in-house counsel), Timothy Cournoyer (Highland Capital's in-house counsel) and Thomas Surgent (Highland Capital's Chief Compliance Officer)).

required to pay is the *reasonable value* of those services which were rendered." *Id.* (emphasis in original) (citing *NLRB v. Bildisco & Bildisco*, 465 U.S. 513, 531, 104 S. Ct. 1188, 79 L. Ed. 2d 482 (1984). Consequently, the provisions of the prepetition contracts do not automatically and dispositively translate into an allowed administrative claim. Highland Capital must still demonstrate a quantifiable benefit to the estate.

29. Highland Capital's presentation of evidence that its costs were incurred postpetition fails to satisfy its burden of proving entitlement to administrative priority. Specifically, aside from producing the Sub-Agreements, the Universal/BVK Agreement, and a chart reflecting the monies it contends are owed to it as an administrative expense, Highland Capital has failed to show that (i) such costs were necessary for the preservation of the Debtors' estate, and (ii) the Debtors received any benefit, let alone a direct and substantial benefit, as a result of such services and expenses.

### 3. The amount charged by Highland Capital was inflated and unnecessary.

30. Further, even if Highland Capital could show that, rather than undermining Acis's business, it provided postpetition services that enhanced the ability of Acis to function, to the extent the rates Highland Capital charged Acis were inflated or above market, the amounts charged to Acis under the Sub Agreements did not benefit the estates or its creditors, and such inflated amounts were therefore not necessary. *See NL Indus., Inc. v. GHR Energy Corp.*, 940 F.2d 957, 966 (5th Cir. 1991) ("Courts have construed the words 'actual' and 'necessary' narrowly: the debt must benefit the estate and its creditors."). Indeed, at the July 6, 2018 hearing, regarding approval of the break-up fee and replacement of Highland Capital as sub-servicer with Oaktree, J.P. Sevilla, assistant general counsel for Highland Capital, testified that Highland

Capital would reduce its rates charged to Acis LP for sub-servicing from 35 basis points to 17.5

basis points, in order to match competing offers:

> Q    Okay. Would Highland be willing to reduce its fee
> during the pendency of the bankruptcy, maybe without its
> rights to assert the validity of the contract, but would
> Highland otherwise be willing to assert -- to reduce its
> fees during the pendency of the bankruptcy?
>
> A    I think at the very least Highland would match
> Saratoga or whatever the 17.5 bps offer is. Again,
> reserving all rights, but in order to stay in the deal
> and to establish Highland's commitment to this deal, we
> would do it for 17-1/2 basis points, no question.

July 6, 2018 Hr'g Tr. at pp. 243-44. Moreover, the effective rate for such services charged by

Brigade and Cortland also approaches 17.5 basis points.[9] *See* Amended Counterclaims ¶ 49.

Accordingly, notwithstanding the objections otherwise raised herein, and assuming the services

provided to Acis LP enhanced, rather than undermined, the ability of Acis's business to function,

such amounts should be reduced to reflect a rate of at most 17.5 basis points.

### 4.    The Trustee disputes Highland Capital's calculations.

31.    The Trustee further objects to Highland Capital's calculation of the amount of the

Administrative Claim. Subject to the objections raised herein, in the *Amended Disclosure

Statement Pursuant to Section 1125 of the United States Bankruptcy Code with Respect to the

Second Amended Joint Plan for Acis Capital Management, L.P. and Acis Capital Management

GP, LLC* [Docket No. 621] (the "<u>Disclosure Statement</u>"), the Trustee estimates that under the

terms of the Sub Agreements, Highland Capital's alleged Administrative Claim would be

approximately $2,612,574.00, rather than $3,007.678.41. The Application fails to explain or

substantiate this discrepancy. The Administrative Claim also includes $543,545.88 for expenses.

---

[9] Pursuant to the Third Amended Joint Plan, Brigade agreed to provide sub-advisory and shared services to the Acis CLOs for 15 basis points (and decreasing after one year). *See* Docket No. 661 at pp. 28, 136; *see also* Dec. 11, 2018 (PM) Hr'g Tr. at p. 89 & Dec. 12, 2018 (AM) Hr'g Tr. at p. 62.

Highland Capital fails to provide evidence that these alleged expenses were incurred or payable under the Sub Agreements. *See In re Packard Props., Ltd.*, 118 B.R. 61, 63 (Bankr. N.D. Tex. 1990) ("Since this claim is a request for payment of administrative expenses, the [creditor] carries the burden of proof throughout the entire proceeding."). Therefore, in addition to the objections herein, the Trustee also objects to Highland Capital's calculation of its purported Administrative Claim.

C.    **Highland Capital is not entitled to payment of any allowed Administrative Claim because Acis's right of offset and recoupment may reduce or eliminate its Administrative Claim.**

32.    Even if the Court were to determine that Highland Capital is entitled to an allowed Administrative Claim, it should not be entitled to immediate payment because the Debtor has rights of offset and recoupment that may be applied under section 558 of the Bankruptcy Code to reduce or eliminate any allowed Administrative Claim.[10] As indicated above, the Trustee asserts in the Adversary Proceeding that Highland Capital charged Acis excessive and unreasonable fees for its services. In this regard, the Trustee has asserted a number of claims against Highland Capital for the overcharges, including for recovery of overcharges resulting from ultra vires actions, turnover of unauthorized payments, money had and received, conversion, fraudulent transfer, civil conspiracy, breach of contract, and breach of fiduciary duty. The Trustee asserts in the Adversary Proceeding that the estate suffered many millions of dollars in damages which should be offset against any valid administrative claim awarded to Highland Capital.

---

[10] The Trustee's Third Amended Join Plan, if confirmed, provides for the payment of allowed administrative claims on (i) the later of the effective date or the tenth business day after the administrative expense is allowed, or (ii) as otherwise agreed in writing between the Reorganized Debtor, or as otherwise ordered by the Bankruptcy Court. *See* Docket No. 660 at p. 11, § 3.01(b).

33. Indeed, the Trustee's claims against Highland Capital may offset, or eliminate altogether, any right of recovery Highland Capital may have against the Debtors' estate on account of any Administrative Claim. At a minimum, it would be grossly unfair to allow Highland Capital to obtain immediate allowance and payment on account of its administrative claim before the Trustee has had an opportunity to litigate its claims against Highland Capital. The Court has discretion regarding the timing of the payment of an administrative expense. *In re Utex Commc'ns Corp.*, 457 B.R. 549, 569 (Bankr. W.D. Tex. 2011). Here, awarding Highland Capital immediate payment on account of any allowed Administrative Claim would prejudice the Debtors' estate and creditors by potentially depriving Acis of its right of offset and recoupment, which may significantly reduce or completely eliminate Highland Capital's Administrative Claim. As a result, if the Court were to award Highland Capital an allowed Administrative Claim, such order should provide that Highland Capital *is not* entitled to payment of any allowed Administrative Claim until the Trustee's claims against Highland Capital have been determined. *See, e.g., Southern Polymer, Inc. v TI Acquisition, LLC (In re TI Acquisition, LLC)*, 410 B.R. 742, 751 (Bankr. N.D. Ga. 2009) (finding "sound policy" dictates deferring payment on administrative claims until debtor's claims and rights of offset have been determined).

**D.      To the extent allowed, Highland Capital's Administrative Claim should be equitably subordinated under 11 U.S.C. § 510(c).**

34. Section 510(c) of the Bankruptcy Code expressly authorizes subordination of the allowed claim of one creditor to the allowed claims of other creditors "under principles of equitable subordination." In *Mobile Steel*, the Fifth Circuit articulated what has become the most commonly accepted standard for equitable subordination of a claim. *See Benjamin v. Diamond (In re Mobile Steel Co.)*, 563 F.2d 692, 699-702 (5th Cir. 1977). Under the *Mobile Steel* standard, a claim can be subordinated if the claimant engaged in some type of inequitable

conduct that resulted in injury to creditors (or conferred an unfair advantage on the claimant) and if equitable subordination of the claim is consistent with the provisions of the Bankruptcy Code. *Id.* at 699-700.

35.     In addition to applying equitable subordination to prepetition claims, courts have equitably subordinated administrative claims when the claimant acted in ways to harm the estate. *See, e.g., Principal Mut. Life Ins. Co. v. Langhorne (In re 848 Brickell Ltd.)*, 243 B.R.142, 149 (S.D. Fla. 1998) (holding that while "pursuit of one's legal rights may not be grounds for equitable subordination, the lower court's findings that [the claimant's] protracted and abusive litigation tactics harmed the estate by causing it to incur about $400,000 in fees" justified equitable subordination of its administrative claim).

36.     During the time it completely controlled Acis, Highland Capital engaged in inequitable conduct related to Acis, while conferring numerous unfair advantages to itself, which resulted in injury to Acis's creditors (as well as the CLO investors).  As outlined in detail in the Amended Counterclaims, Highland Capital increased amounts due to Highland Capital under the Sub-Advisory Agreement, including charging amounts far in excess of appropriate market rates. This resulted in a grossly inflated prepetition claim for Highland Capital and significant overpayments to Highland Capital for whatever services and value it did provide to Acis under the Sub Agreements. Likewise, these excessive rates charged by Highland Capital have resulted in its grossly inflated Administrative Claim.

37.     As also detailed in the Amended Counterclaims, Highland Capital was the ringleader for, and ultimate beneficiary of, the series of fraudulent schemes executed in the fall of 2017 that terminated or transferred away Acis LP's valuable rights in the ALF PMA, the ALF Shares, the Note, the 2017-7 Equity and the 2017-7 Agreements.  This was done with the

specific intent to make Acis "judgment proof," as Acis's own counsel later boasted,[11] and in order to ensure that Terry would never receive payment on his judgment, as Dondero threatened.[12] These transfers, while extremely damaging to Acis LP and its creditors, also furthered Highland Capital's plan to take over Acis LP's lucrative portfolio management business and keep it under the control of Highland Capital and Dondero. Additionally, during the Bankruptcy Cases, Highland Capital attempted to transfer and appropriate Acis LP's profitable Universal/BVK Agreement.

38. Finally, the Trustee notes that he has incurred substantial administrative fees in responding to the protracted and abusive litigation tactics of Highland Capital during these Bankruptcy Cases, including arguing for (and against) injunctive relief to prevent the liquidation of the CLOs and litigating the numerous appeals initiated by Highland Capital against the Trustee. Such litigation tactics by Highland Capital have thwarted the reorganization of the Debtors, damaged the estate, and harmed its creditors. Accordingly, the Court should equitably subordinate Highland Capital's Administrative Claim. *See Principal Mut. Life Ins. Co.*, 243 B.R. at 149.

39. For the reasons above, to the extent the Highland Capital's Administrative Claim is allowed in any amount, it should be subordinated below all other allowed claims in these Bankruptcy Cases.

**E.     Reservation of Rights**

40. The Trustee herby reserves all rights to supplement or amend this Objection at any time prior to the hearing on Highland Capital's Application.

---

[11] *See Plaintiff's Motion for Expedited Discovery*, Ex. 1 (Declaration of Rogge Dunn) ¶ 4, *Terry v. Acis Capital Mgmt., L.P.*, Cause No. DC-17-15244, 44th District Court of Dallas County, Texas ("On October 31, 2017, counsel for Acis, Jamie Welton, called me on the telephone. In that call, Mr. Welton stated that Acis is 'judgment proof.'").
[12] *See* June 28, 2017 Dondero Dep. Tr. 262:2-8 (Ex. 101 from the involuntary trial) ("Nobody's going to let a dime go out of the firm that we don't have to pay ever to – to Josh, period. I mean, it's . . . I think it's personal[.]").

## PRAYER

**WHEREFORE**, the Trustee respectfully requests that the Court: (i) consolidate the hearing on the Application with the Adversary Proceedings; (ii) disallow Highland Capital's Administrative Claim or, to the extent allowed, equitably subordinate the Administrative Claim; and (iii) grant such other and further relief to the Trustee as is just and equitable under the circumstances.

**Dated: January 10, 2019.**

**WINSTEAD PC**
500 Winstead Building
2728 N. Harwood Street
Dallas, Texas 75201
(214) 745-5400 (Phone)
(214) 745-5390 (Facsimile)

By: */s/ Joe Wielebinski*
Rakhee V. Patel - State Bar No. 00797213
Phillip Lamberson - State Bar No. 00794134
Joe Wielebinski - State Bar No. 21432400
rpatel@winstead.com
plamberson@winstead.com
jwielebinski@winstead.com

**SPECIAL COUNSEL FOR THE
CHAPTER 11 TRUSTEE**

-and-

Jeff P. Prostok - State Bar No. 16352500
J. Robert Forshey - State Bar No. 07264200
Suzanne K. Rosen - State Bar No. 00798518
Matthias Kleinsasser - State Bar No. 24071357
**FORSHEY & PROSTOK LLP**
777 Main St., Suite 1290
Fort Worth, Texas 76102
Telephone: (817) 877-8855
Facsimile: (817) 877-4151
jprostok@forsheyprostok.com
bforshey@forsheyprostok.com
srosen@forsheyprostok.com

mkleinsasser@forsheyprostok.com

**COUNSEL FOR THE CHAPTER 11 TRUSTEE**


## CERTIFICATE OF SERVICE

I hereby certify that on January 10, 2019, notice of this document will be electronically mailed to the parties that are registered or otherwise entitled to receive electronic notices in this case pursuant to the Electronic Filing Procedures in this District.


*/s/ Jason A. Enright*
One of Counsel