

CLERK, U.S. BANKRUPTCY COURT
NORTHERN DISTRICT OF TEXAS

# ENTERED

THE DATE OF ENTRY IS ON
THE COURT'S DOCKET

**The following constitutes the ruling of the court and has the force and effect therein described.**

**Signed February 13, 2019**

United States Bankruptcy Judge

---

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE NORTHERN DISTRICT OF TEXAS
## DALLAS DIVISION

| | | |
|---|---|---|
| IN RE: | § | |
| | § | |
| ACIS CAPITAL MANAGEMENT, L.P., | § | CASE NO. 18-30264-SGJ-11 |
| | § | (Chapter 11) |
| Debtor. | § | |

| | | |
|---|---|---|
| IN RE: | § | |
| | § | |
| ACIS CAPITAL MANAGEMENT GP, L.L.C., | § | CASE NO. 18-30265-SGJ-11 |
| | § | (Chapter 11) |
| | § | |
| Debtor. | § | |

## ORDER REGARDING MOTION TO DISALLOW PAYMENT
## TO OAKTREE CAPITAL MANAGEMENT, L.P. (*i.e.,* THE $207,116.23
## PAYMENT) [ADDRESSING DE # 590]

Before the court is a contested matter regarding a $207,116.23 proposed payment that the

Chapter 11 Trustee believes he is required to remit to an entity known as Oaktree Capital

Management, L.P. ("Oaktree"). Oaktree served as a former stalking horse in the above-

referenced case on a proposed a transaction with the Chapter 11 Trustee, to fund a Chapter 11

1

plan, that never came to fruition.  Oaktree was earlier paid a $2.5 million breakup fee in respect

of the failed transaction, but the $207,116.23 amount is an additional amount that the Chapter 11

Trustee believes is also owed to Oaktree.[1]  Party-in-interest Highland Capital Management

("Highland") filed a pleading in opposition to payment of this supplemental amount[2] which is

what triggered the contested matter.  The court will henceforth call this $207,116.23 contested

payment the "Oaktree Supplemental Amount."

    For the reasons set forth below, the court will not permit payment at this time of the

Oaktree Supplemental Amount but, rather, will require a supplemental hearing on this matter, at

which hearing, the ***reasonableness*** of this payment must be demonstrated.  As will be further

explained below, this reasonableness showing is being required, in the interest of justice, since

the court believes that: (a) parties-in-interest and the court had reason to be utterly confused

about whether certain previously bargained-for "Equivalent Revenue" consideration had been

entirely ***waived*** by Oaktree (versus merely ***compromised*** at the level of $207,116.23)—in fact,

comments at an August 1, 2018 hearing clearly suggested waiver and no one mentioned a

$207,116.23 compromised amount; and (b) in light of this confusion and non-disclosure, the

Oaktree Supplemental Amount can, at best, be viewed as an expense of Oaktree that, in order to

be reimbursed, should be subject to a reasonableness evaluation.

    This constitutes the courts findings of fact and conclusions of law pursuant to Bankruptcy

Rule 7052 and 9013.

---

[1] *See Notice of Intent to Pay Break-Up Fee and Certain Expense to Oaktree Capital Management, L.P.*
[DE # 583].

[2] DE # 590.

## I. FINDINGS OF FACT.

### A. Background.

By way of background, the above-reference Debtor, Acis Capital Management, L.P. ("Acis") is a portfolio manager for certain special purpose entities that hold collateralized loan obligations (the "CLOs"). Acis was formerly part of the Highland family of companies. Highland is a multi-billion-dollar registered investment advisor that asserts that it is a creditor of Acis. Acis was owned by parties affiliated with Highland and formerly had the same chief executive as Highland. Acis was essentially the "structured credit arm" of Highland—to borrow a phrase used by a former manager. Acis had few officers and directors and depended on Highland employees to perform its CLO management functions pursuant to a Sub-Advisory Agreement (herein so called) and a Shared Services Agreement (herein so called).

### B. The Confirmed Plan D.

After approximately one year of contentious Chapter 11 proceedings, the court recently confirmed a plan proposed by the Chapter 11 Trustee in this case (which the parties have sometimes referred to as "Plan D"). Plan D essentially divorces Acis from Highland. Under Plan D, the Reorganized Debtor will continue on in the CLO management business and will use revenues therefrom (as well as potential litigation proceeds) to pay the allowed claims of its creditors. The Reorganized Debtor has engaged a registered investment advisor known as Brigade Capital Management, L.P. ("Brigade") to perform the services previously provided by Highland under the former Sub-Advisory Agreement and a firm called Cortland Capital Marketing Services LLC ("Cortland") to perform the services previously provided by Highland under the former Shared Services Agreement. Plan D is currently subject to a Notice of Appeal by Highland and related entities.

3

### C.     The Failed Plan A.

However, earlier in this case, the Chapter 11 Trustee proposed an entirely different plan (which he sometimes referred to as "Plan A") that was extremely contested and eventually not approved by the court.  Specifically, Plan A contemplated a sale of Acis's CLO business to Oaktree.  This Oaktree transaction was valued at approximately $108 million (the "Oaktree Transaction").  The Oaktree Transaction was objected to by Highland, and ultimately was not approved by the court.  However, the aborted effort with Oaktree began with a motion filed on June 8, 2018, entitled *Emergency Motion to Approve Break-Up Fee, Expense Reimbursement, and Replacement Sub-Advisory and Shared Services Provider, Oaktree Capital Management, L.P.* (as subsequently supplemented, the "*Oaktree Motion*").[3]  It is this *Oaktree Motion* that is at the heart of the current contested matter.

### D.     The Three Forms of Relief Sought by the *Oaktree Motion*.

The *Oaktree Motion* can be broken down as seeking three forms of relief.

(i)     Break-Up Fee Request.

First, after explaining in substantial detail the very complicated Oaktree Transaction and attaching a signed Commitment Letter that provided even more detail, the Chapter 11 Trustee sought approval to pay Oaktree a potential $1,750,000 "Initial Break-Up Fee" if the Oaktree Transaction did not occur in an initial time period, and then a potential $750,000 "Extended Break-Up Fee" if the Oaktree Transaction did not occur during an extended defined time period—and, together, these were referred to collectively as the "Break-Up Fee" (potentially a $2,500,000 Break-Up Fee).

---

[3] DE # 263.

(ii)     Expense Reimbursement.

Second, the Chapter 11 Trustee sought approval to reimburse the reasonable expenses to Oaktree (the "Expense Reimbursement") if the Oaktree Transaction was not ultimately approved by the bankruptcy court.  A Term Sheet was attached to the Commitment Letter ("Oaktree Term Sheet") and it elaborated that this included the "***reasonable and documented out-of-pocket costs and expenses in connection with the Transaction (including costs and expenses incurred prior to the date hereof), including, without limitation, reasonable and documented out-of-pocket due diligence, legal (limited to one primary transaction counsel, together with any local, tax or regulatory counsel deemed reasonably necessary) and transportation fees and expenses (collectively, 'Oaktree Expenses')."***  There was no cap on the Expense Reimbursement except for a reasonableness standard.[4]

(iii)     Interim Replacement of Sub-Advisory and Shared Services Provider.

Third, the *Oaktree Motion* also requested approval for the Chapter 11 Trustee to engage Oaktree within 30 days (sooner than the Oaktree Transaction might be approved in Plan A) to provide, at least on an interim basis, the services that Highland had previously been providing under the Sub-Advisory Agreement and the Shared Services Agreement.  ***To be clear, the Chapter 11 Trustee wanted to engage Oaktree as soon as possible (regardless of what might happen with Plan A, or future plans) since Oaktree was willing to provide the services that Highland was providing under the Sub-Advisory and Shared Services Agreements, on an interim basis, at a much cheaper cost (approximately 20 basis points versus 35 basis points for the CLOs).***  A chart on page 7 of the *Oaktree Motion*, as well as a term sheet attached to the

---

[4] At a hearing on the *Oaktree Motion* on July 6, 2018, a witness for Oaktree emphasized that there was no cap on the proposed Expense Reimbursement, due to the contentiousness of the bankruptcy case. Transcript [DE # 396], at p. 267 (lines 7-12).

*Oaktree Motion*, at p. 12, if one studied them both carefully, indicated that there was a "12 month minimum term or equivalent revenue" associated with Oaktree's offer to provide interim services on four of the Acis CLOs[5] at the 20 basis point rate. Note that Highland had already sought to terminate the Sub-Advisory Services and Shared Services Agreements with Acis early on in the case,[6] and the Chapter 11 Trustee wanted to end arrangements with Highland sooner rather than later, no matter what happened ultimately with the Oaktree Transaction and Plan A.

The Chapter 11 Trustee subsequently filed a *Supplemental Motion to Break-Up Fee Motion Seeking Court Approval of Procedures to Confirm Plan Funder*, on June 26, 2018.[7] This pleading is not material to the dispute at hand—it merely addressed procedures to entertain competing proposals to Oaktree's.

Then, Oaktree filed a *Notice of Filing of Amended Commitment Letter,* on July 7, 2018.[8] Again, this is not material to the dispute at hand. However, the court notes certain language that appeared on the very last page (p. 14) of the Oaktree Term Sheet that was attached to the Commitment Letter (both as originally submitted on June 8, 2018 and in the amendment filed on July 7, 2018), in a section entitled "Please list conditions to any of the above," which this court will henceforth refer to as the "Equivalent Revenue Provision":

> ***Break-up Fee paid will be credited against any unpaid 'equivalent revenue' under the sub-advisory and shared services agreements, such that Oaktree will***

---

[5] Acis CLO 2014-3; Acis CLO 2014-2; Acis CLO 2014-5; and Acis CLO 2014-6.

[6] *See* Motion of Highland Capital Management, L.P. for Order Compelling Chapter 7 Trustee to Reject Certain Executory Contracts and Request for Expedited Hearing, filed May 3, 2018. DE # 169. *See also* Notice of Withdrawal, Without Prejudice, of Highland Capital Management, L.P.'s Motion for Order Compelling Chapter 11 Trustee to Reject Certain Executory Contracts and Request Expedited Hearing, filed June 11, 2018. DE # 273.

[7] DE # 334.

[8] DE # 385.

> *receive the higher of the Break-up Fee or the remaining equivalent revenue under the sub-advisory and shared services agreements*.

This same language was within a chart in the body of the *Oaktree Motion* on pages 7-8.

The court conducted a multi-hour hearing regarding the *Oaktree Motion* on July 6, 2018, with five witnesses. The court approved the *Oaktree Motion*, as supplemented and amended (*i.e.,* all three requests for relief in the *Oaktree Motion*), in an order dated July 10, 2018 (the "*Oaktree Order*").[9] The court notes that the Equivalent Revenue Provision (and the minimum 12-month term) was never mentioned at the hearing at all. It was also not mentioned in the *Oaktree Order*. However, to be clear, the concept of a 12-month minimum term and the Equivalent Revenue Provision were on pages 7-8 of the *Oaktree Motion* and the *Oaktree Order* approved the *Oaktree Motion*. Highland has appealed the *Oaktree Order*, but did not obtain a stay pending appeal.

### E. Switching to Brigade and Cortland as Interim Sub-Advisory and Sub-Service Providers.

On July 30, 2018, there was an interesting development. Even though the court had approved the *Oaktree Order* just 20 days earlier, which, of course, included the swift replacement of Highland with Oaktree as the interim sub-advisor and shared services provider—regardless of whether Plan A and the Oaktree Transaction ultimately came to fruition—the Chapter 11 Trustee filed an E*mergency Motion to Approve Replacement Sub-Advisory and Shared Services Providers, Brigade Capital Management, LP and Cortland Capital Market Services LLC* (the "*Brigade/Cortland Motion*").[10] The *Brigade/Cortland Motion* first noted that the *Oaktree Order* had authorized (but not directed) the Chapter 11 Trustee to enter into interim

---

[9] DE # 390.

[10] DE # 448.

sub-advisory and shared services agreements with Oaktree (and to terminate Highland in this role). The *Brigade/Cortland Motion* then stated that the Chapter 11 Trustee had been able to make arrangements for Brigade and Cortland to perform the interim sub-advisory and shared services "for a rate that is far less than the amounts historically charged by Highland Capital Management, L.P. ('Highland') and without the Equivalent Revenue required by Oaktree."[11] Accordingly, the Chapter 11 Trustee was seeking permission to interimly engage Brigade and Cortland, instead of Oaktree, to replace Highland as sub-advisor and shared services provider as soon as practical. The *Brigade/Cortland Motion* further elaborated that the "process of 'onboarding' the Acis CLOs is time consuming and capital intensive" and that the Brigade/Cortland substitution provided the Chapter 11 Trustee "with an efficient solution to Oaktree's requirement of Equivalent Revenue and Highland's mismanagement of the Acis CLOs."[12] The *Brigade/Cortland Motion* also stated that the "Oaktree Transaction requires a 12-month minimum term or equivalent revenue for management of the Acis CLOs prior to the effective date of a plan that authorizes the Oaktree Transaction (the 'Equivalent Revenue')" and that "Brigade and Cortland are able to immediately assume the services currently provided by Highland . . . without the Oaktree requirement of Equivalent Revenue."[13]

The court held an emergency hearing on the *Brigade/Cortland Motion* on August 1, 2018. The court approved the *Brigade/Cortland Motion* on the same day in a very brief order.[14] At the August 1, 2018 hearing, the Chapter 11 Trustee stated that he wanted to substitute

---

[11] *Id.* at ¶ 2.

[12] *Id.* at ¶ 8.

[13] *Id.* at ¶¶ 18 & 21.

[14] DE # 464.

Brigade/Cortland for Oaktree until confirmation, "In order to eliminate the possibility of paying Oaktree an extra one-and-a-half million dollars if we confirm . . . plans B or C." While it was not crystal clear at the time (at least to the court), this was apparently a reference to the Equivalent Revenue Provision in the Oaktree term sheet—***apparently it was presumed that Oaktree might be entitled to receive as much as $4 million dollars under that provision if Plan A was not approved and the Chapter 11 Trustee pursued his then-pending alternative Plans B or C, which plans would contemplate someone other than Oaktree as the permanent (i.e., post-confirmation) sub-advisor and subservice provider***. The Chapter 11 Trustee elaborated in the *Brigade/Cortland Motion* that "The monthly cost [of Oaktree versus Brigade/Cortland] is roughly the same, and it eliminates the possibility of a one-and-a-half-million-dollar contingent payment to Oaktree."[15]

There were no objections to the *Brigade/Cortland Motion*. However, at the emergency hearing thereon, there was extensive examination of various witnesses by Highland, and the examination mostly focused on challenging the Chapter 11 Trustee's comments that Highland had been guilty recently of mismanagement in its role as sub-advisor and shared services provider. ***There was no evidence at all regarding the so-called Equivalent Revenue concept (or the 12-month minimum time to interimly manage the CLOs that had apparently been negotiated early on with Oaktree).*** The Chapter 11 Trustee had simply mentioned in his pleading and argument that the Oaktree Transaction (*i.e.,* specifically, the part of the transaction whereby Oaktree would immediately step in as an interim sub-advisor and sub-servicer) had required a 12-month minimum term or equivalent revenue therefor, for management of the Acis CLOs prior to the effective date of a plan (*i.e.,* the "Equivalent Revenue"). It was estimated that

---

[15] Transcript [DE # 469], at p. 7 (lines 8-10 & lines 16-18).

this would amount to $4 million. Thus, there was a risk that if Plan A was not confirmed and some party other than Oaktree became the post-confirmation sub-advisor and sub-servicer, that Oaktree would be entitled to $4 million, not merely the $2.5 million break-up fee.

While the court and other parties may not have been fully aware of the $4 million risk (*i.e.*, the Equivalent Revenue) aspect of the Oaktree Transaction, it arguably became irrelevant after August 1, 2018. To be clear, while Oaktree had been approved to provide interim sub-advisory and shared services on July 10, 2018, the transition from Highland to Oaktree had not officially occurred before the *Brigade/Cortland Motion* was filed. The transition of sub-advisory and shared services was approved to occur on August 1, 2018, directly from Highland to Brigade/Cortland (the "*Brigade/Cortland Order*").[16]

### F.    Failure of Plan A.

On August 30, 2018, confirmation of Plan A, which had contemplated the Oaktree Transaction was denied, after a multi-day confirmation hearing.[17] At this point, Oaktree was entitled to the $2.5 million Break-Up Fee pursuant to the terms of the *Oaktree Order*.

### G.    The Chapter 11 Trustee's Revelation that He Would Make a $207,116.23 Payment to Oaktree (the "Oaktree Supplemental Amount"), in Addition to the $2.5 Million Break-Up Fee.

On September 17, 2018, the Chapter 11 Trustee filed a *Notice of Intent to Pay Break-Up Fee and Certain Expenses to Oaktree Capital Management, L.P. Pursuant to Order Approving Oaktree Motion* (the "*Initial Notice*").[18] The *Initial Notice* advised that the Chapter 11 Trustee

---

[16] DE # 464.

[17] The court entered an order denying confirmation on September 8, 2018. DE # 569. Note that confirmation of Plan B and Plan C were also denied.

[18] DE # 583.

intended to pay Oaktree the $2.5 million Break-Up Fee and $207,116.23 in *expenses* on Wednesday, September 19, 2018. The $207,116.23 Oaktree Supplemental Amount was described as "*expenses* incurred by Oaktree prior to the time Brigade Capital Management assumed certain sub-servicing and sub-advisory services for Acis LP on August 1, 2018 pursuant to the Court's [*Brigade/Cortland Order*]."[19]

Then, on September 18, 2018, the Chapter 11 Trustee filed the *Amended Notice of Intent to Pay Break-Up Fee to Oaktree Capital Management, L.P. Pursuant to Order Approving Oaktree Motion* (the "*Amended Notice*")[20] advising of payment solely of the $2.5 million Break-Up Fee on or after 12:00 p.m. CT on September 19, 2018. In other words, the *Amended Notice* omitted any reference to the $207,116.23 Oaktree Supplemental Amount.

On September 18, 2018, Highland filed a pleading entitled *Reservation of Rights Related to Chapter 11 Trustee's Proposed Payment to Oaktree Capital Management, L.P.* (the "*Reservation of Rights*"),[21] stating a desire to correct the record regarding certain statements made in the *Amended Notice* and to reserve all rights related to payments to Oaktree and their appeal of the *Oaktree Order*.

Then, on September 19, 2018, the Chapter 11 Trustee filed a pleading entitled *Supplement to Amended Notice of Intent to Pay Break-Up Fee to Oaktree Capital Management, L.P. Pursuant to Order Approving Oaktree Motion* (the "*Supplement*").[22] The *Supplement* stated that the Chapter 11 Trustee intended to "to pay Oaktree the amount of $200,000 on or after

---

[19] *Id.* at ¶ 5 (emphasis added).

[20] DE # 584.

[21] DE # 585.

[22] DE # 587.

Friday, September 21, 2018 on or after 12:00 p.m. Central Time pursuant to the terms of the

*Oaktree Order* and the [*Brigade/Cortland Order*]."[23]  The *Supplement* provided no additional

information on the alleged basis for the estate owing the Oaktree Supplemental Amount.

Next, on September 20, 2018, Highland filed a pleading entitled *Motion to Disallow*

*Payment to Oaktree Capital Management, L.P. or, in the Alternative, to Order Disgorgement*

*and Request for Expedited Hearing* (the "*Motion to Disallow*"), seeking an order prohibiting the

Chapter 11 Trustee from paying the Oaktree Supplemental Amount, pending a hearing regarding

the estate's obligation to make the payment and further on whether the amount of the payment

was reasonable.[24]  Highland's arguments in opposition were two-fold.  First, Highland stated

that, based on conversations with the Chapter 11 Trustee, it appeared that this Oaktree

Supplemental Amount was not, in fact, an expense reimbursement (as the Chapter 11 Trustee's

*Initial Notice* on September 17, 2018 had stated) but, rather, was being treated as a negotiated

"settlement" of certain amounts due to Oaktree (presumably relating to the Equivalent Revenue

concept), and the Chapter 11 Trustee had failed to seek authority from the bankruptcy court,

pursuant to Bankruptcy Rule 9019, to make the payment to Oaktree.[25]  Second—while it was

still somewhat unclear whether or not the Oaktree Supplemental Amount was being regarded as

a reimbursable "expense"—Highland argued that a reasonableness standard should be applied.

Highland understood, based on conversations with the Chapter 11 Trustee, that Oaktree alleged it

---

[23] *Id.* at ¶ 2.

[24] DE # 590.

[25] In addition, Highland argued Bankruptcy Rule 2002(a)(2) requires 21-day notice for use of estate property outside the ordinary course of business.  Making payments to Oaktree is not in the ordinary course of business of the Debtors.  Bankruptcy Rule 2002(a)(6) requires 21-day notice for compensation over $1,000.  Thus, the Chapter 11 Trustee had also failed to comply with these Bankruptcy Rules.

had incurred expenses associated with onboarding the CLOs before Brigade had been engaged to take over interimly.  Highland pointed out that the *Oaktree Order* generally speaks to the reasonableness of payments to Oaktree; therefore, the Chapter 11 Trustee and/or Oaktree should be required to demonstrate that the Oaktree Supplemental Amount was reasonable for the services provided by Oaktree to the estate during the relevant time period.

Naturally, Oaktree had something to say about all of this.  In its pleading entitled *Objection to Highland Capital Management L.P.'s Motion to Disallow Payment to Oaktree Capital Management, L.P. or, in the Alternative, to Order Disgorgement and request for Expedited Hearing* ( the "*Oaktree Response*"),[26] Oaktree argued that the bankruptcy court unambiguously authorized the Oaktree Supplemental Amount (actually, approving a **significantly higher payment** to Oaktree), when it approved the *Oaktree Motion*, authorizing the payment of the higher of the Break-Up Fee or the unpaid Equivalent Revenue.  Oaktree argued that the term sheet attached to the *Oaktree Motion* was clear on this point.  Oaktree also pointed out that page 7 of the *Oaktree Motion,* describing the "Aggregate Sub-Advisory and Shared Services Fee (in bps)," indicated that "to the extent Oaktree assumes the role of the sub-advisor by order of the Bankruptcy Court and Oaktree begins the process of onboarding the assets, Oaktree shall receive such fees detailed below."  Thus, Oaktree argued, it became entitled to the Equivalent Revenue (totaling $4 million)—which would be the equivalent revenue for managing $20 billion of assets in the CLOs for 12 months at a rate of 20 basis points) **as soon as it began the time-intensive and costly process of onboarding as the sub-advisor and shared services provider**.  And Oaktree was due to be paid the higher of the unpaid Equivalent Revenue or the Break-Up Fee (*i.e.,* approximately $4 million) once the Oaktree Transaction was not

---

[26] DE # 602.

consummated. However, Oaktree agreed to the reduced Oaktree Supplemental Amount of just $207,116.23, reducing the payment due to Oaktree to $2.7 million. Oaktree stated that Oaktree "immediately began the process of onboarding the CLO assets" on July 13, 2018.[27] Oaktree stated that by July 30, 2018 when the *Brigade/Cortland Motion* was filed, "it had already committed substantial internal resources to onboarding the CLO assets."[28]

Second, with regard to Highland's argument that the court must find the reduced Oaktree Supplemental Amount reasonable before it can be paid, Oaktree argued that Highland misconstrued the *Oaktree Order*. The *Oaktree Order* authorized the Chapter 11 Trustee to reimburse Oaktree for expenses that are reasonable: "The Trustee is granted authority to pay the actual, reasonable transaction costs of Oaktree, including reasonable and documented out-of-pocket due diligence, legal (limited to one primary transaction counsel, together with any local, tax or regulatory counsel deemed reasonably necessary) and transportation fees and expenses."[29] Oaktree elaborated that the bankruptcy court's authorization of the reimbursement of Oaktree's reasonable expenses was entirely separate from the court's authorization of Oaktree as the replacement sub-advisor and shared services provider. While Highland claimed that the *Oaktree Order* "generally speaks to the reasonableness of payments to Oaktree,"[30] because the court retains jurisdiction to hear "disputes about the reasonableness or necessity of any expenses reasonably questioned by the Trustee,"[31] Oaktree countered that Highland was wrongly focused

---

[27] *Id.* at ¶ 7.

[28] *Id.* at ¶ 8.

[29] DE # 390 at p. 4.

[30] DE # 590 at ¶ 33.

[31] *Id.* at ¶ 10.

on a provision of the *Oaktree Order* explicitly relating to the reasonableness of expenses—not the terms of the Equivalent Revenue. Finally, even if a reasonableness standard did apply to the Oaktree Supplemental Amount, Oaktree argued that this standard was easily satisfied here "in light of the capital and internal resources Oaktree contributed to the estates as proposed plan funder and proposed sub-advisor and shared services provider." [32]

All through this contested matter, the Chapter 11 Trustee has contended that he had been required to pay Oaktree the Equivalent Revenue under the *Oaktree Motion* and commitment letter attached thereto, which was approved by the Court on July 10, 2018 in the *Oaktree Order*. He has elaborated that Oaktree voluntarily agreed to reduce the amount of Equivalent Revenue it was entitled to receive, at the time the Chapter 11 Trustee decided to use Brigade on an interim basis, that this was a purely voluntary reduction by Oaktree and not the resolution of a contested matter or disputed claim, and that, consequently, Rule 9019 was inapplicable. However, if the court believed a Rule 9019 Motion was required for the Chapter 11 Trustee to pay Oaktree $1.3 million less than Oaktree was entitled to receive as Equivalent Revenue under the *Oaktree Order*, then the Chapter 11 Trustee requested permission to seek approval of the reduced payment under Rule 9019. Moreover, he stressed that the $207,116.23 Oaktree Supplemental Amount is reasonable because it is less than what allegedly would have been owing to it pursuant to the Equivalent Revenue provision.

## II.    CONCLUSIONS OF LAW.

The first issue the court must consider is whether it has subject matter jurisdiction to consider the issues in this contested matter. Why? Because Highland has appealed the

---

[32] *Id.* at ¶ 1.

underlying *Oaktree Order*. And this contested matter requires the court to interpret it and enforce the original *Oaktree Motion*, in large extent.

There is certainly well-established law that the filing of a notice of appeal generally divests a bankruptcy court of "its control over those aspects of the case involved in the appeal."[33] However, there is also case law instructing that, notwithstanding an appeal, "the bankruptcy court retains jurisdiction to address elements of the bankruptcy proceeding that are not the subject of that appeal."[34] Further, the bankruptcy court has continuing jurisdiction to interpret and enforce its judgment until the judgment has been properly stayed or superseded.[35]

In the case at bar, although the *Oaktree Order* is on appeal, it has not been stayed or superseded. Therefore, under controlling case authority, this court believes it has continuing jurisdiction to interpret and enforce the *Oaktree Order* and the underlying *Oaktree Motion*, notwithstanding Highland's appeal of it.[36]

Having determined that the court has jurisdiction, the court now makes its substantive conclusions and ruling.

---

[33] *Griggs v. Provident Consumer Disc. Co.*, 459 U.S. 56, 58 (1982); *see also Tex. Comptroller of Pub. Accounts v. Transtexas Gas Corp. (In re Transtexas Gas Corp.)*, 303 F.3d 571, 578-79 (5th Cir. 2002) (stating that the *Griggs* rule "applies with equal force to bankruptcy cases.").

[34] *Id.* at 580 n. 2; *see also Resolution Trust Corp. v. Smith*, 53 F.3d 72, 76 (5th Cir. 1995); *Alberti v. Klevenhagen*, 46 F.3d 1347, 1358 (5th Cir. 1995); *In re Bd. of Dirs. of Hopewell Int'l Ins. Ltd.*, 258 B.R. 580, 583 (Bankr. S.D.N.Y. 2001).

[35] *See, e.g., Alberti*, 46 F.3d at 1358 ("'[W]e have recognized the continuing jurisdiction of the district court in support of its judgment [during a pending appeal], as long as that judgment has not been superseded.'") (citation omitted); *United States v. Revie*, 834 F.2d 1198, 1205 (5th Cir. 1987), *cert. denied*, 487 U.S. 1205 (1988) ("[W]e rule that a bankruptcy court retains jurisdiction to conduct proceedings intended to enforce [an] order until such time as the enforcement of the order has been stayed.").

[36] *See also Sony Elecs., Inc. v. Daisytek, Inc. (In re Daisytek, Inc.)*, No. 3:04CV0754, 2004 WL 1698284, at *3 (N.D. Tex. July 29, 2004), for a good discussion of this issue generally.

If this were a simple matter of looking at the *Oaktree Motion* and *Oaktree Order* in a vacuum (without the intervening *Brigade/Cortland Motion* and *Brigade/Cortland Order* and statements made at the August 1, 2018 hearing), this ruling would be easy, and Highland's Motion to Disallow would be denied.  Specifically, prior to the *Oaktree Motion* and *Oaktree Order*, Oaktree was agreeing to provide interim sub-advisory and sub-services and would charge 20 basis points therefore, so long as it was engaged for a minimum of 12 months and guaranteed the Equivalent Revenue therefrom (*i.e.,* $4 million)—in the event of earlier termination.  Thus, if Plan A was not approved within 12 months and Oaktree was ousted as the sub-advisor and sub-service provider, it would get the higher of the Break-Up Fee or the remaining unpaid Equivalent Revenue.  So, hypothetically, if Plan A was not approved and Oaktree was ousted as sub-advisor and sub-service provider, say, six months after beginning interim services, Oaktree might have been paid $2 million of revenue at that point—meaning it would have been contractually entitled to $2 million more of Equivalent Revenue.  In that scenario, Oaktree would simply be paid the $2.5 million Break-Up Fee (*i.e.,* the higher of the unpaid Equivalent Revenue or the Break-Up Fee).  On the other hand, if Plan A was not approved and Oaktree was ousted, say, one month into its tenure as sub-advisor and sub-service provider, at a time when it had not yet been paid *any* revenue, then, at that point, it would be entitled to $4 million (which would be the higher of the Break-Up Fee, $2.5 million, or the remaining equivalent revenue, $4 million).  There was no "reasonableness" standard attached to this Equivalent Revenue concept whatsoever.

The problem here is the intervening *Brigade/Cortland Motion* and *Brigade/Cortland Order* and the comments made at the August 1, 2018 hearing—or perhaps the court should say the *lack* of commentary.  At the August 1, 2018 hearing, the Chapter 11 Trustee stated that he wanted to substitute Brigade/Cortland for Oaktree to provide the interim sub-advisor and sub-

service role, until confirmation, "In order to eliminate the possibility of paying Oaktree an extra one-and-a-half million dollars if we confirm . . . plans B or C." The Chapter 11 Trustee had elaborated in the *Brigade/Cortland Motion* that "The monthly cost [of Oaktree versus Brigade/Cortland] is roughly the same, and it eliminates the possibility of a one-and-a-half-million-dollar contingent payment to Oaktree."[37] The Chapter 11 Trustee merely mentioned in his pleading and argument on August 1, 2018 that the Oaktree Transaction (*i.e.,* specifically, the part of the transaction whereby Oaktree would immediately step in as an interim sub-advisor and sub-servicer) had required a 12-month minimum term or equivalent revenue therefor, for management of the Acis CLOs prior to the effective date of a plan (*i.e.,* the "Equivalent Revenue"), and it was estimated that this would amount to $4 million. The new proposed arrangement with Brigade and Cortland eliminated the possibility of Equivalent Revenue being due. And, accordingly, while Oaktree had been approved to provide interim sub-advisory and shared services on July 10, 2018, the transition from Highland to Oaktree had not officially occurred before the *Brigade/Cortland Motion* was filed. The transition of sub-advisory and shared services was approved to occur on August 1, 2018, directly from Highland to Brigade/Cortland in the *Brigade/Cortland Order*.[38]

Nothing whatsoever was stated in the *Brigade/Cortland Motion*, *Brigade/Cortland Order,* or at the August 1, 2018 hearing about Oaktree agreeing to an approximately $200,000 compromise of the Equivalent Revenue. If this had been disclosed, the court may very well have still approved the *Brigade/Cortland Motion* as being in every aspect a reflection of reasonable business judgment on the part of the Chapter 11 Trustee and something that enhanced value

---

[37] Transcript [DE # 469], at p. 7 (lines 8-10 & lines 16-18).

[38] DE # 464.

overall.[39]  And if a separate Bankruptcy Rule 9019 motion had been filed by the Chapter 11

Trustee, asking for approval of the approximately $200,000 payment, in conjunction with the

*Brigade/Cortland Motion*, the court may very well have approved it, as being fair and equitable

and in the best interests of the estate—given all the risks and rewards and other relevant facts and

circumstances. [40]  But this was not done.  There was no disclosure.

    So where does that leave things?  Brigade and Cortland have now been engaged in the

sub-advisor and sub-servicer role for approximately seven months.  Plan A was not approved.

Plan D has been approved.  The court cannot go back in time and consider the *Brigade/Cortland*

*Motion* (and a Bankruptcy Rule 9019 Motion in conjunction therewith) and make a revised

ruling in a way that does not disturb rights in a significant and unfair way.  For example, what if

there had been full notice of the Oaktree Supplemental Amount in either the *Brigade/Cortland*

*Motion* or perhaps in an accompanying Bankruptcy Rule 9019 Motion?   Highland likely would

have objected to the *Brigade/Cortland Motion* (it did not object, in the case at bar) and to any

accompanying Rule 9019 Motion.  Then, if this court approved the *Brigade/Cortland Motion* and

Rule 9019 Motion over Highland's objection, it likely would have been appealed (as things stand

now, there is no appeal of the *Brigade/Cortland Order*).  This all could have changed the

trajectory of the case to some degree.  On the other hand, what if, back on August 1, 2018, the

court had been fully apprised of the Oaktree Supplemental Amount and did ***not*** approve the

$207,116.23 payment, and Oaktree argued, "well then, we will seek the whole $4 million

---

[39] *See, e.g., ASARCO, Inc. v. Elliot Mgmt. (In re ASARCO, L.L.C.)*, 650 F.3d 593, 603 (5th Cir. 2011).

[40] *See, e.g., Protective Comm. for Indep. Stockholders of TMT Trailer Ferry, Inc. v. Anderson*, 390 U.S. 414 (1968); *Conn. Gen. Life Ins. Co. v. United Cos. Fin. Corp. (In re Foster Mortg. Corp.)*, 68 F.3d 914 (5th Cir. 1995); *U.S. v. AWECO, Inc. (In re AWECO, Inc.)*, 725 F.2d 293 (5th Cir. 1984), *cert. denied*, 469 U.S. 880 (1984).

Equivalent Revenue from the estate if the Chapter 11 Trustee abruptly now shifts to Brigade and Cortland"? In that scenario, the Chapter 11 Trustee might have withdrawn the *Brigade/Cortland Motion* and continued on with Oaktree as the interim service provider—come what may with Plan A and future plans. This too might have changed the trajectory of the case to some degree.

The point is, there was no notice and due process to parties-in-interest with regard to this negotiated compromise of the Equivalent Revenue to approximately $200,000.

The court concludes that the most fair and equitable way to address this now, is to allow Oaktree to seek payment of this amount as an Expense Reimbursement. As a reminder, the Oaktree Term Sheet stated that the: "***reasonable and documented out-of-pocket costs and expenses in connection with the Transaction (including costs and expenses incurred prior to the date hereof), including, without limitation, reasonable and documented out-of-pocket due diligence, legal (limited to one primary transaction counsel, together with any local, tax or regulatory counsel deemed reasonably necessary) and transportation fees and expenses (collectively, 'Oaktree Expenses')***" were reimbursable by the estate. There was no cap on the Expense Reimbursement except for a reasonableness standard. Thus, the court will make the Oaktree Supplemental Amount subject to a reasonableness standard. Oaktree can present evidence regarding its onboarding efforts during the month of July and parties can evaluate and object to the reasonableness as they deem appropriate. The court can then hold a hearing and make a decision.

**IT IS SO ORDERED.**

**\*\*\*END OF ORDER\*\*\***

20