

CLERK, U.S. BANKRUPTCY COURT
NORTHERN DISTRICT OF TEXAS

# ENTERED

THE DATE OF ENTRY IS ON
THE COURT'S DOCKET

The following constitutes the ruling of the court and has the force and effect therein described.

**Signed May 31, 2019**

_____
United States Bankruptcy Judge
_____

# IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE NORTHERN DISTRICT OF TEXAS
## DALLAS DIVISION

| | | |
|---|---|---|
| IN RE: | § | Case No. 18-30264-SGJ-11 |
| ACIS CAPITAL MANAGEMENT, L.P., | § | Case No. 18-30265-SGJ-11 |
| ACIS CAPITAL MANAGEMENT GP, LLC, | § | |
| | § | (Jointly Administered Under Case |
| DEBTORS. | § | No. 18-30264-SGJ-11) |
| | § | |
| | § | Chapter 11 |

### FINDINGS OF FACT, CONCLUSIONS OF LAW, AND ORDER GRANTING IN PART AND DENYING IN PART THE FIRST AND FINAL APPLICATION OF ROBIN PHELAN, CHAPTER 11 TRUSTEE, FOR ALLOWANCE OF COMPENSATION AND REIMBURSEMENT OF <u>EXPENSES ADVANCED</u>

On May 20, 2019, the Court held a hearing (the "<u>Hearing</u>") on the *First and Final Application of Robin Phelan, Chapter 11 Trustee, for Allowance of Compensation and Reimbursement of Expenses Advanced* (the "<u>Final Application</u>") [Docket No. 881] filed on April 2, 2019 by Robin Phelan (the "<u>Trustee</u>"), Chapter 11 Trustee for the Debtors.[1]

---

[1] Capitalized terms used herein, unless otherwise specifically defined herein, shall be given the same meaning as in the Final Application.

On April 23, 2019, Highland Capital Management, L.P. ("Highland")[2] filed its *Highland Capital Management, L.P.'s Objection to the First and Final Application of Robin Phelan, Chapter 11 Trustee, for Allowance of Compensation and Reimbursement of Expenses Advanced* (the "Objection") [Docket No. 900]. The Trustee filed his *Response of Robin Phelan, Chapter 11 Trustee, to Highland Capital Management, L.P.'s Objection to the First and Final Application of Chapter 11 Trustee for Allowance of Compensation and Reimbursement of Expenses Advanced* (the "Response") [Docket No. 938] on May 15, 2019.

No other party filed a written objection to the Final Application. Although the United States Trustee (the "U.S. Trustee") did not file a written objection to the Final Application, counsel for the U.S. Trustee appeared at the Hearing and joined in certain objections raised by Highland in the Objection.

The Court, after having reviewed and considered the Final Application, Objection and Response, and the record made at the Hearing, including all testimony, evidence admitted and arguments of counsel, and all parties in interest having been heard, or having had the opportunity to be heard regarding the relief requested in the Final Application, hereby makes this *Findings of Fact, Conclusions of Law, and Order Granting in Part and Denying in Part Final the First and Final Application of Robin Phelan, Chapter 11 Trustee, for Allowance of Compensation and Reimbursement of Expenses Advanced* ("Order").

**ACCORDINGLY, IT IS HEREBY DETERMINED, FOUND, ADJUDGED, DECREED AND ORDERED THAT:**

A.  ***Findings and Conclusions***. All findings of fact or conclusions of law made by the Court on the record at the Hearing are hereby incorporated in their entirety into this Order. The findings and conclusions set forth herein and in the record of the Hearing constitute the Court's findings of fact and conclusions of law pursuant to Bankruptcy Rule 7052 as made

---

[2] Highland and certain of its affiliates, including but not limited to Highland CLO Funding, Ltd. ("HCLOF"), that actively participated in these cases are sometimes hereafter referred to collectively as the "Highland Entities."

applicable herein by Bankruptcy Rule 9014.  To the extent any of the following findings of fact constitute conclusions of law, they are adopted as such.  To the extent any of the following conclusions of law constitute findings of fact, they are adopted as such.

B. ***Jurisdiction; Venue; Core Proceeding***.  The Court has jurisdiction over these bankruptcy cases pursuant to 28 U.S.C. sections 157(b) and 1334.  Venue is proper before this Court pursuant to 28 U.S.C. sections 1408 and 1409.  Consideration of the Final Application is a core proceeding pursuant to 28 U.S.C. section 157(b)(2)(A), (B) and (O) over which the Court has exclusive jurisdiction and full constitutional jurisdiction and authority to enter a final order with respect thereto.

C. ***Reasonableness of Compensation Requested***.  In the Final Application, the Trustee requests allowance of $453,699.63 in compensation for his services rendered as Chapter 11 Trustee for the Debtors for the period May 14, 2018, through February 15, 2019 (the "Application Period").  An award of compensation to a Chapter 11 Trustee is governed by section 330 of the Bankruptcy Code, subject to limitations contained in section 326 of the Bankruptcy Code.  Subsection 330(a)(3) of the Bankruptcy Code provides a nonexclusive list of factors the Court must consider in determining the reasonableness of the compensation requested by the Trustee.  The Court of Appeals for the Fifth Circuit has identified additional factors the Court must consider in this analysis.  *See In re First Colonial Corp.*, 544 F.2d 1291 (5th Cir. 1977); *Johnson v. Ga. Highway Express, Inc.*, 488 F.2d 714 (5th Cir. 1974).  As set forth below, the Court concludes upon consideration of such factors that the compensation requested by the Trustee is reasonable.

i. ***The Time and Labor Required***.  The Trustee expended 1,250.3 hours in rendering services in these cases during the Application Period, which spanned approximately nine months.  The time and labor required of the Trustee was enormous given the contentious and complex nature of these cases.  Highland and/or other of the Highland Entities objected to virtually every action proposed by the Trustee in these cases.  In light of the demands placed

upon the Trustee by the nature of these cases, the total of 1,250.3 hours expended by the Trustee is reasonable and was necessary for the Trustee to fulfill his fiduciary duties.

      ii.    **_The Novelty and Difficulty of Questions Involved_**.  These cases involved questions and issues that were frequently both extremely novel and difficult.

      iii.    **_The Skill Requisite to Perform the Services Properly_**.  The skill level required of a Chapter 11 Trustee in these cases was very high.  These cases not only called for a Chapter 11 Trustee with extensive knowledge concerning Chapter 11 bankruptcy, but also someone who could comprehend the CLO industry and the various contracts and rights of the parties-in-interest.  The Trustee possesses the high level of skill that was required to properly perform the services of a Chapter 11 Trustee in these cases.

      iv.    **_Preclusion of Other Employment_**.  The amount of hours the Trustee was required to devote to these cases during the Application Period necessarily limited the Trustee's ability to accept other engagements during the Application Period.

      v.    **_The Fee Customarily Charged_**.  The Trustee charged an hourly rate of $750 for his services in these cases.  Such hourly rate is not the highest rate the Trustee has charged during his career.  At previous points in the Trustee's career, he has charged an hourly rate in excess of $900.  In the absence of the limitations of section 326(a) of the Bankruptcy Code, the Trustee would be entitled to seek compensation in the amount of $937,725 based upon 1,250.3 hours billed at his current, customary hourly rate of $750.  In light of the contentiousness, complexity and unpleasantness of these cases, $937,725 is a reasonable amount for the services rendered by the Trustee.  In the Final Application, the Trustee asserts that he is entitled to compensation of $453,699.63 after applying the formula set forth in section 326(a) of the Bankruptcy Code, which limits the maximum compensation that may be awarded to a Chapter 11 trustee.  Under the Trustee's calculation, this yields an effective hourly rate for the Trustee of $362.87, which is less than half of his current, customary hourly rate of $750.  The effective hourly rate yielded by the Trustee's calculation is not only much, much lower than

his customary rate, it is lower than rates that are typically charged by professionals in Chapter 11 bankruptcy cases who possess experience and a level of skill commensurate with the Trustee. The Trustee's effective hourly rate in these cases, after application of the limitations of section 326(a) of the Bankruptcy Code, is unquestionably reasonable.

vi. **_Whether the Fee is Fixed or Contingent_**. The Trustee's fees for his services were fixed based upon the hours expended by the Trustee, subject to the limitations of section 326(a) of the Bankruptcy Code, but was contingent on the availability of funds in the estates for payment of the fees.

vii. **_The Limitations Imposed by the Client or Circumstances_**. The circumstances of these cases required the Trustee to act with deliberate speed. Many of the contested matters in these cases were heard on an expedited basis and a significant amount of discovery in these cases was conducted on an expedited schedule.

viii. **_Amount Involved and Results Obtained_**. The amount of compensation requested by the Trustee is unquestionably reasonable in light of the results obtained. Over $2 billion of assets were under management by the Trustee. The Trustee faithfully fulfilled his obligations and statutory duties as Chapter 11 Trustee for the Debtors. Through the Trustee's efforts, the ongoing business of the Debtors and the value of the Debtors' estates were maintained and preserved. The Trustee's efforts culminated with the confirmation of the Plan. Further demonstrating the reasonableness of the Trustee's requested compensation in light of the results of these cases is the fact that, based on the limitations of section 326(a) of the Bankruptcy Code, the compensation requested by the Trustee yields an effective hourly rate that is less than half of the Trustee's current, customary rate.

ix. **_The Experience, Reputation and Ability of the Professional_**. The Trustee possesses extensive experience and the highest degree of skill in Chapter 11 bankruptcy matters and is considered to be a preeminent practitioner. There are very few

professionals in this country that possess the experience and skill level of the Trustee in Chapter 11 bankruptcy matters and the ability to understand the business of the Debtors.

    x. ***Undesirability of the Case***.  These cases have been extremely complex and required the Trustee to devote substantial amounts of his time and to act quickly.  The highly contentious nature of these cases, with the Highland Entities objecting to virtually every action taken by the Trustee, further diminished the desirability of these cases.

    xi. ***Nature and Length of the Professional Relationship with the Client***.  The Trustee did not represent any party in interest in these cases prior to his appointment as Chapter 11 Trustee for the Debtors.

    xii. ***Awards in Similar Cases***.  If section 326(a) of the Bankruptcy Code did not limit the compensation allowable to the Trustee, the Trustee would be entitled to request $937,725 in fees based on the hours he expended at his current, customary hourly rate of $750.  However, the Trustee's calculation of his maximum allowable compensation yields an effective hourly rate equal to less than one half his current, customary rate.  The amount of compensation actually requested in the Final Application is therefore reasonable and consistent with awards in similar cases of the services rendered by the Trustee, taking into account the demands of these cases and the experience and skill level possessed by the Trustee.

  D. ***Highland's Objection to the Reasonableness of the Trustee's Compensation Based on the First Amended Plan and the Oaktree Break-Up Fee***.  On July 29, 2018, the Trustee filed the *First Amended Joint Plan for Acis Capital Management, L.P. and Acis Capital Management GP, LLC* (the "First Amended Plan") [Docket No. 441] and the *Disclosure Statement Pursuant to Section 1125 of the United States Bankruptcy Code with Respect to the First Amended Joint Plan for Acis Capital Management, L.P. and Acis Capital Management GP, LLC* (the "First Disclosure Statement") [Docket No. 442].  The First Amended Plan proposed three separate reorganization alternatives, referred to by the parties as "Plan A," "Plan B" and "Plan C."  Under the Plan A alternative, the Trustee proposed a transaction with

Oaktree Capital Management, L.P. ("Oaktree") under which Oaktree would serve as a plan funder. As part of the proposed transaction, Oaktree requested the protection of a break-up fee, which the Court approved over the objections of Highland, HCLOF, and certain other parties, pursuant to an *Order Granting Emergency Motion to Approve Break-Up Fee, Expense Reimbursement, and Replacement Sub-Advisory and Shared Services Provider, Oaktree Capital Management, L.P.* [Docket No. 390]. The Court conditionally approved the First Disclosure Statement, but ultimately denied confirmation of the First Amended Plan.

In its Objection, Highland contends that the Trustee's compensation should be reduced based on the Trustee's failed efforts to confirm the First Amended Plan and because the failure to confirm the First Amended Plan resulted in payment of the $2,500,000 break-up fee to Oaktree. Highland alleges that the First Amended Plan stood no realistic hope of being confirmed and that the Trustee's pursuit of confirmation of the First Amended Plan provided no benefit to the Debtors' estates. Highland's objection is not well-taken and is overruled.

Under *Barron & Newburger, P.C. v. Tex. Skyline, Ltd. (In re Woerner)*, 783 F.3d 266, 276-77 (5th Cir. 2015), the Court must assess the reasonableness of fees under a prospective standard that focuses on the necessity and reasonableness of a professional's services at the time the services were rendered. Under this standard, the Trustee's services with respect to his pursuit of confirmation of the First Amended Plan – including the Court-approved break-up fee paid to Oaktree – were reasonable. Although the Court ultimately denied confirmation of the First Amended Plan, the Court disagrees with Highland's contention that there was no reasonable chance that the First Amended Plan would benefit the Debtors' estates. These cases were unusually complex and involved very unusual facts. The reorganization alternatives proposed by the Trustee through the First Amended Plan constituted creative solutions that made great economic sense.

In the Chapter 11 process, it is common for plan proponents to propose plans that represent creative attempts to deal with difficult problems. Such plans often contain provisions

that are legally questionable or challengeable, and sometimes cannot be confirmed without the consent of affected parties.  The proposal of such plans is not unusual, but is simply the nature of the plan negotiation process inherent in many Chapter 11 cases.

In the instant cases, the First Amended Plan was proposed by the Trustee in good faith. Through the First Amended Plan, the Trustee proposed what appeared at the time to be a rational economic solution to the difficult issues presented in these cases – one that would pay creditors of the Debtors' estates and satisfy the interests of other parties-in-interest.  The First Amended Plan was legally creative and the Court ultimately concluded that it could not be confirmed.  However, the Court's denial of confirmation does not diminish the fact that the First Amended Plan was a good faith attempt on the Trustee's part to solve atypical problems presented by these cases.  All of the Trustee's work associated with the First Amended Plan and the related Oaktree matters that were tied to the Plan A alternative of the First Amended Plan, including but not limited to the break-up fee paid to Oaktree, was reasonably likely to benefit the Debtors' estates at the time that work was undertaken.  Consequently, the denial of confirmation of the First Amended Plan and the resulting payment of the break-up fee to Oaktree do not warrant any reduction in the compensation requested by the Trustee.

E. ***Limitation of Trustee's Compensation Under Section 326(a) of the Bankruptcy Code***.  Section 326(a) of the Bankruptcy Code establishes a formula which limits the maximum compensation allowable to a Chapter 11 trustee:

> In a case under chapter 7 or 11, the court may allow reasonable compensation under section 330 of this title of the trustee for the trustee's services, payable after the trustee renders such services, not to exceed 25 percent on the first $5,000 or less, 10 percent on any amount in excess of $5,000 but not in excess of $50,000, 5 percent on any amount in excess of $50,000 but not in excess of $1,000,000, and reasonable compensation not to exceed 3 percent of such moneys in excess of $1,000,000, upon all moneys disbursed or turned over in the case by the trustee to parties in interest, excluding the debtor, but including holders of secured claims.

11 U.S.C. § 326(a).

In the Final Application, the Trustee calculates his maximum allowable compensation as $453,699.63 based upon total disbursements of $14,348,321.00 made by the Trustee to parties in interest. The specific disbursements comprising the $14,348,321.00 total are set forth in the *Chapter 11 Trustee's Final Report* [Docket No. 882]. Highland objects to the Trustee's calculation under section 326(a) on two grounds. As set forth below, Highland's objections are without merit and are overruled.

        i.    ***Inclusion of Disbursement to the Reorganized Debtor***. Pursuant to the terms of the confirmed Plan, the Trustee disbursed over $5 million to the Reorganized Debtor. The Trustee included such disbursement in calculating the maximum compensation allowable under section 326(a) of the Bankruptcy Code. Highland contends that inclusion of that disbursement is improper because section 326(a) of the Bankruptcy Code prohibits inclusion of disbursements by a Chapter 11 trustee to the debtor when calculating maximum allowable compensation. The U.S. Trustee joined in this particular objection at the Hearing.

Highland relies on *Pritchard v. United States Trustee (In re England)*, 153 F.3d 232 (5th Cir. 1998). The *England* case is inapposite. In *England*, the Fifth Circuit held that the term "moneys disbursed," as used in section 326(a) of the Bankruptcy Code, does not include unliquidated real estate disbursed by a Chapter 7 trustee to creditors. *Id.* at 236-37. The disbursement by the Trustee to the Reorganized Debtor was not a disbursement of real property or some other form of unliquidated property. It was a disbursement of funds that the Trustee earned operating the Debtors' business during his tenure as Chapter 11 Trustee. The disbursement made by the Trustee to the Reorganized Debtor was a disbursement of "moneys," as that term is used in section 326(a).

More analogous to the facts and circumstances of these cases is *In re North American Oil & Gas, Inc.*, 130 B.R. 473 (Bankr. W.D. Tex. 1990). In *North American*, Judge Leif Clark concluded that a Chapter 11 trustee's disbursement of funds to a liquidating agent created under a confirmed plan of reorganization should be counted in calculating the trustee's

maximum compensation under section 326(a). *Id.* at 479-80. The *North American* case supports the Trustee's inclusion of his disbursement to the Reorganized Debtor because the Reorganized Debtor in these cases – like the liquidating agent in *North American* – is not properly viewed as the "debtor." The Reorganized Debtor is to perform duties under the Plan similar to those performed by the liquidating agent in *North American*. Retention of the technical "corporate" form is not relevant.

In his Response, the Trustee cites to numerous cases that stand for the general proposition that a reorganized debtor emerging from Chapter 11 bankruptcy under a confirmed plan of reorganization is a new entity separate and distinct from the "debtor" that entered into bankruptcy, with the new entity no longer subject to bankruptcy court jurisdiction in many contexts. That general proposition applies to the instant cases. Here, the Reorganized Debtor is very much a new entity that is distinct from the Debtors involuntarily placed in bankruptcy. The Reorganized Debtor is, in the Court's view, nothing like the old Debtors that entered bankruptcy. The Reorganized Debtor is under completely new ownership and management, and is utilizing a new submanager as well. The Reorganized Debtor is tantamount to a successor to the Debtors, rather than the original Debtors. Furthermore, the Reorganized Debtor is not an ordinary successor – while it was formerly owned by one of the Highland entities, it is now owned 100% by Joshua Terry ("Terry"), who is the largest creditor in these cases.

The Trustee generated millions of dollars in operating the Debtors' business. Some of that money was disbursed by the Trustee directly to creditors and other parties in interest. Over $5 million was disbursed to the Reorganized Debtor for use in the Reorganized Debtor's operations and to ultimately enable the Reorganized Debtor to fulfill its obligations under the confirmed Plan. Those obligations include future payments to creditors.

Highland's contention that the Reorganized Debtor should be viewed as the "debtor," as that term is used in section 326(a), would produce an absurd result. Under Highland's

construction of the statute, a Chapter 7 trustee who hands over funds in a debtor's bank account to a Chapter 11 trustee upon conversion is entitled to include those funds in calculating the Chapter 7 trustee's commission under section 326(a). However, under Highland's interpretation, the Chapter 11 trustee who assumes control of the same account and proceeds to generate millions of dollars operating the debtor's business and obtains confirmation of a plan would not be entitled to a commission on funds disbursed to an entity under new ownership and new management that emerges under the confirmed plan. Congress cannot have intended such a result.

The Supreme Court directs courts to give statutes their plain meaning, but also directs courts not to construe statutes in a manner that yields an absurd result. The Court therefore cannot accept Highland's reading of section 326(a). To view the Reorganized Debtor as the "debtor" would produce an absurd result under the facts and circumstances of these cases. The Reorganized Debtor is more appropriately viewed as a new entity separate and distinct from the Debtors involuntarily placed in bankruptcy. The Trustee's disbursement of over $5 million to the Reorganized Debtor was properly included by the Trustee in calculating his maximum allowable compensation under section 326(a). Highland's objection and the U.S. Trustee's joinder in such objection on this point are without merit and are overruled.

  ii. ***Inclusion of Disbursements to the Trustee's Professionals***. The total disbursements of $14,348,321.00 made by the Trustee also includes disbursements to various professionals engaged by the Trustee. The Court approved the engagement of each of the professionals who received disbursements included by the Trustee in calculating his maximum compensation allowable under section 326(a). In the Objection, Highland contends that the Trustee's inclusion of such disbursements is improper because the Trustee's professionals allegedly do not qualify as "parties in interest," as that term is used in section 326(a). Highland relies principally on the case of *In re Testaverde*, 317 B.R. 51 (E.D.N.Y. 2004) for this proposition.

As demonstrated by the authorities cited by the Trustee in his Response, the holding of *Testaverde* – that a trustee's professionals do not qualify as parties in interest for purposes of the section 326(a) analysis – not only appears confined to a few cases from the Eastern District of New York, but has not even been unanimously followed in subsequent decisions from the Bankruptcy Court for the Eastern District of New York and has been repudiated by the bankruptcy judge whose opinion was affirmed in *Testaverde*. The Trustee cites to many other cases in which courts have reached the opposite conclusion. This Court joins the other courts that have rejected *Testaverde*. The Trustee's professionals hold claims entitled to administrate expense priority in these cases. Holders of administrative expense priority claims are parties in interest. There is no sound basis for differentiating a trustee's professionals from other holders of administrative expense claims for purposes of section 326(a) of the Bankruptcy Code. Because the Trustee's professionals are parties in interest in these cases, the Trustee properly included disbursements made to such professionals in calculating his maximum allowable compensation under section 326(a). Highland's objection to the Trustee's inclusion of such disbursements is without merit and is overruled.

F. ***Applicability of Section 326(c) to the Trustee's Requested Compensation***. Pursuant to an *Order Approving First and Final Application of Diane G. Reed for Allowance of Compensation and Reimbursement of Expenses as Former Chapter 7 Trustee* [Docket No. 821], the Court awarded Diane G. Reed (the "Chapter 7 Trustee") compensation in the amount of $34,905.30 for her services as Chapter 7 Trustee in these cases. The Trustee subsequently disbursed the amount so awarded to the Chapter 7 Trustee.

Section 326(c) of the Bankruptcy Code states that "[i]f more than one person serves as trustee in the case, the aggregate compensation of such persons for such service may not exceed the maximum compensation prescribed for a single trustee by subsection (a) or (b) of this section, as the case may be." 11 U.S.C. § 326(c). Highland contends in the objection that under this provision, the $34,905.30 paid to the Chapter 7 Trustee must be deducted from the

compensation allowed to the Trustee.  The U.S. Trustee joined in this objection at the Hearing.  The Trustee responds that he and the Chapter 7 Trustee did not serve as trustees in the same case.  Rather, the Trustee takes the position that these cases should be viewed as two separate sets of cases – one set that existed as Chapter 7 cases and the other set that existed as Chapter 11 cases after conversion.

The Court does not view the conversion of these cases from Chapter 7 to Chapter 11 as rendering section 326(c) inapplicable.  Although converted, these cases remained part of one overall, jointly administered case.  The Chapter 7 Trustee and the Trustee therefore served as trustees in the same "case" for purposes of section 326(c).  Highland's objection on this point is sustained and amount of compensation payable to the Trustee must be reduced by $34,905.30 to account for the compensation previously awarded and paid to the Chapter 7 Trustee.

G. ***Applicability of Section 362(d)***.  Highland further objects to the Final Application alleging that the Trustee's requested compensation should be disallowed under section 326(d) of the Bankruptcy Code which permits the Court to deny allowance of compensation "if the trustee failed to make diligent inquiry into facts that would permit denial of allowance under section 328(c) of this title or, with knowledge of such facts, employed a professional person under section 327 of this title."  11 U.S.C. § 326(d).  Section 328(c), in turn, permits the Court to deny allowance of compensation to a professional "if, at any time during such professional person's employment under section 327 or 1103 of this title, such professional person is not a disinterested person, or represents or holds an interest adverse to the interest of the estate with respect to the matter on which such professional person is employed."  11 U.S.C. § 328(c).  Highland claims that section 326(d) is applicable to these cases because the Trustee's special counsel, Winstead PC ("Winstead"), allegedly was not disinterested and represented an interest adverse to the Debtors' estates based on Winstead's ongoing representation of Terry.

Winstead's economic interest in its representation of the Trustee and Terry was not to lessen the value of the Debtors' estates, but to maximize their value. Likewise, Winstead had no economic interest that would create a dispute in which the Trustee (or the estates) is a rival claimant. The Court finds that Winstead does not hold an actual conflict in these cases, particularly with respect to its representation of the Trustee and Terry.

The Court notes, anecdotally, that Terry's claim against the Debtors is based on an arbitration award that was confirmed to judgment. Unlike a typical creditor in a bankruptcy case, which may be disputed by a trustee via the claims allowance process, the Trustee had little or no basis on which to object to Terry's claim. To the extent that it is possible for representation of Terry to create a potential conflict, the facts and circumstances of these cases lead the Court to determine that it is highly unlikely that there would have ever been a potential conflict between the Trustee and Terry. *See In re AGE Ref., Inc.*, 447 B.R. 786, 802-06 (Bankr. W.D. Tex. 2011) (citing *In re Marvel Entm't Grp., Inc.*, 140 F.3d 463, 476 (3rd Cir. 1998)) (stating that if there is a potential conflict, the court may use its discretion to determine whether the professional should be disqualified, and if there is only an appearance of a conflict, the court may not disqualify the professional).

Regardless, the Court finds Winstead's previous representation of Terry and limited continued representation of Terry (specifically in connection with the appeals of the orders for relief that were the genesis of these cases) did not create an actual conflict: (i) at the time the *Order (I) Approving the Application to Employ Winstead PC as Special Counsel to the Chapter 11 Trustee and (II) Denying the Motion to Disqualify Winstead PC as Proposed Special Counsel to Robin Phelan, Chapter 11 Trustee* [Docket No. 313] was entered; (ii) at the time the *Order Approving in Part and Denying in Part the Supplemental Application Regarding the Scope of Winstead PC's Retention as Special Counsel to the Chapter 11 Trustee* [Docket No. 703] was entered; (iii) at the time of the Hearing on the Final Application; or (iv) at any other point in time during these cases.

The Court considered the issue of Winstead's disinterestedness and whether it represented or held any interest adverse to the Debtors' estates when the Court considered the Trustee's request to employ Winstead.  The Court reconsidered these same issues again at the Hearing.  Winstead has at all relevant times been disinterested and has never represented or held an interest adverse to the Debtors' estates.  Highland has failed to convince the Court that section 326(d) is at all germane or applicable to these cases.  Highland's objection to the Final Application on the basis of section 326(d) is therefore without merit and is overruled.

H. ***Highland's Objection Based on Alleged Duplication of Effort Between Winstead and Forshey & Prostok***.  Highland's also objects to the Final Application based on an alleged duplication of work between Winstead and Forshey & Prostok, LLP ("Forshey & Prostok").  The Trustee engaged Forshey & Prostok as his general bankruptcy counsel and Winstead as his special counsel.  Highland alleges that the Trustee failed to ensure that no duplication of work occurred between these two firms and that such failure led to a waste of estate assets.

The Court finds that Winstead and Forshey Prostok did not have unnecessary duplication of efforts.  The Court heard credible testimony from the Trustee that he communicated with Winstead and Forshey Prostok to avoid any unnecessary duplication and endeavored to prevent the two firms from overlapping in their respective roles.  Highland failed to present evidence demonstrating that any unnecessary duplication occurred.  Highland's objection is therefore without merit and is overruled.

I. ***Reasonableness of Expenses for Which Reimbursement is Requested***.  In addition to the compensation requested by the Trustee, he seeks in the Final Application reimbursement of out-of-pocket expenses in the total amount of $436.84.  Such expenses were incurred on account of parking expenses and one working meal.  Such expense were reasonable and necessary in the course of the Trustee fulfilling his statutory and fiduciary duties as Chapter 11 Trustee.

**ORDER**

1.  **IT IS, THEREFORE, ORDERED** that the above-referenced findings of fact and conclusions of law are incorporated by reference as though fully set forth herein and that to the extent any of the prior findings of fact or conclusions of law constitutes an order of this Court, they are adopted as such; it is further

2.  **ORDERED** that the objection of Highland, joined in by the U.S. Trustee at the Hearing, to the Final Application based on section 326(c) of the Bankruptcy Code is hereby **SUSTAINED** and that the $34,905.30 in compensation that was previously awarded and paid to the Chapter 7 Trustee must be deducted from the compensation requested by the Trustee in the Final Application; it is further

3.  **ORDERED** that all other objections to the Final Application, whether stated in Highland's Objection or made on the record at the Hearing by Highland or the U.S. Trustee, are hereby **OVERRULED**; it is further

4.  **ORDERED** that for the reasons stated herein and the reasons stated on the record at the Hearing, the Final Application is **GRANTED IN PART** on a final basis in the total sum of **$419,231.17**, of which **$418,794.33** represents fees for services rendered and **$436.84** constitutes reimbursable expenses incurred by the Trustee for the Application Period; it is further

5.  **ORDERED** that the amount of **$418,794.33** is reasonable compensation for services rendered by the Trustee as Chapter 11 Trustee for the Debtors during the Application Period, and the amount of **$436.84** is reasonable for expenses incurred by the Trustee during the Application Period; it is further

6.  **ORDERED** that the amount of final compensation and reimbursement of expenses allowed to the Trustee under this Order is provided pursuant to 11 U.S.C. § 330 and in accordance with the applicable limitations set forth in 11 U.S.C. § 326; it is further

7.  **ORDERED** that the Reorganized Debtor is hereby authorized and directed to pay to the Trustee, in accordance with the terms of the Plan, the full amount of **$419,231.17** awarded to the Trustee herein; it is further

8.  **ORDERED** that this Order is a final order and the period in which an appeal must be filed shall commence upon the entry hereof; and it is further

9.  **ORDERED** that this Court shall retain jurisdiction over all matters arising from or related to this Order.

### ### END OF ORDER ###

Submitted by:

/s/ *Jeff P. Prostok*
Jeff P. Prostok
State Bar No. 16352500
J. Robert Forshey
State Bar No. 07264200
Suzanne K. Rosen
State Bar No. 00798518
Matthew G. Maben
State Bar No. 24037008
**FORSHEY & PROSTOK LLP**
777 Main St., Suite 1290
Ft. Worth, TX 76102
Telephone: (817) 877-8855
Facsimile: (817) 877-4151
jprostok@forsheyprostok.com
bforshey@forsheyprostok.com
srosen@forsheyprostok.com
mmaben@forsheyprostok.com

**COUNSEL FOR ROBIN PHELAN,
CHAPTER 11 TRUSTEE**