D. Michael Lynn
State Bar I.D. No. 12736500
John Y. Bonds, III
State Bar I.D. No. 02589100
Bryan C. Assink
State Bar I.D. No. 24089009
BONDS ELLIS EPPICH SCHAFER JONES LLP
420 Throckmorton Street, Suite 1000
Fort Worth, Texas 76102
(817) 405-6900 telephone
(817) 405-6902 facsimile

ATTORNEYS FOR JAMES DONDERO

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE NORTHERN DISTRICT OF TEXAS
## DALLAS DIVISION

| | | |
|---|---|---|
| IN RE: | § | |
| | § | |
| ACIS CAPITAL MANAGEMENT, L.P., | § | Case No. 18-30264 |
| ACIS CAPITAL MANAGEMENT GP, | § | Case No. 18-30265 |
| LLC, | § | |
|     Reorganized Debtors. | § | (Jointly Administered) |
| | § | Chapter 11 |

## COMMENT OF JAMES DONDERO REGARDING ACIS CAPITAL MANAGEMENT, L.P.'S MOTION FOR LEAVE TO FILE REDACTED QUARTERLY OPERATING REPORTS

James Dondero ("Dondero"), a party in interest, hereby files this Comment regarding *Acis Capital Management, L.P.'s Motion for Leave to file Redacted Quarterly Operating Reports* [Docket No. 1161] (the "Motion"). It is hoped that the observations made in this Comment may be useful to the Court in deciding the Motion. As his Comment, Dondero respectfully represents as follows:

## SUMMARY OF COMMENT

1. Through the Motion, Acis Capital Management, L.P. ("Acis") asks this Court to take the unprecedented step of redacting a post-confirmation quarterly operating report ("QOR"). While section 107(b) of the Bankruptcy Code provides a limited exception to the statutory right of

the public to access bankruptcy records, the circumstances in which this limited exception applies should not prevent disclosure of the basic information required to be disclosed under the Bankruptcy Code. In this case, Acis utilizes the Bankruptcy Court to its advantage in its pursuit of several pieces of litigation against Mr. Dondero and others, while seeking relief from the last—and most routine—disclosure requirement of the Bankruptcy Code. The Motion does not provide any case law support for how the information sought to be redacted from the QOR can be considered "confidential commercial information" that may be subject to protection.

2.      By comparison with the Motion, however, the Court might consider the role of Acis and its owner, Josh Terry, in the closely related Highland Capital Management, L.P. ("Highland") Chapter 11 case. Acis wishes to conceal information in its QOR to prevent other parties from having an "unfair advantage"; but Terry, as a current member of the Highland Official Committee of Unsecured Creditors (the "Committee") and Acis, a competitor of Highland, are in a position where they have access to all the information provided by Highland to the Committee, including by reason of the shared privilege. As a Committee member, Terry has access to a wide variety of privileged information (including about Highland employees, a number of whom he has sued) that he may use to prejudice the interests of Dondero, Highland and others, in both the marketplace and pending litigation. Just as cooperation with a committee and its members is a consequence of a Chapter 11 filing, so too is the submission of a full and accurate QOR.

## COMMENTS

**A. The information contained in the Quarterly Operating Report is not confidential commercial information and there is a strong presumption that the public should be given access to bankruptcy filings.**

3.      Through the Motion, Acis asks for unprecedented relief by requesting that this Court redact much of Acis's post-confirmation quarterly operating report. While section 107(b)

of the Bankruptcy Code does provide certain limited exceptions to the general statutory presumption of public access to Bankruptcy Court records, the limited circumstances in which the exceptions apply would not include the basic disclosures mandated by the Bankruptcy Code through a QOR.

4.     Courts have recognized a strong presumption in favor of public access to court records. *See, e.g.*, *Nixon v. Warner Communications Inc.*, 435 U.S. 589, 597-98 (1978). This preference for public access is rooted in the public's right to know about the administration of justice. *Orion Pictures Corp. v. Video Software Dealers Assoc.*, 21 F.3d 24 (2d Cir. 1994). It helps safeguard "the integrity, quality, and respect in our judicial system.", *Id.* at 26, and permits the public to "keep a watchful eye on the workings of public agencies." *Nixon*, 435 U.S. at 598.

5.     In the context of bankruptcy proceedings, courts have similarly acknowledged that there "is a strong presumption in favor of public access to bankruptcy proceedings and records." *In re Alterra Healthcare Corp.*, 353 B.R. 66, 73 (Bankr. D. Del. 2006). "During a chapter 11 reorganization, a debtor's affairs are an open book and the debtor operates in a fish bowl." *Id. See also In re Northstar Energy, Inc.*, 315 B.R. 425, 428 (Bankr. E.D. Tex. 2004) (stating "[Section] 107(a)'s directive for open access flows from the nature of the bankruptcy process - which is heavily dependent upon creditor participation, and which requires full financial disclosure of debtor's affairs.") (internal citations omitted).

6.     This policy of open inspection, codified in section 107(a) of the Bankruptcy Code, evidences "Congress's strong desire to preserve the public's right of access to judicial records in bankruptcy proceedings." *Id.* (internal citations and quotations omitted).

7.     Section 107(a) of the Bankruptcy Code provides as follows:

> (a)Except as provided in subsections (b) and (c) and subject to section 112, a paper filed in a case under this title and the dockets of a bankruptcy court are

public records and open to examination by an entity at reasonable times without charge.

11 U.S.C. § 107(a).

8.     However, section 107(b) of the Bankruptcy Code provides certain limited exceptions to the general rule of public access to be invoked only in "extraordinary" and "rare" circumstances. *In re Rivera*, 524 B.R. 438, 443 (Bankr. D.P.R. 2015) ("[A] court's ability to limit the public's right to access remains an extraordinary measure that is warranted only under rare circumstances as public monitoring is an essential feature of democratic control.") (internal quotations omitted).

9.     Section 107(b) states, in relevant part,

> (b) On request of a party in interest, the bankruptcy court shall, and on the bankruptcy court's own motion, the bankruptcy court may—(1) protect an entity with respect to a trade secret or confidential research, development, or commercial information . . . .

11 U.S.C. § 107(b).

10.     In order to obtain protection from public disclosure, the entity must show that the information it seeks to protect from public disclosure is "confidential" and "commercial" in nature. *In re Meyrowitz*, No. 06-31660-bjh-11, 2006 Bankr. LEXIS 2931, at *7 (Bankr. N.D. Tex. Oct. 26, 2006). Courts have defined commercial information to be "information that would cause an unfair advantage to competitors by providing them information as to the commercial operations of the debtor." *Id.* A court must "carefully and skeptically review sealing requests to insure that there really is an extraordinary circumstance or compelling need to seal the documents at issue. The reason is simple — court records are public records, and sealing abridges the public's right to know." *Wyndham Vacation Resorts, Inc. v. Faucett (In re Faucett)*, 438 B.R. 564, 568 (Bankr. W.D. Tex. 2010). Redaction is simply a limited form of sealing.

11.     Here, Acis has offered no evidence to show that the information contained in the QOR is confidential commercial information subject to protection under section 107(b).  In fact, Acis does not cite any case law where the basic disclosures required in an operating report have been subject to sealing or redaction.  Acis instead makes much of its assertion that the information in the report could be used by Highland and its related parties to "thwart Acis's reorganization." While it is true that in some cases the public nature of bankruptcy proceedings may negatively impact a debtor and its reorganization efforts in favor of its competitors or creditors, that is so in every chapter 11 case.  And courts have found that facilitating reorganization alone is an insufficient basis upon which to grant a protective order.  *See In re: Epic Associates V*, 54 B.R. 445, 449 (Bankr. E.D. Va. 1985); *In re Itel Corp.*, 17 B.R. 942, 942 (B.A.P. 9th Cir. 1982). Moreover, once Acis's Plan was confirmed, it was, as far as the law is concerned, fully reorganized, unlike Highland which is in the midst of its effort at reorganization.

12.     This is not a situation in which Acis is being asked to divulge proprietary customer or client information, or other proprietary information about its operations that may give its competitors an unfair advantage in the marketplace.  Rather, Acis is simply being asked—as is every post-confirmation Chapter 11 debtor—to disclose certain basic information as to its post-confirmation *performance*.  The information Acis seeks to redact from the QOR has little to do with Acis's internal operations, and creditors and other parties in interest have a right to know about Acis's post-confirmation progress.

**B.  A comparison of Acis's situation with that of others shows less prejudice to Acis**

13.     In considering the Motion, the Court may compare the situation of parties in the closely related Highland Chapter 11 case.

14. Typically, a debtor and other parties in interest will share confidential information with a statutory committee to facilitate the committee's performance of its statutory duties, which include, among other things, investigating the acts, conduct, assets and liabilities of the debtor. *See* 11 U.S.C. § 1103(b)(3)(B). Terry, as a Committee member, and through him Acis, enjoy access to this confidential information. Indeed, given the shared privilege, committee members have access to much more material than in the typical case.

15. The advantages to Terry resulting from his access to the privileged information provided to the Committee far outweigh those which may accrue to others from the information available in Acis's QOR. While a QOR contains only a modest amount of general information, such as a debtor's quarterly receipts and payments made to creditors under a confirmed plan of reorganization, the access granted to a Committee member under the shared privilege is vast. Thus, if anyone stands to gain by accessing proprietary or confidential information for the purposes of litigation or competition in the marketplace, it is Terry and by extension his wholly owned and controlled entity, Acis, Highland's competitor and litigation adversary. Surely, Terry's role as a committee member having access to extensive commercial information of Highland's and even being able to influence Highland's operations gives Terry and Acis far greater competitive and litigation advantage over Highland than public QORs.

16. Acis asserts in the Motion that "[t]he continued prosecution of the Guernsey litigation demonstrates that Dondero-controlled entities, including the DAF, CLO Holdco and Highland Funding, as well as certain Highland Capital employees, continue to treat Acis as an actual and potential litigation opponent."

17. This statement is misleading because, while the Guernsey litigation brought by Highland CLO Funding remains pending, it was commenced nearly two years ago. Of greater

significance is the fact that other pending actions have **all** been commenced by either Terry or Acis. Those proceedings are (i) by Terry, related to his 401(k), in state court against Dondero and Highland employees; (ii) by Acis in state court against former Highland attorneys including in-house counsel; (iii) by Acis in this Court against Highland and its related parties (stayed by Highland's chapter 11 filing); (iv) by Acis against Dondero and certain Highland employees, recently commenced in this Court; and (v) the frivolous motion for contempt by Acis against Dondero, Highland, and certain Highland employees and others, if Acis ever gets around to actually filing it. W hile Acis appears to impart a great deal of significance to the DAF Litigation, Dondero understands that no DAF Litigation is pending.[1]

18.    With the existence of the multitude of the pending actions commenced by Terry and Acis against Dondero and Highland's employees, there is another significant problem posed by Terry's service on the Committee: now that Terry has sued not only Dondero but numerous other Highland employees, Terry's access to the Committee's privilege in the Highland case may create significant problems for Highland's employees in fulfilling their employment duties.

19.    The successful operations of Highland, especially during this critical time, require the close attention and candid disclosures of its employees to the Independent Board and the Committee. Dondero, for example, often exchanges views with the Independent Directors. In doing so he must be cognizant of the possibility that his words may prejudice him in pending litigation.

20.    Acis argues in the Motion that its granting is necessary as Acis wishes to be open with the Independent Directors. Similarly, Highland's in-house legal team and other employees who are defendants in multiple actions by Acis and Terry are often required to discuss a wide

---

[1] While at present the only pending action between the parties not commenced by Acis or Terry is the Guernsey suit, Terry's litigiousness may lead to in-court actions by Dondero and others.

variety of issues with the Independent Directors, and frank discussions as to these matters are necessary to effect progress in Highland's reorganization. With Dondero and a number of Highland's employees now Terry and Acis's litigation targets, the ability of Highland's employees to fulfill their duties is impaired by the risk that Terry, as a Committee member, will learn information from them that he can then use in his pursuit of them.

21. With all of the information to which Terry has access as a Committee member, there is great potential for a conflict of interest, certainly a greater problem than that cited by Acis in the Motion. Terry, either on behalf of himself or Acis, has litigation pending against (i) Highland; (ii) Highland's founder, Mr. Dondero; (iii) various Highland related entities; (iv) Highland's former attorneys; and now (v) Highland's own employees. Given the extraordinary breadth of these actions, there is great potential for abuse of the information available to the Committee, including through the shared privilege, to the detriment of Dondero, the Highland-related parties, and the Highland estate.

## CONCLUSION

Given the close relationship between the Acis and Highland cases it is appropriate that, in considering whether to grant the Motion, the Court be aware of the overall fairness of these related proceedings. Dondero has therefore attempted to show the Court that this is not a simple situation involving a single, innocent victim.

Dated: June 30, 2020

Respectfully submitted,

/s/ D. Michael Lynn
D. Michael Lynn
State Bar I.D. No. 12736500
John Y. Bonds, III
State Bar I.D. No. 02589100
Bryan C. Assink
State Bar I.D. No. 24089009
BONDS ELLIS EPPICH SCHAFER JONES LLP
420 Throckmorton Street, Suite 1000
Fort Worth, Texas 76102
(817) 405-6900 telephone
(817) 405-6902 facsimile
Email: michael.lynn@bondsellis.com
Email: john@bondsellis.com
Email: bryan.assink@bondsellis.com

**ATTORNEYS FOR JAMES DONDERO**

## CERTIFICATE OF SERVICE

I, the undersigned, hereby certify that, on June 30, 2020, a true and correct copy of the foregoing document was served via the Court's CM/ECF system on counsel for the Reorganized Debtors and on all other parties requesting or consenting to such services in this case.

/s/ Bryan C. Assink
Bryan C. Assink