# Exhibit "3"

Case 18-30264-sgj11 Doc 1343-2 Filed 09/05/21 Entered 09/05/21 13:08:29 Page 1 of 26
Case 18-30264-sgj11 Doc 830 Filed 01/31/19 Entered 01/31/19 14:42:42 Page 1 of 229
230



CLERK, U.S. BANKRUPTCY COURT
NORTHERN DISTRICT OF TEXAS

# ENTERED

THE DATE OF ENTRY IS ON
THE COURT'S DOCKET

**The following constitutes the ruling of the court and has the force and effect therein described.**

**Signed January 31, 2019**

United States Bankruptcy Judge

---

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION**

| | | |
|---|---|---|
| IN RE: | § | **Case No. 18-30264-SGJ-11** |
| **ACIS CAPITAL MANAGEMENT, L.P.,** | § | **Case No. 18-30265-SGJ-11** |
| **ACIS CAPITAL MANAGEMENT GP, LLC,** | § | |
| | § | **(Jointly Administered Under Case** |
| **DEBTORS.** | § | **No. 18-30264-SGJ-11)** |
| | § | |
| | § | **Chapter 11** |

**FINDINGS OF FACT, CONCLUSIONS OF LAW, AND ORDER GRANTING FINAL
APPROVAL OF DISCLOSURE STATEMENT AND CONFIRMING THE THIRD AMENDED
JOINT PLAN FOR ACIS CAPITAL MANAGEMENT, L.P. AND ACIS CAPITAL
<u>MANAGEMENT GP, LLC, AS MODIFIED</u>**

On December 11, 12 and 13, 2018, the Court held a hearing (the "<u>Combined Hearing</u>")

to consider (a) final approval of the *Disclosure Statement Pursuant to Section 1125 of the*

*United States Bankruptcy Code with Respect to the Third Amended Joint Plan for Acis Capital*

*Management, L.P. and Acis Capital Management GP, LLC* (the "<u>Disclosure Statement</u>") [Docket

No. 661] and (b) confirmation of the *Third Amended Joint Plan for Acis Capital Management,*

*L.P. and Acis Capital Management GP, LLC* (the "<u>Third Amended Plan</u>") [Docket No. 660], a

Case 18-30264-sgj11 Doc 848-2 Filed 09/05/24 Entered 09/05/24 13:08:29 Page 3 of 26
Case 18-30264-sgj11 Doc 830 Filed 01/31/19 Entered 01/31/19 12:42:42 Page 2 of 230
230

copy of which is attached hereto as **Exhibit "1,"** as modified by (i) the *First Modification to the Third Amended Joint Plan for Acis Capital Management, L.P. and Acis Capital Management GP, LLC* (the "First Modification") [Docket No. 693], a copy of which is attached hereto as **Exhibit "2,"** and (ii) the *Second Modification to the Third Amended Joint Plan for Acis Capital Management, L.P. and Acis Capital Management GP, LLC* (the "Second Modification") [Docket No. 702], a copy of which is attached hereto as **Exhibit "3,"** as supplemented by the *Supplement to Second Modification to the Third Amended Joint Plan for Acis Capital Management, LP and Acis Capital Management GP, LLC* [Docket No. 769], a copy of which is attached hereto as **Exhibit "4,"** filed by Robin Phelan (the "Chapter 11 Trustee"), as Chapter 11 Trustee for Acis Capital Management, L.P. ("Acis LP") and Acis Capital Management GP, LLC ("Acis GP," and together with Acis LP, the "Debtors"). The Third Amended Plan, as modified by the First Modification and Second Modification (as supplemented), is hereafter referred to as the "Plan;" *provided that*, as provided in the last sentence of paragraph 13 of this Order, the schedule of assumed executory contracts attached hereto as Exhibit 5 to this Order replaces, is substituted for, and supersedes Exhibit B to the Third Amended Plan. Capitalized terms used in this Order, unless otherwise specifically defined herein, shall be given the same meaning as in the Plan and/or the Disclosure Statement.

The Combined Hearing was commenced at the time and date scheduled. Based on the testimony, evidence admitted, judicial notice of the records of the Chapter 11 Cases, and the arguments of counsel, the Court makes this *Findings of Fact, Conclusions of Law, and Order Granting Final Approval of Disclosure Statement and Confirming the Third Amended Joint Plan for Acis Capital Management, L.P. and Acis Capital Management GP, LLC, as Modified* ("Order").

ACCORDINGLY, IT IS HEREBY DETERMINED, FOUND, ADJUDGED, DECREED AND ORDERED THAT:

A.     _Findings and Conclusions_.  All findings of fact or conclusions of law made by the Court on the record at the Combined Hearing are hereby incorporated in their entirety into this Order.  All findings of fact contained in the Court's _Findings of Fact and Conclusions of Law in Support of Orders for Relief Issued After Trial on Contested Involuntary Bankruptcy Petitions_ entered on April 13, 2018 [Docket No. 118] are hereby incorporated in their entirety into this Order.  The findings and conclusions set forth herein and in the record of the Combined Hearing constitute the Court's findings of fact and conclusions of law pursuant to Bankruptcy Rule 7052 as made applicable herein by Bankruptcy Rule 9014.  To the extent any of the following findings of fact constitute conclusions of law, they are adopted as such.  To the extent any of the following conclusions of law constitute findings of fact, they are adopted as such.

B.     _Jurisdiction; Venue; Core Proceeding_.  The Court has jurisdiction over these bankruptcy cases pursuant to 28 U.S.C. sections 157(b) and 1334.  Venue is proper before this Court pursuant to 28 U.S.C. sections 1408 and 1409.  Final approval of the Disclosure Statement and confirmation of the Plan are core proceedings pursuant to 28 U.S.C. section 157(b)(2)(A), (L) and (O) over which the Court has exclusive jurisdiction and full constitutional jurisdiction and authority to enter final orders with respect thereto.

C.     _Eligibility for Relief_.  The Debtors were and are eligible for relief under section 109 of the Bankruptcy Code.[1]

D.     _Commencement and Joint Administration of the Debtors' Cases_.  On January 30, 2018, Joshua N. Terry ("Terry") filed involuntary petitions under chapter 7 of the Bankruptcy Code against both of the Debtors in the United States Bankruptcy Court for the Northern District of Texas, Dallas Division (the "Court").  Acis LP's bankruptcy case was assigned Case No. 18-30264, and Acis GP's bankruptcy case was assigned Case No. 18-30265.  The involuntary petitions were contested and the Court held a multi-day trial spanning March 21, 22, 23, 27 and

[1] Unless otherwise indicated, section references are to the Bankruptcy Code.

Case 18-30264-sgj11 Doc 3242-2 Filed 09/05/24 Entered 09/05/24 13:08:28 Page 4 of 225
Case 18-30264-sgj11 Doc 830 Filed 01/31/19 Entered 01/31/19 12:42:42 Page 4 of 229
230

29, 2018.  On April 13, 2018, the Court entered an *Order for Relief in an Involuntary Case* in both cases [Docket No. 119 in Case No. 18-30264 and Docket No. 114 in Case No. 18-30265].  Diane G. Reed (the "Chapter 7 Trustee") was appointed Chapter 7 Trustee in both cases.  On motion of the Chapter 7 Trustee, the Court entered an *Order Directing Joint Administration* [Docket No. 137],[2] which provides for the joint administration of the Debtors' respective bankruptcy cases under Case No. 18-30264.

E.  *Conversion of the Debtors' Cases and Appointment of the Chapter 11 Trustee*.  On motion of the Chapter 7 Trustee, the Court entered an *Order Granting Trustee's Expedited Motion to Convert Cases to Chapter 11* [Docket No. 205] on May 11, 2018, converting the Debtors' bankruptcy cases to cases under chapter 11 of the Bankruptcy Code.  On motion of Terry, the Court entered an *Order Granting Emergency Motion for an Order Appointing A Trustee for the Chapter 11 Estates of Acis Capital Management, L.P. and Acis Capital Management GP, LLC Pursuant to Bankruptcy Code Section 1104(A)* [Docket No. 206] on May 11, 2018, directing the United States Trustee (the "U.S. Trustee") to appoint a Chapter 11 Trustee in the Chapter 11 Cases.  The U.S. Trustee appointed Robin Phelan as Chapter 11 Trustee in the Chapter 11 Cases.  Mr. Phelan's appointment as Chapter 11 Trustee in Acis LP's case was approved pursuant to an *Order Approving Appointment of Chapter 11 Trustee* [Docket No. 221] entered by the Court on May 17, 2018 and his appointment as Chapter 11 Trustee in Acis GP's case was approved pursuant to an *Order Approving Appointment of Chapter 11 Trustee* [Docket No. 184 in Case No. 18-30265] entered by the Court on June 12, 2018.

F.  *No Official Committee of Unsecured Creditors*.  The U.S. Trustee has not appointed an official committee of unsecured creditors in the Chapter 11 Cases.

G.  *Claims Bar Date*.  October 15, 2018 was originally fixed as the deadline for all holders of alleged Claims (except for governmental units) to file proofs of Claim.  However, on

---

[2] Unless otherwise indicated, all references to the "Docket" refer to the Docket in Case No. 18-30264.

motion of the Chapter 11 Trustee, the Court entered the Bar Date Order on July 9, 2018 [Docket No. 387]. Pursuant to the Bar Date Order, August 1, 2018 was established as the deadline for all holders of alleged Claims (except for governmental units) to file proofs of Claim and October 10, 2018 was established as the deadline for governmental units to file proofs of Claim.

H. _Adequacy of Disclosure Statement_. The Disclosure Statement contains "adequate information," as that term is defined in section 1125 of the Bankruptcy Code and satisfies all requirements of section 1125 of the Bankruptcy Code.

I. _Solicitation Order Compliance_. On October 3, 2018, the Chapter 11 Trustee filed his _Chapter 11 Trustee's Amended Motion for Entry of Order (A) Conditionally Approving Disclosure Statement; (B) Scheduling Combined Hearing on Final Approval of Disclosure Statement and Confirmation of Second Amended Joint Plan, and Setting Related Deadlines; (C) Approving Forms for Voting and Notice; and (D) Granting Related Relief_ (the "Conditional Approval Motion") [Docket No. 622]. The Chapter 11 Trustee filed a _Supplement to Amended Motion for Entry of Order (A) Conditionally Approving Disclosure Statement; (B) Scheduling Combined Hearing on Final Approval of Disclosure Statement and Confirmation of Second Amended Joint Plan, and Setting Related Deadlines; (C) Approving Forms for Voting and Notice; and (D) Granting Related Relief_ (the "Supplement to Conditional Approval Motion") [Docket No. 646] on October 19, 2018. The Court conducted a hearing on the Conditional Approval Motion, as supplemented, on October 24, 2018. On October 25, 2018, the Court entered an _Order (I) Conditionally Approving Disclosure Statement, (II) Scheduling Combined Hearing on Final Approval of Disclosure Statement and Confirmation of Second Amended Joint Plan, and Setting Related Deadlines, (III) Approving Forms for Voting and Notice, and (IV) Approving Related Matters_ (the "Solicitation Order") [Docket No. 659] granting the Conditional Approval Motion. The Conditional Approval Motion was filed in connection with a second amended plan of reorganization and disclosure statement with respect thereto. However, for convenience and ease of review, the modifications to the second amended plan and disclosure

statement with respect thereto, including modifications discussed at the October 24, 2018

hearing, were incorporated into the Third Amended Plan and Disclosure Statement filed on

October 25, 2018.  Consequently, the Solicitation Order approved solicitation of votes on the

Third Amended Plan and distribution of the Disclosure Statement in connection with solicitation

of votes on the Third Amended Plan.  Pursuant to the Solicitation Order, the Court, among other

things: (a) conditionally approved the Disclosure Statement for use in soliciting votes on the

Third Amended Plan; (b) established procedures and deadlines for the solicitation and

submission of votes to accept or reject the Third Amended Plan (the "Solicitation Procedures");

(c) fixed deadlines for objections to final approval of the Disclosure Statement and/or

confirmation of the Third Amended Plan and related briefing deadlines; (d) fixed a deadline for

serving notice of the Combined Hearing; and (e) set the Combined Hearing to commence on

December 11, 2018, at 9:30 a.m., Central Time.  The Solicitation Order approved the following

documents (collectively the "Solicitation Materials") to be served on Creditors entitled to vote on

the Third Amended Plan:

> (i)     the Third Amended Plan;
>
> (ii)    the Disclosure Statement;
>
> (iii)   the Ballots for voting on the Third Amended Plan;
>
> (iv)   the Solicitation Order;
>
> (v)    a Notice (the "Combined Hearing Notice") [Docket No. 667] reflecting the deadlines and other information relating to the Combined Hearing; and,
>
> (vi)   a letter (the "Transmittal Letter") from counsel for the Chapter 11 Trustee.

The Solicitation Order directed the Chapter 11 Trustee to serve the Solicitation Materials on

holders of Claims in Classes 2 and 3 and Subclasses 4A and 4B under the Third Amended

Plan.  The Solicitation Order also authorized the tabulation of Ballots on a consolidated basis.

The Solicitation Order further directed the Chapter 11 Trustee to serve on various parties

defined in the Supplement to Conditional Approval Motion as the "Noteholders," "Highlands" and

"Notice Parties" certain notices and copies of the following documents (the "Notice-Only Materials"): the Disclosure Statement, the Third Amended Plan, the Solicitation Order and the Combined Hearing Notice. The Chapter 11 Trustee has complied with the Solicitation Order, including the Solicitation Procedures contained therein, in all respects.

J. *Transmittal and Mailing of Solicitation Materials; Notice*. Due, adequate, and sufficient notice of the Third Amended Plan, Disclosure Statement and Combined Hearing, together with all deadlines for voting on the Third Amended Plan and for objecting to final approval of the Disclosure Statement and/or confirmation of the Third Amended Plan, has been given to known holders of Claims and Interests and, to the extent required, to all other known parties-in-interest, in compliance with the applicable Bankruptcy Rules and the Solicitation Order, as evidenced by the: (i) Combined Hearing Notice (and Certificate of Service included therewith) filed at Docket No. 667; (ii) *Notice of Solicitation of Third Amended Joint Plan for Acis Capital Management, L.P. and Acis Capital Management GP, LLC to Noteholders* (and Certificate of Service included therewith) filed at Docket No. 664; (iii) *Notice of Solicitation of Third Amended Joint Plan for Acis Capital Management, L.P. and Acis Capital Management GP, LLC to Highland Entities* (and Certificate of Service included therewith) filed at Docket No. 665; (iv) *Notice of Solicitation of Third Amended Joint Plan for Acis Capital Management, L.P. and Acis Capital Management GP, LLC to Notice Parties* (and Certificate of Service included therewith) filed at Docket No. 666; and (v) *Certificate of Service* filed at Docket No. 676. The packages containing the Solicitation Materials, the packages containing the Notice-Only Materials, and all other materials relating in any way to the solicitation process were transmitted and served in substantial compliance with the Solicitation Order and in accordance with the applicable provisions of the Bankruptcy Code, the Bankruptcy Rules, the Solicitation Procedures set forth in the Solicitation Order, and all other applicable rules, laws and regulations.

K. *Adequacy of Solicitation*. The Chapter 11 Trustee distributed packages containing the Solicitation Materials to the holders of Claims entitled to vote on the Third

Amended Plan and sufficient time was prescribed for such holders of Claims to vote on the Third Amended Plan in substantial compliance with the Solicitation Order and the applicable provisions of the Bankruptcy Code, the Bankruptcy Rules, the Solicitation Procedures set forth in the Solicitation Order, and all other applicable rules, laws and regulations. Transmittal and service were adequate and sufficient, and no further notice is or shall be required. In addition, holders of Claims not entitled to vote on the Amended Plan, and certain other parties-in-interest, were provided with certain non-voting materials approved by the Court in compliance with the Solicitation Order. All procedures used to distribute the Solicitation Materials to holders of Claims entitled to vote on the Third Amended Plan were fair and conducted in good faith and in accordance with the Bankruptcy Code, Bankruptcy Rules, the Solicitation Procedures contained in the Solicitation Order, and all other applicable rules, laws and regulations.

L. _Good Faith Solicitation – Section 1125(e)._ Based on the Record, the Chapter 11 Trustee and Estate Professionals have acted in good faith within the meaning of sections 1125(e) and 1129(a)(3), and in compliance with the applicable provisions of the Bankruptcy Code, the Bankruptcy Rules, and the Solicitation Order, in connection with all of their respective activities relating to the solicitation of acceptances of the Third Amended Plan and their participation in the activities described in section 1125, and are entitled to the protections afforded by section 1125(e).

M. _Voting Tabulation._ In accordance with the Solicitation Order, on December 3, 2018 the _Tabulation of Ballots in Connection with Confirmation of the Third Amended Joint Plan for Acis Capital Management, L.P. and Acis Capital Management GP, LLC_ (the "Ballot Tabulation") [Docket No. 746] was filed and served on all parties that filed a timely objection to confirmation of the Plan. All procedures used to tabulate the Ballots (which were tabulated on a consolidated basis) were fair and conducted in accordance with the Solicitation Order, the Bankruptcy Code, the Bankruptcy Rules, and all other applicable rules, laws and regulations.

N. _Classes Deemed to Have Accepted or Rejected the Third Amended Plan_. As

set forth in the Third Amended Plan and Disclosure Statement: (i) Class 1 is unimpaired and is

conclusively deemed to have accepted the Third Amended Plan pursuant to section 1126(f),

and (ii) Class 5, consisting of Interests in the Debtors, is Impaired, but because the Third

Amended Plan provides that holders of Class 5 Interests shall not receive or retain any property

on account of their Interests, Class 5 is conclusively deemed to have rejected the Third

Amended Plan pursuant to section 1126(g).

O. _Impaired Classes of Creditors Voting to Accept or Reject the Third Amended_

_Plan_. Based upon the Ballot Tabulation, the Court finds that the following Impaired Classes

have voted on the Third Amended Plan as follows:

(i)  Class 2 (the Terry Partially Secured Claim) voted to accept the Third

Amended Plan as follows:

| Ballots Accepting | | Ballots Rejecting | |
|---|---|---|---|
| Amount | Number | Amount | Number |
| $8,060,827.84 100% | 1 100% | $0.00 0.00% | 0 0.00% |

Two Ballots were submitted by Terry in Class 2. One of the Ballots was based on a proof of

Claim recorded in the Claims Register for Case No. 18-30264 as Claim No. 26-1 and filed by

Terry for the benefit of his IRAs ("Claim No. 26"). Highland filed an objection [Docket No. 522]

on August 17, 2018 seeking an order disallowing Claim No. 26 and striking any vote (on a prior

plan of reorganization) by Terry on account of Claim No. 26. Although the Ballot Tabulation

reflects the Ballot submitted by Terry on account of Claim No. 26, the Court disregards that

Ballot and does not take it into account in its determination regarding acceptance of the Third

Amended Plan. The other Ballot submitted by Terry accepted the Third Amended Plan.

(ii)  Class 3 (General Unsecured Claims) voted to accept the Third Amended

Plan as follows:

| Ballots Accepting | | Ballots Rejecting | |
|---|---|---|---|
| Amount | Number | Amount | Number |
| $667,550.00 100% | 2 100% | $0.00 0.00% | 0 0.00% |

Three Ballots were submitted in Class 3. One of the Ballots was submitted by Jennifer G. Terry. Such Ballot is based on a proof of Claim recorded in the Claims Register for Case No. 18-30264 as Claim No. 25-1 and filed by Jennifer G. Terry for the benefit of her IRAs and 401k ("Claim No. 25"). Highland filed an objection [Docket No. 521] on August 17, 2018 seeking an order disallowing Claim No. 25 and striking any vote (on a prior plan of reorganization) by Jennifer G. Terry on account of Claim No. 25. Although the Ballot Tabulation reflects the Ballot submitted by Jennifer G. Terry on account of Claim No. 25, the Court disregards that Ballot and does not take it into account in its determination regarding acceptance of the Plan. The other two Ballots submitted in Class 3 accepted the Third Amended Plan.

(iii)     Class 4 (Insider Claims) voted to reject the Third Amended Plan as follows:

| Ballots Accepting | | Ballots Rejecting | |
|---|---|---|---|
| Amount | Number | Amount | Number |
| $0.00 0.00% | 0 0.00% | $4,172,140.38 100% | 1 100% |

Based on the foregoing, and as evidenced by the Ballot Tabulation, at least one Impaired Class of Claims (excluding the acceptance by any Insiders of the Debtors) has voted to accept the Third Amended Plan in accordance with the requirements of sections 1124 and 1126 of the Bankruptcy Code.

P.     *Modifications to the Third Amended Plan*.  The modifications to the Third Amended Plan set forth in the First Modification, the Second Modification (as supplemented), and as set forth in this Order constitute non-material or technical changes and do not materially or adversely affect or change the treatment of any Claims against or Interests in the Debtors

under the Third Amended Plan (the "Non-Material Modifications"). The filing of the First

Modification on November 8, 2018 constitutes due and sufficient notice thereof under the

circumstances of these Chapter 11 Cases. The filing of the Second Modification on November

16, 2018 (as supplemented on December 10, 2018) constitutes due and sufficient notice thereof

under the circumstances of these Chapter 11 Cases. The Non-Material Modifications neither

require additional disclosure under section 1125 of the Bankruptcy Code nor re-solicitation of

votes on the Plan under section 1126 of the Bankruptcy Code and Bankruptcy Rules 3018 and

3019. In accordance with section 1127 of the Bankruptcy Code and Bankruptcy Rule 3019, all

holders of Claims against the Debtors who voted to accept the Third Amended Plan are hereby

deemed to have accepted the Third Amended Plan as modified consistent with the Non-Material

Modifications. No Holder of a Claim against the Debtors who has voted to accept the Third

Amended Plan shall be permitted to change its acceptance to a rejection as a consequence of

the Non-Material Modifications. The Non-Material Modifications incorporated in the Plan comply

with section 1127 of the Bankruptcy Code and Bankruptcy Rule 3019.

Q.    *Bankruptcy Rule 3016*. The Plan is dated and identifies the Chapter 11 Trustee

as the Person submitting it, thereby satisfying Bankruptcy Rule 3016(a). The filing of the

Disclosure Statement satisfied Bankruptcy Rule 3016(b). The Plan provides for the Temporary

Plan Injunction (as defined herein), which constitutes an injunction against conduct not

otherwise enjoined under the Bankruptcy Code. The Plan and Disclosure Statement both

describe in specific and conspicuous language all acts to be enjoined and identify the entities

subject to the Temporary Plan Injunction. Therefore, the Plan and Disclosure Statement satisfy

the requirements of Bankruptcy Rule 3016(c).

R.    *Bankruptcy Rule 3017*. The Chapter 11 Trustee has given notice of the

Combined Hearing as required by the applicable provisions of Bankruptcy Rule 3017 and the

Solicitation Order. The materials transmitted and notice given by the Chapter 11 Trustee to

holders of Claims entitled to vote on the Third Amended Plan and the materials transmitted by

the Chapter 11 Trustee to holders of Interests and other parties-in-interest satisfy the applicable provisions of Bankruptcy Rules 3017(d)-(f) and the Solicitation Order. Therefore, the requirements of Bankruptcy Rule 3017 have been satisfied.

S. *Bankruptcy Rule 3018*. The solicitation of votes to accept or reject the Third Amended Plan satisfies Bankruptcy Rule 3018. The Third Amended Plan was transmitted to all holders of Claims entitled to vote, sufficient time was prescribed for such parties to accept or reject the Third Amended Plan, and the Solicitation Materials used and Solicitation Procedures followed comply with sections 1125 and 1126, thereby satisfying the requirements of Bankruptcy Rule 3018. Further, the Chapter 11 Trustee filed the Ballot Tabulation in accordance with the provisions of the Solicitation Order.

T. *Burden of Proof*. The Chapter 11 Trustee, as proponent of the Plan, has the burden of proving the elements of sections 1122, 1123 and 1129 of the Bankruptcy Code by a preponderance of the evidence. The Court finds that the Chapter 11 Trustee has met each element of such burden with respect to the Plan.

U. *Judicial Notice*. The Court takes judicial notice of the entire record of proceedings in the Chapter 11 Cases and related adversary proceedings, including, without limitation, all pleadings, notices, and other documents filed, all orders entered, and all evidence and arguments made, proffered or adduced at the hearings held before the Court during the Chapter 11 Cases and related adversary proceedings, including, without limitation, the Combined Hearing. Any resolutions of objections to final approval of the Disclosure Statement or confirmation of the Plan explained on the record at the Combined Hearing are hereby incorporated by reference.

V. *The Record*. The record established at the Combined Hearing (the "Record") to support final approval of the Disclosure Statement and confirmation of the Plan includes:

    (i)    All documents identified by the Chapter 11 Trustee at the Combined Hearing and all exhibits admitted into evidence at the Combined Hearing, including but not limited to admitted exhibits which are listed on the *Joint*

*Witness and Exhibit List* [Docket No. 767] filed jointly by the Chapter 11 Trustee, Highland and HCLOF with the Court on December 7, 2018;

(ii)     The Ballot Tabulation;

(iii)    The testimony of witnesses; and

(iv)    The statements and arguments of counsel.

W.     *Objections to Final Approval of Disclosure Statement and Confirmation of Plan*. The Solicitation Order established November 26, 2018 as the deadline for filing objections to final approval of the Disclosure Statement and/or confirmation of the Plan.  The following objections to final approval of the Disclosure Statement and/or confirmation of the Plan (the "Objections") were timely filed in accordance with the Solicitation Order:

(i)     *Objection by Stinson Leonard Street LLP to Debtors' Second Modification to the Third Amended Joint Plan* [Docket No. 720];

(ii)    *Joint Objection of Highland Capital Management, L.P. and Highland CLO Funding, Ltd. to Final Approval of Disclosure Statement and to Confirmation of the Third Amended Joint Plan for Acis Capital Management, L.P. and Acis Capital Management GP, LLC* [Docket no. 722]; and

(iii)   *Objection of Neutra Ltd. to Final Approval of Disclosure Statement and to Confirmation of the Third Amended Joint Plan for Acis Capital Management, L.P. and Acis Capital Management GP, LLC* [Docket No. 723].

X.     *Transfer and Vesting of Assets*.  Pursuant to Article VI of the Plan, all Assets shall be transferred to and vested in the Reorganized Debtor as of the Effective Date.  The transfer of the Assets to the Reorganized Debtor pursuant to the Plan is consistent with, and authorized by, section 1123(a)(5)(B) of the Bankruptcy Code and will be fully effectuated through this Order as of the Effective Date without the necessity of any other or further assignment or transfer.

Y.     *Claim Objections and Resolutions*.  Pursuant to the Plan, the Reorganized Debtor has the sole power and exclusive standing and authority to object to any Claim.  Without limiting the generality of the foregoing, the Reorganized Debtor shall have the power:  (i) to

object to any Claim on any legal or equitable basis; (ii) to seek subordination of any Claim on any legal or equitable basis; (iii) to assert any right of setoff or recoupment, including without limitation, any such right pursuant to section 553 of the Bankruptcy Code; (iv) to assert any and all Estate Defenses to any Claim, whether legal or equitable, including any affirmative defenses or any right of setoff; (v) to assert all Estate Claims as a counterclaim against any Claim, whether arising out of the same or different transactions, both for an affirmative recovery and as an offset against any such Claim; and (vi) to object to any Claims on the basis of section 502(d). Vesting such exclusive power and standing in the Reorganized Debtor is reasonable and appropriate, and is authorized by, and in compliance with, section 1123(b)(3) of the Bankruptcy Code.

Z. _Compliance with the Requirements of Section 1129 of the Bankruptcy Code_. The Plan complies with the applicable provisions of the Bankruptcy Code, as follows:

(i) _Section 1129(a)(1) – Compliance of the Plan with the Applicable Provisions of the Bankruptcy Code_. The Plan complies with all applicable provisions of the Bankruptcy Code as required by section 1129(a)(1) of the Bankruptcy Code, including sections 1122 and 1123.

(a) _Sections 1122 and 1123(a)(1) – Proper Classification_. The classification of Claims and Interests in the Plan is proper under the Bankruptcy Code. Pursuant to sections 1122(a) and 1123(a)(1), the Plan provides for the separate classification of Claims and Interests into six (6) Classes (Class 1, Class 2, Class 3, Subclass 4A, Subclass 4B and Class 5), based on differences in the legal nature and priority of such Claims and Interests (other than Claims for Administrative Expenses, Priority Tax Claims and U.S. Trustee's quarterly fees, which are not required to be designated as separate Classes pursuant to section 1123(a)(1)). Based upon the Record, valid business, factual and legal reasons exist for the separate classification of the various Classes of Claims and Interests created under the Plan, the classifications were not created for any improper purpose and the creation of such Classes

does not unfairly discriminate between or among holders of Claims or Interests.  In accordance with section 1122(a), each Class of Claims and Interests contains only Claims or Interests that are substantially similar to the other Claims or Interests within that Class.  Accordingly, the requirements of sections 1122(a) and 1123(a)(1) of the Bankruptcy Code have been satisfied.

(b)     *Section 1123(a)(2) – Specification of Unimpaired Classes*.  The Plan specifies that Claims in Class 1 are unimpaired under the Plan.  Therefore, the requirements of section 1123(a)(2) of the Bankruptcy Code have been satisfied.

(c)     *Section 1123(a)(3) – Specification of Treatment of Impaired Classes*.  Other than Class 1, all Classes of Claims and Interests (Class 2, Class 3, Subclass 4A, Subclass 4B and Class 5) are Impaired under the Plan.  The Plan specifies the treatment of each Impaired Class of Claims and Interests under the Plan.  The treatment of Impaired Classes of Claims and Interests is specified in Article IV of the Plan.  Therefore, the requirements of section 1123(a)(3) of the Bankruptcy Code have been satisfied.

(d)     *Section 1123(a)(4) – No Discrimination*.  The Plan provides for the same treatment for each Claim or Interest in each respective Class unless the holder of a particular Claim or Interest has agreed to a less favorable treatment of such Claim or Interest.  Therefore, the requirements of section 1123(a)(4) of the Bankruptcy Code have been satisfied.

(e)     *Section 1123(a)(5) – Adequate Means for Plan Implementation*.  The Plan provides for adequate and proper means for the Plan's implementation.  This includes means for implementation set forth in Article VI of the Plan.  Therefore, the requirements of section 1123(a)(5) of the Bankruptcy Code have been satisfied.

(f)     *Section 1123(a)(6) – Prohibition on Issuance of Non-Voting Securities*.  The Debtors are not corporations.  Therefore, section 1123(a)(6) of the Bankruptcy Code is inapplicable.

(g)     *Section 1123(a)(7) – Selection of Officers, Directors and Trustees*.  Under the Plan, Terry shall receive 100% of the equity interests in the Reorganized Debtor.  The

Plan does not provide for the selection or appointment of any officers or directors of the Reorganized Debtor as of the Effective Date and Terry, as the sole owner of the Reorganized Debtor, shall be free to structure the Reorganized Debtor's management as he wishes. Therefore, to the extent section 1123(a)(7) of the Bankruptcy Code is applicable to the Plan, its requirements have been satisfied.

(h)     *Section 1123(a)(8) – Payment of Individual Debtor's Earnings*. The Debtors are not individuals. Therefore, section 1123(a)(8) of the Bankruptcy Code is inapplicable.

(i)     *Section 1123(b) – Discretionary Contents of the Plan*. The Plan contains various provisions that are properly construed as discretionary and not required for confirmation of the Plan under the Bankruptcy Code. As set forth below, all such discretionary provisions comply with section 1123(b) of the Bankruptcy Code, are not inconsistent with the applicable provisions of the Bankruptcy Code and are hereby approved. Therefore, section 1123(b) of the Bankruptcy Code has been satisfied.

(1)     *Section 1123(b)(1) – Impairment / Unimpairment of Claims and Interests*. The Plan impairs or leaves unimpaired each Class of Claims and Interests. Therefore, the Plan is consistent with section 1123(b)(1) of the Bankruptcy Code.

(2)     *Section 1123(b)(2) – Assumption / Rejection of Executory Contracts and Unexpired Leases*. Article XI of the Plan provides that all of the Debtors' Executory Contracts and Unexpired Leases shall be deemed rejected upon the Effective Date unless an Executory Contract or Unexpired Lease (a) has been previously assumed or rejected pursuant to an order of the Court, (b) is identified in **Exhibit 5** to this Order to be (i) assumed or (ii) assumed and assigned, or (c) is the subject of a motion to assume filed on or before the Confirmation Date. Therefore, the Plan is consistent with section 1123(b)(2) of the Bankruptcy Code.

(3)     *Section 1123(b)(3) – Settlement / Retention of Claims and*

*Causes of Action*.  The Chapter 11 Trustee has delineated the Estate Claims and Estate

Defenses to be retained in the Plan.  The terms "Estate Claims" and "Estate Defenses" are

defined in sections 1.55 and 1.56 of the Plan, respectively, and together include all claims,

causes of action, defenses, affirmative defenses, counterclaims, or offsets held by the Debtors'

Estate.  The identification and retention of the Estate Claims and Estate Defenses in the Plan is

reasonable and appropriate and reflects a proper exercise of the good faith business judgment

of the Chapter 11 Trustee.  Articles VI and IX of the Plan, including Exhibit A to the Plan, contain

a specific and unequivocal reservation of Estate Claims and Estate Defenses as required under

applicable Fifth Circuit authority.  The Estate Claims and Estate Defenses are expressly,

specifically, and unequivocally retained and reserved pursuant to Articles VI and IX of the Plan

(including Exhibit A to the Plan) in accordance with section 1123(b)(3)(B) of the Bankruptcy

Code.  Unless otherwise expressly stated in the Plan or this Order, all Estate Claims and Estate

Defenses are hereby reserved for the benefit of the Reorganized Debtor and the Reorganized

Debtor shall be entitled to file, prosecute and/or settle each of the Estate Claims so reserved in

accordance with the terms of the Plan.  The provisions of the Plan regarding reservation of

Estate Claims and Estate Defenses are appropriate and in the best interests of the Debtors, the

Estate, and holders of Claims and Interests.

(4)     *Section 1123(b)(5) – Modification of Creditors' Rights*.

With the exception of holders of Class 1 Claims, which are unimpaired, the Plan modifies the

rights of all holders of Claims against the Debtors.  Accordingly, the Plan is consistent with

section 1123(b)(5) of the Bankruptcy Code.

(ii)     *Section 1129(a)(2) – Compliance of the Chapter 11 Trustee with the*

*Applicable Provisions of the Bankruptcy Code*.  The Chapter 11 Trustee, as proponent of the

Plan, has complied with all applicable provisions of the Bankruptcy Code as required by section

1129(a)(2) of the Bankruptcy Code, including sections 1122, 1123, 1124, 1125, 1126, 1127 and

Case 18-30264-sgj11 Doc 1342 Filed 09/05/21 Entered 09/05/21 13:08:29 Page 19 of 46
Case 18-30264-sgj11 Doc 830 Filed 02/34/19 Entered 02/34/19 17:42:48 Page 18 of 230
230

1128 of the Bankruptcy Code and Bankruptcy Rules 3017, 3018 and 3019. Votes to accept or reject the Third Amended Plan were solicited after the Court conditionally approved the adequacy of the Disclosure Statement. The Chapter 11 Trustee and his present and former representatives, advisors, attorneys, professionals and agents have solicited and tabulated the votes on the Third Amended Plan and have participated in the activities described in section 1125 of the Bankruptcy Code fairly and in good faith within the meaning of section 1125(e) of the Bankruptcy Code, and in a manner consistent with the applicable provisions of the Solicitation Order, the Bankruptcy Code, the Bankruptcy Rules, and all other applicable rules, laws and regulations, and are entitled to the protections afforded by section 1125(e) of the Bankruptcy Code. The Chapter 11 Trustee and his present and former representatives, advisors, attorneys, professionals and agents have participated in good faith and in compliance with the applicable provisions of the Bankruptcy Code with respect to the offering, issuance and distribution of recoveries under the Plan and, therefore, are not (and on account of such distributions, will not be) liable at any time for the violation of any applicable law, rule, or regulation governing the solicitation of acceptances or rejections of the Third Amended Plan or distributions made pursuant to the Plan, so long as distributions are made consistent with and pursuant to the Plan.

(iii)     _Section 1129(a)(3) – Proposal of the Plan in Good Faith_. The Chapter 11 Trustee has proposed the Plan (and all other agreements, documents and instruments necessary to effectuate the Plan) in good faith and not by any means forbidden by law, thereby satisfying section 1129(a)(3) of the Bankruptcy Code. In determining that the Plan has been proposed in good faith, the Court has examined and considered the totality of the circumstances surrounding the formulation of the Plan, including both the Record at the Combined Hearing and the record of the Chapter 11 Cases. The Chapter 11 Trustee's good faith is evident from the facts and Record of the Combined Hearing. The Chapter 11 Trustee proposed the Plan for legitimate and honest purposes.

Case 18-30264-sgj11 Doc 1343 Filed 09/05/24 Entered 09/05/24 13:08:29 Page 20 of
230
Case 18-30264-sgj11 Doc 830 Filed 09/31/19 Entered 09/31/19 17:42:48 Page 19 of 229

(iv)    *Section 1129(a)(4) – Court Approval of Certain Payments as Reasonable*.
All payments made or to be made by the Reorganized Debtor for services or for costs and
expenses in or in connection with the Chapter 11 Cases or in connection with the Plan and
incident to the Chapter 11 Cases, have either been approved by, or are subject to final approval
of, the Court as reasonable.  Notwithstanding anything to the contrary in the Plan, the provisions
of section 3.01(e) of the Plan governing the filing of final fee applications by Estate
Professionals and allowance of Administrative Expense Claims of Estate Professionals apply to
the Chapter 11 Trustee.  Compensation sought by the Chapter 11 Trustee through a final fee
application shall be subject to final approval of the Court as reasonable in accordance with
section 330(a)(3) of the Bankruptcy Code.  Therefore, the requirements of section 1129(a)(4) of
the Bankruptcy Code are satisfied.

(v)    *Section 1129(a)(5) – Disclosure of Identity of Proposed Management,*
*Compensation of Insiders and Consistency of Management Proposals with the Interests of*
*Creditors and Public Policy*.  Under the Plan, Terry, who does not constitute an Insider, shall
receive 100% of the equity interests in the Reorganized Debtor.  The Plan does not provide for
appointment of any officers or directors of the Reorganized Debtor as of the Effective Date and
Terry, as the sole owner of the Reorganized Debtor, shall be free to structure the Reorganized
Debtor's management as he wishes.  Terry's identity and affiliations have been fully disclosed
and, to the extent that Terry serves as an officer of the Reorganized Debtor after confirmation of
the Plan, Terry's appointment to any such role is consistent with the interests of Creditors,
holders of Interests and public policy.  Therefore, the requirements of section 1129(a)(5) of the
Bankruptcy Code are satisfied.

(vi)    *Section 1129(a)(6) – No Rate Changes*.  The Plan does not contain any
rate changes subject to the jurisdiction of any governmental regulatory commissions and will not
require governmental regulatory approval.  Therefore, section 1129(a)(6) is not applicable to the
Chapter 11 Cases.

(vii) _Section 1129(a)(7) – Best Interest of Creditors Test_. The Plan satisfies section 1129(a)(7). The Liquidation Analysis attached as Exhibit 4 to the Disclosure Statement and the other exhibits and evidence proffered or adduced at the Combined Hearing related thereto: (a) are persuasive and credible; (b) have not been controverted by other evidence; (c) are based upon sound methodology; and (d) conclusively establish that each holder of an Impaired Claim or Interest either (1) has accepted the Plan, or (2) will receive or retain under the Plan, on account of such holder's Claim or Interest, property of a value, as of the Effective Date, that is not less than the amount that such holder would receive or retain if the Debtors were liquidated under chapter 7 of the Bankruptcy Code on such date.

(viii) _Section 1128(a)(8) – Conclusive Presumption of Acceptance by Unimpaired Classes; Acceptance of Plan by Each Impaired Class_. Class 1 is unimpaired under the Plan and is conclusively presumed to have accepted the Plan under section 1126(f) of the Bankruptcy Code. Classes 2 and 3 are Impaired under the Plan and have voted to accept the Plan. Class 4 is Impaired under the Plan and voted to reject the Plan. Class 5 is Impaired under the Plan. Holders of Class 5 Interests will not receive or retain any property on account of their Interests under the Plan and are therefore conclusively deemed to have rejected the Plan under section 1126(g) of the Bankruptcy Code. Notwithstanding the fact that the Plan was not accepted by all Classes of Impaired Claims and Interests, the Plan is confirmable because it satisfies sections 1129(a)(10) and 1129(b) of the Bankruptcy Code.

(ix) _Section 1129(a)(9) – Treatment of Claims Entitled to Priority Pursuant to Section 507(a) of the Bankruptcy Code_. The treatment of Allowed Claims for Administrative Expenses and Priority Tax Claims under Article III of the Plan satisfies the requirements of, and complies in all respects with, section 1129(a)(9) of the Bankruptcy Code. Accordingly, the requirements of section 1129(a)(9) are satisfied.

(x) _Section 1129(a)(10) – Acceptance by at Least One Impaired Class_. As set forth in the Ballot Tabulation and in this Order, Classes 2 and 3 voted to accept the Plan. As

such, at least one Class of Claims that is Impaired under the Plan has accepted the Plan

without including the acceptance of the Plan by any Insider. Therefore, the requirements of

section 1129(a)(10) of the Bankruptcy Code have been satisfied.

(xi) _Section 1129(a)(11) – Feasibility of the Plan_. The evidence submitted at

the Combined Hearing regarding feasibility, together with all evidence proffered or advanced at

or prior to the Combined Hearing, (a) is persuasive and credible, (b) has not been controverted

by other evidence, and (c) establishes that confirmation of the Plan is not likely to be followed by

the liquidation or the need for further financial reorganization of the Reorganized Debtor.

Accordingly, the requirements of section 1129(a)(11) of the Bankruptcy Code have been

satisfied.

(xii) _Section 1129(a)(12) – Payment of Bankruptcy Fees_. The Plan provides

that all fees due and payable under 28 U.S.C. section 1930 as of the Confirmation Date will be

paid in full on the Effective Date or as soon thereafter as is practicable, thus satisfying the

requirements of section 1129(a)(12) of the Bankruptcy Code.

(xiii) _Section 1129(a)(13), (14), (15) and (16) – Non-Applicability_. The Debtors

do not provide any retiree benefits within the meaning of section 1114, do not owe any domestic

support obligations, are not individuals, and are not non-profit corporations. Thus, sections

1129(a)(13), 1129(a)(14), 1129(a)(15) and 1129(a)(16) do not apply to the Chapter 11 Cases.

(xiv) _Section 1129(b) – Confirmation of the Plan Over Non-Acceptance of_

_Impaired Classes_. Class 4 is Impaired under the Plan and voted to reject the Plan. Holders of

Class 5 Interests are deemed to have rejected the Plan. Nevertheless, the Plan may be

confirmed pursuant to section 1129(b) of the Bankruptcy Code notwithstanding that the

requirements of section 1129(a)(8) have not been met because the Chapter 11 Trustee has

demonstrated by a preponderance of the evidence that the Plan (a) satisfies all of the other

requirements of section 1129(a) of the Bankruptcy Code and (b) does not "discriminate unfairly"

and is "fair and equitable" as to each Impaired Class which has not voted to accept (or is

deemed to reject) the Plan. The Plan therefore satisfies the requirements of section 1129(b) of

the Bankruptcy Code and may be confirmed despite the fact that not all Impaired Classes have

voted to accept the Plan.

(xv)     *Section 1129(c) – Only One Plan*.  Other than the Plan (including

previous versions thereof), no other plan has been filed in the Chapter 11 Cases.  Accordingly,

the requirements of section 1129(c) of the Bankruptcy Code are satisfied.

(xvi)     *Section 1129(d) – Principal Purpose of the Plan is Not the Avoidance of*

*Taxes*.  The principal purpose of the Plan is not the avoidance of taxes or the avoidance of

application of Section 5 of the Securities Act of 1933 and there has been no filing by a

Governmental Unit asserting any such attempted avoidance.  Therefore, the requirements of

section 1129(d) of the Bankruptcy Code are satisfied.

(xvii)     *Section 1129(e) – Small Business Case*.  Neither of the Chapter 11

Cases is a "small business case," as that term is defined in the Bankruptcy Code and,

accordingly, section 1129(e) is inapplicable to the Chapter 11 Cases.

AA.     *Executory Contracts and Unexpired Leases*.  The Chapter 11 Trustee has

satisfied the provisions of section 365 of the Bankruptcy Code with respect to the assumption

and rejection of the Executory Contracts and Unexpired Leases pursuant the Plan.  The

Chapter 11 Trustee has exercised reasonable business judgment prior to the Combined

Hearing in determining whether to assume or reject each of the Executory Contracts and

Unexpired Leases as set forth in Article XI of the Plan, **Exhibit "5"** to this Order, or otherwise.

Each assumption or rejection of an Executory Contract or Unexpired Lease pursuant to this

Order and in accordance with Article XI of the Plan, or otherwise by order of this Court, shall be

valid, legal, and binding upon the applicable Debtor, Reorganized Debtor, Estate, and all non-

Debtor persons or entities party to such Executory Contract or Unexpired Lease.  Executory

Contracts and Unexpired Leases not previously assumed by order of this Court and which the

Chapter 11 Trustee has determined to assume are identified in **Exhibit "5"** to this Order.

Because no defaults exist under the Executory Contracts and Unexpired Leases identified in

**Exhibit "5"** to this Order, the Chapter 11 Trustee is not required to make any cure payments,

provide any other compensation, cure any nonmonetary defaults, or provide adequate

assurance of future performance under section 365(b) of the Bankruptcy Code as a condition to

the assumption of such Executory Contracts and Unexpired Leases.

BB.    _Compromise and Settlement_.  The Court finds and concludes that, pursuant to

section 1123(b)(3)(A) of the Bankruptcy Code and Bankruptcy Rule 9019, in consideration of

the Distributions and other benefits provided under the Plan, the provisions of the Plan

constitute a good faith compromise and settlement of all Impaired Claims and Interests.  Such

settlement and compromise, which was made at arms'-length in exchange for good and

valuable consideration, is in the best interests of the holders of Impaired Claims and Interests, is

within the range of possible litigation outcomes, and is fair, equitable, and reasonable.  Each

element of the compromise and settlement reflected in the Plan is integrated and inexorably

linked.

CC.    _Plan Injunction_.  The Plan Injunction is necessary and appropriate to facilitate the

transactions and distributions to Creditors pursuant to the Plan.  The Plan Injunction constitutes

an essential and integral part of the Plan without which the holders of Claims against the

Debtors could potentially interfere with implementation and performance of the Plan.  The Plan

Injunction protects the best interests of the holders of Allowed Claims and facilitates the efficient

performance of the Plan.  Consequently, the Plan Injunction is appropriate pursuant to sections

105(a) and 1123(a)(5) of the Bankruptcy Code.

DD.    _Temporary Plan Injunction_.  The Temporary Plan Injunction (as defined herein) is

a temporary injunction which provides for the continuation, after the Effective Date, of injunctive

relief the Court previously granted in its _Preliminary Injunction Order_ (the "Preliminary

Injunction") [Docket No. 21 in Adversary No. 18-03212-sgj] entered on July 10, 2018 in the

Trustee's Adversary.  The Preliminary Injunction was originally set to expire by its own terms

Case 18-30264-sgj11 Doc 1348 Filed 09/05/21 Entered 09/05/21 13:08:29 Page 25 of 26
Case 18-30264-sgj11 Doc 830 Filed 02/19/19 Entered 02/19/19 12:42:48 Page 24 of 229
230

upon confirmation of the Plan, but is extended by this Order through the Effective Date of the Plan.  Based on the record of prior proceedings in the Chapter 11 Cases, including in the Trustee's Adversary, and the Record at the Combined Hearing, no grounds have been shown to give the Court reason to reconsider any findings supporting its prior Preliminary Injunction. Furthermore, as set forth below, the Record at the Combined Hearing demonstrates that the four elements required for issuance of injunctive relief are present, the Temporary Plan Injunction is necessary and appropriate in all respects, and it complies with the applicable requirements of the Bankruptcy Rules.

(i)      _Substantial Likelihood of Success on the Merits_.  In the Highland Adversary, the Chapter 11 Trustee has asserted a counterclaim seeking to avoid the prepetition transfer of Acis LP's rights under the ALF PMA (the "ALF PMA Transfer") as a fraudulent transfer under the Bankruptcy Code and the Texas Uniform Fraudulent Transfer Act.  Such fraudulent transfer actions seek an equitable remedy and involve claims to specific assets of Highland HCF.  But for the ALF PMA Transfer, HCLOF could not have attempted to direct and effectuate an optional redemption of the Acis CLOs (which it has twice attempted to do postpetition in the Chapter 11 Cases).  The rights transferred in the ALF PMA Transfer appear to have been fraudulently transferred for no apparent value.  The Court found in the Preliminary Injunction, and the Court finds again for purposes of this Order, that the Chapter 11 Trustee has demonstrated a substantial likelihood of success on the merits of his claim to avoid the ALF PMA Transfer as a fraudulent transfer.

(ii)      _Irreparable Harm_.  Revenue to be generated by the Reorganized Debtor under the PMAs is a primary source of funding Distributions to Creditors under the Plan.  Absent the Temporary Plan Injunction, HCLOF will be free to direct an optional redemption before this Court can adjudicate the fraudulent transfer actions with respect to the ALF PMA Transfer. Such an optional redemption – or similar call or liquidation of the Acis CLOs – would not only render such fraudulent transfer actions moot, but would effectively terminate and destroy all

Case 18-30264-sgj11 Doc 1342 Filed 09/05/21 Entered 09/05/21 13:08:29 Page 26 of 26
Case 18-30264-sgj11 Doc 830 Filed 01/31/19 Entered 01/31/19 17:42:48 Page 25 of 229
230

value in the PMAs.  This would, in turn, effectively destroy the Reorganized Debtor's ability to perform under the Plan to the detriment of the Reorganized Debtor, Creditors and other parties-in-interest.  Consequently, the Reorganized Debtor faces immediate and irreparable harm if the Temporary Plan Injunction is not issued.

(iii)  *Balance of Harms*.  The balance of harms weighs in favor of issuing the Temporary Plan Injunction because any alleged harm to HCLOF, Highland or their affiliates is substantially outweighed by the imminent and irreparable harm that would be suffered by the Reorganized Debtor, Creditors and other parties-in-interest if the Temporary Plan Injunction is not issued and an optional redemption, call or other liquidation of the Acis CLOs follows.  At a minimum, the Temporary Plan Injunction is appropriate to maintain the status quo pending adjudication of the fraudulent transfer actions with respect to the ALF PMA Transfer.  Highland, HCLOF and their affiliates will not suffer any material, recognizable harm if temporarily enjoined from pursuing an optional redemption, call or other liquidation of the Acis CLOs before the Court adjudicates the fraudulent transfer actions concerning the ALF PMA Transfer and thereby determines whether HCLOF has any legitimate right to direct an optional redemption, call or other liquidation of the Acis CLOs in the first instance.

(iv)  *Public Policy*.  Public policy favors maximization of a debtor's assets and successful reorganization.  Because an optional redemption, call or other liquidation of the Acis CLOs would destroy the value of the PMAs and the Reorganized Debtor's ability to perform under the Plan, issuance of the Temporary Plan Injunction is consistent with public policy.  Furthermore, public policy favors disposition of cases on their merits.  Absent the Temporary Plan Injunction, HCLOF could be expected to immediately direct an optional redemption, call or other liquidation of the Acis CLOs following confirmation of the Plan, thus rendering the fraudulent transfer actions concerning the ALF PMA Transfer moot.  Issuance of the Temporary Plan Injunction will avoid the potential for such fraudulent transfer actions being mooted prior to adjudication of such actions on their merits and is consistent with public policy.

(v)    _Section 105(a)_.  Section 105(a) empowers this Court to "issue any order, process, or judgment that is necessary or appropriate to carry out the provisions" of the Bankruptcy Code.  11 U.S.C. § 105(a).  The Temporary Plan Injunction is essential to the Reorganized Debtor's ability to perform the Plan and to maintain the status quo during prosecution of the fraudulent transfer actions concerning the ALF PMA Transfer.  The Temporary Plan Injunction is therefore both necessary and appropriate to carry out the provisions of the Bankruptcy Code in the Chapter 11 Cases.

(vi)    _Compliance with Technical Requirements_.  Bankruptcy Rule 3020(c) requires that the Temporary Plan Injunction (a) describe the acts enjoined in reasonable detail; (b) be specific in its terms with regard to the injunction; and (c) identify the entities subject thereto.  The Temporary Plan Injunction satisfies each of these requirements.  The description of acts enjoined is specific and particular and the language of the Temporary Plan Injunction is therefore reasonably detailed.  The Temporary Plan Injunction is also specific in its terms, as its language clearly describes the condition triggering the injunction and the specific events which will serve to terminate it.  The Temporary Plan Injunction also specifically identifies the entities subject to its terms.  Federal Rule of Civil Procedure 65(d)(1), made applicable by Bankruptcy Rule 7065, also requires that the Temporary Plan Injunction be specific in its terms and describe the enjoined acts in reasonable detail.  Federal Rule of Civil Procedure 65(d)(1) further requires that the reasons for issuance of the Temporary Plan Injunction are stated.  The reasons for this Court's issuance of the Temporary Plan Injunction are stated herein.  Therefore, the Temporary Plan Injunction satisfies all requirements of the applicable Bankruptcy Rules.

EE.    _Substantive Consolidation of the Debtors_.  The Court finds and concludes that the substantive consolidation of the Debtors for the purpose of implementing the Plan, including for purposes of distributions under the Plan, is in the best interests of the Debtors, the Estate, and holders of Claims and Interests.  Substantive consolidation recognizes the Debtors' common business purpose and the fact that Acis GP's liability is derived from the liabilities of

Acis LP based on Acis GP's status as general partner of Acis LP. The Court further finds that substantive consolidation of the Debtors constitutes an integral part of the Plan.

FF.    _Retention of Jurisdiction_.  This Court finds and concludes that this Court's retention of jurisdiction as set forth herein and in the Plan comports with 28 U.S.C. sections 157 and 1334.  Consequently, the Court may properly retain jurisdiction over the matters set forth in Article XV of the Plan.

GG.    _Implementation of Other Necessary Documents and Agreements_.  All documents and agreements necessary to implement the Plan are essential elements of the Plan and entry into and consummation of the transactions contemplated by each of such documents and agreements is in the best interests of the Debtors, the Estate, and holders of Claims and Interests.  The Chapter 11 Trustee has exercised reasonable business judgment in determining which agreements to enter into and has provided sufficient and adequate notice of such documents and agreements.  The terms and conditions of such documents and agreements have been negotiated in good faith, at arm's length, are fair and reasonable, and are reaffirmed and approved.

HH.    _Conditions Precedent to the Effective Date_.  Each of the conditions precedent to the Effective Date, as set forth in Article XIII of the Plan, has been satisfied or waived in accordance with the provisions of the Plan, or is reasonably likely to be satisfied or waived.

II.    _Satisfaction of Confirmation Requirements_.  Based upon the foregoing, all other filed pleadings, exhibits and documents filed in connection with confirmation of the Plan and all evidence and arguments made, proffered, or adduced at the Combined Hearing, the Plan satisfies the requirements for confirmation set forth in section 1129 of the Bankruptcy Code.

## **ORDER**

Based on the foregoing, it is hereby ORDERED:

1.    Findings of Fact and Conclusions of Law.  The above-referenced findings of fact and conclusions of law are incorporated by reference as though fully set forth herein.  To the

extent any of the prior findings of fact or conclusions of law constitutes an order of this Court, they are adopted as such.

2.      <u>Objections to Final Approval of Disclosure Statement and Confirmation of Plan</u>. To the extent that any of the Objections have not been resolved, withdrawn, waived or settled prior to entry of this Order or otherwise resolved as stated on the Record of the Combined Hearing or as set forth in this Order, they are hereby overruled on their merits.

3.      <u>Final Approval of Disclosure Statement</u>.  The Disclosure Statement is hereby approved on a final basis as containing adequate information as required by section 1125 of the Bankruptcy Code.

4.      <u>Confirmation of Plan</u>.  All requirements for confirmation of the Plan have been satisfied.  The Third Amended Plan, as modified by the First Modification and Second Modification (as supplemented) and as modified herein, is hereby CONFIRMED in accordance with section 1129 of the Bankruptcy Code, and all terms and conditions set forth in the Plan are hereby APPROVED.  The terms of the Plan are incorporated by reference into, and as an integral part of, this Order.

5.      <u>Solicitation and Notice</u>.  Notice of the Combined Hearing complied with the terms of the Solicitation Order, was appropriate and satisfactory based on the circumstances of the Chapter 11 Cases and was in compliance with the applicable provisions of the Bankruptcy Code and the Bankruptcy Rules.  The solicitation of votes on the Third Amended Plan and the Solicitation Materials complied with the Solicitation Procedures, was appropriate and satisfactory based upon the circumstances of the Chapter 11 Cases, and was in compliance with the applicable provisions of the Bankruptcy Code and Bankruptcy Rules.

6.      <u>Plan Classification Controlling</u>.  The terms of the Plan shall solely govern the classification of Claims and Interests for purposes of distributions to be made thereunder.  The classifications set forth on the Ballots tendered to or returned by the Holders of Claims in connection with voting on the Plan: (a) were set forth thereon solely for purposes of voting to

accept or reject the Plan; (b) do not necessarily represent, and in no event shall be deemed to modify or otherwise affect, the actual classification of Claims under the Plan for distribution purposes; (c) may not be relied upon by any holder of a Claim as representing the actual classification of such Claim under the Plan for distribution purposes; and (d) shall not be binding upon the Debtors and the Reorganized Debtor except for voting purposes.

7.    Resolution of Stinson Objection.   Stinson Leonard Street LLP ("Stinson") has asserted a Claim against the Debtors for $158,552.98.  On July 31, 2018, Stinson initially asserted its Claim as an unsecured Claim by filing proof of Claim number 12 in the Acis LP case and proof of claim number 2 in the Acis GP case.  Those Claims represent a single Claim for satisfaction of a total alleged debt of $158,552.89.  All proofs of Claim filed by Stinson will be referred to collectively as the "Stinson Claim."  The Stinson Claim is treated as part of Class 3 under the Plan.  On November 9, 2018, Stinson amended the Stinson Claim to assert a secured Claim based on a possessory lien on legal files belonging to the Debtors.  The Chapter 11 Trustee currently intends to object to the Stinson Claim, including Stinson's claim to secured status.  Stinson filed an Objection to the Plan on November 26, 2018 [Docket No. 720] which was subsequently withdrawn based on this proposed paragraph being included in any Order confirming the Plan.  This paragraph resolves Stinson's Objection as follows:  Notwithstanding any contrary provision of the Plan or this Order, the Stinson Claim, to the extent it is Allowed by a Final Order of the Bankruptcy Court as a Secured Claim, shall be considered a separate class under the Plan and paid by the Reorganized Debtor within thirty (30) days after entry of such Final Order.  To the extent it is an Allowed Secured Claim, the Stinson Claim will be removed from Class 3.  To the extent it is an Allowed General Unsecured Claim, the Stinson Claim will remain a Class 3 Claim.  This recognizes that the Stinson Claim may be allowed as partly secured (*i.e.* only secured to the extent of the value of its collateral) and be paid accordingly. The Chapter 11 Trustee reserves all rights to object to Stinson's proofs of Claim, and Stinson reserves all rights to defend its proofs of Claim.

8.  <u>Plan Implementation</u>.  Upon the Effective Date of the Plan, the Chapter 11 Trustee and the Reorganized Debtor are hereby authorized and directed to take all actions necessary or appropriate to implement, effectuate or consummate the Plan, the terms of this Order and the transactions respectively contemplated therein, and to otherwise fully perform and execute their duties under the Plan or this Order.  Without limiting the generality of the foregoing, pursuant to section 1142(b) of the Bankruptcy Code, each and every Person (including, without limitation, the Chapter 11 Trustee, HCLOF, Highland, any and all affiliates of HCLOF and Highland, the Issuers and Co-Issuers, and the Indenture Trustee), to the extent necessary, is hereby directed to execute or deliver, or to join in the execution or delivery of, any instrument required to effect the transfers of property dealt with under the Plan and this Order, and to perform all other acts necessary for the consummation of the Plan.  Further pursuant to section 1142(b) of the Bankruptcy Code, to the extent that any Person fails to execute or deliver any instrument required to effect the transfers of property pursuant to the Plan and this Order, the Chapter 11 Trustee is hereby authorized to execute and deliver on behalf of any such Person (including, without limitation, HCLOF, Highland, and any and all affiliates of HCLOF and Highland) any instrument required to effect the transfers of property pursuant to the Plan and this Order.  In the event of an appeal of this Order, the Chapter 11 Trustee and the Reorganized Debtor are hereby authorized and directed to take all steps necessary to make the Plan effective and, from and after the Effective Date, execute their duties, responsibilities and obligations under the Plan, this Order and the Plan Documents unless and until this Order is stayed by order of a court of appropriate jurisdiction.

9.  <u>Restructuring Transactions</u>.  On the Effective Date or as soon as reasonably practicable thereafter, the Reorganized Debtor may take all actions as may be necessary or appropriate to effect any transaction described in, approved by, contemplated by, or necessary to effectuate the Plan; <u>provided</u>, <u>however</u>, that no such restructuring transactions may violate the terms of any assumed Executory Contract or Unexpired Lease.

Case 18-30264-sgj11 Doc 1342 Filed 09/05/21 Entered 09/05/24 13:08:29 Page 32 of 229
Case 18-30264-sgj11 Doc 830 Filed 02/31/05 Entered 02/31/05 14:42:42 Page 31 of 229
230

10.     <u>Approval of Plan Documents</u>.  The form and substance of the Plan Documents are all hereby APPROVED.  The Chapter 11 Trustee is authorized and directed, without the need for further corporate or other organizational action by or on behalf of the Debtors or further order or authorization of this Court, to take such actions and do all things as may be necessary or required to implement and effectuate the Plan Documents and to make the Plan effective.

11.     <u>Transfer and Vesting of Assets; Assumption of Obligations</u>.  On the Effective Date, without the execution of any other or further document or any further order by the Court, all Assets shall be deemed as fully, completely and irrevocably transferred to, and vested in, the Reorganized Debtor in accordance with the Plan.  All transfers of Assets to the Reorganized Debtor shall be free and clear of all Liens, Claims, rights, Interests and charges, except as otherwise expressly provided in the Plan or any agreement, instrument, or other document incorporated therein, or this Order.  Upon the Effective Date, the Reorganized Debtor shall be deemed to have assumed the obligations to make all Distributions pursuant to the Plan and this Order.

12.     <u>Estate Claims and Estate Defenses</u>.  Upon the Effective Date, without the necessity of the execution of any further documents or further order of the Court, all Estate Claims and Estate Defenses, including without limitation all Estate Claims and Estate Defenses identified in Exhibit A to the Plan, shall be deemed as fully, completely and irrevocably transferred to, and vested in, the Reorganized Debtor.  From and after the Effective Date, the Reorganized Debtor shall have the exclusive standing and authority to assert, prosecute, collect, compromise and settle all Estate Claims and Estate Defenses pursuant to the terms of the Plan.

13.     <u>Treatment of Executory Contracts and Unexpired Leases</u>.  The Executory Contract and Unexpired Lease provisions of Article XI of the Plan, as modified herein**,** are hereby approved in their entirety.  The assumption of Executory Contracts and Unexpired Leases as set forth in the Plan, this Order, and **Exhibit "5"** to this Order are hereby approved.

Because no defaults exist under the Executory Contracts and Unexpired Leases identified in

**Exhibit "5"** to this Order, the Chapter 11 Trustee is not required to make any cure payments,

provide any other compensation, cure any nonmonetary defaults, or provide adequate

assurance of future performance under section 365(b) of the Bankruptcy Code as a condition to

the assumption of such Executory Contracts and Unexpired Leases. All other Executory

Contracts and Unexpired Leases that have not been previously assumed or rejected shall be

deemed as rejected as of the Effective Date in accordance with the terms of the Plan. All

Rejection Claims must be filed within the time specified in section 11.03 of the Plan, failing

which any such Rejection Claim shall be forever barred and precluded from receiving any

Distribution pursuant to the Plan. Notwithstanding anything to the contrary herein or in the Plan,

Exhibit 5 to this Order hereby replaces, is substituted for, and supersedes Exhibit B to the Third

Amended Plan and any explicit or inferred references herein or in the Plan to Exhibit B to the

Third Amended Plan shall refer to Exhibit 5 to this Order.

14. <u>Executory Contracts with Issuers and Co-Issuers</u>. Pursuant to the Plan and as

provided in this Order, the Debtors are authorized to assume executory contracts that include as

a party ACIS CLO 2014-3 Ltd., ACIS CLO 2014-4 Ltd., ACIS CLO 2014-5 Ltd., ACIS CLO 2015-

6 Ltd., ACIS CLO 2014-3 LLC, ACIS CLO 2014-4 LLC, ACIS CLO 2014-5 LLC, and/or ACIS

CLO 2015-6 LLC solely if and to the extent that one or more of the Debtors is a signatory to

each such executory contract.

15. <u>Approval of Brigade as Sub-Advisor and Shared Services Provider</u>. Pursuant to

an *Order Granting Emergency Motion to Approve Replacement Sub-Advisory and Shared

Services Providers, Brigade Capital Management, LP and Cortland Capital Markets Services

LLC* [Docket No. 464] entered on August 1, 2018, the Court authorized the Chapter 11 Trustee

to engage Brigade Capital Management, LP ("<u>Brigade</u>") and Cortland Capital Markets Services

LLC to perform the services previously provided by Highland under the Sub-Advisory

Agreement and Shared Services Agreement, on an interim basis. The Chapter 11 Trustee

selected Brigade as the party to provide both sub-advisory and shared services to the

Reorganized Debtor.  Based on the record of prior proceedings in the Chapter 11 Cases and

the Record at the Combined Hearing, the Chapter 11 Trustee has demonstrated that Brigade is

fully qualified to perform such services, and that the Chapter 11 Trustee's selection of Brigade is

an exercise of his sound business judgment.  Furthermore, adequate assurance of future

performance by Brigade has been shown.  Therefore, the selection of Brigade as the provider to

the Reorganized Debtor of the sub-advisory and shared services previously provided by

Highland under the Sub-Advisory Agreement and Shared Services Agreement is hereby

approved in all respects.

16.  <u>Substantive Consolidation</u>.  The substantive consolidation of the Debtors for

purposes of implementation of and distributions under the Plan is hereby approved as of the

Effective Date such that on the Effective Date:  (a) all assets and liabilities of the Debtors will be

deemed merged; (b) all guaranties by one Debtor of the obligations of the other Debtor will be

deemed eliminated so that any Claim against any Debtor and any guarantee thereof executed

by the other Debtor and any joint or several liability of the Debtors will be deemed to be one

obligation of the consolidated Debtors; and (c) each and every Claim filed or to be filed in the

case of either of the Debtors will be deemed filed against the consolidated Debtors and will be

deemed one Claim against and a single obligation of the consolidated Debtors.

17.  <u>Compromise and Settlement</u>.  Pursuant to section 363 of the Bankruptcy Code

and Bankruptcy Rule 9019, and in consideration of the classification, potential Distributions and

other benefits provided under the Plan, the provisions of the Plan shall constitute a good faith

compromise and settlement of all Claims, Interests and controversies subject to, or dealt with,

under the Plan, including, without limitation, all Claims against the Debtors or Estate arising

prior to the Effective Date, whether known or unknown, foreseen or unforeseen, asserted or

unasserted, fixed or contingent, arising out of, relating to or in connection with the business or

affairs of, or transactions with, the Debtors or the Estate.  The entry of this Order constitutes the

Case 18-30264-sgj11 Doc 1348 Filed 09/05/24 Entered 09/05/24 13:08:29 Page 35 of 26
Case 18-30264-sgj11 Doc 830 Filed 09/11/19 Entered 09/11/19 17:42:43 Page 34 of 229
230

Court's approval of each of the foregoing compromises or settlements embodied in the Plan, and all other compromises and settlements provided for in the Plan, as well as a finding by the Court that such compromises and settlements are in the best interest of the Debtors, the Estate, holders of Claims and Interests, and other parties-in-interest, and are fair, equitable and within the range of reasonableness. The rights afforded in the Plan and the treatment of all Claims and Interests therein are in exchange for, and in complete satisfaction and release of, all Claims and Interests of any nature whatsoever against and in the Debtors, the Estate, and the Assets. Except as otherwise provided in the Plan or this Order, all Persons shall be precluded and forever barred by the Plan Injunction from asserting against the Debtors and their affiliates, successors, assigns, the Reorganized Debtor or the Reorganized Debtor's assets, the Estate, or the Assets, any event, occurrence, condition, thing, or other or further Claims or causes of action based upon any act, omission, transaction, or other activity of any kind or nature that occurred or came into existence prior to the Effective Date, whether or not the facts of or legal bases therefore were known or existed prior to the Effective Date.

18. _Discharge_. Except for the obligations expressly set forth in the Plan or this Order, on the Effective Date, the Debtors, the Reorganized Debtor and their successors in interest and assigns shall be deemed and they each are discharged and released to the fullest extent permitted by applicable law, including pursuant to section 1141(d)(1) of the Bankruptcy Code, from any and all Claims, Interests, demands, debts and liabilities that arose before the Effective Date. Without limiting the generality of the foregoing, the discharge shall apply to and cover both known and unknown Claims although the Court makes no determination in this Order as to which Creditors may constitute holders of unknown Claims. In addition, all such discharged Claims, both known and unknown, shall be subject to the Plan Injunction.

19. _Injunctions_. The following injunction provisions set forth in Article XIV of the Plan are hereby approved and authorized in their entirety:

      **(a)**    **Permanent General Plan Injunction:**

**EXCEPT AS OTHERWISE EXPRESSLY PROVIDED IN THE PLAN, AS OF THE EFFECTIVE DATE ALL HOLDERS OF CLAIMS AGAINST, OR INTERESTS IN, THE DEBTORS, THE ESTATE OR ANY OF THE ASSETS THAT AROSE PRIOR TO THE EFFECTIVE DATE ARE HEREBY PERMANENTLY ENJOINED AND PROHIBITED FROM THE FOLLOWING: (a) THE COMMENCING OR CONTINUATION IN ANY MANNER, DIRECTLY OR INDIRECTLY, OF ANY ACTION, CASE, LAWSUIT OR OTHER PROCEEDING OF ANY TYPE OR NATURE AGAINST THE DEBTORS, THE ESTATE, THE REORGANIZED DEBTOR, OR THE REORGANIZED DEBTOR'S ASSETS WITH RESPECT TO ANY SUCH CLAIM OR INTEREST ARISING OR ACCRUING BEFORE THE EFFECTIVE DATE, INCLUDING WITHOUT LIMITATION THE ENTRY OR ENFORCEMENT OF ANY JUDGMENT, OR ANY OTHER ACT FOR THE COLLECTION, EITHER DIRECTLY OR INDIRECTLY, OF ANY CLAIM OR INTEREST AGAINST THE DEBTORS, THE ESTATE, THE REORGANIZED DEBTOR, OR THE REORGANIZED DEBTOR'S ASSETS; (b) THE CREATION, PERFECTION OR ENFORCEMENT OF ANY LIEN, SECURITY INTEREST, ENCUMBRANCE, RIGHT OR BURDEN, EITHER DIRECTLY OR INDIRECTLY, AGAINST THE DEBTORS, THE ESTATE, THE REORGANIZED DEBTOR, OR THE REORGANIZED DEBTOR'S ASSETS, OR (c) TAKING ANY ACTION IN RELATION TO THE DEBTORS, THE ESTATE, THE REORGANIZED DEBTOR, OR THE REORGANIZED DEBTOR'S ASSETS, EITHER DIRECTLY OR INDIRECTLY, WHICH VIOLATES OR DOES NOT CONFORM OR COMPLY WITH THE PROVISIONS OF THE PLAN APPLICABLE TO SUCH CLAIM OR INTEREST.**

The above injunction is an integral term of this Order and shall be fully binding upon, and enforceable against, all Persons through and as a part of this Order. Furthermore, notwithstanding anything to the contrary in the Plan or this Order, the above injunction is permanent and shall not expire upon the occurrence of any event that causes the Temporary Plan Injunction to expire.

(b) **Temporary Injunction Against the Liquidation of the Acis CLOs and Related Actions (the "Temporary Plan Injunction"):**

**EXCEPT TO THE EXTENT NECESSARY TO ALLOW HCLOF, THE REORGANIZED DEBTOR AND BRIGADE TO EFFECTUATE THE RESET OF ONE OR MORE OF THE ACIS CLOS IN ACCORDANCE WITH SECTION 6.08 OF THE PLAN, PURSUANT TO SECTIONS 105(a), 1123(a)(5), 1123(b)(6), AND 1142(b) OF THE BANKRUPTCY CODE, THE ENJOINED PARTIES (DEFINED BELOW) ARE HEREBY ENJOINED FROM: (a) PROCEEDING WITH, EFFECTUATING, OR OTHERWISE TAKING (i) ANY ACTION IN FURTHERANCE OF ANY OPTIONAL REDEMPTION, CALL, OR OTHER LIQUIDATION OF THE ACIS CLOS PREVIOUSLY OR CURRENTLY ISSUED BY ANY SUCH PARTIES, AND (ii) ANY OTHER ATTEMPT TO LIQUIDATE THE ACIS CLOS BY ANY MEANS, (b) TRADING ANY ACIS CLO COLLATERAL IN FURTHERANCE OF ANY OPTIONAL REDEMPTION, CALL, OR OTHER LIQUIDATION OF THE ACIS CLOS, (c) EXERCISING ANY RIGHTS TO ASK OR DIRECT THE ISSUERS, CO-ISSUERS OR INDENTURE TRUSTEE TO PERFORM ANY ACTION IN RELATION TO THE ACIS CLOS THAT THE ENJOINED PARTIES ARE PROHIBITED FROM TAKING UNDER THE TERMS OF THE PLAN INJUNCTION, (d) INTERFERING IN ANY WAY WITH THE CAPITAL MARKETS PROCESS OF RESETTING ANY ACIS CLO, AND (e) SENDING, MAILING, OR OTHERWISE DISTRIBUTING ANY NOTICE TO THE HOLDERS OF**

**THE NOTES IN THE ACIS CLOS IN CONNECTION WITH THE EFFECTUATION OF ANY OPTIONAL REDEMPTION, CALL, OR OTHER LIQUIDATION OF THE ACIS CLOS, UNTIL THE EARLIER TO OCCUR OF: (w) THE DATE UPON WHICH A FINAL ORDER IS ENTERED RESOLVING THE ESTATE'S AVOIDANCE CLAIMS AGAINST ALL ENJOINED PARTIES RELATING TO ACIS LP'S RIGHTS UNDER THE ALF PMA; (x) THE DATE UPON WHICH ALL ALLOWED CLAIMS AGAINST THE DEBTORS HAVE BEEN PAID IN FULL, (y) THE ENTRY OF AN ORDER BY THE BANKRUPTCY COURT FINDING THAT A MATERIAL DEFAULT HAS OCCURRED UNDER THE TERMS OF THE PLAN, OR (z) THE ENTRY OF A SUBSEQUENT ORDER BY THE BANKRUPTCY COURT PROVIDING OTHERWISE WITH RESPECT TO ONE OR MORE OF THE ACIS CLOS. FOR PURPOSES OF THIS PARAGRAPH, THE TERM "ENJOINED PARTIES" SHALL INCLUDE HIGHLAND, HCLOF, CLO HOLDCO, NEUTRA, HIGHLAND HCF, HIGHLAND CLOM, ANY AFFILIATES OF HIGHLAND, AND THEIR RESPECTIVE EMPLOYEES, AGENTS, REPRESENTATIVES, TRANSFEREES, ASSIGNS, AND SUCCESSORS. FOR PURPOSES OF CLARIFICATION AND AVOIDANCE OF DOUBT, NOTHING IN THIS PARAGRAPH SHALL PRECLUDE ORDINARY DAY-TO-DAY TRADING OF THE COLLATERAL IN THE ACIS CLOS BY THE REORGANIZED DEBTOR.**

The above Temporary Plan Injunction is an integral term of this Order and the Temporary Plan Injunction shall be fully binding upon, and enforceable against, the Enjoined Parties through and as a part of this Order. For the avoidance of doubt, the occurrence of any event specified in the Temporary Plan Injunction that results in expiration of the Temporary Plan Injunction shall not cause any of the other injunctive relief set forth in the first paragraph of section 14.03 of the Plan and paragraph 18(a) of this Order to expire, such other injunctive relief being permanent.

20. Notwithstanding anything to the contrary in the Plan or this Order, nothing in the Plan or in this Order shall discharge, release, enjoin or otherwise bar (a) any liability of the Debtors, the Estate, the Reorganized Debtor, or the Reorganized Debtor's assets ("Released Parties") to a Governmental Unit arising on or after the Confirmation Date with respect to events occurring after the Confirmation Date, provided that the Released Parties reserve the right to assert that any such liability is a Claim that arose on or prior to the Confirmation Date and constitutes a Claim that is subject to the deadlines for filing proofs of Claim, (b) any liability to a Governmental Unit that is not a Claim subject to the deadlines for filing proofs of Claim, (c) any valid right of setoff or recoupment of a Governmental Unit, and (d) any police or regulatory action by a Governmental Unit. In addition, nothing in the Plan or this Order discharges, releases, precludes or enjoins any environmental liability to any Governmental Unit that any

Person other than the Released Parties would be subject to as the owner or operator of the property after the Effective Date. For the avoidance of any doubt, nothing in this paragraph shall be construed to limit the application of the Plan Injunction to any Claim which was subject to any bar date applicable to such Claim.

21. <u>Extension of the Preliminary Injunction</u>. Notwithstanding anything to the contrary in the terms of the Preliminary Injunction entered in the Trustee's Adversary, the Preliminary Injunction shall not expire upon confirmation of the Plan. The Preliminary Injunction is hereby extended to and through the Effective Date of the Plan and shall remain in full force and effect until the Effective Date of the Plan.

22. <u>Exculpation</u>. The exculpation provisions set forth in section 16.06 of the Plan are hereby approved in all respects.

23. <u>Priority and Secured Tax Claims</u>. The treatment of Priority Tax Claims and Secured Tax Claims is specified in the Plan. Nothing in the Plan or this Order shall modify or affect the Lien rights of a Taxing Authority under applicable non-bankruptcy law. In the event of a default on the payment of a Priority Tax Claim or Secured Tax Claim under the Plan, the Taxing Authority to which the payment is owed may pursue all administrative and judicial remedies under applicable law to collect the unpaid Priority Tax Claim or Secured Tax Claim.

24. <u>Injunctions and Automatic Stay</u>. Except as otherwise provided in the Plan or this Order, all injunctions or stays in effect in the Chapter 11 Cases pursuant to sections 105 or 362 of the Bankruptcy Code or any order of the Court, and extant on the Confirmation Date (excluding any injunctions or stays contained in the Plan or this Order) shall remain in full force and effect until the Effective Date. All injunctions or stays contained in the Plan or this Order shall remain in full force and effect in accordance with their terms.

25. <u>Setoffs</u>. Except as otherwise expressly provided for in the Plan, pursuant to the Bankruptcy Code (including section 553 of the Bankruptcy Code), applicable nonbankruptcy law, or as may be agreed to by the holder of a Claim, the Reorganized Debtor may set off

against any Allowed Claim and the Distributions to be made pursuant to the Plan on account of

such Allowed Claim (before such Distribution is made), any Claims, rights, Estate Claims and

Estate Defenses of any nature that the Debtors may hold against the holder of such Allowed

Claim, to the extent such Claims, rights, Estate Claims and Estate Defenses against such

holder have not been otherwise compromised or settled on or prior to the Effective Date

(whether pursuant to the Plan or otherwise); provided, however, that neither the failure to effect

such a setoff nor the allowance of any Claim or Interest pursuant to the Plan shall constitute a

waiver or release of any such Claims, rights, Estate Claims and Estate Defenses that the Estate

may possess against such Claimant.  In no event shall any Claimant or Interest holder be

entitled to setoff any Claim or Interest against any Claim, right, or Estate Claim of the Debtors

without the consent of the Debtors or the Reorganized Debtor unless such holder files a motion

with the Court requesting the authority to perform such setoff notwithstanding any indication in

any proof of Claim or otherwise that such holder asserts, has, or intends to preserve any right of

setoff pursuant to section 553 of the Bankruptcy Code or otherwise.

      26.    <u>Recoupment</u>.  Except as otherwise expressly provided for in the Plan, in no event

shall any holder of Claims or Interests be entitled to recoup any Claim or Interest against any

Claim, right, account receivable, or Estate Claim of the Debtors or the Reorganized Debtor

unless (a) such holder actually provides notice thereof in writing to the Debtors or the

Reorganized Debtor of its intent to perform a recoupment; (b) such notice includes the amount

to be recouped by the holder of the Claim or Interest and a specific description of the basis for

the recoupment, and (c) the Debtors or the Reorganized Debtor have provided a written

response to such Claim or Interest holder, stating unequivocally that the Debtors or the

Reorganized Debtor consents to the requested recoupment.  The Debtors and the Reorganized

Debtor shall have the right, but not the obligation, to seek an order of the Court allowing any or

all of the proposed recoupment.  In the absence of a written response from the Debtors or the

Case 18-30264-sgj11 Doc 1343 Filed 09/05/21 Entered 09/05/21 13:08:29 Page 40 of 26
Case 18-30264-sgj11 Doc 830 Filed 02/21/19 Entered 02/21/19 17:42:42 Page 39 of 229
230

Reorganized Debtor consenting to a recoupment or an order of the Court authorizing a recoupment, no recoupment by the holder of a Claim or Interest shall be allowed.

27. <u>Preservation of Causes of Action</u>. Articles VI and IX of the Plan, including Exhibit A to the Plan, contain a specific and unequivocal reservation of Estate Claims and Estate Defenses as required under applicable Fifth Circuit authority. The Estate Claims and Estate Defenses are expressly, specifically, and unequivocally retained and reserved pursuant to Articles VI and IX of the Plan (including Exhibit A to the Plan) in accordance with section 1123(b)(3)(B) of the Bankruptcy Code. Such reservation of the Estate Claims and Estate Defenses is hereby approved. **No person may rely on the absence of a specific reference in the Plan or the Disclosure Statement to any cause of action against them as any indication that the Debtors or the Reorganized Debtor will not pursue any and all available causes of action (including all Estate Claims, Estate Defenses and Avoidance Actions) against any Person, <u>except</u> as otherwise provided in the Plan.** Unless any causes of action against a Person are expressly waived, relinquished, exculpated, released, compromised or settled in the Plan or a Final Order, such causes of action are hereby expressly reserved (including all Estate Claims, Estate Defenses and Avoidance Actions) for later adjudication and, therefore, no preclusion doctrine, <u>including without limitation</u>, the doctrines of res judicata, collateral estoppel, issue preclusion, claim preclusion, estoppel (judicial, equitable or otherwise) or laches, shall apply to such causes of action upon or after the confirmation or consummation of the Plan.

28. Unless otherwise expressly stated in the Plan or this Order, all Estate Claims and Estate Defenses are hereby reserved for the benefit of the Reorganized Debtor notwithstanding the occurrence of the Effective Date or the rejection or repudiation of any Executory Contract or Unexpired Lease during the Chapter 11 Cases or pursuant to the Plan. All such reserved Estate Claims and Estate Defenses shall be vested with the Reorganized Debtor and the Reorganized Debtor shall have the exclusive right, authority and standing to assert, file,

Case 18-30264-sgj11 Doc 1348 Filed 09/05/21 Entered 09/05/24 43:08:29 Page 41 of 26
Case 18-30264-sgj11 Doc 830 Filed 03/31/19 Entered 03/31/19 17:42:48 Page 40 of 229
230

prosecute, enforce, abandon, settle, compromise, release, withdraw, or litigate to judgment

each of the Estate Claims and Estate Defenses so reserved in accordance with the terms of the

Plan without the consent or approval of any third party or further notice to or action, order or

approval of the Court.

29.     <u>Subordinated Claims</u>.  The allowance, classification and treatment of all Allowed

Claims and Interests and the respective Distributions and treatments under the Plan take into

account and conform to the relative priority and rights of the Claims and Interests in each Class

in connection with any contractual, legal and equitable subordination rights relating thereto,

whether arising under general principles of equitable subordination, the Bankruptcy Code, or

otherwise.  Pursuant to section 510 of the Bankruptcy Code, the Reorganized Debtor reserves

the right to seek to re-classify any Allowed Claim or Interest in accordance with any contractual,

legal or equitable subordination relating thereto.

30.     <u>Release of Liens</u>.  Except as otherwise provided in the Plan, this Order, or in any

contract, instrument, or other agreement or document entered into or delivered in connection

with the Plan, on the Effective Date all Liens against any Assets transferred to and vested in the

Reorganized Debtor are hereby deemed to be released, terminated and nullified without the

necessity of further order of this Court.

31.     <u>Provisions Governing Distributions</u>.  The distribution provisions of Articles VII and

VIII of the Plan shall be, and hereby are, approved in their entirety; provided, however, that

notwithstanding anything to the contrary set forth in Section 7.02 of the Plan, the Reorganized

Debtor may, but shall not be required to, reserve for Distributions to holders of Allowed

Subclass 4B Claims.  The Reorganized Debtor shall make all Distributions required under the

Plan.

32.     <u>Procedures for Resolving Contested and Contingent Claims</u>.  The Claims

resolution procedures contained in Article X of the Plan are hereby approved.

33.     <u>Section 1145 Exemption</u>.  The solicitation of acceptances and rejections of the Plan was exempt from the registration requirements of the Securities Act of 1933 and applicable state securities laws, and no other nonbankruptcy law applies to the solicitation.

34.     <u>Exemption from Certain Transfer Taxes and Recording Fees</u>.  Section 1146(a) shall apply to the transfers of Assets pursuant to the Plan and, therefore, such transfers may not be taxed under any law imposing a stamp tax or similar tax.

35.     <u>Governmental Approvals Not Required</u>.  This Order shall constitute all approvals and consents required, if any, by the laws, rules or regulations of any state or any other governmental authority with respect to the implementation or consummation of the Plan and any documents, instruments or agreements, and any amendments or modifications thereto, and any other acts referred to in or contemplated by the Plan, the Disclosure Statement and any documents, instruments or agreements, and any amendments or modifications thereto.

36.     <u>Allowance and Payment of Certain Administrative Expense Claims</u>

(a)     <u>Administrative Expense Claims (Generally)</u>.  The holder of a Claim for an Administrative Expense, other than (i) such a Claim by an Estate Professional, (ii) an Ordinary Course Claim, (iii) a Claim for U.S. Trustee fees under 28 U.S.C. § 1930, or (iv) an Allowed Administrative Expense, must file with the Court and serve upon the Reorganized Debtor and its counsel, as set forth in the Plan, a written notice of such Claim for an Administrative Expense within thirty (30) days after the Effective Date (the "<u>Administrative Bar Date</u>").  Such notice of Claim for an Administrative Expense shall include at a minimum: (i) the name, address, telephone number and fax number (if applicable) or email address of the holder of such Claim, (ii) the amount of such Claim, and (iii) the basis of such Claim.  ***<u>The failure to timely and properly file and serve a notice of Claim for an Administrative Expense on or before the Administrative Bar Date shall result in such Claim for an Administrative Expense being forever barred and discharged without further order of the Court and the holder thereof shall be barred from receiving any Distribution from the Reorganized Debtor on account</u>***

*of such Claim for an Administrative Expense.*  A Claim for an Administrative Expense with respect to which a notice of Claim for an Administrative Expense has been timely and properly filed and served shall become an Allowed Administrative Expense if no objection is filed within thirty (30) days after the date of filing and service of the applicable notice of Claim for an Administrative Expense, or such later date as may be approved by the Court on motion of a party in interest, without notice or a hearing.  If an objection is filed within such 30-day period (or any extension thereof), the Claim for an Administrative Expense shall become an Allowed Administrative Expense only to the extent allowed by a Final Order.

(b)    Estate Professional Compensation.  All final requests for compensation or reimbursement by any Estate Professional shall be filed no later than sixty (60) days after the Effective Date in accordance with the Plan.  A Claim for an Administrative Expense by an Estate Professional in respect of which a final fee application has been properly filed shall become an Allowed Administrative Expense only to the extent allowed by Final Order and, if so Allowed, shall be paid in accordance with the terms of the Plan.  Notwithstanding anything to the contrary in the Plan, the provisions of the Plan governing the filing of final fee applications by Estate Professionals and allowance of Administrative Expense Claims of Estate Professionals apply to the Chapter 11 Trustee.  Compensation or reimbursement sought by the Chapter 11 Trustee through a final fee application shall be subject to final approval of the Court as reasonable in accordance with section 330(a)(3) of the Bankruptcy Code.

(c)    U.S. Trustee Fees.  Any U.S. Trustee fees incurred pursuant to 28 U.S.C. § 1930 which are past due as of the Confirmation Date shall be paid in full by the Chapter 11 Trustee on or before the earlier of (i) December 21, 2018, or (ii) that day which is ten (10) days after the Confirmation Date.  After the Confirmation Date, the Reorganized Debtor shall continue to pay U.S. Trustee fees as they accrue until a final decree is entered and the Chapter 11 Cases are closed.

37. <u>Effectuating Documents and Further Transactions</u>.  The Chapter 11 Trustee and the Reorganized Debtor, and their respective representatives, agents and attorneys, may take all actions to execute, deliver, file, or record such contracts, instruments, releases, and other agreements or documents and take such actions as may be necessary or appropriate to effectuate and implement the provisions of the Plan without the need for any approvals, authorizations, actions, or consents except for those expressly required pursuant hereto.  This Order shall constitute all approvals and consents required, if any, by the laws, rules and regulations of all states and any other governmental authority with respect to the implementation or consummation of the Plan and any documents, instruments, agreements, any amendments or modifications thereto and any other acts and transactions referred to in or contemplated by the Plan, the Plan Documents, the Disclosure Statement, and any documents, instruments, and agreements and any amendments or modifications thereto.

38. <u>Filing and Recording</u>.  This Order is and shall be binding upon and shall govern the acts of all entities including, without limitation, all filing agents, filing officers, title agents, title companies, recorders of mortgages, recorders of deeds, registrars of deeds, administrative agencies, governmental departments, secretaries of state, federal, state and local officials, and all other persons and entities who may be required, by operation of law, the duties of their office, or contract, to accept, file, register or otherwise record or release any document or instruments.  Each and every federal, state and local government agency is hereby directed to accept any and all documents and instruments necessary, useful or appropriate to effectuate, implement and consummate the transactions contemplated by the Plan and this Order.

39. <u>Inconsistency between Documents</u>.  In the event of an inconsistency between the terms of the Plan and the terms of the Disclosure Statement, the Plan shall control.  In the event of any inconsistency between the terms of the Plan or the terms of the Disclosure Statement and the terms of this Order, this Order shall control.

Case 18-30264-sgj11 Doc 830-1 Filed 09/05/24 Entered 09/05/24 12:42:20 Page 45 of 230

40.     <u>References to Plan Provisions</u>.  The failure specifically to include or to refer to any particular article, section, or provision of the Plan or any related document in this Order shall not diminish or impair the effectiveness of such article, section, or provision, it being the intent of the Court that the Plan and any related documents be confirmed in their entirety.

41.     <u>Applicable Nonbankruptcy Law.</u>  Pursuant to sections 1123(a) and 1142(a) of the Bankruptcy Code, the provisions of the Plan and this Order shall apply and be enforceable notwithstanding any otherwise applicable nonbankruptcy law.

42.     <u>Notice of Entry of the Confirmation Order</u>.  No later than the third Business Day after the entry of this Order, the Chapter 11 Trustee shall serve a copy of this Order pursuant to Bankruptcy Rules 2002(f)(7), 2002(k) and 3020(c) on all holders of Claims and Interests, the U.S. Trustee, the Persons specifically identified in the Temporary Plan Injunction as subject thereto, and all other known parties-in-interest.

43.     <u>Notice of the Effective Date</u>.  No later than the third Business Day after the occurrence of the Effective Date, the Reorganized Debtor shall file a notice of occurrence of the Effective Date with the Clerk of the Court and shall serve a copy on all holders of Claims and Interests, the U.S. Trustee, the Persons specifically identified in the Temporary Plan Injunction as subject thereto, and all other known parties-in-interest.  Such notice shall include notice of (a) the Administrative Bar Date, (b) the deadline for filing Rejection Claims set forth in section 11.03 of the Plan, and (c) the deadline for filing final requests for compensation and reimbursement by Estate Professionals.  The filing of such notice shall conclusively establish that all conditions precedent have been satisfied or waived and shall constitute adequate and sufficient notice to all parties entitled thereto of the occurrence of the Effective Date.

44.     <u>Retention of Jurisdiction</u>.  The Court may properly, and upon the Effective Date shall, to the full extent set forth in the Plan, retain jurisdiction over all matters arising in, arising under, and related to, the Chapter 11 Cases, including the matters set forth in Article XV of the Plan and section 1142 of the Bankruptcy Code.  Without limitation as to the generality of the

Case 18-30264-sgj11 Doc 1342 Filed 09/05/21 Entered 09/05/21 13:08:29 Page 46 of 46
Case 18-30264-sgj11 Doc 830 Filed 02/31/19 Entered 02/31/19 12:42:42 Page 46 of 230
230

preceding sentence, the Court retains exclusive jurisdiction (a) to interpret and enforce this Order and the Plan; (b) to enforce the provisions of this Order and the Plan; (c) to resolve any disputes arising under or related to this Order or the Plan; and (d) over all transactions contemplated in this Order and the Plan. All Persons are hereby forever prohibited and enjoined from taking any action (including, without limitation, legal action) that would adversely affect or interfere with the ability of any Person to complete any of the transfers of property contemplated by this Order and the Plan other than in this Court or in connection with any appeals from this Court.

45. <u>Headings</u>. Paragraph headings contained in this Order are for convenience of reference only and shall not affect the meaning or interpretation of this Order.

46. <u>Final Order</u>. This Order is a final order and the period in which an appeal must be filed shall commence upon the entry hereof.

47. <u>Appeal or Motion for Reconsideration; Reversal.</u> In the event this Order is appealed or a motion for reconsideration is filed, the Chapter 11 Trustee and the Reorganized Debtor, and their respective representatives, agents and attorneys, are all hereby authorized to proceed with the consummation and performance of the Plan unless and until this Order is stayed, reversed or modified by a court of competent jurisdiction. If any or all of the provisions of this Order are hereafter reversed, modified, or vacated by subsequent order of this Court or any other court of competent jurisdiction, such reversal, modification, or vacatur shall not affect the validity of the acts or obligations incurred or undertaken under or in connection with the Plan prior to the Chapter 11 Trustee's or Reorganized Debtor's receipt of written notice of any such order. Notwithstanding any such reversal, modification, or vacatur of this Order, any such act or obligation incurred or undertaken pursuant to, and in reliance on, this Order prior to the effective date of such reversal, modification or vacatur shall be governed in all respects by the provisions of this Order and the Plan (including the Plan Documents) and any amendments or modifications thereto.

### END OF ORDER ###

**SUBMITTED BY:**

/s/  Jeff P. Prostok
Jeff P. Prostok
State Bar No. 16352500
J. Robert Forshey
State Bar No. 07264200
Suzanne K. Rosen
State Bar No. 00798518
Matthew G. Maben
State Bar No. 24037008
**FORSHEY & PROSTOK LLP**
777 Main St., Suite 1290
Ft. Worth, TX 76102
Telephone: (817) 877-8855
Facsimile: (817) 877-4151
jprostok@forsheyprostok.com
bforshey@forsheyprostok.com
srosen@forsheyprostok.com
mmaben@forsheyprostok.com

**COUNSEL FOR ROBIN PHELAN,
CHAPTER 11 TRUSTEE**

-and-

Rakhee V. Patel
State Bar No. 00797213
Phillip Lamberson
State Bar No. 00794134
Joe Wielebinski
State Bar No. 21432400
Annmarie Chiarello
State Bar No. 24097496
**WINSTEAD PC**
500 Winstead Building
2728 N. Harwood Street
Dallas, Texas 75201
(214) 745-5400 (Phone)
(214) 745-5390 (Facsimile)
rpatel@winstead.com
plamberson@winstead.com
jwielebinski@winstead.com
achiarello@winstead.com

**SPECIAL COUNSEL FOR ROBIN PHELAN,
CHAPTER 11 TRUSTEE**

L:\JPROSTOK\ACIS Capital Management (Trustee Rep)\Plan and Disclosure Statement\Confirmation Order (3rd Amended Plan) 1.31.18.docx

# EXHIBIT "1"

**[Third Amended Joint Plan for Acis Capital Management, L.P. and Acis Capital Management GP, LLC – Dkt. No. 660]**

Case 18-30264-sgj11 Doc 1343 Filed 09/05/21 Entered 09/05/21 13:08:29 Page 50 of 26
Case 18-30264-sgj11 Doc 830 Filed 10/25/18 Entered 10/25/18 23:08:29 Page 49 of 229
230

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE NORTHERN DISTRICT OF TEXAS**
**DALLAS DIVISION**

| | | |
|---|---|---|
| IN RE: | § | Case No. 18-30264-SGJ-11 |
| | § | Case No. 18-30265-SGJ-11 |
| ACIS CAPITAL MANAGEMENT, L.P., | § | |
| ACIS CAPITAL MANAGEMENT GP, LLC, | § | (Jointly Administered Under Case No. 18-30264-SGJ-11) |
| | § | |
| DEBTORS. | § | |
| | § | Chapter 11 |

**THIRD AMENDED JOINT PLAN FOR ACIS CAPITAL MANAGEMENT, L.P. AND**
**ACIS CAPITAL MANAGEMENT GP, LLC**

Jeff P. Prostok – State Bar No. 16352500
J. Robert Forshey – State Bar No. 07264200
Suzanne K. Rosen – State Bar No. 00798518
Matthew G. Maben – State Bar No. 24037008
**FORSHEY & PROSTOK LLP**
777 Main St., Suite 1290
Ft. Worth, TX 76102
Telephone: (817) 877-8855
Facsimile: (817) 877-4151
jprostok@forsheyprostok.com
bforshey@forsheyprostok.com
srosen@forsheyprostok.com
mmaben@forsheyprostok.com

**COUNSEL FOR ROBIN PHELAN,**
**CHAPTER 11 TRUSTEE**

Rakhee V. Patel – State Bar No. 00797213
Phillip Lamberson – State Bar No. 00794134
Joe Wielebinski – State Bar No. 21432400
Annmarie Chiarello – State Bar No. 24097496
**WINSTEAD PC**
500 Winstead Building
2728 N. Harwood Street
Dallas, Texas 75201
Telephone: (214) 745-5400
Facsimile: (214) 745-5390
rpatel@winstead.com
plamberson@winstead.com
jwielebinski@winstead.com
achiarello@winstead.com

**SPECIAL COUNSEL FOR ROBIN PHELAN,**
**CHAPTER 11 TRUSTEE**

DATED:     October 25, 2018
              Dallas, Texas

Case 18-30264-sgj11 Doc 1343 Filed 09/05/21 Entered 09/05/21 23:08:29 Page 51 of 126
Case 18-30264-sgj11 Doc 886 Filed 03/14/19 Entered 03/14/19 23:08:29 Page 51 of 229
230

# ARTICLE I.
## DEFINITIONS

     A.    <u>Defined Terms</u>. In addition to such other terms as are defined in other sections of the Plan, the following terms shall have the meanings set forth below (such meanings to be equally applicable to both the singular and plural, masculine and feminine forms of the terms defined).

1.01.    "<u>Acis CLOs</u>" refers collectively to CLO-3, CLO-4, CLO-5, and CLO-6.

1.02.    "<u>Acis GP</u>" means Acis Capital Management, GP, LLC, one of the Debtors in the above-referenced Chapter 11 Cases.

1.03.    "<u>Acis LP</u>" means Acis Capital Management, LP, one of the Debtors in the above-referenced Chapter 11 Cases.

1.04.    "<u>Administrative Bar Date</u>" means the deadline to file Claims for Allowance as an Administrative Expense set forth in section 3.01(c) of the Plan.

1.05.    "<u>Administrative Expense</u>" means any cost or expense of administration of the Chapter 11 Cases allowed under subsections 503(b) and 507(a)(1) of the Bankruptcy Code, including, without limitation, any actual and necessary expenses of preserving the Estate of the Debtors, any actual and necessary expenses of operating the business of the Debtors, all compensation or reimbursement of expenses to the extent allowed by the Bankruptcy Court under section 330 or 503 of the Bankruptcy Code, and any fees or charges assessed against the estates of the Debtors under section 1930, chapter 123 of title 28 of the United States Code.

1.06.    "<u>Affiliate</u>" has the meaning ascribed to such term in section 101(2) of the Bankruptcy Code.

1.07.    "<u>ALF PMA</u>" means that certain Portfolio Management Agreement by and between Acis LP and Acis Loan Funding, Ltd. dated December 22, 2016.

1.08.    "<u>Allowed</u>," when used with respect to a Claim (other than an Administrative Expense), means a Claim (a) to the extent it is not Contested; or (b) a Contested Claim, proof of which was filed timely with the Bankruptcy Court, and (i) as to which no Objection was filed by the Objection Deadline, or (ii) as to which an Objection was filed by the Objection Deadline, to the extent, if any, such Claim is ultimately allowed by a Final Order; *provided, however*, if a Claim is to be determined in a forum other than the Bankruptcy Court, such Claim shall not become Allowed until determined by Final Order of such other forum and allowed by Final Order of the Bankruptcy Court. "<u>Allowed</u>," when used with respect to an Administrative Expense, shall mean an Administrative Expense approved by application to the Bankruptcy Court.

1.09.    "<u>Assets</u>" includes all right, title, and interest in and to all property of every type or nature owned or claimed by the Debtors as of the Petition Date, together with all such property of every type or nature subsequently acquired by the Debtors through the Effective Date, whether real or personal, tangible or intangible, and wherever located, and including, but not limited to, property as defined in section 541 of the Bankruptcy Code. Without limiting the foregoing, this shall include all

1.10. "<u>Available Cash</u>" means any Cash over and above the amount needed for the Reorganized Debtor to maintain business operations and pursue the Estate Claims, as determined in the sole discretion of the Reorganized Debtor.

1.11. "<u>Avoidance Action</u>" means a cause of action assertable by the Debtors pursuant to Chapter 5 of the Bankruptcy Code, including without limitation, actions brought or which may be brought under sections 542, 543, 544, 545, 547, 548, 549, 550, or 553 of the Bankruptcy Code. Such causes of action may be asserted to recover, among other things, the transfers listed in the Debtors' respective Schedules, including in response to Question 3 of the statements of financial affairs.

1.12. "<u>Ballot</u>" means the form of ballot provided to holders of Claims or Interests entitled to vote pursuant to Bankruptcy Rule 3017(d), by which each such holder may accept or reject the Plan.

1.13. "<u>Bankruptcy Code</u>" means the Bankruptcy Reform Act of 1978, as amended and codified at Title 11 of the United States Code.

1.14. "<u>Bankruptcy Court</u>" means the United States Bankruptcy Court for the Northern District of Texas, Dallas Division, or such other court having jurisdiction over all or any part of the Chapter 11 Cases.

1.15. "<u>Bankruptcy Rules</u>" means the Federal Rules of Bankruptcy Procedure, as amended from time to time, as applicable to the Chapter 11 Cases, including applicable local rules of the Bankruptcy Court.

1.16. "<u>Brigade</u>" means Brigade Capital Management, LP.

1.17. "<u>Business Day</u>" means any day other than Saturday, Sunday, a legal holiday, or a day on which national banking institutions in Texas are authorized or obligated by law or executive order to close.

1.18. "<u>Cash</u>" means legal tender of the United States of America, cash equivalents and other readily marketable securities or instruments, including, but not limited to, readily marketable direct obligations of the United States of America, certificates of deposit issued by banks or commercial paper.

1.19. "<u>Chapter 11 Cases</u>" refers collectively to the Acis LP bankruptcy case, Case No. 18-30264-sgj11, and the Acis GP bankruptcy case, Case No. 18-30265-sgj11, which are being jointly administered under Case No. 18-30264-sgj11.

1.20. "<u>Chapter 11 Trustee</u>" refers to Robin Phelan, the chapter 11 trustee for the Debtors.

1.21. "<u>Claim</u>" means (a) a right to payment, whether or not such right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured (including potential and unmatured tort and contract claims), disputed, undisputed, legal, equitable, secured or unsecured, or (b) a right to an equitable remedy for breach of performance if such breach gives rise to a right of payment, whether or not such right to an equitable remedy is reduced to judgment, fixed, contingent, matured, unmatured (including potential and unmatured tort and contract claims), disputed, undisputed, secured or unsecured.

Case 18-30264-sgj11 Doc 1313-1 Filed 09/05/21 Entered 09/05/21 23:08:29 Page 53 of 230
Case 18-30264-sgj11 Doc 830 Filed 09/04/19 Entered 09/04/19 23:08 Page 54 of 325
230

1.22.   "<u>Claimant</u>" means the holder of a Claim.

1.23.   "<u>Class</u>" means a class of Claims or Interests as described in the Plan.

1.24.   "<u>CLO</u>" means collateralized loan obligations.

1.25.   "<u>CLO-1</u>" means Acis CLO 2013-1 LTD.

1.26.   "<u>CLO-1 Indenture</u>" means that certain Indenture, dated as of March 18, 2013, issued by CLO-1, as issuer, Acis CLO 2013-1 LLC, as co-Issuer and US Bank, as Indenture Trustee.

1.27.   "<u>CLO-1 PMA</u>" means that certain Portfolio Management Agreement by and between Acis LP and CLO-1, dated March 18, 2013.

1.28.   "<u>CLO-3</u>" means Acis CLO 2014-3 LTD.

1.29.   "<u>CLO-3 Indenture</u>" means that certain Indenture, dated as of February 25, 2014, issued by CLO-3, as issuer, Acis CLO 2014-3 LLC, as co-Issuer and US Bank, as Indenture Trustee

1.30.   "<u>CLO-3 PMA</u>" means that certain Portfolio Management Agreement by and between Acis LP and CLO-3, dated February 25, 2014.

1.31.   "<u>CLO-4</u>" means Acis CLO 2014-4 LTD.

1.32.   "<u>CLO-4 Indenture</u>" means that certain Indenture, dated as of June 5, 2014, issued by CLO-4, as issuer, Acis CLO 2014-4 LLC, as co-Issuer and US Bank, as Indenture Trustee.

1.33.   "<u>CLO-4 PMA</u>" means that certain Portfolio Management Agreement by and between Acis LP and CLO-4, dated June 5, 2014.

1.34.   "<u>CLO-5</u>" means Acis CLO 2014-5 LTD.

1.35.   "<u>CLO-5 Indenture</u>" means that certain Indenture, dated as of November 18, 2014, issued by CLO-5, as issuer, Acis CLO 2014-5 LLC, as co-Issuer and US Bank, as Indenture Trustee.

1.36.   "<u>CLO-5 PMA</u>" means that certain Portfolio Management Agreement by and between Acis LP and CLO-5, dated November 18, 2014.

1.37.   "<u>CLO-6</u>" means Acis CLO 2015-6 LTD.

1.38.   "<u>CLO-6 Indenture</u>" means that certain Indenture, dated as of April 16, 2015, issued by CLO-6, as issuer, Acis CLO 2015-6 LLC, as co-Issuer and US Bank, as Indenture Trustee.

1.39.   "<u>CLO-6 PMA</u>" means that certain Portfolio Management Agreement by and between Acis LP and CLO-6, dated April 16, 2015.

1.40.   "<u>CLO Holdco</u>" means CLO Holdco, Ltd.

1.41.   "<u>Collateral</u>" means any Asset subject to a valid and enforceable Lien to secure payment of a Claim.

Case 18-30264-sgj11 Doc 1043-2 Filed 09/05/21 Entered 09/05/21 23:08:29 Page 54 of 26
Case 18-30264-sgj11 Doc 830 Filed 03/11/19 Entered 03/11/19 23:08:29 Page 55 of 129
230

1.42.  "<u>Confirmation Date</u>" means the date of entry of the Confirmation Order.

1.43.  "<u>Confirmation Hearing</u>" means the hearing conducted by the Bankruptcy Court pursuant to section 1128 of the Bankruptcy Code and Bankruptcy Rule 3020(b) to consider confirmation of the Plan, as such hearing may be continued from time to time.

1.44.  "<u>Confirmation Order</u>" means the order of the Bankruptcy Court confirming the Plan in accordance with the provisions of Chapter 11 of the Bankruptcy Code.

1.45.  "<u>Contested</u>," when used with respect to a Claim, means a Claim against the Debtors that is listed in the Debtors' Schedules as disputed, contingent, or unliquidated; that is listed in the Debtors' Schedules as undisputed, liquidated, and not contingent and as to which a proof of Claim has been filed with the Bankruptcy Court, to the extent the proof of Claim amount exceeds the scheduled amount; that is not listed in the Debtors' Schedules, but as to which a proof of Claim has been filed with the Bankruptcy Court; or as to which an objection has been or may be timely filed and has not been denied by Final Order. To the extent an objection relates to the allowance of only a part of a Claim, such Claim shall be a Contested Claim only to the extent of the objection.

1.46.  "<u>Creditor</u>" means a "creditor," as defined in section 101(10) of the Bankruptcy Code.

1.47.  "<u>Cure Claim</u>" means the payment or other performance required to cure any existing default under an Executory Contract or Unexpired Lease.

1.48.  "<u>Debtors</u>" means, collectively, Acis GP and Acis LP, the debtors in the above-captioned Chapter 11 Cases.

1.49.  "<u>Disallowed</u>," when used with respect to all or any part of a Claim or Interest, means that portion of a Claim or Interest to which an objection or motion to disallow has been sustained by a Final Order.

1.50.  "<u>Disclosure Statement</u>" means the Disclosure Statement filed with respect to the Plan, as it may be amended, modified, or supplemented from time to time.

1.51.  "<u>Distribution</u>" means any payment or other disbursement of property pursuant to the Plan.

1.52.  "<u>Effective Date</u>" means the first Business Day which is fourteen (14) days after the Confirmation Date if the Confirmation Order is not stayed or, if the Confirmation Order is stayed, the first Business Day following the lifting, dissolution, or removal of such stay which is at least fourteen (14) Business Days after the Confirmation Date, and upon which all conditions to the effectiveness of the Plan set forth in Article XIII below are satisfied.

1.53.  "<u>Estate</u>" shall collectively refer to the bankruptcy estates of the Debtors in the Chapter 11 Cases.

1.54.  "<u>Estate Accounts Receivable</u>" shall include all accounts receivable of the Estate, including from all sums payable to the Debtors on account of goods or services provided by the Debtors.

1.55. "Estate Claims" shall include all claims and causes of action held by the Debtors' Estate, including, without limitation, the Estate Claims listed on the attached **Exhibit A** and all Avoidance Actions.

1.56. ""Estate Defenses" means all defenses, affirmative defenses, counterclaims, or offsets by the Debtors' Estate against any Person, including but not limited to any Creditor.

1.57. "Estate Insurance" means any insurance policy or interest in an insurance policy in which the Estate has an interest or rights.

1.58. "Estate Professionals" means those Persons employed pursuant to an order of the Bankruptcy Court in accordance with sections 327, 328, and 1103 of the Bankruptcy Code or who are entitled to compensation or reimbursement pursuant to sections 503(b)(3)(D) or 506(b) of the Bankruptcy Code.

1.59. "Executory Contract" means any executory contract which is subject to section 365 of the Bankruptcy Code and which is not an Unexpired Lease.

1.60. "Final Order" means an order or judgment of the Bankruptcy Court or any other court or adjudicative body, as to which the time to appeal or seek rehearing or petition for certiorari shall have expired or which order or judgment shall no longer be subject to appeal, rehearing, or certiorari proceeding and with respect to which no appeal, motion for rehearing, or certiorari proceeding or stay shall then be pending.

1.61. "General Unsecured Claim" means any Claim against the Debtors that is not an Administrative Expense, Priority Tax Claim, Priority Non-Tax Claim, Secured Tax Claim, Secured Claim, or Insider Claim, but includes any Rejection Claims pursuant to section 502(g) of the Bankruptcy Code.

1.62. "Governmental Unit" means a "governmental unit" as such term is defined in section 101(27) of the Bankruptcy Code.

1.63. "HCLOF" means Highland CLO Funding, Ltd.

1.64. "Highland" means Highland Capital Management, L.P.

1.65. "Highland Adversary" means Adversary Proceeding No. 18-03078-sgj.

1.66. "Highland Claim" means all Claims asserted by Highland or any Affiliates of Highland against the Debtors, including any Claim resulting from the termination of the Sub-Advisory Agreement and Shared Services Agreement.

1.67. "Highland CLOM" means Highland CLO Management, Ltd.

1.68. "Highland HCF" means Highland HCF Advisors, Ltd.

1.69. "Impaired" means, when used with reference to a Claim or Interest, a Claim or Interest that is impaired within the meaning of section 1124 of the Bankruptcy Code.

1.70. "Indentures" refers collectively to the CLO-1 Indenture, the CLO-3 Indenture, the CLO-4 Indenture, the CLO-5 Indenture, and the CLO-6 Indenture.

1.71.    "<u>Indenture Trustee</u>" refers to US Bank solely in its capacity as Indenture Trustee under the CLO-1 Indenture, the CLO-3 Indenture, the CLO-4 Indenture, the CLO-5 Indenture and the CLO-6 Indenture, as applicable

1.72.    "<u>Initial Distribution Date</u>," when used with respect to any Contested Claim or Rejection Claim, shall mean the later of (i) the first Business Day at least thirty (30) days after the date on which any such Contested Claim or Rejection Claim becomes an Allowed Claim, or (ii) if the payment terms of Article IV of this Plan applicable to each such Claim specify a different date, then the date as calculated pursuant to the terms of Article IV of this Plan applicable to each such Claim.  The Initial Distribution Date shall be separately determined with respect to each Contested Claim or Rejection Claim based upon the date each such Claim becomes an Allowed Claim.

1.73.    "<u>Insider</u>" means a Person described in section 101(31) of the Bankruptcy Code.

1.74.    "<u>Insider Claim</u>" means any Claim asserted by Insiders of the Debtors, including but not limited to any Claim asserted by Highland or any Affiliate thereof, unless otherwise indicated in the Plan.

1.75.    "<u>Interests</u>" means any equity or stock ownership interest in the Debtors.

1.76.    "<u>Issuers and Co-Issuers</u>" means CLO-1, CLO-3, CLO-4, CLO-5, CLO-6, Acis CLO 2013-1, Acis CLO-2014-3, LLC, Acis CLO 2014-4, LLC, Acis CLO 2014-5, LLC, and Acis 2015-6, LLC.

1.77.    "<u>Lien</u>" means any mortgage, lien, charge, security interest, encumbrance, or other security device of any kind affecting any asset or property of the Debtors contemplated by section 101(37) of the Bankruptcy Code.

1.78.    "<u>Management Fees</u>" shall, when used in relation to any of the Acis CLOs, have the meaning set forth in the applicable Indenture.

1.79.    "<u>Neutra</u>" means Neutra, Ltd.

1.80.    "<u>Objection</u>" means (a) an objection to the allowance of a Claim interposed by any party entitled to do so within the applicable period of limitation fixed by the Plan, the Bankruptcy Code, the Bankruptcy Rules, or the Bankruptcy Court, and (b) as to any Taxing Authority, a proceeding commenced under section 505 of the Bankruptcy Code to determine the legality or amount of any tax.

1.81.    "<u>Objection Deadline</u>" shall mean the later of (a) ninety (90) days following the Effective Date, unless otherwise extended by order of the Bankruptcy Court, or (b) as to any Rejection Claim filed after the Effective Date, ninety (90) days after the date on which the proof of Claim reflecting the Rejection Claim is filed.

1.82.    "<u>Optional Redemption</u>" shall, when used in relation to any of the Acis CLOs, have the meaning set forth in the applicable Indenture.

1.83.    "<u>Person</u>" means any individual, corporation, general partnership, limited partnership, association, joint stock company, joint venture, estate, trust, unincorporated organization, government, or any political subdivision thereof or other entity.

Case 18-30264-sgj11 Doc 1643 Filed 09/05/21 Entered 09/05/21 13:08:29 Page 57 of 230
Case 18-30264-sgj11 Doc 860 Filed 01/11/19 Entered 01/11/19 23:08 9 Page 56 of 229
230

1.84.    "<u>Petition Date</u>" means January 30, 2018.

1.85.    "<u>Plan</u>" means this Third Amended Joint Chapter 11 plan, either in its present form or as it may be altered, amended, or modified from time to time.

1.86.    "<u>Plan Documents</u>" means the documents that aid in effectuating the Plan as specifically identified as such herein and filed with the Bankruptcy Court.

1.87.    "<u>Plan Rate</u>" means a rate of interest of five percent (5%) per annum.

1.88.    "<u>PMAs</u>" refers collectively to the CLO-1 PMA, CLO-3 PMA, CLO-4 PMA, CLO-5 PMA, and CLO-6 PMA.

1.89.    "<u>Priority Claim</u>" means a Claim (other than a Claim for an Administrative Expense) to the extent that it is entitled to priority in payment under section 507(a) of the Bankruptcy Code.

1.90.    "<u>Priority Non-Tax Claim</u>" means a Priority Claim other than a Priority Tax Claim.

1.91.    "<u>Priority Tax Claim</u>" means a Claim of a Governmental Unit of the kind specified in subsection 507(a)(8) of the Bankruptcy Code.

1.92.    "<u>Professional</u>" means those persons retained pursuant to an order of the Bankruptcy Court in accordance with sections 327 and 1103 of the Bankruptcy Code.

1.93.    "<u>Pro Rata Distribution</u>" means an optional Distribution made in accordance with section 4.03(c), 4.04(e), or 4.04(i) of the Plan.  Each Creditor entitled to receive a portion of a Pro Rata Distribution shall receive such Creditor's Pro Rata Share of such Distribution.

1.94.    "<u>Pro Rata Share</u>' means, as to the holder of a specific Claim, the ratio that the amount of such holder's Claim bears to the aggregate amount of all Claims included in the particular Class or category in which such holder's Claim is included.

1.95.    "<u>Refinancing Proceeds</u>" shall, when used in relation to any of the Acis CLOs, have the meaning set forth in the applicable Indenture.

1.96.    "<u>Rejection Claim</u>" means a Claim arising under section 502(g) of the Bankruptcy Code as a consequence of the rejection of any Executory Contract or Unexpired Lease.

1.97.    "<u>Reorganized Debtor</u>" refers collectively to the Debtors, as reorganized, acting from and after the Effective Date if the Plan is confirmed based on the terms and provisions herein.

1.98.    "<u>Reserve</u>" or "<u>Reserves</u>" means any reserves set aside by the Reorganized Debtor pursuant to this Plan, including reserves set aside to fund any Distributions, make payments pursuant to the Plan, or pursue the Estate Claims.

1.99.    "<u>Schedules</u>" means the schedules of assets and liabilities and the statements of financial affairs filed by the Debtors as required by section 521 of the Bankruptcy Code and Bankruptcy Rule 1007, as such schedules or statements have been or may be subsequently amended.

1.100.    "<u>Secured Claim</u>" means (a) a Claim secured by a lien on any Assets, which lien is valid, perfected, and enforceable under applicable law and is not subject to avoidance under the Bankruptcy Code or applicable nonbankruptcy law, and which is duly Allowed, but only to the

Case 18-30264-sgj11 Doc 1343 Filed 09/05/21 Entered 09/05/21 23:08:29 Page 58 of 230
Case 18-30264-sgj11 Doc 830 Filed 01/31/19 Entered 01/31/19 23:48:29 Page 57 of 229
230

extent of the value of the holder's interest in the Collateral that secures payment of the Claim; (b) a Claim against the Debtors that is subject to a valid right of recoupment or setoff under section 553 of the Bankruptcy Code, but only to the extent of the Allowed amount subject to recoupment or setoff as provided in section 506(a) of the Bankruptcy Code; and (c) a Claim deemed or treated under the Plan as a Secured Claim; provided, that, to the extent that the value of such interest is less than the amount of the Claim which has the benefit of such security, the unsecured portion of such Claim shall be treated as a General Unsecured Claim unless, in any such case the Class of which the Claim is a part makes a valid and timely election in accordance with section 1111(b) of the Bankruptcy Code to have such Claim treated as a Secured Claim to the extent Allowed.

1.101.  "Secured Tax Claim" means any ad valorem tax Claim that arises or is deemed to have arisen on or before the Petition Date, irrespective of the date on which such Claim is assessed or due.

1.102.  "Shared Services Agreement" means that certain Fourth Amended and Restated Shared Services Agreement by and between Acis LP and Highland dated March 17, 2017.

1.103.  "Sub-Advisory Agreement" means that certain Third Amended and Restated Sub-Advisory Agreement by and between Acis LP and Highland dated March 17, 2017

1.104.  "Subordinated Notes" means the subordinated notes in the Acis CLOs held by HCLOF, and expressly does not include any subordinated notes in the Acis CLOs held by any other party.

1.105.  "Substantial Consummation" means the day on which a Creditor first receives a Distribution of any kind under the terms and provisions of the Plan.

1.106.  "Taxing Authority" shall include the State of Texas or any subdivision thereof, including without limitation any political subdivision of the State of Texas assessing ad valorem taxes against any of the Assets.

1.107.  "Terry" means Joshua N. Terry.

1.108.  "Terry Partially Secured Claim" means any Claim asserted against the Debtors by Terry, including as asserted in Proof of Claim No. 1 in both Chapter 11 Cases and Proof of Claim No. 26 against Acis LP.

1.109.  "Unclaimed Property" means any cash, Distribution, or any other property of the Debtors unclaimed for a period of one (1) year after the applicable Initial Distribution Date.

1.110.  "Unexpired Lease" means any unexpired lease or agreement which is subject to section 365 of the Bankruptcy Code and which is not an Executory Contract.

1.111.  "US Bank" means U.S. Bank National Association.

1.112.  "Other Acis-Managed Funds" refers collectively to CLO-1, Acis CLO 2013-2, Ltd., Hewitt's Island CLO 1-R, Ltd, and BayVK R2 Lux S.A., SICAV-FIS.

      B.  Interpretation. Unless otherwise specified, all section, article and exhibit references in the Plan are to the respective section in, article of, or exhibit to, the Plan, as the

Case 18-30264-sgj11 Doc 1213-2 Filed 09/05/21 Entered 09/05/21 13:08:29 Page 59 of 230
Case 18-30264-sgj11 Doc 840 Filed 09/05/21 Entered 09/05/21 13:08:29 Page 59 of 230
230

same may be amended, waived, or modified from time to time. The headings in the Plan are for convenience and reference only and shall not limit or otherwise affect the provisions hereof. The rules of construction set forth in section 102 of the Bankruptcy Code, other than section 102(5) of the Bankruptcy Code, apply to construction of the Plan. For the purposes of construction of the Plan, "or" is disjunctive.

      C.    <u>Other Terms</u>. The words "herein," "hereof," "hereto," "hereunder," and others of similar import refer to the Plan as a whole and not to any particular section, subsection, or clause contained in the Plan. References herein to "after notice and hearing" or other similar language shall have the same meaning as in section 102(1) of the Bankruptcy Code. Otherwise, a term used herein that is not specifically defined herein shall have the meaning ascribed to that term, if any, in the Bankruptcy Code.

      D.    <u>Exhibits and Plan Documents</u>. All Exhibits to the Plan and all Plan Documents are incorporated into the Plan by this reference and are a part of the Plan as if set forth in full herein. Any Plan Documents may be filed with the Clerk of the Bankruptcy Court prior to the commencement of the Confirmation Hearing. Holders of Claims and Interests may obtain a copy of the Plan Documents, once filed, by a written request sent to the following address: Forshey & Prostok, LLP, 777 Main Street, Suite 1290, Fort Worth, Texas 76102, Attention: Linda Breedlove; Fax number (817) 877-4151; email: lbreedlove@forsheyprostok.com.

<div align="center">

**ARTICLE II.**
**CLASSIFICATION OF CLAIMS AND INTERESTS**

</div>

2.01.    The following is a designation of the Classes of Claims and Interests under the Plan. Administrative Expenses, Priority Claims of the kinds specified in sections 507(a)(2) and 507(a)(3) of the Bankruptcy Code and Priority Tax Claims have not been classified, are excluded from the following Classes in accordance with section 1123(a)(1) of the Bankruptcy Code, and their treatment is set forth in Article III of the Plan. A Claim shall be deemed classified in a particular Class only to the extent that the Claim qualifies within the description of that Class. A Claim is included in a particular Class only to the extent that the Claim is an Allowed Claim in that Class.

          Class 1 – Secured Tax Claims
          Class 2 – Terry Partially Secured Claim
          Class 3 – General Unsecured Claims
          Class 4 – Insider Claims
          Class 5 – Interests

2.02.   <u>Impaired Classes of Claims and Interests</u>.  Class 1 is unimpaired.  Classes 2 through 5 are Impaired.

2.03.   <u>Impairment or Classification Controversies</u>. If a controversy arises as to the classification of any Claim or Interest, or as to whether any Class of Claims or Interests is Impaired under the Plan, the Bankruptcy Court shall determine such controversy as a part of the confirmation process.

<div align="center">

**ARTICLE III.**
**TREATMENT OF UNCLASSIFIED CLAIMS**

</div>

3.01.   <u>Administrative Expenses</u>

Case 18-30264-sgj11 Doc 3212-8 Filed 09/05/21 Entered 09/05/21 13:08:28 Page 60 of 26
Case 18-30264-sgj11 Doc 830 Filed 09/05/18 Entered 09/05/18 23:08:29 Page 91 of 229
230

(a)     The Reorganized Debtor shall pay, in accordance with the ordinary business terms applicable to each such expense or cost, the reasonable and ordinary expenses incurred in operating the Debtors' businesses or administering the Estate before the Effective Date ("Ordinary Course Claims").  The remaining provisions of this section 3.01 shall not apply to the Ordinary Course Claims, except that if there is a dispute relating to any such Ordinary Course Claim, the Reorganized Debtor may move the Bankruptcy Court to apply the provisions of Article III below relating to Contested Claims and require the holder of the Contested Ordinary Course Claim to assert such Claim through the Chapter 11 Cases.

(b)     Each holder of an Allowed Administrative Expense (other than Ordinary Course Claims and Administrative Expense Claims by Estate Professionals), shall receive (i) the amount of such holder's Allowed Administrative Expense in one Cash payment on the later of the Effective Date or the tenth (10th) Business Day after such Administrative Expense becomes an Allowed Administrative Expense, or (ii) such other treatment as may be agreed to in writing by such Administrative Expense Creditor and the Reorganized Debtor, or as otherwise ordered by the Bankruptcy Court.

(c)     Unless the Bankruptcy Court orders to the contrary or the Reorganized Debtor agrees to the contrary in writing, the holder of a Claim for an Administrative Expense, other than such a Claim by an Estate Professional, an Ordinary Course Claim, or an Administrative Expense which is already Allowed, shall file with the Bankruptcy Court and serve upon the Reorganized Debtor and its counsel a written notice of such Claim for an Administrative Expense within thirty (30) days after the Effective Date.  This deadline is the "Administrative Bar Date."  Such notice shall include at a minimum: (i) the name, address, telephone number and fax number (if applicable) or email address of the holder of such Claim, (ii) the amount of such Claim, and (iii) the basis of such Claim.  **Failure to timely and properly file and serve such notice by the Administrative Bar Date shall result in such Claim for an Administrative Expense being forever barred and discharged and the holder thereof shall be barred from receiving any Distribution from the Reorganized Debtor on account of such Claim for an Administrative Expense**.

(d)     A Claim for an Administrative Expense, for which a proper notice was filed and served under subsection 3.01(c) above, shall become an Allowed Administrative Expense if no Objection is filed within thirty (30) days of the filing and service of such notice.  If a timely Objection is filed, the Claim shall become an Allowed Administrative Expense only to the extent allowed by a Final Order.

(e)     The procedures contained in subsections 3.01(a), (c) and (d) above shall not apply to Administrative Expense Claims asserted by Estate Professionals, who shall each file and submit an appropriate final fee application to the Bankruptcy Court no later than sixty (60) days after the Effective Date.  A Claim for an Administrative Expense by an Estate Professional in respect of which a final fee application has been properly filed and served shall become an Allowed Administrative Expense only to the extent Allowed by order of the Bankruptcy Court and, if so Allowed, shall be paid in accordance with subsection 3.01(b) above.  Professional fees and expenses to any Estate Professional incurred on or after the Effective Date may be paid by the Reorganized Debtor without necessity of application to or order by the Bankruptcy Court.

(f)     If the Reorganized Debtor asserts any Estate Claims as counterclaims or defenses to a Claim for Administrative Expense, the Administrative Expense Claim shall be determined through an adversary proceeding before the Bankruptcy Court.  The Bankruptcy

Court shall have exclusive jurisdiction to adjudicate and Allow all Claims for any Administrative Expense.

3.02.   Priority Non-Tax Claims.  Each holder of an Allowed Priority Non-Tax Claim shall receive (i) the amount of such holder's Allowed Priority Non-Tax Payment in one Cash payment on the later of the Effective Date or the tenth (10th) Business Day after such Priority Non-Tax Claim becomes an Allowed Priority Non-Tax Claim and a determination has been made that such Allowed Priority Non-Tax Claim is not subject to equitable subordination under section 510(c) of the Bankruptcy Code, or (ii) such other treatment as may be agreed to in writing by such Administrative Expense Creditor and the Reorganized Debtor, or as otherwise ordered by the Bankruptcy Court.

3.03.   Priority Tax Claims. Each holder of an Allowed Priority Tax Claim shall receive (a) one Cash payment in an amount equal to the principal amount of such Allowed Priority Tax Claim, plus interest at the rate and in the manner prescribed by applicable state law from the later of the Petition Date or the first day after the last day on which such Priority Tax Claim may be paid without penalty, no later than sixty (60) days after each such Claim becomes an Allowed Claim, or (b) such other treatment as may be agreed to in writing by the holder of the Priority Tax Claim and the Reorganized Debtor.

3.04.   U.S. Trustee's Fees. The Reorganized Debtor shall pay the U.S. Trustee's quarterly fees incurred pursuant to 28 U.S.C. § 1930(a)(6) which are due as of the Confirmation Date in full on the Effective Date or as soon thereafter as is practicable.  After the Confirmation Date, the Reorganized Debtor shall continue to pay quarterly fees as they accrue until a final decree is entered and the Chapter 11 Cases are closed.  The Reorganized Debtor shall file with the Bankruptcy Court and serve on the U.S. Trustee quarterly financial reports for each quarter, or portion thereof, that the Chapter 11 Cases remain open.

## ARTICLE IV.
## TREATMENT OF CLASSIFIED CLAIMS AND INTERESTS

4.01.   Class 1 – Secured Tax Claims. Each holder of an Allowed Secured Tax Claim shall receive (a) one Cash payment in an amount equal to the principal amount of such Allowed Secured Tax Claim, plus interest at the rate and in the manner prescribed by applicable state law from the later of the Petition Date or the first day after the last day on which such Secured Tax Claim may be paid without penalty, on the Initial Distribution Date, or (b) such other treatment as may be agreed to in writing by the holder of the Secured Tax Claim and the Reorganized Debtor.  The Liens securing such Secured Tax Claims shall remain unimpaired and unaffected until each such Class 1 Claim is paid in full.  All Distributions on account of Allowed Class 1 Claims shall be made by the Reorganized Debtor.  Class 1 is unimpaired. Holders of Class 1 Claims are conclusively presumed to have accepted the Plan and, accordingly, are not entitled to vote on the Plan.

4.02.   Class 2 – Terry Partially Secured Claim.  In exchange for a one million dollar ($1,000,000.00) reduction in the amount of the Terry Partially Secured Claim, Terry shall receive one hundred percent (100%) of the equity interests in the Reorganized Debtor as of the Effective Date.  The remaining balance of any Allowed Terry Partially Secured Claim shall be treated and paid as a Class 3 General Unsecured Claim.  Class 2 is Impaired.  The Holder of the Class 2 Terry Partially Secured Claim is entitled to vote on the Plan.

4.03.   Class 3 – General Unsecured Claims.

(a)  Each holder of an Allowed General Unsecured Claim shall receive a promissory note issued by the Reorganized Debtor (each an "Unsecured Cash Flow Note") on the later of (a) that date that is as soon as practicable after the Effective Date, or (b) that date that is as soon as practicable after such holder's General Unsecured Claim becomes an Allowed Class 3 Claim.  Each Unsecured Cash Flow Note shall be dated as of the Effective Date, bear interest at the Plan Rate and shall mature on that date that is the three (3) years after the Effective Date.

(b)  To the extent of Available Cash, the Reorganized Debtor shall make substantially equal quarterly Distributions of principal and accrued interest to each holder of an Unsecured Cash Flow Note, with the first such quarterly Distribution being due and payable on the 180th day after the Effective Date.  Thereafter, like Distributions shall be made each quarter by the Reorganized Debtor until the Unsecured Cash Flow Note is paid in full.  Notwithstanding the foregoing, in the event that an Unsecured Cash Flow Note is first issued more than one hundred eighty (180) days after the Effective Date, the first Distribution made on account of such Unsecured Cash Flow Note shall be made upon the date that the next Distribution would otherwise be due, but such first Distribution shall also include amounts that would have been distributed to the holder of such Unsecured Cash Flow Note had such Unsecured Cash Flow Note been issued prior to ninety (90) days after the Effective Date, such that the first Distribution shall bring all payments current on account of such Unsecured Cash Flow Note.  If on any date on which a quarterly Distribution is due to the holder of an Unsecured Cash Flow Note the remaining principal and accrued interest owing on account of such Unsecured Cash Flow Note is less than the regular quarterly Distribution amount, the Reorganized Debtor shall make a Distribution to the holder of such Unsecured Cash Flow Note in an amount sufficient to fully satisfy the remaining principal and accrued interest owed, but no more.  Nothing contained herein shall preclude the Reorganized Debtor from prepaying any Unsecured Cash Flow Note.

(c)  If the Reorganized Debtor obtains additional Cash, through litigation recoveries or otherwise, and the Reorganized Debtor determines, in its sole discretion, that the Reorganized Debtor holds Available Cash sufficient to allow one or more Pro Rata Distributions to be made to holders of Allowed Class 3 Claims and Allowed Subclass 4A Claims, the Reorganized Debtor may, but shall not be required to, make one or more Pro Rata Distributions to holders of Allowed Class 3 Claims and Allowed Subclass 4A Claims.  The amount of the Pro Rata Distribution made to each such holder shall be determined as if Class 3 and Subclass 4A constituted a single Class.  Any such additional Distributions shall be applied to reduce the outstanding balance of each holder's Unsecured Cash Flow Note.

(d)  Class 3 is Impaired.  Holders of Class 3 Claims are entitled to vote on the Plan.

4.04.  Class 4 – Insider Claims.  Holders of Class 4 Insider Claims shall be treated as follows:

(a)  Class 4 Claims shall be divided into two (2) subclasses.  Subclass 4A shall consist of all Allowed Class 4 claims which are not subject to equitable subordination.  Subclass 4B shall consist of all Class 4 claims which are determined by the Bankruptcy Court to be subject to equitable subordination.  If only a part of a Class 4 Claim is subject to equitable subordination, then the portion of such claim subject to equitable subordination shall be included in Subclass 4B and the remainder not subject to equitable subordination shall be included in Subclass 4A.  Subclass 4A and Subclass 4B will vote separately on the Plan, although Subclass 4B is currently an empty class.

Case 18-30264-sgj11 Doc 1312-2 Filed 09/05/21 Entered 09/05/21 13:08:29 Page 63 of 230
Case 18-30264-sgj11 Doc 830 Filed 09/05/19 Entered 09/05/19 13:08:29 Page 64 of 229
230

(b)     All Class 4 Claims (regardless of which subclass) shall be and remain subject to all Estate Defenses and all Estate Claims, including any rights of offset, recoupment, and/or to an affirmative recovery against the Holder of any Class 4 Claim.

(c)     Each holder of an Allowed Subclass 4A Claim shall receive an Unsecured Cash Flow Note on the later of (a) that date that is as soon as practicable after the Effective Date, or (b) that date that is as soon as practicable after such holder's Subclass 4A Claim becomes an Allowed Subclass 4A Claim. Each Unsecured Cash Flow Note shall be dated as of the Effective Date, bear interest at the Plan Rate and shall mature on that date that is the three (3) years after the Effective Date.

(d)     To the extent of Available Cash, the Reorganized Debtor shall make substantially equal quarterly Distributions of principal and accrued interest to each holder of an Unsecured Cash Flow Note, with the first such quarterly Distribution being due and payable on the 180th day after the Effective Date. Thereafter, like Distributions shall be made each quarter by the Reorganized Debtor until the Unsecured Cash Flow Note is paid in full. Notwithstanding the foregoing, in the event that an Unsecured Cash Flow Note is first issued more than one hundred eighty (180) days after the Effective Date, the first Distribution made on account of such Unsecured Cash Flow Note shall be made upon the date that the next Distribution would otherwise be due, but such first Distribution shall also include amounts that would have been distributed to the holder of such Unsecured Cash Flow Note had such Unsecured Cash Flow Note been issued prior to ninety (90) days after the Effective Date, such that the first Distribution shall bring all payments current on account of such Unsecured Cash Flow Note. If on any date on which a quarterly Distribution is due to the holder of an Unsecured Cash Flow Note the remaining principal and accrued interest owing on account of such Unsecured Cash Flow Note is less than the regular quarterly Distribution amount, the Reorganized Debtor shall make a Distribution to the holder of such Unsecured Cash Flow Note in an amount sufficient to fully satisfy the remaining principal and accrued interest owed, but no more. Nothing contained herein shall preclude the Reorganized Debtor from prepaying any Unsecured Cash Flow Note.

(e)     If the Reorganized Debtor obtains additional Cash, through litigation recoveries or otherwise, and the Reorganized Debtor determines, in its sole discretion, that the Reorganized Debtor holds Available Cash sufficient to allow one or more Pro Rata Distributions to be made to holders of Allowed Class 3 Claims and Allowed Subclass 4A Claims, the Reorganized Debtor may, but shall not be required to, make one or more Pro Rata Distributions to holders of Allowed Class 3 Claims and Allowed Subclass 4A Claims. The amount of the Pro Rata Distribution made to each such holder shall be determined as if Class 3 and Subclass 4A constituted a single Class. Any such additional Distributions shall be applied to reduce the outstanding balance of each holder's Unsecured Cash Flow Note.

(f)     Unless otherwise provided by Order of the Bankruptcy Court, holders of Allowed Subclass 4B claims shall not be entitled to any Distribution from the Reorganized Debtor until all Allowed Claims included in Classes 1 through 3 and Subclass 4A, including all Unsecured Cash Flow Notes, have been paid in full.

(g)     Holders of Allowed Subclass 4B Claims shall receive a subordinated promissory note issued by the Reorganized Debtor ("Subordinated Unsecured Cash Flow Note") on the later of (a) that date that is as soon as practicable after the Effective Date, or (b) that date that is as soon as practicable after such holder's Subclass 4A Claim becomes an Allowed Subclass 4A Claim. Each Subordinated Unsecured Cash Flow Note shall be dated as of the Effective Date, bear interest at the Plan Rate and shall mature on the earlier to occur of (i) the date that is two

Case 18-30264-sgj11 Doc 1212-2 Filed 09/05/24 Entered 09/05/24 13:08:29 Page 64 of 26
Case 18-30264-sgj11 Doc 830 Filed 09/05/21 Entered 09/05/21 13:08:29 Page 65 of 229
230

(2) years after the date all Unsecured Cash Flow Notes have been paid in full, or (ii) five (5) years after the Effective Date.

(h)     To the extent of Available Cash, the Reorganized Debtor shall make substantially equal quarterly Distributions of principal and accrued interest to each holder of a Subordinated Unsecured Cash Flow Note, with the first such quarterly Distribution being due and payable on the 90th day after the payment in full of the Unsecured Cash Flow Notes. Thereafter, like Distributions shall be made each quarter by the Reorganized Debtor until the Subordinated Unsecured Cash Flow Note is paid in full. Notwithstanding the foregoing, in the event that a Subordinated Unsecured Cash Flow Note is first issued after payments have been made on one or more other Subordinated Unsecured Cash Flow Notes, the first Distribution made on account of such Subordinated Unsecured Cash Flow Note shall be made upon the date that the next Distribution would otherwise be due, but such first Distribution shall also include amounts that would have been distributed to the holder of such Subordinated Unsecured Cash Flow Note had such Subordinated Unsecured Cash Flow Note been issued at the time the first payment on any Subordinated Unsecured Cash Flow Note was made, such that the first Distribution shall bring all payments current on account of such Subordinated Unsecured Cash Flow Note. If on any date on which a quarterly Distribution is due to the holder of a Subordinated Unsecured Cash Flow Note the remaining principal and accrued interest owing on account of such Subordinated Unsecured Cash Flow Note is less than the regular quarterly Distribution amount, the Reorganized Debtor shall make a Distribution to the holder of such Subordinated Unsecured Cash Flow Note in an amount sufficient to fully satisfy the remaining principal and accrued interest owed, but no more. Nothing contained herein shall preclude the Reorganized Debtor from prepaying any Subordinated Unsecured Cash Flow Note.

(i)     Subject to section 4.04(f) above, if the Reorganized Debtor obtains additional Cash, through litigation recoveries or otherwise, and the Reorganized Debtor determines, in its sole discretion, that the Reorganized Debtor holds Available Cash sufficient to allow one or more Pro Rata Distributions to be made to holders of Allowed Subclass 4B Claims, the Reorganized Debtor may, but shall not be required to, make one or more Pro Rata Distributions to holders of Allowed Subclass 4B Claims. Any such additional Distributions shall be applied to reduce the outstanding balance of each holder's Subordinated Unsecured Cash Flow Note.

(j)     The Reorganized Debtor may establish appropriate Reserves as to any Contested Claim included in Class 4.

(k)     Class 4 is Impaired. Holders of Class 4 Claims are entitled to vote on the Plan.

4.05.   Class 5 – Interests. All Interests in the Debtors shall be extinguished and shall cease to exist as of the Effective Date. The holders of such Interests shall not receive or retain any property on account of such Interests under the Plan. Class 5 is Impaired. Holders of Class 5 Interests are conclusively presumed to have rejected the Plan and, accordingly, are not entitled to vote on the Plan.

## ARTICLE V.
## ACCEPTANCE OR REJECTION OF THE PLAN

5.01.   Classes Entitled to Vote. Creditors in Classes 2 through 4 are entitled to vote and shall vote separately to accept or reject the Plan. Any unimpaired Class shall not be entitled to vote to accept or reject the Plan. Any unimpaired Class is deemed to have accepted the Plan under section 1126(f) of the Bankruptcy Code.

5.02.   Class Acceptance Requirement. A Class of Claims shall have accepted the Plan if it is accepted by at least two-thirds (2/3) in amount and more than one-half (1/2) in number of the Allowed Claims in such Class that have voted on the Plan.

5.03.   Cramdown. This section shall constitute the request by the Plan proponent, pursuant to section 1129(b) of the Bankruptcy Code, that the Bankruptcy Court confirm the Plan notwithstanding the fact that the requirements of section 1129(a)(8) of the Bankruptcy Code have not been met.

**ARTICLE VI.**
**MEANS FOR IMPLEMENTATION OF THE PLAN**

6.01.   Vesting of Assets. As of the Effective Date, pursuant to sections 1141(b) and (c) of the Bankruptcy Code, all Assets, including the PMAs, all Cash, Estate Accounts Receivable, Estate Insurance, Estate Claims and Estate Defenses, shall be transferred from the Estate to, and vested in, the Reorganized Debtor, free and clear of all rights, title, interests, claims, liens, encumbrances and charges, except as expressly set forth in the Plan.  On and after the Effective Date, the Reorganized Debtor may operate its business and may use, acquire or dispose of property without supervision or approval by the Bankruptcy Court and free of any restrictions of the Bankruptcy Code or Bankruptcy Rules, other than those restrictions expressly imposed by the Plan or the Confirmation Order.  Without limiting the foregoing, the Reorganized Debtor may pay the charges that it incurs on or after the Effective Date for all fees, disbursements, expenses or related support services of Professionals (including fees relating to the preparation of professional fee applications) without application to, or approval of, the Bankruptcy Court.

6.02.   Continued Existence of the Debtors.  The Debtors shall continue to exist after the Effective Date, with all the powers available to such legal entities, in accordance with applicable law and pursuant to their constituent documents.  On or after the Effective Date, each Reorganized Debtor may, within its sole and exclusive discretion, take such action as permitted by applicable law and its constituent documents as it determines is reasonable and appropriate.

6.03.   Retention and Assertion of Causes of Action and Defenses.

(a)     Except as expressly set forth in this Plan, all causes of action, claims, counterclaims, defenses and rights of offset or recoupment (including but not limited to all Estate Claims, Estate Defenses and Avoidance Actions) belonging to the Debtors (collectively, the "Retained Causes of Action") shall, upon the occurrence of the Effective Date, be reserved, retained and preserved for, and transferred to, received by and vested, in the Reorganized Debtor for the benefit of the Debtors and the Debtors' estates.  Without limitation, the Retained Causes of Action include the claims and causes of action described on **Exhibit A** attached hereto.

(b)     Except as expressly set forth in this Plan, the rights of the Reorganized Debtor to commence, prosecute or settle the Retained Causes of Action shall be retained, reserved, and preserved notwithstanding the occurrence of the Effective Date. **No Person may rely on the absence of a specific reference in the Plan or the Disclosure Statement to any cause of action against them as any indication that the Debtors or the Reorganized Debtor will not pursue any and all available causes of action (including all Estate Claims, Estate Defenses and Avoidance Actions) against them. The Debtors and their Estate expressly reserve all rights to prosecute any and all of the Retained Causes of Action (including all**

Case 18-30264-sgj11 Doc 1313-8 Filed 09/05/21 Entered 09/05/21 13:08:29 Page 66 of 230
Case 18-30264-sgj11 Doc 1313 Filed 09/05/21 Entered 09/05/21 13:08:29 Page 66 of 230
230

**Estate Claims, Estate Defenses and Avoidance Actions) against any Person, <u>except</u> as otherwise provided in this Plan**. Unless any causes of action against a Person are expressly waived, relinquished, exculpated, released, compromised or settled in this Plan or a Final Order, the Debtors expressly reserve all causes of action (including all Estate Claims, Estate Defenses and Avoidance Actions) for later adjudication, and, therefore, no preclusion doctrine, <u>including</u> without limitation, the doctrines of res judicata, collateral estoppel, issue preclusion, claim preclusion, estoppel (judicial, equitable or otherwise) or laches, shall apply to such causes of action upon or after the confirmation or consummation of the Plan. The Debtors and the Reorganized Debtor may also assert Estate Defenses as a defense to the allowance of any Claim not otherwise Allowed.

6.04. <u>Assumption of Obligations to Make Distributions</u>. The Reorganized Debtor shall be deemed to have assumed the obligations to make all Distributions pursuant to this Plan.

6.05. <u>Actions by the Debtors and the Reorganized Debtor to Implement Plan</u>. The entry of the Confirmation Order shall constitute all necessary authorization for the Debtors and the Reorganized Debtor to take or cause to be taken all actions necessary or appropriate to consummate, implement or perform all provisions of this Plan on and after the Effective Date, and all such actions taken or caused to be taken shall be deemed to have been authorized and approved by the Bankruptcy Court without further approval, act or action under any applicable law, order, rule or regulation, including without limitation, (a) all transfers of Assets, including to the Reorganized Debtor, that are to occur pursuant to the Plan; (b) the cancellation of Interests and issuance of 100% of the equity interests in the Reorganized Debtor to Terry; (c) the performance of the terms of the Plan and the making of all Distributions required under the Plan; and (d) subject to the terms of the Plan, entering into any and all transactions, contracts, or arrangements permitted by applicable law, order, rule or regulation.

6.06. <u>Termination of Highland as Shared Services Provider and Sub-Advisor</u>. The Bankruptcy Court authorized the Chapter 11 Trustee to terminate the Shared Services Agreement and Sub-Advisory Agreement and engage Brigade to perform the services previously provided by Highland. The Shared Services Agreement and Sub-Advisory Agreement were terminated by the Chapter 11 Trustee on or about August 1, 2018, and the services previously performed by Highland were transitioned to Brigade on an interim basis. Brigade has agreed to continue to provide shared services and sub-advisory services to the Reorganized Debtor with respect to the Acis CLOs and the Other Acis-Managed Funds (and any reset Acis CLOs) subject to a minimum two (2) year term unless otherwise agreed as between the Reorganized Debtor and Brigade. Consequently, any agreement between the Reorganized Debtor and Brigade shall provide that Brigade cannot be removed without cause for a period of two (2) years except as may be otherwise agreed as between the Reorganized Debtor and Brigade.

6.07. <u>Continued Portfolio Management by the Reorganized Debtor</u>. The PMAs and any other Executory Contracts and Unexpired Leases identified on Exhibit B to the Plan or in the Confirmation Order shall be assumed and the Reorganized Debtor shall, from an after the Effective Date, serve as the portfolio manager with respect to the Acis CLOs and the Other Acis-Managed Funds (and any reset Acis CLOs). Consistent with Section 15 of the PMAs, the Reorganized Debtor may only be removed as portfolio manager under the assumed PMAs for cause as set forth in the PMAs.

6.08. <u>Reset of the Acis CLOs</u>. HCLOF has maintained that it desires to reset the Acis CLOs. The Reorganized Debtor, with the assistance of Brigade as its shared services provider and sub-advisor, is prepared to promptly seek to perform such reset transactions as set forth herein.

Case 18-30264-sgj11 Doc 1318-8 Filed 09/05/21 Entered 09/05/24 43:08:29 Page 67 of
Case 18-30264-sgj11 Doc 830 Filed 00/29/19 Entered 00/29/24 43:08:29 Page 98 of 229
230

HCLOF shall have the right to submit one or more notice(s) of Optional Redemption solely for the purpose of effectuating a reset of one or more of the Acis CLOs under this section 6.08 of the Plan utilizing Refinancing Proceeds (a "Reset Optional Redemption") for each of the Acis CLOs. If HCLOF requests a Reset Optional Redemption of an Acis CLO, the Reorganized Debtor, with the assistance of Brigade, shall thereafter seek to reset the Acis CLOs, either consecutively or simultaneously, in its good faith business judgment and consistent with then-prevailing market terms; *provided, however*, (i) the Management Fees to be charged by the Reorganized Debtor to any reset Acis CLOs shall remain the same going forward and shall not be increased, and no transaction fee shall be charged by the Reorganized Debtor (other than, for avoidance of doubt, transaction expense reimbursements consistent with market standards), and (ii) HCLOF shall be granted a right of first refusal for any funding of debt or equity required to effectuate a reset of each of the Acis CLOs. The terms of the Indentures shall control any Reset Optional Redemption. If HCLOF elects not to reset one or more of the Acis CLOs, then the Acis CLOs will continue to be managed in accordance with market standards.

6.09.    Post-Effective Date Service List. Pleadings filed by any party-in-interest with the Bankruptcy Court after the Effective Date shall be served on the following Persons (collectively the "Service List"): (a) any Person directly affected by the relief sought in the pleading, (b) the U.S. Trustee, (c) parties which have filed a Notice of Appearance in the Chapter 11 Cases, and (d) the Reorganized Debtor.

6.10.    Section 505 Powers. All rights and powers pursuant to section 505 of the Bankruptcy Code are hereby reserved to the Estate and shall be transferred to, and vested in, the Reorganized Debtor as of the Effective Date.

6.11.    Section 510(c) Powers. All rights and powers to seek or exercise any right or remedy of equitable subordination are hereby reserved to the Estate and shall be transferred to, and vested in, the Reorganized Debtor as of the Effective Date as an Estate Defense.

6.12.    Section 506(c) Powers. The Estate hereby reserves all rights and powers pursuant to section 506(c) of the Bankruptcy Code, and all such rights shall be specifically transferred to, and vested in, the Reorganized Debtor.

6.13.    Plan Injunction. The Reorganized Debtor shall each have full power, standing and authority to enforce the Plan Injunction against any Person, either through an action before the Bankruptcy Court or any other tribunal having appropriate jurisdiction.

6.14.    Cancellation of Interests. Except as otherwise specifically provided herein, upon the Effective Date of the Plan: (a) all Interests in the Debtors shall be cancelled; and (b) all obligations or debts of, or Claims against, the Debtors on account of, or based upon, the Interests shall be deemed as cancelled, released and discharged, including all obligations or duties by the Debtors relating to the Interests in any of their respective formation documents, including Acis LP's limited partnership agreement and bylaws, Acis GP's articles of formation and company agreement, or any similar formation or governing documents.

**ARTICLE VII.**
**PROVISIONS GOVERNING DISTRIBUTION**

7.01.    Distributions from Reorganized Debtor. The Reorganized Debtor shall be responsible for making Distributions to holders of Allowed Claims only to the extent this Plan requires Distributions to be made by the Reorganized Debtor. The priority of Distributions from the

Reorganized Debtor shall be in accordance with the terms of this Plan and the Confirmation Order as follows:

    (a)    <u>First</u>, to satisfy Allowed Class 1 Secured Tax Claims;

    (b)    <u>Second</u>, to satisfy Allowed Administrative Expenses and Allowed Priority Claims in accordance with Article III above, including all U.S. Trustee quarterly fees due and owing as of the Effective Date;

    (c)    <u>Third</u>, to make Distributions to holders of any Allowed Class 3 General Unsecured Claims and Allowed Subclass 4A Claims; and

    (e)    <u>Fourth</u>, to make Distributions to holders of any Allowed Subclass 4B Claims

7.02.  <u>Reserves</u>.  The Reorganized Debtor may estimate, create and set aside Reserves as may be necessary or appropriate, including without limitation, Reserves on account of Contested Claims.  The Reorganized Debtor may, but shall not be required to, move the Bankruptcy Court to approve: (a) the amount of, and terms on which, such Reserves shall be held, maintained and disbursed, or (b) the amount and timing of any proposed interim Distribution to holders of Allowed Class 3 Claims and Allowed Subclass 4A Claims.  The Reorganized Debtor may elect to seek approval by the Bankruptcy Court for the creation and amount of any Reserves or regarding the amount or timing of any Distribution on account of any Allowed Claims.  Except as otherwise expressly provided herein, the Reorganized Debtor, in the exercise of its good faith business judgment, may transfer funds out of any of the Reserves as necessary or appropriate.  However, the Reorganized Debtor shall not be required to create separate accounts for such Reserves which may be created and memorialized by entries or other accounting methodologies, which may be revised from time-to-time, to enable the Reorganized Debtor to determine the amount of Cash available for Distributions under the Plan.  Subject to any specific deadlines set forth herein, the Reorganized Debtor, shall determine, from time-to-time, in the exercise of the Reorganized Debtor's good faith business judgment: (x) the amount of Cash available for Distribution, (y) the timing of any Distributions, and (z) the amount and creation of any Reserves for Contested Claims.  The Reorganized Debtor shall not be entitled to reserve for, and this section 7.02 does not apply to, Distributions to holders of Allowed Subclass 4B Claims.

7.03.  <u>Prosecution and Settlement of Estate Claims</u>.  Upon the Effective Date, the Reorganized Debtor (a) shall automatically be substituted in place of the Chapter 11 Trustee as the party representing the Estate in respect of any pending lawsuit, motion or other pleading pending before the Bankruptcy Court or any other tribunal, and (b) is authorized to file a notice on the docket of each adversary proceeding or the Chapter 11 Cases regarding such substitution.  The Reorganized Debtor shall have exclusive standing and authority to prosecute, settle or compromise Estate Claims for the benefit of the Estate in the manner set forth in this Plan.

7.04.  <u>Plan Injunction</u>.  The Reorganized Debtor shall be entitled to the full protection and benefit of the Plan Injunction and shall have standing to bring any action or proceeding necessary to enforce the Plan Injunction against any Person.

7.05.  <u>Relief from the Bankruptcy Court</u>.  The Reorganized Debtor shall be authorized to seek relief from the Bankruptcy Court or any other tribunal having jurisdiction as to any matter relating or pertaining to the consummation, administration or performance of this Plan, including without

limitation seeking any relief from the Bankruptcy Court which the Reorganized Debtor deems necessary or appropriate to the performance of its duties or the administration of this Plan.

## ARTICLE VIII.
## SOURCE OF DISTRIBUTIONS

8.01.   Source of Distributions.  All Distributions under this Plan shall be made by the Reorganized Debtor in the manner provided in this Plan and the Confirmation Order.

8.02.   Timing and Amount of Distributions.  No Distribution shall be made on account of any Claim until such Claim is Allowed, except as otherwise set forth in this Plan or otherwise ordered by the Bankruptcy Court.  No Distribution shall be made on account of any Contested Claim until such Claim is Allowed.  Except as expressly set forth in the Plan or in the Confirmation Order, the Reorganized Debtor shall, in the exercise of its good faith business judgment, determine the timing and amount of all Distributions which are required to be made under the Plan, consistent with the goal of making such Distributions as expeditiously as reasonably possible.  The Reorganized Debtor may, but shall not be required to, seek approval of, or any other appropriate relief from, the Bankruptcy Court with respect to any of such Distributions.  Any Unclaimed Property may be paid into the registry of the Bankruptcy Court or otherwise distributed in accordance with the orders of the Bankruptcy Court.

8.03.   Means of Cash Payment.  Cash payments pursuant to this Plan shall be made by check drawn on, or by wire transfer from, a domestic bank, or by other means agreed to by the payor and payee.

8.04.   Record Date for Distributions.  As of the close of business on the Effective Date (the "Distribution Record Date"), the register for Claims will be closed, and there shall be no further changes in the holders of record of any Claims.  Although there is no prohibition against the transfer of any Claim by any Creditor, the Reorganized Debtor shall have no obligation to recognize any transfer of a Claim occurring after the Distribution Record Date, and the Reorganized Debtor shall instead be authorized and entitled to recognize and deal for all purposes under this Plan, including for the purpose of making all Distributions, with only those holders of Claims so reflected as of the Distribution Record Date.  However, the Reorganized Debtor may, in the exercise of its good faith business judgment, agree to recognize transfers of Claims after the Distribution Record Date, but shall have no obligation to do so.

8.05.   Delivery of Distributions.  All Distributions, deliveries and payments to the holders of any Allowed Claims shall be made to the addresses set forth on the respective proofs of Claim filed in the Chapter 11 Cases by such Claimants or, if the Distribution is to be made based on a Claim reflected as Allowed in the Schedules, at the address reflected in the Schedules.  Any such Distribution, delivery or payment shall be deemed as made for all purposes relating to this Plan when deposited in the United States Mail, postage prepaid, addressed as required in the preceding sentence.  If any Distribution is returned as undeliverable, no further Distribution shall be made on account of such Allowed Claim unless and until the Reorganized Debtor is notified of such holder's then current address, at which time all missed Distributions shall be made to the holder of such Allowed Claim.  However, all notices to the Reorganized Debtor reflecting new or updated addresses for undeliverable Distributions shall be made on or before one hundred twenty (120) days after the date of the attempted Distribution or such longer period as the Reorganized Debtor may fix in the exercise of its sole discretion.  After such date, all Unclaimed Property shall revert to the Reorganized Debtor and the Claim of any holder with respect to such property shall be discharged and forever barred.

20

8.06.   <u>W-9 Forms</u>.  Each holder of an Allowed Claim must provide a W-9 form or other such necessary information to comply with any withholding requirements of any Governmental Unit (collectively the "<u>W-9 Form</u>") to the Reorganized Debtor prior to receiving any Distribution from the Reorganized Debtor.  In the event a holder of an Allowed Claim does not provide a W-9 Form to the Reorganized Debtor within thirty (30) days of the Effective Date, the Reorganized Debtor shall, at an appropriate time, issue a written request to each holder of an Allowed Claim that has not previously provided a W-9 Form to the Reorganized Debtor.  The request shall be in writing and shall be delivered to the last address known to the Debtors or Reorganized Debtor, as appropriate.  The request shall conspicuously advise and disclose that failure to provide a W-9 Form to the Reorganized Debtor within thirty (30) days shall result in a waiver of any right or rights to a Distribution from the Reorganized Debtor.  In the event any holder of an Allowed Claim fails to provide the Reorganized Debtor with a W-9 Form within thirty (30) days after the date of written request described herein, then the holder of such Allowed Claim shall be deemed to have waived the right to receive any Distribution whatsoever from the Reorganized Debtor.

8.07.   <u>Time Bar to Cash Payments</u>.  Checks issued in respect of Allowed Claims shall be null and void if not cashed within ninety (90) days of the date of issuance thereof.  Requests for reissuance of any check shall be made directly to the issuer of the check by the holder of the Allowed Claim with respect to which such check originally was issued.  Any Claim in respect of such a voided check shall be made on or before one hundred twenty (120) days after the date of issuance of such check or such longer period as the Reorganized Debtor may fix.  After such date, all Claims in respect of void checks shall be discharged and forever barred.

8.08.   <u>Cure Period</u>.  Except as otherwise set forth herein, the failure by the Reorganized Debtor to timely perform any term, provision or covenant contained in this Plan, or to make any payment or Distribution required by this Plan to any Creditor, or the failure to make any payment or perform any covenant on any note, instrument or document issued pursuant to this Plan, shall not constitute an event of default unless and until the Reorganized Debtor has been given thirty (30) days written notice of such alleged default in the manner provided in this Plan, and provided an opportunity to cure such alleged default.  Until the expiration of such thirty (30) day cure period, the Reorganized Debtor shall not be in default, and performance during such thirty (30) day cure period shall be deemed as timely for all purposes.  Such written notice and passage of the thirty (30) day cure period shall constitute conditions precedent to declaring or claiming any default under this Plan or bringing any action or legal proceeding by any Person to enforce any right granted under this Plan.

8.09.   <u>Pre-Payment of Claims</u>. Unless the Plan expressly prohibits or conditions the pre-payment of an Allowed Claim, the Reorganized Debtor may pre-pay any Allowed Claim in whole or in part at any time and may do so without penalty.

8.10.   <u>Distributions after Substantial Consummation</u>.  All Distributions of any kind made to any Creditor after Substantial Consummation and any and all other actions taken under this Plan after Substantial Consummation shall not be subject to relief, reversal or modification by any court unless the implementation of the Confirmation Order is stayed by an order granted under Bankruptcy Rule 8005.

Case 18-30264-sgj11 Doc 1313-2 Filed 09/05/21 Entered 09/05/21 13:08:29 Page 71 of 230
Case 18-30264-sgj11 Doc 830 Filed 09/05/21 Entered 09/05/21 13:08:29 Page 22 of 29
230

## ARTICLE IX.
## RETENTION OF ESTATE CLAIMS AND ESTATE DEFENSES.

9.01.   Retention of Estate Claims.  Except as otherwise specifically provided in this Plan, pursuant to section 1123(b)(3) of the Bankruptcy Code, all Estate Claims shall be transferred to, and vested in, the Reorganized Debtor, both for purposes of seeking an affirmative recovery against any Person and for the purposes of offset, recoupment or defense against any Claim asserted against the Estate or Reorganized Debtor.  All Estate Claims shall be deemed to have been transferred to, and vested in, the Reorganized Debtor as of the Effective Date based on the entry of the Confirmation Order.

        Without limiting the effectiveness or generality of the foregoing reservation, out of an abundance of caution, the Debtors and the Estate hereby specifically reserves, retains, and preserves the Estate Claims reflected in the attached **Exhibit A**.  Reference is here made to **Exhibit A** which constitutes an integral part of this Plan.  The provisions of this Article of the Plan, as well as the descriptions and disclosures relating to the Estate Claims in the Disclosure Statement, are provided in the interest of providing maximum disclosure of the Estate Claims of which Debtors are presently aware and shall not act as a limitation on the potential Estate Claims that may exist.  It is the specific intention of this Plan that all Avoidance Actions and all associated remedies, and any other Estate Claims, whether arising before or after the Petition Date, and whether arising under the Bankruptcy Code or applicable state or federal non-bankruptcy laws, shall all be reserved, retained and preserved under this Plan to be transferred to, and vested in, the Reorganized Debtor.  All Estate Claims are reserved, retained and preserved both as causes of action for an affirmative recovery and as counterclaims and for the purposes of offset or recoupment against any Claims asserted against the Estate.

9.02.   Retention of Estate Defenses.  Except as otherwise specifically provided in this Plan, pursuant to section 1123(b)(3) of the Bankruptcy Code, all Estate Defenses shall be transferred to, and vested in, the Reorganized Debtor.  For this purpose, all Estate Defenses are hereby reserved, retained and preserved by the Debtors and the Estate, including without limitation all such Estate Defenses available to the Estate pursuant to section 558 of the Bankruptcy Code, and shall be deemed as transferred to, and vested in, the Reorganized Debtor as of the Effective Date based on the entry of the Confirmation Order.

9.03.   Assertion of Estate Claims and Estate Defenses.  The Reorganized Debtor shall have, and be vested with, the exclusive right, authority and standing to assert all Estate Claims and Estate Defenses for the benefit of the Reorganized Debtor.

## ARTICLE X.
## PROCEDURES FOR RESOLVING AND TREATING
## CONTESTED AND CONTINGENT CLAIMS

10.01.  Claims Listed in Schedules as Disputed.  Any General Unsecured Claim which is listed in the Schedules as unliquidated, contingent or disputed, and for which no proof of Claim has been timely filed, shall be considered as Disallowed as of the Effective Date without the necessity of any further action by the Reorganized Debtor or further order of the Bankruptcy Court other than the entry of the Confirmation Order.

10.02.  Responsibility for Objecting to Claims and Settlement of Claims.  The Reorganized Debtor shall have the exclusive standing and authority to either object to any Claim or settle and compromise any Objection to any Claim, including as follows:

Case 18-30264-sgj11 Doc 1312-8 Filed 09/05/21 Entered 09/05/21 13:08:29 Page 72 of 26
Case 18-30264-sgj11 Doc 830 Filed 09/05/21 Entered 09/05/21 13:08:29 Page 23 of 29
230

(a)     From and after the Effective Date, the Reorganized Debtor shall have the sole and exclusive right to (i) file, settle, or litigate to Final Order any Objections to any Claims; and (ii) seek to subordinate any Claim.  Any Contested Claim may be litigated to Final Order by the Reorganized Debtor; and

(b)     From and after the Effective Date, the Reorganized Debtor shall have the sole and exclusive right to settle, compromise or otherwise resolve any Contested Claim without the necessity of any further notice or approval of the Bankruptcy Court.  Bankruptcy Rule 9019 shall not apply to any settlement or compromise of a Contested Claim after the Effective Date.

10.03.  <u>Objection Deadline</u>.  All Objections to Claims shall be served and filed by the Objection Deadline; <u>provided, however</u>, the Objection Deadline shall not apply to Claims which are not reflected in the claims register, including any alleged informal proofs of Claim.  The Reorganized Debtor may seek to extend the Objection Deadline pursuant to a motion filed on or before the then applicable Objection Deadline with respect to any Claim.  Any such motion may be granted without notice or a hearing.  In the event that the Reorganized Debtor files such a motion and the Bankruptcy Court denies such motion, the Objection Deadline shall nevertheless be automatically extended to that date which is ten (10) Business Days after the date of entry of the Bankruptcy Court's order denying such motion.  Any proof of Claim other than one based upon a Rejection Claim and which is filed more than thirty (30) days after the Effective Date shall be of no force and effect and need not be objected to by the Reorganized Debtor.  Nothing contained herein shall limit the right of the Reorganized Debtor to object to Claims, if any, filed or amended after the Objection Deadline.

10.04.  <u>Response to Claim Objection</u>.  If the Reorganized Debtor files an Objection to any Claim, then the holder of such Claim shall file a written response to such Objection within twenty-four (24) days after the filing and service of the Objection upon the holder of the Contested Claim.  Each such Objection shall contain appropriate negative notice advising the Creditor whose Claim is subject to the Objection of the requirement and time period to file a response to such Objection and that, if no response is timely filed to the Objection, the Bankruptcy Court may enter an order that such Claim is Disallowed without further notice or hearing.  The negative notice language in the Objection shall satisfy the notice requirement in section 3007(a) of the Bankruptcy Rules, and the Reorganized Debtor shall not be required to send a separate notice of the Objection to the Creditor whose Claim is subject to the Objection.

10.05.   <u>Distributions on Account of Contested Claims</u>.  If a Claim is Contested, then the dates for any Distributions as to such Contested Claim shall be determined based upon its date of Allowance, and thereafter Distribution shall be made on account of such Allowed Claim pursuant to the provisions of the Plan.  No Distribution shall be made on account of a Contested Claim until Allowed.  Until such time as a contingent Claim becomes fixed and absolute by a Final Order Allowing such Claim, such Claim shall be treated as a Contested Claim for purposes of estimates, allocations, and Distributions under the Plan.  Any contingent right to contribution or reimbursement shall continue to be subject to section 502(e) of the Bankruptcy Code.

10.06.  <u>No Waiver of Right to Object</u>.  Except as expressly provided in this Plan, nothing contained in the Disclosure Statement, this Plan, or the Confirmation Order shall waive, relinquish, release or impair the Reorganized Debtor's right to object to any Claim.

10.07.  <u>Offsets and Defenses</u>.  The Reorganized Debtor shall be vested with and retain all Estate Claims and Estate Defenses, including without limitation all rights of offset or recoupment and all counterclaims against any Claimant holding a Claim.  Assertion of counterclaims by the

Reorganized Debtor against any Claim asserted against the Estate or Reorganized Debtor shall constitute "core" proceedings.

10.08.  Claims Paid or Reduced Prior to Effective Date.  Notwithstanding the contents of the Schedules, Claims listed therein as undisputed, liquidated and not contingent shall be reduced by the amount, if any, that was paid by the Debtors prior to the Effective Date, including pursuant to orders of the Bankruptcy Court.  To the extent such payments are not reflected in the Schedules, such Schedules will be deemed amended and reduced to reflect that such payments were made.  Nothing in the Plan shall preclude the Debtors or the Reorganized Debtor from paying Claims that the Debtors were authorized to pay pursuant to any Final Order entered by the Bankruptcy Court prior to the Confirmation Date.

### ARTICLE XI.
### EXECUTORY CONTRACTS AND UNEXPIRED LEASES

11.01.  Assumption and Rejection of Executory Contracts.  All Executory Contracts and Unexpired Leases of the Debtors shall be deemed rejected by the Debtors upon the Effective Date unless an Executory Contract or Unexpired Lease (a) has been previously assumed or rejected pursuant to an order of the Bankruptcy Court, (b) is identified in **Exhibit B** to this Plan and/or the Confirmation Order to be (i) assumed or (ii) assumed and assigned, or (c) is the subject of a motion to assume filed on or before the Confirmation Date. The Plan shall constitute a motion to reject all Executory Contracts and Unexpired Leases except as stated in this paragraph.  However, the Debtors may file a separate motion for the assumption or rejection of any Executory Contract or Unexpired Lease at any time through the Confirmation Date.

11.02.  Cure Payments.  All payments that may be required by section 365(b)(1) of the Bankruptcy Code to satisfy any Cure Claim shall be made by the Reorganized Debtor as soon as reasonably practical after the Effective Date or upon such terms as may be otherwise agreed between the Reorganized Debtor and the holder of such Cure Claim; *provided, however*, in the event of a dispute regarding the amount of any Cure Claim, the cure of any other defaults, or any other matter pertaining to assumption or assignment of an Executory Contract, the Reorganized Debtor shall make such cure payments and cure such other defaults, all as may be required by section 365(b)(1) of the Bankruptcy Code, following the entry of a Final Order by the Bankruptcy Court resolving such dispute.

11.03.  Bar to Rejection Claims.  Except as otherwise ordered by the Bankruptcy Court, any Rejection Claim based on the rejection of an Executory Contract or Unexpired Lease shall be forever barred and shall not be enforceable against the Reorganized Debtor or the Reorganized Debtor's assets unless a proof of Claim is filed with the Bankruptcy Court and served upon the Reorganized Debtor and its counsel by the earlier of thirty (30) days after the Effective Date or thirty (30) days after entry of the Final Order approving rejection of such Executory Contract or Unexpired Lease.

11.04.  Rejection Claims.  Any Rejection Claim not barred by section 11.03 of the Plan shall be classified as a Class 3 General Unsecured Claim subject to the provisions of sections 502(b)(6) and 502(g) of the Bankruptcy Code; *provided, however*, that any Rejection Claim by a lessor based upon the rejection of an unexpired lease of real property, either prior to the Confirmation Date, upon the entry of the Confirmation Order, or upon the Effective Date, shall be limited in accordance with section 502(b)(6) of the Bankruptcy Code and state law mitigation requirements.  All Rejection Claims shall be deemed as Contested Claims until Allowed. Nothing contained herein shall be deemed an admission by the Debtors or the Reorganized

Debtor that such rejection gives rise to or results in a Claim or shall be deemed a waiver by the Debtors or the Reorganized Debtor of any objections or defenses to any such Rejection Claim if asserted.

11.05.  Reservation of Rights.  Nothing contained in the Plan shall constitute an admission by the Debtors that any contract or lease is in fact an Executory Contract or Unexpired Lease or that the Debtors or the Reorganized Debtor have any liability thereunder.  If there is a dispute regarding whether a contract or lease is or was executory or unexpired at the time of assumption or rejection, the Reorganized Debtor shall have thirty (30) days following entry of a Final Order resolving such dispute to alter the treatment of such contract or lease.

## ARTICLE XII.
## SUBSTANTIVE CONSOLIDATION OF THE DEBTORS

12.01.  Pursuant to the Confirmation Order, the Bankruptcy Court shall approve the substantive consolidation of the Debtors for the sole purposes of implementing the Plan, including for purposes of voting and Distributions to be made under the Plan.  Pursuant to such order:  (a) all assets and liabilities of the Debtors will be deemed merged; (b) all guarantees by one Debtor of the obligations of the other Debtor will be deemed eliminated so that any Claim against any Debtor and any guarantee thereof executed by the other Debtor and any joint or several liability of the Debtors will be deemed to be one obligation of the consolidated Debtors; and (c) each and every Claim filed or to be filed in the Chapter 11 Case of either Debtor will be deemed filed against the consolidated Debtors and will be deemed one Claim against and a single obligation of the consolidated Debtors.

## ARTICLE XIII.
## CONDITIONS PRECEDENT TO CONFIRMATION AND EFFECTIVENESS OF PLAN

13.01.  Conditions to Confirmation and Effectiveness of Plan.  The Plan shall not become effective until the following conditions shall have been satisfied and which may occur concurrently with the Effective Date:  (a) the Confirmation Order shall have been entered, in form and substance acceptable to the Chapter 11 Trustee; (b) the necessary Plan Documents have been executed and delivered, and (c) all other conditions specified by the Chapter 11 Trustee have been satisfied.  Any or all of the above conditions other than (a) may be waived at any time by the Chapter 11 Trustee.

13.02.  Notice of the Effective Date.  On or as soon as reasonably practical after the occurrence of the Effective Date, the Reorganized Debtor shall cause a notice of the Effective Date to be filed with the Bankruptcy Court and served on all Creditors and parties-in-interest.

13.03.  Revocation of Plan.  The Chapter 11 Trustee may revoke and withdraw the Plan at any time before the Effective Date.  If the Chapter 11 Trustee revokes or withdraws the Plan, or if confirmation of the Plan does not occur, then this Plan shall be deemed null and void and nothing contained in the Plan shall be deemed to constitute a waiver or release of any Claims by or against the Debtors, as the case may be, or any other Person, or to prejudice in any manner the rights of the Debtors or any other Person in any further proceedings involving the Debtors.

Case 18-30264-sgj11 Doc 1212-8 Filed 09/05/21 Entered 09/05/24 13:08:29 Page 75 of 26
Case 18-30264-sgj11 Doc 840 Filed 00/09/19 Entered 09/09/19 13:08:29 Page 26 of 229
230

### ARTICLE XIV.
### EFFECT OF THE PLAN ON CLAIMS AND INTERESTS

14.01.  Compromise and Settlement

(a)     Pursuant to section 363 of the Bankruptcy Code and Bankruptcy Rule 9019, and in consideration of the classification, potential Distributions and other benefits provided under the Plan, the provisions of the Plan shall constitute a good faith compromise and settlement of all Claims, Interests and controversies subject to, or dealt with, under this Plan, including, without limitation, all Claims against the Debtors or Estate arising prior to the Effective Date, whether known or unknown, foreseen or unforeseen, asserted or unasserted, fixed or contingent, arising out of, relating to or in connection with the business or affairs of, or transactions with, the Debtors or the Estate.  The entry of the Confirmation Order shall constitute the Bankruptcy Court's approval of each of the foregoing compromises or settlements embodied in this Plan, and all other compromises and settlements provided for in the Plan, and the Bankruptcy Court's findings shall constitute its determination that such compromises and settlements are in the best interest of the Debtors, the Estate, Creditors and other parties-in-interest, and are fair, equitable and within the range of reasonableness.  The rights afforded in the Plan and the treatment of all Claims and Interests herein shall be in exchange for, and in complete satisfaction and release of, all Claims and Interests of any nature whatsoever against and in the Debtors, the Estate, and the Assets.  Except as otherwise provided herein, all Persons shall be precluded and forever barred by the Plan Injunction from asserting against the Debtors and their affiliates, successors, assigns, the Reorganized Debtor or the Reorganized Debtor's Assets, or the Estate, any event, occurrence, condition, thing, or other or further Claims or causes of action based upon any act, omission, transaction, or other activity of any kind or nature that occurred or came into existence prior to the Effective Date, whether or not the facts of or legal bases therefore were known or existed prior to the Effective Date.

(b)     It is not the intent of this Plan that confirmation of the Plan shall in any manner alter or amend any settlement and compromise (including those contained in agreed orders) between the Debtors and any Person that has been previously approved by the Bankruptcy Court (each, a "Prior Settlement").  To the extent of any conflict between the terms of the Plan and the terms of any Prior Settlement, the terms of the Prior Settlement shall control and such Prior Settlement shall be enforceable according to its terms.

14.02.  Discharge.  The Debtors and their successors in interest and assigns shall be deemed discharged and released pursuant to section 1141(d)(1) of the Bankruptcy Code from any and all Claims provided for in the Plan.

14.03.  **PLAN INJUNCTION.**

**THIS SECTION IS REFERRED TO HEREIN AS THE "PLAN INJUNCTION." EXCEPT AS OTHERWISE EXPRESSLY PROVIDED HEREIN, AS OF THE EFFECTIVE DATE ALL HOLDERS OF CLAIMS AGAINST, OR INTERESTS IN, THE DEBTORS, THE ESTATE OR ANY OF THE ASSETS THAT AROSE PRIOR TO THE EFFECTIVE DATE ARE HEREBY PERMANENTLY ENJOINED AND PROHIBITED FROM THE FOLLOWING:  (a) THE COMMENCING OR CONTINUATION IN ANY MANNER, DIRECTLY OR INDIRECTLY, OF ANY ACTION, CASE, LAWSUIT OR OTHER PROCEEDING OF ANY TYPE OR NATURE AGAINST THE DEBTORS, THE ESTATE, THE REORGANIZED DEBTOR, OR THE REORGANIZED DEBTOR'S ASSETS WITH RESPECT TO**

ANY SUCH CLAIM OR INTEREST ARISING OR ACCRUING BEFORE THE EFFECTIVE DATE, INCLUDING WITHOUT LIMITATION THE ENTRY OR ENFORCEMENT OF ANY JUDGMENT, OR ANY OTHER ACT FOR THE COLLECTION, EITHER DIRECTLY OR INDIRECTLY, OF ANY CLAIM OR INTEREST AGAINST THE DEBTORS, THE ESTATE, THE REORGANIZED DEBTOR, OR THE REORGANIZED DEBTOR'S ASSETS; (b) THE CREATION, PERFECTION OR ENFORCEMENT OF ANY LIEN, SECURITY INTEREST, ENCUMBRANCE, RIGHT OR BURDEN, EITHER DIRECTLY OR INDIRECTLY, AGAINST THE DEBTORS, THE ESTATE, THE REORGANIZED DEBTOR, OR THE REORGANIZED DEBTOR'S ASSETS, OR (c) TAKING ANY ACTION IN RELATION TO THE DEBTORS, THE ESTATE, THE REORGANIZED DEBTOR, OR THE REORGANIZED DEBTOR'S ASSETS, EITHER DIRECTLY OR INDIRECTLY, WHICH VIOLATES OR DOES NOT CONFORM OR COMPLY WITH THE PROVISIONS OF THIS PLAN APPLICABLE TO SUCH CLAIM OR INTEREST. THE PLAN INJUNCTION SHALL ALSO BE INCORPORATED INTO THE CONFIRMATION ORDER.

IN ADDITION TO THE FOREGOING, EXCEPT TO THE EXTENT NECESSARY TO ALLOW HCLOF, THE REORGANIZED DEBTOR AND BRIGADE TO EFFECTUATE THE RESET OF ONE OR MORE OF THE ACIS CLOS IN ACCORDANCE WITH SECTION 6.08 OF THE PLAN, PURSUANT TO SECTIONS 105(a), 1123(a)(5), 1123(b)(6), AND 1142(b) OF THE BANKRUPTCY CODE, THE ENJOINED PARTIES (DEFINED BELOW) ARE HEREBY ENJOINED FROM: (a) PROCEEDING WITH, EFFECTUATING, OR OTHERWISE TAKING (i) ANY ACTION IN FURTHERANCE OF ANY OPTIONAL REDEMPTION, CALL, OR OTHER LIQUIDATION OF THE ACIS CLOS PREVIOUSLY OR CURRENTLY ISSUED BY ANY SUCH PARTIES, AND (ii) ANY OTHER ATTEMPT TO LIQUIDATE THE ACIS CLOS BY ANY MEANS, (b) TRADING ANY ACIS CLO COLLATERAL IN FURTHERANCE OF ANY OPTIONAL REDEMPTION, CALL, OR OTHER LIQUIDATION OF THE ACIS CLOS, (c) EXERCISING ANY RIGHTS TO ASK OR DIRECT THE ISSUERS, CO-ISSUERS OR INDENTURE TRUSTEE TO PERFORM ANY ACTION IN RELATION TO THE ACIS CLOS THAT THE ENJOINED PARTIES ARE PROHIBITED FROM TAKING UNDER THE TERMS OF THE PLAN INJUNCTION, (d) INTERFERING IN ANY WAY WITH THE CAPITAL MARKETS PROCESS OF RESETTING ANY ACIS CLO, AND (e) SENDING, MAILING, OR OTHERWISE DISTRIBUTING ANY NOTICE TO THE HOLDERS OF THE NOTES IN THE ACIS CLOS IN CONNECTION WITH THE EFFECTUATION OF ANY OPTIONAL REDEMPTION, CALL, OR OTHER LIQUIDATION OF THE ACIS CLOS, UNTIL THE EARLIER TO OCCUR OF: (w) THE DATE UPON WHICH A FINAL ORDER IS ENTERED RESOLVING THE ESTATE'S AVOIDANCE CLAIMS AGAINST ALL ENJOINED PARTIES RELATING TO ACIS LP'S RIGHTS UNDER THE ALF PMA; (x) THE DATE UPON WHICH ALL ALLOWED CLAIMS AGAINST THE DEBTORS HAVE BEEN PAID IN FULL, (y) THE ENTRY OF AN ORDER BY THE BANKRUPTCY COURT FINDING THAT A MATERIAL DEFAULT HAS OCCURRED UNDER THE TERMS OF THE PLAN, OR (z) THE ENTRY OF A SUBSEQUENT ORDER BY THE BANKRUPTCY COURT PROVIDING OTHERWISE WITH RESPECT TO ONE OR MORE OF THE ACIS CLOS. FOR PURPOSES OF THIS PARAGRAPH, THE TERM "ENJOINED PARTIES" SHALL INCLUDE HIGHLAND, HCLOF, CLO HOLDCO, NEUTRA, HIGHLAND HCF, HIGHLAND CLOM, ANY AFFILIATES OF

**HIGHLAND, AND THEIR RESPECTIVE EMPLOYEES, AGENTS, REPRESENTATIVES, TRANSFEREES, ASSIGNS, AND SUCCESSORS. FOR PURPOSES OF CLARIFICATION AND AVOIDANCE OF DOUBT, NOTHING IN THIS PARAGRAPH SHALL PRECLUDE ORDINARY DAY-TO-DAY TRADING OF THE COLLATERAL IN THE ACIS CLOS BY THE REORGANIZED DEBTOR.**

Notwithstanding anything to the contrary in the Plan: (a) third-party professionals employed by the Reorganized Debtor shall not be released or exculpated from any losses, claims, damages, liabilities, or expenses arising from their duties and services provided to the Reorganized Debtor; and (b) any third-party professionals employed by the Reorganized Debtor shall only be entitled to be indemnified by the Reorganized Debtor to the extent provided by applicable law.

Notwithstanding anything to the contrary in the Plan or Confirmation Order, nothing in the Plan or in the Confirmation Order shall discharge, release, enjoin or otherwise bar (i) any liability of the Debtors, the Estate, the Reorganized Debtor, or the Reorganized Debtor's assets ("Released Parties") to a Governmental Unit arising on or after the Confirmation Date with respect to events occurring after the Confirmation Date, provided that the Released Parties reserve the right to assert that any such liability is a Claim that arose on or prior to the Confirmation Date and constitutes a Claim that is subject to the deadlines for filing proofs of claim, (ii) any liability to a Governmental Unit that is not a Claim subject to the deadlines for filing proofs of Claim, (iii) any valid right of setoff or recoupment of a Governmental Unit, and (iv) any police or regulatory action by a Governmental Unit. In addition, nothing in the Plan or Confirmation Order discharges, releases, precludes or enjoins any environmental liability to any Governmental Unit that any Person other than the Released Parties would be subject to as the owner or operator of the property after the Effective Date. For the avoidance of any doubt, nothing in this paragraph shall be construed to limit the application of the Plan Injunction to any Claim which was subject to any bar date applicable to such Claim.

14.04. <u>Setoffs</u>. Except as otherwise expressly provided for in the Plan, pursuant to the Bankruptcy Code (including section 553 of the Bankruptcy Code), applicable nonbankruptcy law, or as may be agreed to by the holder of a Claim, the Reorganized Debtor may set off against any Allowed Claim and the Distributions to be made pursuant to the Plan on account of such Allowed Claim (before such Distribution is made), any Claims, rights, Estate Claims and Estate Defenses of any nature that the Debtors may hold against the holder of such Allowed Claim, to the extent such Claims, rights, Estate Claims and Estate Defenses against such holder have not been otherwise compromised or settled on or prior to the Effective Date (whether pursuant to the Plan or otherwise); <u>provided, however</u>, that neither the failure to effect such a setoff nor the allowance of any Claim or Interest pursuant to the Plan shall constitute a waiver or release of any such Claims, rights, Estate Claims and Estate Defenses that the Estate may possess against such Claimant. In no event shall any Claimant or Interest holder be entitled to setoff any Claim or Interest against any Claim, right, or Estate Claim of the Debtors without the consent of the Debtors or the Reorganized Debtor unless such holder files a motion with the Bankruptcy Court requesting the authority to perform such setoff notwithstanding any indication in any proof of Claim or otherwise that such holder asserts, has, or intends to preserve any right of setoff pursuant to section 553 of the Bankruptcy Code or otherwise.

14.05. <u>Recoupment.</u> Except as otherwise expressly provided for in the Plan, in no event shall any holder of Claims or Interests be entitled to recoup any Claim or Interest against any Claim, right, account receivable, or Estate Claim of the Debtors or the Reorganized Debtor unless (a) such holder actually provides notice thereof in writing to the Debtors or the Reorganized Debtor of its intent to perform a recoupment; (b) such notice includes the amount to be

Case 18-30264-sgj11 Doc 1843-8 Filed 09/05/21 Entered 09/05/21 13:08:29 Page 78 of 26
Case 18-30264-sgj11 Doc 1830 Filed 09/05/22 Entered 09/05/22 13:08:29 Page 29 of 29
230

recouped by the holder of the Claim or Interest and a specific description of the basis for the recoupment, and (c) the Debtors or the Reorganized Debtor have provided a written response to such Claim or Interest holder, stating unequivocally that the Debtors or the Reorganized Debtor consents to the requested recoupment.  The Debtors and the Reorganized Debtor shall have the right, but not the obligation, to seek an order of the Bankruptcy Court allowing any or all of the proposed recoupment.  In the absence of a written response from the Debtors or the Reorganized Debtor consenting to a recoupment or an order of the Bankruptcy Court authorizing a recoupment, no recoupment by the holder of a Claim or Interest shall be allowed.

14.06.  <u>Turnover</u>.  On the Effective Date, any rights of the Estate to compel turnover of Assets under applicable nonbankruptcy law and pursuant to section 542 or 543 of the Bankruptcy Code shall be deemed transferred to and vested in the Reorganized Debtor.

14.07.  <u>Automatic Stay</u>.  The automatic stay pursuant to section 362 of the Bankruptcy Code, except as previously modified by the Bankruptcy Court, shall remain in effect until the Effective Date of the Plan as to the Debtors, the Estate and all Assets.  As of the Effective Date, the automatic stay shall be replaced by the Plan Injunction.

**ARTICLE XV.**
**<u>JURISDICTION OF COURTS AND MODIFICATIONS TO THE PLAN</u>**

15.01.  <u>Retention of Jurisdiction</u>.  Pursuant to sections 1334 and 157 of title 28 of the United States Code, the Bankruptcy Court shall retain exclusive jurisdiction of all matters arising in, arising under, and related to the Chapter 11 Cases and the Plan, to the full extent allowed or permitted by applicable law, including without limitation for the purposes of invoking sections 105(a) and 1142 of the Bankruptcy Code, and for, among other things, the following purposes:

(a)　To hear and determine any and all objections to, or applications or motions concerning, the allowance of Claims or the allowance, classification, priority, compromise, estimation, or payment of any Administrative Expense;

(b)　To hear and determine any and all applications for payment of fees and expenses pursuant to this Plan to any Estate Professional pursuant to sections 330 or 503 of the Bankruptcy Code, or for payment of any other fees or expenses authorized to be paid or reimbursed under this Plan, and any and all objections thereto;

(c)　To hear and determine pending applications for the rejection, assumption, or assumption and assignment of Executory Contracts and Unexpired Leases and the allowance of Claims resulting therefrom, and to determine the rights of any party in respect to the assumption or rejection of any Executory Contract or Unexpired Lease;

(d)　To hear and determine any and all adversary proceedings, applications, or contested matters, including relating to the allowance of any Claim;

(e)　To hear and determine all controversies, disputes, and suits which may arise in connection with the execution, interpretation, implementation, consummation, or enforcement of the Plan or in connection with the enforcement of any remedies made available under the Plan, including without limitation, (i) adjudication of all rights, interests or disputes relating to any of the Assets, (ii) the valuation of all Collateral, (iii) the determination of the validity of any Lien or claimed right of offset or recoupment; and (iv) determinations of Objections to Contested Claims;

Case 18-30264-sgj11 Doc 1842-2 Filed 09/05/21 Entered 09/05/21 13:08:29 Page 79 of 230
Case 18-30264-sgj11 Doc 880 Filed 09/05/21 Entered 09/05/21 13:08:29 Page 80 of 230
230

(f)     To liquidate and administer any disputed, contingent, or unliquidated Claims, including the Allowance of all Contested Claims;

(g)     To administer Distributions to holders of Allowed Claims as provided herein;

(h)     To enter and implement such orders as may be appropriate in the event the Confirmation Order is for any reason stayed, reversed, revoked, modified, or vacated;

(i)     To enable the Reorganized Debtor to prosecute any and all proceedings which may be brought to set aside transfers, Liens or encumbrances and to recover any transfers, Assets, properties or damages to which the Reorganized Debtor may be entitled under applicable provisions of the Bankruptcy Code or any other federal, state or local laws, including causes of action, controversies, disputes and conflicts between the Reorganized Debtor and any other party, including but not limited to, any causes of action or Objections to Claims, preferences or fraudulent transfers and obligations or equitable subordination;

(j)     To consider any modification of the Plan pursuant to section 1127 of the Bankruptcy Code, to cure any defect or omission, or reconcile any inconsistency in any order of the Bankruptcy Court, including, without limitation the Confirmation Order;

(k)     To enforce the discharge and Plan Injunction against any Person;

(l)     To enter and implement all such orders as may be necessary or appropriate to execute, interpret, construe, implement, consummate, or enforce the terms and conditions of this Plan and the transactions required or contemplated pursuant thereto;

(m)     To hear and determine any motion or application which the Reorganized Debtor is required or allowed to commence before the Bankruptcy Court pursuant to this Plan;

(n)     To hear and determine any other matter not inconsistent with the Bankruptcy Code and title 28 of the United States Code that may arise in connection with or related to the Plan;

(o)     To determine proceedings pursuant to section 505 of the Bankruptcy Code;

(p)     To enter a final decree closing the Chapter 11 Cases; and

(q)     To determine any other matter or dispute relating to the Estate, the Estate Claims, the Estate Defenses, the Assets, or the Distributions by the Reorganized Debtor.

15.02.  <u>Abstention and Other Courts</u>.  If the Bankruptcy Court abstains from exercising, or declines to exercise, jurisdiction or is otherwise without jurisdiction over any matter arising out of or relating to the Chapter 11 Cases, this Article of the Plan shall have no effect upon and shall not control, prohibit or limit the exercise of jurisdiction by any other court having competent jurisdiction with respect to such matter.

15.03.  <u>Non-Material Modifications</u>.  The Reorganized Debtor may, with the approval of the Bankruptcy Court and without notice to all holders of Claims and Interests, correct any defect, omission, or inconsistency in the Plan in such manner and to such extent as may be necessary or desirable.  The Reorganized Debtor may undertake such nonmaterial modification pursuant

to this section insofar as it does not adversely change the treatment of the Claim of any Creditor or the Interest of any Interest holder who has not accepted in writing the modification.

15.04. <u>Material Modifications</u>. Modifications of this Plan may be proposed in writing by the Chapter 11 Trustee at any time before confirmation, provided that this Plan, as modified, meets the requirements of sections 1122 and 1123 of the Bankruptcy Code, and the Chapter 11 Trustee shall have complied with section 1125 of the Bankruptcy Code. This Plan may be modified at any time after confirmation and before its Substantial Consummation, provided that the Plan, as modified, meets the requirements of sections 1122 and 1123 of the Bankruptcy Code, and the Bankruptcy Court, after notice and a hearing, confirms the Plan, as modified, under section 1129 of the Bankruptcy Code, and the circumstances warrant such modification. A holder of a Claim or Interest that has accepted or rejected this Plan shall be deemed to have accepted or rejected, as the case may be, such Plan as modified, unless, within the time fixed by the Bankruptcy Court, such holder changes its previous acceptance or rejection.

## ARTICLE XVI.
## MISCELLANEOUS PROVISIONS

16.01. <u>Severability</u>. Should the Bankruptcy Court determine any provision of the Plan is unenforceable either on its face or as applied to any Claim or Interest or transaction, the Reorganized Debtor may modify the Plan so that any such provision shall not be applicable to the holder of any Claim or Interest. Such a determination of unenforceability shall not (a) limit or affect the enforceability and operative effect of any other provision of the Plan or (b) require the resolicitation of any acceptance or rejection of the Plan.

16.02. <u>Oral Agreements; Modification of Plan; Oral Representations or Inducements</u>. The terms of the Plan, Disclosure Statement and Confirmation Order may only be amended in writing and may not be changed, contradicted or varied by any oral statement, agreement, warranty or representation. None of the Debtors, any representative of the Estate, including Robin Phelan in his capacity as Chapter 11 Trustee, nor their attorneys have made any representation, warranty, promise or inducement relating to the Plan or its confirmation except as expressly set forth in this Plan, the Disclosure Statement, or the Confirmation Order or other order of the Bankruptcy Court.

16.03. <u>Waiver</u>. The Reorganized Debtor shall not be deemed to have waived any right, power or privilege pursuant to the Plan unless the waiver is in writing and signed by the Reorganized Debtor. There shall be no waiver by implication, course of conduct or dealing, or through any delay or inaction by the Reorganized Debtor, of any right pursuant to the Plan, including the provisions of this anti-waiver section. The waiver of any right under the Plan shall not act as a waiver of any other or subsequent right, power or privilege.

16.04. <u>Notice</u>. Any notice or communication required or permitted by the Plan shall be given, made or sent as follows:

(a)     If to a Creditor, notice may be given as follows: (i) if the Creditor has not filed a proof of Claim, then to the address reflected in the Schedules, or (ii) if the Creditor has filed a proof of Claim, then to the address reflected in the proof of Claim.

(b)     If to the Reorganized Debtor, notice shall be sent to the following addresses:

Case 18-30264-sgj11 Doc 1242-2 Filed 09/05/21 Entered 09/05/21 13:08:29 Page 81 of 26
Case 18-30264-sgj11 Doc 880 Filed 09/29/19 Entered 09/29/19 13:08:29 Page 92 of 229
230

| Jeff P. Prostok | Josh Terry |
|---|---|
| Suzanne K. Rosen | c/o Brian P. Shaw |
| Forshey Prostok LLP | Rogge Dunn Group, PC |
| 777 Main Street, Suite 1290 | 1201 Elm Street, Suite 5200 |
| Fort Worth, Texas 76102 | Dallas, Texas 75270 |

(c)     Any Creditor desiring to change its address for the purpose of notice may do so by giving notice to the Reorganized Debtor of its new address in accordance with the terms of this section.

(d)     Any notice given, made or sent as set forth above shall be effective upon being (i) deposited in the United States Mail, postage prepaid, addressed to the addressee at the address as set forth above; (ii) delivered by hand or messenger to the addressee at the address set forth above; (iii) telecopied to the addressee as set forth above, with a hard confirmation copy being immediately sent through the United States Mail; or (iv) delivered for transmission to an expedited or overnight delivery service such as FedEx.

16.05. <u>Compliance with All Applicable Laws</u>.  If notified by any governmental authority that it is in violation of any applicable law, rule, regulation, or order of such governmental authority relating to its business, the Reorganized Debtor shall comply with such law, rule, regulation, or order; <u>provided, however</u>, that nothing contained herein shall require such compliance if the legality or applicability of any such requirement is being contested in good faith in appropriate proceedings and, if appropriate, an adequate Reserve has been set aside on the books of the Reorganized Debtor.

16.06. <u>Duties to Creditors; Exculpation</u>.  Neither the Chapter 11 Trustee nor any agent, representative, accountant, financial advisor, attorney, shareholder, officer, affiliate, member or employee of the Chapter 11 Trustee or the Debtors, including but not limited to Estate Professionals (collectively, the "<u>Exculpated Parties</u>"), shall ever owe any duty to any Person (including any Creditor) other than the duties owed to the Debtors' bankruptcy Estate, for any act, omission, or event in connection with, or arising out of, or relating to, any of the following: (a) the Debtors' Chapter 11 Cases, including all matters or actions in connection with or relating to the administration of the Estate, (b) the Plan, including the proposal, negotiation, confirmation and consummation of the Plan, or (c) any act or omission relating to the administration of the Plan after the Effective Date.  All such Exculpated Parties shall be fully exculpated and released from any and all claims and causes of action by any Person, known or unknown, in connection with, or arising out of, or relating to, any of the following:  (x) the Debtors' Chapter 11 Cases, including all matters or actions in connection with or relating to the administration of the Estate, (y) the Plan, including the proposal, negotiation, confirmation and consummation of the Plan, or (z) any act or omission relating to the administration of the Plan after the Effective Date, except for claims and causes of action arising out of such Exculpated Party's gross negligence or willful misconduct.

16.07. <u>Binding Effect</u>.  The Plan shall be binding upon, and shall inure to the benefit of, the Reorganized Debtor, the holders of the Claims or Liens, and their respective successors-in-interest and assigns.

16.08. <u>Governing Law, Interpretation</u>.  Unless a rule of law or procedure supplied by federal law (including the Bankruptcy Code and Bankruptcy Rules) is applicable, the internal laws of the State of Texas shall govern the construction and implementation of the Plan and any Plan

Documents without regard to conflicts of law. The Plan shall control any inconsistent term or provision of any other Plan Documents.

16.09. <u>Payment of Statutory Fees</u>. All accrued U.S. Trustee Fees as of the Confirmation Date shall be paid by the Reorganized Debtor on or as soon as practicable after the Effective Date, and thereafter shall be paid by the Reorganized Debtor as such statutory fees become due and payable.

16.10. <u>Filing of Additional Documents</u>. On or before Substantial Consummation of the Plan, the Reorganized Debtor may file with the Bankruptcy Court such agreements and other documents as may be necessary or appropriate to effectuate and further evidence the terms and conditions of the Plan.

16.11. <u>Computation of Time</u>. Bankruptcy Rule 9006 shall apply to the calculation of all time periods pursuant to this Plan. If the final day for any Distribution, performance, act or event under the Plan is not a Business Day, then the time for making or performing such Distribution, performance, act or event shall be extended to the next Business Day. Any payment or Distribution required to be made hereunder on a day other than a Business Day shall be due and payable on the next succeeding Business Day.

16.12. <u>Elections by the Reorganized Debtor</u>. Any right of election or choice granted to the Reorganized Debtor under this Plan may be exercised, at the Reorganized Debtor's election, separately as to each Claim, Creditor or Person.

16.13. <u>Release of Liens</u>. Except as otherwise expressly provided in this Plan or the Confirmation Order, all Liens against any of the Assets transferred to and vested in the Reorganized Debtor shall be deemed to be released, terminated and nullified without the necessity of any order by the Bankruptcy Court other than the Confirmation Order.

16.14. <u>Rates</u>. The Plan does not provide for the change of any rate that is within the jurisdiction of any governmental regulatory commission after the occurrence of the Effective Date.

16.15. <u>Compliance with Tax Requirements</u>. In connection with the Plan, the Reorganized Debtor shall comply with all withholding and reporting requirements imposed by federal, state and local Taxing Authorities and all Distributions under the Plan shall be subject to such withholding and reporting requirements. Notwithstanding the above, each holder of an Allowed Claim or Interest that is to receive a Distribution under the Plan shall have the sole and exclusive responsibility for the satisfaction and payment of any tax obligations imposed by any governmental unit, including income, withholding and other tax obligations, on account of such Distribution under the Plan.

16.16. <u>Notice of Occurrence of the Effective Date</u>. Promptly after occurrence of the Effective Date, the Reorganized Debtor, as directed by the Bankruptcy Court, shall serve on all known parties-in-interest and holders of Claims and Interests, notice of the occurrence of the Effective Date.

16.17. <u>Notice of Entry of Confirmation Order</u>. Promptly after entry of the Confirmation Order, the Chapter 11 Trustee, as directed by the Bankruptcy Court in the Confirmation Order, shall serve on all known parties-in-interest and holders of Claims and Interests, notice of entry of the Confirmation Order.

Case 18-30264-sgj11 Doc 1313-2 Filed 00/05/21 Entered 00/05/21 13:08:29 Page 83 of
Case 18-30264-sgj11 Doc 830 Filed 00/29/19 Entered 00/29/19 13:23:06 Page 34 of 229
230

Dated:  October 25, 2018.

Respectfully submitted,


ACIS CAPITAL MANAGEMENT, L.P.


By:  /s/ *Robin Phelan*
     Robin Phelan
     Chapter 11 Trustee


ACIS CAPITAL MANAGMENET GP, LLC


By:/s/ *Robin Phelan*
     Robin Phelan
     Chapter 11 Trustee


APPROVED:

/s/ *Jeff P. Prostok*
Jeff P. Prostok – State Bar No. 16352500
J. Robert Forshey – State Bar No. 07264200
Suzanne K. Rosen – State Bar No. 00798518
Matthew G. Maben – State Bar No. 24037008
**FORSHEY & PROSTOK LLP**
777 Main St., Suite 1290
Ft. Worth, TX 76102
Telephone: (817) 877-8855
Facsimile: (817) 877-4151
jprostok@forsheyprostok.com
bforshey@forsheyprostok.com
srosen@forsheyprostok.com
mmaben@forsheyprostok.com

**COUNSEL FOR ROBIN PHELAN,
CHAPTER 11 TRUSTEE**

APPROVED:

/s/ *Rahkee V. Patel*
Rakhee V. Patel – State Bar No. 00797213
Phillip Lamberson – State Bar No. 00794134
Joe Wielebinski – State Bar No. 21432400
Annmarie Chiarello – State Bar No. 24097496
**WINSTEAD PC**
500 Winstead Building
2728 N. Harwood Street
Dallas, Texas 75201
Telephone: (214) 745-5400
Facsimile:  (214) 745-5390
rpatel@winstead.com
plamberson@winstead.com
jwielebinski@winstead.com
achiarello@winstead.com

**SPECIAL COUNSEL FOR ROBIN PHELAN,
CHAPTER 11 TRUSTEE**


L:\JPROSTOK\ACIS Capital Management (Trustee Rep)\Plan and Disclosure Statement\Third Amended Joint Plan 10.25.18.docx

# EXHIBIT A

## TO THIRD AMENDED JOINT PLAN FOR ACIS CAPITAL MANAGEMENT, LP AND ACIS CAPITAL MANAGEMENT GP, LLC

**[ESTATE CLAIMS]**

Case 18-30264-sgj11 Doc 1312-2 Filed 09/05/21 Entered 09/05/21 13:08:29 Page 85 of 230
Case 18-30264-sgj11 Doc 830 Filed 09/05/21 Entered 09/05/21 13:08:29 Page 86 of 229
230

**EXHIBIT "A"**
**to**
**Joint Plan for Acis Capital Management, LP and Acis Capital Management GP, LLC**

1.    <u>Defined Terms</u>.  This Exhibit "A" constitutes an integral part of the Plan of which it is a part.  Defined terms in the Plan are to be given the same meaning in this Exhibit "A".  The rules of construction set forth in Article I.B. of the Plan shall likewise apply to this Exhibit "A".

2.    <u>Estate Claims Reserved, Retained and Preserved</u>.  All Estate Claims are hereby reserved, retained and preserved, and shall all be transferred to, and vested in, the Reorganized Debtor pursuant to this Plan, and shall include without limitation all of the Estate Claims described below.  In reserving, retaining, and preserving Estate Claims against any named Person or category of Persons, it is the intent of this Plan to so reserve, retain, and preserve any and all Estate Claim against each such Person or category of Persons, including all such Estate Claims pursuant to any applicable common law, based on any contract or agreement or based upon any law, statute or regulation of any political entity, including the United States and any state or political subdivision thereof, as well as all applicable remedies, whether legal or equitable.  Without limiting the generality of the foregoing, the reservation, retention, and preservation of Estate Claims against any Person, and the term "<u>Estate Claims</u>," shall encompass all Estate Claims against any such Person, including without limitation, all such Estate Claims for breach of contract, all rights to enforce any contract, any form of estoppel, fraud, constructive fraud, abuse of process, malicious prosecution, defamation, libel, slander, conversion, trespass, intentional infliction of emotional distress or other harm, negligence, gross negligence, breach of any duty owed under either applicable law or any contract, breach of any fiduciary duty or duty of loyalty or due care, aiding and/or abetting breach of fiduciary duty, aiding and/or abetting breach of duty of loyalty or due care, alter ego, veil piercing, self-dealing, usurpation of corporate opportunity, ultra vires, turnover of Estate Assets, unauthorized use of Estate Assets, including intellectual property rights or Assets owned by the Debtors or Chapter 11 Trustee, quantum merit, tortious interference, duress, unconscionability, undue influence, and unjust enrichment, as well as any cause of action for conspiracy to commit any unlawful act, aiding and/or abetting any such unlawful act, or assisting, encouraging, and/or participating in any such unlawful act, or claims arising from or relating to the filing of the involuntary bankruptcy petitions against the Debtors.

3.    <u>Highland Claims</u>.  All Estate Claims against Highland are reserved, retained and preserved for the benefit of the Estate and Reorganized Debtor, including without limitation all such Estate Claims asserted by the Chapter 11 Trustee in Adversary Proceeding No. 18-03078-sgj (the "<u>Highland Adversary</u>") and Adversary Proceeding No. 18-03212-sgj (the "<u>Trustee's Adversary</u>").  The Estate Claims against Highland shall include all Estate Claims set forth in paragraph 2 above, including without limitation, the following:

(a)    All such Claims asserted by the Chapter 11 Trustee or Estate in, or which could be asserted based on the facts or transactions alleged in, the Highland Adversary;

(b)    All such Claims asserted by the Chapter 11 Trustee or Estate in, or which could be asserted based on the facts or transactions alleged in, the Trustee's Adversary;

(c)    All such Claims and Defenses asserted by the Chapter 11 Trustee or Estate, or which could be asserted by the Chapter 11 Trustee or Estate, based on the facts or transactions alleged in any other adversary proceedings or Claim Objections filed by the Chapter 11 Trustee or Estate;

      (d)     All Avoidance Actions against Highland, including any claims to avoid and recover amounts transferred by the Debtors to Highland under the Shared Services Agreement or Sub-Advisory Agreement;

      (e)     All Claims for breach of the Shared Services Agreement or Sub-Advisory Agreement;

      (f)     All Claims against Highland for amounts paid by the Debtors to Highland under the Shared Services Agreement and Sub-Advisory Agreement, including any Claim that Highland overcharged Acis LP for services under such agreements, charged excessive fees in violation of Acis LP's limited partnership agreement and/or Acis GP's limited liability company agreement, and/or that the Shared Services Agreement and Sub-Advisory Agreement or any related or predecessor agreements are void or voidable based on ultra vires or any other theories of avoidance and recovery, including turnover, conversion and Avoidance Actions under the Bankruptcy Code;

      (g)     All Claims for breach of the PMAs or the Indentures;

      (h)     All Claims for breach of fiduciary duty or duty of loyalty or due care owed to the Debtors or Chapter 11 Trustee;

      (i)     All Claims for aiding and/or abetting breach of fiduciary duty, breach of duty loyalty or due care, or any other unlawful act;

      (j)     All Clams for usurpation of a corporate opportunity belonging to either of the Debtors, including in relation to Acis CLO 2017-7, Ltd and any other Acis CLOs;

      (k)     All claims for tortious interference, including in relation to Universal-Investment-Luxembourg S.A. and BayVK R2 Lux S.A., SICAV-FIS;

      (l)     All Claims against Highland for the turnover of Estate Assets, including Estate property that the Chapter 11 Trustee may use, sell or lease under section 363 of the Bankruptcy Code including, without limitation, any intellectual property rights or Assets owned by the Debtors or Estate, as well as the turnover of any books, documents, records and papers relating to the Debtors' property or financial affairs;

      (m)     All Claims against Highland for the unauthorized use of Estate Assets including, without limitation, any intellectual property rights or Assets owned by the Debtors or Estate;

      (n)     All Claims, rights or remedies for Equitable Subordination or Recharacterization of any Claim by Highland against the Debtors, Chapter 11 Trustee, or Estate;

      (o)     All Claims based on alter ego or rights to pierce the corporate veil of Acis LP as to any Person, including as against Highland or any Affiliates thereof, James D. Dondero, Mark K. Okada, or any other officers, directors, equity interest holders, or Persons otherwise in control of Acis LP;

      (p)     All Claims based on alter ego or rights to pierce the corporate veil of Highland as to any Person, including as against any Affiliates of Highland, James D. Dondero, Mark K. Okada, or any other officers, directors, equity interest holders, or Persons otherwise in

Case 18-30264-sgj11 Doc 1312-2 Filed 09/05/21 Entered 09/05/21 13:08:29 Page 87 of 230
Case 18-30264-sgj11 Doc 1312-2 Filed 09/05/21 Entered 09/05/21 13:08:29 Page 96 of 230
230

control of Highland, and,

    (q)    All Claims for conspiracy to commit any unlawful act, aiding and/or abetting any such unlawful act, or assisting, encouraging, and/or participating in any such unlawful act.

    4.    <u>HCLOF Claims</u>.  All Estate Claims against HCLOF are reserved, retained and preserved for the benefit of the Estate and Reorganized Debtor, including without limitation all such Estate Claims asserted by the Chapter 11 Trustee in the Highland Adversary and the Trustee's Adversary.  The Estate Claims against HCLOF shall include all Estate Claims set forth in paragraph 2 above, including without limitation, the following:

    (a)    All such Claims against HCLOF asserted by the Chapter 11 Trustee or Estate in, or which could be asserted based on the facts or transactions alleged in, the Highland Adversary;

    (b)    All such Claims against HCLOF asserted by the Chapter 11 Trustee or Estate in, or which could be asserted based on the facts or transactions alleged in, the Trustee's Adversary;

    (c)    All such Claims and Defenses asserted by the Chapter 11 Trustee or Estate, or which could be asserted by the Chapter 11 Trustee or Estate, based on the facts or transactions alleged in any other adversary proceedings or Claim Objections filed by the Chapter 11 Trustee or Estate;

    (d)    All Avoidance Actions against HCLOF;

    (e)    All Claims for breach of the PMAs or the Indentures;

    (f)    All Claims for breach of fiduciary duty or duty of loyalty or due care owed to the Debtors or Chapter 11 Trustee;

    (g)    All Claims for aiding and/or abetting breach of fiduciary duty, breach of duty loyalty or due care, or any other unlawful act;

    (h)    All Clams for usurpation of a corporate opportunity belonging to either of the Debtors, including in relation to Acis CLO 2017-7, Ltd and any other Acis CLOs;

    (i)    All Claims against HCLOF for the turnover of Estate Assets, including Estate property that the Chapter 11 Trustee may use, sell or lease under section 363 of the Bankruptcy Code including, without limitation, any intellectual property rights or Assets owned by the Debtors or Estate, as well as the turnover of any books, documents, records and papers relating to the Debtors' property or financial affairs;

    (j)    All Claims against HCLOF for the unauthorized use of Estate Assets including, without limitation, any intellectual property rights or Assets owned by the Debtors or Estate;

    (k)    All Claims, rights or remedies for Equitable Subordination or Recharacterization of any Claim by HCLOF against the Debtors, Chapter 11 Trustee, or Estate;

    (l)    All Claims based on alter ego or rights to pierce the corporate veil of

HCLOF as to any Person, including as against any Affiliates of HCLOF or Highland, William Scott, Heather Bestwick, or any other officers, directors, equity interest holders, or Persons otherwise in control of HCLOF; and,

(m)     All Claims for conspiracy to commit any unlawful act, aiding and/or abetting any such unlawful act, or assisting, encouraging, and/or participating in any such unlawful act.

5.     <u>Highland HCF Advisor, Ltd. Claims</u>. All Estate Claims against Highland HCF Advisor, Ltd. ("<u>Highland HCF</u>") are reserved, retained and preserved for the benefit of the Estate and Reorganized Debtor, including without limitation all such Estate Claims asserted by the Chapter 11 Trustee in the Highland Adversary. The Estate Claims against Highland HCF shall include all Estate Claims set forth in paragraph 2 above, including without limitation, the following:

(a)     All such Claims against Highland HCF asserted by the Chapter 11 Trustee or Estate in, or which could be asserted based on the facts or transactions alleged in, the Highland Adversary;

(b)     All such Claims against Highland HCF asserted by the Chapter 11 Trustee or Estate in, or which could be asserted based on the facts or transactions alleged in, the Trustee's Adversary;

(c)     All such Claims and Defenses asserted by the Chapter 11 Trustee or Estate, or which could be asserted by the Chapter 11 Trustee or Estate, based on the facts or transactions alleged in any other adversary proceedings or Claim Objections filed by the Chapter 11 Trustee or Estate;

(d)     All Avoidance Actions against Highland HCF;

(e)     All Claims for breach of fiduciary duty or duty of loyalty or due care owed to the Debtors or Chapter 11 Trustee;

(f)     All Claims for aiding and/or abetting breach of fiduciary duty, breach of duty loyalty or due care, or any other unlawful act;

(g)     All Clams for usurpation of a corporate opportunity belonging to either of the Debtors, including in relation to Acis CLO 2017-7, Ltd and any other Acis CLOs;

(h)     All Claims against Highland HCF for the turnover of Estate Assets, including Estate property that the Chapter 11 Trustee may use, sell or lease under section 363 of the Bankruptcy Code including, without limitation, any intellectual property rights or Assets owned by the Debtors or Estate, as well as the turnover of any books, documents, records and papers relating to the Debtors' property or financial affairs;

(i)     All Claims against Highland HCF for the unauthorized use of Estate Assets including, without limitation, any intellectual property rights or Assets owned by the Debtors or Estate;

(j)     All Claims, rights or remedies for Equitable Subordination or Recharacterization of any Claim by Highland HCF against the Debtors, Chapter 11 Trustee, or Estate;

(k)     All Claims based on alter ego or rights to pierce the corporate veil of Highland HCF as to any Person, including as against any Affiliates of Highland HCF or Highland, or any other officers, directors, equity interest holders, or Persons otherwise in control of Highland HCF; and,

(l)     All Claims for conspiracy to commit any unlawful act, aiding and/or abetting any such unlawful act, or assisting, encouraging, and/or participating in any such unlawful act.

6.     <u>Highland CLO Management, Ltd. Claims</u>.  All Estate Claims against Highland CLO Management, Ltd. ("<u>Highland CLOM</u>") are reserved, retained and preserved for the benefit of the Estate and Reorganized Debtor, including without limitation all such Estate Claims asserted by the Chapter 11 Trustee in the Highland Adversary.  The Estate Claims against Highland CLOM shall include all Estate Claims set forth in paragraph 2 above, including without limitation the following:

(a)     All such Claims against Highland CLOM asserted by the Chapter 11 Trustee or Estate in, or which could be asserted based on the facts or transactions alleged in, the Highland Adversary;

(b)     All Claims against Highland CLOM asserted by the Chapter 11 Trustee or Estate in, or which could be asserted based on the facts or transactions alleged in, the Trustee's Adversary;

(c)     All such Claims and Defenses asserted by the Chapter 11 Trustee or Estate, or which could be asserted by the Chapter 11 Trustee or Estate, based on the facts or transactions alleged in any other adversary proceedings or Claim Objections filed by the Chapter 11 Trustee or Estate;

(d)     All Avoidance Actions against Highland CLOM;

(e)     All Claims for breach of fiduciary duty or duty of loyalty or due care owed to the Debtors or Chapter 11 Trustee;

(f)     All Claims for aiding and/or abetting breach of fiduciary duty, breach of duty loyalty or due care, or any other unlawful act;

(g)     All Clams for usurpation of a corporate opportunity belonging to either of the Debtors, including in relation to Acis CLO 2017-7, Ltd and any other Acis CLOs;

(h)     All Claims against Highland CLOM for the turnover of Estate Assets, including Estate property that the Chapter 11 Trustee may use, sell or lease under section 363 of the Bankruptcy Code including, without limitation, any intellectual property rights or Assets owned by the Debtors or Estate, as well as the turnover of any books, documents, records and papers relating to the Debtors' property or financial affairs;

(i)     All Claims against Highland CLOM for the unauthorized use of Estate Assets including, without limitation, any intellectual property rights or Assets owned by the Debtors or Estate;

(j)     All Claims, rights or remedies for Equitable Subordination or Recharacterization of any Claim by Highland CLOM against the Debtors, Chapter 11 Trustee, or

Estate;

(k)     All Claims based on alter ego or rights to pierce the corporate veil of Highland CLOM as to any Person, including as against any Affiliates of Highland CLOM or Highland, or any other officers, directors, equity interest holders, or Persons otherwise in control of Highland CLOM; and,

(l)     All Claims for conspiracy to commit any unlawful act, aiding and/or abetting any such unlawful act, or assisting, encouraging, and/or participating in any such unlawful act.

7.     <u>CLO Holdco, Ltd. Claims</u>.  All Estate Claims against CLO Holdco, Ltd. ("<u>CLO Holdco</u>") are reserved, retained and preserved for the benefit of the Estate and Reorganized Debtor, including without limitation all such Estate Claims asserted by the Chapter 11 Trustee in the Trustee's Adversary.  The Estate Claims against CLO Holdco shall include all Estate Claims set forth in paragraph 2 above, including without limitation, the following:

(a)     All such Claims against CLO Holdco asserted by the Chapter 11 Trustee or Estate in, or which could be asserted based on the facts or transactions alleged in, the Highland Adversary;

(b)     All such Claims against CLO Holdco asserted by the Chapter 11 Trustee or Estate in, or which could be asserted based on the facts or transactions alleged in, the Trustee's Adversary;

(c)     All such Claims and Defenses asserted by the Chapter 11 Trustee or Estate, or which could be asserted by the Chapter 11 Trustee or Estate, based on the facts or transactions alleged in any other adversary proceedings or Claim Objections filed by the Chapter 11 Trustee or Estate;

(d)     All Avoidance Actions against CLO Holdco;

(e)     All Claims for breach of fiduciary duty or duty of loyalty or due care owed to the Debtors or Chapter 11 Trustee;

(f)     All Claims for aiding and/or abetting breach of fiduciary duty, breach of duty loyalty or due care, or any other unlawful act;

(g)     All Clams for usurpation of a corporate opportunity belonging to either of the Debtors, including in relation to Acis CLO 2017-7, Ltd and any other Acis CLOs;

(h)     All Claims against CLO Holdco for the turnover of Estate Assets, including Estate property that the Chapter 11 Trustee may use, sell or lease under section 363 of the Bankruptcy Code including, without limitation, any intellectual property rights or Assets owned by the Debtors or Estate, as well as the turnover of any books, documents, records and papers relating to the Debtors' property or financial affairs;

(i)     All Claims against CLO Holdco for the unauthorized use of Estate Assets including, without limitation, any intellectual property rights or Assets owned by the Debtors or Estate;

(j)     All Claims, rights or remedies for Equitable Subordination or Recharacterization of any Claim by Highland against the Debtors, Chapter 11 Trustee, or Estate;

(k)     All Claims based on alter ego or rights to pierce the corporate veil of CLO Holdco as to any Person, including as against any Affiliates of CLO Holdco or Highland, or any other officers, directors, equity interest holders, or Persons otherwise in control of CLO Holdco; and,

(l)     All Claims for conspiracy to commit any unlawful act, aiding and/or abetting any such unlawful act, or assisting, encouraging, and/or participating in any such unlawful act.

8.     Neutra, Ltd. Claims.  All Estate Claims against Neutra, Ltd. ("Neutra") are reserved, retained and preserved for the benefit of the Estate and Reorganized Debtor, including without limitation all such Estate Claims asserted by the Chapter 11 Trustee in the Trustee's Adversary.  The Estate Claims against Neutra shall include all Estate Claims set forth in paragraph 2 above, including without limitation the following:

(a)     All such Claims against Neutra asserted by the Chapter 11 Trustee or Estate in, or which could be asserted based on the facts or transactions alleged in, the Highland Adversary;

(b)     All such Claims against Neutra asserted by the Chapter 11 Trustee or Estate in, or which could be asserted based on the facts or transactions alleged in, the Trustee's Adversary;

(c)     All such Claims and Defenses asserted by the Chapter 11 Trustee or Estate, or which could be asserted by the Chapter 11 Trustee or Estate, based on the facts or transactions alleged in any other adversary proceedings or Claim Objections filed by the Chapter 11 Trustee or Estate;

(d)     All Avoidance Actions against Neutra;

(e)     All Claims for breach of fiduciary or duty of loyalty or due care owed to the Debtors or Chapter 11 Trustee;

(f)     All Claims for aiding and/or abetting breach of fiduciary duty, breach of duty loyalty or due care, or any other unlawful act;

(g)     All Clams for usurpation of a corporate opportunity belonging to either of the Debtors, including in relation to Acis CLO 2017-7, Ltd and any other Acis CLOs;

(h)     All Claims against Neutra for the turnover of Estate Assets, including Estate property that the Chapter 11 Trustee may use, sell or lease under section 363 of the Bankruptcy Code including, without limitation, any intellectual property rights or Assets owned by the Debtors or Estate, as well as the turnover of any books, documents, records and papers relating to the Debtors' property or financial affairs;

(i)     All Claims against Neutra for the unauthorized use of Estate Assets including, without limitation, any intellectual property rights or Assets owned by the Debtors or Estate;

(j)      All Claims, rights or remedies for Equitable Subordination or Recharacterization of any Claim by Neutra against the Debtors, Chapter 11 Trustee, or Estate;

(k)      All Claims based on alter ego or rights to pierce the corporate veil of Acis LP as to any Person, including as against Neutra, Highland, or any Affiliates thereof, James D. Dondero, Mark K. Okada, or any other officers, directors, equity interest holders, or Persons otherwise in control of Acis LP;

(l)      All Claims based on alter ego or rights to pierce the corporate veil of Neutra as to any Person, including as against any Affiliates of Neutra or Highland, or any other officers, directors, equity interest holders, or Persons otherwise in control of Neutra; and,

(m)      All Claims for conspiracy to commit any unlawful act, aiding and/or abetting any such unlawful act, or assisting, encouraging, and/or participating in any such unlawful act.

9.      <u>Claims against Issuers, Co-Issuers and Indenture Trustee</u>.  All Estate Claims against CLO-3, CLO-4, CLO-5, and CLO-6 (collectively, the "<u>Issuers</u>"), Acis CLO 2014-3 LLC, Acis CLO 2014-4 LLC, Acis CLO 2014-5 LLC, and Acis CLO 2015-6 LLC (collectively, the "<u>Co-Issuers</u>"), and the Indenture Trustee are reserved, retained and preserved for the benefit of the Estate and Reorganized Debtor, including without limitation all such Estate Claims asserted by the Chapter 11 Trustee in the Trustee's Adversary.  The Estate Claims against the Issuers, Co-Issuers and/or Indenture Trustee shall include all Estate Claims set forth in paragraph 2 above, including without limitation the following:

(a)      All such Claims against the Issuers, Co-Issuers, and/or Indenture Trustee asserted by the Chapter 11 Trustee or Estate in, or which could be asserted based on the facts or transactions alleged in, the Highland Adversary;

(b)      All such Claims against the Issuers, Co-Issuers, and/or Indenture Trustee asserted by the Chapter 11 Trustee or Estate in, or which could be asserted based on the facts or transactions alleged in, the Trustee's Adversary;

(c)      All such Claims and Defenses asserted by the Chapter 11 Trustee or Estate, or which could be asserted by the Chapter 11 Trustee or Estate, based on the facts or transactions alleged in any other adversary proceedings or Claim Objections filed by the Chapter 11 Trustee or Estate;

(d)      All Avoidance Actions against the Issuers, Co-Issuers and/or Indenture Trustee;

(e)      All Claims for breach of the Indentures, PMAs or any other agreements between Acis LP and the Issuers, Co-Issuers, and/or Indenture Trustee;

(f)      All Claims for breach of fiduciary duty or duty of loyalty or due care owed to the Debtors or Chapter 11 Trustee;

(g)      All Claims for aiding and/or abetting breach of fiduciary duty, breach of duty loyalty or due care, or any other unlawful act;

(h)      All Clams for usurpation of a corporate opportunity belonging to either of the Debtors, including in relation to Acis CLO 2017-7, Ltd and any other Acis CLOs;

(i)     All Claims against the Issuers, Co-Issuers and/or Indenture Trustee for the turnover of Estate Assets, including Estate property that the Chapter 11 Trustee may use, sell or lease under section 363 of the Bankruptcy Code including, without limitation, any intellectual property rights or Assets owned by the Debtors or Estate, as well as the turnover of any books, documents, records and papers relating to the Debtors' property or financial affairs;

(j)     All Claims against the Issuers, Co-Issuers and/or Indenture Trustee for the unauthorized use of Estate Assets including, without limitation, any intellectual property rights or Assets owned by the Debtors or Estate;

(k)     All Claims, rights or remedies for Equitable Subordination or Recharacterization of any Claim by the Issuers or Co-Issuers against the Debtors, Chapter 11 Trustee, or Estate; and,

(l)     All Claims for conspiracy to commit any unlawful act, aiding and/or abetting any such unlawful act, or assisting, encouraging, and/or participating in any such unlawful act.

10.     <u>Highland Affiliate Claims</u>.  All Estate Claims against any Affiliates of Highland are reserved, retained and preserved for the benefit of the Estate and Reorganized Debtor, including without limitation all such Estate Claims asserted by the Chapter 11 Trustee in the Highland Adversary and the Trustee's Adversary.  The Estate Claims against any Affiliates of Highland shall include all Estate Claims set forth in paragraph 2 above, including without limitation the following:

(a)     All such Claims against any Highland Affiliate asserted by the Chapter 11 Trustee or Estate in, or which could be asserted based on the facts or transactions alleged in, the Highland Adversary;

(b)     All such Claims against any Highland Affiliate asserted by the Chapter 11 Trustee or Estate in, or which could be asserted based on the facts or transactions alleged in, the Trustee's Adversary;

(c)     All such Claims and Defenses asserted by the Chapter 11 Trustee or Estate, or which could be asserted by the Chapter 11 Trustee or Estate, based on the facts or transactions alleged in any other adversary proceedings or Claim Objections filed by the Chapter 11 Trustee or Estate;

(d)     All Avoidance Actions against any Highland Affiliate;

(e)     All Claims for breach of fiduciary duty or duty of loyalty or due care owed to the Debtors or Chapter 11 Trustee;

(f)     All Claims for aiding and/or abetting breach of fiduciary duty, breach of duty loyalty or due care, or any other unlawful act;

(g)     All Clams for usurpation of a corporate opportunity belonging to either of the Debtors, including in relation to Acis CLO 2017-7, Ltd and any other Acis CLOs;

(h)     All Claims against any Highland Affiliate for the turnover of Estate Assets, including Estate property that the Chapter 11 Trustee may use, sell or lease under section 363 of the Bankruptcy Code including, without limitation, any intellectual property rights or Assets

owned by the Debtors or Estate, as well as the turnover of any books, documents, records and papers relating to the Debtors' property or financial affairs;

(i)　　All Claims against any Highland Affiliate for the unauthorized use of Estate Assets including, without limitation, any intellectual property rights or Assets owned by the Debtors or Estate;

(j)　　All Claims, rights or remedies for Equitable Subordination or Recharacterization of any Claim by any Highland Affiliate against the Debtors, Chapter 11 Trustee, or Estate;

(k)　　All Claims based on alter ego or rights to pierce the corporate veil of Acis LP as to any Person, including as against Highland, Neutra, or any Affiliates thereof, James D. Dondero, Mark K. Okada, or any other officers, directors, equity interest holders, or Persons otherwise in control of Acis LP;

(l)　　All Claims based on alter ego or rights to pierce the corporate veil of any Highland Affiliate as to any Person, including as against any other Affiliates of Highland or any officers, directors, equity interest holders, or Persons otherwise in control of any Highland Affiliates; and,

(m)　　All Claims for conspiracy to commit any unlawful act, aiding and/or abetting any such unlawful act, or assisting, encouraging, and/or participating in any such unlawful act.

11.　　Dondero Claims.  All Estate Claims as defined in paragraph 2 above against James D. Dondero, individually, are hereby reserved, retained and preserved for the benefit of the Estate and Reorganized Debtor, including without limitation all Estate Claims against James D. Dondero for fraud, constructive fraud, breach of fiduciary duty, breach of duty of loyalty or due care, aiding and abetting breach of fiduciary duty, aiding and abetting breach of duty of loyalty or due care, self-dealing, ultra vires, conversion, usurpation of corporate opportunity, including in relation to Acis CLO 2017-7, Ltd and any other Acis CLOs, tortious interference, including in relation to Universal-Investment-Luxembourg S.A. and BayVK R2 Lux S.A., SICAV-FIS, conflict of interest, negligence, gross negligence, all Avoidance Actions, breach of contract, breach of the Shared Services Agreement, breach of the Sub-Advisory Agreement, breach of the Debtors' limited partnership agreement or limited liability company agreement, conspiracy to commit any unlawful act, aiding and abetting any unlawful act, and assisting, encouraging, and/or participating in any unlawful act, as well as any Claim to pierce the corporate veil of any entity to hold James D. Dondero individually liable.

12.　　Okada Claims.  All Estate Claims as defined in paragraph 2 above against Mark K. Okada, individually, are hereby reserved, retained and preserved for the benefit of the Estate and Reorganized Debtor, including without limitation all such Estate Claims against Mark K. Okada for fraud, constructive fraud, breach of fiduciary duty, breach of duty of loyalty or due care, aiding and abetting breach of fiduciary duty, self-dealing, ultra vires, conversion, usurpation of corporate opportunity, including in relation to Acis CLO 2017-7, Ltd and any other Acis CLOs, tortious interference, including in relation to Universal-Investment-Luxembourg S.A. and BayVK R2 Lux S.A., SICAV-FIS, conflict of interest, negligence, gross negligence, all Avoidance Actions, breach of contract, breach of the Shared Services Agreement, breach of the Sub-Advisory Agreement, breach of the Debtors' limited partnership agreement or limited liability company agreement, conspiracy to commit any unlawful act, aiding and abetting any

unlawful act, and assisting, encouraging, and participating in any unlawful act, as well as any Claim to pierce the corporate veil of any entity to hold Mark K. Okada individually liable.

13. <u>Preference Claims</u>. All Avoidance Actions pursuant to section 547 of the Bankruptcy Code against any Person are hereby reserved, retained and preserved for the benefit of the Estate and Reorganized Debtor for any payment made to any Person by either of the Debtors within ninety (90) days of the Petition Date (which was January 30, 2018), or made by either of the Debtors to any insider within one (1) year of the Petition Date. A non-exhaustive list of Persons who are believed to have received payments from either of the Debtors during the 90-day preference period, and the one-year preference period for Insiders, is attached to this **Exhibit "A"** as **Schedule "1"**. The Plan reserves, retains and preserves for the benefit of the Estate and Reorganized Debtor all potential Claims arising out of or relating to the transfers reflected in **Schedule "1"**, including all Avoidance Actions pursuant to section 547 of the Bankruptcy Code. All rights and remedies are also reserved. retained and preserved with respect to the transfers reflected in **Schedule "1"** pursuant to section 550 of the Bankruptcy Code.

**Schedule "1"** reflects transfers made by the Debtors during the 90 days prior to the Petition Date and transfers made by the Debtors to any insiders within one (1) year of the Petition Date. While the Plan reserves, retains and preserves all Avoidance Actions relating to the transfers reflected in **Schedule "1"**, the Chapter 11 Trustee recognizes that certain of these transfers may not constitute a preferential transfer pursuant to section 547(b) of the Bankruptcy Code as a transfer made in the ordinary course of business transactions or based upon new value subsequently given by the transferee. Consequently, the listing of a payment on **Schedule "1"** does not necessarily mean that a transferee will ever be sued to avoid and recover the payment, the transfer, or the value thereof, but only that the Plan reserves, retains and preserves all rights (including Avoidance Actions) as to that payment.

14. <u>Claims Against Officers, Managers and Members</u>. All Estate Claims as defined in paragraph 2 above are hereby reserved, retained and preserved for the benefit of the Estate and Reorganized Debtor against all present and past officers, employees, members and managers of the Debtors, including all such Estate Causes of Action based on breach of fiduciary duty, aiding and abetting breach of fiduciary duty, breach of duty of loyalty or due care, aiding and abetting breach of duty of loyalty or due care, self-dealing, usurpation of corporate opportunity, gross negligence or conspiracy. Without limiting the generality of the foregoing, this shall include all D&O Claims as against any present or former officer, director, employee, member, manager, or partner.

15. <u>Retention of Claims Against Specific Persons or Categories of Persons</u>. In addition to the foregoing, all Estate Claims as defined in paragraph 2 above are hereby reserved, retained and preserved for the benefit of the Estate and Reorganized Debtor against the following Persons:

(a) William Scott;

(b) Heather Bestwick;

(c) Any other Person who may be so named at a later date by the Reorganized Debtor.

Case 18-30264-sgj11 Doc 1343-2 Filed 09/05/21 Entered 09/05/21 13:08:29 Page 96 of 230
Case 18-30264-sgj11 Doc 1341 Filed 09/05/21 Entered 09/05/21 13:08:29 Page 96 of 229
230

16. <u>Counterclaims</u>. All Estate Claims as defined in paragraph 2 above are reserved, retained and preserved for the benefit of the Estate and Reorganized Debtor both as a basis for an affirmative recovery against the Person against whom such Claims are asserted and as a counterclaim or offset against any Person who asserts a Claim against the Estate or Reorganized Debtor.

17. <u>Piercing the Corporate Veil</u>. With respect to all Estate Claims against any Person, all rights to pierce or ignore the corporate veil are hereby reserved, retained and preserved for the benefit of the Estate and the Reorganized Debtor. Without limiting the generality of the foregoing, this shall include: (a) any right to pierce the corporate veil, including reverse piercing, on any theory or basis, including alter ego or any theory of sham to perpetrate a fraud, and (b) any Claim or basis to pierce the corporate veil of any entity with respect to establishing personal liability against James D. Dondero or Mark K. Okada.

18. <u>Avoidance Actions</u>. All Avoidance Actions are hereby reserved, retained and preserved as to all Persons. The reservation, retention and preservation of such Avoidance Actions shall include the reservation, retention and preservation for the benefit of the Estate and Reorganized Debtor of all rights and remedies pursuant to section 550 of the Bankruptcy Code.

19. <u>Estate Defenses</u>. All Estate Defenses are hereby reserved, retained and preserved in favor of the Estate and Reorganized Debtor as against any Person asserting any Claim against the Estate. This includes asserting all Estate Claims as an offset to, or counterclaim or right of recoupment against, any Person asserting a Claim against the Estate. All defenses and affirmative defenses pursuant to applicable law are hereby reserved, retained and preserved for the benefit of the Estate and the Reorganized Debtor, including without limitation, accord and satisfaction, assumption of risk, contributory negligence, duress, estoppel, failure of consideration, fraud, illegality, laches, license, payment, release, *res judicata*, collateral estoppel, statute of frauds, statute of limitations or repose, discovery rule, adverse domination doctrine or similar doctrines, set off, recoupment, waiver, and all other defenses to Claims under the Bankruptcy Code, including under sections 502(b)(4) and 502(d).

20. <u>Equitable Subordination</u>. All rights or remedies for Equitable Subordination are hereby reserved, retained and preserved in favor of the Estate and Reorganized Debtor against any Person asserting any Claim against the Estate, including all such rights or remedies pursuant to section 510(c) of the Bankruptcy Code. Without limiting the generality of the foregoing, this shall include all rights and remedies to Equitable Subordination as to any Claim asserted by Highland, any Affiliates of Highland, or any officers, directors, employees or equity interest owners of the Debtors, Highland, or any Affiliates thereof.

21. <u>Recharacterization</u>. All rights or remedies to recharacterize any Claim as an equity interest in either of the Debtors are hereby reserved, retained and preserved in favor of the Estate and Reorganized Debtor against any Person asserting any Claim against the Estate. Without limiting the generality of the foregoing, this shall include all rights and remedies to recharacterize any Claim asserted by Highland, any Affiliates of Highland, or any officers, directors, employees or equity interest owners of the Debtors, Highland, or any Affiliates thereof.

Case 18-30264-sgj11 Doc 660 Filed 10/25/18 Entered 10/25/18 18:23:08 Page 48 of 62
Case 18-30264-sgj11 Doc 834 Filed 09/05/21 Entered 09/05/21 12:08:29 Page 97 of 229
230

Second Amended Joint Plan for Acis Capital Management, LP and Acis Capital Management GP, LLC
Schedule 1 to Exhibit A to

| NAME | ADDRESS | DATE OF PAYMENT | PAYMENT AMOUNT | REASON FOR PAYMENT ON SCHEDULES |
|---|---|---|---|---|
| **Payments within 90 Days of Petition Date** | | | | |
| Highland Capital Management, LP | 300 Crescent Court, Ste. 700 Dallas, TX 75208 | 11/2/2017 | $234,013.63 | Services |
| Highland Capital Management, LP | 300 Crescent Court, Ste. 700 Dallas, TX 75208 | 11/3/2017 | $941,958.57 | Services |
| Highland Capital Management, LP | 300 Crescent Court, Ste. 700 Dallas, TX 75208 | 12/8/2017 | $89,655.14 | Services |
| David Simek | 31 Woodacres Road Brookville, NY 11545 | 11/15/2017 | $2,068.13 | Services |
| David Simek | 31 Woodacres Road Brookville, NY 11545 | 11/30/2017 | $24,266.71 | Services |
| David Simek | 31 Woodacres Road Brookville, NY 11545 | 12/12/2017 | $1,718.79 | Services |
| David Simek | 31 Woodacres Road Brookville, NY 11545 | 12/29/2017 | $25,000.00 | Services |
| FINRA | 1735 K Street, NW Washington, DC 20006 | 11/22/2017 | $70.00 | Suppliers or Vendors |
| Highland CLO Management, Ltd. | PO Box 309, Ugland House Grand Cayman, KY1-1104, Cayman Islands | 12/19/2017 | $2,830,459.22 | Services |
| **Payments to Insiders within One Year of Petition Date** | | | | |
| Highland Capital Management, LP | 300 Crescent Court, Ste. 700 Dallas, TX 75208 | 2/1/2017 | $976,688.47 | Contractual Payment |
| Highland Capital Management, LP | 300 Crescent Court, Ste. 700 Dallas, TX 75208 | 2/1/2017 | $1,096,033.37 | Services |
| Highland Capital Management, LP | 300 Crescent Court, Ste. 700 Dallas, TX 75208 | 2/2/2017 | $3,574.80 | Expense Reimbursement |
| Highland Capital Management, LP | 300 Crescent Court, Ste. 700 Dallas, TX 75208 | 2/14/2017 | $67.44 | Expense Reimbursement |
| Highland Capital Management, LP | 300 Crescent Court, Ste. 700 Dallas, TX 75208 | 4/17/2017 | $315,574.30 | Services |
| Highland Capital Management, LP | 300 Crescent Court, Ste. 700 Dallas, TX 75208 | 4/18/2017 | $438,497.51 | Services |

Second Amended Joint Plan for Acis Capital Management, LP and Acis Capital Management GP, LLC

Schedule 1 to Exhibit A to

| NAME | ADDRESS | DATE OF PAYMENT | PAYMENT AMOUNT | REASON FOR PAYMENT ON SCHEDULES |
|------|---------|-----------------|----------------|--------------------------------|
| Highland Capital Management, LP | 300 Crescent Court, Ste. 700 Dallas, TX 75208 | 4/18/2017 | $375,855.01 | Contractual Payment |
| Highland Capital Management, LP | 300 Crescent Court, Ste. 700 Dallas, TX 75208 | 4/19/2017 | $330,249.69 | Services |
| Highland Capital Management, LP | 300 Crescent Court, Ste. 700 Dallas, TX 75208 | 5/1/2017 | $974,426.41 | Services |
| Highland Capital Management, LP | 300 Crescent Court, Ste. 700 Dallas, TX 75208 | 5/31/2017 | $2,809,518.47 | Unsecured loan repayments including interest |
| Highland Capital Management, LP | 300 Crescent Court, Ste. 700 Dallas, TX 75208 | 5/31/2017 | $581,036.15 | Services |
| Highland Capital Management, LP | 300 Crescent Court, Ste. 700 Dallas, TX 75208 | 7/18/2017 | $373,167.08 | Contractual Payment |
| Highland Capital Management, LP | 300 Crescent Court, Ste. 700 Dallas, TX 75208 | 8/1/2017 | $971,603.02 | Contractual Payment |
| Highland Capital Management, LP | 300 Crescent Court, Ste. 700 Dallas, TX 75208 | 8/7/2017 | $1,339,422.12 | Services |
| Highland Capital Management, LP | 300 Crescent Court, Ste. 700 Dallas, TX 75208 | 8/16/2017 | $53.41 | Expense Reimbursement |
| Highland Capital Management, LP | 300 Crescent Court, Ste. 700 Dallas, TX 75208 | 10/18/2017 | $372,872.82 | Contractual Payment |
| Highland Capital Management, LP | 300 Crescent Court, Ste. 700 Dallas, TX 75208 | 10/18/2017 | $728,702.26 | Services |
| Highland Capital Management, LP | 300 Crescent Court, Ste. 700 Dallas, TX 75208 | 10/24/2017 | $501,979.18 | Unsecured loan repayments including interest |
| Highland Capital Management, LP | 300 Crescent Court, Ste. 700 Dallas, TX 75208 | 10/25/2017 | $46,648.82 | Expense Reimbursement |
| Highland Capital Management, LP | 300 Crescent Court, Ste. 700 Dallas, TX 75208 | 10/25/2017 | $67,966.85 | Expense Reimbursement |
| Highland Capital Management, LP | 300 Crescent Court, Ste. 700 Dallas, TX 75208 | 11/1/2017 | $967,223.91 | Contractual Payment |

# EXHIBIT B

## TO THIRD AMENDED JOINT PLAN FOR ACIS CAPITAL MANAGEMENT, LP AND ACIS CAPITAL MANAGEMENT GP, LLC

### [EXECUTORY CONTRACTS ASSUMED UNDER THE PLAN]

**EXHIBIT B**

**Executory Contracts and Unexpired Leases**

**to Be Assumed by the Trustee**

| Party | Contract Description | Contract Date | Cure Amount |
|---|---|---|---|
| Acis CLO 2013-1 Chemical Holdings, LLC<br>1209 Orange Street<br>Wilmington, DE 19801 | Limited Liability Company Agreement | October 28, 2016 | $0 |
| Acis CLO 2013-1, Ltd.<br>c/o Estera Trust (f/k/a Appleby Trust)<br>Clifton House 75 Fort St., P.O. Box 1350<br>Grand Cayman, Cayman Islands KY1-1108 | Limited Liability Company Agreement | October 28, 2016 | $0 |
| Acis CLO 2013-1 Ltd.<br>c/o Estera Trust (f/k/a Appleby Trust)<br>Clifton House 75 Fort St., P.O. Box 1350<br>Grand Cayman, Cayman Islands KY1-1108 | Collateral Administration Agreement | March 18, 2013 | $0 |
| U.S. Bank National Association<br>190 S. LaSalle Street, 8th Floor<br>Chicago, IL 60603<br>Attention: Global Corporate Trust –<br>Acis CLO 2013-1 | Collateral Administration Agreement | March 18, 2013 | $0 |
| Acis CLO 2013-1 Ltd.<br>c/o Estera Trust (f/k/a Appleby Trust)<br>Clifton House 75 Fort St., P.O. Box 1350<br>Grand Cayman, Cayman Islands KY1-1108 | Portfolio Management Agreement | March 18, 2013 | $0 |
| Acis CLO 2013-1 Ltd.<br>c/o Estera Trust (f/k/a Appleby Trust)<br>Clifton House 75 Fort St., P.O. Box 1350<br>Grand Cayman, Cayman Islands KY1-1108 | Indenture | March 18, 2013 | $0 |
| Acis CLO 2013-1 LLC<br>850 Library Ave., Suite 204<br>Newark, DE 19711 | Indenture | March 18, 2013 | $0 |

1

**EXHIBIT B**
**Executory Contracts and Unexpired Leases**
**to Be Assumed by the Trustee**

| Party | Contract Description | Contract Date | Cure Amount |
|---|---|---|---|
| U.S. Bank National Association<br>190 S. LaSalle Street, 8th Floor<br>Chicago, IL 60603<br>Attention: Global Corporate Trust –<br>Acis CLO 2013-1 | Indenture | March 18, 2013 | $0 |
| Acis CLO 2013-1 Ltd.<br>c/o Estera Trust (f/k/a Appleby Trust)<br>Clifton House 75 Fort St., P.O. Box 1350<br>Grand Cayman, Cayman Islands KY1-1108 | Supplemental Indenture | February 26, 2014 | $0 |
| Acis CLO 2013-1 LLC<br>850 Library Ave., Suite 204<br>Newark, DE 19711 | Supplemental Indenture | February 26, 2014 | $0 |
| U.S. Bank National Association<br>190 S. LaSalle Street, 8th Floor<br>Chicago, IL 60603<br>Attention: Global Corporate Trust –<br>Acis CLO 2013-1 | Supplemental Indenture | February 26, 2014 | $0 |
| Acis CLO 2013-1, Ltd.<br>c/o Estera Trust (f/k/a Appleby Trust)<br>Clifton House 75 Fort St., P.O. Box 1350<br>Grand Cayman, Cayman Islands KY1-1108 | Governing Documents<br>(Requested from HCM) | -- | $0 |
| Acis CLO 2013-2 Chemical Holdings, LLC<br>1209 Orange Street<br>Wilmington, DE 19801 | Limited Liability Company Agreement<br>(requested from HCM) | -- | $0 |
| Acis CLO 2013-2 Ltd.<br>c/o Estera Trust (f/k/a Appleby Trust)<br>Clifton House 75 Fort St., P.O. Box 1350<br>Grand Cayman, Cayman Islands KY1-1108 | Limited Liability Company Agreement<br>(requested from HCM) | -- | $0 |

2

**EXHIBIT B**
**Executory Contracts and Unexpired Leases**
**to Be Assumed by the Trustee**

| Party | Contract Description | Contract Date | Cure Amount |
|---|---|---|---|
| Acis CLO 2013-2 Ltd.<br>c/o Estera Trust (f/k/a Appleby Trust)<br>Clifton House 75 Fort St., P.O. Box 1350<br>Grand Cayman, Cayman Islands KY1-1108 | Collateral Administration Agreement | October 3, 2013 | $0 |
| The Bank of New York Mellon Trust Co., N.A.<br>601 Travis Street, 16th Floor<br>Houston, Texas 77002<br>Attn: Global Corporate Trust –<br>Acis CLO 2013-2 | Collateral Administration Agreement | October 3, 2013 | $0 |
| Acis CLO 2013-2 Ltd.<br>c/o Estera Trust (f/k/a Appleby Trust)<br>Clifton House 75 Fort St., P.O. Box 1350<br>Grand Cayman, Cayman Islands KY1-1108 | Portfolio Management Agreement | October 3, 2013 | $0 |
| Acis CLO 2013-2 Ltd.<br>c/o Estera Trust (f/k/a Appleby Trust)<br>Clifton House 75 Fort St., P.O. Box 1350<br>Grand Cayman, Cayman Islands KY1-1108 | Indenture | October 3, 2013 | $0 |
| Acis CLO 2013-2 LLC<br>850 Library Ave., Suite 204<br>Newark, DE 19711 | Indenture | October 3, 2013 | $0 |
| The Bank of New York Mellon Trust Co., N.A.<br>601 Travis Street, 16th Floor<br>Houston, Texas 77002<br>Attn: Global Corporate Trust –<br>Acis CLO 2013-2 | Indenture | October 3, 2013 | $0 |
| Acis CLO 2013-2 Ltd.<br>c/o Estera Trust (f/k/a Appleby Trust)<br>Clifton House 75 Fort St., P.O. Box 1350<br>Grand Cayman, Cayman Islands KY1-1108 | Governing Document<br>(requested from HCM) | -- | $0 |

**EXHIBIT B**

**Executory Contracts and Unexpired Leases
to Be Assumed by the Trustee**

| Party | Contract Description | Contract Date | Cure Amount |
|---|---|---|---|
| Acis CLO 2014-3 Chemical Holdings, LLC<br>1209 Orange Street<br>Wilmington, DE 19801 | Limited Liability Company Agreement | October 28, 2016 | $0 |
| Acis CLO 2014-3 Ltd.<br>c/o MaplesFS Limited<br>P.O. Box 1093, Boundary Hall, Cricket Sq<br>Grand Cayman, Cayman Islands KY1-1102 | Limited Liability Company Agreement | October 28, 2016 | $0 |
| Acis CLO 2014-3 Ltd.<br>c/o MaplesFS Limited<br>P.O. Box 1093, Boundary Hall, Cricket Sq<br>Grand Cayman, Cayman Islands KY1-1102 | Collateral Administration Agreement | February 25, 2014 | $0 |
| U.S. Bank National Association<br>190 S. LaSalle Street, 8th Floor<br>Chicago, IL 60603<br>Attention: Global Corporate Trust –<br>Acis CLO 2014-3 | Collateral Administration Agreement | February 25, 2014 | $0 |
| Acis CLO 2014-3 Ltd.<br>c/o MaplesFS Limited<br>P.O. Box 1093, Boundary Hall, Cricket Sq<br>Grand Cayman, Cayman Islands KY1-1102 | Portfolio Management Agreement | February 25, 2014 | $0 |
| Acis CLO 2014-3 Ltd.<br>c/o MaplesFS Limited<br>P.O. Box 1093, Boundary Hall, Cricket Sq<br>Grand Cayman, Cayman Islands KY1-1102 | Indenture | February 25, 2014 | $0 |
| Acis CLO 2014-3 LLC<br>850 Library Ave., Suite 204<br>Newark, DE 19711 | Indenture | February 25, 2014 | $0 |

4

Case 18-30264-sgj11 Doc 660 Filed 10/25/18 Entered 10/25/18 18:23:08 Page 55 of 62
Case 18-30264-sgj11 Doc 830 Filed 02/31/19 Entered 02/31/19 41:42:29 Page 103 of 229
230

**EXHIBIT B**

**Executory Contracts and Unexpired Leases**

**to Be Assumed by the Trustee**

| Party | Contract Description | Contract Date | Cure Amount |
|---|---|---|---|
| U.S. Bank National Association<br>190 S. LaSalle Street, 8th Floor<br>Chicago, IL 60603<br>Attention: Global Corporate Trust –<br>Acis CLO 2014-3 | Indenture | February 25, 2014 | $0 |
| Acis CLO 2014-3 Ltd.<br>c/o MaplesFS Limited<br>P.O. Box 1093, Boundary Hall, Cricket Sq<br>Grand Cayman, Cayman Islands KY1-1102 | Memorandum and Articles of Association<br>of Acis CLO 2014-3 Ltd. | December 24, 2013 | $0 |
| Acis CLO 2014-4 Chemical Holdings, LLC<br>1209 Orange Street<br>Wilmington, DE 19801 | Limited Liability Company Agreement | October 28, 2016 | $0 |
| Acis CLO 2014-4 Ltd.<br>c/o MaplesFS Limited<br>P.O. Box 1093, Boundary Hall, Cricket Sq<br>Grand Cayman, Cayman Islands KY1 -1102 | Limited Liability Company Agreement | October 28, 2016 | $0 |
| Acis CLO 2014-4 Ltd.<br>c/o MaplesFS Limited<br>P.O. Box 1093, Boundary Hall, Cricket Sq<br>Grand Cayman, Cayman Islands KY1 -1102 | Collateral Administration Agreement | June 5, 2014 | $0 |
| U.S. Bank National Association<br>190 S. LaSalle Street, 8th Floor<br>Chicago, IL 60603<br>Attention: Global Corporate Trust –<br>Acis CLO 2014-4 | Collateral Administration Agreement | June 5, 2014 | $0 |
| Acis CLO 2014-4 Ltd.<br>c/o MaplesFS Limited<br>P.O. Box 1093, Boundary Hall, Cricket Sq<br>Grand Cayman, Cayman Islands KY1-1102 | Portfolio Management Agreement | June 5, 2014 | $0 |

5

**EXHIBIT B**
**Executory Contracts and Unexpired Leases**
**to Be Assumed by the Trustee**

| Party | Contract Description | Contract Date | Cure Amount |
|---|---|---|---|
| Acis CLO 2014-4 Ltd.<br>c/o MaplesFS Limited<br>P.O. Box 1093, Boundary Hall, Cricket Sq<br>Grand Cayman, Cayman Islands KY1-1102 | Indenture | June 5, 2014 | $0 |
| Acis CLO 2014-4 LLC<br>850 Library Ave., Suite 204<br>Newark, DE 19711 | Indenture | June 5, 2014 | $0 |
| U.S. Bank National Association<br>190 S. LaSalle Street, 8th Floor<br>Chicago, IL 60603<br>Attention: Global Corporate Trust –<br>Acis CLO 2014-4 | Indenture | June 5, 2014 | $0 |
| Acis CLO 2014-4 Ltd.<br>c/o MaplesFS Limited<br>P.O. Box 1093, Boundary Hall, Cricket Sq<br>Grand Cayman, Cayman Island KY1-1102 | Memorandum and Articles of Association<br>of Acis CLO 2014-4 Ltd. | April 1, 2014 | $0 |
| Acis CLO 2014-5 Chemical Holdings, LLC<br>1209 Orange Street<br>Wilmington, DE 19801 | Limited Liability Company Agreement | October 28, 2016 | $0 |
| Acis CLO 2014-5 Ltd.<br>c/o MaplesFS Limited<br>P.O. Box 1093, Boundary Hall, Cricket Sq<br>Grand Cayman, Cayman Islands KY1-1102 | Limited Liability Company Agreement | October 28, 2016 | $0 |
| Acis CLO 2014-5 Ltd.<br>c/o MaplesFS Limited<br>P.O. Box 1093, Boundary Hall, Cricket Sq<br>Grand Cayman, Cayman Islands KY1-1102 | Collateral Administration Agreement | November 18, 2014 | $0 |

6

**EXHIBIT B**

**Executory Contracts and Unexpired Leases**
**to Be Assumed by the Trustee**

| Party | Contract Description | Contract Date | Cure Amount |
|---|---|---|---|
| U.S. Bank National Association<br>190 S. LaSalle Street, 8th Floor<br>Chicago, IL 60603<br>Attention: Global Corporate Trust –<br>Acis CLO 2014-5 | Collateral Administration Agreement | November 18, 2014 | $0 |
| Acis CLO 2014-5 Ltd.<br>c/o MaplesFS Limited<br>P.O. Box 1093, Boundary Hall, Cricket Sq<br>Grand Cayman, Cayman Islands KY1-1102 | Portfolio Management Agreement | November 18, 2014 | $0 |
| Acis CLO 2014-5 Ltd.<br>c/o MaplesFS Limited<br>P.O. Box 1093, Boundary Hall, Cricket Sq<br>Grand Cayman, Cayman Islands KY1-1102 | Indenture | November 18, 2014 | $0 |
| Acis CLO 2014-5 LLC<br>850 Library Ave., Suite 204<br>Newark, DE 19711 | Indenture | November 18, 2014 | $0 |
| U.S. Bank National Association<br>190 S. LaSalle Street, 8th Floor<br>Chicago, IL 60603<br>Attention: Global Corporate Trust –<br>Acis CLO 2014-5 | Indenture | November 18, 2014 | $0 |
| Acis CLO 2014-5 Ltd.<br>c/o MaplesFS Limited<br>P.O. Box 1093, Boundary Hall, Cricket Sq<br>Grand Cayman, Cayman Islands KY1-1102 | Memorandum and Articles of Association<br>of Acis CLO 2014-5 Ltd. | August 21, 2014 | $0 |
| Acis CLO 2015-6 Chemical Holdings, LLC<br>1209 Orange Street<br>Wilmington, DE 19801 | Limited Liability Company Agreement | October 28, 2016 | $0 |

7

EXHIBIT B

**Executory Contracts and Unexpired Leases**
**to Be Assumed by the Trustee**

| Party | Contract Description | Contract Date | Cure Amount |
|---|---|---|---|
| Acis CLO 2015-6 Ltd. c/o MaplesFS Limited P.O. Box 1093, Boundary Hall, Cricket Sq Grand Cayman, Cayman Islands KY1-1102 | Limited Liability Company Agreement | October 28, 2016 | $0 |
| Acis CLO 2015-6 Ltd. c/o MaplesFS Limited P.O. Box 1093, Boundary Hall, Cricket Sq Grand Cayman, Cayman Islands KY1-1102 | Collateral Administration Agreement | April 16, 2015 | $0 |
| U.S. Bank National Association 190 S. LaSalle Street, 8th Floor Chicago, IL 60603 Attention: Global Corporate Trust – Acis CLO 2015-6 | Collateral Administration Agreement | April 16, 2015 | $0 |
| Acis CLO 2015-6 Ltd. c/o MaplesFS Limited P.O. Box 1093, Boundary Hall, Cricket Sq Grand Cayman, Cayman Islands KY1-1102 | Portfolio Management Agreement | April 16, 2015 | $0 |
| Acis CLO 2015-6 Ltd. c/o MaplesFS Limited P.O. Box 1093, Boundary Hall, Cricket Sq Grand Cayman, Cayman Islands KY1-1102 | Indenture | April 16, 2015 | $0 |
| Acis CLO 2015-6 LLC 850 Library Ave., Suite 204 Newark, DE 19711 | Indenture | April 16, 2015 | $0 |
| U.S. Bank National Association 190 S. LaSalle Street, 8th Floor Chicago, IL 60603 Attention: Global Corporate Trust – Acis CLO 2015-6 | Indenture | April 16, 2015 | $0 |

8

Case 18-30264-sgj11 Doc 830-1 Filed 02/31/19 Entered 02/31/19 14:28:29 Page 107 of 229

**EXHIBIT B**

**Executory Contracts and Unexpired Leases**

**to Be Assumed by the Trustee**

| Party | Contract Description | Contract Date | Cure Amount |
|---|---|---|---|
| Acis CLO 2015-6 Ltd.<br>P.O. Box 1093, Boundary Hall, Cricket Sq<br>Grand Cayman, KY1-1102, Cayman Islands | Memorandum and Articles of Association of Acis CLO 2015-6 Ltd. | February 11, 2015 | $0 |
| Acis CLO Value Fund II (Cayman), LP.<br>P.O. Box 309, Ugland House<br>Grand Cayman, Cayman Islands KY1-1104 | Investment Management Agreement | May 1, 2016 | $0 |
| Acis CLO Value Fund II GP, LLC<br>P.O. Box. 309, Ugland House<br>Grand Cayman, Cayman Islands KY1-1104 | Investment Management Agreement | May 1, 2016 | $0 |
| Acis CLO Value Fund II, LP.<br>300 Crescent Court<br>Suite 700<br>Dallas, TX 75201 | Investment Management Agreement | May 1, 2016 | $0 |
| Acis CLO Value GP, LLC<br>1209 Orange Street<br>Wilmington, DE 19801 | Limited Liability Company Agreement | July 19, 2010 | $0 |
| Acis CLO Value Master Fund II, LP.<br>P.O. Box 309, Ugland House<br>Grand Cayman, Cayman Islands KY1-1104 | Investment Management Agreement | May 1, 2016 | $0 |
| Acis CLO Value Fund II (Cayman), L.P.<br>P.O. Box. 309, Ugland House<br>Grand Cayman, Cayman Islands KY1-1104 | Third Amended and Restated Exempted Limited Partnership Agreement | May 1, 2016 | $0 |
| Acis CLO Value Master Fund II, L.P.<br>P.O. Box 309, Ugland House<br>Grand Cayman, Cayman Islands KY1-1104 | Third Amended and Restated Exempted Limited Partnership Agreement | May 1, 2016 | $0 |
| Acis Loan Funding, Ltd.<br>300 Crescent Court<br>Suite 700<br>Dallas, TX 75201 | FATCA and Non-FATCA Services Agreement | June 23, 2017 | $0 |

9

Case 18-30264-sgj11 Doc 830 Filed 02/31/19 Entered 02/31/19 14:42:29 Page 108 of 229
230

**EXHIBIT B**

**Executory Contracts and Unexpired Leases**
**to Be Assumed by the Trustee**

| Party | Contract Description | Contract Date | Cure Amount |
|---|---|---|---|
| BayVK R2 Lux S.A., SICAV FIS<br>15 rue de Flaxweiler<br>L-6776 Grevenmacher | Power of Attorney | February 20, 2015 | $0 |
| BayVK R2 Lux S.A., SICAV-FIS<br>15 rue de Flaxweiler<br>L-6776 Grevenmacher | Agreement for the Outsourcing of the Asset Management of BayVK R2 Lux S.A., SICAV-FIS | February 27, 2015 | $0 |
| BayVK R2 Lux S.A., SICAV-FIS<br>15 rue de Flaxweiler<br>L-6776 Grevenmacher | Service Level Agreement | February 27, 2015 | $0 |
| BNP Paribas Securities Services<br>Luxembourg Branch<br>60 Avenue John F. Kennedy<br>1855 Luxembourg | Power of Attorney<br>86578 | February 20, 2015 | $0 |
| Hewett's Island CLO I-R, Ltd.<br>c/o Maples Finance Limited<br>P.O. Box 1093, Queensgate House<br>Grand Cayman, Cayman Islands KY1-1102 | Confidentiality Agreement | April 11, 2011 | $0 |
| Hewett's Island CLO I-R, Ltd.<br>c/o Maples Finance Limited<br>P.O. Box 1093, Queensgate House<br>Grand Cayman, Cayman Islands KY1-1102 | Governing Documents<br>(Requested from HCM) | -- | $0 |
| Hewett's Island CLO I-R, Ltd.<br>c/o Maples Finance Limited<br>P.O. Box 1093, Queensgate House<br>Grand Cayman, Cayman Islands KY1-1102 | Management Agreement | July 18, 2011 | $0 |
| Hewett's Island CLO I-R, Ltd.<br>c/o Maples Finance Limited<br>P.O. Box 1093, Queensgate House<br>Grand Cayman, Cayman Islands KY1-1102 | Collateral Administration Agreement<br>(Requested from HCM) | November 20, 2007 | $0 |

**EXHIBIT B**
**Executory Contracts and Unexpired Leases**
**to Be Assumed by the Trustee**

| Party | Contract Description | Contract Date | Cure Amount |
|---|---|---|---|
| Hewett's Island CLO 1-R, Ltd. c/o Maples Finance Limited P.O. Box 1093, Queensgate House Grand Cayman, Cayman Islands KY1-1102 | Indenture | November 20, 2007 | $0 |
| Deutsche Bank Trust Company Americas 1761 East St. Andrew Place Santa Ana, CA 92705 Attn: CDO Business Unit – Hewett's Island CLO 1-R | Indenture | November 20, 2007 | $0 |
| State Street (Guerney Limited) First Floor, Dorey Court, Admiral Park, St. Peter Port, Guernsey | FATCA and Non-FATCA Services Agreement | June 23, 2017 | $0 |
| U.S. Bank National Association 190 S. LaSalle Street, 8th Floor Chicago, IL 60603 Attention: Global Corporate Trust – Acis CLO 2015-6 | Confidentiality Agreement | March 5, 2014 | $0 |
| Universal-Investment-Luxembourg S.A. 15 rue de Flaxweiler L-6776 Grevenmacher | Agreement for the Outsourcing of the Asset Management of BayVK R2 Lux S.A., SICAV-FIS | February 27, 2015 | $0 |
| Universal-Investment-Luxembourg S.A. 15 rue de Flaxweiler L-6776 Grevenmacher | Power of Attorney | February 20, 2015 | $0 |
| Universal-Investment-Luxembourg S.A. 15 rue de Flaxweiler L-6776 Grevenmacher | Service Level Agreement | February 27, 2015 | $0 |
| Acis Loan Funding, Ltd. First Floor, Dorey Court St. Peter Port, Guernsey GY1 6HJ Channel Islands | Portfolio Management Agreement | December 22, 2016 | $0 |

11

**EXHIBIT B**

**Executory Contracts and Unexpired Leases**

**to Be Assumed by the Trustee**

| Party | Contract Description | Contract Date | Cure Amount |
|---|---|---|---|
| Acis Capital Management, LP c/o *PHELANLAW* 4214 Woodfin Drive Dallas, Texas 75220 | Amended and Restated Agreement of Limited Partnership | January 21, 2011 | $0 |
| Acis Capital Management GP, LLC c/o *PHELANLAW* 4214 Woodfin Drive Dallas, Texas 75220 | Amended and Restated Limited Liability Company Agreement | January 21, 2011 | $0 |

For the avoidance of doubt, to the extent not otherwise included above, the Trustee intends to assume any additional executory contracts that relate to the funds set forth below as may be necessary or beneficial to the Reorganized Debtor under the Plan:

1. Acis CLO 2013-1, Ltd.

2. Acis CLO 2013-2, Ltd.

3. Acis CLO 2014-3, Ltd.

4. Acis CLO 2014-4, Ltd.

5. Acis CLO 2014-5, Ltd.

6. Acis CLO 2015-6, Ltd.

7. Acis CLO Value Fund II, L.P.

8. Acis CLO Value Fund II (Cayman), L.P.

9. Acis CLO Master Fund II, L.P.

10. BayVK R2 Lux S.A., SICAV FIS

11. Hewitt's Island CLO 1-R, Ltd.

12. Acis Loan Funding, Ltd.

The Trustee reserves the right to amend or supplement this Exhibit B.

12

Case 18-30264-sgj11 Doc 1342-2 Filed 09/05/21 Entered 09/05/21 13:08:29 Page 112 of
230
Case 18-30264-sgj11 Doc 830 Filed 02/31/19 Entered 02/31/19 17:42:42 Page 111 of 229

# EXHIBIT "2"

**[First Modification to the Third Amended Joint Plan for Acis Capital Management, L.P. and Acis Capital Management GP, LLC – Dkt. No. 693]**

Rakhee V. Patel – State Bar No. 00797213
Phillip Lamberson – State Bar No. 00794134
Joe Wielebinski – State Bar No. 21432400
Annmarie Chiarello – State Bar No. 24097496
**WINSTEAD PC**
500 Winstead Building
2728 N. Harwood Street
Dallas, Texas 75201
Telephone: (214) 745-5400
Facsimile:  (214) 745-5390
rpatel@winstead.com
plamberson@winstead.com
jwielebinski@winstead.com
achiarello@winstead.com

**SPECIAL COUNSEL FOR
ROBIN PHELAN, CHAPTER 11 TRUSTEE**

Jeff P. Prostok –  State Bar No. 16352500
J. Robert Forshey – State Bar No. 07264200
Suzanne K. Rosen –  State Bar No. 00798518
Matthew G. Maben – State Bar No. 24037008
**FORSHEY & PROSTOK LLP**
777 Main St., Suite 1290
Ft. Worth, TX 76102
Telephone: (817) 877-8855
Facsimile: (817) 877-4151
jprostok@forsheyprostok.com
bforshey@forsheyprostok.com
srosen@forsheyprostok.com
mmaben@forsheyprostok.com

**COUNSEL FOR ROBIN PHELAN,
CHAPTER 11 TRUSTEE**

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE NORTHERN DISTRICT OF TEXAS
## DALLAS DIVISION

| | | |
|---|---|---|
| IN RE: | § | CHAPTER 11 CASES |
| | § | |
| ACIS CAPITAL MANAGEMENT, L.P., | § | CASE NO. 18-30264-sgj11 |
| ACIS CAPITAL MANAGEMENT GP, LLC, | § | (Jointly Administered) |
| | § | |
| Debtors. | § | |

## FIRST MODIFICATION TO THE THIRD AMENDED JOINT PLAN FOR
## ACIS CAPITAL MANAGEMENT, LP AND ACIS CAPITAL MANAGEMENT GP, LLC

Robin Phelan ("Trustee"), the Chapter 11 Trustee for Acis Capital Management, LP and

Acis Capital Management GP, LLC (the "Debtors"), files this First Modification (the "First

Modification") to the *Third Amended Joint Chapter 11 Plan for Acis Capital Management, LP

and Acis Capital Management GP, LLC* [Docket No. 660] (the "Plan").

1.      Reference is here made to the Plan for all purposes.  This First Modification

modifies the Plan.

2.      **Modification to Section 1.09.**  Section 1.09 of the Plan is hereby modified to read

as follows:

1.09    "Assets" includes all right, title, and interest in and to all property of every type or nature owned or claimed by the Debtors as of the Petition Date, together with all such property of every type or nature subsequently acquired by the Debtors through the Effective Date, whether real or personal, tangible or intangible, and wherever located, and including, but not limited to, property as defined in section 541 of the Bankruptcy Code.

3.    The change to section 1.09 above merely corrects a typographical error in the definition of the term "Assets."  Specifically, the revised definition removes the incomplete phrase "Without limiting the foregoing, this shall include all" from the end of the definition of Assets.

4.    **Modification to Exhibit "A".**  The copy of the Exhibit "A" reflecting Estate Claims is hereby deleted in its entirety and replaced with the version of the "Exhibit A" attached hereto as **Exhibit "1."**

5.    A copy of the document reflecting the modifications to Exhibit A to the Plan in redline format is attached hereto as **Exhibit "2."**

6.    This First Modification is a non-material change.  It merely corrects a typographical error and revises the Estate Claims being reserved, retained and preserved under the Plan.   Further, even if this First Modification were deemed material, it does not adversely affect any creditor because no ballots have yet been received in relation to the Plan and this First Modification is being sent to all creditors and parties in interest eighteen (18) days in advance of the deadline for parties to submit ballots and any objections to the Plan.  Consequently, creditors and parties in interest will have an adequate opportunity to evaluate this modification prior to voting on the Plan.

Dated:  November 8, 2018.            Respectfully submitted,

ACIS CAPITAL MANAGEMENT, L.P.

By: /s/ *Robin Phelan*
        Robin Phelan
        Chapter 11 Trustee

ACIS CAPITAL MANAGMENET GP, LLC

By: /s/ *Robin Phelan*
      Robin Phelan
      Chapter 11 Trustee

APPROVED:                                    APPROVED:

/s/ *Jeff P. Prostok*                        /s/ *Rahkee V. Patel*
Jeff P. Prostok – State Bar No. 16352500     Rahkee V. Patel – State Bar No. 00797213
J. Robert Forshey – State Bar No. 07264200   Phillip Lamberson – State Bar No. 00794134
Suzanne K. Rosen – State Bar No. 00798518    Joe Wielebinski – State Bar No. 21432400
Matthew G. Maben – State Bar No. 24037008    Annmarie Chiarello –State Bar No. 24097496
**FORSHEY & PROSTOK LLP**                    **WINSTEAD PC**
777 Main St., Suite 1290                     500 Winstead Building
Ft. Worth, TX 76102                          2728 N. Harwood Street
Telephone: (817) 877-8855                    Dallas, Texas 75201
Facsimile: (817) 877-4151                    Telephone: (214) 745-5400
jprostok@forsheyprostok.com                  Facsimile: (214) 745-5390
bforshey@forsheyprostok.com                  rpatel@winstead.com
srosen@forsheyprostok.com                    plamberson@winstead.com
mmaben@forsheyprostok.com                    jwielebinski@winstead.com
                                             achiarello@winstead.com

**COUNSEL FOR ROBIN PHELAN,**
**CHAPTER 11 TRUSTEE**                        **SPECIAL    COUNSEL    FOR    ROBIN**
                                             **PHELAN, CHAPTER 11 TRUSTEE**

<u>**CERTIFICATE OF SERVICE**</u>

I hereby certify that a true and correct copy of the foregoing document and the attached exhibits were served electronically via the Court's Electronic Court Filing (ECF) notification system and via U.S. Mail, postage prepaid (and via Express Mail to out of country recipients) on the parties on the service lists attached as **Exhibit "3"** hereto on November 8, 2018.

                                             /s/ *Jeff P. Prostok*
                                             Jeff P. Prostok

L:\JPROSTOK\ACIS Capital Management (Trustee Rep)\Plan and Disclosure Statement\First Modification to Third Amended Plan 11.8.18.docx

# Exhibit "1"
## [Revised Exhibit "A" to the Third Amended Joint Plan]

Case 18-30264-sgj11 Doc 1343-2 Filed 09/05/21 Entered 09/05/21 12:28:29 Page 117 of
Case 18-30264-sgj11 Doc 898 Filed 01/18/19 Entered 01/18/19 14:34:07 Page 116 of 229
230

**EXHIBIT "A"**
**to**
**Joint Plan for Acis Capital Management, LP and Acis Capital Management GP, LLC**

1. <u>Defined Terms</u>.  This Exhibit "A" constitutes an integral part of the Plan of which it is a part.  Defined terms in the Plan are to be given the same meaning in this Exhibit "A".  The rules of construction set forth in Article I.B. of the Plan shall likewise apply to this Exhibit "A".

2. <u>Estate Claims Reserved, Retained and Preserved</u>.  All Estate Claims are hereby reserved, retained and preserved, and shall all be transferred to, and vested in, the Reorganized Debtor pursuant to this Plan, and shall include without limitation all of the Estate Claims described below.  In reserving, retaining, and preserving Estate Claims against any named Person or category of Persons, it is the intent of this Plan to so reserve, retain, and preserve any and all Estate Claim against each such Person or category of Persons, including all such Estate Claims pursuant to any applicable common law, based on any contract or agreement or based upon any law, statute or regulation of any political entity, including the United States and any state or political subdivision thereof, as well as all applicable remedies, whether legal or equitable.  Without limiting the generality of the foregoing, the reservation, retention, and preservation of Estate Claims against any Person, and the term "<u>Estate Claims</u>," shall encompass all Estate Claims against any such Person, including without limitation, all such Estate Claims for breach of contract, all rights to enforce any contract, any form of estoppel, fraud, constructive fraud, abuse of process, malicious prosecution, defamation, libel, slander, conversion, trespass, intentional infliction of emotional distress or other harm, negligence, gross negligence, negligent misrepresentation, fraudulent misrepresentation, vicarious liability, respondeat superior, breach of any duty owed under either applicable law or any contract, breach of any fiduciary duty or duty of loyalty or due care, aiding and/or abetting breach of fiduciary duty, aiding and/or abetting breach of duty of loyalty or due care, alter ego, veil piercing, self-dealing, usurpation of corporate opportunity, ultra vires, turnover of Estate Assets, unauthorized use of Estate Assets, including intellectual property rights or Assets owned by the Debtors or Chapter 11 Trustee, quantum merit, tortious interference, duress, unconscionability, undue influence, and unjust enrichment, as well as any cause of action for conspiracy to commit any unlawful act, aiding and/or abetting any such unlawful act, or assisting, encouraging, and/or participating in any such unlawful act, or claims arising from or relating to the filing of the involuntary bankruptcy petitions against the Debtors.

3. <u>Highland Claims</u>.  All Estate Claims against Highland are reserved, retained and preserved for the benefit of the Estate and Reorganized Debtor, including without limitation all such Estate Claims asserted by the Chapter 11 Trustee in Adversary Proceeding No. 18-03078-sgj (the "<u>Highland Adversary</u>") and Adversary Proceeding No. 18-03212-sgj (the "<u>Trustee's Adversary</u>").  The Estate Claims against Highland shall include all Estate Claims set forth in paragraph 2 above, including without limitation, the following:

 (a) All such Claims asserted by the Chapter 11 Trustee or Estate in, or which could be asserted based on the facts or transactions alleged in, the Highland Adversary;

 (b) All such Claims asserted by the Chapter 11 Trustee or Estate in, or which could be asserted based on the facts or transactions alleged in, the Trustee's Adversary;

 (c) All such Claims and Defenses asserted by the Chapter 11 Trustee or Estate, or which could be asserted by the Chapter 11 Trustee or Estate, based on the facts or transactions alleged in any other adversary proceedings or Claim Objections filed by the

Case 18-30264-sgj11 Doc 1632-2 Filed 09/05/21 Entered 09/05/21 12:26:29 Page 119 of
Case 18-30264-sgj11 Doc 1639 Filed 01/18/22 Entered 01/18/22 14:34:37 Page 40 of 229
230

Chapter 11 Trustee or Estate;

    (d)    All Avoidance Actions against Highland, including any claims to avoid and recover amounts transferred by the Debtors to Highland under the Shared Services Agreement or Sub-Advisory Agreement;

    (e)    All Claims for breach of the Shared Services Agreement or Sub-Advisory Agreement;

    (f)    All Claims against Highland for amounts paid by the Debtors to Highland under the Shared Services Agreement and Sub-Advisory Agreement, including any Claim that Highland overcharged Acis LP for services under such agreements, charged excessive fees in violation of Acis LP's limited partnership agreement and/or Acis GP's limited liability company agreement, and/or that the Shared Services Agreement and Sub-Advisory Agreement or any related or predecessor agreements are void or voidable based on ultra vires or any other theories of avoidance and recovery, including turnover, conversion and Avoidance Actions under the Bankruptcy Code;

    (g)    All Claims for breach of the PMAs or the Indentures;

    (h)    All Claims for breach of fiduciary duty or duty of loyalty or due care owed to the Debtors or Chapter 11 Trustee;

    (i)    All Claims for aiding and/or abetting breach of fiduciary duty, breach of duty loyalty or due care, or any other unlawful act;

    (j)    All Clams for usurpation of a corporate opportunity belonging to either of the Debtors, including in relation to Acis CLO 2017-7, Ltd and any other Acis CLOs;

    (k)    All claims for tortious interference, including in relation to Universal-Investment-Luxembourg S.A. and BayVK R2 Lux S.A., SICAV-FIS;

    (l)    All Claims against Highland for the turnover of Estate Assets, including Estate property that the Chapter 11 Trustee may use, sell or lease under section 363 of the Bankruptcy Code including, without limitation, any intellectual property rights or Assets owned by the Debtors or Estate, as well as the turnover of any books, documents, records and papers relating to the Debtors' property or financial affairs;

    (m)    All Claims against Highland for the unauthorized use of Estate Assets including, without limitation, any intellectual property rights or Assets owned by the Debtors or Estate;

    (n)    All Claims, rights or remedies for Equitable Subordination or Recharacterization of any Claim by Highland against the Debtors, Chapter 11 Trustee, or Estate;

    (o)    All Claims based on alter ego or rights to pierce the corporate veil of Acis LP as to any Person, including as against Highland or any Affiliates thereof, James D. Dondero, Mark K. Okada, or any other officers, directors, equity interest holders, or Persons otherwise in control of Acis LP;

    (p)    All Claims based on alter ego or rights to pierce the corporate veil of

Case 18-30264-sgj11 Doc 1443-2 Filed 09/05/21 Entered 09/05/21 12:06:20 Page 119 of
230
Case 18-30264-sgj11 Doc 895 Filed 01/18/19 Entered 01/18/19 14:34:07 Page 3 of 29

Highland as to any Person, including as against any Affiliates of Highland, James D. Dondero, Mark K. Okada, or any other officers, directors, equity interest holders, or Persons otherwise in control of Highland, and,

(q)     All Claims for conspiracy to commit any unlawful act, aiding and/or abetting any such unlawful act, or assisting, encouraging, and/or participating in any such unlawful act.

4.     <u>HCLOF Claims</u>.  All Estate Claims against HCLOF are reserved, retained and preserved for the benefit of the Estate and Reorganized Debtor, including without limitation all such Estate Claims asserted by the Chapter 11 Trustee in the Highland Adversary and the Trustee's Adversary.  The Estate Claims against HCLOF shall include all Estate Claims set forth in paragraph 2 above, including without limitation, the following:

(a)     All such Claims against HCLOF asserted by the Chapter 11 Trustee or Estate in, or which could be asserted based on the facts or transactions alleged in, the Highland Adversary;

(b)     All such Claims against HCLOF asserted by the Chapter 11 Trustee or Estate in, or which could be asserted based on the facts or transactions alleged in, the Trustee's Adversary;

(c)     All such Claims and Defenses asserted by the Chapter 11 Trustee or Estate, or which could be asserted by the Chapter 11 Trustee or Estate, based on the facts or transactions alleged in any other adversary proceedings or Claim Objections filed by the Chapter 11 Trustee or Estate;

(d)     All Avoidance Actions against HCLOF;

(e)     All Claims for breach of the PMAs or the Indentures;

(f)     All Claims for breach of fiduciary duty or duty of loyalty or due care owed to the Debtors or Chapter 11 Trustee;

(g)     All Claims for aiding and/or abetting breach of fiduciary duty, breach of duty loyalty or due care, or any other unlawful act;

(h)     All Clams for usurpation of a corporate opportunity belonging to either of the Debtors, including in relation to Acis CLO 2017-7, Ltd and any other Acis CLOs;

(i)     All Claims against HCLOF for the turnover of Estate Assets, including Estate property that the Chapter 11 Trustee may use, sell or lease under section 363 of the Bankruptcy Code including, without limitation, any intellectual property rights or Assets owned by the Debtors or Estate, as well as the turnover of any books, documents, records and papers relating to the Debtors' property or financial affairs;

(j)     All Claims against HCLOF for the unauthorized use of Estate Assets including, without limitation, any intellectual property rights or Assets owned by the Debtors or Estate;

(k)     All Claims, rights or remedies for Equitable Subordination or Recharacterization of any Claim by HCLOF against the Debtors, Chapter 11 Trustee, or Estate;

(l)      All Claims based on alter ego or rights to pierce the corporate veil of HCLOF as to any Person, including as against any Affiliates of HCLOF or Highland, William Scott, Heather Bestwick, or any other officers, directors, equity interest holders, or Persons otherwise in control of HCLOF; and,

(m)      All Claims for conspiracy to commit any unlawful act, aiding and/or abetting any such unlawful act, or assisting, encouraging, and/or participating in any such unlawful act.

5.      <u>Highland HCF Advisor, Ltd. Claims</u>.  All Estate Claims against Highland HCF Advisor, Ltd. ("<u>Highland HCF</u>") are reserved, retained and preserved for the benefit of the Estate and Reorganized Debtor, including without limitation all such Estate Claims asserted by the Chapter 11 Trustee in the Highland Adversary.  The Estate Claims against Highland HCF shall include all Estate Claims set forth in paragraph 2 above, including without limitation, the following:

(a)      All such Claims against Highland HCF asserted by the Chapter 11 Trustee or Estate in, or which could be asserted based on the facts or transactions alleged in, the Highland Adversary;

(b)      All such Claims against Highland HCF asserted by the Chapter 11 Trustee or Estate in, or which could be asserted based on the facts or transactions alleged in, the Trustee's Adversary;

(c)      All such Claims and Defenses asserted by the Chapter 11 Trustee or Estate, or which could be asserted by the Chapter 11 Trustee or Estate, based on the facts or transactions alleged in any other adversary proceedings or Claim Objections filed by the Chapter 11 Trustee or Estate;

(d)      All Avoidance Actions against Highland HCF;

(e)      All Claims for breach of fiduciary duty or duty of loyalty or due care owed to the Debtors or Chapter 11 Trustee;

(f)      All Claims for aiding and/or abetting breach of fiduciary duty, breach of duty loyalty or due care, or any other unlawful act;

(g)      All Clams for usurpation of a corporate opportunity belonging to either of the Debtors, including in relation to Acis CLO 2017-7, Ltd and any other Acis CLOs;

(h)      All Claims against Highland HCF for the turnover of Estate Assets, including Estate property that the Chapter 11 Trustee may use, sell or lease under section 363 of the Bankruptcy Code including, without limitation, any intellectual property rights or Assets owned by the Debtors or Estate, as well as the turnover of any books, documents, records and papers relating to the Debtors' property or financial affairs;

(i)      All Claims against Highland HCF for the unauthorized use of Estate Assets including, without limitation, any intellectual property rights or Assets owned by the Debtors or Estate;

(j)      All Claims, rights or remedies for Equitable Subordination or Recharacterization of any Claim by Highland HCF against the Debtors, Chapter 11 Trustee, or

Estate;

> (k)     All Claims based on alter ego or rights to pierce the corporate veil of Highland HCF as to any Person, including as against any Affiliates of Highland HCF or Highland, or any other officers, directors, equity interest holders, or Persons otherwise in control of Highland HCF; and,

> (l)     All Claims for conspiracy to commit any unlawful act, aiding and/or abetting any such unlawful act, or assisting, encouraging, and/or participating in any such unlawful act.

> 6.     <u>Highland CLO Management, Ltd. Claims</u>.  All Estate Claims against Highland CLO Management, Ltd. ("<u>Highland CLOM</u>") are reserved, retained and preserved for the benefit of the Estate and Reorganized Debtor, including without limitation all such Estate Claims asserted by the Chapter 11 Trustee in the Highland Adversary.  The Estate Claims against Highland CLOM shall include all Estate Claims set forth in paragraph 2 above, including without limitation the following:

> (a)     All such Claims against Highland CLOM asserted by the Chapter 11 Trustee or Estate in, or which could be asserted based on the facts or transactions alleged in, the Highland Adversary;

> (b)     All such Claims against Highland CLOM asserted by the Chapter 11 Trustee or Estate in, or which could be asserted based on the facts or transactions alleged in, the Trustee's Adversary;

> (c)     All such Claims and Defenses asserted by the Chapter 11 Trustee or Estate, or which could be asserted by the Chapter 11 Trustee or Estate, based on the facts or transactions alleged in any other adversary proceedings or Claim Objections filed by the Chapter 11 Trustee or Estate;

> (d)     All Avoidance Actions against Highland CLOM;

> (e)     All Claims for breach of fiduciary duty or duty of loyalty or due care owed to the Debtors or Chapter 11 Trustee;

> (f)     All Claims for aiding and/or abetting breach of fiduciary duty, breach of duty loyalty or due care, or any other unlawful act;

> (g)     All Clams for usurpation of a corporate opportunity belonging to either of the Debtors, including in relation to Acis CLO 2017-7, Ltd and any other Acis CLOs;

> (h)     All Claims against Highland CLOM for the turnover of Estate Assets, including Estate property that the Chapter 11 Trustee may use, sell or lease under section 363 of the Bankruptcy Code including, without limitation, any intellectual property rights or Assets owned by the Debtors or Estate, as well as the turnover of any books, documents, records and papers relating to the Debtors' property or financial affairs;

> (i)     All Claims against Highland CLOM for the unauthorized use of Estate Assets including, without limitation, any intellectual property rights or Assets owned by the Debtors or Estate;

(j)      All Claims, rights or remedies for Equitable Subordination or Recharacterization of any Claim by Highland CLOM against the Debtors, Chapter 11 Trustee, or Estate;

(k)      All Claims based on alter ego or rights to pierce the corporate veil of Highland CLOM as to any Person, including as against any Affiliates of Highland CLOM or Highland, or any other officers, directors, equity interest holders, or Persons otherwise in control of Highland CLOM; and,

(l)      All Claims for conspiracy to commit any unlawful act, aiding and/or abetting any such unlawful act, or assisting, encouraging, and/or participating in any such unlawful act.

7.      <u>CLO Holdco, Ltd. Claims</u>.  All Estate Claims against CLO Holdco, Ltd. ("<u>CLO Holdco</u>") are reserved, retained and preserved for the benefit of the Estate and Reorganized Debtor, including without limitation all such Estate Claims asserted by the Chapter 11 Trustee in the Trustee's Adversary.  The Estate Claims against CLO Holdco shall include all Estate Claims set forth in paragraph 2 above, including without limitation, the following:

(a)      All such Claims against CLO Holdco asserted by the Chapter 11 Trustee or Estate in, or which could be asserted based on the facts or transactions alleged in, the Highland Adversary;

(b)      All such Claims against CLO Holdco asserted by the Chapter 11 Trustee or Estate in, or which could be asserted based on the facts or transactions alleged in, the Trustee's Adversary;

(c)      All such Claims and Defenses asserted by the Chapter 11 Trustee or Estate, or which could be asserted by the Chapter 11 Trustee or Estate, based on the facts or transactions alleged in any other adversary proceedings or Claim Objections filed by the Chapter 11 Trustee or Estate;

(d)      All Avoidance Actions against CLO Holdco;

(e)      All Claims for breach of fiduciary duty or duty of loyalty or due care owed to the Debtors or Chapter 11 Trustee;

(f)      All Claims for aiding and/or abetting breach of fiduciary duty, breach of duty loyalty or due care, or any other unlawful act;

(g)      All Clams for usurpation of a corporate opportunity belonging to either of the Debtors, including in relation to Acis CLO 2017-7, Ltd and any other Acis CLOs;

(h)      All Claims against CLO Holdco for the turnover of Estate Assets, including Estate property that the Chapter 11 Trustee may use, sell or lease under section 363 of the Bankruptcy Code including, without limitation, any intellectual property rights or Assets owned by the Debtors or Estate, as well as the turnover of any books, documents, records and papers relating to the Debtors' property or financial affairs;

(i)      All Claims against CLO Holdco for the unauthorized use of Estate Assets including, without limitation, any intellectual property rights or Assets owned by the Debtors or Estate;

     (j)     All Claims, rights or remedies for Equitable Subordination or Recharacterization of any Claim by Highland against the Debtors, Chapter 11 Trustee, or Estate;

     (k)     All Claims based on alter ego or rights to pierce the corporate veil of CLO Holdco as to any Person, including as against any Affiliates of CLO Holdco or Highland, or any other officers, directors, equity interest holders, or Persons otherwise in control of CLO Holdco; and,

     (l)     All Claims for conspiracy to commit any unlawful act, aiding and/or abetting any such unlawful act, or assisting, encouraging, and/or participating in any such unlawful act.

     8.     <u>Neutra, Ltd. Claims</u>.  All Estate Claims against Neutra, Ltd. ("<u>Neutra</u>") are reserved, retained and preserved for the benefit of the Estate and Reorganized Debtor, including without limitation all such Estate Claims asserted by the Chapter 11 Trustee in the Trustee's Adversary.  The Estate Claims against Neutra shall include all Estate Claims set forth in paragraph 2 above, including without limitation the following:

     (a)     All such Claims against Neutra asserted by the Chapter 11 Trustee or Estate in, or which could be asserted based on the facts or transactions alleged in, the Highland Adversary;

     (b)     All such Claims against Neutra asserted by the Chapter 11 Trustee or Estate in, or which could be asserted based on the facts or transactions alleged in, the Trustee's Adversary;

     (c)     All such Claims and Defenses asserted by the Chapter 11 Trustee or Estate, or which could be asserted by the Chapter 11 Trustee or Estate, based on the facts or transactions alleged in any other adversary proceedings or Claim Objections filed by the Chapter 11 Trustee or Estate;

     (d)     All Avoidance Actions against Neutra;

     (e)     All Claims for breach of fiduciary or duty of loyalty or due care owed to the Debtors or Chapter 11 Trustee;

     (f)     All Claims for aiding and/or abetting breach of fiduciary duty, breach of duty loyalty or due care, or any other unlawful act;

     (g)     All Clams for usurpation of a corporate opportunity belonging to either of the Debtors, including in relation to Acis CLO 2017-7, Ltd and any other Acis CLOs;

     (h)     All Claims against Neutra for the turnover of Estate Assets, including Estate property that the Chapter 11 Trustee may use, sell or lease under section 363 of the Bankruptcy Code including, without limitation, any intellectual property rights or Assets owned by the Debtors or Estate, as well as the turnover of any books, documents, records and papers relating to the Debtors' property or financial affairs;

     (i)     All Claims against Neutra for the unauthorized use of Estate Assets

including, without limitation, any intellectual property rights or Assets owned by the Debtors or Estate;

(j)     All Claims, rights or remedies for Equitable Subordination or Recharacterization of any Claim by Neutra against the Debtors, Chapter 11 Trustee, or Estate;

(k)     All Claims based on alter ego or rights to pierce the corporate veil of Acis LP as to any Person, including as against Neutra, Highland, or any Affiliates thereof, James D. Dondero, Mark K. Okada, or any other officers, directors, equity interest holders, or Persons otherwise in control of Acis LP;

(l)     All Claims based on alter ego or rights to pierce the corporate veil of Neutra as to any Person, including as against any Affiliates of Neutra or Highland, or any other officers, directors, equity interest holders, or Persons otherwise in control of Neutra; and,

(m)     All Claims for conspiracy to commit any unlawful act, aiding and/or abetting any such unlawful act, or assisting, encouraging, and/or participating in any such unlawful act.

9.     <u>Claims against Issuers, Co-Issuers and Indenture Trustee</u>.  All Estate Claims against CLO-3, CLO-4, CLO-5, and CLO-6 (collectively, the "<u>Issuers</u>"), Acis CLO 2014-3 LLC, Acis CLO 2014-4 LLC, Acis CLO 2014-5 LLC, and Acis CLO 2015-6 LLC (collectively, the "<u>Co-Issuers</u>"), and the Indenture Trustee are reserved, retained and preserved for the benefit of the Estate and Reorganized Debtor, including without limitation all such Estate Claims asserted by the Chapter 11 Trustee in the Trustee's Adversary.  The Estate Claims against the Issuers, Co-Issuers and/or Indenture Trustee shall include all Estate Claims set forth in paragraph 2 above, including without limitation the following:

(a)     All such Claims against the Issuers, Co-Issuers, and/or Indenture Trustee asserted by the Chapter 11 Trustee or Estate in, or which could be asserted based on the facts or transactions alleged in, the Highland Adversary;

(b)     All such Claims against the Issuers, Co-Issuers, and/or Indenture Trustee asserted by the Chapter 11 Trustee or Estate in, or which could be asserted based on the facts or transactions alleged in, the Trustee's Adversary;

(c)     All such Claims and Defenses asserted by the Chapter 11 Trustee or Estate, or which could be asserted by the Chapter 11 Trustee or Estate, based on the facts or transactions alleged in any other adversary proceedings or Claim Objections filed by the Chapter 11 Trustee or Estate;

(d)     All Avoidance Actions against the Issuers, Co-Issuers and/or Indenture Trustee;

(e)     All Claims for breach of the Indentures, PMAs or any other agreements between Acis LP and the Issuers, Co-Issuers, and/or Indenture Trustee;

(f)     All Claims for breach of fiduciary duty or duty of loyalty or due care owed to the Debtors or Chapter 11 Trustee;

(g)     All Claims for aiding and/or abetting breach of fiduciary duty, breach of duty loyalty or due care, or any other unlawful act;

(h)     All Clams for usurpation of a corporate opportunity belonging to either of the Debtors, including in relation to Acis CLO 2017-7, Ltd and any other Acis CLOs;

(i)     All Claims against the Issuers, Co-Issuers and/or Indenture Trustee for the turnover of Estate Assets, including Estate property that the Chapter 11 Trustee may use, sell or lease under section 363 of the Bankruptcy Code including, without limitation, any intellectual property rights or Assets owned by the Debtors or Estate, as well as the turnover of any books, documents, records and papers relating to the Debtors' property or financial affairs;

(j)     All Claims against the Issuers, Co-Issuers and/or Indenture Trustee for the unauthorized use of Estate Assets including, without limitation, any intellectual property rights or Assets owned by the Debtors or Estate;

(k)     All Claims, rights or remedies for Equitable Subordination or Recharacterization of any Claim by the Issuers or Co-Issuers against the Debtors, Chapter 11 Trustee, or Estate; and,

(l)     All Claims for conspiracy to commit any unlawful act, aiding and/or abetting any such unlawful act, or assisting, encouraging, and/or participating in any such unlawful act.

10.    <u>Highland Affiliate Claims</u>.  All Estate Claims against any Affiliates of Highland are reserved, retained and preserved for the benefit of the Estate and Reorganized Debtor, including without limitation all such Estate Claims asserted by the Chapter 11 Trustee in the Highland Adversary and the Trustee's Adversary.  The Estate Claims against any Affiliates of Highland shall include all Estate Claims set forth in paragraph 2 above, including without limitation the following:

(a)     All such Claims against any Highland Affiliate asserted by the Chapter 11 Trustee or Estate in, or which could be asserted based on the facts or transactions alleged in, the Highland Adversary;

(b)     All such Claims against any Highland Affiliate asserted by the Chapter 11 Trustee or Estate in, or which could be asserted based on the facts or transactions alleged in, the Trustee's Adversary;

(c)     All such Claims and Defenses asserted by the Chapter 11 Trustee or Estate, or which could be asserted by the Chapter 11 Trustee or Estate, based on the facts or transactions alleged in any other adversary proceedings or Claim Objections filed by the Chapter 11 Trustee or Estate;

(d)     All Avoidance Actions against any Highland Affiliate;

(e)     All Claims for breach of fiduciary duty or duty of loyalty or due care owed to the Debtors or Chapter 11 Trustee;

(f)     All Claims for aiding and/or abetting breach of fiduciary duty, breach of duty loyalty or due care, or any other unlawful act;

(g)     All Clams for usurpation of a corporate opportunity belonging to either of the Debtors, including in relation to Acis CLO 2017-7, Ltd and any other Acis CLOs;

(h)    All Claims against any Highland Affiliate for the turnover of Estate Assets, including Estate property that the Chapter 11 Trustee may use, sell or lease under section 363 of the Bankruptcy Code including, without limitation, any intellectual property rights or Assets owned by the Debtors or Estate, as well as the turnover of any books, documents, records and papers relating to the Debtors' property or financial affairs;

(i)    All Claims against any Highland Affiliate for the unauthorized use of Estate Assets including, without limitation, any intellectual property rights or Assets owned by the Debtors or Estate;

(j)    All Claims, rights or remedies for Equitable Subordination or Recharacterization of any Claim by any Highland Affiliate against the Debtors, Chapter 11 Trustee, or Estate;

(k)    All Claims based on alter ego or rights to pierce the corporate veil of Acis LP as to any Person, including as against Highland, Neutra, or any Affiliates thereof, James D. Dondero, Mark K. Okada, or any other officers, directors, equity interest holders, or Persons otherwise in control of Acis LP;

(l)    All Claims based on alter ego or rights to pierce the corporate veil of any Highland Affiliate as to any Person, including as against any other Affiliates of Highland or any officers, directors, equity interest holders, or Persons otherwise in control of any Highland Affiliates; and,

(m)    All Claims for conspiracy to commit any unlawful act, aiding and/or abetting any such unlawful act, or assisting, encouraging, and/or participating in any such unlawful act.

11.    Dondero Claims. All Estate Claims as defined in paragraph 2 above against James D. Dondero, individually, are hereby reserved, retained and preserved for the benefit of the Estate and Reorganized Debtor, including without limitation all such Estate Claims against James D. Dondero for fraud, constructive fraud, breach of fiduciary duty, breach of duty of loyalty or due care, aiding and abetting breach of fiduciary duty, aiding and abetting breach of duty of loyalty or due care, self-dealing, ultra vires, conversion, usurpation of corporate opportunity, including in relation to Acis CLO 2017-7, Ltd and any other Acis CLOs, tortious interference, including in relation to Universal-Investment-Luxembourg S.A. and BayVK R2 Lux S.A., SICAV-FIS, conflict of interest, negligence, gross negligence, all Avoidance Actions, breach of contract, breach of the Shared Services Agreement, breach of the Sub-Advisory Agreement, breach of the Debtors' limited partnership agreement or limited liability company agreement, conspiracy to commit any unlawful act, aiding and abetting any unlawful act, and assisting, encouraging, and/or participating in any such unlawful act, as well as any Claim to pierce the corporate veil of any entity to hold James D. Dondero individually liable.

12.    Okada Claims. All Estate Claims as defined in paragraph 2 above against Mark K. Okada, individually, are hereby reserved, retained and preserved for the benefit of the Estate and Reorganized Debtor, including without limitation all such Estate Claims against Mark K. Okada for fraud, constructive fraud, breach of fiduciary duty, breach of duty of loyalty or due care, aiding and abetting breach of fiduciary duty, self-dealing, ultra vires, conversion, usurpation of corporate opportunity, including in relation to Acis CLO 2017-7, Ltd and any other Acis CLOs, tortious interference, including in relation to Universal-Investment-Luxembourg S.A. and BayVK R2 Lux S.A., SICAV-FIS, conflict of interest, negligence, gross negligence, all

Avoidance Actions, breach of contract, breach of the Shared Services Agreement, breach of the Sub-Advisory Agreement, breach of the Debtors' limited partnership agreement or limited liability company agreement, conspiracy to commit any unlawful act, aiding and abetting any unlawful act, and assisting, encouraging, and participating in any unlawful act, as well as any Claim to pierce the corporate veil of any entity to hold Mark K. Okada individually liable.

13. <u>Preference Claims</u>. All Avoidance Actions pursuant to section 547 of the Bankruptcy Code against any Person are hereby reserved, retained and preserved for the benefit of the Estate and Reorganized Debtor for any payment made to any Person by either of the Debtors within ninety (90) days of the Petition Date (which was January 30, 2018), or made by either of the Debtors to any insider within one (1) year of the Petition Date. A non-exhaustive list of Persons who are believed to have received payments from either of the Debtors during the 90-day preference period, and the one-year preference period for Insiders, is attached to this **Exhibit "A"** as **Schedule "1"**. The Plan reserves, retains and preserves for the benefit of the Estate and Reorganized Debtor all potential Claims arising out of or relating to the transfers reflected in **Schedule "1"**, including all Avoidance Actions pursuant to section 547 of the Bankruptcy Code. All rights and remedies are also reserved. retained and preserved with respect to the transfers reflected in **Schedule "1"** pursuant to section 550 of the Bankruptcy Code.

**Schedule "1"** reflects transfers made by the Debtors during the 90 days prior to the Petition Date and transfers made by the Debtors to any insiders within one (1) year of the Petition Date. While the Plan reserves, retains and preserves all Avoidance Actions relating to the transfers reflected in **Schedule "1"**, the Chapter 11 Trustee recognizes that certain of these transfers may not constitute a preferential transfer pursuant to section 547(b) of the Bankruptcy Code as a transfer made in the ordinary course of business transactions or based upon new value subsequently given by the transferee. Consequently, the listing of a payment on **Schedule "1"** does not necessarily mean that a transferee will ever be sued to avoid and recover the payment, the transfer, or the value thereof, but only that the Plan reserves, retains and preserves all rights (including Avoidance Actions) as to that payment.

14. <u>Claims Against Officers, Managers and Members</u>. All Estate Claims as defined in paragraph 2 above are hereby reserved, retained and preserved for the benefit of the Estate and Reorganized Debtor against all present and past officers, employees, members and managers of the Debtors, including all such Estate Causes of Action based on breach of fiduciary duty, aiding and abetting breach of fiduciary duty, breach of duty of loyalty or due care, aiding and abetting breach of duty of loyalty or due care, self-dealing, usurpation of corporate opportunity, gross negligence or conspiracy. Without limiting the generality of the foregoing, this shall include all D&O Claims as against any present or former officer, director, employee, member, manager, or partner.

15. <u>Claims Against Former Attorneys and Law Firms</u>. All Estate Claims as defined in paragraph 2, above, including Claims for breach of any fiduciary duty or duty of loyalty or due care, conspiracy to commit any unlawful act, aiding and/or abetting any such unlawful act, or assisting, encouraging, and/or participating in any such unlawful act, including knowingly aiding, abetting, or assisting with a fraudulent transfer to avoid paying a judgment, negligent or fraudulent misrepresentation, vicarious liability, and respondeat superior, as well as all Claims for legal or professional malpractice, are hereby reserved, retained and preserved for the benefit of the Estate and Reorganized Debtor against all law firms and attorneys who and which rendered legal services to the Debtors on a prepetition basis including, but not limited to, the following:

Case 18-30264-sgj11 Doc 1343-2 Filed 09/05/21 Entered 09/05/21 13:08:29 Page 128 of
Case 18-30264-sgj11 Doc 3609 Filed 02/04/18 Entered 02/04/18 14:08:00 Page 127 of 229
230

(a)     Cole Schotz, P.C.

(b)     Michael D. Warner

(c)     Jacob Frumkin

(d)     Warren A. Usatine

(e)     McKool Smith

(f)     Gary Cruciani

(g)     Michael Fritz

(h)     Carson Young

(i)     Lackey Hershman, LLP

(j)     Stinson Leonard Street LLP

(k)     Paul Lackey, Esq.

(l)     Michael Aigen, Esq.

(m)    Abrams & Bayliss, LLP

(n)     Kevin G. Abrams

(o)     A. Thompson Bayliss

(p)     Jones Day

(q)     Hilda C. Galvan

(r)     Michael Weinberg

(s)     Reid Collins & Tsai, LLP

(t)     Lisa Tsai

(u)     Stanton, LLP

(v)     James M. Stanton

(w)    Hunton Andrews Kurth

(x)     Marc Katz

(y)     Greg Waller

(z)     any other law firm or attorney who may be so named at a later date by the
Reorganized Debtor.

16.    Retention of Claims Against Specific Persons or Categories of Persons.  In addition to the foregoing, all Estate Claims as defined in paragraph 2 above are hereby reserved, retained and preserved for the benefit of the Estate and Reorganized Debtor against the following Persons:

(a)    William Scott;

(b)    Heather Bestwick;

(c)    Any other Person who may be so named at a later date by the Reorganized Debtor.

17.    Counterclaims.  All Estate Claims as defined in paragraph 2 above are reserved, retained and preserved for the benefit of the Estate and Reorganized Debtor both as a basis for an affirmative recovery against the Person against whom such Claims are asserted and as a counterclaim or offset against any Person who asserts a Claim against the Estate or Reorganized Debtor.

18.    Piercing the Corporate Veil.  With respect to all Estate Claims against any Person, all rights to pierce or ignore the corporate veil are hereby reserved, retained and preserved for the benefit of the Estate and the Reorganized Debtor.  Without limiting the generality of the foregoing, this shall include: (a) any right to pierce the corporate veil, including reverse piercing, on any theory or basis, including alter ego or any theory of sham to perpetrate a fraud, and (b) any Claim or basis to pierce the corporate veil of any entity with respect to establishing personal liability against James D. Dondero or Mark K. Okada.

19.    Avoidance Actions.  All Avoidance Actions are hereby reserved, retained and preserved as to all Persons.  The reservation, retention and preservation of such Avoidance Actions shall include the reservation, retention and preservation for the benefit of the Estate and Reorganized Debtor of all rights and remedies pursuant to section 550 of the Bankruptcy Code.

20.    Estate Defenses.  All Estate Defenses are hereby reserved, retained and preserved in favor of the Estate and Reorganized Debtor as against any Person asserting any Claim against the Estate.  This includes asserting all Estate Claims as an offset to, or counterclaim or right of recoupment against, any Person asserting a Claim against the Estate.  All defenses and affirmative defenses pursuant to applicable law are hereby reserved, retained and preserved for the benefit of the Estate and the Reorganized Debtor, including without limitation, accord and satisfaction, assumption of risk, contributory negligence, duress, estoppel, failure of consideration, fraud, illegality, laches, license, payment, release, *res judicata*, collateral estoppel, statute of frauds, statute of limitations or repose, discovery rule, adverse domination doctrine or similar doctrines, set off, recoupment, waiver, and all other defenses to Claims under the Bankruptcy Code, including under sections 502(b)(4) and 502(d).

21.    Equitable Subordination.  All rights or remedies for Equitable Subordination are hereby reserved, retained and preserved in favor of the Estate and Reorganized Debtor against any Person asserting any Claim against the Estate, including all such rights or remedies pursuant to section 510(c) of the Bankruptcy Code.  Without limiting the generality of the foregoing, this shall include all rights and remedies to Equitable Subordination as to any Claim asserted by Highland, any Affiliates of Highland, or any officers, directors, employees or equity interest owners of the Debtors, Highland, or any Affiliates thereof.

Case 18-30264-sgj11 Doc 1343-2 Filed 09/05/21 Entered 09/05/21 13:08:29 Page 130 of
Case 18-30264-sgj11 Doc 3605 Filed 01/08/48 Entered 01/08/21 23:43:40 Page 130 of 229
230

22. <u>Recharacterization</u>.  All rights or remedies to recharacterize any Claim as an equity interest in either of the Debtors are hereby reserved, retained and preserved in favor of the Estate and Reorganized Debtor against any Person asserting any Claim against the Estate. Without limiting the generality of the foregoing, this shall include all rights and remedies to recharacterize any Claim asserted by Highland, any Affiliates of Highland, or any officers, directors, employees or equity interest owners of the Debtors, Highland, or any Affiliates thereof.

Case 18-30264-sgj11 Doc 1343-2 Filed 09/05/21 Entered 09/05/21 12:08:29 Page 19 of 45
Case 18-30264-sgj11 Doc 830 Filed 02/31/19 Entered 02/31/19 12:42:42 Page 130 of 229
230

Case 18-30264-sgj11 Doc 693 Filed 11/08/18 Entered 11/08/18 13:03:00 Page 19 of 45
Schedule 4 to Exhibit A

Third Amended Joint Plan for Acis Capital Management, LP and Acis Capital Management GP, LLC

| NAME | ADDRESS | DATE OF PAYMENT | PAYMENT AMOUNT | REASON FOR PAYMENT ON SCHEDULES |
|---|---|---|---|---|
| **Payments within 90 Days of Petition Date** | | | | |
| Highland Capital Management, LP | 300 Crescent Court, Ste. 700 Dallas, TX 75208 | 11/2/2017 | $234,013.63 | Services |
| Highland Capital Management, LP | 300 Crescent Court, Ste. 700 Dallas, TX 75208 | 11/3/2017 | $941,958.57 | Services |
| Highland Capital Management, LP | 300 Crescent Court, Ste. 700 Dallas, TX 75208 | 12/8/2017 | $89,655.14 | Services |
| David Simek | 31 Woodacres Road Brookville, NY 11545 | 11/15/2017 | $2,068.13 | Services |
| David Simek | 31 Woodacres Road Brookville, NY 11545 | 11/30/2017 | $24,266.71 | Services |
| David Simek | 31 Woodacres Road Brookville, NY 11545 | 12/12/2017 | $1,718.79 | Services |
| David Simek | 31 Woodacres Road Brookville, NY 11545 | 12/29/2017 | $25,000.00 | Services |
| FINRA | 1735 K Street, NW Washington, DC 20006 | 11/22/2017 | $70.00 | Suppliers or Vendors |
| Highland CLO Management, Ltd. | PO Box 309, Ugland House Grand Cayman, KY1-1104, Cayman Islands | 12/19/2017 | $2,830,459.22 | Services |
| **Payments to Insiders within One Year of Petition Date** | | | | |
| Highland Capital Management, LP | 300 Crescent Court, Ste. 700 Dallas, TX 75208 | 2/1/2017 | $976,688.47 | Contractual Payment |
| Highland Capital Management, LP | 300 Crescent Court, Ste. 700 Dallas, TX 75208 | 2/1/2017 | $1,096,033.37 | Services |
| Highland Capital Management, LP | 300 Crescent Court, Ste. 700 Dallas, TX 75208 | 2/2/2017 | $3,574.80 | Expense Reimbursement |
| Highland Capital Management, LP | 300 Crescent Court, Ste. 700 Dallas, TX 75208 | 2/14/2017 | $67.44 | Expense Reimbursement |
| Highland Capital Management, LP | 300 Crescent Court, Ste. 700 Dallas, TX 75208 | 4/17/2017 | $315,574.30 | Services |
| Highland Capital Management, LP | 300 Crescent Court, Ste. 700 Dallas, TX 75208 | 4/18/2017 | $438,497.51 | Services |

Case 18-30264-sgj11 Doc 1342-2 Filed 09/05/21 Entered 09/05/21 12:08:29 Page 132 of 230

Case 18-30264-sgj11 Doc 693 Filed 11/08/18 Entered 11/08/18 13:03:00 Page 20 of 45
Schedule 1 to Exhibit A to
Third Amended Joint Plan for Acis Capital Management, LP and Acis Capital Management GP, LLC

| NAME | ADDRESS | DATE OF PAYMENT | PAYMENT AMOUNT | REASON FOR PAYMENT ON SCHEDULES |
|---|---|---|---|---|
| Highland Capital Management, LP | 300 Crescent Court, Ste. 700 Dallas, TX 75208 | 4/18/2017 | $375,855.01 | Contractual Payment |
| Highland Capital Management, LP | 300 Crescent Court, Ste. 700 Dallas, TX 75208 | 4/19/2017 | $330,249.69 | Services |
| Highland Capital Management, LP | 300 Crescent Court, Ste. 700 Dallas, TX 75208 | 5/1/2017 | $974,426.41 | Services |
| Highland Capital Management, LP | 300 Crescent Court, Ste. 700 Dallas, TX 75208 | 5/31/2017 | $2,809,518.47 | Unsecured loan repayments including interest |
| Highland Capital Management, LP | 300 Crescent Court, Ste. 700 Dallas, TX 75208 | 5/31/2017 | $581,036.15 | Services |
| Highland Capital Management, LP | 300 Crescent Court, Ste. 700 Dallas, TX 75208 | 7/18/2017 | $373,167.08 | Contractual Payment |
| Highland Capital Management, LP | 300 Crescent Court, Ste. 700 Dallas, TX 75208 | 8/1/2017 | $971,603.02 | Contractual Payment |
| Highland Capital Management, LP | 300 Crescent Court, Ste. 700 Dallas, TX 75208 | 8/7/2017 | $1,339,422.12 | Services |
| Highland Capital Management, LP | 300 Crescent Court, Ste. 700 Dallas, TX 75208 | 8/16/2017 | $53.41 | Expense Reimbursement |
| Highland Capital Management, LP | 300 Crescent Court, Ste. 700 Dallas, TX 75208 | 10/18/2017 | $372,872.82 | Contractual Payment |
| Highland Capital Management, LP | 300 Crescent Court, Ste. 700 Dallas, TX 75208 | 10/18/2017 | $728,702.26 | Services |
| Highland Capital Management, LP | 300 Crescent Court, Ste. 700 Dallas, TX 75208 | 10/24/2017 | $501,979.18 | Unsecured loan repayments including interest |
| Highland Capital Management, LP | 300 Crescent Court, Ste. 700 Dallas, TX 75208 | 10/25/2017 | $46,648.82 | Expense Reimbursement |
| Highland Capital Management, LP | 300 Crescent Court, Ste. 700 Dallas, TX 75208 | 10/25/2017 | $67,966.85 | Expense Reimbursement |
| Highland Capital Management, LP | 300 Crescent Court, Ste. 700 Dallas, TX 75208 | 11/1/2017 | $967,223.91 | Contractual Payment |

Case 18-30264-sgj11 Doc 3343-2 Filed 09/05/21 Entered 09/05/21 13:08:29 Page 133 of
Case 18-30264-sgj11 Doc 3305 Filed 01/08/48 Entered 01/08/21 23:43:40 Page 132 of 229
230

# Exhibit "2"
## [Redline – Plan Exhibit "A"]

**EXHIBIT "A"**
**to**
**Joint Plan for Acis Capital Management, LP and Acis Capital Management GP, LLC**

1.      <u>Defined Terms</u>.  This Exhibit "A" constitutes an integral part of the Plan of which it is a part.  Defined terms in the Plan are to be given the same meaning in this Exhibit "A".  The rules of construction set forth in Article I.B. of the Plan shall likewise apply to this Exhibit "A".

2.      <u>Estate Claims Reserved, Retained and Preserved</u>.  All Estate Claims are hereby reserved, retained and preserved, and shall all be transferred to, and vested in, the Reorganized Debtor pursuant to this Plan, and shall include without limitation all of the Estate Claims described below.  In reserving, retaining, and preserving Estate Claims against any named Person or category of Persons, it is the intent of this Plan to so reserve, retain, and preserve any and all Estate Claim against each such Person or category of Persons, including all such Estate Claims pursuant to any applicable common law, based on any contract or agreement or based upon any law, statute or regulation of any political entity, including the United States and any state or political subdivision thereof, as well as all applicable remedies, whether legal or equitable.  Without limiting the generality of the foregoing, the reservation, retention, and preservation of Estate Claims against any Person, and the term "<u>Estate Claims</u>," shall encompass all Estate Claims against any such Person, including without limitation, all such Estate Claims for breach of contract, all rights to enforce any contract, any form of estoppel, fraud, constructive fraud, abuse of process, malicious prosecution, defamation, libel, slander, conversion, trespass, intentional infliction of emotional distress or other harm, negligence, gross negligence, negligent misrepresentation, fraudulent misrepresentation, vicarious liability, respondeat superior, breach of any duty owed under either applicable law or any contract, breach of any fiduciary duty or duty of loyalty or due care, aiding and/or abetting breach of fiduciary duty, aiding and/or abetting breach of duty of loyalty or due care, alter ego, veil piercing, self-dealing, usurpation of corporate opportunity, ultra vires, turnover of Estate Assets, unauthorized use of Estate Assets, including intellectual property rights or Assets owned by the Debtors or Chapter 11 Trustee, quantum merit, tortious interference, duress, unconscionability, undue influence, and unjust enrichment, as well as any cause of action for conspiracy to commit any unlawful act, aiding and/or abetting any such unlawful act, or assisting, encouraging, and/or participating in any such unlawful act, or claims arising from or relating to the filing of the involuntary bankruptcy petitions against the Debtors.

3.      <u>Highland Claims</u>.  All Estate Claims against Highland are reserved, retained and preserved for the benefit of the Estate and Reorganized Debtor, including without limitation all such Estate Claims asserted by the Chapter 11 Trustee in Adversary Proceeding No. 18-03078-sgj (the "<u>Highland Adversary</u>") and Adversary Proceeding No. 18-03212-sgj (the "<u>Trustee's Adversary</u>").  The Estate Claims against Highland shall include all Estate Claims set forth in paragraph 2 above, including without limitation, the following:

(a)      All such Claims asserted by the Chapter 11 Trustee or Estate in, or which could be asserted based on the facts or transactions alleged in, the Highland Adversary;

(b)      All such Claims asserted by the Chapter 11 Trustee or Estate in, or which could be asserted based on the facts or transactions alleged in, the Trustee's Adversary;

(c)      All such Claims and Defenses asserted by the Chapter 11 Trustee or Estate, or which could be asserted by the Chapter 11 Trustee or Estate, based on the facts or transactions alleged in any other adversary proceedings or Claim Objections filed by the

Chapter 11 Trustee or Estate;

(d)     All Avoidance Actions against Highland, including any claims to avoid and recover amounts transferred by the Debtors to Highland under the Shared Services Agreement or Sub-Advisory Agreement;

(e)     All Claims for breach of the Shared Services Agreement or Sub-Advisory Agreement;

(f)     All Claims against Highland for amounts paid by the Debtors to Highland under the Shared Services Agreement and Sub-Advisory Agreement, including any Claim that Highland overcharged Acis LP for services under such agreements, charged excessive fees in violation of Acis LP's limited partnership agreement and/or Acis GP's limited liability company agreement, and/or that the Shared Services Agreement and Sub-Advisory Agreement or any related or predecessor agreements are void or voidable based on ultra vires or any other theories of avoidance and recovery, including turnover, conversion and Avoidance Actions under the Bankruptcy Code;

(g)     All Claims for breach of the PMAs or the Indentures;

(h)     All Claims for breach of fiduciary duty or duty of loyalty or due care owed to the Debtors or Chapter 11 Trustee;

(i)     All Claims for aiding and/or abetting breach of fiduciary duty, breach of duty loyalty or due care, or any other unlawful act;

(j)     All Clams for usurpation of a corporate opportunity belonging to either of the Debtors, including in relation to Acis CLO 2017-7, Ltd and any other Acis CLOs;

(k)     All claims for tortious interference, including in relation to Universal-Investment-Luxembourg S.A. and BayVK R2 Lux S.A., SICAV-FIS;

(l)     All Claims against Highland for the turnover of Estate Assets, including Estate property that the Chapter 11 Trustee may use, sell or lease under section 363 of the Bankruptcy Code including, without limitation, any intellectual property rights or Assets owned by the Debtors or Estate, as well as the turnover of any books, documents, records and papers relating to the Debtors' property or financial affairs;

(m)     All Claims against Highland for the unauthorized use of Estate Assets including, without limitation, any intellectual property rights or Assets owned by the Debtors or Estate;

(n)     All Claims, rights or remedies for Equitable Subordination or Recharacterization of any Claim by Highland against the Debtors, Chapter 11 Trustee, or Estate;

(o)     All Claims based on alter ego or rights to pierce the corporate veil of Acis LP as to any Person, including as against Highland or any Affiliates thereof, James D. Dondero, Mark K. Okada, or any other officers, directors, equity interest holders, or Persons otherwise in control of Acis LP;

(p)     All Claims based on alter ego or rights to pierce the corporate veil of

Highland as to any Person, including as against any Affiliates of Highland, James D. Dondero, Mark K. Okada, or any other officers, directors, equity interest holders, or Persons otherwise in control of Highland, and,

(q)     All Claims for conspiracy to commit any unlawful act, aiding and/or abetting any such unlawful act, or assisting, encouraging, and/or participating in any such unlawful act.

4.     HCLOF Claims.  All Estate Claims against HCLOF are reserved, retained and preserved for the benefit of the Estate and Reorganized Debtor, including without limitation all such Estate Claims asserted by the Chapter 11 Trustee in the Highland Adversary and the Trustee's Adversary.  The Estate Claims against HCLOF shall include all Estate Claims set forth in paragraph 2 above, including without limitation, the following:

(a)     All such Claims against HCLOF asserted by the Chapter 11 Trustee or Estate in, or which could be asserted based on the facts or transactions alleged in, the Highland Adversary;

(b)     All such Claims against HCLOF asserted by the Chapter 11 Trustee or Estate in, or which could be asserted based on the facts or transactions alleged in, the Trustee's Adversary;

(c)     All such Claims and Defenses asserted by the Chapter 11 Trustee or Estate, or which could be asserted by the Chapter 11 Trustee or Estate, based on the facts or transactions alleged in any other adversary proceedings or Claim Objections filed by the Chapter 11 Trustee or Estate;

(d)     All Avoidance Actions against HCLOF;

(e)     All Claims for breach of the PMAs or the Indentures;

(f)     All Claims for breach of fiduciary duty or duty of loyalty or due care owed to the Debtors or Chapter 11 Trustee;

(g)     All Claims for aiding and/or abetting breach of fiduciary duty, breach of duty loyalty or due care, or any other unlawful act;

(h)     All Clams for usurpation of a corporate opportunity belonging to either of the Debtors, including in relation to Acis CLO 2017-7, Ltd and any other Acis CLOs;

(i)     All Claims against HCLOF for the turnover of Estate Assets, including Estate property that the Chapter 11 Trustee may use, sell or lease under section 363 of the Bankruptcy Code including, without limitation, any intellectual property rights or Assets owned by the Debtors or Estate, as well as the turnover of any books, documents, records and papers relating to the Debtors' property or financial affairs;

(j)     All Claims against HCLOF for the unauthorized use of Estate Assets including, without limitation, any intellectual property rights or Assets owned by the Debtors or Estate;

(k)     All Claims, rights or remedies for Equitable Subordination or Recharacterization of any Claim by HCLOF against the Debtors, Chapter 11 Trustee, or Estate;

(l)     All Claims based on alter ego or rights to pierce the corporate veil of HCLOF as to any Person, including as against any Affiliates of HCLOF or Highland, William Scott, Heather Bestwick, or any other officers, directors, equity interest holders, or Persons otherwise in control of HCLOF; and,

(m)     All Claims for conspiracy to commit any unlawful act, aiding and/or abetting any such unlawful act, or assisting, encouraging, and/or participating in any such unlawful act.

5.     <u>Highland HCF Advisor, Ltd. Claims</u>.  All Estate Claims against Highland HCF Advisor, Ltd. ("Highland HCF") are reserved, retained and preserved for the benefit of the Estate and Reorganized Debtor, including without limitation all such Estate Claims asserted by the Chapter 11 Trustee in the Highland Adversary.  The Estate Claims against Highland HCF shall include all Estate Claims set forth in paragraph 2 above, including without limitation, the following:

(a)     All such Claims against Highland HCF asserted by the Chapter 11 Trustee or Estate in, or which could be asserted based on the facts or transactions alleged in, the Highland Adversary;

(b)     All such Claims against Highland HCF asserted by the Chapter 11 Trustee or Estate in, or which could be asserted based on the facts or transactions alleged in, the Trustee's Adversary;

(c)     All such Claims and Defenses asserted by the Chapter 11 Trustee or Estate, or which could be asserted by the Chapter 11 Trustee or Estate, based on the facts or transactions alleged in any other adversary proceedings or Claim Objections filed by the Chapter 11 Trustee or Estate;

(d)     All Avoidance Actions against Highland HCF;

(e)     All Claims for breach of fiduciary duty or duty of loyalty or due care owed to the Debtors or Chapter 11 Trustee;

(f)     All Claims for aiding and/or abetting breach of fiduciary duty, breach of duty loyalty or due care, or any other unlawful act;

(g)     All Clams for usurpation of a corporate opportunity belonging to either of the Debtors, including in relation to Acis CLO 2017-7, Ltd and any other Acis CLOs;

(h)     All Claims against Highland HCF for the turnover of Estate Assets, including Estate property that the Chapter 11 Trustee may use, sell or lease under section 363 of the Bankruptcy Code including, without limitation, any intellectual property rights or Assets owned by the Debtors or Estate, as well as the turnover of any books, documents, records and papers relating to the Debtors' property or financial affairs;

(i)     All Claims against Highland HCF for the unauthorized use of Estate Assets including, without limitation, any intellectual property rights or Assets owned by the Debtors or Estate;

(j)     All Claims, rights or remedies for Equitable Subordination or Recharacterization of any Claim by Highland HCF against the Debtors, Chapter 11 Trustee, or

Estate;

(k)     All Claims based on alter ego or rights to pierce the corporate veil of Highland HCF as to any Person, including as against any Affiliates of Highland HCF or Highland, or any other officers, directors, equity interest holders, or Persons otherwise in control of Highland HCF; and,

(l)     All Claims for conspiracy to commit any unlawful act, aiding and/or abetting any such unlawful act, or assisting, encouraging, and/or participating in any such unlawful act.

6.     <u>Highland CLO Management, Ltd. Claims</u>.  All Estate Claims against Highland CLO Management, Ltd. ("<u>Highland CLOM</u>") are reserved, retained and preserved for the benefit of the Estate and Reorganized Debtor, including without limitation all such Estate Claims asserted by the Chapter 11 Trustee in the Highland Adversary.  The Estate Claims against Highland CLOM shall include all Estate Claims set forth in paragraph 2 above, including without limitation the following:

(a)     All such Claims against Highland CLOM asserted by the Chapter 11 Trustee or Estate in, or which could be asserted based on the facts or transactions alleged in, the Highland Adversary;

(b)     All such Claims against Highland CLOM asserted by the Chapter 11 Trustee or Estate in, or which could be asserted based on the facts or transactions alleged in, the Trustee's Adversary;

(c)     All such Claims and Defenses asserted by the Chapter 11 Trustee or Estate, or which could be asserted by the Chapter 11 Trustee or Estate, based on the facts or transactions alleged in any other adversary proceedings or Claim Objections filed by the Chapter 11 Trustee or Estate;

(d)     All Avoidance Actions against Highland CLOM;

(e)     All Claims for breach of fiduciary duty or duty of loyalty or due care owed to the Debtors or Chapter 11 Trustee;

(f)     All Claims for aiding and/or abetting breach of fiduciary duty, breach of duty loyalty or due care, or any other unlawful act;

(g)     All Clams for usurpation of a corporate opportunity belonging to either of the Debtors, including in relation to Acis CLO 2017-7, Ltd and any other Acis CLOs;

(h)     All Claims against Highland CLOM for the turnover of Estate Assets, including Estate property that the Chapter 11 Trustee may use, sell or lease under section 363 of the Bankruptcy Code including, without limitation, any intellectual property rights or Assets owned by the Debtors or Estate, as well as the turnover of any books, documents, records and papers relating to the Debtors' property or financial affairs;

(i)     All Claims against Highland CLOM for the unauthorized use of Estate Assets including, without limitation, any intellectual property rights or Assets owned by the Debtors or Estate;

        (j)     All Claims, rights or remedies for Equitable Subordination or Recharacterization of any Claim by Highland CLOM against the Debtors, Chapter 11 Trustee, or Estate;

        (k)     All Claims based on alter ego or rights to pierce the corporate veil of Highland CLOM as to any Person, including as against any Affiliates of Highland CLOM or Highland, or any other officers, directors, equity interest holders, or Persons otherwise in control of Highland CLOM; and,

        (l)     All Claims for conspiracy to commit any unlawful act, aiding and/or abetting any such unlawful act, or assisting, encouraging, and/or participating in any such unlawful act.

        7.     <u>CLO Holdco, Ltd. Claims</u>.  All Estate Claims against CLO Holdco, Ltd. ("<u>CLO Holdco</u>") are reserved, retained and preserved for the benefit of the Estate and Reorganized Debtor, including without limitation all such Estate Claims asserted by the Chapter 11 Trustee in the Trustee's Adversary.  The Estate Claims against CLO Holdco shall include all Estate Claims set forth in paragraph 2 above, including without limitation, the following:

        (a)     All such Claims against CLO Holdco asserted by the Chapter 11 Trustee or Estate in, or which could be asserted based on the facts or transactions alleged in, the Highland Adversary;

        (b)     All such Claims against CLO Holdco asserted by the Chapter 11 Trustee or Estate in, or which could be asserted based on the facts or transactions alleged in, the Trustee's Adversary;

        (c)     All such Claims and Defenses asserted by the Chapter 11 Trustee or Estate, or which could be asserted by the Chapter 11 Trustee or Estate, based on the facts or transactions alleged in any other adversary proceedings or Claim Objections filed by the Chapter 11 Trustee or Estate;

        (d)     All Avoidance Actions against CLO Holdco;

        (e)     All Claims for breach of fiduciary duty or duty of loyalty or due care owed to the Debtors or Chapter 11 Trustee;

        (f)     All Claims for aiding and/or abetting breach of fiduciary duty, breach of duty loyalty or due care, or any other unlawful act;

        (g)     All Clams for usurpation of a corporate opportunity belonging to either of the Debtors, including in relation to Acis CLO 2017-7, Ltd and any other Acis CLOs;

        (h)     All Claims against CLO Holdco for the turnover of Estate Assets, including Estate property that the Chapter 11 Trustee may use, sell or lease under section 363 of the Bankruptcy Code including, without limitation, any intellectual property rights or Assets owned by the Debtors or Estate, as well as the turnover of any books, documents, records and papers relating to the Debtors' property or financial affairs;

        (i)     All Claims against CLO Holdco for the unauthorized use of Estate Assets including, without limitation, any intellectual property rights or Assets owned by the Debtors or Estate;

Case 18-30264-sgj11 Doc 1343-2 Filed 09/05/21 Entered 09/05/21 13:08:29 Page 140 of 230
Case 18-30264-sgj11 Doc 3605 Filed 01/31/18 Entered 01/31/18 13:48:26 Page 138 of 229
230

(j)    All Claims, rights or remedies for Equitable Subordination or Recharacterization of any Claim by Highland against the Debtors, Chapter 11 Trustee, or Estate;

(k)    All Claims based on alter ego or rights to pierce the corporate veil of CLO Holdco as to any Person, including as against any Affiliates of CLO Holdco or Highland, or any other officers, directors, equity interest holders, or Persons otherwise in control of CLO Holdco; and,

(l)    All Claims for conspiracy to commit any unlawful act, aiding and/or abetting any such unlawful act, or assisting, encouraging, and/or participating in any such unlawful act.

8.    <u>Neutra, Ltd. Claims</u>.  All Estate Claims against Neutra, Ltd. ("<u>Neutra</u>") are reserved, retained and preserved for the benefit of the Estate and Reorganized Debtor, including without limitation all such Estate Claims asserted by the Chapter 11 Trustee in the Trustee's Adversary.  The Estate Claims against Neutra shall include all Estate Claims set forth in paragraph 2 above, including without limitation the following:

(a)    All such Claims against Neutra asserted by the Chapter 11 Trustee or Estate in, or which could be asserted based on the facts or transactions alleged in, the Highland Adversary;

(b)    All such Claims against Neutra asserted by the Chapter 11 Trustee or Estate in, or which could be asserted based on the facts or transactions alleged in, the Trustee's Adversary;

(c)    All such Claims and Defenses asserted by the Chapter 11 Trustee or Estate, or which could be asserted by the Chapter 11 Trustee or Estate, based on the facts or transactions alleged in any other adversary proceedings or Claim Objections filed by the Chapter 11 Trustee or Estate;

(d)    All Avoidance Actions against Neutra;

(e)    All Claims for breach of fiduciary or duty of loyalty or due care owed to the Debtors or Chapter 11 Trustee;

(f)    All Claims for aiding and/or abetting breach of fiduciary duty, breach of duty loyalty or due care, or any other unlawful act;

(g)    All Clams for usurpation of a corporate opportunity belonging to either of the Debtors, including in relation to Acis CLO 2017-7, Ltd and any other Acis CLOs;

(h)    All Claims against Neutra for the turnover of Estate Assets, including Estate property that the Chapter 11 Trustee may use, sell or lease under section 363 of the Bankruptcy Code including, without limitation, any intellectual property rights or Assets owned by the Debtors or Estate, as well as the turnover of any books, documents, records and papers relating to the Debtors' property or financial affairs;

(i)    All Claims against Neutra for the unauthorized use of Estate Assets

Case 18-30264-sgj11 Doc 1343-2 Filed 09/05/21 Entered 09/05/21 13:08:29 Page 141 of 295
Case 18-30264-sgj11 Doc 3609 Filed 01/03/20 Entered 01/03/20 13:48:08 Page 48 of 229
230

including, without limitation, any intellectual property rights or Assets owned by the Debtors or Estate;

      (j)    All Claims, rights or remedies for Equitable Subordination or Recharacterization of any Claim by Neutra against the Debtors, Chapter 11 Trustee, or Estate;

      (k)    All Claims based on alter ego or rights to pierce the corporate veil of Acis LP as to any Person, including as against Neutra, Highland, or any Affiliates thereof, James D. Dondero, Mark K. Okada, or any other officers, directors, equity interest holders, or Persons otherwise in control of Acis LP;

      (l)    All Claims based on alter ego or rights to pierce the corporate veil of Neutra as to any Person, including as against any Affiliates of Neutra or Highland, or any other officers, directors, equity interest holders, or Persons otherwise in control of Neutra; and,

      (m)    All Claims for conspiracy to commit any unlawful act, aiding and/or abetting any such unlawful act, or assisting, encouraging, and/or participating in any such unlawful act.

      9.    <u>Claims against Issuers, Co-Issuers and Indenture Trustee</u>.  All Estate Claims against CLO-3, CLO-4, CLO-5, and CLO-6 (collectively, the "Issuers"), Acis CLO 2014-3 LLC, Acis CLO 2014-4 LLC, Acis CLO 2014-5 LLC, and Acis CLO 2015-6 LLC (collectively, the "Co-Issuers"), and the Indenture Trustee are reserved, retained and preserved for the benefit of the Estate and Reorganized Debtor, including without limitation all such Estate Claims asserted by the Chapter 11 Trustee in the Trustee's Adversary.  The Estate Claims against the Issuers, Co-Issuers and/or Indenture Trustee shall include all Estate Claims set forth in paragraph 2 above, including without limitation the following:

      (a)    All such Claims against the Issuers, Co-Issuers, and/or Indenture Trustee asserted by the Chapter 11 Trustee or Estate in, or which could be asserted based on the facts or transactions alleged in, the Highland Adversary;

      (b)    All such Claims against the Issuers, Co-Issuers, and/or Indenture Trustee asserted by the Chapter 11 Trustee or Estate in, or which could be asserted based on the facts or transactions alleged in, the Trustee's Adversary;

      (c)    All such Claims and Defenses asserted by the Chapter 11 Trustee or Estate, or which could be asserted by the Chapter 11 Trustee or Estate, based on the facts or transactions alleged in any other adversary proceedings or Claim Objections filed by the Chapter 11 Trustee or Estate;

      (d)    All Avoidance Actions against the Issuers, Co-Issuers and/or Indenture Trustee;

      (e)    All Claims for breach of the Indentures, PMAs or any other agreements between Acis LP and the Issuers, Co-Issuers, and/or Indenture Trustee;

      (f)    All Claims for breach of fiduciary duty or duty of loyalty or due care owed to the Debtors or Chapter 11 Trustee;

      (g)    All Claims for aiding and/or abetting breach of fiduciary duty, breach of duty loyalty or due care, or any other unlawful act;

(h)      All Clams for usurpation of a corporate opportunity belonging to either of the Debtors, including in relation to Acis CLO 2017-7, Ltd and any other Acis CLOs;

(i)      All Claims against the Issuers, Co-Issuers and/or Indenture Trustee for the turnover of Estate Assets, including Estate property that the Chapter 11 Trustee may use, sell or lease under section 363 of the Bankruptcy Code including, without limitation, any intellectual property rights or Assets owned by the Debtors or Estate, as well as the turnover of any books, documents, records and papers relating to the Debtors' property or financial affairs;

(j)      All Claims against the Issuers, Co-Issuers and/or Indenture Trustee for the unauthorized use of Estate Assets including, without limitation, any intellectual property rights or Assets owned by the Debtors or Estate;

(k)      All Claims, rights or remedies for Equitable Subordination or Recharacterization of any Claim by the Issuers or Co-Issuers against the Debtors, Chapter 11 Trustee, or Estate; and,

(l)      All Claims for conspiracy to commit any unlawful act, aiding and/or abetting any such unlawful act, or assisting, encouraging, and/or participating in any such unlawful act.

10.      <u>Highland Affiliate Claims</u>.  All Estate Claims against any Affiliates of Highland are reserved, retained and preserved for the benefit of the Estate and Reorganized Debtor, including without limitation all such Estate Claims asserted by the Chapter 11 Trustee in the Highland Adversary and the Trustee's Adversary.  The Estate Claims against any Affiliates of Highland shall include all Estate Claims set forth in paragraph 2 above, including without limitation the following:

(a)      All such Claims against any Highland Affiliate asserted by the Chapter 11 Trustee or Estate in, or which could be asserted based on the facts or transactions alleged in, the Highland Adversary;

(b)      All such Claims against any Highland Affiliate asserted by the Chapter 11 Trustee or Estate in, or which could be asserted based on the facts or transactions alleged in, the Trustee's Adversary;

(c)      All such Claims and Defenses asserted by the Chapter 11 Trustee or Estate, or which could be asserted by the Chapter 11 Trustee or Estate, based on the facts or transactions alleged in any other adversary proceedings or Claim Objections filed by the Chapter 11 Trustee or Estate;

(d)      All Avoidance Actions against any Highland Affiliate;

(e)      All Claims for breach of fiduciary duty or duty of loyalty or due care owed to the Debtors or Chapter 11 Trustee;

(f)      All Claims for aiding and/or abetting breach of fiduciary duty, breach of duty loyalty or due care, or any other unlawful act;

(g)      All Clams for usurpation of a corporate opportunity belonging to either of the Debtors, including in relation to Acis CLO 2017-7, Ltd and any other Acis CLOs;

Case 18-30264-sgj11 Doc 1343-2 Filed 09/05/21 Entered 09/05/21 23:08:20 Page 143 of
230
Case 18-30264-sgj11 Doc 3605 Filed 01/04/24 Entered 01/04/24 23:08:20 Page 131 of 219

(h)      All Claims against any Highland Affiliate for the turnover of Estate Assets, including Estate property that the Chapter 11 Trustee may use, sell or lease under section 363 of the Bankruptcy Code including, without limitation, any intellectual property rights or Assets owned by the Debtors or Estate, as well as the turnover of any books, documents, records and papers relating to the Debtors' property or financial affairs;

(i)      All Claims against any Highland Affiliate for the unauthorized use of Estate Assets including, without limitation, any intellectual property rights or Assets owned by the Debtors or Estate;

(j)      All Claims, rights or remedies for Equitable Subordination or Recharacterization of any Claim by any Highland Affiliate against the Debtors, Chapter 11 Trustee, or Estate;

(k)      All Claims based on alter ego or rights to pierce the corporate veil of Acis LP as to any Person, including as against Highland, Neutra, or any Affiliates thereof, James D. Dondero, Mark K. Okada, or any other officers, directors, equity interest holders, or Persons otherwise in control of Acis LP;

(l)      All Claims based on alter ego or rights to pierce the corporate veil of any Highland Affiliate as to any Person, including as against any other Affiliates of Highland or any officers, directors, equity interest holders, or Persons otherwise in control of any Highland Affiliates; and,

(m)      All Claims for conspiracy to commit any unlawful act, aiding and/or abetting any such unlawful act, or assisting, encouraging, and/or participating in any such unlawful act.

11.    <u>Dondero Claims</u>. All Estate Claims as defined in paragraph 2 above against James D. Dondero, individually, are hereby reserved, retained and preserved for the benefit of the Estate and Reorganized Debtor, including without limitation all such Estate Claims against James D. Dondero for fraud, constructive fraud, breach of fiduciary duty, breach of duty of loyalty or due care, aiding and abetting breach of fiduciary duty, aiding and abetting breach of duty of loyalty or due care, self-dealing, ultra vires, conversion, usurpation of corporate opportunity, including in relation to Acis CLO 2017-7, Ltd and any other Acis CLOs, tortious interference, including in relation to Universal-Investment-Luxembourg S.A. and BayVK R2 Lux S.A., SICAV-FIS, conflict of interest, negligence, gross negligence, all Avoidance Actions, breach of contract, breach of the Shared Services Agreement, breach of the Sub-Advisory Agreement, breach of the Debtors' limited partnership agreement or limited liability company agreement, conspiracy to commit any unlawful act, aiding and abetting any unlawful act, and assisting, encouraging, and/or participating in any unlawful act, as well as any Claim to pierce the corporate veil of any entity to hold James D. Dondero individually liable.

12.    <u>Okada Claims</u>. All Estate Claims as defined in paragraph 2 above against Mark K. Okada, individually, are hereby reserved, retained and preserved for the benefit of the Estate and Reorganized Debtor, including without limitation all such Estate Claims against Mark K. Okada for fraud, constructive fraud, breach of fiduciary duty, breach of duty of loyalty or due care, aiding and abetting breach of fiduciary duty, self-dealing, ultra vires, conversion, usurpation of corporate opportunity, including in relation to Acis CLO 2017-7, Ltd and any other Acis CLOs, tortious interference, including in relation to Universal-Investment-Luxembourg S.A. and BayVK R2 Lux S.A., SICAV-FIS, conflict of interest, negligence, gross negligence, all

Avoidance Actions, breach of contract, breach of the Shared Services Agreement, breach of the Sub-Advisory Agreement, breach of the Debtors' limited partnership agreement or limited liability company agreement, conspiracy to commit any unlawful act, aiding and abetting any unlawful act, and assisting, encouraging, and participating in any unlawful act, as well as any Claim to pierce the corporate veil of any entity to hold Mark K. Okada individually liable.

13.  Preference Claims.  All Avoidance Actions pursuant to section 547 of the Bankruptcy Code against any Person are hereby reserved, retained and preserved for the benefit of the Estate and Reorganized Debtor for any payment made to any Person by either of the Debtors within ninety (90) days of the Petition Date (which was January 30, 2018), or made by either of the Debtors to any insider within one (1) year of the Petition Date.  A non-exhaustive list of Persons who are believed to have received payments from either of the Debtors during the 90-day preference period, and the one-year preference period for Insiders, is attached to this **Exhibit "A"** as **Schedule "1"**.  The Plan reserves, retains and preserves for the benefit of the Estate and Reorganized Debtor all potential Claims arising out of or relating to the transfers reflected in **Schedule "1"**, including all Avoidance Actions pursuant to section 547 of the Bankruptcy Code.  All rights and remedies are also reserved. retained and preserved with respect to the transfers reflected in **Schedule "1"** pursuant to section 550 of the Bankruptcy Code.

**Schedule "1"** reflects transfers made by the Debtors during the 90 days prior to the Petition Date and transfers made by the Debtors to any insiders within one (1) year of the Petition Date.  While the Plan reserves, retains and preserves all Avoidance Actions relating to the transfers reflected in **Schedule "1"**, the Chapter 11 Trustee recognizes that certain of these transfers may not constitute a preferential transfer pursuant to section 547(b) of the Bankruptcy Code as a transfer made in the ordinary course of business transactions or based upon new value subsequently given by the transferee.  Consequently, the listing of a payment on **Schedule "1"** does not necessarily mean that a transferee will ever be sued to avoid and recover the payment, the transfer, or the value thereof, but only that the Plan reserves, retains and preserves all rights (including Avoidance Actions) as to that payment.

14.  Claims Against Officers, Managers and Members.  All Estate Claims as defined in paragraph 2 above are hereby reserved, retained and preserved for the benefit of the Estate and Reorganized Debtor against all present and past officers, employees, members and managers of the Debtors, including all such Estate Causes of Action based on breach of fiduciary duty, aiding and abetting breach of fiduciary duty, breach of duty of loyalty or due care, aiding and abetting breach of duty of loyalty or due care, self-dealing, usurpation of corporate opportunity, gross negligence or conspiracy.  Without limiting the generality of the foregoing, this shall include all D&O Claims as against any present or former officer, director, employee, member, manager, or partner.

15.  Claims Against Former Attorneys and Law Firms.  All Estate Claims as defined in paragraph 2, above, including Claims for breach of any fiduciary duty or duty of loyalty or due care, conspiracy to commit any unlawful act, aiding and/or abetting any such unlawful act, or assisting, encouraging, and/or participating in any such unlawful act, including knowingly aiding, abetting, or assisting with a fraudulent transfer to avoid paying a judgment, negligent or fraudulent misrepresentation, vicarious liability, and respondeat superior, as well as all Claims for legal or professional malpractice, are hereby reserved, retained and preserved for the benefit of the Estate and Reorganized Debtor against all law firms and attorneys who and which rendered legal services to the Debtors on a prepetition basis including, but not limited to, the following:

Case 18-30264-sgj11 Doc 1343-2 Filed 09/05/21 Entered 09/05/21 13:08:29 Page 145 of 230
Case 18-30264-sgj11 Doc 1809 Filed 01/08/20 Entered 01/08/20 21:41:34 Page 193 of 229
230

    (a)     Cole Schotz, P.C.

    (b)     Michael D. Warner

    (c)     Jacob Frumkin

    (d)     Warren A. Usatine

    (e)     McKool Smith

    (f)     Gary Cruciani

    (g)     Michael Fritz

    (h)     Carson Young

    (i)     Lackey Hershman, LLP

    (j)     Stinson Leonard Street LLP

    (k)     Paul Lackey, Esq.

    (l)     Michael Aigen, Esq.

    (m)    Abrams & Bayliss, LLP

    (n)     Kevin G. Abrams

    (o)     A. Thompson Bayliss

    (p)     Jones Day

    (q)     Hilda C. Galvan

    (r)     Michael Weinberg

    (s)     Reid Collins & Tsai, LLP

    (t)     Lisa Tsai

    (u)     Stanton, LLP

    (v)     James M. Stanton

    (w)    Hunton Andrews Kurth

    (x)     Marc Katz

    (y)     Greg Waller

    (z)     any other law firm or attorney who may be so named at a later date by the Reorganized Debtor.

---

~~15.~~16.  Retention of Claims Against Specific Persons or Categories of Persons.  In addition to the foregoing, all Estate Claims as defined in paragraph 2 above are hereby reserved, retained and preserved for the benefit of the Estate and Reorganized Debtor against the following Persons:

        (a)     William Scott;

        (b)     Heather Bestwick;

        (c)     Any other Person who may be so named at a later date by the Reorganized Debtor.

~~16.~~17.  Counterclaims.  All Estate Claims as defined in paragraph 2 above are reserved, retained and preserved for the benefit of the Estate and Reorganized Debtor both as a basis for an affirmative recovery against the Person against whom such Claims are asserted and as a counterclaim or offset against any Person who asserts a Claim against the Estate or Reorganized Debtor.

~~17.~~18.  Piercing the Corporate Veil.  With respect to all Estate Claims against any Person, all rights to pierce or ignore the corporate veil are hereby reserved, retained and preserved for the benefit of the Estate and the Reorganized Debtor.  Without limiting the generality of the foregoing, this shall include: (a) any right to pierce the corporate veil, including reverse piercing, on any theory or basis, including alter ego or any theory of sham to perpetrate a fraud, and (b) any Claim or basis to pierce the corporate veil of any entity with respect to establishing personal liability against James D. Dondero or Mark K. Okada.

~~18.~~19.  Avoidance Actions.  All Avoidance Actions are hereby reserved, retained and preserved as to all Persons.  The reservation, retention and preservation of such Avoidance Actions shall include the reservation, retention and preservation for the benefit of the Estate and Reorganized Debtor of all rights and remedies pursuant to section 550 of the Bankruptcy Code.

~~19.~~20.  Estate Defenses.  All Estate Defenses are hereby reserved, retained and preserved in favor of the Estate and Reorganized Debtor as against any Person asserting any Claim against the Estate.  This includes asserting all Estate Claims as an offset to, or counterclaim or right of recoupment against, any Person asserting a Claim against the Estate.  All defenses and affirmative defenses pursuant to applicable law are hereby reserved, retained and preserved for the benefit of the Estate and the Reorganized Debtor, including without limitation, accord and satisfaction, assumption of risk, contributory negligence, duress, estoppel, failure of consideration, fraud, illegality, laches, license, payment, release, *res judicata*, collateral estoppel, statute of frauds, statute of limitations or repose, discovery rule, adverse domination doctrine or similar doctrines, set off, recoupment, waiver, and all other defenses to Claims under the Bankruptcy Code, including under sections 502(b)(4) and 502(d).

~~20.~~21.  Equitable Subordination.  All rights or remedies for Equitable Subordination are hereby reserved, retained and preserved in favor of the Estate and Reorganized Debtor against any Person asserting any Claim against the Estate, including all such rights or remedies pursuant to section 510(c) of the Bankruptcy Code.  Without limiting the generality of the foregoing, this shall include all rights and remedies to Equitable Subordination as to any Claim asserted by Highland, any Affiliates of Highland, or any officers, directors, employees or equity

Case 18-30264-sgj11 Doc 1343-2 Filed 09/05/21 Entered 09/05/21 12:08:20 Page 147 of 291
Case 18-30264-sgj11 Doc 3805 Filed 01/02/48 Entered 01/02/48 21:48:40 Page 96 of 299
230

interest owners of the Debtors, Highland, or any Affiliates thereof.

21. 22. **Recharacterization**. All rights or remedies to recharacterize any Claim as an equity interest in either of the Debtors are hereby reserved, retained and preserved in favor of the Estate and Reorganized Debtor against any Person asserting any Claim against the Estate. Without limiting the generality of the foregoing, this shall include all rights and remedies to recharacterize any Claim asserted by Highland, any Affiliates of Highland, or any officers, directors, employees or equity interest owners of the Debtors, Highland, or any Affiliates thereof.

Schedule A to Exhibit A

Third Amended Joint Plan for Acis Capital Management, LP and Acis Capital Management GP, LLC

| NAME | ADDRESS | DATE OF PAYMENT | PAYMENT AMOUNT | REASON FOR PAYMENT ON SCHEDULES |
|------|---------|-----------------|----------------|-------------------------------|
| **Payments within 90 Days of Petition Date** | | | | |
| Highland Capital Management, LP | 300 Crescent Court, Ste. 700 Dallas, TX 75208 | 11/2/2017 | $234,013.63 | Services |
| Highland Capital Management, LP | 300 Crescent Court, Ste. 700 Dallas, TX 75208 | 11/3/2017 | $941,958.57 | Services |
| Highland Capital Management, LP | 300 Crescent Court, Ste. 700 Dallas, TX 75208 | 12/8/2017 | $89,655.14 | Services |
| David Simek | 31 Woodacres Road Brookville, NY 11545 | 11/15/2017 | $2,068.13 | Services |
| David Simek | 31 Woodacres Road Brookville, NY 11545 | 11/30/2017 | $24,266.71 | Services |
| David Simek | 31 Woodacres Road Brookville, NY 11545 | 12/12/2017 | $1,718.79 | Services |
| David Simek | 31 Woodacres Road Brookville, NY 11545 | 12/29/2017 | $25,000.00 | Services |
| FINRA | 1735 K Street, NW Washington, DC 20006 | 11/22/2017 | $70.00 | Suppliers or Vendors |
| Highland CLO Management, Ltd. | PO Box 309, Ugland House Grand Cayman, KY1-1104, Cayman Islands | 12/19/2017 | $2,830,459.22 | Services |
| **Payments to Insiders within One Year of Petition Date** | | | | |
| Highland Capital Management, LP | 300 Crescent Court, Ste. 700 Dallas, TX 75208 | 2/1/2017 | $976,688.47 | Contractual Payment |
| Highland Capital Management, LP | 300 Crescent Court, Ste. 700 Dallas, TX 75208 | 2/1/2017 | $1,096,033.37 | Services |
| Highland Capital Management, LP | 300 Crescent Court, Ste. 700 Dallas, TX 75208 | 2/2/2017 | $3,574.80 | Expense Reimbursement |
| Highland Capital Management, LP | 300 Crescent Court, Ste. 700 Dallas, TX 75208 | 2/14/2017 | $67.44 | Expense Reimbursement |
| Highland Capital Management, LP | 300 Crescent Court, Ste. 700 Dallas, TX 75208 | 4/17/2017 | $315,574.30 | Services |
| Highland Capital Management, LP | 300 Crescent Court, Ste. 700 Dallas, TX 75208 | 4/18/2017 | $438,497.51 | Services |

Third Amended Joint Plan for Acis Capital Management, LP and Acis Capital Management GP, LLC

Schedule A to Exhibit A

| NAME | ADDRESS | DATE OF PAYMENT | PAYMENT AMOUNT | REASON FOR PAYMENT ON SCHEDULES |
|------|---------|-----------------|----------------|----------------------------------|
| Highland Capital Management, LP | 300 Crescent Court, Ste. 700 Dallas, TX 75208 | 4/18/2017 | $375,855.01 | Contractual Payment |
| Highland Capital Management, LP | 300 Crescent Court, Ste. 700 Dallas, TX 75208 | 4/19/2017 | $330,249.69 | Services |
| Highland Capital Management, LP | 300 Crescent Court, Ste. 700 Dallas, TX 75208 | 5/1/2017 | $974,426.41 | Services |
| Highland Capital Management, LP | 300 Crescent Court, Ste. 700 Dallas, TX 75208 | 5/31/2017 | $2,809,518.47 | Unsecured loan repayments including interest |
| Highland Capital Management, LP | 300 Crescent Court, Ste. 700 Dallas, TX 75208 | 5/31/2017 | $581,036.15 | Services |
| Highland Capital Management, LP | 300 Crescent Court, Ste. 700 Dallas, TX 75208 | 7/18/2017 | $373,167.08 | Contractual Payment |
| Highland Capital Management, LP | 300 Crescent Court, Ste. 700 Dallas, TX 75208 | 8/1/2017 | $971,603.02 | Contractual Payment |
| Highland Capital Management, LP | 300 Crescent Court, Ste. 700 Dallas, TX 75208 | 8/7/2017 | $1,339,422.12 | Services |
| Highland Capital Management, LP | 300 Crescent Court, Ste. 700 Dallas, TX 75208 | 8/16/2017 | $53.41 | Expense Reimbursement |
| Highland Capital Management, LP | 300 Crescent Court, Ste. 700 Dallas, TX 75208 | 10/18/2017 | $372,872.82 | Contractual Payment |
| Highland Capital Management, LP | 300 Crescent Court, Ste. 700 Dallas, TX 75208 | 10/18/2017 | $728,702.26 | Services |
| Highland Capital Management, LP | 300 Crescent Court, Ste. 700 Dallas, TX 75208 | 10/24/2017 | $501,979.18 | Unsecured loan repayments including interest |
| Highland Capital Management, LP | 300 Crescent Court, Ste. 700 Dallas, TX 75208 | 10/25/2017 | $46,648.82 | Expense Reimbursement |
| Highland Capital Management, LP | 300 Crescent Court, Ste. 700 Dallas, TX 75208 | 10/25/2017 | $67,966.85 | Expense Reimbursement |
| Highland Capital Management, LP | 300 Crescent Court, Ste. 700 Dallas, TX 75208 | 11/1/2017 | $967,223.91 | Contractual Payment |

# Exhibit "3"
## [Service Lists]

Case 18-30264-sgj11 Doc 3343-2 Filed 09/05/21 Entered 09/05/21 23:08:20 Page 151 of 230
Case 18-30264-sgj11 Doc 3609 Filed 01/28/22 Entered 01/28/22 23:48:40 Page 150 of 229
230

# Notice Service List
## Acis Capital Mgmt./Phelan
### #5980

**BNP Paribas Securities Services**
**Luxembourg Branch**
**60 Avenue John F. Kennedy**
**1855 Luxembourg**

United States Trustee
Lisa Lambert
1100 Commerce St., Room 976
Dallas, TX 75242

Acis CLO 2013-1 Chemical Holdings, LLC
Acis CLO 2013-2 Chemical Holdings, LLC
Acis CLO 2014-3 Chemical Holdings, LLC
1209 Orange Street
Wilmington, DE 19801-1120

Dallas County
c/o Laurie Spindler
Linebarger, Goggan, Blair & Sampson LLP
2777 N Stemmons Frwy, No 1000
Dallas, TX 75207-2328

Dallas County
c/o Sherrel K Knighton
Linebarger Goggan Blair & Sampson, LLP
2777 N. Stemmons Frwy Ste 1000
Dallas, TX 75207-2328

Acis CLO 2014-4 Chemical Holdings, LLC
Acis CLO 2014-5 Chemical Holdings, LLC
Acis CLO 2015-6 Chemical Holdings, LLC
1209 Orange Street
Wilmington, DE 19801-1120

Acis CLO Management, LLC
Acis CLO Value GP, LLC
1209 Orange Street
Wilmington, DE 19801-1120

**Acis CLO Value Fund II (Cayman), L.P.**
**Acis CLO Value Fund II GP, LLC**
**Acis CLO Value Master Fund II, L.P.**
**PO Box 309, Ugland House**
**Grand Cayman, Cayman Islands KY1-1104**

Acis CLO Value Fund II, L.P.
Acis Loan Funding, Ltd.
Acis Capital Management GP, LLC
300 Crescent Court, Suite 700
Dallas, TX 75201-7849

**Acis Funding GP, Ltd.**
**Acis Funding L.P.**
**c/o Maples Corporate Services Limited**
**P0 Box 309, Ugland House**
**Grand Cayman, Cayman Islands KY1 -1104**

**CLO Holdco, Ltd.**
**c/o Intertrust Corp. Srvs. (Cayman) Ltd.**
**190 Elgin Ave., George Town**
**Grand Cayman, Cayman Islands KY1-9005**

**State Street (Guernsey) Limited**
**First Floor Dorey Court**
**Admiral Park, St. Peter Port, Guernsey**

Mizuho Securities USA Inc.
320 Park Ave., 12th Floor
New York, NY 10022-6848

U. S. Bank National Association
Attn: Michael Zak
60 Livingston Ave., EP-MN-WS3D
Saint Paul, MN 55107-2292

The Dugaboy Investment Trust
300 Crescent Court, Suite700
Dallas, TX 75201-1876

US Bank National Association
c/o Daniel P. Novakov
Frost Brown Todd LLC
100 Crescent Court, Suite 350
Dallas, TX 75201-2348

US Bank National Association
c/o Mark D. Kotwick, Arlene Alves
Seward & Kissell LLP
One Battery Park Plaza
New York, NY 10004-1405

Acis Capital Management, LP
c/o Michael D. Warner
Cole Schotz P.C.
1700 City Center Tower II
301 Commerce St.
Fort Worth, TX 76102-4140

Robin Phelan, Chapter 11 Trustee
Phelenlaw
4214 Woodfin Drive
Dallas, TX 75220-6416

Acis Capital Management, LP
c/o Warren A. Usatine
Cole Schotz P.C.
25 Main Street
Hackensack, NJ 07601-7189

The Bank of N.Y. Mellon Trust Co., N.A.
225 Liberty Street
New York, NY 10286-0001

Texas Comptroller of Public Accounts
c/o John M. Stern, Asst. Attorney General
Bankruptcy & Collection Div. MC 008
PO Box 12548
Austin, TX 78711-2548

Securities and Exchange Commission
801 Cherry Street, Suite 1900, Unit 18
Fort Worth, TX 76102

**BayVK R2 Lux S.A., SICAV-FIS**
**15 Rue de Flaxweiler**
**L-6776 Grevenmacher**
**Luxembourg**

Office of the United States Attorney
3rd Floor, 1100 Commerce Street
Dallas, Texas 75242-1699

Office of the Attorney General
Main Justice Building, Room 5111
10th & Constitution Avenue, N.W.
Washington, D.C. 20530

Internal Revenue Service
Special Procedures – Insolvency
P.O. Box 7346
Philadelphia, PA 1901-7346

US Bank
PO Box 5229
Cincinnati, OH 45201-5229

**Universal-Investment-Luxembourg S.A.**
**15 Rue de Flaxweiler**
**L-6776 Grevenmacher**
**Luxembourg**

Universal-Inv.-Luxembourg SA/BayVK R2 Lux
c/o Andrew Zollinger
DLA Piper LLP
1717 Main St., Suite 4600
Dallas, TX 75201-4629

Diane G. Reed
Reed & Elmquist, PC
501 N. College St.
Waxahachie, TX 75165-3361

**Hewett's Island CLO I-R, Ltd.**
**c/o Maples Finance Limited**
**PO Box 1093, Queensgate House**
**South Church St., George Town**
**Grand Cayman, Cayman Island KY1-1102**

Universal-Inv.-Luxembourg SA/BayVK R2 Lux
c/o Thomas Califano/Shmuel Klahr
DLA Piper LLP
1251 Avenue of the Americas
New York, NY 10020-1104

Diane G. Reed
c/o David W. Elmquist
Reed & Elmquist, PC
501 N. College St.
Waxahachie, TX 75165-3361

**Highland HCF Advisor, Ltd.**
**c/o Maples Corporate Services, Ltd.**
**P.O. Box 309, Ugland House,**
**South Church Street, George Town**
**Grand Cayman, Cayman Island KY1-1004**

Highland HCF Advisor, Ltd.
c/o James Dondero, President
300 Crescent Court, Suite 700
Dallas, TX 75201

**Highland CLO Management, Ltd.**
**c/o Maples Corporate Services, Ltd.**
**P.O. Box 309, Ugland House,**
**South Church Street, George Town**
**Grand Cayman, Cayman Island KY1-1004**

Highland CLO Management, Ltd.
c/o Strand Advisors, Inc., Attn. James Dondero
300 Crescent Court, Suite 700
Dallas, TX 75201

Highland CLO Management, Ltd.
c/o Strand Advisors, Inc.
Corporation Trust Center
1209 Orange Street
Wilmington, DE 19801

**Acis CLO 2013-1 Ltd.**
**Acis CLO 2013-2**
**c/o Estera Trust (f/k/a Appleby Trust)**
**Clifton House 75 Fort St., P.O. Box 1350**
**Grand Cayman, Cayman Islands KY 1-1108**

U.S. Bank National Association
Attention: Global Corporate Trust –
Acis CLO 2013-1 and 2013-2190 S. LaSalle
Street, 8th Floor
Chicago, IL 60603

Acis CLO 2013-1 LLC
Acis CLO 2013-2 LLC
850 Library Ave., Suite 204
Newark, DE 19711

**Acis CLO 2014-3 Ltd.**
**Acis CLO 2014-4 Ltd.**
**c/o MaplesFS Limited**
**P.O. Box 1093, Boundary Hall, Cricket Sq**
**Grand Cayman, Cayman Islands KY1-1102**

U.S. Bank National Association
Attention: Global Corporate Trust –
Acis CLO 2014-3 and 2014-4190 S. LaSalle
Street, 8th Floor
Chicago, IL 60603

Acis CLO 2014-3 LLC
Acis CLO 2014-4
850 Library Ave., Suite 204
Newark, DE 19711

**Acis CLO 2014-5 Ltd.**
**Acis CLO 2015-6 Ltd.**
**c/o MaplesFS Limited**
**P.O. Box 1093, Boundary Hall, Cricket Sq**
**Grand Cayman, Cayman Islands KY1-1102**

U.S. Bank National Association
Attention: Global Corporate Trust –
Acis CLO 2014-5 and Acis CLO 2015-6190 S.
LaSalle Street, 8th Floor
Chicago, IL 60603

Acis CLO 2014-5 LLC
Acis CLO 2015-6 LLC
850 Library Ave., Suite 204
Newark, DE 19711

**Acis CLO 2015-6 Ltd.**
**P.O. Box 1093, Boundary Hall, Cricket Sq**
**Grand Cayman, KY1-1102, Cayman Islands**

Deutsche Bank Trust Company Americas
Attn: CDO Business Unit – Hewett's
Island CLO 1-R
1761 East St. Andrew Place
Santa Ana, CA 92705

**Acis Loan Funding, Ltd.**
**First Floor, Dorey Court**
**St. Peter Port, Guernsey GYI 6HJ**
**Channel Islands**

**Acis CLO 2017-7 Ltd.**
**c/o MapleFS Limited, Attn: Directors**
**PO Box 1093, Boundary Hall, Cricket Sq.**
**Grand Cayman, Cayman Islands KY1 -1102**

*Highlands Service List*
*ACIS #5980*

Highland CLO Funding, Ltd.
c/o Paul R. Bessette/Rebecca Matsumura
King & Spalding LLP
500 West 2nd St., Suite 1800
Austin, TX 78701-4684

Highland CLO Funding, Ltd.
c/o Daniel Elms/Heather Jobe/Scott Larson
Bell Nunnally & Martin LLP
3232 McKinney Ave., Suite 1400
Dallas, TX 75204

Highland CLO Funding Ltd.
c/o Mark M. Maloney/W. Austin Jowers
King & Spalding LLP
1180 Peachtree Street NE
Atlanta, GA 30309

Highland CLO Funding, Ltd.
c/o Michael K. Hurst/Ben A. Barnes
Lynn Pinker Cox & Hurst LLP
2100 Ross Ave., Suite 2700
Dallas, TX 75201

Highland CLO Funding, Ltd.
c/o H. O'Neil, J. Binford, S. Beck, M. Bales
Foley Gardere Foley & Lardner, LLP
2021 McKinney Ave., Suite 1600
Dallas, TX 75201

**Highland CLO Funding, Ltd.**
**First Floor, Dorey Court**
**Admiral Park, St. Peter Port**
**Guernsey GY1 6HJ, Channel Islands**

Highland CLO Management, Ltd.
c/o Strand Advisors, Inc.
Corporation Trust Center
1209 Orange Street
Wilmington, DE 19801

**Highland CLO Management, Ltd.**
**c/o Maples Corporate Services, Ltd.**
**P.O. Box 309, Ugland House,**
**South Church Street, George Town**
**Grand Cayman, Cayman Island KY1-1004**

**Highland CLO Management, Ltd.**
**P.O. Box 309 Ugland House**
**South Church Street**
**George Town, Grand Cayman KY1-1004**

**Highland CLO Management, Ltd.**
**c/o Summit Management Ltd.**
**P.O. Box 32311**
**Grand Cayman, KY1-1209**
**Cayman Islands**

**Highland CLO Management, Ltd.**
**c/o Summit Management Ltd.**
**Suite #4-210 Governor's Square**
**23 Lime Tree Bay Avenue**
**Grand Cayman, Cayman Islands**

**Highland HCF Advisor, Ltd.**
**c/o Maples Corporate Services, Ltd.**
**P.O. Box 309, Ugland House,**
**South Church Street, George Town**
**Grand Cayman, Cayman Island KY1-1004**

Highland HCF Advisor, Ltd.
c/o James Dondero, President
300 Crescent Court, Suite 700
Dallas, TX 75201

Highland CLO Management, Ltd.
c/o Strand Advisors, Inc.
Attn. James Dondero
300 Crescent Court, Suite 700
Dallas, TX 75201

Neutra, Ltd.
c/o Daniel Elms/Heather Jobe/Scott Larson
Bell Nunnally & Martin LLP
3232 McKinney Ave., Suite 1400
Dallas, TX 75204

Neutra, Ltd.
c/o Michael K. Hurst/Ben A. Barnes
Lynn Pinker Cox & Hurst LLP
2100 Ross Ave., Suite 2700
Dallas, TX 75201

Neutra, Ltd.
c/o H. O'Neil, J. Binford, S. Beck, M. Bales
Foley Gardere Foley & Lardner, LLP
2021 McKinney Ave., Suite 1600
Dallas, TX 75201

**CLO Holdco, Ltd.**
**c/o Intertrust Corp. Srvs. (Cayman) Ltd.**
**190 Elgin Ave., George Town**
**Grand Cayman, Cayman Islands KY1-9005**

CLO Holdco, Ltd.
c/o Daniel Elms/Heather Jobe/Scott Larson
Bell Nunnally & Martin LLP
3232 McKinney Ave., Suite 1400
Dallas, TX 75204

CLO Holdco, Ltd.
c/o H. O'Neil, J. Binford, S. Beck, M. Bales
Foley Gardere Foley & Lardner, LLP
2021 McKinney Ave., Suite 1600
Dallas, TX 75201

The Dugaboy Investment Trust
300 Crescent Court, Suite700
Dallas, TX 75201-1876

# Noteholders List

# [Confidential]

# Creditors Service List
## Acis Capital Mgmt./Phelan
### #5980

## Class 2

Joshua N. Terry
25 Highland Park Village
Suite 100-848
Dallas, TX 75205-2726

Joshua N. Terry
c/o Brian P. Shaw/John M. Lynch
Rogge Dunn Group, PC
1201 Elm St., Suite 5200
Dallas, TX 75270

Joshua N. Terry
350 9 Princeton Ave.
Dallas, TX 75205-3246

## Class 3

Andrews Kurth Kenyon LLP
600 Travis, Suite 4200
Houston, TX 77002-2929

CSI Global Deposition Services
4950 N. O'Connor Road, Suite 152
Irving, TX 75062 - 2778

CT Corporation
P0 Box 4349
Carol Stream, IL 60197-4349

Case Anywhere LLC
21860 Burbank Blvd., Suite 125
Woodland Hills, CA 91367-7447

David Langford
1321 Indian Creek
DeSoto, TX 75115-3652

David Simek
31 Woodacres Road
Brookville, NY 11545-2911

Drexel Limited
309 23rd Street, #340
Miami Beach, FL 33139-1700

Elite Document Technology
400 N. Saint Paul St., Suite 1300
Dallas, TX 75201-6881

Highfield Equities, Inc.
3131 McKinney Ave., Suite 215
Dallas, TX 75204-2421

JAMS, Inc.
18881 Von Karman Ave., Suite 350
Irvine, CA 92612-6589

Jones Day
2727 N. Harwood Street
Dallas, TX 75201-1568

Lackey Hershman LLP
3102 Oak Lawn Ave., Suite 777
Dallas, TX 75219-4259

KPMG LLP (USA)
Two Financial Center
60 South Street
Boston, MA 02111-2759

KPMG LLP
2323 Ross Ave., Suite 1400
Dallas, TX 75201-2721

KPMG LLP
Aon Center
200 E. Randolph St., Suite 5500
Chicago, IL 60601-6607

McKool Smith, P.C.
300 Crescent Court, Suite 1500
Dallas, TX 75201-6970

Reid Collins & Tsai, LLP
Building C, Suite 300
1301 S. Capital of Texas Highway
Austin, TX 78746-6550

Stanton Advisors LLC
300 Coles St., Apt. 802
Jersey City, NJ 07310-1047

Stanton Law Firm
9400 North Central Expwy., Suite 1304
Dallas, TX 75231-5047

The TASA Group, Inc.
1166 DeKalb Pike
Blue Bell, PA 19422- 1853

Acis CLO 2013-1, Ltd., et al.
c/o David Neier
Winston & Strawn LLP
200 Park Ave.
New York, NY 10166-4193

Acis CLO 2013-1 LLC
850 Library Ave., Suite 204
Newark, DE 19711

Acis CLO 2014-3 LLC
850 Library Ave., Suite 204
Newark, DE 19711

Acis CLO 2014-4 LLC
850 Library Ave., Suite 204
Newark, DE 19711

Acis CLO 2014-5 LLC
850 Library Ave., Suite 204
Newark, DE 19711

Acis CLO 2015-6 LLC
850 Library Ave., Suite 204
Newark, DE 19711

**Directors - Acis CLO 2013-1 Ltd.**
**75 Fort St., Clifton House**
**PO Box 1350**
**George Town, Grand Cayman**
**Cayman Island, KY1-1108**

**Directors - Acis CLO 2014-3 Ltd.**
**PO Box 1093**
**KY1-1102, Cricket Square**
**Grand Cayman**

**Directors - Acis CLO 2014-4 Ltd.**
**PO Box 1093**
**KY1-1102, Cricket Square**
**Grand Cayman**

**Directors - Acis CLO 2014-5 Ltd.**
**PO Box 1093**
**KY1-1102, Cricket Square**
**Grand Cayman**

**Directors - Acis CLO 2015-6 Ltd.**
**PO Box 1093**
**KY1-1102, Cricket Square**
**Grand Cayman**

**Acis CLO 2013-1, Ltd.**
**c/o Appleby Trust, Attn: Directors**
**Clifton House 75 Fort St., P0 Box 13**
**Grand Cayman, Cayman Islands KY1-1108**

**Acis CLO 2013-2 Ltd.**
**c/o MaplesFS Limited, Attn: Directors**
**PO Box 1093, Boundary Hall, Cricket Sq.**
**Grand Cayman, Cayman Islands KY1-1102**

**Acis CLO 2014-3 Ltd.**
**c/o MaplesFS Limited, Attn: Directors**
**PO Box 1093, Boundary Hall, Cricket Sq.**
**Grand Cayman, Cayman Islands KY1-1102**

**Acis CLO 2014-4 Ltd.**
**c/o MapleFS Limited, Attn: Directors**
**PO Box 1093, Boundary Hall, Cricket Sq.**
**Grand Cayman, Cayman Islands KY1-1102**

**Acis CLO 2014-5 Ltd.**
**c/o MapleFS Limited, Attn: Directors**
**PO Box 1093, Boundary Hall, Cricket Sq.**
**Grand Cayman, Cayman Islands KY1-1102**

**Acis CLO 2015-6 Ltd.**
**c/o MapleFS Limited, Attn: Directors**
**PO Box 1093, Boundary Hall, Cricket Sq.**
**Grand Cayman, Cayman Islands KY1 -1102**

**Acis CLO 2017-7 Ltd.**
**c/o MapleFS Limited, Attn: Directors**
**PO Box 1093, Boundary Hall, Cricket Sq.**
**Grand Cayman, Cayman Islands KY1 -1102**

Acis CLO 2013-1, Ltd., et al.
c/o Thomas Melsheimer/Lane Webster
Winston & Strawn LLP
2501 N. Harwood St., 17th Floor
Dallas, TX 75201

Jennifer G. Terry
25 Highland Park Village, Suite 100-848
Dallas, TX 75205

Hunton Andrews Kurth LLP
c/o M. Christine Klein, Dep. Gen. Counsel
Riverfront Plaza, East Tower
951 East Byrd St.
Richmond, VA 23219

Patrick H. Daugherty
3621 Cornell Ave.
Dallas, TX 75250

Stinson Leonard Street LLP
Attn: Paul Lackey
3102 Oak Lawn Ave., Suite 777
Dallas, TX 75219

## Class 4

Highland Capital Management, LP
300 Crescent Court, Suite 700
Dallas, TX 75201-7849

Highland Capital Management, LP
1209 Orange Street
Wilmington, DE 19801-1120

Highland Capital Management, LP
c/o Michael K. Hurst/Ben A. Barnes
Lynn Pinker Cox & Hurst LLP
2100 Ross Ave., Suite 2700
Dallas, TX 75201

Highland Capital Management, LP, Highland
c/o H. O'Neil, J. Binford, S. Beck, M. Bales
Foley Gardere Foley & Lardner, LLP
2021 McKinney Ave., Suite 1600
Dallas, TX 75201

# EXHIBIT "3"

**[Second Modification to the Third Amended Joint Plan for Acis Capital Management, L.P. and Acis Capital Management GP, LLC – Dkt. No. 702]**

Rakhee V. Patel – State Bar No. 00797213
Phillip Lamberson – State Bar No. 00794134
Joe Wielebinski – State Bar No. 21432400
Annmarie Chiarello – State Bar No. 24097496
**WINSTEAD PC**
500 Winstead Building
2728 N. Harwood Street
Dallas, Texas 75201
Telephone: (214) 745-5400
Facsimile:  (214) 745-5390
rpatel@winstead.com
plamberson@winstead.com
jwielebinski@winstead.com
achiarello@winstead.com

**SPECIAL COUNSEL FOR**
**ROBIN PHELAN, CHAPTER 11 TRUSTEE**

Jeff P. Prostok – State Bar No. 16352500
J. Robert Forshey – State Bar No. 07264200
Suzanne K. Rosen – State Bar No. 00798518
Matthew G. Maben – State Bar No. 24037008
**FORSHEY & PROSTOK LLP**
777 Main St., Suite 1290
Ft. Worth, TX 76102
Telephone: (817) 877-8855
Facsimile: (817) 877-4151
jprostok@forsheyprostok.com
bforshey@forsheyprostok.com
srosen@forsheyprostok.com
mmaben@forsheyprostok.com

**COUNSEL FOR ROBIN PHELAN,**
**CHAPTER 11 TRUSTEE**

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE NORTHERN DISTRICT OF TEXAS
## DALLAS DIVISION

| | | |
|---|---|---|
| IN RE: | § § § | CHAPTER 11 CASES |
| ACIS CAPITAL MANAGEMENT, L.P., | § | CASE NO. 18-30264-sgj11 |
| ACIS CAPITAL MANAGEMENT GP, LLC, | § | (Jointly Administered) |
| | § | |
| Debtors. | § § | |

## SECOND MODIFICATION TO THE THIRD AMENDED JOINT PLAN FOR
## ACIS CAPITAL MANAGEMENT, LP AND ACIS CAPITAL MANAGEMENT GP, LLC

Robin Phelan ("Trustee"), the Chapter 11 Trustee for Acis Capital Management, LP and

Acis Capital Management GP, LLC (the "Debtors"), files this Second Modification (the "First

Modification") to the *Third Amended Joint Chapter 11 Plan for Acis Capital Management, LP*

*and Acis Capital Management GP, LLC* [Docket No. 660], as modified by the *First Modification*

*to the Third Amended Joint Chapter 11 Plan for Acis Capital Management, LP and Acis Capital*

*Management GP, LLC* [Docket No. 693] (together, the "Plan").

1.      Reference is here made to the Plan for all purposes.  This Second Modification

modifies the Plan.

2.     **Modification to Exhibit "A".**  The copy of the Exhibit "A" reflecting Estate Claims is hereby deleted in its entirety and replaced with the version of the "Exhibit A" attached hereto as **Exhibit "1."**

3.     A copy of the document reflecting the modifications to Exhibit A to the Plan in redline format is attached hereto as **Exhibit "2."**

4.     This Second Modification is a non-material change.  It merely revises the Estate Claims being reserved, retained and preserved under the Plan.  Further, even if this First Modification were deemed material, it is being sent to all creditors and parties in interest ten (10) days in advance of the deadline for parties to submit ballots and any objections to the Plan.  Consequently, creditors and parties in interest will have an adequate opportunity to evaluate this modification prior to voting on the Plan or to change their previous acceptance or rejection upon consideration of the modification.

Dated:  November 16, 2018.          Respectfully submitted,

ACIS CAPITAL MANAGEMENT, L.P.

By: /s/ *Robin Phelan*
    Robin Phelan
    Chapter 11 Trustee

ACIS CAPITAL MANAGMENET GP, LLC

By: /s/ *Robin Phelan*
    Robin Phelan
    Chapter 11 Trustee

Case 18-30264-sgj11 Doc 1342-2 Filed 09/05/21 Entered 09/05/21 13:08:39 Page 161 of 230
Case 18-30264-sgj11 Doc 930-2 Filed 01/31/19 Entered 01/31/19 21:43:35 Page 162 of 229
230

APPROVED:

/s/ *Jeff P. Prostok*
Jeff P. Prostok –  State Bar No. 16352500
J. Robert Forshey – State Bar No. 07264200
Suzanne K. Rosen –  State Bar No. 00798518
Matthew G. Maben – State Bar No. 24037008
**FORSHEY & PROSTOK LLP**
777 Main St., Suite 1290
Ft. Worth, TX 76102
Telephone: (817) 877-8855
Facsimile: (817) 877-4151
jprostok@forsheyprostok.com
bforshey@forsheyprostok.com
srosen@forsheyprostok.com
mmaben@forsheyprostok.com

**COUNSEL FOR ROBIN PHELAN, CHAPTER 11 TRUSTEE**

APPROVED:

/s/ *Rahkee V. Patel*
Rakhee V. Patel – State Bar No. 00797213
Phillip Lamberson – State Bar No. 00794134
Joe Wielebinski – State Bar No. 21432400
Annmarie Chiarello –State Bar No. 24097496
**WINSTEAD PC**
500 Winstead Building
2728 N. Harwood Street
Dallas, Texas 75201
Telephone: (214) 745-5400
Facsimile:  (214) 745-5390
rpatel@winstead.com
plamberson@winstead.com
jwielebinski@winstead.com
achiarello@winstead.com

**SPECIAL   COUNSEL   FOR   ROBIN PHELAN, CHAPTER 11 TRUSTEE**

<u>**CERTIFICATE OF SERVICE**</u>

I hereby certify that a true and correct copy of the foregoing document and the attached exhibits were served electronically via the Court's Electronic Court Filing (ECF) notification system and via U.S. Mail, postage prepaid (and via Express Mail to out of country recipients) on the parties on the service lists attached as **Exhibit "3"** hereto on November 16, 2018.

/s/ *Jeff P. Prostok*
Jeff P. Prostok

\L:\JPROSTOK\ACIS Capital Management (Trustee Rep)\Plan and Disclosure Statement\Second Modification to Third Amended Plan 11.16.18.docx

Case 18-30264-sgj11 Doc 1242-2 Filed 09/05/21 Entered 09/05/21 13:08:20 Page 162 of
Case 18-30264-sgj11 Doc 3302 Filed 01/31/22 Entered 01/31/22 14:24:25 Page 161 of 229
230

# Exhibit "1"

[Revised Exhibit "A" to the
Third Amended Joint Plan]

## EXHIBIT "A"
### to
### Joint Plan for Acis Capital Management, LP and Acis Capital Management GP, LLC

1. <u>Defined Terms</u>. This Exhibit "A" constitutes an integral part of the Plan of which it is a part. Defined terms in the Plan are to be given the same meaning in this Exhibit "A". The rules of construction set forth in Article I.B. of the Plan shall likewise apply to this Exhibit "A".

2. <u>Estate Claims Reserved, Retained and Preserved</u>. All Estate Claims are hereby reserved, retained and preserved, and shall all be transferred to, and vested in, the Reorganized Debtor pursuant to this Plan, and shall include without limitation all of the Estate Claims described below. In reserving, retaining, and preserving Estate Claims against any named Person or category of Persons, it is the intent of this Plan to so reserve, retain, and preserve any and all Estate Claim against each such Person or category of Persons, including all such Estate Claims pursuant to any applicable common law, based on any contract or agreement or based upon any law, statute or regulation of any political entity, including the United States and any state or political subdivision thereof, as well as all applicable remedies, whether legal or equitable. Without limiting the generality of the foregoing, the reservation, retention, and preservation of Estate Claims against any Person, and the term "<u>Estate Claims</u>," shall encompass all Estate Claims against any such Person, including without limitation, all such Estate Claims for breach of contract, all rights to enforce any contract, any form of estoppel, fraud, constructive fraud, abuse of process, malicious prosecution, defamation, libel, slander, conversion, trespass, intentional infliction of emotional distress or other harm, negligence, gross negligence, negligent misrepresentation, fraudulent misrepresentation, vicarious liability, respondeat superior, breach of any duty owed under either applicable law or any contract, breach of any fiduciary duty or duty of loyalty or due care, aiding and/or abetting breach of fiduciary duty, aiding and/or abetting breach of duty of loyalty or due care, alter ego, veil piercing, self-dealing, usurpation of corporate opportunity, ultra vires, turnover of Estate Assets, unauthorized use of Estate Assets, including intellectual property rights or Assets owned by the Debtors or Chapter 11 Trustee, quantum merit, tortious interference, duress, unconscionability, undue influence, and unjust enrichment, as well as any cause of action for conspiracy to commit any unlawful act, aiding and/or abetting any such unlawful act, or assisting, encouraging, and/or participating in any such unlawful act, or claims arising from or relating to the filing of the involuntary bankruptcy petitions against the Debtors.

3. <u>Highland Claims</u>. All Estate Claims against Highland are reserved, retained and preserved for the benefit of the Estate and Reorganized Debtor, including without limitation all such Estate Claims asserted by the Chapter 11 Trustee in Adversary Proceeding No. 18-03078-sgj (the "<u>Highland Adversary</u>") and Adversary Proceeding No. 18-03212-sgj (the "<u>Trustee's Adversary</u>"). The Estate Claims against Highland shall include all Estate Claims set forth in paragraph 2 above, including without limitation, the following:

       (a) All such Claims asserted by the Chapter 11 Trustee or Estate in, or which could be asserted based on the facts or transactions alleged in, the Highland Adversary;

       (b) All such Claims asserted by the Chapter 11 Trustee or Estate in, or which could be asserted based on the facts or transactions alleged in, the Trustee's Adversary;

       (c) All such Claims and Defenses asserted by the Chapter 11 Trustee or Estate, or which could be asserted by the Chapter 11 Trustee or Estate, based on the facts or transactions alleged in any other adversary proceedings or Claim Objections filed by the

Chapter 11 Trustee or Estate;

(d)  All Avoidance Actions against Highland, including any claims to avoid and recover amounts transferred by the Debtors to Highland under the Shared Services Agreement or Sub-Advisory Agreement;

(e)  All Claims for breach of the Shared Services Agreement or Sub-Advisory Agreement;

(f)  All Claims against Highland for amounts paid by the Debtors to Highland under the Shared Services Agreement and Sub-Advisory Agreement, including any Claim that Highland overcharged Acis LP for services under such agreements, charged excessive fees in violation of Acis LP's limited partnership agreement and/or Acis GP's limited liability company agreement, and/or that the Shared Services Agreement and Sub-Advisory Agreement or any related or predecessor agreements are void or voidable based on ultra vires or any other theories of avoidance and recovery, including turnover, conversion and Avoidance Actions under the Bankruptcy Code;

(g)  All Claims for breach of the PMAs or the Indentures;

(h)  All Claims for breach of fiduciary duty or duty of loyalty or due care owed to the Debtors or Chapter 11 Trustee;

(i)  All Claims for aiding and/or abetting breach of fiduciary duty, breach of duty loyalty or due care, or any other unlawful act;

(j)  All Clams for usurpation of a corporate opportunity belonging to either of the Debtors, including in relation to Acis CLO 2017-7, Ltd and any other Acis CLOs;

(k)  All claims for tortious interference, including in relation to Universal-Investment-Luxembourg S.A. and BayVK R2 Lux S.A., SICAV-FIS;

(l)  All Claims against Highland for the turnover of Estate Assets, including Estate property that the Chapter 11 Trustee may use, sell or lease under section 363 of the Bankruptcy Code including, without limitation, any intellectual property rights or Assets owned by the Debtors or Estate, as well as the turnover of any books, documents, records and papers relating to the Debtors' property or financial affairs;

(m)  All Claims against Highland for the unauthorized use of Estate Assets including, without limitation, any intellectual property rights or Assets owned by the Debtors or Estate;

(n)  All Claims, rights or remedies for Equitable Subordination or Recharacterization of any Claim by Highland against the Debtors, Chapter 11 Trustee, or Estate;

(o)  All Claims based on alter ego or rights to pierce the corporate veil of Acis LP as to any Person, including as against Highland or any Affiliates thereof, James D. Dondero, Mark K. Okada, or any other officers, directors, equity interest holders, or Persons otherwise in control of Acis LP;

(p)  All Claims based on alter ego or rights to pierce the corporate veil of

Case 18-30864-sgj11 Doc 1442-2 Filed 09/05/21 Entered 09/05/21 13:08:29 Page 165 of
Case 18-30264-sgj11 Doc 3302 Filed 01/14/22 Entered 01/14/22 14:34:35 Page 164 of 229
230

Highland as to any Person, including as against any Affiliates of Highland, James D. Dondero, Mark K. Okada, or any other officers, directors, equity interest holders, or Persons otherwise in control of Highland, and,

(q)     All Claims for conspiracy to commit any unlawful act, aiding and/or abetting any such unlawful act, or assisting, encouraging, and/or participating in any such unlawful act.

4.     <u>HCLOF Claims</u>.  All Estate Claims against HCLOF are reserved, retained and preserved for the benefit of the Estate and Reorganized Debtor, including without limitation all such Estate Claims asserted by the Chapter 11 Trustee in the Highland Adversary and the Trustee's Adversary.  The Estate Claims against HCLOF shall include all Estate Claims set forth in paragraph 2 above, including without limitation, the following:

(a)     All such Claims against HCLOF asserted by the Chapter 11 Trustee or Estate in, or which could be asserted based on the facts or transactions alleged in, the Highland Adversary;

(b)     All such Claims against HCLOF asserted by the Chapter 11 Trustee or Estate in, or which could be asserted based on the facts or transactions alleged in, the Trustee's Adversary;

(c)     All such Claims and Defenses asserted by the Chapter 11 Trustee or Estate, or which could be asserted by the Chapter 11 Trustee or Estate, based on the facts or transactions alleged in any other adversary proceedings or Claim Objections filed by the Chapter 11 Trustee or Estate;

(d)     All Avoidance Actions against HCLOF;

(e)     All Claims for breach of the PMAs or the Indentures;

(f)     All Claims for breach of fiduciary duty or duty of loyalty or due care owed to the Debtors or Chapter 11 Trustee;

(g)     All Claims for aiding and/or abetting breach of fiduciary duty, breach of duty loyalty or due care, or any other unlawful act;

(h)     All Clams for usurpation of a corporate opportunity belonging to either of the Debtors, including in relation to Acis CLO 2017-7, Ltd and any other Acis CLOs;

(i)     All Claims against HCLOF for the turnover of Estate Assets, including Estate property that the Chapter 11 Trustee may use, sell or lease under section 363 of the Bankruptcy Code including, without limitation, any intellectual property rights or Assets owned by the Debtors or Estate, as well as the turnover of any books, documents, records and papers relating to the Debtors' property or financial affairs;

(j)     All Claims against HCLOF for the unauthorized use of Estate Assets including, without limitation, any intellectual property rights or Assets owned by the Debtors or Estate;

(k)     All Claims, rights or remedies for Equitable Subordination or Recharacterization of any Claim by HCLOF against the Debtors, Chapter 11 Trustee, or Estate;

(l)     All Claims based on alter ego or rights to pierce the corporate veil of HCLOF as to any Person, including as against any Affiliates of HCLOF or Highland, William Scott, Heather Bestwick, or any other officers, directors, equity interest holders, or Persons otherwise in control of HCLOF; and,

(m)     All Claims for conspiracy to commit any unlawful act, aiding and/or abetting any such unlawful act, or assisting, encouraging, and/or participating in any such unlawful act.

5.     <u>Highland HCF Advisor, Ltd. Claims</u>.  All Estate Claims against Highland HCF Advisor, Ltd. ("<u>Highland HCF</u>") are reserved, retained and preserved for the benefit of the Estate and Reorganized Debtor, including without limitation all such Estate Claims asserted by the Chapter 11 Trustee in the Highland Adversary.  The Estate Claims against Highland HCF shall include all Estate Claims set forth in paragraph 2 above, including without limitation, the following:

(a)     All such Claims against Highland HCF asserted by the Chapter 11 Trustee or Estate in, or which could be asserted based on the facts or transactions alleged in, the Highland Adversary;

(b)     All such Claims against Highland HCF asserted by the Chapter 11 Trustee or Estate in, or which could be asserted based on the facts or transactions alleged in, the Trustee's Adversary;

(c)     All such Claims and Defenses asserted by the Chapter 11 Trustee or Estate, or which could be asserted by the Chapter 11 Trustee or Estate, based on the facts or transactions alleged in any other adversary proceedings or Claim Objections filed by the Chapter 11 Trustee or Estate;

(d)     All Avoidance Actions against Highland HCF;

(e)     All Claims for breach of fiduciary duty or duty of loyalty or due care owed to the Debtors or Chapter 11 Trustee;

(f)     All Claims for aiding and/or abetting breach of fiduciary duty, breach of duty loyalty or due care, or any other unlawful act;

(g)     All Clams for usurpation of a corporate opportunity belonging to either of the Debtors, including in relation to Acis CLO 2017-7, Ltd and any other Acis CLOs;

(h)     All Claims against Highland HCF for the turnover of Estate Assets, including Estate property that the Chapter 11 Trustee may use, sell or lease under section 363 of the Bankruptcy Code including, without limitation, any intellectual property rights or Assets owned by the Debtors or Estate, as well as the turnover of any books, documents, records and papers relating to the Debtors' property or financial affairs;

(i)     All Claims against Highland HCF for the unauthorized use of Estate Assets including, without limitation, any intellectual property rights or Assets owned by the Debtors or Estate;

(j)     All Claims, rights or remedies for Equitable Subordination or Recharacterization of any Claim by Highland HCF against the Debtors, Chapter 11 Trustee, or

Estate;

        (k)     All Claims based on alter ego or rights to pierce the corporate veil of Highland HCF as to any Person, including as against any Affiliates of Highland HCF or Highland, or any other officers, directors, equity interest holders, or Persons otherwise in control of Highland HCF; and,

        (l)     All Claims for conspiracy to commit any unlawful act, aiding and/or abetting any such unlawful act, or assisting, encouraging, and/or participating in any such unlawful act.

      6.    <u>Highland CLO Management, Ltd. Claims</u>.  All Estate Claims against Highland CLO Management, Ltd. ("<u>Highland CLOM</u>") are reserved, retained and preserved for the benefit of the Estate and Reorganized Debtor, including without limitation all such Estate Claims asserted by the Chapter 11 Trustee in the Highland Adversary.  The Estate Claims against Highland CLOM shall include all Estate Claims set forth in paragraph 2 above, including without limitation the following:

        (a)     All such Claims against Highland CLOM asserted by the Chapter 11 Trustee or Estate in, or which could be asserted based on the facts or transactions alleged in, the Highland Adversary;

        (b)     All such Claims against Highland CLOM asserted by the Chapter 11 Trustee or Estate in, or which could be asserted based on the facts or transactions alleged in, the Trustee's Adversary;

        (c)     All such Claims and Defenses asserted by the Chapter 11 Trustee or Estate, or which could be asserted by the Chapter 11 Trustee or Estate, based on the facts or transactions alleged in any other adversary proceedings or Claim Objections filed by the Chapter 11 Trustee or Estate;

        (d)     All Avoidance Actions against Highland CLOM;

        (e)     All Claims for breach of fiduciary duty or duty of loyalty or due care owed to the Debtors or Chapter 11 Trustee;

        (f)     All Claims for aiding and/or abetting breach of fiduciary duty, breach of duty loyalty or due care, or any other unlawful act;

        (g)     All Clams for usurpation of a corporate opportunity belonging to either of the Debtors, including in relation to Acis CLO 2017-7, Ltd and any other Acis CLOs;

        (h)     All Claims against Highland CLOM for the turnover of Estate Assets, including Estate property that the Chapter 11 Trustee may use, sell or lease under section 363 of the Bankruptcy Code including, without limitation, any intellectual property rights or Assets owned by the Debtors or Estate, as well as the turnover of any books, documents, records and papers relating to the Debtors' property or financial affairs;

        (i)     All Claims against Highland CLOM for the unauthorized use of Estate Assets including, without limitation, any intellectual property rights or Assets owned by the Debtors or Estate;

(j)      All Claims, rights or remedies for Equitable Subordination or Recharacterization of any Claim by Highland CLOM against the Debtors, Chapter 11 Trustee, or Estate;

(k)      All Claims based on alter ego or rights to pierce the corporate veil of Highland CLOM as to any Person, including as against any Affiliates of Highland CLOM or Highland, or any other officers, directors, equity interest holders, or Persons otherwise in control of Highland CLOM; and,

(l)      All Claims for conspiracy to commit any unlawful act, aiding and/or abetting any such unlawful act, or assisting, encouraging, and/or participating in any such unlawful act.

7.      CLO Holdco, Ltd. Claims.  All Estate Claims against CLO Holdco, Ltd. ("CLO Holdco") are reserved, retained and preserved for the benefit of the Estate and Reorganized Debtor, including without limitation all such Estate Claims asserted by the Chapter 11 Trustee in the Trustee's Adversary.  The Estate Claims against CLO Holdco shall include all Estate Claims set forth in paragraph 2 above, including without limitation, the following:

(a)      All such Claims against CLO Holdco asserted by the Chapter 11 Trustee or Estate in, or which could be asserted based on the facts or transactions alleged in, the Highland Adversary;

(b)      All such Claims against CLO Holdco asserted by the Chapter 11 Trustee or Estate in, or which could be asserted based on the facts or transactions alleged in, the Trustee's Adversary;

(c)      All such Claims and Defenses asserted by the Chapter 11 Trustee or Estate, or which could be asserted by the Chapter 11 Trustee or Estate, based on the facts or transactions alleged in any other adversary proceedings or Claim Objections filed by the Chapter 11 Trustee or Estate;

(d)      All Avoidance Actions against CLO Holdco;

(e)      All Claims for breach of fiduciary duty or duty of loyalty or due care owed to the Debtors or Chapter 11 Trustee;

(f)      All Claims for aiding and/or abetting breach of fiduciary duty, breach of duty loyalty or due care, or any other unlawful act;

(g)      All Clams for usurpation of a corporate opportunity belonging to either of the Debtors, including in relation to Acis CLO 2017-7, Ltd and any other Acis CLOs;

(h)      All Claims against CLO Holdco for the turnover of Estate Assets, including Estate property that the Chapter 11 Trustee may use, sell or lease under section 363 of the Bankruptcy Code including, without limitation, any intellectual property rights or Assets owned by the Debtors or Estate, as well as the turnover of any books, documents, records and papers relating to the Debtors' property or financial affairs;

(i)      All Claims against CLO Holdco for the unauthorized use of Estate Assets including, without limitation, any intellectual property rights or Assets owned by the Debtors or Estate;

(j)     All Claims, rights or remedies for Equitable Subordination or Recharacterization of any Claim by Highland against the Debtors, Chapter 11 Trustee, or Estate;

(k)     All Claims based on alter ego or rights to pierce the corporate veil of CLO Holdco as to any Person, including as against any Affiliates of CLO Holdco or Highland, or any other officers, directors, equity interest holders, or Persons otherwise in control of CLO Holdco; and,

(l)     All Claims for conspiracy to commit any unlawful act, aiding and/or abetting any such unlawful act, or assisting, encouraging, and/or participating in any such unlawful act.

8.     <u>Neutra, Ltd. Claims</u>.  All Estate Claims against Neutra, Ltd. ("<u>Neutra</u>") are reserved, retained and preserved for the benefit of the Estate and Reorganized Debtor, including without limitation all such Estate Claims asserted by the Chapter 11 Trustee in the Trustee's Adversary.  The Estate Claims against Neutra shall include all Estate Claims set forth in paragraph 2 above, including without limitation the following:

(a)     All such Claims against Neutra asserted by the Chapter 11 Trustee or Estate in, or which could be asserted based on the facts or transactions alleged in, the Highland Adversary;

(b)     All such Claims against Neutra asserted by the Chapter 11 Trustee or Estate in, or which could be asserted based on the facts or transactions alleged in, the Trustee's Adversary;

(c)     All such Claims and Defenses asserted by the Chapter 11 Trustee or Estate, or which could be asserted by the Chapter 11 Trustee or Estate, based on the facts or transactions alleged in any other adversary proceedings or Claim Objections filed by the Chapter 11 Trustee or Estate;

(d)     All Avoidance Actions against Neutra;

(e)     All Claims for breach of fiduciary or duty of loyalty or due care owed to the Debtors or Chapter 11 Trustee;

(f)     All Claims for aiding and/or abetting breach of fiduciary duty, breach of duty loyalty or due care, or any other unlawful act;

(g)     All Clams for usurpation of a corporate opportunity belonging to either of the Debtors, including in relation to Acis CLO 2017-7, Ltd and any other Acis CLOs;

(h)     All Claims against Neutra for the turnover of Estate Assets, including Estate property that the Chapter 11 Trustee may use, sell or lease under section 363 of the Bankruptcy Code including, without limitation, any intellectual property rights or Assets owned by the Debtors or Estate, as well as the turnover of any books, documents, records and papers relating to the Debtors' property or financial affairs;

(i)     All Claims against Neutra for the unauthorized use of Estate Assets

including, without limitation, any intellectual property rights or Assets owned by the Debtors or Estate;

(j) All Claims, rights or remedies for Equitable Subordination or Recharacterization of any Claim by Neutra against the Debtors, Chapter 11 Trustee, or Estate;

(k) All Claims based on alter ego or rights to pierce the corporate veil of Acis LP as to any Person, including as against Neutra, Highland, or any Affiliates thereof, James D. Dondero, Mark K. Okada, or any other officers, directors, equity interest holders, or Persons otherwise in control of Acis LP;

(l) All Claims based on alter ego or rights to pierce the corporate veil of Neutra as to any Person, including as against any Affiliates of Neutra or Highland, or any other officers, directors, equity interest holders, or Persons otherwise in control of Neutra; and,

(m) All Claims for conspiracy to commit any unlawful act, aiding and/or abetting any such unlawful act, or assisting, encouraging, and/or participating in any such unlawful act.

9. <u>Claims against Issuers, Co-Issuers and Indenture Trustee</u>. All Estate Claims against CLO-3, CLO-4, CLO-5, and CLO-6 (collectively, the "<u>Issuers</u>"), Acis CLO 2014-3 LLC, Acis CLO 2014-4 LLC, Acis CLO 2014-5 LLC, and Acis CLO 2015-6 LLC (collectively, the "<u>Co-Issuers</u>"), and the Indenture Trustee are reserved, retained and preserved for the benefit of the Estate and Reorganized Debtor, including without limitation all such Estate Claims asserted by the Chapter 11 Trustee in the Trustee's Adversary. The Estate Claims against the Issuers, Co-Issuers and/or Indenture Trustee shall include all Estate Claims set forth in paragraph 2 above, including without limitation the following:

(a) All such Claims against the Issuers, Co-Issuers, and/or Indenture Trustee asserted by the Chapter 11 Trustee or Estate in, or which could be asserted based on the facts or transactions alleged in, the Highland Adversary;

(b) All such Claims against the Issuers, Co-Issuers, and/or Indenture Trustee asserted by the Chapter 11 Trustee or Estate in, or which could be asserted based on the facts or transactions alleged in, the Trustee's Adversary;

(c) All such Claims and Defenses asserted by the Chapter 11 Trustee or Estate, or which could be asserted by the Chapter 11 Trustee or Estate, based on the facts or transactions alleged in any other adversary proceedings or Claim Objections filed by the Chapter 11 Trustee or Estate;

(d) All Avoidance Actions against the Issuers, Co-Issuers and/or Indenture Trustee;

(e) All Claims for breach of the Indentures, PMAs or any other agreements between Acis LP and the Issuers, Co-Issuers, and/or Indenture Trustee;

(f) All Claims for breach of fiduciary duty or duty of loyalty or due care owed to the Debtors or Chapter 11 Trustee;

(g) All Claims for aiding and/or abetting breach of fiduciary duty, breach of duty loyalty or due care, or any other unlawful act;

(h)     All Clams for usurpation of a corporate opportunity belonging to either of the Debtors, including in relation to Acis CLO 2017-7, Ltd and any other Acis CLOs;

(i)     All Claims against the Issuers, Co-Issuers and/or Indenture Trustee for the turnover of Estate Assets, including Estate property that the Chapter 11 Trustee may use, sell or lease under section 363 of the Bankruptcy Code including, without limitation, any intellectual property rights or Assets owned by the Debtors or Estate, as well as the turnover of any books, documents, records and papers relating to the Debtors' property or financial affairs;

(j)     All Claims against the Issuers, Co-Issuers and/or Indenture Trustee for the unauthorized use of Estate Assets including, without limitation, any intellectual property rights or Assets owned by the Debtors or Estate;

(k)     All Claims, rights or remedies for Equitable Subordination or Recharacterization of any Claim by the Issuers or Co-Issuers against the Debtors, Chapter 11 Trustee, or Estate; and,

(l)     All Claims for conspiracy to commit any unlawful act, aiding and/or abetting any such unlawful act, or assisting, encouraging, and/or participating in any such unlawful act.

10.     <u>Claims Against Any Affiliates of Highland, HCLOF, Highland HCF, Highland CLOM, CLO Holdco, Neutra, and Their Respective Affiliates</u>.  All Estate Claims against any Affiliates of Highland, HCLOF, Highland HCF, Highland CLOM, CLO Holdco, Neutra, and Their Respective Affiliates (collectively, the "<u>Affiliates</u>" and each, an "<u>Affiliate</u>") are reserved, retained and preserved for the benefit of the Estate and Reorganized Debtor, including without limitation all such Estate Claims asserted by the Chapter 11 Trustee in the Highland Adversary and the Trustee's Adversary.  The Estate Claims against such Affiliates shall include all Estate Claims set forth in paragraph 2 above, including without limitation the following:

(a)     All such Claims against any Affiliate asserted by the Chapter 11 Trustee or Estate in, or which could be asserted based on the facts or transactions alleged in, the Highland Adversary;

(b)     All such Claims against any Affiliate asserted by the Chapter 11 Trustee or Estate in, or which could be asserted based on the facts or transactions alleged in, the Trustee's Adversary;

(c)     All such Claims and Defenses asserted by the Chapter 11 Trustee or Estate, or which could be asserted by the Chapter 11 Trustee or Estate, based on the facts or transactions alleged in any other adversary proceedings or Claim Objections filed by the Chapter 11 Trustee or Estate;

(d)     All Avoidance Actions against any Affiliate;

(e)     All Claims for breach of fiduciary duty or duty of loyalty or due care owed to the Debtors or Chapter 11 Trustee;

(f)     All Claims for aiding and/or abetting breach of fiduciary duty, breach of duty loyalty or due care, or any other unlawful act;

(g)     All Clams for usurpation of a corporate opportunity belonging to either of

the Debtors, including in relation to Acis CLO 2017-7, Ltd and any other Acis CLOs;

(h)     All Claims against any Affiliate for the turnover of Estate Assets, including Estate property that the Chapter 11 Trustee may use, sell or lease under section 363 of the Bankruptcy Code including, without limitation, any intellectual property rights or Assets owned by the Debtors or Estate, as well as the turnover of any books, documents, records and papers relating to the Debtors' property or financial affairs;

(i)     All Claims against any Affiliate for the unauthorized use of Estate Assets including, without limitation, any intellectual property rights or Assets owned by the Debtors or Estate;

(j)     All Claims, rights or remedies for Equitable Subordination or Recharacterization of any Claim by any Affiliate against the Debtors, Chapter 11 Trustee, or Estate;

(k)     All Claims based on alter ego or rights to pierce the corporate veil of Acis LP as to any Person, including as against Highland, HCLOF, Highland HCF, Highland CLOM, CLO Holdco, Neutra, the Affiliates, James D. Dondero, Mark K. Okada, or any other officers, directors, equity interest holders, or Persons otherwise in control of Acis LP;

(l)     All Claims based on alter ego or rights to pierce the corporate veil of any Affiliate as to any Person, including as against Highland, HCLOF, Highland HCF, Highland CLOM, CLO Holdco, Neutra, the Affiliates, James D. Dondero, Mark K. Okada, or any officers, directors, equity interest holders, or Persons otherwise in control of any Affiliates; and,

(m)     All Claims for conspiracy to commit any unlawful act, aiding and/or abetting any such unlawful act, or assisting, encouraging, and/or participating in any such unlawful act.

11.     <u>Dondero Claims</u>.  All Estate Claims as defined in paragraph 2 above against James D. Dondero, individually, are hereby reserved, retained and preserved for the benefit of the Estate and Reorganized Debtor, including without limitation all such Estate Claims against James D. Dondero for fraud, constructive fraud, breach of fiduciary duty, breach of duty of loyalty or due care, aiding and abetting breach of fiduciary duty, aiding and abetting breach of duty of loyalty or due care, self-dealing, ultra vires, conversion, usurpation of corporate opportunity, including in relation to Acis CLO 2017-7, Ltd and any other Acis CLOs, tortious interference, including in relation to Universal-Investment-Luxembourg S.A. and BayVK R2 Lux S.A., SICAV-FIS, conflict of interest, negligence, gross negligence, all Avoidance Actions, breach of contract, breach of the Shared Services Agreement, breach of the Sub-Advisory Agreement, breach of the Debtors' limited partnership agreement or limited liability company agreement, conspiracy to commit any unlawful act, aiding and abetting any unlawful act, and assisting, encouraging, and/or participating in any unlawful act, as well as any Claim to pierce the corporate veil of any entity to hold James D. Dondero individually liable.

12.     <u>Okada Claims</u>.  All Estate Claims as defined in paragraph 2 above against Mark K. Okada, individually, are hereby reserved, retained and preserved for the benefit of the Estate and Reorganized Debtor, including without limitation all such Estate Claims against Mark K. Okada for fraud, constructive fraud, breach of fiduciary duty, breach of duty of loyalty or due care, aiding and abetting breach of fiduciary duty, self-dealing, ultra vires, conversion, usurpation of corporate opportunity, including in relation to Acis CLO 2017-7, Ltd and any other

Acis CLOs, tortious interference, including in relation to Universal-Investment-Luxembourg S.A. and BayVK R2 Lux S.A., SICAV-FIS, conflict of interest, negligence, gross negligence, all Avoidance Actions, breach of contract, breach of the Shared Services Agreement, breach of the Sub-Advisory Agreement, breach of the Debtors' limited partnership agreement or limited liability company agreement, conspiracy to commit any unlawful act, aiding and abetting any unlawful act, and assisting, encouraging, and participating in any unlawful act, as well as any Claim to pierce the corporate veil of any entity to hold Mark K. Okada individually liable.

13.     <u>Preference Claims</u>.  All Avoidance Actions pursuant to section 547 of the Bankruptcy Code against any Person are hereby reserved, retained and preserved for the benefit of the Estate and Reorganized Debtor for any payment made to any Person by either of the Debtors within ninety (90) days of the Petition Date (which was January 30, 2018), or made by either of the Debtors to any insider within one (1) year of the Petition Date.  A non-exhaustive list of Persons who are believed to have received payments from either of the Debtors during the 90-day preference period, and the one-year preference period for Insiders, is attached to this **Exhibit "A"** as **Schedule "1"**.  The Plan reserves, retains and preserves for the benefit of the Estate and Reorganized Debtor all potential Claims arising out of or relating to the transfers reflected in **Schedule "1"**, including all Avoidance Actions pursuant to section 547 of the Bankruptcy Code.  All rights and remedies are also reserved. retained and preserved with respect to the transfers reflected in **Schedule "1"** pursuant to section 550 of the Bankruptcy Code.

**Schedule "1"** reflects transfers made by the Debtors during the 90 days prior to the Petition Date and transfers made by the Debtors to any insiders within one (1) year of the Petition Date.  While the Plan reserves, retains and preserves all Avoidance Actions relating to the transfers reflected in **Schedule "1"**, the Chapter 11 Trustee recognizes that certain of these transfers may not constitute a preferential transfer pursuant to section 547(b) of the Bankruptcy Code as a transfer made in the ordinary course of business transactions or based upon new value subsequently given by the transferee.  Consequently, the listing of a payment on **Schedule "1"** does not necessarily mean that a transferee will ever be sued to avoid and recover the payment, the transfer, or the value thereof, but only that the Plan reserves, retains and preserves all rights (including Avoidance Actions) as to that payment.

14.     <u>Claims Against Officers, Managers and Members</u>.  All Estate Claims as defined in paragraph 2 above are hereby reserved, retained and preserved for the benefit of the Estate and Reorganized Debtor against all present and past officers, employees, members and managers of the Debtors, including all such Estate Causes of Action based on breach of fiduciary duty, aiding and abetting breach of fiduciary duty, breach of duty of loyalty or due care, aiding and abetting breach of duty of loyalty or due care, self-dealing, usurpation of corporate opportunity, gross negligence or conspiracy.  Without limiting the generality of the foregoing, this shall include all D&O Claims as against any present or former officer, director, employee, member, manager, or partner.

15.     <u>Claims Against Former Attorneys and Law Firms</u>.  All Estate Claims as defined in paragraph 2, above, including Claims for breach of any fiduciary duty or duty of loyalty or due care, conspiracy to commit any unlawful act, aiding and/or abetting any such unlawful act, or assisting, encouraging, and/or participating in any such unlawful act, including knowingly aiding, abetting, or assisting with a fraudulent transfer to avoid paying a judgment, negligent or fraudulent misrepresentation, vicarious liability, and respondeat superior, as well as all Claims for legal or professional malpractice, are hereby reserved, retained and preserved for the benefit of the Estate and Reorganized Debtor against all law firms and attorneys who and which

Case 18-30264-sgj11 Doc 1243-2 Filed 09/05/21 Entered 09/05/21 12:08:29 Page 174 of 209
Case 18-30264-sgj11 Doc 3302 Filed 09/10/18 Entered 09/10/18 14:43:25 Page 18 of 229
230

rendered legal services to the Debtors on a prepetition basis including, but not limited to, the following:

(a)     Cole Schotz, P.C.

(b)     Michael D. Warner

(c)     Jacob Frumkin

(d)     Warren A. Usatine

(e)     McKool Smith

(f)     Gary Cruciani

(g)     Michael P. Fritz

(h)     Carson D. Young

(i)     Nicholas Matthews

(j)     Lackey Hershman, LLP

(k)     Stinson Leonard Street LLP

(l)     Jamie R. Welton

(m)     Paul B. Lackey

(n)     Michael Aigen

(o)     Roger L. Mandel

(p)     Abrams & Bayliss, LLP

(q)     Kevin G. Abrams

(r)     A. Thompson Bayliss

(s)     Jones Day

(t)     Hilda C. Galvan

(u)     Michael Weinberg

(v)     Reid Collins & Tsai, LLP

(w)     Lisa Tsai

(x)     Stanton, LLP

(y)     James M. Stanton

Case 18-30264-sgj11 Doc 1243-2 Filed 09/05/21 Entered 09/05/21 12:08:29 Page 175 of 230
Case 18-30264-sgj11 Doc 9302 Filed 09/05/21 Entered 09/05/21 12:08:29 Page 14 of 209
230

(z)     Hunton Andrews Kurth

(aa)    Marc Katz

(bb)    Greg Waller

(cc)    any other law firm or attorney who may be so named at a later date by the Reorganized Debtor.

16.    <u>Claims Against Officers, Directors, Employees, Members, and Managers, of Highland, HCLOF, Highland HCF, Highland CLOM, CLO Holdco, Neutra, and Their Respective Affiliates</u>.  In addition to the foregoing, all Estate Claims as defined in paragraph 2 above are hereby reserved, retained and preserved for the benefit of the Estate and Reorganized Debtor against all present and past officers, directors, employees, members and managers of Highland, HCLOF, Highland HCF, Highland CLOM, and their respective Affiliates, including all such Estate Causes of Action based on fraud, constructive fraud, breach of fiduciary duty, breach of duty of loyalty or due care, aiding and abetting breach of fiduciary duty, aiding and abetting breach of duty of loyalty or due care, self-dealing, ultra vires, conversion, usurpation of corporate opportunity, including in relation to Acis CLO 2017-7, Ltd and any other Acis CLOs, tortious interference, including in relation to Universal-Investment-Luxembourg S.A. and BayVK R2 Lux S.A., SICAV-FIS, conflict of interest, negligence, gross negligence, all Avoidance Actions, breach of contract, breach of the Shared Services Agreement, breach of the Sub-Advisory Agreement, breach of the Debtors' limited partnership agreement or limited liability company agreement, conspiracy to commit any unlawful act, aiding and abetting any unlawful act, and assisting, encouraging, and/or participating in any unlawful act.  Such present and past officers, directors, employees, members and managers of Highland, HCLOF, Highland HCF, Highland CLOM, and their respective Affiliates include, but are not limited to, the following Persons:

(a)     William Scott;

(b)     Heather Bestwick;

(c)     Scott Ellington

(d)     Isaac Leventon

(e)     Jean Paul Sevilla

(f)     Hunter Covitz

(g)     The Dugaboy Investment Trust

(h)     Nancy Dondero, Trustee of the Dugaboy Trust

(i)     Grant Scott

(j)     Any other Person who may be so named at a later date by the Reorganized Debtor.

Case 18-30264-sgj11 Doc 1241-2 Filed 09/05/21 Entered 09/05/21 12:08:20 Page 176 of
Case 18-30264-sgj11 Doc 1302 Filed 01/19/18 Entered 01/19/18 17:43:43 Page 18 of 20
230

17.     <u>Counterclaims</u>.  All Estate Claims as defined in paragraph 2 above are reserved, retained and preserved for the benefit of the Estate and Reorganized Debtor both as a basis for an affirmative recovery against the Person against whom such Claims are asserted and as a counterclaim or offset against any Person who asserts a Claim against the Estate or Reorganized Debtor.

18.     <u>Piercing the Corporate Veil</u>.  With respect to all Estate Claims against any Person, all rights to pierce or ignore the corporate veil are hereby reserved, retained and preserved for the benefit of the Estate and the Reorganized Debtor.  Without limiting the generality of the foregoing, this shall include: (a) any right to pierce the corporate veil, including reverse piercing, on any theory or basis, including alter ego or any theory of sham to perpetrate a fraud, and (b) any Claim or basis to pierce the corporate veil of any entity with respect to establishing personal liability against James D. Dondero or Mark K. Okada.

19.     <u>Avoidance Actions</u>.  All Avoidance Actions are hereby reserved, retained and preserved as to all Persons.  The reservation, retention and preservation of such Avoidance Actions shall include the reservation, retention and preservation for the benefit of the Estate and Reorganized Debtor of all rights and remedies pursuant to section 550 of the Bankruptcy Code.

20.     <u>Estate Defenses</u>.  All Estate Defenses are hereby reserved, retained and preserved in favor of the Estate and Reorganized Debtor as against any Person asserting any Claim against the Estate.  This includes asserting all Estate Claims as an offset to, or counterclaim or right of recoupment against, any Person asserting a Claim against the Estate. All defenses and affirmative defenses pursuant to applicable law are hereby reserved, retained and preserved for the benefit of the Estate and the Reorganized Debtor, including without limitation, accord and satisfaction, assumption of risk, contributory negligence, duress, estoppel, failure of consideration, fraud, illegality, laches, license, payment, release, *res judicata*, collateral estoppel, statute of frauds, statute of limitations or repose, discovery rule, adverse domination doctrine or similar doctrines, set off, recoupment, waiver, and all other defenses to Claims under the Bankruptcy Code, including under sections 502(b)(4) and 502(d).

21.     <u>Equitable Subordination</u>.  All rights or remedies for Equitable Subordination are hereby reserved, retained and preserved in favor of the Estate and Reorganized Debtor against any Person asserting any Claim against the Estate, including all such rights or remedies pursuant to section 510(c) of the Bankruptcy Code.  Without limiting the generality of the foregoing, this shall include all rights and remedies to Equitable Subordination as to any Claim asserted by Highland, any Affiliates of Highland, or any officers, directors, employees or equity interest owners of the Debtors, Highland, or any Affiliates thereof.

22.     <u>Recharacterization</u>.  All rights or remedies to recharacterize any Claim as an equity interest in either of the Debtors are hereby reserved, retained and preserved in favor of the Estate and Reorganized Debtor against any Person asserting any Claim against the Estate. Without limiting the generality of the foregoing, this shall include all rights and remedies to recharacterize any Claim asserted by Highland, any Affiliates of Highland, or any officers, directors, employees or equity interest owners of the Debtors, Highland, or any Affiliates thereof.

Case 18-30264-sgj11 Doc 1242-2 Filed 09/05/21 Entered 09/05/21 13:08:29 Page 177 of
Case 18-30264-sgj11 Doc 3302 Filed 01/18/18 Entered 01/18/18 17:43:43 Page 196 of 229
230

# Exhibit "2"
## [Redline – Plan Exhibit "A"]

**EXHIBIT "A"**
**to**
**Joint Plan for Acis Capital Management, LP and Acis Capital Management GP, LLC**

1.  <u>Defined Terms</u>.  This Exhibit "A" constitutes an integral part of the Plan of which it is a part.  Defined terms in the Plan are to be given the same meaning in this Exhibit "A".  The rules of construction set forth in Article I.B. of the Plan shall likewise apply to this Exhibit "A".

2.  <u>Estate Claims Reserved, Retained and Preserved</u>.  All Estate Claims are hereby reserved, retained and preserved, and shall all be transferred to, and vested in, the Reorganized Debtor pursuant to this Plan, and shall include without limitation all of the Estate Claims described below.  In reserving, retaining, and preserving Estate Claims against any named Person or category of Persons, it is the intent of this Plan to so reserve, retain, and preserve any and all Estate Claim against each such Person or category of Persons, including all such Estate Claims pursuant to any applicable common law, based on any contract or agreement or based upon any law, statute or regulation of any political entity, including the United States and any state or political subdivision thereof, as well as all applicable remedies, whether legal or equitable.  Without limiting the generality of the foregoing, the reservation, retention, and preservation of Estate Claims against any Person, and the term "<u>Estate Claims</u>," shall encompass all Estate Claims against any such Person, including without limitation, all such Estate Claims for breach of contract, all rights to enforce any contract, any form of estoppel, fraud, constructive fraud, abuse of process, malicious prosecution, defamation, libel, slander, conversion, trespass, intentional infliction of emotional distress or other harm, negligence, gross negligence, negligent misrepresentation, fraudulent misrepresentation, vicarious liability, respondeat superior, breach of any duty owed under either applicable law or any contract, breach of any fiduciary duty or duty of loyalty or due care, aiding and/or abetting breach of fiduciary duty, aiding and/or abetting breach of duty of loyalty or due care, alter ego, veil piercing, self-dealing, usurpation of corporate opportunity, ultra vires, turnover of Estate Assets, unauthorized use of Estate Assets, including intellectual property rights or Assets owned by the Debtors or Chapter 11 Trustee, quantum merit, tortious interference, duress, unconscionability, undue influence, and unjust enrichment, as well as any cause of action for conspiracy to commit any unlawful act, aiding and/or abetting any such unlawful act, or assisting, encouraging, and/or participating in any such unlawful act, or claims arising from or relating to the filing of the involuntary bankruptcy petitions against the Debtors.

3.  <u>Highland Claims</u>.  All Estate Claims against Highland are reserved, retained and preserved for the benefit of the Estate and Reorganized Debtor, including without limitation all such Estate Claims asserted by the Chapter 11 Trustee in Adversary Proceeding No. 18-03078-sgj (the "<u>Highland Adversary</u>") and Adversary Proceeding No. 18-03212-sgj (the "<u>Trustee's Adversary</u>").  The Estate Claims against Highland shall include all Estate Claims set forth in paragraph 2 above, including without limitation, the following:

(a)  All such Claims asserted by the Chapter 11 Trustee or Estate in, or which could be asserted based on the facts or transactions alleged in, the Highland Adversary;

(b)  All such Claims asserted by the Chapter 11 Trustee or Estate in, or which could be asserted based on the facts or transactions alleged in, the Trustee's Adversary;

(c)  All such Claims and Defenses asserted by the Chapter 11 Trustee or Estate, or which could be asserted by the Chapter 11 Trustee or Estate, based on the facts or transactions alleged in any other adversary proceedings or Claim Objections filed by the

Chapter 11 Trustee or Estate;

(d)     All Avoidance Actions against Highland, including any claims to avoid and recover amounts transferred by the Debtors to Highland under the Shared Services Agreement or Sub-Advisory Agreement;

(e)     All Claims for breach of the Shared Services Agreement or Sub-Advisory Agreement;

(f)     All Claims against Highland for amounts paid by the Debtors to Highland under the Shared Services Agreement and Sub-Advisory Agreement, including any Claim that Highland overcharged Acis LP for services under such agreements, charged excessive fees in violation of Acis LP's limited partnership agreement and/or Acis GP's limited liability company agreement, and/or that the Shared Services Agreement and Sub-Advisory Agreement or any related or predecessor agreements are void or voidable based on ultra vires or any other theories of avoidance and recovery, including turnover, conversion and Avoidance Actions under the Bankruptcy Code;

(g)     All Claims for breach of the PMAs or the Indentures;

(h)     All Claims for breach of fiduciary duty or duty of loyalty or due care owed to the Debtors or Chapter 11 Trustee;

(i)     All Claims for aiding and/or abetting breach of fiduciary duty, breach of duty loyalty or due care, or any other unlawful act;

(j)     All Clams for usurpation of a corporate opportunity belonging to either of the Debtors, including in relation to Acis CLO 2017-7, Ltd and any other Acis CLOs;

(k)     All claims for tortious interference, including in relation to Universal-Investment-Luxembourg S.A. and BayVK R2 Lux S.A., SICAV-FIS;

(l)     All Claims against Highland for the turnover of Estate Assets, including Estate property that the Chapter 11 Trustee may use, sell or lease under section 363 of the Bankruptcy Code including, without limitation, any intellectual property rights or Assets owned by the Debtors or Estate, as well as the turnover of any books, documents, records and papers relating to the Debtors' property or financial affairs;

(m)     All Claims against Highland for the unauthorized use of Estate Assets including, without limitation, any intellectual property rights or Assets owned by the Debtors or Estate;

(n)     All Claims, rights or remedies for Equitable Subordination or Recharacterization of any Claim by Highland against the Debtors, Chapter 11 Trustee, or Estate;

(o)     All Claims based on alter ego or rights to pierce the corporate veil of Acis LP as to any Person, including as against Highland or any Affiliates thereof, James D. Dondero, Mark K. Okada, or any other officers, directors, equity interest holders, or Persons otherwise in control of Acis LP;

(p)     All Claims based on alter ego or rights to pierce the corporate veil of

Highland as to any Person, including as against any Affiliates of Highland, James D. Dondero, Mark K. Okada, or any other officers, directors, equity interest holders, or Persons otherwise in control of Highland, and,

(q)     All Claims for conspiracy to commit any unlawful act, aiding and/or abetting any such unlawful act, or assisting, encouraging, and/or participating in any such unlawful act.

4.     HCLOF Claims.  All Estate Claims against HCLOF are reserved, retained and preserved for the benefit of the Estate and Reorganized Debtor, including without limitation all such Estate Claims asserted by the Chapter 11 Trustee in the Highland Adversary and the Trustee's Adversary.  The Estate Claims against HCLOF shall include all Estate Claims set forth in paragraph 2 above, including without limitation, the following:

(a)     All such Claims against HCLOF asserted by the Chapter 11 Trustee or Estate in, or which could be asserted based on the facts or transactions alleged in, the Highland Adversary;

(b)     All such Claims against HCLOF asserted by the Chapter 11 Trustee or Estate in, or which could be asserted based on the facts or transactions alleged in, the Trustee's Adversary;

(c)     All such Claims and Defenses asserted by the Chapter 11 Trustee or Estate, or which could be asserted by the Chapter 11 Trustee or Estate, based on the facts or transactions alleged in any other adversary proceedings or Claim Objections filed by the Chapter 11 Trustee or Estate;

(d)     All Avoidance Actions against HCLOF;

(e)     All Claims for breach of the PMAs or the Indentures;

(f)     All Claims for breach of fiduciary duty or duty of loyalty or due care owed to the Debtors or Chapter 11 Trustee;

(g)     All Claims for aiding and/or abetting breach of fiduciary duty, breach of duty loyalty or due care, or any other unlawful act;

(h)     All Clams for usurpation of a corporate opportunity belonging to either of the Debtors, including in relation to Acis CLO 2017-7, Ltd and any other Acis CLOs;

(i)     All Claims against HCLOF for the turnover of Estate Assets, including Estate property that the Chapter 11 Trustee may use, sell or lease under section 363 of the Bankruptcy Code including, without limitation, any intellectual property rights or Assets owned by the Debtors or Estate, as well as the turnover of any books, documents, records and papers relating to the Debtors' property or financial affairs;

(j)     All Claims against HCLOF for the unauthorized use of Estate Assets including, without limitation, any intellectual property rights or Assets owned by the Debtors or Estate;

(k)     All Claims, rights or remedies for Equitable Subordination or Recharacterization of any Claim by HCLOF against the Debtors, Chapter 11 Trustee, or Estate;

(l) All Claims based on alter ego or rights to pierce the corporate veil of HCLOF as to any Person, including as against any Affiliates of HCLOF or Highland, William Scott, Heather Bestwick, or any other officers, directors, equity interest holders, or Persons otherwise in control of HCLOF; and,

(m) All Claims for conspiracy to commit any unlawful act, aiding and/or abetting any such unlawful act, or assisting, encouraging, and/or participating in any such unlawful act.

5. <u>Highland HCF Advisor, Ltd. Claims</u>.  All Estate Claims against Highland HCF Advisor, Ltd. ("<u>Highland HCF</u>") are reserved, retained and preserved for the benefit of the Estate and Reorganized Debtor, including without limitation all such Estate Claims asserted by the Chapter 11 Trustee in the Highland Adversary.  The Estate Claims against Highland HCF shall include all Estate Claims set forth in paragraph 2 above, including without limitation, the following:

(a) All such Claims against Highland HCF asserted by the Chapter 11 Trustee or Estate in, or which could be asserted based on the facts or transactions alleged in, the Highland Adversary;

(b) All such Claims against Highland HCF asserted by the Chapter 11 Trustee or Estate in, or which could be asserted based on the facts or transactions alleged in, the Trustee's Adversary;

(c) All such Claims and Defenses asserted by the Chapter 11 Trustee or Estate, or which could be asserted by the Chapter 11 Trustee or Estate, based on the facts or transactions alleged in any other adversary proceedings or Claim Objections filed by the Chapter 11 Trustee or Estate;

(d) All Avoidance Actions against Highland HCF;

(e) All Claims for breach of fiduciary duty or duty of loyalty or due care owed to the Debtors or Chapter 11 Trustee;

(f) All Claims for aiding and/or abetting breach of fiduciary duty, breach of duty loyalty or due care, or any other unlawful act;

(g) All Clams for usurpation of a corporate opportunity belonging to either of the Debtors, including in relation to Acis CLO 2017-7, Ltd and any other Acis CLOs;

(h) All Claims against Highland HCF for the turnover of Estate Assets, including Estate property that the Chapter 11 Trustee may use, sell or lease under section 363 of the Bankruptcy Code including, without limitation, any intellectual property rights or Assets owned by the Debtors or Estate, as well as the turnover of any books, documents, records and papers relating to the Debtors' property or financial affairs;

(i) All Claims against Highland HCF for the unauthorized use of Estate Assets including, without limitation, any intellectual property rights or Assets owned by the Debtors or Estate;

(j) All Claims, rights or remedies for Equitable Subordination or Recharacterization of any Claim by Highland HCF against the Debtors, Chapter 11 Trustee, or

Case 18-30264-sgj11 Doc 1243-2 Filed 09/05/21 Entered 09/05/21 12:08:29 Page 182 of
Case 18-30264-sgj11 Doc 3302 Filed 03/18/19 Entered 03/18/19 12:43:29 Page 184 of 229
230

Estate;

(k)     All Claims based on alter ego or rights to pierce the corporate veil of Highland HCF as to any Person, including as against any Affiliates of Highland HCF or Highland, or any other officers, directors, equity interest holders, or Persons otherwise in control of Highland HCF; and,

(l)     All Claims for conspiracy to commit any unlawful act, aiding and/or abetting any such unlawful act, or assisting, encouraging, and/or participating in any such unlawful act.

6.     <u>Highland CLO Management, Ltd. Claims</u>.  All Estate Claims against Highland CLO Management, Ltd. ("<u>Highland CLOM</u>") are reserved, retained and preserved for the benefit of the Estate and Reorganized Debtor, including without limitation all such Estate Claims asserted by the Chapter 11 Trustee in the Highland Adversary.  The Estate Claims against Highland CLOM shall include all Estate Claims set forth in paragraph 2 above, including without limitation the following:

(a)     All such Claims against Highland CLOM asserted by the Chapter 11 Trustee or Estate in, or which could be asserted based on the facts or transactions alleged in, the Highland Adversary;

(b)     All such Claims against Highland CLOM asserted by the Chapter 11 Trustee or Estate in, or which could be asserted based on the facts or transactions alleged in, the Trustee's Adversary;

(c)     All such Claims and Defenses asserted by the Chapter 11 Trustee or Estate, or which could be asserted by the Chapter 11 Trustee or Estate, based on the facts or transactions alleged in any other adversary proceedings or Claim Objections filed by the Chapter 11 Trustee or Estate;

(d)     All Avoidance Actions against Highland CLOM;

(e)     All Claims for breach of fiduciary duty or duty of loyalty or due care owed to the Debtors or Chapter 11 Trustee;

(f)     All Claims for aiding and/or abetting breach of fiduciary duty, breach of duty loyalty or due care, or any other unlawful act;

(g)     All Clams for usurpation of a corporate opportunity belonging to either of the Debtors, including in relation to Acis CLO 2017-7, Ltd and any other Acis CLOs;

(h)     All Claims against Highland CLOM for the turnover of Estate Assets, including Estate property that the Chapter 11 Trustee may use, sell or lease under section 363 of the Bankruptcy Code including, without limitation, any intellectual property rights or Assets owned by the Debtors or Estate, as well as the turnover of any books, documents, records and papers relating to the Debtors' property or financial affairs;

(i)     All Claims against Highland CLOM for the unauthorized use of Estate Assets including, without limitation, any intellectual property rights or Assets owned by the Debtors or Estate;

(j)      All Claims, rights or remedies for Equitable Subordination or Recharacterization of any Claim by Highland CLOM against the Debtors, Chapter 11 Trustee, or Estate;

(k)      All Claims based on alter ego or rights to pierce the corporate veil of Highland CLOM as to any Person, including as against any Affiliates of Highland CLOM or Highland, or any other officers, directors, equity interest holders, or Persons otherwise in control of Highland CLOM; and,

(l)      All Claims for conspiracy to commit any unlawful act, aiding and/or abetting any such unlawful act, or assisting, encouraging, and/or participating in any such unlawful act.

7.    <u>CLO Holdco, Ltd. Claims</u>.  All Estate Claims against CLO Holdco, Ltd. ("<u>CLO Holdco</u>") are reserved, retained and preserved for the benefit of the Estate and Reorganized Debtor, including without limitation all such Estate Claims asserted by the Chapter 11 Trustee in the Trustee's Adversary.  The Estate Claims against CLO Holdco shall include all Estate Claims set forth in paragraph 2 above, including without limitation, the following:

(a)      All such Claims against CLO Holdco asserted by the Chapter 11 Trustee or Estate in, or which could be asserted based on the facts or transactions alleged in, the Highland Adversary;

(b)      All such Claims against CLO Holdco asserted by the Chapter 11 Trustee or Estate in, or which could be asserted based on the facts or transactions alleged in, the Trustee's Adversary;

(c)      All such Claims and Defenses asserted by the Chapter 11 Trustee or Estate, or which could be asserted by the Chapter 11 Trustee or Estate, based on the facts or transactions alleged in any other adversary proceedings or Claim Objections filed by the Chapter 11 Trustee or Estate;

(d)      All Avoidance Actions against CLO Holdco;

(e)      All Claims for breach of fiduciary duty or duty of loyalty or due care owed to the Debtors or Chapter 11 Trustee;

(f)      All Claims for aiding and/or abetting breach of fiduciary duty, breach of duty loyalty or due care, or any other unlawful act;

(g)      All Clams for usurpation of a corporate opportunity belonging to either of the Debtors, including in relation to Acis CLO 2017-7, Ltd and any other Acis CLOs;

(h)      All Claims against CLO Holdco for the turnover of Estate Assets, including Estate property that the Chapter 11 Trustee may use, sell or lease under section 363 of the Bankruptcy Code including, without limitation, any intellectual property rights or Assets owned by the Debtors or Estate, as well as the turnover of any books, documents, records and papers relating to the Debtors' property or financial affairs;

(i)      All Claims against CLO Holdco for the unauthorized use of Estate Assets including, without limitation, any intellectual property rights or Assets owned by the Debtors or Estate;

(j)     All Claims, rights or remedies for Equitable Subordination or Recharacterization of any Claim by Highland against the Debtors, Chapter 11 Trustee, or Estate;

(k)     All Claims based on alter ego or rights to pierce the corporate veil of CLO Holdco as to any Person, including as against any Affiliates of CLO Holdco or Highland, or any other officers, directors, equity interest holders, or Persons otherwise in control of CLO Holdco; and,

(l)     All Claims for conspiracy to commit any unlawful act, aiding and/or abetting any such unlawful act, or assisting, encouraging, and/or participating in any such unlawful act.

8.     Neutra, Ltd. Claims.  All Estate Claims against Neutra, Ltd. ("Neutra") are reserved, retained and preserved for the benefit of the Estate and Reorganized Debtor, including without limitation all such Estate Claims asserted by the Chapter 11 Trustee in the Trustee's Adversary.  The Estate Claims against Neutra shall include all Estate Claims set forth in paragraph 2 above, including without limitation the following:

(a)     All such Claims against Neutra asserted by the Chapter 11 Trustee or Estate in, or which could be asserted based on the facts or transactions alleged in, the Highland Adversary;

(b)     All such Claims against Neutra asserted by the Chapter 11 Trustee or Estate in, or which could be asserted based on the facts or transactions alleged in, the Trustee's Adversary;

(c)     All such Claims and Defenses asserted by the Chapter 11 Trustee or Estate, or which could be asserted by the Chapter 11 Trustee or Estate, based on the facts or transactions alleged in any other adversary proceedings or Claim Objections filed by the Chapter 11 Trustee or Estate;

(d)     All Avoidance Actions against Neutra;

(e)     All Claims for breach of fiduciary or duty of loyalty or due care owed to the Debtors or Chapter 11 Trustee;

(f)     All Claims for aiding and/or abetting breach of fiduciary duty, breach of duty loyalty or due care, or any other unlawful act;

(g)     All Clams for usurpation of a corporate opportunity belonging to either of the Debtors, including in relation to Acis CLO 2017-7, Ltd and any other Acis CLOs;

(h)     All Claims against Neutra for the turnover of Estate Assets, including Estate property that the Chapter 11 Trustee may use, sell or lease under section 363 of the Bankruptcy Code including, without limitation, any intellectual property rights or Assets owned by the Debtors or Estate, as well as the turnover of any books, documents, records and papers relating to the Debtors' property or financial affairs;

(i)     All Claims against Neutra for the unauthorized use of Estate Assets

including, without limitation, any intellectual property rights or Assets owned by the Debtors or Estate;

(j)     All Claims, rights or remedies for Equitable Subordination or Recharacterization of any Claim by Neutra against the Debtors, Chapter 11 Trustee, or Estate;

(k)     All Claims based on alter ego or rights to pierce the corporate veil of Acis LP as to any Person, including as against Neutra, Highland, or any Affiliates thereof, James D. Dondero, Mark K. Okada, or any other officers, directors, equity interest holders, or Persons otherwise in control of Acis LP;

(l)     All Claims based on alter ego or rights to pierce the corporate veil of Neutra as to any Person, including as against any Affiliates of Neutra or Highland, or any other officers, directors, equity interest holders, or Persons otherwise in control of Neutra; and,

(m)     All Claims for conspiracy to commit any unlawful act, aiding and/or abetting any such unlawful act, or assisting, encouraging, and/or participating in any such unlawful act.

9.     <u>Claims against Issuers, Co-Issuers and Indenture Trustee</u>.  All Estate Claims against CLO-3, CLO-4, CLO-5, and CLO-6 (collectively, the "<u>Issuers</u>"), Acis CLO 2014-3 LLC, Acis CLO 2014-4 LLC, Acis CLO 2014-5 LLC, and Acis CLO 2015-6 LLC (collectively, the "<u>Co-Issuers</u>"), and the Indenture Trustee are reserved, retained and preserved for the benefit of the Estate and Reorganized Debtor, including without limitation all such Estate Claims asserted by the Chapter 11 Trustee in the Trustee's Adversary.  The Estate Claims against the Issuers, Co-Issuers and/or Indenture Trustee shall include all Estate Claims set forth in paragraph 2 above, including without limitation the following:

(a)     All such Claims against the Issuers, Co-Issuers, and/or Indenture Trustee asserted by the Chapter 11 Trustee or Estate in, or which could be asserted based on the facts or transactions alleged in, the Highland Adversary;

(b)     All such Claims against the Issuers, Co-Issuers, and/or Indenture Trustee asserted by the Chapter 11 Trustee or Estate in, or which could be asserted based on the facts or transactions alleged in, the Trustee's Adversary;

(c)     All such Claims and Defenses asserted by the Chapter 11 Trustee or Estate, or which could be asserted by the Chapter 11 Trustee or Estate, based on the facts or transactions alleged in any other adversary proceedings or Claim Objections filed by the Chapter 11 Trustee or Estate;

(d)     All Avoidance Actions against the Issuers, Co-Issuers and/or Indenture Trustee;

(e)     All Claims for breach of the Indentures, PMAs or any other agreements between Acis LP and the Issuers, Co-Issuers, and/or Indenture Trustee;

(f)     All Claims for breach of fiduciary duty or duty of loyalty or due care owed to the Debtors or Chapter 11 Trustee;

(g)     All Claims for aiding and/or abetting breach of fiduciary duty, breach of duty loyalty or due care, or any other unlawful act;

(h)     All Clams for usurpation of a corporate opportunity belonging to either of the Debtors, including in relation to Acis CLO 2017-7, Ltd and any other Acis CLOs;

(i)     All Claims against the Issuers, Co-Issuers and/or Indenture Trustee for the turnover of Estate Assets, including Estate property that the Chapter 11 Trustee may use, sell or lease under section 363 of the Bankruptcy Code including, without limitation, any intellectual property rights or Assets owned by the Debtors or Estate, as well as the turnover of any books, documents, records and papers relating to the Debtors' property or financial affairs;

(j)     All Claims against the Issuers, Co-Issuers and/or Indenture Trustee for the unauthorized use of Estate Assets including, without limitation, any intellectual property rights or Assets owned by the Debtors or Estate;

(k)     All Claims, rights or remedies for Equitable Subordination or Recharacterization of any Claim by the Issuers or Co-Issuers against the Debtors, Chapter 11 Trustee, or Estate; and,

(l)     All Claims for conspiracy to commit any unlawful act, aiding and/or abetting any such unlawful act, or assisting, encouraging, and/or participating in any such unlawful act.

10.     ~~Highland Affiliate~~ Claims. Against Any Affiliates of Highland, HCLOF, Highland HCF, Highland CLOM, CLO Holdco, Neutra, and Their Respective Affiliates. All Estate Claims against any Affiliates of Highland, HCLOF, Highland HCF, Highland CLOM, CLO Holdco, Neutra, and Their Respective Affiliates (collectively, the "Affiliates" and each, an "Affiliate") are reserved, retained and preserved for the benefit of the Estate and Reorganized Debtor, including without limitation all such Estate Claims asserted by the Chapter 11 Trustee in the Highland Adversary and the Trustee's Adversary. The Estate Claims against ~~any~~such Affiliates ~~of Highland~~ shall include all Estate Claims set forth in paragraph 2 above, including without limitation the following:

(a)     All such Claims against any ~~Highland~~ Affiliate asserted by the Chapter 11 Trustee or Estate in, or which could be asserted based on the facts or transactions alleged in, the Highland Adversary;

(b)     All such Claims against any ~~Highland~~ Affiliate asserted by the Chapter 11 Trustee or Estate in, or which could be asserted based on the facts or transactions alleged in, the Trustee's Adversary;

(c)     All such Claims and Defenses asserted by the Chapter 11 Trustee or Estate, or which could be asserted by the Chapter 11 Trustee or Estate, based on the facts or transactions alleged in any other adversary proceedings or Claim Objections filed by the Chapter 11 Trustee or Estate;

(d)     All Avoidance Actions against any ~~Highland~~ Affiliate;

(e)     All Claims for breach of fiduciary duty or duty of loyalty or due care owed to the Debtors or Chapter 11 Trustee;

(f)     All Claims for aiding and/or abetting breach of fiduciary duty, breach of duty loyalty or due care, or any other unlawful act;

(g)     All Clams for usurpation of a corporate opportunity belonging to either of the Debtors, including in relation to Acis CLO 2017-7, Ltd and any other Acis CLOs;

(h)     All Claims against any ~~Highland~~ Affiliate for the turnover of Estate Assets, including Estate property that the Chapter 11 Trustee may use, sell or lease under section 363 of the Bankruptcy Code including, without limitation, any intellectual property rights or Assets owned by the Debtors or Estate, as well as the turnover of any books, documents, records and papers relating to the Debtors' property or financial affairs;

(i)     All Claims against any ~~Highland~~ Affiliate for the unauthorized use of Estate Assets including, without limitation, any intellectual property rights or Assets owned by the Debtors or Estate;

(j)     All Claims, rights or remedies for Equitable Subordination or Recharacterization of any Claim by any ~~Highland~~ Affiliate against the Debtors, Chapter 11 Trustee, or Estate;

(k)     All Claims based on alter ego or rights to pierce the corporate veil of Acis LP as to any Person, including as against Highland, HCLOF, Highland HCF, Highland CLOM, CLO Holdco, Neutra, ~~or any~~the Affiliates ~~thereof~~, James D. Dondero, Mark K. Okada, or any other officers, directors, equity interest holders, or Persons otherwise in control of Acis LP;

(l)     All Claims based on alter ego or rights to pierce the corporate veil of any ~~Highland~~ Affiliate as to any Person, including as against ~~any other~~Highland, HCLOF, Highland HCF, Highland CLOM, CLO Holdco, Neutra, the Affiliates ~~of Highland~~, James D. Dondero, Mark K. Okada, or any officers, directors, equity interest holders, or Persons otherwise in control of any ~~Highland~~ Affiliates; and,

(m)     All Claims for conspiracy to commit any unlawful act, aiding and/or abetting any such unlawful act, or assisting, encouraging, and/or participating in any such unlawful act.

11.     <u>Dondero Claims</u>.  All Estate Claims as defined in paragraph 2 above against James D. Dondero, individually, are hereby reserved, retained and preserved for the benefit of the Estate and Reorganized Debtor, including without limitation all such Estate Claims against James D. Dondero for fraud, constructive fraud, breach of fiduciary duty, breach of duty of loyalty or due care, aiding and abetting breach of fiduciary duty, aiding and abetting breach of duty of loyalty or due care, self-dealing, ultra vires, conversion, usurpation of corporate opportunity, including in relation to Acis CLO 2017-7, Ltd and any other Acis CLOs, tortious interference, including in relation to Universal-Investment-Luxembourg S.A. and BayVK R2 Lux S.A., SICAV-FIS, conflict of interest, negligence, gross negligence, all Avoidance Actions, breach of contract, breach of the Shared Services Agreement, breach of the Sub-Advisory Agreement, breach of the Debtors' limited partnership agreement or limited liability company agreement, conspiracy to commit any unlawful act, aiding and abetting any unlawful act, and assisting, encouraging, and/or participating in any unlawful act, as well as any Claim to pierce the corporate veil of any entity to hold James D. Dondero individually liable.

12.     <u>Okada Claims</u>.  All Estate Claims as defined in paragraph 2 above against Mark K. Okada, individually, are hereby reserved, retained and preserved for the benefit of the Estate and Reorganized Debtor, including without limitation all such Estate Claims against Mark K. Okada for fraud, constructive fraud, breach of fiduciary duty, breach of duty of loyalty or due

care, aiding and abetting breach of fiduciary duty, self-dealing, ultra vires, conversion, usurpation of corporate opportunity, including in relation to Acis CLO 2017-7, Ltd and any other Acis CLOs, tortious interference, including in relation to Universal-Investment-Luxembourg S.A. and BayVK R2 Lux S.A., SICAV-FIS, conflict of interest, negligence, gross negligence, all Avoidance Actions, breach of contract, breach of the Shared Services Agreement, breach of the Sub-Advisory Agreement, breach of the Debtors' limited partnership agreement or limited liability company agreement, conspiracy to commit any unlawful act, aiding and abetting any unlawful act, and assisting, encouraging, and participating in any unlawful act, as well as any Claim to pierce the corporate veil of any entity to hold Mark K. Okada individually liable.

13.    <u>Preference Claims</u>.  All Avoidance Actions pursuant to section 547 of the Bankruptcy Code against any Person are hereby reserved, retained and preserved for the benefit of the Estate and Reorganized Debtor for any payment made to any Person by either of the Debtors within ninety (90) days of the Petition Date (which was January 30, 2018), or made by either of the Debtors to any insider within one (1) year of the Petition Date.  A non-exhaustive list of Persons who are believed to have received payments from either of the Debtors during the 90-day preference period, and the one-year preference period for Insiders, is attached to this **Exhibit "A"** as **Schedule "1"**.  The Plan reserves, retains and preserves for the benefit of the Estate and Reorganized Debtor all potential Claims arising out of or relating to the transfers reflected in **Schedule "1"**, including all Avoidance Actions pursuant to section 547 of the Bankruptcy Code.  All rights and remedies are also reserved. retained and preserved with respect to the transfers reflected in **Schedule "1"** pursuant to section 550 of the Bankruptcy Code.

        **Schedule "1"** reflects transfers made by the Debtors during the 90 days prior to the Petition Date and transfers made by the Debtors to any insiders within one (1) year of the Petition Date.  While the Plan reserves, retains and preserves all Avoidance Actions relating to the transfers reflected in **Schedule "1"**, the Chapter 11 Trustee recognizes that certain of these transfers may not constitute a preferential transfer pursuant to section 547(b) of the Bankruptcy Code as a transfer made in the ordinary course of business transactions or based upon new value subsequently given by the transferee.  Consequently, the listing of a payment on **Schedule "1"** does not necessarily mean that a transferee will ever be sued to avoid and recover the payment, the transfer, or the value thereof, but only that the Plan reserves, retains and preserves all rights (including Avoidance Actions) as to that payment.

14.    <u>Claims Against Officers, Managers and Members</u>.  All Estate Claims as defined in paragraph 2 above are hereby reserved, retained and preserved for the benefit of the Estate and Reorganized Debtor against all present and past officers, employees, members and managers of the Debtors, including all such Estate Causes of Action based on breach of fiduciary duty, aiding and abetting breach of fiduciary duty, breach of duty of loyalty or due care, aiding and abetting breach of duty of loyalty or due care, self-dealing, usurpation of corporate opportunity, gross negligence or conspiracy.  Without limiting the generality of the foregoing, this shall include all D&O Claims as against any present or former officer, director, employee, member, manager, or partner.

15.    <u>Claims Against Former Attorneys and Law Firms</u>.  All Estate Claims as defined in paragraph 2, above, including Claims for breach of any fiduciary duty or duty of loyalty or due care, conspiracy to commit any unlawful act, aiding and/or abetting any such unlawful act, or assisting, encouraging, and/or participating in any such unlawful act, including knowingly aiding, abetting, or assisting with a fraudulent transfer to avoid paying a judgment, negligent or fraudulent misrepresentation, vicarious liability, and respondeat superior, as well as all Claims

for legal or professional malpractice, are hereby reserved, retained and preserved for the benefit of the Estate and Reorganized Debtor against all law firms and attorneys who and which rendered legal services to the Debtors on a prepetition basis including, but not limited to, the following:

    (a)    Cole Schotz, P.C.

    (b)    Michael D. Warner

    (c)    Jacob Frumkin

    (d)    Warren A. Usatine

    (e)    McKool Smith

    (f)    Gary Cruciani

    (g)    Michael P. Fritz

    (h)    Carson D. Young

    (i)    Nicholas Matthews

    (i)(j)    Lackey Hershman, LLP

    (j)(k)    Stinson Leonard Street LLP

    (l)    Jamie R. Welton

    (k)(m)    Paul B. Lackey, Esq.

    (l)(n)    Michael Aigen, Esq.

    (o)    Roger L. Mandel

    (m)(p)    Abrams & Bayliss, LLP

    (n)(q)    Kevin G. Abrams

    (o)(r)    A. Thompson Bayliss

    (p)(s)    Jones Day

    (q)(t)    Hilda C. Galvan

    (r)(u)    Michael Weinberg

    (s)(v)    Reid Collins & Tsai, LLP

    (t)(w)    Lisa Tsai

    (u)(x)    Stanton, LLP

Case 18-30264-sgj11 Doc 1243-2 Filed 09/05/21 Entered 09/05/21 12:08:29 Page 190 of
Case 18-30264-sgj11 Doc 1362 Filed 01/18/18 Entered 01/18/18 17:43:28 Page 191 of 229
230

      ~~(v)~~(y)   James M. Stanton

      ~~(w)~~(z)   Hunton Andrews Kurth

      ~~(x)~~(aa) Marc Katz

      ~~(y)~~(bb) Greg Waller

      ~~(z)~~(cc) any other law firm or attorney who may be so named at a later date by the Reorganized Debtor.

~~16.      Retention of Claims Against Specific Persons or Categories of Persons.   In addition to the foregoing, all Estate Claims as defined in paragraph 2 above are hereby reserved, retained and preserved for the benefit of the Estate and Reorganized Debtor against the following Persons:~~

16.      Claims Against Officers, Directors, Employees, Members, and Managers, of Highland, HCLOF, Highland HCF, Highland CLOM, CLO Holdco, Neutra, and Their Respective Affiliates.  In addition to the foregoing, all Estate Claims as defined in paragraph 2 above are hereby reserved, retained and preserved for the benefit of the Estate and Reorganized Debtor against all present and past officers, directors, employees, members and managers of Highland, HCLOF, Highland HCF, Highland CLOM, and their respective Affiliates, including all such Estate Causes of Action based on fraud, constructive fraud, breach of fiduciary duty, breach of duty of loyalty or due care, aiding and abetting breach of fiduciary duty, aiding and abetting breach of duty of loyalty or due care, self-dealing, ultra vires, conversion, usurpation of corporate opportunity, including in relation to Acis CLO 2017-7, Ltd and any other Acis CLOs, tortious interference, including in relation to Universal-Investment-Luxembourg S.A. and BayVK R2 Lux S.A., SICAV-FIS, conflict of interest, negligence, gross negligence, all Avoidance Actions, breach of contract, breach of the Shared Services Agreement, breach of the Sub-Advisory Agreement, breach of the Debtors' limited partnership agreement or limited liability company agreement, conspiracy to commit any unlawful act, aiding and abetting any unlawful act, and assisting, encouraging, and/or participating in any unlawful act.  Such present and past officers, directors, employees, members and managers of Highland, HCLOF, Highland HCF, Highland CLOM, and their respective Affiliates include, but are not limited to, the following Persons:

      (a)     William Scott;

      (b)     Heather Bestwick;

      (c)     Scott Ellington

      (d)     Isaac Leventon

      (e)     Jean Paul Sevilla

      (f)      Hunter Covitz

      (g)     The Dugaboy Investment Trust

      (h)     Nancy Dondero, Trustee of the Dugaboy Trust

      (i)      Grant Scott

(j)      Any other Person who may be so named at a later date by the Reorganized Debtor.

(c)

Formatted: Indent: Left:  1",  No bullets or numbering

17.      Counterclaims.  All Estate Claims as defined in paragraph 2 above are reserved, retained and preserved for the benefit of the Estate and Reorganized Debtor both as a basis for an affirmative recovery against the Person against whom such Claims are asserted and as a counterclaim or offset against any Person who asserts a Claim against the Estate or Reorganized Debtor.

18.      Piercing the Corporate Veil.  With respect to all Estate Claims against any Person, all rights to pierce or ignore the corporate veil are hereby reserved, retained and preserved for the benefit of the Estate and the Reorganized Debtor.  Without limiting the generality of the foregoing, this shall include: (a) any right to pierce the corporate veil, including reverse piercing, on any theory or basis, including alter ego or any theory of sham to perpetrate a fraud, and (b) any Claim or basis to pierce the corporate veil of any entity with respect to establishing personal liability against James D. Dondero or Mark K. Okada.

19.      Avoidance Actions.  All Avoidance Actions are hereby reserved, retained and preserved as to all Persons.  The reservation, retention and preservation of such Avoidance Actions shall include the reservation, retention and preservation for the benefit of the Estate and Reorganized Debtor of all rights and remedies pursuant to section 550 of the Bankruptcy Code.

20.      Estate Defenses.  All Estate Defenses are hereby reserved, retained and preserved in favor of the Estate and Reorganized Debtor as against any Person asserting any Claim against the Estate.  This includes asserting all Estate Claims as an offset to, or counterclaim or right of recoupment against, any Person asserting a Claim against the Estate.  All defenses and affirmative defenses pursuant to applicable law are hereby reserved, retained and preserved for the benefit of the Estate and the Reorganized Debtor, including without limitation, accord and satisfaction, assumption of risk, contributory negligence, duress, estoppel, failure of consideration, fraud, illegality, laches, license, payment, release, *res judicata*, collateral estoppel, statute of frauds, statute of limitations or repose, discovery rule, adverse domination doctrine or similar doctrines, set off, recoupment, waiver, and all other defenses to Claims under the Bankruptcy Code, including under sections 502(b)(4) and 502(d).

21.      Equitable Subordination.  All rights or remedies for Equitable Subordination are hereby reserved, retained and preserved in favor of the Estate and Reorganized Debtor against any Person asserting any Claim against the Estate, including all such rights or remedies pursuant to section 510(c) of the Bankruptcy Code.  Without limiting the generality of the foregoing, this shall include all rights and remedies to Equitable Subordination as to any Claim asserted by Highland, any Affiliates of Highland, or any officers, directors, employees or equity interest owners of the Debtors, Highland, or any Affiliates thereof.

22.      Recharacterization.  All rights or remedies to recharacterize any Claim as an equity interest in either of the Debtors are hereby reserved, retained and preserved in favor of the Estate and Reorganized Debtor against any Person asserting any Claim against the Estate.  Without limiting the generality of the foregoing, this shall include all rights and remedies to recharacterize any Claim asserted by Highland, any Affiliates of Highland, or any officers, directors, employees or equity interest owners of the Debtors, Highland, or any Affiliates thereof.

# Exhibit "3"
## [Service Lists]

# Notice Service List
## Acis Capital Mgmt./Phelan
## #5980

**BNP Paribas Securities Services**
**Luxembourg Branch**
**60 Avenue John F. Kennedy**
**1855 Luxembourg**

Dallas County
c/o Laurie Spindler
Linebarger, Goggan, Blair & Sampson LLP
2777 N Stemmons Frwy, No 1000
Dallas, TX 75207-2328

Acis CLO Management, LLC
Acis CLO Value GP, LLC
1209 Orange Street
Wilmington, DE 19801-1120

**Acis Funding GP, Ltd.**
**Acis Funding L.P.**
**c/o Maples Corporate Services Limited**
**P0 Box 309, Ugland House**
**Grand Cayman, Cayman Islands KY1 -1104**

Mizuho Securities USA Inc.
320 Park Ave., 12th Floor
New York, NY 10022-6848

US Bank National Association
c/o Daniel P. Novakov
Frost Brown Todd LLC
100 Crescent Court, Suite 350
Dallas, TX 75201-2348

Robin Phelan, Chapter 11 Trustee
Phelenlaw
4214 Woodfin Drive
Dallas, TX 75220-6416

Texas Comptroller of Public Accounts
c/o John M. Stern, Asst. Attorney General
Bankruptcy & Collection Div. MC 008
PO Box 12548
Austin, TX 78711-2548

Office of the United States Attorney
3rd Floor, 1100 Commerce Street
Dallas, Texas 75242-1699

United States Trustee
Lisa Lambert
1100 Commerce St., Room 976
Dallas, TX 75242

Dallas County
c/o Sherrel K Knighton
Linebarger Goggan Blair & Sampson, LLP
2777 N. Stemmons Frwy Ste 1000
Dallas, TX 75207-2328

**Acis CLO Value Fund II (Cayman), L.P.**
**Acis CLO Value Fund II GP, LLC**
**Acis CLO Value Master Fund II, L.P.**
**PO Box 309, Ugland House**
**Grand Cayman, Cayman Islands KY1-1104**

U. S. Bank National Association
Attn: Michael Zak
60 Livingston Ave., EP-MN-WS3D
Saint Paul, MN 55107-2292

US Bank National Association
c/o Mark D. Kotwick, Arlene Alves
Seward & Kissell LLP
One Battery Park Plaza
New York, NY 10004-1405

Acis Capital Management, LP
c/o Warren A. Usatine
Cole Schotz P.C.
25 Main Street
Hackensack, NJ 07601-7189

Securities and Exchange Commission
801 Cherry Street, Suite 1900, Unit 18
Fort Worth, TX 76102

Office of the Attorney General
Main Justice Building, Room 5111
10th & Constitution Avenue, N.W.
Washington, D.C. 20530

Highland CLO Management, Ltd.
c/o Strand Advisors, Inc., Attn. James Dondero
300 Crescent Court, Suite 700
Dallas, TX 75201

Acis CLO 2013-1 Chemical Holdings, LLC
Acis CLO 2013-2 Chemical Holdings, LLC
Acis CLO 2014-3 Chemical Holdings, LLC
1209 Orange Street
Wilmington, DE 19801-1120

Acis CLO 2014-4 Chemical Holdings, LLC
Acis CLO 2014-5 Chemical Holdings, LLC
Acis CLO 2015-6 Chemical Holdings, LLC
1209 Orange Street
Wilmington, DE 19801-1120

Acis CLO Value Fund II, L.P.
Acis Loan Funding, Ltd.
Acis Capital Management GP, LLC
300 Crescent Court, Suite 700
Dallas, TX 75201-7849

**State Street (Guernsey) Limited**
**First Floor Dorey Court**
**Admiral Park, St. Peter Port, Guernsey**
**Channel Islands GYI 6HJ**

Acis Capital Management, LP
c/o Michael D. Warner
Cole Schotz P.C.
1700 City Center Tower II
301 Commerce St.
Fort Worth, TX 76102-4140

The Bank of N.Y. Mellon Trust Co., N.A.
225 Liberty Street
New York, NY 10286-0001

**Acis Loan Funding, Ltd.**
**First Floor, Dorey Court**
**St. Peter Port, Guernsey**

Acis CLO 2013-1 LLC
Acis CLO 2013-2 LLC
850 Library Ave., Suite 204
Newark, DE 19711

Internal Revenue Service
Special Procedures – Insolvency
P.O. Box 7346
Philadelphia, PA 1901-7346

US Bank
PO Box 5229
Cincinnati, OH 45201-5229

**Acis CLO 2014-5 Ltd.**
**Acis CLO 2015-6 Ltd.**
**c/o MaplesFS Limited**
**P.O. Box 1093, Boundary Hall, Cricket Sq**
**Grand Cayman, Cayman Islands KY1-1102**

Highland HCF Advisor, Ltd.
c/o James Dondero, President
300 Crescent Court, Suite 700
Dallas, TX 75201

Diane G. Reed
Reed & Elmquist, PC
501 N. College St.
Waxahachie, TX 75165-3361

**Hewett's Island CLO I-R, Ltd.**
**c/o Maples Finance Limited**
**PO Box 1093, Queensgate House**
**South Church St., George Town**
**Grand Cayman, Cayman Island KY1-1102**

Highland CLO Management, Ltd.
c/o Strand Advisors, Inc.
Corporation Trust Center
1209 Orange Street
Wilmington, DE 19801

Diane G. Reed
c/o David W. Elmquist
Reed & Elmquist, PC
501 N. College St.
Waxahachie, TX 75165-3361

U.S. Bank National Association
Attention: Global Corporate Trust –
Acis CLO 2013-1 and 2013-2190 S. LaSalle
Street, 8th Floor
Chicago, IL 60603

**Acis CLO 2015-6 Ltd.**
**P.O. Box 1093, Boundary Hall, Cricket Sq**
**Grand Cayman, Cayman Islands KY1-1102,**

**Highland CLO Management, Ltd.**
**c/o Maples Corporate Services, Ltd.**
**P.O. Box 309, Ugland House,**
**South Church Street, George Town**
**Grand Cayman, Cayman Island KY1-1004**

U.S. Bank National Association
Attention: Global Corporate Trust –
Acis CLO 2014-3 and 2014-4190 S. LaSalle
Street, 8th Floor
Chicago, IL 60603

Acis CLO 2014-3 LLC
Acis CLO 2014-4
850 Library Ave., Suite 204
Newark, DE 19711

**Acis CLO 2013-1 Ltd.**
**Acis CLO 2013-2**
**c/o Estera Trust (f/k/a Appleby Trust)**
**Clifton House 75 Port St., P.O. Box 1350**
**Grand Cayman, Cayman Islands KY 1-1108**

U.S. Bank National Association
Attention: Global Corporate Trust –
Acis CLO 2014-5 and Acis CLO 2015-6190 S.
LaSalle Street, 8th Floor
Chicago, IL 60603

Acis CLO 2014-5 LLC
Acis CLO 2015-6 LLC
850 Library Ave., Suite 204
Newark, DE 19711

**Acis CLO 2014-3 Ltd.**
**Acis CLO 2014-4 Ltd.**
**c/o MaplesFS Limited**
**P.O. Box 1093, Boundary Hall, Cricket Sq**
**Grand Cayman, Cayman Islands KY1-1102**

Deutsche Bank Trust Company Americas
Attn: CDO Business Unit – Hewett's
Island CLO 1-R
1761 East St. Andrew Place
Santa Ana, CA 92705

**Acis CLO 2017-7 Ltd.**
**c/o MapleFS Limited, Attn: Directors**
**PO Box 1093, Boundary Hall, Cricket Sq.**
**Grand Cayman, Cayman Islands KY1 -1102**

*Highlands Service List*
*ACIS #5980*

Highland CLO Funding Ltd.
c/o Mark M. Maloney/W. Austin Jowers
King & Spalding LLP
1180 Peachtree Street NE
Atlanta, GA 30309

**Highland CLO Funding, Ltd.**
**First Floor, Dorey Court**
**Admiral Park, St. Peter Port**
**Guernsey GY1 6HJ, Channel Islands**

**Highland CLO Management, Ltd.**
**P.O. Box 309 Ugland House**
**South Church Street**
**George Town, Grand Cayman KY1-1004**

**Highland HCF Advisor, Ltd.**
**c/o Maples Corporate Services, Ltd.**
**P.O. Box 309, Ugland House,**
**South Church Street, George Town**
**Grand Cayman, Cayman Island KY1-1004**

Neutra, Ltd.
c/o Daniel Elms/Heather Jobe/Scott Larson
Bell Nunnally & Martin LLP
3232 McKinney Ave., Suite 1400
Dallas, TX 75204

**CLO Holdco, Ltd.**
**c/o Intertrust Corp. Srvs. (Cayman) Ltd.**
**190 Elgin Ave., George Town**
**Grand Cayman, Cayman Islands KY1-9005**

The Dugaboy Investment Trust
300 Crescent Court, Suite700
Dallas, TX 75201-1876

Highland CLO Funding, Ltd.
c/o Paul R. Bessette/Rebecca Matsumura
King & Spalding LLP
500 West 2nd St., Suite 1800
Austin, TX 78701-4684

Highland CLO Funding, Ltd.
c/o Michael K. Hurst/Ben A. Barnes
Lynn Pinker Cox & Hurst LLP
2100 Ross Ave., Suite 2700
Dallas, TX 75201

Highland CLO Management, Ltd.
c/o Strand Advisors, Inc.
Corporation Trust Center
1209 Orange Street
Wilmington, DE 19801

**Highland CLO Management, Ltd.**
**c/o Summit Management Ltd.**
**P.O. Box 32311**
**Grand Cayman, KY1-1209**
**Cayman Islands**

Highland HCF Advisor, Ltd.
c/o James Dondero, President
300 Crescent Court, Suite 700
Dallas, TX 75201

Neutra, Ltd.
c/o Michael K. Hurst/Ben A. Barnes
Lynn Pinker Cox & Hurst LLP
2100 Ross Ave., Suite 2700
Dallas, TX 75201

CLO Holdco, Ltd.
c/o Daniel Elms/Heather Jobe/Scott Larson
Bell Nunnally & Martin LLP
3232 McKinney Ave., Suite 1400
Dallas, TX 75204

Highland CLO Funding, Ltd.
c/o Daniel Elms/Heather Jobe/Scott Larson
Bell Nunnally & Martin LLP
3232 McKinney Ave., Suite 1400
Dallas, TX 75204

Highland CLO Funding, Ltd.
c/o H. O'Neil, J. Binford, S. Beck, M. Bales
Foley Gardere Foley & Lardner, LLP
2021 McKinney Ave., Suite 1600
Dallas, TX 75201

**Highland CLO Management, Ltd.**
**c/o Maples Corporate Services, Ltd.**
**P.O. Box 309, Ugland House,**
**South Church Street, George Town**
**Grand Cayman, Cayman Island KY1-1004**

**Highland CLO Management, Ltd.**
**c/o Summit Management Ltd.**
**Suite #4-210 Governor's Square**
**23 Lime Tree Bay Avenue**
**Grand Cayman, Cayman Islands**

Highland CLO Management, Ltd.
c/o Strand Advisors, Inc.
Attn. James Dondero
300 Crescent Court, Suite 700
Dallas, TX 75201

Neutra, Ltd.
c/o H. O'Neil, J. Binford, S. Beck, M. Bales
Foley Gardere Foley & Lardner, LLP
2021 McKinney Ave., Suite 1600
Dallas, TX 75201

CLO Holdco, Ltd.
c/o H. O'Neil, J. Binford, S. Beck, M. Bales
Foley Gardere Foley & Lardner, LLP
2021 McKinney Ave., Suite 1600
Dallas, TX 75201

# Creditors Service List
## Acis Capital Mgmt./Phelan
### #5980

## Class 2

Joshua N. Terry
25 Highland Park Village
Suite 100-848
Dallas, TX 75205-2726

Joshua N. Terry
c/o Brian P. Shaw/John M. Lynch
Rogge Dunn Group, PC
1201 Elm St., Suite 5200
Dallas, TX 75270

Joshua N. Terry
350 9 Princeton Ave.
Dallas, TX 75205-3246

## Class 3

Andrews Kurth Kenyon LLP
600 Travis, Suite 4200
Houston, TX 77002-2929

CSI Global Deposition Services
4950 N. O'Connor Road, Suite 152
Irving, TX 75062 - 2778

CT Corporation
P0 Box 4349
Carol Stream, IL 60197-4349

Case Anywhere LLC
21860 Burbank Blvd., Suite 125
Woodland Hills, CA 91367-7447

David Langford
1321 Indian Creek
DeSoto, TX 75115-3652

David Simek
31 Woodacres Road
Brookville, NY 11545-2911

Drexel Limited
309 23rd Street, #340
Miami Beach, FL 33139-1700

Elite Document Technology
400 N. Saint Paul St., Suite 1300
Dallas, TX 75201-6881

Highfield Equities, Inc.
3131 McKinney Ave., Suite 215
Dallas, TX 75204-2421

JAMS, Inc.
18881 Von Karman Ave., Suite 350
Irvine, CA 92612-6589

Jones Day
2727 N. Harwood Street
Dallas, TX 75201-1568

Lackey Hershman LLP
3102 Oak Lawn Ave., Suite 777
Dallas, TX 75219-4259

KPMG LLP (USA)
Two Financial Center
60 South Street
Boston, MA 02111-2759

KPMG LLP
2323 Ross Ave., Suite 1400
Dallas, TX 75201-2721

KPMG LLP
Aon Center
200 E. Randolph St., Suite 5500
Chicago, IL 60601-6607

McKool Smith, P.C.
300 Crescent Court, Suite 1500
Dallas, TX 75201-6970

Reid Collins & Tsai, LLP
Building C, Suite 300
1301 S. Capital of Texas Highway
Austin, TX 78746-6550

Stanton Advisors LLC
300 Coles St., Apt. 802
Jersey City, NJ 07310-1047

Stanton Law Firm
9400 North Central Expwy., Suite 1304
Dallas, TX 75231-5047

The TASA Group, Inc.
1166 DeKalb Pike
Blue Bell, PA 19422- 1853

Acis CLO 2013-1, Ltd., et al.
c/o David Neier
Winston & Strawn LLP
200 Park Ave.
New York, NY 10166-4193

Acis CLO 2013-1 LLC
850 Library Ave., Suite 204
Newark, DE 19711

Acis CLO 2014-3 LLC
850 Library Ave., Suite 204
Newark, DE 19711

Acis CLO 2014-4 LLC
850 Library Ave., Suite 204
Newark, DE 19711

Acis CLO 2014-5 LLC
850 Library Ave., Suite 204
Newark, DE 19711

Acis CLO 2015-6 LLC
850 Library Ave., Suite 204
Newark, DE 19711

**Directors - Acis CLO 2013-1 Ltd.**
**75 Fort St., Clifton House**
**PO Box 1350**
**George Town, Grand Cayman**
**Cayman Island, KY1-1108**

**Directors - Acis CLO 2014-3 Ltd.**
**PO Box 1093**
**KY1-1102, Cricket Square**
**Grand Cayman**

**Directors - Acis CLO 2014-4 Ltd.**
**PO Box 1093**
**KY1-1102, Cricket Square**
**Grand Cayman**

**Directors - Acis CLO 2014-5 Ltd.**
**PO Box 1093**
**KY1-1102, Cricket Square**
**Grand Cayman**

**Directors - Acis CLO 2015-6 Ltd.**
**PO Box 1093**
**KY1-1102, Cricket Square**
**Grand Cayman**

**Acis CLO 2013-1, Ltd.**
**c/o Appleby Trust, Attn: Directors**
**Clifton House 75 Fort St., P0 Box 13**
**Grand Cayman, Cayman Islands KY1-1108**

**Acis CLO 2013-2 Ltd.**
**c/o MaplesFS Limited, Attn: Directors**
**PO Box 1093, Boundary Hall, Cricket Sq.**
**Grand Cayman, Cayman Islands KY1-1102**

**Acis CLO 2014-3 Ltd.**
**c/o MaplesFS Limited, Attn: Directors**
**PO Box 1093, Boundary Hall, Cricket Sq.**
**Grand Cayman, Cayman Islands KY1-1102**

**Acis CLO 2014-4 Ltd.**
**c/o MapleFS Limited, Attn: Directors**
**PO Box 1093, Boundary Hall, Cricket Sq.**
**Grand Cayman, Cayman Islands KY1-1102**

**Acis CLO 2014-5 Ltd.**
**c/o MapleFS Limited, Attn: Directors**
**PO Box 1093, Boundary Hall, Cricket Sq.**
**Grand Cayman, Cayman Islands KY1-1102**

**Acis CLO 2015-6 Ltd.**
**c/o MapleFS Limited, Attn: Directors**
**PO Box 1093, Boundary Hall, Cricket Sq.**
**Grand Cayman, Cayman Islands KY1 -1102**

**Acis CLO 2017-7 Ltd.**
**c/o MapleFS Limited, Attn: Directors**
**PO Box 1093, Boundary Hall, Cricket Sq.**
**Grand Cayman, Cayman Islands KY1 -1102**

Acis CLO 2013-1, Ltd., et al.
c/o Thomas Melsheimer/Lane Webster
Winston & Strawn LLP
2501 N. Harwood St., 17th Floor
Dallas, TX 75201

Jennifer G. Terry
25 Highland Park Village, Suite 100-848
Dallas, TX 75205

Hunton Andrews Kurth LLP
c/o M. Christine Klein, Dep. Gen. Counsel
Riverfront Plaza, East Tower
951 East Byrd St.
Richmond, VA 23219

Patrick H. Daugherty
3621 Cornell Ave.
Dallas, TX 75250

Stinson Leonard Street LLP
Attn:  Paul Lackey
3102 Oak Lawn Ave., Suite 777
Dallas, TX 75219

## Class 4

Highland Capital Management, LP
300 Crescent Court, Suite 700
Dallas, TX 75201-7849

Highland Capital Management, LP
1209 Orange Street
Wilmington, DE 19801-1120

Highland Capital Management, LP
c/o Michael K. Hurst/Ben A. Barnes
Lynn Pinker Cox & Hurst LLP
2100 Ross Ave., Suite 2700
Dallas, TX 75201

Highland Capital Management, LP, Highland
c/o H. O'Neil, J. Binford, S. Beck, M. Bales
Foley Gardere Foley & Lardner, LLP
2021 McKinney Ave., Suite 1600
Dallas, TX 75201

Case 18-30264-sgj11 Doc 1343-2 Filed 09/05/21 Entered 09/05/21 13:08:29 Page 199 of
230
Case 18-30264-sgj11 Doc 830 Filed 02/31/19 Entered 02/31/19 17:42:42 Page 198 of 229

# EXHIBIT "4"

**[Supplement to Second Modification to the Third Amended
Joint Plan for Acis Capital Management, L.P. and Acis Capital
Management GP, LLC – Dkt. No. 769]**

Rakhee V. Patel – State Bar No. 00797213
Phillip Lamberson – State Bar No. 00794134
Joe Wielebinski – State Bar No. 21432400
Annmarie Chiarello – State Bar No. 24097496
**WINSTEAD PC**
500 Winstead Building
2728 N. Harwood Street
Dallas, Texas 75201
Telephone: (214) 745-5400
Facsimile:  (214) 745-5390
rpatel@winstead.com
plamberson@winstead.com
jwielebinski@winstead.com
achiarello@winstead.com

**SPECIAL COUNSEL FOR
ROBIN PHELAN, CHAPTER 11 TRUSTEE**

Jeff P. Prostok –  State Bar No. 16352500
J. Robert Forshey – State Bar No. 07264200
Suzanne K. Rosen –  State Bar No. 00798518
Matthew G. Maben – State Bar No. 24037008
**FORSHEY & PROSTOK LLP**
777 Main St., Suite 1290
Ft. Worth, TX 76102
Telephone: (817) 877-8855
Facsimile: (817) 877-4151
jprostok@forsheyprostok.com
bforshey@forsheyprostok.com
srosen@forsheyprostok.com
mmaben@forsheyprostok.com

**COUNSEL FOR ROBIN PHELAN,
CHAPTER 11 TRUSTEE**

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE NORTHERN DISTRICT OF TEXAS
## DALLAS DIVISION

| | | |
|---|---|---|
| IN RE: | § | CHAPTER 11 CASES |
| | § | |
| ACIS CAPITAL MANAGEMENT, L.P., | § | CASE NO. 18-30264-sgj11 |
| ACIS CAPITAL MANAGEMENT GP, LLC, | § | (Jointly Administered) |
| | § | |
| Debtors. | § | |

## SUPPLEMENT TO SECOND MODIFICATION TO THE THIRD AMENDED JOINT PLAN FOR ACIS CAPITAL MANAGEMENT, LP AND ACIS CAPITAL MANAGEMENT GP, LLC

Robin Phelan ("Trustee"), the Chapter 11 Trustee for Acis Capital Management, LP and

Acis Capital Management GP, LLC (the "Debtors"), files this Supplement to the Second

Modification (the "Second Modification") to the *Third Amended Joint Chapter 11 Plan for Acis

Capital Management, LP and Acis Capital Management GP, LLC* [Docket No. 660], as modified

by the *First Modification to the Third Amended Joint Chapter 11 Plan for Acis Capital

Management, LP and Acis Capital Management GP, LLC* [Docket No. 693] (together, the "Plan").

Case 18-30264-sgj11 Doc 1348-2 Filed 09/05/21 Entered 09/05/21 13:02:29 Page 201 of 229
Case 18-30264-sgj11 Doc 306 Filed 12/10/18 Entered 12/10/18 14:32:20 Page 2 of 3
230

1.      On November 16, 2018, the Trustee filed the Second Modification.  The Second Modification modified the Plan to replace the Exhibit "A," reflecting Estate Claims, with a revised version of Exhibit A.  The Schedule "1" to Exhibit A, which reflects the Estate's Preference Claims, was not changed from the version attached to the Plan but was inadvertently omitted from the Second Modification.  For completeness and to avoid any confusion regarding the Preference Claims being reserved, retained and preserved for the benefit of the Estate and Reorganized Debtor, the Second Modification is hereby supplemented with the Schedule "1" to Exhibit "A" to the Plan.

2.      A copy of the Schedule "1" is attached hereto as **Exhibit 1**.

3.      A copy of the complete Exhibit "A" to the Plan, including Schedule "1," is attached hereto as **Exhibit "2."**

4.      A redline is not necessary because the attached Schedule "1" is unchanged from the version attached to the Plan and included in the Trustee's solicitation materials.

Dated:  December 10, 2018.          Respectfully submitted,

ACIS CAPITAL MANAGEMENT, L.P.

By: /s/ *Robin Phelan*
    Robin Phelan
    Chapter 11 Trustee

ACIS CAPITAL MANAGMENET GP, LLC

By: /s/ *Robin Phelan*
    Robin Phelan
    Chapter 11 Trustee

Case 18-30264-sgj11 Doc 1348-2 Filed 09/05/21 Entered 09/05/21 12:08:29 Page 202 of
230
Case 18-30264-sgj11 Doc 306 Filed 12/10/18 Entered 12/10/18 14:18:02 Page 202 of 229

APPROVED:

APPROVED:

/s/ *Jeff P. Prostok*
Jeff P. Prostok – State Bar No. 16352500
J. Robert Forshey – State Bar No. 07264200
Suzanne K. Rosen – State Bar No. 00798518
Matthew G. Maben – State Bar No. 24037008
**FORSHEY & PROSTOK LLP**
777 Main St., Suite 1290
Ft. Worth, TX 76102
Telephone: (817) 877-8855
Facsimile: (817) 877-4151
jprostok@forsheyprostok.com
bforshey@forsheyprostok.com
srosen@forsheyprostok.com
mmaben@forsheyprostok.com

**COUNSEL FOR ROBIN PHELAN,
CHAPTER 11 TRUSTEE**

/s/ *Rahkee V. Patel*
Rakhee V. Patel – State Bar No. 00797213
Phillip Lamberson – State Bar No. 00794134
Joe Wielebinski – State Bar No. 21432400
Annmarie Chiarello –State Bar No. 24097496
**WINSTEAD PC**
500 Winstead Building
2728 N. Harwood Street
Dallas, Texas 75201
Telephone: (214) 745-5400
Facsimile:  (214) 745-5390
rpatel@winstead.com
plamberson@winstead.com
jwielebinski@winstead.com
achiarello@winstead.com

**SPECIAL   COUNSEL   FOR   ROBIN
PHELAN, CHAPTER 11 TRUSTEE**

<u>**CERTIFICATE OF SERVICE**</u>

I hereby certify that a true and correct copy of the foregoing document and the attached exhibits were served electronically via the Court's Electronic Court Filing (ECF) notification system on December 10, 2018.

/s/ *Jeff P. Prostok*
Jeff P. Prostok

\L:\JPROSTOK\ACIS Capital Management (Trustee Rep)\Plan and Disclosure Statement\Supplement to Second Modification to Third Amended Plan 12.10.18.docx

# EXHIBIT "1"

Schedule "1" to Exhibit "A" to
Third Amended Plan

Case 18-30264-sgj11 Doc 769 Filed 12/10/18 Entered 12/10/18 15:10:10 Page 5 of 23
Case 18-30264-sgj11 Doc 830 Filed 02/31/19 Entered 02/31/19 12:42:29 Page 203 of 29
230

Third Amended Joint Plan for Acis Capital Management, LP and Acis Capital Management GP, LLC

Schedule 1 to Exhibit "A" to

| NAME | ADDRESS | DATE OF PAYMENT | PAYMENT AMOUNT | REASON FOR PAYMENT ON SCHEDULES |
|---|---|---|---|---|
| **Payments within 90 Days of Petition Date** | | | | |
| Highland Capital Management, LP | 300 Crescent Court, Ste. 700 Dallas, TX 75208 | 11/2/2017 | $234,013.63 | Services |
| Highland Capital Management, LP | 300 Crescent Court, Ste. 700 Dallas, TX 75208 | 11/3/2017 | $941,958.57 | Services |
| Highland Capital Management, LP | 300 Crescent Court, Ste. 700 Dallas, TX 75208 | 12/8/2017 | $89,655.14 | Services |
| David Simek | 31 Woodacres Road Brookville, NY 11545 | 11/15/2017 | $2,068.13 | Services |
| David Simek | 31 Woodacres Road Brookville, NY 11545 | 11/30/2017 | $24,266.71 | Services |
| David Simek | 31 Woodacres Road Brookville, NY 11545 | 12/12/2017 | $1,718.79 | Services |
| David Simek | 31 Woodacres Road Brookville, NY 11545 | 12/29/2017 | $25,000.00 | Services |
| FINRA | 1735 K Street, NW Washington, DC 20006 | 11/22/2017 | $70.00 | Suppliers or Vendors |
| Highland CLO Management, Ltd. | PO Box 309, Ugland House Grand Cayman, KY1-1104, Cayman Islands | 12/19/2017 | $2,830,459.22 | Services |
| **Payments to Insiders within One Year of Petition Date** | | | | |
| Highland Capital Management, LP | 300 Crescent Court, Ste. 700 Dallas, TX 75208 | 2/1/2017 | $976,688.47 | Contractual Payment |
| Highland Capital Management, LP | 300 Crescent Court, Ste. 700 Dallas, TX 75208 | 2/1/2017 | $1,096,033.37 | Services |
| Highland Capital Management, LP | 300 Crescent Court, Ste. 700 Dallas, TX 75208 | 2/2/2017 | $3,574.80 | Expense Reimbursement |
| Highland Capital Management, LP | 300 Crescent Court, Ste. 700 Dallas, TX 75208 | 2/14/2017 | $67.44 | Expense Reimbursement |
| Highland Capital Management, LP | 300 Crescent Court, Ste. 700 Dallas, TX 75208 | 4/17/2017 | $315,574.30 | Services |
| Highland Capital Management, LP | 300 Crescent Court, Ste. 700 Dallas, TX 75208 | 4/18/2017 | $438,497.51 | Services |

Third Amended Joint Plan for Acis Capital Management, LP and Acis Capital Management GP, LLC

Schedule 1 to Exhibit "A" to

| NAME | ADDRESS | DATE OF PAYMENT | PAYMENT AMOUNT | REASON FOR PAYMENT ON SCHEDULES |
|------|---------|-----------------|----------------|----------------------------------|
| Highland Capital Management, LP | 300 Crescent Court, Ste. 700 Dallas, TX 75208 | 4/18/2017 | $375,855.01 | Contractual Payment |
| Highland Capital Management, LP | 300 Crescent Court, Ste. 700 Dallas, TX 75208 | 4/19/2017 | $330,249.69 | Services |
| Highland Capital Management, LP | 300 Crescent Court, Ste. 700 Dallas, TX 75208 | 5/1/2017 | $974,426.41 | Services |
| Highland Capital Management, LP | 300 Crescent Court, Ste. 700 Dallas, TX 75208 | 5/31/2017 | $2,809,518.47 | Unsecured loan repayments including interest |
| Highland Capital Management, LP | 300 Crescent Court, Ste. 700 Dallas, TX 75208 | 5/31/2017 | $581,036.15 | Services |
| Highland Capital Management, LP | 300 Crescent Court, Ste. 700 Dallas, TX 75208 | 7/18/2017 | $373,167.08 | Contractual Payment |
| Highland Capital Management, LP | 300 Crescent Court, Ste. 700 Dallas, TX 75208 | 8/1/2017 | $971,603.02 | Contractual Payment |
| Highland Capital Management, LP | 300 Crescent Court, Ste. 700 Dallas, TX 75208 | 8/7/2017 | $1,339,422.12 | Services |
| Highland Capital Management, LP | 300 Crescent Court, Ste. 700 Dallas, TX 75208 | 8/16/2017 | $53.41 | Expense Reimbursement |
| Highland Capital Management, LP | 300 Crescent Court, Ste. 700 Dallas, TX 75208 | 10/18/2017 | $372,872.82 | Contractual Payment |
| Highland Capital Management, LP | 300 Crescent Court, Ste. 700 Dallas, TX 75208 | 10/18/2017 | $728,702.26 | Services |
| Highland Capital Management, LP | 300 Crescent Court, Ste. 700 Dallas, TX 75208 | 10/24/2017 | $501,979.18 | Unsecured loan repayments including interest |
| Highland Capital Management, LP | 300 Crescent Court, Ste. 700 Dallas, TX 75208 | 10/25/2017 | $46,648.82 | Expense Reimbursement |
| Highland Capital Management, LP | 300 Crescent Court, Ste. 700 Dallas, TX 75208 | 10/25/2017 | $67,966.85 | Expense Reimbursement |
| Highland Capital Management, LP | 300 Crescent Court, Ste. 700 Dallas, TX 75208 | 11/1/2017 | $967,223.91 | Contractual Payment |

# EXHIBIT "2"
[Exhibit "A" to Third Amended Plan
as Supplemented]

**EXHIBIT "A"**
**to**
**Joint Plan for Acis Capital Management, LP and Acis Capital Management GP, LLC**

  1. <u>Defined Terms</u>.  This Exhibit "A" constitutes an integral part of the Plan of which it is a part.  Defined terms in the Plan are to be given the same meaning in this Exhibit "A".  The rules of construction set forth in Article I.B. of the Plan shall likewise apply to this Exhibit "A".

  2. <u>Estate Claims Reserved, Retained and Preserved</u>.  All Estate Claims are hereby reserved, retained and preserved, and shall all be transferred to, and vested in, the Reorganized Debtor pursuant to this Plan, and shall include without limitation all of the Estate Claims described below.  In reserving, retaining, and preserving Estate Claims against any named Person or category of Persons, it is the intent of this Plan to so reserve, retain, and preserve any and all Estate Claim against each such Person or category of Persons, including all such Estate Claims pursuant to any applicable common law, based on any contract or agreement or based upon any law, statute or regulation of any political entity, including the United States and any state or political subdivision thereof, as well as all applicable remedies, whether legal or equitable.  Without limiting the generality of the foregoing, the reservation, retention, and preservation of Estate Claims against any Person, and the term "<u>Estate Claims</u>," shall encompass all Estate Claims against any such Person, including without limitation, all such Estate Claims for breach of contract, all rights to enforce any contract, any form of estoppel, fraud, constructive fraud, abuse of process, malicious prosecution, defamation, libel, slander, conversion, trespass, intentional infliction of emotional distress or other harm, negligence, gross negligence, negligent misrepresentation, fraudulent misrepresentation, vicarious liability, respondeat superior, breach of any duty owed under either applicable law or any contract, breach of any fiduciary duty or duty of loyalty or due care, aiding and/or abetting breach of fiduciary duty, aiding and/or abetting breach of duty of loyalty or due care, alter ego, veil piercing, self-dealing, usurpation of corporate opportunity, ultra vires, turnover of Estate Assets, unauthorized use of Estate Assets, including intellectual property rights or Assets owned by the Debtors or Chapter 11 Trustee, quantum merit, tortious interference, duress, unconscionability, undue influence, and unjust enrichment, as well as any cause of action for conspiracy to commit any unlawful act, aiding and/or abetting any such unlawful act, or assisting, encouraging, and/or participating in any such unlawful act, or claims arising from or relating to the filing of the involuntary bankruptcy petitions against the Debtors.

  3. <u>Highland Claims</u>.  All Estate Claims against Highland are reserved, retained and preserved for the benefit of the Estate and Reorganized Debtor, including without limitation all such Estate Claims asserted by the Chapter 11 Trustee in Adversary Proceeding No. 18-03078-sgj (the "<u>Highland Adversary</u>") and Adversary Proceeding No. 18-03212-sgj (the "<u>Trustee's Adversary</u>").  The Estate Claims against Highland shall include all Estate Claims set forth in paragraph 2 above, including without limitation, the following:

    (a) All such Claims asserted by the Chapter 11 Trustee or Estate in, or which could be asserted based on the facts or transactions alleged in, the Highland Adversary;

    (b) All such Claims asserted by the Chapter 11 Trustee or Estate in, or which could be asserted based on the facts or transactions alleged in, the Trustee's Adversary;

    (c) All such Claims and Defenses asserted by the Chapter 11 Trustee or Estate, or which could be asserted by the Chapter 11 Trustee or Estate, based on the facts or transactions alleged in any other adversary proceedings or Claim Objections filed by the

Chapter 11 Trustee or Estate;

(d)    All Avoidance Actions against Highland, including any claims to avoid and recover amounts transferred by the Debtors to Highland under the Shared Services Agreement or Sub-Advisory Agreement;

(e)    All Claims for breach of the Shared Services Agreement or Sub-Advisory Agreement;

(f)    All Claims against Highland for amounts paid by the Debtors to Highland under the Shared Services Agreement and Sub-Advisory Agreement, including any Claim that Highland overcharged Acis LP for services under such agreements, charged excessive fees in violation of Acis LP's limited partnership agreement and/or Acis GP's limited liability company agreement, and/or that the Shared Services Agreement and Sub-Advisory Agreement or any related or predecessor agreements are void or voidable based on ultra vires or any other theories of avoidance and recovery, including turnover, conversion and Avoidance Actions under the Bankruptcy Code;

(g)    All Claims for breach of the PMAs or the Indentures;

(h)    All Claims for breach of fiduciary duty or duty of loyalty or due care owed to the Debtors or Chapter 11 Trustee;

(i)    All Claims for aiding and/or abetting breach of fiduciary duty, breach of duty loyalty or due care, or any other unlawful act;

(j)    All Clams for usurpation of a corporate opportunity belonging to either of the Debtors, including in relation to Acis CLO 2017-7, Ltd and any other Acis CLOs;

(k)    All claims for tortious interference, including in relation to Universal-Investment-Luxembourg S.A. and BayVK R2 Lux S.A., SICAV-FIS;

(l)    All Claims against Highland for the turnover of Estate Assets, including Estate property that the Chapter 11 Trustee may use, sell or lease under section 363 of the Bankruptcy Code including, without limitation, any intellectual property rights or Assets owned by the Debtors or Estate, as well as the turnover of any books, documents, records and papers relating to the Debtors' property or financial affairs;

(m)    All Claims against Highland for the unauthorized use of Estate Assets including, without limitation, any intellectual property rights or Assets owned by the Debtors or Estate;

(n)    All Claims, rights or remedies for Equitable Subordination or Recharacterization of any Claim by Highland against the Debtors, Chapter 11 Trustee, or Estate;

(o)    All Claims based on alter ego or rights to pierce the corporate veil of Acis LP as to any Person, including as against Highland or any Affiliates thereof, James D. Dondero, Mark K. Okada, or any other officers, directors, equity interest holders, or Persons otherwise in control of Acis LP;

(p)    All Claims based on alter ego or rights to pierce the corporate veil of

Highland as to any Person, including as against any Affiliates of Highland, James D. Dondero, Mark K. Okada, or any other officers, directors, equity interest holders, or Persons otherwise in control of Highland, and,

(q)     All Claims for conspiracy to commit any unlawful act, aiding and/or abetting any such unlawful act, or assisting, encouraging, and/or participating in any such unlawful act.

4.     <u>HCLOF Claims</u>.  All Estate Claims against HCLOF are reserved, retained and preserved for the benefit of the Estate and Reorganized Debtor, including without limitation all such Estate Claims asserted by the Chapter 11 Trustee in the Highland Adversary and the Trustee's Adversary.  The Estate Claims against HCLOF shall include all Estate Claims set forth in paragraph 2 above, including without limitation, the following:

(a)     All such Claims against HCLOF asserted by the Chapter 11 Trustee or Estate in, or which could be asserted based on the facts or transactions alleged in, the Highland Adversary;

(b)     All such Claims against HCLOF asserted by the Chapter 11 Trustee or Estate in, or which could be asserted based on the facts or transactions alleged in, the Trustee's Adversary;

(c)     All such Claims and Defenses asserted by the Chapter 11 Trustee or Estate, or which could be asserted by the Chapter 11 Trustee or Estate, based on the facts or transactions alleged in any other adversary proceedings or Claim Objections filed by the Chapter 11 Trustee or Estate;

(d)     All Avoidance Actions against HCLOF;

(e)     All Claims for breach of the PMAs or the Indentures;

(f)     All Claims for breach of fiduciary duty or duty of loyalty or due care owed to the Debtors or Chapter 11 Trustee;

(g)     All Claims for aiding and/or abetting breach of fiduciary duty, breach of duty loyalty or due care, or any other unlawful act;

(h)     All Clams for usurpation of a corporate opportunity belonging to either of the Debtors, including in relation to Acis CLO 2017-7, Ltd and any other Acis CLOs;

(i)     All Claims against HCLOF for the turnover of Estate Assets, including Estate property that the Chapter 11 Trustee may use, sell or lease under section 363 of the Bankruptcy Code including, without limitation, any intellectual property rights or Assets owned by the Debtors or Estate, as well as the turnover of any books, documents, records and papers relating to the Debtors' property or financial affairs;

(j)     All Claims against HCLOF for the unauthorized use of Estate Assets including, without limitation, any intellectual property rights or Assets owned by the Debtors or Estate;

(k)     All Claims, rights or remedies for Equitable Subordination or Recharacterization of any Claim by HCLOF against the Debtors, Chapter 11 Trustee, or Estate;

(l)     All Claims based on alter ego or rights to pierce the corporate veil of HCLOF as to any Person, including as against any Affiliates of HCLOF or Highland, William Scott, Heather Bestwick, or any other officers, directors, equity interest holders, or Persons otherwise in control of HCLOF; and,

(m)     All Claims for conspiracy to commit any unlawful act, aiding and/or abetting any such unlawful act, or assisting, encouraging, and/or participating in any such unlawful act.

5.     Highland HCF Advisor, Ltd. Claims.  All Estate Claims against Highland HCF Advisor, Ltd. ("Highland HCF") are reserved, retained and preserved for the benefit of the Estate and Reorganized Debtor, including without limitation all such Estate Claims asserted by the Chapter 11 Trustee in the Highland Adversary.  The Estate Claims against Highland HCF shall include all Estate Claims set forth in paragraph 2 above, including without limitation, the following:

(a)     All such Claims against Highland HCF asserted by the Chapter 11 Trustee or Estate in, or which could be asserted based on the facts or transactions alleged in, the Highland Adversary;

(b)     All such Claims against Highland HCF asserted by the Chapter 11 Trustee or Estate in, or which could be asserted based on the facts or transactions alleged in, the Trustee's Adversary;

(c)     All such Claims and Defenses asserted by the Chapter 11 Trustee or Estate, or which could be asserted by the Chapter 11 Trustee or Estate, based on the facts or transactions alleged in any other adversary proceedings or Claim Objections filed by the Chapter 11 Trustee or Estate;

(d)     All Avoidance Actions against Highland HCF;

(e)     All Claims for breach of fiduciary duty or duty of loyalty or due care owed to the Debtors or Chapter 11 Trustee;

(f)     All Claims for aiding and/or abetting breach of fiduciary duty, breach of duty loyalty or due care, or any other unlawful act;

(g)     All Clams for usurpation of a corporate opportunity belonging to either of the Debtors, including in relation to Acis CLO 2017-7, Ltd and any other Acis CLOs;

(h)     All Claims against Highland HCF for the turnover of Estate Assets, including Estate property that the Chapter 11 Trustee may use, sell or lease under section 363 of the Bankruptcy Code including, without limitation, any intellectual property rights or Assets owned by the Debtors or Estate, as well as the turnover of any books, documents, records and papers relating to the Debtors' property or financial affairs;

(i)     All Claims against Highland HCF for the unauthorized use of Estate Assets including, without limitation, any intellectual property rights or Assets owned by the Debtors or Estate;

(j)     All Claims, rights or remedies for Equitable Subordination or Recharacterization of any Claim by Highland HCF against the Debtors, Chapter 11 Trustee, or

Estate;

        (k)     All Claims based on alter ego or rights to pierce the corporate veil of Highland HCF as to any Person, including as against any Affiliates of Highland HCF or Highland, or any other officers, directors, equity interest holders, or Persons otherwise in control of Highland HCF; and,

        (l)     All Claims for conspiracy to commit any unlawful act, aiding and/or abetting any such unlawful act, or assisting, encouraging, and/or participating in any such unlawful act.

      6.    <u>Highland CLO Management, Ltd. Claims</u>.  All Estate Claims against Highland CLO Management, Ltd. ("<u>Highland CLOM</u>") are reserved, retained and preserved for the benefit of the Estate and Reorganized Debtor, including without limitation all such Estate Claims asserted by the Chapter 11 Trustee in the Highland Adversary.  The Estate Claims against Highland CLOM shall include all Estate Claims set forth in paragraph 2 above, including without limitation the following:

        (a)     All such Claims against Highland CLOM asserted by the Chapter 11 Trustee or Estate in, or which could be asserted based on the facts or transactions alleged in, the Highland Adversary;

        (b)     All such Claims against Highland CLOM asserted by the Chapter 11 Trustee or Estate in, or which could be asserted based on the facts or transactions alleged in, the Trustee's Adversary;

        (c)     All such Claims and Defenses asserted by the Chapter 11 Trustee or Estate, or which could be asserted by the Chapter 11 Trustee or Estate, based on the facts or transactions alleged in any other adversary proceedings or Claim Objections filed by the Chapter 11 Trustee or Estate;

        (d)     All Avoidance Actions against Highland CLOM;

        (e)     All Claims for breach of fiduciary duty or duty of loyalty or due care owed to the Debtors or Chapter 11 Trustee;

        (f)     All Claims for aiding and/or abetting breach of fiduciary duty, breach of duty loyalty or due care, or any other unlawful act;

        (g)     All Clams for usurpation of a corporate opportunity belonging to either of the Debtors, including in relation to Acis CLO 2017-7, Ltd and any other Acis CLOs;

        (h)     All Claims against Highland CLOM for the turnover of Estate Assets, including Estate property that the Chapter 11 Trustee may use, sell or lease under section 363 of the Bankruptcy Code including, without limitation, any intellectual property rights or Assets owned by the Debtors or Estate, as well as the turnover of any books, documents, records and papers relating to the Debtors' property or financial affairs;

        (i)     All Claims against Highland CLOM for the unauthorized use of Estate Assets including, without limitation, any intellectual property rights or Assets owned by the Debtors or Estate;

(j)　　All Claims, rights or remedies for Equitable Subordination or Recharacterization of any Claim by Highland CLOM against the Debtors, Chapter 11 Trustee, or Estate;

(k)　　All Claims based on alter ego or rights to pierce the corporate veil of Highland CLOM as to any Person, including as against any Affiliates of Highland CLOM or Highland, or any other officers, directors, equity interest holders, or Persons otherwise in control of Highland CLOM; and,

(l)　　All Claims for conspiracy to commit any unlawful act, aiding and/or abetting any such unlawful act, or assisting, encouraging, and/or participating in any such unlawful act.

7.　　CLO Holdco, Ltd. Claims.  All Estate Claims against CLO Holdco, Ltd. ("CLO Holdco") are reserved, retained and preserved for the benefit of the Estate and Reorganized Debtor, including without limitation all such Estate Claims asserted by the Chapter 11 Trustee in the Trustee's Adversary.  The Estate Claims against CLO Holdco shall include all Estate Claims set forth in paragraph 2 above, including without limitation, the following:

(a)　　All such Claims against CLO Holdco asserted by the Chapter 11 Trustee or Estate in, or which could be asserted based on the facts or transactions alleged in, the Highland Adversary;

(b)　　All such Claims against CLO Holdco asserted by the Chapter 11 Trustee or Estate in, or which could be asserted based on the facts or transactions alleged in, the Trustee's Adversary;

(c)　　All such Claims and Defenses asserted by the Chapter 11 Trustee or Estate, or which could be asserted by the Chapter 11 Trustee or Estate, based on the facts or transactions alleged in any other adversary proceedings or Claim Objections filed by the Chapter 11 Trustee or Estate;

(d)　　All Avoidance Actions against CLO Holdco;

(e)　　All Claims for breach of fiduciary duty or duty of loyalty or due care owed to the Debtors or Chapter 11 Trustee;

(f)　　All Claims for aiding and/or abetting breach of fiduciary duty, breach of duty loyalty or due care, or any other unlawful act;

(g)　　All Clams for usurpation of a corporate opportunity belonging to either of the Debtors, including in relation to Acis CLO 2017-7, Ltd and any other Acis CLOs;

(h)　　All Claims against CLO Holdco for the turnover of Estate Assets, including Estate property that the Chapter 11 Trustee may use, sell or lease under section 363 of the Bankruptcy Code including, without limitation, any intellectual property rights or Assets owned by the Debtors or Estate, as well as the turnover of any books, documents, records and papers relating to the Debtors' property or financial affairs;

(i)　　All Claims against CLO Holdco for the unauthorized use of Estate Assets including, without limitation, any intellectual property rights or Assets owned by the Debtors or Estate;

(j)     All Claims, rights or remedies for Equitable Subordination or Recharacterization of any Claim by Highland against the Debtors, Chapter 11 Trustee, or Estate;

(k)     All Claims based on alter ego or rights to pierce the corporate veil of CLO Holdco as to any Person, including as against any Affiliates of CLO Holdco or Highland, or any other officers, directors, equity interest holders, or Persons otherwise in control of CLO Holdco; and,

(l)     All Claims for conspiracy to commit any unlawful act, aiding and/or abetting any such unlawful act, or assisting, encouraging, and/or participating in any such unlawful act.

8.     <u>Neutra, Ltd. Claims</u>.  All Estate Claims against Neutra, Ltd. ("<u>Neutra</u>") are reserved, retained and preserved for the benefit of the Estate and Reorganized Debtor, including without limitation all such Estate Claims asserted by the Chapter 11 Trustee in the Trustee's Adversary.  The Estate Claims against Neutra shall include all Estate Claims set forth in paragraph 2 above, including without limitation the following:

(a)     All such Claims against Neutra asserted by the Chapter 11 Trustee or Estate in, or which could be asserted based on the facts or transactions alleged in, the Highland Adversary;

(b)     All such Claims against Neutra asserted by the Chapter 11 Trustee or Estate in, or which could be asserted based on the facts or transactions alleged in, the Trustee's Adversary;

(c)     All such Claims and Defenses asserted by the Chapter 11 Trustee or Estate, or which could be asserted by the Chapter 11 Trustee or Estate, based on the facts or transactions alleged in any other adversary proceedings or Claim Objections filed by the Chapter 11 Trustee or Estate;

(d)     All Avoidance Actions against Neutra;

(e)     All Claims for breach of fiduciary or duty of loyalty or due care owed to the Debtors or Chapter 11 Trustee;

(f)     All Claims for aiding and/or abetting breach of fiduciary duty, breach of duty loyalty or due care, or any other unlawful act;

(g)     All Clams for usurpation of a corporate opportunity belonging to either of the Debtors, including in relation to Acis CLO 2017-7, Ltd and any other Acis CLOs;

(h)     All Claims against Neutra for the turnover of Estate Assets, including Estate property that the Chapter 11 Trustee may use, sell or lease under section 363 of the Bankruptcy Code including, without limitation, any intellectual property rights or Assets owned by the Debtors or Estate, as well as the turnover of any books, documents, records and papers relating to the Debtors' property or financial affairs;

(i)     All Claims against Neutra for the unauthorized use of Estate Assets

including, without limitation, any intellectual property rights or Assets owned by the Debtors or Estate;

(j)     All Claims, rights or remedies for Equitable Subordination or Recharacterization of any Claim by Neutra against the Debtors, Chapter 11 Trustee, or Estate;

(k)     All Claims based on alter ego or rights to pierce the corporate veil of Acis LP as to any Person, including as against Neutra, Highland, or any Affiliates thereof, James D. Dondero, Mark K. Okada, or any other officers, directors, equity interest holders, or Persons otherwise in control of Acis LP;

(l)     All Claims based on alter ego or rights to pierce the corporate veil of Neutra as to any Person, including as against any Affiliates of Neutra or Highland, or any other officers, directors, equity interest holders, or Persons otherwise in control of Neutra; and,

(m)     All Claims for conspiracy to commit any unlawful act, aiding and/or abetting any such unlawful act, or assisting, encouraging, and/or participating in any such unlawful act.

9.     <u>Claims against Issuers, Co-Issuers and Indenture Trustee</u>.  All Estate Claims against CLO-3, CLO-4, CLO-5, and CLO-6 (collectively, the "<u>Issuers</u>"), Acis CLO 2014-3 LLC, Acis CLO 2014-4 LLC, Acis CLO 2014-5 LLC, and Acis CLO 2015-6 LLC (collectively, the "<u>Co-Issuers</u>"), and the Indenture Trustee are reserved, retained and preserved for the benefit of the Estate and Reorganized Debtor, including without limitation all such Estate Claims asserted by the Chapter 11 Trustee in the Trustee's Adversary.  The Estate Claims against the Issuers, Co-Issuers and/or Indenture Trustee shall include all Estate Claims set forth in paragraph 2 above, including without limitation the following:

(a)     All such Claims against the Issuers, Co-Issuers, and/or Indenture Trustee asserted by the Chapter 11 Trustee or Estate in, or which could be asserted based on the facts or transactions alleged in, the Highland Adversary;

(b)     All such Claims against the Issuers, Co-Issuers, and/or Indenture Trustee asserted by the Chapter 11 Trustee or Estate in, or which could be asserted based on the facts or transactions alleged in, the Trustee's Adversary;

(c)     All such Claims and Defenses asserted by the Chapter 11 Trustee or Estate, or which could be asserted by the Chapter 11 Trustee or Estate, based on the facts or transactions alleged in any other adversary proceedings or Claim Objections filed by the Chapter 11 Trustee or Estate;

(d)     All Avoidance Actions against the Issuers, Co-Issuers and/or Indenture Trustee;

(e)     All Claims for breach of the Indentures, PMAs or any other agreements between Acis LP and the Issuers, Co-Issuers, and/or Indenture Trustee;

(f)     All Claims for breach of fiduciary duty or duty of loyalty or due care owed to the Debtors or Chapter 11 Trustee;

(g)     All Claims for aiding and/or abetting breach of fiduciary duty, breach of duty loyalty or due care, or any other unlawful act;

(h)     All Clams for usurpation of a corporate opportunity belonging to either of the Debtors, including in relation to Acis CLO 2017-7, Ltd and any other Acis CLOs;

(i)     All Claims against the Issuers, Co-Issuers and/or Indenture Trustee for the turnover of Estate Assets, including Estate property that the Chapter 11 Trustee may use, sell or lease under section 363 of the Bankruptcy Code including, without limitation, any intellectual property rights or Assets owned by the Debtors or Estate, as well as the turnover of any books, documents, records and papers relating to the Debtors' property or financial affairs;

(j)     All Claims against the Issuers, Co-Issuers and/or Indenture Trustee for the unauthorized use of Estate Assets including, without limitation, any intellectual property rights or Assets owned by the Debtors or Estate;

(k)     All Claims, rights or remedies for Equitable Subordination or Recharacterization of any Claim by the Issuers or Co-Issuers against the Debtors, Chapter 11 Trustee, or Estate; and,

(l)     All Claims for conspiracy to commit any unlawful act, aiding and/or abetting any such unlawful act, or assisting, encouraging, and/or participating in any such unlawful act.

10.     <u>Claims Against Any Affiliates of Highland, HCLOF, Highland HCF, Highland CLOM, CLO Holdco, Neutra, and Their Respective Affiliates</u>.  All Estate Claims against any Affiliates of Highland, HCLOF, Highland HCF, Highland CLOM, CLO Holdco, Neutra, and Their Respective Affiliates (collectively, the "<u>Affiliates</u>" and each, an "<u>Affiliate</u>") are reserved, retained and preserved for the benefit of the Estate and Reorganized Debtor, including without limitation all such Estate Claims asserted by the Chapter 11 Trustee in the Highland Adversary and the Trustee's Adversary.  The Estate Claims against such Affiliates shall include all Estate Claims set forth in paragraph 2 above, including without limitation the following:

(a)     All such Claims against any Affiliate asserted by the Chapter 11 Trustee or Estate in, or which could be asserted based on the facts or transactions alleged in, the Highland Adversary;

(b)     All such Claims against any Affiliate asserted by the Chapter 11 Trustee or Estate in, or which could be asserted based on the facts or transactions alleged in, the Trustee's Adversary;

(c)     All such Claims and Defenses asserted by the Chapter 11 Trustee or Estate, or which could be asserted by the Chapter 11 Trustee or Estate, based on the facts or transactions alleged in any other adversary proceedings or Claim Objections filed by the Chapter 11 Trustee or Estate;

(d)     All Avoidance Actions against any Affiliate;

(e)     All Claims for breach of fiduciary duty or duty of loyalty or due care owed to the Debtors or Chapter 11 Trustee;

(f)     All Claims for aiding and/or abetting breach of fiduciary duty, breach of duty loyalty or due care, or any other unlawful act;

(g)     All Clams for usurpation of a corporate opportunity belonging to either of

the Debtors, including in relation to Acis CLO 2017-7, Ltd and any other Acis CLOs;

(h)     All Claims against any Affiliate for the turnover of Estate Assets, including Estate property that the Chapter 11 Trustee may use, sell or lease under section 363 of the Bankruptcy Code including, without limitation, any intellectual property rights or Assets owned by the Debtors or Estate, as well as the turnover of any books, documents, records and papers relating to the Debtors' property or financial affairs;

(i)     All Claims against any Affiliate for the unauthorized use of Estate Assets including, without limitation, any intellectual property rights or Assets owned by the Debtors or Estate;

(j)     All Claims, rights or remedies for Equitable Subordination or Recharacterization of any Claim by any Affiliate against the Debtors, Chapter 11 Trustee, or Estate;

(k)     All Claims based on alter ego or rights to pierce the corporate veil of Acis LP as to any Person, including as against Highland, HCLOF, Highland HCF, Highland CLOM, CLO Holdco, Neutra, the Affiliates, James D. Dondero, Mark K. Okada, or any other officers, directors, equity interest holders, or Persons otherwise in control of Acis LP;

(l)     All Claims based on alter ego or rights to pierce the corporate veil of any Affiliate as to any Person, including as against Highland, HCLOF, Highland HCF, Highland CLOM, CLO Holdco, Neutra, the Affiliates, James D. Dondero, Mark K. Okada, or any officers, directors, equity interest holders, or Persons otherwise in control of any Affiliates; and,

(m)     All Claims for conspiracy to commit any unlawful act, aiding and/or abetting any such unlawful act, or assisting, encouraging, and/or participating in any such unlawful act.

11.     Dondero Claims.  All Estate Claims as defined in paragraph 2 above against James D. Dondero, individually, are hereby reserved, retained and preserved for the benefit of the Estate and Reorganized Debtor, including without limitation all such Estate Claims against James D. Dondero for fraud, constructive fraud, breach of fiduciary duty, breach of duty of loyalty or due care, aiding and abetting breach of fiduciary duty, aiding and abetting breach of duty of loyalty or due care, self-dealing, ultra vires, conversion, usurpation of corporate opportunity, including in relation to Acis CLO 2017-7, Ltd and any other Acis CLOs, tortious interference, including in relation to Universal-Investment-Luxembourg S.A. and BayVK R2 Lux S.A., SICAV-FIS, conflict of interest, negligence, gross negligence, all Avoidance Actions, breach of contract, breach of the Shared Services Agreement, breach of the Sub-Advisory Agreement, breach of the Debtors' limited partnership agreement or limited liability company agreement, conspiracy to commit any unlawful act, aiding and abetting any unlawful act, and assisting, encouraging, and/or participating in any unlawful act, as well as any Claim to pierce the corporate veil of any entity to hold James D. Dondero individually liable.

12.     Okada Claims.  All Estate Claims as defined in paragraph 2 above against Mark K. Okada, individually, are hereby reserved, retained and preserved for the benefit of the Estate and Reorganized Debtor, including without limitation all such Estate Claims against Mark K. Okada for fraud, constructive fraud, breach of fiduciary duty, breach of duty of loyalty or due care, aiding and abetting breach of fiduciary duty, self-dealing, ultra vires, conversion, usurpation of corporate opportunity, including in relation to Acis CLO 2017-7, Ltd and any other

Acis CLOs, tortious interference, including in relation to Universal-Investment-Luxembourg S.A. and BayVK R2 Lux S.A., SICAV-FIS, conflict of interest, negligence, gross negligence, all Avoidance Actions, breach of contract, breach of the Shared Services Agreement, breach of the Sub-Advisory Agreement, breach of the Debtors' limited partnership agreement or limited liability company agreement, conspiracy to commit any unlawful act, aiding and abetting any unlawful act, and assisting, encouraging, and participating in any unlawful act, as well as any Claim to pierce the corporate veil of any entity to hold Mark K. Okada individually liable.

13.     Preference Claims.  All Avoidance Actions pursuant to section 547 of the Bankruptcy Code against any Person are hereby reserved, retained and preserved for the benefit of the Estate and Reorganized Debtor for any payment made to any Person by either of the Debtors within ninety (90) days of the Petition Date (which was January 30, 2018), or made by either of the Debtors to any insider within one (1) year of the Petition Date.  A non-exhaustive list of Persons who are believed to have received payments from either of the Debtors during the 90-day preference period, and the one-year preference period for Insiders, is attached to this **Exhibit "A"** as **Schedule "1"**.  The Plan reserves, retains and preserves for the benefit of the Estate and Reorganized Debtor all potential Claims arising out of or relating to the transfers reflected in **Schedule "1"**, including all Avoidance Actions pursuant to section 547 of the Bankruptcy Code.  All rights and remedies are also reserved. retained and preserved with respect to the transfers reflected in **Schedule "1"** pursuant to section 550 of the Bankruptcy Code.

            **Schedule "1"** reflects transfers made by the Debtors during the 90 days prior to the Petition Date and transfers made by the Debtors to any insiders within one (1) year of the Petition Date.  While the Plan reserves, retains and preserves all Avoidance Actions relating to the transfers reflected in **Schedule "1"**, the Chapter 11 Trustee recognizes that certain of these transfers may not constitute a preferential transfer pursuant to section 547(b) of the Bankruptcy Code as a transfer made in the ordinary course of business transactions or based upon new value subsequently given by the transferee.  Consequently, the listing of a payment on **Schedule "1"** does not necessarily mean that a transferee will ever be sued to avoid and recover the payment, the transfer, or the value thereof, but only that the Plan reserves, retains and preserves all rights (including Avoidance Actions) as to that payment.

14.     Claims Against Officers, Managers and Members.  All Estate Claims as defined in paragraph 2 above are hereby reserved, retained and preserved for the benefit of the Estate and Reorganized Debtor against all present and past officers, employees, members and managers of the Debtors, including all such Estate Causes of Action based on breach of fiduciary duty, aiding and abetting breach of fiduciary duty, breach of duty of loyalty or due care, aiding and abetting breach of duty of loyalty or due care, self-dealing, usurpation of corporate opportunity, gross negligence or conspiracy.  Without limiting the generality of the foregoing, this shall include all D&O Claims as against any present or former officer, director, employee, member, manager, or partner.

15.     Claims Against Former Attorneys and Law Firms.  All Estate Claims as defined in paragraph 2, above, including Claims for breach of any fiduciary duty or duty of loyalty or due care, conspiracy to commit any unlawful act, aiding and/or abetting any such unlawful act, or assisting, encouraging, and/or participating in any such unlawful act, including knowingly aiding, abetting, or assisting with a fraudulent transfer to avoid paying a judgment, negligent or fraudulent misrepresentation, vicarious liability, and respondeat superior, as well as all Claims for legal or professional malpractice, are hereby reserved, retained and preserved for the benefit of the Estate and Reorganized Debtor against all law firms and attorneys who and which

Case 18-30264-sgj11 Doc 1243-2 Filed 09/05/21 Entered 09/05/21 13:08:29 Page 218 of
Case 18-30264-sgj11 Doc 369 Filed 02/19/18 Entered 02/19/18 15:48:28 Page 219 of 229
230

rendered legal services to the Debtors on a prepetition basis including, but not limited to, the following:

      (a)     Cole Schotz, P.C.

      (b)     Michael D. Warner

      (c)     Jacob Frumkin

      (d)     Warren A. Usatine

      (e)     McKool Smith

      (f)     Gary Cruciani

      (g)     Michael P. Fritz

      (h)     Carson D. Young

      (i)     Nicholas Matthews

      (j)     Lackey Hershman, LLP

      (k)     Stinson Leonard Street LLP

      (l)     Jamie R. Welton

      (m)     Paul B. Lackey

      (n)     Michael Aigen

      (o)     Roger L. Mandel

      (p)     Abrams & Bayliss, LLP

      (q)     Kevin G. Abrams

      (r)     A. Thompson Bayliss

      (s)     Jones Day

      (t)     Hilda C. Galvan

      (u)     Michael Weinberg

      (v)     Reid Collins & Tsai, LLP

      (w)     Lisa Tsai

      (x)     Stanton, LLP

      (y)     James M. Stanton

(z)     Hunton Andrews Kurth

(aa)    Marc Katz

(bb)    Greg Waller

(cc)    any other law firm or attorney who may be so named at a later date by the Reorganized Debtor.

16.     <u>Claims Against Officers, Directors, Employees, Members, and Managers, of Highland, HCLOF, Highland HCF, Highland CLOM, CLO Holdco, Neutra, and Their Respective Affiliates</u>.  In addition to the foregoing, all Estate Claims as defined in paragraph 2 above are hereby reserved, retained and preserved for the benefit of the Estate and Reorganized Debtor against all present and past officers, directors, employees, members and managers of Highland, HCLOF, Highland HCF, Highland CLOM, and their respective Affiliates, including all such Estate Causes of Action based on fraud, constructive fraud, breach of fiduciary duty, breach of duty of loyalty or due care, aiding and abetting breach of fiduciary duty, aiding and abetting breach of duty of loyalty or due care, self-dealing, ultra vires, conversion, usurpation of corporate opportunity, including in relation to Acis CLO 2017-7, Ltd and any other Acis CLOs, tortious interference, including in relation to Universal-Investment-Luxembourg S.A. and BayVK R2 Lux S.A., SICAV-FIS, conflict of interest, negligence, gross negligence, all Avoidance Actions, breach of contract, breach of the Shared Services Agreement, breach of the Sub-Advisory Agreement, breach of the Debtors' limited partnership agreement or limited liability company agreement, conspiracy to commit any unlawful act, aiding and abetting any unlawful act, and assisting, encouraging, and/or participating in any unlawful act.  Such present and past officers, directors, employees, members and managers of Highland, HCLOF, Highland HCF, Highland CLOM, and their respective Affiliates include, but are not limited to, the following Persons:

(a)     William Scott;

(b)     Heather Bestwick;

(c)     Scott Ellington

(d)     Isaac Leventon

(e)     Jean Paul Sevilla

(f)     Hunter Covitz

(g)     The Dugaboy Investment Trust

(h)     Nancy Dondero, Trustee of the Dugaboy Trust

(i)     Grant Scott

(j)     Any other Person who may be so named at a later date by the Reorganized Debtor.

Case 18-30264-sgj11 Doc 1243-2 Filed 09/05/21 Entered 09/05/21 12:08:29 Page 220 of 230
Case 18-30264-sgj11 Doc 1369 Filed 01/31/18 Entered 01/31/18 12:08:29 Page 219 of 229
230

17.     <u>Counterclaims</u>.  All Estate Claims as defined in paragraph 2 above are reserved, retained and preserved for the benefit of the Estate and Reorganized Debtor both as a basis for an affirmative recovery against the Person against whom such Claims are asserted and as a counterclaim or offset against any Person who asserts a Claim against the Estate or Reorganized Debtor.

18.     <u>Piercing the Corporate Veil</u>.  With respect to all Estate Claims against any Person, all rights to pierce or ignore the corporate veil are hereby reserved, retained and preserved for the benefit of the Estate and the Reorganized Debtor.  Without limiting the generality of the foregoing, this shall include: (a) any right to pierce the corporate veil, including reverse piercing, on any theory or basis, including alter ego or any theory of sham to perpetrate a fraud, and (b) any Claim or basis to pierce the corporate veil of any entity with respect to establishing personal liability against James D. Dondero or Mark K. Okada.

19.     <u>Avoidance Actions</u>.  All Avoidance Actions are hereby reserved, retained and preserved as to all Persons.  The reservation, retention and preservation of such Avoidance Actions shall include the reservation, retention and preservation for the benefit of the Estate and Reorganized Debtor of all rights and remedies pursuant to section 550 of the Bankruptcy Code.

20.     <u>Estate Defenses</u>.  All Estate Defenses are hereby reserved, retained and preserved in favor of the Estate and Reorganized Debtor as against any Person asserting any Claim against the Estate.  This includes asserting all Estate Claims as an offset to, or counterclaim or right of recoupment against, any Person asserting a Claim against the Estate.  All defenses and affirmative defenses pursuant to applicable law are hereby reserved, retained and preserved for the benefit of the Estate and the Reorganized Debtor, including without limitation, accord and satisfaction, assumption of risk, contributory negligence, duress, estoppel, failure of consideration, fraud, illegality, laches, license, payment, release, *res judicata*, collateral estoppel, statute of frauds, statute of limitations or repose, discovery rule, adverse domination doctrine or similar doctrines, set off, recoupment, waiver, and all other defenses to Claims under the Bankruptcy Code, including under sections 502(b)(4) and 502(d).

21.     <u>Equitable Subordination</u>.  All rights or remedies for Equitable Subordination are hereby reserved, retained and preserved in favor of the Estate and Reorganized Debtor against any Person asserting any Claim against the Estate, including all such rights or remedies pursuant to section 510(c) of the Bankruptcy Code.  Without limiting the generality of the foregoing, this shall include all rights and remedies to Equitable Subordination as to any Claim asserted by Highland, any Affiliates of Highland, or any officers, directors, employees or equity interest owners of the Debtors, Highland, or any Affiliates thereof.

22.     <u>Recharacterization</u>.  All rights or remedies to recharacterize any Claim as an equity interest in either of the Debtors are hereby reserved, retained and preserved in favor of the Estate and Reorganized Debtor against any Person asserting any Claim against the Estate. Without limiting the generality of the foregoing, this shall include all rights and remedies to recharacterize any Claim asserted by Highland, any Affiliates of Highland, or any officers, directors, employees or equity interest owners of the Debtors, Highland, or any Affiliates thereof.

Case 18-30264-sgj11 Doc 769 Filed 12/10/18 Entered 12/10/18 15:10:10 Page 22 of 23
Case 18-30264-sgj11 Doc 830 Filed 02/01/19 Entered 02/01/19 12:42:42 Page 226 of 229
230

Schedule A to Exhibit A

Third Amended Joint Plan for Acis Capital Management, LP and Acis Capital Management GP, LLC

| NAME | ADDRESS | DATE OF PAYMENT | PAYMENT AMOUNT | REASON FOR PAYMENT ON SCHEDULES |
|---|---|---|---|---|
| Payments within 90 Days of Petition Date | | | | |
| Highland Capital Management, LP | 300 Crescent Court, Ste. 700 Dallas, TX 75208 | 11/2/2017 | $234,013.63 | Services |
| Highland Capital Management, LP | 300 Crescent Court, Ste. 700 Dallas, TX 75208 | 11/3/2017 | $941,958.57 | Services |
| Highland Capital Management, LP | 300 Crescent Court, Ste. 700 Dallas, TX 75208 | 12/8/2017 | $89,655.14 | Services |
| David Simek | 31 Woodacres Road Brookville, NY 11545 | 11/15/2017 | $2,068.13 | Services |
| David Simek | 31 Woodacres Road Brookville, NY 11545 | 11/30/2017 | $24,266.71 | Services |
| David Simek | 31 Woodacres Road Brookville, NY 11545 | 12/12/2017 | $1,718.79 | Services |
| David Simek | 31 Woodacres Road Brookville, NY 11545 | 12/29/2017 | $25,000.00 | Services |
| FINRA | 1735 K Street, NW Washington, DC 20006 | 11/22/2017 | $70.00 | Suppliers or Vendors |
| Highland CLO Management, Ltd. | PO Box 309, Ugland House Grand Cayman, KY1-1104, Cayman Islands | 12/19/2017 | $2,830,459.22 | Services |
| Payments to Insiders within One Year of Petition Date | | | | |
| Highland Capital Management, LP | 300 Crescent Court, Ste. 700 Dallas, TX 75208 | 2/1/2017 | $976,688.47 | Contractual Payment |
| Highland Capital Management, LP | 300 Crescent Court, Ste. 700 Dallas, TX 75208 | 2/1/2017 | $1,096,033.37 | Services |
| Highland Capital Management, LP | 300 Crescent Court, Ste. 700 Dallas, TX 75208 | 2/2/2017 | $3,574.80 | Expense Reimbursement |
| Highland Capital Management, LP | 300 Crescent Court, Ste. 700 Dallas, TX 75208 | 2/14/2017 | $67.44 | Expense Reimbursement |
| Highland Capital Management, LP | 300 Crescent Court, Ste. 700 Dallas, TX 75208 | 4/17/2017 | $315,574.30 | Services |
| Highland Capital Management, LP | 300 Crescent Court, Ste. 700 Dallas, TX 75208 | 4/18/2017 | $438,497.51 | Services |

Schedule A to
Exhibit A to
Third Amended Joint Plan for Acis Capital Management, LP and Acis Capital Management GP, LLC

| NAME | ADDRESS | DATE OF PAYMENT | PAYMENT AMOUNT | REASON FOR PAYMENT ON SCHEDULES |
|------|---------|-----------------|----------------|-------------------------------|
| Highland Capital Management, LP | 300 Crescent Court, Ste. 700 Dallas, TX 75208 | 4/18/2017 | $375,855.01 | Contractual Payment |
| Highland Capital Management, LP | 300 Crescent Court, Ste. 700 Dallas, TX 75208 | 4/19/2017 | $330,249.69 | Services |
| Highland Capital Management, LP | 300 Crescent Court, Ste. 700 Dallas, TX 75208 | 5/1/2017 | $974,426.41 | Services |
| Highland Capital Management, LP | 300 Crescent Court, Ste. 700 Dallas, TX 75208 | 5/31/2017 | $2,809,518.47 | Unsecured loan repayments including interest |
| Highland Capital Management, LP | 300 Crescent Court, Ste. 700 Dallas, TX 75208 | 5/31/2017 | $581,036.15 | Services |
| Highland Capital Management, LP | 300 Crescent Court, Ste. 700 Dallas, TX 75208 | 7/18/2017 | $373,167.08 | Contractual Payment |
| Highland Capital Management, LP | 300 Crescent Court, Ste. 700 Dallas, TX 75208 | 8/1/2017 | $971,603.02 | Contractual Payment |
| Highland Capital Management, LP | 300 Crescent Court, Ste. 700 Dallas, TX 75208 | 8/7/2017 | $1,339,422.12 | Services |
| Highland Capital Management, LP | 300 Crescent Court, Ste. 700 Dallas, TX 75208 | 8/16/2017 | $53.41 | Expense Reimbursement |
| Highland Capital Management, LP | 300 Crescent Court, Ste. 700 Dallas, TX 75208 | 10/18/2017 | $372,872.82 | Contractual Payment |
| Highland Capital Management, LP | 300 Crescent Court, Ste. 700 Dallas, TX 75208 | 10/18/2017 | $728,702.26 | Services |
| Highland Capital Management, LP | 300 Crescent Court, Ste. 700 Dallas, TX 75208 | 10/24/2017 | $501,979.18 | Unsecured loan repayments including interest |
| Highland Capital Management, LP | 300 Crescent Court, Ste. 700 Dallas, TX 75208 | 10/25/2017 | $46,648.82 | Expense Reimbursement |
| Highland Capital Management, LP | 300 Crescent Court, Ste. 700 Dallas, TX 75208 | 10/25/2017 | $67,966.85 | Expense Reimbursement |
| Highland Capital Management, LP | 300 Crescent Court, Ste. 700 Dallas, TX 75208 | 11/1/2017 | $967,223.91 | Contractual Payment |

# EXHIBIT "5"

**[Executory Contracts and Unexpired Leases to be Assumed by the Trustee]**

Case 18-30264-sgj11 Doc 1243-2 Filed 09/05/21 Entered 09/05/21 12:08:29 Page 224 of 229
Case 18-30264-sgj11 Doc 830 Filed 02/31/19 Entered 02/31/19 12:42:42 Page 228 of 229
230

**EXHIBIT "5"**
**Executory Contracts and Unexpired Leases**
**to Be Assumed by the Trustee**

| Party | Contract Description | Contract Date | Cure Amount |
|---|---|---|---|
| Acis CLO 2013-1 Ltd.<br>c/o Estera Trust (f/k/a Appleby Trust)<br>Clifton House 75 Fort St., P.O. Box 1350<br>Grand Cayman, Cayman Islands KY1-1108 | Collateral Administration Agreement | March 18, 2013 | $0 |
| U.S. Bank National Association<br>190 S. LaSalle Street, 8th Floor<br>Chicago, IL 60603<br>Attention: Global Corporate Trust –<br>Acis CLO 2013-1 | Collateral Administration Agreement | March 18, 2013 | $0 |
| Acis CLO 2013-1 Ltd.<br>c/o Estera Trust (f/k/a Appleby Trust)<br>Clifton House 75 Fort St., P.O. Box 1350<br>Grand Cayman, Cayman Islands KY1-1108 | Portfolio Management Agreement | March 18, 2013 | $0 |
| Acis CLO 2013-2 Ltd.<br>c/o Estera Trust (f/k/a Appleby Trust)<br>Clifton House 75 Fort St., P.O. Box 1350<br>Grand Cayman, Cayman Islands KY1-1108 | Collateral Administration Agreement | October 3, 2013 | $0 |
| The Bank of New York Mellon Trust Co., N.A.<br>601 Travis Street, 16th Floor<br>Houston, Texas 77002<br>Attn: Global Corporate Trust –<br>Acis CLO 2013-2 | Collateral Administration Agreement | October 3, 2013 | $0 |
| Acis CLO 2013-2 Ltd.<br>c/o Estera Trust (f/k/a Appleby Trust)<br>Clifton House 75 Fort St., P.O. Box 1350<br>Grand Cayman, Cayman Islands KY1-1108 | Portfolio Management Agreement | October 3, 2013 | $0 |
| Acis CLO 2014-3 Ltd.<br>c/o MaplesFS Limited<br>P.O. Box 1093, Boundary Hall, Cricket Sq<br>Grand Cayman, Cayman Islands KY1-1102 | Collateral Administration Agreement | February 25, 2014 | $0 |

1

Case 18-30264-sgj11 Doc 3242-2 Filed 09/05/21 Entered 09/05/21 12:08:29 Page 225 of 229
Case 18-30264-sgj11 Doc 830 Filed 02/31/19 Entered 02/31/19 12:43:42 Page 224 of 229
230

**EXHIBIT "5"**
**Executory Contracts and Unexpired Leases**
**to Be Assumed by the Trustee**

| Party | Contract Description | Contract Date | Cure Amount |
|---|---|---|---|
| U.S. Bank National Association<br>190 S. LaSalle Street, 8th Floor<br>Chicago, IL 60603<br>Attention: Global Corporate Trust –<br>Acis CLO 2014-3 | Collateral Administration Agreement | February 25, 2014 | $0 |
| Acis CLO 2014-3 Ltd.<br>c/o MaplesFS Limited<br>P.O. Box 1093, Boundary Hall, Cricket Sq<br>Grand Cayman, Cayman Islands KY1-1102 | Portfolio Management Agreement | February 25, 2014 | $0 |
| Acis CLO 2014-4 Ltd.<br>c/o MaplesFS Limited<br>P.O. Box 1093, Boundary Hall, Cricket Sq<br>Grand Cayman, Cayman Islands KY1 -1102 | Collateral Administration Agreement | June 5, 2014 | $0 |
| U.S. Bank National Association<br>190 S. LaSalle Street, 8th Floor<br>Chicago, IL 60603<br>Attention: Global Corporate Trust –<br>Acis CLO 2014-4 | Collateral Administration Agreement | June 5, 2014 | $0 |
| Acis CLO 2014-4 Ltd.<br>c/o MaplesFS Limited<br>P.O. Box 1093, Boundary Hall, Cricket Sq<br>Grand Cayman, Cayman Islands KY1-1102 | Portfolio Management Agreement | June 5, 2014 | $0 |
| Acis CLO 2014-5 Ltd.<br>c/o MaplesFS Limited<br>P.O. Box 1093, Boundary Hall, Cricket Sq<br>Grand Cayman, Cayman Islands KY1-1102 | Collateral Administration Agreement | November 18, 2014 | $0 |
| U.S. Bank National Association<br>190 S. LaSalle Street, 8th Floor<br>Chicago, IL 60603<br>Attention: Global Corporate Trust –<br>Acis CLO 2014-5 | Collateral Administration Agreement | November 18, 2014 | $0 |

2

Case 18-30264-sgj11 Doc 1348-2 Filed 09/05/21 Entered 09/05/21 12:48:29 Page 226 of 229
Case 18-30264-sgj11 Doc 830 Filed 02/31/19 Entered 02/31/19 12:48:29 Page 225 of 229
230

EXHIBIT "5"
**Executory Contracts and Unexpired Leases**
**to Be Assumed by the Trustee**

| Party | Contract Description | Contract Date | Cure Amount |
|---|---|---|---|
| Acis CLO 2014-5 Ltd. c/o MaplesFS Limited P.O. Box 1093, Boundary Hall, Cricket Sq Grand Cayman, Cayman Islands KY1-1102 | Portfolio Management Agreement | November 18, 2014 | $0 |
| Acis CLO 2015-6 Ltd. c/o MaplesFS Limited P.O. Box 1093, Boundary Hall, Cricket Sq Grand Cayman, Cayman Islands KY1-1102 | Collateral Administration Agreement | April 16, 2015 | $0 |
| U.S. Bank National Association 190 S. LaSalle Street, 8th Floor Chicago, IL 60603 Attention: Global Corporate Trust – Acis CLO 2015-6 | Collateral Administration Agreement | April 16, 2015 | $0 |
| Acis CLO 2015-6 Ltd. c/o MaplesFS Limited P.O. Box 1093, Boundary Hall, Cricket Sq Grand Cayman, Cayman Islands KY1-1102 | Portfolio Management Agreement | April 16, 2015 | $0 |
| Acis CLO Value Fund II (Cayman), LP. P.O. Box 309, Ugland House Grand Cayman, Cayman Islands KY1-1104 | Investment Management Agreement | May 1, 2016 | $0 |
| Acis CLO Value Fund II GP, LLC P.O. Box. 309, Ugland House Grand Cayman, Cayman Islands KY1-1104 | Investment Management Agreement | May 1, 2016 | $0 |
| Acis CLO Value Fund II, LP. 300 Crescent Court Suite 700 Dallas, TX 75201 | Investment Management Agreement | May 1, 2016 | $0 |
| Acis CLO Value GP, LLC 1209 Orange Street Wilmington, DE 19801 | Limited Liability Company Agreement | July 19, 2010 | $0 |

3

**EXHIBIT "5"**
**Executory Contracts and Unexpired Leases**
**to Be Assumed by the Trustee**

| Party | Contract Description | Contract Date | Cure Amount |
|---|---|---|---|
| Acis CLO Value Master Fund II, LP. P.O. Box 309, Ugland House Grand Cayman, Cayman Islands KY1-1104 | Investment Management Agreement | May 1, 2016 | $0 |
| Acis CLO Value Fund II (Cayman), L.P. P.O. Box 309, Ugland House Grand Cayman, Cayman Islands KY1-1104 | Third Amended and Restated Exempted Limited Partnership Agreement | May 1, 2016 | $0 |
| Acis CLO Value Master Fund II, L.P. P.O. Box 309, Ugland House Grand Cayman, Cayman Islands KY1-1104 | Third Amended and Restated Exempted Limited Partnership Agreement | May 1, 2016 | $0 |
| Acis Loan Funding, Ltd. 300 Crescent Court Suite 700 Dallas, TX 75201 | FATCA and Non-FATCA Services Agreement | June 23, 2017 | $0 |
| BayVK R2 Lux S.A., SICAV FIS 15 rue de Flaxweiler L-6776 Grevenmacher | Power of Attorney | February 20, 2015 | $0 |
| BayVK R2 Lux S.A., SICAV-FIS 15 rue de Flaxweiler L-6776 Grevenmacher | Agreement for the Outsourcing of the Asset Management of BayVK R2 Lux S.A., SICAV-FIS | February 27, 2015 | $0 |
| BayVK R2 Lux S.A., SICAV-FIS 15 rue de Flaxweiler L-6776 Grevenmacher | Service Level Agreement | February 27, 2015 | $0 |
| BNP Paribas Securities Services Luxembourg Branch 60 Avenue John F. Kennedy 1855 Luxembourg | Power of Attorney 86578 | February 20, 2015 | $0 |
| Hewett's Island CLO 1-R, Ltd. c/o Maples Finance Limited P.O. Box 1093, Queensgate House Grand Cayman, Cayman Islands KY1-1102 | Confidentiality Agreement | April 11, 2011 | $0 |

4

**EXHIBIT "5"**
**Executory Contracts and Unexpired Leases**
**to Be Assumed by the Trustee**

| Party | Contract Description | Contract Date | Cure Amount |
|---|---|---|---|
| Hewett's Island CLO 1-R, Ltd. *c/o* Maples Finance Limited P.O. Box 1093, Queensgate House Grand Cayman, Cayman Islands KY1-1102 | Governing Documents (Requested from HCM) | -- | $0 |
| Hewett's Island CLO 1-R, Ltd. *c/o* Maples Finance Limited P.O. Box 1093, Queensgate House Grand Cayman, Cayman Islands KY1-1102 | Management Agreement | July 18, 2011 | $0 |
| Hewett's Island CLO 1-R, Ltd. *c/o* Maples Finance Limited P.O. Box 1093, Queensgate House Grand Cayman, Cayman Islands KY1-1102 | Collateral Administration Agreement (Requested from HCM) | November 20, 2007 | $0 |
| State Street (Guernsey Limited) First Floor, Dorey Court, Admiral Park, St. Peter Port, Guernsey | FATCA and Non-FATCA Services Agreement | June 23, 2017 | $0 |
| U.S. Bank National Association 190 S. LaSalle Street, 8th Floor Chicago, IL 60603 Attention: Global Corporate Trust – Acis CLO 2015-6 | Confidentiality Agreement | March 5, 2014 | $0 |
| Universal-Investment-Luxembourg S.A. 15 rue de Flaxweiler L-6776 Grevenmacher | Agreement for the Outsourcing of the Asset Management of BayVK R2 Lux S.A., SICAV-FIS | February 27, 2015 | $0 |
| Universal-Investment-Luxembourg S.A. 15 rue de Flaxweiler L-6776 Grevenmacher | Power of Attorney | February 20, 2015 | $0 |
| Universal-Investment-Luxembourg S.A. 15 rue de Flaxweiler L-6776 Grevenmacher | Service Level Agreement | February 27, 2015 | $0 |

5

Case 18-30264-sgj11 Doc 830 Filed 01/31/19 Entered 01/31/19 13:08:29 Page 228 of 229

## EXHIBIT "5"
### Executory Contracts and Unexpired Leases
### to Be Assumed by the Trustee

| Party | Contract Description | Contract Date | Cure Amount |
|---|---|---|---|
| Acis Loan Funding, Ltd.<br>First Floor, Dorey Court<br>St. Peter Port, Guernsey GY1 6HJ<br>Channel Islands | Portfolio Management Agreement | December 22, 2016 | $0 |
| Acis Capital Management, LP<br>c/o *PHELANLAW*<br>4214 Woodfin Drive<br>Dallas, Texas 75220 | Amended and Restated Agreement of<br>Limited Partnership | January 21, 2011 | $0 |
| Acis Capital Management GP, LLC<br>c/o *PHELANLAW*<br>4214 Woodfin Drive<br>Dallas, Texas 75220 | Amended and Restated Limited Liability<br>Company Agreement | January 21, 2011 | $0 |

For the avoidance of doubt, to the extent not otherwise included above, the Trustee intends to assume any additional executory contracts that relate to the funds set forth below as may be necessary or beneficial to the Reorganized Debtor under the Plan:

1. Acis CLO 2013-1, Ltd.
2. Acis CLO 2013-2, Ltd.
3. Acis CLO 2014-3, Ltd.
4. Acis CLO 2014-4, Ltd.
5. Acis CLO 2014-5, Ltd.
6. Acis CLO 2015-6, Ltd.
7. Acis CLO Value Fund II, L.P.
8. Acis CLO Value Fund II (Cayman), L.P.
9. Acis CLO Master Fund II, L.P.
10. BayVK R2 Lux S.A., SICAV FIS

6

# EXHIBIT "5"
## Executory Contracts and Unexpired Leases
## to Be Assumed by the Trustee

11.  Hewitt's Island CLO 1-R, Ltd.

12.  Acis Loan Funding, Ltd.

The Trustee reserves the right to amend or supplement this Exhibit 5.

7