# EXHIBIT 30

🇺🇸 **us**bank.

All of **us** serving you℠

**ACIS CLO 2014-3 LTD.**
**ACIS CLO 2014-3 LLC**

## NOTICE TO HOLDERS

**NOTE: THIS NOTICE CONTAINS IMPORTANT INFORMATION THAT IS OF INTEREST TO THE REGISTERED AND BENEFICIAL OWNERS OF THE SUBJECT NOTES. IF APPLICABLE, ALL DEPOSITORIES, CUSTODIANS, AND OTHER INTERMEDIARIES RECEIVING THIS NOTICE ARE REQUESTED TO EXPEDITE RE-TRANSMITTAL TO BENEFICIAL OWNERS OF THE NOTES IN A TIMELY MANNER.**

October 26, 2018

To:     The Holders described as:

| Class | Rule 144A CUSIP* | Rule 144A ISIN* | Rule 144A Common Code* | Reg. S CUSIP* | Reg. S ISIN* | Reg. S. Common Code* | Accredited Investor CUSIP* | Accredited Investor ISIN* |
|---|---|---|---|---|---|---|---|---|
| **Class A-1A Notes** | 00100FAA3 | US00100FAA30 | 102734564 | G00734AA4 | USG00734AA45 | 102734696 | 00100FAB1 | US00100FAB13 |
| **Class A-1F Notes** | 00100FAC9 | US00100FAC95 | 102734572 | G00734AB2 | USG00734AB28 | 102734700 | 00100FAD7 | US00100FAD78 |
| **Class A-2A Notes** | 00100FAE5 | US00100FAE51 | 102734599 | G00734AC0 | USG00734AC01 | 102734688 | 00100FAF2 | US00100FAF27 |
| **Class A-2B Notes** | 00100FAG0 | US00100FAG00 | 102734602 | G00734AD8 | USG00734AD83 | 102734726 | 00100FAH8 | US00100FAH82 |
| **Class A-X Notes** | 00100FAJ4 | US00100FAJ49 | 102734629 | G00734AE6 | USG00734AE66 | 102734742 | 00100FAK1 | US00100FAK12 |
| **Class B Notes** | 00100FAL9 | US00100FAL94 | 102734645 | G00734AF3 | USG00734AF32 | 102734734 | 00100FAM7 | US00100FAM77 |
| **Class C Notes** | 00100FAN5 | US00100FAN50 | 102734637 | G00734AG1 | USG00734AG15 | 102734769 | 00100FAP0 | US00100FAP09 |
| **Class D Notes** | 00100FAQ8 | US00100FAQ81 | 102734653 | G00734AH9 | USG00734AH97 | 102734793 | 00100FAR6 | US00100FAR64 |
| **Class E Notes** | 00100GAA1 | US00100GAA13 | 102734661 | G00733AA6 | USG00733AA61 | 102734777 | 00100GAB9 | US00100GAB95 |
| **Class F Notes** | 00100GAC7 | US00100GAC78 | 102734670 | G00733AB4 | USG00733AB45 | 102734785 | 00100GAD5 | US00100GAD51 |
| **Sub. Notes** | 00100GAE3 | US00100GAE35 | 102738721 | G00733AC2 | USG00733AC28 | 103176662 | 00100GAF0 | US00100GAF00 |

To:     Those Additional Parties Listed on Schedule I hereto

Reference is hereby made to that certain: (i) Indenture dated as of February 25, 2014 (as supplemented, amended or modified from time to time, the "Indenture"), among ACIS CLO 2014-3 LTD., as issuer (the "Issuer"), ACIS CLO 2014-3 LLC, as co-issuer (the "Co-Issuer" and, together with the Issuer, the "Co-Issuers"), and U.S. BANK NATIONAL ASSOCIATION, as trustee (the "Trustee"), (ii) Portfolio Management Agreement dated as of February 25, 2014 (as supplemented, amended or modified from time to time, the "PMA") between the Issuer and ACIS CAPITAL MANAGEMENT, L.P., as portfolio manager (the "Portfolio Manager") and (iii) the Trustee's notices dated May 10, 2018, June 7, 2018, June 20, 2018, July 13, 2018, July 31, 2018, August 7, 2018, August 16, 2018 and September 5, 2018 (the "Prior Notices").

---

\* No representation is made as to the correctness of the CUSIP, ISIN or Common Code numbers either as printed on the Notes or as contained in this notice. Such numbers are included solely for the convenience of the Holders.

Capitalized terms used herein and not otherwise defined shall have the meanings assigned to such terms in the Indenture, the PMA or the Prior Notices, as applicable.

At the request of the Chapter 11 Trustee for the Portfolio Manager, the Trustee hereby forwards a copy of the Notice of Solicitation of Third Amended Joint Plan for Acis Capital Management, L.P. and Acis Capital Management GP, LLC to Noteholders (with attachments, collectively, the "Portfolio Manager's Notice"), attached hereto as Exhibit A.

PLEASE NOTE THAT THE FOREGOING IS NOT INTENDED AND SHOULD NOT BE CONSTRUED AS INVESTMENT, ACCOUNTING, FINANCIAL, LEGAL OR TAX ADVICE BY OR ON BEHALF OF THE TRUSTEE, OR ITS DIRECTORS, OFFICERS, AFFILIATES, AGENTS, ATTORNEYS OR EMPLOYEES. THE TRUSTEE MAKES NO RECOMMENDATIONS TO THE HOLDERS OF NOTES AS TO ANY ACTION TO BE TAKEN OR NOT TO BE TAKEN WITH RESPECT TO THIS NOTICE, THE PORTFOLIO MANAGER'S NOTICE OR THE DOCUMENTS REFERENCED HEREIN OR THEREIN OR OTHERWISE AND ASSUMES NO RESPONSIBILITY FOR THE CONTENTS, SUFFICIENCY OR VALIDITY OF THE DESCRIPTIONS CONTAINED HEREIN, THE DESCRIPTIONS CONTAINED IN THE PORTFOLIO MANAGER'S NOTICE OR THE DOCUMENTS ATTACHED HERETO OR THERETO.

The Trustee may conclude that a specific response to particular inquiries from individual Holders is not consistent with equal and full dissemination of information to all Holders. Holders should not rely on the Trustee as their sole source of information.

U.S. BANK NATIONAL ASSOCIATION,
as Trustee

With a copy to:

Acis Capital Management, L.P.
c/o Robin Phelan, Chapter 11 Trustee
4214 Woodfin Drive
Dallas, Texas 75220-6416
Email: robin@phelanlaw.org

**EXHIBIT A**

Portfolio Manager's Notice

Jeff P. Prostok — State Bar No. 16352500
J. Robert Forshey — State Bar No. 07264200
Suzanne K. Rosen — State Bar No. 00798518
Matthew G. Maben — State Bar No. 24037008
**FORSHEY & PROSTOK LLP**
777 Main St., Suite 1290
Ft. Worth, TX 76102
Telephone: (817) 877-8855
Facsimile: (817) 877-4151
jprostok@forsheyprostok.com
bforshey@forsheyprostok.com
srosen@forsheyprostok.com
mmaben@forsheyprostok.com

**COUNSEL FOR ROBIN PHELAN,
CHAPTER 11 TRUSTEE**

Rakhee V. Patel – State Bar No. 00797213
Phillip Lamberson – State Bar No. 00794134
Joe Wielebinski – State Bar No. 21432400
Annmarie Chiarello – State Bar No. 24097496
**WINSTEAD PC**
500 Winstead Building
2728 N. Harwood Street
Dallas, Texas 75201
Telephone: (214) 745-5400
Facsimile: (214) 745-5390
rpatel@winstead.com
plamberson@winstead.com
jwielebinski@winstead.com
achiarello@winstead.com

**SPECIAL COUNSEL FOR ROBIN PHELAN,
CHAPTER 11 TRUSTEE**

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE NORTHERN DISTRICT OF TEXAS
## DALLAS DIVISION

| | | |
|---|---|---|
| IN RE: | § | CHAPTER 11 CASES |
| | § | |
| ACIS CAPITAL MANAGEMENT, L.P., | § | CASE NO. 18-30264-sgj11 |
| ACIS CAPITAL MANAGEMENT GP, LLC, | § | (Jointly Administered) |
| | § | |
| Debtors. | § | |

### NOTICE OF SOLICITATION OF THIRD AMENDED JOINT PLAN FOR ACIS CAPITAL MANAGEMENT, L.P. AND ACIS CAPITAL MANAGEMENT GP, LLC TO NOTEHOLDERS

**TO THE BENEFICIAL HOLDERS OF THE NOTES (the "NOTEHOLDERS") IN THE FOLLOWING:**

**ACIS CLO 2013-1 LTD**

**ACIS CLO 2013-2 LTD**

**ACIS CLO 2014-3 LTD**

**ACIS CLO 2014-4 LTD**

**ACIS CLO 2014-5 LTD**

**ACIS CLO 2015-6 LTD**

**HEWETT'S ISLAND CLO 1-R, LTD**

**BAYVK R2 LUX S.A., SICAV-FIS**

Acis CLO 2014-3, Ltd., Acis CLO 2014-4, Ltd., Acis CLO 2014-5, Ltd., and Acis CLO 2015-6, Ltd. are collectively referred to herein as the "Acis CLOs."

PLEASE TAKE NOTICE that on October 25, 2018, Robin Phelan ("Trustee"), the Chapter 11 Trustee for Acis Capital Management, L.P. and Acis Capital Management GP, LLC, filed the *Third Amended Joint Plan for Acis Capital Management, L.P. and Acis Capital Management GP, LLC* [Docket No. 660], as modified or supplemented (the "Joint Plan"), and on October 25, 2018, the Trustee filed a *Disclosure Statement Pursuant to Section 1125 of the United States Bankruptcy Code with Respect to the Third Amended Joint Plan for Acis Capital Management, L.P. and Acis Capital Management GP, LLC* [Docket No. 661], as modified or supplemented (the "Disclosure Statement").

PLEASE TAKE FURTHER NOTICE that the Plan and Disclosure Statement were filed and then solicited to creditors entitled to vote on the plan on October 26, 2018. For your reference, attached please find copies of the following documents:

1.  Joint Plan;

2.  Disclosure Statement;

3.  Order (i) Conditionally Approving Disclosure Statement, (ii) Scheduling Combined Hearing on Final Approval of Disclosure Statement and Confirmation of Plan, and Setting Related Deadlines, (iii) Approving Forms for Voting and Notice, and (iv) Approving Related Matters; and

4.  Notice of (a) Combined Hearing to Consider Final Approval of Disclosure Statement and Confirmation of Plan, (b) Deadline for Submitting Ballots to Accept or Reject the Plan, (c) Deadline for Filing and Service of Objections to Final Approval of Disclosure Statement and Confirmation of Plan, and (d) Related Matters (the "Combined Hearing Notice").

PLEASE TAKE FURTHER NOTICE that the deadlines for any party or party in interest desiring to object to final approval of the Disclosure Statement and/or confirmation of the Plan, are set forth in the attached Combined Hearing Notice.

**PLEASE TAKE FURTHER NOTICE that Section 14.03 of the Plan contains a Plan Injunction, which enjoins Highland Capital Management, L.P. ("HCM"), Highland CLO**

**Funding, Ltd. CLO Holdco, Ltd., Neutra, Ltd., Highland HCF Advisors, Ltd., Highland CLO Management, Ltd., and any other affiliates of HCM from taking any steps to liquidate the Acis CLOs except through a reset transaction pursuant to section 6.08 if the Plan.  Please refer to Section 14.03 of the Plan for the complete terms of the Proposed Plan Injunction.**[1]

PLEASE TAKE FURTHER NOTICE that the materials included with this notice are being sent to the Noteholders for notice and informational purposes only.  Ballots were not included because the Trustee does not believe the Noteholders are either creditors or equity interest holders in either of the above-referenced debtors; however, all parties are encouraged to visit with their own counsel to determine whether or not they have a claim against the debtors.

**IN THE EVENT YOU ARE ACTING AS AN AGENT OR REPRESENTATIVE OF THE BENEFICIAL OWNERS OF THE NOTES IN THE ABOVE-REFERENCED CLOS OR FUNDS, YOU ARE INSTRUCTED TO PROMPTLY DELIVER THIS NOTICE AND THE ATTACHED MATERIALS TO THE BENEFICIAL OWNERS OF THE NOTES IN THE CLOS OR FUNDS. TIME IS OF THE ESSENCE SO THAT COMPLIANCE WITH THE DEADLINES SET FORTH IN THE COMBINED HEARING NOTICE MAY BE HAD.**

Dated: October 26, 2018.

Respectfully submitted,

/s/  Jeff P. Prostok
Jeff P. Prostok
State Bar No. 16352500
J. Robert Forshey
State Bar No. 07264200
Suzanne K. Rosen
State Bar No. 00798518
Matthew G. Maben
State Bar No. 24037008
**FORSHEY & PROSTOK LLP**
777 Main St., Suite 1290
Ft. Worth, TX 76102
Telephone: (817) 877-8855
Facsimile: (817) 877-4151
jprostok@forsheyprostok.com

---

[1] The Bankruptcy Court entered orders on October 15, 2018 granting relief from the automatic stay and modifying a preliminary injunction to permit the trading, sale or other disposition of the collateral of Acis CLO 2013-1, Ltd. ("CLO-1") in accordance with the CLO-1 indenture, CLO-1 portfolio management agreement, and applicable law.

bforshey@forsheyprostok.com
srosen@forsheyprostok.com
mmaben@forsheyprostok.com

**COUNSEL FOR ROBIN PHELAN,
CHAPTER 11 TRUSTEE**

-and-

Rakhee V. Patel
State Bar No. 00797213
Phillip Lamberson
State Bar No. 00794134
Joe Wielebinski
State Bar No. 21432400
Annmarie Chiarello
State Bar No. 24097496
**WINSTEAD PC**
500 Winstead Building
2728 N. Harwood Street
Dallas, Texas 75201
(214) 745-5400 (Phone)
(214) 745-5390 (Facsimile)
rpatel@winstead.com
plamberson@winstead.com
jwielebinski@winstead.com
achiarello@winstead.com

**SPECIAL COUNSEL FOR ROBIN PHELAN,
CHAPTER 11 TRUSTEE**

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that a true and correct copy of the foregoing document and all referenced documents were served upon the parties receiving ECF Electronic Notice in this case and via First Class, U.S. Mail, postage prepaid, upon the confidential list of Noteholders (not attached due to confidentiality) on October 26, 2018.

/s/ Jeff P. Prostok
Jeff P. Prostok

L:\JPROSTOK\ACIS Capital Management (Trustee Rep)\Plan and Disclosure Statement\Solicitation Documents\Notice to Noteholders of Solicitation of Joint Plan and DS 10.26.18.docx

# IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE NORTHERN DISTRICT OF TEXAS
### DALLAS DIVISION

| | | |
|---|---|---|
| **IN RE:** | § | **Case No. 18-30264-SGJ-11** |
| | § | **Case No. 18-30265-SGJ-11** |
| **ACIS CAPITAL MANAGEMENT, L.P.,** | § | |
| **ACIS CAPITAL MANAGEMENT GP, LLC,** | § | **(Jointly Administered Under Case** |
| | § | **No. 18-30264-SGJ-11)** |
| **DEBTORS.** | § | |
| | § | **Chapter 11** |

## THIRD AMENDED JOINT PLAN FOR ACIS CAPITAL MANAGEMENT, L.P. AND ACIS CAPITAL MANAGEMENT GP, LLC

Jeff P. Prostok –  State Bar No. 16352500
J. Robert Forshey – State Bar No. 07264200
Suzanne K. Rosen –  State Bar No. 00798518
Matthew G. Maben – State Bar No. 24037008
**FORSHEY & PROSTOK LLP**
777 Main St., Suite 1290
Ft. Worth, TX 76102
Telephone: (817) 877-8855
Facsimile: (817) 877-4151
jprostok@forsheyprostok.com
bforshey@forsheyprostok.com
srosen@forsheyprostok.com
mmaben@forsheyprostok.com

**COUNSEL FOR ROBIN PHELAN,
CHAPTER 11 TRUSTEE**

Rakhee V. Patel – State Bar No. 00797213
Phillip Lamberson – State Bar No. 00794134
Joe Wielebinski – State Bar No. 21432400
Annmarie Chiarello – State Bar No. 24097496
**WINSTEAD PC**
500 Winstead Building
2728 N. Harwood Street
Dallas, Texas 75201
Telephone: (214) 745-5400
Facsimile:  (214) 745-5390
rpatel@winstead.com
plamberson@winstead.com
jwielebinski@winstead.com
achiarello@winstead.com

**SPECIAL COUNSEL FOR ROBIN PHELAN,
CHAPTER 11 TRUSTEE**

DATED:      October 25, 2018
                 Dallas, Texas

## ARTICLE I.
## DEFINITIONS

A.     <u>Defined Terms</u>. In addition to such other terms as are defined in other sections of the Plan, the following terms shall have the meanings set forth below (such meanings to be equally applicable to both the singular and plural, masculine and feminine forms of the terms defined).

1.01.    "<u>Acis CLOs</u>" refers collectively to CLO-3, CLO-4, CLO-5, and CLO-6.

1.02.    "<u>Acis GP</u>" means Acis Capital Management, GP, LLC, one of the Debtors in the above-referenced Chapter 11 Cases.

1.03.    "<u>Acis LP</u>" means Acis Capital Management, LP, one of the Debtors in the above-referenced Chapter 11 Cases.

1.04.    "<u>Administrative Bar Date</u>" means the deadline to file Claims for Allowance as an Administrative Expense set forth in section 3.01(c) of the Plan.

1.05.    "<u>Administrative Expense</u>" means any cost or expense of administration of the Chapter 11 Cases allowed under subsections 503(b) and 507(a)(1) of the Bankruptcy Code, including, without limitation, any actual and necessary expenses of preserving the Estate of the Debtors, any actual and necessary expenses of operating the business of the Debtors, all compensation or reimbursement of expenses to the extent allowed by the Bankruptcy Court under section 330 or 503 of the Bankruptcy Code, and any fees or charges assessed against the estates of the Debtors under section 1930, chapter 123 of title 28 of the United States Code.

1.06.    "<u>Affiliate</u>" has the meaning ascribed to such term in section 101(2) of the Bankruptcy Code.

1.07.    "<u>ALF PMA</u>" means that certain Portfolio Management Agreement by and between Acis LP and Acis Loan Funding, Ltd. dated December 22, 2016.

1.08.    "<u>Allowed</u>," when used with respect to a Claim (other than an Administrative Expense), means a Claim (a) to the extent it is not Contested; or (b) a Contested Claim, proof of which was filed timely with the Bankruptcy Court, and (i) as to which no Objection was filed by the Objection Deadline, or (ii) as to which an Objection was filed by the Objection Deadline, to the extent, if any, such Claim is ultimately allowed by a Final Order; *provided, however*, if a Claim is to be determined in a forum other than the Bankruptcy Court, such Claim shall not become Allowed until determined by Final Order of such other forum and allowed by Final Order of the Bankruptcy Court. "<u>Allowed</u>," when used with respect to an Administrative Expense, shall mean an Administrative Expense approved by application to the Bankruptcy Court.

1.09.    "<u>Assets</u>" includes all right, title, and interest in and to all property of every type or nature owned or claimed by the Debtors as of the Petition Date, together with all such property of every type or nature subsequently acquired by the Debtors through the Effective Date, whether real or personal, tangible or intangible, and wherever located, and including, but not limited to, property as defined in section 541 of the Bankruptcy Code.  Without limiting the foregoing, this shall include all

1.10.   "Available Cash" means any Cash over and above the amount needed for the Reorganized Debtor to maintain business operations and pursue the Estate Claims, as determined in the sole discretion of the Reorganized Debtor.

1.11.   "Avoidance Action" means a cause of action assertable by the Debtors pursuant to Chapter 5 of the Bankruptcy Code, including without limitation, actions brought or which may be brought under sections 542, 543, 544, 545, 547, 548, 549, 550, or 553 of the Bankruptcy Code. Such causes of action may be asserted to recover, among other things, the transfers listed in the Debtors' respective Schedules, including in response to Question 3 of the statements of financial affairs.

1.12.   "Ballot" means the form of ballot provided to holders of Claims or Interests entitled to vote pursuant to Bankruptcy Rule 3017(d), by which each such holder may accept or reject the Plan.

1.13.   "Bankruptcy Code" means the Bankruptcy Reform Act of 1978, as amended and codified at Title 11 of the United States Code.

1.14.   "Bankruptcy Court" means the United States Bankruptcy Court for the Northern District of Texas, Dallas Division, or such other court having jurisdiction over all or any part of the Chapter 11 Cases.

1.15.   "Bankruptcy Rules" means the Federal Rules of Bankruptcy Procedure, as amended from time to time, as applicable to the Chapter 11 Cases, including applicable local rules of the Bankruptcy Court.

1.16.   "Brigade" means Brigade Capital Management, LP.

1.17.   "Business Day" means any day other than Saturday, Sunday, a legal holiday, or a day on which national banking institutions in Texas are authorized or obligated by law or executive order to close.

1.18.   "Cash" means legal tender of the United States of America, cash equivalents and other readily marketable securities or instruments, including, but not limited to, readily marketable direct obligations of the United States of America, certificates of deposit issued by banks or commercial paper.

1.19.   "Chapter 11 Cases" refers collectively to the Acis LP bankruptcy case, Case No. 18-30264-sgj11, and the Acis GP bankruptcy case, Case No. 18-30265-sgj11, which are being jointly administered under Case No. 18-30264-sgj11.

1.20.   "Chapter 11 Trustee" refers to Robin Phelan, the chapter 11 trustee for the Debtors.

1.21.   "Claim" means (a) a right to payment, whether or not such right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured (including potential and unmatured tort and contract claims), disputed, undisputed, legal, equitable, secured or unsecured, or (b) a right to an equitable remedy for breach of performance if such breach gives rise to a right of payment, whether or not such right to an equitable remedy is reduced to judgment, fixed, contingent, matured, unmatured (including potential and unmatured tort and contract claims), disputed, undisputed, secured or unsecured.

1.22. "<u>Claimant</u>" means the holder of a Claim.

1.23. "<u>Class</u>" means a class of Claims or Interests as described in the Plan.

1.24. "<u>CLO</u>" means collateralized loan obligations.

1.25. "<u>CLO-1</u>" means Acis CLO 2013-1 LTD.

1.26. "<u>CLO-1 Indenture</u>" means that certain Indenture, dated as of March 18, 2013, issued by CLO-1, as issuer, Acis CLO 2013-1 LLC, as co-Issuer and US Bank, as Indenture Trustee.

1.27. "<u>CLO-1 PMA</u>" means that certain Portfolio Management Agreement by and between Acis LP and CLO-1, dated March 18, 2013.

1.28. "<u>CLO-3</u>" means Acis CLO 2014-3 LTD.

1.29. "<u>CLO-3 Indenture</u>" means that certain Indenture, dated as of February 25, 2014, issued by CLO-3, as issuer, Acis CLO 2014-3 LLC, as co-Issuer and US Bank, as Indenture Trustee

1.30. "<u>CLO-3 PMA</u>" means that certain Portfolio Management Agreement by and between Acis LP and CLO-3, dated February 25, 2014.

1.31. "<u>CLO-4</u>" means Acis CLO 2014-4 LTD.

1.32. "<u>CLO-4 Indenture</u>" means that certain Indenture, dated as of June 5, 2014, issued by CLO-4, as issuer, Acis CLO 2014-4 LLC, as co-Issuer and US Bank, as Indenture Trustee.

1.33. "<u>CLO-4 PMA</u>" means that certain Portfolio Management Agreement by and between Acis LP and CLO-4, dated June 5, 2014.

1.34. "<u>CLO-5</u>" means Acis CLO 2014-5 LTD.

1.35. "<u>CLO-5 Indenture</u>" means that certain Indenture, dated as of November 18, 2014, issued by CLO-5, as issuer, Acis CLO 2014-5 LLC, as co-Issuer and US Bank, as Indenture Trustee.

1.36. "<u>CLO-5 PMA</u>" means that certain Portfolio Management Agreement by and between Acis LP and CLO-5, dated November 18, 2014.

1.37. "<u>CLO-6</u>" means Acis CLO 2015-6 LTD.

1.38. "<u>CLO-6 Indenture</u>" means that certain Indenture, dated as of April 16, 2015, issued by CLO-6, as issuer, Acis CLO 2015-6 LLC, as co-Issuer and US Bank, as Indenture Trustee.

1.39. "<u>CLO-6 PMA</u>" means that certain Portfolio Management Agreement by and between Acis LP and CLO-6, dated April 16, 2015.

1.40. "<u>CLO Holdco</u>" means CLO Holdco, Ltd.

1.41. "<u>Collateral</u>" means any Asset subject to a valid and enforceable Lien to secure payment of a Claim.

1.42. "<u>Confirmation Date</u>" means the date of entry of the Confirmation Order.

1.43. "<u>Confirmation Hearing</u>" means the hearing conducted by the Bankruptcy Court pursuant to section 1128 of the Bankruptcy Code and Bankruptcy Rule 3020(b) to consider confirmation of the Plan, as such hearing may be continued from time to time.

1.44. "<u>Confirmation Order</u>" means the order of the Bankruptcy Court confirming the Plan in accordance with the provisions of Chapter 11 of the Bankruptcy Code.

1.45. "<u>Contested</u>," when used with respect to a Claim, means a Claim against the Debtors that is listed in the Debtors' Schedules as disputed, contingent, or unliquidated; that is listed in the Debtors' Schedules as undisputed, liquidated, and not contingent and as to which a proof of Claim has been filed with the Bankruptcy Court, to the extent the proof of Claim amount exceeds the scheduled amount; that is not listed in the Debtors' Schedules, but as to which a proof of Claim has been filed with the Bankruptcy Court; or as to which an objection has been or may be timely filed and has not been denied by Final Order. To the extent an objection relates to the allowance of only a part of a Claim, such Claim shall be a Contested Claim only to the extent of the objection.

1.46. "<u>Creditor</u>" means a "creditor," as defined in section 101(10) of the Bankruptcy Code.

1.47. "<u>Cure Claim</u>" means the payment or other performance required to cure any existing default under an Executory Contract or Unexpired Lease.

1.48. "<u>Debtors</u>" means, collectively, Acis GP and Acis LP, the debtors in the above-captioned Chapter 11 Cases.

1.49. "<u>Disallowed</u>," when used with respect to all or any part of a Claim or Interest, means that portion of a Claim or Interest to which an objection or motion to disallow has been sustained by a Final Order.

1.50. "<u>Disclosure Statement</u>" means the Disclosure Statement filed with respect to the Plan, as it may be amended, modified, or supplemented from time to time.

1.51. "<u>Distribution</u>" means any payment or other disbursement of property pursuant to the Plan.

1.52. "<u>Effective Date</u>" means the first Business Day which is fourteen (14) days after the Confirmation Date if the Confirmation Order is not stayed or, if the Confirmation Order is stayed, the first Business Day following the lifting, dissolution, or removal of such stay which is at least fourteen (14) Business Days after the Confirmation Date, and upon which all conditions to the effectiveness of the Plan set forth in Article XIII below are satisfied.

1.53. "<u>Estate</u>" shall collectively refer to the bankruptcy estates of the Debtors in the Chapter 11 Cases.

1.54. "<u>Estate Accounts Receivable</u>" shall include all accounts receivable of the Estate, including from all sums payable to the Debtors on account of goods or services provided by the Debtors.

1.55.    "Estate Claims" shall include all claims and causes of action held by the Debtors' Estate, including, without limitation, the Estate Claims listed on the attached **Exhibit A** and all Avoidance Actions.

1.56.    ""Estate Defenses" means all defenses, affirmative defenses, counterclaims, or offsets by the Debtors' Estate against any Person, including but not limited to any Creditor.

1.57.    "Estate Insurance" means any insurance policy or interest in an insurance policy in which the Estate has an interest or rights.

1.58.    "Estate Professionals" means those Persons employed pursuant to an order of the Bankruptcy Court in accordance with sections 327, 328, and 1103 of the Bankruptcy Code or who are entitled to compensation or reimbursement pursuant to sections 503(b)(3)(D) or 506(b) of the Bankruptcy Code.

1.59.    "Executory Contract" means any executory contract which is subject to section 365 of the Bankruptcy Code and which is not an Unexpired Lease.

1.60.    "Final Order" means an order or judgment of the Bankruptcy Court or any other court or adjudicative body, as to which the time to appeal or seek rehearing or petition for certiorari shall have expired or which order or judgment shall no longer be subject to appeal, rehearing, or certiorari proceeding and with respect to which no appeal, motion for rehearing, or certiorari proceeding or stay shall then be pending.

1.61.    "General Unsecured Claim" means any Claim against the Debtors that is not an Administrative Expense, Priority Tax Claim, Priority Non-Tax Claim, Secured Tax Claim, Secured Claim, or Insider Claim, but includes any Rejection Claims pursuant to section 502(g) of the Bankruptcy Code.

1.62.    "Governmental Unit" means a "governmental unit" as such term is defined in section 101(27) of the Bankruptcy Code.

1.63.    "HCLOF" means Highland CLO Funding, Ltd.

1.64.    "Highland" means Highland Capital Management, L.P.

1.65.    "Highland Adversary" means Adversary Proceeding No. 18-03078-sgj.

1.66.    "Highland Claim" means all Claims asserted by Highland or any Affiliates of Highland against the Debtors, including any Claim resulting from the termination of the Sub-Advisory Agreement and Shared Services Agreement.

1.67.    "Highland CLOM" means Highland CLO Management, Ltd.

1.68.    "Highland HCF" means Highland HCF Advisors, Ltd.

1.69.    "Impaired" means, when used with reference to a Claim or Interest, a Claim or Interest that is impaired within the meaning of section 1124 of the Bankruptcy Code.

1.70.    "Indentures" refers collectively to the CLO-1 Indenture, the CLO-3 Indenture, the CLO-4 Indenture, the CLO-5 Indenture, and the CLO-6 Indenture.

1.71.    "<u>Indenture Trustee</u>" refers to US Bank solely in its capacity as Indenture Trustee under the CLO-1 Indenture, the CLO-3 Indenture, the CLO-4 Indenture, the CLO-5 Indenture and the CLO-6 Indenture, as applicable

1.72.    "<u>Initial Distribution Date</u>," when used with respect to any Contested Claim or Rejection Claim, shall mean the later of (i) the first Business Day at least thirty (30) days after the date on which any such Contested Claim or Rejection Claim becomes an Allowed Claim, or (ii) if the payment terms of Article IV of this Plan applicable to each such Claim specify a different date, then the date as calculated pursuant to the terms of Article IV of this Plan applicable to each such Claim.  The Initial Distribution Date shall be separately determined with respect to each Contested Claim or Rejection Claim based upon the date each such Claim becomes an Allowed Claim.

1.73.    "<u>Insider</u>" means a Person described in section 101(31) of the Bankruptcy Code.

1.74.    "<u>Insider Claim</u>" means any Claim asserted by Insiders of the Debtors, including but not limited to any Claim asserted by Highland or any Affiliate thereof, unless otherwise indicated in the Plan.

1.75.    "<u>Interests</u>" means any equity or stock ownership interest in the Debtors.

1.76.    "<u>Issuers and Co-Issuers</u>" means CLO-1, CLO-3, CLO-4, CLO-5, CLO-6, Acis CLO 2013-1, Acis CLO-2014-3, LLC, Acis CLO 2014-4, LLC, Acis CLO 2014-5, LLC, and Acis 2015-6, LLC.

1.77.    "<u>Lien</u>" means any mortgage, lien, charge, security interest, encumbrance, or other security device of any kind affecting any asset or property of the Debtors contemplated by section 101(37) of the Bankruptcy Code.

1.78.    "<u>Management Fees</u>" shall, when used in relation to any of the Acis CLOs, have the meaning set forth in the applicable Indenture.

1.79.    "<u>Neutra</u>" means Neutra, Ltd.

1.80.    "<u>Objection</u>" means (a) an objection to the allowance of a Claim interposed by any party entitled to do so within the applicable period of limitation fixed by the Plan, the Bankruptcy Code, the Bankruptcy Rules, or the Bankruptcy Court, and (b) as to any Taxing Authority, a proceeding commenced under section 505 of the Bankruptcy Code to determine the legality or amount of any tax.

1.81.    "<u>Objection Deadline</u>" shall mean the later of (a) ninety (90) days following the Effective Date, unless otherwise extended by order of the Bankruptcy Court, or (b) as to any Rejection Claim filed after the Effective Date, ninety (90) days after the date on which the proof of Claim reflecting the Rejection Claim is filed.

1.82.    "<u>Optional Redemption</u>" shall, when used in relation to any of the Acis CLOs, have the meaning set forth in the applicable Indenture.

1.83.    "<u>Person</u>" means any individual, corporation, general partnership, limited partnership, association, joint stock company, joint venture, estate, trust, unincorporated organization, government, or any political subdivision thereof or other entity.

1.84.   "<u>Petition Date</u>" means January 30, 2018.

1.85.   "<u>Plan</u>" means this Third Amended Joint Chapter 11 plan, either in its present form or as it may be altered, amended, or modified from time to time.

1.86.   "<u>Plan Documents</u>" means the documents that aid in effectuating the Plan as specifically identified as such herein and filed with the Bankruptcy Court.

1.87.   "<u>Plan Rate</u>" means a rate of interest of five percent (5%) per annum.

1.88.   "<u>PMAs</u>" refers collectively to the CLO-1 PMA, CLO-3 PMA, CLO-4 PMA, CLO-5 PMA, and CLO-6 PMA.

1.89.   "<u>Priority Claim</u>" means a Claim (other than a Claim for an Administrative Expense) to the extent that it is entitled to priority in payment under section 507(a) of the Bankruptcy Code.

1.90.   "<u>Priority Non-Tax Claim</u>" means a Priority Claim other than a Priority Tax Claim.

1.91.   "<u>Priority Tax Claim</u>" means a Claim of a Governmental Unit of the kind specified in subsection 507(a)(8) of the Bankruptcy Code.

1.92.   "<u>Professional</u>" means those persons retained pursuant to an order of the Bankruptcy Court in accordance with sections 327 and 1103 of the Bankruptcy Code.

1.93.   "<u>Pro Rata Distribution</u>" means an optional Distribution made in accordance with section 4.03(c), 4.04(e), or 4.04(i) of the Plan.  Each Creditor entitled to receive a portion of a Pro Rata Distribution shall receive such Creditor's Pro Rata Share of such Distribution.

1.94.   "<u>Pro Rata Share</u>' means, as to the holder of a specific Claim, the ratio that the amount of such holder's Claim bears to the aggregate amount of all Claims included in the particular Class or category in which such holder's Claim is included.

1.95.   "<u>Refinancing Proceeds</u>" shall, when used in relation to any of the Acis CLOs, have the meaning set forth in the applicable Indenture.

1.96.   "<u>Rejection Claim</u>" means a Claim arising under section 502(g) of the Bankruptcy Code as a consequence of the rejection of any Executory Contract or Unexpired Lease.

1.97.   "<u>Reorganized Debtor</u>" refers collectively to the Debtors, as reorganized, acting from and after the Effective Date if the Plan is confirmed based on the terms and provisions herein.

1.98.   "<u>Reserve</u>" or "<u>Reserves</u>" means any reserves set aside by the Reorganized Debtor pursuant to this Plan, including reserves set aside to fund any Distributions, make payments pursuant to the Plan, or pursue the Estate Claims.

1.99.   "<u>Schedules</u>" means the schedules of assets and liabilities and the statements of financial affairs filed by the Debtors as required by section 521 of the Bankruptcy Code and Bankruptcy Rule 1007, as such schedules or statements have been or may be subsequently amended.

1.100.   "<u>Secured Claim</u>" means (a) a Claim secured by a lien on any Assets, which lien is valid, perfected, and enforceable under applicable law and is not subject to avoidance under the Bankruptcy Code or applicable nonbankruptcy law, and which is duly Allowed, but only to the

extent of the value of the holder's interest in the Collateral that secures payment of the Claim; (b) a Claim against the Debtors that is subject to a valid right of recoupment or setoff under section 553 of the Bankruptcy Code, but only to the extent of the Allowed amount subject to recoupment or setoff as provided in section 506(a) of the Bankruptcy Code; and (c) a Claim deemed or treated under the Plan as a Secured Claim; provided, that, to the extent that the value of such interest is less than the amount of the Claim which has the benefit of such security, the unsecured portion of such Claim shall be treated as a General Unsecured Claim unless, in any such case the Class of which the Claim is a part makes a valid and timely election in accordance with section 1111(b) of the Bankruptcy Code to have such Claim treated as a Secured Claim to the extent Allowed.

1.101. "Secured Tax Claim" means any ad valorem tax Claim that arises or is deemed to have arisen on or before the Petition Date, irrespective of the date on which such Claim is assessed or due.

1.102. "Shared Services Agreement" means that certain Fourth Amended and Restated Shared Services Agreement by and between Acis LP and Highland dated March 17, 2017.

1.103. "Sub-Advisory Agreement" means that certain Third Amended and Restated Sub-Advisory Agreement by and between Acis LP and Highland dated March 17, 2017

1.104. "Subordinated Notes" means the subordinated notes in the Acis CLOs held by HCLOF, and expressly does not include any subordinated notes in the Acis CLOs held by any other party.

1.105. "Substantial Consummation" means the day on which a Creditor first receives a Distribution of any kind under the terms and provisions of the Plan.

1.106. "Taxing Authority" shall include the State of Texas or any subdivision thereof, including without limitation any political subdivision of the State of Texas assessing ad valorem taxes against any of the Assets.

1.107. "Terry" means Joshua N. Terry.

1.108. "Terry Partially Secured Claim" means any Claim asserted against the Debtors by Terry, including as asserted in Proof of Claim No. 1 in both Chapter 11 Cases and Proof of Claim No. 26 against Acis LP.

1.109. "Unclaimed Property" means any cash, Distribution, or any other property of the Debtors unclaimed for a period of one (1) year after the applicable Initial Distribution Date.

1.110. "Unexpired Lease" means any unexpired lease or agreement which is subject to section 365 of the Bankruptcy Code and which is not an Executory Contract.

1.111. "US Bank" means U.S. Bank National Association.

1.112. "Other Acis-Managed Funds" refers collectively to CLO-1, Acis CLO 2013-2, Ltd., Hewitt's Island CLO 1-R, Ltd, and BayVK R2 Lux S.A., SICAV-FIS.

B.  Interpretation. Unless otherwise specified, all section, article and exhibit references in the Plan are to the respective section in, article of, or exhibit to, the Plan, as the

same may be amended, waived, or modified from time to time. The headings in the Plan are for convenience and reference only and shall not limit or otherwise affect the provisions hereof. The rules of construction set forth in section 102 of the Bankruptcy Code, other than section 102(5) of the Bankruptcy Code, apply to construction of the Plan. For the purposes of construction of the Plan, "or" is disjunctive.

      C.   <u>Other Terms</u>. The words "herein," "hereof," "hereto," "hereunder," and others of similar import refer to the Plan as a whole and not to any particular section, subsection, or clause contained in the Plan. References herein to "after notice and hearing" or other similar language shall have the same meaning as in section 102(1) of the Bankruptcy Code. Otherwise, a term used herein that is not specifically defined herein shall have the meaning ascribed to that term, if any, in the Bankruptcy Code.

      D.   <u>Exhibits and Plan Documents</u>. All Exhibits to the Plan and all Plan Documents are incorporated into the Plan by this reference and are a part of the Plan as if set forth in full herein. Any Plan Documents may be filed with the Clerk of the Bankruptcy Court prior to the commencement of the Confirmation Hearing. Holders of Claims and Interests may obtain a copy of the Plan Documents, once filed, by a written request sent to the following address: Forshey & Prostok, LLP, 777 Main Street, Suite 1290, Fort Worth, Texas 76102, Attention: Linda Breedlove; Fax number (817) 877-4151; email: lbreedlove@forsheyprostok.com.

## ARTICLE II.
## <u>CLASSIFICATION OF CLAIMS AND INTERESTS</u>

2.01.   The following is a designation of the Classes of Claims and Interests under the Plan. Administrative Expenses, Priority Claims of the kinds specified in sections 507(a)(2) and 507(a)(3) of the Bankruptcy Code and Priority Tax Claims have not been classified, are excluded from the following Classes in accordance with section 1123(a)(1) of the Bankruptcy Code, and their treatment is set forth in Article III of the Plan.  A Claim shall be deemed classified in a particular Class only to the extent that the Claim qualifies within the description of that Class.  A Claim is included in a particular Class only to the extent that the Claim is an Allowed Claim in that Class.

         Class 1 – Secured Tax Claims
         Class 2 – Terry Partially Secured Claim
         Class 3 – General Unsecured Claims
         Class 4 – Insider Claims
         Class 5 – Interests

2.02.  <u>Impaired Classes of Claims and Interests</u>.  Class 1 is unimpaired.  Classes 2 through 5 are Impaired.

2.03.  <u>Impairment or Classification Controversies</u>. If a controversy arises as to the classification of any Claim or Interest, or as to whether any Class of Claims or Interests is Impaired under the Plan, the Bankruptcy Court shall determine such controversy as a part of the confirmation process.

## ARTICLE III.
## <u>TREATMENT OF UNCLASSIFIED CLAIMS</u>

3.01.  <u>Administrative Expenses</u>

(a)    The Reorganized Debtor shall pay, in accordance with the ordinary business terms applicable to each such expense or cost, the reasonable and ordinary expenses incurred in operating the Debtors' businesses or administering the Estate before the Effective Date ("Ordinary Course Claims").  The remaining provisions of this section 3.01 shall not apply to the Ordinary Course Claims, except that if there is a dispute relating to any such Ordinary Course Claim, the Reorganized Debtor may move the Bankruptcy Court to apply the provisions of Article III below relating to Contested Claims and require the holder of the Contested Ordinary Course Claim to assert such Claim through the Chapter 11 Cases.

(b)    Each holder of an Allowed Administrative Expense (other than Ordinary Course Claims and Administrative Expense Claims by Estate Professionals), shall receive (i) the amount of such holder's Allowed Administrative Expense in one Cash payment on the later of the Effective Date or the tenth (10th) Business Day after such Administrative Expense becomes an Allowed Administrative Expense, or (ii) such other treatment as may be agreed to in writing by such Administrative Expense Creditor and the Reorganized Debtor, or as otherwise ordered by the Bankruptcy Court.

(c)    Unless the Bankruptcy Court orders to the contrary or the Reorganized Debtor agrees to the contrary in writing, the holder of a Claim for an Administrative Expense, other than such a Claim by an Estate Professional, an Ordinary Course Claim, or an Administrative Expense which is already Allowed, shall file with the Bankruptcy Court and serve upon the Reorganized Debtor and its counsel a written notice of such Claim for an Administrative Expense within thirty (30) days after the Effective Date.  This deadline is the "Administrative Bar Date."  Such notice shall include at a minimum: (i) the name, address, telephone number and fax number (if applicable) or email address of the holder of such Claim, (ii) the amount of such Claim, and (iii) the basis of such Claim.  **Failure to timely and properly file and serve such notice by the Administrative Bar Date shall result in such Claim for an Administrative Expense being forever barred and discharged and the holder thereof shall be barred from receiving any Distribution from the Reorganized Debtor on account of such Claim for an Administrative Expense**.

(d)    A Claim for an Administrative Expense, for which a proper notice was filed and served under subsection 3.01(c) above, shall become an Allowed Administrative Expense if no Objection is filed within thirty (30) days of the filing and service of such notice.  If a timely Objection is filed, the Claim shall become an Allowed Administrative Expense only to the extent allowed by a Final Order.

(e)    The procedures contained in subsections 3.01(a), (c) and (d) above shall not apply to Administrative Expense Claims asserted by Estate Professionals, who shall each file and submit an appropriate final fee application to the Bankruptcy Court no later than sixty (60) days after the Effective Date.  A Claim for an Administrative Expense by an Estate Professional in respect of which a final fee application has been properly filed and served shall become an Allowed Administrative Expense only to the extent Allowed by order of the Bankruptcy Court and, if so Allowed, shall be paid in accordance with subsection 3.01(b) above.  Professional fees and expenses to any Estate Professional incurred on or after the Effective Date may be paid by the Reorganized Debtor without necessity of application to or order by the Bankruptcy Court.

(f)    If the Reorganized Debtor asserts any Estate Claims as counterclaims or defenses to a Claim for Administrative Expense, the Administrative Expense Claim shall be determined through an adversary proceeding before the Bankruptcy Court.  The Bankruptcy

11

Court shall have exclusive jurisdiction to adjudicate and Allow all Claims for any Administrative Expense.

3.02.   Priority Non-Tax Claims.  Each holder of an Allowed Priority Non-Tax Claim shall receive (i) the amount of such holder's Allowed Priority Non-Tax Payment in one Cash payment on the later of the Effective Date or the tenth (10th) Business Day after such Priority Non-Tax Claim becomes an Allowed Priority Non-Tax Claim and a determination has been made that such Allowed Priority Non-Tax Claim is not subject to equitable subordination under section 510(c) of the Bankruptcy Code, or (ii) such other treatment as may be agreed to in writing by such Administrative Expense Creditor and the Reorganized Debtor, or as otherwise ordered by the Bankruptcy Court.

3.03.   Priority Tax Claims. Each holder of an Allowed Priority Tax Claim shall receive (a) one Cash payment in an amount equal to the principal amount of such Allowed Priority Tax Claim, plus interest at the rate and in the manner prescribed by applicable state law from the later of the Petition Date or the first day after the last day on which such Priority Tax Claim may be paid without penalty, no later than sixty (60) days after each such Claim becomes an Allowed Claim, or (b) such other treatment as may be agreed to in writing by the holder of the Priority Tax Claim and the Reorganized Debtor.

3.04.   U.S. Trustee's Fees. The Reorganized Debtor shall pay the U.S. Trustee's quarterly fees incurred pursuant to 28 U.S.C. § 1930(a)(6) which are due as of the Confirmation Date in full on the Effective Date or as soon thereafter as is practicable.  After the Confirmation Date, the Reorganized Debtor shall continue to pay quarterly fees as they accrue until a final decree is entered and the Chapter 11 Cases are closed.  The Reorganized Debtor shall file with the Bankruptcy Court and serve on the U.S. Trustee quarterly financial reports for each quarter, or portion thereof, that the Chapter 11 Cases remain open.

## ARTICLE IV.
## TREATMENT OF CLASSIFIED CLAIMS AND INTERESTS

4.01.   Class 1 – Secured Tax Claims. Each holder of an Allowed Secured Tax Claim shall receive (a) one Cash payment in an amount equal to the principal amount of such Allowed Secured Tax Claim, plus interest at the rate and in the manner prescribed by applicable state law from the later of the Petition Date or the first day after the last day on which such Secured Tax Claim may be paid without penalty, on the Initial Distribution Date, or (b) such other treatment as may be agreed to in writing by the holder of the Secured Tax Claim and the Reorganized Debtor.  The Liens securing such Secured Tax Claims shall remain unimpaired and unaffected until each such Class 1 Claim is paid in full.  All Distributions on account of Allowed Class 1 Claims shall be made by the Reorganized Debtor.  Class 1 is unimpaired. Holders of Class 1 Claims are conclusively presumed to have accepted the Plan and, accordingly, are not entitled to vote on the Plan.

4.02.   Class 2 – Terry Partially Secured Claim.  In exchange for a one million dollar ($1,000,000.00) reduction in the amount of the Terry Partially Secured Claim, Terry shall receive one hundred percent (100%) of the equity interests in the Reorganized Debtor as of the Effective Date.  The remaining balance of any Allowed Terry Partially Secured Claim shall be treated and paid as a Class 3 General Unsecured Claim.  Class 2 is Impaired.  The Holder of the Class 2 Terry Partially Secured Claim is entitled to vote on the Plan.

4.03.   Class 3 – General Unsecured Claims.

(a)     Each holder of an Allowed General Unsecured Claim shall receive a promissory note issued by the Reorganized Debtor (each an "Unsecured Cash Flow Note") on the later of (a) that date that is as soon as practicable after the Effective Date, or (b) that date that is as soon as practicable after such holder's General Unsecured Claim becomes an Allowed Class 3 Claim.  Each Unsecured Cash Flow Note shall be dated as of the Effective Date, bear interest at the Plan Rate and shall mature on that date that is the three (3) years after the Effective Date.

(b)     To the extent of Available Cash, the Reorganized Debtor shall make substantially equal quarterly Distributions of principal and accrued interest to each holder of an Unsecured Cash Flow Note, with the first such quarterly Distribution being due and payable on the 180th day after the Effective Date.  Thereafter, like Distributions shall be made each quarter by the Reorganized Debtor until the Unsecured Cash Flow Note is paid in full.  Notwithstanding the foregoing, in the event that an Unsecured Cash Flow Note is first issued more than one hundred eighty (180) days after the Effective Date, the first Distribution made on account of such Unsecured Cash Flow Note shall be made upon the date that the next Distribution would otherwise be due, but such first Distribution shall also include amounts that would have been distributed to the holder of such Unsecured Cash Flow Note had such Unsecured Cash Flow Note been issued prior to ninety (90) days after the Effective Date, such that the first Distribution shall bring all payments current on account of such Unsecured Cash Flow Note.  If on any date on which a quarterly Distribution is due to the holder of an Unsecured Cash Flow Note the remaining principal and accrued interest owing on account of such Unsecured Cash Flow Note is less than the regular quarterly Distribution amount, the Reorganized Debtor shall make a Distribution to the holder of such Unsecured Cash Flow Note in an amount sufficient to fully satisfy the remaining principal and accrued interest owed, but no more.  Nothing contained herein shall preclude the Reorganized Debtor from prepaying any Unsecured Cash Flow Note.

(c)     If the Reorganized Debtor obtains additional Cash, through litigation recoveries or otherwise, and the Reorganized Debtor determines, in its sole discretion, that the Reorganized Debtor holds Available Cash sufficient to allow one or more Pro Rata Distributions to be made to holders of Allowed Class 3 Claims and Allowed Subclass 4A Claims, the Reorganized Debtor may, but shall not be required to, make one or more Pro Rata Distributions to holders of Allowed Class 3 Claims and Allowed Subclass 4A Claims.  The amount of the Pro Rata Distribution made to each such holder shall be determined as if Class 3 and Subclass 4A constituted a single Class.  Any such additional Distributions shall be applied to reduce the outstanding balance of each holder's Unsecured Cash Flow Note.

(d)     Class 3 is Impaired.  Holders of Class 3 Claims are entitled to vote on the Plan.

4.04.   Class 4 – Insider Claims.  Holders of Class 4 Insider Claims shall be treated as follows:

(a)     Class 4 Claims shall be divided into two (2) subclasses.  Subclass 4A shall consist of all Allowed Class 4 claims which are not subject to equitable subordination.  Subclass 4B shall consist of all Class 4 claims which are determined by the Bankruptcy Court to be subject to equitable subordination.  If only a part of a Class 4 Claim is subject to equitable subordination, then the portion of such claim subject to equitable subordination shall be included in Subclass 4B and the remainder not subject to equitable subordination shall be included in Subclass 4A.  Subclass 4A and Subclass 4B will vote separately on the Plan, although Subclass 4B is currently an empty class.

(b)      All Class 4 Claims (regardless of which subclass) shall be and remain subject to all Estate Defenses and all Estate Claims, including any rights of offset, recoupment, and/or to an affirmative recovery against the Holder of any Class 4 Claim.

(c)      Each holder of an Allowed Subclass 4A Claim shall receive an Unsecured Cash Flow Note on the later of (a) that date that is as soon as practicable after the Effective Date, or (b) that date that is as soon as practicable after such holder's Subclass 4A Claim becomes an Allowed Subclass 4A Claim.  Each Unsecured Cash Flow Note shall be dated as of the Effective Date, bear interest at the Plan Rate and shall mature on that date that is the three (3) years after the Effective Date.

(d)      To the extent of Available Cash, the Reorganized Debtor shall make substantially equal quarterly Distributions of principal and accrued interest to each holder of an Unsecured Cash Flow Note, with the first such quarterly Distribution being due and payable on the 180th day after the Effective Date.  Thereafter, like Distributions shall be made each quarter by the Reorganized Debtor until the Unsecured Cash Flow Note is paid in full.  Notwithstanding the foregoing, in the event that an Unsecured Cash Flow Note is first issued more than one hundred eighty (180) days after the Effective Date, the first Distribution made on account of such Unsecured Cash Flow Note shall be made upon the date that the next Distribution would otherwise be due, but such first Distribution shall also include amounts that would have been distributed to the holder of such Unsecured Cash Flow Note had such Unsecured Cash Flow Note been issued prior to ninety (90) days after the Effective Date, such that the first Distribution shall bring all payments current on account of such Unsecured Cash Flow Note.  If on any date on which a quarterly Distribution is due to the holder of an Unsecured Cash Flow Note the remaining principal and accrued interest owing on account of such Unsecured Cash Flow Note is less than the regular quarterly Distribution amount, the Reorganized Debtor shall make a Distribution to the holder of such Unsecured Cash Flow Note in an amount sufficient to fully satisfy the remaining principal and accrued interest owed, but no more.  Nothing contained herein shall preclude the Reorganized Debtor from prepaying any Unsecured Cash Flow Note.

(e)      If the Reorganized Debtor obtains additional Cash, through litigation recoveries or otherwise, and the Reorganized Debtor determines, in its sole discretion, that the Reorganized Debtor holds Available Cash sufficient to allow one or more Pro Rata Distributions to be made to holders of Allowed Class 3 Claims and Allowed Subclass 4A Claims, the Reorganized Debtor may, but shall not be required to, make one or more Pro Rata Distributions to holders of Allowed Class 3 Claims and Allowed Subclass 4A Claims.  The amount of the Pro Rata Distribution made to each such holder shall be determined as if Class 3 and Subclass 4A constituted a single Class.  Any such additional Distributions shall be applied to reduce the outstanding balance of each holder's Unsecured Cash Flow Note.

(f)      Unless otherwise provided by Order of the Bankruptcy Court, holders of Allowed Subclass 4B claims shall not be entitled to any Distribution from the Reorganized Debtor until all Allowed Claims included in Classes 1 through 3 and Subclass 4A, including all Unsecured Cash Flow Notes, have been paid in full.

(g)      Holders of Allowed Subclass 4B Claims shall receive a subordinated promissory note issued by the Reorganized Debtor ("Subordinated Unsecured Cash Flow Note") on the later of (a) that date that is as soon as practicable after the Effective Date, or (b) that date that is as soon as practicable after such holder's Subclass 4A Claim becomes an Allowed Subclass 4A Claim.  Each Subordinated Unsecured Cash Flow Note shall be dated as of the Effective Date, bear interest at the Plan Rate and shall mature on the earlier to occur of (i) the date that is two

(2) years after the date all Unsecured Cash Flow Notes have been paid in full, or (ii) five (5) years after the Effective Date.

(h)     To the extent of Available Cash, the Reorganized Debtor shall make substantially equal quarterly Distributions of principal and accrued interest to each holder of a Subordinated Unsecured Cash Flow Note, with the first such quarterly Distribution being due and payable on the 90th day after the payment in full of the Unsecured Cash Flow Notes.  Thereafter, like Distributions shall be made each quarter by the Reorganized Debtor until the Subordinated Unsecured Cash Flow Note is paid in full.  Notwithstanding the foregoing, in the event that a Subordinated Unsecured Cash Flow Note is first issued after payments have been made on one or more other Subordinated Unsecured Cash Flow Notes, the first Distribution made on account of such Subordinated Unsecured Cash Flow Note shall be made upon the date that the next Distribution would otherwise be due, but such first Distribution shall also include amounts that would have been distributed to the holder of such Subordinated Unsecured Cash Flow Note had such Subordinated Unsecured Cash Flow Note been issued at the time the first payment on any Subordinated Unsecured Cash Flow Note was made, such that the first Distribution shall bring all payments current on account of such Subordinated Unsecured Cash Flow Note.  If on any date on which a quarterly Distribution is due to the holder of a Subordinated Unsecured Cash Flow Note the remaining principal and accrued interest owing on account of such Subordinated Unsecured Cash Flow Note is less than the regular quarterly Distribution amount, the Reorganized Debtor shall make a Distribution to the holder of such Subordinated Unsecured Cash Flow Note in an amount sufficient to fully satisfy the remaining principal and accrued interest owed, but no more.  Nothing contained herein shall preclude the Reorganized Debtor from prepaying any Subordinated Unsecured Cash Flow Note.

(i)     Subject to section 4.04(f) above, if the Reorganized Debtor obtains additional Cash, through litigation recoveries or otherwise, and the Reorganized Debtor determines, in its sole discretion, that the Reorganized Debtor holds Available Cash sufficient to allow one or more Pro Rata Distributions to be made to holders of Allowed Subclass 4B Claims, the Reorganized Debtor may, but shall not be required to, make one or more Pro Rata Distributions to holders of Allowed Subclass 4B Claims.  Any such additional Distributions shall be applied to reduce the outstanding balance of each holder's Subordinated Unsecured Cash Flow Note.

(j)     The Reorganized Debtor may establish appropriate Reserves as to any Contested Claim included in Class 4.

(k)     Class 4 is Impaired.  Holders of Class 4 Claims are entitled to vote on the Plan.

4.05.   Class 5 – Interests.  All Interests in the Debtors shall be extinguished and shall cease to exist as of the Effective Date. The holders of such Interests shall not receive or retain any property on account of such Interests under the Plan.  Class 5 is Impaired.  Holders of Class 5 Interests are conclusively presumed to have rejected the Plan and, accordingly, are not entitled to vote on the Plan.

## ARTICLE V.
## ACCEPTANCE OR REJECTION OF THE PLAN

5.01.   Classes Entitled to Vote.  Creditors in Classes 2 through 4 are entitled to vote and shall vote separately to accept or reject the Plan.  Any unimpaired Class shall not be entitled to vote to accept or reject the Plan.  Any unimpaired Class is deemed to have accepted the Plan under section 1126(f) of the Bankruptcy Code.

5.02.   Class Acceptance Requirement. A Class of Claims shall have accepted the Plan if it is accepted by at least two-thirds (2/3) in amount and more than one-half (1/2) in number of the Allowed Claims in such Class that have voted on the Plan.

5.03.   Cramdown. This section shall constitute the request by the Plan proponent, pursuant to section 1129(b) of the Bankruptcy Code, that the Bankruptcy Court confirm the Plan notwithstanding the fact that the requirements of section 1129(a)(8) of the Bankruptcy Code have not been met.

**ARTICLE VI.**
**MEANS FOR IMPLEMENTATION OF THE PLAN**

6.01.   Vesting of Assets. As of the Effective Date, pursuant to sections 1141(b) and (c) of the Bankruptcy Code, all Assets, including the PMAs, all Cash, Estate Accounts Receivable, Estate Insurance, Estate Claims and Estate Defenses, shall be transferred from the Estate to, and vested in, the Reorganized Debtor, free and clear of all rights, title, interests, claims, liens, encumbrances and charges, except as expressly set forth in the Plan.  On and after the Effective Date, the Reorganized Debtor may operate its business and may use, acquire or dispose of property without supervision or approval by the Bankruptcy Court and free of any restrictions of the Bankruptcy Code or Bankruptcy Rules, other than those restrictions expressly imposed by the Plan or the Confirmation Order.  Without limiting the foregoing, the Reorganized Debtor may pay the charges that it incurs on or after the Effective Date for all fees, disbursements, expenses or related support services of Professionals (including fees relating to the preparation of professional fee applications) without application to, or approval of, the Bankruptcy Court.

6.02.   Continued Existence of the Debtors.  The Debtors shall continue to exist after the Effective Date, with all the powers available to such legal entities, in accordance with applicable law and pursuant to their constituent documents.  On or after the Effective Date, each Reorganized Debtor may, within its sole and exclusive discretion, take such action as permitted by applicable law and its constituent documents as it determines is reasonable and appropriate.

6.03.   Retention and Assertion of Causes of Action and Defenses.

(a)     Except as expressly set forth in this Plan, all causes of action, claims, counterclaims, defenses and rights of offset or recoupment (including but not limited to all Estate Claims, Estate Defenses and Avoidance Actions) belonging to the Debtors (collectively, the "Retained Causes of Action") shall, upon the occurrence of the Effective Date, be reserved, retained and preserved for, and transferred to, received by and vested, in the Reorganized Debtor for the benefit of the Debtors and the Debtors' estates.  Without limitation, the Retained Causes of Action include the claims and causes of action described on **Exhibit A** attached hereto.

(b)     Except as expressly set forth in this Plan, the rights of the Reorganized Debtor to commence, prosecute or settle the Retained Causes of Action shall be retained, reserved, and preserved notwithstanding the occurrence of the Effective Date. **No Person may rely on the absence of a specific reference in the Plan or the Disclosure Statement to any cause of action against them as any indication that the Debtors or the Reorganized Debtor will not pursue any and all available causes of action (including all Estate Claims, Estate Defenses and Avoidance Actions) against them. The Debtors and their Estate expressly reserve all rights to prosecute any and all of the Retained Causes of Action (including all**

16

**Estate Claims, Estate Defenses and Avoidance Actions) against any Person, <u>except</u> as otherwise provided in this Plan**. Unless any causes of action against a Person are expressly waived, relinquished, exculpated, released, compromised or settled in this Plan or a Final Order, the Debtors expressly reserve all causes of action (including all Estate Claims, Estate Defenses and Avoidance Actions) for later adjudication, and, therefore, no preclusion doctrine, <u>including</u> without limitation, the doctrines of res judicata, collateral estoppel, issue preclusion, claim preclusion, estoppel (judicial, equitable or otherwise) or laches, shall apply to such causes of action upon or after the confirmation or consummation of the Plan. The Debtors and the Reorganized Debtor may also assert Estate Defenses as a defense to the allowance of any Claim not otherwise Allowed.

6.04.    <u>Assumption of Obligations to Make Distributions</u>.  The Reorganized Debtor shall be deemed to have assumed the obligations to make all Distributions pursuant to this Plan.

6.05.    <u>Actions by the Debtors and the Reorganized Debtor to Implement Plan</u>.  The entry of the Confirmation Order shall constitute all necessary authorization for the Debtors and the Reorganized Debtor to take or cause to be taken all actions necessary or appropriate to consummate, implement or perform all provisions of this Plan on and after the Effective Date, and all such actions taken or caused to be taken shall be deemed to have been authorized and approved by the Bankruptcy Court without further approval, act or action under any applicable law, order, rule or regulation, including without limitation, (a) all transfers of Assets, including to the Reorganized Debtor, that are to occur pursuant to the Plan; (b) the cancellation of Interests and issuance of 100% of the equity interests in the Reorganized Debtor to Terry; (c) the performance of the terms of the Plan and the making of all Distributions required under the Plan; and (d) subject to the terms of the Plan, entering into any and all transactions, contracts, or arrangements permitted by applicable law, order, rule or regulation.

6.06.    <u>Termination of Highland as Shared Services Provider and Sub-Advisor</u>.  The Bankruptcy Court authorized the Chapter 11 Trustee to terminate the Shared Services Agreement and Sub-Advisory Agreement and engage Brigade to perform the services previously provided by Highland.  The Shared Services Agreement and Sub-Advisory Agreement were terminated by the Chapter 11 Trustee on or about August 1, 2018, and the services previously performed by Highland were transitioned to Brigade on an interim basis.  Brigade has agreed to continue to provide shared services and sub-advisory services to the Reorganized Debtor with respect to the Acis CLOs and the Other Acis-Managed Funds (and any reset Acis CLOs) subject to a minimum two (2) year term unless otherwise agreed as between the Reorganized Debtor and Brigade.  Consequently, any agreement between the Reorganized Debtor and Brigade shall provide that Brigade cannot be removed without cause for a period of two (2) years except as may be otherwise agreed as between the Reorganized Debtor and Brigade.

6.07.    <u>Continued Portfolio Management by the Reorganized Debtor</u>.  The PMAs and any other Executory Contracts and Unexpired Leases identified on Exhibit B to the Plan or in the Confirmation Order shall be assumed and the Reorganized Debtor shall, from an after the Effective Date, serve as the portfolio manager with respect to the Acis CLOs and the Other Acis-Managed Funds (and any reset Acis CLOs).  Consistent with Section 15 of the PMAs, the Reorganized Debtor may only be removed as portfolio manager under the assumed PMAs for cause as set forth in the PMAs.

6.08.    <u>Reset of the Acis CLOs</u>.  HCLOF has maintained that it desires to reset the Acis CLOs. The Reorganized Debtor, with the assistance of Brigade as its shared services provider and sub-advisor, is prepared to promptly seek to perform such reset transactions as set forth herein.

17

HCLOF shall have the right to submit one or more notice(s) of Optional Redemption solely for the purpose of effectuating a reset of one or more of the Acis CLOs under this section 6.08 of the Plan utilizing Refinancing Proceeds (a "Reset Optional Redemption") for each of the Acis CLOs. If HCLOF requests a Reset Optional Redemption of an Acis CLO, the Reorganized Debtor, with the assistance of Brigade, shall thereafter seek to reset the Acis CLOs, either consecutively or simultaneously, in its good faith business judgment and consistent with then-prevailing market terms; *provided, however*, (i) the Management Fees to be charged by the Reorganized Debtor to any reset Acis CLOs shall remain the same going forward and shall not be increased, and no transaction fee shall be charged by the Reorganized Debtor (other than, for avoidance of doubt, transaction expense reimbursements consistent with market standards), and (ii) HCLOF shall be granted a right of first refusal for any funding of debt or equity required to effectuate a reset of each of the Acis CLOs. The terms of the Indentures shall control any Reset Optional Redemption. If HCLOF elects not to reset one or more of the Acis CLOs, then the Acis CLOs will continue to be managed in accordance with market standards.

6.09. Post-Effective Date Service List. Pleadings filed by any party-in-interest with the Bankruptcy Court after the Effective Date shall be served on the following Persons (collectively the "Service List"): (a) any Person directly affected by the relief sought in the pleading, (b) the U.S. Trustee, (c) parties which have filed a Notice of Appearance in the Chapter 11 Cases, and (d) the Reorganized Debtor.

6.10. Section 505 Powers. All rights and powers pursuant to section 505 of the Bankruptcy Code are hereby reserved to the Estate and shall be transferred to, and vested in, the Reorganized Debtor as of the Effective Date.

6.11. Section 510(c) Powers. All rights and powers to seek or exercise any right or remedy of equitable subordination are hereby reserved to the Estate and shall be transferred to, and vested in, the Reorganized Debtor as of the Effective Date as an Estate Defense.

6.12. Section 506(c) Powers. The Estate hereby reserves all rights and powers pursuant to section 506(c) of the Bankruptcy Code, and all such rights shall be specifically transferred to, and vested in, the Reorganized Debtor.

6.13. Plan Injunction. The Reorganized Debtor shall each have full power, standing and authority to enforce the Plan Injunction against any Person, either through an action before the Bankruptcy Court or any other tribunal having appropriate jurisdiction.

6.14. Cancellation of Interests. Except as otherwise specifically provided herein, upon the Effective Date of the Plan: (a) all Interests in the Debtors shall be cancelled; and (b) all obligations or debts of, or Claims against, the Debtors on account of, or based upon, the Interests shall be deemed as cancelled, released and discharged, including all obligations or duties by the Debtors relating to the Interests in any of their respective formation documents, including Acis LP's limited partnership agreement and bylaws, Acis GP's articles of formation and company agreement, or any similar formation or governing documents.

**ARTICLE VII.**
**PROVISIONS GOVERNING DISTRIBUTION**

7.01. Distributions from Reorganized Debtor. The Reorganized Debtor shall be responsible for making Distributions to holders of Allowed Claims only to the extent this Plan requires Distributions to be made by the Reorganized Debtor. The priority of Distributions from the

Reorganized Debtor shall be in accordance with the terms of this Plan and the Confirmation Order as follows:

      (a)    <u>First</u>, to satisfy Allowed Class 1 Secured Tax Claims;

      (b)    <u>Second</u>, to satisfy Allowed Administrative Expenses and Allowed Priority Claims in accordance with Article III above, including all U.S. Trustee quarterly fees due and owing as of the Effective Date;

      (c)    <u>Third</u>, to make Distributions to holders of any Allowed Class 3 General Unsecured Claims and Allowed Subclass 4A Claims; and

      (e)    <u>Fourth</u>, to make Distributions to holders of any Allowed Subclass 4B Claims

7.02.   <u>Reserves</u>.  The Reorganized Debtor may estimate, create and set aside Reserves as may be necessary or appropriate, including without limitation, Reserves on account of Contested Claims.  The Reorganized Debtor may, but shall not be required to, move the Bankruptcy Court to approve: (a) the amount of, and terms on which, such Reserves shall be held, maintained and disbursed, or (b) the amount and timing of any proposed interim Distribution to holders of Allowed Class 3 Claims and Allowed Subclass 4A Claims.  The Reorganized Debtor may elect to seek approval by the Bankruptcy Court for the creation and amount of any Reserves or regarding the amount or timing of any Distribution on account of any Allowed Claims.  Except as otherwise expressly provided herein, the Reorganized Debtor, in the exercise of its good faith business judgment, may transfer funds out of any of the Reserves as necessary or appropriate.  However, the Reorganized Debtor shall not be required to create separate accounts for such Reserves which may be created and memorialized by entries or other accounting methodologies, which may be revised from time-to-time, to enable the Reorganized Debtor to determine the amount of Cash available for Distributions under the Plan.  Subject to any specific deadlines set forth herein, the Reorganized Debtor, shall determine, from time-to-time, in the exercise of the Reorganized Debtor's good faith business judgment: (x) the amount of Cash available for Distribution, (y) the timing of any Distributions, and (z) the amount and creation of any Reserves for Contested Claims.  The Reorganized Debtor shall not be entitled to reserve for, and this section 7.02 does not apply to, Distributions to holders of Allowed Subclass 4B Claims.

7.03.   <u>Prosecution and Settlement of Estate Claims</u>.  Upon the Effective Date, the Reorganized Debtor (a) shall automatically be substituted in place of the Chapter 11 Trustee as the party representing the Estate in respect of any pending lawsuit, motion or other pleading pending before the Bankruptcy Court or any other tribunal, and (b) is authorized to file a notice on the docket of each adversary proceeding or the Chapter 11 Cases regarding such substitution.  The Reorganized Debtor shall have exclusive standing and authority to prosecute, settle or compromise Estate Claims for the benefit of the Estate in the manner set forth in this Plan.

7.04.   <u>Plan Injunction</u>.  The Reorganized Debtor shall be entitled to the full protection and benefit of the Plan Injunction and shall have standing to bring any action or proceeding necessary to enforce the Plan Injunction against any Person.

7.05.   <u>Relief from the Bankruptcy Court</u>.  The Reorganized Debtor shall be authorized to seek relief from the Bankruptcy Court or any other tribunal having jurisdiction as to any matter relating or pertaining to the consummation, administration or performance of this Plan, including without

limitation seeking any relief from the Bankruptcy Court which the Reorganized Debtor deems necessary or appropriate to the performance of its duties or the administration of this Plan.

## ARTICLE VIII.
## SOURCE OF DISTRIBUTIONS

8.01. <u>Source of Distributions</u>. All Distributions under this Plan shall be made by the Reorganized Debtor in the manner provided in this Plan and the Confirmation Order.

8.02. <u>Timing and Amount of Distributions</u>. No Distribution shall be made on account of any Claim until such Claim is Allowed, except as otherwise set forth in this Plan or otherwise ordered by the Bankruptcy Court. No Distribution shall be made on account of any Contested Claim until such Claim is Allowed. Except as expressly set forth in the Plan or in the Confirmation Order, the Reorganized Debtor shall, in the exercise of its good faith business judgment, determine the timing and amount of all Distributions which are required to be made under the Plan, consistent with the goal of making such Distributions as expeditiously as reasonably possible. The Reorganized Debtor may, but shall not be required to, seek approval of, or any other appropriate relief from, the Bankruptcy Court with respect to any of such Distributions. Any Unclaimed Property may be paid into the registry of the Bankruptcy Court or otherwise distributed in accordance with the orders of the Bankruptcy Court.

8.03. <u>Means of Cash Payment</u>. Cash payments pursuant to this Plan shall be made by check drawn on, or by wire transfer from, a domestic bank, or by other means agreed to by the payor and payee.

8.04. <u>Record Date for Distributions</u>. As of the close of business on the Effective Date (the "<u>Distribution Record Date</u>"), the register for Claims will be closed, and there shall be no further changes in the holders of record of any Claims. Although there is no prohibition against the transfer of any Claim by any Creditor, the Reorganized Debtor shall have no obligation to recognize any transfer of a Claim occurring after the Distribution Record Date, and the Reorganized Debtor shall instead be authorized and entitled to recognize and deal for all purposes under this Plan, including for the purpose of making all Distributions, with only those holders of Claims so reflected as of the Distribution Record Date. However, the Reorganized Debtor may, in the exercise of its good faith business judgment, agree to recognize transfers of Claims after the Distribution Record Date, but shall have no obligation to do so.

8.05. <u>Delivery of Distributions</u>. All Distributions, deliveries and payments to the holders of any Allowed Claims shall be made to the addresses set forth on the respective proofs of Claim filed in the Chapter 11 Cases by such Claimants or, if the Distribution is to be made based on a Claim reflected as Allowed in the Schedules, at the address reflected in the Schedules. Any such Distribution, delivery or payment shall be deemed as made for all purposes relating to this Plan when deposited in the United States Mail, postage prepaid, addressed as required in the preceding sentence. If any Distribution is returned as undeliverable, no further Distribution shall be made on account of such Allowed Claim unless and until the Reorganized Debtor is notified of such holder's then current address, at which time all missed Distributions shall be made to the holder of such Allowed Claim. However, all notices to the Reorganized Debtor reflecting new or updated addresses for undeliverable Distributions shall be made on or before one hundred twenty (120) days after the date of the attempted Distribution or such longer period as the Reorganized Debtor may fix in the exercise of its sole discretion. After such date, all Unclaimed Property shall revert to the Reorganized Debtor and the Claim of any holder with respect to such property shall be discharged and forever barred.

8.06.  W-9 Forms.  Each holder of an Allowed Claim must provide a W-9 form or other such necessary information to comply with any withholding requirements of any Governmental Unit (collectively the "W-9 Form") to the Reorganized Debtor prior to receiving any Distribution from the Reorganized Debtor.  In the event a holder of an Allowed Claim does not provide a W-9 Form to the Reorganized Debtor within thirty (30) days of the Effective Date, the Reorganized Debtor shall, at an appropriate time, issue a written request to each holder of an Allowed Claim that has not previously provided a W-9 Form to the Reorganized Debtor.  The request shall be in writing and shall be delivered to the last address known to the Debtors or Reorganized Debtor, as appropriate.  The request shall conspicuously advise and disclose that failure to provide a W-9 Form to the Reorganized Debtor within thirty (30) days shall result in a waiver of any right or rights to a Distribution from the Reorganized Debtor.  In the event any holder of an Allowed Claim fails to provide the Reorganized Debtor with a W-9 Form within thirty (30) days after the date of written request described herein, then the holder of such Allowed Claim shall be deemed to have waived the right to receive any Distribution whatsoever from the Reorganized Debtor.

8.07.  Time Bar to Cash Payments.  Checks issued in respect of Allowed Claims shall be null and void if not cashed within ninety (90) days of the date of issuance thereof.  Requests for reissuance of any check shall be made directly to the issuer of the check by the holder of the Allowed Claim with respect to which such check originally was issued.  Any Claim in respect of such a voided check shall be made on or before one hundred twenty (120) days after the date of issuance of such check or such longer period as the Reorganized Debtor may fix.  After such date, all Claims in respect of void checks shall be discharged and forever barred.

8.08.  Cure Period.  Except as otherwise set forth herein, the failure by the Reorganized Debtor to timely perform any term, provision or covenant contained in this Plan, or to make any payment or Distribution required by this Plan to any Creditor, or the failure to make any payment or perform any covenant on any note, instrument or document issued pursuant to this Plan, shall not constitute an event of default unless and until the Reorganized Debtor has been given thirty (30) days written notice of such alleged default in the manner provided in this Plan, and provided an opportunity to cure such alleged default.  Until the expiration of such thirty (30) day cure period, the Reorganized Debtor shall not be in default, and performance during such thirty (30) day cure period shall be deemed as timely for all purposes.  Such written notice and passage of the thirty (30) day cure period shall constitute conditions precedent to declaring or claiming any default under this Plan or bringing any action or legal proceeding by any Person to enforce any right granted under this Plan.

8.09.  Pre-Payment of Claims. Unless the Plan expressly prohibits or conditions the pre-payment of an Allowed Claim, the Reorganized Debtor may pre-pay any Allowed Claim in whole or in part at any time and may do so without penalty.

8.10.  Distributions after Substantial Consummation.  All Distributions of any kind made to any Creditor after Substantial Consummation and any and all other actions taken under this Plan after Substantial Consummation shall not be subject to relief, reversal or modification by any court unless the implementation of the Confirmation Order is stayed by an order granted under Bankruptcy Rule 8005.

## ARTICLE IX.
## RETENTION OF ESTATE CLAIMS AND ESTATE DEFENSES.

9.01.   Retention of Estate Claims.  Except as otherwise specifically provided in this Plan, pursuant to section 1123(b)(3) of the Bankruptcy Code, all Estate Claims shall be transferred to, and vested in, the Reorganized Debtor, both for purposes of seeking an affirmative recovery against any Person and for the purposes of offset, recoupment or defense against any Claim asserted against the Estate or Reorganized Debtor.  All Estate Claims shall be deemed to have been transferred to, and vested in, the Reorganized Debtor as of the Effective Date based on the entry of the Confirmation Order.

Without limiting the effectiveness or generality of the foregoing reservation, out of an abundance of caution, the Debtors and the Estate hereby specifically reserves, retains, and preserves the Estate Claims reflected in the attached **Exhibit A**.  Reference is here made to **Exhibit A** which constitutes an integral part of this Plan.  The provisions of this Article of the Plan, as well as the descriptions and disclosures relating to the Estate Claims in the Disclosure Statement, are provided in the interest of providing maximum disclosure of the Estate Claims of which Debtors are presently aware and shall not act as a limitation on the potential Estate Claims that may exist.  It is the specific intention of this Plan that all Avoidance Actions and all associated remedies, and any other Estate Claims, whether arising before or after the Petition Date, and whether arising under the Bankruptcy Code or applicable state or federal non-bankruptcy laws, shall all be reserved, retained and preserved under this Plan to be transferred to, and vested in, the Reorganized Debtor.  All Estate Claims are reserved, retained and preserved both as causes of action for an affirmative recovery and as counterclaims and for the purposes of offset or recoupment against any Claims asserted against the Estate.

9.02.   Retention of Estate Defenses.  Except as otherwise specifically provided in this Plan, pursuant to section 1123(b)(3) of the Bankruptcy Code, all Estate Defenses shall be transferred to, and vested in, the Reorganized Debtor.  For this purpose, all Estate Defenses are hereby reserved, retained and preserved by the Debtors and the Estate, including without limitation all such Estate Defenses available to the Estate pursuant to section 558 of the Bankruptcy Code, and shall be deemed as transferred to, and vested in, the Reorganized Debtor as of the Effective Date based on the entry of the Confirmation Order.

9.03.   Assertion of Estate Claims and Estate Defenses.  The Reorganized Debtor shall have, and be vested with, the exclusive right, authority and standing to assert all Estate Claims and Estate Defenses for the benefit of the Reorganized Debtor.

## ARTICLE X.
## PROCEDURES FOR RESOLVING AND TREATING
## CONTESTED AND CONTINGENT CLAIMS

10.01.  Claims Listed in Schedules as Disputed.  Any General Unsecured Claim which is listed in the Schedules as unliquidated, contingent or disputed, and for which no proof of Claim has been timely filed, shall be considered as Disallowed as of the Effective Date without the necessity of any further action by the Reorganized Debtor or further order of the Bankruptcy Court other than the entry of the Confirmation Order.

10.02.  Responsibility for Objecting to Claims and Settlement of Claims.  The Reorganized Debtor shall have the exclusive standing and authority to either object to any Claim or settle and compromise any Objection to any Claim, including as follows:

      (a)    From and after the Effective Date, the Reorganized Debtor shall have the sole and exclusive right to (i) file, settle, or litigate to Final Order any Objections to any Claims; and (ii) seek to subordinate any Claim.  Any Contested Claim may be litigated to Final Order by the Reorganized Debtor; and

      (b)    From and after the Effective Date, the Reorganized Debtor shall have the sole and exclusive right to settle, compromise or otherwise resolve any Contested Claim without the necessity of any further notice or approval of the Bankruptcy Court.  Bankruptcy Rule 9019 shall not apply to any settlement or compromise of a Contested Claim after the Effective Date.

10.03.  <u>Objection Deadline</u>.  All Objections to Claims shall be served and filed by the Objection Deadline; <u>provided, however</u>, the Objection Deadline shall not apply to Claims which are not reflected in the claims register, including any alleged informal proofs of Claim.  The Reorganized Debtor may seek to extend the Objection Deadline pursuant to a motion filed on or before the then applicable Objection Deadline with respect to any Claim.  Any such motion may be granted without notice or a hearing.  In the event that the Reorganized Debtor files such a motion and the Bankruptcy Court denies such motion, the Objection Deadline shall nevertheless be automatically extended to that date which is ten (10) Business Days after the date of entry of the Bankruptcy Court's order denying such motion.  Any proof of Claim other than one based upon a Rejection Claim and which is filed more than thirty (30) days after the Effective Date shall be of no force and effect and need not be objected to by the Reorganized Debtor.  Nothing contained herein shall limit the right of the Reorganized Debtor to object to Claims, if any, filed or amended after the Objection Deadline.

10.04.  <u>Response to Claim Objection</u>.  If the Reorganized Debtor files an Objection to any Claim, then the holder of such Claim shall file a written response to such Objection within twenty-four (24) days after the filing and service of the Objection upon the holder of the Contested Claim.  Each such Objection shall contain appropriate negative notice advising the Creditor whose Claim is subject to the Objection of the requirement and time period to file a response to such Objection and that, if no response is timely filed to the Objection, the Bankruptcy Court may enter an order that such Claim is Disallowed without further notice or hearing.  The negative notice language in the Objection shall satisfy the notice requirement in section 3007(a) of the Bankruptcy Rules, and the Reorganized Debtor shall not be required to send a separate notice of the Objection to the Creditor whose Claim is subject to the Objection.

10.05.  <u>Distributions on Account of Contested Claims</u>.  If a Claim is Contested, then the dates for any Distributions as to such Contested Claim shall be determined based upon its date of Allowance, and thereafter Distribution shall be made on account of such Allowed Claim pursuant to the provisions of the Plan.  No Distribution shall be made on account of a Contested Claim until Allowed.  Until such time as a contingent Claim becomes fixed and absolute by a Final Order Allowing such Claim, such Claim shall be treated as a Contested Claim for purposes of estimates, allocations, and Distributions under the Plan.  Any contingent right to contribution or reimbursement shall continue to be subject to section 502(e) of the Bankruptcy Code.

10.06.  <u>No Waiver of Right to Object</u>.  Except as expressly provided in this Plan, nothing contained in the Disclosure Statement, this Plan, or the Confirmation Order shall waive, relinquish, release or impair the Reorganized Debtor's right to object to any Claim.

10.07.  <u>Offsets and Defenses</u>.  The Reorganized Debtor shall be vested with and retain all Estate Claims and Estate Defenses, including without limitation all rights of offset or recoupment and all counterclaims against any Claimant holding a Claim.  Assertion of counterclaims by the

Reorganized Debtor against any Claim asserted against the Estate or Reorganized Debtor shall constitute "core" proceedings.

10.08.  Claims Paid or Reduced Prior to Effective Date.  Notwithstanding the contents of the Schedules, Claims listed therein as undisputed, liquidated and not contingent shall be reduced by the amount, if any, that was paid by the Debtors prior to the Effective Date, including pursuant to orders of the Bankruptcy Court.  To the extent such payments are not reflected in the Schedules, such Schedules will be deemed amended and reduced to reflect that such payments were made.  Nothing in the Plan shall preclude the Debtors or the Reorganized Debtor from paying Claims that the Debtors were authorized to pay pursuant to any Final Order entered by the Bankruptcy Court prior to the Confirmation Date.

### ARTICLE XI.
### EXECUTORY CONTRACTS AND UNEXPIRED LEASES

11.01.  Assumption and Rejection of Executory Contracts.  All Executory Contracts and Unexpired Leases of the Debtors shall be deemed rejected by the Debtors upon the Effective Date unless an Executory Contract or Unexpired Lease (a) has been previously assumed or rejected pursuant to an order of the Bankruptcy Court, (b) is identified in **Exhibit B** to this Plan and/or the Confirmation Order to be (i) assumed or (ii) assumed and assigned, or (c) is the subject of a motion to assume filed on or before the Confirmation Date. The Plan shall constitute a motion to reject all Executory Contracts and Unexpired Leases except as stated in this paragraph.  However, the Debtors may file a separate motion for the assumption or rejection of any Executory Contract or Unexpired Lease at any time through the Confirmation Date.

11.02.  Cure Payments.  All payments that may be required by section 365(b)(1) of the Bankruptcy Code to satisfy any Cure Claim shall be made by the Reorganized Debtor as soon as reasonably practical after the Effective Date or upon such terms as may be otherwise agreed between the Reorganized Debtor and the holder of such Cure Claim; *provided, however*, in the event of a dispute regarding the amount of any Cure Claim, the cure of any other defaults, or any other matter pertaining to assumption or assignment of an Executory Contract, the Reorganized Debtor shall make such cure payments and cure such other defaults, all as may be required by section 365(b)(1) of the Bankruptcy Code, following the entry of a Final Order by the Bankruptcy Court resolving such dispute.

11.03.  Bar to Rejection Claims.  Except as otherwise ordered by the Bankruptcy Court, any Rejection Claim based on the rejection of an Executory Contract or Unexpired Lease shall be forever barred and shall not be enforceable against the Reorganized Debtor or the Reorganized Debtor's assets unless a proof of Claim is filed with the Bankruptcy Court and served upon the Reorganized Debtor and its counsel by the earlier of thirty (30) days after the Effective Date or thirty (30) days after entry of the Final Order approving rejection of such Executory Contract or Unexpired Lease.

11.04.  Rejection Claims.  Any Rejection Claim not barred by section 11.03 of the Plan shall be classified as a Class 3 General Unsecured Claim subject to the provisions of sections 502(b)(6) and 502(g) of the Bankruptcy Code; *provided, however*, that any Rejection Claim by a lessor based upon the rejection of an unexpired lease of real property, either prior to the Confirmation Date, upon the entry of the Confirmation Order, or upon the Effective Date, shall be limited in accordance with section 502(b)(6) of the Bankruptcy Code and state law mitigation requirements.  All Rejection Claims shall be deemed as Contested Claims until Allowed. Nothing contained herein shall be deemed an admission by the Debtors or the Reorganized

Debtor that such rejection gives rise to or results in a Claim or shall be deemed a waiver by the Debtors or the Reorganized Debtor of any objections or defenses to any such Rejection Claim if asserted.

11.05. <u>Reservation of Rights</u>. Nothing contained in the Plan shall constitute an admission by the Debtors that any contract or lease is in fact an Executory Contract or Unexpired Lease or that the Debtors or the Reorganized Debtor have any liability thereunder. If there is a dispute regarding whether a contract or lease is or was executory or unexpired at the time of assumption or rejection, the Reorganized Debtor shall have thirty (30) days following entry of a Final Order resolving such dispute to alter the treatment of such contract or lease.

<div align="center">

## ARTICLE XII.
## SUBSTANTIVE CONSOLIDATION OF THE DEBTORS

</div>

12.01. Pursuant to the Confirmation Order, the Bankruptcy Court shall approve the substantive consolidation of the Debtors for the sole purposes of implementing the Plan, including for purposes of voting and Distributions to be made under the Plan. Pursuant to such order: (a) all assets and liabilities of the Debtors will be deemed merged; (b) all guarantees by one Debtor of the obligations of the other Debtor will be deemed eliminated so that any Claim against any Debtor and any guarantee thereof executed by the other Debtor and any joint or several liability of the Debtors will be deemed to be one obligation of the consolidated Debtors; and (c) each and every Claim filed or to be filed in the Chapter 11 Case of either Debtor will be deemed filed against the consolidated Debtors and will be deemed one Claim against and a single obligation of the consolidated Debtors.

<div align="center">

## ARTICLE XIII.
## CONDITIONS PRECEDENT TO CONFIRMATION AND EFFECTIVENESS OF PLAN

</div>

13.01. <u>Conditions to Confirmation and Effectiveness of Plan</u>. The Plan shall not become effective until the following conditions shall have been satisfied and which may occur concurrently with the Effective Date: (a) the Confirmation Order shall have been entered, in form and substance acceptable to the Chapter 11 Trustee; (b) the necessary Plan Documents have been executed and delivered, and (c) all other conditions specified by the Chapter 11 Trustee have been satisfied. Any or all of the above conditions other than (a) may be waived at any time by the Chapter 11 Trustee.

13.02. <u>Notice of the Effective Date</u>. On or as soon as reasonably practical after the occurrence of the Effective Date, the Reorganized Debtor shall cause a notice of the Effective Date to be filed with the Bankruptcy Court and served on all Creditors and parties-in-interest.

13.03. <u>Revocation of Plan</u>. The Chapter 11 Trustee may revoke and withdraw the Plan at any time before the Effective Date. If the Chapter 11 Trustee revokes or withdraws the Plan, or if confirmation of the Plan does not occur, then this Plan shall be deemed null and void and nothing contained in the Plan shall be deemed to constitute a waiver or release of any Claims by or against the Debtors, as the case may be, or any other Person, or to prejudice in any manner the rights of the Debtors or any other Person in any further proceedings involving the Debtors.

**ARTICLE XIV.**
**EFFECT OF THE PLAN ON CLAIMS AND INTERESTS**

14.01. Compromise and Settlement

      (a)    Pursuant to section 363 of the Bankruptcy Code and Bankruptcy Rule 9019, and in consideration of the classification, potential Distributions and other benefits provided under the Plan, the provisions of the Plan shall constitute a good faith compromise and settlement of all Claims, Interests and controversies subject to, or dealt with, under this Plan, including, without limitation, all Claims against the Debtors or Estate arising prior to the Effective Date, whether known or unknown, foreseen or unforeseen, asserted or unasserted, fixed or contingent, arising out of, relating to or in connection with the business or affairs of, or transactions with, the Debtors or the Estate. The entry of the Confirmation Order shall constitute the Bankruptcy Court's approval of each of the foregoing compromises or settlements embodied in this Plan, and all other compromises and settlements provided for in the Plan, and the Bankruptcy Court's findings shall constitute its determination that such compromises and settlements are in the best interest of the Debtors, the Estate, Creditors and other parties-in-interest, and are fair, equitable and within the range of reasonableness. The rights afforded in the Plan and the treatment of all Claims and Interests herein shall be in exchange for, and in complete satisfaction and release of, all Claims and Interests of any nature whatsoever against and in the Debtors, the Estate, and the Assets. Except as otherwise provided herein, all Persons shall be precluded and forever barred by the Plan Injunction from asserting against the Debtors and their affiliates, successors, assigns, the Reorganized Debtor or the Reorganized Debtor's Assets, or the Estate, any event, occurrence, condition, thing, or other or further Claims or causes of action based upon any act, omission, transaction, or other activity of any kind or nature that occurred or came into existence prior to the Effective Date, whether or not the facts of or legal bases therefore were known or existed prior to the Effective Date.

      (b)    It is not the intent of this Plan that confirmation of the Plan shall in any manner alter or amend any settlement and compromise (including those contained in agreed orders) between the Debtors and any Person that has been previously approved by the Bankruptcy Court (each, a "Prior Settlement"). To the extent of any conflict between the terms of the Plan and the terms of any Prior Settlement, the terms of the Prior Settlement shall control and such Prior Settlement shall be enforceable according to its terms.

14.02. Discharge. The Debtors and their successors in interest and assigns shall be deemed discharged and released pursuant to section 1141(d)(1) of the Bankruptcy Code from any and all Claims provided for in the Plan.

14.03. **PLAN INJUNCTION.**

      **THIS SECTION IS REFERRED TO HEREIN AS THE "PLAN INJUNCTION." EXCEPT AS OTHERWISE EXPRESSLY PROVIDED HEREIN, AS OF THE EFFECTIVE DATE ALL HOLDERS OF CLAIMS AGAINST, OR INTERESTS IN, THE DEBTORS, THE ESTATE OR ANY OF THE ASSETS THAT AROSE PRIOR TO THE EFFECTIVE DATE ARE HEREBY PERMANENTLY ENJOINED AND PROHIBITED FROM THE FOLLOWING: (a) THE COMMENCING OR CONTINUATION IN ANY MANNER, DIRECTLY OR INDIRECTLY, OF ANY ACTION, CASE, LAWSUIT OR OTHER PROCEEDING OF ANY TYPE OR NATURE AGAINST THE DEBTORS, THE ESTATE, THE REORGANIZED DEBTOR, OR THE REORGANIZED DEBTOR'S ASSETS WITH RESPECT TO**

ANY SUCH CLAIM OR INTEREST ARISING OR ACCRUING BEFORE THE EFFECTIVE DATE, INCLUDING WITHOUT LIMITATION THE ENTRY OR ENFORCEMENT OF ANY JUDGMENT, OR ANY OTHER ACT FOR THE COLLECTION, EITHER DIRECTLY OR INDIRECTLY, OF ANY CLAIM OR INTEREST AGAINST THE DEBTORS, THE ESTATE, THE REORGANIZED DEBTOR, OR THE REORGANIZED DEBTOR'S ASSETS; (b) THE CREATION, PERFECTION OR ENFORCEMENT OF ANY LIEN, SECURITY INTEREST, ENCUMBRANCE, RIGHT OR BURDEN, EITHER DIRECTLY OR INDIRECTLY, AGAINST THE DEBTORS, THE ESTATE, THE REORGANIZED DEBTOR, OR THE REORGANIZED DEBTOR'S ASSETS, OR (c) TAKING ANY ACTION IN RELATION TO THE DEBTORS, THE ESTATE, THE REORGANIZED DEBTOR, OR THE REORGANIZED DEBTOR'S ASSETS, EITHER DIRECTLY OR INDIRECTLY, WHICH VIOLATES OR DOES NOT CONFORM OR COMPLY WITH THE PROVISIONS OF THIS PLAN APPLICABLE TO SUCH CLAIM OR INTEREST. THE PLAN INJUNCTION SHALL ALSO BE INCORPORATED INTO THE CONFIRMATION ORDER.

IN ADDITION TO THE FOREGOING, EXCEPT TO THE EXTENT NECESSARY TO ALLOW HCLOF, THE REORGANIZED DEBTOR AND BRIGADE TO EFFECTUATE THE RESET OF ONE OR MORE OF THE ACIS CLOS IN ACCORDANCE WITH SECTION 6.08 OF THE PLAN, PURSUANT TO SECTIONS 105(a), 1123(a)(5), 1123(b)(6), AND 1142(b) OF THE BANKRUPTCY CODE, THE ENJOINED PARTIES (DEFINED BELOW) ARE HEREBY ENJOINED FROM: (a) PROCEEDING WITH, EFFECTUATING, OR OTHERWISE TAKING (i) ANY ACTION IN FURTHERANCE OF ANY OPTIONAL REDEMPTION, CALL, OR OTHER LIQUIDATION OF THE ACIS CLOS PREVIOUSLY OR CURRENTLY ISSUED BY ANY SUCH PARTIES, AND (ii) ANY OTHER ATTEMPT TO LIQUIDATE THE ACIS CLOS BY ANY MEANS, (b) TRADING ANY ACIS CLO COLLATERAL IN FURTHERANCE OF ANY OPTIONAL REDEMPTION, CALL, OR OTHER LIQUIDATION OF THE ACIS CLOS, (c) EXERCISING ANY RIGHTS TO ASK OR DIRECT THE ISSUERS, CO-ISSUERS OR INDENTURE TRUSTEE TO PERFORM ANY ACTION IN RELATION TO THE ACIS CLOS THAT THE ENJOINED PARTIES ARE PROHIBITED FROM TAKING UNDER THE TERMS OF THE PLAN INJUNCTION, (d) INTERFERING IN ANY WAY WITH THE CAPITAL MARKETS PROCESS OF RESETTING ANY ACIS CLO, AND (e) SENDING, MAILING, OR OTHERWISE DISTRIBUTING ANY NOTICE TO THE HOLDERS OF THE NOTES IN THE ACIS CLOS IN CONNECTION WITH THE EFFECTUATION OF ANY OPTIONAL REDEMPTION, CALL, OR OTHER LIQUIDATION OF THE ACIS CLOS, UNTIL THE EARLIER TO OCCUR OF: (w) THE DATE UPON WHICH A FINAL ORDER IS ENTERED RESOLVING THE ESTATE'S AVOIDANCE CLAIMS AGAINST ALL ENJOINED PARTIES RELATING TO ACIS LP'S RIGHTS UNDER THE ALF PMA; (x) THE DATE UPON WHICH ALL ALLOWED CLAIMS AGAINST THE DEBTORS HAVE BEEN PAID IN FULL, (y) THE ENTRY OF AN ORDER BY THE BANKRUPTCY COURT FINDING THAT A MATERIAL DEFAULT HAS OCCURRED UNDER THE TERMS OF THE PLAN, OR (z) THE ENTRY OF A SUBSEQUENT ORDER BY THE BANKRUPTCY COURT PROVIDING OTHERWISE WITH RESPECT TO ONE OR MORE OF THE ACIS CLOS. FOR PURPOSES OF THIS PARAGRAPH, THE TERM "ENJOINED PARTIES" SHALL INCLUDE HIGHLAND, HCLOF, CLO HOLDCO, NEUTRA, HIGHLAND HCF, HIGHLAND CLOM, ANY AFFILIATES OF

**HIGHLAND, AND THEIR RESPECTIVE EMPLOYEES, AGENTS, REPRESENTATIVES, TRANSFEREES, ASSIGNS, AND SUCCESSORS. FOR PURPOSES OF CLARIFICATION AND AVOIDANCE OF DOUBT, NOTHING IN THIS PARAGRAPH SHALL PRECLUDE ORDINARY DAY-TO-DAY TRADING OF THE COLLATERAL IN THE ACIS CLOS BY THE REORGANIZED DEBTOR.**

Notwithstanding anything to the contrary in the Plan: (a) third-party professionals employed by the Reorganized Debtor shall not be released or exculpated from any losses, claims, damages, liabilities, or expenses arising from their duties and services provided to the Reorganized Debtor; and (b) any third-party professionals employed by the Reorganized Debtor shall only be entitled to be indemnified by the Reorganized Debtor to the extent provided by applicable law.

Notwithstanding anything to the contrary in the Plan or Confirmation Order, nothing in the Plan or in the Confirmation Order shall discharge, release, enjoin or otherwise bar (i) any liability of the Debtors, the Estate, the Reorganized Debtor, or the Reorganized Debtor's assets ("Released Parties") to a Governmental Unit arising on or after the Confirmation Date with respect to events occurring after the Confirmation Date, provided that the Released Parties reserve the right to assert that any such liability is a Claim that arose on or prior to the Confirmation Date and constitutes a Claim that is subject to the deadlines for filing proofs of claim, (ii) any liability to a Governmental Unit that is not a Claim subject to the deadlines for filing proofs of Claim, (iii) any valid right of setoff or recoupment of a Governmental Unit, and (iv) any police or regulatory action by a Governmental Unit. In addition, nothing in the Plan or Confirmation Order discharges, releases, precludes or enjoins any environmental liability to any Governmental Unit that any Person other than the Released Parties would be subject to as the owner or operator of the property after the Effective Date. For the avoidance of any doubt, nothing in this paragraph shall be construed to limit the application of the Plan Injunction to any Claim which was subject to any bar date applicable to such Claim.

14.04. <u>Setoffs</u>. Except as otherwise expressly provided for in the Plan, pursuant to the Bankruptcy Code (including section 553 of the Bankruptcy Code), applicable nonbankruptcy law, or as may be agreed to by the holder of a Claim, the Reorganized Debtor may set off against any Allowed Claim and the Distributions to be made pursuant to the Plan on account of such Allowed Claim (before such Distribution is made), any Claims, rights, Estate Claims and Estate Defenses of any nature that the Debtors may hold against the holder of such Allowed Claim, to the extent such Claims, rights, Estate Claims and Estate Defenses against such holder have not been otherwise compromised or settled on or prior to the Effective Date (whether pursuant to the Plan or otherwise); <u>provided, however</u>, that neither the failure to effect such a setoff nor the allowance of any Claim or Interest pursuant to the Plan shall constitute a waiver or release of any such Claims, rights, Estate Claims and Estate Defenses that the Estate may possess against such Claimant. In no event shall any Claimant or Interest holder be entitled to setoff any Claim or Interest against any Claim, right, or Estate Claim of the Debtors without the consent of the Debtors or the Reorganized Debtor unless such holder files a motion with the Bankruptcy Court requesting the authority to perform such setoff notwithstanding any indication in any proof of Claim or otherwise that such holder asserts, has, or intends to preserve any right of setoff pursuant to section 553 of the Bankruptcy Code or otherwise.

14.05. <u>Recoupment.</u> Except as otherwise expressly provided for in the Plan, in no event shall any holder of Claims or Interests be entitled to recoup any Claim or Interest against any Claim, right, account receivable, or Estate Claim of the Debtors or the Reorganized Debtor unless (a) such holder actually provides notice thereof in writing to the Debtors or the Reorganized Debtor of its intent to perform a recoupment; (b) such notice includes the amount to be

recouped by the holder of the Claim or Interest and a specific description of the basis for the recoupment, and (c) the Debtors or the Reorganized Debtor have provided a written response to such Claim or Interest holder, stating unequivocally that the Debtors or the Reorganized Debtor consents to the requested recoupment. The Debtors and the Reorganized Debtor shall have the right, but not the obligation, to seek an order of the Bankruptcy Court allowing any or all of the proposed recoupment. In the absence of a written response from the Debtors or the Reorganized Debtor consenting to a recoupment or an order of the Bankruptcy Court authorizing a recoupment, no recoupment by the holder of a Claim or Interest shall be allowed.

14.06. <u>Turnover</u>. On the Effective Date, any rights of the Estate to compel turnover of Assets under applicable nonbankruptcy law and pursuant to section 542 or 543 of the Bankruptcy Code shall be deemed transferred to and vested in the Reorganized Debtor.

14.07. <u>Automatic Stay</u>. The automatic stay pursuant to section 362 of the Bankruptcy Code, except as previously modified by the Bankruptcy Court, shall remain in effect until the Effective Date of the Plan as to the Debtors, the Estate and all Assets. As of the Effective Date, the automatic stay shall be replaced by the Plan Injunction.

## ARTICLE XV.
## <u>JURISDICTION OF COURTS AND MODIFICATIONS TO THE PLAN</u>

15.01. <u>Retention of Jurisdiction</u>. Pursuant to sections 1334 and 157 of title 28 of the United States Code, the Bankruptcy Court shall retain exclusive jurisdiction of all matters arising in, arising under, and related to the Chapter 11 Cases and the Plan, to the full extent allowed or permitted by applicable law, including without limitation for the purposes of invoking sections 105(a) and 1142 of the Bankruptcy Code, and for, among other things, the following purposes:

(a)     To hear and determine any and all objections to, or applications or motions concerning, the allowance of Claims or the allowance, classification, priority, compromise, estimation, or payment of any Administrative Expense;

(b)     To hear and determine any and all applications for payment of fees and expenses pursuant to this Plan to any Estate Professional pursuant to sections 330 or 503 of the Bankruptcy Code, or for payment of any other fees or expenses authorized to be paid or reimbursed under this Plan, and any and all objections thereto;

(c)     To hear and determine pending applications for the rejection, assumption, or assumption and assignment of Executory Contracts and Unexpired Leases and the allowance of Claims resulting therefrom, and to determine the rights of any party in respect to the assumption or rejection of any Executory Contract or Unexpired Lease;

(d)     To hear and determine any and all adversary proceedings, applications, or contested matters, including relating to the allowance of any Claim;

(e)     To hear and determine all controversies, disputes, and suits which may arise in connection with the execution, interpretation, implementation, consummation, or enforcement of the Plan or in connection with the enforcement of any remedies made available under the Plan, including without limitation, (i) adjudication of all rights, interests or disputes relating to any of the Assets, (ii) the valuation of all Collateral, (iii) the determination of the validity of any Lien or claimed right of offset or recoupment; and (iv) determinations of Objections to Contested Claims;

(f)     To liquidate and administer any disputed, contingent, or unliquidated Claims, including the Allowance of all Contested Claims;

(g)     To administer Distributions to holders of Allowed Claims as provided herein;

(h)     To enter and implement such orders as may be appropriate in the event the Confirmation Order is for any reason stayed, reversed, revoked, modified, or vacated;

(i)     To enable the Reorganized Debtor to prosecute any and all proceedings which may be brought to set aside transfers, Liens or encumbrances and to recover any transfers, Assets, properties or damages to which the Reorganized Debtor may be entitled under applicable provisions of the Bankruptcy Code or any other federal, state or local laws, including causes of action, controversies, disputes and conflicts between the Reorganized Debtor and any other party, including but not limited to, any causes of action or Objections to Claims, preferences or fraudulent transfers and obligations or equitable subordination;

(j)     To consider any modification of the Plan pursuant to section 1127 of the Bankruptcy Code, to cure any defect or omission, or reconcile any inconsistency in any order of the Bankruptcy Court, including, without limitation the Confirmation Order;

(k)     To enforce the discharge and Plan Injunction against any Person;

(l)     To enter and implement all such orders as may be necessary or appropriate to execute, interpret, construe, implement, consummate, or enforce the terms and conditions of this Plan and the transactions required or contemplated pursuant thereto;

(m)     To hear and determine any motion or application which the Reorganized Debtor is required or allowed to commence before the Bankruptcy Court pursuant to this Plan;

(n)     To hear and determine any other matter not inconsistent with the Bankruptcy Code and title 28 of the United States Code that may arise in connection with or related to the Plan;

(o)     To determine proceedings pursuant to section 505 of the Bankruptcy Code;

(p)     To enter a final decree closing the Chapter 11 Cases; and

(q)     To determine any other matter or dispute relating to the Estate, the Estate Claims, the Estate Defenses, the Assets, or the Distributions by the Reorganized Debtor.

15.02.  <u>Abstention and Other Courts</u>.  If the Bankruptcy Court abstains from exercising, or declines to exercise, jurisdiction or is otherwise without jurisdiction over any matter arising out of or relating to the Chapter 11 Cases, this Article of the Plan shall have no effect upon and shall not control, prohibit or limit the exercise of jurisdiction by any other court having competent jurisdiction with respect to such matter.

15.03.  <u>Non-Material Modifications</u>.  The Reorganized Debtor may, with the approval of the Bankruptcy Court and without notice to all holders of Claims and Interests, correct any defect, omission, or inconsistency in the Plan in such manner and to such extent as may be necessary or desirable.  The Reorganized Debtor may undertake such nonmaterial modification pursuant

to this section insofar as it does not adversely change the treatment of the Claim of any Creditor or the Interest of any Interest holder who has not accepted in writing the modification.

15.04. <u>Material Modifications</u>. Modifications of this Plan may be proposed in writing by the Chapter 11 Trustee at any time before confirmation, provided that this Plan, as modified, meets the requirements of sections 1122 and 1123 of the Bankruptcy Code, and the Chapter 11 Trustee shall have complied with section 1125 of the Bankruptcy Code. This Plan may be modified at any time after confirmation and before its Substantial Consummation, provided that the Plan, as modified, meets the requirements of sections 1122 and 1123 of the Bankruptcy Code, and the Bankruptcy Court, after notice and a hearing, confirms the Plan, as modified, under section 1129 of the Bankruptcy Code, and the circumstances warrant such modification. A holder of a Claim or Interest that has accepted or rejected this Plan shall be deemed to have accepted or rejected, as the case may be, such Plan as modified, unless, within the time fixed by the Bankruptcy Court, such holder changes its previous acceptance or rejection.

## ARTICLE XVI.
## <u>MISCELLANEOUS PROVISIONS</u>

16.01. <u>Severability</u>. Should the Bankruptcy Court determine any provision of the Plan is unenforceable either on its face or as applied to any Claim or Interest or transaction, the Reorganized Debtor may modify the Plan so that any such provision shall not be applicable to the holder of any Claim or Interest. Such a determination of unenforceability shall not (a) limit or affect the enforceability and operative effect of any other provision of the Plan or (b) require the resolicitation of any acceptance or rejection of the Plan.

16.02. <u>Oral Agreements; Modification of Plan; Oral Representations or Inducements</u>. The terms of the Plan, Disclosure Statement and Confirmation Order may only be amended in writing and may not be changed, contradicted or varied by any oral statement, agreement, warranty or representation. None of the Debtors, any representative of the Estate, including Robin Phelan in his capacity as Chapter 11 Trustee, nor their attorneys have made any representation, warranty, promise or inducement relating to the Plan or its confirmation except as expressly set forth in this Plan, the Disclosure Statement, or the Confirmation Order or other order of the Bankruptcy Court.

16.03. <u>Waiver</u>. The Reorganized Debtor shall not be deemed to have waived any right, power or privilege pursuant to the Plan unless the waiver is in writing and signed by the Reorganized Debtor. There shall be no waiver by implication, course of conduct or dealing, or through any delay or inaction by the Reorganized Debtor, of any right pursuant to the Plan, including the provisions of this anti-waiver section. The waiver of any right under the Plan shall not act as a waiver of any other or subsequent right, power or privilege.

16.04. <u>Notice</u>. Any notice or communication required or permitted by the Plan shall be given, made or sent as follows:

      (a)     If to a Creditor, notice may be given as follows: (i) if the Creditor has not filed a proof of Claim, then to the address reflected in the Schedules, or (ii) if the Creditor has filed a proof of Claim, then to the address reflected in the proof of Claim.

      (b)     If to the Reorganized Debtor, notice shall be sent to the following addresses:

| | |
|---|---|
| Jeff P. Prostok | Josh Terry |
| Suzanne K. Rosen | c/o Brian P. Shaw |
| Forshey Prostok LLP | Rogge Dunn Group, PC |
| 777 Main Street, Suite 1290 | 1201 Elm Street, Suite 5200 |
| Fort Worth, Texas 76102 | Dallas, Texas 75270 |

(c)     Any Creditor desiring to change its address for the purpose of notice may do so by giving notice to the Reorganized Debtor of its new address in accordance with the terms of this section.

(d)     Any notice given, made or sent as set forth above shall be effective upon being (i) deposited in the United States Mail, postage prepaid, addressed to the addressee at the address as set forth above; (ii) delivered by hand or messenger to the addressee at the address set forth above; (iii) telecopied to the addressee as set forth above, with a hard confirmation copy being immediately sent through the United States Mail; or (iv) delivered for transmission to an expedited or overnight delivery service such as FedEx.

16.05.  <u>Compliance with All Applicable Laws</u>.  If notified by any governmental authority that it is in violation of any applicable law, rule, regulation, or order of such governmental authority relating to its business, the Reorganized Debtor shall comply with such law, rule, regulation, or order; <u>provided, however</u>, that nothing contained herein shall require such compliance if the legality or applicability of any such requirement is being contested in good faith in appropriate proceedings and, if appropriate, an adequate Reserve has been set aside on the books of the Reorganized Debtor.

16.06.  <u>Duties to Creditors; Exculpation</u>.  Neither the Chapter 11 Trustee nor any agent, representative, accountant, financial advisor, attorney, shareholder, officer, affiliate, member or employee of the Chapter 11 Trustee or the Debtors, including but not limited to Estate Professionals (collectively, the "<u>Exculpated Parties</u>"), shall ever owe any duty to any Person (including any Creditor) other than the duties owed to the Debtors' bankruptcy Estate, for any act, omission, or event in connection with, or arising out of, or relating to, any of the following: (a) the Debtors' Chapter 11 Cases, including all matters or actions in connection with or relating to the administration of the Estate, (b) the Plan, including the proposal, negotiation, confirmation and consummation of the Plan, or (c) any act or omission relating to the administration of the Plan after the Effective Date.  All such Exculpated Parties shall be fully exculpated and released from any and all claims and causes of action by any Person, known or unknown, in connection with, or arising out of, or relating to, any of the following:  (x) the Debtors' Chapter 11 Cases, including all matters or actions in connection with or relating to the administration of the Estate, (y) the Plan, including the proposal, negotiation, confirmation and consummation of the Plan, or (z) any act or omission relating to the administration of the Plan after the Effective Date, except for claims and causes of action arising out of such Exculpated Party's gross negligence or willful misconduct.

16.07.  <u>Binding Effect</u>.  The Plan shall be binding upon, and shall inure to the benefit of, the Reorganized Debtor, the holders of the Claims or Liens, and their respective successors-in-interest and assigns.

16.08.  <u>Governing Law, Interpretation</u>.  Unless a rule of law or procedure supplied by federal law (including the Bankruptcy Code and Bankruptcy Rules) is applicable, the internal laws of the State of Texas shall govern the construction and implementation of the Plan and any Plan

Documents without regard to conflicts of law.  The Plan shall control any inconsistent term or provision of any other Plan Documents.

16.09.  <u>Payment of Statutory Fees</u>.   All accrued U.S. Trustee Fees as of the Confirmation Date shall be paid by the Reorganized Debtor on or as soon as practicable after the Effective Date, and thereafter shall be paid by the Reorganized Debtor as such statutory fees become due and payable.

16.10.  <u>Filing of Additional Documents</u>.  On or before Substantial Consummation of the Plan, the Reorganized Debtor may file with the Bankruptcy Court such agreements and other documents as may be necessary or appropriate to effectuate and further evidence the terms and conditions of the Plan.

16.11.  <u>Computation of Time</u>.  Bankruptcy Rule 9006 shall apply to the calculation of all time periods pursuant to this Plan.  If the final day for any Distribution, performance, act or event under the Plan is not a Business Day, then the time for making or performing such Distribution, performance, act or event shall be extended to the next Business Day.  Any payment or Distribution required to be made hereunder on a day other than a Business Day shall be due and payable on the next succeeding Business Day.

16.12.  <u>Elections by the Reorganized Debtor</u>.  Any right of election or choice granted to the Reorganized Debtor under this Plan may be exercised, at the Reorganized Debtor's election, separately as to each Claim, Creditor or Person.

16.13.  <u>Release of Liens</u>.  Except as otherwise expressly provided in this Plan or the Confirmation Order, all Liens against any of the Assets transferred to and vested in the Reorganized Debtor shall be deemed to be released, terminated and nullified without the necessity of any order by the Bankruptcy Court other than the Confirmation Order.

16.14.  <u>Rates</u>.  The Plan does not provide for the change of any rate that is within the jurisdiction of any governmental regulatory commission after the occurrence of the Effective Date.

16.15.  <u>Compliance with Tax Requirements</u>.  In connection with the Plan, the Reorganized Debtor shall comply with all withholding and reporting requirements imposed by federal, state and local Taxing Authorities and all Distributions under the Plan shall be subject to such withholding and reporting requirements.  Notwithstanding the above, each holder of an Allowed Claim or Interest that is to receive a Distribution under the Plan shall have the sole and exclusive responsibility for the satisfaction and payment of any tax obligations imposed by any governmental unit, including income, withholding and other tax obligations, on account of such Distribution under the Plan.

16.16.  <u>Notice of Occurrence of the Effective Date</u>. Promptly after occurrence of the Effective Date, the Reorganized Debtor, as directed by the Bankruptcy Court, shall serve on all known parties-in-interest and holders of Claims and Interests, notice of the occurrence of the Effective Date.

16.17.  <u>Notice of Entry of Confirmation Order</u>.  Promptly after entry of the Confirmation Order, the Chapter 11 Trustee, as directed by the Bankruptcy Court in the Confirmation Order, shall serve on all known parties-in-interest and holders of Claims and Interests, notice of entry of the Confirmation Order.

Dated:  October 25, 2018.

Respectfully submitted,

ACIS CAPITAL MANAGEMENT, L.P.

By:  /s/ *Robin Phelan*
    Robin Phelan
    Chapter 11 Trustee

ACIS CAPITAL MANAGMENET GP, LLC

By:/s/ *Robin Phelan*
    Robin Phelan
    Chapter 11 Trustee

APPROVED:

/s/ *Jeff P. Prostok*
Jeff P. Prostok –  State Bar No. 16352500
J. Robert Forshey – State Bar No. 07264200
Suzanne K. Rosen –  State Bar No. 00798518
Matthew G. Maben – State Bar No. 24037008
**FORSHEY & PROSTOK LLP**
777 Main St., Suite 1290
Ft. Worth, TX 76102
Telephone: (817) 877-8855
Facsimile: (817) 877-4151
jprostok@forsheyprostok.com
bforshey@forsheyprostok.com
srosen@forsheyprostok.com
mmaben@forsheyprostok.com

**COUNSEL FOR ROBIN PHELAN,
CHAPTER 11 TRUSTEE**

APPROVED:

/s/ *Rahkee V. Patel*
Rakhee V. Patel – State Bar No. 00797213
Phillip Lamberson – State Bar No. 00794134
Joe Wielebinski – State Bar No. 21432400
Annmarie Chiarello – State Bar No. 24097496
**WINSTEAD PC**
500 Winstead Building
2728 N. Harwood Street
Dallas, Texas 75201
Telephone: (214) 745-5400
Facsimile:  (214) 745-5390
rpatel@winstead.com
plamberson@winstead.com
jwielebinski@winstead.com
achiarello@winstead.com

**SPECIAL COUNSEL FOR ROBIN PHELAN,
CHAPTER 11 TRUSTEE**

L:\JPROSTOK\ACIS Capital Management (Trustee Rep)\Plan and Disclosure Statement\Third Amended Joint Plan 10.25.18.docx

Case 18-30264-sgj11 Doc 660 Filed 09/25/18   Entered 09/25/18 18:59:05   Page 43 of 65

# EXHIBIT A

## TO THIRD AMENDED JOINT PLAN FOR ACIS CAPITAL MANAGEMENT, LP AND ACIS CAPITAL MANAGEMENT GP, LLC

**[ESTATE CLAIMS]**

**EXHIBIT "A"**
**to**
**Joint Plan for Acis Capital Management, LP and Acis Capital Management GP, LLC**

1. <u>Defined Terms</u>. This Exhibit "A" constitutes an integral part of the Plan of which it is a part. Defined terms in the Plan are to be given the same meaning in this Exhibit "A". The rules of construction set forth in Article I.B. of the Plan shall likewise apply to this Exhibit "A".

2. <u>Estate Claims Reserved, Retained and Preserved</u>. All Estate Claims are hereby reserved, retained and preserved, and shall all be transferred to, and vested in, the Reorganized Debtor pursuant to this Plan, and shall include without limitation all of the Estate Claims described below. In reserving, retaining, and preserving Estate Claims against any named Person or category of Persons, it is the intent of this Plan to so reserve, retain, and preserve any and all Estate Claim against each such Person or category of Persons, including all such Estate Claims pursuant to any applicable common law, based on any contract or agreement or based upon any law, statute or regulation of any political entity, including the United States and any state or political subdivision thereof, as well as all applicable remedies, whether legal or equitable. Without limiting the generality of the foregoing, the reservation, retention, and preservation of Estate Claims against any Person, and the term "<u>Estate Claims</u>," shall encompass all Estate Claims against any such Person, including without limitation, all such Estate Claims for breach of contract, all rights to enforce any contract, any form of estoppel, fraud, constructive fraud, abuse of process, malicious prosecution, defamation, libel, slander, conversion, trespass, intentional infliction of emotional distress or other harm, negligence, gross negligence, breach of any duty owed under either applicable law or any contract, breach of any fiduciary duty or duty of loyalty or due care, aiding and/or abetting breach of fiduciary duty, aiding and/or abetting breach of duty of loyalty or due care, alter ego, veil piercing, self-dealing, usurpation of corporate opportunity, ultra vires, turnover of Estate Assets, unauthorized use of Estate Assets, including intellectual property rights or Assets owned by the Debtors or Chapter 11 Trustee, quantum merit, tortious interference, duress, unconscionability, undue influence, and unjust enrichment, as well as any cause of action for conspiracy to commit any unlawful act, aiding and/or abetting any such unlawful act, or assisting, encouraging, and/or participating in any such unlawful act, or claims arising from or relating to the filing of the involuntary bankruptcy petitions against the Debtors.

3. <u>Highland Claims</u>. All Estate Claims against Highland are reserved, retained and preserved for the benefit of the Estate and Reorganized Debtor, including without limitation all such Estate Claims asserted by the Chapter 11 Trustee in Adversary Proceeding No. 18-03078-sgj (the "<u>Highland Adversary</u>") and Adversary Proceeding No. 18-03212-sgj (the "<u>Trustee's Adversary</u>"). The Estate Claims against Highland shall include all Estate Claims set forth in paragraph 2 above, including without limitation, the following:

(a) All such Claims asserted by the Chapter 11 Trustee or Estate in, or which could be asserted based on the facts or transactions alleged in, the Highland Adversary;

(b) All such Claims asserted by the Chapter 11 Trustee or Estate in, or which could be asserted based on the facts or transactions alleged in, the Trustee's Adversary;

(c) All such Claims and Defenses asserted by the Chapter 11 Trustee or Estate, or which could be asserted by the Chapter 11 Trustee or Estate, based on the facts or transactions alleged in any other adversary proceedings or Claim Objections filed by the Chapter 11 Trustee or Estate;

(d)     All Avoidance Actions against Highland, including any claims to avoid and recover amounts transferred by the Debtors to Highland under the Shared Services Agreement or Sub-Advisory Agreement;

(e)     All Claims for breach of the Shared Services Agreement or Sub-Advisory Agreement;

(f)     All Claims against Highland for amounts paid by the Debtors to Highland under the Shared Services Agreement and Sub-Advisory Agreement, including any Claim that Highland overcharged Acis LP for services under such agreements, charged excessive fees in violation of Acis LP's limited partnership agreement and/or Acis GP's limited liability company agreement, and/or that the Shared Services Agreement and Sub-Advisory Agreement or any related or predecessor agreements are void or voidable based on ultra vires or any other theories of avoidance and recovery, including turnover, conversion and Avoidance Actions under the Bankruptcy Code;

(g)     All Claims for breach of the PMAs or the Indentures;

(h)     All Claims for breach of fiduciary duty or duty of loyalty or due care owed to the Debtors or Chapter 11 Trustee;

(i)     All Claims for aiding and/or abetting breach of fiduciary duty, breach of duty loyalty or due care, or any other unlawful act;

(j)     All Clams for usurpation of a corporate opportunity belonging to either of the Debtors, including in relation to Acis CLO 2017-7, Ltd and any other Acis CLOs;

(k)     All claims for tortious interference, including in relation to Universal-Investment-Luxembourg S.A. and BayVK R2 Lux S.A., SICAV-FIS;

(l)     All Claims against Highland for the turnover of Estate Assets, including Estate property that the Chapter 11 Trustee may use, sell or lease under section 363 of the Bankruptcy Code including, without limitation, any intellectual property rights or Assets owned by the Debtors or Estate, as well as the turnover of any books, documents, records and papers relating to the Debtors' property or financial affairs;

(m)     All Claims against Highland for the unauthorized use of Estate Assets including, without limitation, any intellectual property rights or Assets owned by the Debtors or Estate;

(n)     All Claims, rights or remedies for Equitable Subordination or Recharacterization of any Claim by Highland against the Debtors, Chapter 11 Trustee, or Estate;

(o)     All Claims based on alter ego or rights to pierce the corporate veil of Acis LP as to any Person, including as against Highland or any Affiliates thereof, James D. Dondero, Mark K. Okada, or any other officers, directors, equity interest holders, or Persons otherwise in control of Acis LP;

(p)     All Claims based on alter ego or rights to pierce the corporate veil of Highland as to any Person, including as against any Affiliates of Highland, James D. Dondero, Mark K. Okada, or any other officers, directors, equity interest holders, or Persons otherwise in

control of Highland, and,

(q)     All Claims for conspiracy to commit any unlawful act, aiding and/or abetting any such unlawful act, or assisting, encouraging, and/or participating in any such unlawful act.

4.     <u>HCLOF Claims</u>.  All Estate Claims against HCLOF are reserved, retained and preserved for the benefit of the Estate and Reorganized Debtor, including without limitation all such Estate Claims asserted by the Chapter 11 Trustee in the Highland Adversary and the Trustee's Adversary.  The Estate Claims against HCLOF shall include all Estate Claims set forth in paragraph 2 above, including without limitation, the following:

(a)     All such Claims against HCLOF asserted by the Chapter 11 Trustee or Estate in, or which could be asserted based on the facts or transactions alleged in, the Highland Adversary;

(b)     All such Claims against HCLOF asserted by the Chapter 11 Trustee or Estate in, or which could be asserted based on the facts or transactions alleged in, the Trustee's Adversary;

(c)     All such Claims and Defenses asserted by the Chapter 11 Trustee or Estate, or which could be asserted by the Chapter 11 Trustee or Estate, based on the facts or transactions alleged in any other adversary proceedings or Claim Objections filed by the Chapter 11 Trustee or Estate;

(d)     All Avoidance Actions against HCLOF;

(e)     All Claims for breach of the PMAs or the Indentures;

(f)     All Claims for breach of fiduciary duty or duty of loyalty or due care owed to the Debtors or Chapter 11 Trustee;

(g)     All Claims for aiding and/or abetting breach of fiduciary duty, breach of duty loyalty or due care, or any other unlawful act;

(h)     All Clams for usurpation of a corporate opportunity belonging to either of the Debtors, including in relation to Acis CLO 2017-7, Ltd and any other Acis CLOs;

(i)     All Claims against HCLOF for the turnover of Estate Assets, including Estate property that the Chapter 11 Trustee may use, sell or lease under section 363 of the Bankruptcy Code including, without limitation, any intellectual property rights or Assets owned by the Debtors or Estate, as well as the turnover of any books, documents, records and papers relating to the Debtors' property or financial affairs;

(j)     All Claims against HCLOF for the unauthorized use of Estate Assets including, without limitation, any intellectual property rights or Assets owned by the Debtors or Estate;

(k)     All Claims, rights or remedies for Equitable Subordination or Recharacterization of any Claim by HCLOF against the Debtors, Chapter 11 Trustee, or Estate;

(l)     All Claims based on alter ego or rights to pierce the corporate veil of

HCLOF as to any Person, including as against any Affiliates of HCLOF or Highland, William Scott, Heather Bestwick, or any other officers, directors, equity interest holders, or Persons otherwise in control of HCLOF; and,

(m)     All Claims for conspiracy to commit any unlawful act, aiding and/or abetting any such unlawful act, or assisting, encouraging, and/or participating in any such unlawful act.

5.     <u>Highland HCF Advisor, Ltd. Claims</u>.  All Estate Claims against Highland HCF Advisor, Ltd. ("<u>Highland HCF</u>") are reserved, retained and preserved for the benefit of the Estate and Reorganized Debtor, including without limitation all such Estate Claims asserted by the Chapter 11 Trustee in the Highland Adversary.  The Estate Claims against Highland HCF shall include all Estate Claims set forth in paragraph 2 above, including without limitation, the following:

(a)     All such Claims against Highland HCF asserted by the Chapter 11 Trustee or Estate in, or which could be asserted based on the facts or transactions alleged in, the Highland Adversary;

(b)     All such Claims against Highland HCF asserted by the Chapter 11 Trustee or Estate in, or which could be asserted based on the facts or transactions alleged in, the Trustee's Adversary;

(c)     All such Claims and Defenses asserted by the Chapter 11 Trustee or Estate, or which could be asserted by the Chapter 11 Trustee or Estate, based on the facts or transactions alleged in any other adversary proceedings or Claim Objections filed by the Chapter 11 Trustee or Estate;

(d)     All Avoidance Actions against Highland HCF;

(e)     All Claims for breach of fiduciary duty or duty of loyalty or due care owed to the Debtors or Chapter 11 Trustee;

(f)     All Claims for aiding and/or abetting breach of fiduciary duty, breach of duty loyalty or due care, or any other unlawful act;

(g)     All Clams for usurpation of a corporate opportunity belonging to either of the Debtors, including in relation to Acis CLO 2017-7, Ltd and any other Acis CLOs;

(h)     All Claims against Highland HCF for the turnover of Estate Assets, including Estate property that the Chapter 11 Trustee may use, sell or lease under section 363 of the Bankruptcy Code including, without limitation, any intellectual property rights or Assets owned by the Debtors or Estate, as well as the turnover of any books, documents, records and papers relating to the Debtors' property or financial affairs;

(i)     All Claims against Highland HCF for the unauthorized use of Estate Assets including, without limitation, any intellectual property rights or Assets owned by the Debtors or Estate;

(j)     All Claims, rights or remedies for Equitable Subordination or Recharacterization of any Claim by Highland HCF against the Debtors, Chapter 11 Trustee, or Estate;

(k)     All Claims based on alter ego or rights to pierce the corporate veil of Highland HCF as to any Person, including as against any Affiliates of Highland HCF or Highland, or any other officers, directors, equity interest holders, or Persons otherwise in control of Highland HCF; and,

(l)     All Claims for conspiracy to commit any unlawful act, aiding and/or abetting any such unlawful act, or assisting, encouraging, and/or participating in any such unlawful act.

6.     <u>Highland CLO Management, Ltd. Claims</u>.  All Estate Claims against Highland CLO Management, Ltd. ("<u>Highland CLOM</u>") are reserved, retained and preserved for the benefit of the Estate and Reorganized Debtor, including without limitation all such Estate Claims asserted by the Chapter 11 Trustee in the Highland Adversary.  The Estate Claims against Highland CLOM shall include all Estate Claims set forth in paragraph 2 above, including without limitation the following:

(a)     All such Claims against Highland CLOM asserted by the Chapter 11 Trustee or Estate in, or which could be asserted based on the facts or transactions alleged in, the Highland Adversary;

(b)     All such Claims against Highland CLOM asserted by the Chapter 11 Trustee or Estate in, or which could be asserted based on the facts or transactions alleged in, the Trustee's Adversary;

(c)     All such Claims and Defenses asserted by the Chapter 11 Trustee or Estate, or which could be asserted by the Chapter 11 Trustee or Estate, based on the facts or transactions alleged in any other adversary proceedings or Claim Objections filed by the Chapter 11 Trustee or Estate;

(d)     All Avoidance Actions against Highland CLOM;

(e)     All Claims for breach of fiduciary duty or duty of loyalty or due care owed to the Debtors or Chapter 11 Trustee;

(f)     All Claims for aiding and/or abetting breach of fiduciary duty, breach of duty loyalty or due care, or any other unlawful act;

(g)     All Clams for usurpation of a corporate opportunity belonging to either of the Debtors, including in relation to Acis CLO 2017-7, Ltd and any other Acis CLOs;

(h)     All Claims against Highland CLOM for the turnover of Estate Assets, including Estate property that the Chapter 11 Trustee may use, sell or lease under section 363 of the Bankruptcy Code including, without limitation, any intellectual property rights or Assets owned by the Debtors or Estate, as well as the turnover of any books, documents, records and papers relating to the Debtors' property or financial affairs;

(i)     All Claims against Highland CLOM for the unauthorized use of Estate Assets including, without limitation, any intellectual property rights or Assets owned by the Debtors or Estate;

(j)     All Claims, rights or remedies for Equitable Subordination or Recharacterization of any Claim by Highland CLOM against the Debtors, Chapter 11 Trustee, or

Estate;

(k)     All Claims based on alter ego or rights to pierce the corporate veil of Highland CLOM as to any Person, including as against any Affiliates of Highland CLOM or Highland, or any other officers, directors, equity interest holders, or Persons otherwise in control of Highland CLOM; and,

(l)     All Claims for conspiracy to commit any unlawful act, aiding and/or abetting any such unlawful act, or assisting, encouraging, and/or participating in any such unlawful act.

7.     CLO Holdco, Ltd. Claims.  All Estate Claims against CLO Holdco, Ltd. ("CLO Holdco") are reserved, retained and preserved for the benefit of the Estate and Reorganized Debtor, including without limitation all such Estate Claims asserted by the Chapter 11 Trustee in the Trustee's Adversary.  The Estate Claims against CLO Holdco shall include all Estate Claims set forth in paragraph 2 above, including without limitation, the following:

(a)     All such Claims against CLO Holdco asserted by the Chapter 11 Trustee or Estate in, or which could be asserted based on the facts or transactions alleged in, the Highland Adversary;

(b)     All such Claims against CLO Holdco asserted by the Chapter 11 Trustee or Estate in, or which could be asserted based on the facts or transactions alleged in, the Trustee's Adversary;

(c)     All such Claims and Defenses asserted by the Chapter 11 Trustee or Estate, or which could be asserted by the Chapter 11 Trustee or Estate, based on the facts or transactions alleged in any other adversary proceedings or Claim Objections filed by the Chapter 11 Trustee or Estate;

(d)     All Avoidance Actions against CLO Holdco;

(e)     All Claims for breach of fiduciary duty or duty of loyalty or due care owed to the Debtors or Chapter 11 Trustee;

(f)     All Claims for aiding and/or abetting breach of fiduciary duty, breach of duty loyalty or due care, or any other unlawful act;

(g)     All Clams for usurpation of a corporate opportunity belonging to either of the Debtors, including in relation to Acis CLO 2017-7, Ltd and any other Acis CLOs;

(h)     All Claims against CLO Holdco for the turnover of Estate Assets, including Estate property that the Chapter 11 Trustee may use, sell or lease under section 363 of the Bankruptcy Code including, without limitation, any intellectual property rights or Assets owned by the Debtors or Estate, as well as the turnover of any books, documents, records and papers relating to the Debtors' property or financial affairs;

(i)     All Claims against CLO Holdco for the unauthorized use of Estate Assets including, without limitation, any intellectual property rights or Assets owned by the Debtors or Estate;

(j)     All Claims, rights or remedies for Equitable Subordination or Recharacterization of any Claim by Highland against the Debtors, Chapter 11 Trustee, or Estate;

(k)     All Claims based on alter ego or rights to pierce the corporate veil of CLO Holdco as to any Person, including as against any Affiliates of CLO Holdco or Highland, or any other officers, directors, equity interest holders, or Persons otherwise in control of CLO Holdco; and,

(l)     All Claims for conspiracy to commit any unlawful act, aiding and/or abetting any such unlawful act, or assisting, encouraging, and/or participating in any such unlawful act.

8.      <u>Neutra, Ltd. Claims</u>.  All Estate Claims against Neutra, Ltd. ("<u>Neutra</u>") are reserved, retained and preserved for the benefit of the Estate and Reorganized Debtor, including without limitation all such Estate Claims asserted by the Chapter 11 Trustee in the Trustee's Adversary.  The Estate Claims against Neutra shall include all Estate Claims set forth in paragraph 2 above, including without limitation the following:

(a)     All such Claims against Neutra asserted by the Chapter 11 Trustee or Estate in, or which could be asserted based on the facts or transactions alleged in, the Highland Adversary;

(b)     All such Claims against Neutra asserted by the Chapter 11 Trustee or Estate in, or which could be asserted based on the facts or transactions alleged in, the Trustee's Adversary;

(c)     All such Claims and Defenses asserted by the Chapter 11 Trustee or Estate, or which could be asserted by the Chapter 11 Trustee or Estate, based on the facts or transactions alleged in any other adversary proceedings or Claim Objections filed by the Chapter 11 Trustee or Estate;

(d)     All Avoidance Actions against Neutra;

(e)     All Claims for breach of fiduciary or duty of loyalty or due care owed to the Debtors or Chapter 11 Trustee;

(f)     All Claims for aiding and/or abetting breach of fiduciary duty, breach of duty loyalty or due care, or any other unlawful act;

(g)     All Clams for usurpation of a corporate opportunity belonging to either of the Debtors, including in relation to Acis CLO 2017-7, Ltd and any other Acis CLOs;

(h)     All Claims against Neutra for the turnover of Estate Assets, including Estate property that the Chapter 11 Trustee may use, sell or lease under section 363 of the Bankruptcy Code including, without limitation, any intellectual property rights or Assets owned by the Debtors or Estate, as well as the turnover of any books, documents, records and papers relating to the Debtors' property or financial affairs;

(i)     All Claims against Neutra for the unauthorized use of Estate Assets including, without limitation, any intellectual property rights or Assets owned by the Debtors or Estate;

(j)     All Claims, rights or remedies for Equitable Subordination or Recharacterization of any Claim by Neutra against the Debtors, Chapter 11 Trustee, or Estate;

(k)     All Claims based on alter ego or rights to pierce the corporate veil of Acis LP as to any Person, including as against Neutra, Highland, or any Affiliates thereof, James D. Dondero, Mark K. Okada, or any other officers, directors, equity interest holders, or Persons otherwise in control of Acis LP;

(l)     All Claims based on alter ego or rights to pierce the corporate veil of Neutra as to any Person, including as against any Affiliates of Neutra or Highland, or any other officers, directors, equity interest holders, or Persons otherwise in control of Neutra; and,

(m)     All Claims for conspiracy to commit any unlawful act, aiding and/or abetting any such unlawful act, or assisting, encouraging, and/or participating in any such unlawful act.

9.     <u>Claims against Issuers, Co-Issuers and Indenture Trustee</u>.  All Estate Claims against CLO-3, CLO-4, CLO-5, and CLO-6 (collectively, the "<u>Issuers</u>"), Acis CLO 2014-3 LLC, Acis CLO 2014-4 LLC, Acis CLO 2014-5 LLC, and Acis CLO 2015-6 LLC (collectively, the "<u>Co-Issuers</u>"), and the Indenture Trustee are reserved, retained and preserved for the benefit of the Estate and Reorganized Debtor, including without limitation all such Estate Claims asserted by the Chapter 11 Trustee in the Trustee's Adversary.  The Estate Claims against the Issuers, Co-Issuers and/or Indenture Trustee shall include all Estate Claims set forth in paragraph 2 above, including without limitation the following:

(a)     All such Claims against the Issuers, Co-Issuers, and/or Indenture Trustee asserted by the Chapter 11 Trustee or Estate in, or which could be asserted based on the facts or transactions alleged in, the Highland Adversary;

(b)     All such Claims against the Issuers, Co-Issuers, and/or Indenture Trustee asserted by the Chapter 11 Trustee or Estate in, or which could be asserted based on the facts or transactions alleged in, the Trustee's Adversary;

(c)     All such Claims and Defenses asserted by the Chapter 11 Trustee or Estate, or which could be asserted by the Chapter 11 Trustee or Estate, based on the facts or transactions alleged in any other adversary proceedings or Claim Objections filed by the Chapter 11 Trustee or Estate;

(d)     All Avoidance Actions against the Issuers, Co-Issuers and/or Indenture Trustee;

(e)     All Claims for breach of the Indentures, PMAs or any other agreements between Acis LP and the Issuers, Co-Issuers, and/or Indenture Trustee;

(f)     All Claims for breach of fiduciary duty or duty of loyalty or due care owed to the Debtors or Chapter 11 Trustee;

(g)     All Claims for aiding and/or abetting breach of fiduciary duty, breach of duty loyalty or due care, or any other unlawful act;

(h)     All Clams for usurpation of a corporate opportunity belonging to either of the Debtors, including in relation to Acis CLO 2017-7, Ltd and any other Acis CLOs;

(i)       All Claims against the Issuers, Co-Issuers and/or Indenture Trustee for the turnover of Estate Assets, including Estate property that the Chapter 11 Trustee may use, sell or lease under section 363 of the Bankruptcy Code including, without limitation, any intellectual property rights or Assets owned by the Debtors or Estate, as well as the turnover of any books, documents, records and papers relating to the Debtors' property or financial affairs;

(j)       All Claims against the Issuers, Co-Issuers and/or Indenture Trustee for the unauthorized use of Estate Assets including, without limitation, any intellectual property rights or Assets owned by the Debtors or Estate;

(k)       All Claims, rights or remedies for Equitable Subordination or Recharacterization of any Claim by the Issuers or Co-Issuers against the Debtors, Chapter 11 Trustee, or Estate; and,

(l)       All Claims for conspiracy to commit any unlawful act, aiding and/or abetting any such unlawful act, or assisting, encouraging, and/or participating in any such unlawful act.

10.     <u>Highland Affiliate Claims</u>.  All Estate Claims against any Affiliates of Highland are reserved, retained and preserved for the benefit of the Estate and Reorganized Debtor, including without limitation all such Estate Claims asserted by the Chapter 11 Trustee in the Highland Adversary and the Trustee's Adversary.  The Estate Claims against any Affiliates of Highland shall include all Estate Claims set forth in paragraph 2 above, including without limitation the following:

(a)       All such Claims against any Highland Affiliate asserted by the Chapter 11 Trustee or Estate in, or which could be asserted based on the facts or transactions alleged in, the Highland Adversary;

(b)       All such Claims against any Highland Affiliate asserted by the Chapter 11 Trustee or Estate in, or which could be asserted based on the facts or transactions alleged in, the Trustee's Adversary;

(c)       All such Claims and Defenses asserted by the Chapter 11 Trustee or Estate, or which could be asserted by the Chapter 11 Trustee or Estate, based on the facts or transactions alleged in any other adversary proceedings or Claim Objections filed by the Chapter 11 Trustee or Estate;

(d)       All Avoidance Actions against any Highland Affiliate;

(e)       All Claims for breach of fiduciary duty or duty of loyalty or due care owed to the Debtors or Chapter 11 Trustee;

(f)       All Claims for aiding and/or abetting breach of fiduciary duty, breach of duty loyalty or due care, or any other unlawful act;

(g)       All Clams for usurpation of a corporate opportunity belonging to either of the Debtors, including in relation to Acis CLO 2017-7, Ltd and any other Acis CLOs;

(h)       All Claims against any Highland Affiliate for the turnover of Estate Assets, including Estate property that the Chapter 11 Trustee may use, sell or lease under section 363 of the Bankruptcy Code including, without limitation, any intellectual property rights or Assets

owned by the Debtors or Estate, as well as the turnover of any books, documents, records and papers relating to the Debtors' property or financial affairs;

(i)      All Claims against any Highland Affiliate for the unauthorized use of Estate Assets including, without limitation, any intellectual property rights or Assets owned by the Debtors or Estate;

(j)      All Claims, rights or remedies for Equitable Subordination or Recharacterization of any Claim by any Highland Affiliate against the Debtors, Chapter 11 Trustee, or Estate;

(k)      All Claims based on alter ego or rights to pierce the corporate veil of Acis LP as to any Person, including as against Highland, Neutra, or any Affiliates thereof, James D. Dondero, Mark K. Okada, or any other officers, directors, equity interest holders, or Persons otherwise in control of Acis LP;

(l)      All Claims based on alter ego or rights to pierce the corporate veil of any Highland Affiliate as to any Person, including as against any other Affiliates of Highland or any officers, directors, equity interest holders, or Persons otherwise in control of any Highland Affiliates; and,

(m)      All Claims for conspiracy to commit any unlawful act, aiding and/or abetting any such unlawful act, or assisting, encouraging, and/or participating in any such unlawful act.

11.    _Dondero Claims_.  All Estate Claims as defined in paragraph 2 above against James D. Dondero, individually, are hereby reserved, retained and preserved for the benefit of the Estate and Reorganized Debtor, including without limitation all such Estate Claims against James D. Dondero for fraud, constructive fraud, breach of fiduciary duty, breach of duty of loyalty or due care, aiding and abetting breach of fiduciary duty, aiding and abetting breach of duty of loyalty or due care, self-dealing, ultra vires, conversion, usurpation of corporate opportunity, including in relation to Acis CLO 2017-7, Ltd and any other Acis CLOs, tortious interference, including in relation to Universal-Investment-Luxembourg S.A. and BayVK R2 Lux S.A., SICAV-FIS, conflict of interest, negligence, gross negligence, all Avoidance Actions, breach of contract, breach of the Shared Services Agreement, breach of the Sub-Advisory Agreement, breach of the Debtors' limited partnership agreement or limited liability company agreement, conspiracy to commit any unlawful act, aiding and abetting any unlawful act, and assisting, encouraging, and/or participating in any unlawful act, as well as any Claim to pierce the corporate veil of any entity to hold James D. Dondero individually liable.

12.    _Okada Claims_.  All Estate Claims as defined in paragraph 2 above against Mark K. Okada, individually, are hereby reserved, retained and preserved for the benefit of the Estate and Reorganized Debtor, including without limitation all such Estate Claims against Mark K. Okada for fraud, constructive fraud, breach of fiduciary duty, breach of duty of loyalty or due care, aiding and abetting breach of fiduciary duty, self-dealing, ultra vires, conversion, usurpation of corporate opportunity, including in relation to Acis CLO 2017-7, Ltd and any other Acis CLOs, tortious interference, including in relation to Universal-Investment-Luxembourg S.A. and BayVK R2 Lux S.A., SICAV-FIS, conflict of interest, negligence, gross negligence, all Avoidance Actions, breach of contract, breach of the Shared Services Agreement, breach of the Sub-Advisory Agreement, breach of the Debtors' limited partnership agreement or limited liability company agreement, conspiracy to commit any unlawful act, aiding and abetting any

unlawful act, and assisting, encouraging, and participating in any unlawful act, as well as any Claim to pierce the corporate veil of any entity to hold Mark K. Okada individually liable.

13.     Preference Claims.  All Avoidance Actions pursuant to section 547 of the Bankruptcy Code against any Person are hereby reserved, retained and preserved for the benefit of the Estate and Reorganized Debtor for any payment made to any Person by either of the Debtors within ninety (90) days of the Petition Date (which was January 30, 2018), or made by either of the Debtors to any insider within one (1) year of the Petition Date.  A non-exhaustive list of Persons who are believed to have received payments from either of the Debtors during the 90-day preference period, and the one-year preference period for Insiders, is attached to this **Exhibit "A"** as **Schedule "1"**.  The Plan reserves, retains and preserves for the benefit of the Estate and Reorganized Debtor all potential Claims arising out of or relating to the transfers reflected in **Schedule "1"**, including all Avoidance Actions pursuant to section 547 of the Bankruptcy Code.  All rights and remedies are also reserved. retained and preserved with respect to the transfers reflected in **Schedule "1"** pursuant to section 550 of the Bankruptcy Code.

     **Schedule "1"** reflects transfers made by the Debtors during the 90 days prior to the Petition Date and transfers made by the Debtors to any insiders within one (1) year of the Petition Date.  While the Plan reserves, retains and preserves all Avoidance Actions relating to the transfers reflected in **Schedule "1"**, the Chapter 11 Trustee recognizes that certain of these transfers may not constitute a preferential transfer pursuant to section 547(b) of the Bankruptcy Code as a transfer made in the ordinary course of business transactions or based upon new value subsequently given by the transferee.  Consequently, the listing of a payment on **Schedule "1"** does not necessarily mean that a transferee will ever be sued to avoid and recover the payment, the transfer, or the value thereof, but only that the Plan reserves, retains and preserves all rights (including Avoidance Actions) as to that payment.

14.     Claims Against Officers, Managers and Members.  All Estate Claims as defined in paragraph 2 above are hereby reserved, retained and preserved for the benefit of the Estate and Reorganized Debtor against all present and past officers, employees, members and managers of the Debtors, including all such Estate Causes of Action based on breach of fiduciary duty, aiding and abetting breach of fiduciary duty, breach of duty of loyalty or due care, aiding and abetting breach of duty of loyalty or due care, self-dealing, usurpation of corporate opportunity, gross negligence or conspiracy.  Without limiting the generality of the foregoing, this shall include all D&O Claims as against any present or former officer, director, employee, member, manager, or partner.

15.     Retention of Claims Against Specific Persons or Categories of Persons.  In addition to the foregoing, all Estate Claims as defined in paragraph 2 above are hereby reserved, retained and preserved for the benefit of the Estate and Reorganized Debtor against the following Persons:

     (a)     William Scott;

     (b)     Heather Bestwick;

     (c)     Any other Person who may be so named at a later date by the Reorganized Debtor.

16.     Counterclaims.  All Estate Claims as defined in paragraph 2 above are reserved, retained and preserved for the benefit of the Estate and Reorganized Debtor both as a basis for an affirmative recovery against the Person against whom such Claims are asserted and as a counterclaim or offset against any Person who asserts a Claim against the Estate or Reorganized Debtor.

17.     Piercing the Corporate Veil.  With respect to all Estate Claims against any Person, all rights to pierce or ignore the corporate veil are hereby reserved, retained and preserved for the benefit of the Estate and the Reorganized Debtor.  Without limiting the generality of the foregoing, this shall include: (a) any right to pierce the corporate veil, including reverse piercing, on any theory or basis, including alter ego or any theory of sham to perpetrate a fraud, and (b) any Claim or basis to pierce the corporate veil of any entity with respect to establishing personal liability against James D. Dondero or Mark K. Okada.

18.     Avoidance Actions.  All Avoidance Actions are hereby reserved, retained and preserved as to all Persons.  The reservation, retention and preservation of such Avoidance Actions shall include the reservation, retention and preservation for the benefit of the Estate and Reorganized Debtor of all rights and remedies pursuant to section 550 of the Bankruptcy Code.

19.     Estate Defenses.  All Estate Defenses are hereby reserved, retained and preserved in favor of the Estate and Reorganized Debtor as against any Person asserting any Claim against the Estate.  This includes asserting all Estate Claims as an offset to, or counterclaim or right of recoupment against, any Person asserting a Claim against the Estate. All defenses and affirmative defenses pursuant to applicable law are hereby reserved, retained and preserved for the benefit of the Estate and the Reorganized Debtor, including without limitation, accord and satisfaction, assumption of risk, contributory negligence, duress, estoppel, failure of consideration, fraud, illegality, laches, license, payment, release, *res judicata*, collateral estoppel, statute of frauds, statute of limitations or repose, discovery rule, adverse domination doctrine or similar doctrines, set off, recoupment, waiver, and all other defenses to Claims under the Bankruptcy Code, including under sections 502(b)(4) and 502(d).

20.     Equitable Subordination.  All rights or remedies for Equitable Subordination are hereby reserved, retained and preserved in favor of the Estate and Reorganized Debtor against any Person asserting any Claim against the Estate, including all such rights or remedies pursuant to section 510(c) of the Bankruptcy Code.  Without limiting the generality of the foregoing, this shall include all rights and remedies to Equitable Subordination as to any Claim asserted by Highland, any Affiliates of Highland, or any officers, directors, employees or equity interest owners of the Debtors, Highland, or any Affiliates thereof.

21.     Recharacterization.  All rights or remedies to recharacterize any Claim as an equity interest in either of the Debtors are hereby reserved, retained and preserved in favor of the Estate and Reorganized Debtor against any Person asserting any Claim against the Estate. Without limiting the generality of the foregoing, this shall include all rights and remedies to recharacterize any Claim asserted by Highland, any Affiliates of Highland, or any officers, directors, employees or equity interest owners of the Debtors, Highland, or any Affiliates thereof.

Case 18-30264-sgj11 Doc 1244 Filed 09/07/21 Entered 09/07/21 11:59:05 Page 56 of 255

Case 18-30264-sgj11 Doc 660 Filed 10/25/18 Entered 10/25/18 18:23:08 Page 48 of 62
Schedule A to Exhibit A to
Second Amended Joint Plan for Acis Capital Management, LP and Acis Capital Management GP, LLC

| NAME | ADDRESS | DATE OF PAYMENT | PAYMENT AMOUNT | REASON FOR PAYMENT ON SCHEDULES |
|---|---|---|---|---|
| | | **Payments within 90 Days of Petition Date** | | |
| Highland Capital Management, LP | 300 Crescent Court, Ste. 700 Dallas, TX 75208 | 11/2/2017 | $234,013.63 | Services |
| Highland Capital Management, LP | 300 Crescent Court, Ste. 700 Dallas, TX 75208 | 11/3/2017 | $941,958.57 | Services |
| Highland Capital Management, LP | 300 Crescent Court, Ste. 700 Dallas, TX 75208 | 12/8/2017 | $89,655.14 | Services |
| David Simek | 31 Woodacres Road Brookville, NY 11545 | 11/15/2017 | $2,068.13 | Services |
| David Simek | 31 Woodacres Road Brookville, NY 11545 | 11/30/2017 | $24,266.71 | Services |
| David Simek | 31 Woodacres Road Brookville, NY 11545 | 12/12/2017 | $1,718.79 | Services |
| David Simek | 31 Woodacres Road Brookville, NY 11545 | 12/29/2017 | $25,000.00 | Services |
| FINRA | 1735 K Street, NW Washington, DC 20006 | 11/22/2017 | $70.00 | Suppliers or Vendors |
| Highland CLO Management, Ltd. | PO Box 309, Ugland House Grand Cayman, KY1-1104, Cayman Islands | 12/19/2017 | $2,830,459.22 | Services |
| | | **Payments to Insiders within One Year of Petition Date** | | |
| Highland Capital Management, LP | 300 Crescent Court, Ste. 700 Dallas, TX 75208 | 2/1/2017 | $976,688.47 | Contractual Payment |
| Highland Capital Management, LP | 300 Crescent Court, Ste. 700 Dallas, TX 75208 | 2/1/2017 | $1,096,033.37 | Services |
| Highland Capital Management, LP | 300 Crescent Court, Ste. 700 Dallas, TX 75208 | 2/2/2017 | $3,574.80 | Expense Reimbursement |
| Highland Capital Management, LP | 300 Crescent Court, Ste. 700 Dallas, TX 75208 | 2/14/2017 | $67.44 | Expense Reimbursement |
| Highland Capital Management, LP | 300 Crescent Court, Ste. 700 Dallas, TX 75208 | 4/17/2017 | $315,574.30 | Services |
| Highland Capital Management, LP | 300 Crescent Court, Ste. 700 Dallas, TX 75208 | 4/18/2017 | $438,497.51 | Services |

Case 18-30264-sgj11 Doc 660 Filed 10/25/18 Entered 10/25/18 18:23:08 Page 49 of 62
Schedule 1 to Exhibit A to
Second Amended Joint Plan for Acis Capital Management, LP and Acis Capital Management GP, LLC

| NAME | ADDRESS | DATE OF PAYMENT | PAYMENT AMOUNT | REASON FOR PAYMENT ON SCHEDULES |
|---|---|---|---|---|
| Highland Capital Management, LP | 300 Crescent Court, Ste. 700 Dallas, TX 75208 | 4/18/2017 | $375,855.01 | Contractual Payment |
| Highland Capital Management, LP | 300 Crescent Court, Ste. 700 Dallas, TX 75208 | 4/19/2017 | $330,249.69 | Services |
| Highland Capital Management, LP | 300 Crescent Court, Ste. 700 Dallas, TX 75208 | 5/1/2017 | $974,426.41 | Services |
| Highland Capital Management, LP | 300 Crescent Court, Ste. 700 Dallas, TX 75208 | 5/31/2017 | $2,809,518.47 | Unsecured loan repayments including interest |
| Highland Capital Management, LP | 300 Crescent Court, Ste. 700 Dallas, TX 75208 | 5/31/2017 | $581,036.15 | Services |
| Highland Capital Management, LP | 300 Crescent Court, Ste. 700 Dallas, TX 75208 | 7/18/2017 | $373,167.08 | Contractual Payment |
| Highland Capital Management, LP | 300 Crescent Court, Ste. 700 Dallas, TX 75208 | 8/1/2017 | $971,603.02 | Contractual Payment |
| Highland Capital Management, LP | 300 Crescent Court, Ste. 700 Dallas, TX 75208 | 8/7/2017 | $1,339,422.12 | Services |
| Highland Capital Management, LP | 300 Crescent Court, Ste. 700 Dallas, TX 75208 | 8/16/2017 | $53.41 | Expense Reimbursement |
| Highland Capital Management, LP | 300 Crescent Court, Ste. 700 Dallas, TX 75208 | 10/18/2017 | $372,872.82 | Contractual Payment |
| Highland Capital Management, LP | 300 Crescent Court, Ste. 700 Dallas, TX 75208 | 10/18/2017 | $728,702.26 | Services |
| Highland Capital Management, LP | 300 Crescent Court, Ste. 700 Dallas, TX 75208 | 10/24/2017 | $501,979.18 | Unsecured loan repayments including interest |
| Highland Capital Management, LP | 300 Crescent Court, Ste. 700 Dallas, TX 75208 | 10/25/2017 | $46,648.82 | Expense Reimbursement |
| Highland Capital Management, LP | 300 Crescent Court, Ste. 700 Dallas, TX 75208 | 10/25/2017 | $67,966.85 | Expense Reimbursement |
| Highland Capital Management, LP | 300 Crescent Court, Ste. 700 Dallas, TX 75208 | 11/1/2017 | $967,223.91 | Contractual Payment |

# EXHIBIT B

## TO THIRD AMENDED JOINT PLAN FOR ACIS CAPITAL MANAGEMENT, LP AND ACIS CAPITAL MANAGEMENT GP, LLC

### [EXECUTORY CONTRACTS ASSUMED UNDER THE PLAN]

**EXHIBIT B**

**Executory Contracts and Unexpired Leases**

**to Be Assumed by the Trustee**

| Party | Contract Description | Contract Date | Cure Amount |
|---|---|---|---|
| Acis CLO 2013-1 Chemical Holdings, LLC<br>1209 Orange Street<br>Wilmington, DE 19801 | Limited Liability Company Agreement | October 28, 2016 | $0 |
| Acis CLO 2013-1, Ltd.<br>c/o Estera Trust (f/k/a Appleby Trust)<br>Clifton House 75 Fort St., P.O. Box 1350<br>Grand Cayman, Cayman Islands KY1-1108 | Limited Liability Company Agreement | October 28, 2016 | $0 |
| Acis CLO 2013-1 Ltd.<br>c/o Estera Trust (f/k/a Appleby Trust)<br>Clifton House 75 Fort St., P.O. Box 1350<br>Grand Cayman, Cayman Islands KY1-1108 | Collateral Administration Agreement | March 18, 2013 | $0 |
| U.S. Bank National Association<br>190 S. LaSalle Street, 8th Floor<br>Chicago, IL 60603<br>Attention: Global Corporate Trust –<br>Acis CLO 2013-1 | Collateral Administration Agreement | March 18, 2013 | $0 |
| Acis CLO 2013-1 Ltd.<br>c/o Estera Trust (f/k/a Appleby Trust)<br>Clifton House 75 Fort St., P.O. Box 1350<br>Grand Cayman, Cayman Islands KY1-1108 | Portfolio Management Agreement | March 18, 2013 | $0 |
| Acis CLO 2013-1 Ltd.<br>c/o Estera Trust (f/k/a Appleby Trust)<br>Clifton House 75 Fort St., P.O. Box 1350<br>Grand Cayman, Cayman Islands KY1-1108 | Indenture | March 18, 2013 | $0 |
| Acis CLO 2013-1 LLC<br>850 Library Ave., Suite 204<br>Newark, DE 19711 | Indenture | March 18, 2013 | $0 |

1

**EXHIBIT B**

**Executory Contracts and Unexpired Leases**

**to Be Assumed by the Trustee**

| Party | Contract Description | Contract Date | Cure Amount |
|---|---|---|---|
| U.S. Bank National Association<br>190 S. LaSalle Street, 8th Floor<br>Chicago, IL 60603<br>Attention: Global Corporate Trust –<br>Acis CLO 2013-1 | Indenture | March 18, 2013 | $0 |
| Acis CLO 2013-1 Ltd.<br>c/o Estera Trust (f/k/a Appleby Trust)<br>Clifton House 75 Fort St., P.O. Box 1350<br>Grand Cayman, Cayman Islands KY1-1108 | Supplemental Indenture | February 26, 2014 | $0 |
| Acis CLO 2013-1 LLC<br>850 Library Ave., Suite 204<br>Newark, DE 19711 | Supplemental Indenture | February 26, 2014 | $0 |
| U.S. Bank National Association<br>190 S. LaSalle Street, 8th Floor<br>Chicago, IL 60603<br>Attention: Global Corporate Trust –<br>Acis CLO 2013-1 | Supplemental Indenture | February 26, 2014 | $0 |
| Acis CLO 2013-1, Ltd.<br>c/o Estera Trust (f/k/a Appleby Trust)<br>Clifton House 75 Fort St., P.O. Box 1350<br>Grand Cayman, Cayman Islands KY1-1108 | Governing Documents<br>(Requested from HCM) | -- | $0 |
| Acis CLO 2013-2 Chemical Holdings, LLC<br>1209 Orange Street<br>Wilmington, DE 19801 | Limited Liability Company Agreement<br>(requested from HCM) | -- | $0 |
| Acis CLO 2013-2 Ltd.<br>c/o Estera Trust (f/k/a Appleby Trust)<br>Clifton House 75 Fort St., P.O. Box 1350<br>Grand Cayman, Cayman Islands KY1-1108 | Limited Liability Company Agreement<br>(requested from HCM) | -- | $0 |

2

**EXHIBIT B**
**Executory Contracts and Unexpired Leases**
**to Be Assumed by the Trustee**

| Party | Contract Description | Contract Date | Cure Amount |
|---|---|---|---|
| Acis CLO 2013-2 Ltd.<br>c/o Estera Trust (f/k/a Appleby Trust)<br>Clifton House 75 Fort St., P.O. Box 1350<br>Grand Cayman, Cayman Islands KY1-1108 | Collateral Administration Agreement | October 3, 2013 | $0 |
| The Bank of New York Mellon Trust Co., N.A.<br>601 Travis Street, 16th Floor<br>Houston, Texas 77002<br>Attn: Global Corporate Trust –<br>Acis CLO 2013-2 | Collateral Administration Agreement | October 3, 2013 | $0 |
| Acis CLO 2013-2 Ltd.<br>c/o Estera Trust (f/k/a Appleby Trust)<br>Clifton House 75 Fort St., P.O. Box 1350<br>Grand Cayman, Cayman Islands KY1-1108 | Portfolio Management Agreement | October 3, 2013 | $0 |
| Acis CLO 2013-2 Ltd.<br>c/o Estera Trust (f/k/a Appleby Trust)<br>Clifton House 75 Fort St., P.O. Box 1350<br>Grand Cayman, Cayman Islands KY1-1108 | Indenture | October 3, 2013 | $0 |
| Acis CLO 2013-2 LLC<br>850 Library Ave., Suite 204<br>Newark, DE 19711 | Indenture | October 3, 2013 | $0 |
| The Bank of New York Mellon Trust Co., N.A.<br>601 Travis Street, 16th Floor<br>Houston, Texas 77002<br>Attn: Global Corporate Trust –<br>Acis CLO 2013-2 | Indenture | October 3, 2013 | $0 |
| Acis CLO 2013-2 Ltd.<br>c/o Estera Trust (f/k/a Appleby Trust)<br>Clifton House 75 Fort St., P.O. Box 1350<br>Grand Cayman, Cayman Islands KY1-1108 | Governing Document<br>(requested from HCM) | -- | $0 |

3

**EXHIBIT B**
**Executory Contracts and Unexpired Leases**
**to Be Assumed by the Trustee**

| Party | Contract Description | Contract Date | Cure Amount |
|---|---|---|---|
| Acis CLO 2014-3 Chemical Holdings, LLC<br>1209 Orange Street<br>Wilmington, DE 19801 | Limited Liability Company Agreement | October 28, 2016 | $0 |
| Acis CLO 2014-3 Ltd.<br>c/o MaplesFS Limited<br>P.O. Box 1093, Boundary Hall, Cricket Sq<br>Grand Cayman, Cayman Islands KY1-1102 | Limited Liability Company Agreement | October 28, 2016 | $0 |
| Acis CLO 2014-3 Ltd.<br>c/o MaplesFS Limited<br>P.O. Box 1093, Boundary Hall, Cricket Sq<br>Grand Cayman, Cayman Islands KY1-1102 | Collateral Administration Agreement | February 25, 2014 | $0 |
| U.S. Bank National Association<br>190 S. LaSalle Street, 8th Floor<br>Chicago, IL 60603<br>Attention: Global Corporate Trust –<br>Acis CLO 2014-3 | Collateral Administration Agreement | February 25, 2014 | $0 |
| Acis CLO 2014-3 Ltd.<br>c/o MaplesFS Limited<br>P.O. Box 1093, Boundary Hall, Cricket Sq<br>Grand Cayman, Cayman Islands KY1-1102 | Portfolio Management Agreement | February 25, 2014 | $0 |
| Acis CLO 2014-3 Ltd.<br>c/o MaplesFS Limited<br>P.O. Box 1093, Boundary Hall, Cricket Sq<br>Grand Cayman, Cayman Islands KY1-1102 | Indenture | February 25, 2014 | $0 |
| Acis CLO 2014-3 LLC<br>850 Library Ave., Suite 204<br>Newark, DE 19711 | Indenture | February 25, 2014 | $0 |

4

**EXHIBIT B**

**Executory Contracts and Unexpired Leases**

**to Be Assumed by the Trustee**

| Party | Contract Description | Contract Date | Cure Amount |
|---|---|---|---|
| U.S. Bank National Association<br>190 S. LaSalle Street, 8th Floor<br>Chicago, IL 60603<br>Attention: Global Corporate Trust –<br>Acis CLO 2014-3 | Indenture | February 25, 2014 | $0 |
| Acis CLO 2014-3 Ltd.<br>c/o MaplesFS Limited<br>P.O. Box 1093, Boundary Hall, Cricket Sq<br>Grand Cayman, Cayman Islands KY1-1102 | Memorandum and Articles of Association<br>of Acis CLO 2014-3 Ltd. | December 24, 2013 | $0 |
| Acis CLO 2014-4 Chemical Holdings, LLC<br>1209 Orange Street<br>Wilmington, DE 19801 | Limited Liability Company Agreement | October 28, 2016 | $0 |
| Acis CLO 2014-4 Ltd.<br>c/o MaplesFS Limited<br>P.O. Box 1093, Boundary Hall, Cricket Sq<br>Grand Cayman, Cayman Islands KY1 -1102 | Limited Liability Company Agreement | October 28, 2016 | $0 |
| Acis CLO 2014-4 Ltd.<br>c/o MaplesFS Limited<br>P.O. Box 1093, Boundary Hall, Cricket Sq<br>Grand Cayman, Cayman Islands KY1 -1102 | Collateral Administration Agreement | June 5, 2014 | $0 |
| U.S. Bank National Association<br>190 S. LaSalle Street, 8th Floor<br>Chicago, IL 60603<br>Attention: Global Corporate Trust –<br>Acis CLO 2014-4 | Collateral Administration Agreement | June 5, 2014 | $0 |
| Acis CLO 2014-4 Ltd.<br>c/o MaplesFS Limited<br>P.O. Box 1093, Boundary Hall, Cricket Sq<br>Grand Cayman, Cayman Islands KY1-1102 | Portfolio Management Agreement | June 5, 2014 | $0 |

5

**EXHIBIT B**
**Executory Contracts and Unexpired Leases**
**to Be Assumed by the Trustee**

| Party | Contract Description | Contract Date | Cure Amount |
|---|---|---|---|
| Acis CLO 2014-4 Ltd.<br>c/o MaplesFS Limited<br>P.O. Box 1093, Boundary Hall, Cricket Sq<br>Grand Cayman, Cayman Islands KY1-1102 | Indenture | June 5, 2014 | $0 |
| Acis CLO 2014-4 LLC<br>850 Library Ave.., Suite 204<br>Newark, DE 19711 | Indenture | June 5, 2014 | $0 |
| U.S. Bank National Association<br>190 S. LaSalle Street, 8th Floor<br>Chicago, IL 60603<br>Attention: Global Corporate Trust –<br>Acis CLO 2014-4 | Indenture | June 5, 2014 | $0 |
| Acis CLO 2014-4 Ltd.<br>c/o MaplesFS Limited<br>P.O. Box 1093, Boundary Hall, Cricket Sq<br>Grand Cayman, Cayman Island KY1-1102 | Memorandum and Articles of Association<br>of Acis CLO 2014-4 Ltd. | April 1, 2014 | $0 |
| Acis CLO 2014-5 Chemical Holdings, LLC<br>1209 Orange Street<br>Wilmington, DE 19801 | Limited Liability Company Agreement | October 28, 2016 | $0 |
| Acis CLO 2014-5 Ltd.<br>c/o MaplesFS Limited<br>P.O. Box 1093, Boundary Hall, Cricket Sq<br>Grand Cayman, Cayman Islands KY1-1102 | Limited Liability Company Agreement | October 28, 2016 | $0 |
| Acis CLO 2014-5 Ltd.<br>c/o MaplesFS Limited<br>P.O. Box 1093, Boundary Hall, Cricket Sq<br>Grand Cayman, Cayman Islands KY1-1102 | Collateral Administration Agreement | November 18, 2014 | $0 |

6

**EXHIBIT B**
**Executory Contracts and Unexpired Leases**
**to Be Assumed by the Trustee**

| Party | Contract Description | Contract Date | Cure Amount |
|---|---|---|---|
| U.S. Bank National Association<br>190 S. LaSalle Street, 8th Floor<br>Chicago, IL 60603<br>Attention: Global Corporate Trust –<br>Acis CLO 2014-5 | Collateral Administration Agreement | November 18, 2014 | $0 |
| Acis CLO 2014-5 Ltd.<br>c/o MaplesFS Limited<br>P.O. Box 1093, Boundary Hall, Cricket Sq<br>Grand Cayman, Cayman Islands KY1-1102 | Portfolio Management Agreement | November 18, 2014 | $0 |
| Acis CLO 2014-5 Ltd.<br>c/o MaplesFS Limited<br>P.O. Box 1093, Boundary Hall, Cricket Sq<br>Grand Cayman, Cayman Islands KY1-1102 | Indenture | November 18, 2014 | $0 |
| Acis CLO 2014-5 LLC<br>850 Library Ave.., Suite 204<br>Newark, DE 19711 | Indenture | November 18, 2014 | $0 |
| U.S. Bank National Association<br>190 S. LaSalle Street, 8th Floor<br>Chicago, IL 60603<br>Attention: Global Corporate Trust –<br>Acis CLO 2014-5 | Indenture | November 18, 2014 | $0 |
| Acis CLO 2014-5 Ltd.<br>c/o MaplesFS Limited<br>P.O. Box 1093, Boundary Hall, Cricket Sq<br>Grand Cayman, Cayman Islands KY1-1102 | Memorandum and Articles of Association<br>of Acis CLO 2014-5 Ltd. | August 21, 2014 | $0 |
| Acis CLO 2015-6 Chemical Holdings, LLC<br>1209 Orange Street<br>Wilmington, DE 19801 | Limited Liability Company Agreement | October 28, 2016 | $0 |

7

**EXHIBIT B**

**Executory Contracts and Unexpired Leases**

**to Be Assumed by the Trustee**

| Party | Contract Description | Contract Date | Cure Amount |
|---|---|---|---|
| Acis CLO 2015-6 Ltd. c/o MaplesFS Limited P.O. Box 1093, Boundary Hall, Cricket Sq Grand Cayman, Cayman Islands KY1-1102 | Limited Liability Company Agreement | October 28, 2016 | $0 |
| Acis CLO 2015-6 Ltd. c/o MaplesFS Limited P.O. Box 1093, Boundary Hall, Cricket Sq Grand Cayman, Cayman Islands KY1-1102 | Collateral Administration Agreement | April 16, 2015 | $0 |
| U.S. Bank National Association 190 S. LaSalle Street, 8th Floor Chicago, IL 60603 Attention: Global Corporate Trust – Acis CLO 2015-6 | Collateral Administration Agreement | April 16, 2015 | $0 |
| Acis CLO 2015-6 Ltd. c/o MaplesFS Limited P.O. Box 1093, Boundary Hall, Cricket Sq Grand Cayman, Cayman Islands KY1-1102 | Portfolio Management Agreement | April 16, 2015 | $0 |
| Acis CLO 2015-6 Ltd. c/o MaplesFS Limited P.O. Box 1093, Boundary Hall, Cricket Sq Grand Cayman, Cayman Islands KY1-1102 | Indenture | April 16, 2015 | $0 |
| Acis CLO 2015-6 LLC 850 Library Ave., Suite 204 Newark, DE 19711 | Indenture | April 16, 2015 | $0 |
| U.S. Bank National Association 190 S. LaSalle Street, 8th Floor Chicago, IL 60603 Attention: Global Corporate Trust – Acis CLO 2015-6 | Indenture | April 16, 2015 | $0 |

8

Case 18-30264-sgj11 Doc 660 Filed 10/25/18 Entered 10/25/18 18:23:08 Page 59 of 62

**EXHIBIT B**
**Executory Contracts and Unexpired Leases**
**to Be Assumed by the Trustee**

| Party | Contract Description | Contract Date | Cure Amount |
|---|---|---|---|
| Acis CLO 2015-6 Ltd.<br>P.O. Box 1093, Boundary Hall, Cricket Sq<br>Grand Cayman, KY1-1102, Cayman Islands | Memorandum and Articles of Association of Acis CLO 2015-6 Ltd. | February 11, 2015 | $0 |
| Acis CLO Value Fund II (Cayman), LP.<br>P.O. Box 309, Ugland House<br>Grand Cayman, Cayman Islands KY1-1104 | Investment Management Agreement | May 1, 2016 | $0 |
| Acis CLO Value Fund II GP, LLC<br>P.O. Box. 309, Ugland House<br>Grand Cayman, Cayman Islands KY1-1104 | Investment Management Agreement | May 1, 2016 | $0 |
| Acis CLO Value Fund II, LP.<br>300 Crescent Court<br>Suite 700<br>Dallas, TX 75201 | Investment Management Agreement | May 1, 2016 | $0 |
| Acis CLO Value GP, LLC<br>1209 Orange Street<br>Wilmington, DE 19801 | Limited Liability Company Agreement | July 19, 2010 | $0 |
| Acis CLO Value Master Fund II, LP.<br>P.O. Box 309, Ugland House<br>Grand Cayman, Cayman Islands KY1-1104 | Investment Management Agreement | May 1, 2016 | $0 |
| Acis CLO Value Fund II (Cayman), L.P.<br>P.O. Box 309, Ugland House<br>Grand Cayman, Cayman Islands KY1-1104 | Third Amended and Restated Exempted Limited Partnership Agreement | May 1, 2016 | $0 |
| Acis CLO Value Master Fund II, L.P.<br>P.O. Box 309, Ugland House<br>Grand Cayman, Cayman Islands KY1-1104 | Third Amended and Restated Exempted Limited Partnership Agreement | May 1, 2016 | $0 |
| Acis Loan Funding, Ltd.<br>300 Crescent Court<br>Suite 700<br>Dallas, TX 75201 | FATCA and Non-FATCA Services Agreement | June 23, 2017 | $0 |

9

**EXHIBIT B**

**Executory Contracts and Unexpired Leases**

**to Be Assumed by the Trustee**

| Party | Contract Description | Contract Date | Cure Amount |
|---|---|---|---|
| BayVK R2 Lux S.A., SICAV FIS<br>15 rue de Flaxweiler<br>L-6776 Grevenmacher | Power of Attorney | February 20, 2015 | $0 |
| BayVK R2 Lux S.A., SICAV-FIS<br>15 rue de Flaxweiler<br>L-6776 Grevenmacher | Agreement for the Outsourcing of the Asset Management of BayVK R2 Lux S.A., SICAV-FIS | February 27, 2015 | $0 |
| BayVK R2 Lux S.A., SICAV-FIS<br>15 rue de Flaxweiler<br>L-6776 Grevenmacher | Service Level Agreement | February 27, 2015 | $0 |
| BNP Paribas Securities Services<br>Luxembourg Branch<br>60 Avenue John F. Kennedy<br>1855 Luxembourg | Power of Attorney<br>86578 | February 20, 2015 | $0 |
| Hewett's Island CLO I-R, Ltd.<br>c/o Maples Finance Limited<br>P.O. Box 1093, Queensgate House<br>Grand Cayman, Cayman Islands KY1-1102 | Confidentiality Agreement | April 11, 2011 | $0 |
| Hewett's Island CLO I-R, Ltd.<br>c/o Maples Finance Limited<br>P.O. Box 1093, Queensgate House<br>Grand Cayman, Cayman Islands KY1-1102 | Governing Documents<br>(Requested from HCM) | -- | $0 |
| Hewett's Island CLO I-R, Ltd.<br>c/o Maples Finance Limited<br>P.O. Box 1093, Queensgate House<br>Grand Cayman, Cayman Islands KY1-1102 | Management Agreement | July 18, 2011 | $0 |
| Hewett's Island CLO I-R, Ltd.<br>c/o Maples Finance Limited<br>P.O. Box 1093, Queensgate House<br>Grand Cayman, Cayman Islands KY1-1102 | Collateral Administration Agreement<br>(Requested from HCM) | November 20, 2007 | $0 |

**EXHIBIT B**

**Executory Contracts and Unexpired Leases
to Be Assumed by the Trustee**

| Party | Contract Description | Contract Date | Cure Amount |
|---|---|---|---|
| Hewett's Island CLO 1-R, Ltd.<br>c/o Maples Finance Limited<br>P.O. Box 1093, Queensgate House<br>Grand Cayman, Cayman Islands KY1-1102 | Indenture | November 20, 2007 | $0 |
| Deutsche Bank Trust Company Americas<br>1761 East St. Andrew Place<br>Santa Ana, CA 92705<br>Attn: CDO Business Unit – Hewett's Island<br>CLO 1-R | Indenture | November 20, 2007 | $0 |
| State Street (Guernsey Limited)<br>First Floor, Dorey Court, Admiral Park,<br>St. Peter Port, Guernsey | FATCA and Non-FATCA Services<br>Agreement | June 23, 2017 | $0 |
| U.S. Bank National Association<br>190 S. LaSalle Street, 8th Floor<br>Chicago, IL 60603<br>Attention: Global Corporate Trust –<br>Acis CLO 2015-6 | Confidentiality Agreement | March 5, 2014 | $0 |
| Universal-Investment-Luxembourg S.A.<br>15 rue de Flaxweiler<br>L-6776 Grevenmacher | Agreement for the Outsourcing of the<br>Asset Management of BayVK R2 Lux<br>S.A., SICAV-FIS | February 27, 2015 | $0 |
| Universal-Investment-Luxembourg S.A.<br>15 rue de Flaxweiler<br>L-6776 Grevenmacher | Power of Attorney | February 20, 2015 | $0 |
| Universal-Investment-Luxembourg S.A.<br>15 rue de Flaxweiler<br>L-6776 Grevenmacher | Service Level Agreement | February 27, 2015 | $0 |
| Acis Loan Funding, Ltd.<br>First Floor, Dorey Court<br>St. Peter Port, Guernsey GY1 6HJ<br>Channel Islands | Portfolio Management Agreement | December 22, 2016 | $0 |

**EXHIBIT B**

**Executory Contracts and Unexpired Leases**

**to Be Assumed by the Trustee**

| Party | Contract Description | Contract Date | Cure Amount |
|---|---|---|---|
| Acis Capital Management, LP<br>c/o *PHELANLAW*<br>4214 Woodfin Drive<br>Dallas, Texas 75220 | Amended and Restated Agreement of Limited Partnership | January 21, 2011 | $0 |
| Acis Capital Management GP, LLC<br>c/o *PHELANLAW*<br>4214 Woodfin Drive<br>Dallas, Texas 75220 | Amended and Restated Limited Liability Company Agreement | January 21, 2011 | $0 |

For the avoidance of doubt, to the extent not otherwise included above, the Trustee intends to assume any additional executory contracts that relate to the funds set forth below as may be necessary or beneficial to the Reorganized Debtor under the Plan:

1. Acis CLO 2013-1, Ltd.
2. Acis CLO 2013-2, Ltd.
3. Acis CLO 2014-3, Ltd.
4. Acis CLO 2014-4, Ltd.
5. Acis CLO 2014-5, Ltd.
6. Acis CLO 2015-6, Ltd.
7. Acis CLO Value Fund II, L.P.
8. Acis CLO Value Fund II (Cayman), L.P.
9. Acis CLO Master Fund II, L.P.
10. BayVK R2 Lux S.A., SICAV FIS
11. Hewitt's Island CLO 1-R, Ltd.
12. Acis Loan Funding, Ltd.

The Trustee reserves the right to amend or supplement this Exhibit B.

12

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION**

| | | |
|---|---|---|
| IN RE: | § | **Case No. 18-30264-SGJ-11** |
| | § | **Case No. 18-30265-SGJ-11** |
| **ACIS CAPITAL MANAGEMENT, L.P.,** | § | |
| **ACIS CAPITAL MANAGEMENT GP, LLC,** | § | **(Jointly Administered Under Case** |
| | § | **No. 18-30264-SGJ-11)** |
| **DEBTORS.** | § | |
| | § | **Chapter 11** |

**DISCLOSURE STATEMENT PURSUANT TO SECTION 1125 OF THE UNITED STATES
BANKRUPTCY CODE WITH RESPECT TO THE THIRD AMENDED JOINT PLAN FOR
<u>ACIS CAPITAL MANAGEMENT, L.P. AND ACIS CAPITAL MANAGEMENT GP, LLC</u>**

Jeff P. Prostok – State Bar No. 16352500
J. Robert Forshey – State Bar No. 07264200
Suzanne K. Rosen – State Bar No. 00798518
Matthew G. Maben – State Bar No. 24037008
**FORSHEY & PROSTOK LLP**
777 Main St., Suite 1290
Ft. Worth, TX 76102
Telephone: (817) 877-8855
Facsimile: (817) 877-4151
jprostok@forsheyprostok.com
bforshey@forsheyprostok.com
srosen@forsheyprostok.com
mmaben@forsheyprostok.com

**COUNSEL FOR ROBIN PHELAN,
CHAPTER 11 TRUSTEE**

Rakhee V. Patel – State Bar No. 00797213
Phillip Lamberson – State Bar No. 00794134
Joe Wielebinski – State Bar No. 21432400
Annmarie Chiarello – State Bar No. 24097496
**WINSTEAD PC**
500 Winstead Building
2728 N. Harwood Street
Dallas, Texas 75201
Telephone: (214) 745-5400
Facsimile:  (214) 745-5390
rpatel@winstead.com
plamberson@winstead.com
jwielebinski@winstead.com
achiarello@winstead.com

**SPECIAL COUNSEL FOR ROBIN PHELAN,
CHAPTER 11 TRUSTEE**

Dated:    October 25, 2018
              Dallas, Texas

Robin Phelan, as Chapter 11 Trustee for Acis Capital Management, L.P. ("Acis LP") and Acis Capital Management GP, LLC ("Acis GP," and together with Acis LP, the "Debtors"), the Debtors in the above-captioned jointly-administered chapter 11 case, hereby submits this Disclosure Statement Pursuant to Section 1125 of the United States Bankruptcy Code with Respect to the Third Amended Joint Plan for Acis Capital Management, L.P. and Acis Capital Management GP, LLC (the "Disclosure Statement"). This Disclosure Statement is to be used in connection with the solicitation of votes on the Third Amended Joint Plan for Acis Capital Management, L.P. and Acis Capital Management GP, LLC dated October 25, 2018, as modified, altered, amended or modified from time to time (the "Plan"). A copy of the Plan is attached hereto as **Exhibit "1"**. Unless otherwise defined herein, terms used herein have the meanings ascribed thereto in the Plan (see Article I of the Plan). Consequently, parties-in-interest are urged to carefully review the Plan in conjunction with this Disclosure Statement.

For a general summary of the proposed treatment of Claims or Interests under the Plan, please see the chart beginning on page 3 below.

## I. <u>NOTICE TO HOLDERS OF CLAIMS</u>

A.      <u>Generally</u>

The purpose of this Disclosure Statement is to enable Creditors whose Claims are Impaired to make an informed decision in exercising their right to vote to accept or reject the Plan.

THIS DISCLOSURE STATEMENT CONTAINS INFORMATION THAT MAY BEAR UPON YOUR DECISION TO ACCEPT OR REJECT THE PLAN. PLEASE READ THIS DOCUMENT WITH CARE.

On October 25, 2018, the Bankruptcy Court entered an *Order (I) Conditionally Approving Disclosure Statement, (II) Scheduling Combined Hearing on Final Approval of Disclosure Statement and Confirmation of Second Amended Plan, and Setting Related Deadlines, (III) Approving Forms for Voting and Notice, and (IV) Approving Related Matters* [Docket No. 659] (the "Solicitation Order"). Pursuant to section 105(d) of the Bankruptcy Code and Rule 3017 of the Federal Rules of Bankruptcy Procedure, the Solicitation Order (a) conditionally approved this Disclosure Statement, (b) set a combined hearing for final approval of this Disclosure Statement and confirmation of the Plan, (c) approved voting procedures, materials for solicitation of votes on the Plan, and form of notice, and (d) granted related relief, including establishment of certain deadlines relating to final approval of this Disclosure Statement and confirmation of the Plan. A copy of the Solicitation Order is included in the materials accompanying this Disclosure Statement. CONDITIONAL APPROVAL OF THIS DISCLOSURE STATEMENT BY THE BANKRUPTCY COURT DOES NOT CONSTITUTE A FINAL DETERMINATION BY THE BANKRUPTCY COURT THAT THE DISCLOSURE STATEMENT CONTAINS ADEQUATE INFORMATION AS REQUIRED BY SECTION 1125 OF THE BANKRUPTCY CODE OR A DETERMINATION REGARDING THE FAIRNESS OR MERITS OF THE PLAN.

The statements contained in the Disclosure Statement are made as of the date hereof unless another time is specified, and neither delivery of the Disclosure Statement nor any exchange of rights made in connection with the Plan shall, under any circumstances, create an implication that there has not been any change in the information set forth herein since the date the Disclosure Statement and the materials relied on in preparation of the Disclosure Statement

were compiled.

For the convenience of Creditors and parties-in-interest, this Disclosure Statement summarizes the terms of the Plan, but the Plan itself qualifies all summaries. This Disclosure Statement is qualified in its entirety by the terms of the Plan. If any inconsistency exists between the Plan and the Disclosure Statement, the terms of the Plan are controlling. In the event of conflict between the Plan and Confirmation Order, the Confirmation Order will control.

Each Claimant should consult the Claimant's individual attorney, accountant and/or financial advisor as to the effect of the Plan on such Claimant.

Each holder of a Claim or Interest entitled to vote to accept or reject the Plan should read this Disclosure Statement and the Plan in their entirety before voting. No solicitation of votes to accept or reject the Plan may be made except pursuant to this Disclosure Statement and section 1125 of the Bankruptcy Code. Except for the Chapter 11 Trustee, the Debtors' Estate and their professionals, no person has been authorized to use or promulgate any information concerning the Debtors, the Debtors' businesses, or the Plan, other than the information contained herein, in connection with the solicitation of votes to accept or reject the Plan. No holder of a Claim entitled to vote on the Plan should rely upon any information relating to the Debtors, the Debtors' businesses, or the Plan other than that contained in this Disclosure Statement and the exhibits thereto. Unless otherwise indicated, the source of all information set forth herein was the Debtors.

The Disclosure Statement may not be relied on for any purpose other than to determine whether to vote in favor of or against the Plan and related options and elections, and nothing contained herein shall constitute an offer to sell or purchase a security as defined by state or Federal securities law or an admission of any fact or liability by any party, or be admissible in any proceeding involving the Debtors or any other party, or be deemed conclusive evidence of the tax or other legal effects of the reorganization of the Debtors on holders of Claims or Interests. Certain of the information contained in the Disclosure Statement, by its nature, is forward looking, contains estimates and assumptions which may prove to be wrong, and contains forecasts which may prove to be wrong or which may be materially different from actual results.

After carefully reviewing this Disclosure Statement, including the attached exhibits, please indicate your acceptance or rejection of the Plan by voting in favor of or against on the enclosed Ballot and returning the Ballot to the address set forth on the Ballot, in the enclosed return envelope so that it will be received by no later than **Monday, November 26, 2018**. If you do not vote to accept the Plan, or if you are the holder of an unimpaired Claim or Interest, you may be bound by the Plan if it is accepted by the requisite holders of Claims or Interests.

TO BE SURE YOUR BALLOT IS COUNTED, YOUR BALLOT MUST BE RECEIVED NO LATER THAN **Monday, November 26, 2018**. For detailed voting instructions and the name, address, and phone number of the person you may contact if you have questions regarding the voting procedures, this process is explained below.

Pursuant to section 105(d) of the Bankruptcy Code and Rule 3017 of the Bankruptcy Rules, the Bankruptcy Court has scheduled the Confirmation Hearing to consider final approval of the Disclosure Statement and confirmation of the Plan on **Tuesday, December 11, 2018 at 9:30 a.m. Central Time**, in the United States Bankruptcy Court for the Northern District of Texas, Dallas Division. The Bankruptcy Court has directed that objections, if any, to final

approval of the Disclosure Statement and confirmation of the Plan be filed and served on or before **Monday, November 26, 2018**. Any response to any objection to final approval of the Disclosure Statement or confirmation of the Plan must be filed on or before **Wednesday, December 5, 2018**.

THE CHAPTER 11 TRUSTEE SUPPORTS CONFIRMATION OF THE PLAN AND URGES ALL HOLDERS OF IMPAIRED CLAIMS AND INTERESTS TO VOTE TO ACCEPT THE PLAN.

B.    **Summary of Treatment under the Plan**

The following is an estimate of the numbers and amounts of classified Claims and Interests to receive treatment under the Plan, and a summary of the proposed treatment of such Claims and Interests under the Plan. Reference should be made to the entire Disclosure Statement and to the Plan for a complete description of the classification and treatment of Claims and Interests.

The Bar Date for filing proofs of Claim was August 1, 2018. The tables below are drawn from the Debtors' Schedules and filed or anticipated proofs of Claim. The final universe of Claims, as actually Allowed, may differ from these tables.

| PLAN | |
|---|---|
| **Class** | **Treatment** |
| **Class 1** – Secured Tax Claims<br><br>**Estimated Amount: Unknown***<br><br>**Estimated Number of Holders: Unknown**<br><br><br><br><br>*As of the date of filing the Disclosure Statement, no governmental entity has filed a secured tax claim, and the Chapter 11 Trustee is not aware of the existence of any such claim. | **Unimpaired**<br><br>Each holder of an Allowed Secured Tax Claim shall receive (a) one Cash payment in an amount equal to the principal amount of such Allowed Secured Tax Claim, plus interest at the rate and in the manner prescribed by applicable state law from the later of the Petition Date or the first day after the last day on which such Secured Tax Claim may be paid without penalty, on the Initial Distribution Date, or (b) such other treatment as may be agreed to in writing by the holder of the Secured Tax Claim and the Reorganized Debtor. The Liens securing such Secured Tax Claims shall remain unimpaired and unaffected until each such Class 1 Claim is paid in full. All Distributions on account of Allowed Class 1 Claims shall be made by the Reorganized Debtor. Class 1 is unimpaired. Holders of Class 1 Claims are conclusively presumed to have accepted the Plan and, accordingly, are not entitled to vote on the Plan.<br><br>**Estimated Recovery: 100%** |
| **Class 2** – Terry Partially Secured Claim<br><br>**Estimated Amount: $8,168,293.56** | **Impaired**<br><br>In exchange for a one million dollar ($1,000,000.00) reduction in the amount of the Terry Partially Secured |

| PLAN | |
| --- | --- |
| **Class** | **Treatment** |
| **Estimated Number of Holders: 1** | Claim, Terry shall receive one hundred percent (100%) of the equity interests in the Reorganized Debtor as of the Effective Date. The remaining balance of any Allowed portion of the Terry Partially Secured Claim shall be treated and paid as a Class 3 General Unsecured Claim. Class 2 is Impaired. The Holder of the Class 2 Terry Partially Secured Claim is entitled to vote on the Plan.<br><br>**Estimated Recovery: 102%** |
| <u>Class 3</u> **– General Unsecured Claims\***<br><br>**Estimated Amount: $1,341,429.37\***<br><br>**Estimated Number of Holders: 36†**<br><br>\*For purposes of implementing the Plan, including for purposes of voting and distributions to be made under the Plan, the Confirmation Order shall substantively consolidate the Debtors such that each Allowed Claim will be deemed a single obligation of the consolidated Debtors.<br><br>†The estimated amount and estimated number of holders includes disputed claims and contingent, unliquidated claims filed in an unspecified amount. | **Impaired**<br><br>(a)    Each holder of an Allowed General Unsecured Claim shall receive a promissory note issued by the Reorganized Debtor (each an "<u>Unsecured Cash Flow Note</u>") on the later of (a) that date that is as soon as practicable after the Effective Date, or (b) that date that is as soon as practicable after such holder's General Unsecured Claim becomes an Allowed Class 3 Claim. Each Unsecured Cash Flow Note shall be dated as of the Effective Date, bear interest at the Plan Rate and shall mature on that date that is the three (3) years after the Effective Date.<br><br>(b)    To the extent of Available Cash, the Reorganized Debtor shall make substantially equal quarterly Distributions of principal and accrued interest to each holder of an Unsecured Cash Flow Note, with the first such quarterly Distribution being due and payable on the 180th day after the Effective Date. Thereafter, like Distributions shall be made each quarter by the Reorganized Debtor until the Unsecured Cash Flow Note is paid in full. Notwithstanding the foregoing, in the event that an Unsecured Cash Flow Note is first issued more than one hundred eighty (180) days after the Effective Date, the first Distribution made on account of such Unsecured Cash Flow Note shall be made upon the date that the next Distribution would otherwise be due, but such first Distribution shall also include amounts that would have been distributed to the holder of such Unsecured Cash Flow Note had such Unsecured Cash Flow Note been issued prior to ninety (90) days after the Effective Date, such that the first Distribution shall bring all payments current on account of such Unsecured Cash Flow Note. If on any date on which a quarterly Distribution is due to |

| PLAN | |
|---|---|
| **Class** | **Treatment** |
| | the holder of an Unsecured Cash Flow Note the remaining principal and accrued interest owing on account of such Unsecured Cash Flow Note is less than the regular quarterly Distribution amount, the Reorganized Debtor shall make a Distribution to the holder of such Unsecured Cash Flow Note in an amount sufficient to fully satisfy the remaining principal and accrued interest owed, but no more. Nothing contained in the Plan shall preclude the Reorganized Debtor from prepaying any Unsecured Cash Flow Note.<br><br>(c)      If the Reorganized Debtor obtains additional Cash, through litigation recoveries or otherwise, and the Reorganized Debtor determines, in its sole discretion, that the Reorganized Debtor holds Available Cash sufficient to allow one or more Pro Rata Distributions to be made to holders of Allowed Class 3 Claims and Allowed Subclass 4A Claims, the Reorganized Debtor may, but shall not be required to, make one or more Pro Rata Distributions to holders of Allowed Class 3 Claims and Allowed Subclass 4A Claims.  The amount of the Pro Rata Distribution made to each such holder shall be determined as if Class 3 and Subclass 4A constituted a single Class. Any such additional Distributions shall be applied to reduce the outstanding balance of each holder's Unsecured Cash Flow Note.<br><br>(d)      Class 3 is Impaired.  Holders of Class 3 Claims are entitled to vote on the Plan.<br><br>**Estimated Recovery:  102%** |
| <u>Class 4</u> **– Insider Claims**<br><br>**Estimated Amount: $4,672,140.38**<br><br>**Estimated Number of Holders:  1** | **Impaired**<br><br>Holders of Class 4 Insider Claims shall be treated as follows:<br><br>(a)      Class 4 Claims shall be divided into two (2) subclasses.  Subclass 4A shall consist of all Allowed Class 4 claims which are not subject to equitable subordination.  Subclass 4B shall consist of all Class 4 claims which are determined by the Bankruptcy Court to be subject to equitable subordination.  If only a part of a Class 4 Claim is subject to equitable subordination, then the portion of such claim subject |

| PLAN | |
|---|---|
| **Class** | **Treatment** |
| | to equitable subordination shall be included in Subclass 4B and the remainder not subject to equitable subordination shall be included in Subclass 4A.  Subclass 4A and Subclass 4B will vote separately on the Plan, although Subclass 4B is currently an empty class. |
| | (b)     All Class 4 Claims (regardless of which subclass) shall be and remain subject to all Estate Defenses and all Estate Claims, including any rights of offset, recoupment, and/or to an affirmative recovery against the Holder of any Class 4 Claim. |
| | (c)     Each holder of an Allowed Subclass 4A Claim shall receive an Unsecured Cash Flow Note on the later of (a) that date that is as soon as practicable after the Effective Date, or (b) that date that is as soon as practicable after such holder's Subclass 4A Claim becomes an Allowed Subclass 4A Claim.  Each Unsecured Cash Flow Note shall be dated as of the Effective Date, bear interest at the Plan Rate and shall mature on that date that is the three (3) years after the Effective Date. |
| | (d)     To the extent of Available Cash, the Reorganized Debtor shall make substantially equal quarterly Distributions of principal and accrued interest to each holder of an Unsecured Cash Flow Note, with the first such quarterly Distribution being due and payable on the 180th day after the Effective Date.  Thereafter, like Distributions shall be made each quarter by the Reorganized Debtor until the Unsecured Cash Flow Note is paid in full. Notwithstanding the foregoing, in the event that an Unsecured Cash Flow Note is first issued more than one hundred eighty (180) days after the Effective Date, the first Distribution made on account of such Unsecured Cash Flow Note shall be made upon the date that the next Distribution would otherwise be due, but such first Distribution shall also include amounts that would have been distributed to the holder of such Unsecured Cash Flow Note had such Unsecured Cash Flow Note been issued prior to ninety (90) days after the Effective Date, such that the first Distribution shall bring all payments current on account of such Unsecured Cash Flow Note.  If on any date on which a quarterly Distribution is due to the holder of an Unsecured Cash Flow Note the |

| PLAN | |
|---|---|
| **Class** | **Treatment** |
| | remaining principal and accrued interest owing on account of such Unsecured Cash Flow Note is less than the regular quarterly Distribution amount, the Reorganized Debtor shall make a Distribution to the holder of such Unsecured Cash Flow Note in an amount sufficient to fully satisfy the remaining principal and accrued interest owed, but no more. Nothing contained in the Plan shall preclude the Reorganized Debtor from prepaying any Unsecured Cash Flow Note. |
| | (e)    If the Reorganized Debtor obtains additional Cash, through litigation recoveries or otherwise, and the Reorganized Debtor determines, in its sole discretion, that the Reorganized Debtor holds Available Cash sufficient to allow one or more Pro Rata Distributions to be made to holders of Allowed Class 3 Claims and Allowed Subclass 4A Claims, the Reorganized Debtor may, but shall not be required to, make one or more Pro Rata Distributions to holders of Allowed Class 3 Claims and Allowed Subclass 4A Claims.  The amount of the Pro Rata Distribution made to each such holder shall be determined as if Class 3 and Subclass 4A constituted a single Class. Any such additional Distributions shall be applied to reduce the outstanding balance of each holder's Unsecured Cash Flow Note. |
| | (f)    Unless otherwise provided by Order of the Bankruptcy Court, holders of Allowed Subclass 4B claims shall not be entitled to any Distribution from the Reorganized Debtor until all Allowed Claims included in Classes 1 through 3 and Subclass 4A, including all Unsecured Cash Flow Notes, have been paid in full. |
| | (g)    Holders of Allowed Subclass 4B Claims shall receive a subordinated a promissory note issued by the Reorganized Debtor ("<u>Subordinated Unsecured Cash Flow Note</u>") on the later of (a) that date that is as soon as practicable after the Effective Date, or (b) that date that is as soon as practicable after such holder's Subclass 4A Claim becomes an Allowed Subclass 4A Claim.  Each Subordinated Unsecured Cash Flow Note shall be dated as of the Effective Date, bear interest at the Plan Rate and shall mature on the earlier to occur of (i) the date that is two (2) years after the date all Unsecured Cash Flow Notes |

| PLAN | |
|---|---|
| **Class** | **Treatment** |
| | have been paid in full, or (ii) five (5) years after the Effective Date.<br><br>(h)     To the extent of Available Cash, the Reorganized Debtor shall make substantially equal quarterly Distributions of principal and accrued interest to each holder of a Subordinated Unsecured Cash Flow Note, with the first such quarterly Distribution being due and payable on the 90th day after the payment in full of the Unsecured Cash Flow Notes. Thereafter, like Distributions shall be made each quarter by the Reorganized Debtor until the Subordinated Unsecured Cash Flow Note is paid in full. Notwithstanding the foregoing, in the event that a Subordinated Unsecured Cash Flow Note is first issued after payments have been made on one or more other Subordinated Unsecured Cash Flow Notes, the first Distribution made on account of such Subordinated Unsecured Cash Flow Note shall be made upon the date that the next Distribution would otherwise be due, but such first Distribution shall also include amounts that would have been distributed to the holder of such Subordinated Unsecured Cash Flow Note had such Subordinated Unsecured Cash Flow Note been issued at the time the first payment on any Subordinated Unsecured Cash Flow Note was made, such that the first Distribution shall bring all payments current on account of such Subordinated Unsecured Cash Flow Note. If on any date on which a quarterly Distribution is due to the holder of a Subordinated Unsecured Cash Flow Note the remaining principal and accrued interest owing on account of such Subordinated Unsecured Cash Flow Note is less than the regular quarterly Distribution amount, the Reorganized Debtor shall make a Distribution to the holder of such Subordinated Unsecured Cash Flow Note in an amount sufficient to fully satisfy the remaining principal and accrued interest owed, but no more. Nothing contained in the Plan shall preclude the Reorganized Debtor from prepaying any Subordinated Unsecured Cash Flow Note.<br><br>(i)     Subject to section 4.04(f) in the Plan, if the Reorganized Debtor obtains additional Cash, through litigation recoveries or otherwise, and the Reorganized Debtor determines, in its sole discretion, that the Reorganized Debtor holds Available Cash |

| PLAN | |
|---|---|
| **Class** | **Treatment** |
| | sufficient to allow one or more Pro Rata Distributions to be made to holders of Allowed Subclass 4B Claims, the Reorganized Debtor may, but shall not be required to, make one or more Pro Rata Distributions to holders of Allowed Subclass 4B Claims.  Any such additional Distributions shall be applied to reduce the outstanding balance of each holder's Subordinated Unsecured Cash Flow Note. |
| | (j)      The Reorganized Debtor may establish appropriate Reserves as to any Contested Claim included in Class 4. |
| | (k)      Class 4 is Impaired.  Holders of Class 4 Claims are entitled to vote on the Plan. |
| | **Estimated Recovery:  65% - 100%** |
| **Class 5** – Interests | **Impaired** |
| | All Interests in the Debtors shall be extinguished and shall cease to exist as of the Effective Date. The holders of such Interests shall not receive or retain any property on account of such Interests under the Plan. Class 5 is Impaired.  Holders of Class 5 Interests are conclusively presumed to have rejected the Plan and, accordingly, are not entitled to vote on the Plan. |
| | **Estimated Recovery:  None** |

The total universe of Claims, as ultimately Allowed, may be greater or smaller than as reflected in the above analysis.

## II. <u>EXPLANATION OF CHAPTER 11</u>

### A.      <u>Overview of Chapter 11</u>

Chapter 11 is the principal reorganization chapter of the Bankruptcy Code.  Pursuant to chapter 11, a debtor-in-possession attempts to reorganize its business for the benefit of the debtor, its creditors, and other parties-in-interest.  The Debtors' Chapter 11 Cases commenced with the filing of involuntary chapter 7 petitions by Terry on January 30, 2018.  The Bankruptcy Court later converted the cases from chapter 7 to chapter 11 cases.

The commencement of a chapter 11 case creates an estate comprising all the legal and equitable interests of the debtor in property as of the date the petition is filed.  Sections 1101, 1107, and 1108 of the Bankruptcy Code provide that a debtor may continue to operate its

business and remain in possession of its property as a "debtor in possession" unless the bankruptcy court orders the appointment of a trustee.  In the present Chapter 11 Cases, the Chapter 11 Trustee was appointed as Chapter 11 Trustee for the Debtors.

The filing of a chapter 11 petition also triggers the automatic stay provisions of the Bankruptcy Code.  Section 362 of the Bankruptcy Code provides, *inter alia,* for an automatic stay of all attempts to collect pre-petition claims from a debtor or otherwise interfere with its property or business.  Except as otherwise ordered by the bankruptcy court, the automatic stay remains in full force and effect until the effective date of a confirmed plan of reorganization.

The formulation of a plan of reorganization is the principal purpose of a chapter 11 case.  The plan sets forth the means for satisfying the claims against and interests in the debtor.  Generally, unless a trustee is appointed, only the debtor may file a plan during the first 120 days of a chapter 11 case (the "Exclusive Period").  However, section 1121(c)(1) of the Bankruptcy Code terminates the Exclusive Period upon the appointment of a trustee.  Because the Chapter 11 Trustee was appointed as Chapter 11 Trustee for the Debtors, the Exclusive Period in the Chapter 11 Cases has terminated.

**B.    Plan of Reorganization**

Although referred to as a plan of reorganization, a plan may provide anything from a complex restructuring of a debtor's business and its related obligations to a simple liquidation of the debtors' assets.  In the Debtors' Chapter 11 Cases, the Plan proposes a continuation of the Debtors' business operations.

Under the Plan, the business operations of the Debtors will continue after the Effective Date through the Reorganized Debtor.  One hundred percent of the equity interests in the Reorganized Debtor will be owned by Terry.  All of the Debtor's Assets, including the PMAs, all Cash, Estate Accounts Receivable, Estate Claims, and Estate Defenses, shall be transferred to and vested in the Reorganized Debtor.  The Reorganized Debtor will have certain obligations to make Distributions on account of specified Allowed Claims under the Plan.

The Plan provides for the substantive consolidation of the Debtors for purposes of voting and distributions under the Plan, such that any Claim against either of the Debtors will be deemed to have been filed against the consolidated Debtors.

After a plan of reorganization has been filed, the holders of impaired claims against or interests in a debtor are permitted to vote to accept or reject the plan.  Before soliciting acceptances of the proposed plan, section 1125 of the Bankruptcy Code requires a debtor to prepare a disclosure statement containing adequate information of a kind, and in sufficient detail, to enable a hypothetical reasonable investor to make an informed judgment about the plan.  This Disclosure Statement is presented to holders of Claims against and Interests in the Debtors to satisfy the requirements of section 1125 of the Bankruptcy Code.

If all classes of claims and interests accept a plan of reorganization, the bankruptcy court may nonetheless still not confirm the plan unless the court independently determines that the requirements of section 1129 of the Bankruptcy Code have been satisfied.  Section 1129 sets forth the requirements for confirmation of a plan and, among other things, requires that a plan meet the "best interests of creditors" test and be "feasible."  The "best interests of creditors" test generally requires that the value of the consideration to be distributed to the holders of claims and interests under a plan may not be less than those parties would receive if the a debtor was

liquidated pursuant to a hypothetical liquidation occurring under chapter 7 of the Bankruptcy Code. Under the "feasibility" requirement, the court generally must find that there is a reasonable probability that the debtor will be able to meet its obligations under the plan without the need for further financial reorganization.

The Chapter 11 Trustee believes that the Plan satisfies all the applicable requirements of section 1129(a) of the Bankruptcy Code, including, in particular, the "best interests of creditors" test and the "feasibility" requirement. The Chapter 11 Trustee supports confirmation of the Plan and urges all holders of impaired Claims and Interests to accept the Plan.

Chapter 11 does not require that each holder of a claim against or interest in a debtor vote in favor of a plan of reorganization in order for the bankruptcy court to confirm the plan. At a minimum, however, the plan must be accepted by a majority in number and two-thirds in amount of those claims actually voting in at least one class of impaired claims under the plan. The Bankruptcy Code also defines acceptance of the plan by a class of interests (equity securities) as acceptance by holders of two-thirds of the number of shares actually voting. In the Chapter 11 Cases, only the holders of Claims who actually vote will be counted as either accepting or rejecting the Plan.

In addition, classes of claims or interests that are not "impaired" under a plan of reorganization are conclusively presumed to have accepted the plan and thus are not entitled to vote. Accordingly, acceptances of a plan will generally be solicited only from those persons who hold claims or interests in an impaired class. A class is "impaired" if the legal, equitable, or contractual rights attaching to the claims or interests of that class are modified in any way under the plan. However, if holders of the claims or interests in a class do not receive or retain any property on account of such claims or interests, then each such holder is deemed to have voted to reject the plan and does not actually cast a vote to accept or reject the plan.

Under the Plan, Class 1 is unimpaired and presumed to have accepted the Plan. Classes 2, 3, and 4 are impaired and the holders of Claims in such Classes are entitled to vote on the Plan. Although Class 5 Interests are impaired under the Plan, holders of Class 5 Interests in the Debtors shall not receive or retain any property on account of their Interests under the Plan and, therefore, are deemed to have rejected the Plan and will not vote on the Plan.

The bankruptcy court may also confirm a plan of reorganization even though fewer than all the classes of impaired claims and interests accept it. For a plan of reorganization to be confirmed despite its rejection by a class of impaired claims or interests, the proponent of the plan must show, among other things, that the plan does not "discriminate unfairly" and that the plan is "fair and equitable" with respect to each impaired class of claims or interests that has not accepted the plan.

Under section 1129(b) of the Bankruptcy Code, a plan is "fair and equitable" as to a class of rejecting claims if, among other things, the plan provides: (a) with respect to secured claims, that each such holder will receive or retain on account of its claim property that has a value, as of the effective date of the plan, equal to the allowed amount of such claim; and (b) with respect to unsecured claims and interests, that the holder of any claim or interest that is junior to the claims or interests of such class will not receive or retain on account of such junior claim or interest any property at all unless the senior class is paid in full.

A plan does not "discriminate unfairly" against a rejecting class of claims if (a) the relative value of the recovery of such class under the plan does not differ materially from that of any class (or classes) of similarly situated claims, and (b) no senior class of claims is to receive more than 100% of the amount of the claims in such class.

The Chapter 11 Trustee believes that the Plan has been structured so that it will satisfy these requirements as to any rejecting Class of Claims, and can therefore be confirmed, if necessary, over the objection of any Classes of Claims. The Chapter 11 Trustee, however, reserves the right to request confirmation of the Plan under the "cramdown" provisions of section 1129 of the Bankruptcy Code.

## III. <u>THE DEBTORS AND THEIR BUSINESS</u>

Acis LP is a Delaware limited partnership and Acis GP is a Delaware limited liability company. Acis LP is portfolio manager for the Acis CLOs and the Other Acis-Managed Funds. Acis LP manages the Acis CLOs and the Other Acis-Managed Funds through the PMAs or similar agreements. The Acis CLOs and CLO-1 are governed by the Indentures. Acis LP originally contracted out its operations to Highland pursuant to the Shared Services Agreement and Sub-Advisory Agreement. The source of Acis LP's income is fees payable to Acis LP under the PMAs.

Under the Shared Services Agreement, Highland was appointed as the "Staff and Services Provider" for Acis LP for the purpose of performing virtually all aspects of Acis LP's business operations, including, e.g., (a) providing back- and middle- office functions, including accounting, payments, operations, technology and finance, (b) providing legal and general risk analysis, (c) performing Acis LP's obligations under the PMAs and similar agreements, (d) advising regarding valuations or preparing reports relating to the Acis CLOs and the Other Acis-Managed Funds, (e) negotiating documents necessary for the acquisition or disposition of any assets of the Acis CLOs or the Other Acis-Managed Funds, (f) assisting with the marketing of the Acis CLOs and the Other Acis-Managed Funds, (g) assisting in the preparation of any reporting required to be made on the Acis CLOs and the Other Acis-Managed Funds, (h) providing office space, IT services and equipment, (i) providing shared employees, (j) advising on any matters ancillary to the foregoing, and (k) managing the day-to-day business of Acis LP.

Likewise, under the Sub-Advisory Agreement, Highland was appointed as the "Sub-Advisor to [Acis LP]" for the purpose of performing Acis LP's obligations to the Acis CLOs and the Other Acis-Managed Funds under the PMAs or similar agreements including, e.g., (i) making recommendations regarding the general composition and allocation of the Acis CLOs and the Other Acis-Managed Funds, (ii) placing orders for and arranging for investments by or on behalf of the Acis CLOs and the Other Acis-Managed Funds, (iii) negotiating the structure and terms of investment opportunities for the Acis CLOs and the Other Acis-Managed Funds, (iv) performing due diligence on prospective investments by the Acis CLOs and the Other Acis-Managed Funds, (v) providing information regarding and monitoring and servicing the investments in the Acis CLOs and the Other Acis-Managed Funds, (vi) advising regarding credit functions, credit analysis and market research and analysis for the Acis CLOs and the Other Acis-Managed Funds, and (vii) performing any other services required to be performed by Acis LP under the PMAs.

The Bankruptcy Court authorized the Chapter 11 Trustee to terminate the Shared Services Agreement and Sub-Advisory Agreement and engage Brigade Capital Management,

LP ("Brigade")[1] to perform the services previously provided by Highland.  An overview of the Brigade CLO Platform and the terms of the proposal from Brigade to serve as the Sub-Advisor under the Plan are attached hereto as "**Exhibit 2.**"  The Shared Services Agreement and Sub-Advisory Agreement were terminated by the Chapter 11 Trustee on or about August 1, 2018, and the services previously performed by Highland were transitioned to Brigade on an interim basis.

## IV. FEASIBILITY/PROJECTED DISTRIBUTIONS

The Bankruptcy Code conditions confirmation of a plan of reorganization on, among other things, a finding that it is not likely to be followed by the liquidation or the need for further financial reorganization of Debtors, unless such liquidation or reorganization is provided for by the plan.

Under the Plan, Terry shall receive 100% of the equity interests in the Reorganized Debtor in exchange for a $1 million reduction in the amount of the Terry Partially Secured Claim. The PMAs and any other Executory Contracts and Unexpired Leases identified on Exhibit B to the Plan or in the Confirmation Order shall be assumed and the Reorganized Debtor shall, from an after the Effective Date, serve as the portfolio manager with respect to the Acis CLOs and the Other Acis-Managed Funds (and any reset Acis CLOs).  Consistent with Section 15 of the PMAs, the Reorganized Debtor may only be removed as portfolio manager under the assumed PMAs for cause as set forth in the PMAs.  As discussed above, Brigade replaced Highland as the shared services provider and sub-advisor to Acis LP on or about August 1, 2018.  Brigade has agreed to continue to provide shared services and sub-advisory services to the Reorganized Debtor with respect to the Acis CLOs and Other Acis-Managed Funds (and any reset Acis CLOs) subject to a minimum two (2) year term unless otherwise agreed as between the Reorganized Debtor and Brigade.  Consequently, any agreement between the Reorganized Debtor and Brigade shall provide that Brigade cannot be removed without cause for a period of two (2) years except as may be otherwise agreed as between the Reorganized Debtor and Brigade.

HCLOF has maintained that it desires to reset the Acis CLOs.  The Reorganized Debtor, with the assistance of Brigade as its shared services provider and sub-advisor, is prepared to promptly seek to perform such reset transactions as set forth in section 6.08 of the Plan. HCLOF shall have the right to submit one or more notice(s) of Optional Redemption solely for the purpose of effectuating a reset of one or more of the Acis CLOs under section 6.08 of the Plan utilizing Refinancing Proceeds (a "Reset Optional Redemption") for each of the Acis CLOs. If HCLOF requests a Reset Optional Redemption of an Acis CLO, the Reorganized Debtor, with the assistance of Brigade, shall thereafter seek to reset the Acis CLOs, either consecutively or simultaneously, in its good faith business judgment and consistent with then-prevailing market terms; *provided, however*, (i) the Management Fees to be charged by the Reorganized Debtor to any reset Acis CLOs shall remain the same going forward and shall not be increased, and no transaction fee shall be charged by the Reorganized Debtor (other than, for avoidance of doubt, transaction expense reimbursements consistent with market standards), and (ii) HCLOF shall be granted a right of first refusal for any funding of debt or equity required to effectuate a reset

---

[1] Brigade Capital Management ("Brigade") is a global asset management firm with approximately $20 billion of AUM specializing in credit investment strategies including structured credit. Brigade has issued 15 CLOs and currently manages $5.3 billion in CLOs across 12 active transactions. Additionally, the firm manages $3 billion in structured credit investments.

of each of the Acis CLOs. The terms of the Indentures shall control any Reset Optional Redemption. If HCLOF elects not to reset one or more of the Acis CLOs, then the Acis CLOs will continue to be managed in accordance with market standards.

The holders of Allowed Class 3 General Unsecured Claims and Allowed Subclass 4A Insider Claims will receive an Unsecured Cash Flow Note from the Reorganized Debtor, which will bear interest at the Plan Rate and mature three (3) years after the Effective Date. To the extent of Available Cash, the Reorganized Debtor shall make substantially equal quarterly Distributions of principal and accrued interest to each holder of an Unsecured Cash Flow Note, with the first such quarterly Distribution being due and payable on the 180th day after the Effective Date. Thereafter, like Distributions shall be made each quarter by the Reorganized Debtor until the Unsecured Cash Flow Note is paid in full. If the Reorganized Debtor obtains additional Cash, through litigation recoveries or otherwise, and the Reorganized Debtor determines, in its sole discretion, that the Reorganized Debtor holds Available Cash sufficient to allow one or more Pro Rata Distributions to be made to holders of Allowed Class 3 Claims and Allowed Subclass 4A Claims, the Reorganized Debtor may, but shall not be required to, make one or more Pro Rata Distributions to holders of Allowed Class 3 Claims and Allowed Subclass 4A Claims. The amount of the Pro Rata Distribution made to each such holder shall be determined as if Class 3 and Subclass 4A constituted a single Class. Any such additional Distributions shall be applied to reduce the outstanding balance of each holder's Unsecured Cash Flow Note. Finally, unless otherwise provided by Order of the Bankruptcy Court, holders of Allowed Subclass 4B claims shall not be entitled to any Distribution from the Reorganized Debtor until all Allowed Claims included in Classes 1 through 3 and Subclass 4A, including all Unsecured Cash Flow Notes, have been paid in full. However, holders of Allowed Subclass 4B Claims shall receive a subordinated a promissory note issued by the Reorganized Debtor ("Subordinated Unsecured Cash Flow Note") which shall bear interest at the Plan Rate and mature on the earlier to occur of (i) the date that is two (2) years after the date all Unsecured Cash Flow Notes have been paid in full, or (ii) five (5) years after the Effective Date. To the extent of Available Cash, the Reorganized Debtor shall make substantially equal quarterly Distributions of principal and accrued interest to each holder of a Subordinated Unsecured Cash Flow Note, with the first such quarterly Distribution being due and payable on the 90th day after the payment in full of the Unsecured Cash Flow Notes. Thereafter, like Distributions shall be made each quarter by the Reorganized Debtor until the Subordinated Unsecured Cash Flow Note is paid in full.

A copy of the estimated waterfall under the Plan (the "Plan Projections") prepared by the Chapter 11 Trustee's financial advisors and investment bankers, Miller Buckfire & Co., LLC and Stifel, Nicolaus & Co., Inc. (collectively, the "Financial Advisors"), is attached hereto as **"Exhibit 3,"** and demonstrates that the Chapter 11 Trustee is projecting Distributions under the Plan of approximately 102% to the holder of an Allowed Class 2 Terry Partially Secured Claim, approximately 102% to each holder of an Allowed Class 3 General Unsecured Claim, and between approximately 65% and 100% to each holder of an Allowed Class 4B Insider Claim.[2] As is reflected in the attached Plan Projections, the difference between the estimated recovery percentages under the Plan will depend, in large part, upon whether HCLOF decides to reset one or more of the Acis CLOs under section 6.08 of the Plan, which will affect the amount of revenues and operating cash flow available to the Reorganized Debtor.

---

[2] The Plan projections and the Chapter 7 Liquidation Analysis presume the equitable subordination and payment through Subclass 4B of the Insider Claims.

Based on the foregoing, the Chapter 11 Trustee believes the Plan satisfies the Bankruptcy Code's feasibility requirement.

Attached as **"Exhibit 4"** to this Disclosure Statement is a Chapter 7 Liquidation Analysis prepared by the Chapter 11 Trustee's Financial Advisors.  Notably, the anticipated Distributions to the holders of Allowed Class 2 and Class 3 Claims is significantly lower in a chapter 7 liquidation than under the Plan.  This is based on a number of factors, including the fact that, in a chapter 7 liquidation, Acis LP would not receive the approximately $14.6 million to $21 million in revenues under the PMAs (or approximately $7.5 million to $10.9 million in operating cash flow) for continuing to manage the Acis CLOs as proposed under the Plan.  The loss of value from the PMAs would occur in a chapter 7 liquidation will result in a much lower distribution to creditors.

The Chapter 11 Trustee would also note that in preparing the attached Plan Projections and Liquidation Analysis, his financial advisors and investment bankers have made certain estimates regarding projected cash on hand at confirmation based on current and anticipated accounts receivable.  Based on such estimations and valuation adjustments, the actual Distributions to holders of Allowed Class 2, Class 3, and Class 4B Claims may be more or less than projected in the above-referenced Plan Projections and Liquidation Analysis depending upon several variables, including (i) the actual liquidation value of the Debtors' assets in a chapter 7 liquidation, (ii) the aggregate amount of Allowed Class 1, Class 2, Class 3, and Class 4B Claims, (iii) the amount, if any, for which certain Administrative Expense Claims are Allowed, (iv) the Allowed amounts of certain Priority Claims, (v) the collectability of the Estate Accounts Receivable, and (vi) the amount of the expenses and fees of Trust Professionals.  The Plan Projections and Liquidation Analysis also do not include any net recovery from potential Estate Claims held by the Estate, including Avoidance Actions.

As reflected in the attached Plan Projections and Liquidation Analysis, the Chapter 11 Trustee believes that under the Plan holders of Allowed Class 2, Class 3, and Class 4B Claims will receive Distributions on account of such Allowed Claims having a value as of the Effective Date which will be substantially more than the amount the holders of such Allowed Claims would receive in a Chapter 7 liquidation.  This is so because the Estate will receive a much greater value on account of the PMAs under the Plan than it would through a chapter 7 liquidation.  The Chapter 11 Trustee also believes that the Reorganized Debtor will be able to make Distributions to holders of Allowed Claims much more expeditiously than could a Chapter 7 trustee.  The Plan also contains a mechanism for fixing Reserves on behalf of Contested Claims so as to allow one or more interim distributions on behalf of the holders of Allowed Claims by the Reorganized Debtor.  In addition, the holders of Allowed Class 3 and Subclass 4A Claims will receive quarterly payments on account of Unsecured Cash Flow Notes beginning on the 180th day after the Effective Date, and the holders of Allowed Class 4B will receive quarterly payments on account of Subordinated Unsecured Cash Flow Notes beginning on the 90th day after the payment in full of the Unsecured Cash Flow Notes.  A Chapter 7 trustee would likely have significantly less flexibility in making interim distributions or other interim payments to the holders of Allowed Unsecured Claims.

## V.  THE CHAPTER 11 CASES

### A.  Events Leading to Bankruptcy

Prior to the Petition Date, Terry was hired by Highland and eventually became a 25% limited partner in Acis LP and was assigned the responsibility of managing Acis LP's business.

15

Case 18-30264-sgj11 Doc 661 Filed 10/25/18 Entered 10/25/18 18:24:46 Page 17 of 172

On June 9, 2016, Terry's employment was terminated and his equity interest in Acis LP was deemed forfeited without any payment to Terry. Highland thereafter sued Terry in state court and Terry then asserted claims against various parties in such lawsuit, including claims against the Debtors. The parties to such lawsuit were ordered to arbitrate and Terry ultimately obtained an arbitration award jointly and severally against the Debtors in the amount of $7,949,749.15. Terry obtained a judgment confirming his arbitration award on December 18, 2017.

**B. Commencement of the Involuntary Bankruptcy Cases and Entry of Orders for Relief**

On January 30, 2018, Terry filed involuntary petitions under chapter 7 of the Bankruptcy Code against both of the Debtors in the Bankruptcy Court. Acis LP's bankruptcy case was assigned Case No. 18-30264, and Acis GP's bankruptcy case was assigned Case No. 18-30265.

The involuntary petitions were contested and the Bankruptcy Court held a multi-day trial spanning March 21, 22, 23, 27 and 29, 2018. On April 13, 2018, the Bankruptcy Court entered an *Order for Relief in an Involuntary Case* in both bankruptcy cases. Diane Reed was then appointed as the Chapter 7 Trustee in both cases.

**C. Continued Operation by the Chapter 7 Trustee and Conversion to Chapter 11**

On April 18, 2018, the Bankruptcy Court entered interim orders authorizing the Chapter 7 Trustee to continue operating the Debtors' businesses until April 23, 2018 pursuant to the terms of the Shared Services Agreement and the Sub-Advisory Agreement. On April 23, 2018, the Bankruptcy Court conducted a hearing and extended the Chapter 7 Trustee's authorization to continue operating the Debtors' businesses for 60 days.

On April 19, 2018, the Bankruptcy Court entered an *Order Directing Joint Administration*, which provides for the joint administration of the Debtors' respective bankruptcy cases under Case No. 18-30264. Consequently, except where otherwise indicated, all references to the "Docket" refer to the Docket in Case No. 18-30264. The Debtors' jointly administered cases are presided over by the Honorable Stacey G. C. Jernigan, United States Bankruptcy Judge.

On May 4, 2018, the Chapter 7 Trustee filed her *Trustee's Expedited Motion to Convert Cases to Chapter 11* (the "Motion to Convert") [Docket No. 171]. Also on May 4, 2018, Terry filed his *Emergency Motion for an Order Appointing a Trustee for the Chapter 11 Estates of Acis Capital Management, L.P. and Acis Capital Management GP, LLC Pursuant to Bankruptcy Code Section 1104(a)* (the "Motion to Appoint Trustee") [Docket No. 173]. On May 11, 2018, the Bankruptcy Court entered an *Order* [Docket No. 205] granting the Motion to Convert and an *Order* [Docket No. 206] granting the Motion to Appoint Trustee. Thereafter, the U.S. Trustee appointed the Chapter 11 Trustee as Chapter 11 Trustee in the Chapter 11 Cases. Mr. Phelan's appointment as Chapter 11 Trustee in Acis LP's case was approved pursuant to an *Order* [Docket No. 221] entered by the Bankruptcy Court on May 17, 2018 and his appointment as Chapter 11 Trustee in Acis GP's case was approved pursuant to an *Order* [Docket No. 184 in Case No. 18-30265] entered by the Bankruptcy Court on June 12, 2018.

**D. Estate Professionals**

The following is a list of each of the Estate Professionals that have been employed, or are proposed to be employed, with a description of the role of each such Estate Professional:

| Estate Professional | Role of Estate Professional | Date of Entry and Docket No. of Employment Order |
|---|---|---|
| Reed & Elmquist, P.C. ("R&E") | Counsel for the Chapter 7 Trustee | May 20, 2018 [Docket No. 227] |
| Forshey & Prostok, LLP ("F&P") | Counsel for the Chapter 11 Trustee | June 18, 2018 [Docket No. 296] |
| Winstead PC ("Winstead") | Special Counsel for the Chapter 11 Trustee | June 21, 2018 [Docket No. 313] |
| Miller Buckfire & Co., LLC Stifel, Nicolaus & Co., Inc. ("Financial Advisors") | Financial Advisors to the Chapter 11 Trustee | July 27, 2018 [Docket No. 439] |

**E.     Creditors' Committee**

No creditors' committee has been appointed in the Chapter 11 Cases.

**F.     Professional Fees and Expenses; U.S. Trustee Fees**

R&E did not receive any retainer in connection with its engagement as counsel for the Chapter 7 Trustee.  R&E's engagement as an Estate Professional concluded by virtue of conversion of the Debtors' bankruptcy cases from chapter 7 to chapter 11 and R&E is not currently engaged as an Estate Professional.  On July 31, 2018, R&E filed a *First and Final Fee Application* in the Chapter 11 Cases seeking payment of professional fees and expenses in the amount of $59,856.07 [Docket No. 458].

F&P did not receive any retainer in connection with its engagement as counsel for the Chapter 11 Trustee.  To date, F&P has not filed any fee application in the Chapter 11 Cases. From May 14, 2018 through August 31, 2018, F&P has accrued professional fees and expenses of approximately $1.2 million.

Winstead did not receive any retainer in connection with its engagement as special counsel for the Chapter 11 Trustee.  To date, Winstead has not filed any fee application in the Chapter 11 Cases.  From May 14, 2018 through August 31, 2018, Winstead has accrued professional fees and expenses of approximately $1.4 million.

The Chapter 11 Trustee's Financial Advisors have not received any retainer in connection with their proposed engagement.  Under the terms of their proposed engagement, however, the Financial Advisors are entitled to receive a monthly fee of $100,000 for a minimum of eight (8) months, or a minimum fee of $800,000.  Miller Buckfire has also incurred reimbursable expenses of approximately $150,000.

The Debtors' Estate owes U.S. Trustee fees for the 2nd quarter of 2018.  The amount of such U.S. Trustee fees is believed to be nominal and such fees will be paid in due course.  U.S. Trustee Fees accruing for future quarters will be paid as they become due.

### G. Other Administrative Expenses under Section 503(b)(3) of the Bankruptcy Code

#### 1. The Oaktree Administrative Claim

On June 12, 2018, the Chapter 11 Trustee filed an *Emergency Motion to Approve Break-Up Fee, Expense Reimbursement, and Replacement Sub-Advisory and Shared Services Provider, Oaktree Capital Management, L.P.* [Docket No. 263] (the "Motion"), which was later supplemented by the *Chapter 11 Trustee's Supplemental Motion to Break-Up Fee Motion Seeking Court Approval of Procedures to Confirm Plan Funder* [Docket No. 334] (the "Supplement"), and the *Oaktree Capital Management, L.P.'s Notice of Amended Commitment Letter* [Docket No. 385] (the "Commitment Letter," and collectively with the Motion and the Supplement, the "Oaktree Motion").

On July 10, 2018, the Court entered an order granting the Oaktree Motion (the "Oaktree Order") [Docket No. 390]. The Oaktree Order authorizes (i) a break-up fee in favor of Oaktree in the amount of $2.5 million entitled to priority as an administrative expense under section 503(b) of the Bankruptcy Code in the event the Transaction described in the Oaktree Motion is not approved, and (ii) an expense reimbursement entitled to priority as an administrative expense under section 503(b) of the Bankruptcy Code. The Oaktree Order also authorizes a payment of equivalent revenue of approximately $4 million to Oaktree under the terms of the Commitment Letter in the event Oaktree, after being approved by the Court to replace Highland as the provider of shared services and sub-advisory services, began the process of onboarding assets. The Commitment Letter further provides that the break-up fee is a credit against the equivalent revenue. After the Oaktree Order was entered, Oaktree began the process of onboarding the assets. As a result, the Debtors' Estate became obligated to Oaktree for the equivalent revenue equal to approximately $4 million. Oaktree voluntarily reduced the amount of the equivalent revenue to $2.7 million when the Chapter 11 Trustee retained Brigade to provide the shared services and sub-advisory services on an interim basis. The Transaction with Oaktree described in the Oaktree Motion was not approved. The Chapter 11 Trustee paid $2.5 million of the equivalent revenue to Oaktree on or about September 20, 2018, and owes Oaktree an additional $200,000. The Chapter 11 Trustee also owes Oaktree amounts for attorneys' fees and expenses as an expense reimbursement. However, the U.S. Trustee has objected to the approximately $2.5 million in attorneys' fees and expenses requested by Oaktree's counsel, and the total amount of the expense reimbursement payable by the Chapter 11 Trustee to Oaktree remains to be determined.

#### 2. The Terry Administrative Claim

Section 503(b)(3)(A) of the Bankruptcy Code provides, after notice and hearing, allowed administrative expenses should be awarded to a creditor that files an involuntary petition under section 303 of the Bankruptcy Code. Consequently, the Chapter 11 Trustee anticipates that Terry will request payment of administrative expenses against the estate in the amount of approximately $700,000.

### H. Schedules and Bar Date

The Debtors' original bankruptcy schedules were filed on April 27, 2018 [Docket No. 164 in Case No. 18-30264; Docket No. 151 in Case No. 18-30265]. The Debtors' statements of financial affairs were filed on April 30, 2018 [Docket No. 165 in Case No. 18-30264; Docket No. 152 in Case No. 18-30265]. The amended bankruptcy schedules for Acis LP were filed on June 26, 2018 [Docket No. 329 in Case No. 18-30264] and amended bankruptcy schedules for Acis

GP were filed on June 29, 2018 [Docket No. 197 in Case No. 18-30265].

Pursuant to a *Notice of Chapter 11 Bankruptcy Case* entered on the docket [Docket No. 301 in Case No. 18-30264; Docket No. 189 in Case No. 18-30265], October 15, 2018 was initially fixed as the deadline for all holders of alleged Claims (except for governmental units) to file proofs of Claim.  However, on June 26, 2018, the Chapter 11 Trustee filed a *Motion for an Order (A) Shortening Deadline to File Nongovernmental Proofs of Claim; (B) Setting Bar Dates; and (C) Approving Claim Procedures and the Form and Manner of Service of Bar Date Notice* (the "Bar Date Motion") [Docket No. 330].  The Bar Date Motion was granted pursuant to an *Order* [Docket No. 387] entered on July 9, 2018 (the "Bar Date Order").  Pursuant to the Bar Date Order, August 1, 2018 was established as the deadline for all holders of alleged Claims (except for governmental units) to file proofs of Claim and October 10, 2018 has been established as the deadline for governmental units to file proofs of Claim.

## I.    Operating Information During Pendency of the Chapter 11 Cases

Following conversion of the Debtors' bankruptcy cases from chapter 7 to chapter 11, the Chapter 11 Trustee has filed all required monthly operating reports with the Bankruptcy Court.  Copies of the filed monthly operating reports are available for inspection and copying at the office of the Clerk of the Bankruptcy Court.  Copies of the most recently filed monthly operating reports Acis LP and Acis GP are attached hereto as **Exhibits "5" and "6,"** respectively.

## J.    Exclusivity

The Exclusive Period terminated as to the Debtors by virtue of appointment of the Chapter 11 Trustee in the Chapter 11 Cases.  Consequently, any party-in-interest is free to file a plan in the Chapter 11 Cases.

## VI.  LITIGATION INVOLVING THE DEBTORS

## A.    Current Litigation

### 1.    Bankruptcy Court's Sua Sponte Temporary Restraining Order

On May 25, 2018, the Chapter 11 Trustee filed his *Trustee's Request for Status Conference* [Docket No. 239] seeking a status conference before the Bankruptcy Court to, *inter alia*, advise the Bankruptcy Court of a request for Optional Redemption (as defined in the Indentures) made by HCLOF, the Chapter 11 Trustee's response to such request and matters related thereto.  The Bankruptcy Court granted the Chapter 11 Trustee's request and scheduled a status conference for May 31, 2018.  Highland and HCLOF commenced the Highland Adversary (as defined below) the day before the commencement of the status conference.

The Bankruptcy Court conducted the status conference on May 31, 2018 and, for reasons stated on the record, determined to, *sua sponte*, issue a temporary restraining order (the "First TRO").  The terms of the First TRO are reflected in the *Temporary Restraining Order* entered on June 6, 2018 [Docket No. 256].  The First TRO restrained and enjoined Highland, HCLOF and other parties, including additional parties related to Highland, from taking any action to effectuate the Optional Redemption requested by HCLOF or to otherwise liquidate the Acis CLOs.  The Bankruptcy Court found in the First TRO that the Chapter 11 Trustee had made a substantial case that the threatened actions with respect to the requested Optional Redemption, if not enjoined, would violate the automatic stay of section 362 of the Bankruptcy Code.

Consequently, through the First TRO, the Bankruptcy Court enjoined parties from engaging in the very same activities that Highland and HCLOF allege in the Highland Adversary that they are entitled to engage in and that the Chapter 11 Trustee must engage in at their direction.

> 2.    *Adversary Proceeding Filed by the Chapter 11 Trustee against Highland, HCLOF and Others*

The First TRO was set to expire by its terms on June 15, 2018, unless further extended. The Chapter 11 Trustee moved to extend the First TRO and a hearing was set for June 14, 2018.  On June 13, 2018, HCLOF advised the Chapter 11 Trustee that it would withdraw the notices requesting the Optional Redemption.  Consequently, the Chapter 11 Trustee advised the Bankruptcy Court that there was no need to go forward with the motion to extend the First TRO.  On June 14, 2018, HCLOF's counsel stated to the Bankruptcy Court that HCLOF had in fact withdrawn the notices requesting the Optional Redemption and reserved the right to reissue notices at some future date.

The next day, on June 15, 2018 – the day on which the First TRO expired and the day after the hearing was originally to have taken place to extend the First TRO – HCLOF advised the Chapter 11 Trustee that it was directing that an Optional Redemption be effectuated on July 30, 2018.  HCLOF did not seek relief from the automatic stay from the Bankruptcy Court to take any such action.

On June 21, 2018, the Chapter 11 Trustee filed his *Verified Original Complaint and Application for Temporary Restraining Order and Preliminary Injunction* against Highland, HCLOF and other parties, commencing Adversary Proceeding No. 18-03212-sgj (the "Trustee's Adversary").  In the Trustee's Adversary, the Chapter 11 Trustee seeks, *inter alia*, injunctive relief enjoining the defendants from taking any action in furtherance of the requested Optional Redemption.  The Chapter 11 Trustee also asserts claims for violation of the automatic stay and seeks declaratory relief.

Upon commencing the Trustee's Adversary, the Chapter 11 Trustee filed his *Motion for an Ex Parte Temporary Restraining Order or, in the Alternative, an Emergency Hearing on the Application for Temporary Restraining Order* (the "Ex Parte Motion").  On June 21, 2018, the Ex Parte Motion was granted and the Bankruptcy Court entered an *Ex Parte Restraining Order* (the "Second TRO") in the Trustee's Adversary.  The Second TRO restrained and enjoined Highland, HCLOF and other parties, including additional parties related to Highland, from taking any action to effectuate the Optional Redemption requested by HCLOF or to otherwise liquidate the Acis CLOs.  The Bankruptcy Court found in the Second TRO that the Chapter 11 Trustee had shown a substantial likelihood of success on the merits of a claim regarding (a) violation of the automatic stay, (b) failure by the defendants to comply with legal requirements of implementing an Optional Redemption, (c) failure to obtain authority from the Bankruptcy Court under section 363 of the Bankruptcy Code to effectuate and optional redemption, and (d) confirmation of an effective plan of reorganization.  The Second TRO was set to expire by its terms on July 5, 2018 but was extended by agreement until July 9, 2018.

A hearing was held on July 6, 2018 in the Trustee's Adversary at which the Chapter 11 Trustee sought entry of a preliminary injunction against the defendants.  On July 10, 2018, the Court entered a *Preliminary Injunction Order* [Docket No. 21 in Adversary No. 18-03212-sgj] which granted the Chapter 11 Trustee a preliminary injunction enjoining HCLOF, Highland and other "Restrained Parties" from: (i) taking any action in furtherance of an Optional Redemption or any other attempts to liquidate the Acis CLOs, (ii) trading any collateral of the Acis CLOs

without the express written authorization of the Chapter 11 Trustee, and (iii) sending any notice to the holders of the Acis CLOs in connection with the effectuation or any Optional Redemption, call or other liquidation of the Acis CLOs.

  3.  *Adversary Proceeding Filed by Highland and HCLOF against the Chapter 11 Trustee*

  On May 30, 2018, Highland and HCLOF filed their *Original Complaint and Request for Preliminary Injunction of Highland CLO Funding, Ltd and Highland Capital Management Against Chapter 11 Trustee of Acis Capital Management, L.P. and Acis Capital Management GP, LLC* in the Bankruptcy Court commencing Adversary Proceeding No. 18-03078-sgj (the "Highland Adversary").  Prior to commencing the Highland Adversary, HCLOF sent notices directing Acis LP to affect an Optional Redemption with respect to the Acis CLOs.  An Optional Redemption would require Acis LP to direct the sale of the Collateral Obligations (as defined in the Indentures), windup the Acis CLOs and, consequently, liquidate Acis LP's most valuable Asset – the PMAs.  The Chapter 11 Trustee analyzed such notices and determined that there were various defects and other problems and impediments with the notices and performing the requested Optional Redemption.

  In the Highland Adversary, HCLOF asserts claims against the Chapter 11 Trustee for alleged breaches of the PMAs based on the Chapter 11 Trustee declining to effectuate the Optional Redemption requested by HCLOF and seeks the remedy of specific performance.  In addition, Highland and HCLOF seek declaratory relief, including a declaratory judgment that the Chapter 11 Trustee has a duty to effectuate the requested Optional Redemption.  Highland and HCLOF further seek to enjoin Acis LP from interfering with the Optional Redemption or continuing his efforts relating to the Transaction described in the Oaktree Motion.  The Chapter 11 Trustee opposes all relief sought by the plaintiffs in the Highland Adversary.

  On June 22, 2018, HCLOF filed a *Motion for Preliminary Injunctive Relief* [Docket No. 18 in Adv. No. 18-03078-sgj] based on certain of the claims for injunctive relief in the Highland Adversary described above.  On July 6, 2018, the Court held a hearing on HCLOF's request for injunctive relief.  On July 10, 2018, the Court entered an *Order Denying Motion for Preliminary Injunctive Relief* [Docket No. 31 in Adv. No. 18-03078-sgj], in which the Court denied HCLOF's request for preliminary injunctive relief.

  On July 2, 2018, the Chapter 11 Trustee filed his *Defendant's Answer, Affirmative Defenses, Counterclaims, and Third Party Claims* [Docket No. 23 in Adv. No. 18-03078-sgj] in the Highland Adversary in which the Chapter 11 Trustee, *inter alia*, asserts causes of action under both the Bankruptcy Code and Texas Uniform Fraudulent Transfer Act to avoid and recover prepetition fraudulent transfers of various assets of the Debtors to affiliates of Highland, including Acis LP's ownership interest in HCLOF (formerly known as Acis Loan Funding, Ltd. "ALF"), Acis LP's rights under a portfolio management agreement between Acis LP and ALF, and a $9.5 million promissory note by Highland in favor of Acis LP, as well as a claim for civil conspiracy.

  On the date of commencement of the Highland Adversary, the plaintiffs therein filed a *Motion to Withdrawn the Reference to the District Court and Memorandum of Law in Support* seeking the United States District Court for the Northern District of Texas to withdraw the reference to the Bankruptcy Court with respect to the Highland Adversary.  The Chapter 11 Trustee opposed such motion.  The Bankruptcy Court considered such motion at a hearing held on July 6, 2018.  The Bankruptcy Court advised the parties that it was going to recommend

denial of the motion to withdraw the reference to the district court; however, the Bankruptcy Court advised that it did not anticipate submitting a report and recommendation to the district court until after the counter-defendants had filed their answers to the Chapter 11 Trustee's counterclaims.

On July 23, 2018, Highland filed a *Motion to Dismiss Counterclaims or, Alternatively, for a More Definite Statement* [Adv. Docket No. 42] and HCLOF filed a *Motion to Dismiss* [Adv. Docket No. 53].  on August 10, 2018, Highland and HCLOF filed a *Motion for Leave to Amend Adversary Complaint and Brief in Support* [Adv. Docket No. 51].  On August 13, 2018, the Chapter 11 Trustee filed responses to the Highland and HCLOF motions to dismiss [Adv. Docket Nos. 53 and 54].  On August 31, 2018, the Chapter 11 Trustee filed an objection to the motion for leave to amend [Adv. Docket No. 58].  A hearing on the motions to dismiss and motion for leave to amend has been scheduled for October 9, 2018.

In addition to the counterclaims currently asserted by the Chapter 11 Trustee against Highland and HCLOF in the Highland Adversary, the Chapter 11 Trustee believes the Estate possesses and anticipates that either the Chapter 11 Trustee or the Reorganized Debtor may assert additional claims against Highland, certain Highland affiliates, and their respective principals including but not limited to the Estate Claims reflected on Exhibit A to the Plan.

## B.    Additional and Potential Litigation by the Debtors

Except as expressly provided in the Plan, nothing contained in the Disclosure Statement, the Plan or the Confirmation Order shall waive, relinquish, release or impair the Chapter 11 Trustee's or the Reorganized Debtor's right to object to any claim.

Except as expressly set forth in the Plan, all causes of action, claims, counterclaims, defenses and rights of offset or recoupment (including but not limited to all Estate Claims, Estate Defenses and Avoidance Actions) belonging to the Debtors (collectively, the "Retained Causes of Action") shall, upon the occurrence of the Effective Date, be reserved, retained and preserved for, and transferred to, received by and vested in, the Reorganized Debtor for the benefit of the Debtors and the Debtors' estates.  Without limitation, the Retained Causes of Action include the claims and causes of action described on **Exhibit A** to the Plan.  Except as expressly set forth in the Plan, the rights of the Reorganized Debtor to commence, prosecute or settle the Retained Causes of Action shall be retained, reserved, and preserved notwithstanding the occurrence of the Effective Date. **No Person may rely on the absence of a specific reference in the Plan or the Disclosure Statement to any cause of action against them as any indication that the Debtors or the Reorganized Debtor will not pursue any and all available causes of action (including all Estate Claims, Estate Defenses and Avoidance Actions) against them. The Debtors and their Estate expressly reserve all rights to prosecute any and all of the Retained Causes of Action (including all Estate Claims, Estate Defenses and Avoidance Actions) against any Person, _except_ as otherwise provided in the Plan**. Unless any causes of action against a Person are expressly waived, relinquished, exculpated, released, compromised or settled in the Plan or a Final Order, the Debtors expressly reserve all causes of action (including all Estate Claims, Estate Defenses and Avoidance Actions) for later adjudication, and, therefore, no preclusion doctrine, _including_ without limitation, the doctrines of res judicata, collateral estoppel, issue preclusion, claim preclusion, estoppel (judicial, equitable or otherwise) or laches, shall apply to such causes of action upon or after the confirmation or consummation of the Plan.  Without limiting the foregoing, parties are advised that the Debtors' Estate specifically retains, reserves and preserves the Estate Claims described in Exhibit A to the Plan.

## VII. THE PLAN

**THE FOLLOWING IS A SUMMARY OF THE MATTERS CONTEMPLATED TO OCCUR EITHER PURSUANT TO OR IN CONNECTION WITH THE CONSUMMATION OF THE PLAN. THIS SUMMARY HIGHLIGHTS THE SUBSTANTIVE PROVISIONS OF THE PLAN AND IS NOT, NOR IS IT INTENDED TO BE, A COMPLETE DESCRIPTION OR A SUBSTITUTE FOR A FULL AND COMPLETE REVIEW OF THE PLAN. THE FOLLOWING SUMMARY IS COMPLETELY QUALIFIED BY THE TERMS OF THE PLAN. IN THE EVENT OF ANY CONFLICT BETWEEN THE FOLLOWING SUMMARY AND THE PLAN, THE PLAN WILL CONTROL.**

### A. Classification and Treatment Summary

The Plan classifies the various Claims against and Interests in the Debtors. These Classes take into account the different nature and priority of Claims against and Interests in the Debtors. In addition, in accordance with section 1123(a)(1) of the Bankruptcy Code, Administrative Expense Claims, Priority Non-Tax Claims, and Priority Tax Claims are not classified for purposes of voting under the Plan. Rather, all such Claims are treated separately as unclassified Claims.

Class 1 is not impaired under the Plan. Classes 2 through 5 are Impaired under the Plan. If a controversy arises as to the classification of any Claim or Interest, or as to whether any Class of Claims or Interests is Impaired under the Plan, the Bankruptcy Court shall determine such controversy as a part of the confirmation process.

#### 1. Unclassified Claims Against the Debtors

Unclassified Claims against the Debtors consist of Administrative Expense Claims, Priority Non-Tax Claims, and Priority Tax Claims. An Administrative Expense Claim is a Claim based on any cost or expense of administration of the Chapter 11 Cases allowed under subsections 503(b) and 507(a)(2) of the Bankruptcy Code, including, without limitation, any actual and necessary expenses of preserving the Debtors' Estate, any actual and necessary expenses of operating the Debtors' businesses, any indebtedness or obligations incurred or assumed by the Estate including, without limitation, for the acquisition or lease of property or an interest in property or the rendition of services, all compensation or reimbursement of expenses to the extent allowed by the Bankruptcy Court under section 330 or 503 of the Bankruptcy Code, and any fees or charges assessed against the Estate of the Debtors under section 1930 of title 28 of the United States Code.

Administrative Expense Claims include both ordinary post-petition expenses and Claims attributable to Estate Professionals. Claims incurred in the ordinary course of the Debtors' affairs or business will be paid in the ordinary course of business. Fees and expenses owed to Estate Professionals are payable upon the Allowance of an appropriate fee application.

A Priority Non-Tax Claim is a Claim, other than a Claim for an Administrative Expense, that is entitled to priority under section 507(a) of the Bankruptcy Code. A Priority Tax Claim is a Claim by a Governmental Unit of the kind specified in subsection 507(a)(8) of the Bankruptcy Code.

Case 18-30264-sgj11 Doc 3044 Filed 10/07/21   Entered 10/07/21 16:29:45   Page 25 of 35

### a.      Treatment of Administrative Expense Claims

The Reorganized Debtor shall pay, in accordance with the ordinary business terms applicable to each such expense or cost, the reasonable and ordinary expenses incurred in operating the Debtors' businesses or administering the Estate before the Effective Date ("Ordinary Course Claims").  The remaining provisions of section 3.01 of the Plan shall not apply to the Ordinary Course Claims, except that if there is a dispute relating to any such Ordinary Course Claim, the Reorganized Debtor may move the Bankruptcy Court to apply the provisions of Article III of the Plan relating to Contested Claims and require the holder of the Contested Ordinary Course Claim to assert such Claim through the Chapter 11 Cases.

Each holder of an Allowed Administrative Expense (other than Ordinary Course Claims and Administrative Expense Claims by Estate Professionals), shall receive (i) the amount of such holder's Allowed Administrative Expense in one Cash payment on the later of the Effective Date or the tenth (10th) Business Day after such Administrative Expense becomes an Allowed Administrative Expense, or (ii) such other treatment as may be agreed to in writing by such Administrative Expense Creditor and the Reorganized Debtor, or as otherwise ordered by the Bankruptcy Court.

Unless the Bankruptcy Court orders to the contrary or the Reorganized Debtor agrees to the contrary in writing, the holder of a Claim for an Administrative Expense, other than such a Claim by an Estate Professional, an Ordinary Course Claim, or an Administrative Expense which is already Allowed, shall file with the Bankruptcy Court and serve upon the Reorganized Debtor and its counsel a written notice of such Claim for an Administrative Expense within thirty (30) days after the Effective Date.  This deadline is the "Administrative Bar Date."  Such notice shall include at a minimum: (i) the name, address, telephone number and fax number (if applicable) or email address of the holder of such Claim, (ii) the amount of such Claim, and (iii) the basis of such Claim.  **Failure to timely and properly file and serve such notice by the Administrative Bar Date shall result in such Claim for an Administrative Expense being forever barred and discharged and the holder thereof shall be barred from receiving any Distribution from the Reorganized Debtor on account of such Claim for an Administrative Expense**.

A Claim for an Administrative Expense, for which a proper notice was filed and served under subsection 3.01(c) of the Plan, shall become an Allowed Administrative Expense if no Objection is filed within thirty (30) days of the filing and service of such notice.  If a timely Objection is filed, the Claim shall become an Allowed Administrative Expense only to the extent allowed by a Final Order.

The procedures contained in subsections 3.01(a), (c) and (d) of the Plan shall not apply to Administrative Expense Claims asserted by Estate Professionals, who shall each file and submit an appropriate final fee application to the Bankruptcy Court no later than sixty (60) days after the Effective Date.  A Claim for an Administrative Expense by an Estate Professional in respect of which a final fee application has been properly filed and served shall become an Allowed Administrative Expense only to the extent Allowed by order of the Bankruptcy Court and, if so Allowed, shall be paid in accordance with subsection 3.01(b) of the Plan.  Professional fees and expenses to any Estate Professional incurred on or after the Effective Date may be paid by the Reorganized Debtor without necessity of application to or order by the Bankruptcy Court.

If the Reorganized Debtor asserts any Estate Claims as counterclaims or defenses to a

Claim for Administrative Expense, the Administrative Expense Claim shall be determined through an adversary proceeding before the Bankruptcy Court.  The Bankruptcy Court shall have exclusive jurisdiction to adjudicate and Allow all Claims for any Administrative Expense.

### b.    Treatment of Priority Non-Tax Claims

Each holder of an Allowed Priority Non-Tax Claim shall receive (i) the amount of such holder's Allowed Priority Non-Tax Payment in one Cash payment on the later of the Effective Date or the tenth (10th) Business Day after such Priority Non-Tax Claim becomes an Allowed Priority Non-Tax Claim and a determination has been made that such Allowed Priority Non-Tax Claim is not subject to equitable subordination under section 510(c) of the Bankruptcy Code, or (ii) such other treatment as may be agreed to in writing by such Administrative Expense Creditor and the Reorganized Debtor, or as otherwise ordered by the Bankruptcy Court.

### c.    Treatment of Priority Tax Claims

Each holder of an Allowed Priority Tax Claim shall receive (a) one Cash payment in an amount equal to the principal amount of such Allowed Priority Tax Claim, plus interest at the rate and in the manner prescribed by applicable state law from the later of the Petition Date or the first day after the last day on which such Priority Tax Claim may be paid without penalty, no later than sixty (60) days after each such Claim becomes an Allowed Claim, or (b) such other treatment as may be agreed to in writing by the holder of the Priority Tax Claim and the Reorganized Debtor.

### d.    Treatment of U.S. Trustee Fees

The Reorganized Debtor shall pay the U.S. Trustee's quarterly fees incurred pursuant to 28 U.S.C. § 1930(a)(6) which are due as of the Confirmation Date in full on the Effective Date or as soon thereafter as is practicable.  After the Confirmation Date, the Reorganized Debtor shall continue to pay quarterly fees as they accrue until a final decree is entered and the Chapter 11 Cases are closed.  The Reorganized Debtor shall file with the Bankruptcy Court and serve on the U.S. Trustee quarterly financial reports for each quarter, or portion thereof, that the Chapter 11 Cases remain open.

### 2.    Classified Claims and Interests

Classified Claims and Interests shall receive the treatment as described in Article IV of the Plan, which treatment is summarized in the table set forth in Article I Section B of this Disclosure Statement above.

## B.    Acceptance or Rejection of the Plan

Creditors in Classes 2 through 4 are entitled to vote and shall vote separately to accept or reject the Plan.  Any unimpaired Class shall not be entitled to vote to accept or reject the Plan. Any unimpaired Class is deemed to have accepted the Plan under section 1126(f) of the Bankruptcy Code.  A Class of Claims shall have accepted the Plan if it is accepted by at least two-thirds (2/3) in amount and more than one-half (1/2) in number of the Allowed Claims in such Class that have voted on the Plan.  Section 5.03 of the Plan shall constitute the request by the Plan proponents, pursuant to section 1129(b) of the Bankruptcy Code, that the Bankruptcy Court confirm the Plan notwithstanding the fact that the requirements of section 1129(a)(8) of the Bankruptcy Code have not been met.

Case 18-30264-sgj11 Doc 1344 Filed 09/27/21 Entered 09/27/21 18:29:45 Page 97 of 252

C. **Means of Implementing the Plan**

    1.     **Vesting of Assets**

    As of the Effective Date, pursuant to sections 1141(b) and (c) of the Bankruptcy Code, all Assets, including the PMAs, all Cash, Estate Accounts Receivable, Estate Insurance, Estate Claims and Estate Defenses, shall be transferred from the Estate to, and vested in, the Reorganized Debtor, free and clear of all rights, title, interests, claims, liens, encumbrances and charges, except as expressly set forth in the Plan. On and after the Effective Date, the Reorganized Debtor may operate its business and may use, acquire or dispose of property without supervision or approval by the Bankruptcy Court and free of any restrictions of the Bankruptcy Code or Bankruptcy Rules, other than those restrictions expressly imposed by the Plan or the Confirmation Order. Without limiting the foregoing, the Reorganized Debtor may pay the charges that it incurs on or after the Effective Date for all fees, disbursements, expenses or related support services of Professionals (including fees relating to the preparation of professional fee applications) without application to, or approval of, the Bankruptcy Court.

    2.     **Continued Existence of the Debtors.**

    The Debtors shall continue to exist after the Effective Date, with all the powers available to such legal entities, in accordance with applicable law and pursuant to their constituent documents. On or after the Effective Date, each Reorganized Debtor may, within its sole and exclusive discretion, take such action as permitted by applicable law and its constituent documents as it determines is reasonable and appropriate. In exchange for a one million dollar ($1,000,000.00) reduction in the amount of the Terry Partially Secured Claim, Terry shall receive one hundred percent (100%) of the equity interests in the Reorganized Debtor as of the Effective Date. The Chapter 11 Trustee anticipates that Terry will serve as an officer and/or director of the Reorganized Debtor and believes that such appointment will be consistent with the interests of creditors, equity security holders, and public policy. Terry's former affiliation with the Debtors is described in Article V, *supra,* and aside from the fact that Brigade has agreed to provide shared services and sub-advisory services to the Reorganized Debtor, of which Terry will be the sole shareholder, Terry has no affiliation with Brigade.

    3.     **Assumption of Obligations to Make Distributions**

    The Reorganized Debtor shall be deemed to have assumed the obligations to make all Distributions pursuant to the Plan.

    4.     **Actions by the Debtors and the Reorganized Debtor to Implement Plan**

    The entry of the Confirmation Order shall constitute all necessary authorization for the Debtors and the Reorganized Debtor to take or cause to be taken all actions necessary or appropriate to consummate, implement or perform all provisions of the Plan on and after the Effective Date, and all such actions taken or caused to be taken shall be deemed to have been authorized and approved by the Bankruptcy Court without further approval, act or action under any applicable law, order, rule or regulation, including without limitation, (a) all transfers of Assets, including to the Reorganized Debtor, that are to occur pursuant to the Plan; (b) the cancellation of Interests and issuance of 100% of the equity interests in the Reorganized Debtor to Terry; (c) the performance of the terms of the Plan and the making of all Distributions required under the Plan; and (d) subject to the terms of the Plan, entering into any and all transactions, contracts, or arrangements permitted by applicable law, order, rule or regulation.

### 5. Continued Portfolio Management by the Reorganized Debtor

The PMAs and any other Executory Contracts and Unexpired Leases identified on Exhibit B to the Plan or in the Confirmation Order shall be assumed and the Reorganized Debtor shall, from an after the Effective Date, serve as the portfolio manager with respect to the Acis CLOs and the Other Acis-Managed Funds (and any reset Acis CLOs). Consistent with Section 15 of the PMAs, the Reorganized Debtor may only be removed as portfolio manager under the assumed PMAs for cause as set forth in the PMAs.

### 6. Termination of Highland as Shared Service Provider and Sub-Advisor

The Bankruptcy Court authorized the Chapter 11 Trustee to terminate the Shared Services Agreement and Sub-Advisory Agreement and engage Brigade to perform the services previously provided by Highland. The Shared Services Agreement and Sub-Advisory Agreement were terminated by the Chapter 11 Trustee on or about August 1, 2018, and the services previously performed by Highland were transitioned to Brigade on an interim basis. Brigade has agreed to continue to provide shared services and sub-advisory services to the Reorganized Debtor with respect to the Acis CLOs and the Other Acis-Managed Funds (and any reset Acis CLOs) subject to a minimum two (2) year term unless otherwise agreed as between the Reorganized Debtor and Brigade. Consequently, any agreement between the Reorganized Debtor and Brigade shall provide that Brigade cannot be removed without cause for a period of two (2) years except as may be otherwise agreed as between the Reorganized Debtor and Brigade.

### 7. Reset of the Acis CLOs

HCLOF has maintained that it desires to reset the Acis CLOs. The Reorganized Debtor, with the assistance of Brigade as its shared services provider and sub-advisor, is prepared to promptly seek to perform such reset transactions as set forth in section 6.08 of the Plan. HCLOF shall have the right to submit one or more notice(s) of Optional Redemption solely for the purpose of effectuating a reset of one or more of the Acis CLOs under section 6.08 of the Plan utilizing Refinancing Proceeds (a "Reset Optional Redemption") for each of the Acis CLOs. If HCLOF requests a Reset Optional Redemption of an Acis CLO, the Reorganized Debtor, with the assistance of Brigade, shall thereafter seek to reset the Acis CLOs, either consecutively or simultaneously, in its good faith business judgment and consistent with then-prevailing market terms; *provided, however*, (i) the Management Fees to be charged by the Reorganized Debtor to any reset Acis CLOs shall remain the same going forward and shall not be increased, and no transaction fee shall be charged by the Reorganized Debtor (other than, for avoidance of doubt, transaction expense reimbursements consistent with market standards), and (ii) HCLOF shall be granted a right of first refusal for any funding of debt or equity required to effectuate a reset of each of the Acis CLOs. The terms of the Indentures shall control any Reset Optional Redemption. If HCLOF elects not to reset one or more of the Acis CLOs, then the Acis CLOs will continue to be managed in accordance with market standards.

### 8. Post-Effective Date Service List

Pleadings filed by any party-in-interest with the Bankruptcy Court after the Effective Date shall be served on the following Persons (collectively the "Service List"): (a) any Person directly affected by the relief sought in the pleading, (b) the U.S. Trustee, (c) parties which have filed a Notice of Appearance in the Chapter 11 Cases, and (d) the Reorganized Debtor.

10.    **Section 505 Powers**

All rights and powers pursuant to section 505 of the Bankruptcy Code shall be reserved to the Estate and shall be transferred to, and vested in, the Reorganized Debtor as of the Effective Date.

11.    **Section 510(c) Powers**

All rights and powers to seek or exercise any right or remedy of equitable subordination shall be reserved to the Estate and shall be transferred to, and vested in, the Reorganized Debtor as of the Effective Date as an Estate Defense.

12.    **Section 506(c) Powers**

The Estate hereby reserves all rights and powers pursuant to section 506(c) of the Bankruptcy Code, and all such rights shall be specifically transferred to, and vested in, the Reorganized Debtor.

13.    **Plan Injunction**

The Reorganized Debtor shall each have full power, standing and authority to enforce the Plan Injunction against any Person, either through an action before the Bankruptcy Court or any other tribunal having appropriate jurisdiction.

14.    **Cancellation of Interests**

Except as otherwise specifically provided in the Plan, upon the Effective Date of the Plan: (a) all Interests in the Debtors shall be cancelled; and (b) all obligations or debts of, or Claims against, the Debtors on account of, or based upon, the Interests shall be deemed as cancelled, released and discharged, including all obligations or duties by the Debtors relating to the Interests in any of their respective formation documents, including Acis LP's limited partnership agreement and bylaws, Acis GP's articles of formation and company agreement, or any similar formation or governing documents.

D.    **Provisions Governing Distribution**

1.    **Distributions from Reorganized Debtor**

The Reorganized Debtor shall be responsible for making Distributions to holders of Allowed Claims only to the extent the Plan requires Distributions to be made by the Reorganized Debtor.  The priority of Distributions from the Reorganized Debtor shall be in accordance with the terms of the Plan and the Confirmation Order as follows:

(a)    First, to satisfy Allowed Class 1 Secured Tax Claims;

(b)    Second, to satisfy Allowed Administrative Expenses and Allowed Priority Claims in accordance with Article III of the Plan, including all U.S. Trustee quarterly fees due and owing as of the Effective Date;

(c)    Third, to make Distributions to holders of any Allowed Class 3 General Unsecured Claims and Allowed Subclass 4A Claims; and

(e)     <u>Fourth</u>, to make Distributions to holders of any Allowed Subclass 4B Claims

## 2.     Reserves

The Reorganized Debtor may estimate, create and set aside Reserves as may be necessary or appropriate, including without limitation, Reserves on account of Contested Claims.  The Reorganized Debtor may, but shall not be required to, move the Bankruptcy Court to approve: (a) the amount of, and terms on which, such Reserves shall be held, maintained and disbursed, or (b) the amount and timing of any proposed interim Distribution to holders of Allowed Class 3 Claims and Allowed Subclass 4A Claims.  The Reorganized Debtor may elect to seek approval by the Bankruptcy Court for the creation and amount of any Reserves or regarding the amount or timing of any Distribution on account of any Allowed Claims.  Except as otherwise expressly provided in the Plan, the Reorganized Debtor, in the exercise of its good faith business judgment, may transfer funds out of any of the Reserves as necessary or appropriate.  However, the Reorganized Debtor shall not be required to create separate accounts for such Reserves which may be created and memorialized by entries or other accounting methodologies, which may be revised from time-to-time, to enable the Reorganized Debtor to determine the amount of Cash available for Distributions under the Plan.  Subject to any specific deadlines set forth in the Plan, the Reorganized Debtor, shall determine, from time-to-time, in the exercise of the Reorganized Debtor's good faith business judgment: (x) the amount of Cash available for Distribution, (y) the timing of any Distributions, and (z) the amount and creation of any Reserves for Contested Claims.  The Reorganized Debtor shall not be entitled to reserve for, and section 7.02 of the Plan does not apply to, Distributions to holders of Allowed Subclass 4B Claims.

## 3.     Prosecution and Settlement of Estate Claims

Upon the Effective Date, the Reorganized Debtor (a) shall automatically be substituted in place of the Chapter 11 Trustee as the party representing the Estate in respect of any pending lawsuit, motion or other pleading pending before the Bankruptcy Court or any other tribunal, and (b) shall be authorized to file a notice on the docket of each adversary proceeding or the Chapter 11 Cases regarding such substitution.  The Reorganized Debtor shall have exclusive standing and authority to prosecute, settle or compromise Estate Claims for the benefit of the Estate in the manner set forth in the Plan.

## 4.     Plan Injunction

The Reorganized Debtor shall be entitled to the full protection and benefit of the Plan Injunction and shall have standing to bring any action or proceeding necessary to enforce the Plan Injunction against any Person.

## 5.     Relief from the Bankruptcy Court

The Reorganized Debtor shall be authorized to seek relief from the Bankruptcy Court or any other tribunal having jurisdiction as to any matter relating or pertaining to the consummation, administration or performance of the Plan, including without limitation seeking any relief from the Bankruptcy Court which the Reorganized Debtor deems necessary or appropriate to the performance of its duties or the administration of the Plan.

Case 18-30264-sgj11 Doc 1244 Filed 09/07/21 Entered 09/07/21 11:59:05 Page 101 of 172
Case 18-30264-sgj11 Doc 664 Filed 10/25/18 Entered 10/25/18 12:43:46 Page 101 of 172
255

### E.    Source of Distributions

#### 1.    Source of Distributions

All Distributions under the Plan shall be made by the Reorganized Debtor in the manner provided in the Plan and the Confirmation Order.

#### 2.    Timing and Amount of Distributions

No Distribution shall be made on account of any Claim until such Claim is Allowed, except as otherwise set forth in the Plan or otherwise ordered by the Bankruptcy Court.  No Distribution shall be made on account of any Contested Claim until such Claim is Allowed. Except as expressly set forth in the Plan or in the Confirmation Order, the Reorganized Debtor shall, in the exercise of its good faith business judgment, determine the timing and amount of all Distributions which are required to be made under the Plan, consistent with the goal of making such Distributions as expeditiously as reasonably possible.  The Reorganized Debtor may, but shall not be required to, seek approval of, or any other appropriate relief from, the Bankruptcy Court with respect to any of such Distributions.  Any Unclaimed Property may be paid into the registry of the Bankruptcy Court or otherwise distributed in accordance with the orders of the Bankruptcy Court.

#### 3.    Means of Cash Payment

Cash payments pursuant to the Plan shall be made by check drawn on, or by wire transfer from, a domestic bank, or by other means agreed to by the payor and payee.

#### 4.    Record Date for Distributions

As of the close of business on the Effective Date (the "Distribution Record Date"), the register for Claims will be closed, and there shall be no further changes in the holders of record of any Claims.  Although there is no prohibition against the transfer of any Claim by any Creditor, the Reorganized Debtor shall have no obligation to recognize any transfer of a Claim occurring after the Distribution Record Date, and the Reorganized Debtor shall instead be authorized and entitled to recognize and deal for all purposes under the Plan, including for the purpose of making all Distributions, with only those holders of Claims so reflected as of the Distribution Record Date.  However, the Reorganized Debtor may, in the exercise of its good faith business judgment, agree to recognize transfers of Claims after the Distribution Record Date, but shall have no obligation to do so.

#### 5.    Delivery of Distributions

All Distributions, deliveries and payments to the holders of any Allowed Claims shall be made to the addresses set forth on the respective proofs of Claim filed in the Chapter 11 Cases by such Claimants or, if the Distribution is to be made based on a Claim reflected as Allowed in the Schedules, at the address reflected in the Schedules.  Any such Distribution, delivery or payment shall be deemed as made for all purposes relating to the Plan when deposited in the United States Mail, postage prepaid, addressed as required in the preceding sentence.  If any Distribution is returned as undeliverable, no further Distribution shall be made on account of such Allowed Claim unless and until the Reorganized Debtor is notified of such holder's then current address, at which time all missed Distributions shall be made to the holder of such Allowed Claim.  However, all notices to the Reorganized Debtor reflecting new or updated

addresses for undeliverable Distributions shall be made on or before one hundred twenty (120) days after the date of the attempted Distribution or such longer period as the Reorganized Debtor may fix in the exercise of its sole discretion.  After such date, all Unclaimed Property shall revert to the Reorganized Debtor and the Claim of any holder with respect to such property shall be discharged and forever barred.

**6.     W-9 Forms.**

Each holder of an Allowed Claim must provide a W-9 form or other such necessary information to comply with any withholding requirements of any Governmental Unit (collectively the "<u>W-9 Form</u>") to the Reorganized Debtor prior to receiving any Distribution from the Reorganized Debtor.  In the event a holder of an Allowed Claim does not provide a W-9 Form to the Reorganized Debtor within thirty (30) days of the Effective Date, the Reorganized Debtor shall, at an appropriate time, issue a written request to each holder of an Allowed Claim that has not previously provided a W-9 Form to the Reorganized Debtor.  The request shall be in writing and shall be delivered to the last address known to the Debtors or Reorganized Debtor, as appropriate.  The request shall conspicuously advise and disclose that failure to provide a W-9 Form to the Reorganized Debtor within thirty (30) days shall result in a waiver of any right or rights to a Distribution from the Reorganized Debtor.  In the event any holder of an Allowed Claim fails to provide the Reorganized Debtor with a W-9 Form within thirty (30) days after the date of written request described in section 8.06 of the Plan, then the holder of such Allowed Claim shall be deemed to have waived the right to receive any Distribution whatsoever from the Reorganized Debtor.

**7.     Time Bar to Cash Payments**

Checks issued in respect of Allowed Claims shall be null and void if not cashed within ninety (90) days of the date of issuance thereof.  Requests for reissuance of any check shall be made directly to the issuer of the check by the holder of the Allowed Claim with respect to which such check originally was issued.  Any Claim in respect of such a voided check shall be made on or before one hundred twenty (120) days after the date of issuance of such check or such longer period as the Reorganized Debtor may fix.  After such date, all Claims in respect of void checks shall be discharged and forever barred.

**8.     Cure Period**

Except as otherwise set forth in the Plan, the failure by the Reorganized Debtor to timely perform any term, provision or covenant contained in the Plan, or to make any payment or Distribution required by the Plan to any Creditor, or the failure to make any payment or perform any covenant on any note, instrument or document issued pursuant to the Plan, shall not constitute an event of default unless and until the Reorganized Debtor has been given thirty (30) days written notice of such alleged default in the manner provided in the Plan, and provided an opportunity to cure such alleged default.  Until the expiration of such thirty (30) day cure period, the Reorganized Debtor shall not be in default, and performance during such thirty (30) day cure period shall be deemed as timely for all purposes.  Such written notice and passage of the thirty (30) day cure period shall constitute conditions precedent to declaring or claiming any default under the Plan or bringing any action or legal proceeding by any Person to enforce any right granted under the Plan.

9.      **Pre-Payment of Claims**

Unless the Plan expressly prohibits or conditions the pre-payment of an Allowed Claim, the Reorganized Debtor may pre-pay any Allowed Claim in whole or in part at any time and may do so without penalty.

10.     **Distributions after Substantial Consummation**

All Distributions of any kind made to any Creditor after Substantial Consummation and any and all other actions taken under the Plan after Substantial Consummation shall not be subject to relief, reversal or modification by any court unless the implementation of the Confirmation Order is stayed by an order granted under Bankruptcy Rule 8005.

F.      **Retention of Estate Claims and Estate Defenses**

1.      **Retention of Estate Claims**

Except as otherwise specifically provided in the Plan, pursuant to section 1123(b)(3) of the Bankruptcy Code, all Estate Claims shall be transferred to, and vested in, the Reorganized Debtor, both for purposes of seeking an affirmative recovery against any Person and for the purposes of offset, recoupment or defense against any Claim asserted against the Estate or Reorganized Debtor. All Estate Claims shall be deemed to have been transferred to, and vested in, the Reorganized Debtor as of the Effective Date based on the entry of the Confirmation Order.

Without limiting the effectiveness or generality of the foregoing reservation, out of an abundance of caution, the Debtors and the Estate hereby specifically reserves, retains, and preserves the Estate Claims reflected in Exhibit A to the Plan. The provisions of Article IX of the Plan, as well as the descriptions and disclosures relating to the Estate Claims in the Disclosure Statement, are provided in the interest of providing maximum disclosure of the Estate Claims of which Debtors are presently aware and shall not act as a limitation on the potential Estate Claims that may exist. It is the specific intention of the Plan that all Avoidance Actions and all associated remedies, and any other Estate Claims, whether arising before or after the Petition Date, and whether arising under the Bankruptcy Code or applicable state or federal non-bankruptcy laws, shall all be reserved, retained and preserved under the Plan to be transferred to, and vested in, the Reorganized Debtor. All Estate Claims are reserved, retained and preserved both as causes of action for an affirmative recovery and as counterclaims and for the purposes of offset or recoupment against any Claims asserted against the Estate.

2.      **Retention of Estate Defenses**

Except as otherwise specifically provided in the Plan, pursuant to section 1123(b)(3) of the Bankruptcy Code, all Estate Defenses shall be transferred to, and vested in, the Reorganized Debtor. For this purpose, all Estate Defenses shall be reserved, retained and preserved by the Debtors and the Estate, including without limitation all such Estate Defenses available to the Estate pursuant to section 558 of the Bankruptcy Code, and shall be deemed as transferred to, and vested in, the Reorganized Debtor as of the Effective Date based on the entry of the Confirmation Order.

3.      **Assertion of Estate Claims and Estate Defenses**

The Reorganized Debtor shall have, and be vested with, the exclusive right, authority

and standing to assert all Estate Claims and Estate Defenses for the benefit of the Reorganized Debtor.

G.     **Procedures for Resolving and Treating Contested and Contingent Claims**

    **1.**     **Claims Listed in Schedules as Disputed**

Any General Unsecured Claim which is listed in the Schedules as unliquidated, contingent or disputed, and for which no proof of Claim has been timely filed, shall be considered as Disallowed as of the Effective Date without the necessity of any further action by the Reorganized Debtor or further order of the Bankruptcy Court other than the entry of the Confirmation Order.

    **2.**     **Responsibility for Objecting to Claims and Settlement of Claims**

The Reorganized Debtor shall have the exclusive standing and authority to either object to any Claim or settle and compromise any Objection to any Claim, including as follows:

(a)     From and after the Effective Date, the Reorganized Debtor shall have the sole and exclusive right to (i) file, settle, or litigate to Final Order any Objections to any Claims; and (ii) seek to subordinate any Claim. Any Contested Claim may be litigated to Final Order by the Reorganized Debtor; and

(b)     From and after the Effective Date, the Reorganized Debtor shall have the sole and exclusive right to settle, compromise or otherwise resolve any Contested Claim without the necessity of any further notice or approval of the Bankruptcy Court. Bankruptcy Rule 9019 shall not apply to any settlement or compromise of a Contested Claim after the Effective Date.

    **3.**     **Objection Deadline**

All Objections to Claims shall be served and filed by the Objection Deadline; provided, however, the Objection Deadline shall not apply to Claims which are not reflected in the claims register, including any alleged informal proofs of Claim. The Reorganized Debtor may seek to extend the Objection Deadline pursuant to a motion filed on or before the then applicable Objection Deadline with respect to any Claim. Any such motion may be granted without notice or a hearing. In the event that the Reorganized Debtor files such a motion and the Bankruptcy Court denies such motion, the Objection Deadline shall nevertheless be automatically extended to that date which is ten (10) Business Days after the date of entry of the Bankruptcy Court's order denying such motion. Any proof of Claim other than one based upon a Rejection Claim and which is filed more than thirty (30) days after the Effective Date shall be of no force and effect and need not be objected to by the Reorganized Debtor. Nothing contained in the Plan shall limit the right of the Reorganized Debtor to object to Claims, if any, filed or amended after the Objection Deadline.

    **4.**     **Response to Claim Objection**

If the Reorganized Debtor files an Objection to any Claim, then the holder of such Claim shall file a written response to such Objection within twenty-four (24) days after the filing and service of the Objection upon the holder of the Contested Claim. Each such Objection shall contain appropriate negative notice advising the Creditor whose Claim is subject to the Objection of the requirement and time period to file a response to such Objection and that, if no response

Case 18-30264-sgj11 Doc 1244 Filed 09/07/21 Entered 09/07/21 11:59:05 Page 105 of
Case 18-30264-sgj11 Doc 644 Filed 10/25/18 Entered 10/25/18 18:24:46 Page 105 of 72
255

is timely filed to the Objection, the Bankruptcy Court may enter an order that such Claim is
Disallowed without further notice or hearing. The negative notice language in the Objection shall
satisfy the notice requirement in section 3007(a) of the Bankruptcy Rules, and the Reorganized
Debtor shall not be required to send a separate notice of the Objection to the Creditor whose
Claim is subject to the Objection.

5.      **Distributions on Account of Contested Claims**

If a Claim is Contested, then the dates for any Distributions as to such Contested Claim
shall be determined based upon its date of Allowance, and thereafter Distribution shall be made
on account of such Allowed Claim pursuant to the provisions of the Plan. No Distribution shall
be made on account of a Contested Claim until Allowed. Until such time as a contingent Claim
becomes fixed and absolute by a Final Order Allowing such Claim, such Claim shall be treated
as a Contested Claim for purposes of estimates, allocations, and Distributions under the Plan.
Any contingent right to contribution or reimbursement shall continue to be subject to section
502(e) of the Bankruptcy Code.

6.      **No Waiver of Right to Object**

Except as expressly provided in the Plan, nothing contained in the Disclosure Statement,
the Plan, or the Confirmation Order shall waive, relinquish, release or impair the Reorganized
Debtor's right to object to any Claim.

7.      **Offsets and Defenses**

The Reorganized Debtor shall be vested with and retain all Estate Claims and Estate
Defenses, including without limitation all rights of offset or recoupment and all counterclaims
against any Claimant holding a Claim. Assertion of counterclaims by the Reorganized Debtor
against any Claim asserted against the Estate or Reorganized Debtor shall constitute "core"
proceedings.

8.      **Claims Paid or Reduced Prior to Effective Date**

Notwithstanding the contents of the Schedules, Claims listed therein as undisputed,
liquidated and not contingent shall be reduced by the amount, if any, that was paid by the
Debtors prior to the Effective Date, including pursuant to orders of the Bankruptcy Court. To the
extent such payments are not reflected in the Schedules, such Schedules will be deemed
amended and reduced to reflect that such payments were made. Nothing in the Plan shall
preclude the Debtors or the Reorganized Debtor from paying Claims that the Debtors were
authorized to pay pursuant to any Final Order entered by the Bankruptcy Court prior to the
Confirmation Date.

H.      **Executory Contracts and Unexpired Leases**

1.      **Assumption and Rejection of Executory Contracts**

All Executory Contracts and Unexpired Leases of the Debtors shall be deemed rejected
by the Debtors upon the Effective Date unless an Executory Contract or Unexpired Lease (a)
has been previously assumed or rejected pursuant to an order of the Bankruptcy Court, (b) is
identified in Exhibit B to the Plan and/or the Confirmation Order to be (i) assumed or (ii)
assumed and assigned, or (c) is the subject of a motion to assume filed on or before the

Case 18-30264-sgj11 Doc 634 Filed 02/07/21 Entered 02/07/21 11:59:05 Page 106 of 2
Case 18-30264-sgj11 Doc 634 Filed 10/25/18 Entered 10/25/18 12:45:46 Page 106 of 2
255

Confirmation Date. The Plan shall constitute a motion to reject all Executory Contracts and Unexpired Leases except as stated in section 11.01 of the Plan.  However, the Debtors may file a separate motion for the assumption or rejection of any Executory Contract or Unexpired Lease at any time through the Confirmation Date.

### 2. Cure Payments

All payments that may be required by section 365(b)(1) of the Bankruptcy Code to satisfy any Cure Claim shall be made by the Reorganized Debtor as soon as reasonably practical after the Effective Date or upon such terms as may be otherwise agreed between the Reorganized Debtor and the holder of such Cure Claim; *provided, however*, in the event of a dispute regarding the amount of any Cure Claim, the cure of any other defaults, or any other matter pertaining to assumption or assignment of an Executory Contract, the Reorganized Debtor shall make such cure payments and cure such other defaults, all as may be required by section 365(b)(1) of the Bankruptcy Code, following the entry of a Final Order by the Bankruptcy Court resolving such dispute.

### 3. Bar to Rejection Claims

Except as otherwise ordered by the Bankruptcy Court, any Rejection Claim based on the rejection of an Executory Contract or Unexpired Lease shall be forever barred and shall not be enforceable against the Reorganized Debtor or the Reorganized Debtor's assets unless a proof of Claim is filed with the Bankruptcy Court and served upon the Reorganized Debtor and its counsel by the earlier of thirty (30) days after the Effective Date or thirty (30) days after entry of the Final Order approving rejection of such Executory Contract or Unexpired Lease.

### 4. Rejection Claims

Any Rejection Claim not barred by section **Error! Reference source not found.** of the Plan shall be classified as a Class 3 General Unsecured Claim subject to the provisions of sections 502(b)(6) and 502(g) of the Bankruptcy Code; *provided, however*, that any Rejection Claim by a lessor based upon the rejection of an unexpired lease of real property, either prior to the Confirmation Date, upon the entry of the Confirmation Order, or upon the Effective Date, shall be limited in accordance with section 502(b)(6) of the Bankruptcy Code and state law mitigation requirements.  All Rejection Claims shall be deemed as Contested Claims until Allowed.  Nothing contained in the Plan shall be deemed an admission by the Debtors or the Reorganized Debtor that such rejection gives rise to or results in a Claim or shall be deemed a waiver by the Debtors or the Reorganized Debtor of any objections or defenses to any such Rejection Claim if asserted.

### 5. Reservation of Rights

Nothing contained in the Plan shall constitute an admission by the Debtors that any contract or lease is in fact an Executory Contract or Unexpired Lease or that the Debtors or the Reorganized Debtor have any liability thereunder.  If there is a dispute regarding whether a contract or lease is or was executory or unexpired at the time of assumption or rejection, the Reorganized Debtor shall have thirty (30) days following entry of a Final Order resolving such dispute to alter the treatment of such contract or lease.

I.      **Substantive Consolidation of the Debtors**

Pursuant to the Confirmation Order, the Bankruptcy Court shall approve the substantive consolidation of the Debtors for the sole purposes of implementing the Plan, including for purposes of voting and Distributions to be made under the Plan.  Pursuant to such order:  (a) all assets and liabilities of the Debtors will be deemed merged; (b) all guarantees by one Debtor of the obligations of the other Debtor will be deemed eliminated so that any Claim against any Debtor and any guarantee thereof executed by the other Debtor and any joint or several liability of the Debtors will be deemed to be one obligation of the consolidated Debtors; and (c) each and every Claim filed or to be filed in the Chapter 11 Case of either Debtor will be deemed filed against the consolidated Debtors and will be deemed one Claim against and a single obligation of the consolidated Debtors.

J.      **Conditions Precedent to Confirmation and Effectiveness of Plan**

1.      **Conditions to Confirmation and Effectiveness of Plan**

The Plan shall not become effective until the following conditions shall have been satisfied and which may occur concurrently with the Effective Date:  (a) the Confirmation Order shall have been entered, in form and substance acceptable to the Chapter 11 Trustee; (b) the necessary Plan Documents have been executed and delivered, and (c) all other conditions specified by the Chapter 11 Trustee have been satisfied.  Any or all of the above conditions other than (a) may be waived at any time by the Chapter 11 Trustee.

2.      **Notice of the Effective Date**

On or as soon as reasonably practical after the occurrence of the Effective Date, the Reorganized Debtor shall cause a notice of the Effective Date to be filed with the Bankruptcy Court and served on all Creditors and parties-in-interest.

3.      **Revocation of Plan**

The Chapter 11 Trustee may revoke and withdraw the Plan at any time before the Effective Date.  If the Chapter 11 Trustee revokes or withdraws the Plan, or if confirmation of the Plan does not occur, then the Plan shall be deemed null and void and nothing contained in the Plan shall be deemed to constitute a waiver or release of any Claims by or against the Debtors, as the case may be, or any other Person, or to prejudice in any manner the rights of the Debtors or any other Person in any further proceedings involving the Debtors.

K.      **Effect of the Plan on Claims and Interests**

1.      **Compromise and Settlement**

(a)      Pursuant to section 363 of the Bankruptcy Code and Bankruptcy Rule 9019, and in consideration of the classification, potential Distributions and other benefits provided under the Plan, the provisions of the Plan shall constitute a good faith compromise and settlement of all Claims, Interests and controversies subject to, or dealt with, under the Plan, including, without limitation, all Claims against the Debtors or Estate arising prior to the Effective Date, whether known or unknown, foreseen or unforeseen, asserted or unasserted, fixed or contingent, arising out of, relating to or in connection with the business or affairs of, or transactions with, the Debtors or the Estate.  The entry of the Confirmation Order shall

constitute the Bankruptcy Court's approval of each of the foregoing compromises or settlements embodied in the Plan, and all other compromises and settlements provided for in the Plan, and the Bankruptcy Court's findings shall constitute its determination that such compromises and settlements are in the best interest of the Debtors, the Estate, Creditors and other parties-in-interest, and are fair, equitable and within the range of reasonableness. The rights afforded in the Plan and the treatment of all Claims and Interests in the Plan shall be in exchange for, and in complete satisfaction and release of, all Claims and Interests of any nature whatsoever against and in the Debtors, the Estate, and the Assets. Except as otherwise provided in the Plan, all Persons shall be precluded and forever barred by the Plan Injunction from asserting against the Debtors and their affiliates, successors, assigns, the Reorganized Debtor or the Reorganized Debtor's Assets, or the Estate, any event, occurrence, condition, thing, or other or further Claims or causes of action based upon any act, omission, transaction, or other activity of any kind or nature that occurred or came into existence prior to the Effective Date, whether or not the facts of or legal bases therefore were known or existed prior to the Effective Date.

(b)     It is not the intent of the Plan that confirmation of the Plan shall in any manner alter or amend any settlement and compromise (including those contained in agreed orders) between the Debtors and any Person that has been previously approved by the Bankruptcy Court (each, a "Prior Settlement"). To the extent of any conflict between the terms of the Plan and the terms of any Prior Settlement, the terms of the Prior Settlement shall control and such Prior Settlement shall be enforceable according to its terms.

## 2.     Discharge

The Debtors and their successors in interest and assigns shall be deemed discharged and released pursuant to section 1141(d)(1) of the Bankruptcy Code from any and all Claims provided for in the Plan.

## 3.     Plan Injunction

SECTION 14.03 OF THE PLAN IS REFERRED TO AS THE "PLAN INJUNCTION."

**SECTION 14.03 OF THE PLAN IS REFERRED TO AS THE "PLAN INJUNCTION." EXCEPT AS OTHERWISE EXPRESSLY PROVIDED IN THE PLAN, AS OF THE EFFECTIVE DATE ALL HOLDERS OF CLAIMS AGAINST, OR INTERESTS IN, THE DEBTORS, THE ESTATE OR ANY OF THE ASSETS THAT AROSE PRIOR TO THE EFFECTIVE DATE ARE HEREBY PERMANENTLY ENJOINED AND PROHIBITED FROM THE FOLLOWING: (a) THE COMMENCING OR CONTINUATION IN ANY MANNER, DIRECTLY OR INDIRECTLY, OF ANY ACTION, CASE, LAWSUIT OR OTHER PROCEEDING OF ANY TYPE OR NATURE AGAINST THE DEBTORS, THE ESTATE, THE REORGANIZED DEBTOR, OR THE REORGANIZED DEBTOR'S ASSETS WITH RESPECT TO ANY SUCH CLAIM OR INTEREST ARISING OR ACCRUING BEFORE THE EFFECTIVE DATE, INCLUDING WITHOUT LIMITATION THE ENTRY OR ENFORCEMENT OF ANY JUDGMENT, OR ANY OTHER ACT FOR THE COLLECTION, EITHER DIRECTLY OR INDIRECTLY, OF ANY CLAIM OR INTEREST AGAINST THE DEBTORS, THE ESTATE, THE REORGANIZED DEBTOR, OR THE REORGANIZED DEBTOR'S ASSETS; (b) THE CREATION, PERFECTION OR ENFORCEMENT OF ANY LIEN, SECURITY INTEREST, ENCUMBRANCE, RIGHT OR BURDEN, EITHER DIRECTLY OR INDIRECTLY, AGAINST THE DEBTORS, THE ESTATE, THE REORGANIZED DEBTOR, OR**

Case 19-30264-sgj11 Doc 1244 Filed 02/07/21 Entered 02/07/21 11:59:05 Page 109 of 255
Case 19-30264-sgj11 Doc 6641 Filed 10/25/18 Entered 10/25/18 12:45:46 Page 109 of 172
255

**THE REORGANIZED DEBTOR'S ASSETS, OR (c) TAKING ANY ACTION IN RELATION TO THE DEBTORS, THE ESTATE, THE REORGANIZED DEBTOR, OR THE REORGANIZED DEBTOR'S ASSETS, EITHER DIRECTLY OR INDIRECTLY, WHICH VIOLATES OR DOES NOT CONFORM OR COMPLY WITH THE PROVISIONS OF THE PLAN APPLICABLE TO SUCH CLAIM OR INTEREST. THE PLAN INJUNCTION SHALL ALSO BE INCORPORATED INTO THE CONFIRMATION ORDER.**

**IN ADDITION TO THE FOREGOING, EXCEPT TO THE EXTENT NECESSARY TO ALLOW HCLOF, THE REORGANIZED DEBTOR AND BRIGADE TO EFFECTUATE THE RESET OF ONE OR MORE OF THE ACIS CLOS IN ACCORDANCE WITH SECTION 6.08 OF THE PLAN, PURSUANT TO SECTIONS 105(a), 1123(a)(5), 1123(b)(6), AND 1142(b) OF THE BANKRUPTCY CODE, THE ENJOINED PARTIES (DEFINED BELOW) ARE HEREBY ENJOINED FROM: (a) PROCEEDING WITH, EFFECTUATING, OR OTHERWISE TAKING (i) ANY ACTION IN FURTHERANCE OF ANY OPTIONAL REDEMPTION, CALL, OR OTHER LIQUIDATION OF THE ACIS CLOS PREVIOUSLY OR CURRENTLY ISSUED BY ANY SUCH PARTIES, AND (ii) ANY OTHER ATTEMPT TO LIQUIDATE THE ACIS CLOS BY ANY MEANS, (b) TRADING ANY ACIS CLO COLLATERAL IN FURTHERANCE OF ANY OPTIONAL REDEMPTION, CALL, OR OTHER LIQUIDATION OF THE ACIS CLOS, (c) EXERCISING ANY RIGHTS TO ASK OR DIRECT THE ISSUERS, CO-ISSUERS OR INDENTURE TRUSTEE TO PERFORM ANY ACTION IN RELATION TO THE ACIS CLOS THAT THE ENJOINED PARTIES ARE PROHIBITED FROM TAKING UNDER THE TERMS OF THE PLAN INJUNCTION, (d) INTERFERING IN ANY WAY WITH THE CAPITAL MARKETS PROCESS OF RESETTING ANY ACIS CLO, AND (e) SENDING, MAILING, OR OTHERWISE DISTRIBUTING ANY NOTICE TO THE HOLDERS OF THE NOTES IN THE ACIS CLOS IN CONNECTION WITH THE EFFECTUATION OF ANY OPTIONAL REDEMPTION, CALL, OR OTHER LIQUIDATION OF THE ACIS CLOS, UNTIL THE EARLIER TO OCCUR OF:  (w) THE DATE UPON WHICH A FINAL ORDER IS ENTERED RESOLVING THE ESTATE'S AVOIDANCE CLAIMS AGAINST ALL ENJOINED PARTIES RELATING TO ACIS LP'S RIGHTS UNDER THE ALF PMA; (x) THE DATE UPON WHICH ALL ALLOWED CLAIMS AGAINST THE DEBTORS HAVE BEEN PAID IN FULL, (y) THE ENTRY OF AN ORDER BY THE BANKRUPTCY COURT FINDING THAT A MATERIAL DEFAULT HAS OCCURRED UNDER THE TERMS OF THE PLAN, OR (z) THE ENTRY OF A SUBSEQUENT ORDER BY THE BANKRUPTCY COURT PROVIDING OTHERWISE WITH RESPECT TO ONE OR MORE OF THE ACIS CLOS.  FOR PURPOSES OF THIS PARAGRAPH, THE TERM "<u>ENJOINED PARTIES</u>" SHALL INCLUDE HIGHLAND, HCLOF, CLO HOLDCO, NEUTRA, HIGHLAND HCF, HIGHLAND CLOM, ANY AFFILIATES OF HIGHLAND, AND THEIR RESPECTIVE EMPLOYEES, AGENTS, REPRESENTATIVES, TRANSFEREES, ASSIGNS, AND SUCCESSORS. FOR PURPOSES OF CLARIFICATION AND AVOIDANCE OF DOUBT, NOTHING IN THIS PARAGRAPH SHALL PRECLUDE ORDINARY DAY-TO-DAY TRADING OF THE COLLATERAL IN THE ACIS CLOS BY THE REORGANIZED DEBTOR.**

Notwithstanding anything to the contrary in the Plan: (a) third-party professionals employed by the Reorganized Debtor shall not be released or exculpated from any losses, claims, damages, liabilities, or expenses arising from their duties and

Case 18-30264-sgj11 Doc 664 Filed 10/25/18 Entered 10/25/18 12:45:46 Page 40 of 72

services provided to the Reorganized Debtor; and (b) any third-party professionals employed by the Reorganized Debtor shall only be entitled to be indemnified by the Reorganized Debtor to the extent provided by applicable law.

Notwithstanding anything to the contrary in the Plan or Confirmation Order, nothing in the Plan or in the Confirmation Order shall discharge, release, enjoin or otherwise bar (i) any liability of the Debtors, the Estate, the Reorganized Debtor, or the Reorganized Debtor's assets ("Released Parties") to a Governmental Unit arising on or after the Confirmation Date with respect to events occurring after the Confirmation Date, provided that the Released Parties reserve the right to assert that any such liability is a Claim that arose on or prior to the Confirmation Date and constitutes a Claim that is subject to the deadlines for filing proofs of claim, (ii) any liability to a Governmental Unit that is not a Claim subject to the deadlines for filing proofs of Claim, (iii) any valid right of setoff or recoupment of a Governmental Unit, and (iv) any police or regulatory action by a Governmental Unit.  In addition, nothing in the Plan or Confirmation Order discharges, releases, precludes or enjoins any environmental liability to any Governmental Unit that any Person other than the Released Parties would be subject to as the owner or operator of the property after the Effective Date.  For the avoidance of any doubt, nothing in this paragraph shall be construed to limit the application of the Plan Injunction to any Claim which was subject to any bar date applicable to such Claim.

### 4.      Setoffs

Except as otherwise expressly provided for in the Plan, pursuant to the Bankruptcy Code (including section 553 of the Bankruptcy Code), applicable nonbankruptcy law, or as may be agreed to by the holder of a Claim, the Reorganized Debtor may set off against any Allowed Claim and the Distributions to be made pursuant to the Plan on account of such Allowed Claim (before such Distribution is made), any Claims, rights, Estate Claims and Estate Defenses of any nature that the Debtors may hold against the holder of such Allowed Claim, to the extent such Claims, rights, Estate Claims and Estate Defenses against such holder have not been otherwise compromised or settled on or prior to the Effective Date (whether pursuant to the Plan or otherwise); provided, however, that neither the failure to effect such a setoff nor the allowance of any Claim or Interest pursuant to the Plan shall constitute a waiver or release of any such Claims, rights, Estate Claims and Estate Defenses that the Estate may possess against such Claimant.  In no event shall any Claimant or Interest holder be entitled to setoff any Claim or Interest against any Claim, right, or Estate Claim of the Debtors without the consent of the Debtors or the Reorganized Debtor unless such holder files a motion with the Bankruptcy Court requesting the authority to perform such setoff notwithstanding any indication in any proof of Claim or otherwise that such holder asserts, has, or intends to preserve any right of setoff pursuant to section 553 of the Bankruptcy Code or otherwise.

### 5.      Recoupment

Except as otherwise expressly provided for in the Plan, in no event shall any holder of Claims or Interests be entitled to recoup any Claim or Interest against any Claim, right, account receivable, or Estate Claim of the Debtors or the Reorganized Debtor unless (a) such holder actually provides notice thereof in writing to the Debtors or the Reorganized Debtor of its intent to perform a recoupment; (b) such notice includes the amount to be recouped by the holder of the Claim or Interest and a specific description of the basis for the recoupment, and (c) the Debtors or the Reorganized Debtor have provided a written response to such Claim or Interest

Case 18-30264-sgj11 Doc 634 Filed 10/25/18 Entered 10/25/18 18:24:46 Page 111 of 172
Case 18-30264-sgj11 Doc 634-4 Filed 02/07/21 Entered 02/07/21 11:59:05 Page 111 of 172
255

holder, stating unequivocally that the Debtors or the Reorganized Debtor consents to the requested recoupment. The Debtors and the Reorganized Debtor shall have the right, but not the obligation, to seek an order of the Bankruptcy Court allowing any or all of the proposed recoupment. In the absence of a written response from the Debtors or the Reorganized Debtor consenting to a recoupment or an order of the Bankruptcy Court authorizing a recoupment, no recoupment by the holder of a Claim or Interest shall be allowed.

### 6. Turnover

On the Effective Date, any rights of the Estate to compel turnover of Assets under applicable nonbankruptcy law and pursuant to section 542 or 543 of the Bankruptcy Code shall be deemed transferred to and vested in the Reorganized Debtor.

### 7. Automatic Stay

The automatic stay pursuant to section 362 of the Bankruptcy Code, except as previously modified by the Bankruptcy Court, shall remain in effect until the Effective Date of the Plan as to the Debtors, the Estate and all Assets. As of the Effective Date, the automatic stay shall be replaced by the Plan Injunction.

## L. Jurisdiction of Courts and Modifications to the Plan

### 1. Retention of Jurisdiction

Pursuant to sections 1334 and 157 of title 28 of the United States Code, the Bankruptcy Court shall retain exclusive jurisdiction of all matters arising in, arising under, and related to the Chapter 11 Cases and the Plan, to the full extent allowed or permitted by applicable law, including without limitation for the purposes of invoking sections 105(a) and 1142 of the Bankruptcy Code, and for, among other things, the following purposes:

(a) To hear and determine any and all objections to, or applications or motions concerning, the allowance of Claims or the allowance, classification, priority, compromise, estimation, or payment of any Administrative Expense;

(b) To hear and determine any and all applications for payment of fees and expenses pursuant to the Plan to any Estate Professional pursuant to sections 330 or 503 of the Bankruptcy Code, or for payment of any other fees or expenses authorized to be paid or reimbursed under the Plan, and any and all objections thereto;

(c) To hear and determine pending applications for the rejection, assumption, or assumption and assignment of Executory Contracts and Unexpired Leases and the allowance of Claims resulting therefrom, and to determine the rights of any party in respect to the assumption or rejection of any Executory Contract or Unexpired Lease;

(d) To hear and determine any and all adversary proceedings, applications, or contested matters, including relating to the allowance of any Claim;

(e) To hear and determine all controversies, disputes, and suits which may arise in connection with the execution, interpretation, implementation, consummation, or enforcement of the Plan or in connection with the enforcement of any remedies made available under the Plan, including without limitation, (i) adjudication of all rights, interests or disputes

relating to any of the Assets, (ii) the valuation of all Collateral, (iii) the determination of the validity of any Lien or claimed right of offset or recoupment; and (iv) determinations of Objections to Contested Claims;

(f)     To liquidate and administer any disputed, contingent, or unliquidated Claims, including the Allowance of all Contested Claims;

(g)     To administer Distributions to holders of Allowed Claims as provided in the Plan;

(h)     To enter and implement such orders as may be appropriate in the event the Confirmation Order is for any reason stayed, reversed, revoked, modified, or vacated;

(i)     To enable the Reorganized Debtor to prosecute any and all proceedings which may be brought to set aside transfers, Liens or encumbrances and to recover any transfers, Assets, properties or damages to which the Reorganized Debtor may be entitled under applicable provisions of the Bankruptcy Code or any other federal, state or local laws, including causes of action, controversies, disputes and conflicts between the Reorganized Debtor and any other party, including but not limited to, any causes of action or Objections to Claims, preferences or fraudulent transfers and obligations or equitable subordination;

(j)     To consider any modification of the Plan pursuant to section 1127 of the Bankruptcy Code, to cure any defect or omission, or reconcile any inconsistency in any order of the Bankruptcy Court, including, without limitation the Confirmation Order;

(k)     To enforce the discharge and Plan Injunction against any Person;

(l)     To enter and implement all such orders as may be necessary or appropriate to execute, interpret, construe, implement, consummate, or enforce the terms and conditions of the Plan and the transactions required or contemplated pursuant thereto;

(m)     To hear and determine any motion or application which the Reorganized Debtor is required or allowed to commence before the Bankruptcy Court pursuant to the Plan;

(n)     To hear and determine any other matter not inconsistent with the Bankruptcy Code and title 28 of the United States Code that may arise in connection with or related to the Plan;

(o)     To determine proceedings pursuant to section 505 of the Bankruptcy Code;

(p)     To enter a final decree closing the Chapter 11 Cases; and

(q)     To determine any other matter or dispute relating to the Estate, the Estate Claims, the Estate Defenses, the Assets, or the Distributions by the Reorganized Debtor.

### 2.     Abstention and Other Courts

If the Bankruptcy Court abstains from exercising, or declines to exercise, jurisdiction or is otherwise without jurisdiction over any matter arising out of or relating to the Chapter 11 Cases, Article XV of the Plan shall have no effect upon and shall not control, prohibit or limit the

Case 18-30264-sgj11 Doc 634 Filed 02/07/21 Entered 02/07/21 11:59:05 Page 113 of
255
Case 18-30264-sgj11 Doc 634 Filed 10/25/18 Entered 10/25/18 12:45:46 Page 43 of 72

exercise of jurisdiction by any other court having competent jurisdiction with respect to such matter.

### 3.     Non-Material Modifications

The Reorganized Debtor may, with the approval of the Bankruptcy Court and without notice to all holders of Claims and Interests, correct any defect, omission, or inconsistency in the Plan in such manner and to such extent as may be necessary or desirable.  The Reorganized Debtor may undertake such nonmaterial modification pursuant to section 15.03 of the Plan insofar as it does not adversely change the treatment of the Claim of any Creditor or the Interest of any Interest holder who has not accepted in writing the modification.

### 4.     Material Modifications

Modifications of the Plan may be proposed in writing by the Chapter 11 Trustee at any time before confirmation, provided that the Plan, as modified, meets the requirements of sections 1122 and 1123 of the Bankruptcy Code, and the Chapter 11 Trustee shall have complied with section 1125 of the Bankruptcy Code.  The Plan may be modified at any time after confirmation and before its Substantial Consummation, provided that the Plan, as modified, meets the requirements of sections 1122 and 1123 of the Bankruptcy Code, and the Bankruptcy Court, after notice and a hearing, confirms the Plan, as modified, under section 1129 of the Bankruptcy Code, and the circumstances warrant such modification.  A holder of a Claim or Interest that has accepted or rejected the Plan shall be deemed to have accepted or rejected, as the case may be, such Plan as modified, unless, within the time fixed by the Bankruptcy Court, such holder changes its previous acceptance or rejection.

## M.     Miscellaneous Provisions

### 1.     Severability

Should the Bankruptcy Court determine any provision of the Plan is unenforceable either on its face or as applied to any Claim or Interest or transaction, the Reorganized Debtor may modify the Plan so that any such provision shall not be applicable to the holder of any Claim or Interest.  Such a determination of unenforceability shall not (a) limit or affect the enforceability and operative effect of any other provision of the Plan or (b) require the resolicitation of any acceptance or rejection of the Plan.

### 2.     Oral Agreements; Modification of Plan; Oral Representations or Inducements

The terms of the Plan, Disclosure Statement and Confirmation Order may only be amended in writing and may not be changed, contradicted or varied by any oral statement, agreement, warranty or representation.  None of the Debtors, any representative of the Estate, including Robin Phelan in his capacity as Chapter 11 Trustee, nor their attorneys have made any representation, warranty, promise or inducement relating to the Plan or its confirmation except as expressly set forth in the Plan, the Disclosure Statement, or the Confirmation Order or other order of the Bankruptcy Court.

### 3.     Waiver

The Reorganized Debtor shall not be deemed to have waived any right, power or

privilege pursuant to the Plan unless the waiver is in writing and signed by the Reorganized Debtor. There shall be no waiver by implication, course of conduct or dealing, or through any delay or inaction by the Reorganized Debtor, of any right pursuant to the Plan, including the provisions of section 16.03 of the Plan. The waiver of any right under the Plan shall not act as a waiver of any other or subsequent right, power or privilege.

4.      **Notice**

Any notice or communication required or permitted by the Plan shall be given, made or sent as follows:

(a)      If to a Creditor, notice may be given as follows: (i) if the Creditor has not filed a proof of Claim, then to the address reflected in the Schedules, or (ii) if the Creditor has filed a proof of Claim, then to the address reflected in the proof of Claim.

(b)      If to the Reorganized Debtor, notice shall be sent to the following addresses:

| | |
|---|---|
| Jeff P. Prostok | Josh Terry |
| Suzanne K. Rosen | c/o Brian P. Shaw |
| Forshey Prostok LLP | Rogge Dunn Group, PC |
| 777 Main Street, Suite 1290 | 1201 Elm Street, Suite 5200 |
| Fort Worth, Texas 76102 | Dallas, Texas 75270 |

(c)      Any Creditor desiring to change its address for the purpose of notice may do so by giving notice to the Reorganized Debtor of its new address in accordance with the terms of section 16.04 of the Plan.

Any notice given, made or sent as set forth above shall be effective upon being (i) deposited in the United States Mail, postage prepaid, addressed to the addressee at the address as set forth above; (ii) delivered by hand or messenger to the addressee at the address set forth above; (iii) telecopied to the addressee as set forth above, with a hard confirmation copy being immediately sent through the United States Mail; or (iv) delivered for transmission to an expedited or overnight delivery service such as FedEx.

5.      **Compliance with All Applicable Laws**

If notified by any governmental authority that it is in violation of any applicable law, rule, regulation, or order of such governmental authority relating to its business, the Reorganized Debtor shall comply with such law, rule, regulation, or order; provided, however, that nothing contained in the Plan shall require such compliance if the legality or applicability of any such requirement is being contested in good faith in appropriate proceedings and, if appropriate, an adequate Reserve has been set aside on the books of the Reorganized Debtor.

6.      **Duties to Creditors; Exculpation**

Neither the Chapter 11 Trustee nor any agent, representative, accountant, financial advisor, attorney, shareholder, officer, affiliate, member or employee of the Chapter 11 Trustee or the Debtors, including but not limited to Estate Professionals (collectively, the "Exculpated Parties"), shall ever owe any duty to any Person (including any Creditor) other than the duties owed to the Debtors' bankruptcy Estate, for any act, omission, or event in connection with, or arising out of, or relating to, any of the following: (a) the Debtors' Chapter 11 Cases, including

Case 18-30264-sgj11 Doc 1244 Filed 09/07/21 Entered 09/07/21 11:59:05 Page 115 of 172
Case 18-30264-sgj11 Doc 664 Filed 10/25/18 Entered 10/25/18 18:24:46 Page 45 of 72
255

all matters or actions in connection with or relating to the administration of the Estate, (b) the Plan, including the proposal, negotiation, confirmation and consummation of the Plan, or (c) any act or omission relating to the administration of the Plan after the Effective Date.  All such Exculpated Parties shall be fully exculpated and released from any and all claims and causes of action by any Person, known or unknown, in connection with, or arising out of, or relating to, any of the following:  (x) the Debtors' Chapter 11 Cases, including all matters or actions in connection with or relating to the administration of the Estate, (y) the Plan, including the proposal, negotiation, confirmation and consummation of the Plan, or (z) any act or omission relating to the administration of the Plan after the Effective Date, except for claims and causes of action arising out of such Exculpated Party's gross negligence or willful misconduct.

### 7. Binding Effect

The Plan shall be binding upon, and shall inure to the benefit of, the Reorganized Debtor, the holders of the Claims or Liens, and their respective successors-in-interest and assigns.

### 8. Governing Law, Interpretation

Unless a rule of law or procedure supplied by federal law (including the Bankruptcy Code and Bankruptcy Rules) is applicable, the internal laws of the State of Texas shall govern the construction and implementation of the Plan and any Plan Documents without regard to conflicts of law.  The Plan shall control any inconsistent term or provision of any other Plan Documents.

### 9. Payment of Statutory Fees

All accrued U.S. Trustee Fees as of the Confirmation Date shall be paid by the Reorganized Debtor on or as soon as practicable after the Effective Date, and thereafter shall be paid by the Reorganized Debtor as such statutory fees become due and payable.

### 10. Filing of Additional Documents

On or before Substantial Consummation of the Plan, the Reorganized Debtor may file with the Bankruptcy Court such agreements and other documents as may be necessary or appropriate to effectuate and further evidence the terms and conditions of the Plan.

### 11. Computation of Time

Bankruptcy Rule 9006 shall apply to the calculation of all time periods pursuant to the Plan.  If the final day for any Distribution, performance, act or event under the Plan is not a Business Day, then the time for making or performing such Distribution, performance, act or event shall be extended to the next Business Day.  Any payment or Distribution required to be made under the Plan on a day other than a Business Day shall be due and payable on the next succeeding Business Day.

### 12. Elections by the Reorganized Debtor

Any right of election or choice granted to the Reorganized Debtor under the Plan may be exercised, at the Reorganized Debtor's election, separately as to each Claim, Creditor or Person.

13. **Release of Liens**

Except as otherwise expressly provided in the Plan or the Confirmation Order, all Liens against any of the Assets transferred to and vested in the Reorganized Debtor shall be deemed to be released, terminated and nullified without the necessity of any order by the Bankruptcy Court other than the Confirmation Order.

14. **Rates**

The Plan does not provide for the change of any rate that is within the jurisdiction of any governmental regulatory commission after the occurrence of the Effective Date.

15. **Compliance with Tax Requirements**

In connection with the Plan, the Reorganized Debtor shall comply with all withholding and reporting requirements imposed by federal, state and local Taxing Authorities and all Distributions under the Plan shall be subject to such withholding and reporting requirements. Notwithstanding the above, each holder of an Allowed Claim or Interest that is to receive a Distribution under the Plan shall have the sole and exclusive responsibility for the satisfaction and payment of any tax obligations imposed by any governmental unit, including income, withholding and other tax obligations, on account of such Distribution under the Plan.

16. **Notice of Occurrence of the Effective Date**

Promptly after occurrence of the Effective Date, the Reorganized Debtor, as directed by the Bankruptcy Court, shall serve on all known parties-in-interest and holders of Claims and Interests, notice of the occurrence of the Effective Date.

17. **Notice of Entry of Confirmation Order**

Promptly after entry of the Confirmation Order, the Chapter 11 Trustee, as directed by the Bankruptcy Court in the Confirmation Order, shall serve on all known parties-in-interest and holders of Claims and Interests, notice of entry of the Confirmation Order.

## VIII. <u>CERTAIN FEDERAL INCOME TAX CONSEQUENCES OF THE PLAN</u>

THE PLAN AND ITS RELATED TAX CONSEQUENCES ARE COMPLEX. MOREOVER, MANY OF THE INTERNAL REVENUE CODE PROVISIONS DEALING WITH THE FEDERAL INCOME TAX ISSUES ARISING FROM THE PLAN HAVE BEEN THE SUBJECT OF RECENT LEGISLATION AND, AS A RESULT, MAY BE SUBJECT TO AS YET UNKNOWN ADMINISTRATIVE OR JUDICIAL INTERPRETATIONS. THE DEBTORS HAVE NOT REQUESTED A RULING FROM THE INTERNAL REVENUE SERVICE (THE "IRS") OR AN OPINION OF COUNSEL WITH RESPECT TO THESE MATTERS. ACCORDINGLY, NO ASSURANCE CAN BE GIVEN AS TO THE INTERPRETATION THAT THE IRS WILL ADOPT. THERE ALSO MAY BE STATE, LOCAL OR OTHER TAX CONSIDERATIONS APPLICABLE TO EACH CREDITOR. CREDITORS ARE URGED TO CONSULT THEIR OWN TAX ADVISORS AS TO THE CONSEQUENCES OF THE PLAN TO THEM UNDER FEDERAL AND APPLICABLE STATE, LOCAL AND OTHER TAX LAWS.

## IX. <u>CONFIRMATION OF THE PLAN</u>

Case 18-30264-sgj11 Doc 1244 Filed 09/07/21 Entered 09/07/21 11:59:05 Page 117 of
Case 18-30264-sgj11 Doc 664 Filed 10/25/18 Entered 10/25/18 18:24:46 Page 47 of 72
255

### A.      Solicitation of Votes; Voting Procedures

#### 1.      Ballots and Voting Deadlines

A Ballot to be used for voting to accept or reject the Plan, together with a postage-paid return envelope, is enclosed with all copies of this Disclosure Statement mailed to all holders of Claims and Interests entitled to vote.  BEFORE COMPLETING YOUR BALLOT, PLEASE READ CAREFULLY THE INSTRUCTION SHEET THAT ACCOMPANIES THE BALLOT.

The Bankruptcy Court has directed that, in order to be counted for voting purposes, Ballots for the acceptance or rejection of the Plan must be received by no later **November 26, 2018** at the following address:

> Forshey & Prostok, L.L.P.
> 777 Main Street, Suite 1290
> Fort Worth, Texas 76102
> Attn: Linda Breedlove

YOUR BALLOT MAY NOT BE COUNTED IF IT IS RECEIVED AT THE ABOVE ADDRESS AFTER **November 26, 2018.**

#### 2.      Parties-in-Interest Entitled to Vote

The holder of a Claim or Interest may vote to accept or reject the Plan only if the Plan impairs the Class in which such Claim or Interest is classified.  Under the Plan, Class 1 is unimpaired and is deemed to have accepted the Plan.  Classes 2, 3, and Subclass 4A and Subclass 4B are Impaired and holders of Claims in Classes 2, 3, and Subclass 4A and Subclass 4B shall be entitled to vote on the Plan, although Subclass 4B is currently an empty class.  Class 5 Interests are also Impaired, but all Interests in the Debtors shall be cancelled as of the Effective Date and holders of Class 5 Interests will receive no Distributions under the Plan.  Therefore, Class 5 is deemed to have rejected the Plan.

Any Claim or Interest as to which an Objection has been filed is not entitled to vote unless the Bankruptcy Court, upon application of the holder to whose Claim or Interest an Objection has been made, temporarily allows such Claim or Interest in an amount that it deems proper for the purpose of accepting or rejecting the Plan.  Any such application must be heard and determined by the Bankruptcy Court on or before commencement of the Confirmation Hearing.  A vote may be disregarded if the Bankruptcy Court determines, after notice and a hearing, that such vote was not solicited or procured in good faith or in accordance with the provisions of the Bankruptcy Code.

IF YOU HAVE ANY QUESTIONS REGARDING THE PROCEDURES FOR VOTING ON THE PLAN, PLEASE CONTACT COUNSEL FOR THE CHAPTER 11 TRUSTEE AT THE FOLLOWING ADDRESS:

Jeff P. Prostok
Suzanne K. Rosen
Forshey & Prostok, L.L.P.
777 Main Street, Suite 1290
Fort Worth, Texas 76102
(817) 877-8855 Telephone
(817) 877-4151 Fax
Email: jprostok@forsheyprostok.com
Email: srosen@forsheyprostok.com

### 3. Vote Required for Class Acceptance

The Bankruptcy Code defines acceptance of a plan by a class of claims as acceptance by holders of at least two-thirds in dollar amount, and more than one-half in number, of the claims of that class which actually cast ballots for acceptance or rejection of the plan. Thus, class acceptance takes place only if at least two-thirds in amount and a majority in number of the holders of claims voting cast their ballots in favor of acceptance.

The Bankruptcy Code defines acceptance of a plan by a class of interests as acceptance by holders of at least two-thirds in amount of the interests of that class that actually cast ballots for acceptance or rejection of the plan. Thus, class acceptance takes place only if at least two-thirds in amount of the holders of interests voting cast their ballots in favor of acceptance.

### B. Confirmation Hearing

Section 1128(a) of the Bankruptcy Code requires the Bankruptcy Court, after notice, to hold a hearing on confirmation of the Plan. Pursuant to the Solicitation Order, the Confirmation Hearing has been scheduled for **December 11, 2018, at 9:30 a.m. Central Time**, in the United States Bankruptcy Court for the Northern District of Texas, Dallas Division. In addition to considering confirmation of the Plan, the Bankruptcy Court will consider final approval of this Disclosure Statement at such hearing. The Confirmation Hearing may be adjourned from time to time by the Bankruptcy Court without further notice except for an announcement made at the Confirmation Hearing or any adjournment thereof.

Section 1128(b) of the Bankruptcy Code provides that any party in interest may object to confirmation of a plan. Any objection to confirmation of the Plan and/or final approval of this Disclosure Statement must be made in writing and filed with the Clerk of the Bankruptcy Court by no later than **November 26, 2018**, at the following address:

<div align="center">

Office of the Clerk
U.S. Bankruptcy Court
Earle Cabell Federal Building
1100 Commerce St., Rm. 1254
Dallas, TX 75242-1496

</div>

Concurrently upon filing, any Plan/Disclosure Statement Objections must be served, together with proof of service, upon (a) on any parties who have filed notices of appearance and requests for notice in the Chapter 11 Cases and (b) the following parties:

Jeff P. Prostok
Suzanne K. Rosen
Forshey & Prostok, L.L.P.
777 Main Street, Suite 1290
Fort Worth, TX 76102
Email: jprostok@forsheyprostok.com
Email: srosen@forsheyprostok.com


United States Trustee
Attn: Lisa L. Lambert, Asst. U.S. Trustee
1100 Commerce Street, Room 976
Dallas, TX 75242
Email: Lisa.L.Lambert@usdoj.gov

Rakhee V. Patel
Phillip Lamberson
Joe Wielebinski
Annmarie Chiarello
**WINSTEAD PC**
500 Winstead Building
2728 N. Harwood Street
Dallas, Texas 75201
Email: rpatel@winstead.com
Email: plamberson@winstead.com
Email: jwielebinski@winstead.com
Email: achiarello@winstead.com

Objections to confirmation of the Plan are governed by Bankruptcy Rule 9014.  UNLESS AN OBJECTION TO CONFIRMATION IS TIMELY SERVED AND FILED, IT WILL NOT BE CONSIDERED BY THE BANKRUPTCY COURT.

**C.      Requirements for Confirmation of the Plan**

At the Confirmation Hearing, the Bankruptcy Court must determine whether the Bankruptcy Code's requirements for confirmation of the Plan have been satisfied, in which event the Bankruptcy Court will enter an order confirming the Plan.  As set forth in section 1129 of the Bankruptcy Code, these requirements are as follows:

1.      The Plan complies with the applicable provisions of the Bankruptcy Code.

2.      The proponent of the Plan complied with the applicable provisions of the Bankruptcy Code.

3.      The Plan has been proposed in good faith and not by any means forbidden by law.

4.      Any payment made or promised by the Debtors, by the Plan proponent, or by a person issuing securities or acquiring property under the Plan, for services or for costs and expenses in, or in connection with, the case, or in connection with the Plan and incident to the case, has been approved by, or is subject to the approval of the Bankruptcy Court as reasonable.

5.      (a)      (i)      The proponent of the Plan has disclosed the identity and affiliations of any individual proposed to serve, after confirmation of the Plan, as a director, officer, or voting trustee of the Debtors, an affiliate of the Debtors participating in a joint plan with the Debtors, or a successor to the Debtors under the Plan; and

(ii)      the appointment to, or continuance in, such office of such individual, is consistent with the interests of creditors and equity security holders and with public policy; and

(b)      the proponent of the Plan has disclosed the identity of any Insider that will be employed or retained by the Reorganized Debtor and the nature of any compensation for

such Insider.

6.        Any governmental regulatory commission with jurisdiction, after confirmation of the Plan, over the rates of the Debtors have approved any rate change provided for in the Plan, or such rate change is expressly conditioned on such approval.

7.        With respect to each Impaired Class of Claims or Interests:

(a)        each holder of a Claim or Interest of such Class has accepted the Plan or will receive or retain under the Plan on account of such Claim or Interest property of a value, as of the Effective Date of the Plan, that is not less than the amount that such holder would so receive or retain if the Debtors were liquidated under chapter 7 of the Bankruptcy Code on such date; or

(b)        if section 1111(b)(2) of the Bankruptcy Code applies to the Claims of such Class, the holder of a Claim of such Class will receive or retain under the Plan on account of such Claim property of a value, as of the Effective Date of the Plan, that is not less than the value of such holder's Interest in the Estate's Interest in the property that secures such Claim.

8.        With respect to each Class of Claims or Interests:

(a)        such Class has accepted the Plan; or

(b)        such Class is not Impaired under the Plan.

9.        Except to the extent that the holder of a particular Claim has agreed to a different treatment of such Claim, the Plan provides that:

(a)        with respect to a Claim of a kind specified in section 507(a)(2) or 507(a)(3) of the Bankruptcy Code, on the Effective Date of the Plan, the holder of such Claim will receive on account of such Claim cash equal to the Allowed amount of such Claim;

(b)        with respect to a Class of Claims of a kind specified in section 507(a)(1), 507(a)(4), 507(a)(5), 507(a)(6) or 507(a)(7) of the Bankruptcy Code, each holder of a Claim of such Class will receive:

(i)        if such Class has accepted the Plan, deferred cash payments of a value, as of the Effective Date of the Plan, equal to the Allowed amount of such Claim; or

(ii)        if such Class has not accepted the Plan, Cash on the Effective Date of the Plan equal to the Allowed amount of such Claim; and

(c)        with respect to a Claim of a kind specified in section 507(a)(8) of the Bankruptcy Code, the holder of such Claim will receive on account of such Claim regular installment payments in Cash:

(i)        of a total value, as of the Effective Date of the Plan, equal to the Allowed amount of such Claim;

(ii)        over a period ending not later than 5 years after the date of the order for relief under section 301, 302, or 303; and

        (iii)     in a manner not less favorable than the most favored nonpriority unsecured claim provided for by the Plan (other than Cash payments made to a Class of Creditors under section 1122(b) of the Bankruptcy Code); and

        (d)     with respect to a Secured Claim which would otherwise meet the description of an unsecured Claim of a Governmental Unit under section 507(a)(8) of the Bankruptcy Code, but for the secured status of that Claim, the holder of that Claim will receive on account of that Claim, Cash payments, in the same manner and over the same period, as prescribed in 9(c) above.

        10.     If a Class of Claims is Impaired under the Plan, at least one Class of Claims that is Impaired has accepted the Plan, determined without including any acceptance of the Plan by any Insider holding a Claim of such Class.

        11.     Confirmation of the Plan is not likely to be followed by the liquidation, or the need for further financial reorganization, of the Debtors or any successor to the Debtors under the Plan, unless such liquidation or reorganization is proposed in the Plan.

        12.     All fees payable under 28 U.S.C. section 1930, as determined by the Bankruptcy Court at the hearing on confirmation of the Plan, have been paid or the Plan provides for the payments of all such fees on the Effective Date of the Plan.

        13.     The Plan provides for the continuation after its Effective Date of payment of all retiree benefits, as that term is defined in section 1114 of the Bankruptcy Code, at the level established pursuant to subsection (e)(1)(B) or (g) of section 1114, at any time prior to confirmation of the Plan, for the duration of the period the Debtors have obligated themselves to provide such benefits.

        14.     If the Debtors are required by a judicial or administrative order, or by statute, to pay a domestic support obligation, the Debtors have paid all amounts payable under such order or such statute for such obligation that first become payable after the date of the filing of the petition.

        15.     In a case in which a Debtors is an individual and in which the holder of an Allowed unsecured Claim objects to the confirmation of the Plan:

        (a)     the value, as of the Effective Date of the Plan, of the property to be distributed under the Plan on account of such Claim is not less than the amount of such Claim; or

        (b)     the value of the property to be distributed under the Plan is not less than the projected disposable income of such Debtor (as defined in section 1325(b)(2) of the Bankruptcy Code) to be received during the five-year period beginning on the date that the first payment is due under the Plan, or during the period for which the Plan provides payments, whichever is longer.

        16.     All transfers of property under the Plan shall be made in accordance with any applicable provisions of nonbankruptcy law that govern the transfer of property by a corporation or trust that is not a moneyed, business, or commercial corporation or trust.

        The Chapter 11 Trustee believes that the Plan satisfies all the statutory requirements of

chapter 11 of the Bankruptcy Code, that the Chapter 11 Trustee has complied or will have complied with all the requirements of chapter 11, and that the Plan is proposed in good faith.

The Chapter 11 Trustee believes that holders of all Allowed Claims and Interests Impaired under the Plan will receive payments under the Plan having a present value, as of the Effective Date, not less than the amounts likely to be received if the Debtors were liquidated in a case under chapter 7 of the Bankruptcy Code. At the Confirmation Hearing, the Bankruptcy Court will determine whether holders of Allowed Claims or Allowed Interests would receive greater Distributions under the Plan than they would receive in a liquidation under chapter 7.

These facts and others demonstrating the confirmability of the Plan will be shown at the Confirmation Hearing.

**D.** **Cramdown**

In the event that any Impaired Class of Claims or Interests does not accept the Plan, the Bankruptcy Court may still confirm the Plan at the request of the Plan proponent if, as to each impaired Class which has not accepted the Plan, the Bankruptcy Court determines that the Plan "does not discriminate unfairly" and is "fair and equitable" with respect to that Class. A plan of reorganization "does not discriminate unfairly" within the meaning of the Bankruptcy Code if no class receives more than it is legally entitled to receive for their claims or interests.

"Fair and equitable" has different meanings with respect to the treatment of secured and unsecured claims. As set forth in section 1129(b)(2) of the Bankruptcy Code, those meanings are as follows:

1.    With respect to a class of secured claims, the plan provides:

(a)    (i)    that the holders of such claims retain the liens securing such claims, whether the property subject to such liens is retained by the debtor or transferred to another entity, to the extent of the allowed amount of such claims; and

(ii)    that each holder of a claim of such class receive on account of such claim deferred cash payments totaling at least the allowed amount of such claim, of a value, as of the effective date of the plan, of at least the value of such holder's interest in the estate's interest in such property;

(b)    for the sale, subject to section 363(k) of the Bankruptcy Code, of any property that is subject to the liens securing such claims, free and clear of such liens, with such liens to attach to the proceeds of such sale, and the treatment of such liens on proceeds under clause (a) and (b) of this subparagraph; or

(c)    the realization by such holders of the "indubitable equivalent" of such claims.

2.    With respect to a class of unsecured claims, the plan provides:

(a)    that each holder of a claim of such class receive or retain on account of such claim property of a value, as of the effective date of the plan, equal to the allowed amount of such claim; or

(b)     the holder of any claim or interest that is junior to the claims of such class will not receive or retain under the plan on account of such junior claim or interest any property, except that in a case in which the debtor is an individual, the debtor may retain property included in the estate under section 1115 of the Bankruptcy Code, subject to the requirements of section 1129(a)(14) of the Bankruptcy Code.

3.     With respect to a class of interests, the plan provides:

(a)     that each holder of an interest of such class receive or retain on account of such interest property of a value, as of the effective date of the plan, equal to the greatest of the allowed amount of any fixed liquidation preference to which such holder is entitled, any fixed redemption price to which such holder is entitled or the value of such interest; or

(b)     that the holder of any interest that is junior to the interests of such class will not receive or retain under the plan on account of such junior interest any property.

In the event that one or more Classes of impaired Claims or Interests reject the Plan, the Bankruptcy Court will determine at the Confirmation Hearing whether the Plan is fair and equitable with respect to, and does not discriminate unfairly against, any rejecting impaired Class of Claims or Interests.  For the reasons set forth above, the Chapter 11 Trustee believes the Plan does not discriminate unfairly against, and is fair and equitable with respect to, each impaired Class of Claims or Interests.

## X.  RISK FACTORS

The following is intended as a summary of certain risks associated with the Plan, but it is not exhaustive and must be supplemented by the analysis and evaluation made by each holder of a Claim or Interest of the Plan and this Disclosure Statement as a whole with such holder's own advisors.

## A.    Insufficient Acceptances

For the Plan to be confirmed, each impaired Class of Claims is given the opportunity to vote to accept or reject the Plan separately under the Plan.  With regard to such Impaired voting Classes, the Plan will be deemed accepted by a Class of Impaired Claims if the Plan is accepted by Claimants of such Class actually voting on the Plan who hold at least two-thirds (2/3) in amount and more than one-half (1/2) in number of the total Allowed Claims of the Class voted.  Only those members of a Class who vote to accept or reject the Plan will be counted for voting purposes.  The Plan proponent reserves the right to request confirmation pursuant to the cramdown provisions in section 1129(b) of the Bankruptcy Code, which will allow confirmation of the Plan regardless of the fact that a particular Class of Claims has not accepted the Plan. However, there can be no assurance that any Impaired Class of Claims under the Plan will accept the Plan or that the Plan proponent would be able to use the cramdown provisions of the Bankruptcy Code for confirmation of the Plan.

## B.    Confirmation Risks

The following specific risks exist with respect to confirmation of the Plan:

(a)     Any objection to confirmation of the Plan can either prevent confirmation of the Plan, or delay such confirmation for a significant period of time.

(b)     Since the Plan proponent may be seeking to obtain approval of the Plan over the rejection of one or more Impaired Classes of Claims, the cramdown process could delay confirmation.

## C.     Estimated Distributions under the Plan

In preparing the Plan Projections and Liquidation Analysis under the Plan attached hereto as "**Exhibit 3" and "Exhibit 4",** respectively, the Financial Advisors have made certain estimates regarding projected cash on hand at confirmation.  The accuracy of such estimates cannot be guaranteed.  Furthermore, the accuracy of the analysis is dependent upon several variables, including (i) the aggregate amount of Allowed Claims, (ii) the amount, if any, for which certain Administrative Expense Claims are Allowed, (iii) the collectability of the Estate Accounts Receivable, and (iv) the amount of the expenses and fees of Estate Professionals.

## D.     Operational Risks

Under the Plan, the Reorganized Debtor will continue the business of the Debtors and will have the obligation to make certain Distributions to holders of Allowed Claims as specifically set forth in the Plan.  No guarantees can be made with respect to the success or outcome of the Reorganized Debtor's operations from and after the Effective Date and, in turn, the Reorganized Debtor's ability to fulfill all of its obligations under the Plan.  For example, if the Reorganized Debtor is removed as the portfolio manager with respect to the Acis CLOs or the Other Acis-Managed Funds (or any reset Acis CLOs) for cause after the Effective Date, the Reorganized Debtor may thereby lose the source of income necessary to fulfill its obligations under the Plan.  Likewise, there is no guarantee that the Reorganized Debtor will receive sufficient cash flows from the PMAs to pay all Unsecured Cash Flow Notes and Subordinated Unsecured Cash Flow Notes in full.

## XI.  ALTERNATIVES TO CONFIRMATION AND CONSUMMATION OF THE PLAN

## A.     Continuation of the Chapter 11 Cases

The Chapter 11 Trustee believes that the Plan provides the Claimants with the greatest and earliest possible return that can be realized on their respective Claims.  The Plan is proposed as an alternative to a chapter 7 liquidation.  If the Plan is not confirmed, the Chapter 11 Trustee may continue to operate the Debtors' businesses and the Estate may continue to be administered through the Chapter 11 Cases.  The Chapter 11 Trustee believes that confirmation and performance of the Plan is a superior alternative to continuing to operate the Debtors' businesses for an undetermined length of time during the Chapter 11 Cases, as continuation of the Chapter 11 Cases could prove lengthy and result in substantial additional costs of administration of the Estate.

## B.     Alternative Plan of Reorganization

Other parties-in-interest are free to file an alternative plan of reorganization at any time.  At this time, the Plan is the only plan that has been proposed and filed in the Chapter 11 Cases.  If the Plan is not confirmed, an alternative plan filed by another party-in-interest, or an amended Plan filed by the Chapter 11 Trustee, might ultimately be confirmed by the Bankruptcy Court.

C.    **Chapter 7 Liquidation**

If the Plan is not confirmed, the Chapter 11 Cases may potentially be converted to cases under chapter 7 of the Bankruptcy Code at a later date if such a request is made and granted by the Bankruptcy Court.  The Chapter 11 Trustee believes that liquidation of the Estate under chapter 7 would diminish the value to be realized by holders of Allowed Claims because of additional administrative expenses involved in the appointment of a chapter 7 trustee or trustees, attorneys, accountants, and other professionals to assist such trustee(s) in the case of chapter 7 proceedings.  The Chapter 11 Trustee believes that liquidation under chapter 7 could result in delay of distributions to holders of Allowed Claims as compared to the anticipated timetable for distributions provided for under the Plan.  Furthermore, the Chapter 11 Trustee believes that holders of Allowed Claims against the Debtors stand to receiver superior recoveries under the Plan than they would likely receive if the Estate is liquidated under chapter 7 of the Bankruptcy Code.

## XII. CONCLUSION

The Chapter 11 Trustee urges holders of Claims in impaired Classes to vote to **ACCEPT** the Plan and to evidence such acceptance by returning their Ballots so that they will be received on or before **November 26, 2018**.

*[The remainder of this page has been left intentionally blank.]*

Case 18-30264-sgj11 Doc 1244 Filed 09/07/21 Entered 09/07/21 11:59:05 Page 126 of
Case 18-30264-sgj11 Doc 664 Filed 10/25/18 Entered 10/25/18 18:24:46 Page 56 of 72
255

Dated:  October 25, 2018.

Respectfully submitted,

ACIS CAPITAL MANAGEMENT, L.P.


By:  /s/ *Robin Phelan*
      Robin Phelan
      Chapter 11 Trustee


ACIS CAPITAL MANAGMENET GP, LLC


By:  /s/ *Robin Phelan*
      Robin Phelan
      Chapter 11 Trustee


APPROVED:                                                APPROVED:

/s/ *Jeff P. Prostok*                                    /s/ *Rahkee V. Patel*
Jeff P. Prostok –  State Bar No. 16352500                Rakhee V. Patel – State Bar No. 00797213
J. Robert Forshey – State Bar No. 07264200               Phillip Lamberson – State Bar No. 00794134
Suzanne K. Rosen –  State Bar No. 00798518               Joe Wielebinski – State Bar No. 21432400
Matthew G. Maben – State Bar No. 24037008                Annmarie Chiarello – State Bar No. 24097496
**FORSHEY & PROSTOK LLP**                                **WINSTEAD PC**
777 Main St., Suite 1290                                 500 Winstead Building
Ft. Worth, TX 76102                                      2728 N. Harwood Street
Telephone: (817) 877-8855                                Dallas, Texas 75201
Facsimile: (817) 877-4151                                Telephone: (214) 745-5400
jprostok@forsheyprostok.com                              Facsimile:  (214) 745-5390
bforshey@forsheyprostok.com                              rpatel@winstead.com
srosen@forsheyprostok.com                                plamberson@winstead.com
mmaben@forsheyprostok.com                                jwielebinski@winstead.com
                                                         achiarello@winstead.com

**COUNSEL FOR ROBIN PHELAN,**
**CHAPTER 11 TRUSTEE**                                   **SPECIAL COUNSEL FOR ROBIN PHELAN,**
                                                         **CHAPTER 11 TRUSTEE**


L:\JPROSTOK\ACIS Capital Management (Trustee Rep)\Plan and Disclosure Statement\Disclosure Statement for Third Amended Joint Plan
10.25.18.docx

Case 18-30264-sgj11 Doc 1244 Filed 09/07/21 Entered 09/07/21 11:59:05 Page 127 of
255
Case 18-30264-sgj11 Doc 661 Filed 10/25/18 Entered 10/25/18 18:24:46 Page 57 of 172

# EXHIBIT "1"
# TO DISCLOSURE STATEMENT

# [Third Amended Joint Plan]

Case 18-30264-sgj11 Doc 1244 Filed 09/07/21 Entered 09/07/21 11:59:05 Page 128 of
Case 18-30264-sgj11 Doc 664 Filed 10/25/18 Entered 10/25/18 12:44:46 Page 3 of 72
255

# IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE NORTHERN DISTRICT OF TEXAS
### DALLAS DIVISION

| | | |
|---|---|---|
| **IN RE:** | § | **Case No. 18-30264-SGJ-11** |
| | § | **Case No. 18-30265-SGJ-11** |
| **ACIS CAPITAL MANAGEMENT, L.P.,** | § | |
| **ACIS CAPITAL MANAGEMENT GP, LLC,** | § | **(Jointly Administered Under Case** |
| | § | **No. 18-30264-SGJ-11)** |
| **DEBTORS.** | § | |
| | § | **Chapter 11** |

## THIRD AMENDED JOINT PLAN FOR ACIS CAPITAL MANAGEMENT, L.P. AND ACIS CAPITAL MANAGEMENT GP, LLC

Jeff P. Prostok – State Bar No. 16352500
J. Robert Forshey – State Bar No. 07264200
Suzanne K. Rosen – State Bar No. 00798518
Matthew G. Maben – State Bar No. 24037008
**FORSHEY & PROSTOK LLP**
777 Main St., Suite 1290
Ft. Worth, TX 76102
Telephone: (817) 877-8855
Facsimile: (817) 877-4151
jprostok@forsheyprostok.com
bforshey@forsheyprostok.com
srosen@forsheyprostok.com
mmaben@forsheyprostok.com

**COUNSEL FOR ROBIN PHELAN,
CHAPTER 11 TRUSTEE**

Rakhee V. Patel – State Bar No. 00797213
Phillip Lamberson – State Bar No. 00794134
Joe Wielebinski – State Bar No. 21432400
Annmarie Chiarello – State Bar No. 24097496
**WINSTEAD PC**
500 Winstead Building
2728 N. Harwood Street
Dallas, Texas 75201
Telephone: (214) 745-5400
Facsimile:  (214) 745-5390
rpatel@winstead.com
plamberson@winstead.com
jwielebinski@winstead.com
achiarello@winstead.com

**SPECIAL COUNSEL FOR ROBIN PHELAN,
CHAPTER 11 TRUSTEE**

DATED:     October 25, 2018
                   Dallas, Texas

# ARTICLE I.
## DEFINITIONS

A.    <u>Defined Terms</u>. In addition to such other terms as are defined in other sections of the Plan, the following terms shall have the meanings set forth below (such meanings to be equally applicable to both the singular and plural, masculine and feminine forms of the terms defined).

1.01.    "<u>Acis CLOs</u>" refers collectively to CLO-3, CLO-4, CLO-5, and CLO-6.

1.02.    "<u>Acis GP</u>" means Acis Capital Management, GP, LLC, one of the Debtors in the above-referenced Chapter 11 Cases.

1.03.    "<u>Acis LP</u>" means Acis Capital Management, LP, one of the Debtors in the above-referenced Chapter 11 Cases.

1.04.    "<u>Administrative Bar Date</u>" means the deadline to file Claims for Allowance as an Administrative Expense set forth in section 3.01(c) of the Plan.

1.05.    "<u>Administrative Expense</u>" means any cost or expense of administration of the Chapter 11 Cases allowed under subsections 503(b) and 507(a)(1) of the Bankruptcy Code, including, without limitation, any actual and necessary expenses of preserving the Estate of the Debtors, any actual and necessary expenses of operating the business of the Debtors, all compensation or reimbursement of expenses to the extent allowed by the Bankruptcy Court under section 330 or 503 of the Bankruptcy Code, and any fees or charges assessed against the estates of the Debtors under section 1930, chapter 123 of title 28 of the United States Code.

1.06.    "<u>Affiliate</u>" has the meaning ascribed to such term in section 101(2) of the Bankruptcy Code.

1.07.    "<u>ALF PMA</u>" means that certain Portfolio Management Agreement by and between Acis LP and Acis Loan Funding, Ltd. dated December 22, 2016.

1.08.    "<u>Allowed</u>," when used with respect to a Claim (other than an Administrative Expense), means a Claim (a) to the extent it is not Contested; or (b) a Contested Claim, proof of which was filed timely with the Bankruptcy Court, and (i) as to which no Objection was filed by the Objection Deadline, or (ii) as to which an Objection was filed by the Objection Deadline, to the extent, if any, such Claim is ultimately allowed by a Final Order; *provided, however*, if a Claim is to be determined in a forum other than the Bankruptcy Court, such Claim shall not become Allowed until determined by Final Order of such other forum and allowed by Final Order of the Bankruptcy Court. "<u>Allowed</u>," when used with respect to an Administrative Expense, shall mean an Administrative Expense approved by application to the Bankruptcy Court.

1.09.    "<u>Assets</u>" includes all right, title, and interest in and to all property of every type or nature owned or claimed by the Debtors as of the Petition Date, together with all such property of every type or nature subsequently acquired by the Debtors through the Effective Date, whether real or personal, tangible or intangible, and wherever located, and including, but not limited to, property as defined in section 541 of the Bankruptcy Code.  Without limiting the foregoing, this shall include all

1.10. "Available Cash" means any Cash over and above the amount needed for the Reorganized Debtor to maintain business operations and pursue the Estate Claims, as determined in the sole discretion of the Reorganized Debtor.

1.11. "Avoidance Action" means a cause of action assertable by the Debtors pursuant to Chapter 5 of the Bankruptcy Code, including without limitation, actions brought or which may be brought under sections 542, 543, 544, 545, 547, 548, 549, 550, or 553 of the Bankruptcy Code. Such causes of action may be asserted to recover, among other things, the transfers listed in the Debtors' respective Schedules, including in response to Question 3 of the statements of financial affairs.

1.12. "Ballot" means the form of ballot provided to holders of Claims or Interests entitled to vote pursuant to Bankruptcy Rule 3017(d), by which each such holder may accept or reject the Plan.

1.13. "Bankruptcy Code" means the Bankruptcy Reform Act of 1978, as amended and codified at Title 11 of the United States Code.

1.14. "Bankruptcy Court" means the United States Bankruptcy Court for the Northern District of Texas, Dallas Division, or such other court having jurisdiction over all or any part of the Chapter 11 Cases.

1.15. "Bankruptcy Rules" means the Federal Rules of Bankruptcy Procedure, as amended from time to time, as applicable to the Chapter 11 Cases, including applicable local rules of the Bankruptcy Court.

1.16. "Brigade" means Brigade Capital Management, LP.

1.17. "Business Day" means any day other than Saturday, Sunday, a legal holiday, or a day on which national banking institutions in Texas are authorized or obligated by law or executive order to close.

1.18. "Cash" means legal tender of the United States of America, cash equivalents and other readily marketable securities or instruments, including, but not limited to, readily marketable direct obligations of the United States of America, certificates of deposit issued by banks or commercial paper.

1.19. "Chapter 11 Cases" refers collectively to the Acis LP bankruptcy case, Case No. 18-30264-sgj11, and the Acis GP bankruptcy case, Case No. 18-30265-sgj11, which are being jointly administered under Case No. 18-30264-sgj11.

1.20. "Chapter 11 Trustee" refers to Robin Phelan, the chapter 11 trustee for the Debtors.

1.21. "Claim" means (a) a right to payment, whether or not such right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured (including potential and unmatured tort and contract claims), disputed, undisputed, legal, equitable, secured or unsecured, or (b) a right to an equitable remedy for breach of performance if such breach gives rise to a right of payment, whether or not such right to an equitable remedy is reduced to judgment, fixed, contingent, matured, unmatured (including potential and unmatured tort and contract claims), disputed, undisputed, secured or unsecured.

Case 18-30264-sgj11 Doc 1244 Filed 09/07/21 Entered 09/07/21 11:59:05 Page 131 of
Case 18-30264-sgj11 Doc 664 Filed 10/25/18 Entered 10/25/18 12:24:46 Page 131 of
255

1.22.    "<u>Claimant</u>" means the holder of a Claim.

1.23.    "<u>Class</u>" means a class of Claims or Interests as described in the Plan.

1.24.    "<u>CLO</u>" means collateralized loan obligations.

1.25.    "<u>CLO-1</u>" means Acis CLO 2013-1 LTD.

1.26.    "<u>CLO-1 Indenture</u>" means that certain Indenture, dated as of March 18, 2013, issued by CLO-1, as issuer, Acis CLO 2013-1 LLC, as co-Issuer and US Bank, as Indenture Trustee.

1.27.    "<u>CLO-1 PMA</u>" means that certain Portfolio Management Agreement by and between Acis LP and CLO-1, dated March 18, 2013.

1.28.    "<u>CLO-3</u>" means Acis CLO 2014-3 LTD.

1.29.    "<u>CLO-3 Indenture</u>" means that certain Indenture, dated as of February 25, 2014, issued by CLO-3, as issuer, Acis CLO 2014-3 LLC, as co-Issuer and US Bank, as Indenture Trustee

1.30.    "<u>CLO-3 PMA</u>" means that certain Portfolio Management Agreement by and between Acis LP and CLO-3, dated February 25, 2014.

1.31.    "<u>CLO-4</u>" means Acis CLO 2014-4 LTD.

1.32.    "<u>CLO-4 Indenture</u>" means that certain Indenture, dated as of June 5, 2014, issued by CLO-4, as issuer, Acis CLO 2014-4 LLC, as co-Issuer and US Bank, as Indenture Trustee.

1.33.    "<u>CLO-4 PMA</u>" means that certain Portfolio Management Agreement by and between Acis LP and CLO-4, dated June 5, 2014.

1.34.    "<u>CLO-5</u>" means Acis CLO 2014-5 LTD.

1.35.    "<u>CLO-5 Indenture</u>" means that certain Indenture, dated as of November 18, 2014, issued by CLO-5, as issuer, Acis CLO 2014-5 LLC, as co-Issuer and US Bank, as Indenture Trustee.

1.36.    "<u>CLO-5 PMA</u>" means that certain Portfolio Management Agreement by and between Acis LP and CLO-5, dated November 18, 2014.

1.37.    "<u>CLO-6</u>" means Acis CLO 2015-6 LTD.

1.38.    "<u>CLO-6 Indenture</u>" means that certain Indenture, dated as of April 16, 2015, issued by CLO-6, as issuer, Acis CLO 2015-6 LLC, as co-Issuer and US Bank, as Indenture Trustee.

1.39.    "<u>CLO-6 PMA</u>" means that certain Portfolio Management Agreement by and between Acis LP and CLO-6, dated April 16, 2015.

1.40.    "<u>CLO Holdco</u>" means CLO Holdco, Ltd.

1.41.    "<u>Collateral</u>" means any Asset subject to a valid and enforceable Lien to secure payment of a Claim.

1.42.    "<u>Confirmation Date</u>" means the date of entry of the Confirmation Order.

1.43.    "<u>Confirmation Hearing</u>" means the hearing conducted by the Bankruptcy Court pursuant to section 1128 of the Bankruptcy Code and Bankruptcy Rule 3020(b) to consider confirmation of the Plan, as such hearing may be continued from time to time.

1.44.    "<u>Confirmation Order</u>" means the order of the Bankruptcy Court confirming the Plan in accordance with the provisions of Chapter 11 of the Bankruptcy Code.

1.45.    "<u>Contested</u>," when used with respect to a Claim, means a Claim against the Debtors that is listed in the Debtors' Schedules as disputed, contingent, or unliquidated; that is listed in the Debtors' Schedules as undisputed, liquidated, and not contingent and as to which a proof of Claim has been filed with the Bankruptcy Court, to the extent the proof of Claim amount exceeds the scheduled amount; that is not listed in the Debtors' Schedules, but as to which a proof of Claim has been filed with the Bankruptcy Court; or as to which an objection has been or may be timely filed and has not been denied by Final Order. To the extent an objection relates to the allowance of only a part of a Claim, such Claim shall be a Contested Claim only to the extent of the objection.

1.46.    "<u>Creditor</u>" means a "creditor," as defined in section 101(10) of the Bankruptcy Code.

1.47.    "<u>Cure Claim</u>" means the payment or other performance required to cure any existing default under an Executory Contract or Unexpired Lease.

1.48.    "<u>Debtors</u>" means, collectively, Acis GP and Acis LP, the debtors in the above-captioned Chapter 11 Cases.

1.49.    "<u>Disallowed</u>," when used with respect to all or any part of a Claim or Interest, means that portion of a Claim or Interest to which an objection or motion to disallow has been sustained by a Final Order.

1.50.    "<u>Disclosure Statement</u>" means the Disclosure Statement filed with respect to the Plan, as it may be amended, modified, or supplemented from time to time.

1.51.    "<u>Distribution</u>" means any payment or other disbursement of property pursuant to the Plan.

1.52.    "<u>Effective Date</u>" means the first Business Day which is fourteen (14) days after the Confirmation Date if the Confirmation Order is not stayed or, if the Confirmation Order is stayed, the first Business Day following the lifting, dissolution, or removal of such stay which is at least fourteen (14) Business Days after the Confirmation Date, and upon which all conditions to the effectiveness of the Plan set forth in Article XIII below are satisfied.

1.53.    "<u>Estate</u>" shall collectively refer to the bankruptcy estates of the Debtors in the Chapter 11 Cases.

1.54.    "<u>Estate Accounts Receivable</u>" shall include all accounts receivable of the Estate, including from all sums payable to the Debtors on account of goods or services provided by the Debtors.

1.55. "Estate Claims" shall include all claims and causes of action held by the Debtors' Estate, including, without limitation, the Estate Claims listed on the attached **Exhibit A** and all Avoidance Actions.

1.56. ""Estate Defenses" means all defenses, affirmative defenses, counterclaims, or offsets by the Debtors' Estate against any Person, including but not limited to any Creditor.

1.57. "Estate Insurance" means any insurance policy or interest in an insurance policy in which the Estate has an interest or rights.

1.58. "Estate Professionals" means those Persons employed pursuant to an order of the Bankruptcy Court in accordance with sections 327, 328, and 1103 of the Bankruptcy Code or who are entitled to compensation or reimbursement pursuant to sections 503(b)(3)(D) or 506(b) of the Bankruptcy Code.

1.59. "Executory Contract" means any executory contract which is subject to section 365 of the Bankruptcy Code and which is not an Unexpired Lease.

1.60. "Final Order" means an order or judgment of the Bankruptcy Court or any other court or adjudicative body, as to which the time to appeal or seek rehearing or petition for certiorari shall have expired or which order or judgment shall no longer be subject to appeal, rehearing, or certiorari proceeding and with respect to which no appeal, motion for rehearing, or certiorari proceeding or stay shall then be pending.

1.61. "General Unsecured Claim" means any Claim against the Debtors that is not an Administrative Expense, Priority Tax Claim, Priority Non-Tax Claim, Secured Tax Claim, Secured Claim, or Insider Claim, but includes any Rejection Claims pursuant to section 502(g) of the Bankruptcy Code.

1.62. "Governmental Unit" means a "governmental unit" as such term is defined in section 101(27) of the Bankruptcy Code.

1.63. "HCLOF" means Highland CLO Funding, Ltd.

1.64. "Highland" means Highland Capital Management, L.P.

1.65. "Highland Adversary" means Adversary Proceeding No. 18-03078-sgj.

1.66. "Highland Claim" means all Claims asserted by Highland or any Affiliates of Highland against the Debtors, including any Claim resulting from the termination of the Sub-Advisory Agreement and Shared Services Agreement.

1.67. "Highland CLOM" means Highland CLO Management, Ltd.

1.68. "Highland HCF" means Highland HCF Advisors, Ltd.

1.69. "Impaired" means, when used with reference to a Claim or Interest, a Claim or Interest that is impaired within the meaning of section 1124 of the Bankruptcy Code.

1.70. "Indentures" refers collectively to the CLO-1 Indenture, the CLO-3 Indenture, the CLO-4 Indenture, the CLO-5 Indenture, and the CLO-6 Indenture.

Case 18-30264-sgj11 Doc 1244 Filed 09/07/21 Entered 09/07/21 11:59:05 Page 134 of
Case 18-30264-sgj11 Doc 664 Filed 10/25/18 Entered 10/25/18 12:45:46 Page 134 of
255

1.71.    "<u>Indenture Trustee</u>" refers to US Bank solely in its capacity as Indenture Trustee under the CLO-1 Indenture, the CLO-3 Indenture, the CLO-4 Indenture, the CLO-5 Indenture and the CLO-6 Indenture, as applicable

1.72.    "<u>Initial Distribution Date</u>," when used with respect to any Contested Claim or Rejection Claim, shall mean the later of (i) the first Business Day at least thirty (30) days after the date on which any such Contested Claim or Rejection Claim becomes an Allowed Claim, or (ii) if the payment terms of Article IV of this Plan applicable to each such Claim specify a different date, then the date as calculated pursuant to the terms of Article IV of this Plan applicable to each such Claim.  The Initial Distribution Date shall be separately determined with respect to each Contested Claim or Rejection Claim based upon the date each such Claim becomes an Allowed Claim.

1.73.    "<u>Insider</u>" means a Person described in section 101(31) of the Bankruptcy Code.

1.74.    "<u>Insider Claim</u>" means any Claim asserted by Insiders of the Debtors, including but not limited to any Claim asserted by Highland or any Affiliate thereof, unless otherwise indicated in the Plan.

1.75.    "<u>Interests</u>" means any equity or stock ownership interest in the Debtors.

1.76.    "<u>Issuers and Co-Issuers</u>" means CLO-1, CLO-3, CLO-4, CLO-5, CLO-6, Acis CLO 2013-1, Acis CLO-2014-3, LLC, Acis CLO 2014-4, LLC, Acis CLO 2014-5, LLC, and Acis 2015-6, LLC.

1.77.    "<u>Lien</u>" means any mortgage, lien, charge, security interest, encumbrance, or other security device of any kind affecting any asset or property of the Debtors contemplated by section 101(37) of the Bankruptcy Code.

1.78.    "<u>Management Fees</u>" shall, when used in relation to any of the Acis CLOs, have the meaning set forth in the applicable Indenture.

1.79.    "<u>Neutra</u>" means Neutra, Ltd.

1.80.    "<u>Objection</u>" means (a) an objection to the allowance of a Claim interposed by any party entitled to do so within the applicable period of limitation fixed by the Plan, the Bankruptcy Code, the Bankruptcy Rules, or the Bankruptcy Court, and (b) as to any Taxing Authority, a proceeding commenced under section 505 of the Bankruptcy Code to determine the legality or amount of any tax.

1.81.    "<u>Objection Deadline</u>" shall mean the later of (a) ninety (90) days following the Effective Date, unless otherwise extended by order of the Bankruptcy Court, or (b) as to any Rejection Claim filed after the Effective Date, ninety (90) days after the date on which the proof of Claim reflecting the Rejection Claim is filed.

1.82.    "<u>Optional Redemption</u>" shall, when used in relation to any of the Acis CLOs, have the meaning set forth in the applicable Indenture.

1.83.    "<u>Person</u>" means any individual, corporation, general partnership, limited partnership, association, joint stock company, joint venture, estate, trust, unincorporated organization, government, or any political subdivision thereof or other entity.

Case 18-30264-sgj11 Doc 1314 Filed 09/07/21 Entered 09/07/21 11:59:05 Page 135 of
255
Case 18-30264-sgj11 Doc 614 Filed 10/25/18 Entered 10/25/18 12:24:46 Page 5 of 72

1.84.    "Petition Date" means January 30, 2018.

1.85.    "Plan" means this Third Amended Joint Chapter 11 plan, either in its present form or as it may be altered, amended, or modified from time to time.

1.86.    "Plan Documents" means the documents that aid in effectuating the Plan as specifically identified as such herein and filed with the Bankruptcy Court.

1.87.    "Plan Rate" means a rate of interest of five percent (5%) per annum.

1.88.    "PMAs" refers collectively to the CLO-1 PMA, CLO-3 PMA, CLO-4 PMA, CLO-5 PMA, and CLO-6 PMA.

1.89.    "Priority Claim" means a Claim (other than a Claim for an Administrative Expense) to the extent that it is entitled to priority in payment under section 507(a) of the Bankruptcy Code.

1.90.    "Priority Non-Tax Claim" means a Priority Claim other than a Priority Tax Claim.

1.91.    "Priority Tax Claim" means a Claim of a Governmental Unit of the kind specified in subsection 507(a)(8) of the Bankruptcy Code.

1.92.    "Professional" means those persons retained pursuant to an order of the Bankruptcy Court in accordance with sections 327 and 1103 of the Bankruptcy Code.

1.93.    "Pro Rata Distribution" means an optional Distribution made in accordance with section 4.03(c), 4.04(e), or 4.04(i) of the Plan.  Each Creditor entitled to receive a portion of a Pro Rata Distribution shall receive such Creditor's Pro Rata Share of such Distribution.

1.94.    "Pro Rata Share' means, as to the holder of a specific Claim, the ratio that the amount of such holder's Claim bears to the aggregate amount of all Claims included in the particular Class or category in which such holder's Claim is included.

1.95.    "Refinancing Proceeds" shall, when used in relation to any of the Acis CLOs, have the meaning set forth in the applicable Indenture.

1.96.    "Rejection Claim" means a Claim arising under section 502(g) of the Bankruptcy Code as a consequence of the rejection of any Executory Contract or Unexpired Lease.

1.97.    "Reorganized Debtor" refers collectively to the Debtors, as reorganized, acting from and after the Effective Date if the Plan is confirmed based on the terms and provisions herein.

1.98.    "Reserve" or "Reserves" means any reserves set aside by the Reorganized Debtor pursuant to this Plan, including reserves set aside to fund any Distributions, make payments pursuant to the Plan, or pursue the Estate Claims.

1.99.    "Schedules" means the schedules of assets and liabilities and the statements of financial affairs filed by the Debtors as required by section 521 of the Bankruptcy Code and Bankruptcy Rule 1007, as such schedules or statements have been or may be subsequently amended.

1.100.   "Secured Claim" means (a) a Claim secured by a lien on any Assets, which lien is valid, perfected, and enforceable under applicable law and is not subject to avoidance under the Bankruptcy Code or applicable nonbankruptcy law, and which is duly Allowed, but only to the

Case 18-30264-sgj11 Doc 1244 Filed 02/07/21 Entered 02/07/21 11:59:05 Page 136 of
Case 18-30264-sgj11 Doc 644 Filed 10/25/18 Entered 10/25/18 12:44:46 Page 9 of 72
255

extent of the value of the holder's interest in the Collateral that secures payment of the Claim; (b) a Claim against the Debtors that is subject to a valid right of recoupment or setoff under section 553 of the Bankruptcy Code, but only to the extent of the Allowed amount subject to recoupment or setoff as provided in section 506(a) of the Bankruptcy Code; and (c) a Claim deemed or treated under the Plan as a Secured Claim; provided, that, to the extent that the value of such interest is less than the amount of the Claim which has the benefit of such security, the unsecured portion of such Claim shall be treated as a General Unsecured Claim unless, in any such case the Class of which the Claim is a part makes a valid and timely election in accordance with section 1111(b) of the Bankruptcy Code to have such Claim treated as a Secured Claim to the extent Allowed.

1.101. "Secured Tax Claim" means any ad valorem tax Claim that arises or is deemed to have arisen on or before the Petition Date, irrespective of the date on which such Claim is assessed or due.

1.102. "Shared Services Agreement" means that certain Fourth Amended and Restated Shared Services Agreement by and between Acis LP and Highland dated March 17, 2017.

1.103. "Sub-Advisory Agreement" means that certain Third Amended and Restated Sub-Advisory Agreement by and between Acis LP and Highland dated March 17, 2017

1.104. "Subordinated Notes" means the subordinated notes in the Acis CLOs held by HCLOF, and expressly does not include any subordinated notes in the Acis CLOs held by any other party.

1.105. "Substantial Consummation" means the day on which a Creditor first receives a Distribution of any kind under the terms and provisions of the Plan.

1.106. "Taxing Authority" shall include the State of Texas or any subdivision thereof, including without limitation any political subdivision of the State of Texas assessing ad valorem taxes against any of the Assets.

1.107. "Terry" means Joshua N. Terry.

1.108. "Terry Partially Secured Claim" means any Claim asserted against the Debtors by Terry, including as asserted in Proof of Claim No. 1 in both Chapter 11 Cases and Proof of Claim No. 26 against Acis LP.

1.109. "Unclaimed Property" means any cash, Distribution, or any other property of the Debtors unclaimed for a period of one (1) year after the applicable Initial Distribution Date.

1.110. "Unexpired Lease" means any unexpired lease or agreement which is subject to section 365 of the Bankruptcy Code and which is not an Executory Contract.

1.111. "US Bank" means U.S. Bank National Association.

1.112. "Other Acis-Managed Funds" refers collectively to CLO-1, Acis CLO 2013-2, Ltd., Hewitt's Island CLO 1-R, Ltd, and BayVK R2 Lux S.A., SICAV-FIS.

      B.     Interpretation. Unless otherwise specified, all section, article and exhibit references in the Plan are to the respective section in, article of, or exhibit to, the Plan, as the

same may be amended, waived, or modified from time to time. The headings in the Plan are for convenience and reference only and shall not limit or otherwise affect the provisions hereof. The rules of construction set forth in section 102 of the Bankruptcy Code, other than section 102(5) of the Bankruptcy Code, apply to construction of the Plan. For the purposes of construction of the Plan, "or" is disjunctive.

      C.   <u>Other Terms</u>. The words "herein," "hereof," "hereto," "hereunder," and others of similar import refer to the Plan as a whole and not to any particular section, subsection, or clause contained in the Plan. References herein to "after notice and hearing" or other similar language shall have the same meaning as in section 102(1) of the Bankruptcy Code. Otherwise, a term used herein that is not specifically defined herein shall have the meaning ascribed to that term, if any, in the Bankruptcy Code.

      D.   <u>Exhibits and Plan Documents</u>. All Exhibits to the Plan and all Plan Documents are incorporated into the Plan by this reference and are a part of the Plan as if set forth in full herein. Any Plan Documents may be filed with the Clerk of the Bankruptcy Court prior to the commencement of the Confirmation Hearing. Holders of Claims and Interests may obtain a copy of the Plan Documents, once filed, by a written request sent to the following address: Forshey & Prostok, LLP, 777 Main Street, Suite 1290, Fort Worth, Texas 76102, Attention: Linda Breedlove; Fax number (817) 877-4151; email: lbreedlove@forsheyprostok.com.

## ARTICLE II.
## CLASSIFICATION OF CLAIMS AND INTERESTS

2.01.   The following is a designation of the Classes of Claims and Interests under the Plan. Administrative Expenses, Priority Claims of the kinds specified in sections 507(a)(2) and 507(a)(3) of the Bankruptcy Code and Priority Tax Claims have not been classified, are excluded from the following Classes in accordance with section 1123(a)(1) of the Bankruptcy Code, and their treatment is set forth in Article III of the Plan.  A Claim shall be deemed classified in a particular Class only to the extent that the Claim qualifies within the description of that Class.  A Claim is included in a particular Class only to the extent that the Claim is an Allowed Claim in that Class.

        Class 1 – Secured Tax Claims
        Class 2 – Terry Partially Secured Claim
        Class 3 – General Unsecured Claims
        Class 4 – Insider Claims
        Class 5 – Interests

2.02.   <u>Impaired Classes of Claims and Interests</u>.  Class 1 is unimpaired.  Classes 2 through 5 are Impaired.

2.03.   <u>Impairment or Classification Controversies</u>. If a controversy arises as to the classification of any Claim or Interest, or as to whether any Class of Claims or Interests is Impaired under the Plan, the Bankruptcy Court shall determine such controversy as a part of the confirmation process.

## ARTICLE III.
## TREATMENT OF UNCLASSIFIED CLAIMS

3.01.   <u>Administrative Expenses</u>

(a)     The Reorganized Debtor shall pay, in accordance with the ordinary business terms applicable to each such expense or cost, the reasonable and ordinary expenses incurred in operating the Debtors' businesses or administering the Estate before the Effective Date ("Ordinary Course Claims").  The remaining provisions of this section 3.01 shall not apply to the Ordinary Course Claims, except that if there is a dispute relating to any such Ordinary Course Claim, the Reorganized Debtor may move the Bankruptcy Court to apply the provisions of Article III below relating to Contested Claims and require the holder of the Contested Ordinary Course Claim to assert such Claim through the Chapter 11 Cases.

(b)     Each holder of an Allowed Administrative Expense (other than Ordinary Course Claims and Administrative Expense Claims by Estate Professionals), shall receive (i) the amount of such holder's Allowed Administrative Expense in one Cash payment on the later of the Effective Date or the tenth (10th) Business Day after such Administrative Expense becomes an Allowed Administrative Expense, or (ii) such other treatment as may be agreed to in writing by such Administrative Expense Creditor and the Reorganized Debtor, or as otherwise ordered by the Bankruptcy Court.

(c)     Unless the Bankruptcy Court orders to the contrary or the Reorganized Debtor agrees to the contrary in writing, the holder of a Claim for an Administrative Expense, other than such a Claim by an Estate Professional, an Ordinary Course Claim, or an Administrative Expense which is already Allowed, shall file with the Bankruptcy Court and serve upon the Reorganized Debtor and its counsel a written notice of such Claim for an Administrative Expense within thirty (30) days after the Effective Date.  This deadline is the "Administrative Bar Date."  Such notice shall include at a minimum: (i) the name, address, telephone number and fax number (if applicable) or email address of the holder of such Claim, (ii) the amount of such Claim, and (iii) the basis of such Claim.  **Failure to timely and properly file and serve such notice by the Administrative Bar Date shall result in such Claim for an Administrative Expense being forever barred and discharged and the holder thereof shall be barred from receiving any Distribution from the Reorganized Debtor on account of such Claim for an Administrative Expense**.

(d)     A Claim for an Administrative Expense, for which a proper notice was filed and served under subsection 3.01(c) above, shall become an Allowed Administrative Expense if no Objection is filed within thirty (30) days of the filing and service of such notice.  If a timely Objection is filed, the Claim shall become an Allowed Administrative Expense only to the extent allowed by a Final Order.

(e)     The procedures contained in subsections 3.01(a), (c) and (d) above shall not apply to Administrative Expense Claims asserted by Estate Professionals, who shall each file and submit an appropriate final fee application to the Bankruptcy Court no later than sixty (60) days after the Effective Date.  A Claim for an Administrative Expense by an Estate Professional in respect of which a final fee application has been properly filed and served shall become an Allowed Administrative Expense only to the extent Allowed by order of the Bankruptcy Court and, if so Allowed, shall be paid in accordance with subsection 3.01(b) above.  Professional fees and expenses to any Estate Professional incurred on or after the Effective Date may be paid by the Reorganized Debtor without necessity of application to or order by the Bankruptcy Court.

(f)     If the Reorganized Debtor asserts any Estate Claims as counterclaims or defenses to a Claim for Administrative Expense, the Administrative Expense Claim shall be determined through an adversary proceeding before the Bankruptcy Court.  The Bankruptcy

Court shall have exclusive jurisdiction to adjudicate and Allow all Claims for any Administrative Expense.

3.02.    Priority Non-Tax Claims.  Each holder of an Allowed Priority Non-Tax Claim shall receive (i) the amount of such holder's Allowed Priority Non-Tax Payment in one Cash payment on the later of the Effective Date or the tenth (10th) Business Day after such Priority Non-Tax Claim becomes an Allowed Priority Non-Tax Claim and a determination has been made that such Allowed Priority Non-Tax Claim is not subject to equitable subordination under section 510(c) of the Bankruptcy Code, or (ii) such other treatment as may be agreed to in writing by such Administrative Expense Creditor and the Reorganized Debtor, or as otherwise ordered by the Bankruptcy Court.

3.03.    Priority Tax Claims.  Each holder of an Allowed Priority Tax Claim shall receive (a) one Cash payment in an amount equal to the principal amount of such Allowed Priority Tax Claim, plus interest at the rate and in the manner prescribed by applicable state law from the later of the Petition Date or the first day after the last day on which such Priority Tax Claim may be paid without penalty, no later than sixty (60) days after each such Claim becomes an Allowed Claim, or (b) such other treatment as may be agreed to in writing by the holder of the Priority Tax Claim and the Reorganized Debtor.

3.04.    U.S. Trustee's Fees.  The Reorganized Debtor shall pay the U.S. Trustee's quarterly fees incurred pursuant to 28 U.S.C. § 1930(a)(6) which are due as of the Confirmation Date in full on the Effective Date or as soon thereafter as is practicable.  After the Confirmation Date, the Reorganized Debtor shall continue to pay quarterly fees as they accrue until a final decree is entered and the Chapter 11 Cases are closed.  The Reorganized Debtor shall file with the Bankruptcy Court and serve on the U.S. Trustee quarterly financial reports for each quarter, or portion thereof, that the Chapter 11 Cases remain open.

## ARTICLE IV.
## TREATMENT OF CLASSIFIED CLAIMS AND INTERESTS

4.01.    Class 1 – Secured Tax Claims.  Each holder of an Allowed Secured Tax Claim shall receive (a) one Cash payment in an amount equal to the principal amount of such Allowed Secured Tax Claim, plus interest at the rate and in the manner prescribed by applicable state law from the later of the Petition Date or the first day after the last day on which such Secured Tax Claim may be paid without penalty, on the Initial Distribution Date, or (b) such other treatment as may be agreed to in writing by the holder of the Secured Tax Claim and the Reorganized Debtor.  The Liens securing such Secured Tax Claims shall remain unimpaired and unaffected until each such Class 1 Claim is paid in full.  All Distributions on account of Allowed Class 1 Claims shall be made by the Reorganized Debtor.  Class 1 is unimpaired. Holders of Class 1 Claims are conclusively presumed to have accepted the Plan and, accordingly, are not entitled to vote on the Plan.

4.02.    Class 2 – Terry Partially Secured Claim.  In exchange for a one million dollar ($1,000,000.00) reduction in the amount of the Terry Partially Secured Claim, Terry shall receive one hundred percent (100%) of the equity interests in the Reorganized Debtor as of the Effective Date.  The remaining balance of any Allowed Terry Partially Secured Claim shall be treated and paid as a Class 3 General Unsecured Claim.  Class 2 is Impaired.  The Holder of the Class 2 Terry Partially Secured Claim is entitled to vote on the Plan.

4.03.    Class 3 – General Unsecured Claims.

Case 18-30264-sgj11 Doc 644 Filed 09/07/21 Entered 09/07/21 11:59:05 Page 140 of 172

(a)    Each holder of an Allowed General Unsecured Claim shall receive a promissory note issued by the Reorganized Debtor (each an "Unsecured Cash Flow Note") on the later of (a) that date that is as soon as practicable after the Effective Date, or (b) that date that is as soon as practicable after such holder's General Unsecured Claim becomes an Allowed Class 3 Claim.  Each Unsecured Cash Flow Note shall be dated as of the Effective Date, bear interest at the Plan Rate and shall mature on that date that is the three (3) years after the Effective Date.

(b)    To the extent of Available Cash, the Reorganized Debtor shall make substantially equal quarterly Distributions of principal and accrued interest to each holder of an Unsecured Cash Flow Note, with the first such quarterly Distribution being due and payable on the 180th day after the Effective Date.  Thereafter, like Distributions shall be made each quarter by the Reorganized Debtor until the Unsecured Cash Flow Note is paid in full.  Notwithstanding the foregoing, in the event that an Unsecured Cash Flow Note is first issued more than one hundred eighty (180) days after the Effective Date, the first Distribution made on account of such Unsecured Cash Flow Note shall be made upon the date that the next Distribution would otherwise be due, but such first Distribution shall also include amounts that would have been distributed to the holder of such Unsecured Cash Flow Note had such Unsecured Cash Flow Note been issued prior to ninety (90) days after the Effective Date, such that the first Distribution shall bring all payments current on account of such Unsecured Cash Flow Note.  If on any date on which a quarterly Distribution is due to the holder of an Unsecured Cash Flow Note the remaining principal and accrued interest owing on account of such Unsecured Cash Flow Note is less than the regular quarterly Distribution amount, the Reorganized Debtor shall make a Distribution to the holder of such Unsecured Cash Flow Note in an amount sufficient to fully satisfy the remaining principal and accrued interest owed, but no more.  Nothing contained herein shall preclude the Reorganized Debtor from prepaying any Unsecured Cash Flow Note.

(c)    If the Reorganized Debtor obtains additional Cash, through litigation recoveries or otherwise, and the Reorganized Debtor determines, in its sole discretion, that the Reorganized Debtor holds Available Cash sufficient to allow one or more Pro Rata Distributions to be made to holders of Allowed Class 3 Claims and Allowed Subclass 4A Claims, the Reorganized Debtor may, but shall not be required to, make one or more Pro Rata Distributions to holders of Allowed Class 3 Claims and Allowed Subclass 4A Claims.  The amount of the Pro Rata Distribution made to each such holder shall be determined as if Class 3 and Subclass 4A constituted a single Class.  Any such additional Distributions shall be applied to reduce the outstanding balance of each holder's Unsecured Cash Flow Note.

(d)    Class 3 is Impaired.  Holders of Class 3 Claims are entitled to vote on the Plan.

4.04.  Class 4 – Insider Claims.  Holders of Class 4 Insider Claims shall be treated as follows:

(a)    Class 4 Claims shall be divided into two (2) subclasses.  Subclass 4A shall consist of all Allowed Class 4 claims which are not subject to equitable subordination.  Subclass 4B shall consist of all Class 4 claims which are determined by the Bankruptcy Court to be subject to equitable subordination.  If only a part of a Class 4 Claim is subject to equitable subordination, then the portion of such claim subject to equitable subordination shall be included in Subclass 4B and the remainder not subject to equitable subordination shall be included in Subclass 4A.  Subclass 4A and Subclass 4B will vote separately on the Plan, although Subclass 4B is currently an empty class.

(b)	All Class 4 Claims (regardless of which subclass) shall be and remain subject to all Estate Defenses and all Estate Claims, including any rights of offset, recoupment, and/or to an affirmative recovery against the Holder of any Class 4 Claim.

(c)	Each holder of an Allowed Subclass 4A Claim shall receive an Unsecured Cash Flow Note on the later of (a) that date that is as soon as practicable after the Effective Date, or (b) that date that is as soon as practicable after such holder's Subclass 4A Claim becomes an Allowed Subclass 4A Claim.  Each Unsecured Cash Flow Note shall be dated as of the Effective Date, bear interest at the Plan Rate and shall mature on that date that is the three (3) years after the Effective Date.

(d)	To the extent of Available Cash, the Reorganized Debtor shall make substantially equal quarterly Distributions of principal and accrued interest to each holder of an Unsecured Cash Flow Note, with the first such quarterly Distribution being due and payable on the 180th day after the Effective Date.  Thereafter, like Distributions shall be made each quarter by the Reorganized Debtor until the Unsecured Cash Flow Note is paid in full.  Notwithstanding the foregoing, in the event that an Unsecured Cash Flow Note is first issued more than one hundred eighty (180) days after the Effective Date, the first Distribution made on account of such Unsecured Cash Flow Note shall be made upon the date that the next Distribution would otherwise be due, but such first Distribution shall also include amounts that would have been distributed to the holder of such Unsecured Cash Flow Note had such Unsecured Cash Flow Note been issued prior to ninety (90) days after the Effective Date, such that the first Distribution shall bring all payments current on account of such Unsecured Cash Flow Note.  If on any date on which a quarterly Distribution is due to the holder of an Unsecured Cash Flow Note the remaining principal and accrued interest owing on account of such Unsecured Cash Flow Note is less than the regular quarterly Distribution amount, the Reorganized Debtor shall make a Distribution to the holder of such Unsecured Cash Flow Note in an amount sufficient to fully satisfy the remaining principal and accrued interest owed, but no more.  Nothing contained herein shall preclude the Reorganized Debtor from prepaying any Unsecured Cash Flow Note.

(e)	If the Reorganized Debtor obtains additional Cash, through litigation recoveries or otherwise, and the Reorganized Debtor determines, in its sole discretion, that the Reorganized Debtor holds Available Cash sufficient to allow one or more Pro Rata Distributions to be made to holders of Allowed Class 3 Claims and Allowed Subclass 4A Claims, the Reorganized Debtor may, but shall not be required to, make one or more Pro Rata Distributions to holders of Allowed Class 3 Claims and Allowed Subclass 4A Claims.  The amount of the Pro Rata Distribution made to each such holder shall be determined as if Class 3 and Subclass 4A constituted a single Class.  Any such additional Distributions shall be applied to reduce the outstanding balance of each holder's Unsecured Cash Flow Note.

(f)	Unless otherwise provided by Order of the Bankruptcy Court, holders of Allowed Subclass 4B claims shall not be entitled to any Distribution from the Reorganized Debtor until all Allowed Claims included in Classes 1 through 3 and Subclass 4A, including all Unsecured Cash Flow Notes, have been paid in full.

(g)	Holders of Allowed Subclass 4B Claims shall receive a subordinated promissory note issued by the Reorganized Debtor ("Subordinated Unsecured Cash Flow Note") on the later of (a) that date that is as soon as practicable after the Effective Date, or (b) that date that is as soon as practicable after such holder's Subclass 4A Claim becomes an Allowed Subclass 4A Claim.  Each Subordinated Unsecured Cash Flow Note shall be dated as of the Effective Date, bear interest at the Plan Rate and shall mature on the earlier to occur of (i) the date that is two

(2) years after the date all Unsecured Cash Flow Notes have been paid in full, or (ii) five (5) years after the Effective Date.

(h)     To the extent of Available Cash, the Reorganized Debtor shall make substantially equal quarterly Distributions of principal and accrued interest to each holder of a Subordinated Unsecured Cash Flow Note, with the first such quarterly Distribution being due and payable on the 90th day after the payment in full of the Unsecured Cash Flow Notes. Thereafter, like Distributions shall be made each quarter by the Reorganized Debtor until the Subordinated Unsecured Cash Flow Note is paid in full. Notwithstanding the foregoing, in the event that a Subordinated Unsecured Cash Flow Note is first issued after payments have been made on one or more other Subordinated Unsecured Cash Flow Notes, the first Distribution made on account of such Subordinated Unsecured Cash Flow Note shall be made upon the date that the next Distribution would otherwise be due, but such first Distribution shall also include amounts that would have been distributed to the holder of such Subordinated Unsecured Cash Flow Note had such Subordinated Unsecured Cash Flow Note been issued at the time the first payment on any Subordinated Unsecured Cash Flow Note was made, such that the first Distribution shall bring all payments current on account of such Subordinated Unsecured Cash Flow Note. If on any date on which a quarterly Distribution is due to the holder of a Subordinated Unsecured Cash Flow Note the remaining principal and accrued interest owing on account of such Subordinated Unsecured Cash Flow Note is less than the regular quarterly Distribution amount, the Reorganized Debtor shall make a Distribution to the holder of such Subordinated Unsecured Cash Flow Note in an amount sufficient to fully satisfy the remaining principal and accrued interest owed, but no more. Nothing contained herein shall preclude the Reorganized Debtor from prepaying any Subordinated Unsecured Cash Flow Note.

(i)     Subject to section 4.04(f) above, if the Reorganized Debtor obtains additional Cash, through litigation recoveries or otherwise, and the Reorganized Debtor determines, in its sole discretion, that the Reorganized Debtor holds Available Cash sufficient to allow one or more Pro Rata Distributions to be made to holders of Allowed Subclass 4B Claims, the Reorganized Debtor may, but shall not be required to, make one or more Pro Rata Distributions to holders of Allowed Subclass 4B Claims. Any such additional Distributions shall be applied to reduce the outstanding balance of each holder's Subordinated Unsecured Cash Flow Note.

(j)     The Reorganized Debtor may establish appropriate Reserves as to any Contested Claim included in Class 4.

(k)     Class 4 is Impaired. Holders of Class 4 Claims are entitled to vote on the Plan.

4.05.   Class 5 – Interests. All Interests in the Debtors shall be extinguished and shall cease to exist as of the Effective Date. The holders of such Interests shall not receive or retain any property on account of such Interests under the Plan. Class 5 is Impaired. Holders of Class 5 Interests are conclusively presumed to have rejected the Plan and, accordingly, are not entitled to vote on the Plan.

## ARTICLE V.
## ACCEPTANCE OR REJECTION OF THE PLAN

5.01.   Classes Entitled to Vote. Creditors in Classes 2 through 4 are entitled to vote and shall vote separately to accept or reject the Plan. Any unimpaired Class shall not be entitled to vote to accept or reject the Plan. Any unimpaired Class is deemed to have accepted the Plan under section 1126(f) of the Bankruptcy Code.

5.02.   <u>Class Acceptance Requirement</u>. A Class of Claims shall have accepted the Plan if it is accepted by at least two-thirds (2/3) in amount and more than one-half (1/2) in number of the Allowed Claims in such Class that have voted on the Plan.

5.03.   <u>Cramdown</u>. This section shall constitute the request by the Plan proponent, pursuant to section 1129(b) of the Bankruptcy Code, that the Bankruptcy Court confirm the Plan notwithstanding the fact that the requirements of section 1129(a)(8) of the Bankruptcy Code have not been met.

<div align="center">

**ARTICLE VI.**
**MEANS FOR IMPLEMENTATION OF THE PLAN**

</div>

6.01.   <u>Vesting of Assets</u>. As of the Effective Date, pursuant to sections 1141(b) and (c) of the Bankruptcy Code, all Assets, including the PMAs, all Cash, Estate Accounts Receivable, Estate Insurance, Estate Claims and Estate Defenses, shall be transferred from the Estate to, and vested in, the Reorganized Debtor, free and clear of all rights, title, interests, claims, liens, encumbrances and charges, except as expressly set forth in the Plan.  On and after the Effective Date, the Reorganized Debtor may operate its business and may use, acquire or dispose of property without supervision or approval by the Bankruptcy Court and free of any restrictions of the Bankruptcy Code or Bankruptcy Rules, other than those restrictions expressly imposed by the Plan or the Confirmation Order.  Without limiting the foregoing, the Reorganized Debtor may pay the charges that it incurs on or after the Effective Date for all fees, disbursements, expenses or related support services of Professionals (including fees relating to the preparation of professional fee applications) without application to, or approval of, the Bankruptcy Court.

6.02.   <u>Continued Existence of the Debtors</u>.  The Debtors shall continue to exist after the Effective Date, with all the powers available to such legal entities, in accordance with applicable law and pursuant to their constituent documents.  On or after the Effective Date, each Reorganized Debtor may, within its sole and exclusive discretion, take such action as permitted by applicable law and its constituent documents as it determines is reasonable and appropriate.

6.03.   <u>Retention and Assertion of Causes of Action and Defenses</u>.

(a)      Except as expressly set forth in this Plan, all causes of action, claims, counterclaims, defenses and rights of offset or recoupment (including but not limited to all Estate Claims, Estate Defenses and Avoidance Actions) belonging to the Debtors (collectively, the "<u>Retained Causes of Action</u>") shall, upon the occurrence of the Effective Date, be reserved, retained and preserved for, and transferred to, received by and vested, in the Reorganized Debtor for the benefit of the Debtors and the Debtors' estates.  Without limitation, the Retained Causes of Action include the claims and causes of action described on **Exhibit A** attached hereto.

(b)      Except as expressly set forth in this Plan, the rights of the Reorganized Debtor to commence, prosecute or settle the Retained Causes of Action shall be retained, reserved, and preserved notwithstanding the occurrence of the Effective Date. **No Person may rely on the absence of a specific reference in the Plan or the Disclosure Statement to any cause of action against them as any indication that the Debtors or the Reorganized Debtor will not pursue any and all available causes of action (including all Estate Claims, Estate Defenses and Avoidance Actions) against them. The Debtors and their Estate expressly reserve all rights to prosecute any and all of the Retained Causes of Action (including all**

<div align="center">16</div>

**Estate Claims, Estate Defenses and Avoidance Actions) against any Person, <u>except</u> as otherwise provided in this Plan**. Unless any causes of action against a Person are expressly waived, relinquished, exculpated, released, compromised or settled in this Plan or a Final Order, the Debtors expressly reserve all causes of action (including all Estate Claims, Estate Defenses and Avoidance Actions) for later adjudication, and, therefore, no preclusion doctrine, <u>including</u> without limitation, the doctrines of res judicata, collateral estoppel, issue preclusion, claim preclusion, estoppel (judicial, equitable or otherwise) or laches, shall apply to such causes of action upon or after the confirmation or consummation of the Plan. The Debtors and the Reorganized Debtor may also assert Estate Defenses as a defense to the allowance of any Claim not otherwise Allowed.

6.04.   <u>Assumption of Obligations to Make Distributions</u>.  The Reorganized Debtor shall be deemed to have assumed the obligations to make all Distributions pursuant to this Plan.

6.05.   <u>Actions by the Debtors and the Reorganized Debtor to Implement Plan</u>.  The entry of the Confirmation Order shall constitute all necessary authorization for the Debtors and the Reorganized Debtor to take or cause to be taken all actions necessary or appropriate to consummate, implement or perform all provisions of this Plan on and after the Effective Date, and all such actions taken or caused to be taken shall be deemed to have been authorized and approved by the Bankruptcy Court without further approval, act or action under any applicable law, order, rule or regulation, including without limitation, (a) all transfers of Assets, including to the Reorganized Debtor, that are to occur pursuant to the Plan; (b) the cancellation of Interests and issuance of 100% of the equity interests in the Reorganized Debtor to Terry; (c) the performance of the terms of the Plan and the making of all Distributions required under the Plan; and (d) subject to the terms of the Plan, entering into any and all transactions, contracts, or arrangements permitted by applicable law, order, rule or regulation.

6.06.   <u>Termination of Highland as Shared Services Provider and Sub-Advisor</u>.  The Bankruptcy Court authorized the Chapter 11 Trustee to terminate the Shared Services Agreement and Sub-Advisory Agreement and engage Brigade to perform the services previously provided by Highland.  The Shared Services Agreement and Sub-Advisory Agreement were terminated by the Chapter 11 Trustee on or about August 1, 2018, and the services previously performed by Highland were transitioned to Brigade on an interim basis.  Brigade has agreed to continue to provide shared services and sub-advisory services to the Reorganized Debtor with respect to the Acis CLOs and the Other Acis-Managed Funds (and any reset Acis CLOs) subject to a minimum two (2) year term unless otherwise agreed as between the Reorganized Debtor and Brigade.  Consequently, any agreement between the Reorganized Debtor and Brigade shall provide that Brigade cannot be removed without cause for a period of two (2) years except as may be otherwise agreed as between the Reorganized Debtor and Brigade.

6.07.   <u>Continued Portfolio Management by the Reorganized Debtor</u>.  The PMAs and any other Executory Contracts and Unexpired Leases identified on Exhibit B to the Plan or in the Confirmation Order shall be assumed and the Reorganized Debtor shall, from an after the Effective Date, serve as the portfolio manager with respect to the Acis CLOs and the Other Acis-Managed Funds (and any reset Acis CLOs).  Consistent with Section 15 of the PMAs, the Reorganized Debtor may only be removed as portfolio manager under the assumed PMAs for cause as set forth in the PMAs.

6.08.   <u>Reset of the Acis CLOs</u>.  HCLOF has maintained that it desires to reset the Acis CLOs. The Reorganized Debtor, with the assistance of Brigade as its shared services provider and sub-advisor, is prepared to promptly seek to perform such reset transactions as set forth herein.

HCLOF shall have the right to submit one or more notice(s) of Optional Redemption solely for the purpose of effectuating a reset of one or more of the Acis CLOs under this section 6.08 of the Plan utilizing Refinancing Proceeds (a "Reset Optional Redemption") for each of the Acis CLOs. If HCLOF requests a Reset Optional Redemption of an Acis CLO, the Reorganized Debtor, with the assistance of Brigade, shall thereafter seek to reset the Acis CLOs, either consecutively or simultaneously, in its good faith business judgment and consistent with then-prevailing market terms; *provided, however*, (i) the Management Fees to be charged by the Reorganized Debtor to any reset Acis CLOs shall remain the same going forward and shall not be increased, and no transaction fee shall be charged by the Reorganized Debtor (other than, for avoidance of doubt, transaction expense reimbursements consistent with market standards), and (ii) HCLOF shall be granted a right of first refusal for any funding of debt or equity required to effectuate a reset of each of the Acis CLOs. The terms of the Indentures shall control any Reset Optional Redemption. If HCLOF elects not to reset one or more of the Acis CLOs, then the Acis CLOs will continue to be managed in accordance with market standards.

6.09.    Post-Effective Date Service List. Pleadings filed by any party-in-interest with the Bankruptcy Court after the Effective Date shall be served on the following Persons (collectively the "Service List"): (a) any Person directly affected by the relief sought in the pleading, (b) the U.S. Trustee, (c) parties which have filed a Notice of Appearance in the Chapter 11 Cases, and (d) the Reorganized Debtor.

6.10.    Section 505 Powers. All rights and powers pursuant to section 505 of the Bankruptcy Code are hereby reserved to the Estate and shall be transferred to, and vested in, the Reorganized Debtor as of the Effective Date.

6.11.    Section 510(c) Powers. All rights and powers to seek or exercise any right or remedy of equitable subordination are hereby reserved to the Estate and shall be transferred to, and vested in, the Reorganized Debtor as of the Effective Date as an Estate Defense.

6.12.    Section 506(c) Powers. The Estate hereby reserves all rights and powers pursuant to section 506(c) of the Bankruptcy Code, and all such rights shall be specifically transferred to, and vested in, the Reorganized Debtor.

6.13.    Plan Injunction. The Reorganized Debtor shall each have full power, standing and authority to enforce the Plan Injunction against any Person, either through an action before the Bankruptcy Court or any other tribunal having appropriate jurisdiction.

6.14.    Cancellation of Interests. Except as otherwise specifically provided herein, upon the Effective Date of the Plan: (a) all Interests in the Debtors shall be cancelled; and (b) all obligations or debts of, or Claims against, the Debtors on account of, or based upon, the Interests shall be deemed as cancelled, released and discharged, including all obligations or duties by the Debtors relating to the Interests in any of their respective formation documents, including Acis LP's limited partnership agreement and bylaws, Acis GP's articles of formation and company agreement, or any similar formation or governing documents.

### ARTICLE VII.
### PROVISIONS GOVERNING DISTRIBUTION

7.01.    Distributions from Reorganized Debtor. The Reorganized Debtor shall be responsible for making Distributions to holders of Allowed Claims only to the extent this Plan requires Distributions to be made by the Reorganized Debtor. The priority of Distributions from the

Reorganized Debtor shall be in accordance with the terms of this Plan and the Confirmation Order as follows:

(a)     First, to satisfy Allowed Class 1 Secured Tax Claims;

(b)     Second, to satisfy Allowed Administrative Expenses and Allowed Priority Claims in accordance with Article III above, including all U.S. Trustee quarterly fees due and owing as of the Effective Date;

(c)     Third, to make Distributions to holders of any Allowed Class 3 General Unsecured Claims and Allowed Subclass 4A Claims; and

(e)     Fourth, to make Distributions to holders of any Allowed Subclass 4B Claims

7.02.    Reserves.  The Reorganized Debtor may estimate, create and set aside Reserves as may be necessary or appropriate, including without limitation, Reserves on account of Contested Claims.  The Reorganized Debtor may, but shall not be required to, move the Bankruptcy Court to approve: (a) the amount of, and terms on which, such Reserves shall be held, maintained and disbursed, or (b) the amount and timing of any proposed interim Distribution to holders of Allowed Class 3 Claims and Allowed Subclass 4A Claims.  The Reorganized Debtor may elect to seek approval by the Bankruptcy Court for the creation and amount of any Reserves or regarding the amount or timing of any Distribution on account of any Allowed Claims.  Except as otherwise expressly provided herein, the Reorganized Debtor, in the exercise of its good faith business judgment, may transfer funds out of any of the Reserves as necessary or appropriate.  However, the Reorganized Debtor shall not be required to create separate accounts for such Reserves which may be created and memorialized by entries or other accounting methodologies, which may be revised from time-to-time, to enable the Reorganized Debtor to determine the amount of Cash available for Distributions under the Plan. Subject to any specific deadlines set forth herein, the Reorganized Debtor, shall determine, from time-to-time, in the exercise of the Reorganized Debtor's good faith business judgment: (x) the amount of Cash available for Distribution, (y) the timing of any Distributions, and (z) the amount and creation of any Reserves for Contested Claims.  The Reorganized Debtor shall not be entitled to reserve for, and this section 7.02 does not apply to, Distributions to holders of Allowed Subclass 4B Claims.

7.03.    Prosecution and Settlement of Estate Claims.  Upon the Effective Date, the Reorganized Debtor (a) shall automatically be substituted in place of the Chapter 11 Trustee as the party representing the Estate in respect of any pending lawsuit, motion or other pleading pending before the Bankruptcy Court or any other tribunal, and (b) is authorized to file a notice on the docket of each adversary proceeding or the Chapter 11 Cases regarding such substitution.  The Reorganized Debtor shall have exclusive standing and authority to prosecute, settle or compromise Estate Claims for the benefit of the Estate in the manner set forth in this Plan.

7.04.    Plan Injunction.  The Reorganized Debtor shall be entitled to the full protection and benefit of the Plan Injunction and shall have standing to bring any action or proceeding necessary to enforce the Plan Injunction against any Person.

7.05.    Relief from the Bankruptcy Court.  The Reorganized Debtor shall be authorized to seek relief from the Bankruptcy Court or any other tribunal having jurisdiction as to any matter relating or pertaining to the consummation, administration or performance of this Plan, including without

Case 18-30264-sgj11 Doc 624 Filed 09/07/21 Entered 09/07/21 11:59:05 Page 147 of 72

limitation seeking any relief from the Bankruptcy Court which the Reorganized Debtor deems necessary or appropriate to the performance of its duties or the administration of this Plan.

## ARTICLE VIII.
## SOURCE OF DISTRIBUTIONS

8.01.    Source of Distributions.  All Distributions under this Plan shall be made by the Reorganized Debtor in the manner provided in this Plan and the Confirmation Order.

8.02.    Timing and Amount of Distributions.  No Distribution shall be made on account of any Claim until such Claim is Allowed, except as otherwise set forth in this Plan or otherwise ordered by the Bankruptcy Court.  No Distribution shall be made on account of any Contested Claim until such Claim is Allowed.  Except as expressly set forth in the Plan or in the Confirmation Order, the Reorganized Debtor shall, in the exercise of its good faith business judgment, determine the timing and amount of all Distributions which are required to be made under the Plan, consistent with the goal of making such Distributions as expeditiously as reasonably possible.  The Reorganized Debtor may, but shall not be required to, seek approval of, or any other appropriate relief from, the Bankruptcy Court with respect to any of such Distributions.  Any Unclaimed Property may be paid into the registry of the Bankruptcy Court or otherwise distributed in accordance with the orders of the Bankruptcy Court.

8.03.    Means of Cash Payment.  Cash payments pursuant to this Plan shall be made by check drawn on, or by wire transfer from, a domestic bank, or by other means agreed to by the payor and payee.

8.04.    Record Date for Distributions.  As of the close of business on the Effective Date (the "Distribution Record Date"), the register for Claims will be closed, and there shall be no further changes in the holders of record of any Claims.  Although there is no prohibition against the transfer of any Claim by any Creditor, the Reorganized Debtor shall have no obligation to recognize any transfer of a Claim occurring after the Distribution Record Date, and the Reorganized Debtor shall instead be authorized and entitled to recognize and deal for all purposes under this Plan, including for the purpose of making all Distributions, with only those holders of Claims so reflected as of the Distribution Record Date.  However, the Reorganized Debtor may, in the exercise of its good faith business judgment, agree to recognize transfers of Claims after the Distribution Record Date, but shall have no obligation to do so.

8.05.    Delivery of Distributions.  All Distributions, deliveries and payments to the holders of any Allowed Claims shall be made to the addresses set forth on the respective proofs of Claim filed in the Chapter 11 Cases by such Claimants or, if the Distribution is to be made based on a Claim reflected as Allowed in the Schedules, at the address reflected in the Schedules.  Any such Distribution, delivery or payment shall be deemed as made for all purposes relating to this Plan when deposited in the United States Mail, postage prepaid, addressed as required in the preceding sentence.  If any Distribution is returned as undeliverable, no further Distribution shall be made on account of such Allowed Claim unless and until the Reorganized Debtor is notified of such holder's then current address, at which time all missed Distributions shall be made to the holder of such Allowed Claim.  However, all notices to the Reorganized Debtor reflecting new or updated addresses for undeliverable Distributions shall be made on or before one hundred twenty (120) days after the date of the attempted Distribution or such longer period as the Reorganized Debtor may fix in the exercise of its sole discretion.  After such date, all Unclaimed Property shall revert to the Reorganized Debtor and the Claim of any holder with respect to such property shall be discharged and forever barred.

8.06.   W-9 Forms.  Each holder of an Allowed Claim must provide a W-9 form or other such necessary information to comply with any withholding requirements of any Governmental Unit (collectively the "W-9 Form") to the Reorganized Debtor prior to receiving any Distribution from the Reorganized Debtor.  In the event a holder of an Allowed Claim does not provide a W-9 Form to the Reorganized Debtor within thirty (30) days of the Effective Date, the Reorganized Debtor shall, at an appropriate time, issue a written request to each holder of an Allowed Claim that has not previously provided a W-9 Form to the Reorganized Debtor.  The request shall be in writing and shall be delivered to the last address known to the Debtors or Reorganized Debtor, as appropriate.  The request shall conspicuously advise and disclose that failure to provide a W-9 Form to the Reorganized Debtor within thirty (30) days shall result in a waiver of any right or rights to a Distribution from the Reorganized Debtor.  In the event any holder of an Allowed Claim fails to provide the Reorganized Debtor with a W-9 Form within thirty (30) days after the date of written request described herein, then the holder of such Allowed Claim shall be deemed to have waived the right to receive any Distribution whatsoever from the Reorganized Debtor.

8.07.   Time Bar to Cash Payments.  Checks issued in respect of Allowed Claims shall be null and void if not cashed within ninety (90) days of the date of issuance thereof.  Requests for reissuance of any check shall be made directly to the issuer of the check by the holder of the Allowed Claim with respect to which such check originally was issued.  Any Claim in respect of such a voided check shall be made on or before one hundred twenty (120) days after the date of issuance of such check or such longer period as the Reorganized Debtor may fix.  After such date, all Claims in respect of void checks shall be discharged and forever barred.

8.08.   Cure Period.  Except as otherwise set forth herein, the failure by the Reorganized Debtor to timely perform any term, provision or covenant contained in this Plan, or to make any payment or Distribution required by this Plan to any Creditor, or the failure to make any payment or perform any covenant on any note, instrument or document issued pursuant to this Plan, shall not constitute an event of default unless and until the Reorganized Debtor has been given thirty (30) days written notice of such alleged default in the manner provided in this Plan, and provided an opportunity to cure such alleged default.  Until the expiration of such thirty (30) day cure period, the Reorganized Debtor shall not be in default, and performance during such thirty (30) day cure period shall be deemed as timely for all purposes.  Such written notice and passage of the thirty (30) day cure period shall constitute conditions precedent to declaring or claiming any default under this Plan or bringing any action or legal proceeding by any Person to enforce any right granted under this Plan.

8.09.   Pre-Payment of Claims. Unless the Plan expressly prohibits or conditions the pre-payment of an Allowed Claim, the Reorganized Debtor may pre-pay any Allowed Claim in whole or in part at any time and may do so without penalty.

8.10.   Distributions after Substantial Consummation.  All Distributions of any kind made to any Creditor after Substantial Consummation and any and all other actions taken under this Plan after Substantial Consummation shall not be subject to relief, reversal or modification by any court unless the implementation of the Confirmation Order is stayed by an order granted under Bankruptcy Rule 8005.

Case 18-30264-sgj11 Doc 644 Filed 02/07/21 Entered 02/07/21 11:59:05 Page 149 of
255
Case 18-30264-sgj11 Doc 614 Filed 10/25/18 Entered 10/25/18 12:45:46 Page 9 of 92

## ARTICLE IX.
## RETENTION OF ESTATE CLAIMS AND ESTATE DEFENSES.

9.01.   Retention of Estate Claims.  Except as otherwise specifically provided in this Plan, pursuant to section 1123(b)(3) of the Bankruptcy Code, all Estate Claims shall be transferred to, and vested in, the Reorganized Debtor, both for purposes of seeking an affirmative recovery against any Person and for the purposes of offset, recoupment or defense against any Claim asserted against the Estate or Reorganized Debtor.  All Estate Claims shall be deemed to have been transferred to, and vested in, the Reorganized Debtor as of the Effective Date based on the entry of the Confirmation Order.

Without limiting the effectiveness or generality of the foregoing reservation, out of an abundance of caution, the Debtors and the Estate hereby specifically reserves, retains, and preserves the Estate Claims reflected in the attached **Exhibit A**.  Reference is here made to **Exhibit A** which constitutes an integral part of this Plan.  The provisions of this Article of the Plan, as well as the descriptions and disclosures relating to the Estate Claims in the Disclosure Statement, are provided in the interest of providing maximum disclosure of the Estate Claims of which Debtors are presently aware and shall not act as a limitation on the potential Estate Claims that may exist.  It is the specific intention of this Plan that all Avoidance Actions and all associated remedies, and any other Estate Claims, whether arising before or after the Petition Date, and whether arising under the Bankruptcy Code or applicable state or federal non-bankruptcy laws, shall all be reserved, retained and preserved under this Plan to be transferred to, and vested in, the Reorganized Debtor.  All Estate Claims are reserved, retained and preserved both as causes of action for an affirmative recovery and as counterclaims and for the purposes of offset or recoupment against any Claims asserted against the Estate.

9.02.   Retention of Estate Defenses.  Except as otherwise specifically provided in this Plan, pursuant to section 1123(b)(3) of the Bankruptcy Code, all Estate Defenses shall be transferred to, and vested in, the Reorganized Debtor.  For this purpose, all Estate Defenses are hereby reserved, retained and preserved by the Debtors and the Estate, including without limitation all such Estate Defenses available to the Estate pursuant to section 558 of the Bankruptcy Code, and shall be deemed as transferred to, and vested in, the Reorganized Debtor as of the Effective Date based on the entry of the Confirmation Order.

9.03.   Assertion of Estate Claims and Estate Defenses.  The Reorganized Debtor shall have, and be vested with, the exclusive right, authority and standing to assert all Estate Claims and Estate Defenses for the benefit of the Reorganized Debtor.

## ARTICLE X.
## PROCEDURES FOR RESOLVING AND TREATING
## CONTESTED AND CONTINGENT CLAIMS

10.01.  Claims Listed in Schedules as Disputed.  Any General Unsecured Claim which is listed in the Schedules as unliquidated, contingent or disputed, and for which no proof of Claim has been timely filed, shall be considered as Disallowed as of the Effective Date without the necessity of any further action by the Reorganized Debtor or further order of the Bankruptcy Court other than the entry of the Confirmation Order.

10.02.  Responsibility for Objecting to Claims and Settlement of Claims.  The Reorganized Debtor shall have the exclusive standing and authority to either object to any Claim or settle and compromise any Objection to any Claim, including as follows:

(a)     From and after the Effective Date, the Reorganized Debtor shall have the sole and exclusive right to (i) file, settle, or litigate to Final Order any Objections to any Claims; and (ii) seek to subordinate any Claim.  Any Contested Claim may be litigated to Final Order by the Reorganized Debtor; and

(b)     From and after the Effective Date, the Reorganized Debtor shall have the sole and exclusive right to settle, compromise or otherwise resolve any Contested Claim without the necessity of any further notice or approval of the Bankruptcy Court.  Bankruptcy Rule 9019 shall not apply to any settlement or compromise of a Contested Claim after the Effective Date.

10.03.  <u>Objection Deadline</u>.  All Objections to Claims shall be served and filed by the Objection Deadline; <u>provided, however</u>, the Objection Deadline shall not apply to Claims which are not reflected in the claims register, including any alleged informal proofs of Claim.  The Reorganized Debtor may seek to extend the Objection Deadline pursuant to a motion filed on or before the then applicable Objection Deadline with respect to any Claim.  Any such motion may be granted without notice or a hearing.  In the event that the Reorganized Debtor files such a motion and the Bankruptcy Court denies such motion, the Objection Deadline shall nevertheless be automatically extended to that date which is ten (10) Business Days after the date of entry of the Bankruptcy Court's order denying such motion.  Any proof of Claim other than one based upon a Rejection Claim and which is filed more than thirty (30) days after the Effective Date shall be of no force and effect and need not be objected to by the Reorganized Debtor.  Nothing contained herein shall limit the right of the Reorganized Debtor to object to Claims, if any, filed or amended after the Objection Deadline.

10.04.  <u>Response to Claim Objection</u>.  If the Reorganized Debtor files an Objection to any Claim, then the holder of such Claim shall file a written response to such Objection within twenty-four (24) days after the filing and service of the Objection upon the holder of the Contested Claim.  Each such Objection shall contain appropriate negative notice advising the Creditor whose Claim is subject to the Objection of the requirement and time period to file a response to such Objection and that, if no response is timely filed to the Objection, the Bankruptcy Court may enter an order that such Claim is Disallowed without further notice or hearing.  The negative notice language in the Objection shall satisfy the notice requirement in section 3007(a) of the Bankruptcy Rules, and the Reorganized Debtor shall not be required to send a separate notice of the Objection to the Creditor whose Claim is subject to the Objection.

10.05.  <u>Distributions on Account of Contested Claims</u>.  If a Claim is Contested, then the dates for any Distributions as to such Contested Claim shall be determined based upon its date of Allowance, and thereafter Distribution shall be made on account of such Allowed Claim pursuant to the provisions of the Plan.  No Distribution shall be made on account of a Contested Claim until Allowed.  Until such time as a contingent Claim becomes fixed and absolute by a Final Order Allowing such Claim, such Claim shall be treated as a Contested Claim for purposes of estimates, allocations, and Distributions under the Plan.  Any contingent right to contribution or reimbursement shall continue to be subject to section 502(e) of the Bankruptcy Code.

10.06.  <u>No Waiver of Right to Object</u>.  Except as expressly provided in this Plan, nothing contained in the Disclosure Statement, this Plan, or the Confirmation Order shall waive, relinquish, release or impair the Reorganized Debtor's right to object to any Claim.

10.07.  <u>Offsets and Defenses</u>.  The Reorganized Debtor shall be vested with and retain all Estate Claims and Estate Defenses, including without limitation all rights of offset or recoupment and all counterclaims against any Claimant holding a Claim.  Assertion of counterclaims by the

Reorganized Debtor against any Claim asserted against the Estate or Reorganized Debtor shall constitute "core" proceedings.

10.08. <u>Claims Paid or Reduced Prior to Effective Date</u>. Notwithstanding the contents of the Schedules, Claims listed therein as undisputed, liquidated and not contingent shall be reduced by the amount, if any, that was paid by the Debtors prior to the Effective Date, including pursuant to orders of the Bankruptcy Court. To the extent such payments are not reflected in the Schedules, such Schedules will be deemed amended and reduced to reflect that such payments were made. Nothing in the Plan shall preclude the Debtors or the Reorganized Debtor from paying Claims that the Debtors were authorized to pay pursuant to any Final Order entered by the Bankruptcy Court prior to the Confirmation Date.

### ARTICLE XI.
### EXECUTORY CONTRACTS AND UNEXPIRED LEASES

11.01. <u>Assumption and Rejection of Executory Contracts</u>. All Executory Contracts and Unexpired Leases of the Debtors shall be deemed rejected by the Debtors upon the Effective Date unless an Executory Contract or Unexpired Lease (a) has been previously assumed or rejected pursuant to an order of the Bankruptcy Court, (b) is identified in **Exhibit B** to this Plan and/or the Confirmation Order to be (i) assumed or (ii) assumed and assigned, or (c) is the subject of a motion to assume filed on or before the Confirmation Date. The Plan shall constitute a motion to reject all Executory Contracts and Unexpired Leases except as stated in this paragraph. However, the Debtors may file a separate motion for the assumption or rejection of any Executory Contract or Unexpired Lease at any time through the Confirmation Date.

11.02. <u>Cure Payments</u>. All payments that may be required by section 365(b)(1) of the Bankruptcy Code to satisfy any Cure Claim shall be made by the Reorganized Debtor as soon as reasonably practical after the Effective Date or upon such terms as may be otherwise agreed between the Reorganized Debtor and the holder of such Cure Claim; *provided, however*, in the event of a dispute regarding the amount of any Cure Claim, the cure of any other defaults, or any other matter pertaining to assumption or assignment of an Executory Contract, the Reorganized Debtor shall make such cure payments and cure such other defaults, all as may be required by section 365(b)(1) of the Bankruptcy Code, following the entry of a Final Order by the Bankruptcy Court resolving such dispute.

11.03. <u>Bar to Rejection Claims</u>. Except as otherwise ordered by the Bankruptcy Court, any Rejection Claim based on the rejection of an Executory Contract or Unexpired Lease shall be forever barred and shall not be enforceable against the Reorganized Debtor or the Reorganized Debtor's assets unless a proof of Claim is filed with the Bankruptcy Court and served upon the Reorganized Debtor and its counsel by the earlier of thirty (30) days after the Effective Date or thirty (30) days after entry of the Final Order approving rejection of such Executory Contract or Unexpired Lease.

11.04. <u>Rejection Claims</u>. Any Rejection Claim not barred by section 11.03 of the Plan shall be classified as a Class 3 General Unsecured Claim subject to the provisions of sections 502(b)(6) and 502(g) of the Bankruptcy Code; *provided, however*, that any Rejection Claim by a lessor based upon the rejection of an unexpired lease of real property, either prior to the Confirmation Date, upon the entry of the Confirmation Order, or upon the Effective Date, shall be limited in accordance with section 502(b)(6) of the Bankruptcy Code and state law mitigation requirements. All Rejection Claims shall be deemed as Contested Claims until Allowed. Nothing contained herein shall be deemed an admission by the Debtors or the Reorganized

Debtor that such rejection gives rise to or results in a Claim or shall be deemed a waiver by the Debtors or the Reorganized Debtor of any objections or defenses to any such Rejection Claim if asserted.

11.05. <u>Reservation of Rights</u>.  Nothing contained in the Plan shall constitute an admission by the Debtors that any contract or lease is in fact an Executory Contract or Unexpired Lease or that the Debtors or the Reorganized Debtor have any liability thereunder.  If there is a dispute regarding whether a contract or lease is or was executory or unexpired at the time of assumption or rejection, the Reorganized Debtor shall have thirty (30) days following entry of a Final Order resolving such dispute to alter the treatment of such contract or lease.

## ARTICLE XII.
## SUBSTANTIVE CONSOLIDATION OF THE DEBTORS

12.01.  Pursuant to the Confirmation Order, the Bankruptcy Court shall approve the substantive consolidation of the Debtors for the sole purposes of implementing the Plan, including for purposes of voting and Distributions to be made under the Plan.  Pursuant to such order:  (a) all assets and liabilities of the Debtors will be deemed merged; (b) all guarantees by one Debtor of the obligations of the other Debtor will be deemed eliminated so that any Claim against any Debtor and any guarantee thereof executed by the other Debtor and any joint or several liability of the Debtors will be deemed to be one obligation of the consolidated Debtors; and (c) each and every Claim filed or to be filed in the Chapter 11 Case of either Debtor will be deemed filed against the consolidated Debtors and will be deemed one Claim against and a single obligation of the consolidated Debtors.

## ARTICLE XIII.
## CONDITIONS PRECEDENT TO CONFIRMATION AND EFFECTIVENESS OF PLAN

13.01. <u>Conditions to Confirmation and Effectiveness of Plan</u>.  The Plan shall not become effective until the following conditions shall have been satisfied and which may occur concurrently with the Effective Date:  (a) the Confirmation Order shall have been entered, in form and substance acceptable to the Chapter 11 Trustee; (b) the necessary Plan Documents have been executed and delivered, and (c) all other conditions specified by the Chapter 11 Trustee have been satisfied.  Any or all of the above conditions other than (a) may be waived at any time by the Chapter 11 Trustee.

13.02. <u>Notice of the Effective Date</u>.  On or as soon as reasonably practical after the occurrence of the Effective Date, the Reorganized Debtor shall cause a notice of the Effective Date to be filed with the Bankruptcy Court and served on all Creditors and parties-in-interest.

13.03. <u>Revocation of Plan</u>.  The Chapter 11 Trustee may revoke and withdraw the Plan at any time before the Effective Date.  If the Chapter 11 Trustee revokes or withdraws the Plan, or if confirmation of the Plan does not occur, then this Plan shall be deemed null and void and nothing contained in the Plan shall be deemed to constitute a waiver or release of any Claims by or against the Debtors, as the case may be, or any other Person, or to prejudice in any manner the rights of the Debtors or any other Person in any further proceedings involving the Debtors.

## ARTICLE XIV.
## EFFECT OF THE PLAN ON CLAIMS AND INTERESTS

14.01.  Compromise and Settlement

(a)  Pursuant to section 363 of the Bankruptcy Code and Bankruptcy Rule 9019, and in consideration of the classification, potential Distributions and other benefits provided under the Plan, the provisions of the Plan shall constitute a good faith compromise and settlement of all Claims, Interests and controversies subject to, or dealt with, under this Plan, including, without limitation, all Claims against the Debtors or Estate arising prior to the Effective Date, whether known or unknown, foreseen or unforeseen, asserted or unasserted, fixed or contingent, arising out of, relating to or in connection with the business or affairs of, or transactions with, the Debtors or the Estate.  The entry of the Confirmation Order shall constitute the Bankruptcy Court's approval of each of the foregoing compromises or settlements embodied in this Plan, and all other compromises and settlements provided for in the Plan, and the Bankruptcy Court's findings shall constitute its determination that such compromises and settlements are in the best interest of the Debtors, the Estate, Creditors and other parties-in-interest, and are fair, equitable and within the range of reasonableness.  The rights afforded in the Plan and the treatment of all Claims and Interests herein shall be in exchange for, and in complete satisfaction and release of, all Claims and Interests of any nature whatsoever against and in the Debtors, the Estate, and the Assets.  Except as otherwise provided herein, all Persons shall be precluded and forever barred by the Plan Injunction from asserting against the Debtors and their affiliates, successors, assigns, the Reorganized Debtor or the Reorganized Debtor's Assets, or the Estate, any event, occurrence, condition, thing, or other or further Claims or causes of action based upon any act, omission, transaction, or other activity of any kind or nature that occurred or came into existence prior to the Effective Date, whether or not the facts of or legal bases therefore were known or existed prior to the Effective Date.

(b)  It is not the intent of this Plan that confirmation of the Plan shall in any manner alter or amend any settlement and compromise (including those contained in agreed orders) between the Debtors and any Person that has been previously approved by the Bankruptcy Court (each, a "Prior Settlement").  To the extent of any conflict between the terms of the Plan and the terms of any Prior Settlement, the terms of the Prior Settlement shall control and such Prior Settlement shall be enforceable according to its terms.

14.02.  Discharge.  The Debtors and their successors in interest and assigns shall be deemed discharged and released pursuant to section 1141(d)(1) of the Bankruptcy Code from any and all Claims provided for in the Plan.

14.03.  **PLAN INJUNCTION.**

**THIS SECTION IS REFERRED TO HEREIN AS THE "PLAN INJUNCTION." EXCEPT AS OTHERWISE EXPRESSLY PROVIDED HEREIN, AS OF THE EFFECTIVE DATE ALL HOLDERS OF CLAIMS AGAINST, OR INTERESTS IN, THE DEBTORS, THE ESTATE OR ANY OF THE ASSETS THAT AROSE PRIOR TO THE EFFECTIVE DATE ARE HEREBY PERMANENTLY ENJOINED AND PROHIBITED FROM THE FOLLOWING:  (a) THE COMMENCING OR CONTINUATION IN ANY MANNER, DIRECTLY OR INDIRECTLY, OF ANY ACTION, CASE, LAWSUIT OR OTHER PROCEEDING OF ANY TYPE OR NATURE AGAINST THE DEBTORS, THE ESTATE, THE REORGANIZED DEBTOR, OR THE REORGANIZED DEBTOR'S ASSETS WITH RESPECT TO**

Case 19-30264-sgj11 Doc 1244 Filed 02/07/21 Entered 02/07/21 11:59:05 Page 154 of 172
Case 19-30264-sgj11 Doc 6614 Filed 10/25/17 Entered 10/25/17 18:24:46 Page 154 of 172
255

ANY SUCH CLAIM OR INTEREST ARISING OR ACCRUING BEFORE THE EFFECTIVE DATE, INCLUDING WITHOUT LIMITATION THE ENTRY OR ENFORCEMENT OF ANY JUDGMENT, OR ANY OTHER ACT FOR THE COLLECTION, EITHER DIRECTLY OR INDIRECTLY, OF ANY CLAIM OR INTEREST AGAINST THE DEBTORS, THE ESTATE, THE REORGANIZED DEBTOR, OR THE REORGANIZED DEBTOR'S ASSETS; (b) THE CREATION, PERFECTION OR ENFORCEMENT OF ANY LIEN, SECURITY INTEREST, ENCUMBRANCE, RIGHT OR BURDEN, EITHER DIRECTLY OR INDIRECTLY, AGAINST THE DEBTORS, THE ESTATE, THE REORGANIZED DEBTOR, OR THE REORGANIZED DEBTOR'S ASSETS, OR (c) TAKING ANY ACTION IN RELATION TO THE DEBTORS, THE ESTATE, THE REORGANIZED DEBTOR, OR THE REORGANIZED DEBTOR'S ASSETS, EITHER DIRECTLY OR INDIRECTLY, WHICH VIOLATES OR DOES NOT CONFORM OR COMPLY WITH THE PROVISIONS OF THIS PLAN APPLICABLE TO SUCH CLAIM OR INTEREST. THE PLAN INJUNCTION SHALL ALSO BE INCORPORATED INTO THE CONFIRMATION ORDER.

IN ADDITION TO THE FOREGOING, EXCEPT TO THE EXTENT NECESSARY TO ALLOW HCLOF, THE REORGANIZED DEBTOR AND BRIGADE TO EFFECTUATE THE RESET OF ONE OR MORE OF THE ACIS CLOS IN ACCORDANCE WITH SECTION 6.08 OF THE PLAN, PURSUANT TO SECTIONS 105(a), 1123(a)(5), 1123(b)(6), AND 1142(b) OF THE BANKRUPTCY CODE, THE ENJOINED PARTIES (DEFINED BELOW) ARE HEREBY ENJOINED FROM: (a) PROCEEDING WITH, EFFECTUATING, OR OTHERWISE TAKING (i) ANY ACTION IN FURTHERANCE OF ANY OPTIONAL REDEMPTION, CALL, OR OTHER LIQUIDATION OF THE ACIS CLOS PREVIOUSLY OR CURRENTLY ISSUED BY ANY SUCH PARTIES, AND (ii) ANY OTHER ATTEMPT TO LIQUIDATE THE ACIS CLOS BY ANY MEANS, (b) TRADING ANY ACIS CLO COLLATERAL IN FURTHERANCE OF ANY OPTIONAL REDEMPTION, CALL, OR OTHER LIQUIDATION OF THE ACIS CLOS, (c) EXERCISING ANY RIGHTS TO ASK OR DIRECT THE ISSUERS, CO-ISSUERS OR INDENTURE TRUSTEE TO PERFORM ANY ACTION IN RELATION TO THE ACIS CLOS THAT THE ENJOINED PARTIES ARE PROHIBITED FROM TAKING UNDER THE TERMS OF THE PLAN INJUNCTION, (d) INTERFERING IN ANY WAY WITH THE CAPITAL MARKETS PROCESS OF RESETTING ANY ACIS CLO, AND (e) SENDING, MAILING, OR OTHERWISE DISTRIBUTING ANY NOTICE TO THE HOLDERS OF THE NOTES IN THE ACIS CLOS IN CONNECTION WITH THE EFFECTUATION OF ANY OPTIONAL REDEMPTION, CALL, OR OTHER LIQUIDATION OF THE ACIS CLOS, UNTIL THE EARLIER TO OCCUR OF: (w) THE DATE UPON WHICH A FINAL ORDER IS ENTERED RESOLVING THE ESTATE'S AVOIDANCE CLAIMS AGAINST ALL ENJOINED PARTIES RELATING TO ACIS LP'S RIGHTS UNDER THE ALF PMA; (x) THE DATE UPON WHICH ALL ALLOWED CLAIMS AGAINST THE DEBTORS HAVE BEEN PAID IN FULL, (y) THE ENTRY OF AN ORDER BY THE BANKRUPTCY COURT FINDING THAT A MATERIAL DEFAULT HAS OCCURRED UNDER THE TERMS OF THE PLAN, OR (z) THE ENTRY OF A SUBSEQUENT ORDER BY THE BANKRUPTCY COURT PROVIDING OTHERWISE WITH RESPECT TO ONE OR MORE OF THE ACIS CLOS. FOR PURPOSES OF THIS PARAGRAPH, THE TERM "ENJOINED PARTIES" SHALL INCLUDE HIGHLAND, HCLOF, CLO HOLDCO, NEUTRA, HIGHLAND HCF, HIGHLAND CLOM, ANY AFFILIATES OF

Case 18-30264-sgj11 Doc 1244 Filed 09/07/21 Entered 09/07/21 11:59:05 Page 155 of
255
Case 18-30264-sgj11 Doc 664 Filed 10/25/18 Entered 10/25/18 12:45:46 Page 155 of 172

**HIGHLAND, AND THEIR RESPECTIVE EMPLOYEES, AGENTS, REPRESENTATIVES, TRANSFEREES, ASSIGNS, AND SUCCESSORS. FOR PURPOSES OF CLARIFICATION AND AVOIDANCE OF DOUBT, NOTHING IN THIS PARAGRAPH SHALL PRECLUDE ORDINARY DAY-TO-DAY TRADING OF THE COLLATERAL IN THE ACIS CLOS BY THE REORGANIZED DEBTOR.**

Notwithstanding anything to the contrary in the Plan: (a) third-party professionals employed by the Reorganized Debtor shall not be released or exculpated from any losses, claims, damages, liabilities, or expenses arising from their duties and services provided to the Reorganized Debtor; and (b) any third-party professionals employed by the Reorganized Debtor shall only be entitled to be indemnified by the Reorganized Debtor to the extent provided by applicable law.

Notwithstanding anything to the contrary in the Plan or Confirmation Order, nothing in the Plan or in the Confirmation Order shall discharge, release, enjoin or otherwise bar (i) any liability of the Debtors, the Estate, the Reorganized Debtor, or the Reorganized Debtor's assets ("Released Parties") to a Governmental Unit arising on or after the Confirmation Date with respect to events occurring after the Confirmation Date, provided that the Released Parties reserve the right to assert that any such liability is a Claim that arose on or prior to the Confirmation Date and constitutes a Claim that is subject to the deadlines for filing proofs of claim, (ii) any liability to a Governmental Unit that is not a Claim subject to the deadlines for filing proofs of Claim, (iii) any valid right of setoff or recoupment of a Governmental Unit, and (iv) any police or regulatory action by a Governmental Unit. In addition, nothing in the Plan or Confirmation Order discharges, releases, precludes or enjoins any environmental liability to any Governmental Unit that any Person other than the Released Parties would be subject to as the owner or operator of the property after the Effective Date. For the avoidance of any doubt, nothing in this paragraph shall be construed to limit the application of the Plan Injunction to any Claim which was subject to any bar date applicable to such Claim.

14.04. Setoffs. Except as otherwise expressly provided for in the Plan, pursuant to the Bankruptcy Code (including section 553 of the Bankruptcy Code), applicable nonbankruptcy law, or as may be agreed to by the holder of a Claim, the Reorganized Debtor may set off against any Allowed Claim and the Distributions to be made pursuant to the Plan on account of such Allowed Claim (before such Distribution is made), any Claims, rights, Estate Claims and Estate Defenses of any nature that the Debtors may hold against the holder of such Allowed Claim, to the extent such Claims, rights, Estate Claims and Estate Defenses against such holder have not been otherwise compromised or settled on or prior to the Effective Date (whether pursuant to the Plan or otherwise); provided, however, that neither the failure to effect such a setoff nor the allowance of any Claim or Interest pursuant to the Plan shall constitute a waiver or release of any such Claims, rights, Estate Claims and Estate Defenses that the Estate may possess against such Claimant. In no event shall any Claimant or Interest holder be entitled to setoff any Claim or Interest against any Claim, right, or Estate Claim of the Debtors without the consent of the Debtors or the Reorganized Debtor unless such holder files a motion with the Bankruptcy Court requesting the authority to perform such setoff notwithstanding any indication in any proof of Claim or otherwise that such holder asserts, has, or intends to preserve any right of setoff pursuant to section 553 of the Bankruptcy Code or otherwise.

14.05. Recoupment. Except as otherwise expressly provided for in the Plan, in no event shall any holder of Claims or Interests be entitled to recoup any Claim or Interest against any Claim, right, account receivable, or Estate Claim of the Debtors or the Reorganized Debtor unless (a) such holder actually provides notice thereof in writing to the Debtors or the Reorganized Debtor of its intent to perform a recoupment; (b) such notice includes the amount to be

recouped by the holder of the Claim or Interest and a specific description of the basis for the recoupment, and (c) the Debtors or the Reorganized Debtor have provided a written response to such Claim or Interest holder, stating unequivocally that the Debtors or the Reorganized Debtor consents to the requested recoupment.  The Debtors and the Reorganized Debtor shall have the right, but not the obligation, to seek an order of the Bankruptcy Court allowing any or all of the proposed recoupment.  In the absence of a written response from the Debtors or the Reorganized Debtor consenting to a recoupment or an order of the Bankruptcy Court authorizing a recoupment, no recoupment by the holder of a Claim or Interest shall be allowed.

14.06.  <u>Turnover</u>.  On the Effective Date, any rights of the Estate to compel turnover of Assets under applicable nonbankruptcy law and pursuant to section 542 or 543 of the Bankruptcy Code shall be deemed transferred to and vested in the Reorganized Debtor.

14.07.  <u>Automatic Stay</u>.  The automatic stay pursuant to section 362 of the Bankruptcy Code, except as previously modified by the Bankruptcy Court, shall remain in effect until the Effective Date of the Plan as to the Debtors, the Estate and all Assets.  As of the Effective Date, the automatic stay shall be replaced by the Plan Injunction.

## ARTICLE XV.
## JURISDICTION OF COURTS AND MODIFICATIONS TO THE PLAN

15.01.  <u>Retention of Jurisdiction</u>.  Pursuant to sections 1334 and 157 of title 28 of the United States Code, the Bankruptcy Court shall retain exclusive jurisdiction of all matters arising in, arising under, and related to the Chapter 11 Cases and the Plan, to the full extent allowed or permitted by applicable law, including without limitation for the purposes of invoking sections 105(a) and 1142 of the Bankruptcy Code, and for, among other things, the following purposes:

(a)     To hear and determine any and all objections to, or applications or motions concerning, the allowance of Claims or the allowance, classification, priority, compromise, estimation, or payment of any Administrative Expense;

(b)     To hear and determine any and all applications for payment of fees and expenses pursuant to this Plan to any Estate Professional pursuant to sections 330 or 503 of the Bankruptcy Code, or for payment of any other fees or expenses authorized to be paid or reimbursed under this Plan, and any and all objections thereto;

(c)     To hear and determine pending applications for the rejection, assumption, or assumption and assignment of Executory Contracts and Unexpired Leases and the allowance of Claims resulting therefrom, and to determine the rights of any party in respect to the assumption or rejection of any Executory Contract or Unexpired Lease;

(d)     To hear and determine any and all adversary proceedings, applications, or contested matters, including relating to the allowance of any Claim;

(e)     To hear and determine all controversies, disputes, and suits which may arise in connection with the execution, interpretation, implementation, consummation, or enforcement of the Plan or in connection with the enforcement of any remedies made available under the Plan, including without limitation, (i) adjudication of all rights, interests or disputes relating to any of the Assets, (ii) the valuation of all Collateral, (iii) the determination of the validity of any Lien or claimed right of offset or recoupment; and (iv) determinations of Objections to Contested Claims;

(f)     To liquidate and administer any disputed, contingent, or unliquidated Claims, including the Allowance of all Contested Claims;

(g)     To administer Distributions to holders of Allowed Claims as provided herein;

(h)     To enter and implement such orders as may be appropriate in the event the Confirmation Order is for any reason stayed, reversed, revoked, modified, or vacated;

(i)     To enable the Reorganized Debtor to prosecute any and all proceedings which may be brought to set aside transfers, Liens or encumbrances and to recover any transfers, Assets, properties or damages to which the Reorganized Debtor may be entitled under applicable provisions of the Bankruptcy Code or any other federal, state or local laws, including causes of action, controversies, disputes and conflicts between the Reorganized Debtor and any other party, including but not limited to, any causes of action or Objections to Claims, preferences or fraudulent transfers and obligations or equitable subordination;

(j)     To consider any modification of the Plan pursuant to section 1127 of the Bankruptcy Code, to cure any defect or omission, or reconcile any inconsistency in any order of the Bankruptcy Court, including, without limitation the Confirmation Order;

(k)     To enforce the discharge and Plan Injunction against any Person;

(l)     To enter and implement all such orders as may be necessary or appropriate to execute, interpret, construe, implement, consummate, or enforce the terms and conditions of this Plan and the transactions required or contemplated pursuant thereto;

(m)     To hear and determine any motion or application which the Reorganized Debtor is required or allowed to commence before the Bankruptcy Court pursuant to this Plan;

(n)     To hear and determine any other matter not inconsistent with the Bankruptcy Code and title 28 of the United States Code that may arise in connection with or related to the Plan;

(o)     To determine proceedings pursuant to section 505 of the Bankruptcy Code;

(p)     To enter a final decree closing the Chapter 11 Cases; and

(q)     To determine any other matter or dispute relating to the Estate, the Estate Claims, the Estate Defenses, the Assets, or the Distributions by the Reorganized Debtor.

15.02.  <u>Abstention and Other Courts</u>.  If the Bankruptcy Court abstains from exercising, or declines to exercise, jurisdiction or is otherwise without jurisdiction over any matter arising out of or relating to the Chapter 11 Cases, this Article of the Plan shall have no effect upon and shall not control, prohibit or limit the exercise of jurisdiction by any other court having competent jurisdiction with respect to such matter.

15.03.  <u>Non-Material Modifications</u>.  The Reorganized Debtor may, with the approval of the Bankruptcy Court and without notice to all holders of Claims and Interests, correct any defect, omission, or inconsistency in the Plan in such manner and to such extent as may be necessary or desirable.  The Reorganized Debtor may undertake such nonmaterial modification pursuant

to this section insofar as it does not adversely change the treatment of the Claim of any Creditor or the Interest of any Interest holder who has not accepted in writing the modification.

15.04. <u>Material Modifications</u>.  Modifications of this Plan may be proposed in writing by the Chapter 11 Trustee at any time before confirmation, provided that this Plan, as modified, meets the requirements of sections 1122 and 1123 of the Bankruptcy Code, and the Chapter 11 Trustee shall have complied with section 1125 of the Bankruptcy Code.  This Plan may be modified at any time after confirmation and before its Substantial Consummation, provided that the Plan, as modified, meets the requirements of sections 1122 and 1123 of the Bankruptcy Code, and the Bankruptcy Court, after notice and a hearing, confirms the Plan, as modified, under section 1129 of the Bankruptcy Code, and the circumstances warrant such modification.  A holder of a Claim or Interest that has accepted or rejected this Plan shall be deemed to have accepted or rejected, as the case may be, such Plan as modified, unless, within the time fixed by the Bankruptcy Court, such holder changes its previous acceptance or rejection.

## ARTICLE XVI.
## <u>MISCELLANEOUS PROVISIONS</u>

16.01. <u>Severability</u>.  Should the Bankruptcy Court determine any provision of the Plan is unenforceable either on its face or as applied to any Claim or Interest or transaction, the Reorganized Debtor may modify the Plan so that any such provision shall not be applicable to the holder of any Claim or Interest.  Such a determination of unenforceability shall not (a) limit or affect the enforceability and operative effect of any other provision of the Plan or (b) require the resolicitation of any acceptance or rejection of the Plan.

16.02. <u>Oral Agreements; Modification of Plan; Oral Representations or Inducements</u>.  The terms of the Plan, Disclosure Statement and Confirmation Order may only be amended in writing and may not be changed, contradicted or varied by any oral statement, agreement, warranty or representation.  None of the Debtors, any representative of the Estate, including Robin Phelan in his capacity as Chapter 11 Trustee, nor their attorneys have made any representation, warranty, promise or inducement relating to the Plan or its confirmation except as expressly set forth in this Plan, the Disclosure Statement, or the Confirmation Order or other order of the Bankruptcy Court.

16.03. <u>Waiver</u>.  The Reorganized Debtor shall not be deemed to have waived any right, power or privilege pursuant to the Plan unless the waiver is in writing and signed by the Reorganized Debtor.  There shall be no waiver by implication, course of conduct or dealing, or through any delay or inaction by the Reorganized Debtor, of any right pursuant to the Plan, including the provisions of this anti-waiver section.  The waiver of any right under the Plan shall not act as a waiver of any other or subsequent right, power or privilege.

16.04. <u>Notice</u>.  Any notice or communication required or permitted by the Plan shall be given, made or sent as follows:

     (a)     If to a Creditor, notice may be given as follows: (i) if the Creditor has not filed a proof of Claim, then to the address reflected in the Schedules, or (ii) if the Creditor has filed a proof of Claim, then to the address reflected in the proof of Claim.

     (b)     If to the Reorganized Debtor, notice shall be sent to the following addresses:

| Jeff P. Prostok | Josh Terry |
|---|---|
| Suzanne K. Rosen | c/o Brian P. Shaw |
| Forshey Prostok LLP | Rogge Dunn Group, PC |
| 777 Main Street, Suite 1290 | 1201 Elm Street, Suite 5200 |
| Fort Worth, Texas 76102 | Dallas, Texas 75270 |

(c)     Any Creditor desiring to change its address for the purpose of notice may do so by giving notice to the Reorganized Debtor of its new address in accordance with the terms of this section.

(d)     Any notice given, made or sent as set forth above shall be effective upon being (i) deposited in the United States Mail, postage prepaid, addressed to the addressee at the address as set forth above; (ii) delivered by hand or messenger to the addressee at the address set forth above; (iii) telecopied to the addressee as set forth above, with a hard confirmation copy being immediately sent through the United States Mail; or (iv) delivered for transmission to an expedited or overnight delivery service such as FedEx.

16.05.  <u>Compliance with All Applicable Laws</u>.  If notified by any governmental authority that it is in violation of any applicable law, rule, regulation, or order of such governmental authority relating to its business, the Reorganized Debtor shall comply with such law, rule, regulation, or order; <u>provided, however</u>, that nothing contained herein shall require such compliance if the legality or applicability of any such requirement is being contested in good faith in appropriate proceedings and, if appropriate, an adequate Reserve has been set aside on the books of the Reorganized Debtor.

16.06.  <u>Duties to Creditors; Exculpation</u>.  Neither the Chapter 11 Trustee nor any agent, representative, accountant, financial advisor, attorney, shareholder, officer, affiliate, member or employee of the Chapter 11 Trustee or the Debtors, including but not limited to Estate Professionals (collectively, the "<u>Exculpated Parties</u>"), shall ever owe any duty to any Person (including any Creditor) other than the duties owed to the Debtors' bankruptcy Estate, for any act, omission, or event in connection with, or arising out of, or relating to, any of the following: (a) the Debtors' Chapter 11 Cases, including all matters or actions in connection with or relating to the administration of the Estate, (b) the Plan, including the proposal, negotiation, confirmation and consummation of the Plan, or (c) any act or omission relating to the administration of the Plan after the Effective Date.  All such Exculpated Parties shall be fully exculpated and released from any and all claims and causes of action by any Person, known or unknown, in connection with, or arising out of, or relating to, any of the following:  (x) the Debtors' Chapter 11 Cases, including all matters or actions in connection with or relating to the administration of the Estate, (y) the Plan, including the proposal, negotiation, confirmation and consummation of the Plan, or (z) any act or omission relating to the administration of the Plan after the Effective Date, except for claims and causes of action arising out of such Exculpated Party's gross negligence or willful misconduct.

16.07.  <u>Binding Effect</u>.  The Plan shall be binding upon, and shall inure to the benefit of, the Reorganized Debtor, the holders of the Claims or Liens, and their respective successors-in-interest and assigns.

16.08.  <u>Governing Law, Interpretation</u>.  Unless a rule of law or procedure supplied by federal law (including the Bankruptcy Code and Bankruptcy Rules) is applicable, the internal laws of the State of Texas shall govern the construction and implementation of the Plan and any Plan

Documents without regard to conflicts of law.  The Plan shall control any inconsistent term or provision of any other Plan Documents.

16.09.  <u>Payment of Statutory Fees</u>.   All accrued U.S. Trustee Fees as of the Confirmation Date shall be paid by the Reorganized Debtor on or as soon as practicable after the Effective Date, and thereafter shall be paid by the Reorganized Debtor as such statutory fees become due and payable.

16.10.  <u>Filing of Additional Documents</u>.  On or before Substantial Consummation of the Plan, the Reorganized Debtor may file with the Bankruptcy Court such agreements and other documents as may be necessary or appropriate to effectuate and further evidence the terms and conditions of the Plan.

16.11.  <u>Computation of Time</u>.  Bankruptcy Rule 9006 shall apply to the calculation of all time periods pursuant to this Plan.  If the final day for any Distribution, performance, act or event under the Plan is not a Business Day, then the time for making or performing such Distribution, performance, act or event shall be extended to the next Business Day.  Any payment or Distribution required to be made hereunder on a day other than a Business Day shall be due and payable on the next succeeding Business Day.

16.12.  <u>Elections by the Reorganized Debtor</u>.  Any right of election or choice granted to the Reorganized Debtor under this Plan may be exercised, at the Reorganized Debtor's election, separately as to each Claim, Creditor or Person.

16.13.  <u>Release of Liens</u>.  Except as otherwise expressly provided in this Plan or the Confirmation Order, all Liens against any of the Assets transferred to and vested in the Reorganized Debtor shall be deemed to be released, terminated and nullified without the necessity of any order by the Bankruptcy Court other than the Confirmation Order.

16.14.  <u>Rates</u>.  The Plan does not provide for the change of any rate that is within the jurisdiction of any governmental regulatory commission after the occurrence of the Effective Date.

16.15.  <u>Compliance with Tax Requirements</u>.  In connection with the Plan, the Reorganized Debtor shall comply with all withholding and reporting requirements imposed by federal, state and local Taxing Authorities and all Distributions under the Plan shall be subject to such withholding and reporting requirements.  Notwithstanding the above, each holder of an Allowed Claim or Interest that is to receive a Distribution under the Plan shall have the sole and exclusive responsibility for the satisfaction and payment of any tax obligations imposed by any governmental unit, including income, withholding and other tax obligations, on account of such Distribution under the Plan.

16.16.  <u>Notice of Occurrence of the Effective Date</u>. Promptly after occurrence of the Effective Date, the Reorganized Debtor, as directed by the Bankruptcy Court, shall serve on all known parties-in-interest and holders of Claims and Interests, notice of the occurrence of the Effective Date.

16.17.  <u>Notice of Entry of Confirmation Order</u>.  Promptly after entry of the Confirmation Order, the Chapter 11 Trustee, as directed by the Bankruptcy Court in the Confirmation Order, shall serve on all known parties-in-interest and holders of Claims and Interests, notice of entry of the Confirmation Order.

Case 18-30264-sgj11 Doc 1244 Filed 09/07/21 Entered 09/07/21 11:59:05 Page 161 of
Case 18-30264-sgj11 Doc 664 Filed 10/25/18 Entered 10/25/18 18:24:46 Page 161 of
255

Dated:  October 25, 2018.

Respectfully submitted,


ACIS CAPITAL MANAGEMENT, L.P.


By:  /s/ *Robin Phelan*
      Robin Phelan
      Chapter 11 Trustee


ACIS CAPITAL MANAGMENET GP, LLC


By:/s/ *Robin Phelan*
      Robin Phelan
      Chapter 11 Trustee

| APPROVED: | APPROVED: |
|---|---|
| /s/ *Jeff P. Prostok* | /s/ *Rahkee V. Patel* |
| Jeff P. Prostok –  State Bar No. 16352500 | Rakhee V. Patel – State Bar No. 00797213 |
| J. Robert Forshey – State Bar No. 07264200 | Phillip Lamberson – State Bar No. 00794134 |
| Suzanne K. Rosen –  State Bar No. 00798518 | Joe Wielebinski – State Bar No. 21432400 |
| Matthew G. Maben – State Bar No. 24037008 | Annmarie Chiarello – State Bar No. 24097496 |
| **FORSHEY & PROSTOK LLP** | **WINSTEAD PC** |
| 777 Main St., Suite 1290 | 500 Winstead Building |
| Ft. Worth, TX 76102 | 2728 N. Harwood Street |
| Telephone: (817) 877-8855 | Dallas, Texas 75201 |
| Facsimile: (817) 877-4151 | Telephone: (214) 745-5400 |
| jprostok@forsheyprostok.com | Facsimile:  (214) 745-5390 |
| bforshey@forsheyprostok.com | rpatel@winstead.com |
| srosen@forsheyprostok.com | plamberson@winstead.com |
| mmaben@forsheyprostok.com | jwielebinski@winstead.com |
|  | achiarello@winstead.com |
| **COUNSEL FOR ROBIN PHELAN, CHAPTER 11 TRUSTEE** | **SPECIAL COUNSEL FOR ROBIN PHELAN, CHAPTER 11 TRUSTEE** |


L:\JPROSTOK\ACIS Capital Management (Trustee Rep)\Plan and Disclosure Statement\Third Amended Joint Plan 10.25.18.docx

# EXHIBIT A

## TO THIRD AMENDED JOINT PLAN FOR ACIS CAPITAL MANAGEMENT, LP AND ACIS CAPITAL MANAGEMENT GP, LLC

### [ESTATE CLAIMS]

Case 18-30264-sgj11 Doc 1244 Filed 02/07/21 Entered 02/07/21 11:59:05 Page 163 of
Case 18-30264-sgj11 Doc 664 Filed 10/25/18 Entered 10/25/18 12:45:05 Page 36 of 72
255

**EXHIBIT "A"**
**to**
**Joint Plan for Acis Capital Management, LP and Acis Capital Management GP, LLC**

1.　　Defined Terms.　This Exhibit "A" constitutes an integral part of the Plan of which it is a part.　Defined terms in the Plan are to be given the same meaning in this Exhibit "A".　The rules of construction set forth in Article I.B. of the Plan shall likewise apply to this Exhibit "A".

2.　　Estate Claims Reserved, Retained and Preserved.　All Estate Claims are hereby reserved, retained and preserved, and shall all be transferred to, and vested in, the Reorganized Debtor pursuant to this Plan, and shall include without limitation all of the Estate Claims described below.　In reserving, retaining, and preserving Estate Claims against any named Person or category of Persons, it is the intent of this Plan to so reserve, retain, and preserve any and all Estate Claim against each such Person or category of Persons, including all such Estate Claims pursuant to any applicable common law, based on any contract or agreement or based upon any law, statute or regulation of any political entity, including the United States and any state or political subdivision thereof, as well as all applicable remedies, whether legal or equitable.　Without limiting the generality of the foregoing, the reservation, retention, and preservation of Estate Claims against any Person, and the term "Estate Claims," shall encompass all Estate Claims against any such Person, including without limitation, all such Estate Claims for breach of contract, all rights to enforce any contract, any form of estoppel, fraud, constructive fraud, abuse of process, malicious prosecution, defamation, libel, slander, conversion, trespass, intentional infliction of emotional distress or other harm, negligence, gross negligence, breach of any duty owed under either applicable law or any contract, breach of any fiduciary duty or duty of loyalty or due care, aiding and/or abetting breach of fiduciary duty, aiding and/or abetting breach of duty of loyalty or due care, alter ego, veil piercing, self-dealing, usurpation of corporate opportunity, ultra vires, turnover of Estate Assets, unauthorized use of Estate Assets, including intellectual property rights or Assets owned by the Debtors or Chapter 11 Trustee, quantum merit, tortious interference, duress, unconscionability, undue influence, and unjust enrichment, as well as any cause of action for conspiracy to commit any unlawful act, aiding and/or abetting any such unlawful act, or assisting, encouraging, and/or participating in any such unlawful act, or claims arising from or relating to the filing of the involuntary bankruptcy petitions against the Debtors.

3.　　Highland Claims.　All Estate Claims against Highland are reserved, retained and preserved for the benefit of the Estate and Reorganized Debtor, including without limitation all such Estate Claims asserted by the Chapter 11 Trustee in Adversary Proceeding No. 18-03078-sgj (the "Highland Adversary") and Adversary Proceeding No. 18-03212-sgj (the "Trustee's Adversary").　The Estate Claims against Highland shall include all Estate Claims set forth in paragraph 2 above, including without limitation, the following:

　　　　(a)　　All such Claims asserted by the Chapter 11 Trustee or Estate in, or which could be asserted based on the facts or transactions alleged in, the Highland Adversary;

　　　　(b)　　All such Claims asserted by the Chapter 11 Trustee or Estate in, or which could be asserted based on the facts or transactions alleged in, the Trustee's Adversary;

　　　　(c)　　All such Claims and Defenses asserted by the Chapter 11 Trustee or Estate, or which could be asserted by the Chapter 11 Trustee or Estate, based on the facts or transactions alleged in any other adversary proceedings or Claim Objections filed by the Chapter 11 Trustee or Estate;

(d)      All Avoidance Actions against Highland, including any claims to avoid and recover amounts transferred by the Debtors to Highland under the Shared Services Agreement or Sub-Advisory Agreement;

(e)      All Claims for breach of the Shared Services Agreement or Sub-Advisory Agreement;

(f)      All Claims against Highland for amounts paid by the Debtors to Highland under the Shared Services Agreement and Sub-Advisory Agreement, including any Claim that Highland overcharged Acis LP for services under such agreements, charged excessive fees in violation of Acis LP's limited partnership agreement and/or Acis GP's limited liability company agreement, and/or that the Shared Services Agreement and Sub-Advisory Agreement or any related or predecessor agreements are void or voidable based on ultra vires or any other theories of avoidance and recovery, including turnover, conversion and Avoidance Actions under the Bankruptcy Code;

(g)      All Claims for breach of the PMAs or the Indentures;

(h)      All Claims for breach of fiduciary duty or duty of loyalty or due care owed to the Debtors or Chapter 11 Trustee;

(i)      All Claims for aiding and/or abetting breach of fiduciary duty, breach of duty loyalty or due care, or any other unlawful act;

(j)      All Clams for usurpation of a corporate opportunity belonging to either of the Debtors, including in relation to Acis CLO 2017-7, Ltd and any other Acis CLOs;

(k)      All claims for tortious interference, including in relation to Universal-Investment-Luxembourg S.A. and BayVK R2 Lux S.A., SICAV-FIS;

(l)      All Claims against Highland for the turnover of Estate Assets, including Estate property that the Chapter 11 Trustee may use, sell or lease under section 363 of the Bankruptcy Code including, without limitation, any intellectual property rights or Assets owned by the Debtors or Estate, as well as the turnover of any books, documents, records and papers relating to the Debtors' property or financial affairs;

(m)      All Claims against Highland for the unauthorized use of Estate Assets including, without limitation, any intellectual property rights or Assets owned by the Debtors or Estate;

(n)      All Claims, rights or remedies for Equitable Subordination or Recharacterization of any Claim by Highland against the Debtors, Chapter 11 Trustee, or Estate;

(o)      All Claims based on alter ego or rights to pierce the corporate veil of Acis LP as to any Person, including as against Highland or any Affiliates thereof, James D. Dondero, Mark K. Okada, or any other officers, directors, equity interest holders, or Persons otherwise in control of Acis LP;

(p)      All Claims based on alter ego or rights to pierce the corporate veil of Highland as to any Person, including as against any Affiliates of Highland, James D. Dondero, Mark K. Okada, or any other officers, directors, equity interest holders, or Persons otherwise in

control of Highland, and,

(q)     All Claims for conspiracy to commit any unlawful act, aiding and/or abetting any such unlawful act, or assisting, encouraging, and/or participating in any such unlawful act.

4.     <u>HCLOF Claims</u>.  All Estate Claims against HCLOF are reserved, retained and preserved for the benefit of the Estate and Reorganized Debtor, including without limitation all such Estate Claims asserted by the Chapter 11 Trustee in the Highland Adversary and the Trustee's Adversary.  The Estate Claims against HCLOF shall include all Estate Claims set forth in paragraph 2 above, including without limitation, the following:

(a)     All such Claims against HCLOF asserted by the Chapter 11 Trustee or Estate in, or which could be asserted based on the facts or transactions alleged in, the Highland Adversary;

(b)     All such Claims against HCLOF asserted by the Chapter 11 Trustee or Estate in, or which could be asserted based on the facts or transactions alleged in, the Trustee's Adversary;

(c)     All such Claims and Defenses asserted by the Chapter 11 Trustee or Estate, or which could be asserted by the Chapter 11 Trustee or Estate, based on the facts or transactions alleged in any other adversary proceedings or Claim Objections filed by the Chapter 11 Trustee or Estate;

(d)     All Avoidance Actions against HCLOF;

(e)     All Claims for breach of the PMAs or the Indentures;

(f)     All Claims for breach of fiduciary duty or duty of loyalty or due care owed to the Debtors or Chapter 11 Trustee;

(g)     All Claims for aiding and/or abetting breach of fiduciary duty, breach of duty loyalty or due care, or any other unlawful act;

(h)     All Clams for usurpation of a corporate opportunity belonging to either of the Debtors, including in relation to Acis CLO 2017-7, Ltd and any other Acis CLOs;

(i)     All Claims against HCLOF for the turnover of Estate Assets, including Estate property that the Chapter 11 Trustee may use, sell or lease under section 363 of the Bankruptcy Code including, without limitation, any intellectual property rights or Assets owned by the Debtors or Estate, as well as the turnover of any books, documents, records and papers relating to the Debtors' property or financial affairs;

(j)     All Claims against HCLOF for the unauthorized use of Estate Assets including, without limitation, any intellectual property rights or Assets owned by the Debtors or Estate;

(k)     All Claims, rights or remedies for Equitable Subordination or Recharacterization of any Claim by HCLOF against the Debtors, Chapter 11 Trustee, or Estate;

(l)     All Claims based on alter ego or rights to pierce the corporate veil of

Case 18-30264-sgj11 Doc 1634 Filed 09/07/21 Entered 09/07/21 11:59:05 Page 166 of
Case 18-30264-sgj11 Doc 664 Filed 10/25/18 Entered 10/25/18 18:24:46 Page 6 of 72
255

HCLOF as to any Person, including as against any Affiliates of HCLOF or Highland, William Scott, Heather Bestwick, or any other officers, directors, equity interest holders, or Persons otherwise in control of HCLOF; and,

(m)     All Claims for conspiracy to commit any unlawful act, aiding and/or abetting any such unlawful act, or assisting, encouraging, and/or participating in any such unlawful act.

5.     <u>Highland HCF Advisor, Ltd. Claims</u>.  All Estate Claims against Highland HCF Advisor, Ltd. ("<u>Highland HCF</u>") are reserved, retained and preserved for the benefit of the Estate and Reorganized Debtor, including without limitation all such Estate Claims asserted by the Chapter 11 Trustee in the Highland Adversary.  The Estate Claims against Highland HCF shall include all Estate Claims set forth in paragraph 2 above, including without limitation, the following:

(a)     All such Claims against Highland HCF asserted by the Chapter 11 Trustee or Estate in, or which could be asserted based on the facts or transactions alleged in, the Highland Adversary;

(b)     All such Claims against Highland HCF asserted by the Chapter 11 Trustee or Estate in, or which could be asserted based on the facts or transactions alleged in, the Trustee's Adversary;

(c)     All such Claims and Defenses asserted by the Chapter 11 Trustee or Estate, or which could be asserted by the Chapter 11 Trustee or Estate, based on the facts or transactions alleged in any other adversary proceedings or Claim Objections filed by the Chapter 11 Trustee or Estate;

(d)     All Avoidance Actions against Highland HCF;

(e)     All Claims for breach of fiduciary duty or duty of loyalty or due care owed to the Debtors or Chapter 11 Trustee;

(f)     All Claims for aiding and/or abetting breach of fiduciary duty, breach of duty loyalty or due care, or any other unlawful act;

(g)     All Clams for usurpation of a corporate opportunity belonging to either of the Debtors, including in relation to Acis CLO 2017-7, Ltd and any other Acis CLOs;

(h)     All Claims against Highland HCF for the turnover of Estate Assets, including Estate property that the Chapter 11 Trustee may use, sell or lease under section 363 of the Bankruptcy Code including, without limitation, any intellectual property rights or Assets owned by the Debtors or Estate, as well as the turnover of any books, documents, records and papers relating to the Debtors' property or financial affairs;

(i)     All Claims against Highland HCF for the unauthorized use of Estate Assets including, without limitation, any intellectual property rights or Assets owned by the Debtors or Estate;

(j)     All Claims, rights or remedies for Equitable Subordination or Recharacterization of any Claim by Highland HCF against the Debtors, Chapter 11 Trustee, or Estate;

(k)     All Claims based on alter ego or rights to pierce the corporate veil of Highland HCF as to any Person, including as against any Affiliates of Highland HCF or Highland, or any other officers, directors, equity interest holders, or Persons otherwise in control of Highland HCF; and,

(l)     All Claims for conspiracy to commit any unlawful act, aiding and/or abetting any such unlawful act, or assisting, encouraging, and/or participating in any such unlawful act.

6.     <u>Highland CLO Management, Ltd. Claims</u>.  All Estate Claims against Highland CLO Management, Ltd. ("<u>Highland CLOM</u>") are reserved, retained and preserved for the benefit of the Estate and Reorganized Debtor, including without limitation all such Estate Claims asserted by the Chapter 11 Trustee in the Highland Adversary.  The Estate Claims against Highland CLOM shall include all Estate Claims set forth in paragraph 2 above, including without limitation the following:

(a)     All such Claims against Highland CLOM asserted by the Chapter 11 Trustee or Estate in, or which could be asserted based on the facts or transactions alleged in, the Highland Adversary;

(b)     All such Claims against Highland CLOM asserted by the Chapter 11 Trustee or Estate in, or which could be asserted based on the facts or transactions alleged in, the Trustee's Adversary;

(c)     All such Claims and Defenses asserted by the Chapter 11 Trustee or Estate, or which could be asserted by the Chapter 11 Trustee or Estate, based on the facts or transactions alleged in any other adversary proceedings or Claim Objections filed by the Chapter 11 Trustee or Estate;

(d)     All Avoidance Actions against Highland CLOM;

(e)     All Claims for breach of fiduciary duty or duty of loyalty or due care owed to the Debtors or Chapter 11 Trustee;

(f)     All Claims for aiding and/or abetting breach of fiduciary duty, breach of duty loyalty or due care, or any other unlawful act;

(g)     All Clams for usurpation of a corporate opportunity belonging to either of the Debtors, including in relation to Acis CLO 2017-7, Ltd and any other Acis CLOs;

(h)     All Claims against Highland CLOM for the turnover of Estate Assets, including Estate property that the Chapter 11 Trustee may use, sell or lease under section 363 of the Bankruptcy Code including, without limitation, any intellectual property rights or Assets owned by the Debtors or Estate, as well as the turnover of any books, documents, records and papers relating to the Debtors' property or financial affairs;

(i)     All Claims against Highland CLOM for the unauthorized use of Estate Assets including, without limitation, any intellectual property rights or Assets owned by the Debtors or Estate;

(j)     All Claims, rights or remedies for Equitable Subordination or Recharacterization of any Claim by Highland CLOM against the Debtors, Chapter 11 Trustee, or

Case 18-30264-sgj11 Doc 1244 Filed 09/07/21 Entered 09/07/21 11:59:05 Page 168 of
Case 18-30264-sgj11 Doc 664 Filed 10/25/18 Entered 10/25/18 12:45:46 Page 36 of 72
255

Estate;

(k) All Claims based on alter ego or rights to pierce the corporate veil of Highland CLOM as to any Person, including as against any Affiliates of Highland CLOM or Highland, or any other officers, directors, equity interest holders, or Persons otherwise in control of Highland CLOM; and,

(l) All Claims for conspiracy to commit any unlawful act, aiding and/or abetting any such unlawful act, or assisting, encouraging, and/or participating in any such unlawful act.

7. **CLO Holdco, Ltd. Claims.** All Estate Claims against CLO Holdco, Ltd. ("CLO Holdco") are reserved, retained and preserved for the benefit of the Estate and Reorganized Debtor, including without limitation all such Estate Claims asserted by the Chapter 11 Trustee in the Trustee's Adversary. The Estate Claims against CLO Holdco shall include all Estate Claims set forth in paragraph 2 above, including without limitation, the following:

(a) All such Claims against CLO Holdco asserted by the Chapter 11 Trustee or Estate in, or which could be asserted based on the facts or transactions alleged in, the Highland Adversary;

(b) All such Claims against CLO Holdco asserted by the Chapter 11 Trustee or Estate in, or which could be asserted based on the facts or transactions alleged in, the Trustee's Adversary;

(c) All such Claims and Defenses asserted by the Chapter 11 Trustee or Estate, or which could be asserted by the Chapter 11 Trustee or Estate, based on the facts or transactions alleged in any other adversary proceedings or Claim Objections filed by the Chapter 11 Trustee or Estate;

(d) All Avoidance Actions against CLO Holdco;

(e) All Claims for breach of fiduciary duty or duty of loyalty or due care owed to the Debtors or Chapter 11 Trustee;

(f) All Claims for aiding and/or abetting breach of fiduciary duty, breach of duty loyalty or due care, or any other unlawful act;

(g) All Clams for usurpation of a corporate opportunity belonging to either of the Debtors, including in relation to Acis CLO 2017-7, Ltd and any other Acis CLOs;

(h) All Claims against CLO Holdco for the turnover of Estate Assets, including Estate property that the Chapter 11 Trustee may use, sell or lease under section 363 of the Bankruptcy Code including, without limitation, any intellectual property rights or Assets owned by the Debtors or Estate, as well as the turnover of any books, documents, records and papers relating to the Debtors' property or financial affairs;

(i) All Claims against CLO Holdco for the unauthorized use of Estate Assets including, without limitation, any intellectual property rights or Assets owned by the Debtors or Estate;

(j)     All Claims, rights or remedies for Equitable Subordination or Recharacterization of any Claim by Highland against the Debtors, Chapter 11 Trustee, or Estate;

(k)     All Claims based on alter ego or rights to pierce the corporate veil of CLO Holdco as to any Person, including as against any Affiliates of CLO Holdco or Highland, or any other officers, directors, equity interest holders, or Persons otherwise in control of CLO Holdco; and,

(l)     All Claims for conspiracy to commit any unlawful act, aiding and/or abetting any such unlawful act, or assisting, encouraging, and/or participating in any such unlawful act.

8.     <u>Neutra, Ltd. Claims</u>.  All Estate Claims against Neutra, Ltd. ("<u>Neutra</u>") are reserved, retained and preserved for the benefit of the Estate and Reorganized Debtor, including without limitation all such Estate Claims asserted by the Chapter 11 Trustee in the Trustee's Adversary.  The Estate Claims against Neutra shall include all Estate Claims set forth in paragraph 2 above, including without limitation the following:

(a)     All such Claims against Neutra asserted by the Chapter 11 Trustee or Estate in, or which could be asserted based on the facts or transactions alleged in, the Highland Adversary;

(b)     All such Claims against Neutra asserted by the Chapter 11 Trustee or Estate in, or which could be asserted based on the facts or transactions alleged in, the Trustee's Adversary;

(c)     All such Claims and Defenses asserted by the Chapter 11 Trustee or Estate, or which could be asserted by the Chapter 11 Trustee or Estate, based on the facts or transactions alleged in any other adversary proceedings or Claim Objections filed by the Chapter 11 Trustee or Estate;

(d)     All Avoidance Actions against Neutra;

(e)     All Claims for breach of fiduciary or duty of loyalty or due care owed to the Debtors or Chapter 11 Trustee;

(f)     All Claims for aiding and/or abetting breach of fiduciary duty, breach of duty loyalty or due care, or any other unlawful act;

(g)     All Clams for usurpation of a corporate opportunity belonging to either of the Debtors, including in relation to Acis CLO 2017-7, Ltd and any other Acis CLOs;

(h)     All Claims against Neutra for the turnover of Estate Assets, including Estate property that the Chapter 11 Trustee may use, sell or lease under section 363 of the Bankruptcy Code including, without limitation, any intellectual property rights or Assets owned by the Debtors or Estate, as well as the turnover of any books, documents, records and papers relating to the Debtors' property or financial affairs;

(i)     All Claims against Neutra for the unauthorized use of Estate Assets including, without limitation, any intellectual property rights or Assets owned by the Debtors or Estate;

(j)    All Claims, rights or remedies for Equitable Subordination or Recharacterization of any Claim by Neutra against the Debtors, Chapter 11 Trustee, or Estate;

(k)    All Claims based on alter ego or rights to pierce the corporate veil of Acis LP as to any Person, including as against Neutra, Highland, or any Affiliates thereof, James D. Dondero, Mark K. Okada, or any other officers, directors, equity interest holders, or Persons otherwise in control of Acis LP;

(l)    All Claims based on alter ego or rights to pierce the corporate veil of Neutra as to any Person, including as against any Affiliates of Neutra or Highland, or any other officers, directors, equity interest holders, or Persons otherwise in control of Neutra; and,

(m)    All Claims for conspiracy to commit any unlawful act, aiding and/or abetting any such unlawful act, or assisting, encouraging, and/or participating in any such unlawful act.

9.    <u>Claims against Issuers, Co-Issuers and Indenture Trustee</u>.  All Estate Claims against CLO-3, CLO-4, CLO-5, and CLO-6 (collectively, the "<u>Issuers</u>"), Acis CLO 2014-3 LLC, Acis CLO 2014-4 LLC, Acis CLO 2014-5 LLC, and Acis CLO 2015-6 LLC (collectively, the "<u>Co-Issuers</u>"), and the Indenture Trustee are reserved, retained and preserved for the benefit of the Estate and Reorganized Debtor, including without limitation all such Estate Claims asserted by the Chapter 11 Trustee in the Trustee's Adversary.  The Estate Claims against the Issuers, Co-Issuers and/or Indenture Trustee shall include all Estate Claims set forth in paragraph 2 above, including without limitation the following:

(a)    All such Claims against the Issuers, Co-Issuers, and/or Indenture Trustee asserted by the Chapter 11 Trustee or Estate in, or which could be asserted based on the facts or transactions alleged in, the Highland Adversary;

(b)    All such Claims against the Issuers, Co-Issuers, and/or Indenture Trustee asserted by the Chapter 11 Trustee or Estate in, or which could be asserted based on the facts or transactions alleged in, the Trustee's Adversary;

(c)    All such Claims and Defenses asserted by the Chapter 11 Trustee or Estate, or which could be asserted by the Chapter 11 Trustee or Estate, based on the facts or transactions alleged in any other adversary proceedings or Claim Objections filed by the Chapter 11 Trustee or Estate;

(d)    All Avoidance Actions against the Issuers, Co-Issuers and/or Indenture Trustee;

(e)    All Claims for breach of the Indentures, PMAs or any other agreements between Acis LP and the Issuers, Co-Issuers, and/or Indenture Trustee;

(f)    All Claims for breach of fiduciary duty or duty of loyalty or due care owed to the Debtors or Chapter 11 Trustee;

(g)    All Claims for aiding and/or abetting breach of fiduciary duty, breach of duty loyalty or due care, or any other unlawful act;

(h)    All Clams for usurpation of a corporate opportunity belonging to either of the Debtors, including in relation to Acis CLO 2017-7, Ltd and any other Acis CLOs;

(i)     All Claims against the Issuers, Co-Issuers and/or Indenture Trustee for the turnover of Estate Assets, including Estate property that the Chapter 11 Trustee may use, sell or lease under section 363 of the Bankruptcy Code including, without limitation, any intellectual property rights or Assets owned by the Debtors or Estate, as well as the turnover of any books, documents, records and papers relating to the Debtors' property or financial affairs;

(j)     All Claims against the Issuers, Co-Issuers and/or Indenture Trustee for the unauthorized use of Estate Assets including, without limitation, any intellectual property rights or Assets owned by the Debtors or Estate;

(k)     All Claims, rights or remedies for Equitable Subordination or Recharacterization of any Claim by the Issuers or Co-Issuers against the Debtors, Chapter 11 Trustee, or Estate; and,

(l)     All Claims for conspiracy to commit any unlawful act, aiding and/or abetting any such unlawful act, or assisting, encouraging, and/or participating in any such unlawful act.

10.     <u>Highland Affiliate Claims</u>.  All Estate Claims against any Affiliates of Highland are reserved, retained and preserved for the benefit of the Estate and Reorganized Debtor, including without limitation all such Estate Claims asserted by the Chapter 11 Trustee in the Highland Adversary and the Trustee's Adversary.  The Estate Claims against any Affiliates of Highland shall include all Estate Claims set forth in paragraph 2 above, including without limitation the following:

(a)     All such Claims against any Highland Affiliate asserted by the Chapter 11 Trustee or Estate in, or which could be asserted based on the facts or transactions alleged in, the Highland Adversary;

(b)     All such Claims against any Highland Affiliate asserted by the Chapter 11 Trustee or Estate in, or which could be asserted based on the facts or transactions alleged in, the Trustee's Adversary;

(c)     All such Claims and Defenses asserted by the Chapter 11 Trustee or Estate, or which could be asserted by the Chapter 11 Trustee or Estate, based on the facts or transactions alleged in any other adversary proceedings or Claim Objections filed by the Chapter 11 Trustee or Estate;

(d)     All Avoidance Actions against any Highland Affiliate;

(e)     All Claims for breach of fiduciary duty or duty of loyalty or due care owed to the Debtors or Chapter 11 Trustee;

(f)     All Claims for aiding and/or abetting breach of fiduciary duty, breach of duty loyalty or due care, or any other unlawful act;

(g)     All Clams for usurpation of a corporate opportunity belonging to either of the Debtors, including in relation to Acis CLO 2017-7, Ltd and any other Acis CLOs;

(h)     All Claims against any Highland Affiliate for the turnover of Estate Assets, including Estate property that the Chapter 11 Trustee may use, sell or lease under section 363 of the Bankruptcy Code including, without limitation, any intellectual property rights or Assets

Case 18-30264-sgj11 Doc 641-4 Filed 10/23/18 Entered 10/23/18 21:48:05 Page 10 of 172

owned by the Debtors or Estate, as well as the turnover of any books, documents, records and papers relating to the Debtors' property or financial affairs;

(i)        All Claims against any Highland Affiliate for the unauthorized use of Estate Assets including, without limitation, any intellectual property rights or Assets owned by the Debtors or Estate;

(j)        All Claims, rights or remedies for Equitable Subordination or Recharacterization of any Claim by any Highland Affiliate against the Debtors, Chapter 11 Trustee, or Estate;

(k)        All Claims based on alter ego or rights to pierce the corporate veil of Acis LP as to any Person, including as against Highland, Neutra, or any Affiliates thereof, James D. Dondero, Mark K. Okada, or any other officers, directors, equity interest holders, or Persons otherwise in control of Acis LP;

(l)        All Claims based on alter ego or rights to pierce the corporate veil of any Highland Affiliate as to any Person, including as against any other Affiliates of Highland or any officers, directors, equity interest holders, or Persons otherwise in control of any Highland Affiliates; and,

(m)        All Claims for conspiracy to commit any unlawful act, aiding and/or abetting any such unlawful act, or assisting, encouraging, and/or participating in any such unlawful act.

11.        Dondero Claims.  All Estate Claims as defined in paragraph 2 above against James D. Dondero, individually, are hereby reserved, retained and preserved for the benefit of the Estate and Reorganized Debtor, including without limitation all such Estate Claims against James D. Dondero for fraud, constructive fraud, breach of fiduciary duty, breach of duty of loyalty or due care, aiding and abetting breach of fiduciary duty, aiding and abetting breach of duty of loyalty or due care, self-dealing, ultra vires, conversion, usurpation of corporate opportunity, including in relation to Acis CLO 2017-7, Ltd and any other Acis CLOs, tortious interference, including in relation to Universal-Investment-Luxembourg S.A. and BayVK R2 Lux S.A., SICAV-FIS, conflict of interest, negligence, gross negligence, all Avoidance Actions, breach of contract, breach of the Shared Services Agreement, breach of the Sub-Advisory Agreement, breach of the Debtors' limited partnership agreement or limited liability company agreement, conspiracy to commit any unlawful act, aiding and abetting any unlawful act, and assisting, encouraging, and/or participating in any unlawful act, as well as any Claim to pierce the corporate veil of any entity to hold James D. Dondero individually liable.

12.        Okada Claims.  All Estate Claims as defined in paragraph 2 above against Mark K. Okada, individually, are hereby reserved, retained and preserved for the benefit of the Estate and Reorganized Debtor, including without limitation all such Estate Claims against Mark K. Okada for fraud, constructive fraud, breach of fiduciary duty, breach of duty of loyalty or due care, aiding and abetting breach of fiduciary duty, self-dealing, ultra vires, conversion, usurpation of corporate opportunity, including in relation to Acis CLO 2017-7, Ltd and any other Acis CLOs, tortious interference, including in relation to Universal-Investment-Luxembourg S.A. and BayVK R2 Lux S.A., SICAV-FIS, conflict of interest, negligence, gross negligence, all Avoidance Actions, breach of contract, breach of the Shared Services Agreement, breach of the Sub-Advisory Agreement, breach of the Debtors' limited partnership agreement or limited liability company agreement, conspiracy to commit any unlawful act, aiding and abetting any

Case 18-30264-sgj11 Doc 641-4 Filed 10/29/18 Entered 10/29/18 21:48:05 Page 103 of 172

unlawful act, and assisting, encouraging, and participating in any unlawful act, as well as any Claim to pierce the corporate veil of any entity to hold Mark K. Okada individually liable.

13.    <u>Preference Claims</u>.  All Avoidance Actions pursuant to section 547 of the Bankruptcy Code against any Person are hereby reserved, retained and preserved for the benefit of the Estate and Reorganized Debtor for any payment made to any Person by either of the Debtors within ninety (90) days of the Petition Date (which was January 30, 2018), or made by either of the Debtors to any insider within one (1) year of the Petition Date.  A non-exhaustive list of Persons who are believed to have received payments from either of the Debtors during the 90-day preference period, and the one-year preference period for Insiders, is attached to this **Exhibit "A"** as **Schedule "1"**.  The Plan reserves, retains and preserves for the benefit of the Estate and Reorganized Debtor all potential Claims arising out of or relating to the transfers reflected in **Schedule "1"**, including all Avoidance Actions pursuant to section 547 of the Bankruptcy Code.  All rights and remedies are also reserved. retained and preserved with respect to the transfers reflected in **Schedule "1"** pursuant to section 550 of the Bankruptcy Code.

**Schedule "1"** reflects transfers made by the Debtors during the 90 days prior to the Petition Date and transfers made by the Debtors to any insiders within one (1) year of the Petition Date.  While the Plan reserves, retains and preserves all Avoidance Actions relating to the transfers reflected in **Schedule "1"**, the Chapter 11 Trustee recognizes that certain of these transfers may not constitute a preferential transfer pursuant to section 547(b) of the Bankruptcy Code as a transfer made in the ordinary course of business transactions or based upon new value subsequently given by the transferee.  Consequently, the listing of a payment on **Schedule "1"** does not necessarily mean that a transferee will ever be sued to avoid and recover the payment, the transfer, or the value thereof, but only that the Plan reserves, retains and preserves all rights (including Avoidance Actions) as to that payment.

14.    <u>Claims Against Officers, Managers and Members</u>.  All Estate Claims as defined in paragraph 2 above are hereby reserved, retained and preserved for the benefit of the Estate and Reorganized Debtor against all present and past officers, employees, members and managers of the Debtors, including all such Estate Causes of Action based on breach of fiduciary duty, aiding and abetting breach of fiduciary duty, breach of duty of loyalty or due care, aiding and abetting breach of duty of loyalty or due care, self-dealing, usurpation of corporate opportunity, gross negligence or conspiracy.  Without limiting the generality of the foregoing, this shall include all D&O Claims as against any present or former officer, director, employee, member, manager, or partner.

15.    <u>Retention of Claims Against Specific Persons or Categories of Persons</u>.  In addition to the foregoing, all Estate Claims as defined in paragraph 2 above are hereby reserved, retained and preserved for the benefit of the Estate and Reorganized Debtor against the following Persons:

        (a)    William Scott;

        (b)    Heather Bestwick;

        (c)    Any other Person who may be so named at a later date by the Reorganized Debtor.

16. <u>Counterclaims</u>. All Estate Claims as defined in paragraph 2 above are reserved, retained and preserved for the benefit of the Estate and Reorganized Debtor both as a basis for an affirmative recovery against the Person against whom such Claims are asserted and as a counterclaim or offset against any Person who asserts a Claim against the Estate or Reorganized Debtor.

17. <u>Piercing the Corporate Veil</u>. With respect to all Estate Claims against any Person, all rights to pierce or ignore the corporate veil are hereby reserved, retained and preserved for the benefit of the Estate and the Reorganized Debtor. Without limiting the generality of the foregoing, this shall include: (a) any right to pierce the corporate veil, including reverse piercing, on any theory or basis, including alter ego or any theory of sham to perpetrate a fraud, and (b) any Claim or basis to pierce the corporate veil of any entity with respect to establishing personal liability against James D. Dondero or Mark K. Okada.

18. <u>Avoidance Actions</u>. All Avoidance Actions are hereby reserved, retained and preserved as to all Persons. The reservation, retention and preservation of such Avoidance Actions shall include the reservation, retention and preservation for the benefit of the Estate and Reorganized Debtor of all rights and remedies pursuant to section 550 of the Bankruptcy Code.

19. <u>Estate Defenses</u>. All Estate Defenses are hereby reserved, retained and preserved in favor of the Estate and Reorganized Debtor as against any Person asserting any Claim against the Estate. This includes asserting all Estate Claims as an offset to, or counterclaim or right of recoupment against, any Person asserting a Claim against the Estate. All defenses and affirmative defenses pursuant to applicable law are hereby reserved, retained and preserved for the benefit of the Estate and the Reorganized Debtor, including without limitation, accord and satisfaction, assumption of risk, contributory negligence, duress, estoppel, failure of consideration, fraud, illegality, laches, license, payment, release, *res judicata*, collateral estoppel, statute of frauds, statute of limitations or repose, discovery rule, adverse domination doctrine or similar doctrines, set off, recoupment, waiver, and all other defenses to Claims under the Bankruptcy Code, including under sections 502(b)(4) and 502(d).

20. <u>Equitable Subordination</u>. All rights or remedies for Equitable Subordination are hereby reserved, retained and preserved in favor of the Estate and Reorganized Debtor against any Person asserting any Claim against the Estate, including all such rights or remedies pursuant to section 510(c) of the Bankruptcy Code. Without limiting the generality of the foregoing, this shall include all rights and remedies to Equitable Subordination as to any Claim asserted by Highland, any Affiliates of Highland, or any officers, directors, employees or equity interest owners of the Debtors, Highland, or any Affiliates thereof.

21. <u>Recharacterization</u>. All rights or remedies to recharacterize any Claim as an equity interest in either of the Debtors are hereby reserved, retained and preserved in favor of the Estate and Reorganized Debtor against any Person asserting any Claim against the Estate. Without limiting the generality of the foregoing, this shall include all rights and remedies to recharacterize any Claim asserted by Highland, any Affiliates of Highland, or any officers, directors, employees or equity interest owners of the Debtors, Highland, or any Affiliates thereof.

Case 18-30264-sgj11 Doc 661 Filed 10/25/18 Entered 10/25/18 18:24:46 Page 105 of 172

Second Amended Joint Plan for Acis Capital Management, LP and Acis Capital Management GP, LLC

Schedule 1 to Exhibit A

| NAME | ADDRESS | DATE OF PAYMENT | PAYMENT AMOUNT | REASON FOR PAYMENT ON SCHEDULES |
|---|---|---|---|---|
| **Payments within 90 Days of Petition Date** | | | | |
| Highland Capital Management, LP | 300 Crescent Court, Ste. 700 Dallas, TX 75208 | 11/2/2017 | $234,013.63 | Services |
| Highland Capital Management, LP | 300 Crescent Court, Ste. 700 Dallas, TX 75208 | 11/3/2017 | $941,958.57 | Services |
| Highland Capital Management, LP | 300 Crescent Court, Ste. 700 Dallas, TX 75208 | 12/8/2017 | $89,655.14 | Services |
| David Simek | 31 Woodacres Road Brookville, NY 11545 | 11/15/2017 | $2,068.13 | Services |
| David Simek | 31 Woodacres Road Brookville, NY 11545 | 11/30/2017 | $24,266.71 | Services |
| David Simek | 31 Woodacres Road Brookville, NY 11545 | 12/12/2017 | $1,718.79 | Services |
| David Simek | 31 Woodacres Road Brookville, NY 11545 | 12/29/2017 | $25,000.00 | Services |
| FINRA | 1735 K Street, NW Washington, DC 20006 | 11/22/2017 | $70.00 | Suppliers or Vendors |
| Highland CLO Management, Ltd. | PO Box 309, Ugland House Grand Cayman, KY1-1104, Cayman Islands | 12/19/2017 | $2,830,459.22 | Services |
| **Payments to Insiders within One Year of Petition Date** | | | | |
| Highland Capital Management, LP | 300 Crescent Court, Ste. 700 Dallas, TX 75208 | 2/1/2017 | $976,688.47 | Contractual Payment |
| Highland Capital Management, LP | 300 Crescent Court, Ste. 700 Dallas, TX 75208 | 2/1/2017 | $1,096,033.37 | Services |
| Highland Capital Management, LP | 300 Crescent Court, Ste. 700 Dallas, TX 75208 | 2/2/2017 | $3,574.80 | Expense Reimbursement |
| Highland Capital Management, LP | 300 Crescent Court, Ste. 700 Dallas, TX 75208 | 2/14/2017 | $67.44 | Expense Reimbursement |
| Highland Capital Management, LP | 300 Crescent Court, Ste. 700 Dallas, TX 75208 | 4/17/2017 | $315,574.30 | Services |
| Highland Capital Management, LP | 300 Crescent Court, Ste. 700 Dallas, TX 75208 | 4/18/2017 | $438,497.51 | Services |

Schedule 1 to Exhibit A to
Second Amended Joint Plan for Acis Capital Management, LP and Acis Capital Management GP, LLC

| NAME | ADDRESS | DATE OF PAYMENT | PAYMENT AMOUNT | REASON FOR PAYMENT ON SCHEDULES |
|------|---------|-----------------|----------------|----------------------------------|
| Highland Capital Management, LP | 300 Crescent Court, Ste. 700 Dallas, TX 75208 | 4/18/2017 | $375,855.01 | Contractual Payment |
| Highland Capital Management, LP | 300 Crescent Court, Ste. 700 Dallas, TX 75208 | 4/19/2017 | $330,249.69 | Services |
| Highland Capital Management, LP | 300 Crescent Court, Ste. 700 Dallas, TX 75208 | 5/1/2017 | $974,426.41 | Services |
| Highland Capital Management, LP | 300 Crescent Court, Ste. 700 Dallas, TX 75208 | 5/31/2017 | $2,809,518.47 | Unsecured loan repayments including interest |
| Highland Capital Management, LP | 300 Crescent Court, Ste. 700 Dallas, TX 75208 | 5/31/2017 | $581,036.15 | Services |
| Highland Capital Management, LP | 300 Crescent Court, Ste. 700 Dallas, TX 75208 | 7/18/2017 | $373,167.08 | Contractual Payment |
| Highland Capital Management, LP | 300 Crescent Court, Ste. 700 Dallas, TX 75208 | 8/1/2017 | $971,603.02 | Contractual Payment |
| Highland Capital Management, LP | 300 Crescent Court, Ste. 700 Dallas, TX 75208 | 8/7/2017 | $1,339,422.12 | Services |
| Highland Capital Management, LP | 300 Crescent Court, Ste. 700 Dallas, TX 75208 | 8/16/2017 | $53.41 | Expense Reimbursement |
| Highland Capital Management, LP | 300 Crescent Court, Ste. 700 Dallas, TX 75208 | 10/18/2017 | $372,872.82 | Contractual Payment |
| Highland Capital Management, LP | 300 Crescent Court, Ste. 700 Dallas, TX 75208 | 10/18/2017 | $728,702.26 | Services |
| Highland Capital Management, LP | 300 Crescent Court, Ste. 700 Dallas, TX 75208 | 10/24/2017 | $501,979.18 | Unsecured loan repayments including interest |
| Highland Capital Management, LP | 300 Crescent Court, Ste. 700 Dallas, TX 75208 | 10/25/2017 | $46,648.82 | Expense Reimbursement |
| Highland Capital Management, LP | 300 Crescent Court, Ste. 700 Dallas, TX 75208 | 10/25/2017 | $67,966.85 | Expense Reimbursement |
| Highland Capital Management, LP | 300 Crescent Court, Ste. 700 Dallas, TX 75208 | 11/1/2017 | $967,223.91 | Contractual Payment |

# EXHIBIT B

## TO THIRD AMENDED JOINT PLAN FOR ACIS CAPITAL MANAGEMENT, LP AND ACIS CAPITAL MANAGEMENT GP, LLC

**[EXECUTORY CONTRACTS ASSUMED UNDER THE PLAN]**

**EXHIBIT B**
**Executory Contracts and Unexpired Leases**
**to Be Assumed by the Trustee**

| Party | Contract Description | Contract Date | Cure Amount |
|---|---|---|---|
| Acis CLO 2013-1 Chemical Holdings, LLC 1209 Orange Street Wilmington, DE 19801 | Limited Liability Company Agreement | October 28, 2016 | $0 |
| Acis CLO 2013-1, Ltd. c/o Estera Trust (f/k/a Appleby Trust) Clifton House 75 Fort St., P.O. Box 1350 Grand Cayman, Cayman Islands KY1-1108 | Limited Liability Company Agreement | October 28, 2016 | $0 |
| Acis CLO 2013-1 Ltd. c/o Estera Trust (f/k/a Appleby Trust) Clifton House 75 Fort St., P.O. Box 1350 Grand Cayman, Cayman Islands KY1-1108 | Collateral Administration Agreement | March 18, 2013 | $0 |
| U.S. Bank National Association 190 S. LaSalle Street, 8th Floor Chicago, IL 60603 Attention: Global Corporate Trust – Acis CLO 2013-1 | Collateral Administration Agreement | March 18, 2013 | $0 |
| Acis CLO 2013-1 Ltd. c/o Estera Trust (f/k/a Appleby Trust) Clifton House 75 Fort St., P.O. Box 1350 Grand Cayman, Cayman Islands KY1-1108 | Portfolio Management Agreement | March 18, 2013 | $0 |
| Acis CLO 2013-1 Ltd. c/o Estera Trust (f/k/a Appleby Trust) Clifton House 75 Fort St., P.O. Box 1350 Grand Cayman, Cayman Islands KY1-1108 | Indenture | March 18, 2013 | $0 |
| Acis CLO 2013-1 LLC 850 Library Ave., Suite 204 Newark, DE 19711 | Indenture | March 18, 2013 | $0 |

1

**EXHIBIT B**
**Executory Contracts and Unexpired Leases**
**to Be Assumed by the Trustee**

| Party | Contract Description | Contract Date | Cure Amount |
|---|---|---|---|
| U.S. Bank National Association<br>190 S. LaSalle Street, 8th Floor<br>Chicago, IL 60603<br>Attention: Global Corporate Trust –<br>Acis CLO 2013-1 | Indenture | March 18, 2013 | $0 |
| Acis CLO 2013-1 Ltd.<br>c/o Estera Trust (f/k/a Appleby Trust)<br>Clifton House 75 Fort St., P.O. Box 1350<br>Grand Cayman, Cayman Islands KY1-1108 | Supplemental Indenture | February 26, 2014 | $0 |
| Acis CLO 2013-1 LLC<br>850 Library Ave., Suite 204<br>Newark, DE 19711 | Supplemental Indenture | February 26, 2014 | $0 |
| U.S. Bank National Association<br>190 S. LaSalle Street, 8th Floor<br>Chicago, IL 60603<br>Attention: Global Corporate Trust –<br>Acis CLO 2013-1 | Supplemental Indenture | February 26, 2014 | $0 |
| Acis CLO 2013-1, Ltd.<br>c/o Estera Trust (f/k/a Appleby Trust)<br>Clifton House 75 Fort St., P.O. Box 1350<br>Grand Cayman, Cayman Islands KY1-1108 | Governing Documents<br>(Requested from HCM) | -- | $0 |
| Acis CLO 2013-2 Chemical Holdings, LLC<br>1209 Orange Street<br>Wilmington, DE 19801 | Limited Liability Company Agreement<br>(requested from HCM) | -- | $0 |
| Acis CLO 2013-2 Ltd.<br>c/o Estera Trust (f/k/a Appleby Trust)<br>Clifton House 75 Fort St., P.O. Box 1350<br>Grand Cayman, Cayman Islands KY1-1108 | Limited Liability Company Agreement<br>(requested from HCM) | -- | $0 |

2

**EXHIBIT B**

**Executory Contracts and Unexpired Leases**

**to Be Assumed by the Trustee**

| Party | Contract Description | Contract Date | Cure Amount |
|---|---|---|---|
| Acis CLO 2013-2 Ltd.<br>c/o Estera Trust (f/k/a Appleby Trust)<br>Clifton House 75 Fort St., P.O. Box 1350<br>Grand Cayman, Cayman Islands KY1-1108 | Collateral Administration Agreement | October 3, 2013 | $0 |
| The Bank of New York Mellon Trust Co., N.A.<br>601 Travis Street, 16th Floor<br>Houston, Texas 77002<br>Attn: Global Corporate Trust –<br>Acis CLO 2013-2 | Collateral Administration Agreement | October 3, 2013 | $0 |
| Acis CLO 2013-2 Ltd.<br>c/o Estera Trust (f/k/a Appleby Trust)<br>Clifton House 75 Fort St., P.O. Box 1350<br>Grand Cayman, Cayman Islands KY1-1108 | Portfolio Management Agreement | October 3, 2013 | $0 |
| Acis CLO 2013-2 Ltd.<br>c/o Estera Trust (f/k/a Appleby Trust)<br>Clifton House 75 Fort St., P.O. Box 1350<br>Grand Cayman, Cayman Islands KY1-1108 | Indenture | October 3, 2013 | $0 |
| Acis CLO 2013-2 LLC<br>850 Library Ave., Suite 204<br>Newark, DE 19711 | Indenture | October 3, 2013 | $0 |
| The Bank of New York Mellon Trust Co., N.A.<br>601 Travis Street, 16th Floor<br>Houston, Texas 77002<br>Attn: Global Corporate Trust –<br>Acis CLO 2013-2 | Indenture | October 3, 2013 | $0 |
| Acis CLO 2013-2 Ltd.<br>c/o Estera Trust (f/k/a Appleby Trust)<br>Clifton House 75 Fort St., P.O. Box 1350<br>Grand Cayman, Cayman Islands KY1-1108 | Governing Document<br>(requested from HCM) | -- | $0 |

3

**EXHIBIT B**
**Executory Contracts and Unexpired Leases**
**to Be Assumed by the Trustee**

| Party | Contract Description | Contract Date | Cure Amount |
|---|---|---|---|
| Acis CLO 2014-3 Chemical Holdings, LLC<br>1209 Orange Street<br>Wilmington, DE 19801 | Limited Liability Company Agreement | October 28, 2016 | $0 |
| Acis CLO 2014-3 Ltd.<br>c/o MaplesFS Limited<br>P.O. Box 1093, Boundary Hall, Cricket Sq<br>Grand Cayman, Cayman Islands KY1-1102 | Limited Liability Company Agreement | October 28, 2016 | $0 |
| Acis CLO 2014-3 Ltd.<br>c/o MaplesFS Limited<br>P.O. Box 1093, Boundary Hall, Cricket Sq<br>Grand Cayman, Cayman Islands KY1-1102 | Collateral Administration Agreement | February 25, 2014 | $0 |
| U.S. Bank National Association<br>190 S. LaSalle Street, 8th Floor<br>Chicago, IL 60603<br>Attention: Global Corporate Trust –<br>Acis CLO 2014-3 | Collateral Administration Agreement | February 25, 2014 | $0 |
| Acis CLO 2014-3 Ltd.<br>c/o MaplesFS Limited<br>P.O. Box 1093, Boundary Hall, Cricket Sq<br>Grand Cayman, Cayman Islands KY1-1102 | Portfolio Management Agreement | February 25, 2014 | $0 |
| Acis CLO 2014-3 Ltd.<br>c/o MaplesFS Limited<br>P.O. Box 1093, Boundary Hall, Cricket Sq<br>Grand Cayman, Cayman Islands KY1-1102 | Indenture | February 25, 2014 | $0 |
| Acis CLO 2014-3 LLC<br>850 Library Ave., Suite 204<br>Newark, DE 19711 | Indenture | February 25, 2014 | $0 |

4

**EXHIBIT B**

**Executory Contracts and Unexpired Leases**
**to Be Assumed by the Trustee**

| Party | Contract Description | Contract Date | Cure Amount |
|---|---|---|---|
| U.S. Bank National Association<br>190 S. LaSalle Street, 8th Floor<br>Chicago, IL 60603<br>Attention: Global Corporate Trust –<br>Acis CLO 2014-3 | Indenture | February 25, 2014 | $0 |
| Acis CLO 2014-3 Ltd.<br>c/o MaplesFS Limited<br>P.O. Box 1093, Boundary Hall, Cricket Sq<br>Grand Cayman, Cayman Islands KY1-1102 | Memorandum and Articles of Association of Acis CLO 2014-3 Ltd. | December 24, 2013 | $0 |
| Acis CLO 2014-4 Chemical Holdings, LLC<br>1209 Orange Street<br>Wilmington, DE 19801 | Limited Liability Company Agreement | October 28, 2016 | $0 |
| Acis CLO 2014-4 Ltd.<br>c/o MaplesFS Limited<br>P.O. Box 1093, Boundary Hall, Cricket Sq<br>Grand Cayman, Cayman Islands KY1-1102 | Limited Liability Company Agreement | October 28, 2016 | $0 |
| Acis CLO 2014-4 Ltd.<br>c/o MaplesFS Limited<br>P.O. Box 1093, Boundary Hall, Cricket Sq<br>Grand Cayman, Cayman Islands KY1-1102 | Collateral Administration Agreement | June 5, 2014 | $0 |
| U.S. Bank National Association<br>190 S. LaSalle Street, 8th Floor<br>Chicago, IL 60603<br>Attention: Global Corporate Trust –<br>Acis CLO 2014-4 | Collateral Administration Agreement | June 5, 2014 | $0 |
| Acis CLO 2014-4 Ltd.<br>c/o MaplesFS Limited<br>P.O. Box 1093, Boundary Hall, Cricket Sq<br>Grand Cayman, Cayman Islands KY1-1102 | Portfolio Management Agreement | June 5, 2014 | $0 |

**EXHIBIT B**

**Executory Contracts and Unexpired Leases**

to Be Assumed by the Trustee

| Party | Contract Description | Contract Date | Cure Amount |
|---|---|---|---|
| Acis CLO 2014-4 Ltd.<br>c/o MaplesFS Limited<br>P.O. Box 1093, Boundary Hall, Cricket Sq<br>Grand Cayman, Cayman Islands KY1-1102 | Indenture | June 5, 2014 | $0 |
| Acis CLO 2014-4 LLC<br>850 Library Ave.., Suite 204<br>Newark, DE 19711 | Indenture | June 5, 2014 | $0 |
| U.S. Bank National Association<br>190 S. LaSalle Street, 8th Floor<br>Chicago, IL 60603<br>Attention: Global Corporate Trust –<br>Acis CLO 2014-4 | Indenture | June 5, 2014 | $0 |
| Acis CLO 2014-4 Ltd.<br>c/o MaplesFS Limited<br>P.O. Box 1093, Boundary Hall, Cricket Sq<br>Grand Cayman, Cayman Island KY1-1102 | Memorandum and Articles of Association<br>of Acis CLO 2014-4 Ltd. | April 1, 2014 | $0 |
| Acis CLO 2014-5 Chemical Holdings, LLC<br>1209 Orange Street<br>Wilmington, DE 19801 | Limited Liability Company Agreement | October 28, 2016 | $0 |
| Acis CLO 2014-5 Ltd.<br>c/o MaplesFS Limited<br>P.O. Box 1093, Boundary Hall, Cricket Sq<br>Grand Cayman, Cayman Islands KY1-1102 | Limited Liability Company Agreement | October 28, 2016 | $0 |
| Acis CLO 2014-5 Ltd.<br>c/o MaplesFS Limited<br>P.O. Box 1093, Boundary Hall, Cricket Sq<br>Grand Cayman, Cayman Islands KY1-1102 | Collateral Administration Agreement | November 18, 2014 | $0 |

6

**EXHIBIT B**
**Executory Contracts and Unexpired Leases**
**to Be Assumed by the Trustee**

| Party | Contract Description | Contract Date | Cure Amount |
|---|---|---|---|
| U.S. Bank National Association<br>190 S. LaSalle Street, 8th Floor<br>Chicago, IL 60603<br>Attention: Global Corporate Trust –<br>Acis CLO 2014-5 | Collateral Administration Agreement | November 18, 2014 | $0 |
| Acis CLO 2014-5 Ltd.<br>c/o MaplesFS Limited<br>P.O. Box 1093, Boundary Hall, Cricket Sq<br>Grand Cayman, Cayman Islands KY1-1102 | Portfolio Management Agreement | November 18, 2014 | $0 |
| Acis CLO 2014-5 Ltd.<br>c/o MaplesFS Limited<br>P.O. Box 1093, Boundary Hall, Cricket Sq<br>Grand Cayman, Cayman Islands KY1-1102 | Indenture | November 18, 2014 | $0 |
| Acis CLO 2014-5 LLC<br>850 Library Ave.., Suite 204<br>Newark, DE 19711 | Indenture | November 18, 2014 | $0 |
| U.S. Bank National Association<br>190 S. LaSalle Street, 8th Floor<br>Chicago, IL 60603<br>Attention: Global Corporate Trust –<br>Acis CLO 2014-5 | Indenture | November 18, 2014 | $0 |
| Acis CLO 2014-5 Ltd.<br>c/o MaplesFS Limited<br>P.O. Box 1093, Boundary Hall, Cricket Sq<br>Grand Cayman, Cayman Islands KY1 -1102 | Memorandum and Articles of Association<br>of Acis CLO 2014-5 Ltd. | August 21, 2014 | $0 |
| Acis CLO 2015-6 Chemical Holdings, LLC<br>1209 Orange Street<br>Wilmington, DE 19801 | Limited Liability Company Agreement | October 28, 2016 | $0 |

7

**EXHIBIT B**

**Executory Contracts and Unexpired Leases**

**to Be Assumed by the Trustee**

| Party | Contract Description | Contract Date | Cure Amount |
|---|---|---|---|
| Acis CLO 2015-6 Ltd.<br>c/o MaplesFS Limited<br>P.O. Box 1093, Boundary Hall, Cricket Sq<br>Grand Cayman, Cayman Islands KY1-1102 | Limited Liability Company Agreement | October 28, 2016 | $0 |
| Acis CLO 2015-6 Ltd.<br>c/o MaplesFS Limited<br>P.O. Box 1093, Boundary Hall, Cricket Sq<br>Grand Cayman, Cayman Islands KY1-1102 | Collateral Administration Agreement | April 16, 2015 | $0 |
| U.S. Bank National Association<br>190 S. LaSalle Street, 8th Floor<br>Chicago, IL 60603<br>Attention: Global Corporate Trust –<br>Acis CLO 2015-6 | Collateral Administration Agreement | April 16, 2015 | $0 |
| Acis CLO 2015-6 Ltd.<br>c/o MaplesFS Limited<br>P.O. Box 1093, Boundary Hall, Cricket Sq<br>Grand Cayman, Cayman Islands KY1-1102 | Portfolio Management Agreement | April 16, 2015 | $0 |
| Acis CLO 2015-6 Ltd.<br>c/o MaplesFS Limited<br>P.O. Box 1093, Boundary Hall, Cricket Sq<br>Grand Cayman, Cayman Islands KY1-1102 | Indenture | April 16, 2015 | $0 |
| Acis CLO 2015-6 LLC<br>850 Library Ave., Suite 204<br>Newark, DE 19711 | Indenture | April 16, 2015 | $0 |
| U.S. Bank National Association<br>190 S. LaSalle Street, 8th Floor<br>Chicago, IL 60603<br>Attention: Global Corporate Trust –<br>Acis CLO 2015-6 | Indenture | April 16, 2015 | $0 |

8

Case 18-30264-sgj11 Doc 661 Filed 10/25/18 Entered 10/25/18 18:24:46 Page 116 of 172

**EXHIBIT B**
**Executory Contracts and Unexpired Leases**
**to Be Assumed by the Trustee**

| Party | Contract Description | Contract Date | Cure Amount |
|---|---|---|---|
| Acis CLO 2015-6 Ltd.<br>P.O. Box 1093, Boundary Hall, Cricket Sq<br>Grand Cayman, KY1-1102, Cayman Islands | Memorandum and Articles of Association of Acis CLO 2015-6 Ltd. | February 11, 2015 | $0 |
| Acis CLO Value Fund II (Cayman), LP.<br>P.O. Box 309, Ugland House<br>Grand Cayman, Cayman Islands KY1-1104 | Investment Management Agreement | May 1, 2016 | $0 |
| Acis CLO Value Fund II GP, LLC<br>P.O. Box. 309, Ugland House<br>Grand Cayman, Cayman Islands KY1-1104 | Investment Management Agreement | May 1, 2016 | $0 |
| Acis CLO Value Fund II, LP.<br>300 Crescent Court<br>Suite 700<br>Dallas, TX 75201 | Investment Management Agreement | May 1, 2016 | $0 |
| Acis CLO Value GP, LLC<br>1209 Orange Street<br>Wilmington, DE 19801 | Limited Liability Company Agreement | July 19, 2010 | $0 |
| Acis CLO Value Master Fund II, LP.<br>P.O. Box 309, Ugland House<br>Grand Cayman, Cayman Islands KY1-1104 | Investment Management Agreement | May 1, 2016 | $0 |
| Acis CLO Value Fund II (Cayman), L.P.<br>P.O. Box 309, Ugland House<br>Grand Cayman, Cayman Islands KY1-1104 | Third Amended and Restated Exempted Limited Partnership Agreement | May 1, 2016 | $0 |
| Acis CLO Value Master Fund II, L.P.<br>P.O. Box 309, Ugland House<br>Grand Cayman, Cayman Islands KY1-1104 | Third Amended and Restated Exempted Limited Partnership Agreement | May 1, 2016 | $0 |
| Acis Loan Funding, Ltd.<br>300 Crescent Court<br>Suite 700<br>Dallas, TX 75201 | FATCA and Non-FATCA Services Agreement | June 23, 2017 | $0 |

9

**EXHIBIT B**

**Executory Contracts and Unexpired Leases**
**to Be Assumed by the Trustee**

| Party | Contract Description | Contract Date | Cure Amount |
|---|---|---|---|
| BayVK R2 Lux S.A., SICAV FIS<br>15 rue de Flaxweiler<br>L-6776 Grevenmacher | Power of Attorney | February 20, 2015 | $0 |
| BayVK R2 Lux S.A., SICAV-FIS<br>15 rue de Flaxweiler<br>L-6776 Grevenmacher | Agreement for the Outsourcing of the Asset Management of BayVK R2 Lux S.A., SICAV-FIS | February 27, 2015 | $0 |
| BayVK R2 Lux S.A., SICAV-FIS<br>15 rue de Flaxweiler<br>L-6776 Grevenmacher | Service Level Agreement | February 27, 2015 | $0 |
| BNP Paribas Securities Services<br>Luxembourg Branch<br>60 Avenue John F. Kennedy<br>1855 Luxembourg | Power of Attorney<br>86578 | February 20, 2015 | $0 |
| Hewett's Island CLO I-R, Ltd.<br>c/o Maples Finance Limited<br>P.O. Box 1093, Queensgate House<br>Grand Cayman, Cayman Islands KY1-1102 | Confidentiality Agreement | April 11, 2011 | $0 |
| Hewett's Island CLO I-R, Ltd.<br>c/o Maples Finance Limited<br>P.O. Box 1093, Queensgate House<br>Grand Cayman, Cayman Islands KY1-1102 | Governing Documents<br>(Requested from HCM) | -- | $0 |
| Hewett's Island CLO I-R, Ltd.<br>c/o Maples Finance Limited<br>P.O. Box 1093, Queensgate House<br>Grand Cayman, Cayman Islands KY1-1102 | Management Agreement | July 18, 2011 | $0 |
| Hewett's Island CLO I-R, Ltd.<br>c/o Maples Finance Limited<br>P.O. Box 1093, Queensgate House<br>Grand Cayman, Cayman Islands KY1-1102 | Collateral Administration Agreement<br>(Requested from HCM) | November 20, 2007 | $0 |

**EXHIBIT B**
**Executory Contracts and Unexpired Leases**
**to Be Assumed by the Trustee**

| Party | Contract Description | Contract Date | Cure Amount |
|---|---|---|---|
| Hewett's Island CLO 1-R, Ltd. c/o Maples Finance Limited P.O. Box 1093, Queensgate House Grand Cayman, Cayman Islands KY1-1102 | Indenture | November 20, 2007 | $0 |
| Deutsche Bank Trust Company Americas 1761 East St. Andrew Place Santa Ana, CA 92705 Attn: CDO Business Unit – Hewett's Island CLO 1-R | Indenture | November 20, 2007 | $0 |
| State Street (Guernsey Limited) First Floor, Dorey Court, Admiral Park, St. Peter Port, Guernsey | FATCA and Non-FATCA Services Agreement | June 23, 2017 | $0 |
| U.S. Bank National Association 190 S. LaSalle Street, 8th Floor Chicago, IL 60603 Attention: Global Corporate Trust – Acis CLO 2015-6 | Confidentiality Agreement | March 5, 2014 | $0 |
| Universal-Investment-Luxembourg S.A. 15 rue de Flaxweiler L-6776 Grevenmacher | Agreement for the Outsourcing of the Asset Management of BayVK R2 Lux S.A., SICAV-FIS | February 27, 2015 | $0 |
| Universal-Investment-Luxembourg S.A. 15 rue de Flaxweiler L-6776 Grevenmacher | Power of Attorney | February 20, 2015 | $0 |
| Universal-Investment-Luxembourg S.A. 15 rue de Flaxweiler L-6776 Grevenmacher | Service Level Agreement | February 27, 2015 | $0 |
| Acis Loan Funding, Ltd. First Floor, Dorey Court St. Peter Port, Guernsey GY1 6HJ Channel Islands | Portfolio Management Agreement | December 22, 2016 | $0 |

11

**EXHIBIT B**
**Executory Contracts and Unexpired Leases**
**to Be Assumed by the Trustee**

| Party | Contract Description | Contract Date | Cure Amount |
|---|---|---|---|
| Acis Capital Management, LP c/o *PHELANLAW* 4214 Woodfin Drive Dallas, Texas 75220 | Amended and Restated Agreement of Limited Partnership | January 21, 2011 | $0 |
| Acis Capital Management GP, LLC c/o *PHELANLAW* 4214 Woodfin Drive Dallas, Texas 75220 | Amended and Restated Limited Liability Company Agreement | January 21, 2011 | $0 |

For the avoidance of doubt, to the extent not otherwise included above, the Trustee intends to assume any additional executory contracts that relate to the funds set forth below as may be necessary or beneficial to the Reorganized Debtor under the Plan:

1. Acis CLO 2013-1, Ltd.
2. Acis CLO 2013-2, Ltd.
3. Acis CLO 2014-3, Ltd.
4. Acis CLO 2014-4, Ltd.
5. Acis CLO 2014-5, Ltd.
6. Acis CLO 2015-6, Ltd.
7. Acis CLO Value Fund II, L.P.
8. Acis CLO Value Fund II (Cayman), L.P.
9. Acis CLO Master Fund II, L.P.
10. BayVK R2 Lux S.A., SICAV FIS
11. Hewitt's Island CLO 1-R, Ltd.
12. Acis Loan Funding, Ltd.

The Trustee reserves the right to amend or supplement this Exhibit B.

12

Case 18-30264-sgj11 Doc 1244 Filed 09/07/21 Entered 09/07/21 11:58:05 Page 190 of
Case 18-30264-sgj11 Doc 631 Filed 10/29/18 Entered 10/29/18 13:21:48 Page 123 of 172
255

# EXHIBIT "2"
# TO DISCLOSURE STATEMENT

# [Brigade CLO Materials]

Case 18-30264-sgj11 Doc 661 Filed 10/29/18 Entered 10/29/18 21:48:05 Page 62 of 72

JULY 2018

BRIGADE CLO PLATFORM





BRIGADE

CAPITAL MANAGEMENT

CONFIDENTIAL AND PROPRIETARY – NOT FOR PUBLIC DISTRIBUTION

PAST PERFORMANCE IS NOT NECESSARILY INDICATIVE OF FUTURE RESULTS

# DISCLAIMER

THIS PRESENTATION SHALL NOT CONSTITUTE AN OFFER TO SELL OR THE SOLICITATION OF ANY OFFER TO BUY WHICH MAY ONLY BE MADE AT THE TIME A QUALIFIED OFFEREE RECEIVES AN OFFERING CIRCULAR ("OFFERING CIRCULAR") DESCRIBING THE OFFERING AND RELATED SUBSCRIPTION AGREEMENT AND IN THE CASE OF ANY INCONSISTENCY BETWEEN THE DESCRIPTIONS OR TERMS IN THIS PRESENTATION AND THE OFFERING CIRCULAR, THE OFFERING CIRCULAR SHALL CONTROL. THESE SECURITIES SHALL NOT BE OFFERED OR SOLD IN ANY JURISDICTION IN WHICH SUCH OFFER, SOLICITATION OR SALE WOULD BE UNLAWFUL UNTIL THE REQUIREMENTS OF THE LAWS OF SUCH JURISDICTION HAVE BEEN SATISFIED. WHILE ALL THE INFORMATION PREPARED IN THIS PRESENTATION IS BELIEVED TO BE ACCURATE, BRIGADE CAPITAL MANAGEMENT, LP AND/OR BRIGADE CAPITAL EUROPE MANAGEMENT LLP, AS APPLICABLE, (TOGETHER, "BRIGADE") MAKE NO EXPRESS WARRANTY AS TO THE COMPLETENESS OR ACCURACY NOR CAN BRIGADE ACCEPT RESPONSIBILITY FOR ERRORS APPEARING IN THE PRESENTATION. IN PARTICULAR, CERTAIN FACTUAL INFORMATION CONTAINED HEREIN HAS BEEN OBTAINED FROM PUBLISHED SOURCES PREPARED BY OTHER PARTIES AND BRIGADE HAS NOT INDEPENDENTLY VERIFIED SUCH INFORMATION. ANY PROJECTIONS, MARKET OUTLOOKS OR ESTIMATES IN THIS PRESENTATION ARE FORWARD LOOKING STATEMENTS AND ARE BASED UPON CERTAIN ASSUMPTIONS. OTHER EVENTS WHICH WERE NOT TAKEN INTO ACCOUNT MAY OCCUR AND MAY SIGNIFICANTLY AFFECT THE RETURNS OR PERFORMANCE. ANY PROJECTIONS, OUTLOOKS OR ASSUMPTIONS SHOULD NOT BE CONSTRUED TO BE INDICATIVE OF THE ACTUAL EVENTS WHICH WILL OCCUR. INVESTMENT PARAMETERS MAY CHANGE AT ANY TIME. UNLESS STATED OTHERWISE, ANY PERFORMANCE AND RETURNS REFLECTED HEREIN INCLUDE BOTH REALIZED AND UNREALIZED GAINS AND LOSSES. THIS PRESENTATION IS NOT INTENDED FOR PUBLIC USE OR DISTRIBUTION. NO REGULATOR HAS APPROVED OR ENDORSED BRIGADE OR ANY PRODUCTS MANAGED BY BRIGADE. BRIGADE RESERVES THE RIGHT TO CHANGE ANY TERMS OF AN OFFERING AT ANY TIME. ANY OFFER AND SALE OF SECURITIES WILL BE MADE ONLY PURSUANT TO THE RELEVANT OFFERING CIRCULAR AND IN ACCORDANCE WITH THE APPLICABLE SECURITIES LAWS, AND THIS PRESENTATION IS QUALIFIED IN ITS ENTIRETY BY REFERENCE TO SUCH DOCUMENTATION, INCLUDING ANY RISK FACTORS AND POTENTIAL CONFLICTS OF INTEREST DISCLOSURE SET FORTH THEREIN.

THIS PRESENTATION IS STRICTLY CONFIDENTIAL AND IS PROVIDED EXCLUSIVELY FOR THE USE OF THE PERSON TO WHOM BRIGADE HAS DELIVERED IT IN CONNECTION WITH ONGOING OR INTENDED DISCUSSIONS WITH BRIGADE REGARDING ITS INVESTMENT PRODUCTS AND SERVICES. CERTAIN INFORMATION IN THIS PRESENTATION, INCLUDING THE PERFORMANCE FIGURES CONTAINED HEREIN, REQUIRE FURTHER EXPLANATION AND SHOULD BE DISCUSSED WITH YOUR BRIGADE REPRESENTATIVES. ACCORDINGLY, SUCH INFORMATION SHOULD NOT BE RELIED ON ABSENT SUCH DISCUSSIONS. THIS PRESENTATION MAY NOT BE REPRODUCED OR REDISTRIBUTED IN WHOLE OR IN PART. BRIGADE DISCLAIMS ANY OBLIGATION TO UPDATE THIS DOCUMENT TO REFLECT SUBSEQUENT DEVELOPMENTS. YOU AND YOUR ADVISOR(S) SHOULD CONSIDER ANY LEGAL, TAX AND ACCOUNTING MATTERS RELEVANT TO ANY INVESTMENTS DISCUSSED HEREIN OR ARISING THEREFROM. THIS PRESENTATION IS BEING FURNISHED TO YOU ON THE CONDITION THAT IT WILL NOT FORM A PRIMARY BASIS FOR ANY INVESTMENT DECISION. THE PAST PERFORMANCE OF ANY INVESTMENT VEHICLE OR ACCOUNT MANAGED OR ADVISED BY BRIGADE OR ITS PRINCIPALS IS NOT NECESSARILY INDICATIVE OF THE FUTURE RESULTS OF SUCH VEHICLES OR ACCOUNTS. ANY PORTFOLIO CONSTRUCTION PARAMETERS MENTIONED HEREIN ARE MEASURED AT THE TIME OF INVESTMENT UNLESS OTHERWISE NOTED. WHILE BRIGADE GENERALLY EXPECTS TO ADHERE TO SUCH PARAMETERS DURING NORMAL MARKET CONDITIONS, THEY ARE TARGETS AND NOT INVESTMENT RESTRICTIONS. BRIGADE MAY MODIFY ITS PORTFOLIO CONSTRUCTION TARGETS AT ANY TIME AND IN ANY MANNER WHICH IT BELIEVES IS CONSISTENT WITH ITS OVERALL INVESTMENT OBJECTIVE IN RESPONSE TO MARKET CONDITIONS OR OTHER FACTORS WITHOUT NOTICE TO INVESTORS OR CLIENTS. AN INVESTOR CAN LOSE ALL OR A SUBSTANTIAL PORTION OF THEIR INVESTMENT. FIRM ASSETS UNDER MANAGEMENT AND STRATEGY ASSETS ARE UNAUDITED AND SUBJECT TO CHANGE.

PAST PERFORMANCE IS NOT NECESSARILY INDICATIVE OF FUTURE RESULTS.





BRIGADE
CAPITAL MANAGEMENT

Case 18-30264-sgj11 Doc 1244 Filed 09/07/21 Entered 09/07/21 11:58:05 Page 193 of 255
Case 18-30264-sgj11 Doc 661-44 Filed 10/29/18 Entered 10/29/18 21:48:05 Page 23 of 72

3

# EXECUTIVE SUMMARY[1]

## FIRM OVERVIEW

- Brigade was founded in 2006 and is led by Donald E. Morgan III, CIO and Managing Partner.
- Brigade manages approximately $20.1 billion in assets across multiple credit strategies.
- Headquartered in New York with affiliated offices in London, Tokyo, and Sydney.
- 111 professionals globally, including a 47-person investment team.
- 22 employee/member equity partners who have each made a significant investment in the Brigade funds.

## BRIGADE VALUE PROPOSITION

- 30 person global credit research team with deep sector expertise and experience across multiple credit cycles in the leveraged finance market.
- Bottom-up, fundamental research-based process focused on free cash flow generation and asset coverage.
- Team of 12 traders globally, including 1 dedicated loan trader, with strong capital market relationships.
- Actively trading the portfolio based on price target upside/downside to build par and optimize WAS, WARF and Diversity.
- In-house developed software, Themis, allows PMs to monitor portfolio on a line item basis, track deal statistics, run hypothetical trades, and give orders to our traders.

## BRIGADE CLO MANAGEMENT

- Brigade has issued 15 CLOs[2] and currently manages $5.3bn[3] in CLOs across 12 active transactions[4], globally.
- Brigade's first CLO was issued in July 2007. Brigade's first European CLO was issued in July 2017.
- Jared Worman was appointed CLO Portfolio Manager in July 2016. Mr. Morgan, Brigade's CIO, remains actively involved in the Brigade CLO management process.
- Mr. Worman leverages Brigade's expertise in corporate credit research and structured credit analysis to build out the firm's long term CLO management franchise.
- $846mm flagship structured credit fund launched in August 2014. The firm has successfully invested in cash and synthetic structured products since 2008.
- Approximately $1.5bn in CLO tranche investments managed across the firm's various strategies.
- Brigade's first CDO closed in March 2018. This $400mm deal invests in both US loans and bonds.

[1] Data is as of 7/1/2018.
[2] Includes 12 US CLOs, 2 European CLOs and 1 US CDO
[3] CLO AUM depicts the notional amount of debt outstanding to investors as of 4/30/2018.
[4] Includes 9 US CLOs, 2 European CLOs and 1 US CDO.





BRIGADE
CAPITAL MANAGEMENT

PAST PERFORMANCE IS NOT NECESSARILY INDICATIVE OF FUTURE RESULTS.

# THE BRIGADE CREDIT PLATFORM[1]

**Currently managing over $5.3bn[2] in total collateralized loan obligations while leveraging the scope of a $20.1bn[1] credit platform**



TOTAL FIRM AUM
$20.1 BILLION
(as of 7/1/2018)

**OPPORTUNISTIC CREDIT**
Commingled Fund
Managed Accounts
$5.1bn

**CUSTOMIZED CREDIT MANDATES**
Managed Accounts
$2.4bn

**HEDGE FUNDS**
Long/Short Credit Fund
Structured Credit Fund
Distressed Value Fund
Energy Opportunities Funds
Managed Accounts
$4.5bn

**COLLATERALIZED LOAN OBLIGATIONS**
Battalion Series (U.S.)
Armada Series (EUR)
Brigade Debt Funding Series
$5.3bn[2]

**LONG-ONLY HIGH YIELD**
Managed Accounts
$3.0bn



BRIGADE
CAPITAL MANAGEMENT

1 AUM is as of 7/1/2018.
2 CLO AUM depicts the notional amount of debt outstanding to investors as of 4/30/2018. Includes 8 US CLOs, 2 European CLOs and 1 US CDO.

PAST PERFORMANCE IS NOT NECESSARILY INDICATIVE OF FUTURE RESULTS.

4

Case 18-30264-sgj11 Doc 1244 Filed 09/07/21 Entered 09/07/21 11:59:05 Page 195 of 255
Case 18-30264-sgj11 Doc 661-44 Filed 10/29/18 Entered 10/29/18 21:48:05 Page 123 of 172

5

# BRIGADE CREDIT STRATEGIES

## Approximately $13 billion, or over 66% of AUM is dedicated to long only/long biased credit strategies

| Strategy | Credit Absolute Return Long/Short | Corporate Structured Credit Long/Short | Distressed/ Stressed Credits Long/Short | Energy Long/Short | Long Biased Credit, Macro short (when applicable) | High Yield and Other Long Only Strategies | CLO Collateral Manager |
|---|---|---|---|---|---|---|---|
| Fund/Strategy | Brigade Leveraged Capital Structures Fund | Brigade Structured Credit Strategy | Brigade Distressed Value Fund | Brigade Energy Opportunities Funds I & II ("Fund I" & "Fund II") | Opportunistic Credit Strategy | Long Only Accounts | CLO Battalion and Armada Series |
| AUM[9] 7/1/2018 | $2.5bn | $1bn | $236mm | $403mm (Fund I); $183mm (Fund II) | $5.1bn | $3.0bn | $5.3bn[8] |
| Inception Date | 1/1/2007 | 8/1/2014 | 1/1/2011 | 5/1/2015 | 3/1/2009 | 4/1/2009 | 7/1/2007 |
| Annualized Return ITD[1] 6/30/2018 | 5.96%[2] | 7.85%[3] | 6.36%[4] | 6.30%[5] | 6.82%[6] | 12.92%[7] | - |

1 The presented net returns assume the reinvestment of all earnings. The 2018 returns were prepared based on unaudited estimates, and the 2007-2017 returns were prepared based on audited financial statements. The returns reflected herein include both realized and unrealized gains and losses.
2 Brigade Leveraged Capital Structures Fund LP
3 Brigade Structured Credit Fund LP
4 Brigade Distressed Value Fund LP
5 Brigade Energy Opportunities Fund LP
6 Brigade Credit Fund III LP
7 Brigade Traditional High Yield Strategy Representative Account
8 CLO AUM depicts the notional amount of debt outstanding to investors as of 6/30/2018. Includes 9 US CLOs, 2 European CLOs and 1 US CDO.
9 Excludes $2.4bn of additional AUM in other separately managed accounts.

PAST PERFORMANCE IS NOT NECESSARILY INDICATIVE OF FUTURE RESULTS.



BRIGADE
CAPITAL MANAGEMENT

# BRIGADE INVESTMENTS [1]

## Brigade manages approximately $8.6 billion in leveraged loans across the spectrum of Brigade investment strategies



Bank Debt ($8.6bn), 48.3% [2]

Bonds ($6.8bn), 37.9%

Collateralized Loan Obligations ($1.4bn), 7.6% [3]

Other ($300mm), 1.9% [3]

Equities ($800mm), 4.3%

PAST PERFORMANCE IS NOT NECESSARILY INDICATIVE OF FUTURE RESULTS.



**BRIGADE**
CAPITAL MANAGEMENT

[1] Firm wide AUM is as of 6/30/2018. Excludes Cash.
[2] Bank Debt invested AUM includes the value of investments held within Collateralized Loan Obligations that are in warehousing.
[3] Other includes ABS, Synthetic Credit and Other Assets

# BRIGADE INVESTMENT TEAM[1]

**DONALD E. MORGAN III, CFA**
MANAGING PARTNER
Chief Investment Officer
25 years

## STRATEGY HEADS

- Steve Bleier, Co-PM Structured Credit, Co-Head of Trading, 20 Years
- Dylan Ross, Co-PM Structured Credit, Trader, 12 Years
- Ivan Kosticevic, PM of Distressed, Head of Distressed Research, 22 Years
- Doug Pardon, PM of Opportunistic Credit and Long Only High Yield, 17 Years
- Gregory Soeder, Head of Portfolio Strategy, 21 Years
- J. Carney Hawks, PM of Energy, Head of Special Situations, 22 Years
- Thomas O'Shea, Head of European Investments, 22 Years

**JARED WORMAN**
CLO PORTFOLIO MANAGER
16 years

| | | | |
|---|---|---|---|
| **Sumit Sabbok** Technology 18 Years | **Kunal Banerjee, CFA** Chemicals 18 Years | **Christopher Chaice** Senior Credit Attorney 18 Years | **Scott Hoffman** Energy/Power 18 Years |
| **David You** Distressed 11 Years | **Meagan Bennett** Airlines, Power & Oil Services 12 Years | **Luc-Antoine Lebard** European Technology, Media & Telecom 12 Years | **Nail Jacob** European Retail & Consumer Products 13 Years |
| **Akshay Nagia** Energy & Power 7 Years | **Doug Ingraham** Aviation 7 Years | **Cecil Boex** Europe 7 Years | **Adam Truslay** Industrials & Special Situations 9 Years |
| **Siddhartha Dastidar, PhD** Risk Officer 14 Years | **Rob Lefkowitz, CFA CAIA FRM** Director of Risk 24 Years | **Emily Keinz** Senior Portfolio Analyst 10 Years | **Sandro Carissimo** Chemicals & Gaming 3 Years |
| **Charles Bartels** Trader 13 Years | **Justin Pauley** Senior Structured Credit Analyst 14 Years | **Susanta Basu, PhD** Quantitative Analyst 14 Years | **Mitch Rosen** CMBS Analyst 17 Years |

| | | | |
|---|---|---|---|
| **Simon Braith** Australia 20 Years | **John Baylis** Media & Cable 21 Years | **Raymond Garson** Healthcare 23 Years |
| **Matthew Vedola** Distressed 13 Years | **Kensuke Fushitani** Asian Markets 17 Years | **Niall Sheehan** European Industrials 17 Years |
| **Patrick Evans** Credit Attorney 9 Years | **Max Scherr** Financials 10 Years | **Matthew Perkal** Retail & Consumer Products 10 Years |
| **Colin Howard** Healthcare 5 Years | **Tyler Williams-Sinclair** Technology & Media 5 Years | **Patrick Robb** Gaming, Homebuilding & Autos 5 Years |
| **Michael Walker** Trader 22 Years | **Xavier Mimaud** Trader 23 Years | **Russ DiMimni** Co-Head of Trading 25 Years |
| **Michael Bennett** Trading Assistant 5 Years | **Byron Maturo, CFA** Derivatives Trader 9 Years | **Jordan Chirico** Senior Structured Product Analyst 12 Years |

[1] Reflects years of relevant industry experience



PAST PERFORMANCE IS NOT NECESSARILY INDICATIVE OF FUTURE RESULTS.

**BRIGADE**
CAPITAL MANAGEMENT

# BRIGADE CLOs OUTSTANDING[1]

| Deal Name | Closing Date | Reinvestment End Date | Current Liability Balance[3] | WAS[4] | WARF | Diversity Score | Weighted Average Facility Size (mm) | Second Lien | Equity NAV[5] | Change in NAV (Last 12 months) |
|---|---|---|---|---|---|---|---|---|---|---|
| **EFFECTIVE** | | | | | | | | | | |
| Battalion 5[6] | 4/24/2014 | 4/17/2018 | $416,500,000 | N/A | N/A | N/A | N/A | N/A | 29.2 | 11.8 |
| Battalion 6[6] | 10/16/2014 | 10/17/2018 | $461,100,000 | N/A | N/A | N/A | N/A | N/A | 28.9 | 13.1 |
| Battalion 7 | 11/19/2014 | 10/17/2018 | $411,500,000 | 3.54 | 2,855 | 61 | $1,160 | 1.31% | 37.8 | 7.0 |
| Battalion 8 | 4/9/2015 | 7/18/2022 | $505,775,000 | 3.65 | 2,887 | 75 | $1,299 | 1.08% | 65.1 | 3.0 |
| Battalion 9 | 7/29/2015 | 7/15/2020 | $509,200,000 | 3.61 | 2,897 | 73 | $1,284 | 1.10% | 54.6 | 3.6 |
| Battalion 10 | 12/8/2016 | 1/24/2021 | $404,300,000 | 3.55 | 2,734 | 71 | $1,291 | 1.31% | 87.8 | (1.6) |
| Battalion 11 | 9/21/2017 | 10/24/2021 | $651,750,000 | 3.55 | 2,719 | 71 | $1,250 | 1.24% | 76.9 | N/A |
| Battalion 12 | 5/16/2018 | 5/17/2023 | $612,000,000 | 3.56 | 2,788 | 71 | $1,226 | 1.26% | 70.1 | N/A |
| Armada 1[2] | 9/21/2017 | 10/24/2021 | $430,922,997 | 3.58 | 2,740 | 46 | €596 | 0.00% | 63.0 | N/A |
| BDF 1[7] | 3/14/2018 | N/A | $408,100,000 | 4.97 | 3,112 | 66 | $1,059 | 2.32% | 90.0 | N/A |
| **TOTAL** | | | **$4,811,147,997** | | | | | | | |
| **NOT YET EFFECTIVE** | | | | | | | | | | |
| Armada 2[2] | 4/26/2018 | 5/15/2022 | $480,487,334 | 3.57 | 2,726 | 45 | €585 | 0.00% | N/A | N/A |
| **TOTAL** | | | **$480,487,334** | | | | | | | |
| **GRAND TOTAL** | | | **$5,291,635,331[8]** | | | | | | | |

1 Source: Themis, Brigade internal system, as of 6/30/2018. The above information is given in relation to previous Brigade CLO issuances. CLO issuances that are in a post-reinvestment period have been excluded. CLO issuances have varied and these examples are not reflective of all past or future CLO portfolio construction or performance. Future CLO issuances, construction, and performance will vary from the above examples.
2 Armada deals are managed by Brigade's controlled affiliate in the UK, Brigade Capital Europe Management LLP.
3 Current liability balance shown in USD.
4 WAS incorporates spread, fixed coupons and loan floor (when it is above LIBOR for Battalion deals and EURIBOR for Armada deals).
5 Equity NAV not meaningful until effective date.
6 Battalion 5 and Battalion 6 are in the process of being redeemed.
7 BDF 1 refers to Brigade Debt Funding 1, Brigade's first CBO.
8 CLO AUM depicts the notional amount of debt outstanding to investors as of 6/30/2018.



BRIGADE
CAPITAL MANAGEMENT

PAST PERFORMANCE IS NOT NECESSARILY INDICATIVE OF FUTURE RESULTS.

Case 18-30264-sgj11 Doc 1241 Filed 09/07/21 Entered 09/07/21 11:59:05 Page 199 of 255
Case 18-30264-sgj11 Doc 6614 Filed 10/29/16 Entered 10/29/16 18:24:48:05 Page 199 of 172

9

# CLO INVESTMENT PROCESS: INVESTMENT SUMMARY

**Portfolio is rotated to opportunities identified by fundamental research and experience with credit cycle conditions**

## STRUCTURE

- Deep understanding of different investor objectives
- Balanced approach to portfolio management focused on par build
- Rigorous modeling of ratings, default, and price scenarios

## PORTFOLIO CONSTRUCTION

- Balanced single-name approach based on credit research, relative value, and rating
- Focus on liquid loans traded by large bracket banks
- Daily monitoring of line items by proprietary Brigade rating system and target exposure
- Diversify exposure at issuer, industry and geography levels
- Conservative but active management, limiting use of second liens and CCC's, with a focus on building par



STRUCTURE

PORTOLIO CONSTRUCTION

FUNDAMENTAL RESEARCH

## FUNDAMENTAL RESEARCH

- Rely on strength of credit research team, over half of which has more than a decade of experience covering specific sectors
- Rigorous modeling and discussion with PM before positions are initiated
- Focus on free cash flow, asset coverage, and downside protection in assessing relative value
- Key criteria include: strength of management, barriers to entry, history through the cycle, and credit documents
- Experienced team willing to take on an active role in structuring more difficult deals

While Brigade generally expects to adhere to the above exposures during normal market conditions, such exposures are targets and not investment restrictions. Brigade may modify its portfolio exposure targets at any time and in any manner which it believes is overall investment objective in response to market conditions or other factors without notice to investors or clients.

PAST PERFORMANCE IS NOT NECESSARILY INDICATIVE OF FUTURE RESULTS.



**BRIGADE**
CAPITAL MANAGEMENT

# EXHIBIT "3"
# TO DISCLOSURE STATEMENT

# [Plan Projections]

*Prepared at the Request of Counsel*

# Disclaimer

These materials, which were prepared by Miller Buckfire & Co., LLC (the "Firm") in September 2018 may not be used or relied upon or further distributed fo agreed in writing by the Firm. These materials are based on publicly available information and confidential information from Robin Phelan, the Chapter 1 Capital Management, L.P. and Acis Capital Management GP, L.L.C. (collectively, the "Debtors"), the Debtors, and their respective employees, professiona agents. The Firm assumes no responsibility to investigate or verify such information and has relied on the completeness and accuracy of such information. such information includes estimates and forecasts of future financial performance or other future developments, the Firm has assumed that such estimates reasonable. No representation or warranty, express or implied, is made as to the accuracy or completeness of such information and nothing contained her relied upon as, a representation, whether as to the past, the present or the future. These materials are necessarily based upon information available to the financial, bond market, legal, economic, policy and other conditions and circumstances existing and disclosed to the Firm as of the date hereof, all of whic change. These materials speak as of the date of their preparation, except as otherwise noted. The Firm does not have any obligation to update, bring-down reaffirm these materials. Under no circumstances should the delivery of these materials imply that any information or analyses included would be the same other date. Any valuation, projection or other estimate contained herein is only an approximation, subject to uncertainties and contingencies, all of which are and beyond the control of the Firm, and thus nothing herein is intended to be, and should not be construed in any respect as, a statement or guaranty of va materials must be considered in their totality. The Firm is not acting in any capacity as a fiduciary of any party. These materials are not intended to provide evaluating, and should not be considered a recommendation with respect to, any transaction or other matter. These materials are not an offer or solicitatio securities and are not a commitment by anybody to provide or arrange any financing or trade in any related security. These materials may not reflect inform other professionals of the Firm and its affiliates. the Firm and its affiliates provide no legal, accounting or tax advice. Accordingly, any statements containec matters were neither written nor intended by the Firm or its affiliates to be used and cannot be used by any taxpayer for the purpose of avoiding tax penalti imposed on such taxpayer. All persons should seek legal, accounting and tax advice based on their particular circumstances from independent advisors re on them of anything described herein. The Firm or its personnel may make statements or provide advice that is contrary to the information contained in the

1

# Plan Projections (4 Resets) as of September 27, 2018

## Assets Available for Distribution

| | Unaudited Balance | Schedule Reference |
|---|---|---|
| Cash[1] | $3,757,369 | A |
| Accounts Receivable | 4,641,292 | |
| HCLOF Receivable[2] | 3,000,000 | B |
| Revenue under PMAs | 1,039,902 | B |
| Sub-Servicing Fees due to Brigade and Cortland | (543,940) | |
| Other Claims and Causes of Action | TBD | |
| Intellectual Property and Other Related Assets | TBD | |
| **Assets Available for Distribution** | **$11,894,624** | |

## Reorganized Acis

| | Estimated Cash Flows | | | | Estimated Recovery % | Schedule Reference |
|---|---|---|---|---|---|---|
| | Year 1 | Year 2 | Year 3 | Total | | |
| Revenue under PMAs | $8,236,154 | $8,012,400 | $5,017,700 | $21,266,254 | | C |
| Servicing Fees to Brigade | (3,071,776) | (2,817,233) | (1,640,046) | (7,529,054) | | C |
| Corporate Income Taxes (21%) | (1,056,302) | (1,090,286) | (709,907) | (2,855,905) | | C |
| **Distributable Cash from Reorganized Acis Claims** | **$4,108,076** | **$4,104,872** | **$2,668,347** | **$10,881,294** | | D |
| U.S. Trustee Ongoing Fees[3] | (39,737) | (41,016) | (21,090) | (101,843) | | D |
| Deferred Administrative Expenses | | | | | | D |
| Distributions to the Unsecured Cash Flow Note | (4,068,339) | (265,830) | - | (4,334,169) | | D |
| Distributions to Class 4B Claims | - | (3,798,025) | (874,115) | (4,672,140) | | D |
| **Distributable Cash for Equity Interests** | **-** | **-** | **$1,773,142** | **$1,773,142** | | |

## Estimated Creditor Recoveries

| | Claim | Effective Date | Estimated Creditor Recoveries | | | | Estimated Recovery % | Schedule Reference |
|---|---|---|---|---|---|---|---|---|
| | | | Year 1 | Year 2 | Year 3 | Total | | |
| **Class 1 – Secured Tax Claims** | TBD | TBD | TBD | TBD | TBD | TBD | - | |
| **Administrative Expenses** | | | | | | | | |
| Trustee and Professional Fees & Expenses | $5,093,796 | $5,093,796 | - | - | - | $5,093,796 | 100% | E |
| Oaktree Break-Up Fees, Expenses & Equivalent Revenue[4] | 2,455,053 | 2,455,053 | - | - | - | 2,455,053 | 100% | F |
| Highland Payable as Sub-Servicer[5] | - | - | - | - | - | - | - | G |
| Brigade Payable as Sub-Advisor | 5,570 | 5,570 | - | - | - | 5,570 | 100% | H |
| Cortland Payable as Sub-Servicer | 27,000 | 27,000 | - | - | - | 27,000 | 100% | H |
| **Priority Tax Claims** | TBD | TBD | TBD | | | TBD | | |
| **Class 2 - Terry Claims[6]** | 7,168,294 | 3,633,293 | 3,427,027 | 223,926 | - | 7,284,246 | 102% | D |
| **Class 3 - General Unsecured Claims[6]** | 1,341,429 | 679,912 | 641,312 | 41,904 | - | 1,363,128 | 102% | D |
| **Class 4 - Insider Claims** | | | | | | | | |
| Class 4A (Highland Claim) | TBD | TBD | TBD | TBD | TBD | TBD | - | D |
| Class 4B (Equitable Subordinated Claims)[6][7] | 4,672,140 | - | - | 3,798,025 | 874,115 | 4,672,140 | 100% | D |
| **Class 5 - Interests** | N/A | - | - | - | - | - | - | |
| **Total Consolidated Claims** | **$20,763,283** | **$11,894,624** | **$4,068,339** | **$4,063,856** | **$874,115** | **$20,900,934** | | |
| **Distributable Cash for Equity Interests** | | | | | **$1,773,142** | **$1,773,142** | | |

**Footnotes:**

Note: Assumes Plan Effective Date on October 31, 2018. Assumes no expenses are passed through to the CLOs. Does not include recoveries from any claims or causes of action. Assumes $1 million of Joshua Terry's claim is equalized.

(1) Per August 31, 2018 Bank of Texas Balance plus deposit and check activity through September 27, 2018. Pro forma for $2.5 million payment to Oaktree on September 19, 2018 per Docket #587.

(2) A successful recovery of the November 3, 2017 transfer of the Acis LP Note Receivable from Highland is estimated at $9.5 million. Highland CLO Management Ltd. agreed to reimburse Acis LP (or pay its vendors directly) up to $3 million (up to $2 million of future legal expenses and up to $1 million of non-future accounting/administrative expenses) per Docket #118 filed on April 13, 2018. Please reference Docket #118 for further information on the transfer.

(3) Included at the request of counsel.

(4) The U.S. Trustee and Chapter 11 Trustee are in the process of reviewing the attorneys' fees and expenses requested by Oaktree for reasonableness. The amount reflected is the amount requested by Oaktree as an expense reimbursement, but the amount ultimately allowed may be different depending upon the resolution of any objections.

(5) Highland post-petition sub-servicer fees shown on Schedule G are approximately $2.6 million. However, the Chapter 11 Trustee estimates recoupment and other counterclaims may exceed this value, as such, the Highland claim is shown at $0 value.

(6) Per filed proof of claims and undisputed scheduled claims.

(7) Assumes Highland Claim will be subject to equitable subordination.

# Plan Projections (No Resets) as of September 27, 2018

*Prepared at the Request of Counsel*

## Assets Available for Distribution

| Assets Available for Distribution | Unaudited Balance | Schedule Reference |
|---|---|---|
| Cash[1] | $3,757,369 | A |
| Accounts Receivable | 4,641,292 | |
| HCLOM Receivable[2] | 3,000,000 | B |
| Revenue under PMAs | 1,039,902 | B |
| Sub-Servicing Fees due to Brigade and Cortland | (543,940) | |
| Other Claims and Causes of Action | TBD | |
| Intellectual Property and Other Related Assets | TBD | |
| **Assets Available for Distribution** | **$11,894,624** | |

| Reorganized Acis | Estimated Cash Flows | | | | Schedule Reference |
|---|---|---|---|---|---|
| | Year 1 | Year 2 | Year 3 | Total | |
| Revenue under PMAs | $8,068,517 | $6,570,840 | TBD | $14,639,357 | C |
| Servicing Fees to Brigade | (3,008,912) | (2,217,659) | - | (5,226,571) | C |
| Corporate Income Taxes (21%) | (1,034,193) | (913,263) | - | (1,947,456) | C |
| **Distributable Cash for Reorganized Acis Claims** | **$4,026,411** | **$3,439,919** | **TBD** | **$7,465,330** | |
| U.S. Trustee Ongoing Fees[5] | (38,905) | (34,356) | - | (73,261) | D |
| Deferred Administrative Expenses | - | - | TBD | - | D |
| Distributions to the Unsecured Cash Flow Note | (3,986,506) | (349,198) | - | (4,335,705) | D |
| Distributions to Class 4B Claims | - | (3,056,364) | - | (3,056,364) | D |
| **Distributable Cash for Equity Interests** | | | | | |

## Estimated Creditor Recoveries

| | Claim | Effective Date | Estimated Creditor Recoveries | | | | Estimated Recovery % | Schedule Reference |
|---|---|---|---|---|---|---|---|---|
| | | | Year 1 | Year 2 | Year 3 | Total | | |
| **Class 1 - Secured Tax Claims** | TBD | TBD | TBD | TBD | TBD | TBD | - | |
| **Administrative Expenses** | | | | | | | | |
| Trustee and Professional Fees & Expenses | $5,093,796 | $5,093,796 | - | - | - | $5,093,796 | 100% | E |
| Oaktree Break-Up Fees, Expenses & Equivalent Revenue[4] | 2,455,053 | 2,455,053 | - | - | - | 2,455,053 | 100% | F |
| Highland Payable as Sub-Servicer[5] | - | - | - | - | - | - | - | G |
| Brigade Payable as Sub-Advisor | 5,570 | 5,570 | - | - | - | 5,570 | 100% | H |
| Cortland Payable as Sub-Servicer | 27,000 | 27,000 | - | - | - | 27,000 | 100% | H |
| **Priority Tax Claims** | TBD | TBD | TBD | TBD | TBD | TBD | - | |
| **Class 2 - Terry Claim[6]** | 7,168,294 | 3,633,293 | 3,358,094 | 294,153 | - | 7,285,539 | 102% | |
| **Class 3 - General Unsecured Claims[6]** | 1,341,429 | 679,912 | 628,413 | 55,046 | - | 1,363,370 | 102% | |
| **Class 4 - Insider Claims** | | | | | | | | |
| Class 4A (Highland Claim) | TBD | TBD | TBD | TBD | TBD | TBD | - | |
| Class 4B (Equitable Subordinated Claims)[6][7] | 4,672,140 | - | - | 3,056,364 | - | 3,056,364 | 65% | |
| **Class 5 - Interests** | N/A | - | - | - | - | - | - | |
| **Total Consolidated Claims** | **$20,763,283** | **$11,894,624** | **$3,986,506** | **$3,405,563** | **-** | **$19,286,693** | | |
| **Distributable Cash for Equity Interests** | | - | - | - | - | | | |

**Footnotes:**

Note: Assumes Plan Effective Date on October 31, 2018. Assumes no expenses are passed through to the CLOs. Does not include recoveries from any claims or causes of action. Assumes $1 million of Joshua Terry's claim is equalized.

(1) Per August 31, 2018 Bank of Texas Balance plus deposit and check activity through September 27, 2018. Pro forma for $2.5 million payment to Oaktree on September 19, 2018 per Docket #587.

(2) A successful recovery of the November 3, 2017 transfer of the Acis LP Note Receivable from Highland is estimated at $9.5 million. Highland CLO Management Ltd. agreed to reimburse Acis LP (or pay its vendors directly) up to $3 million (up to $2 million of future legal expenses and up to $1 million for future accounting/administrative expenses) per Docket #118 filed on April 13, 2018. Please reference Docket #118 for further information on the transfer.

(3) Included at the request of counsel.

(4) The U.S. Trustee and Chapter 11 Trustee are in the process of reviewing the attorneys' fees and expenses requested by Oaktree for reasonableness. The amount reflected is the amount requested by Oaktree as an expense reimbursement, but the amount ultimately allowed may be different depending upon the resolution of any objections.

(5) Highland post-petition sub-servicer fees shown on Schedule G are approximately $2.6 million. However, the Chapter 11 Trustee estimates recoupment and other counterclaims may exceed this value, as such, the Highland claim is shown at $0 value.

(6) Per filed proof of claims and undisputed scheduled claims.

(7) Assumes Highland Claim will be subject to equitable subordination.

## Plan Projections as of September 27, 2018

## Schedule A: Accounts Receivable

| Portfolios | Par Amount[1] | Management Fee[2] | Days | Estimated Realization Percentage | Estimated Revenue to be Collected |
|---|---|---|---|---|---|
| ACIS CLO 2013-1[3] | $179,003,047 | 50 bps | 1/24/18 - 9/27/18 | 100% | $975,019 |
| ACIS CLO 2014-3 | 413,250,000 | 40 bps | 11/1/17 - 9/27/18 | 100% | 1,515,250 |
| ACIS CLO 2014-4 | 500,750,000 | 40 bps | 11/1/17 - 9/27/18 | 100% | 1,836,083 |
| ACIS CLO 2014-5 | 510,750,000 | 40 bps | 11/1/17 - 9/27/18 | 100% | 1,872,750 |
| ACIS CLO 2015-6 | 578,350,000 | 40 bps | 11/1/17 - 9/27/18 | 100% | 2,120,617 |
| BayVK R2 Lux S.A., SICAV-FIS[4] | 603,263,670 | 50 bps[4] | 10/1/17 - 9/27/18 | 100% | 2,796,957 |
| **Total A/R** | **$2,785,366,717** | | | | **$11,116,675** |
| Less: Received Cash Payments[5] | | | | | (6,475,383) |
| **Total A/R Balance** | | | | | **$4,641,292** |

**Footnotes:**

(1) Acis CLO 2013-1 par amount per US Bank Monthly Trustee Report dated September 10, 2018. Acis CLOs 3-6 par amounts per US Bank Monthly Trustee Reports dated August 21, 2018. BayVK R2 Lux S.A., SICAV-FIS par amount per Asset Overview dated August 14, 2018 and Generated August 16, 2018 at 14:17.

File name: (716300)-(14.08.2018)(P195641133).pdf. Converted at month-end exchange rate of 1.16 USD / EUR.

(2) Management Fees:

CLO 2013-1: Per Portfolio Management Agreement by and between Acis LP and Acis CLO 2013-1 LTD, dated March 18, 2013.

CLO 2014-3: Per Portfolio Management Agreement by and between Acis LP and Acis CLO 2014-3 LTD, dated February 25, 2014.

CLO 2014-4: Per Portfolio Management Agreement by and between Acis LP and Acis CLO 2014-4 LTD, dated June 5, 2014.

CLO 2014-5: Per Portfolio Management Agreement by and between Acis LP and Acis CLO 2014-5 LTD, dated November 18, 2014.

CLO 2015-6: Per Portfolio Management Agreement by and between Acis LP and Acis CLO 2015-6 LTD, dated April 16, 2015.

BayVK R2 Lux S.A., SICAV-FIS: Per Asset Management Agreement entered into between Acis LP and Universal-Investment-Luxembourg S.A., dated March 3, 2015.

(3) Acis CLO 2013-1 Accounts Receivable estimated using par amounts per US Bank Monthly Trustee Reports from January 10th, 2018 through August 10th, 2018.

(4) BayVK R2 Lux S.A., SICAV-FIS Accounts Receivable calculated per Annex D Calculations of Agreement for the Outsourcing of the Asset Management entered into between Universal-Investment-Luxembourg S.A, and Acis Capital Management, L.P. 50 bps shwon as illustrative approximation of management fees.

(5) Cash disbursed from U.S. Bank in August and September 2018.

4

*Prepared at the Request of Counsel*

## Plan Projections as of September 27, 2018

## Schedule B: Net Cash Flows

| Revenue Under PMAs | Par Amount[1] | Management Fee[2] | Annualized Fee | Days | Partial Year Revenue | Estimated Realization Percentage | Estimated Revenue to be Collected |
|---|---|---|---|---|---|---|---|
| ACIS CLO 2013-1 | $179,003,047 | 50 bps | $895,015 | 9/28/18 - 10/30/18 | $79,557 | 100% | $79,557 |
| ACIS CLO 2014-3 | 413,250,000 | 40 bps | 1,653,000 | 9/28/18 - 10/30/18 | 146,933 | 100% | 146,933 |
| ACIS CLO 2014-4 | 500,750,000 | 40 bps | 2,003,000 | 9/28/18 - 10/30/18 | 178,044 | 100% | 178,044 |
| ACIS CLO 2014-5 | 510,750,000 | 40 bps | 2,043,000 | 9/28/18 - 10/30/18 | 181,600 | 100% | 181,600 |
| ACIS CLO 2015-6 | 578,350,000 | 40 bps | 2,313,400 | 9/28/18 - 10/30/18 | 205,636 | 100% | 205,636 |
| BayVK R2 Lux S.A., SICAV-FIS | 603,263,670 | 50 bps[3] | 3,016,318 | 9/28/18 - 10/30/18 | 248,132 | 100% | 248,132 |
| **Total Revenue Under PMAs** | **$2,785,366,717** | | **$11,923,734** | | **$1,039,902** | | **$1,039,902** |

| Payments for Sub-Servicing | Par Amount[1] | Servicing Fee[4] | Annualized Fee | Days | Partial Year Revenue | Estimated Realization Percentage | Estimated Expenses to be Paid |
|---|---|---|---|---|---|---|---|
| ACIS CLO 2013-1 | $179,003,047 | 15 bps | $268,505 | 9/28/18 - 10/30/18 | $23,867 | 100% | $23,867 |
| ACIS CLO 2014-3 | 413,250,000 | 15 bps | 619,875 | 9/28/18 - 10/30/18 | 55,100 | 100% | 55,100 |
| ACIS CLO 2014-4 | 500,750,000 | 15 bps | 751,125 | 9/28/18 - 10/30/18 | 66,767 | 100% | 66,767 |
| ACIS CLO 2014-5 | 510,750,000 | 15 bps | 766,125 | 9/28/18 - 10/30/18 | 68,100 | 100% | 68,100 |
| ACIS CLO 2015-6 | 578,350,000 | 15 bps | 867,525 | 9/28/18 - 10/30/18 | 77,113 | 100% | 77,113 |
| BayVK R2 Lux S.A., SICAV-FIS | 603,263,670 | 25 bps[5] | 1,508,159 | 9/28/18 - 10/30/18 | 220,993 | 100% | 220,993 |
| **Total Brigade Expenses** | **$2,785,366,717** | | **$4,781,314** | | **$511,940** | | **$511,940** |
| Plus: Cortland Expenses | N/A | $30K / Month | 360,000 | 9/28/18 - 10/30/18 | 32,000 | 100% | 32,000 |
| **Total Sub-Servicing Fees due to Brigade and Cortland** | | | **$5,141,314** | | **$543,940** | | **$543,940** |

**Footnotes:**

Note: Assumes Plan Effective Date on October 31, 2018.

(1) Acis CLO 2013-1 par amount per US Bank Monthly Trustee Report dated September 10, 2018. Acis CLOs 3-6 par amounts per US Bank Monthly Trustee Reports dated August 21, 2018. BayVK R2 Lux S.A., SICAV-FIS par amount per Asset Overview dated August 14, 2018 and Generated August 16, 2018 at 14:17. File name: (716300)-(14.08.2018)(P195641133).pdf. Converted at month-end exchange rate of 1.16 USD / EUR.

(2) Management Fees:

CLO 2013-1: Per Portfolio Management Agreement by and between Acis LP and Acis CLO 2013-1 LTD, dated March 18, 2013.

CLO 2014-3: Per Portfolio Management Agreement by and between Acis LP and Acis CLO 2014-3 LTD, dated February 25, 2014.

CLO 2014-4: Per Portfolio Management Agreement by and between Acis LP and Acis CLO 2014-4 LTD, dated June 5, 2014.

CLO 2014-5: Per Portfolio Management Agreement by and between Acis LP and Acis CLO 2014-5 LTD, dated November 18, 2014.

CLO 2015-6: Per Portfolio Management Agreement by and between Acis LP and Acis CLO 2015-6 LTD, dated April 16, 2015.

BayVK R2 Lux S.A., SICAV-FIS: Per Asset Management Agreement entered into between Acis LP and Universal-Investment-Luxembourg S.A., dated March 3, 2015.

(3) BayVK R2 Lux S.A., SICAV-FIS Accounts Receivable calculated per Annex D Calculations of Agreement for the Outsourcing of the Asset Management entered into between Universal-Investment-Luxembourg S.A., and Acis Capital Management, L.P. 50 bps shown as illustrative approximation of management fees.

(4) Servicing Fees per Order Granting Emergency Motion to Approve Replacement Sub-Advisory and Shared Services Providers, Brigade Capital Management, LP and Cortland Capital Market Services LLC (Docket #464).

(5) BVK Servicing Fees are 50% of BVK management fees calculated per Footnote 2. 25bps shown as illustrative approximation of servicing fee.

5

*Plan Projections (4 Resets) as of September 27, 2018*

*Prepared at the Request of Counsel*

## Schedule C: Reorganized Debtor Cash Flow Projections

### Fee Structure

| Portfolios | Management Fees(1) All Years | Servicing Fees(2) Initial | Q2 | Q3 | Q4 | 1-Year after Reset | Reset Assumption | Reset Date Assumption |
|---|---|---|---|---|---|---|---|---|
| ACIS CLO 2013-1 | 50.0 bps | 15.0 bps | | | | | No Reset | N/A |
| ACIS CLO 2014-3 | 40.0 bps | 15.0 bps | 15.0 bps | | | 13.5 bps | Reset | End of Q2 / Year 1 |
| ACIS CLO 2014-4 | 40.0 bps | 15.0 bps | | 15.0 bps | | 13.5 bps | Reset | End of Q3 / Year 1 |
| ACIS CLO 2014-5 | 40.0 bps | 15.0 bps | | 15.0 bps | | 13.5 bps | Reset | End of Q3 / Year 1 |
| ACIS CLO 2015-6 | 40.0 bps | 15.0 bps | 15.0 bps | | | 13.5 bps | Reset | End of Q2 / Year 1 |

### Cash Flow Schedule

| | Year 1 Q1 | Year 1 Q2 | Year 1 Q3 | Year 1 Q4 | Year 2 Q1 | Year 2 Q2 | Year 2 Q3 | Year 2 Q4 | Year 3 Q1 | Year 3 Q2 | Year 3 Q3 | Year 3 Q4 |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| **Par Amounts(3)** | | | | | | | | | | | | |
| ACIS CLO 2013-1 | $179,003,047 | - | - | - | - | - | - | - | - | - | - | - |
| ACIS CLO 2014-3 | 413,250,000 | 413,250,000 | 413,250,000 | 413,250,000 | 413,250,000 | 413,250,000 | 413,250,000 | 413,250,000 | 413,250,000 | 413,250,000 | - | - |
| ACIS CLO 2014-4 | 500,750,000 | 500,750,000 | 500,750,000 | 500,750,000 | 500,750,000 | 500,750,000 | 500,750,000 | 500,750,000 | 500,750,000 | 500,750,000 | 500,750,000 | - |
| ACIS CLO 2014-5 | 510,750,000 | 510,750,000 | 510,750,000 | 510,750,000 | 510,750,000 | 510,750,000 | 510,750,000 | 510,750,000 | 510,750,000 | 510,750,000 | 510,750,000 | - |
| ACIS CLO 2015-6 | 578,350,000 | 578,350,000 | 578,350,000 | 578,350,000 | 578,350,000 | 578,350,000 | 578,350,000 | 578,350,000 | 578,350,000 | 578,350,000 | - | - |
| **Total Par Amounts** | $2,182,103,047 | $2,003,100,000 | $2,003,100,000 | $2,003,100,000 | $2,003,100,000 | $2,003,100,000 | $2,003,100,000 | $2,003,100,000 | $2,003,100,000 | $2,003,100,000 | $1,011,500,000 | - |
| **Management Fees** | | | | | | | | | | | | |
| ACIS CLO 2013-1 | 223,754 | - | - | - | - | - | - | - | - | - | - | - |
| ACIS CLO 2014-3 | 413,250 | 413,250 | 413,250 | 413,250 | 413,250 | 413,250 | 413,250 | 413,250 | 413,250 | 413,250 | - | - |
| ACIS CLO 2014-4 | 500,750 | 500,750 | 500,750 | 500,750 | 500,750 | 500,750 | 500,750 | 500,750 | 500,750 | 500,750 | 500,750 | - |
| ACIS CLO 2014-5 | 510,750 | 510,750 | 510,750 | 510,750 | 510,750 | 510,750 | 510,750 | 510,750 | 510,750 | 510,750 | 510,750 | - |
| ACIS CLO 2015-6 | 578,350 | 578,350 | 578,350 | 578,350 | 578,350 | 578,350 | 578,350 | 578,350 | 578,350 | 578,350 | - | - |
| **Total Management Fees** | $2,226,854 | $2,003,100 | $2,003,100 | $2,003,100 | $2,003,100 | $2,003,100 | $2,003,100 | $2,003,100 | $2,003,100 | $2,003,100 | $1,011,500 | - |
| **Servicing Fees** | | | | | | | | | | | | |
| ACIS CLO 2013-1 | 67,126 | - | - | - | - | - | - | - | - | - | - | - |
| ACIS CLO 2014-3 | 154,969 | 154,969 | 154,969 | 154,969 | 154,969 | 139,472 | 139,472 | 139,472 | 139,472 | 123,975 | - | - |
| ACIS CLO 2014-4 | 187,781 | 187,781 | 187,781 | 187,781 | 187,781 | 187,781 | 169,003 | 169,003 | 169,003 | 169,003 | 150,225 | - |
| ACIS CLO 2014-5 | 191,531 | 191,531 | 191,531 | 191,531 | 191,531 | 191,531 | 172,378 | 172,378 | 172,378 | 172,378 | 153,225 | - |
| ACIS CLO 2015-6 | 216,881 | 216,881 | 216,881 | 216,881 | 216,881 | 195,193 | 195,193 | 195,193 | 195,193 | 195,193 | - | - |
| **Total Servicing Fees** | $818,289 | $751,163 | $751,163 | $751,163 | $751,163 | $713,978 | $676,046 | $676,046 | $676,046 | $660,549 | $303,450 | - |
| **Operating Cash Flow** | $1,408,565 | $1,251,938 | $1,251,938 | $1,251,938 | $1,251,938 | $1,289,123 | $1,327,054 | $1,327,054 | $1,327,054 | $1,342,551 | $708,050 | - |

**Footnotes:**

Note: Assumes Quarter 1 ("Q1") of Year 1 commences on the Illustrative Plan Effective Date of October 31, 2018

Note: Assumes upon reset, servicing fees revert to 15 basis points for the following year. Grey shading indicates reset date assumption. Assumes two year non-call period.

Note: Upon reset, new reinvestment period end date assumed to be outside the timeframe of these projections.

BaylrK R2 Lux S.A., SICAV-FIS terminated immediately.

(1) Management Fees:

CLO 2013-1: Per Portfolio Management Agreement by and between Acis LP and Acis CLO 2013-1 LTD, dated March 18, 2013.

CLO 2014-3: Per Portfolio Management Agreement by and between Acis LP and Acis CLO 2014-3 LTD, dated February 25, 2014.

CLO 2014-4: Per Portfolio Management Agreement by and between Acis LP and Acis CLO 2014-4 LTD, dated June 5, 2014.

CLO 2014-5: Per Portfolio Management Agreement by and between Acis LP and Acis CLO 2014-5 LTD, dated November 18, 2014.

CLO 2015-6: Per Portfolio Management Agreement by and between Acis LP and Acis CLO 2015-6 LTD, dated April 16, 2015.

(2) Per terms agreed with Brigade Capital Management.

(3) Acis CLO 2013-1 original par amount per US Bank Monthly Trustee Report dated September 10, 2018. Acis CLOs 3-6 original par amounts per US Bank Monthly Trustee Reports dated August 21, 2018.

*Plan Projections (No Resets) as of September 27, 2018*

## Schedule C: Reorganized Debtor Cash Flow Projections

*Prepared at the Request of Counsel*

### Fee Structure

| Portfolios | Management Fees[1] — All Years | Servicing Fees[2] — Year 1 | Servicing Fees[2] — Year 2 | Reset — 1-Year after Reset | Reinvestment Period End |
|---|---|---|---|---|---|
| ACIS CLO 2013-1 | 50.0 bps | 15.0 bps | 13.5 bps | No Reset | N/A |
| ACIS CLO 2014-3 | 40.0 bps | 15.0 bps | 13.5 bps | No Reset | Q2 / Year 1 |
| ACIS CLO 2014-4 | 40.0 bps | 15.0 bps | 13.5 bps | No Reset | Q4 / Year 1 |
| ACIS CLO 2014-5 | 40.0 bps | 15.0 bps | 13.5 bps | No Reset | Q1 / Year 2 |
| ACIS CLO 2015-6 | 40.0 bps | 15.0 bps | 13.5 bps | No Reset | Q4 / Year 1 |

### Cash Flow Schedule

| | Year 1 Q1 | Year 1 Q2 | Year 1 Q3 | Year 1 Q4 | Year 2 Q1 | Year 2 Q2 | Year 2 Q3 | Year 2 Q4 | Year 3 Q1 | Year 3 Q2 | Year 3 Q3 | Year 3 Q4 |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| **Par Amounts[3]** | | | | | | | | | | | | |
| ACIS CLO 2013-1 | $179,003,047 | | - | - | - | - | - | - | - | - | - | - |
| ACIS CLO 2014-3 | 413,250,000 | 392,587,500 | 371,925,000 | 351,262,500 | 330,600,000 | 299,606,250 | 268,612,500 | 237,618,750 | - | - | - | - |
| ACIS CLO 2014-4 | 500,750,000 | 500,750,000 | 500,750,000 | 486,006,694 | 460,968,194 | 435,930,694 | 410,893,194 | 378,483,542 | - | - | - | - |
| ACIS CLO 2014-5 | 510,750,000 | 510,750,000 | 510,750,000 | 510,750,000 | 504,223,750 | 478,686,250 | 453,148,750 | 427,611,250 | - | - | - | - |
| ACIS CLO 2015-6 | 578,350,000 | 578,350,000 | 578,350,000 | 549,431,500 | 520,515,000 | 491,597,500 | 457,860,417 | 414,484,167 | - | - | - | - |
| **Total Par Amounts** | $2,182,103,047 | $1,982,437,500 | $1,961,775,000 | $1,897,450,694 | $1,816,306,944 | $1,705,820,694 | $1,590,514,861 | $1,458,197,708 | - | - | - | - |
| **Management Fees** | | | | | | | | | | | | |
| ACIS CLO 2013-1 | 223,754 | | - | - | - | - | - | - | - | - | - | - |
| ACIS CLO 2014-3 | 413,250 | 392,588 | 371,925 | 351,263 | 330,600 | 299,606 | 268,613 | 237,619 | - | - | - | - |
| ACIS CLO 2014-4 | 500,750 | 500,750 | 500,750 | 486,007 | 460,968 | 435,931 | 410,893 | 378,484 | - | - | - | - |
| ACIS CLO 2014-5 | 510,750 | 510,750 | 510,750 | 510,750 | 504,224 | 478,686 | 453,149 | 427,611 | - | - | - | - |
| ACIS CLO 2015-6 | 578,350 | 578,350 | 578,350 | 549,432 | 520,515 | 491,598 | 457,860 | 414,484 | - | - | - | - |
| **Total Management Fees** | $2,226,854 | $1,982,438 | $1,961,775 | $1,897,451 | $1,816,307 | $1,705,821 | $1,590,515 | $1,458,198 | - | - | - | - |
| **Servicing Fees** | | | | | | | | | | | | |
| ACIS CLO 2013-1 | 67,126 | | - | - | - | - | - | - | - | - | - | - |
| ACIS CLO 2014-3 | 154,969 | 147,220 | 139,472 | 131,723 | 111,578 | 101,117 | 90,657 | 80,196 | - | - | - | - |
| ACIS CLO 2014-4 | 187,781 | 187,781 | 187,781 | 182,252 | 155,577 | 147,127 | 138,676 | 127,738 | - | - | - | - |
| ACIS CLO 2014-5 | 191,531 | 191,531 | 191,531 | 191,531 | 170,176 | 161,557 | 152,938 | 144,319 | - | - | - | - |
| ACIS CLO 2015-6 | 216,881 | 216,881 | 216,881 | 206,037 | 175,674 | 165,914 | 154,528 | 139,888 | - | - | - | - |
| **Total Servicing Fees** | $818,289 | $743,414 | $735,666 | $711,544 | $613,004 | $575,714 | $536,799 | $492,142 | - | - | - | - |
| **Operating Cash Flow** | $1,408,565 | $1,239,023 | $1,226,109 | $1,185,907 | $1,203,303 | $1,130,106 | $1,053,716 | $966,056 | - | - | - | - |

**Footnotes:**

Note: Assumes Quarter 1 ("Q1") of Year 1 commences on the Illustrative Plan Effective Date of October 31, 2018

Note: Assumes CLO 2014-3, CLO 2014-4, CLO 2014-5 and CLO 2015-6 are not successfully reset and begin to wind down after the end of their reinvestment periods in February 2019, June 2019, November 2019 and May 2019, respectively. Grey shading indicates end of reinvestment period. ; Assumes Secured Notes are amortized 20% in Year 1, 30% in Year 2, and 30% thereafter, and that the deals are called at the end of the Plan Injunction.

Note: Assumes 30-day notice period for CLO 2013-1, CLO 2014-3, CLO 2014-4, CLO 2014-5 and CLO 2015-6 and 45-day notice period for CLO 2014-3. Assumes BayIVK R2 Lux S.A., ISCAV-FIS terminated immediately.

(1) Management Fees:
CLO 2013-1: Per Portfolio Management Agreement by and between Acis LP and Acis CLO 2013-1 LTD. dated March 18, 2013.
CLO 2014-3: Per Portfolio Management Agreement by and between Acis LP and Acis CLO 2014-3 LTD. dated February 25, 2014.
CLO 2014-4: Per Portfolio Management Agreement by and between Acis LP and Acis CLO 2014-4 LTD. dated June 5, 2014.
CLO 2014-5: Per Portfolio Management Agreement by and between Acis LP and Acis CLO 2014-5 LTD. dated November 18, 2014.
CLO 2015-6: Per Portfolio Management Agreement by and between Acis LP and Acis CLO 2015-6 LTD. dated April 16, 2015.

(2) Per terms agreed with Brigade Capital Management.

(3) Acis CLO 2013-1 original par amount per US Bank Monthly Trustee Report dated July 10, 2018. Acis CLOs 3-6 original par amounts per US Bank Monthly Trustee Reports dated August 21, 2018.

*Plan Projections (4 Resets) as of September 27, 2018*

## Schedule D: Distributions on Unsecured Cash Flow Note and Class 4B Claims

*Prepared at the Request of Counsel*

| | |
|---|---|
| Total Allowed Claims of Reorganized Debtor (Classes 2, 3 and 4A) | $8,509,723 |
| Net Ads Trust Assets Available for Distribution to Allowed Claims | 4,313,205 |
| **Unsecured Cash Flow Note Principal Balance** | **$4,196,518** |
| Interest Rate[1] (%) | 8% |
| Maturity | 3 Years |
| **Total Class 4B Claims Balance[2]** | **$4,672,140** |
| Deferred Administrative Expenses | |

### Unsecured Cash Flow Note Schedule

Effective Date Unsecured Cash Flow Note Principal Balance: $4,196,518

| | Year 1 Q1 | Year 1 Q2 | Year 1 Q3 | Year 1 Q4 | Year 2 Q1 | Year 2 Q2 | Year 2 Q3 | Year 2 Q4 | Year 3 Q1 | Year 3 Q2 | Year 3 Q3 | Year 3 Q4 |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Unsecured Cash Flow Note Principal Balance | 4,196,518 | 3,135,906 | 2,187,423 | 1,229,667 | 262,548 | - | - | - | | | | |
| Less: Interest | 52,456 | 39,199 | 27,343 | 15,371 | 3,282 | - | - | - | | | | |
| Less: Principal Payments | 1,060,613 | 948,483 | 957,756 | 967,119 | 262,548 | - | - | - | | | | |
| **Total Distribution to Unsecured Cash Flow Note** | **$1,113,069** | **$987,682** | **$985,098** | **$982,490** | **$265,830** | - | - | - | | | | |
| **Ending Principal Balance** | **$3,135,906** | **$2,187,423** | **$1,229,667** | **$262,548** | **-** | - | - | - | | | | |

### Class 4B Claims Schedule

| | Year 1 Q1 | Year 1 Q2 | Year 1 Q3 | Year 1 Q4 | Year 2 Q1 | Year 2 Q2 | Year 2 Q3 | Year 2 Q4 | Year 3 Q1 | Year 3 Q2 | Year 3 Q3 | Year 3 Q4 |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Total Class 4B Claims Balance[3] | 4,672,140 | 4,672,140 | 4,672,140 | 4,672,140 | 4,672,140 | 3,958,115 | 2,949,893 | 1,912,004 | 874,115 | - | - | - |
| Less: Interest | - | - | - | - | - | - | - | - | - | | | |
| Less: Principal Payments | - | - | - | - | 714,025 | 1,008,223 | 1,037,889 | 1,037,889 | 874,115 | - | - | - |
| **Total Distribution to Class 4B Claims Balance** | - | - | - | - | **$714,025** | **$1,008,223** | **$1,037,889** | **$1,037,889** | **$874,115** | - | - | - |
| **Ending Principal Balance** | **$4,672,140** | **$4,672,140** | **$4,672,140** | **$4,672,140** | **$3,958,115** | **$2,949,893** | **$1,912,004** | **$874,115** | **-** | - | - | - |

### Quarterly Cash Flow Schedule

| | Year 1 Q1 | Year 1 Q2 | Year 1 Q3 | Year 1 Q4 | Year 2 Q1 | Year 2 Q2 | Year 2 Q3 | Year 2 Q4 | Year 3 Q1 | Year 3 Q2 | Year 3 Q3 | Year 3 Q4 |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Beginning Cash Balance | - | - | - | - | - | - | - | - | - | 163,774 | 1,050,009 | - |
| Revenue under PMAs | 2,226,854 | 2,003,100 | 2,003,100 | 2,003,100 | 2,003,100 | 2,003,100 | 2,003,100 | 2,003,100 | 2,003,100 | 2,003,100 | 1,011,500 | - |
| Servicing Fees to Brigade | (818,289) | (751,163) | (751,163) | (751,163) | (751,163) | (713,977) | (676,046) | (676,046) | (676,046) | (660,549) | (303,450) | - |
| Interest Expense on Unsecured Cash Flow Note | (52,456) | (39,199) | (27,343) | (15,371) | (3,282) | - | - | - | - | - | - | - |
| **Earnings before Taxes** | **$1,356,109** | **$1,212,738** | **$1,224,595** | **$1,236,567** | **$1,248,656** | **$1,289,123** | **$1,327,054** | **$1,327,054** | **$1,327,054** | **$1,342,551** | **$708,050** | - |
| Corporate Income Taxes (21%) | (284,783) | (254,675) | (257,165) | (259,679) | (262,218) | (270,716) | (278,681) | (278,681) | (278,681) | (281,936) | (148,691) | - |
| **Ending Cash Balance for Distributions for U.S. Trustee Ongoing Fees** | **$1,071,326** | **$958,064** | **$967,430** | **$976,888** | **$986,438** | **$1,018,407** | **$1,048,372** | **$1,048,372** | **$1,048,372** | **$1,060,615** | **$559,360** | - |
| Distributions to U.S. Trustee Ongoing Fees[4] | (10,713) | (9,581) | (9,674) | (9,769) | (9,864) | (10,184) | (10,484) | (10,484) | (10,484) | (10,606) | - | - |
| **Ending Cash Balance for Distributions for Deferred Administrative Expenses** | **$1,060,613** | **$948,483** | **$957,756** | **$967,119** | **$976,574** | **$1,008,223** | **$1,037,889** | **$1,037,889** | **$1,037,889** | **$1,050,009** | **$559,360** | - |
| Distributions to Deferred Administrative Expenses | - | - | - | - | - | - | - | - | - | - | - | - |
| **Ending Cash Balance for Prinipal Payments to Unsecured Cash Flow Note** | **$1,060,613** | **$948,483** | **$957,756** | **$967,119** | **$976,574** | **$1,008,223** | **$1,037,889** | **$1,037,889** | **$1,037,889** | **$1,050,009** | **$559,360** | - |
| Distributions for Prinicipal Payments to Unsecured Cash Flow Note (Excludes Cash Paid for Interest) | (1,060,613) | (948,483) | (957,756) | (967,119) | (262,548) | - | - | - | - | - | - | - |
| **Ending Cash Balance for Distributions to Class 4B Claims** | - | - | - | - | **$714,025** | **$1,008,223** | **$1,037,889** | **$1,037,889** | **$1,037,889** | **$1,050,009** | **$559,360** | - |
| Distributions to Class 4B Claims | - | - | - | - | (714,025) | (1,008,223) | (1,037,889) | (1,037,889) | (874,115) | - | - | - |
| **Ending Cash Balance** | - | - | - | - | **-** | **-** | **-** | **-** | **$163,774** | **$1,050,009** | **$559,360** | - |

**Footnotes:**

(1) Texas Judgment Rate per the Consumer Credit Commissioner of Texas as of July 24, 2018.
(2) Per the Joint Plan, Distributions are made to Class 4B claims after Classes 2, 3 and 4A are paid in full.
(3) Per the Joint Plan, the first Distribution made on account of the Unsecured Cash Flow Note shall be made 90 days after Effective Date.
(4) Included at the request of counsel. The lesser of (i) 1% of quarterly distributable value and (ii) $250,000 per The Bankruptcy Judgeship Act of 2017, Pub. L. No. 115-72. Assumes distribution until one quarter subsequent to the last allowed claim is fulfilled.

*Plan Projections (No Resets) as of September 27, 2018*

## Schedule D: Distributions on Unsecured Cash Flow Note and Class 4B Claims

*Prepared at the Request of Counsel*

| | |
|---|---|
| Total Allowed Claims of Reorganized Debtor (Classes 2, 3 and 4A) | $8,509,723 |
| Net Acts Trust Assets Available for Distribution to Allowed Claims | 4,313,205 |
| **Unsecured Cash Flow Note Principal Balance** | **$4,196,518** |
| *Interest Rate[1] (%)* | *8%* |
| *Maturity* | *3 Years* |
| **Total Class 4B Claims Balance[2]** | **$4,672,140** |
| Deferred Administrative Expenses | - |

### Unsecured Cash Flow Note Schedule

| | Year 1 Q1 | Q2 | Q3 | Q4 | Year 2 Q1 | Q2 | Q3 | Q4 | Year 3 Q1 | Q2 | Q3 | Q4 |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Effective Date Unsecured Cash Flow Note Principal Balance | $4,196,518 | | | | | | | | | | | |
| Unsecured Cash Flow Note Principal Balance | 4,196,518 | 3,135,906 | 2,197,523 | 1,260,066 | 344,887 | - | - | - | - | - | - | - |
| Less: Interest | 52,456 | 39,199 | 27,469 | 15,751 | 4,311 | - | - | - | - | - | - | - |
| Less: Principal Payments | 1,060,613 | 938,383 | 937,457 | 915,179 | 344,887 | - | - | - | - | - | - | - |
| **Total Distribution to Unsecured Cash Flow Note** | **$1,113,069** | **$977,582** | **$964,926** | **$930,930** | **$349,198** | - | - | - | - | - | - | - |
| **Ending Principal Balance** | **$3,135,906** | **$2,197,523** | **$1,260,066** | **$344,887** | - | - | - | - | - | - | - | - |

### Class 4B Claims Schedule

| | Year 1 Q1 | Q2 | Q3 | Q4 | Year 2 Q1 | Q2 | Q3 | Q4 | Year 3 Q1 | Q2 | Q3 | Q4 |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Total Class 4B Claims Balance[3] | $4,672,140 | $4,672,140 | $4,672,140 | $4,672,140 | $4,672,140 | $4,079,296 | $3,195,440 | $2,371,328 | $1,615,776 | $1,615,776 | $1,615,776 | $1,615,776 |
| Less: Interest | - | - | - | - | 592,845 | 883,856 | 824,111 | 755,552 | - | - | - | - |
| Less: Principal Payments | - | - | - | - | - | - | - | - | - | - | - | - |
| **Total Distribution to Class 4B Balance** | - | - | - | - | **$592,845** | **$883,856** | **$824,111** | **$755,552** | - | - | - | - |
| **Ending Principal Balance** | **$4,672,140** | **$4,672,140** | **$4,672,140** | **$4,672,140** | **$4,079,296** | **$3,195,440** | **$2,371,328** | - | **$1,615,776** | **$1,615,776** | **$1,615,776** | **$1,615,776** |

### Quarterly Cash Flow Schedule

| | Year 1 Q1 | Q2 | Q3 | Q4 | Year 2 Q1 | Q2 | Q3 | Q4 | Year 3 Q1 | Q2 | Q3 | Q4 |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Beginning Cash Balance | 2,226,854 | 1,982,438 | 1,961,775 | 1,897,451 | 1,816,307 | 1,705,621 | 1,590,515 | 1,458,198 | - | - | - | - |
| Revenue under PMAs | (818,289) | (743,414) | (735,666) | (711,544) | (613,004) | (575,714) | (536,799) | (492,142) | - | - | - | - |
| Servicing Fees to Brigade | | | | | | | | | | | | |
| Interest Expense on Unsecured Cash Flow Note | (52,456) | (39,199) | (27,469) | (15,751) | (4,311) | - | - | - | - | - | - | - |
| **Earnings before Taxes** | **$1,356,109** | **$1,199,825** | **$1,198,640** | **$1,170,156** | **$1,198,992** | **$1,130,106** | **$1,053,716** | **$966,056** | - | - | - | - |
| Corporate Income Taxes (21%) | (284,783) | (251,963) | (251,714) | (245,733) | (251,788) | (237,322) | (221,280) | (202,872) | - | - | - | - |
| **Earnings before Distributions for U.S. Trustee Ongoing Fees** | **$1,071,326** | **$947,861** | **$946,926** | **$924,423** | **$947,204** | **$892,784** | **$832,436** | **$763,184** | - | - | - | - |
| Distributions to U.S. Trustee Ongoing Fees[4] | (10,713) | (9,479) | (9,469) | (9,244) | (9,472) | (8,928) | (8,324) | (7,632) | - | - | - | - |
| **Ending Cash Balance for Distributions for Deferred Administrative Expenses** | **$1,060,613** | **$938,383** | **$937,457** | **$915,179** | **$937,732** | **$883,856** | **$824,111** | **$755,552** | - | - | - | - |
| Distributions to Deferred Administrative Expenses | - | - | - | - | - | - | - | - | - | - | - | - |
| **Ending Cash Balance for Prinpal Payments to Unsecured Cash Flow Note** | **$1,060,613** | **$938,383** | **$937,457** | **$915,179** | **$937,732** | **$883,856** | **$824,111** | **$755,552** | - | - | - | - |
| Distributions to Unsecured Cash Flow Note (Excludes Cash Paid for Interest) | (1,060,613) | (938,383) | (937,457) | (915,179) | (344,887) | - | - | - | - | - | - | - |
| **Ending Cash Balance for Distributions to Class 4B Claims** | - | - | - | - | **$592,845** | **$883,856** | **$824,111** | **$755,552** | - | - | - | - |
| Distributions to Class 4B Claims | - | - | - | - | (592,845) | (883,856) | (824,111) | (755,552) | - | - | - | - |
| **Ending Cash Balance** | - | - | - | - | - | - | - | - | - | - | - | - |

**Footnotes:**

(1) Texas Judgment Rate per the Consumer Credit Commissioner of Texas as of July 24, 2018.
(2) Per the Joint Plan, Distributions are made to Class 4B claims after Classes 2, 3 and 4A are paid in full.
(3) Per the Joint Plan, the first Distribution made on account of the Unsecured Cash Flow Note shall be made 90 days after Effective Date.
(4) Included at the request of counsel. The lesser of (i) 1% of quarterly distributable value and (ii) $250,000 per The Bankruptcy Judgeship Act of 2017, Pub. L. No. 115-72. Assumes distribution until one quarter subsequent to the last allowed claim is fulfilled.

*Plan Projections as of September 27, 2018*

## Schedule E: Trustee and Professional Fees & Expenses

| Description | Estimated Amounts |
|---|---|
| U.S. Trustee Commissions[1] | $118,946 |
| Chapter 11 Trustee Commissions[2] | 380,089 |
| Existing Chapter 7 Trustee Commissions[3] | 34,905 |
| Existing Chapter 7 Trustee Counsel Fees[4] | 59,856 |
| Winstead Fees & Expenses[3] | 1,500,000 |
| Forshey Prostok Fees & Expenses[5] | 1,200,000 |
| Miller Buckfire Fees & Expenses[6] | 1,000,000 |
| Joshua Terry Administrative Claim under 503(b)(3)(A)[7] | 700,000 |
| Moss Adams (Tax Professional)[8] | 100,000 |
| **Total Trustee and Professional Fees & Expenses** | **$5,093,796** |

**Footnotes:**

(1) The lesser of (i) 1% of quarterly disbursements or (ii) $250,000 per The Bankruptcy Judgeship Act of 2017, Pub. L. No. 115-72.

(2) Per 11 U.S. Code § 326 (Section 330) on limitation on compensation of trustee.

(3) Per Winstead, Chapter 11 Trustee counsel, estimate.

(4) Per filed Fee Application.

(5) Per Forshey Prostok, Chapter 11 Trustee counsel, estimate.

(6) Per Miller Buckfire estimate.

(7) Estimate provided by counsel to Joshua Terry. Claim is subject to notice, hearing and Bankruptcy court approval. Trustee has agreed to neither the allowance nor the amount of this claim.

(8) Per Chapter 11 Trustee estimate.

*Prepared at the Request of Counsel*

*Plan Projections as of September 27, 2018*

## Schedule F: Oaktree Break-Up Fee, Expenses & Equivalent Revenue

| | Estimated Amount |
|---|---|
| Break-Up Fee[1] | $2,500,000 |
| Milbank Fees[2] | 2,247,937 |
| Expense & Equivalent Revenue[2] | 207,116 |
| **Total Oaktree Break-Up Fees, Expenses & Equivalent Revenue** | **$4,955,053** |
| Less: Cash Paid to Oaktree[3] | (2,500,000) |
| **Net Oaktree Break-Up Fees, Expenses & Equivalent Revenue** | **$2,455,053** |

**Footnotes:**

(1) Per Revised Oaktree Proposal (Docket #385-1 filed on July 7, 2018).

(2) Per Notice of Intent to Pay Break-Up Fee (Docket #586).

(3) Per Supplement to Amended Notice of Intent to Pay Break-Up Fee to Oaktree Capital Management, L.P. Pursuant to Order Approving Oaktree Motion (Docket #587).

11

*Prepared at the Request of Counsel*

*Plan Projections as of September 27, 2018*

## Schedule G: Highland Payable

| Portfolios | 1/30/2018 through 4/13/2018 ("Gap Period") | | | | 4/14/2018 through 7/6/2018 | | | |
| | Par Amount[1] | Servicing Fee[2] | Days | Estimated Payable | Par Amount[1] | Servicing Fee[2] | Days | Estimated Payable |
|---|---|---|---|---|---|---|---|---|
| ACIS CLO 2013-1 | $348,273,092 | 35 bps | 1/30/18 - 4/13/18 | $247,177 | $280,013,673 | 35 bps | 4/14/18 - 7/6/18 | $225,955 |
| ACIS CLO 2014-3 | 413,250,000 | 35 bps | 1/30/18 - 4/13/18 | 293,293 | 413,250,000 | 35 bps | 4/14/18 - 7/6/18 | 333,470 |
| ACIS CLO 2014-4 | 500,750,000 | 35 bps | 1/30/18 - 4/13/18 | 355,393 | 500,750,000 | 35 bps | 4/14/18 - 7/6/18 | 404,077 |
| ACIS CLO 2014-5 | 510,750,000 | 35 bps | 1/30/18 - 4/13/18 | 362,491 | 510,750,000 | 35 bps | 4/14/18 - 7/6/18 | 412,147 |
| ACIS CLO 2015-6 | 578,350,000 | 35 bps | 1/30/18 - 4/13/18 | 410,468 | 578,350,000 | 35 bps | 4/14/18 - 7/6/18 | 466,696 |
| BayVK R2 Lux S.A., SICAV-FIS | 603,263,670 | 35 bps | 1/30/18 - 4/13/18 | 396,236 | 603,263,670 | 35 bps | 4/14/18 - 7/6/18 | 450,515 |
| **Total** | **$2,954,636,762** | | | **$2,065,058** | **$2,886,377,343** | | | **$2,292,861** |

| Portfolios | Interim Accrual Period | | | |
| | Par Amount[1] | Servicing Fee[3] | Days | Estimated Payable |
|---|---|---|---|---|
| ACIS CLO 2013-1 | $179,003,047 | 17.5 bps | 7/7/18 - 7/31/18 | $20,884 |
| ACIS CLO 2014-3 | 413,250,000 | 17.5 bps | 7/7/18 - 7/31/18 | 48,213 |
| ACIS CLO 2014-4 | 500,750,000 | 17.5 bps | 7/7/18 - 7/31/18 | 58,421 |
| ACIS CLO 2014-5 | 510,750,000 | 17.5 bps | 7/7/18 - 7/31/18 | 59,588 |
| ACIS CLO 2015-6 | 578,350,000 | 17.5 bps | 7/7/18 - 7/31/18 | 67,474 |
| BayVK R2 Lux S.A., SICAV-FIS | 603,263,670 | 17.5 bps | 7/7/18 - 7/31/18 | 65,135 |
| **Total** | **$2,785,366,717** | | | **$319,713** |

### Total Estimated Highland Payable

| Portfolios | Total |
|---|---|
| ACIS CLO 2013-1 | $494,016 |
| ACIS CLO 2014-3 | 674,975 |
| ACIS CLO 2014-4 | 817,892 |
| ACIS CLO 2014-5 | 834,225 |
| ACIS CLO 2015-6 | 944,638 |
| BayVK R2 Lux S.A., SICAV-FIS | 911,886 |
| **Total Highland Payable** | **$4,677,632** |
| Less: Highland Gap Period Claim[4] | (2,049,564) |
| **Net Highland Payable[5]** | **$2,628,068** |

12

**Footnotes:**

Note: Assumes Highland payable until July 31, 2018 as Brigade appointed sub-servicer on August 1, 2018 per Order Granting Emergency Motion to Approve Replacement Sub-Advisory and Shared Services Providers, Brigade Capital Management, LP and Cortland Capital Market Services LLC (Docket #464).

(1) Acis CLO 2013-1 par amount through April 13, 2018 and July 6, 2018 and July 6, 2018 per US Bank Monthly Trustee Report dated April 10, 2018 and par amount through Interim Accrual Period per US Bank Monthly Trustee Report dated July 10, 2018. Acis CLOs 3-6 par amounts through April 13, 2018 and July 6, 2018 per US Bank Monthly Trustee Reports dated April 21, 2018 and through Interim Accrual Period per US Bank Monthly Trustee Report dated June 21, 2018. BayVK R2 Lux S.A., SICAV-FIS par amount per "Highland0004782 BVK Report 5.31.2018.xslx" file, converted from EUR to USD at May 31, 2018 month-end exchange rate of 1.16 USD / EUR.

(2) Servicing fees include aggregate fees defined under Fourth Amended and Restated Shared Services Agreement by and between Acis LP and Highland Capital Management, L.P., dated March 17, 2017 and Third Amended and Restated Sub-Advisory Agreement by and between Acis LP and Highland Capital Management, L.P., dated March 17, 2017.

(3) Highland expressed it would commit to servicing the Portfolios for 17.5 basis points during the July 6, 2018 Hearing (July 6, 2018 Transcript, Page 244 / 296, Lines 3-7).

(4) Per Exhibit A to Proof of Claim 27-1 of Highland Capital Management, L.P filed on August 1, 2018.

(5) The Chapter 11 Trustee estimates recoupment and other counterclaims may exceed this value.

*Plan Projections as of September 27, 2018*

## Schedule H: Brigade and Cortland Payable

**Brigade Fee**

| Portfolios | Par Amount[1] | Servicing Fee[2] | Days | Estimated Payable |
|---|---|---|---|---|
| | | 8/1/2018 through 9/27/2018 | | |
| ACIS CLO 2013-1 | $179,003,047 | 15 bps | 8/1/18 - 9/27/18 | $42,513 |
| ACIS CLO 2014-3 | 413,250,000 | 15 bps | 8/1/18 - 9/27/18 | 98,147 |
| ACIS CLO 2014-4 | 500,750,000 | 15 bps | 8/1/18 - 9/27/18 | 118,928 |
| ACIS CLO 2014-5 | 510,750,000 | 15 bps | 8/1/18 - 9/27/18 | 121,303 |
| ACIS CLO 2015-6 | 578,350,000 | 15 bps | 8/1/18 - 9/27/18 | 137,358 |
| BayVK R2 Lux S.A., SICAV-FIS | 603,263,670 | 25 bps[4] | 8/1/18 - 9/27/18 | 220,993 |
| **Total Fees Payable to Brigade** | **$2,785,366,717** | | | **$739,242** |
| Less: Fees Paid to Brigade[4] | | | | (733,672) |
| **Net Fees Payable to (Receivable from) Brigade** | | | | **$5,570** |

**Cortland Fee**

| | |
|---|---|
| Cortland One-Time Fee | $75,000 |
| Monthly Fee between 8/1/18 - 9/27/18 | 57,000 |
| **Total Fees Payable to Cortland** | **$132,000** |
| Less: Fees Paid to Cortland[4] | (105,000) |
| **Net Fees Payable to (Receivable from) Cortland** | **$27,000** |

**Footnotes:**

(1) Acis CLO 2013-1 par amount per US Bank Monthly Trustee Report dated September 10, 2018. Acis CLOs 3-6 par amounts per US Bank Monthly Trustee Reports dated August 21, 2018. BayVK R2 Lux S.A., SICAV-FIS par amount per Asset Overview dated August 14, 2018 and Generated August 16, 2018 at 14:17. File name: (716300)(14.08.2018)(P195641133).pdf. Converted at month-end exchange rate of 1.17 USD / EUR.

(2) Servicing Fees per Order Granting Emergency Motion to Approve Replacement Sub-Advisory and Shared Services Providers, Brigade Capital Management, LP and Cortland Capital Market Services LLC (Docket #464).

(3) BVK Servicing Fees are 50% of received management fees calculated per Footnote 3. 25bps shown as illustrative approximation of servicing fee.

(4) Based on Bank of Texas Statements as of September 27, 2018.

13

# EXHIBIT "4"
# TO DISCLOSURE STATEMENT

# [Liquidation Analysis]

# Disclaimer

These materials, which were prepared by Miller Buckfire & Co., LLC (the "Firm") in September 2018 may not be used or relied upon or further distributed fr agreed in writing by the Firm. These materials are based on publicly available information and confidential information from Robin Phelan, the Chapter 1 Capital Management, L.P. and Acis Capital Management GP, L.L.C. (collectively, the "Debtors"), the Debtors, and their respective employees, professiona agents. The Firm assumes no responsibility to investigate or verify such information and has relied on the completeness and accuracy of such information. such information includes estimates and forecasts of future financial performance or other future developments, the Firm has assumed that such estimates reasonable. No representation or warranty, express or implied, is made as to the accuracy or completeness of such information and nothing contained her relied upon as, a representation, whether as to the past, the present or the future. These materials are necessarily based upon information available to the financial, bond market, legal, economic, policy and other conditions and circumstances existing and disclosed to the Firm as of the date hereof, all of which change. These materials speak as of the date of their preparation, except as otherwise noted. The Firm does not have any obligation to update, bring-dow reaffirm these materials. Under no circumstances should the delivery of these materials imply that any information or analyses included would be the same other date. Any valuation, projection or other estimate contained herein is only an approximation, subject to uncertainties and contingencies, all of which ar and beyond the control of the Firm, and thus nothing herein is intended to be, and should not be construed in any respect as, a statement or guaranty of va materials must be considered in their totality. The Firm is not acting in any capacity as a fiduciary of any party. These materials are not intended to provide evaluating, and should not be considered a recommendation with respect to, any transaction or other matter. These materials may not reflect inform securities and are not a commitment by anybody to provide or arrange any financing or trade in any related security. These materials may not reflect inform other professionals of the Firm and its affiliates. the Firm and its affiliates provide no legal, accounting or tax advice. Accordingly, any statements containe matters were neither written nor intended by the Firm or its affiliates to be used and cannot be used by any taxpayer for the purpose of avoiding tax penalti imposed on such taxpayer. All persons should seek legal, accounting and tax advice based on their particular circumstances from independent advisors re on them of anything described herein. The Firm or its personnel may make statements or provide advice that is contrary to the information contained in the

1

*Prepared at the Request of Counsel*

# Liquidation Analysis as of September 27, 2018

### Assets Available for Distribution

| | Unaudited Balance | Estimated Realization Percentage | Estimated Value | Schedule Reference |
|---|---|---|---|---|
| Cash[1] | $3,757,369 | 100% | $3,757,369 | A |
| Accounts Receivable | 4,641,292 | 100% | 4,641,292 | A |
| HCLOM Receivable[2] | 3,000,000 | 100% | 3,000,000 | |
| Other Claims and Causes of Action | TBD | TBD | TBD | |
| Intellectual Property and Other Related Assets | TBD | TBD | TBD | |
| Wind-Down Revenue | 1,851,062 | 100% | 1,851,062 | B |
| Wind-Down Expenses | (764,776) | 100% | (764,776) | B |
| **Total Assets Available for Distribution** | **$12,484,947** | | **$12,484,947** | |

### Estimated Wind-Down Expenses

| | Estimated Realization Percentage | Estimated Liquidation Values | |
|---|---|---|---|
| New Chapter 7 Trustee Commissions (3% of Distributable Value) | 100% | $374,548 | C |
| New Chapter 7 Trustee Professional Fees & Expenses | 100% | 100,000 | C |
| **Total Chapter 7 Fees and Expenses** | | **$474,548** | |

| **Net Assets Available for Distribution** | **$12,010,399** |
|---|---|

### Estimated Creditor Recoveries

| | Claim | Estimated Creditor Recovery Values | | |
|---|---|---|---|---|
| **Class 1 - Secured Tax Claims** | TBD | TBD | - | |
| **Administrative Expenses** | | | | |
| Trustee and Professional Fees & Expenses[3] | $5,117,409 | $5,117,409 | 100% | C |
| Oaktree Break-Up Fees, Expenses & Equivalent Revenue[3] | 2,455,053 | 2,455,053 | 100% | D |
| Highland Payable as Sub-Servicer and Sub-Advisor[4] | - | - | | E |
| Brigade Payable as Sub-Advisor | 5,570 | 5,570 | 100% | F |
| Cortland Payable as Sub-Servicer | 27,000 | 27,000 | 100% | F |
| **Priority Tax Claims** | TBD | TBD | - | F |
| **Class 2 - Terry Claim**[5] | 8,168,294 | 3,783,951 | 46% | |
| **Class 3 - General Unsecured Claims**[3] | 1,341,429 | 621,415 | 46% | |
| **Class 4 - Insider Claims** | | | | |
| Class 4A (Highland Claim) | - | - | - | |
| Class 4B (Equitable Subordinated Claims)[5][6] | 4,672,140 | - | - | |
| **Class 5 - Interests** | N/A | - | - | |
| **Total Consolidated Claims** | **$21,786,896** | **$12,010,399** | | |

#### Footnotes:

Note: Assumes liquidation commences on October 31, 2018. Assumes no expenses are passed through to the CLOs. Does not include any recoveries from various claims and causes of action.

(1) Per August 31, 2018 Bank of Texas Balance plus deposit and check activity through September 27, 2018. Pro forma for $2.5 million payment to Oaktree on September 19, 2018 per Docket #587.

(2) A successful recovery of the November 3, 2017 transfer of the Acis LP Note Receivable from Highland is estimated at $9.5 million. Highland CLO Management Ltd. agreed to reimburse Acis LP (or pay its vendors directly) up to $3 million (up to $2 million of future legal expenses and up to $1 million of future accounting/administrative expenses) per Docket #118 filed on April 13, 2018. Please reference Docket #118 for further information on the transfer.

(3) The U.S. Trustee and Chapter 11 Trustee are in the process of reviewing the attorneys' fees and expenses requested by Oaktree for reasonableness. The amount reflected is the amount requested by Oaktree as an expense reimbursement, but the amount ultimately allowed may be different depending upon the resolution of any objections.

(4) Highland post-petition sub-servicer fees shown on Schedule E are approximately $2.6 million. However, the Chapter 11 Trustee estimates recoupment and other counterclaims may exceed this value, as such, the Highland claim is shown at $0 value.

(5) Per filed proof of claims and undisputed scheduled claims.

(6) Assumes Highland Claim will be subject to equitable subordination.

*Prepared at the Request of Counsel*

## Liquidation Analysis as of September 27, 2018

## Schedule A: Accounts Receivable

| Portfolios | Par Amount[1] | Management Fee[2] | Days | Estimated Realization Percentage | Estimated Revenue to be Collected |
|---|---|---|---|---|---|
| ACIS CLO 2013-1[3] | $179,003,047 | 50 bps | 1/24/18 - 9/27/18 | 100% | $975,019 |
| ACIS CLO 2014-3 | 413,250,000 | 40 bps | 11/1/17 - 9/27/18 | 100% | 1,515,250 |
| ACIS CLO 2014-4 | 500,750,000 | 40 bps | 11/1/17 - 9/27/18 | 100% | 1,836,083 |
| ACIS CLO 2014-5 | 510,750,000 | 40 bps | 11/1/17 - 9/27/18 | 100% | 1,872,750 |
| ACIS CLO 2015-6 | 578,350,000 | 40 bps | 11/1/17 - 9/27/18 | 100% | 2,120,617 |
| BayVK R2 Lux S.A., SICAV-FIS[4] | 603,263,670 | 50 bps[4] | 10/1/17 - 9/27/18 | 100% | 2,796,957 |
| Total | $2,785,366,717 | | | | $11,116,675 |
| Less: Received Cash Payments[5] | | | | | (6,475,383) |
| Total A/R Balance | | | | | $4,641,292 |

**Footnotes:**

(1) Acis CLO 2013-1 par amount per US Bank Monthly Trustee Report dated September 10, 2018. Acis CLOs 3-6 par amounts per US Bank Monthly Trustee Reports dated August 21, 2018. BayVK R2 Lux S.A., SICAV-FIS par amount per Asset Overview dated August 14, 2018 and Generated August 16, 2018 at 14:17.

File name: (716300)-(14.08.2018)(P195641133).pdf. Converted at month-end exchange rate of 1.16 USD / EUR.

(2) Management Fees:

CLO 2013-1: Per Portfolio Management Agreement by and between Acis LP and Acis CLO 2013-1 LTD, dated March 18, 2013.

CLO 2014-3: Per Portfolio Management Agreement by and between Acis LP and Acis CLO 2014-3 LTD, dated February 25, 2014.

CLO 2014-4: Per Portfolio Management Agreement by and between Acis LP and Acis CLO 2014-4 LTD, dated June 5, 2014.

CLO 2014-5: Per Portfolio Management Agreement by and between Acis LP and Acis CLO 2014-5 LTD, dated November 18, 2014.

CLO 2015-6: Per Portfolio Management Agreement by and between Acis LP and Acis CLO 2015-6 LTD, dated April 16, 2015.

BayVK R2 Lux S.A., SICAV-FIS: Per Asset Management Agreement entered into between Acis LP and Universal-Investment-Luxembourg S.A., dated March 3, 2015.

(3) Acis CLO 2013-1 Accounts Receivable estimated using par amounts per US Bank Monthly Trustee Reports from January 10th, 2018 through August 10th, 2018.

(4) BayVK R2 Lux S.A., SICAV-FIS Accounts Receivable calculated per Annex D Calculations of Agreement for the Outsourcing of the Asset Management entered into between Universal-Investment-Luxembourg S.A. and Acis Capital Management, L.P. 50 bps shwon as illustrative approximation of management fees.

(5) Cash disbursed from U.S. Bank in August and September 2018.

*Prepared at the Request of Counsel*

## Liquidation Analysis as of September 27, 2018

## Schedule B: Wind-Down Cash Flows

| Wind-Down Revenue | Par Amount[1] | Management Fee[2] | Interim Period Days | Amount | Wind-Down Period Days | Amount | Estimated Realization Percentage | Estimated Wind-down Revenue |
|---|---|---|---|---|---|---|---|---|
| ACIS CLO 2013-1 | $179,003,047 | 50 bps | 9/28/18 - 10/30/18 | $79,557 | 10/31/18 - 11/30/18 | $74,585 | 100% | $154,142 |
| ACIS CLO 2014-3 | 413,250,000 | 40 bps | 9/28/18 - 10/30/18 | 146,933 | 10/31/18 - 12/15/18 | 206,625 | 100% | 353,558 |
| ACIS CLO 2014-4 | 500,750,000 | 40 bps | 9/28/18 - 10/30/18 | 178,044 | 10/31/18 - 11/30/18 | 166,917 | 100% | 344,961 |
| ACIS CLO 2014-5 | 510,750,000 | 40 bps | 9/28/18 - 10/30/18 | 181,600 | 10/31/18 - 11/30/18 | 170,250 | 100% | 351,850 |
| ACIS CLO 2015-6 | 578,350,000 | 40 bps | 9/28/18 - 10/30/18 | 205,636 | 10/31/18 - 11/30/18 | 192,783 | 100% | 398,419 |
| BayVK R2 Lux S.A., SICAV-FIS | 603,263,670 | 50 bps[3] | 9/28/18 - 10/30/18 | 248,132 | N/A | - | 100% | 248,132 |
| **Total Wind-Down Revenue** | **$2,785,366,717** | | | **$1,039,902** | | **$811,160** | | **$1,851,062** |

| Wind-Down Expenses | Par Amount[1] | Servicing Fee[4] | Interim Period Days | Amount | Wind-Down Period Days | Amount | Estimated Realization Percentage | Estimated Wind-down Expenses |
|---|---|---|---|---|---|---|---|---|
| ACIS CLO 2013-1 | $179,003,047 | 15 bps | 9/28/18 - 10/30/18 | $23,867 | 10/31/18 - 11/30/18 | $22,375 | 100% | $46,242 |
| ACIS CLO 2014-3 | 413,250,000 | 15 bps | 9/28/18 - 10/30/18 | 55,100 | 10/31/18 - 12/15/18 | 51,656 | 100% | 106,756 |
| ACIS CLO 2014-4 | 500,750,000 | 15 bps | 9/28/18 - 10/30/18 | 66,767 | 10/31/18 - 11/30/18 | 62,594 | 100% | 129,361 |
| ACIS CLO 2014-5 | 510,750,000 | 15 bps | 9/28/18 - 10/30/18 | 68,100 | 10/31/18 - 11/30/18 | 63,844 | 100% | 131,944 |
| ACIS CLO 2015-6 | 578,350,000 | 15 bps | 9/28/18 - 10/30/18 | 77,113 | 10/31/18 - 11/30/18 | 72,294 | 100% | 149,407 |
| BayVK R2 Lux S.A., SICAV-FIS | 603,263,670 | 25 bps[5] | 9/28/18 - 10/30/18 | 124,066 | N/A | - | 100% | 124,066 |
| **Total Brigade Expenses** | | | | **$415,013** | | **$272,763** | | **$687,776** |
| Plus: Cortland Expenses | N/A | $30K / Month | 9/28/18 - 10/30/18 | 32,000 | 10/31/18 - 12/15/18 | 45,000 | 100% | 77,000 |
| **Net Wind-Down Expenses** | **$2,785,366,717** | | | **$447,013** | | **$317,763** | | **$764,776** |

**Footnotes:**

Note: Assumes 30-day notice period for CLO 2013-1, CLO 2014-4, CLO 2014-5 and CLO 2015-6 and 45-day notice period for CLO 2014-3. BayVK R2 Lux S.A., SICAV-FIS terminated immediately.

(1) Acis CLO 2013-1 par amount per US Bank Monthly Trustee Report dated September 10, 2018. Acis CLOs 3-6 par amounts per US Bank Monthly Trustee Reports dated August 21, 2018. BayVK R2 Lux S.A., SICAV-FIS par amount per Asset Overview dated August 14, 2018 and Generated August 16, 2018 at 14:17. File name: (716330)-(14.08.2018)(P195641133).pdf. Converted at month-end exchange rate of 1.16 USD / EUR.

(2) Management Fees:

CLO 2013-1: Per Portfolio Management Agreement by and between Acis LP and Acis CLO 2013-1 LTD, dated March 18, 2013.

CLO 2014-3: Per Portfolio Management Agreement by and between Acis LP and Acis CLO 2014-3 LTD, dated February 25, 2014.

CLO 2014-4: Per Portfolio Management Agreement by and between Acis LP and Acis CLO 2014-4 LTD, dated June 5, 2014.

CLO 2014-5: Per Portfolio Management Agreement by and between Acis LP and Acis CLO 2014-5 LTD, dated November 18, 2014.

CLO 2015-6: Per Portfolio Management Agreement by and between Acis LP and Acis CLO 2015-6 LTD, dated April 16, 2015.

BayVK R2 Lux S.A., SICAV-FIS: Per Asset Management Agreement entered into between Acis LP and Universal-Investment-Luxembourg S.A., dated March 3, 2015.

(3) BayVK R2 Lux S.A., SICAV-FIS Accounts Receivable calculated per Annex D Calculations of Agreement for the Outsourcing of the Asset Management entered into between Universal-Investment-Luxembourg S.A., and Acis Capital Management, L.P. 50 bps shwon as illustrative approximation of management fees.

(4) Servicing Fees per Order Granting Emergency Motion to Approve Replacement Sub-Advisory and Shared Services Providers, Brigade Capital Management, LP and Cortland Capital Services LLC (Docket #464).

(5) BVK Servicing Fees are 50% of BVK management fees calculated per Footnote 2. 25bps shown as illustrative approximation of servicing fee.

4

*Prepared at the Request of Counsel*

## *Liquidation Analysis as of September 27, 2018*

## Schedule C: Trustee and Professional Fees & Expenses

| New Chapter 7 Trustee Fee Calculation | Estimated Amount |
|---|---|
| Total Assets Available for Distribution | $12,484,947 |
| | |
| New Chapter 7 Trustee Commissions (3% of Distributable Value) | 374,548 |
| New Chapter 7 Trustee Professional Fees & Costs[1] | 100,000 |

| Description | Estimated Amount |
|---|---|
| U.S. Trustee Commissions[2] | $124,849 |
| Chapter 11 Trustee Commissions[3] | 397,798 |
| Existing Chapter 7 Trustee Commissions[1] | 34,905 |
| Existing Chapter 7 Trustee Counsel Fees[4] | 59,856 |
| Winstead Fees & Expenses[1] | 1,500,000 |
| Forshey Prostok Fees & Expenses[5] | 1,200,000 |
| Miller Buckfire Fees & Expenses[6] | 1,000,000 |
| Joshua Terry Administrative Claim under 503(b)(3)(A)[7] | 700,000 |
| Moss Adams (Tax Professional)[8] | 100,000 |
| **Total Trustee and Professional Fees & Expenses** | **$5,117,409** |

**Footnotes:**

(1) Per Winstead, Chapter 11 Trustee counsel, estimate.

(2) The lesser of (i) 1% of quarterly disbursements or (ii) $250,000 per The Bankruptcy Judgeship Act of 2017,
Pub. L. No. 115-72.

(3) Per 11 U.S. Code § 326 (Section 330) on limitation on compensation of trustee.

(4) Per Filed Fee Application.

(5) Per Forshey Prostok, Chapter 11 Trustee counsel, estimate.

(6) Per Miller Buckfire estimate.

(7) Estimate provided by counsel to Joshua Terry. Claim is subject to notice, hearing and Bankruptcy court approval.
Trustee has agreed to neither the allowance nor the amount of this claim.

(8) Per Chapter 11 Trustee estimate.

*Prepared at the Request of Counsel*

## *Liquidation Analysis as of September 27, 2018*

## Schedule D: Oaktree Break-Up Fee, Expenses & Equivalent Revenue

|  | Estimated Amount |
|---|---|
| Break-Up Fee[1] | $2,500,000 |
| Milbank Fees[2] | 2,247,937 |
| Expense & Equivalent Revenue[2] | 207,116 |
| **Total Oaktree Break-Up Fees, Expenses & Equivalent Revenue** | **$4,955,053** |
| Less: Cash Paid to Oaktree[3] | (2,500,000) |
| **Net Oaktree Break-Up Fees, Expenses & Equivalent Revenue** | **$2,455,053** |

**Footnotes:**

(1) Per Revised Oaktree Proposal (Docket #385-1 filed on July 7, 2018).

(2) Per Notice of Intent to Pay Break-Up Fee (Docket #586).

(3) Per Supplement to Amended Notice of Intent to Pay Break-Up Fee to Oaktree Capital Management, L.P. Pursuant to Order Approving Oaktree Motion (Docket #587).

6

*Prepared at the Request of Counsel*

## Liquidation Analysis as of September 27, 2018

## Schedule E: Highland Payable

| Portfolios | 1/30/2018 through 4/13/2018 ("Gap Period") | | | Estimated Payable | 4/14/2018 through 7/6/2018 | | | Estimated Payable |
|---|---|---|---|---|---|---|---|---|
| | Par Amount[1] | Servicing Fee[3] | Days | | Par Amount[1] | Servicing Fee[2] | Days | |
| ACIS CLO 2013-1 | $348,273,092 | 35 bps | 1/30/18 - 4/13/18 | $247,177 | $280,013,673 | 35 bps | 4/14/18 - 7/6/18 | $225,955 |
| ACIS CLO 2014-3 | 413,250,000 | 35 bps | 1/30/18 - 4/13/18 | 293,293 | 413,250,000 | 35 bps | 4/14/18 - 7/6/18 | 333,470 |
| ACIS CLO 2014-4 | 500,750,000 | 35 bps | 1/30/18 - 4/13/18 | 355,393 | 500,750,000 | 35 bps | 4/14/18 - 7/6/18 | 404,077 |
| ACIS CLO 2014-5 | 510,750,000 | 35 bps | 1/30/18 - 4/13/18 | 362,491 | 510,750,000 | 35 bps | 4/14/18 - 7/6/18 | 412,147 |
| ACIS CLO 2015-6 | 578,350,000 | 35 bps | 1/30/18 - 4/13/18 | 410,468 | 578,350,000 | 35 bps | 4/14/18 - 7/6/18 | 466,696 |
| BayVK R2 Lux S.A., SICAV-FIS | 603,263,670 | 35 bps | 1/30/18 - 4/13/18 | 396,236 | 603,263,670 | 35 bps | 4/14/18 - 7/6/18 | 450,515 |
| Total | $2,954,636,762 | | | $2,065,058 | $2,886,377,343 | | | $2,292,861 |

| Portfolios | Interim Accrual Period | | | Estimated Payable |
|---|---|---|---|---|
| | Par Amount[1] | Servicing Fee[3] | Days | |
| ACIS CLO 2013-1 | $179,003,047 | 17.5 bps | 7/7/18 - 7/31/18 | $20,884 |
| ACIS CLO 2014-3 | 413,250,000 | 17.5 bps | 7/7/18 - 7/31/18 | 48,213 |
| ACIS CLO 2014-4 | 500,750,000 | 17.5 bps | 7/7/18 - 7/31/18 | 58,421 |
| ACIS CLO 2014-5 | 510,750,000 | 17.5 bps | 7/7/18 - 7/31/18 | 59,588 |
| ACIS CLO 2015-6 | 578,350,000 | 17.5 bps | 7/7/18 - 7/31/18 | 67,474 |
| BayVK R2 Lux S.A., SICAV-FIS | 603,263,670 | 17.5 bps | 7/7/18 - 7/31/18 | 65,135 |
| Total | $2,785,366,717 | | | $319,713 |

**Total Estimated Highland Payable**

| Portfolios | Total |
|---|---|
| ACIS CLO 2013-1 | $494,016 |
| ACIS CLO 2014-3 | 674,975 |
| ACIS CLO 2014-4 | 817,892 |
| ACIS CLO 2014-5 | 834,225 |
| ACIS CLO 2015-6 | 944,638 |
| BayVK R2 Lux S.A., SICAV-FIS | 911,886 |
| Total Highland Payable | $4,677,632 |
| Less: Highland Gap Period Claim[4] | (2,049,564) |
| Net Highland Payable[5] | $2,628,068 |

**Footnotes:**

Note: Assumes Highland payable until July 31, 2018 as Brigade appointed sub-servicer on August 1, 2018 per Order Granting Emergency Motion to Approve Replacement Sub-Advisory and Shared Services Providers, Brigade Capital Management, LP and Cortland Capital Market Services LLC (Docket #464).

(1) Acis CLO 2013-1 par amount through April 13, 2018 and July 6, 2018 per US Bank Monthly Trustee Report dated April 10, 2018 and par amount through Interim Accrual Period per US Bank Monthly Trustee Report dated April 13, 2018. Acis CLOs 3-6 par amount through April 13, 2018 and July 6, 2018 per US Bank Monthly Trustee Reports dated April 21, 2018 and through Interim Accrual Period per US Bank Monthly Trustee Report dated June 21, 2018. BayVK R2 Lux S.A., SICAV-FIS par amount per "Highland0004782 BVK Report 5.31.2018.xsix" file, converted from EUR to USD at May 31, 2018 month-end exchange rate of 1.16 USD / EUR.

(2) Servicing fees include aggregate fees defined under Fourth Amended and Restated Shared Services Agreement by and between Acis LP and Highland Capital Management, L.P., dated March 17, 2017 and Third Amended and Restated Sub-Advisory Agreement by and between Acis LP and Highland Capital Management, L.P., dated March 17, 2017.

(3) Highland expressed it would commit to servicing the Portfolios for 17.5 basis points during the July 6, 2018 Hearing (July 6, 2018 Transcript, Page 244 / 296, Lines 3-7).

(4) Per Exhibit A to Proof of Claim 27-1 of Highland Capital Management, L.P filed on August 1, 2018.

(5) The Chapter 11 Trustee estimates recoupment and other counterclaims may exceed this value.

*Prepared at the Request of Counsel*

## Liquidation Analysis as of September 27, 2018

## Schedule F: Brigade and Cortland Payable

**Brigade Fee**

| Portfolios | Par Amount(1) | 8/1/2018 through 9/27/2018 | | Estimated Payable |
| --- | --- | --- | --- | --- |
| | | Servicing Fee(2) | Days | |
| ACIS CLO 2013-1 | $179,003,047 | 15 bps | 8/1/18 - 9/27/18 | $42,513 |
| ACIS CLO 2014-3 | 413,250,000 | 15 bps | 8/1/18 - 9/27/18 | 98,147 |
| ACIS CLO 2014-4 | 500,750,000 | 15 bps | 8/1/18 - 9/27/18 | 118,928 |
| ACIS CLO 2014-5 | 510,750,000 | 15 bps | 8/1/18 - 9/27/18 | 121,303 |
| ACIS CLO 2015-6 | 578,350,000 | 15 bps | 8/1/18 - 9/27/18 | 137,358 |
| BayVK R2 Lux S.A., SICAV-FIS | 603,263,670 | 25 bps | 8/1/18 - 9/27/18 | 220,993 |
| **Total Fees Payable to Brigade** | **$2,785,366,717** | | | **$739,242** |
| Less: Fees Paid to Brigade(3) | | | | (733,672) |
| **Net Fees Payable to (Receivable from) Brigade** | | | | **$5,570** |

**Cortland Fee**

| | |
| --- | --- |
| Cortland One-Time Fee | $75,000 |
| Monthly Fee between 8/1/18 - 9/27/18 | 57,000 |
| **Total Fees Payable to Cortland** | **$132,000** |
| Less: Fees Paid to Cortland(3) | (105,000) |
| **Net Fees Payable to (Receivable from) Cortland** | **$27,000** |

**Footnotes:**

(1) Acis CLO 2013-1 par amount per US Bank Monthly Trustee Report dated September 10, 2018. Acis CLOs 3-6 par amounts per
US Bank Monthly Trustee Reports dated August 21, 2018. BayVK R2 Lux S.A., SICAV-FIS
par amount per Asset Overview dated August 14, 2018 and Generated August 16, 2018 at 14:17.
File name: (716300)-(14.08.2018)(P195641133).pdf. Converted at month-end exchange rate of 1.17 USD / EUR.

(2) Servicing Fees per Order Granting Emergency Motion to Approve Replacement Sub-Advisory and Shared Services Providers, Brigade
Capital Management, LP and Cortland Capital Market Services LLC (Docket #464).

(3) Based on Bank of Texas Statements as of September 27, 2018.

8

# EXHIBIT "5"
# TO DISCLOSURE STATEMENT

# [Monthly Operating Report–Acis LP]

Monthly Operating Report
CASH BASIS

| CASE NAME: | Acis Capital Management L.P. |
| CASE NUMBER: | 18-30264-sgj11 |
| JUDGE: | Stacey G. Jernigan |

# UNITED STATES BANKRUPTCY COURT

## NORTHERN & EASTERN DISTRICTS OF TEXAS

## REGION 6

## MONTHLY OPERATING REPORT

### MONTH ENDING: Aug. 1 - Aug. 31    2018
MONTH                              YEAR

IN ACCORDANCE WITH TITLE 28, SECTION 1746, OF THE UNITED STATES CODE, I DECLARE UNDER
PENALTY OF PERJURY THAT I HAVE EXAMINED THE FOLLOWING MONTHLY OPERATING REPORT
(CASH BASIS-1 THROUGH CASH BASIS-6) AND THE ACCOMPANYING ATTACHMENTS AND,
TO THE BEST OF MY KNOWLEDGE, THESE DOCUMENTS ARE TRUE, CORRECT, AND COMPLETE.
DECLARATION OF THE PREPARER (OTHER THAN RESPONSIBLE PARTY) IS BASED ON ALL
INFORMATION OF WHICH PREPARER HAS ANY KNOWLEDGE.

RESPONSIBLE PARTY:

_____        Trustee
ORIGINAL SIGNATURE OF RESPONSIBLE PARTY          TITLE

Robin Phelan                                     9-21-18
PRINTED NAME OF RESPONSIBLE PARTY                DATE


PREPARER:

_____        _____
ORIGINAL SIGNATURE OF PREPARER                   TITLE

_____        _____
PRINTED NAME OF PREPARER                         DATE

<div align="right">

**Monthly Operating Report**
**CASH BASIS-1**

</div>

| CASE NAME: | Acis Capital Management L.P. |
|---|---|

| CASE NUMBER: | 18-30264-sgj11 |
|---|---|

| CASH RECEIPTS AND DISBURSEMENTS | MONTH 5/11 - 5/31/2018 | MONTH 6/1 - 6/30/2018 | MONTH 7/1 - 7/31/2018 | MONTH 8/1 - 8/31/2018 |
|---|---|---|---|---|
| 1.  CASH - BEGINNING OF MONTH | $    633,106.04 | $  633,106.04 | $  633,086.04 | $  615,508.04 |
| **RECEIPTS** | | | | |
| 2.  CASH SALES | | | | |
| 3.  ACCOUNTS RECEIVABLE COLLECTIONS | | | | $ 1,847,024.00 |
| 4.  LOANS AND ADVANCES | | | | |
| 5.  SALE OF ASSETS | | | | |
| 6.  LEASE & RENTAL INCOME | | | | |
| 7.  WAGES | | | | |
| 8.  OTHER (ATTACH LIST) | | | | |
| 9.  TOTAL RECEIPTS | $             - | $            - | $            - | $ 1,847,024.00 |
| **DISBURSEMENTS** | | | | |
| 10.  NET PAYROLL | | | | |
| 11.  PAYROLL TAXES PAID | | | | |
| 12.  SALES,USE & OTHER TAXES PAID | | | | |
| 13.  INVENTORY PURCHASES | | | | |
| 14.  MORTAGE PAYMENTS | | | | |
| 15.  OTHER SECURED NOTE PAYMENTS | | | | |
| 16.  RENTAL & LEASE PAYMENTS | | | | |
| 17.  UTILITIES | | | | |
| 18.  INSURANCE | | | | |
| 19.  VEHICLE EXPENSES | | | | |
| 20.  TRAVEL | | | | |
| 21.  ENTERTAINMENT | | | | |
| 22.  REPAIRS & MAINTENANCE | | | | |
| 23.  SUPPLIES | | | | |
| 24.  ADVERTISING | | | | |
| 25.  HOUSEHOLD EXPENSES | | | | |
| 26.  CHARITABLE CONTRIBUTIONS | | | | |
| 27.  GIFTS | | | | |
| 28.  OTHER (ATTACH LIST) | | $         20.00 | $        78.00 | $   325,081.90 |
| 29.  TOTAL ORDINARY DISBURSEMENTS | $             - | $         20.00 | $        78.00 | $   325,081.90 |
| **REORGANIZATION EXPENSES** | | | | |
| 30.  PROFESSIONAL FEES | | | | |
| 31.  U.S. TRUSTEE FEES | | | | |
| 32.  OTHER (ATTACH LIST) | | | $   17,500.00 | |
| 33.  TOTAL REORGANIZATION EXPENSES | | $            - | $   17,500.00 | $             - |
| 34.  TOTAL DISBURSEMENTS | | $         20.00 | $   17,578.00 | $   325,081.90 |
| 35.  NET CASH FLOW | | $       (20.00) | $  (17,578.00) | $ 1,521,942.10 |
| 36.  CASH - END OF MONTH | $    633,106.04 | $  633,086.04 | $  615,508.04 | $ 2,137,450.14 |

# Monthly Operating Report
## CASH BASIS-1A

### 2018

| CASE NAME: | Acis Capital Management L.P. |
|---|---|

| CASE NUMBER: | 18-30264-sgj11 |
|---|---|

**CASH DISBURSEMENTS DETAIL**

**MONTH:** Aug. 1 - Aug. 31

### CASH DISBURSEMENTS

| | DATE | PAYEE | PURPOSE | AMOUNT |
|---|---|---|---|---|
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| TOTAL CASH DISBURSEMENTS | | | | $ - |

### BANK ACCOUNT DISBURSEMENTS

| CK# | DATE | PAYEE | PURPOSE | AMOUNT |
|---|---|---|---|---|
| | 08/17/18 | Bank of Texas Account Fees | Account Fees | $ 81.90 |
| | 08/17/18 | Brigade Capital Management | Servicing Fees | $ 325,000.00 |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| TOTAL BANK ACCOUNT DISBURSEMENTS | | | | $ 325,081.90 |

| TOTAL DISBURSEMENTS FOR THE MONTH | $ 325,081.90 |
|---|---|

Case 18-30264-sgj11 Doc 1244 Filed 09/07/21 Entered 09/07/21 11:58:05 Page 227 of
Case 18-30264-sgj11 Doc 1334 Filed 09/26/23 Entered 09/26/23 19:04:07 Page 54 of 72
255

# Monthly Operating Report
## CASH BASIS-2

| CASE NAME: | Acis Capital Management L.P. |
|---|---|

| CASE NUMBER: | 18-30264-sgj11 |
|---|---|

| BANK RECONCILIATIONS | Acct #1 | Acct #2 | Acct #3 | |
|---|---|---|---|---|
| A. BANK: | BOKF | NexBank | TX Capital | |
| B. ACCOUNT NUMBER: | 3261 | 2134 | 6890 | TOTAL |
| C. PURPOSE (TYPE): | DIP Acct | Checking | Checking | |
| 1. BALANCE PER BANK STATEMENT | $ 615,508.04 | | | $ 615,508.04 |
| 2. ADD: TOTAL DEPOSITS NOT CREDITED | $ 1,847,024.00 | | | $ 1,847,024.00 |
| 3. SUBTRACT: OUTSTANDING CHECKS | $ 325,081.90 | | | $ 325,081.90 |
| 4. OTHER RECONCILING ITEMS | | | | $ - |
| **5. MONTH END BALANCE PER BOOKS** | $ 2,137,450.14 | $ - | $ - | $ 2,137,450.14 |
| 6. NUMBER OF LAST CHECK WRITTEN | | | | |

| INVESTMENT ACCOUNTS | DATE OF PURCHASE | TYPE OF INSTRUMENT | PURCHASE PRICE | CURRENT VALUE |
|---|---|---|---|---|
| BANK, ACCOUNT NAME & NUMBER | | | | |
| 7. | | | | |
| 8. | | | | |
| 9. | | | | |
| 10. | | | | |
| 11. TOTAL INVESTMENTS | | | $ - | $ - |

| CASH | | |
|---|---|---|
| 12. CURRENCY ON HAND | | $ - |

| **13. TOTAL CASH - END OF MONTH** | $ 2,137,450.14 |
|---|---|

**Monthly Operating Report**

**CASH BASIS-3**

| CASE NAME: | Acis Capital Management L.P. |
|---|---|
| CASE NUMBER: | 18-30264-sgj11 |

**ASSETS OF THE ESTATE**

| SCHEDULE "A"<br>REAL PROPERTY | SCHEDULE<br>AMOUNT | MONTH<br>6/1 - 6/30/2018 | MONTH<br>7/1 - 7/31/2018 | MONTH<br>8/1 - 8/30/2018 |
|---|---|---|---|---|
| 1. | | | | |
| 2. | | | | |
| 3. | | | | |
| 4. OTHER (ATTACH LIST) | | | | |
| 5. TOTAL REAL PROPERTY ASSETS | $          - | $          - | $          - | $          - |
| **SCHEDULE "B"**<br>**PERSONAL PROPERTY** | | | | |
| 1. CASH ON HAND | $    634,373.99 | $    633,086.04 | $    615,508.04 | $ 2,137,450.14 |
| 2. CHECKING, SAVINGS, ETC. | | | | |
| 3. SECURITY DEPOSITS | | | | |
| 4. HOUSEHOLD GOODS | | | | |
| 5. BOOKS, PICTURES, ART | | | | |
| 6. WEARING APPAREL | | | | |
| 7. FURS AND JEWELRY | | | | |
| 8. FIREARMS & SPORTS EQUIPMENT | | | | |
| 9. INSURANCE POLICIES | | | | |
| 10. ANNUITIES | | | | |
| 11. EDUCATION | | | | |
| 12. RETIREMENT & PROFIT SHARING | | | | |
| 13. STOCKS | | | | |
| 14. PARTNERSHIPS & JOINT VENTURES | | | | |
| 15. GOVERNMENT & CORPORATE BONDS | | | | |
| 16. ACCOUNTS RECEIVABLE | $  3,644,884.09 | $6,655,495.09 | $  7,626,832.18 | $ 6,760,142.38 |
| 17. ALIMONY | | | | |
| 18. OTHER LIQUIDATED DEBTS | | | | |
| 19. EQUITABLE INTERESTS | | | | |
| 20. CONTINGENT INTERESTS | | | | |
| 21. OTHER CLAIMS  (Footnote 1) | | Unknown | Unknown | Unknown |
| 22. PATENTS & COPYRIGHTS (Footnote 2) | | Unknown | Unknown | Unknown |
| 23. LICENSES & FRANCHISES | | | | |
| 24. CUSTOMER LISTS | | | | |
| 25. AUTOS, TRUCKS & OTHER VEHICLES | | | | |
| 26. BOATS & MOTORS | | | | |
| 27. AIRCRAFT | | | | |
| 28. OFFICE EQUIPMENT | | | | |
| 29. MACHINERY, FIXTURES & EQUIPMENT | | | | |
| 30. INVENTORY | | | | |
| 31. ANIMALS | | | | |
| 32. CROPS | | | | |
| 33. FARMING EQUIPMENT | | | | |
| 34. FARM SUPPLIES | | | | |
| 35. OTHER (ATTACH LIST) | | | | |
| 36. TOTAL PERSONAL PROPERTY ASSETS | $  4,279,258.08 | $  7,288,581.13 | $  8,242,340.22 | $ 8,897,592.52 |
| 37. TOTAL ASSETS | $  4,279,258.08 | $  7,288,581.13 | $  8,242,340.22 | $ 8,897,592.52 |

**Footnote (1)**: The estate has numerous litigation claims against Highland Capital Management, LP and its affiliates including, but not limited to, those reflected in Adversary Proceeding No. 18-03078-sgj.

**Footnote (2)**: The estate owns certain intellectual property rights, the value of which is currently unknown.

Case 18-30264-sgj11 Doc 1244 Filed 09/07/21 Entered 09/07/21 11:59:05 Page 229 of
Case 18-30264-sgj11 Doc 1337 Filed 09/26/21 Entered 09/26/21 13:54:07 Page 6 of 172
255

**Monthly Operating Report**
**CASH BASIS-4**

| CASE NAME: | Acis Capital Management L.P. |
|---|---|
| CASE NUMBER: | 18-30264-sgj11 |

MONTH:    Aug. 1 - Aug. 31

## LIABILITIES OF THE ESTATE

| PREPETITION LIABILITIES | SCHEDULE AMOUNT | PAYMENTS |
|---|---|---|
| 1. SECURED | | |
| 2. PRIORITY | | |
| 3. UNSECURED | $ 11,454,637.09 | |
| 4. OTHER (ATTACH LIST) | | |
| 5. TOTAL PREPETITION LIABILITIES | $ 11,454,637.09 | $        - |

| POSTPETITION LIABILITIES | DATE INCURRED | AMOUNT OWED | DUE DATE | AMOUNT PAST DUE |
|---|---|---|---|---|
| 1. FEDERAL INCOME TAXES | | | | |
| 2. FICA/MEDICARE | | | | |
| 3. STATE TAXES | | | | |
| 4. REAL ESTATE TAXES | | | | |
| 5. OTHER TAXES (ATTACH LIST) | | | | |
| 6. TOTAL TAXES | | $        - | | $        - |
| OTHER POSTPETITION LIABILITIES INCLUDING TRADE CREDITORS (LIST NAMES OF CREDITORS) | | | | |
| 7. | | | | |
| 8. | | | | |
| 9. | | | | |
| 10. | | | | |
| 11. | | | | |
| 12. | | | | |
| 13. | | | | |
| 14. | | | | |
| 15. | | | | |
| 16. | | | | |
| 17. | | | | |
| 18. | | | | |
| 19. | | | | |
| 20. | | | | |
| 21. | | | | |
| 22. | | | | |
| 23. | | | | |
| 24. | | | | |
| 25. | | | | |
| 26. | | | | |
| 27. | | | | |
| 28. | | | | |
| 29. (IF ADDITIONAL ATTACH LIST) | | | | |
| 30. TOTAL OF LINES 7 - 29 | | $        - | | $        - |
| 31. TOTAL POSTPETITION LIABILITIES | | $        - | | $        - |

### Monthly Operating Report
### CASH BASIS-4A

| CASE NAME: | Acis Capital Management L.P. |
|---|---|

| CASE NUMBER: | 18-30264-sgj11 |
|---|---|

MONTH:     Aug. 1 - Aug. 31

| ACCOUNTS RECEIVABLE AGING | SCHEDULE AMOUNT | MONTH 6/1 - 6/30/2018 | MONTH 7/1 - 7/31/2018 | MONTH 8/1 - 8/31/2018 |
|---|---|---|---|---|
| 1.  0 - 30 | | $ 1,013,184.86 | $   971,337.08 | $   974,908.49 |
| 2.  31 - 60 | | $ 1,012,707.91 | $ 1,013,184.86 | $   971,337.08 |
| 3.  61 - 90 | $ 3,412,995.18 | $ 1,024,781.19 | $ 1,012,707.91 | $ 1,013,184.86 |
| 4.  91 + | $    231,888.91 | $ 3,604,821.14 | $ 4,629,602.32 | $ 3,800,711.94 |
| 5.  TOTAL ACCOUNTS RECEIVABLE | $ 3,644,884.09 | $ 6,655,495.09 | $ 7,626,832.18 | $ 6,760,142.38 |
| 6.  AMOUNT CONSIDERED UNCOLLECTIBLE | | | | |
| 7.  ACCOUNTS RECEIVABLE (NET) | $ 3,644,884.09 | $ 6,655,495.09 | $ 7,626,832.18 | $ 6,760,142.38 |

| AGING OF POSTPETITION TAXES AND PAYABLES TAXES PAYABLE | 0 - 30 DAYS | 31-60 DAYS | 90+ DAYS | Total |
|---|---|---|---|---|
| 1.  FEDERAL | | | | $              - |
| 2.  STATE | | | | $              - |
| 3.  LOCAL | | | | $              - |
| 4.  OTHER (ATTACH LIST) | | | | $              - |
| 5.  TOTAL TAXES PAYABLE | $              - | $              - | $              - | $              - |

| 6.  ACCOUNTS PAYABLE | $    168,928.98 | | | $    168,928.98 |
|---|---|---|---|---|

| STATUS OF POSTPETITION TAXES FEDERAL | BEGINNING TAX LIABILITY | AMOUNT WITHHELD OR ACCRUED | AMOUNT PAID | ENDING TAX LIABILITY |
|---|---|---|---|---|
| 1.  WITHHOLDING | | | | $              - |
| 2.  FICA-EMPLOYEE | | | | $              - |
| 3.  FICA-EMPLOYER | | | | $              - |
| 4.  UNEMPLOYMENT | | | | $              - |
| 5.  INCOME | | | | $              - |
| 6.  OTHER (ATTACH LIST) | | | | $              - |
| 7.  TOTAL FEDERAL TAXES | $              - | $              - | $              - | $              - |
| STATE AND LOCAL | | | | |
| 8.  WITHHOLDING | | | | $              - |
| 9.  SALES | | | | $              - |
| 10.  EXCISE | | | | $              - |
| 11.  UNEMPLOYMENT | | | | $              - |
| 12.  REAL PROPERTY | | | | $              - |
| 13.  PERSONAL PROPERTY | | | | $              - |
| 14.  OTHER (ATTACH LIST) | | | | $              - |
| 15.  TOTAL STATE & LOCAL | $              - | $              - | $              - | $              - |
| 16.  TOTAL TAXES | $              - | $              - | $              - | $              - |

Case 18-30264-sgj11 Doc 1244 Filed 09/27/21 Entered 09/07/21 14:58:05 Page 231 of
255
Case 18-30264-sgj11 Doc 1334 Filed 09/27/21 Entered 09/28/21 13:44:07 Page 31 of 72

| | | **Monthly Operating Report** |
|---|---|---|
| | | **CASH BASIS-5** |

| CASE NAME: | Acis Capital Management L.P. |
|---|---|
| CASE NUMBER: | 18-30264-sgj11 |

MONTH:  Aug. 1 - Aug. 31

**PAYMENTS TO INSIDERS AND PROFESSIONALS**

| INSIDERS | | | |
|---|---|---|---|
| NAME | TYPE OF PAYMENT | AMOUNT PAID | TTL PD TO DATE |
| 1. | | | |
| 2. | | | |
| 3. | | | |
| 4. | | | |
| 5. | | | |
| TOTAL PAYMENTS TO INSIDERS | | $          - | $          - |

| PROFESSIONALS | | | | | |
|---|---|---|---|---|---|
| NAME | DATE OF COURT ORDER AUTHORIZING PAYMENT | AMOUNT APPROVED | AMOUNT PAID | TTL PAID TO DATE | TOTAL INCURRED & UNPAID |
| 1. | | | | | |
| 2. | | | | | |
| 3. | | | | | |
| 4. | | | | | |
| 5. | | | | | |
| TOTAL PAYMENTS TO PROFESSIONALS | | $          - | $          - | $          - | $          - |

**POSTPETITION STATUS OF SECURED NOTES, LEASES PAYABLE AND ADEQUATE PROTECTION PAYMENTS**

| NAME OF CREDITOR | SCHEDULED MONTHLY PAYMENTS DUE | AMOUNTS PAID DURING MONTH | TOTAL UNPAID POST-PETITION |
|---|---|---|---|
| 1. | | | |
| 2. | | | |
| 3. | | | |
| 4. | | | |
| 5. | | | |
| 6. TOTAL | $          - | $          - | $          - |

Case 18-30264-sgj11 Doc 1244 Filed 09/07/21 Entered 09/07/21 11:58:05 Page 232 of
255
Case 18-30264-sgj11 Doc 1330 Filed 09/26/21 Entered 09/26/21 18:04:07 Page 32 of 97

<div align="right">

**Monthly Operating Report**

**CASH BASIS-6**

</div>

| CASE NAME: | Acis Capital Management L.P. |
|---|---|
| CASE NUMBER: | 18-30264-sgj11 |

MONTH:      Aug. 1 - Aug. 31

## QUESTIONNAIRE

| | YES | NO |
|---|---|---|
| 1. HAVE ANY ASSETS BEEN SOLD OR TRANSFERRED OUTSIDE THE NORMAL COURSE OF BUSINESS THIS REPORTING PERIOD? | | x |
| 2. HAVE ANY FUNDS BEEN DISBURSED FROM ANY ACCOUNT OTHER THAN A DEBTOR IN POSSESSION ACCOUNT? | | x |
| 3. ARE ANY POSTPETITION RECEIVABLES (ACCOUNTS, NOTES OR LOANS) DUE FROM RELATED PARTIES? | | x |
| 4. HAVE ANY PAYMENTS BEEN MADE ON PREPETITION LIABILITIES THIS REPORTING PERIOD? | | x |
| 5. HAVE ANY POSTPETITION LOANS BEEN RECEIVED BY THE DEBTOR FROM ANY PARTY? | | x |
| 6. ARE ANY POSTPETITION PAYROLL TAXES PAST DUE? | | x |
| 7. ARE ANY POSTPETITION STATE OR FEDERAL INCOME TAXES PAST DUE? | | x |
| 8. ARE ANY POSTPETITION REAL ESTATE TAXES PAST DUE? | | x |
| 9. ARE ANY OTHER POSTPETITION TAXES PAST DUE? | | x |
| 10. ARE ANY AMOUNTS OWED TO POSTPETITION CREDITORS DELINQUENT? | | x |
| 11. HAVE ANY PREPETITION TAXES BEEN PAID DURING THE REPORTING PERIOD? | | x |
| 12. ARE ANY WAGE PAYMENTS PAST DUE? | | x |

IF THE ANSWER TO ANY OF THE ABOVE QUESTIONS IS "YES"; PROVIDE A DETAILED
EXPLANATION OF EACH ITEM.  ATTACH ADDITIONAL SHEETS IF NECESSARY.

## INSURANCE

| | YES | NO |
|---|---|---|
| 1. ARE WORKER'S COMPENSATION, GENERAL LIABILITY AND OTHER | N/A | |
| 2. ARE ALL PREMIUM PAYMENTS PAID CURRENT? | N/A | |
| 3. PLEASE ITEMIZE POLICIES BELOW | | |

IF THE ANSWER TO ANY OF THE ABOVE QUESTIONS IS "NO" OR IF ANY POLICIES HAVE
BEEN CANCELED OR NOT RENEWED DURING THIS REPORTING PERIOD, PROVIDE AN
EXPLANATION BELOW.  ATTACH ADDITIONAL SHEETS IF NECESSARY.

## INSTALLMENT PAYMENTS

| TYPE OF POLICY | CARRIER | PERIOD COVERED | PAYMENT AMOUNT & FREQUENCY |
|---|---|---|---|
| | | | |
| | | | |
| | | | |
| | | | |

# EXHIBIT "6"
# TO DISCLOSURE STATEMENT

# [Monthly Operating Report–Acis GP]

Case 18-30265-sgj11 Doc 1244 Filed 09/27/21 Entered 09/07/21 11:59:05 Page 234 of 972
Case 18-30265-sgj11 Doc 1337 Filed 09/27/21 Entered 09/27/21 13:48:05 Page 4 of 9
255

| CASE NAME: | Acis Capital Management GP, LLC. |
| CASE NUMBER: | 18-30265-sgj11 |
| JUDGE: | Stacey G. Jernigan |

# UNITED STATES BANKRUPTCY COURT

## NORTHERN & EASTERN DISTRICTS OF TEXAS

### REGION 6

### MONTHLY OPERATING REPORT

**MONTH ENDING:** Aug. 1 - Aug. 31    2018
                              MONTH          YEAR

IN ACCORDANCE WITH TITLE 28, SECTION 1746, OF THE UNITED STATES CODE, I DECLARE UNDER
PENALTY OF PERJURY THAT I HAVE EXAMINED THE FOLLOWING MONTHLY OPERATING REPORT
(CASH BASIS-1 THROUGH CASH BASIS-6) AND THE ACCOMPANYING ATTACHMENTS AND,
TO THE BEST OF MY KNOWLEDGE, THESE DOCUMENTS ARE TRUE, CORRECT, AND COMPLETE.
DECLARATION OF THE PREPARER (OTHER THAN RESPONSIBLE PARTY) IS BASED ON ALL
INFORMATION OF WHICH PREPARER HAS ANY KNOWLEDGE.

RESPONSIBLE PARTY:

_____           Trustee
ORIGINAL SIGNATURE OF RESPONSIBLE PARTY                    TITLE

Robin Phelan                                          9-21-18
PRINTED NAME OF RESPONSIBLE PARTY                         DATE

PREPARER:

_____           _____
ORIGINAL SIGNATURE OF PREPARER                            TITLE

_____           _____
PRINTED NAME OF PREPARER                                  DATE

**Monthly Operating Report**

**CASH BASIS-1**

| CASE NAME: | Acis Capital Management GP, LLC. |
|---|---|

| CASE NUMBER: | 18-30265-sgj11 |
|---|---|

| CASH RECEIPTS AND | MONTH | MONTH | MONTH | MONTH |
|---|---|---|---|---|
| DISBURSEMENTS | 5/11 - 5/31/2018 | 6/1 - 6/30/2018 | 7/1 - 7/31/2018 | 8/1 - 8/31/2018 |
| 1.  CASH - BEGINNING OF MONTH | | $        - | $        - | $        - |
| RECEIPTS | | | | |
| 2.  CASH SALES | | | | |
| 3.  ACCOUNTS RECEIVABLE COLLECTIONS | | | | |
| 4.  LOANS AND ADVANCES | | | | |
| 5.  SALE OF ASSETS | | | | |
| 6.  LEASE & RENTAL INCOME | | | | |
| 7.  WAGES | | | | |
| 8.  OTHER (ATTACH LIST) | | | | |
| 9.  TOTAL RECEIPTS | $        - | $        - | $        - | $        - |
| DISBURSEMENTS | | | | |
| 10.  NET PAYROLL | | | | |
| 11.  PAYROLL TAXES PAID | | | | |
| 12.  SALES,USE & OTHER TAXES PAID | | | | |
| 13.  INVENTORY PURCHASES | | | | |
| 14.  MORTAGE PAYMENTS | | | | |
| 15.  OTHER SECURED NOTE PAYMENTS | | | | |
| 16.  RENTAL & LEASE PAYMENTS | | | | |
| 17.  UTILITIES | | | | |
| 18.  INSURANCE | | | | |
| 19.  VEHICLE EXPENSES | | | | |
| 20.  TRAVEL | | | | |
| 21.  ENTERTAINMENT | | | | |
| 22.  REPAIRS & MAINTENANCE | | | | |
| 23.  SUPPLIES | | | | |
| 24.  ADVERTISING | | | | |
| 25.  HOUSEHOLD EXPENSES | | | | |
| 26.  CHARITABLE CONTRIBUTIONS | | | | |
| 27.  GIFTS | | | | |
| 28.  OTHER (ATTACH LIST) | | | | |
| 29.  TOTAL ORDINARY DISBURSEMENTS | $        - | $        - | $        - | $        - |
| REORGANIZATION EXPENSES | | | | |
| 30.  PROFESSIONAL FEES | | | | |
| 31.  U.S. TRUSTEE FEES | | | | |
| 32.  OTHER (ATTACH LIST) | | | | |
| 33.  TOTAL REORGANIZATION EXPENSES | | $        - | $        - | $        - |
| 34.  TOTAL DISBURSEMENTS | | $        - | $        - | $        - |
| 35.  NET CASH FLOW | | $        - | $        - | $        - |
| 36.  CASH - END OF MONTH | $        - | $        - | $        - | $        - |

Case 18-30264-sgj11 Doc 1244 Filed 09/07/21 Entered 09/07/21 11:59:05 Page 236 of
Case 18-30265-sgj11 Doc 337 Filed 09/26/18 Entered 09/26/18 13:48:05 Page 3 of 972
255

**Monthly Operating Report**

**CASH BASIS-1A**

**2018**

| CASE NAME: | Acis Capital Management GP, LLC. |
|---|---|

| CASE NUMBER: | 18-30265-sgj11 |
|---|---|

| CASH DISBURSEMENTS DETAIL | | MONTH: | Aug. 1 - Aug. 31 |
|---|---|---|---|

### CASH DISBURSEMENTS

| | DATE | PAYEE | PURPOSE | AMOUNT |
|---|---|---|---|---|
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| TOTAL CASH DISBURSEMENTS | | | | $ - |

### BANK ACCOUNT DISBURSEMENTS

| CK# | DATE | PAYEE | PURPOSE | AMOUNT |
|---|---|---|---|---|
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| TOTAL BANK ACCOUNT DISBURSEMENTS | | | | $ - |

| TOTAL DISBURSEMENTS FOR THE MONTH | | $ - |
|---|---|---|

**Monthly Operating Report**
**CASH BASIS-2**

| CASE NAME: | Acis Capital Management GP, LLC. |
|---|---|
| CASE NUMBER: | 18-30265-sgj11 |

| BANK RECONCILIATIONS | Acct #1 | Acct #2 | Acct #3 | |
|---|---|---|---|---|
| A. BANK: | | | | TOTAL |
| B. ACCOUNT NUMBER: | | | | |
| C. PURPOSE (TYPE): | DIP Acct | | | |
| 1. BALANCE PER BANK STATEMENT | | | | |
| 2. ADD: TOTAL DEPOSITS NOT CREDITED | | | | $     - |
| 3. SUBTRACT: OUTSTANDING CHECKS | | | | $     - |
| 4. OTHER RECONCILING ITEMS | | | | $     - |
| **5. MONTH END BALANCE PER BOOKS** | $     - | $     - | $     - | $     - |
| 6. NUMBER OF LAST CHECK WRITTEN | | | | |

| INVESTMENT ACCOUNTS | DATE OF PURCHASE | TYPE OF INSTRUMENT | PURCHASE PRICE | CURRENT VALUE |
|---|---|---|---|---|
| BANK, ACCOUNT NAME & NUMBER | | | | |
| 7. | | | | |
| 8. | | | | |
| 9. | | | | |
| 10. | | | | |
| 11. TOTAL INVESTMENTS | | | $     - | $     - |

| CASH | |
|---|---|
| 12. CURRENCY ON HAND | $     - |

| **13. TOTAL CASH - END OF MONTH** | $     - |

| | | | **Monthly Operating Report** |
|---|---|---|---|
| | | | **CASH BASIS-3** |

| **CASE NAME:** | Acis Capital Management GP, LLC. |
|---|---|
| **CASE NUMBER:** | 18-30265-sgj11 |

**ASSETS OF THE ESTATE**

| **SCHEDULE "A"** **REAL PROPERTY** | SCHEDULE AMOUNT | MONTH 6/1 - 6/30/2018 | MONTH 7/1 - 7/31/2018 | MONTH 8/1 - 8/31/2018 |
|---|---|---|---|---|
| 1. | | | | |
| 2. | | | | |
| 3. | | | | |
| 4. OTHER (ATTACH LIST) | | | | |
| 5. TOTAL REAL PROPERTY ASSETS | $ - | $ - | $ - | $ - |
| **SCHEDULE "B"** **PERSONAL PROPERTY** | | | | |
| 1. CASH ON HAND | $ - | | | |
| 2. CHECKING, SAVINGS, ETC. | $ - | | | |
| 3. SECURITY DEPOSITS | | | | |
| 4. HOUSEHOLD GOODS | | | | |
| 5. BOOKS, PICTURES, ART | | | | |
| 6. WEARING APPAREL | | | | |
| 7. FURS AND JEWELRY | | | | |
| 8. FIREARMS & SPORTS EQUIPMENT | | | | |
| 9. INSURANCE POLICIES | | | | |
| 10. ANNUITIES | | | | |
| 11. EDUCATION | | | | |
| 12. RETIREMENT & PROFIT SHARING | | | | |
| 13. STOCKS | | | | |
| 14. PARTNERSHIPS & JOINT VENTURES | | | | |
| 15. GOVERNMENT & CORPORATE BONDS | | | | |
| 16. ACCOUNTS RECEIVABLE | | | | |
| 17. ALIMONY | | | | |
| 18. OTHER LIQUIDATED DEBTS | | | | |
| 19. EQUITABLE INTERESTS | | | | |
| 20. CONTINGENT INTERESTS | | | | |
| 21. OTHER CLAIMS (Footnote 1) | | Unknown | Unknown | Unknown |
| 22. PATENTS & COPYRIGHTS (Footnote 2) | | Unknown | Unknown | Unknown |
| 23. LICENSES & FRANCHISES | | | | |
| 24. CUSTOMER LISTS | | | | |
| 25. AUTOS, TRUCKS & OTHER VEHICLES | | | | |
| 26. BOATS & MOTORS | | | | |
| 27. AIRCRAFT | | | | |
| 28. OFFICE EQUIPMENT | | | | |
| 29. MACHINERY, FIXTURES & EQUIPMENT | | | | |
| 30. INVENTORY | | | | |
| 31. ANIMALS | | | | |
| 32. CROPS | | | | |
| 33. FARMING EQUIPMENT | | | | |
| 34. FARM SUPPLIES | | | | |
| 35. OTHER (ATTACH LIST) | | | | |
| 36. TOTAL PERSONAL PROPERTY ASSETS | $ - | $ - | $ - | $ - |
| 37. TOTAL ASSETS | $ - | $ - | $ - | $ - |

**Footnote (1):** The estate has numerous litigation claims against Highland Capital Management, LP and its affiliates including, but not limited to, those reflected in Adversary Proceeding No. 18-03078-sgj.

**Footnote (2):** The estate owns certain intellectual property rights, the value of which is currently unknown.

Case 18-30264-sgj11 Doc 1244 Filed 09/26/21 Entered 09/26/21 14:59:05 Page 6 of 72

**Monthly Operating Report**
**CASH BASIS-4**

| CASE NAME: | Acis Capital Management GP, LLC. |
|---|---|
| CASE NUMBER: | 18-30265-sgj11 |

MONTH:   Aug. 1 - Aug. 31

## LIABILITIES OF THE ESTATE

| PREPETITION LIABILITIES | SCHEDULE AMOUNT | PAYMENTS |
|---|---|---|
| 1. SECURED | | |
| 2. PRIORITY | | |
| 3. UNSECURED | | |
| 4. OTHER (ATTACH LIST) | | |
| 5. TOTAL PREPETITION LIABILITIES | $        - | $        - |

| POSTPETITION LIABILITIES | DATE INCURRED | AMOUNT OWED | DUE DATE | AMOUNT PAST DUE |
|---|---|---|---|---|
| 1. FEDERAL INCOME TAXES | | | | |
| 2. FICA/MEDICARE | | | | |
| 3. STATE TAXES | | | | |
| 4. REAL ESTATE TAXES | | | | |
| 5. OTHER TAXES (ATTACH LIST) | | | | |
| 6. TOTAL TAXES | | $        - | | $        - |
| OTHER POSTPETITION LIABILITIES INCLUDING TRADE CREDITORS (LIST NAMES OF CREDITORS) | | | | |
| 7. | | | | |
| 8. | | | | |
| 9. | | | | |
| 10. | | | | |
| 11. | | | | |
| 12. | | | | |
| 13. | | | | |
| 14. | | | | |
| 15. | | | | |
| 16. | | | | |
| 17. | | | | |
| 18. | | | | |
| 19. | | | | |
| 20. | | | | |
| 21. | | | | |
| 22. | | | | |
| 23. | | | | |
| 24. | | | | |
| 25. | | | | |
| 26. | | | | |
| 27. | | | | |
| 28. | | | | |
| 29.  (IF ADDITIONAL ATTACH LIST) | | | | |
| 30.  TOTAL OF LINES 7 - 29 | | $        - | | $        - |
| 31.  TOTAL POSTPETITION LIABILITIES | | $        - | | $        - |

Case 18-30264-sgj11 Doc 1241 Filed 09/07/21 Entered 09/07/21 11:59:05 Page 240 of
255
Case 18-30264-sgj11 Doc 1331 Filed 09/26/23 Entered 09/26/23 13:58:05 Page 7 of 9

**Monthly Operating Report**

**CASH BASIS-4A**

| CASE NAME: | Acis Capital Management GP, LLC. |
|---|---|
| CASE NUMBER: | 18-30265-sgj11 |

MONTH:    Aug. 1 - Aug. 31

| ACCOUNTS RECEIVABLE AGING | SCHEDULE AMOUNT | MONTH 6/1 - 6/30/2018 | MONTH 7/1 - 7/31/2018 | MONTH 8/1 - 8/31/2018 |
|---|---|---|---|---|
| 1.  0 - 30 | | | | |
| 2.  31 - 60 | | | | |
| 3.  61 - 90 | | | | |
| 4.  91 + | | | | |
| 5.  TOTAL ACCOUNTS RECEIVABLE | $        - | $        - | $        - | $        - |
| 6.  AMOUNT CONSIDERED UNCOLLECTIBLE | | | | |
| 7.  ACCOUNTS RECEIVABLE (NET) | $        - | $        - | $        - | $        - |

| AGING OF POSTPETITION TAXES AND PAYABLES | 0 - 30 DAYS | 31-60 DAYS | 90+ DAYS | Total |
|---|---|---|---|---|
| TAXES PAYABLE | | | | |
| 1.  FEDERAL | | | | $        - |
| 2.  STATE | | | | $        - |
| 3.  LOCAL | | | | $        - |
| 4.  OTHER (ATTACH LIST) | | | | $        - |
| 5.  TOTAL TAXES PAYABLE | $        - | $        - | $        - | $        - |

| 6.  ACCOUNTS PAYABLE | | | | $        - |
|---|---|---|---|---|

| STATUS OF POSTPETITION TAXES | BEGINNING TAX LIABILITY | AMOUNT WITHHELD OR ACCRUED | AMOUNT PAID | ENDING TAX LIABILITY |
|---|---|---|---|---|
| FEDERAL | | | | |
| 1.  WITHHOLDING | | | | $        - |
| 2.  FICA-EMPLOYEE | | | | $        - |
| 3.  FICA-EMPLOYER | | | | $        - |
| 4.  UNEMPLOYMENT | | | | $        - |
| 5.  INCOME | | | | $        - |
| 6.  OTHER (ATTACH LIST) | | | | $        - |
| 7.  TOTAL FEDERAL TAXES | $        - | $        - | $        - | $        - |
| STATE AND LOCAL | | | | |
| 8.  WITHHOLDING | | | | $        - |
| 9.  SALES | | | | $        - |
| 10.  EXCISE | | | | $        - |
| 11.  UNEMPLOYMENT | | | | $        - |
| 12.  REAL PROPERTY | | | | $        - |
| 13.  PERSONAL PROPERTY | | | | $        - |
| 14.  OTHER (ATTACH LIST) | | | | $        - |
| 15.  TOTAL STATE & LOCAL | $        - | $        - | $        - | $        - |
| 16.  TOTAL TAXES | $        - | $        - | $        - | $        - |

**Monthly Operating Report**
**CASH BASIS-5**

| CASE NAME: | Acis Capital Management GP, LLC. |
|---|---|

| CASE NUMBER: | 18-30265-sgj11 |
|---|---|

MONTH:     Aug. 1 - Aug. 31

### PAYMENTS TO INSIDERS AND PROFESSIONALS

| INSIDERS | | | |
|---|---|---|---|
| NAME | TYPE OF PAYMENT | AMOUNT PAID | TTL PD TO DATE |
| 1. | | | |
| 2. | | | |
| 3. | | | |
| 4. | | | |
| 5. | | | |
| TOTAL PAYMENTS TO INSIDERS | | $          - | $          - |

| PROFESSIONALS | | | | | |
|---|---|---|---|---|---|
| NAME | DATE OF COURT ORDER AUTHORIZING PAYMENT | AMOUNT APPROVED | AMOUNT PAID | TTL PAID TO DATE | TOTAL INCURRED & UNPAID |
| 1. | | | | | |
| 2. | | | | | |
| 3. | | | | | |
| 4. | | | | | |
| 5. | | | | | |
| TOTAL PAYMENTS TO PROFESSIONALS | | $          - | $          - | $          - | $          - |

### POSTPETITION STATUS OF SECURED NOTES, LEASES PAYABLE AND ADEQUATE PROTECTION PAYMENTS

| NAME OF CREDITOR | SCHEDULED MONTHLY PAYMENTS DUE | AMOUNTS PAID DURING MONTH | TOTAL UNPAID POST-PETITION |
|---|---|---|---|
| 1. | | | |
| 2. | | | |
| 3. | | | |
| 4. | | | |
| 5. | | | |
| 6. TOTAL | $          - | $          - | $          - |

Case 18-30264-sgj11 Doc 1241 Filed 09/27/21 Entered 09/07/21 11:59:05 Page 242 of
Case 18-30264-sgj11 Doc 1337 Filed 09/27/21 Entered 09/27/21 13:48:05 Page 2 of 9
255

<div style="text-align: right">

**Monthly Operating Report**

**CASH BASIS-6**

</div>

| | |
|---|---|
| **CASE NAME:** | Acis Capital Management GP, LLC. |
| **CASE NUMBER:** | 18-30265-sgj11 |

MONTH:       Aug. 1 - Aug. 31

## QUESTIONNAIRE

| | | YES | NO |
|---|---|---|---|
| 1. | HAVE ANY ASSETS BEEN SOLD OR TRANSFERRED OUTSIDE THE NORMAL COURSE OF BUSINESS THIS REPORTING PERIOD? | | x |
| 2. | HAVE ANY FUNDS BEEN DISBURSED FROM ANY ACCOUNT OTHER THAN A DEBTOR IN POSSESSION ACCOUNT? | | x |
| 3. | ARE ANY POSTPETITION RECEIVABLES (ACCOUNTS, NOTES OR LOANS) DUE FROM RELATED PARTIES? | | x |
| 4. | HAVE ANY PAYMENTS BEEN MADE ON PREPETITION LIABILITIES THIS REPORTING PERIOD? | | x |
| 5. | HAVE ANY POSTPETITION LOANS BEEN RECEIVED BY THE DEBTOR FROM ANY PARTY? | | x |
| 6. | ARE ANY POSTPETITION PAYROLL TAXES PAST DUE? | | x |
| 7. | ARE ANY POSTPETITION STATE OR FEDERAL INCOME TAXES PAST DUE? | | x |
| 8. | ARE ANY POSTPETITION REAL ESTATE TAXES PAST DUE? | | x |
| 9. | ARE ANY OTHER POSTPETITION TAXES PAST DUE? | | x |
| 10. | ARE ANY AMOUNTS OWED TO POSTPETITION CREDITORS DELINQUENT? | | x |
| 11. | HAVE ANY PREPETITION TAXES BEEN PAID DURING THE REPORTING PERIOD? | | x |
| 12. | ARE ANY WAGE PAYMENTS PAST DUE? | | x |

IF THE ANSWER TO ANY OF THE ABOVE QUESTIONS IS "YES"; PROVIDE A DETAILED EXPLANATION OF EACH ITEM.  ATTACH ADDITIONAL SHEETS IF NECESSARY.

## INSURANCE

| | | YES | NO |
|---|---|---|---|
| 1. | ARE WORKER'S COMPENSATION, GENERAL LIABILITY AND OTHER | N/A | |
| 2. | ARE ALL PREMIUM PAYMENTS PAID CURRENT? | N/A | |
| 3. | PLEASE ITEMIZE POLICIES BELOW | | |

IF THE ANSWER TO ANY OF THE ABOVE QUESTIONS IS "NO" OR IF ANY POLICIES HAVE BEEN CANCELED OR NOT RENEWED DURING THIS REPORTING PERIOD, PROVIDE AN EXPLANATION BELOW.  ATTACH ADDITIONAL SHEETS IF NECESSARY.

## INSTALLMENT PAYMENTS

| TYPE OF POLICY | CARRIER | PERIOD COVERED | PAYMENT AMOUNT & FREQUENCY |
|---|---|---|---|
| | | | |
| | | | |
| | | | |
| | | | |

Case 18-30264-sgj11 Doc 1344 Filed 09/27/21    Entered 09/27/21 14:59:05    Page 243 of
255
Case 18-30264-sgj11 Doc 659 Filed 10/25/18    Entered 10/25/18 13:59:05    Page 1 of 6



CLERK, U.S. BANKRUPTCY COURT
NORTHERN DISTRICT OF TEXAS

# ENTERED

THE DATE OF ENTRY IS ON
THE COURT'S DOCKET

**The following constitutes the ruling of the court and has the force and effect therein described.**

**Signed October 25, 2018**

_____

**United States Bankruptcy Judge**

_____

### IN THE UNITED STATES BANKRUPTCY COURT
### FOR THE NORTHERN DISTRICT OF TEXAS
### DALLAS DIVISION

| | | |
|---|---|---|
| IN RE: | § | CHAPTER 11 CASES |
| | § | |
| ACIS CAPITAL MANAGEMENT, L.P., | § | CASE NO. 18-30264-sgj11 |
| ACIS CAPITAL MANAGEMENT GP, LLC, | § | (Jointly Administered) |
| | § | |
| Debtors. | § | |

### ORDER (I) CONDITIONALLY APPROVING DISCLOSURE STATEMENT, (II) SCHEDULING COMBINED HEARING ON FINAL APPROVAL OF DISCLOSURE STATEMENT AND CONFIRMATION OF SECOND AMENDED JOINT PLAN, AND SETTING RELATED DEADLINES, (III) APPROVING FORMS FOR VOTING AND NOTICE, AND <u>(IV) APPROVING RELATED MATTERS</u>

Came on to be considered the *Chapter 11 Trustee's Amended Motion for Entry of Order*

*(A) Conditionally Approving Disclosure Statement; (B) Scheduling Combined Hearing on Final*

*Approval of Disclosure Statement and Confirmation of Second Amended Joint Plan, and Setting*

*Related Deadlines; (C) Approving Forms for Voting and Notice; and (D) Granting Related Relief*

[Docket No. 622], as supplemented by the supplement thereto [Docket No. 646] (collectively,

the "<u>Motion</u>") filed by Robin Phelan (the "<u>Trustee</u>"), as Chapter 11 Trustee for Acis Capital

Management, L.P. and Acis Capital Management GP, LLC (together, the "<u>Debtors</u>").  The Court

conducted a hearing on the Motion on October 24, 2018 (the "Hearing").  The Court hereby

finds that it has jurisdiction over this matter pursuant to 28 U.S.C §§ 157 and 1334, and this is a

core proceeding pursuant to 28 U.S.C. § 157(b)(2).  The Court further finds that due notice of

the Motion and Hearing was given and is sufficient under the circumstances, and that no other

or further notice need be provided.  The Court further finds that the relief requested in the

Motion is in the best interests of the Debtors and their estates and creditors.  Upon all the

proceedings had before the Court, and after due deliberation and sufficient cause appearing

therefor, the Court finds that the legal and factual bases set forth in the Motion establish just

cause for the relief granted herein.

        **ACCORDINGLY,** it is hereby **ORDERED** that:

        1.      The Motion is hereby **GRANTED** to the extent set forth herein.

        2.      Capitalized terms not defined herein shall have the meaning attributed to such

terms in the Motion.

        3.      The Disclosure Statement is conditionally approved for the purpose of solicitation

of votes on the Plan pending a final determination at the Combined Hearing.

        4.      The form of ballot attached as **Exhibit A** to the Motion is approved in all respects

for use in solicitation of votes on the Plan.

        5.      The form of transmittal letter attached as **Exhibit B** to the Motion is approved in all

respects for use in solicitation of votes on the Plan.

        6.      On **Friday, October 26, 2018**, the Trustee shall serve packages ("Solicitation

Packages") on holders of claims in Classes 2 and 3 and Subclasses 4A and 4B under the Plan,

which Solicitation Packages shall include (a) a copy of the Disclosure Statement, with a copy of

the Plan attached as an exhibit thereto, (b) a copy of this Order, (c) a ballot for voting on the Plan,

and (d) the transmittal letter approved herein.  The Trustee shall not be required to serve

Solicitation Packages on holders of any Class 1 Claims or Class 5 equity interests.

7.     The forms of the Noteholder Notice attached to the Motion as **Exhibit "E,"** the Highlands Notice attached to the Motion as **Exhibit "F,"** and the Notice Party Notice attached to the Motion as **Exhibit "G"** are hereby approved in all respects for use in providing notice to the Noteholders, the Highlands, and the Notice Parties of the Plan, Disclosure Statement, Combined Hearing, and related deadlines.

8.     On **Friday, October 26, 2018**, the Trustee shall serve Notice Packages on the Noteholders, the Highlands, and the Notice Parties.  In the event any notes in the Acis CLOs are held by Cede & Co., as the nominee for the Depository Trust Corporation, on behalf of any beneficial noteholders, the Trustee is authorized to send the Noteholder Notice to Cede & Co. on behalf of such beneficial noteholders.  The Trustee's notice procedures set forth in the Motion are hereby approved and no other or further notice of the Plan, Disclosure Statement, deadlines relating to the Combined Hearing, and Combined Hearing need be provided.

9.     To be counted as votes to accept or reject the Plan, all ballots must be properly executed, completed and delivered to the following address by no later than **Monday, November 26, 2018** (the "Voting Deadline):

> Acis Capital Management Ballot
> Attn: Linda Breedlove
> Forshey & Prostok, L.L.P.
> 777 Main Street, Suite 1290
> Fort Worth, Texas 76102
> Fax: (817) 877-4151

Ballots may be faxed to the fax number set forth above so long as they are received by the Voting Deadline.  Ballots received after the Voting Deadline will not be counted except upon further order of the Court.

10.     The Trustee is authorized to tabulate ballots on a consolidated basis.  The Trustee shall file a tabulation of ballots with the Clerk of the Court by no later than **Monday, December 3, 2018**, with a copy to be concurrently served upon any party that has filed a timely objection to confirmation of the Plan.

11.     The Combined Hearing Notice attached as **Exhibit H** to the Motion, completed in conformity with this Order, is approved in all respects.  The Trustee shall serve the Combined Hearing Notice on **Friday, October 26, 2018**.

12.     A Combined Hearing to consider the adequacy and final approval of the Disclosure Statement and confirmation of the Plan will be held before the Honorable Stacey G. C. Jernigan, United States Bankruptcy Judge, Earle Cabell Federal Building, 1100 Commerce Street, Courtroom No. 1 on the 14th Floor, Dallas, Texas 75242 beginning on **December 11, 2018 at 9:30 a.m., Central Time**.  The Combined Hearing may be continued from time to time by the Court without further notice other than the announcement of the adjourned date at the Combined Hearing or any continuation thereof.

13.     Objections, if any, to (a) the adequacy and final approval of the Disclosure Statement, and/or (b) confirmation of the Plan must be made by written objection and filed with the Clerk of the Court by no later than **Monday, November 26, 2018**.  A copy of such objection shall be served (i) by United States Mail on any parties who have filed notices of appearance and requests for notice in the Debtors' cases, at the addresses set forth therein, and (ii) the parties listed below via email or fax, at the email addresses or fax numbers set forth below, with a hard copy to be deposited in the United States Mail addressed to such parties at the addresses set forth below so as to be received on or before the Objection Deadline:

Jeff P. Prostok
Suzanne K. Rosen
Forshey & Prostok, L.L.P.
777 Main Street, Suite 1290
Fort Worth, Texas 76102
Fax: 817-877-4151
Email: jprostok@forsheyprostok.com
Email: srosen@forsheyprostok.com

Joe Wielebinski
Phillip Lamberson
Annmarie Chiarello
**WINSTEAD PC**
500 Winstead Building
2728 N. Harwood Street
Dallas, Texas 75201
Fax : 214-745-5390
Email: jwielebinski@winstead.com
Email: plamberson@winstead.com
Email: achiarello@winstead.com

United States Trustee
Attn: Lisa L. Lambert, Asst. U.S. Trustee
1100 Commerce Street, Room 976
Dallas, TX 75242
Email: Lisa.L.Lambert@usdoj.gov

14. Any response to a timely filed and served objection to the adequacy and final approval of the Disclosure Statement and/or confirmation of the Plan must be made by written response and filed with the Clerk of the Court by no later than **Wednesday, December 5, 2018**.

15. Any pre-trial brief must be filed with the Clerk of the Court and served by no later than **Wednesday, December 5, 2018**.

16. The Trustee has shown cause to shorten certain deadlines with respect to discovery in connection with the matters to be considered at the Combined Hearing, and the following deadlines and requirements shall govern discovery and trial preparation matters:

a. the deadline by which any written discovery must be served is **Friday, November 9, 2018**;

b. the deadline for any responses or objections to discovery subject to any applicable discovery rule under the Bankruptcy Rules is hereby shortened to fourteen (14) days from service;

c. the parties shall provide expert witness designations, if any, and reports, if any, required by Federal Rule of Civil Procedure 26(a)(2)(A) and (B), as incorporated by Bankruptcy Rule 7026, by no later than **Wednesday, November 14, 2018**, and rebuttal expert reports, if any, shall be provided by no later than **Friday, November 30, 2018**;

d. all depositions shall be held on reasonable notice and, unless otherwise agreed to in writing by the parties, seven (7) days' notice shall be required for all depositions;

e. all discovery shall be completed no later than **Wednesday, December 5, 2018**;

f. if the parties cannot agree on the scope of discovery, time to respond, or time to produce/appear, the Court shall consider any such dispute on an expedited basis, including via telephonic hearings, subject to the Court's availability;

g. all witnesses for the Combined Hearing shall be designated by **Wednesday, November 28, 2018**;

Case 18-30264-sgj11 Doc 1344 Filed 09/07/21    Entered 09/07/21 14:59:05    Page 248 of
255
Case 18-30264-sgj11 Doc 1359 Filed 09/23/21    Entered 09/23/21 13:53:05    Page 8 of 0

   h.  each party must file its Witness and Exhibit List for the Combined Hearing by no later than **Friday, December 7, 2018**; and

   i.  all exhibits, except impeachment exhibits, shall be marked with exhibit labels and exchanged with opposing counsel contemporaneous with the filing of a party's Witness and Exhibit List.

  17.  This Court shall retain jurisdiction over all matters arising from or related to this Order.

<div align="center">### End of Order ###</div>

Jeff P. Prostok – State Bar No. 16352500
J. Robert Forshey – State Bar No. 07264200
Suzanne K. Rosen – State Bar No. 00798518
Matthew G. Maben – State Bar No. 24037008
**FORSHEY & PROSTOK LLP**
777 Main St., Suite 1290
Ft. Worth, TX 76102
Telephone: (817) 877-8855
Facsimile: (817) 877-4151
jprostok@forsheyprostok.com
bforshey@forsheyprostok.com
srosen@forsheyprostok.com
mmaben@forsheyprostok.com

**COUNSEL FOR ROBIN PHELAN, CHAPTER 11 TRUSTEE**

Rakhee V. Patel – State Bar No. 00797213
Phillip Lamberson – State Bar No. 00794134
Joe Wielebinski – State Bar No. 21432400
Annmarie Chiarello – State Bar No. 24097496
**WINSTEAD PC**
500 Winstead Building
2728 N. Harwood Street
Dallas, Texas 75201
Telephone: (214) 745-5400
Facsimile: (214) 745-5390
rpatel@winstead.com
plamberson@winstead.com
jwielebinski@winstead.com
achiarello@winstead.com

**SPECIAL COUNSEL FOR ROBIN PHELAN, CHAPTER 11 TRUSTEE**

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE NORTHERN DISTRICT OF TEXAS
## DALLAS DIVISION

| | | |
|---|---|---|
| IN RE: | § | CHAPTER 11 CASES |
| | § | |
| ACIS CAPITAL MANAGEMENT, L.P., | § | CASE NO. 18-30264-sgj11 |
| ACIS CAPITAL MANAGEMENT GP, LLC, | § | (Jointly Administered) |
| | § | |
| Debtors. | § | |

**NOTICE OF (A) COMBINED HEARING TO CONSIDER FINAL APPROVAL OF DISCLOSURE STATEMENT AND CONFIRMATION OF PLAN, (B) DEADLINE FOR SUBMITTING BALLOTS TO ACCEPT OR REJECT THE PLAN, (C) DEADLINE FOR FILING AND SERVICE OF OBJECTIONS TO FINAL APPROVAL OF DISCLOSURE STATEMENT AND <u>CONFIRMATION OF PLAN, AND (D) RELATED MATTERS</u>**

**PLEASE TAKE NOTICE OF THE FOLLOWING:**

1.     On October 25, 2018, Robin Phelan (the "<u>Trustee</u>"), as Chapter 11 Trustee for Acis Capital Management, L.P. and Acis Capital Management GP, LLC (together, the "<u>Debtors</u>"), filed the *Third Amended Joint Plan for Acis Capital Management, L.P. and Acis Capital Management GP, LLC* [Docket No.660], as modified or supplemented (the "<u>Plan</u>"), and on October 25, 2018, the Trustee filed the *Disclosure Statement Pursuant to Section 1125 of the United States Bankruptcy Code with Respect to the Third Amended Joint Plan for Acis Capital Management,*

*L.P. and Acis Capital Management GP, LLC* [Docket No. 661], as modified or supplemented (the "Disclosure Statement").[1]

2. On October 3, 2018, the Trustee filed his *Chapter 11 Trustee's Amended Motion for Entry of Order (A) Conditionally Approving Disclosure Statement; (B) Scheduling Combined Hearing on Final Approval of Disclosure Statement and Confirmation of Second Amended Joint Plan, and Setting Related Deadlines; (C) Approving Forms for Voting and Notice; and (D) Granting Related Relief* (the "Motion") [Docket No. 622].[2]

3. The Motion was granted pursuant to an *Order* entered by the Bankruptcy Court on October 25, 2018 (the "Solicitation Procedures Order") [Docket No. 659] under which the Disclosure Statement was conditionally approved and certain procedures and materials have been approved for the solicitation of votes to accept or reject the Plan.

4. Copies of the Solicitation Procedures Order, Plan and Disclosure Statement may be obtained by accessing the Bankruptcy Court's website: http://www.txnb.uscourts.gov/ (please note that a PACER password and login and required to access documents on the Bankruptcy Court's website and charges may apply). Alternatively, copies may be obtained, free of charge, upon request to the undersigned counsel for the Trustee.

5. A combined hearing to consider final approval of the Disclosure Statement and confirmation of the Plan (the "Combined Hearing") has been set to commence on **December 11, 2018 at 9:30 a.m., Central Time,** before the Honorable Stacey G. C. Jernigan, Earle Cabell Federal Building, 1100 Commerce Street, Courtroom No. 1 on the 14th Floor, Dallas, Texas 75242.

---

[1] Capitalized terms not defined herein shall have the meanings attributed to such terms in the Plan or the Motion, as applicable.

[2] The Motion was filed in connection with the Trustee's second amended plan and disclosure statement and the supplements thereto. However, for convenience and ease of review, the modifications to the second amended plan and disclosure statement, as well as certain additional changes discussed at the hearing on the Motion, were incorporated into the Plan and Disclosure Statement. Consequently, the version of the Plan and Disclosure statement being solicited are the versions approved by the Court in the Solicitation Procedures Order.

6.      Under the terms of the Plan, holders of Claims in Class 2 (Terry Partially Secured Claim), Class 3 (General Unsecured Claims), and Class 4 (Insider Claims) are impaired and are therefore entitled to vote on the Plan.  Class 4 is divided into two Subclasses – Subclass 4A and Subclass 4B.  Under the terms of the Plan, holders of Class 1 Claims are not impaired, are deemed to have accepted the Plan pursuant to section 1126(f) of the Bankruptcy Code and are not entitled to vote on the Plan.  Under the terms of the Plan, holders of Class 5 equity interests in the Debtors will not retain interests and will not receive any distribution under the Plan on account of such interests.  Class 5 is therefore deemed to have rejected the Plan and holders of such equity interests are not entitled to vote on the Plan.

7.      **Please be advised that Section 14.03 of the Plan contains a Plan Injunction, which enjoins Highland Capital Management, L.P. ("HCM"), Highland CLO Funding, Ltd. CLO Holdco, Ltd., Neutra, Ltd., Highland HCF Advisors, Ltd., Highland CLO Management, Ltd., and any other affiliates of HCM from taking any steps to liquidate the Acis CLOs[3] except through a reset transaction pursuant to section 6.08 if the Plan.  Please refer to Section 14.03 of the Plan for the complete terms of the proposed Plan Injunction.**

8.      The deadline by which completed Ballots must be submitted is **Monday, November 26, 2018** (the "Voting Deadline").  Failure to follow the voting instructions included with the Ballot or failure to submit the Ballot so that it is received by the Voting Deadline may result in the Ballot being disqualified and not counted.

9.      Any creditor or party in interest desiring to object to final approval of the Disclosure Statement and/or confirmation of the Plan must file a written objection(s) with the Clerk of the Bankruptcy Court by no later than **Monday, November 26, 2018**, and concurrently serve a copy

---

[3] The term "Acis CLOs" is defined in the Plan and used herein to include Acis CLO 2014-3, Ltd., Acis CLO 2014-4, Ltd., Acis CLO 2014-5, Ltd., and Acis CLO 2015-6, Ltd.  The Bankruptcy Court entered orders on October 15, 2018 granting relief from the automatic stay and modifying a preliminary injunction to permit the trading, sale or other disposition of the collateral of Acis CLO 2013-1, Ltd. ("CLO-1") in accordance with the CLO-1 indenture, CLO-1 portfolio management agreement, and applicable law.

of such objection on (a) any parties that have filed a notice of appearance and request for notices in the Debtors' bankruptcy cases, at the addresses set forth therein, by United States Mail, and (b) the parties listed below via email or fax, at the email addresses or fax numbers set forth below, with a hard copy to be deposited in the United States Mail addressed to such parties at the addresses set forth below:

Jeff P. Prostok
Suzanne K. Rosen
Forshey & Prostok, L.L.P.
777 Main Street, Suite 1290
Fort Worth, Texas 76102
Fax: 817-877-4151
Email: jprostok@forsheyprostok.com
Email: srosen@forsheyprostok.com


United States Trustee
Attn: Lisa L. Lambert, Asst. U.S. Trustee
1100 Commerce Street, Room 976
Dallas, TX 75242
Email: Lisa.L.Lambert@usdoj.gov

Joe Wielebinski
Phillip Lamberson
Annmarie Chiarello
**WINSTEAD PC**
500 Winstead Building
2728 N. Harwood Street
Dallas, Texas 75201
Fax : 214-745-5390
Email: rpatel@winstead.com
Email: plamberson@winstead.com
Email: jwielebinski@winstead.com
Email: achiarello@winstead.com

10.     Any response to a timely filed and served Plan / Disclosure Statement Objection must be made by written response and filed with the Clerk of the Court and served by no later than **Wednesday, December 5, 2018**.

11.     Any pre-trial brief must be filed with the Clerk of the Court and served by no later than **Wednesday, December 5, 2018**.

12.     The Solicitation Procedures Order also establishes the following deadlines and requirements with respect to discovery and trial preparation matters in connection with the Combined Hearing:

a.     all written discovery shall be served by no later than **Friday, November 9, 2018**;

b.     the deadline for any responses or objections to discovery subject to any applicable discovery rule under the Bankruptcy Rules has been shortened to fourteen (14) days from service;

c.      the parties shall provide expert witness designations, if any, and reports, if any, required by Federal Rule of Civil Procedure 26(a)(2)(A) and (B), as incorporated by Bankruptcy Rule 7026, by no later than **Wednesday, November 14, 2018**, and rebuttal expert reports, if any, shall be provided by no later than **Friday, November 30, 2018**;

d.      all depositions shall be held on reasonable notice and, unless otherwise agreed to in writing by the parties, seven (7) days' notice shall be required for all depositions;

e.      all discovery shall be completed no later than **Monday, November 26, 2018**;

f.      if the parties cannot agree on the scope of discovery, time to respond, or time to produce/appear, the Court shall consider any such dispute on an expedited basis, including via telephonic hearings, subject to the Court's availability;

g.      all witnesses for the Combined Hearing shall be designated by **Wednesday, November 28, 2018**;

h.      each party must file its Witness and Exhibit List for the Combined Hearing by **Friday, December 7, 2018**; and

i.      all exhibits, except impeachment exhibits, shall be marked with exhibit labels and exchanged with opposing counsel contemporaneous with the filing of a party's Witness and Exhibit List.

13.      The Combined Hearing may be continued from time to time without further notice other than the announcement of the adjourned date at the Combined Hearing or any continuation thereof.

DATED:  October 26, 2018.                     Respectfully submitted,

/s/  Jeff P. Prostok
Jeff P. Prostok
State Bar No. 16352500
J. Robert Forshey
State Bar No. 07264200
Suzanne K. Rosen
State Bar No. 00798518

Matthew G. Maben
State Bar No. 24037008
**FORSHEY & PROSTOK LLP**
777 Main St., Suite 1290
Ft. Worth, TX 76102
Telephone: (817) 877-8855
Facsimile: (817) 877-4151
jprostok@forsheyprostok.com
bforshey@forsheyprostok.com
srosen@forsheyprostok.com
mmaben@forsheyprostok.com

**COUNSEL FOR ROBIN PHELAN,
CHAPTER 11 TRUSTEE**

-and-

Rakhee V. Patel
State Bar No. 00797213
Phillip Lamberson
State Bar No. 00794134
Joe Wielebinski
State Bar No. 21432400
Annmarie Chiarello
State Bar No. 24097496
**WINSTEAD PC**
500 Winstead Building
2728 N. Harwood Street
Dallas, Texas 75201
(214) 745-5400 (Phone)
(214) 745-5390 (Facsimile)
rpatel@winstead.com
plamberson@winstead.com
jwielebinski@winstead.com
achiarello@winstead.com

**SPECIAL COUNSEL FOR ROBIN PHELAN,
CHAPTER 11 TRUSTEE**

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the above and foregoing document was served upon the parties on the attached service list via United States Mail, first class postage prepaid, and via ECF Electronic Notice, where available, on the 26th day of October, 2018.

/s/ Jeff P. Prostok
Jeff P. Prostok

L:\JPROSTOK\ACIS Capital Management (Trustee Rep)\Plan and Disclosure Statement\Solicitation Documents\Combined Hearing Notice 10.26.18.docx

## SCHEDULE I

Additional Addressees

**Irish Stock Exchange:**
Electronic copy to be uploaded to the Irish Stock Exchange website via http://www.isedirect.ie

**DTC, Euroclear and Clearstream (as applicable):**
legalandtaxnotices@dtcc.com
lensnotices@dtcc.com
consentannouncements@dtcc.com
voluntaryreorgannouncements@dtcc.com
drit@euroclear.com
ca_general.events@clearstream.com

SK 03687 0586 8092710